Beth A. Wilkinson (*pro hac vice*)
Rakesh N. Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
WILKINSON WALSH LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone:  (202) 847-4000
Facsimile:  (202) 847-4005
bwilkinson@wilkinsonwalsh.com
rkilaru@wilkinsonwalsh.com
tmatthewsjohnson@wilkinsonwalsh.com
kgostin@wilkinsonwalsh.com

Rahul Hari (SBN 313528)
WILKINSON WALSH LLP
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Telephone:  (424) 291-9655
Facsimile:  (202) 847-4005
rhari@wilkinsonwalsh.com

Attorneys for Defendant
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| GRANT HOUSE, et al., <br><br>        Plaintiffs, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al., <br><br>        Defendants. | No. 4:20-cv-03919-CW <br> No. 4:20-cv-04527-CW <br><br> **DEFENDANTS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE COMPLAINTS** <br><br> Date:         November 18, 2020 <br> Time:        2:30 p.m. <br> Courtroom:  Courtroom 2, 4th Floor <br> Before:      Hon. Claudia Wilken |
| TYMIR OLIVER, on behalf of himself and all others similarly situated, <br><br>        Plaintiffs, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al., <br><br>        Defendants. | |

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        Please take notice that on November 18, 2020, at 2:30 p.m., or as soon thereafter as the matter

3   may be heard by the Court, at the courtroom of the Honorable Claudia Wilken, Courtroom 2, 4th Floor,

4   United States District Court, 1301 Clay Street, Oakland, California, Defendants National Collegiate

5   Athletic Association, Pac-12 Conference, The Big Ten Conference, The Big 12 Conference,

6   Southeastern Conference, and Atlantic Coast Conference will and hereby do move the Court, pursuant

7   to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing both the Plaintiffs'

8   Complaint in *House*, and the Complaint in *Oliver*, with prejudice.  This motion to dismiss is brought

9   on the grounds that the claims in the Complaints fail to state a claim against Defendants upon which

10   relief may be granted.

11    DATED:  September 11, 2020                 **WILKINSON WALSH LLP**

12                              By: _____*/s/ Beth A. Wilkinson*_____

13                              Beth A. Wilkinson (*pro hac vice*)

14                              Rakesh N. Kilaru (*pro hac vice*)

                           Tamarra Matthews Johnson (*pro hac vice*)

15                              Kieran Gostin (*pro hac vice*)

16                              2001 M Street NW, 10th Floor

                           Washington, DC 20036

17                              Telephone: (202) 847-4000

18                              Facsimile: (202) 847-4005

                           bwilkinson@wilkinsonwalsh.com

19                              rkilaru@wilkinsonwalsh.com

                           tmatthewsjohnson@wilkinsonwalsh.com

20                              kgostin@wilkinsonwalsh.com

21                              Rahul Hari (SBN 313528)

22                              11601 Wilshire Blvd., Suite 600

                           Los Angeles, CA 90025

23                              Los Angeles, CA 90025

                           Telephone: (424) 291-9655

24                              Facsimile: (202) 847-4005

                           rhari@wilkinsonwalsh.com

25

26                              Attorneys for Defendant

                           NATIONAL COLLEGIATE ATHLETIC

                           ASSOCIATION

27

28

**PROSKAUER ROSE LLP**

By: _/s/ Scott P. Cooper_

Bart H. Williams (SBN 134009)
Scott P. Cooper (SBN 96905)
Kyle A. Casazza (SBN 254061)
Shawn S. Ledingham, Jr. (SBN 275268)
Jennifer L. Jones (SBN 284624)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
bwilliams@proskauer.com
scooper@proskauer.com
kcasazza@proskauer.com
sledingham@proskauer.com
jljones@proskauer.com

Attorneys for Defendant
PAC-12 CONFERENCE

**ROBINSON BRADSHAW & HINSON, P.A.**

By: _/s/ Robert W. Fuller_

Robert W. Fuller, III (*pro hac vice*)
Lawrence C. Moore, III (*pro hac vice*)
Pearlynn G. Houck (*pro hac vice*)
Amanda P. Nitto (*pro hac vice*)
101 N. Tryon St., Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rfuller@robinsonbradshaw.com
lmoore@robinsonbradshaw.com
phouck@robinsonbradshaw.com
apickens@robinsonbradshaw.com

Mark J. Seifert (SBN 217054)
Seifert Law Firm
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 999-0901
Facsimile: (415) 901-1123
mseifert@seifertfirm.com

Attorneys for Defendant
SOUTHEASTERN CONFERENCE

**MAYER BROWN LLP**

By: _/s/ Britt M. Miller_

Britt M. Miller (*pro hac vice*)
Matthew D. Provance (*pro hac vice*)
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Christopher J. Kelly (SBN 276312)
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
cjkelly@mayerbrown.com

Attorneys for Defendant
THE BIG TEN CONFERENCE, INC.

**POLSINELLI PC**

By: _/s/ Leane K. Capps_

Leane K. Capps (*pro hac vice*)
Caitlin J. Morgan (*pro hac vice*)
D. Rockwell Bower (*pro hac vice*)
2950 N. Harwood Street, Suite 2100
Dallas, TX 75201
Telephone: (214) 397-0030
lcapps@polsinelli.com
cmorgan@polsinelli.com
rbower@polsinelli.com

Amy D. Fitts (*pro hac vice*)
120 W. 12th Street
Kansas City, MO 64105
Telephone: (816) 218-1255
afitts@polsinelli.com

Wesley D. Hurst (SBN 127564)
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 556-1801
whurst@polsinelli.com

Attorneys for Defendant
THE BIG 12 CONFERENCE, INC.

1

**FOX ROTHSCHILD LLP**

2

By: _____ */s/ D. Erik Albright* _____

3

D. Erik Albright (*pro hac vice*)
Gregory G. Holland (*pro hac vice*)

4

230 North Elm Street, Suite 1200
Greensboro, NC 27401

5

Telephone: (336) 378-5368
Facsimile: (336) 378-5400

6

ealbright@foxrothschild.com
gholland@foxrothschild.com

7

8

Jonathan P. Heyl (*pro hac vice*)
101 N. Tryon Street, Suite 1300
Charlotte, NC 28246

9

Telephone: (704) 384-2625
Facsimile: (704) 384-2800

10

jheyl@foxrothschild.com

11

Alexander Hernaez (SBN 201441)
345 California Street, Suite 2200

12

San Francisco, CA 94104-2670
Telephone: (415) 364-5540

13

Facsimile: (415) 391-4436
ahernaez@foxrothschild.com

14

15

Attorneys for Defendant
ATLANTIC COAST CONFERENCE

16

17

**E-FILING ATTESTATION**

18

19

    I, Beth A. Wilkinson, am the ECF User whose ID and password are being used to file this

20

document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories

21

identified above has concurred in this filing.

22

23

        _____ */s/ Beth A. Wilkinson* _____

24

        BETH A. WILKINSON

25

26

27

28

---

NOTICE OF MOTION AND MOTION TO DISMISS

Case No. 4:20-cv-03919-CW
Case No. 4:20-cv-04527-CW

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................1

ARGUMENT .........................................................................................................................2

    A.    *O'Bannon* And *Alston* Foreclose All Of Plaintiffs' Claims. ......................................2

    B.    The Court Should Dismiss With Prejudice The Claims Of The Putative Group-Licensing Damages Sub-Classes. ..................................................................6

        1.    Plaintiffs Have No Publicity Rights In Game Broadcasts. ...........................7

        2.    Plaintiffs Have Also Failed To Allege A Cognizable Harm To Competition In A Group Licensing Market. .................................................11

    C.    The Court Should Dismiss *Oliver* Because The Named Plaintiff Cannot Obtain The Relief He Requests. ....................................................................12

        1.    Oliver Lacks Standing To Seek Injunctive Relief. .......................................13

        2.    Oliver Released His Damages Claims In The *Alston* Settlement. .................13

CONCLUSION ......................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalfitano v. Google Inc.*,
No. 14-cv-00673-BLF, 2015 WL 456646 (N.D. Cal. Feb. 2, 2015) ................................ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 11

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) .................................................................................................. 7

*B.C. v. Plumas Unified Sch. Dist.*,
192 F.3d 1260 (9th Cir. 1999) ................................................................................. 13

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
805 F.2d 663 (7th Cir. 1986) ..................................................................................... 8

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) ................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 2, 11

*Bykov v. Rosen*,
No. C15-0713-JCC, 2017 WL 5756593 (W.D. Wash. Nov. 28, 2017) ........................ 6

*Dora v. Frontline Video, Inc.*,
18 Cal. Rptr. 2d 790 (Cal. Ct. App. 1993) ............................................................ 8, 9

*Dryer v. NFL*,
55 F. Supp. 3d 1181 (D. Minn. 2014) ....................................................................... 9

*Dryer v. NFL*,
689 F. Supp. 2d 1113 (D. Minn. 2010) ..................................................................... 9

*Dunn v. Phoenix Newspapers, Inc.*,
735 F.2d 1184 (9th Cir. 1984) ................................................................................... 3

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) .................................................................................................. 6

*Gautier v. Pro-Football, Inc.*,
107 N.E.2d 485 (N.Y. 1952) ..................................................................................... 8

*Gionfriddo v. Major League Baseball*,
  114 Cal. Rptr. 2d 307 (Cal. Ct. App. 2001)................................................................8

*Howard v. Am. Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000) ....................................................................................15

*In re Century Aluminum Co. Secs. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ..................................................................................12

*In re NCAA GIA Cap Antitrust Litig.*,
  958 F.3d 1239 (9th Cir. 2020) ..........................................................................*passim*

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
  37 F. Supp. 3d 1126 (N.D. Cal. 2014)........................................................................7

*Lu v. AT&T Servs., Inc.*,
  No. C 10-05954 SBA, 2011 WL 2470268 (N.D. Cal. June 21, 2011)........................13

*Lyons v. Bank of Am., NA*,
  No. C 11-1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ...........................6

*Marshall v. ESPN*,
  668 Fed. App'x 155 (6th Cir. 2016) .....................................................................10-11

*Marshall v. ESPN*,
  111 F. Supp. 3d 815, 828 (M.D. Tenn. 2015), *aff'd*, 668 Fed. App'x 155 (6th Cir. 2016).....7, 9, 10

*Nahum v. Boeing Co.*,
  No. 2:19-cv-1114-BJR, 2019 WL 6878242 (W.D. Wash. Dec. 17, 2019) ...................6

*NFL v. Alley, Inc.*,
  624 F. Supp. 6 (S.D. Fla. 1983)..................................................................................8

*Nichols v. Citibank, N.A.*,
  715 Fed. App'x 681 (9th Cir. 2018) ..........................................................................16

*O'Bannon v. NCAA*,
  7 F. Supp. 3d 955 (N.D. Cal. 2014)......................................................................11-12

*O'Bannon v. NCAA*,
  802 F.3d 1049 (9th Cir. 2015) ...........................................................................*passim*

*Perron v. Hewlett-Packard Co.*,
  No. 10-CV-00695-LHK, 2011 WL 1748431 (N.D. Cal. May 6, 2011).........................12

*Pittsburgh Athletic Co. v. KQV Broad. Co.*,
  24 F. Supp. 490 (W.D. Pa. 1938) ..............................................................................8

*Post Newsweek Stations-Conn., Inc. v. Travelers Ins. Co.*,
   510 F. Supp. 81 (D. Conn. 1981) ................................................................. 8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ............................................................. 15, 16

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   No. C 09-02514 SI, 2010 WL 199717 (N.D. Cal. Jan. 13, 2010) ................ 13

*Sports Props., Inc. v. Indep. Sch. Dist. No. 11 of Tulsa Cnty., Okla.*,
   957 P.2d 137 (Okla. Civ. App. 1998) ......................................................... 8

*SW. Broad. Co. v. Oil Ctr. Broad. Co.*,
   210 S.W.2d 230 (Tex. Civ. App. 1947) ....................................................... 8

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001) .................................................................. 11

*Twentieth Century Sporting Club, Inc. v. Transradio Press Serv.,Inc.*,
   165 Misc. 71 (N.Y. Sup. Ct. 1937) ............................................................. 8

*United Mine Works of Am. v. Pennington*,
   381 U.S. 657 (1965) ................................................................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................... 13

*William O. Gilley Enters. v. Atl. Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) ..................................................................... 2

*Wisc. Interscholastic Athletic Ass'n v. Gannett Co.*,
   658 F.3d 614 (7th Cir. 2011) ..................................................................... 8

*Zacchini v. Scripps-Howard Broadcasting Co.*,
   433 U.S. 562 (1977) ............................................................................... 10

*Zixiang Li v. Kerry*,
   710 F.3d 995 (9th Cir. 2013) ................................................................... 12

**Statutes**

15 U.S.C. § 15(a) ......................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS
                                   Case No. 4:20-cv-03919-CW
                                   Case No. 4:20-cv-04527-CW
iv

## INTRODUCTION

These complaints should feel familiar.  In *O'Bannon v. NCAA*, a class of student-athletes challenged NCAA "rules prohibit[ing] student-athletes from being paid for the use of their names, images, and likenesses."  802 F.3d 1049, 1052 (9th Cir. 2015).  Now, with the ink barely dry on a subsequent, broader challenge to the NCAA's compensation rules, Plaintiffs in *House* and *Oliver* seek a re-do.  Their complaints do not hide this fact—just as in *O'Bannon*, they challenge NCAA "rules that prohibit student-athletes from receiving anything of value in exchange for the commercial use of their NILs."  House Compl. ("HC") ¶ 5; Oliver Compl. ("OC") ¶ 5.  And they assert that potential future changes to NCAA rules relating to NIL require invalidation of all compensation limits—a claim expressly rejected by the Ninth Circuit in *Alston*.  HC ¶¶ 18–20, 211–214; OC ¶¶ 18–20, 192–195; *In re NCAA GIA Cap Antitrust Litig.*, 958 F.3d 1239, 1253 (9th Cir. 2020) ("*Alston*").  No principle of law justifies serial relitigation of the exact same claims.

The Ninth Circuit's recent observation that "[a]ntitrust decisions are particularly fact-bound" cannot save Plaintiffs.  HC ¶ 157; OC ¶ 138 (both quoting *Alston*, 958 F.3d at 1253).  Plaintiffs' complaints add nothing material to the factual allegations this Court and the Ninth Circuit recently addressed in *Alston*.  And Plaintiffs gain nothing from the passage of state legislation concerning NIL licenses by student-athletes, which prompted the NCAA to create a Working Group and begin exploring revisions to its NIL rules.  HC ¶¶ 18–20; OC ¶¶ 18–20.  The Ninth Circuit considered and rejected this argument, concluding that it was at best "premature."  *Id.* at 1259.  For good reason:  There would truly be no end to the litigation cycle if new antitrust litigation could proceed based on the consideration of possible changes to rules that have already been subject to antitrust litigation.

Further, the "Group Licensing Damages Sub-Class" claim in both *House* and *Oliver* should be dismissed under Rule 12(b)(6) or stricken.  Plaintiffs seek "the share of game telecast group licensing revenue that members of the [Group Licensing Damages Sub-Class] would have received absent Defendants' [allegedly] unlawful conduct," HC ¶¶ 23, 250–251; OC ¶¶ 23, 229–230.  But individual

1    participants have no cognizable NIL rights in game broadcasts.  Moreover, the complaints do not

2    plausibly allege either the existence of any market for group licensing of student-athletes' NIL rights

3    in broadcasts of games, or how the challenged restraints have significantly harmed competition in such

4    a market.

5           Last, Plaintiff Oliver's complaint should be dismissed in full.  As a former student-athlete, he

6    has no standing to seek an injunction.  He also was a member of the *Alston* damages class settlement

7    and released the damages claim he now attempts to bring here.

8                                              **ARGUMENT**

9           A motion to dismiss under Rule 12(b)(6) must be granted where the pleadings "fail[] to state a

10   claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *accord Bell Atl. Corp. v. Twombly*,

11   550 U.S. 544, 570 (2007) (complaint must be dismissed when it fails to "state a claim to relief that is

12   plausible on its face").   In antitrust cases, plausibility is assessed "in light of basic economic

13   principles," *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009), and

14   district courts "retain the power to insist upon some specificity in pleading before allowing a

15   potentially massive factual controversy to proceed," *Twombly*, 550 U.S. at 558 (internal quotation

16   marks omitted).   Application of these basic principles requires dismissal of both actions in their

17   entireties.  It also affords an independent basis for dismissal of the putative Group Licensing Damages

18   Sub-Class claims in both cases, and of the *Oliver* action as a whole.

19         **A.  *O'Bannon* And *Alston* Foreclose All Of Plaintiffs' Claims.**

20         *House* and *Oliver* represent the third attempt to invalidate NCAA rules governing

21   compensation that may be received by student-athletes.  This latest attempt—filed just days after the

22   Ninth Circuit's *Alston* decision—is barred by precedent.

23         There can be no dispute that Plaintiffs are asserting the same claim adjudicated in *O'Bannon*.

24   They challenge the "NCAA's rules that prohibit student-athletes from receiving anything of value in

25   exchange for the commercial use of their NILs."  HC ¶ 5; OC ¶ 5.  That is virtually identical to how

26   the Ninth Circuit described the claim in *O'Bannon*—as a challenge to "rules [that] prohibit student-

27

28

athletes from being paid for the use of their names, images, and likenesses (NILs)." 802 F.3d at 1052; *see also Alston*, 958 F.3d at 1254 (describing *O'Bannon* as a "challenge to restrictions on NIL compensation" seeking "licensing revenue generated from the use of student-athletes' NILs" (internal quotation marks omitted)). The similarities do not end there. For example, the complaints assert that the NCAA has "fix[ed] the amount that student-athletes may be paid for the licensing, use, and sale of their names, images, and likenesses—**at zero**," HC ¶ 11; OC ¶ 11 (emphasis in originals), adopting the very language used by the Ninth Circuit in *O'Bannon*, which described the anticompetitive effects at issue as "the NCAA schools hav[ing] agreed to value the athletes' NILs *at zero*." 802 F.3d at 1071 (emphasis added).

The Ninth Circuit has held that the determination "[w]hether [a] practice[] as found violate[s] the Sherman Act is a question of law, not fact," *Dunn v. Phoenix Newspapers, Inc*., 735 F.2d 1184, 1186 (9th Cir. 1984), and therefore is binding as a matter of *stare decisis*. The practice that Plaintiffs challenge here—the NCAA's amateurism rules as applied to alleged NIL rights—is identical to the practice challenged in *O'Bannon*. Indeed, the Ninth Circuit in *Alston* described *O'Bannon* in the context of *stare decisis* as addressing "the NCAA's amateurism rules, insofar as they prevented student-athletes from being compensated for the use of their NILs." 958 F.3d at 1254 (quoting *O'Bannon*, 802 F.3d at 1055). Therefore, *O'Bannon* and *Alston* bar all claims asserted in the *House* and *Oliver* complaints.

The relief Plaintiffs seek confirms the point. Plaintiffs "request an injunction permanently restraining . . . [the allegedly] unlawful and anticompetitive agreements to restrict the amount of name, image, and likeness compensation available to Class Members," HC ¶ 22; OC ¶ 22, just as they did in *O'Bannon*, 802 F.3d at 1052–53. Similarly, Plaintiffs explicitly acknowledge the duplicative nature of their putative Group Licensing Damages Sub-Class claim, alleging that in *O'Bannon*, "a group of . . . student-athletes . . . challeng[ed] the NCAA's rules that prevent athletes from receiving a share of the revenue from . . . live game broadcasts." HC ¶ 155; OC ¶ 136.

1    Yet both this Court and the Ninth Circuit in *O'Bannon* refused to grant such broad-ranging

2    relief. Quite the opposite. Instead, *O'Bannon* validated NCAA rules limiting NIL compensation to

3    student-athletes with a modification to permit student-athletes to receive full cost of attendance athletic

4    scholarships. *See O'Bannon*, 803 F.3d at 1076–79. And in *Alston*, where similar classes of student-

5    athletes challenged the NCAA's amateurism rules and sought "to dismantle the NCAA's entire

6    compensation framework," 958 F.3d at 1247, this Court and the Ninth Circuit again declined such

7    broad relief. *Id.* at 1264 ("Contrary to [plaintiffs' arguments, the district court's] analysis reflects the

8    judgment that limits on cash compensation unrelated to education do *not*, on this record, constitute

9    anticompetitive conduct and, thus, may not be enjoined." (emphasis in original)). In so ruling, the

10   Ninth Circuit specifically reaffirmed the relief ordered in *O'Bannon*, observing that "the district

11   court . . . sought to toe the line that the panel majority drew" and rejecting the argument that courts

12   should "uncap above-COA compensation, regardless whether their NILs have, will, or could generate

13   any revenue that would fund such compensation." *Id.* at 1254. This Court and the Ninth Circuit, in

14   both *O'Bannon* and *Alston*, identified the specific less restrictive alternatives to the NCAA rules,

15   including the existing NIL limits, that the courts regarded as appropriate—and those less restrictive

16   alternatives did not include the NIL modifications now sought by Plaintiffs. The law does not permit

17   Plaintiffs to get a third bite at the same apple.

18   As flawed as Plaintiffs' injunctive relief claims are, their claims for money damages are even

19   more plainly without merit. Plaintiffs seek money damages purportedly suffered by them and the

20   putative class members over the past four years as a result of the application of the NCAA rules the

21   Ninth Circuit expressly deemed legally valid in *O'Bannon* just five years ago, based on arguments

22   expressly rejected by the Ninth Circuit in *Alston* less than four months ago. Even if Plaintiffs were

23   able to point to some brand new, material factual developments that could legally justify a departure

24   from those decisions for injunctive relief purposes, those developments could not justify the award of

25   money damages for periods before they occurred.

26

27

28

And while Plaintiffs assert that "[a]ntitrust decisions are particularly fact-bound," HC ¶ 157 (quoting *Alston*, 958 F.3d at 1253); OC ¶ 138 (same), they fail to allege any such developments. Plaintiffs do not identify any changes to the rules they are challenging, or to NCAA rules more generally, since *Alston*.[1]   And their complaint substantially parrots the factual allegations before the courts in that case, adding nothing that post-dates the Ninth Circuit's *Alston* decision.  Plaintiffs thus fail to plausibly advance any developments that would allow *O'Bannon* and *Alston* "to be distinguished on a principled basis."  *Alston*, 958 F.3d at 1253.

Plaintiffs' invocation of state legislation and potential NCAA rules modifications likewise provides no basis for ignoring the Ninth Circuit's binding decisions.  HC ¶¶ 211–214, 218; OC ¶¶ 192– 195, 199.   Just months ago, *Alston* considered and rejected these very arguments, calling them "premature" and explaining:

> As it stands, the NCAA has *not* endorsed cash compensation untethered to education; instead, it has undertaken to comply with the FPP Act in a manner that is consistent with *O'Bannon II*—that is, by loosening its restrictions to permit NIL benefits that are "tethered to education."  Fed. and State Leg. Working Grp. Report 4 (Oct. 23, 2019). Accordingly, we disagree that the NCAA's response to the FPP Act militates in favor of enjoining all NCAA compensation limits.

958 F.3d at 1265 & n.19 (emphasis in original) (website citation to Working Group Report and citation to Dr. Mark Emmert's testimony omitted).  The Working Group Final Report conditions any changes "to permit student-athletes to receive compensation related to NIL" on the requirement that such "compensation is consistent with NCAA values and principles, and with legal precedent."[2]  Plaintiffs acknowledge the accuracy of the Ninth Circuit's conclusion, asserting that "it remains unclear whether and what meaningful changes will actually be implemented absent a court order."  HC ¶ 217; OC ¶

---

[1] Plaintiffs' reference to the NIL waiver process, HC ¶¶ 224–227; OC ¶¶ 205–208, does not change the outcome because the rules regarding waivers have not changed.  Confirming the point, the examples cited in the complaints date back to 2015 and are largely recycled.  *Compare* HC ¶ 226; OC ¶ 207 (Arike Ogunbowale waiver), *with* Rascher Direct Testimony, *Alston*, 14-md-2541, ECF No. 994 ¶ 84.

[2] Ex. A, NCAA Board of Governors Federal and State Legislation Working Group Final Report and Recommendations at 8 (Apr. 17, 2020).  The Report is quoted by Plaintiffs in their complaints.  *See, e.g.*, HC ¶ 167 n.76; OC ¶ 148 n.75.

198.    As the Ninth Circuit held, there is no basis for using hypothetical future action as a basis for current antitrust liability.  Further, Plaintiffs' attempt to impose antitrust liability on the NCAA based on its lobbying efforts regarding potential legislative action, HC ¶¶ 218–19; OC ¶¶ 199–200, runs headlong into the established prohibition on such liability.  *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Works of Am. v. Pennington*, 381 U.S. 657 (1965).

Defendants are currently operating under the injunctions issued by this Court in *O'Bannon* and *Alston*.  Given the recency of those lawsuits, there is no basis for permitting yet another challenge to proceed.  The complaints in *House* and *Oliver* represent a virtually identical effort to ask, once again, questions that have been answered.  This Court should not allow today what it and the Ninth Circuit rejected just yesterday.  Both cases should be dismissed.

**B.  The Court Should Dismiss With Prejudice The Claims Of The Putative Group-Licensing Damages Sub-Classes.**

Plaintiffs' "Group Licensing Damages Sub-Class" (the "Sub-Class") claims suffer two additional, separate flaws, either of which independently warrants dismissal under Rule 12(b)(6)—or, alternatively, striking under either Rule 12(f) or Rule 23(d)(1)(D)—and neither of which can be cured by amendment.[3]  First, participants have no publicity rights in broadcasts of football or basketball games, precluding Plaintiffs from establishing the requisite injury to their "business or property" under the Clayton Act, 15 U.S.C. § 15(a).  Second, even if such rights exist, Plaintiffs cannot establish any

---

[3] Because Defendants' arguments for dismissal of the putative Sub-Class are based on purely legal deficiencies applicable to the class as a whole, they are properly before the Court under Rule 12(b)(6). Alternatively, the allegations and claim for relief on behalf of this putative Sub-Class should be stricken under either Rule 12(f) or Rule 23(d)(1)(D).  *See Nahum v. Boeing Co.*, No. 2:19-cv-1114-BJR, 2019 WL 6878242, at *5 (W.D. Wash. Dec. 17, 2019) ("When faced with impermissible demands for relief, the Court will strike them [under Rule 12(f)].") (*citing Bykov v. Rosen*, No. C15-0713-JCC, 2017 WL 5756593, at * 1 (W.D. Wash. Nov. 28, 2017) ("This includes striking any part of the prayer for relief when the relief sought is not recoverable as a matter of law.")); *Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (granting motion to strike under Rule 23(d)(1)(D) where a "proposed class include[d] many members who have not been injured").

harm to competition in the relevant market under a straightforward application of this Court's decision in *O'Bannon*.

### 1. Plaintiffs Have No Publicity Rights In Game Broadcasts.

No claim for violation of the Sherman Act may be maintained in the absence of an injury to "business or property." *See, e.g.*, *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338–40 (1990). As this Court recognized in *O'Bannon*, to meet that requirement, student-athletes must show they "have cognizable rights of publicity in the use of their names, images, and likenesses in live game broadcasts and archival game footage." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126, 1140 (N.D. Cal. 2014) ("*O'Bannon*").

Plaintiffs cannot make such a showing, because those rights do not exist. The decisions of the district court and the Sixth Circuit in *Marshall v. ESPN Inc.* are directly on point. 111 F. Supp. 3d 815, 828 (M.D. Tenn. 2015), *aff'd*, 668 Fed. App'x 155 (6th Cir. 2016). In those cases, Division I college basketball and FBS football student-athletes sued the Conference Defendants (among others), claiming they had violated the antitrust laws by fixing the amount of compensation student-athletes could receive for their NILs in game broadcasts without obtaining an assignment of their publicity rights. *See Marshall*, 111 F. Supp. 3d at 820–22. The district court granted a motion to dismiss that claim, concluding that the plaintiffs "cannot plead any antitrust injury" because they "do not have a right to publicity in sports broadcasts." *Id.* at 834–35. That conclusion flowed from the fact that "virtually all courts in jurisdictions that have decided the matter under their respective laws" have rejected the claim that participants in sporting events have a publicity right to their NIL. *Id.* at 825. The Sixth Circuit affirmed the district court's "notably sound and thorough opinion," including its dismissal of the Sherman Act claim, holding:

> The plaintiffs' case goes downhill from there. Their claim under the Sherman Act is that the various defendants have engaged in a horizontal scheme to fix at zero the price of the plaintiffs' putative rights to license broadcasts of sporting events in which the plaintiffs participate. That claim is meritless because, as shown above, those putative rights do not exist.

1    668 Fed. App'x at 157.

2        *Marshall* correctly observed a judicial consensus on this point:  For almost a century, judicial

3    decisions and state statutes have uniformly recognized that the right to license an event vests

4    exclusively in the promoter or producer of the event.  Courts have viewed the broadcast right as an

5    exclusive property right for producers.  *See Wisc. Interscholastic Athletic Ass'n v. Gannett Co.*, 658

6    F.3d 614, 624–28 (7th Cir. 2011) ("[T]he producer of entertainment is entitled to charge a fee in

7    exchange for consent to broadcast.").  Early cases recognized that just as the producer of an event may

8    place conditions upon access to the event, so too may the producer grant permission to broadcast the

9    game to only one, or to a limited number, of broadcasters.  *See, e.g.*, *Pittsburgh Athletic Co. v. KQV

10   Broad. Co.*, 24 F. Supp. 490, 492–93 (W.D. Pa. 1938) (holding that Pittsburgh Pirates had a "property

11   right" to "sell[] exclusive broadcasting rights"); *Twentieth Century Sporting Club, Inc. v. Transradio

12   Press Serv., Inc.*, 165 Misc. 71, 73 (N.Y. Sup. Ct. 1937).  The caselaw over the past 75 years has

13   developed uniformly, and it has long been settled that the producer of the event owns the broadcast

14   rights.  *See, e.g.*, *SW. Broad. Co. v. Oil Ctr. Broad. Co*., 210 S.W.2d 230, 232 (Tex. Civ. App. 1947)

15   ("The right [of the producer] to broadcast a description of the action of an athletic contest is a valuable

16   right.  It has and should be protected by injunction."); *Okla. Sports Props., Inc. v. Indep. Sch. Dist. No.

17   11 of Tulsa Cnty., Okla.*, 957 P.2d 137, 139 (Okla. Civ. App. 1998); *Post Newsweek Stations-Conn.,

18   Inc. v. Travelers Ins. Co.*, 510 F. Supp. 81, 85–86 (D. Conn. 1981).  The fundamental precept of

19   ownership rights reflected in these cases forms the legal foundation for the sports broadcasting

20   industry.

21        Consistent with this precedent vesting rights to license a broadcast exclusively in the producer

22   of an event, numerous cases hold that participants have no publicity rights in the broadcast.  *See, e.g.*,

23   *NFL v. Alley, Inc.*, 624 F. Supp. 6, 10 (S.D. Fla. 1983); *Gionfriddo v. Major League Baseball*, 114 Cal.

24   Rptr. 2d 307, 313–19 (Cal. Ct. App. 2001); *Dora v. Frontline Video, Inc.*, 18 Cal. Rptr. 2d 790, 792

25   (Cal. Ct. App. 1993); *Gautier v. Pro-Football, Inc.*, 107 N.E.2d 485, 488–89 (N.Y. 1952); *Baltimore

26   Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 671–73 (7th Cir. 1986) (holding

27

28

publicity rights preempted by Copyright Act, and not reaching state law issue).  That is true in cases involving sporting events for the additional reason that the broadcasts are matters of public interest. Individuals have no publicity rights in broadcasts of a "public affair[]" or matter of "public interest"— which are not limited to "topics that might be covered on public television or public radio" but rather have been broadly construed to encompass "subjects that do not relate to politics or public policy, and may not even be important, but are of interest" to the public.  *Dora*, 18 Cal. Rptr. 2d at 794–95 (finding that even if a surfer was unaware that video of him was being used in a surfing documentary, the public affairs standard defeated his publicity right claim because "surfing is of more than passing interest to some" and "has also had a significant influence on the popular culture").  That standard is clearly met here, as Plaintiffs themselves acknowledge.  *See, e.g.*, HC ¶¶ 12–13, 16; OC ¶¶ 12–13, 16.  Simply put, Plaintiffs cannot have been "injured by a purported conspiracy to deny them the ability to sell non-existent rights."  *Marshall*, 111 F. Supp. 3d at 835.

This Court's summary judgment decision in *O'Bannon* does not justify a different outcome. There, the Court concluded that any First Amendment rights of broadcasters would not override any rights of publicity of student-athletes—an observation that did not disturb the general rule that only producers of an event have the right to license it.  *O'Bannon*, 37 F. Supp. 3d at 1140–45.  It then permitted the plaintiffs' claims to proceed because they might have a right of publicity under Minnesota law "to recover for the unauthorized use of their names and images in at least certain kinds of broadcast footage," based on a decision on a preliminary motion for judgment on the pleadings by the court in *Dryer v. NFL*, 689 F. Supp. 2d 1113, 1123 (D. Minn. 2010).[4]  *O'Bannon*, 37 F. Supp. 3d at 1145.  Subsequent to this Court's decision in *O'Bannon*, however, the *Dryer* court clarified that the NFL's use of game video did not violate the publicity rights of the players under Minnesota law or under the laws of any of the other states at issue (New York, New Jersey, California, or Texas).  *See*

---

[4] On appeal, the Ninth Circuit chose not to address the issue of publicity rights in game broadcasts, instead basing its holding on a separate line of Ninth Circuit precedent establishing publicity rights in video games.  *See* 802 F.3d at 1067.

1   *Dryer v. NFL*, 55 F. Supp. 3d 1181, 1195–99 (D. Minn. 2014). In reaching this explicit conclusion,

2   the *Dryer* court invoked the same principles applied in the cases discussed above. *See id.* Defendants

3   know of no court decision or statute that supports the existence of a right of publicity in a game

4   broadcast.[5]

5   This Court also cited *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977), in

6   *O'Bannon*, but it does not support the claims that Plaintiffs seek to assert here on behalf of the Sub-

7   Class. The Supreme Court's decision in *Zacchini* held there was no First Amendment right to

8   broadcast an entire game or performance, but that "does not mean that it correspondingly establishes

9   a right to publicity by the athletic participants when entire games are broadcast." *Marshall*, 111 F.

10  Supp. 3d at 828. Instead, the decision in *Zacchini* is fully consistent with the long line of cases

11  described above holding that the producer of an event controls the broadcast rights for the event. As

12  the *Marshall* court noted, Mr. Zacchini—the "human cannonball"—"was not only a performer, he was

13  also the producer of his one-man show." *Id.* at 828–29 (citing 433 U.S. at 576). He held the exclusive

14  right to broadcast the performance as its *producer*, not as a participant. *Zacchini* did not go further

15  and "establish[] a right to publicity by the athletic participants when entire games are broadcast."

16  *Marshall*, 111 F. Supp. 3d at 828.

17  In short, every court decision that has squarely addressed the issue has held that broadcasts of

18  sporting events do not implicate publicity rights or require releases of publicity rights from the

19  participants. As the Sixth Circuit observed in *Marshall*, there is no support for the "assertion that

20  college football and basketball players have a property interest in their names and images as they

21  appear in television broadcasts of games in which the players are participants." *Marshall v. ESPN*,

22

23  _____

24  [5] In fact, the final NCAA Board of Governors report Plaintiffs cite in the complaints as support for
    their claims, HC ¶ 214; OC ¶ 195, notes "[c]ourts have repeatedly held that neither broadcasting a
    sporting contest, nor advertising or promoting those broadcasts by using the participants' names or

25  images, violates the publicity rights of the participants." Ex. 1 at 10. The report also notes that

26  "student-athletes, like other participants in sporting contests, generally have no legal right to prohibit
    the broadcast or sale of images that are captured while they are playing their sports, or in many other
    situations associated with their athletics participation." *Id.*

27

28

1   668 Fed. App'x 155, 156 (6th Cir. 2016).  In the complete absence of any legal basis for assertion of

2   publicity rights in broadcasts, the claims of the Sub-Class should be dismissed, with prejudice.

### 2.   Plaintiffs Have Also Failed To Allege A Cognizable Harm To Competition In A Group Licensing Market.

5   Even if student-athletes had rights of publicity in connection with the use of their NILs in game

6   telecasts, the Group Licensing Damages Sub-Class claim should be dismissed because it is devoid of

7   essential allegations that must be made to state an antitrust claim but cannot plausibly be alleged here.

8   Specifically, to survive the pleading stage, a plaintiff must allege that the restraint in question produces

9   "significant anticompetitive effects within a relevant market."  *Tanaka v. Univ. of S. Cal.*, 252 F.3d

10   1059, 1064 (9th Cir. 2001) (dismissing complaint for failure to so allege).

11   The complaints here contain neither allegations of the existence of a market featuring buyers

12   and sellers of group licenses for student-athlete rights of publicity in television broadcasts of games,

13   nor allegations of how the challenged NCAA rules purportedly hinder competition in such a market.

14   The complaint instead focuses on the "nationwide market for the labor of NCAA Division I college

15   athletes" wherein all Division I student-athletes compete for individual roster spots supplied by NCAA

16   Division I member institutions.  HC ¶ 81; OC ¶ 63.  Those allegations reveal nothing about a group

17   licensing market, or how competition among unidentified buyers and sellers in that purported market

18   has been significantly harmed.  *See Twombly*, 550 U.S. at 570 (requiring dismissal of a complaint that

19   fails to "state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

20   ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

21   That pleading failure is not just a technical omission:  This Court's ruling in *O'Bannon* makes

22   such allegations implausible.  As noted in the prior section, this is the second time the same group

23   licensing claim for a share of game telecast revenue has been presented to this Court.  After a full trial

24   on the same rules challenged here, this Court concluded not only that the student-athletes had "failed

25   to show that the challenged rules hinder competition among any potential buyers or sellers of group

26   licenses," but that "the evidence in the record strongly suggests that . . . teams of student-athletes would

never actually compete against each other as sellers of group licenses, even if the challenged NCAA rules no longer existed." *O'Bannon v. NCAA*, 7 F. Supp. 3d 955, 995 (N.D. Cal. 2014). Because "[a]llowing student-athletes to seek compensation for group licenses would not increase the number of television networks in the market or otherwise enhance competition among them," the Court concluded that Plaintiffs "failed to show that the challenged NCAA rules harm competition." *Id.* at 996–97. Plaintiffs here allege nothing supporting a different outcome.

Nor could they, so dismissal with prejudice is warranted. *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). Plaintiffs do not write on a clean slate but against the backdrop of this precise claim having previously failed before this Court. The Ninth Circuit has advised that courts must measure a complaint's factual allegations not in isolation but in light of previous judicial decisions. *See In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1106–08 (9th Cir. 2013) (factual allegations failed to satisfy *Iqbal*'s plausibility requirement in light of prior cases on the same subject matter). Thus, any new allegations Plaintiffs might assert would have to be read in the context of this Court's prior analysis in *O'Bannon*, which concluded that the student-athlete plaintiffs there did "not identif[y] any harm to competition in [the group licensing] submarket." 7 F. Supp. 3d at 994. Given this Court's prior experience in *O'Bannon*, the plausibility bar for the group licensing claim is one Plaintiffs cannot meet, and the group licensing claim should be dismissed for that reason as well.

### C. The Court Should Dismiss *Oliver* Because The Named Plaintiff Cannot Obtain The Relief He Requests.

Plaintiff Tymir Oliver was a full scholarship student-athlete who played football at the University of Illinois from 2016 to 2019. OC ¶¶ 27, 29–30. As a former student-athlete, he has no standing to seek an injunction changing NCAA rules. And as a member of the *Alston* Division I FBS Football Settlement Class, he has released his claims for damages. Because each claim he asserts is flawed, his entire action should be dismissed with prejudice. *Perron v. Hewlett-Packard Co.*, No. 10-CV-00695-LHK, 2011 WL 1748431, at *5 (N.D. Cal. May 6, 2011) (because pre-certification putative class action consists only of the plaintiff's individual claims, dismissal of complaint with prejudice

pursuant to Fed. R. Civ. P. 12(b)(6) was required where prior class action settlement extinguished plaintiff's claims); *Lu v. AT&T Servs., Inc.*, No. C 10-05954 SBA, 2011 WL 2470268, at *1 (N.D. Cal. June 21, 2011) (former employee's class action claims against employer dismissed under Rule 12(b)(6) where employee had previously released claims in his severance agreement); *Skilstaf, Inc. v. CVS Caremark Corp.*, No. C 09-02514 SI, 2010 WL 199717, at *5 (N.D. Cal. Jan. 13, 2010) (dismissing named plaintiff's claims due to covenant in prior settlement agreement not to sue).

### 1.   Oliver Lacks Standing To Seek Injunctive Relief.

Because Oliver is a *former* student-athlete, OC ¶ 27, he lacks standing to obtain an injunction against enforcement of the challenged NIL rules, OC ¶ 22.  Oliver is no longer bound by those rules. Nor is there any prospect that Oliver would become a Division I student-athlete again in the future. Because Oliver cannot benefit from the injunctive relief he seeks, he has no standing to assert a claim for injunctive relief, and the claim must be dismissed.  *See B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (former student lacked standing to seek injunctive relief because no risk of harm in the future); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364–65 (2011) (plaintiffs no longer working for defendant had no claim for injunctive relief concerning employment practices); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) (former employee's injunctive relief claim was moot for inability to show he could reasonably expect to benefit from the injunctive relief sought).

### 2.   Oliver Released His Damages Claims In The *Alston* Settlement.

Oliver's requests for damages on behalf of a Social Media Damages Sub-Class and a Group Licensing Damages Sub-Class, OC ¶ 23, are barred by the release he signed in connection with the *Alston* settlement.  There is no question that Oliver was a member of the Division I FBS Football Class as defined in the *Alston* settlement agreement.  That Class included "[a]ll current and former NCAA Division I Football Bowl Subdivision ('FBS') football student-athletes who, at any time from March 5, 2010 through the date of Preliminary Approval of this Settlement [March 21, 2017], received from an NCAA member institution for at least one academic term . . . a Full Athletics Grant-In-Aid." *Alston*

Order & Final Judgment, 14-md-2541-CW, ECF No. 746 at 2; *accord Alston* Settlement Agreement, 14-md-2541, ECF No. 560-1 ¶ A.1(d). Oliver is a former "Division I student-athlete who competed for the University of Illinois men's football team" beginning in 2016. OC ¶¶ 27, 29. And he received a full athletic scholarship from the University of Illinois. *Id.* ¶ 29.

In exchange for settlement payments, Oliver and the other Division I FBS Football Class members released the following claims:

> [A]ny and all past, present and *future claims*, demands, rights, actions, suits, or causes of action, *for monetary damages of any kind* (including but not limited to actual damages, statutory damages, and exemplary or punitive damages), whether class, individual or otherwise in nature, known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or hereafter can, shall or may have, *arising out of or relating in any way to any of the legal, factual, or other allegations made in Plaintiffs' Actions, or any legal theories that could have been raised on the allegations in Plaintiffs' Actions*. The Released Claims do not include claims solely for prospective injunctive relief and certain other claims expressly excluded from the release as set forth in the Settlement Agreement.

Order & Final Judgment at 11–12 (emphases added) (footnote omitted)[6]; *id.* at 12 (permanently enjoining class members from prosecuting any Released Claim and noting *res judicata* effect of the release); *see also Alston* Settlement Agreement ¶ A.1(x) (defining "Released Claims" to include "any and all past, present and future claims, demands, rights, actions, suits, or causes of action, for money damages of any kind . . . arising out of or relating in any way to any act or omission of the Releasees

---

[6] Paragraph 12 enumerates four categories of claims not subject to the release, including: (1) claims for prospective injunctive relief, including the claims that proceeded to trial in *Alston*; (2) claims then-currently asserted in specified pending actions, including *O'Bannon*; (3) personal injury claims, including concussion-related claims against the NCAA or any conference or member school; and (4) any claims to enforce the terms of the agreement. *Alston* Settlement Agreement ¶ 12. The reference to *O'Bannon* in the Settlement Agreement's carveout of pending actions preserves none of Oliver's claims here for two reasons. First, Oliver was not a member of the *O'Bannon* class, which was limited to then-"current and former student-athletes" whose claims were finally adjudicated when the mandate issued on December 28, 2015, Case No. 09-cv-3329, Dkt. 463, before Oliver started in 2016, OC ¶ 29. Second, the carveout was limited to the claims on appeal in Case No. 16-15803, the dispute regarding Plaintiffs' attorneys' fee award.

1    (or any of them) that is alleged in Plaintiffs' Actions or could have been alleged in Plaintiffs' Actions").

2    Oliver's damages claims here fall within this release:  They are claims "for monetary damages" that

3    "aris[e] out of" the same universe of allegedly anticompetitive NCAA rules regulating student-

4    athletes' compensation that were the subject of "Plaintiffs' Actions" in *Alston*.

5          And Oliver's claims in this action and in *Alston* are based on an "identical factual predicate,"

6    as required by Ninth Circuit precedent.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748

7    (9th Cir. 2006); *Howard v. Am. Online, Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (district court properly

8    dismissed RICO claims where alleged pattern of racketeering activity was same activity giving rise to

9    previously settled claims).  The decision in *Reyn*'s is instructive.  The class action plaintiffs in that

10   case (a group of merchants) claimed that the defendant banks had engaged in a price-fixing conspiracy

11   to increase the fees they collect on credit-card transactions.  442 F.3d at 744–45.  In response, the

12   defendants argued those claims were released in an earlier class action settlement involving a variety

13   of antitrust claims in the debit-card market involving conduct that allegedly "raised the . . . fees in both

14   the debit-card and credit-card markets."  *Id.* at 748.  The Ninth Circuit concluded the claims had been

15   released, because the class action settlement "was predicated on" the same theory of harm.  *Id.* at 749.

16   While the *Reyn's* plaintiffs articulated "a different theory of anti-competitive conduct, the price-fixing

17   predicate . . . and the underlying injury are identical."  *Id.*

18         This case presents an even more straightforward case for preclusion.  Oliver advances the exact

19   same theory of injury and harm as in *Alston*:  that NCAA rules limited the compensation he could

20   receive.  *Compare* OC ¶ 4 (challenging the NCAA's regulation of "the compensation and benefits that

21   athletes may receive while participating in college sports"), *with Alston* Findings of Fact &

22   Conclusions of Law, No. 14-md-2541 CW, ECF No. 1162 at 1 (describing challenge to the

23   "interconnected set of NCAA rules that limit the compensation [plaintiffs] may receive in exchange

24   for their athletic services"); *Alston*, 958 F.3d at 1247 (plaintiffs in *Alston* "sought to dismantle the

25   NCAA's entire compensation framework").  Even if Oliver were understood to articulate "a different

26   theory of anti-competitive conduct," or a challenge to a narrower set of rules, that would not take his

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

claims outside the scope of the release. *Reyn's*, 442 F.3d at 749; *Nichols v. Citibank, N.A.*, 715 Fed. App'x 681, 682 (9th Cir. 2018) (class action settlement covering "a broader range of alleged misconduct" relating to overtime wage claims barred subsequent suit narrowly focusing on a specific method of miscalculating wages).[7]

---

[7] As noted in the Order and Final Judgment (*see supra* at 14), Oliver's claims are also precluded by operation of *res judicata*, which applies here because there exists (1) an identity of claims, (2) final judgment on the merits, and (3) identity between parties. *Amalfitano v. Google Inc.*, No. 14-cv-00673-BLF, 2015 WL 456646, at *2–3 (N.D. Cal. Feb. 2, 2015) (granting 12(b)(6) motion to dismiss complaint because *res judicata* barred plaintiff from re-litigating claims resolved in a prior class action in which he was a member).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

The Court should dismiss the *House* and *Oliver* complaints with prejudice.

DATED: September 11, 2020                                Respectfully submitted.

**WILKINSON WALSH LLP**

By: ___*/s/ Beth A. Wilkinson*___

Beth A. Wilkinson (*pro hac vice*)
Rakesh N. Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonwalsh.com
rkilaru@wilkinsonwalsh.com
tmatthewsjohnson@wilkinsonwalsh.com
kgostin@wilkinsonwalsh.com

Rahul Hari (SBN 313528)
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Los Angeles, CA 90025
Telephone: (424) 291-9655
Facsimile: (202) 847-4005
rhari@wilkinsonwalsh.com

Attorneys for Defendant
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION

**PROSKAUER ROSE LLP**

By: ___*/s/ Scott P. Cooper*___

Bart H. Williams (SBN 134009)
Scott P. Cooper (SBN 96905)
Kyle A. Casazza (SBN 254061)
Shawn S. Ledingham, Jr. (SBN 275268)
Jennifer L. Jones (SBN 284624)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
bwilliams@proskauer.com
scooper@proskauer.com
kcasazza@proskauer.com
sledingham@proskauer.com
jljones@proskauer.com

Attorneys for Defendant
PAC-12 CONFERENCE

1

**MAYER BROWN LLP**                              **ROBINSON BRADSHAW & HINSON, P.A.**

2

By: _____ */s/ Britt M. Miller* _____          By: _____ */s/ Robert W. Fuller* _____

3

Britt M. Miller (*pro hac vice*)                 Robert W. Fuller, III (*pro hac vice*)
Matthew D. Provance (*pro hac vice*)             Lawrence C. Moore, III (*pro hac vice*)

4

71 South Wacker Drive                            Pearlyn G. Houck (*pro hac vice*)
Chicago, IL 60606                                Amanda P. Nitto (*pro hac vice*)

5

Telephone: (312) 782-0600                        101 N. Tryon St., Suite 1900
Facsimile: (312) 701-7711                        Charlotte, NC 28246

6

bmiller@mayerbrown.com                           Telephone: (704) 377-2536
mprovance@mayerbrown.com                         Facsimile: (704) 378-4000

7

                                                 rfuller@robinsonbradshaw.com

8

Christopher J. Kelly (SBN 276312)                lmoore@robinsonbradshaw.com
Two Palo Alto Square, Suite 300                  phouck@robinsonbradshaw.com

9

3000 El Camino Real                              apickens@robinsonbradshaw.com
Palo Alto, CA 94306

10

Telephone: (650) 331-2000                        Mark J. Seifert (SBN 217054)
Facsimile: (650) 331-2060                         Seifert Law Firm

11

cjkelly@mayerbrown.com                           50 California Street, Suite 1500
                                                 San Francisco, CA 94111

12

Attorneys for Defendant                          Telephone: (415) 999-0901
THE BIG TEN CONFERENCE, INC.                     Facsimile: (415) 901-1123

13

                                                 mseifert@seifertfirm.com

14

15

                                                 Attorneys for Defendant
                                                 SOUTHEASTERN CONFERENCE

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**POLSINELLI PC**

2

By: _____*/s/ Leane K. Capps*_____

3

Leane K. Capps (*pro hac vice*)
Caitlin J. Morgan (*pro hac vice*)

4

D. Rockwell Bower (*pro hac vice*)
2950 N. Harwood Street, Suite 2100

5

Dallas, TX 75201
Telephone: (214) 397-0030

6

lcapps@polsinelli.com
cmorgan@polsinelli.com

7

rbower@polsinelli.com

8

Amy D. Fitts (*pro hac vice*)
120 W. 12th Street

9

Kansas City, MO 64105
Telephone: (816) 218-1255

10

afitts@polsinelli.com

11

Wesley D. Hurst (SBN 127564)
2049 Century Park East, Suite 2300

12

Los Angeles, CA 90067
Telephone: (310) 556-1801

13

whurst@polsinelli.com

14

Attorneys for Defendant
THE BIG 12 CONFERENCE, INC.

15

**FOX ROTHSCHILD LLP**

By: _____*/s/ D. Erik Albright*_____

D. Erik Albright (*pro hac vice*)
Gregory G. Holland (*pro hac vice*)
230 North Elm Street, Suite 1200
Greensboro, NC 27401
Telephone: (336) 378-5368
Facsimile: (336) 378-5400
ealbright@foxrothschild.com
gholland@foxrothschild.com

Jonathan P. Heyl (*pro hac vice*)
101 N. Tryon Street, Suite 1300
Charlotte, NC 28246
Telephone: (704) 384-2625
Facsimile: (704) 384-2800
jheyl@foxrothschild.com

Alexander Hernaez (SBN 201441)
345 California Street, Suite 2200
San Francisco, CA 94104-2670
Telephone: (415) 364-5540
Facsimile: (415) 391-4436
ahernaez@foxrothschild.com

Attorneys for Defendant
ATLANTIC COAST CONFERENCE

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## E-FILING ATTESTATION

2

3        I, Beth A. Wilkinson, am the ECF User whose ID and password are being used to file this

4  document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories

5  identified above has concurred in this filing.

6

7                                                     */s/ Beth A. Wilkinson*

8                                                    BETH A. WILKINSON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28