*Counsel for Plaintiffs and Defendants*
*Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GRANT HOUSE, *et al.*, | No. 4:20-cv-03919 CW |
| Plaintiffs, | |
| v. | <u>CLASS ACTION</u> |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, | **JOINT RULE 26(f) REPORT AND INITIAL CASE MANAGEMENT CONFERENCE STATEMENT** |
| Defendants. | |

| | |
|---|---|
| TYMIR OLIVER, *et al.*, | No. 4:20-cv-04527 CW |
| Plaintiffs, | |
| v. | <u>CLASS ACTION</u> |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the Standing Order for all Judges of the Northern District of California, Counsel for Plaintiffs Grant House, Sedona Prince, and Tymir Oliver ("Plaintiffs") and Defendants National Collegiate Athletic Association, Pac-12 Conference, The Big Ten Conference, Inc., The Big 12 Conference, Inc., Southeastern Conference, and Atlantic Coast Conference ("Defendants," and collectively with Plaintiffs, "the Parties") in the above-referenced actions submit this Joint Rule 26(f) Report and Initial Case Management Conference Statement in advance of the initial Case Management Conference scheduled for November 18, 2020. The Parties met and conferred as required by Rule 26(f) on October 27, 2020.

## I.      JURISDICTION AND SERVICE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1367. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 15 U.S.C. §§ 15, 22. Defendants do not dispute personal jurisdiction. All Defendants in *House* have been served, and Defendants in *Oliver* waived service.

## II.      FACTS

### Plaintiffs' Statement of Facts

Plaintiffs bring these actions both individually and on behalf of damages and injunctive relief classes, alleging that the Defendants have unlawfully conspired to fix the terms NCAA schools offer to Division I student-athletes, which prohibit all student-athletes from receiving anything of value for the commercial use of their names, images, and likenesses ("NILs"). By collectively agreeing to prohibit student-athletes from receiving any compensation whatsoever in connection with the commercial use of their NILs, and further agreeing to boycott any school that offers its athletes NIL-related compensation or the opportunity to receive NIL compensation from third parties, Defendants have artificially restrained competition among NCAA schools solely to protect their own financial interests and to enhance the revenues generated through the use of student-athlete NILs for themselves and their for-profit business partners.

1    Defendants' conduct is blatantly anticompetitive and exclusionary, foreclosing schools from

2    competing freely for the best college recruits and depriving student-athletes of the ability to

3    capitalize on their NIL rights at the very time those rights are most valuable, value that will quickly

4    diminish after graduation. Moreover, the facts alleged show that that are no procompetitive

5    justifications for Defendants' restraints, and to the extent they serve any procompetitive objective

6    (they do not), there are less restrictive alternatives. In Defendants' Statement of Facts, *infra*, they

7    repeat the argument from their motion to dismiss that this case is merely a repeat of prior cases. But

8    as explained in Plaintiffs' opposition brief, this argument is wrong for various reasons, including but

9    not limited to because there have been numerous material factual developments since *O'Bannon* and

10   *Alston*. *See House*, ECF No. 102 at 3-12. It is ironic that Defendants are making this argument when

11   recent statements by Defendants themselves in official reports and letters to Congress admit that the

12   current NIL rules are unfair, unnecessary, and should be changed, and many of college sports' most

13   powerful coaches and athletic directors have said the same thing. The facts Plaintiffs allege further

14   indicate that consumer demand for college sports would not suffer if Defendants' rules were

15   changed, and in fact, consumers would become more interested in college sports if these NIL

16   restraints, viewed as exploitative by so many Americans, were scrapped. Based on these allegations,

17   Plaintiffs assert causes of action for violations of the federal antitrust laws and under state common

18   law for unjust enrichment.

19   **Defendants' Statement of Facts**

20   The Court should be familiar with the facts and claims in this case because it has confronted

21   them several times before.  Plaintiffs describe their lawsuit as a challenge to the NCAA's compensation

22   rules that "prohibit all student-athletes from receiving anything of value for the commercial use of their

23   names, images, and likenesses ("NILs")."  *See supra* at 1.  That is the exact same claim that this Court

24   and the Ninth Circuit resolved in *O'Bannon*.  *See* Defs.' Reply ISO Mot. to Dismiss at 1, *House* ECF

25   No. 103; *Oliver* ECF No. 41.  And it is subsumed by the subsequent lawsuit, litigated by Plaintiffs'

26   attorneys here, "to dismantle the NCAA's entire compensation framework."  *In re NCAA Athletic*

27   *Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239, 1247 (9th Cir. 2020) ("*Alston*").  Indeed, one of the

28

named Plaintiffs here, Tymir Oliver, was a member of the *Alston* classes.  As Defendants have explained in their motions to dismiss, Plaintiffs have failed to identify any plausible basis for allowing them to recycle that claim yet again.

The rules Plaintiffs challenge enhance, rather than restrict, competition. Both this Court and the Ninth Circuit have determined that the NCAA's rules are procompetitive because they preserve amateurism and thus enhance consumer demand.  For that reason, and others that can be further explained if this case proceeds, the Court should reject Plaintiffs' third attempt to invalidate NCAA rules regulating the compensation student-athletes can receive.

### III.    LEGAL ISSUES

This case raises the following legal issues, among others:

1.  Whether the proposed Class and Sub-Classes identified in *House* and *Oliver* should be certified pursuant to Fed. R. Civ. P. 23;

2.  Whether or not Defendants' conduct is (a) unlawful under the Sherman Act; and/or (b) gives rise to claims for unjust enrichment;

3.  Whether or not Plaintiffs and other members of the respective proposed Class/Sub-Classes were injured by Defendants' alleged unlawful conduct and, if so, the appropriate measure of damages; and

4.  Whether or not Plaintiffs and other members of the respective proposed Class and Sub-Classes are entitled to, among other things, declaratory and/or injunctive relief, and if so, the nature and extent of such declaratory and/or injunctive relief.

### IV.    MOTIONS

On September 11, 2020, Defendants filed a motion to dismiss Plaintiffs' complaints. *See* ECF Nos. 101 (*House*) and 35 (*Oliver*). This motion is fully briefed and set for hearing on November 18, 2020. The Parties currently anticipate the following future motions: a motion for class certification, motions for summary judgment and/or summary adjudication, and possible motions regarding the scope of discovery.

## V.    AMENDMENT OF PLEADINGS

Consolidation of the substantively identical *House* and *Oliver* complaints is likely appropriate subject to the Court's ruling on Defendants' motion to dismiss, and Plaintiffs are prepared to timely file a consolidated complaint following the Court's ruling on such motion if appropriate. Plaintiffs do not presently anticipate any further substantive amendments to the pleadings but reserve all rights in this regard depending on the Court's orders and/or if additional information comes to light.

## VI.    EVIDENCE PRESERVATION

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and agree to take reasonable and necessary steps to preserve evidence relevant to the issues reasonably evident in this action.

## VII.    DISCLOSURES

Pursuant to a stipulation, ECF Nos. 114 (*House*) and 77 (*Oliver*), the Parties anticipate exchanging initial disclosures on November 13, 2020.

## VIII.   DISCOVERY

The Parties met and conferred regarding case management and discovery issues on October 27, 2020, pursuant to Fed. R. Civ. P. 26(f). The Parties plan to enter into a modified version of the Northern District of California Model Stipulated Order Re: Discovery of Electronically Stored Information and further intend to enter a stipulated protective order pursuant to Fed. R. Civ. P. 26(c).

**Plaintiffs' Statement**

Plaintiffs anticipate seeking production of any documents and information relevant to the claims and defenses in this action, including but not limited to documents and information relating to: the appropriate definitions of relevant antitrust markets, Defendants' market power, the effects of Defendants' conduct on the relevant markets, the application and enforcement of Defendants' restraints, Defendants' purported procompetitive justifications for their restraints, the availability of any less restrictive alternatives, and the availability and measure of damages and other relief to Plaintiffs and members of the Class. Fact and expert discovery is also required with respect to class certification. In addition to propounding written discovery, Plaintiffs expect the Parties to prepare for

1    and conduct depositions, including depositions of the named defendants and named plaintiffs, current

2    and former employees of Defendants, and other third parties. Plaintiffs are likely to notice and

3    conduct depositions pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiffs expect that numerous records will

4    be produced by third parties in connection with this action.

5           ***Fact discovery should commence immediately:***

6           Plaintiffs believe that fact discovery should commence immediately. Under the Federal

7    Rules, the only event required to trigger the commencement of discovery is a Rule 26(f) conference

8    between the parties. That occurred on October 27, 2020. Defendants take the position that discovery

9    should be stayed indefinitely until the Court rules on Defendants' motion to dismiss. Plaintiffs

10   respectfully disagree for the following reasons.

11          *First*, because the Parties already conducted their Rule 26(f) conference, discovery is now

12   open, and any request to stay discovery should be made, if at all, on a noticed motion. Requesting

13   that discovery be stayed in a Joint Rule 26(f) Report is not the proper procedure for seeking relief

14   from discovery obligations.

15          *Second*, staying discovery pending the outcome of a motion to dismiss is disfavored by courts

16   and an exception to the normal procedures, reserved for circumstances that are not present here.

17   "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would

18   stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at

19   odds with the need for expeditious resolution of litigation." *Skellerup Indus. Ltd. V. City of L.A.*, 163

20   F.R.D. 598, 600-01 (C.D. Cal. 1995). As courts have observed, "such motions are disfavored

21   because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the

22   future." *White v. E-Loan, Inc.*, 2006 WL 2850041, at *2 (N.D. Cal. Oct. 5, 2006); *see also In re

23   Apple In-App Purchase Litig.*, 2012 U.S. Dist. LEXIS 18970, at *3 (N. D. Cal. Feb. 15, 2012)

24   (same); *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, *6 (E.D. Cal. Feb. 7, 2011)

25   (courts "look unfavorably" upon blanket stays of discovery pending a motion to dismiss).

26   Accordingly, the burden is on Defendants to make a "strong showing" of "good cause" justifying a

27   departure from the liberal discovery principles reflected in the Federal Rules. *See Blankenship v.*

28

1    *Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (those opposing discovery carry a heavy burden of

2    showing why discovery should be denied). To show "good cause," Defendants must show more than

3    an apparently meritorious 12(b)(6) claim: "A district court may … stay discovery when it is

4    *convinced* that the plaintiff will be unable to state a claim for relief." *Wood v. McEwen*, 644 F.2d

5    797, 801 (9th Cir. 1981) (emphasis added).

6         As Defendants point out, some courts have applied a two-prong test to determine whether

7    discovery should be stayed pending resolution of a dispositive motion. Equally important, however,

8    is the manner in which this test has been applied by those courts: "In applying this two-factor test,

9    the court must take a 'preliminary peek' at the merits of the pending dispositive motion to assess

10   whether a stay is warranted." *In re Nexus 6p Prods. Liability Litig.*, 2017 WL 3581188, at *1 (N.D.

11   Cal. Aug. 18, 2017).[1] Plaintiffs respectfully submit that a "preliminary peek" into the merits of

12   Defendants' pending motion to dismiss reveals that the likelihood of dismissal is far from strong—as

13   must be shown to support a blanket discovery stay. Defendants' motion asks the Court to dismiss

14   Plaintiffs' lawsuits based on arguments similar to those rejected in the *O'Bannon* and *Alston* cases

15   (such as to *stare decisis*, *see House*, ECF No. 102 at 3-12), and to resolve inherently factual issues

16   related to the elements of Plaintiffs' claims, including the definition of the "relevant market" and

17   other matters not typically resolved on summary judgment, let alone on a Rule 12 motion.

18        *Third*, staying discovery would prevent the productive advancement of this case while the

19   Parties wait for a decision on the motion to dismiss. Without discovery, the Parties cannot effectively

20   evaluate whether an early settlement is warranted, and thus a stay could needlessly lengthen these

21   proceedings.[2] Furthermore, "discovery would not be wasted even if the Motion to Dismiss is granted

22

23        [1] Notably, in the cases Defendants cite, a stay of discovery was granted only after the court had
     already granted a motion to dismiss or otherwise found the plaintiff's complaint to be obviously
24   deficient. *See In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308 (N.D. Cal. 2007) (granting limited
     stay pending amendment of complaint after the court had already granted motion to dismiss
25   plaintiffs' claims); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *3 (N.D. Cal.
     Apr. 10, 2020) (granting stay based on court's conclusion that "Facebook's motion to dismiss
26   presents strong arguments, which could prove difficult for Plaintiffs to overcome, even considering
     that leave to amend is freely given"); *Braun v. Yahoo*, 2018 WL 10809622 (N.D. Cal. Mar. 28, 2018)
27   (granting stay after the court had already granted motion to dismiss with leave to amend).

28        [2] Defendants suggest that because the hearing on the motion to dismiss is scheduled for
     November 18, 2020, a stay of discovery would be inconsequential. But Defendants are not asking for

1    since [Plaintiff] could utilize the discovery responses to prepare an amended pleading." *San*

2    *Francisco Tech. v. Kraco Enterprises LLC*, 2011 WL 2193397, at *3 (N.D. Cal. June 6, 2011). There

3    is no basis to delay discovery.

4           ***The Court should set a discovery schedule now and all discovery should proceed***

5    ***simultaneously without bifurcation:***

6           Contrary to Defendants' argument, Plaintiffs respectfully submit that the Court should set a

7    discovery schedule now so the Parties can work toward timely resolution of this case. For all the

8    reasons explained above, and consistent with Federal Rule of Civil Procedure 1's goal of ensuring

9    "the just, speedy, and inexpensive determination" of this case, setting a schedule and commencement

10   of discovery without delay is appropriate.

11          Plaintiffs also submit that the Court should similarly reject Defendants' suggestion that

12   bifurcated discovery may be warranted, and should instead allow all discovery to proceed

13   simultaneously. This case is no different than the countless other class actions in which merits and

14   class discovery proceed concurrently.

15          Among the matters the court may consider in deciding whether to bifurcate are: (1) the

16   overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of

17   Civil Procedure 23's requirement that certification be decided at "an early practicable time," (3)

18   judicial economy, and (4) any prejudice likely to flow from the grant or denial of a stay. *See True*

19   *Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015) (the

20   overlap between individual and class discovery weighs against bifurcation); *see also Gray v. First*

21   *Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal. 1990) ("An order staying discovery pending class

22   certification would be unworkable, since plaintiffs must be able to develop facts in support of their

23   class certification motion. An order restricting discovery to class issues would be impracticable

---

a stay until the hearing. Rather, they want a stay until the motions are *resolved*. If a stay is imposed, this case will be at a complete standstill until a ruling is issued, needlessly protracting this litigation, which began with the initial *House* Complaint that was filed on June 15, 2020, five months ago. Plaintiffs are ready to move forward with discovery. *See* Plaintiffs' scheduling proposal at Section VII, *infra*.

1   because of the closely linked issues, and inefficient because it would be certain to require ongoing

2   supervision of discovery.").

3        Defendants' discussion of the (potential) appropriateness of bifurcation falls far short of

4   meeting their heavy burden of demonstrating that bifurcation is warranted. Indeed, their generic

5   speculation about the "viability" of Plaintiffs' class damages claims is unfounded and, in any case, is

6   not an appropriate basis for bifurcation. *See Gray*, 133 F.R.D. at 40 (denying defendants' request for

7   stay of discovery and explaining that argument regarding the unlikelihood of class certification was

8   an improper attempt to "litigate prematurely the sufficiency of the complaint and the appropriateness

9   of class certification"). As the Supreme Court made clear in *Wal-Mart v. Dukes*, district courts must

10  conduct a "rigorous analysis" to ensure that the requirements of Rule 23 have been met and,

11  "[f]requently that 'rigorous analysis will entail some overlaps with the merits of the plaintiff's

12  underlying claim. That cannot be helped. The class determination generally involves considerations

13  that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." 564 U.S.

14  338, 351 (2011). To the extent that *Dukes* requires this Court to make a preliminary inquiry into the

15  merits in deciding whether to certify the putative classes, Plaintiffs must be permitted to conduct

16  merits-based discovery prior to their motion for class certification. Because questions concerning

17  class certification and the underlying merits of the case overlap in this case, Plaintiffs would be

18  unfairly hindered in their ability to make a case for class certification without the opportunity for

19  comprehensive discovery. Indeed, Plaintiffs anticipate that Defendants will likely demand exacting

20  evidence relating to the merits of Plaintiffs' claims at the certification stage—evidence Plaintiffs will

21  be unable to produce if denied access to merits discovery.

22        Because class and merits discovery are not easily or meaningfully definable or severable,

23  bifurcation will not promote judicial economy and would serve only to further complicate this

24  litigation by requiring unnecessary motion practice and frequent intervention by the Court. Courts in

25  this District routinely deny attempts to bifurcate where doing so would result in an inefficient waste

26  of judicial resources. For example, the Court in *Chao v. Aurora Loan Services* denied a motion for

27  phased discovery for this very reason, explaining that the defendant's proposal "would be

28

unworkable because the certification-based evidence and merits-based evidence… is intertwined, and inefficient because bifurcation would require ongoing supervision of discovery, including the resolution of disputes concerning whether discovery is certification-based or merits-based." 2011 U.S. Dist. LEXIS 143356, at *3 (N.D. Cal. Dec. 13, 2011).

Defendants' discussion of the potential appropriateness of bifurcation falls far short of meeting their heavy burden of demonstrating that bifurcation is warranted. Indeed, apart from their generalized assertion that the class- and merits-based evidence in this case will be different, Defendants offer no explanation as to how the Parties or the Court can disentangle class discovery from merits discovery. Defendants' argument is further misplaced given that, at this stage, there is no reason to believe that denial of class certification would terminate this litigation and merits-based discovery would still be of evidentiary value if the cases continue absent certification.

### Defendants' Statement

Defendants believe that the discovery Plaintiffs envision is overbroad and should not commence until this Court has ruled on the motion to dismiss.[3]  The Court has "broad discretion to stay discovery pending the resolution of a potentially dispositive motion, including a motion to dismiss." *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) (citing *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987)).  "[T]he Supreme Court has recognized that staying discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming, and expensive." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007)); *see also id.* (maintaining previously imposed discovery stay pending motion to dismiss "except for [one] specific narrowly-tailored request").

Courts in this District apply a two-pronged test in determining whether a stay is warranted: "First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-cv-

---

[3] Plaintiffs' leading argument against delaying discovery until after resolution of the motion to dismiss is that this issue must be presented through a formal motion.  Because the Northern District's Standing Order requires the parties to address discovery and scheduling in this joint statement, Defendants have raised the issue here.

000363-BLF, 2020 WL 2843369, at *2 (N.D. Cal. Apr. 10, 2020) (internal quotation marks omitted) (granting motion to stay discovery).  "Second, the court must determine whether the pending motion can be decided absent additional discovery."  *Id.* (internal quotation marks omitted).  Both prongs are met here; Defendants have moved to dismiss the entire case as an effort to pursue twice-adjudicated claims, as well as individual claims to which broad-ranging discovery may be "directed."  *Id.*  No factual development is needed to evaluate that motion.

Further, the hearing on the motion is one week away and waiting to commence discovery until this Court issues a decision will not prejudice Plaintiffs.  Their proposed case schedule would run into at least 2023, so deferring the start of this discovery until the Court issues its motion to dismiss decision will not cause meaningful delay.  Instead, waiting will benefit all parties and the Court.  If the Court grants Defendants' motion, there is no need for any party to incur the further burdens of discovery.  Even if outright dismissal of both complaints were not granted, Defendants have moved to dismiss Plaintiffs' Group Licensing Damages Sub-Class claim, dismissal of which would significantly reduce the scope of potential discovery in this case.  And how the Court defines any claim that might go forward will provide useful guidance on the scope of discovery.  *In re Nexus 6p Prods. Liability Litig.*, No. 17-cv-02185-BLF, 2017 WL 3581188, at *2 (N.D. Cal. Aug. 18, 2017) (granting a three-month discovery stay pending motion to dismiss hearing in part because the court "anticipate[d] that it will be able to provide significant guidance to the parties about the scope of the pleadings that will be allowed to go forward at the time of the . . . hearing").

Courts have not hesitated to stay discovery in circumstances similar to those in this case.  *See Braun v. Yahoo*, No. 17-cv-06294-SVK, 2018 WL 10809622, at *4 (N.D. Cal. Mar. 28, 2018) ("In most cases, . . . plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it.") (internal quotations omitted) (citing *Mujica v. Airscan, Inc.*, 771 F.3d 580, 593 (9th Cir. 2014)); *Cellwitch, Inc. v. Tile, Inc.*, No. 4:19-CV-01315, 2019 WL 5394848, at *2 (N.D. Cal. Oct. 22, 2019) (granting motion to stay discovery where motion to dismiss "ha[d] the potential to be dispositive," the party seeking discovery had not demonstrated it would suffer harm from a brief discovery stay, and a stay would conserve judicial resources).

1      For similar reasons, Defendants respectfully submit that there is no need for the Court to set a

2      discovery schedule now.  To the extent the Court allows any claims to go forward, knowing the

3      scope of those claims would allow the parties to have a more informed discussion of the timetable

4      for litigating this case.  In a similar vein, Defendants may seek to bifurcate discovery into separate

5      class and merits phases depending on this Court's resolution of the motion to dismiss.[4]  If both

6      damages claims remain pending, bifurcation could, at minimum, enhance judicial economy by

7      providing the parties and the Court information on the viability of Plaintiffs' class damages claims.

8      And contrary to Plaintiffs' suggestion, whether they can develop a model capable of showing injury

9      on a classwide basis (a central question at class certification) does not depend on the same evidence

10     as an assessment of whether the NCAA's rules restrain competition and serve procompetitive

11     purposes (which go to the merits).  *See Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 933 (N.D.

12     Ill. 2013) (bifurcating class and merits discovery, noting questions about whether the named

13     plaintiffs' "alleged injuries are similar to those of the potential class members").

14     To the extent the Court is inclined to instead enter a schedule now, Defendants reserve the

15     right to move for bifurcation upon receiving the Court's motion to dismiss decision, but otherwise

16     have proposed amendments to Plaintiffs' suggested schedule below.

17     **IX.     CLASS ACTIONS**

18     Plaintiffs believe this matter is suitable for class treatment and intend to move for class

19     certification. The Parties' competing proposals for a class certification briefing schedule are set forth

20     in Section XVII, subject to Defendants' reservation of the right to seek bifurcation of discovery.

21     Defendants believe class treatment is inappropriate and will oppose certification.

22     **X.     RELATED CASES**

23     *Grant House, et al. v. National Collegiate Athletic Association, et al.*, No. 4:20-cv-03919CW

24

25     [4] Plaintiffs' complaint that Defendants failed to "meet[ a] . . . heavy burden of demonstrating that
       bifurcation is warranted" is obviously misplaced.  At this time, Defendants merely identified

26     consistent with Rule 26(f) and Local Rule 16-9 bifurcation as one subject on which a motion might
       be filed in the future.  If and when such a motion is filed, Defendants will meet any applicable

27     burden of persuasion based on the facts as they exist at that time.

28

*Tymir Oliver, et al. v. National Collegiate Athletic Association, et al.*, No. 4:20-cv-04527 CW

*In re National Collegiate Athletic Association Athletic Grant-In-Aid Cap Antitrust Litigation*, No. 14-md-02541 CW

## XI.     RELIEF

As detailed further in their complaints, Plaintiffs request that this Court grant them the following relief, *inter alia*:

A.     Actual damages according to the proof at trial;

B.     Treble damages pursuant to 15 U.S.C. § 15;

C.     A declaratory judgment declaring as void the NCAA's Bylaws that operate to impose a restriction on the compensation student-athletes can receive in exchange the commercial use of their names, images, and likenesses;

D.     An injunction restraining Defendants from enforcing their unlawful and anticompetitive agreement to restrict the amount of NIL compensation available to members of the proposed Class;

E.     Plaintiffs' attorneys' fees, costs, and expenses; and

F.     Other such relief that the Court may deem just and equitable.

Defendants contend Plaintiffs are entitled to no relief whatsoever.

## XII.     SETTLEMENT AND ADR

During the Rule 26(f) conference the Parties discussed the possibility of engaging in ADR and have filed their respective ADR Certifications pursuant to Civil L.R. 3-5. The Parties anticipate stipulating to an ADR process.

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Plaintiffs respectfully decline assignment to a Magistrate Judge for all purposes.

## XIV.   OTHER REFERENCES

The Parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

## XV.    NARROWING OF ISSUES

Plaintiffs do not believe there are any issues that can be narrowed at this time. As discovery progresses, the Parties will consider whether any issues can be narrowed by agreement or motion. Defendants believe that resolution of their Motion to Dismiss may narrow the scope of the issues in the case.

## XVI.   EXPEDITED TRIAL PROCEDURE

The Parties agree that this case is not suitable for the expedited trial procedure of General Order No. 64.

## XVII.  SCHEDULING

As noted above, the Parties have met and conferred but are unable to agree upon a comprehensive schedule at this point. Accordingly, the Parties present separate proposals for the Court's consideration, as set forth below:

| EVENT | PLAINTIFFS' PROPOSED DEADLINE | DEFENDANTS' PROPOSED DEADLINE |
|---|---|---|
| Rule 26(f) conference | Oct. 27, 2020 (completed) | Oct. 27, 2020 (completed) |
| Discovery to commence | Oct. 28, 2020[5] | Upon final ruling on motion(s) to dismiss |
| Exchange of initial disclosures | Nov. 13, 2020 | Nov. 13, 2020 |
| Initial Case Management Conference | Nov. 18, 2020 at 2:30 p.m. | Nov. 18, 2020 at 2:30 p.m. |
| Hearing on Defendants' Motion to Dismiss | Nov. 18, 2020 at 2:30 p.m. | Nov. 18, 2020 at 2:30 p.m. |
| Parties to submit to Court, Stipulated Order re Discovery of Electronically Stored Information and Stipulated Protective Order, *or* submit to Court for resolution all outstanding disputes regarding these otherwise stipulated orders | Dec. 11, 2020 | 60 days after final ruling on motion(s) to dismiss |
| Deadline for Plaintiffs to add additional parties or claims, or amend complaint (including the filing of any consolidated complaint) | 30 days after ruling on motion to dismiss | 30 days after ruling on motion(s) to dismiss |
| Defendants' Answer | 28 days after ruling on motion to dismiss | 60 days after final ruling on motion(s) to dismiss |

---

[5] *See* Plaintiffs' discussion in Section VIII, *supra*.

| Completion of production of relevant documents from *Alston* and *O'Bannon* cases | Mar. 1, 2021; see also "Plaintiffs' Statement" below. | See "Defendants' Statement" below. |
| Substantial Completion of Production of Documents by Parties | June 1, 2021 (Plaintiffs understand "Documents" to include but not be limited to any structured data requested of a Party)[6]; see also "Plaintiffs' Statement" below. | 12 months after final ruling on motion(s) to dismiss; see "Defendants' Statement" below. |
| Class Certification Motion and Supporting Expert Reports | November 22, 2021 | 17 months after final ruling on motion(s) to dismiss |
| Deadline to Depose Plaintiffs' Class Experts | Jan. 6, 2022 | 60 days after filing of class certification motion |
| Class Certification Opposition and Supporting Expert Reports | February 4, 2022 | 90 days after filing of class certification motion |
| Deadline to Depose Defendants' Class Experts | Mar. 5, 2022 | 30 days after filing of class certification opposition |
| Class Certification Reply and Expert Rebuttal Report | April 4, 2022 | 60 days after filing of class certification opposition |
| Deadline for Supplemental Depositions of Plaintiffs' Class Experts | No supplemental depositions should be permitted without leave of the Court. | 30 days after filing of class certification reply |
| Hearing on Class Certification | To be set by the Court | To be set by the Court |
| Merits Discovery Cut Off | 42 days after ruling on class certification | 42 days after ruling on class certification |
| Merits Experts Disclosure (including reports) on issues as to which Party bears the burden at trial | 42 days after ruling on class certification | 35 days after Merits Discovery Cut Off |
| Merits Expert Response | 35 days after submission of initial reports | 56 days after Merits Expert Disclosure |
| Merits Expert Reply | 28 days after responsive reports | 28 days after Merits Expert Response |
| Expert Discovery Cut-Off | 35 days after reply expert reports | 35 days after reply expert reports |
| Plaintiffs' dispositive motion / *Daubert* motions | 35 days after close of expert discovery | 49 days after close of expert discovery |

---

[6] The Parties will make rolling productions as soon as Documents are ready to be produced. The Parties agree to meet and confer in good faith about the timing and scope of productions.

| Defendants' opposition to Plaintiffs' dispositive motion; Defendants' cross-motion; and Defendants' *Daubert* motions | 35 days after Plaintiffs' dispositive motion / *Daubert* motions | 49 days after Plaintiffs' dispositive motion / *Daubert* motions |
|---|---|---|
| Plaintiffs' reply in support of their dispositive motion; opposition to Defendants' cross-motion; opposition to Defendants' *Daubert* motions | 35 days after Defendants' opposition to Plaintiffs' dispositive motion; Defendants' cross-motion; and Defendants' *Daubert* motions | 49 days after Defendants' opposition to Plaintiffs' dispositive motion; Defendants' cross-motion; and Defendants' *Daubert* motions |
| Defendants' reply in support of their cross-motion and *Daubert* motions; opposition to Plaintiffs' *Daubert* motions | 21 days after Plaintiffs' reply in support of their dispositive motion; opposition to Defendants' cross-motion; opposition to Defendants' *Daubert* motions | 28 days after Plaintiffs' reply in support of their dispositive motion; opposition to Defendants' cross-motion; opposition to Defendants' *Daubert* motions |
| Plaintiffs' reply in support of their *Daubert* motions | 14 days after Defendants' reply in support of their cross-motion and *Daubert* motions; opposition to Plaintiffs' *Daubert* motions | 14 days after Defendants' reply in support of their cross-motion and Daubert motions; opposition to Plaintiffs' Daubert motions |
| Hearing on all dispositive and *Daubert* motions and further case management conference | To be set by the Court | To be set by the Court |
| Trial Date | TBD | TBD |

## **Plaintiffs' Statement**

Plaintiffs' proposed schedule is contingent on discovery proceeding without further delay, as well as an open and cooperative discovery process.

Plaintiffs' provide the following response to concerns raised by Defendants below about certain deadlines in the schedule: During the Rule 26(f) conference, the Parties discussed the production of documents, and when Plaintiffs sent their *initial* proposed schedule to Defendants, they included the clarification that, with respect to the deadline for "Substantial Completion of Production of Documents by Parties," "Documents" should be understood to include any "structured data" a party agrees to produce. Indeed, that is how the term "Documents" is generally defined in this type of case. Early production of structured data is particularly important because of the substantial work and time required to collect, analyze, and understand such data. Therefore, Plaintiffs believe any

schedule that includes a substantial completion of production of documents deadline should encompass a deadline for production of structured data.

During the Rule 26(f) conference, the Parties also discussed the production of documents from the *Alston* and *O'Bannon* cases. Because documents from these past cases should be easier to produce than documents not previously produced, Plaintiffs believe it is appropriate to set a deadline for production of those documents, which are likely to be relevant in this case. Plaintiffs stand ready to meet and confer with Defendants about the appropriate scope of production of documents from these cases.

**Defendants' Statement**

Defendants' proposed schedule is without waiver of their anticipated motion to bifurcate merits and class discovery, as noted in Section VIII *supra*, and is contingent upon anticipated cooperation from Plaintiffs to reasonably limit discovery to what is proportionate to the needs of the case.

In addition, Defendants object to two of the entries in Plaintiffs' proposed schedule.  The first is a suggested deadline for "production of relevant documents from *Alston* and *O'Bannon*."  Given the way Plaintiffs have pleaded their claims, Defendants do not necessarily agree that production of documents from past cases would be appropriate.  During the Rule 26(f) conference, the parties stated their preliminary positions on this issue and agreed to continue negotiations as the case proceeds.  Plaintiffs then inserted a due date for such documents in their schedule on the day this statement was to be filed.  Defendants submit that whether and when such documents should be produced is a matter to be resolved at a later date, after further negotiation between the parties, and after this Court rules on the motion to dismiss.  Indeed, in *Alston*, the parties agreed to produce documents from prior cases only after extensive meeting and conferring during discovery.

Similarly, Defendants object to Plaintiffs' position that documents include "structured data requested of a Party."  Plaintiffs did not raise this issue during the Rule 26(f) conference and Defendants submit it should be resolved at a later date after further negotiation.

## XVIII. TRIAL

Plaintiffs have requested a jury trial. The Parties respectfully submit that it is premature to estimate an expected length of the trial at this time.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Each Defendant has filed a Certification of Interested Entities pursuant to Civil Local Rule 3-15.  Plaintiffs are not corporate parties and are not required to file a disclosure statement under Rule 7.

## XX.   PROFESSIONAL CONDUCT

Counsel for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI.   OTHER

The Parties have not identified any other matter that may facilitate the disposition of this case.

DATED: November 11, 2020

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  _____ */s/ Steve W. Berman* _____
      STEVE W. BERMAN

Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:   (510) 725-3001
bens@hbsslaw.com

DATED: November 11, 2020

SPECTOR ROSEMAN KODROFF &

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILLS, PC**

By: _____/s/ Jeffrey L. Kodroff_____
       JEFFREY L. KODROFF

Eugene A. Spector (*pro hac vice*)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
jkodroff@srkattorneys.com
espector@srkattorneys.com

*Counsel for Plaintiffs and the Proposed Classes*

DATED: November 11, 2020

**WILKINSON STEKLOFF LLP**

By: _____/s/ Beth A. Wilkinson_____
       BETH A. WILKINSON

Rakesh N. Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
Calanthe A. Cope-Kasten (*pro hac vice*)
2001 M Street NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
ccope-kasten@wilkinsonstekloff.com

Rahul Hari (SBN 313528)
WILKINSON STEKLOFF LLP
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Telephone: (424) 291-9655
Facsimile: (202) 847-4005
rhari@wilkinsonstekloff.com

*Attorneys for Defendant National Collegiate Athletic Association*

DATED: November 11, 2020

**PROSKAUER ROSE LLP**

By: _____/s/ Bart H. Williams_____
             BART H. WILLIAMS (SBN 134009)

Scott P. Cooper (SBN 96905)
Kyle A. Casazza (SBN 254061)
Jennifer L. Jones (SBN 284624)
Shawn S. Ledingham, Jr. (SBN 275268)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
bwilliams@proskauer.com
scooper@proskauer.com
kcasazza@proskauer.com
jljones@proskauer.com
sledingham@proskauer.com

*Attorneys for Defendant Pac-12 Conference*

DATED: November 11, 2020

**MAYER BROWN LLP**

By: _____/s/ Britt M. Miller_____
             BRITT M. MILLER (*pro hac vice*)

Matthew D. Provance (*pro hac vice*)
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Christopher J. Kelly (SBN 276312)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
cjkelly@mayerbrown.com

*Attorneys for Defendant The Big Ten Conference, Inc.*

DATED: November 11, 2020

**ROBINSON BRADSHAW & HINSON, P.A.**

By:  _____*/s/ Robert W. Fuller*_____
       ROBERT W. FULLER (*pro hac vice*)

Lawrence C. Moore, III (*pro hac vice*)
Pearlynn G. Houck (*pro hac vice*)
Amanda P. Nitto (*pro hac vice*)
ROBINSON BRADSHAW & HINSON
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rfuller@robinsonbradshaw.com
lmoore@robinsonbradshaw.com
phouck@robinsonbradshaw.com
apickens@robinsonbradshaw.com

Mark J. Seifert (SBN 217054)
Seifert Law Firm
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 999-0901
Facsimile: (415) 901-1123
mseifert@seifertfirm.com

*Attorneys for Defendant Southeastern Conference*

DATED: November 11, 2020

**FOX ROTHSCHILD LLP**

By:  _____*/s/ D. Erik Albright*_____
       D. ERIK ALBRIGHT (*pro hac vice*)

Gregory G. Holland (*pro hac vice*)
230 North Elm Street, Suite 1200
Greensboro, NC 27401
Telephone: (336) 378-5368
Facsimile: (336) 378-5400
ealbright@foxrothschild.com
gholland@foxrothschild.com

Jonathan P. Heyl (*pro hac vice*)
FOX ROTHSCHILD LLP
101 N. Tryon Street, Suite 1300

1   Charlotte, NC 28246
    Telephone: (704) 384-2625
2   Facsimile: (704) 384-2800
    jheyl@foxrothschild.com
3

4   Alexander Hernaez (SBN 201441)
    FOX ROTHSCHILD LLP
5   345 California Street, Suite 2200
    San Francisco, CA 94104
6   Telephone: (415) 364-5540
    Facsimile: (415) 391-4436
7   ahernaez@foxrothschild.com

8
    *Attorneys for Defendant Atlantic Coast*
9   *Conference*

10  DATED: November 11, 2020          **POLSINELLI, PC**

11                                    By:  _____/s/ Leane K. Capps_____
12                                          LEANE K. CAPPS (*pro hac vice*)

13                                    Caitlin J. Morgan (*pro hac vice*)
                                      D. Rockwell Bower (*pro hac vice*)
14                                    2950 N. Harwood Street, Suite 2100
                                      Dallas, TX 75201
15                                    Telephone: (214) 397-0030
                                      lcapps@polsinelli.com
16                                    cmorgan@polsinelli.com
                                      rbower@polsinelli.com
17

18                                    Amy Dawn Fitts (*pro hac vice*)
                                      POLSINELLI, PC
19                                    120 W. 12th Street
                                      Kansas City, MO 64105
20                                    Telephone: (816) 218-1255
                                      afitts@polsinelli.com
21

22                                    Wesley D. Hurst (SBN 127564)
                                      POLSINELLI, PC
23                                    2049 Century Park East, Suite 2300
                                      Los Angeles, CA 90067
24                                    Telephone: (310) 556-1801
                                      whurst@polsinelli.com
25

26                                    *Attorneys for Defendant The Big 12*
                                      *Conference, Inc*
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-FILING ATTESTATION**

I, Steve Berman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Steve W. Berman*
STEVE W. BERMAN

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2020, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Steve W. Berman*
STEVE W. BERMAN

JOINT CASE MANAGEMENT STATEMENT - Nos. Nos.
4:20-cv-03919 CW, 4:20-cv-04527 CW