[All counsel listed on sig. page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GRANT HOUSE, *et al.*, | No. 4:20-cv-03919 CW |
| Plaintiffs, | |
| v. | **STIPULATED [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, | |
| Defendants. | |
| TYMIR OLIVER, *et al.*, | No. 4:20-cv-04527 CW |
| Plaintiffs, | |
| v. | |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, | |
| Defendants. | |

1. **PURPOSE**

Unless otherwise agreed to by the parties, this Order will govern discovery of electronically stored information ("ESI") in these cases, as well as any subsequent consolidated as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. Capitalized terms in this Order are defined in the attached Exhibit A.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **LIAISON**

The parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. Given the nature and complexity of these actions, the parties agree to address methods to reduce the costs and burdens of preservation and to ensure proper ESI is preserved in response to particular discovery requests.

The following categories of ESI are not discoverable—and, to the extent that they exist, need not be retained, processed, reviewed, or produced—except upon a showing of good cause: (a) recorded voice messages, including voicemail in the Avaya Voice Player (.lvp) or WAVE (.wav) file formats; (b) instant messaging communications, including Skype communications, Zoom chats, and similar videoconferencing functions; (c) temporary data stored in a computer's

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

1  random access memory (RAM), or other ephemeral data that are difficult to preserve without

2  disabling the operating system; (d) common system and program files; (e) slack, fragmented,

3  unallocated data, or data that no longer has a file marker on hard drives; (f) electronic mail sent to

4  or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is

5  routinely saved elsewhere; (g) other electronic data stored on a mobile device, such as calendar or

6  contact data or notes, provided that a copy of such information is routinely saved elsewhere; (h)

7  logs of calls made from mobile devices; (i) Network Access Server Activity Logs; (j) data

8  remaining from systems that are no longer in use, and that is unintelligible on systems in use; (k)

9  Online Access Data such as temporary internet files, history, cache, cookies, etc.; and (l) data in

10  metadata fields that are frequently updated automatically, such as last opened dates, (m) text,

11  iMessage, or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry

12  devices) and (n) back-ups or other long-term storage media (Backup and Archival Files) that were

13  created strictly for use as data back-up or disaster recovery medium.

14       **5.**    *GIA* **DOCUMENTS**

15       The Court has deemed produced in this litigation documents previously produced in *In re*

16  *NCAA GIA Cap Antitrust Litigation,* Case Nos. 4:14-md-02541-CW and 4:14-cv-02758-CW,

17  which include certain documents also produced in *O'Bannon* (the "*GIA* documents"). There is no

18  requirement that any party reproduce the *GIA* documents in this case or provide additional or

19  different information or metadata for those documents. The parties further agree that the privilege

20  and/or redaction logs produced in connection with *GIA* suffice for purposes of the *GIA* documents.

21       **6.**    **SEARCH**

22       The parties will cooperate in good faith regarding the disclosure and formulation of

23  appropriate search terms and protocols used to search for ESI responsive to document requests

24  served pursuant to Fed. R. Civ. P. 34. The parties shall meet and confer as early as possible to

25  discuss, *inter alia*:

26       •   Disclosure of search terms used to search for documents responsive to document

27            requests, including semantic synonyms. Semantic synonyms shall mean without

28

limitation code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to the discovery of relevant ESI.

- Post-search error sampling and sampling/testing reports, if any.
- Potential use of computer-assisted review of predictive coding techniques.

The parties will meet and confer, prior to the application of search terms to find documents responsive to party document requests, and will review any search terms proposed and/or requested by the parties. The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including any supplemental requests to add additional search terms based on supplemental document productions by either party. This ESI protocol does not impose upon any party an obligation to run supplemental searches, nor does it address or resolve any objection to the scope of the parties' respective discovery requests.

### 7.   PRODUCTION FORMATS

The parties agree that documents produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic form in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

   a)  **Document Format.**  Documents shall be produced according to the following formats:

      i)  Electronic Production of Paper Documents.  Documents that are maintained in paper format shall be scanned per document and converted to a Static Image, and, except as otherwise provided below, shall be produced as black and white 1-bit TIFF images at 300 x 300 d.p.i. or greater resolution, in Group 4 compression single-page TIFFs and reflect the full and complete information contained in the original Document.  Paper Documents shall be produced in black and white, except

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

4

where color is necessary to decipher the meaning, context, or content of the document.  The Producing Party shall honor reasonable requests for either the production of the original Document for inspection and copying or production of a color image of the Document. Documents shall also be produced with the associated OCR, and with a load file, in accordance with paragraph 6(a)(iii), below. No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the TIFF image; and the Receiving Party shall accept the OCR in its "as is" condition. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

ii)  <u>Electronically Stored Information</u>.  Except as provided in paragraph 6(a)(iv) below, Document images shall be generated from electronic Documents in a Group 4 compression single-page TIFF image that reflects the full and complete information contained on the original Document. All black and white images must be in TIFF image format and color documents, if applicable, must be in JPG image format, together with a Load File or functional equivalent specified in Paragraph 6(a)(iii) that contains the metadata as set forth in Paragraph 6(h), below, and Extracted Text or associated OCR or a link thereto. Files shall be imaged to show track changes, speaker notes, and user comments. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

iii)  <u>File Structure</u>.  Each production shall include the following unless otherwise agreed between the parties:

**a. Index File:**

- Each production has one index file, in .DAT file format
- The format of the DAT file shall use Western European (Windows) encoding.
- Standard Concordance delimiters shall be used
  o   Comma — ASCII character 20 (¶)

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

5

1       ○   Quote — ASCII character 254 (þ)

2       ○   Newline — ASCII character 174 (®)

3  • First line must contain the column/field names (set forth in paragraph

4     6(h) herein)

5  • The fields BEGINBATES, ENDBATES, TEXTPATH and

6     NATIVELINK (where applicable) must be present

7  • Each subsequent row must contain the Metadata for one Document

8  • Every row must have the same number of columns/fields (empty

9     values are acceptable)

10  • File shall be placed in the *DATA* subdirectory

11  **b.  OCR and Extracted Text Files (.TXT Files):**

12  • A single text file for each Document containing all the Document's

13     pages, in text.

14  • Filenames shall be of the form: <Bates num>.txt, where <Bates num>

15     is the Bates number of the first page of the Document, filenames shall

16     not contain spaces

17  • Text must be encoded in Western European (Windows) format

18  • The TEXTPATH of the OCR or Extracted Text files shall be

19     included as a field in the DAT file listed above

20  • Files shall be placed in the *TEXT* subdirectory

21  **c.  Image Files:[1]**

22  • A single image for each page in each Document

23  • A single image per file (no multi-page image files)

24  • The default format shall be black and white single-page TIFF images

25     and color JPG images, if applicable.

26

27  _____

[1] Not required for documents produced in Native Format.

28  STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

              6

- Filenames shall be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc.), filenames shall not contain spaces

- Files shall be placed in the *IMAGES* subdirectory

### d. Native Files:

- Native files need only be produced for (a) Microsoft Excel files, (b) Microsoft PowerPoint files, (c) audio files, (d) video files, and (e) other files that the parties may agree shall be produced natively pursuant to paragraph 6(a)(iv), below.

- Where Documents are produced in Native Format (pursuant to paragraph 6(a)(iv) below) filenames must be unique in the production, unless the content is identical; preferably by naming files by the starting Bates number of the associated document

- The filename of a native file must retain the file extension corresponding to the original Native Format; for example, an Excel 2003 spreadsheet's extension must be .xls

- Each native file filename must correspond to the NATIVELINK metadata field in its corresponding document's row in the DAT file

- Where native files are produced pursuant to this subsection, it is unnecessary to produce Image Files, such as TIFF images, other than the bates stamped native placeholder with confidentiality designation (when applicable) discussed below.

- Any native file text must be encoded in Western European (Windows) format

- Native files shall be placed in the *NATIVES* subdirectory

iv) <u>Native Format Documents</u>.  The parties recognize that it may be

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

7

appropriate for certain Documents to be produced in Native Format. Therefore, the Producing Party shall produce all .XLS spreadsheets, .PPT presentations, audio files, and video files, and any files that cannot be imaged properly, in Native Format unless there is an agreement to the contrary, with bates stamped native placeholder documents representing native documents for purposes of document identification and confidentiality designations. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation, such as database files. The parties will meet and confer regarding such requests.

If a Document to be produced as a Native Format contains privileged information as well as non-privileged information, it shall be produced in TIFF format with redactions rather than Native Format, except that Excel spreadsheets may be produced in Native Format with redactions. If redacting information causes formatting issues in any Document, the Producing Party and Requesting Party will meet and confer in good faith in an effort to resolve the issues.

To the extent the Producing Party wishes to establish additional procedures for the protection of confidential information as defined in any applicable Protective Order entered herein produced in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of the information in Native Format.

v) <u>Resolution of Production Issues</u>. If Documents cannot be read because of imaging, software compatibility, or formatting problems, the Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control.

vi) <u>Support for Experts' Opinions</u>. Unless a Document shall be produced in

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION – Case Nos. 4:20-cv-03919-CW, 4:20-cv-04527-CW

8

Native Format, Documents supporting the Producing Party's experts' opinions shall be produced as color PDF files or color JPG files where the original Document contains color and color is necessary to decipher the meaning, context or content of the document.

   **b)  Production Media.** A Producing Party shall produce Documents electronically, i.e. FTP or Share File, or on such readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Information that shall be identified on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order entered in this case, if the media contains Confidential Information, as defined in the Protective Order. The face of the Production Media shall also contain the Bates Number range(s) of the Documents on the Production Media.  When produced electronically the same information may be provided in an accompanying email or letter. If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production or in a separate letter or email an explanation of how to decrypt the files. The parties agree to the following production formats: Electronically (i.e. SFTP or Share File site), CD, DVD or external USB hard drive, whichever results in the least number of items.

   **c)  Production of Structured Data.** To the extent a response to discovery requires production of discoverable electronic information contained in a Database which may contain potentially responsive information, in lieu of producing the Database, the parties shall meet and confer to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the Requesting Party or counsel. As part of the meet and confer process, the Producing Party will, at a minimum, identify for the Requesting Party all data fields containing potentially responsive information in the

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

9

Database and provide any data dictionary necessary to understand those fields.[2] Upon review of the report(s), the Requesting Party may make reasonable requests for additional information to explain the Database scheme, codes, abbreviations, and different report formats or to request specific data from identified fields.

If a Producing Party asserts that certain Database ESI is inaccessible or otherwise unnecessary or inadvisable under the circumstances, or if the Requesting Party asserts that, following production, certain Database ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

**d) Document Unitization.** Paper documents scanned into Document Images shall be logically unitized in a manner so as to maintain the document(s) and any attachments, as they existed in their original state, if possible. For electronic documents, the relationship of Documents in a Document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process from Native Format to TIFF, provided however that the Parties shall only be required to present one level of parent-child relationship. Document Images generated from attachments to e-mails stored in Native Format shall be produced contemporaneously and sequentially immediately after the parent e-mail. All hard copy Documents imaged and produced electronically shall include a unitization file ("load file") in accordance with paragraph 6(a)(iii)(a).

**e) Duplicates.** The Producing Party may remove duplicate Documents pursuant to

---

[2] The parties are meeting and conferring about whether, if discovery requires production of discoverable electronic information contained in a Database, the Producing Party will identify for the Requesting Party *all* data fields in a Database which contains potential responsive information and provide any data dictionary necessary to understand those fields. If the parties cannot reach agreement on this issue, each reserves the right to ask the Court to resolve it.

the following limitations: removal of duplicates shall only be done on exact duplicate Documents (based on MD5 or SHA-1 hash values at the Document level). As a general rule, a Producing Party may de-duplicate its production within a source (custodian), or across the entire production (cross-custodian/globally). With respect to hard copy documents for which metadata does not exist, however, a Producing Party may only de-duplicate within a source (e.g., custodian), provided however that if the Producing Party provides the custodian field for metadata as requested in Exhibit B it may de-duplicate across the entire production. If a Producing Party de-duplicates across the entire production (globally), the Producing Party shall provide both of the following: (1) name of each custodian possessing the de-duplicated copy (the All Custodians metadata fields); and (2) the original file path of each de-duplicated copy (the All Paths metadata field). Where any such Documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. Nothing in this paragraph is intended to resolve a Producing Party's objections in written discovery requests on the ground that the request is duplicative because the requested Documents were produced or are being produced by other parties.

   **f) Paper Documents Containing Fixed Notes.** Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the Document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately.

   **g) Bates Numbering and Other Unique Identifiers.** Each Producing Party shall Bates number its production(s) as follows:

   i) <u>Document Images</u>. Each page of a produced Document—except Native Files—shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. The Bates

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

11

Numbers shall be enumerated as defined in Exhibit A. The Producing Party will use a consistent prefix throughout the matter unless good reason exists for using a different prefix. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above, and any other internal tracking number that the Producing Party may choose to use. The confidentiality legend shall be "burned" onto a Document's image at a location that does not unreasonably obliterate or obscure any information from the source document.

ii)  <u>Native Format Documents</u>. In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend or internal tracking number shall be added to the content of the Native Document unless otherwise agreed between the Producing Party and the Receiving Party during any meet and confer related to confidentiality protections for Native Format Documents; however, the Producing Party will provide a MD5 Hash Value for each Native Format Document.

**h)  Metadata.** The Producing Party shall produce the metadata information described in Exhibit B, if available, with each production and in the format described in Paragraph 6(a)(iii)(a) above. The Producing Party has no obligation or duty to fill in any metadata fields or create any metadata that is not present with the original file. The Producing Party also has no obligation or duty to recollect documents already collected in in response to discovery requests during the *GIA* litigation to fill in any metadata fields as long as the original collection was consistent with the ESI Protocol entered in the *GIA* litigation. For each Document, the Producing Party shall produce a line in the index file with the fields identified in Exhibit B, where available. The field naming conventions shall be as described in Exhibit B unless otherwise agreed and consistently applied across all productions.

**i)  Compressed Files.**  Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP)

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

12

1   shall be decompressed in a reiterative manner to ensure that a zip within a zip is

2   decompressed into the lowest possible compression resulting in individual folders and/or

3   files.

4        **j) Email Threading.** Email thread suppression techniques may be applied to

5   eliminate or withhold documents from production provided the use of such techniques are

6   disclosed at the time of production and provided that the All Custodians and All Paths

7   metadata for lesser inclusive emails that are within the Producing Party's agreed-to review

8   population and suppressed from production are included in the metadata for the most

9   inclusive emails that are produced. Additionally, all non-duplicate email attachments

10  included in the lesser inclusive emails that are suppressed shall be produced.

11  **8.    PHASING**

12      When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties

13  agree to meet and confer regarding the phasing of the production of ESI, should such phasing be

14  appropriate.

15  **9.    OBJECTIONS TO ESI PRODUCTION**

16      If either party objects to producing requested information in the formats described herein

17  on the grounds that such information is not reasonably accessible because of undue burden or cost,

18  before asserting such an objection, the Responding Party will inform the Requesting Party of any

19  format in which it is willing to produce the requested data, the nature and location of the

20  information claimed to not be reasonably accessible, the reason(s) why the requested form of

21  production would impose an undue burden or is unreasonably costly, and afford the requesting

22  party 10 business days from receipt of such notice to propose an alternative means of compliance

23  with the request. Such proposal may include alternative cost estimates for ESI discovery

24  production, may offer a proposal for ESI discovery cost allocation, or both.

25      The parties shall meet and confer in good faith to resolve any dispute regarding a proposed

26  deviation from the provisions of this stipulation. To the extent the parties are unable to resolve any

27  such dispute, each party reserves the right to seek judicial intervention in compliance with the

28  STIPULATED [PROPOSED] ORDER RE DISCOVERY OF          13
    ELECTRONICALLY STORED INFORMATION – Case Nos.
    4:20-cv-03919-CW, 4:20-cv-04527-CW

1 │ relevant court rules and orders. Nothing in this Order negates the parties' ongoing obligations to

2 │ report spoliation of evidence.

3 │ **10.    DOCUMENTS PROTECTED FROM DISCOVERY**

4 │         a)      For any document withheld in its entirety or produced but redacted on the

5 │ basis of privilege or work product protections, the party withholding the document(s) (the

6 │ "Withholding Party") will produce privilege/redaction logs consistent with the

7 │ requirements of the Federal Rules of Civil Procedure.

8 │         b)      The logs shall be in Excel format or any other format that permits electronic

9 │ sorting and searching, except that the parties shall have no obligation to log information

10 │ either (i) generated on or after June 15, 2020 or (ii) involving privileged communications

11 │ with outside counsel. When there is a chain of privileged e-mails, the Withholding Party

12 │ need only include one entry for the top/most recent email on the privilege/redaction log for

13 │ the entire e-mail chain and need not log each e-mail contained in the chain separately. For

14 │ each document withheld or redacted, the Producing Party's privilege/redaction logs shall

15 │ include the following information, where available: (a) custodian or source; (b) date; (c)

16 │ author(s); (d) for documents produced but redacted on the ground of privilege, the starting

17 │ and ending Bates number; (e) recipient(s), CC(s) and BCC(s) (for e-mail and hard-copy

18 │ communication such as letters and internal memoranda); (f) specification of the privilege

19 │ claimed; and (g) a description of the document and the basis for the privilege or redaction

20 │ claim. Privilege/redaction logs shall be produced within 45 days of the substantial

21 │ completion of a party's production, or another time period mutually agreed to by the

22 │ parties.

23 │         c)      Pursuant to Fed. R. Evid. 502(b), the disclosure of a communication or

24 │ information covered by the attorney-client privilege or work-product doctrine does not

25 │ operate as a waiver if (1) the disclosure is inadvertent; (2) the holder of the privilege or

26 │ protection takes reasonable steps to prevent disclosure; and (3) the holder promptly took

27 │ reasonable steps to rectify the error, including (if applicable) following Federal Rule of

28 │
STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

14

1    Civil Procedure 26(b)(5)(b).

2           d)      All other issues of privilege, including the production of privileged or

3    protected documents or information, shall be governed by the Protective Order entered by

4    the Court in this litigation.

5    **11.    MODIFICATION**

6    This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court

7    for good cause shown.

8    **12.    MISCELLANEOUS**

9    This Stipulated Order is not intended to govern any protections or restrictions related to the

10    production of privileged litigation material. Any documents recalled due to a mutually-agreed

11    upon clawback provision shall have a specific protocol followed to ensure all copies of each such

12    document are appropriately removed from the review system of the opposite party.

13    **IT IS SO STIPULATED**, through Counsel of Record.

14

15    Dated:  December 11, 2020

          **HAGENS BERMAN SOBOL SHAPIRO LLP**

16

17    By:  _/s/ Steve W. Berman_

18    Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)

19    1301 Second Avenue, Suite 2000
Seattle, WA 98101

20    Telephone : (206) 623-7292
Facsimile: (206) 623-0594

21    steve@hbsslaw.com
emilees@hbsslaw.com

22    Benjamin J. Siegel (SBN 256260)

23    715 Hearst Avenue, Suite 202
Berkeley, CA 94710

24    Telephone: (510) 725-3000
Facsimile: (510) 725-3001

25    bens@hbsslaw.com

26    Attorneys for Plaintiffs and the Proposed Classes

27

28    STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

| | |
|---|---|
| 1 | Dated: December 11, 2020 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | Dated: December 11, 2020 |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Dated: December 11, 2020

**WILKINSON STEKLOFF LLP**

By:   */s/ Steve W. Berman*

Beth A. Wilkinson (*pro hac vice*)
Rakesh N. Kilaru (*pro hac vice*)
Tamarra Matthews Johnson (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
Calanthe A. Cope-Kasten (*pro hac vice*)
2001 M Street NW, 10th Floor
Washington, D.C. 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
ccope-kasten@wilkinsonstekloff.com

Rahul Hari (SBN 313528)
WILKINSON STEKLOFF LLP
11601 Wilshire Blvd., Suite 600
Los Angeles, CA 90025
Telephone: (425) 291-9655
Facsimile: (202) 847-4005
rhari@wilkinsonstekloff.com

Attorneys for Defendant National Collegiate
Athletic Association

Dated: December 11, 2020

**PROSKAUER ROSE LLP**

By:   */s/ Scott P. Cooper*

Scott P. Cooper (SBN 96905)
Bart H. Williams (SBN 134009)
Kyle A Casazza (SBN 254061)
Shawn S. Ledingham, Jr. (SBN 275268)
Jennifer L. Jones (SBN 284624)
Kelly M. Curtis (SBN 313581)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 557-2900
Facsimile: (310) 557-2193
bwilliams@proskauer.com
scooper@proskauer.com
kcasazza@proskauer.com
sledingham@proskauer.com
jljones@proskauer.com
kcurtis@proskauer.com

Attorneys for Defendant Pac-12 Conference

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

16

1

2  Dated: December 11, 2020

3

**MAYER BROWN LLP**

By:   */s/ Britt M. Miller*

4

5  Britt M. Miller (*pro hac vice*)
Matthew D. Provance (*pro hac vice*)
71 South Wacker Drive

6  Chicago, IL 60606
Telephone: (312) 782-0600

7  Facsimile: (312) 701 7711
bmiller@mayerbrown.com

8  mprovance@mayerbrown.com

9  Christopher J. Kelly (SBN 276312)
MAYER BROWN LLP

10  Two Palo Alto Square, Suite 300
3000 El Camino Real

11  Palo Alto, CA 94306
Telephone: (650) 331-2000

12  Facsimile: (650) 331-2060
cjkelly@mayerbrown.com

13

14  Attorneys for Defendant The Big Ten
Conference, Inc.

15

16  Dated: December 11, 2020

**ROBINSON BRADSHAW & HINSON, P.A.**

By:   */s/ Robert W. Fuller*

17

18  Robert W. Fuller (*pro hac vice*)
Lawrence C. Moore, III (*pro hac vice*)
Pearlynn G. Houck (*pro hac vice*)

19  Amanda P. Nitto (*pro hac vice*)
ROBINSON BRADSHAW & HINSON

20  101 N. Tryon Street, Suite 1900
Charlotte, NC 28246

21  Telephone: (704) 377-2536
Facsimile: (704) 378-4000

22  rfuller@robinsonbradshaw.com
lmoore@robinsonbradshaw.com

23  phouck@robinsonbradshaw.com
apickens@robinsonbradshaw.com

24

25  Mark J. Seifert (SBN 217054)
Seifert Law Firm

26  50 California Street,  Sutie 1500
San Francisco, CA 94111

27  Telephone: (415) 999-0901
Facsimile: (415) 901-1123

28  mseifert@seifertfirm.com

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

17

1

2
                                                  Attorneys for Defendant Southeastern
                                                  Conference

3
        Dated: December 11, 2020                  **FOX ROTHSCHILD LLP**

4
                                                  By:  */s/ D. Erik Albright*

5
                                                  D. Erik Albright (*pro hac vice*)

6                                                 Gregory G. Holland (*pro hac vice*)
                                                  230 North Elm Street, Sutie 1200

7                                                 Greensboro, NC 27401
                                                  Telephone: (336) 378-5368

8                                                 Facsimile: (336) 378-5400
                                                  ealbright@foxrothschild.com

9                                                 gholland@foxrothschild.com

10                                                Jonathan P. Heyl (*pro hac vice*)
                                                  FOX ROTHSCHILD LLP

11                                                101 N. Tryon Street, Suite 1300
                                                  Charlotte, NC 28246

12                                                Telephone: (704) 384-2625
                                                  Facsimile: (704) 384-2800

13                                                jheyl@foxrothschild.com

14                                                Alexander Hernaez (SBN 201441)
                                                  FOX ROTHSCHILD LLP

15                                                345 California Street, Suite 2200
                                                  San Francisco, CA 94104

16                                                Telephone: (415) 364-5540
                                                  Facsimile: (415) 391-4436

17                                                ahernaez@foxrothschild.com

18                                                Attorneys for Defendant Atlantic Coast
                                                  Conference

19

20      Dated: December 11, 2020                  **POLSINELLI PC**

21                                                By:  */s/ Leane K. Capps*

22                                                Leane K. Capps (*pro hac vice*)
                                                  Caitlin J. Morgan (*pro hac vice*)

23                                                D. Rockwell Bower (*pro hac vice*)
                                                  2950 N. Harwood Street, Suite 2100

24                                                Dallas, TX 75201
                                                  Telephone: (214) 397-0030

25                                                Facsimile: (214) 397-0033
                                                  lcapps@polsinelli.com

26                                                cmorgan@polsinelli.com
                                                  rbower@polsinelli.com

27
                                                  Amy Dawn Fitts (*pro hac vice*)

28      STIPULATED [PROPOSED] ORDER RE DISCOVERY OF        18
        ELECTRONICALLY STORED INFORMATION – Case Nos.
        4:20-cv-03919-CW, 4:20-cv-04527-CW

POLSINELLI, PC
120 W. 12th Street
Kansas City, MO 64105
Telephone: (816) 218-1255
afitts@polsinelli.com

Wesley D. Hurst (SBN 127564)
POLSINELLI, PC
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 556-1801
whurst@polsinelli.com

Attorneys for Defendant The Big 12
Conference, Inc.

## E-FILING ATTESTATION

I, Steve W. Berman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Steve W. Berman*
STEVE W. BERMAN

\*       \*       \*

## [PROPOSED] ORDER

**PURSUANT TO STIPULATION,
IT IS SO ORDERED.**

DATED: _____, 2020

_____
THE HON. CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>EXHIBIT A</u>**

**DEFINITIONS**

A.            **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media. Non-limiting examples of ESI include:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);
- Word processed documents (e.g., Word or WordPerfect files and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., individual entries stored in an Outlook PST, blog entries);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files;
- Backup and Archival Files (e.g., Veritas, Zip, .GHO); and
- Cloud based or other virtualized ESI, including application, infrastructure and data.

B.            **"Native File(s)"** or **"Native Format"** means and refers to ESI that has an associated file structure defined by the creating or viewing application in the file type for (or of)

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

20

1  the application in which such ESI is normally created, viewed, modified and/or as used by the

2  producing party in the normal course of its business.

3          C.          **"Metadata"** means and refers to information embedded in or associated

4  with a Native File (i) that does not constitute the primary content region of the file; (ii)  that is not

5  ordinarily viewable or printable from the application that generated, edited, or modified such

6  Native File that describes the characteristics, origins, usage and/or validity of the electronic file;

7  and/or (iii) that is generated automatically by the operation of a computer or other information

8  technology system when a Native File is created, modified, transmitted, deleted or otherwise

9  manipulated by a user of such system.

10         D.          **"Database"** means or refers to a set of related files that is created and

11 managed by a Database Management System or DBMS.

12         E.          **"Database Management System"** or **"DBMS"** means and refers to

13 software that controls the organization, storage, retrieval, security and integrity of data in a

14 database.

15         F.          **"Static Image"** means or refers to a representation of ESI produced by

16 scanning paper documents or converting a Native File to create a standard image format capable

17 of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF)

18 image is an example of a Static Image.

19         G.          **"Documents"** means or refers to any electronic or tangible medium from

20 which information can be obtained and /or translated into reasonably usable form, and shall have

21 the same meaning as used in the Federal Rules of Civil Procedure, including without limitation

22 writings, computer file, drawings, graphs, charts, photographs, sound recordings, images, video

23 and other data, data records or data.

24         H.          **"Load/Unitization File"** means or refers to an electronic file containing

25 information identifying a set of paper-scanned images or processed ESI and containing (i) an

26 indication of which individual pages or files constitute each Document, including attachments, and

27 links to the Static Images associated with each Document; (ii) links to any Native Files, including

28

1  attachments, associated with each Document; and (iii) data relevant to each individual Document,

2  including extracted and user-created Metadata and coded data.

3       **I.**     **"OCR"** means or refers to the optical character recognition file that is

4  created by software used in conjunction with a scanner that is capable of reading text-based

5  documents and making such documents searchable using appropriate software.

6       **J.**     **"Extracted Text"** means or refers to the user-created text that can be

7  electronically extracted from a native file without the use of OCR. Extracted text is favored over

8  OCR.

9       **K.**     **"Receiving Party"** means or refers to the party receiving production of

10  Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P.

11  34(a) or pursuant to any initial production of documents identified in the party's Rule 26(a)

12  disclosures.

13       **L.**     **"Producing Party"** means or refers to the party producing Documents in

14  response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or pursuant

15  to any initial production of documents identified in the party's Rule 26(a) disclosures.

16       **M.**     **"Bates Number"** means or refers to an identifier consisting of a two to

17  seven letter prefix, associated with the Producing Party's name, followed by numbers (e.g.,

18  ABCD000000001). Each page in the production is assigned a unique, incremental Bates number.

19  The prefix must be the same for all pages from the same Producing Party unless good reason

20  exists for the Producing Party to use a different prefix.

21       **N.**     **"Media"** means an object or device, real or virtualized, including but not

22  limited to a disc, tape, computer or other device, on which data is or was stored.

23

24

25

26

27

28  STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
    ELECTRONICALLY STORED INFORMATION – Case Nos.
    4:20-cv-03919-CW, 4:20-cv-04527-CW

1

**EXHIBIT B**

2

**METADATA FIELDS**

3

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|
| Begin Bates | Begin Bates (including prefix) – No spaces or special characters | Text | X | X | X | X |
| End Bates | End Bates (including prefix) – No spaces or special characters | Text | X | X | X | X |
| All Custodians | Identification of all custodians/sources who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. | Text | X | X | X | X |
| Custodian | Custodian(s) / source(s) John Doe or ABC Department | Text | X | X | X | X |
| Time Zone | The TimeZone from which the native file was processed | Text | | X | X | X |
| MD5 Hash | Document MDS hash value (used for deduplication or other processing) | Text | | X | X | X |
| Begin Family | Start Bates of family range | Text | X | X | X | X |
| End Family | End Bates of family range | Text | X | X | X | X |
| Pages | Page count | Integer | X | X | X | X |
| Confidentiality | Confidentiality designation for document | Text | X | X | X | X |
| Hidden Content | Indicates a document has hidden data (Y/N) | Text | | | X | |
| Track Changes | Indicates a document contains track changes (Y/N) | Text | | | X | |
| Comments | Indicates a document contains comments (Y/N) | Text | | | X | |
| Speaker Notes | Indicates a document contains speaker notes (Y/N) | Text | | | X | |
| All Paths | Identification of all file paths for duplicate copies. | Text | | X | X | X |

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

23

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|
| File Path/Directory Path | Email folder path (sample:Inbox/Active); The name of the folder from which the ESI document was obtained, including any parent folders | Text | | X | X | X |
| From | Author of the Email or Calendar Item | Text | | X | | X |
| To | Recipients of the Email | Multi-Entry | | X | | X |
| Cc | Names of individuals who were copied on the Email | Multi-Entry | | X | | X |
| Bcc | Names of individuals who were blind-copied on the Email | Multi-Entry | | X | | X |
| Subject | Email or calendar subject | Text | | X | | X |
| Date Created | Datetime electronic file was created internally. Format: MM/DD/YYYY 00:00 pm UTC | Datetime | | | X | |
| Date Modified | Datetime electronic file was last modified internally. Format: MM/DD/YYYY 00:00 pm UTC | Datetime | | | X | |
| Date Sent | Date the email was sent. Format: MM/DD/YYYY 00:00 pm UTC | Datetime | | X | | X |
| Date Received | Datetime Email was received. Format: MM/DD/YYYY 00:00 pm UTC | Datetime | | X | | X |
| Message Id | Proprietary email database/mailstore/post office file associated with centrally managed enterprise mail servers. Microsoft Outlook PST EntryID, the UniqueID (UNID) for Lotus Notes, equivalent value for other proprietary mailstore formats. | Text | | X | | X |
| Email Conversation Index | Email thread identification | Text | | X | | X |
| Date Saved | Date native file was last | Date | | | X | |

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

24

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items |
|---|---|---|---|---|---|---|
| | modified internally. Format: MM/DD/YYYY | | | | | |
| Date Printed | Date native file was printed (metadata derived from Word documents, etc.) | Date | | | X | |
| Author | Author field value extracted from the metadata of a native file | Text | | | X | |
| Last Modified By | Identity of last person who modified the document internally from the metadata of a native file | Text | | | X | |
| Text Path | File path to the text file location on the delivery medium | Text | X | X | X | X |
| File Size | File size in KB | Integer | | X | X | X |
| Filename | File name of native file (E-Docs or attachments to Email) | Text | | X | X | X |
| Application | Application used to create native file (e.g., Excel, Outlook, Word) | Text | | X | X | X |
| File Extension | File extension of native file | Text | | X | X | X |
| NativePath | File path location to the current native file location on the delivery medium | Text | | | X | |
| Redacted | Indicates a document contains redactions (Y/N) | Text | X | X | X | X |
| Producing Party | Agency (US) or Entity (Defendants) from whom documents were collected | Text | X | X | X | X |

STIPULATED [PROPOSED] ORDER RE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION – Case Nos.
4:20-cv-03919-CW, 4:20-cv-04527-CW

25