Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com

Benjamin J. Siegel (256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GRANT HOUSE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, <br><br> Defendants. | No. 4:20-cv-03919 CW <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY <br><br> Judge:  Hon. Claudia Wilken |
| TYMIR OLIVER, on behalf of himself and all others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, *et al.*, <br><br> Defendants. | No. 4:20-cv-04527 CW |

010912-11/1431414 V1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. LEGAL STANDARDS ..........................................................................................................3

III. ARGUMENT ..........................................................................................................................5

    A. The Court should not stay discovery pending a decision in *Alston* because Defendants have failed to satisfy their burden to show that a stay is warranted under the *Landis* factors. ...............................................................5

        1. Plaintiffs will be harmed by any delay in the resolution of their claims. ...........................................................................................................5

        2. Defendants have failed to make a clear showing of hardship or inequity that would result absent a stay. ...................................................10

        3. A stay would not further the goals of efficiency or judicial economy. .................................................................................................12

    B. Defendants provide no reason why the Court should reverse its previous decision not to stay discovery while Defendants' motion to dismiss is pending. ........................................................................................14

IV. CONCLUSION .....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Am. Apparel Shareholder Derivative Litig.*,
  2012 WL 9506072 (C.D. Cal. July 31, 2012) ............................................................................ 11

*Am. Honda Co., Inc. v. Coast Dist. Sys., Inc.*,
  2007 WL 672521 (N.D. Cal. Feb. 26, 2007) .......................................................................... 5, 10

*In re Apple In-App Purchase Litig.*,
  2012 U.S. Dist. LEXIS 18970 (N.D. Cal. Feb. 15, 2012) ....................................................... 4, 15

*Cartmill v. Sea World, Inc.*,
  2010 WL 4569922 (S.D. Cal. Nov. 5, 2010) ............................................................................... 8

*Castaneda v. United States*,
  2008 WL 9449576 (C.D. Cal. May 20, 2008) ........................................................................... 10

*Clinton v. Jones*,
  520 U.S. 681 (1997) ..................................................................................................................... 4

*CMAX, Inv. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ....................................................................................................... 8

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ................................................................................................ 4, 10

*Gradine v. Bioment, Inc.*,
  2006 WL 1049731 (E.D. Cal. Apr. 20, 2006) ........................................................................... 12

*Gustavson v. Mars, Inc.*,
  2014 WL 6986421 (N.D. Cal Dec. 10, 2014) ............................................................................ 10

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................................ passim

*Larroque v. First Advantage Lns Screening Sols., Inc.*,
  2016 WL 39787 (N.D. Cal. Jan. 4, 2016) .................................................................................. 11

*Larson v. Trans Union, LLC*,
  2015 WL 3945052 (N.D. Cal. June 26, 2015) ........................................................................... 14

*Laster v. T-Mobile USA, Inc.*,
  2006 U.S. Dist. LEXIS 88855 (S.D. Cal. Mar. 14, 2006) ............................................................ 5

*Lathrop v. Uber Techs., Inc.*,
  2016 WL 97511 (N.D. Cal. Jan. 8, 2016) ............................................................................. 7, 14

*Levya v. Certified Grocers of Cal., Ltd.*,
  593 F.2d 857 (9th Cir. 1979) .................................................................................................. 4

*Lockyer v. Mirant Corp.*,
  398 F.39 1098 (9th Cir. 2005) ........................................................................................ *passim*

*Meijer, Inc. v. Abbott Labs.*,
  2009 WL 723882 (N.D. Cal. Mar. 18, 2009) ........................................................................... 9

*Montegna v. Ocwen Loan Servicing, LLC*,
  2017 WL 4680168 (S.D. Cal. Oct. 18, 2017) .......................................................................... 9

*Montez v. Chase Home Fin. LLC*,
  2011 WL 2729445 (S.D. Cal. July 13, 2011) .............................................................. 5, 11, 12

*Murphy v. J.B. Hunt Transp. Servs., Inc.*,
  2010 WL 3911786 (N.D. Cal Oct. 5, 2010) ............................................................................ 5

*Nguyen v. Marketsource, Inc.*,
  2018 WL 2182633 (S.D. Cal. May 11, 2018) ..................................................................... 8, 13

*In re Pac. Gas & Elec. Co.*,
  2002 U.S. Dist. LEXIS 27549 (N.D. Cal. Nov. 14, 2002) .................................................... 11

*Robledo v. Randstad US L.P.*,
  2017 WL 4934205 (N.D. Cal. Nov. 1, 2017) ..................................................................... 8, 13

*Skellerup v. City of Los Angeles*,
  163 F.R.D. 598 (C.D. Cal. 1995) ............................................................................................. 4

*U.S. Fidelity & Guar. Co. v. Helm*,
  84 F.2d 546 (9th Cir. 1934) ..................................................................................................... 7

*United States v. Cortez-Ruiz*,
  225 F. Supp. 3d 1093 (N.D. Cal. 2016) ................................................................................. 12

*Yong v. I.N.S.*,
  208 F.3d 1116 (9th Cir. 2000) ..................................................................................... 3, 4, 12

**Other Authorities**

Federal Rule of Civil Procedure 26 ............................................................................................... 9

## I. INTRODUCTION

Defendants ask the Court for a discovery stay pending (1) the Supreme Court's resolution of *NCAA v. Alston* and *American Athletic Conference v. Alston* and (2) this Court's resolution of Defendants' motion to dismiss (*House* ECF No. 101, *Oliver* ECF No. 35). *See* Defendants' Motion to Stay Discovery (Def. Mot.) at 2. The motion ignores the controlling case law and this Court's prior decision not to stay discovery pending resolution of the motion to dismiss. Most importantly, it ignores the circumstances which make a stay inappropriate in this case, including the ongoing substantial harm Defendants' rules cause to Plaintiffs and the class of NCAA Division I student-athletes they represent, which harm will continue until the rules are enjoined.

The Ninth Circuit case of *Lockyer v. Mirant Corp.*, 398 F.39 1098 (9th Cir. 2005) controls whether discovery should be stayed pending the Supreme Court's decision in *Alston*. Yet, Defendants fail to cite this case a single time—a fact that is unsurprising given that the holding in *Lockyer* dictates that their motion be denied. In *Lockyer*, the Ninth Circuit held that a defendant's requested stay was inappropriate where the plaintiff sought "injunctive relief against ongoing and future harm." *Id.* at 1112. That is exactly the situation here. Plaintiffs and members of the large putative class of student-athletes they represent suffer harm each and every day as a result of Defendants' rules that strip them of the ability to commercialize their own names, images, and likenesses (NILs). Plaintiffs seek injunctive relief to stop that ongoing harm.

Because of the NIL rules, student-athletes are unable to monetize their NILs at any time while they are playing sports at their respective schools. Yet, that is the time when—for the vast majority of college athletes who will never go on to compete professionally, and who *at most* will only compete in intercollegiate sports for four of five years—they have the greatest opportunity to realize the value of their NILs. Injunctive relief is necessary to give student-athletes a chance to take advantage of these opportunities during this limited time. Timely injunctive relief is also critical because this is not the type of case where the full extent of the harm is remediable by money damages for a fixed past harm. Plaintiffs—on behalf of sub-classes, not the entire putative class for which injunctive relief is sought—assert targeted claims for particular damages caused by

Defendants' NIL restraints. But an injunction is the only remedy that will truly address the full extent of the harm because the challenged rules proscribe a broad swath of conduct, and the potential ways in which student-athletes could monetize their NILs absent the rules are myriad and limited only by what the market would bear. Moreover, the rules not only prevent student-athletes from earning NIL compensation while in school, they also diminish their ability to develop the type of following during school that would allow them to capitalize on the full value of their personal brands in the years following graduation. That harm irreparable. In sum, Defendants' NIL restraints subject Plaintiffs and the large putative class of student-athletes to ongoing harm that will continue unless and until Defendants' NIL rules are enjoined, and a stay will delay any injunctive relief, harming Plaintiffs and the putative class. These circumstances militate strongly against a stay.

The Ninth Circuit in *Lockyer* held that "'if there is even a fair possibility that a stay . . . will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *Id.* at 1112 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Here, Defendants' purported hardship boils down to having to, for what Defendants predict will be a "short" period of time, expend time and resources on document discovery that possibly could prove unnecessary depending on the Supreme Court's decision. But courts have repeatedly held that the expenditure of resources on discovery does not constitute sufficient hardship to meet the proponent of a stay's heavy burden to show the existence of "rare circumstances"[1] justifying a stay in one case pending resolution of an appeal in another. Defendants' motion should be denied on that basis alone.

In *Lockyer*, the Ninth Circuit also explained that a relevant consideration is whether Defendants have shown that a stay will promote the "orderly course of justice." *Lockyer*, 398 F.3d at 1110 (internal quotation marks omitted). Defendants point to the certiorari petitions that the Supreme Court granted in *Alston* and argue that, because the decision may "provide guidance to the parties" regarding discovery, a stay is warranted. Def. Mot. at 2:13-14. It is true that the petitions are broad,

---

[1] *See Landis*, 299 U.S. at 255 ("[o]nly in rare circumstances will a litigant in one c[a]se be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both").

PLS. OPPOSITION TO DEFS. MOT. TO STAY DISCOVERY
No. 4:20-cv-03919-CW and No. 4:20-cv-04527-CW                - 2 -
010912-11/1431414 V1

and certain issues encompassed by those petitions, if discussed in the Supreme Court's decision, may be informative in the present cases. However, as Plaintiffs pointed out in opposition to Defendants' motions to dismiss, the issues in *Alston* and *House/Oliver* are not identical and involve distinct considerations, including because the present cases involve different NCAA rules, as well as compensation from third parties. Thus, this is not a situation where a court might consider staying a case because an appeal ruling in another will almost certainly be dispositive. In any event, and perhaps more importantly, it is not uncommon for there to be pending appellate cases that are likely to be informative in separate, ongoing district court cases, and the law is clear that this alone is not a sufficient reason to grant a stay. Otherwise, stays would be granted all the time, which would greatly harm judicial economy and the "orderly course of justice." That is particularly true here, where the balance of hardships clearly weighs against a stay because Plaintiffs will be harmed by any delay in their ability to obtain injunctive relief and Defendants' alleged hardship consists of nothing more than being forced to move forward in this litigation.

Separately, Defendants fail to meet their heavy burden to show that this Court should reverse its previous decision *not* to halt discovery while Defendants' motion to dismiss is pending. *See* Nov. 18, 2020 Hr'g Tr. at 37:18-19 (*House* ECF No. 125, *Oliver* ECF No. 92). If anything, what has occurred since shows the prudence of that decision. Over the past two months, the parties have efficiently proceeded forward by agreeing to several discovery-related stipulations and otherwise beginning document discovery in earnest. Plaintiffs have already served and Defendants have responded to document requests. Indeed, the progress made thus far by the parties in good faith demonstrates the downside of halting discovery now for any reason.

## II.     LEGAL STANDARDS

The Ninth Circuit has held that "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) (vacating stay). A court may, in its discretion, "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending

resolution of independent proceedings which bear upon the case." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). However, such discretion is not "unfettered." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Indeed, it is well established that "[o]nly in rare circumstances will a litigant in one c[a]se be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

Citing *Landis* and prior Ninth Circuit law, the court in *Lockyer* held that the following three interests should be weighed in determining whether to grant a stay pending resolution of a different proceeding, including an appeal in a separate case: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.39 at 1110 (internal quotation marks omitted). Defendants bear the burden of establishing that a stay is necessary under this framework. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). And, "if there is even a fair possibility that a stay . . . will work damage to someone else," the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. If the term of a requested stay is indefinite, an even "greater showing" is required to justify it. *Yong*, 208 F.3d at 1119.

District courts also have discretion to stay discovery in a case while a dispositive motion is pending. However, such motions are disfavored because discovery stays often interfere with judicial efficiency and cause unnecessary litigation in the future. A moving party requesting a stay must meet a "'heavy burden of making a 'strong showing' why discovery should be denied . . . [by showing] a particular or specific need for the stay, as opposed to making stereotyped or conclusory statements.'" *In re Apple In-App Purchase Litig.*, 2012 U.S. Dist. LEXIS 18970, at *3 (N.D. Cal. Feb. 15, 2012) (quoting *White v. E-Loan, Inc.*, 2006 U.S. Dist. LEXIS 76051, at *5 (N.D. Cal. Oct. 5, 2006)); *Skellerup v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995)).

## III.    ARGUMENT

**A.    The Court should not stay discovery pending a decision in *Alston* because Defendants have failed to satisfy their burden to show that a stay is warranted under the *Landis* factors.**

### 1.    Plaintiffs will be harmed by any delay in the resolution of their claims.

The first *Landis* factor militates strongly against granting the requested stay because of "the possible damage" to Plaintiffs and the members of the class "which may result from the granting of a stay." *Lockyer*, 398 F.39 at 1110 (internal quotation marks omitted). While Defendants seek to downplay the potential harm, Plaintiffs and the class members have a clear interest in the expeditious and final resolution of this case. *See Laster v. T-Mobile USA, Inc.*, 2006 U.S. Dist. LEXIS 88855, at *9 (S.D. Cal. Mar. 14, 2006) (noting that "Plaintiffs [and all purported class members] may be injured in that they will be forced to wait longer to have their injuries redressed"); *see also Murphy v. J.B. Hunt Transp. Servs., Inc.*, 2010 WL 3911786, at *2 (N.D. Cal Oct. 5, 2010) ("Defendant argues that plaintiff will suffer little to no damage as a result of a stay, but this argument ignores the cost plaintiff must incur to wait to make his case in court").

Delay in the resolution of this case would be particularly harmful because of the nature of the injuries alleged, i.e., Plaintiffs' claims for injunctive and declaratory relief to stop the ongoing harm to them and the class caused by Defendants' rules. In assessing harm to the non-moving party, courts consider the nature of the case and the type of relief sought and, where a party seeks injunctive relief and alleges ongoing injury, there is "more than just a 'fair possibility' of harm." *Lockyer*, 398 F.3d at 1112; *see, e.g.*, *Montez v. Chase Home Fin. LLC*, 2011 WL 2729445, at *2 (S.D. Cal. July 13, 2011) ("'fair possibility' that a stay would harm Plaintiffs and members of the putative class . . . because Plaintiffs not only seek damages, but also injunctive relief"); *Am. Honda Co., Inc. v. Coast Dist. Sys., Inc.*, 2007 WL 672521, at *2 (N.D. Cal. Feb. 26, 2007) (party moving for *Landis* stay had not met its burden to show lack of harm from proposed delay because plaintiff sought injunctive relief). In this case, Plaintiffs and members of the large putative class seek to enjoin Defendants' sweeping NIL rules that preclude student-athletes from any ability to commercialize their own names, images, and

likenesses. The harm to Plaintiffs and the class caused by Defendants' rules is ongoing and will continue unless and until the requested injunctive relief is granted.

The importance of the injunctive relief in this case, and why a stay would be harmful, is clear. Because of Defendants' NIL rules, student-athletes are unable to monetize their NILs at any time while they are playing sports at their respective schools. Yet, this is the time when—for the vast majority of college athletes who will never go on to compete professionally—they are able to realize their NILs' full value, which will decline rapidly post-graduation.[2] For example, while Arizona State University financially benefits from promotional activities featuring its star athletes, including Plaintiff Grant House, House himself is prohibited from profiting in any way from those activities or his own personal NIL-related endeavors as long as he is a current student-athlete at ASU. *See* HC ¶ 38. Plaintiff Sedona Prince is similarly prevented from deriving any personal profit from her NIL-related activities while she is a student-athlete at the University of Oregon, despite the fact that she has already developed a substantial social media following and wants to pursue a career path that will be dependent on her ability to maximize her personal brand value. *See* HC ¶¶ 48-49. Moreover, most college athletes only play their sports for four or five years, and many play for less time. Thus, any delay in relief would cut into the few years when most college athletes have high-value NILs.

Additionally, as explained in the complaints, Defendants' NIL restrictions are broad and preclude a myriad of valuable opportunities, including social media and other influencer activities, commercial endorsements, paid autograph signing, and innumerable other commercial activities. Thus, while Plaintiffs allege targeted damages claims on behalf of two sub-classes to redress particular damages caused by Defendants' rules, only an injunction will remedy the full extent of the harm to members of the larger injunctive and declaratory relief class by permitting them thereafter to commercialize their NILs in ways limited only by what the market will bear. Any delay in that injunctive relief is thus likely to cause harm to Plaintiffs and members of the class. Moreover,

---

[2] Indeed, Plaintiffs allege in the complaints that college coaches have decried the inequities of a system where student-athletes cannot commercialize their NILs when they "have incredible value," particularly given that "[w]hen they graduate, they're done." *House* Complaint ("HC") ¶ 191; *Oliver* Complaint ("OC") ¶ 172.

1  Defendants' rules not only prevent student-athletes from making money on their NILs while in
2  school, they also greatly diminish athletes' ability to build the type of following during school that
3  will allow them to realize the full value of their brand after graduation. That harm is irreparable and
4  highlights why timely injunctive relief is so important.

5  Recent events further indicate the importance of timely resolving Plaintiffs' claims that
6  Defendants' NIL rules are unlawful and should be enjoined. Although it does not appear that the
7  NCAA ever planned to address all of the problems with the NIL rules that are identified in Plaintiffs'
8  complaints, it had indicated that some of those rules would be voluntarily modified in January.
9  However, at the last minute the NCAA announced that the membership vote on changes to its NIL
10 rules would be "postponed."[3] This highlights the need to move forward with this case and avoid any
11 unnecessary delay in resolving whether the Court should enjoin enforcement of the rules and thereby
12 order Defendants to stop the ongoing harm to student-athletes.

13 All of these circumstances weigh heavily against a stay, particularly in a class action case
14 where any delay also increases the risk that putative class members may move, evidence may be lost,
15 and "memories of the witnesses produced [are] certain to fade in the accuracy of their recollection."
16 *U.S. Fidelity & Guar. Co. v. Helm*, 84 F.2d 546, 547 (9th Cir. 1934); *see also Lathrop v. Uber*
17 *Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (concluding that plaintiffs in putative
18 class action may "suffer prejudice from a stay because the case would extend for an indeterminate
19 length of time, increase the difficulty of reaching class members, and increase the risk that evidence
20 will dissipate"). This problem is especially pronounced in the current cases where key evidence is
21 likely to come from non-parties to the litigation. As the months pass before a ruling is issued in
22 *Alston*, Plaintiffs' ability to establish the elements of class certification and prove up their claims will
23 further erode, while Defendants, knowing which documents and witnesses favor their position, can
24 readily maintain their evidence and prepare their defense.

---

[3] *See Board of Governors supports postponing name, image and likeness votes: Members agree with moving forward as soon as feasible*, NCAA Press Release (Jan. 13, 2021), https://www.ncaa.org/about/resources/media-center/news/board-governors-supports-postponing-name-image-and-likeness-votes.

Defendants cite several cases in which the plaintiffs only alleged claims for damages. For example, Defendants rely on *CMAX, Inv. v. Hall* for its recitation of the pertinent legal standard governing stay motions and suggest the case counsels in favor of a stay here. But Defendants fail to acknowledge the Ninth Circuit's subsequent explanation that a stay was appropriate in *CMAX* because "CMAX sought only damages. It alleged no continuing harm and sought no injunctive or declaratory relief. Delay of CMAX's suit would result, at worst, in a delay of its monetary recovery." *Lockyer*, 398 F. 3d at 1110-1111 (citing *CMAX, Inv. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962)).[4]

Defendants also argue that Plaintiffs will not be damaged by the requested stay because, according to them, the duration of that stay will be short ("no more than six months"), no injunctive relief is expected to be imposed before the stay would conclude, and the case is in its early stages. Def. Mot. at 3-4. To begin with, the relevant question is whether Defendants have met their burden to show that there could be no "possible damage" resulting from a stay, *Lockyer*, 398 F.3d at 1110, and none of these facts, even if true, would eliminate the potential for harm, as described above. *See also Landis*, 299 U.S. at 254-55 (describing the relevant issue as whether there is "even a fair possibility" of harm caused by a stay). Moreover, while Defendants claim that any delay would be brief, because the Supreme Court does not announce when it will decide cases, it is impossible to predict with certainty when there will actually be a final ruling. At most, Defendants can show that certiorari has been granted in *Alston* for hearing during the Court's October 2020 term, and that there *might* be a ruling by the end of June 2021. However, it is also possible that *Alston* may not be heard this spring and instead be pushed to the Supreme Court's next term. Indeed, the appeal has not yet been briefed and a date for oral argument has not been set. *See Cartmill v. Sea World, Inc.*, 2010 WL 4569922, at *2 (S.D. Cal. Nov. 5, 2010) (denying stay where even though, unlike here, the appeal at issue had been fully briefed, no date for oral argument had been set). The ruling could be delayed, for example, if briefing is extended on application of the parties, or in the event that the Solicitor General's Office requests a hold of the case in light of the recent change in administration. In any

---

[4] *See also Nguyen v. Marketsource, Inc.*, 2018 WL 2182633, at *6 (S.D. Cal. May 11, 2018); *Robledo v. Randstad US L.P.*, 2017 WL 4934205, at *3 (N.D. Cal. Nov. 1, 2017).

event, and perhaps more importantly, even if it were certain that a decision would come by the end of June 2021, that is still six months of delay in discovery and a commensurate delay in Plaintiffs obtaining critical injunctive relief and damages. That is particularly important for this class which, as noted, consists of college athletes who normally play a maximum of four or five years, while others only compete for one or two years. Moreover, if Defendants are correct that the *Alston* decision will come down by the end of June, then the "hardship" of proceeding with discovery is very limited (relevant to the second *Landis* factor, discussed *infra*), which supports *denying* the stay.

Defendants' contention that a stay is not warranted because injunctive relief is unlikely to be imposed before a stay would conclude misses the point. Delaying discovery would push back all subsequent deadlines in this case, delaying the Court's ultimate resolution of whether injunctive relief should be granted and necessarily pushing back the date when the ongoing harm to Plaintiffs and the class may stop. Defendants also argue that there should be a stay because these cases are in their "early stages," but in fact a lot of progress has been made since the cases were filed *over seven months ago*, progress which would be halted in its tracks should a stay be granted.[5] Moreover, the fact that discovery has just begun and non-fact discovery deadlines are not set to commence until the November 22, 2021 deadline for Plaintiffs' class certification motion and supporting expert reports,[6] supports *denying* the stay. This Court's decision in *Meijer, Inc. v. Abbott Labs.*, 2009 WL 723882 (N.D. Cal. Mar. 18, 2009) (Wilken, J.), cited by Defendants, is instructive and confirms why staying fact discovery is not warranted. In discussing why the proposed stay was appropriate in *Meijer*, this Court emphasized that "the fact that a stay will apply only to proceedings following the close of fact discovery will ensure that all relevant documents are produced and all witness testimony is preserved through depositions." *Id.* at *5; *see also Montegna v. Ocwen Loan Servicing, LLC*, 2017 WL

---

[5] Indeed, following the filing of these lawsuits in June and July 2020, the parties completed motion to dismiss briefing that is under submission, conducted the Rule 26 conference, exchanged initial disclosures, negotiated and filed joint stipulations regarding the production of electronically stored information and the protection of confidential materials to be produced in this litigation, Plaintiffs served requests for production on each of the Defendants on December 2, 2020, and Defendants served their responses to those requests on January 19, 2021.

[6] *See House* ECF No. 127 at 1; *Oliver* ECF No. 94 at 1.

4680168, at *6 (S.D. Cal. Oct. 18, 2017) (rejecting Defendants' argument that because "the case is in its early stages," plaintiffs cold not demonstrate harm from proposed stay).[7]

### 2. Defendants have failed to make a clear showing of hardship or inequity that would result absent a stay.

Because there is at least a "a fair possibility" that a stay will harm Plaintiffs, Defendants as the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. Defendants cannot make any showing—let alone the "clear" showing required by *Landis*—of hardship or inequity in being required to move forward.

Defendants' only asserted hardship is having to continue to litigate this case. In particular, Defendants complain that, absent a stay, they will have to "engag[e] in broad-ranging discovery related to multiple sub-classes and legal claims under an uncertain legal framework," and refer specifically to responding to Plaintiffs' document requests. Def. Mot. at 4-5. But Defendants' concerns about the expense and inconvenience associated with responding to discovery that they believe could possibly be rendered irrelevant by the Supreme Court's ruling in *Alston* are insufficient as a matter of law to warrant a stay. Courts in the Ninth Circuit follow the well-established rule that "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity within the meaning of *Landis*." *Dependable.*, 498 F.3d at 1066 (citing *Lockyer*, 398 F.3d at 1112); *see also, e.g.*, *Am. Honda*, 2007 WL 672521, at *3 ("the hardship attendant with being forced to defend a lawsuit is irrelevant when considering whether to grant a stay"); *Castaneda v. United States*, 2008 WL 9449576, at *4 (C.D. Cal. May 20, 2008) ("The Court acknowledges that discovery

---

[7] Defendants' reliance on *Gustavson v. Mars, Inc.*, 2014 WL 6986421 (N.D. Cal Dec. 10, 2014) is misplaced. *See* Def. Mot. at 3. There, the Court held that denying a stay would not prevent delay in any prospective injunctive relief because no matter the outcome of the separate appeal, the appellate decision would "precipitate another round of class certification or decertification motions and a re-opening of discovery . . . ." *Id.* at *3. Those circumstances, particularly given the stage of discovery, are not present in this case. Defendants' reference to *Capella Photonics, Inc. v. Cisco Sys., Inc.*, is especially off-point because the court was not applying the *Landis* test, and moreover, the grant of a stay in that case was based largely on the fact that the plaintiff, unlike here, did not allege that it would be harmed by a stay. 2015 WL 1006582, at *3 (N.D. Cal. Mar. 6, 2015) ("it is notable that Capella does not argue it will suffer any undue prejudice from the grant of a stay provided that all of the defendants in this case are bound by the same estoppel that will bind Cisco, as the party to the instituted IPR proceedings").

can be burdensome. However, such a burden, while regrettable, does not constitute an irreparable injury [warranting a stay].").

Although irrelevant,[8] Plaintiffs also disagree that Defendants have met their burden to show that the scope of discovery they would have to engage in would actually be "extensive" or particularly burdensome. Indeed, despite it being their burden, Defendants have put forth no evidence to support their conclusory allegations of hardship, and Plaintiffs submit that their first set of requests for production of documents are appropriately targeted to address Defendants' NIL rules and the legal and factual issues presented in this case. In any event, aside from their obligation to produce documents in response to Plaintiffs' first set of document requests, Defendants make no other specific allegations of discovery hardship. The burden of document discovery alone is insufficient to justify a stay, and indeed, that fact on its own distinguishes this case from Defendants' lead case, *Larroque v. First Advantage Lns Screening Sols., Inc.*, 2016 WL 39787 (N.D. Cal. Jan. 4, 2016). In the portion of the *Larroque* decision cited by Defendants, the court explained that, absent a stay, the defendants might have had to engage in "class certification briefing." *Id.* at *2. That is not the situation here, with Defendants arguing, in fact, that the Supreme Court will rule by the end of June 2021, well before class certification briefing will commence.

Because Defendants can demonstrate no hardship other than being required to continue with discovery, their motion should be denied on this basis alone. *See In re Pac. Gas & Elec. Co.*, 2002 U.S. Dist. LEXIS 27549, at *13 (N.D. Cal. Nov. 14, 2002) (When the moving party fails to show that it will be harmed absent a stay, "[t]he absence of a showing of irreparable injury is itself sufficient to warrant denial of a motion to stay."); *accord Montez*, 2011 WL 2729445, at *1 (denying motion to stay "because Chase has not carried its burden of demonstrating a clear case of hardship or

---

[8] Some district courts in the Ninth Circuit have held that where there is no indication that a stay would cause harm to the non-moving party, a court may consider "the moving party's burden in litigating the case." *In re Am. Apparel Shareholder Derivative Litig.*, 2012 WL 9506072, at *45 (C.D. Cal. July 31, 2012). Even *assuming arguendo* that this Court agrees with that line of cases, this burden is irrelevant here where there is at least a "a fair possibility" that a stay will harm Plaintiffs, Moreover, as explained in the text, Defendants have not shown that it would be especially burdensome to require them to move forward absent a stay.

PLS. OPPOSITION TO DEFS. MOT. TO STAY DISCOVERY
No. 4:20-cv-03919-CW and No. 4:20-cv-04527-CW        - 11 -
010912-11/1431414 V1

inequity in being required to go forward" (internal quotation marks omitted)). At the least, this factor weighs strongly against granting Defendants' requested stay.

### 3. A stay would not further the goals of efficiency or judicial economy.

Defendants contend that the third *Landis* factor weighs in their favor because staying this case pending the Supreme Court's decision would serve "judicial efficiency." Def. Mot. at 6.[9] Because, to date, the parties have worked cooperatively on numerous discovery matters including initial disclosures, stipulations, and document requests, a stay would in fact harm judicial economy. *See supra* n. 5. Any stay would stop this momentum in its tracks.

Moreover, circumstances are not present here that would justify action contrary to the general rule in the Ninth Circuit that "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong*, 208 F.3d at 1119 (vacating stay); *see also United States v. Cortez-Ruiz*, 225 F. Supp. 3d 1093, 1105-1106 (N.D. Cal. 2016) (citing *Yong* and denying stay). In similar situations involving a pending Supreme Court ruling in a related case, courts have denied stays where the pending decision would not necessarily be dispositive of the present case. *See e.g.*, *Gradine v. Bioment, Inc.*, 2006 WL 1049731, at *6 (E.D. Cal. Apr. 20, 2006) (denying stay where pending Supreme Court ruling "would certainly bear directly upon the parties' controversy," but "would not necessarily be dispositive"); *Lathrop* 2016 WL 97511, at *5 (denying stay because while a pending Supreme Court case may have "a beneficial impact on the case by clarifying questions of law," that did not justify finding that the case was one of those "'rare circumstances' in which a stay pending the resolution of an appeal in another case is appropriate" (quoting *Landis*, 299 U.S. at 255)). Indeed, there are good policy reasons for district courts not to stay cases simply because the Supreme Court or another appellate court may issue a decision that will impact a pending district court case. This is not an uncommon situation, and if stays became routine under such circumstances, it would negatively impact the "orderly course of

---

[9] As explained in section III.A.2, this Court need not reach this factor because Defendants have not carried their burden of "demonstrating a clear case of hardship or inequity in being required to go forward." *See Montez*, 2011 WL 2729445, at *1 (internal quotation marks omitted).

PLS. OPPOSITION TO DEFS. MOT. TO STAY DISCOVERY
No. 4:20-cv-03919-CW and No. 4:20-cv-04527-CW         - 12 -
010912-11/1431414 V1

1   justice," and interfere with injured parties' ability to obtain efficient resolution of their claims. *See*
2   *Lockyer*, 398 F.3d at 1110.
3         While the grants of certiorari in *Alston* are broad, there is no way to predict what the ultimate
4   outcome will be, or what issues will be covered by the Court's decision. The mere grant of a writ of
5   certiorari in no way indicates whether or not the Supreme Court will reverse the Ninth Circuit's
6   ruling, or the extent to which it might reverse that ruling, in the event that it does. Even if the
7   Supreme Court does reverse the lower court's ruling to some extent, *Alston* is distinguishable from
8   the present cases in material ways, such that one cannot readily predict that the Supreme Court's
9   decision (whenever it is issued) will be dispositive of Plaintiffs' claims. These cases and the issues
10  presented in them undoubtedly share similarities with *Alston*, but the complaints in the instant
11  actions include factual allegations, legal claims, and class definitions that *Alston* did not. For
12  example, as explained in Plaintiffs' opposition to the motion to dismiss, the NCAA rules at issue
13  here are distinct from those challenged in *Alston*, and these cases involve compensation from third
14  parties, while *Alston* does not. Depending on the factual foundation that is established through
15  discovery in this case and Plaintiffs' ultimate legal theories, the Supreme Court's decision in *Alston*
16  could ultimately have a very narrow impact—or no impact at all. And, even assuming that the
17  decision in *Alston* does offer guidance to this Court, it is not clear what issues (if any) will be
18  decided by the Supreme Court or how those issues will be resolved.
19        The cases Defendants rely upon in support of their argument are inapposite. For example, this
20  case is materially different from cases in which courts imposed stays pending the outcome of a
21  Supreme Court decision that would determine whether an arbitration agreement between the parties
22  was enforceable and, thus, where the possibility existed for the entire federal court action to be
23  precluded in favor of arbitration. *See e.g.*, *Robledo*, 2017 WL 4934205, at *4 ("the decision in
24  *Morris* could be dispositive of whether Plaintiffs' claims should be litigated or arbitrated"); *Nguyen*,
25  2018 WL 2182633, at *5 ("[I]t is clear that the instant matter turns on whether an employment
26  agreement requiring an employee and employer to resolve employment disputes through individual
27
28

arbitration is enforceable under the FAA. Thus, this matter falls squarely under *Morris* with the Supreme Court addressing the circuit split on this exact issue in the near future.").

Defendants also rely on a string of cases which imposed stays pending the outcome of a decision that would clearly determine the issue of whether the plaintiffs had standing to bring their lawsuits. Defendants cite *Stone v. Sterling Infosys., Inc.*, for instance, in which the court found that a stay was warranted pending the outcome of the appeal in *Spokeo, Inc. v. Robins*. But the district court in *Stone* was clear that a stay was appropriate in that case because, unlike here, "[t]he Supreme Court's decision in *Spokeo* will provide direct authority on whether Plaintiff has standing to bring this case. Because Plaintiff did not suffer any actual harm and relies solely on Defendant's statutory violation to establish standing, a decision by the Supreme Court overturning the Ninth Circuit's holding would deprive the Plaintiff of standing to bring his claim and deprive this Court of subject matter jurisdiction." 2015 WL 4602968, at *2 (E.D. Cal. July 29, 2015).[10]

In sum, Defendants ask the Court to delay this case based on their speculation and hope that the Supreme Court will reverse *Alston*, and that a reversal will provide them a favorable outcome in these cases. Meanwhile, Plaintiffs suffer ongoing harm from Defendants' misconduct that will be prolonged every day that this litigation is delayed, and Defendants will suffer no cognizable hardship if the cases move forward until *Alston* is decided. Under these circumstances, weighing the *Landis* factors, a stay would not advance the orderly course of justice and should be denied.

**B.    Defendants provide no reason why the Court should reverse its previous decision not to stay discovery while Defendants' motion to dismiss is pending.**

This Court previously decided not to stay discovery pending resolution of Defendants' motion to dismiss. *See* Nov. 18, 2020 Hr'g Tr. at 37:18-19. Defendants have not demonstrated that this decision was in error, nor, for the reasons explained herein with regard to the *Landis* factors (particularly the second factor), have they carried their "heavy burden of making a 'strong showing' why discovery should be denied," by demonstrating "a particular or specific need for the stay, as

---

[10] *See also Larson v. Trans Union, LLC*, 2015 WL 3945052 (N.D. Cal. June 26, 2015) (granting a stay pending decision in *Spokeo* that would directly impact whether plaintiff had standing to bring his claims); *compare Lathrop*, 2016 WL 97511, at *5, discussed in the text, *supra*.

PLS. OPPOSITION TO DEFS. MOT. TO STAY DISCOVERY
No. 4:20-cv-03919-CW and No. 4:20-cv-04527-CW         - 14 -
010912-11/1431414 V1

1   opposed to making stereotyped or conclusory statements." *In re Apple In-App Purchase Litig.*, 2012
2   U.S. Dist. LEXIS 18970, at *3 (internal quotation marks omitted).
3       Indeed, as explained *supra*, because of this Court's decision to allow discovery to proceed,
4   the parties have been able to, *inter alia*, negotiate and file several discovery stipulations and
5   cooperatively begin document discovery. Those efforts will no doubt aid the efficient resolution of
6   this case, and granting a stay now would impede further such progress.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to stay discovery.

DATED: January 29, 2021                      HAGENS BERMAN SOBOL SHAPIRO, LLP

By: /s/ Steve W. Berman
    STEVE W. BERMAN (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
bens@hbsslaw.com

Jeffrey L. Kodroff (*pro hac vice*)
Eugene A. Spector (*pro hac vice*)
SPECTOR ROSEMAN KODROFF &
WILLS, PC
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
jkodroff@srkattorneys.com
espector@srkattorneys.com

*Counsel for Plaintiffs and the Proposed Classes*