Leane K. Capps (*pro hac vice*)
Caitlin J. Morgan (*pro hac vice*)
2950 N. Harwood Street, Suite 2100
Dallas, TX 75201
Telephone: (214) 397-0030
lcapps@polsinelli.com
cmorgan@polsinelli.com

Amy D. Fitts (*pro hac vice*)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
afitts@polsinelli.com

Wesley D. Hurst (SBN 127564)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 556-1801
whurst@polsinelli.com

*Attorneys for Defendant*
*The Big 12 Conference, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919 CW |
| | **ANSWER OF DEFENDANT THE BIG 12 CONFERENCE, INC.** |

1
2
3

<u>**ANSWER AND ADDITIONAL DEFENSES OF**</u>

<u>**DEFENDANT THE BIG 12 CONFERENCE, INC.**</u>

4    The Big 12 Conference, Inc. ("Big 12"), by and through its undersigned attorneys,

5    hereby answers and sets forth additional defenses to the Consolidated Amended

6    Complaint (D.E. 164) ("Complaint").

7                                **PRELIMINARY STATEMENT**

8    Except as otherwise expressly stated below, the Big 12 answers and responds only

9    to those allegations contained in the Complaint that are directed toward it. The Big 12 is

10   without sufficient knowledge or information to form a belief as to the truth of the

11   allegations in the Complaint that are directed toward other defendants. Pursuant to

12   Federal Rule of Civil Procedure 8(b)(5), such allegations are deemed denied.

13   To the extent that Plaintiffs' allegations rely upon media reports and other out-of-

14   court statements, any response by the Big 12 admitting that such reports were published

15   or that such statements were made does not constitute an admission as to the admissibility

16   of such reports or statements or an admission as to the accuracy or truthfulness of their

17   contents.

18   In addition, the Complaint contains 195 footnotes. To the extent the contents of

19   those footnotes are not addressed in the text of the Big 12's answer to the Paragraph to

20   which the footnote relates and/or to the extent that the content of any footnote can be read

21   to contain factual allegations, the Big 12 denies each and every one of them.

22            **RESPONSES TO NUMBERED PARAGRAPHS OF COMPLAINT**

23   The Big 12 denies any and all allegations contained in the headings of the

24   Complaint and responds to the numbered paragraphs of the Complaint as follows:

25   1.     The Big 12 admits that Zion Williamson played basketball at Duke

26   University in 2019 and participated in a game between Duke University and the

27   University of North Carolina, and that his shoe appeared to fail during the game. The Big

28   12 lacks sufficient knowledge or information to form a belief as to the truth of the

allegations included in Paragraph 1 concerning television viewers, speculation of unnamed persons about Zion Williamson's alleged knee sprain, and Nike stock value and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 1.

2.      The Big 12 admits that NCAA rules in effect in 2019 established limitations on compensation provided to student-athletes for the actual or alleged use of their names, images, and likenesses. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 concerning the alleged contract between Duke University and Nike and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 2.

3.      The Big 12 admits that a small number of NCAA Division I athletic departments generate positive net revenues. The Big 12 further admits that NCAA rules have established limitations on compensation to student-athletes for the actual or alleged use of their names, images, and likenesses. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 3 concerning alleged salaries of coaches and others and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 3.

4.      The Big 12 admits that the NCAA Constitution and Bylaws contain rules governing the conduct of members relating to collegiate athletics, the benefits that may be provided to student-athletes, and other aspects of collegiate sports, and contain statements relating to the principles of amateurism and collegiate sports. The Big 12 further admits that the NCAA has previously advanced amateurism as a justification for certain of the rules set forth in the NCAA Constitution and Bylaws. The Big 12 denies the remaining allegations of Paragraph 4.

5.      The Big 12 admits that Plaintiffs seek to challenge NCAA rules setting forth limitations on compensating student-athletes for use of their names, images, and likenesses. The Big 12 further admits that the NCAA Manual sets forth current NCAA rules. The Big 12 further admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and

executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image, and likeness would not be impacted by the application of certain NCAA bylaws. The Big 12 denies the remaining allegations of Paragraph 5.

6.      The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6 concerning unattributed comments allegedly made by the NCAA and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 6.

7.      The Big 12 admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness would not be impacted by the application of certain NCAA bylaws. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7 concerning alleged comments made by the NCAA and profits derived by unidentified companies and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 7.

8.      The Big 12 admits that it is party to and/or receives revenue from certain sponsorship agreements. Upon information and belief, the Big 12 further admits that the NCAA and other conferences, schools and, in some instances, coaches, have sponsorship or endorsement agreements. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 8 concerning alleged agreements between companies and persons or entities other than the Big 12 and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 8.

9.      The Big 12 admits that the NCAA and some conferences and schools utilize certain social media platforms. The Big 12 further admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness would

not be impacted by the application of certain NCAA bylaws. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9 concerning the financial rewards allegedly received by unidentified persons from social media and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 9.

10.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 concerning alleged statements of Oliver Luck and therefore denies them. The remaining allegations in Paragraph 10 contain conclusions of law to which no response is required. To the extent any response is necessary, the Big 12 denies the remaining allegations of Paragraph 10.

11.     The Big 12 specifically denies that it has violated the federal antitrust laws or common law and denies the remaining allegations of Paragraph 11.

12.     The Big 12 admits that NCAA rules include limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses. The Big 12 further admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness would not be impacted by the application of certain NCAA bylaws. Upon information and belief, the Big 12 admits that there have been unverified media reports that certain student-athletes and in some sports have been offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations and quotations in Paragraph 12 concerning Katelyn Ohashi and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 12.

13.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 concerning Dave Bradley, Nick Saban, and

1    unidentified "recent analyses" and therefore denies them. The Big 12 denies the remaining

2    allegations of Paragraph 13.

3        14.    Upon information and belief, the Big 12 admits that according to unverified

4    media reports, certain representatives of NCAA members institutions have made public

5    comments regarding possible revision of NCAA NIL rules and considerations relating to

6    any such revisions. The Big 12 lacks sufficient knowledge or information to form a belief

7    as to the truth of the allegations in Paragraph 14 concerning the salaries and/or purported

8    comments of Scott Frost and Jim Harbaugh and therefore denies them. The Big 12 denies

9    the remaining allegations of Paragraph 14.

10       15.    The Big 12 admits that recently enacted state statutes, some of which became

11   effective July 1, 2021, may require that institutions offer certain educational resources and

12   services to student-athletes relating to name, image, and likeness, and that some NCAA

13   member institutions have offered such educational resources and services. The Big 12

14   lacks sufficient knowledge or information to form a belief as to the truth of the allegations

15   in Paragraph 15 concerning alleged comments of Rick George, the alleged programs of

16   the University of Nebraska and the University of Colorado, and the NAIA and therefore

17   denies them. The Big 12 denies the remaining allegations of Paragraph 15.

18       16.    Upon information and belief, the Big 12 admits that the NCAA entered an

19   eight-year extension of its media contract to broadcast the NCAA Division I basketball

20   tournament. The Big 12 lacks sufficient knowledge or information to form a belief as to

21   the truth of the allegations in Paragraph 16 concerning the terms of any contracts entered

22   into by other entities and therefore denies them. The Big 12 denies the remaining

23   allegations of Paragraph 16.

24       17.    The Big 12 admits that California has passed the Fair Pay to Play Act and

25   that multiple other states have introduced or passed legislation or issued executive orders

26   relating to NIL. The Big 12 denies the remaining allegations of Paragraph 17.

27       18.    The Big 12 admits that the NCAA and certain of its working groups have

28   studied, issued statements regarding, and drafted proposed rules for consideration

ANSWER OF DEFENDANT
THE BIG 12 CONFERENCE, INC.                6              4:20-CV-03919 CW

related to certain NIL issues in 2019 and 2020. The Big 12 denies the remaining allegations of Paragraph 18.

19.     The Big 12 admits that defendants in *Alston* appealed the Ninth Circuit's decision to the United States Supreme Court. The Big 12 denies the remaining allegations of Paragraph 19.

20.     The Big 12 admits that the NCAA's Interim NIL Policy became effective on July 1, 2021 and that the laws of various states were due to go into effect on that date. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 20 concerning alleged lobbying efforts of the NCAA and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 20.

21.     The Big 12 admits that on June 21, 2021 the United States Supreme Court issued its opinion in *Alston*. The Big 12 further admits that on June 24, 2021 this Court issued its ruling on Defendants' Motion to Dismiss Plaintiffs' initial complaint in this action. The Big 12 denies the remaining allegations of Paragraph 21.

22.     The Big 12 admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness could or would not be impacted by the application of certain NCAA bylaws. The Big 12 denies the remaining allegations of Paragraph 22.

23.     The Big 12 admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness would not be impacted by the application of certain NCAA bylaws. The Big 12 denies the remaining allegations of Paragraph 23.

24.     Upon information and belief, the Big 12 admits that, according to unverified media reports, certain student-athletes at some schools and in some sports have been

offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 24 concerning the University of Florida, the University of Michigan, and the industry affiliations of entities allegedly entering agreements with student-athletes and therefore denies them. Upon information and belief, the Big 12 admits that according to unverified media reports, the University of North Carolina and Brandr announced a program in July 2021 addressing licensing of marks in certain circumstances; however, the Big 12 lacks sufficient knowledge or information sufficient to form a belief as to the truth of the allegations about the terms of the program and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 24.

25.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 25 and therefore denies them.

26.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 26 and therefore denies them.

27.     The Big 12 admits that state laws and the Interim NIL Policy have created opportunities for student-athletes to take advantage of NIL rights. Upon information and belief, the Big 12 admits that according to unverified media reports certain student-athletes at the University of Texas are purportedly engaged in activities related to alleged apparel ventures. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 27 and therefore denies them.

28.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 28 and therefore denies them.

29.     The Big 12 admits that recently enacted state statutes, some of which became effective July 1, 2021, may require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have offered such educational resources and services. The Big 12

1   lacks sufficient knowledge or information to form a belief as to the truth of the remaining

2   allegations of Paragraph 29 and therefore denies them.

3        30.     The Big 12 lacks sufficient knowledge or information to form a belief as to

4   the truth of the allegations in Paragraph 30 concerning alleged comments of unidentified

5   schools across the country and therefore denies them. The Big 12 denies the remaining

6   allegations of Paragraph 30.

7        31.     The Big 12 lacks sufficient knowledge or information to form a belief as to

8   the truth of the allegations in Paragraph 31 concerning alleged surveys and consumer

9   sentiment and therefore denies them. The Big 12 denies the remaining allegations of

10  Paragraph 31

11       32.     The Big 12 denies the allegations of Paragraph 32.

12       33.     The Big 12 admits that the NCAA issued an Interim NIL Policy (along with

13  accompanying materials) effective July 1, 2021 (the date that certain state laws and

14  executive orders addressing NIL were effective or soon to be effective), with the result

15  that certain activities relating to name, image and likeness would not be impacted by the

16  application of certain NCAA bylaws. The Big 12 lacks sufficient knowledge or information

17  to form a belief as to the truth of the allegations in Paragraph 33 concerning alleged

18  comments of Mark Emmert and therefore denies them. The Big 12 denies that the

19  injunction described in Paragraph 33 would be appropriate or legally justified. The Big 12

20  denies the remaining allegations of Paragraph 33.

21       34.     The Big 12 denies that an injunction as described in Paragraph 34 would be

22  appropriate or legally justified. The Big 12 denies the remaining allegations of Paragraph

23  34.

24       35.     The Big 12 admits that Plaintiffs seek an injunction but denies that Plaintiffs

25  are entitled to an injunction. The Big 12 specifically denies that it has engaged in any

26  unlawful or anticompetitive conduct. The Big 12 denies the remaining allegations of

27  Paragraph 35.

28

36.     The Big 12 admits that Plaintiffs seek the relief stated in Paragraph 36 but denies that Plaintiffs are entitled to such relief. The Big 12 specifically denies that it has engaged in any unlawful or anticompetitive conduct. The Big 12 denies the remaining allegations of Paragraph 36.

37.     The Big 12 admits that Plaintiffs seek the relief stated in Paragraph 37 but denies that Plaintiffs are entitled to such relief. The Big 12 specifically denies that it has engaged in unlawful or anticompetitive conduct. The Big 12 denies the remaining allegations of Paragraph 37.

38.     The Big 12 admits that Plaintiffs seek the relief stated in Paragraph 38 but denies that Plaintiffs are entitled to such relief. The Big 12 specifically denies that it has engaged in any unlawful or anticompetitive conduct. The Big 12 denies the remaining allegations of Paragraph 38.

39.     The allegations of Paragraph 39 call for legal conclusions to which no response is required. To the extent any response is necessary, the Big 12 admits that Plaintiffs allege subject matter jurisdiction exists under the statutes cited in Paragraph 39, but denies that Plaintiffs or purported class members are entitled to any relief sought. The Big 12 denies the remaining allegations of Paragraph 39.

40.     The Big 12 denies the allegations of Paragraph 40 but does not challenge venue in this action.

41.     The Big 12 admits that the defendants have transacted business (as that term is used in venue statutes) throughout the United States and that the University of California–Berkeley, Stanford University, Santa Clara University, the University of San Francisco, and St. Mary's College are located in the Northern District of California. The Big 12 denies the remaining allegations of Paragraph 41 but does not challenge personal jurisdiction in this action.

42.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 42 and therefore denies them.

43.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 43 and therefore denies them.

44.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 44 and therefore denies them.

45.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 45 and therefore denies them.

46.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 46 and therefore denies them.

47.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 47 and therefore denies them.

48.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 48 and therefore denies them.

49.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 49 and therefore denies them.

50.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 50 and therefore denies them.

51.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 51 and therefore denies them.

52.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 52 and therefore denies them.

53.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 53 and therefore denies them.

54.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 54 and therefore denies them.

55.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 55 and therefore denies them.

56.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 56 and therefore denies them.

57.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 57 and therefore denies them.

58.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 58 and therefore denies them.

59.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 59 and therefore denies them.

60.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 60 and therefore denies them.

61.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 61 and therefore denies them.

62.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 62 and therefore denies them.

63.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 63 and therefore denies them.

64.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 64 and therefore denies them.

65.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 65 and therefore denies them.

66.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 66 and therefore denies them.

67.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 67 and therefore denies them.

68.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 68 and therefore denies them.

69.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 69 and therefore denies them.

70.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 70 and therefore denies them.

71.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 71 and therefore denies them.

72.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 72 and therefore denies them.

73.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 73 and therefore denies them.

74.     The Big 12 admits that the NCAA is an unincorporated not-for-profit educational organization founded in 1906 with its current principal office in Indianapolis, Indiana. The Big 12 further admits that the NCAA has more than 1,200 colleges, universities, and athletic conferences, including the Conference Defendants, which are located throughout the United States. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 74 concerning comments the NCAA has allegedly made about whether it speaks and acts for colleges and universities on athletic matters at a national level and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 74.

75.     The Big 12 admits that the NCAA and its members have adopted a constitution and bylaws, which set forth procedures for amendments thereto. The Big 12 further admits that the NCAA enforces compliance with its bylaws and may impose penalties for noncompliance in some instances. The Big 12 denies the remaining allegations of Paragraph 75.

76.     The Big 12 admits that the NCAA is comprised of numerous member institutions organized in three divisions and that some of those institutions sponsor football teams. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 76 concerning the specific number of institutions in different divisions or that sponsor football programs and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 76.

77.     The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 77 and therefore denies them.

78.     Upon information and belief, the Big 12 admits that the Pac-12 is an unincorporated association with its principal offices located in California, that it is a multi-sport collegiate athletic conference, and a formal "conference member" of NCAA Division I. Upon information and belief, the Big 12 further admits that the Pac-12 is an IRS § 501(c)(3) entity. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 78 and therefore denies them.

79.     The Big 12 admits that the Pac-12's current members are the institutions identified in Paragraph 79. The Big 12 denies the remaining allegations of Paragraph 79.

80.     The Big 12 denies the allegations of Paragraph 80.

81.     Upon information and belief, the Big 12 admits that the Big Ten is a nonprofit corporation with its principal offices located in Illinois, that it is a multi-sport collegiate athletic conference, and a formal "conference member" of NCAA Division I. Upon information and belief, the Big 12 further admits that the Big Ten is an IRS § 501(c)(3) entity. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 81 and therefore denies them.

82.     The Big 12 admits that the Big Ten's current members are the institutions identified in Paragraph 82, and that all of its football members are in the Football Bowl Subdivision. The Big 12 denies the remaining allegations of Paragraph 82.

83.     The Big 12 denies the allegations of Paragraph 83.

84.     The Big 12 admits that it is a nonprofit corporation with its principal offices located in Texas, that it is a multi-sport collegiate athletic conference, and a formal "conference member" of NCAA Division I. The Big 12 further admits that it is an IRS § 501(c)(3) entity and that it filed a 2017 IRS Form 990, which stated that the Big 12's total revenue was $373,924,498.00, the majority of which was distributed to its Member Institutions. The Big 12 denies the remaining allegations of Paragraph 84.

85.     The Big 12 admits the allegations of Paragraph 85.

86.     The Big 12 denies the allegations of Paragraph 86.

87.     Upon information and belief, the Big 12 admits that the SEC is an unincorporated association with its principal offices located in Alabama, that it is a multi-sport collegiate athletic conference, and a formal "conference member" of NCAA Division I. Upon information and belief, the Big 12 further admits that the SEC is an IRS § 501(c)(3) entity. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 87 and therefore denies them.

88.     The Big 12 admits that the SEC's current members are the institutions identified in Paragraph 88, and that all of its football members are in the Football Bowl Subdivision. The Big 12 denies the remaining allegations of Paragraph 88.

89.     The Big 12 denies the allegations of Paragraph 89.

90.     Upon information and belief, the Big 12 admits that the ACC is an unincorporated association with its principal offices located in Greensboro, North Carolina, that it is a multi-sport collegiate athletic conference, and a formal "conference member" of NCAA Division I. Upon information and belief, the Big 12 further admits that the ACC is an IRS § 501(c)(3) entity. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 90 and therefore denies them.

91.     The Big 12 admits that the ACC's current members are the institutions identified in Paragraph 91, and that all of its football members are in the Football Bowl Subdivision. The Big 12 denies the remaining allegations of Paragraph 91.

92.     The Big 12 denies the allegations of Paragraph 92.

93.     The Big 12 admits that Plaintiffs purport to give the terms identified in Paragraph 93 the definitions set forth therein but denies that the characterizations contained in those definitions and that those definitions are accurate or appropriate in this matter. The Big 12 denies the remaining allegations of Paragraph 93.

94.     The Big 12 will respond separately to the various allegations in other Paragraphs of the Complaint and, except as expressly admitted in responses to such other allegations, denies the allegations of Paragraph 94.

95.     The Big 12 denies the allegations of Paragraph 95.

96.     The Big 12 admits that Plaintiffs seek to challenge NCAA rules that include limitations on compensation to student-athletes, including for the alleged use of their names, images, and likenesses. The Big 12 denies the remaining allegations of Paragraph 96.

97.     The Big 12 admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaw 12.5.2.1 in Paragraph 97. The Big 12 further admits that the NCAA Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 denies the remaining allegations of Paragraph 97.

98.     The Big 12 admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaw 12.5.2.2 in Paragraph 98. The Big 12 further admits that the NCAA Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 denies the remaining allegations of Paragraph 98.

99.     The Big 12 admits that NCAA rules include limitations on compensation to student-athletes, including for the alleged use of their names, images, and likenesses, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 denies the remaining allegations of Paragraph 99.

100.    The Big 12 admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaws 12.4.1 and 12.4.1.1 in Paragraph 100. The Big 12 further admits that the NCAA Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 denies the remaining allegations of Paragraph 100.

101.    The Big 12 admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaw 12.4.2.3 in Paragraph 101. The Big 12 further admits that the NCAA Manual sets forth NCAA rules, subject to the changes in application effected by

the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 denies the remaining allegations of Paragraph 101.

102.   The Big 12 admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaw 12.4.4 in Paragraph 102. The Big 12 further admits that the NCAA Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 denies the remaining allegations of Paragraph 102.

103.   The Big 12 admits that the NCAA can enforce compliance with its bylaws and may, in some instances, impose various penalties for noncompliance as set forth in its bylaws. The Big 12 denies the remaining allegations of Paragraph 103.

104.   The Big 12 admits that the NCAA Manual sets forth current NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 104 concerning what sponsors could or may do and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 104.

105.   The Big 12 denies the allegations of Paragraph 105.

106.   The Big 12 denies the allegations of Paragraph 106.

107.   The Big 12 admits that the NCAA Manual sets forth current NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 denies the remaining allegations of Paragraph 107.

108.   The Big 12 admits that NCAA rules include limitations on compensation to student-athletes, including for the alleged use of their names, images, and likenesses, and rules governing student-athlete eligibility and certain conduct, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 denies the remaining allegations of Paragraph 108.

109.   Upon information and belief, the Big 12 admits that schools in NCAA Divisions II and III offer fewer scholarships than those in Division I, and that collective bargaining agreements of the NFL and the NBA include restrictions on which individuals are eligible to play in those leagues and the timing of when they are eligible. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 109 concerning NAIA, NCCAA, and USCAA schools, and the allegations concerning whether recruits "rarely forego" opportunities to play Division I sports in order to play professionally, and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 109.

110.   The Big 12 admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image, and likeness would not be impacted by application of certain NCAA bylaws. The Big 12 denies the remaining allegations of Paragraph 110.

111.   The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of allegations in Paragraph 111 concerning whether or not any NCAA member institutions have paid NIL compensation to student-athletes and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 111.

112.   Upon information and belief, the Big 12 admits that there have been unverified media reports that certain student-athletes in some sports have been offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 112 concerning whether or not any NCAA member institutions have paid NIL compensation to student-athletes. The Big 12 further lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph

112 concerning Plaintiffs' awareness, or lack thereof, of NCAA member institutions' or conferences' NIL policies. The Big 12 denies the remaining allegations of Paragraph 112.

113.    The Big 12 admits that recently enacted state statutes, some of which became effective July 1, 2021, may require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have offered such educational resources and services. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 113 concerning alleged programs as of July 1, 2021, Michigan State, the University of Michigan, Ohio State, Stanford, and UC Berkeley and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 113.

114.    Upon information and belief, the Big 12 admits that there have been unverified media reports that certain student-athletes at some schools and in some sports have been offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 114 concerning Olivia Dunne and the alleged value of NIL rights and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 114.

115.    Upon information and belief, the Big 12 admits that there have been unverified media reports that certain student-athletes at some schools and in some sports have been offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big 12 denies the remaining allegations of Paragraph 115.

116.    The Big 12 denies the allegations of Paragraph 116.

117.    The Big 12 denies the allegations of Paragraph 117.

118.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 118 concerning the policies that various educational institutions may have relating to students other than student-athletes and

concerning alleged comments of Brian Freeman, CEO of HeartBeat, and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 118.

119.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 119 concerning the practices of various educational institutions relating to students other than student-athletes, and concerning a YouTube channel at Colorado State University, and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 119.

120.    The Big 12 admits that NCAA rules include limitations on compensation to student-athletes, including for the alleged use of their names, images, and likenesses. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 120 concerning Breana Dodd and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 120.

121.    The Big 12 lacks sufficient knowledge or information to form a belief as to the allegations included in Paragraph 121 concerning alleged comments of Mark Emmert and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 121.

122.    The Big 12 denies the allegations of Paragraph 122.

123.    Upon information and belief, the Big 12 admits that former NCAA Executive Director Walter Byers authored a book titled Unsportsmanlike Conduct: Exploiting College Athletes, published in 1995. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 123 and therefore denies them.

124.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 124 concerning any alleged website content and regarding reported statements made about or by the NCAA and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 124.

125.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 125 and therefore denies them.

126.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 126 and therefore denies them.

127.    The Big 12 admits that Article I of the NCAA Constitution contains the language quoted in Paragraph 127.

128.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 128 and therefore denies them.

129.    The Big 12 admits that the NCAA is a voluntary organization. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 129 and therefore denies them.

130.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 130 and therefore denies them.

131.    The Big 12 admits that the NCAA Manual contains the provisions quoted in part from NCAA Constitution Article 3.02.3 in Paragraph 131. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 131 and therefore denies them.

132.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 132 and therefore denies them.

133.    The Big 12 admits that the NCAA legislative system involves boards, councils, and numerous committees, groups, and structures. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 133 concerning reported comments made by the NCAA and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 133.

134.    The Big 12 admits that the NCAA and its members have adopted a Constitution and Bylaws as set forth in the NCAA Manual, which is published annually and updated periodically. The Big 12 denies the remaining allegations of Paragraph 134.

135.    The Big 12 admits that the method of adoption of NCAA rules and amendments thereto is set forth in the NCAA Manual. The Big 12 further admits that the

NCAA Manual contains the provisions quoted in part from NCAA Bylaw 5.2.2 in Paragraph 135. The Big 12 denies the remaining allegations of Paragraph 135.

136.     The Big 12 admits that the NCAA Manual sets forth the NCAA rules. The Big 12 further admits that the NCAA Manual contains the provisions quoted in part from Article 1.3.2 and Article 2.8.1 in Paragraph 136. The Big 12 denies the remaining allegations of Paragraph 136.

137.     The Big 12 admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 further admits that the NCAA Manual contains the provisions quoted in part from Article 3.1 and Article 3.2.1.2 in Paragraph 137. The Big 12 denies the remaining allegations of Paragraph 137.

138.     The Big 12 admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 further admits that the NCAA Manual contains the provisions quoted in part from Article 3.2.4 and Article 3.2.4.4 in Paragraph 138. The Big 12 specifically denies that it has engaged in price-fixing activity. The Big 12 denies the remaining allegations of Paragraph 138.

139.     The Big 12 admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 specifically denies that it has engaged in price-fixing activity. The Big 12 denies the remaining allegations of Paragraph 139.

140.     The Big 12 admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 further admits that the NCAA Manual contains the provisions quoted in part from Articles 2.8.3, 3.2.5.1, 3.01.4, and 3.2.5.1.1 in Paragraph 140. The Big 12 denies the remaining allegations of Paragraph 140.

141.     The Big 12 admits that certain member conferences may assist with compliance with NCAA rules. The Big 12 lacks sufficient knowledge or information to

form a belief as to the truth of the allegations included in Paragraph 141 concerning the Pac-12 handbook and the statements therein and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 141.

142.   The Big 12 admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big 12 further admits that the NCAA Manual contains the provisions quoted in part from Bylaw 14.01.3 in Paragraph 142. The Big 12 denies the remaining allegations of Paragraph 142.

143.   The Big 12 denies the allegations of Paragraph 143.

144.   The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 144 concerning alleged comments of Mark Lewis and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 144.

145.   The Big 12 admits that a small minority of NCAA Division I athletic departments generate positive net revenues after the expenses incurred by the institutions are offset against revenue generated by institutions and distributed to the institutions by the NCAA and conferences. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 145 concerning alleged revenue of the NCAA, other conferences, and individual athletic programs and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 145.

146.   The Big 12 denies the allegations of Paragraph 146.

147.   The Big 12 admits that it is party to broadcasting agreements. The Big 12 further admits that in 2016 the NCAA announced a new eight-year agreement with CBS and Turner Sports for the rights to broadcast the NCAA Division I basketball tournament on television and that the license fee has been publicly reported to be approximately $8.8 billion over the eight-year term of the agreement. The Big 12 further admits that the NCAA distributes net revenues from the broadcast licenses to its members. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 147 concerning alleged terms of broadcast licensing agreements of other

1    entities and therefore denies them. The Big 12 denies the remaining allegations of

2    Paragraph 147.

3         148.   The Big 12 lacks sufficient knowledge or information to form a belief as to

4    the truth of the allegations in Paragraph 148 concerning alleged advertising revenue at

5    various events and therefore denies them. The Big 12 denies the remaining allegations of

6    Paragraph 148.

7         149.   The Big 12 admits that it is party to and/or receives revenue from certain

8    sponsorship agreements. Upon information and belief, the Big 12 further admits that the

9    NCAA, other conferences, and NCAA member institutions are parties to certain

10   sponsorship agreements. The Big 12 denies the remaining allegations of Paragraph 149.

11        150.   The Big 12 admits that Senator Murphy published a report with certain

12   statements as set forth in Paragraph 150. The Big 12 lacks sufficient knowledge or

13   information to form a belief as to the truth of the allegations in Paragraph 150 concerning

14   alleged NCAA contractual agreements and therefore denies them. The Big 12 denies the

15   remaining allegations of Paragraph 150.

16        151.   Upon information and belief, the Big 12 admits that some NCAA member

17   institutions have contracts with apparel companies. The Big 12 lacks sufficient knowledge

18   or information to form a belief as to the truth of the allegations in Paragraph 151

19   concerning specifics of alleged apparel agreements and therefore denies them. The Big 12

20   denies the remaining allegations of Paragraph 151.

21        152.   The Big 12 lacks sufficient knowledge or information to form a belief as to

22   the truth of the allegations in Paragraph 152 concerning alleged apparel agreements and

23   therefore denies them. The Big 12 denies the remaining allegations of Paragraph 152.

24        153.   The Big 12 lacks sufficient knowledge or information to form a belief as to

25   the truth of the allegations in Paragraph 153 concerning alleged apparel agreements and

26   therefore denies them. The Big 12 denies the remaining allegations of Paragraph 153.

27        154.   Upon information and belief, the Big 12 admits that apparel companies,

28   through involvement in AAU basketball, might influence the selection of colleges by some

high school students. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 154 concerning the AAU and alleged apparel agreements and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 154.

155.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 155 concerning the percentage of prospects who attend a college or remain affiliated with merchandise brands in the NBA and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 155.

156.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 156 concerning alleged actions and comments of Sabrina Ionescu and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 156.

157.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 157 concerning alleged apparel agreements and alleged comments of Rick Pitino and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 157.

158.    The Big 12 admits that in 2017 the FBI announced the results of an investigation into certain identified issues and persons relating to college basketball, that complaints were filed, and that certain persons were indicted. The Big 12 denies the remaining allegations of Paragraph 158.

159.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 159 concerning alleged comments of Sonny Vaccaro and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 159.

160.    Upon information and belief, the Big 12 admits that certain NCAA member institutions are parties to certain social media agreements. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 160 and therefore denies them.

161.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 161 concerning the University of Southern California and alleged comments of unidentified persons at Fox Sports and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 161.

162.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 162 concerning alleged social media agreements and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 162.

163.    The Big 12 admits that it is a party to and/or receives revenue from certain sponsorship agreements. Upon information and belief, the Big 12 admits that the NCAA, other conferences, and NCAA member institutions are parties to certain sponsorship agreements. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 163 and therefore denies them.

164.    Upon information and belief, the Big 12 admits that Division I members invest funds for a variety of purposes, including, but not limited to, coaching contracts (which in many instances provide superior coaching for the benefit of student-athletes) and playing, training, and other facilities, which are beneficial and desirable to student-athletes. The Big 12 denies the remaining allegations of Paragraph 164.

165.    The Big 12 admits that institutions invest in facilities for various purposes, including, but not limited to, playing and training, and that those facilities have attributes which are beneficial and desirable to student-athletes. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 165 regarding facilities at Clemson and South Carolina and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 165.

166.    The Big 12 admits that NCAA member institutions pay the salaries and benefits of their administrators and coaches. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 166 concerning the alleged salary information of coaches and administrators and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 166.

167.    Upon information and belief, the Big 12 admits that NCAA member institutions pay the salaries and benefits of their administrators and coaches. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 167 concerning alleged salary, benefit, and endorsement information of the identified individuals and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 167.

168.    Upon information and belief, the Big 12 admits that some coaches enter commercial agreements with various entities. The Big 12 denies the remaining allegations of Paragraph 168.

169.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 169 and therefore denies them.

170.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 170 and therefore denies them.

171.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 171 and therefore denies them.

172.    The Big 12 admits that NCAA rules include limitations on compensation to student-athletes and that coaches are not subject to the student-athlete compensation rules. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 172 concerning Dabo Swinney and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 172.

173.    The Big 12 admits that NCAA rules include limitations on compensation to student-athletes. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 173 concerning offers allegedly made to student-athletes and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 173.

174.    The Big 12 admits that NCAA rules include limitations on compensation to student-athletes. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 174 concerning alleged reporting of

ESPN and alleged comments of Kevin Lennon and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 174.

175.    The Big 12 denies the allegations of Paragraph 175.

176.    Upon information and belief, the Big 12 admits that EA Sports produced video games utilizing collegiate marks under licensing agreement with the NCAA until 2014. The Big 12 further admits that a lawsuit was brought by Sam Keller against EA and the NCAA related to those games. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 176 and therefore denies them.

177.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 177 and therefore denies them.

178.    The Big 12 denies the allegations of Paragraph 178.

179.    The Big 12 denies the allegations of Paragraph 179.

180.    The Big 12 admits that the United States Supreme Court issued its opinion in *NCAA v. Board of Regents* in 1984. The Big 12 further admits that a small number of NCAA Division I athletic departments generate positive net revenues and that there is consumer demand for collegiate sports. The Big 12 denies the remaining allegations of Paragraph 180.

181.    The Big 12 admits that the United States Court of Appeals for the Tenth Circuit decided *Law v. NCAA*. The Big 12 further admits that there is consumer demand for collegiate sports. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 181 concerning alleged salaries of assistant coaches and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 181.

182.    The Big 12 denies Plaintiffs' characterization of the filings in *White v. NCAA*. The Big 12 admits that there is consumer demand for collegiate sports and that COA grants-in-aid have been permitted and granted since 2015. The Big 12 denies the remaining allegations of Paragraph 182.

183.    The Big 12 denies Plaintiffs' characterization of the opinions issued by this Court and the United States Court of Appeals for the Ninth Circuit in *O'Bannon v. NCAA* and *In re NCAA Athletic Grant-in-Aid Antitrust Litigation*. The Big 12 admits that there is consumer demand for collegiate sports and that COA grants-in-aid have been permitted and granted since 2015. The Big 12 denies the remaining allegations of Paragraph 183.

184.    The Big 12 admits that the United States Court of Appeals for the Ninth Circuit issued an opinion in *In re NCAA Athletic Grant-in-Aid Antitrust Litigation* on May 18, 2020. The Big 12 denies the remaining allegations of Paragraph 184.

185.    The Big 12 admits that the language quoted in Paragraph 185 appears in the Ninth Circuit's decision in *In re NCAA Athletic Grant-in-Aid Antitrust Litigation*. The Big 12 denies the remaining allegations of Paragraph 185.

186.    The Big 12 admits that the opinion in *NCAA v. Alston*, 141 S. Ct. 2141 (2021), was issued on June 21, 2021. The Big 12 denies the remaining allegations of Paragraph 186.

187.    The Big 12 admits that on June 24, 2021 this Court issued its ruling on Defendants' Motion to Dismiss Plaintiffs' initial complaint in this action. The Big 12 denies the remaining allegations of Paragraph 187.

188.    Upon information and belief, the Big 12 admits that several state laws and executive orders relating to student-athlete NIL went into effect on or about July 1, 2021. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 188 concerning the specific contents of the legislation or executive orders in effect as of July 1, 2021 and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 188.

189.    The Big 12 admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image, and likeness would not be impacted by the application of certain NCAA bylaws. The Big 12 denies the remaining allegations of paragraph 189.

190.    The Big 12 admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image, and likeness would not be impacted by the application of certain NCAA bylaws. Upon information and belief, the Big 12 further admits that there have been unverified media reports that certain student-athletes in some sports have been offered and/or have accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 190 concerning the alleged comments of Mark Emmert, Mike Bobinski, and unidentified representatives of Defendants and therefore denies them. The Big 12 admits that Bob Bowlsby was quoted in the article cited in footnote 114. The Big 12 denies the remaining allegations of Paragraph 190.

191.    The Big 12 denies the allegations of Paragraph 191.

192.    The Big 12 denies the allegations of Paragraph 192.

193.    The Big 12 admits that Defendants' procompetitive benefits in past litigation have included, among other things, consumer demand for collegiate sports. The Big 12 denies the remaining allegations of Paragraph 193.

194.    The Big 12 admits that that the opinion of the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation contains the language quoted in Paragraph 194. The Big 12 denies the remaining allegations of Paragraph 194.

195.    The Big 12 admits that the opinion issued by the United States District Court for the Northern District of California in *In re NCAA Athletic Grant-in-Aid Antitrust Litigation* contains the language quoted in Paragraph 195. The Big 12 denies the remaining allegations of Paragraph 195.

196.    The Big 12 denies the allegations of Paragraph 196.

197.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 197 concerning alleged unattributed surveys and

therefore denies them. The Big 12 specifically denies that it has engaged in any unlawful or anticompetitive conduct. The Big 12 denies the remaining allegations of Paragraph 197.

198.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations the allegations of Paragraph 198 and therefore denies them.

199.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 199 and therefore denies them.

200.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 200 concerning alleged polling and what such polls might indicate and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 200.

201.    The Big 12 admits that the opinion issued by the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation contains the language quoted in Paragraph 201. The Big 12 denies the remaining allegations of Paragraph 201.

202.    The Big 12 admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in Paragraph 202. The Big 12 denies the remaining allegations of Paragraph 202.

203.    The Big 12 admits that NCAA rules include limitations on compensation to student-athletes, and that there are provisions in the rules allowing for limited, non-monetary athletic participation mementos and awards, pre-matriculation tennis awards, and awards presented by Olympic governing bodies to the few student-athletes who compete in the Olympics. Upon information and belief, the Big 12 further admits that some Division I members have used Student Assistance Funds to purchase loss-of-value insurance policies to enable student-athletes to remain in college and compete in collegiate athletics. The Big 12 denies the remaining allegations of Paragraph 203.

204.    The Big 12 admits that the opinion issued by the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation contains the language quoted in Paragraph 204. The Big 12 denies the remaining allegations of Paragraph 204.

205.    The Big 12 admits that the NCAA has sought to expand benefits available to student-athletes within its conception, and consistent with the collegiate model. The Big 12 further admits that the NCAA began allowing full COA athletic grants-in-aid in 2015, which naturally increased the number of student-athletes who might receive above-COA total assistance. The Big 12 further admits that consumers demand collegiate sports and that a minority of college football and basketball programs generate positive net revenues. The Big 12 denies the remaining allegations of Paragraph 205.

206.    The Big 12 lacks knowledge, information, or belief sufficient to admit or deny the allegations included in Paragraph 206 concerning alleged amounts received by certain individuals, including Kyler Murray, and therefore denies them. The Big 12 admits there is consumer demand for collegiate sports. The Big 12 denies the remaining allegations of Paragraph 206.

207.    The Big 12 admits that Plaintiffs do not purport to challenge NCAA rules requiring student-athletes to be enrolled in their institutions and to meet academic eligibility standards. The Big 12 further admits that recently enacted state statutes, some of which became effective July 1, 2021, may require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have offered such educational resources and services. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 207 and therefore denies them.

208.    The Big 12 admits that there is a trial record and that the District Court and the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation issued opinions. The Big 12 denies the remaining allegations of Paragraph 208.

209.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 209 concerning alleged comments by unidentified critics and therefore denies them. The Big 12 admits that in 2017 the FBI announced the results of an investigation into certain identified issues and persons relating to college

1 basketball, that the FBI filed complaints, and that certain persons were indicted. The Big

2 12 denies the remaining allegations of Paragraph 209.

3       210.    The Big 12 admits that the NCAA issued an Interim NIL Policy effective July

4 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective

5 or soon to be effective), with the result that certain activities relating to name, image, and

6 likeness would not be impacted by the application of certain NCAA bylaws. Upon

7 information and belief, the Big 12 further admits that there have been unverified media

8 reports that certain student-athletes at some schools and in some sports have been offered

9 and/or accepted compensation for the alleged use of their names, images, and likenesses

10 following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big

11 12 lacks sufficient knowledge or information to form a belief as to the truth of the

12 allegations in Paragraph 210 concerning alleged evidence of the interests of consumers

13 and sponsors and therefore denies them. The Big 12 denies the remaining allegations of

14 Paragraph 210.

15       211.    The Big 12 lacks sufficient knowledge or information to form a belief as to

16 the truth of the allegations in Paragraph 211 concerning alleged comments of Mark

17 Emmert. The Big 12 admits that the NCAA issued an Interim NIL Policy (along with

18 accompanying materials) effective July 1, 2021 (the date that certain state laws and

19 executive orders addressing NIL were effective or soon to be effective), with the result

20 that certain activities relating to name, image, and likeness would not be impacted by the

21 application of certain NCAA bylaws. The Big 12 admits that the opinion issued by the

22 United States Court of Appeals for the Ninth Circuit in *O'Bannon v. NCAA* contains the

23 language quoted in Paragraph 211. The Big 12 denies that the purported less restrictive

24 alternatives proffered in Paragraph 211 would be appropriate or legally justified. The Big

25 12 denies the remaining allegations of Paragraph 211.

26       212.    The allegations of Paragraph 212 call for legal conclusions to which no

27 response is required. To the extent a response is required, the Big 12 denies the allegations

28 of Paragraph 212.

213.    The Big 12 admits that integration of student-athletes is a procompetitive justification for various rules that have been challenged in litigation. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 213 concerning alleged comments by unidentified NCAA personnel and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 213.

214.    The Big 12 denies the allegations of Paragraph 214.

215.    The Big 12 admits that the opinion issued by the United States Court of Appeals for the Ninth Circuit in *O'Bannon v. NCAA* contains the language quoted in Paragraph 215. The Big 12 denies the remaining allegations of Paragraph 215.

216.    Upon information and belief, the Big 12 admits that students at college campuses have varying access to income or wealth. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations included in Paragraph 216 concerning the alleged impact on wealthier students and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 216.

217.    Upon information and belief, the Big 12 admits that some college students in America are employed and compensated. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 217 and therefore denies them.

218.    The Big 12 admits that the opinions issued by the District Court and the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation contain the language quoted in Paragraph 218. The Big 12 denies the allegations of Paragraph 218.

219.    The Big 12 admits that NCAA rules contain limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses. The Big 12 further admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains substantially the language quoted in Paragraph 219. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 219 concerning the policies that various educational institutions may have

relating to students other than student-athletes and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 219.

220.    The Big 12 admits that Plaintiffs do not purport to challenge NCAA rules requiring student-athletes to be enrolled in their institutions and to meet academic eligibility standards. The Big 12 further admits that recently enacted state statutes, some of which became effective July 1, 2021, may require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have offered such educational resources and services. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 220 and therefore denies them.

221.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 221 and therefore denies them.

222.    The Big 12 denies the allegations of Paragraph 222.

223.    The Big 12 denies the allegations of Paragraph 223.

224.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 224 concerning the alleged comments of John Shoop and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 224.

225.    The Big 12 admits that NCAA rules include limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses, which limitations have recently been altered by state laws and by the NCAA's Interim Guidance. The Big 12 denies the remaining allegations of Paragraph 225.

226.    The Big 12 denies the allegations of Paragraph 226.

227.    The Big 12 denies the allegations of Paragraph 227.

228.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 228 and therefore denies them.

229.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 229 and therefore denies them.

230.    Upon information and belief, the Big 12 admits that the NCAA's largest source of revenue is derived from media rights and attendance related to the NCAA Division I basketball tournament, and that the NCAA distributes a large portion of those funds to member institutions. The Big 12 denies the remaining allegations of Paragraph 230.

231.    The Big 12 admits that the NCAA makes payments to schools, which fund certain men's and women's sports. The Big 12 denies the allegations in Paragraph 231 characterizing the alleged financial value associated with or derived from women's basketball, television viewership, and attendance. The Big 12 denies that the NCAA makes any payments to either men's teams or women's teams. The Big 12 denies the remaining allegations of Paragraph 231.

232.    Upon information and belief, the Big 12 admits that there have been unverified media reports that some administrators, legislators, and members of the public support various concepts of student-athletes having the opportunity to seek compensation for the use of NIL. The Big 12 denies the remaining allegations of Paragraph 232.

233.    The Big 12 admits that California has passed the Fair Pay to Play Act ("SB 206"), set to take effect in 2023, and that other states have introduced legislation relating to NIL. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 233 concerning efforts to change the effective date of SB 206 and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 233.

234.    The Big 12 admits that SB 206 permits certain NIL compensation or benefits as provided in the statute. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 234 concerning the future effects of SB 206 and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 234.

235.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 235 and therefore denies them.

236.    The Big 12 admits that several states have considered or passed legislation relating to student-athletes and NIL. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 236 and therefore denies them.

237.    Upon information and belief, the Big 12 admits that the NCAA opposed certain aspects of SB 206 and communicated certain concerns to Governor Newsom regarding certain aspects. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 237 and therefore denies them.

238.    The Big 12 denies the allegations of Paragraph 238.

239.    The Big 12 admits unverified media sources report that the NCAA and some NCAA members have made public comments regarding possible revision of NCAA NIL rules and considerations relating to any such revisions. The Big 12 further admits that the NCAA and certain of its working groups have studied, issued statements regarding, and drafted proposed rules for consideration related to NIL in 2019 and 2020. The Big 12 admits that the defendants did not prevail in the United States Supreme Court opinion in *Alston* and that this Court issued a ruling denying Defendants' Motion to Dismiss Plaintiffs' initial complaint. The Big 12 further admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image, and likeness would not be impacted by the application of certain NCAA bylaws. The Big 12 denies the remaining allegations of Paragraph 239.

240.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 240 and therefore denies them.

241.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 241 and therefore denies them.

242. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 242 and therefore denies them.

243. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 243 concerning the alleged comments of Warde Manuel and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 243.

244. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 244 concerning the alleged comments of Jack Swarbrick and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 244.

245. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 245 concerning the alleged comments of Kyle Kallander and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 245.

246. The Big 12 admits that there have been unverified media reports that the NCAA and some NCAA members have made public comments regarding possible revision of NCAA rules and considerations relating to any such revisions. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 246 concerning the alleged comments of Scott Frost and Garrett Klassy and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 246.

247. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 247 concerning the alleged comments of Jim Harbaugh and alleged revenues of the University of Michigan and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 247.

248. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 248 concerning the alleged comments of Chris Holtmann and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 248.

249.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 249 and therefore denies them.

250.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 250 and therefore denies them.

251.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 251 and therefore denies them.

252.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 252 concerning the alleged comments of Kristin Williams and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 252.

253.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 253 concerning the alleged comments of Kyle Kallander and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 253.

254.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 254 and therefore denies them.

255.    The Big 12 admits that the NCAA issued a Report of the NCAA Board of Governors on October 29, 2019 that contains the language quoted in Paragraph 255. The Big 12 denies the remaining allegations of Paragraph 255.

256.    The Big 12 admits that the NCAA issued a Report of the NCAA Board of Governors on October 29, 2019 that contains the language quoted in Paragraph 256. The Big 12 denies the remaining allegations of Paragraph 256.

257.    The Big 12 admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains substantially the language quoted in Paragraph 257. The Big 12 denies the remaining allegations of Paragraph 257.

258.    The Big 12 admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in the last sentence of Paragraph 258. The Big 12 denies the remaining allegations of Paragraph 258.

259. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 259 concerning the alleged comments of the NCAA and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 259.

260. The Big 12 admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains substantially the language quoted in Paragraph 260. The Big 12 further admits that the NCAA sought proposals from the three divisions. The Big 12 denies the remaining allegations of Paragraph 260.

261. The Big 12 admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in part in Paragraph 261. The Big 12 denies the remaining allegations of Paragraph 261.

262. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 262 concerning the alleged comments of the Associated Press and alleged expenditures of other entities and therefore denies them.

263. The Big 12 admits that the conferences that are parties to this action sent a letter to congressional leaders on May 23, 2020 regarding potential federal NIL legislation. The Big 12 denies the remaining allegations of Paragraph 263.

264. The Big 12 admits that the NCAA and certain of its working groups have studied, issued statements regarding, and drafted proposed rules for consideration related to NIL in 2019 and 2020. The Big 12 further admits that in or about January 2021 the United States Department of Justice sent the NCAA a letter. The Big 12 denies the remaining allegations of Paragraph 264.

265. The Big 12 admits that there have been unverified media reports that the NCAA and some NCAA members have made public comments regarding possible revision of NCAA NIL rules and considerations relating to any such revisions. Upon information and belief, the Big 12 further admits that Rebecca Blank testified before the Senate Committee on Health, Education, Labor & Pensions in 2020. The Big 12 lacks

sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 265 and therefore denies them.

266.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 266 concerning the alleged comments of Allen Greene and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 266.

267.    The Big 12 admits that Mark Emmert testified before the Senate Commerce Committee in June 2021. The Big 12 denies the remaining allegations of Paragraph 267.

268.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 268 and therefore denies them.

269.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 269 concerning an alleged undated Knight Commission report and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 269.

270.    Upon information and belief, the Big 12 admits that the Knight Commission has issued statements concerning student-athlete NIL. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 270 concerning the alleged comments of the Knight Commission and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 270.

271.    The Big 12 admits that the NCAA has a process for accepting applications for waivers from student-athletes relating to the use of their NIL. The Big 12 further admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in part in Paragraph 271. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 271 concerning the number of waiver applications submitted and approved and concerning the alleged comments of Bernadette McGlade and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 271.

272.    The Big 12 admits that the NCAA issued a Final Report and Recommendations on April 17, 2020. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 272 concerning the characterizations of the content and waivers allegedly granted and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 272.

273.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 273 concerning Arike Ogunbowale and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 273.

274.    The Big 12 denies the allegations of Paragraph 274.

275.    The Big 12 admits that NCAA rules include limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses. The Big 12 denies the remaining allegations of Paragraph 275.

276.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 276 and therefore denies them.

277.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 277 and therefore denies them.

278.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 278 and therefore denies them.

279.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 279 and therefore denies them.

280.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 280 and therefore denies them.

281.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 281 and therefore denies them.

282.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 282 concerning an alleged Axios.com report on Opendorse and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 282.

283.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 283 concerning an alleged fivethirtyeight.com report on Opendorse and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 283.

284.    The Big 12 admits that there have been unverified media reports that certain student-athletes at some schools and in some sports have been offered or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 284 concerning the alleged comments of Mark Emmert, the alleged interests of consumers, and the alleged beliefs of companies and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 284.

285.    The Big 12 denies the allegations of Paragraph 285.

286.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 286 concerning the alleged views of unidentified business leaders and senior executives and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 286.

287.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 287 and therefore denies them.

288.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 288 and therefore denies them.

289.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 289 and therefore denies them.

290.    The Big 12 lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 290 concerning the alleged comments of Matt Micheli and therefore denies them. The Big 12 denies the remaining allegations of Paragraph 290.

1      291.    The Big 12 lacks sufficient knowledge or information to form a belief as to

2  the truth of the allegations of Paragraph 291 and therefore denies them.

3      292.    The Big 12 lacks sufficient knowledge or information to form a belief as to

4  the truth of the allegations of Paragraph 292 and therefore denies them.

5      293.    The Big 12 lacks sufficient knowledge or information to form a belief as to

6  the truth of the allegations of Paragraph 293 and therefore denies them.

7      294.    The Big 12 lacks sufficient knowledge or information to form a belief as to

8  the truth of the allegations in Paragraph 294 concerning the alleged comments of Blake

9  Lawrence and therefore denies them. The Big 12 specifically denies that it has engaged in

10  any unlawful conduct and denies the remaining allegations of Paragraph 294.

11      295.    The Big 12 lacks sufficient knowledge or information to form a belief as to

12  the truth of the allegations of Paragraph 295 and therefore denies them.

13      296.    The Big 12 lacks sufficient knowledge or information to form a belief as to

14  the truth of the allegations in Paragraph 296 concerning the alleged comments of Terry

15  Tumey and therefore denies them. The Big 12 denies the remaining allegations of

16  Paragraph 296.

17      297.    The Big 12 lacks sufficient knowledge or information to form a belief as to

18  the truth of the allegations of Paragraph 297 and therefore denies them.

19      298.    The Big 12 lacks sufficient knowledge or information to form a belief as to

20  the truth of the allegations of Paragraph 298 and therefore denies them.

21      299.    The Big 12 lacks sufficient knowledge or information to form a belief as to

22  the truth of the allegations of Paragraph 299 and therefore denies them.

23      300.    The Big 12 admits that Plaintiffs seek to bring this action on behalf of the

24  putative class identified in Paragraph 300 but denies that such class is properly defined or

25  that this action can be maintained as a class action. The Big 12 denies the remaining

26  allegations of Paragraph 300.

27      301.    The Big 12 admits that Plaintiffs seek to bring this action on behalf of the

28  putative sub-class identified in Paragraph 301 but denies that such sub-class is properly

defined or that this action can be maintained as a class action. The Big 12 denies the remaining allegations of Paragraph 301.

302.    The Big 12 admits that Plaintiffs seek damages from defendants relating to NCAA rules establishing limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses. The Big 12 denies that Plaintiffs are entitled to any such damages. The Big 12 specifically denies that it has engaged in any unlawful conduct. The Big 12 denies the remaining allegations of Paragraph 302.

303.    The Big 12 admits that Plaintiffs seek to bring this action on behalf of the putative sub-class identified in Paragraph 303 but denies that such sub-class is properly defined or that this action can be maintained as a class action. The Big 12 denies the remaining allegations of Paragraph 303.

304.    The Big 12 admits that Plaintiffs seek damages from defendants relating to NCAA rules establishing limitations on compensating student-athletes for the alleged use of their names, images, and likenesses. The Big 12 denies that Plaintiffs are entitled to such damages. The Big 12 specifically denies that it has engaged in any unlawful conduct. The Big 12 denies the remaining allegations of Paragraph 304.

305.    The Big 12 admits that Plaintiffs seek to bring this action on behalf of the putative sub-class identified in Paragraph 305 but denies that such sub-class is properly defined or that this action can be maintained as a class action. The Big 12 denies the remaining allegations of Paragraph 305.

306.    The Big 12 admits that Plaintiffs seek damages from defendants relating to NCAA rules establishing limitations on compensating student-athletes for the alleged use of their names, images, and likenesses. The Big 12 denies that Plaintiffs are entitled to such damages. The Big 12 specifically denies that it has engaged in any unlawful conduct. The Big 12 denies the remaining allegations of Paragraph 306.

307.    The Big 12 admits that Plaintiffs refer in the Complaint to the putative class and sub-classes identified in Paragraphs in 300, 301, 303, and 305 as "the Classes." The Big 12 denies the remaining allegations of Paragraph 307.

1      308.    The Big 12 admits that Plaintiffs seek to bring this action on behalf of the

2  putative class identified in Paragraph 308 but denies that such class is properly defined or

3  that this action can be maintained as a class action. The Big 12 denies the remaining

4  allegations of Paragraph 308.

5      309.    The Big 12 denies the allegations of Paragraph 309.

6      310.    The Big 12 denies the allegations of Paragraph 310.

7      311.    The Big 12 denies the allegations of Paragraph 311.

8      312.    The Big 12 denies the allegations of Paragraph 312.

9      313.    The Big 12 denies the allegations of Paragraph 313.

10     314.    The Big 12 denies the allegations of Paragraph 314.

11     315.    The Big 12 denies the allegations of Paragraph 315.

12     316.    The Big 12 denies the allegations of Paragraph 316.

13     317.    The Big 12 denies the allegations of Paragraph 317.

14     318.    The Big 12 denies the allegations of Paragraph 318.

15     319.    The Big 12 denies the allegations of Paragraph 319.

16     320.    The Big 12 denies the allegations of Paragraph 320.

17     321.    The Big 12 denies the allegations of Paragraph 321.

18     322.    The Big 12 reincorporates and realleges by reference its answers and

19  responses to the allegations set forth in all preceding paragraphs of the Amended

20  Complaint as if fully set forth herein.

21     323.    The Big 12 denies the allegations of Paragraph 323.

22     324.    The Big 12 denies the allegations of Paragraph 324.

23     325.    The Big 12 denies the allegations of Paragraph 325.

24     326.    The Big 12 denies the allegations of Paragraph 326.

25     327.    The Big 12 denies the allegations of Paragraph 327.

26     328.    The Big 12 denies the allegations of Paragraph 328.

27     329.    The Big 12 denies the allegations of Paragraph 329.

28     330.    The Big 12 denies the allegations of Paragraph 330.

331.   The Big 12 denies the allegations of Paragraph 331.

332.   The Big 12 denies the allegations of Paragraph 332.

333.   The Big 12 reincorporates and realleges by reference its answers and responses to the allegations set forth in all preceding paragraphs of the Amended Complaint as if fully set forth herein.

334.   The Big 12 denies the allegations of Paragraph 334.

335.   The Big 12 denies the allegations of Paragraph 335.

336.   The Big 12 denies the allegations of Paragraph 336.

337.   The Big 12 denies the allegations of Paragraph 337.

338.   The Big 12 denies the allegations of Paragraph 338.

339.   The Big 12 denies the allegations of Paragraph 339.

340.   The Big 12 denies the allegations of Paragraph 340.

341.   The Big 12 denies the allegations of Paragraph 341.

342.   The Big 12 denies the allegations of Paragraph 342.

343.   The Big 12 denies the allegations of Paragraph 343.

344.   The Big 12 denies the allegations of Paragraph 344.

345.   The Big 12 reincorporates and realleges by reference its answers and responses to the allegations set forth in all preceding paragraphs of the Amended Complaint as if fully set forth herein.

346.   The Big 12 denies the allegations of Paragraph 346.

347.   The Big 12 denies the allegations of Paragraph 347.

## ADDITIONAL DEFENSES

The Big 12 reserves the right to assert any and all applicable defenses to the Plaintiffs' claims. The Big 12 reserves the right to amend this Answer to add, supplement, or modify its defenses based upon further developments in this litigation, including new factual developments or legal theories that may be or will be divulged through clarification of the Amended Complaint, through discovery, or through further factual or legal analysis of Plaintiffs' allegations, contentions, and positions in this litigation.

1   Without limiting the generality of the foregoing and without regard to whether defenses

2   set forth below are affirmative defenses within the meaning of Federal Rule of Civil

3   Procedure 8(c)(1), and without conceding that any such defenses must be set forth in this

4   Answer or assuming any burden of proof that it would not otherwise bear, the Big 12

5   states as follows:

**FIRST ADDITIONAL DEFENSE**

6

7        The claims of certain named plaintiffs and members of the putative classes and sub-

8   classes are barred, in whole or in part, by the settlement and release finally approved by

9   the Court in *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust*

10  *Litigation*, Case No. 14-md-02541 (N.D. Cal).

**SECOND ADDITIONAL DEFENSE**

11

12       The claims of the Plaintiffs and alleged members of the putative class and sub-

13  classes are barred, in whole or in part, by stare decisis and also by res judicata to the extent

14  that Plaintiffs' claims were previously adjudicated in *NCAA v. Alston*, 141 S. Ct. 2141

15  (2021), *O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015), or *Marshall v. ESPN*, 668 Fed.

16  App'x 155 (6th Cir. 2016), or to the extent they are adjudicated in any other litigation

17  brought by members of the Plaintiffs' putative classes against any of the Defendants that

18  reaches final judgment before a judgment is rendered in this action.

**THIRD ADDITIONAL DEFENSE**

19

20       The claims of the Plaintiffs and others claimed to be members of the putative class,

21  classes, or sub-classes are barred, in whole or in part, by collateral estoppel to the extent

22  that the Plaintiffs' claims were previously adjudicated in *NCAA v. Alston*, 141 S. Ct. 2141

23  (2021), *O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015), or *Marshall v. ESPN*, 668 Fed.

24  App'x 155 (6th Cir. 2016), or to the extent they are adjudicated in any other litigation

25  brought by members of the Plaintiffs' putative classes and sub-classes against any of the

26  Defendants that reaches final judgment before a judgment is rendered in this action.

**FOURTH ADDITIONAL DEFENSE**

27

28       The claims of the Plaintiffs and alleged members of the putative class and sub-

classes are barred, in whole or in part, by the applicable statute of limitations.

**FIFTH ADDITIONAL DEFENSE**

The claims of the Plaintiffs and alleged members of the putative class and sub-classes are barred, in whole or in part, by the doctrine of mootness to the extent that Plaintiffs seek injunctive relief for student-athletes who are no longer participating in NCAA athletics and to the extent that the NCAA bylaws that Plaintiffs seek to enjoin are no longer in effect.

**SIXTH ADDITIONAL DEFENSE**

The claims of the Plaintiffs and others claimed to be members of the putative class, classes, or sub-classes are barred because their alleged damages are speculative and conjectural and are not capable of calculation with a reasonable degree of certainty.

**SEVENTH ADDITIONAL DEFENSE**

The claims of the Plaintiffs and alleged members of the putative class and sub-classes are barred, in whole or in part, because the Complaint fails to state a claim for relief under the doctrine established by the United States Supreme Court's decision in *Texaco Inc. v. Dagher*, 547 U.S. 1 (2006). Specifically, the conduct alleged constitutes decisions made regarding the core activities of a legitimate venture that are not unlawful restraints of trade under the antitrust laws.

**EIGHTH ADDITIONAL DEFENSE**

The claims of the Plaintiffs and alleged members of the putative class and sub-classes are barred, in whole or in part, to the extent that any of the agreements, practices, or conduct at issue is required or has been approved by any order, award, directive or similar action of any court, arbitral body, or government agency.

**NINTH ADDITIONAL DEFENSE**

The claims of the Plaintiffs and alleged members of the putative class and sub-classes are barred, in whole or in part, to the extent that any of the agreements, practices, or conduct at issue is required to comply with state or federal laws or regulations and to the extent that the relief demanded by Plaintiffs is inconsistent with or prohibited by

1 applicable state or federal laws or regulations.

2 ## TENTH ADDITIONAL DEFENSE

3 The claims of the Plaintiffs and alleged members of the putative class and sub-

4 classes are barred, in whole or in part, because the actions of Defendants do not

5 unreasonably restrain trade, but are lawful, justified, and pro-competitive given the need

6 for institutional members of the NCAA to prevent pay-for-play and improper recruiting

7 inducements, including by imposing uniform rules of national competition regarding

8 financial incentives for student-athletes to attend particular schools.

9 ## ELEVENTH ADDITIONAL DEFENSE

10 The claims of the Plaintiffs and alleged members of the putative class and sub-

11 classes are barred, in whole or in part, because the actions of Defendants do not

12 unreasonably restrain trade, but are lawful, justified, and pro-competitive by preserving

13 the distinction between college and professional sports.

14 ## TWELFTH ADDITIONAL DEFENSE

15 The claims of the Plaintiffs and alleged members of the putative class and sub-

16 classes are barred, in whole or in part, and the actions of Defendants are justified by the

17 provisions of the United States Constitution that guarantee free speech and the right to

18 petition the government for redress of grievances under the *Noerr-Pennington* doctrine.

19 ## THIRTEENTH ADDITIONAL DEFENSE

20 The claims of the Plaintiffs and alleged members of the putative class and sub-

21 classes are barred, in whole or in part, to the extent that they were not injured by, or have

22 been enriched by, the rules being challenged here, which preserve institutions' ability to

23 offer a broad set of athletics offerings and, thus, opportunities to student-athletes.

24 ## PRAYER FOR RELIEF

25 WHEREFORE, The Big 12 Conference, Inc. prays that this Court deny the relief

26 requested by Plaintiffs, dismiss this action with prejudice, enter judgment that Plaintiffs

27 have and recover no relief from the Big 12, tax costs and attorneys' fees against the

28 Plaintiffs, and afford the Big 12 such other and further relief as may be just and proper.

1    DATED: September 22, 2021                    Respectfully submitted,

2
                                                 **POLSINELLI PC**
3
                                             By:    */s/ Leane K. Capps*
4
                                                 Leane K. Capps (*pro hac vice*)
5                                                Caitlin J. Morgan (*pro hac vice*)
                                                 2950 N. Harwood Street, Suite 2100
6                                                Dallas, TX 75201
                                                 Telephone: (214) 397-0030
7                                                lcapps@polsinelli.com
                                                 cmorgan@polsinelli.com
8

9                                                Amy D. Fitts (*pro hac vice*)
                                                 900 W. 48th Place, Suite 900
10                                               Kansas City, MO 64112
                                                 Telephone: (816) 753-1000
11                                               afitts@polsinelli.com

12
                                                 Wesley D. Hurst (SBN 127564)
13                                               2049 Century Park East, Suite 2900
                                                 Los Angeles, CA 90067
14                                               Telephone: (310) 556-1801
                                                 whurst@polsinelli.com
15

16                                               *Attorneys for Defendant*
                                                 *The Big 12 Conference, Inc.*
17

18

19

20

21

22

23

24

25

26

27

28