**MAYER BROWN LLP**
BRITT M. MILLER (*pro hac vice*)
bmiller@mayerbrown.com
MATTHEW D. PROVANCE (*pro hac vice*)
mprovance@mayerbrown.com
71 S. Wacker Dr.
Chicago, IL 60606-4637
Telephone: (312) 782-0600
Facsimile: (312) 701-7711

CHRISTOPHER J. KELLY (SBN 276312)
cjkelly@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

*Attorneys for Defendant The Big Ten Conference, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW |
| | **ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES OF DEFENDANT THE BIG TEN CONFERENCE, INC. TO THE CONSOLIDATED AMENDED COMPLAINT** |

The Big Ten Conference, Inc. ("The Big Ten"), by and through its undersigned attorneys, hereby answers and sets forth affirmative and additional defenses to the Consolidated Amended Complaint (D.E. 164) ("Complaint").

## PRELIMINARY STATEMENT

Except as otherwise expressly stated below, The Big Ten answers and responds only to those allegations contained in the Complaint that are directed toward it. The Big Ten is without sufficient knowledge or information to form a belief as to the truth of the allegations in the Complaint that are directed toward other defendants. Pursuant to Federal Rule of Civil Procedure 8(b)(5), such allegations are deemed denied. In addition, to the extent an answer may be required

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

to Plaintiffs' allegations containing legal conclusions, The Big Ten denies all such allegations. Finally, the Complaint contains 195 footnotes. To the extent the contents of those footnotes can be read to contain factual allegations, and to the extent any such allegations are not addressed in the text of The Big Ten's answer to the Paragraph to which the footnote relates, The Big Ten denies all such allegations.

**RESPONSES TO NUMBERED PARAGRAPHS OF COMPLAINT**

The Big Ten denies any and all allegations contained in the headings of the Complaint and responds to the numbered paragraphs of the Complaint as follows:

1.      The Big Ten admits that Zion Williamson played basketball at Duke University in 2019 and participated in a game between Duke University and the University of North Carolina, and that his shoe appeared to fail during the game. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 1 concerning television viewers, speculation of unnamed persons about Zion Williamson's alleged knee sprain, and Nike stock value and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 1.

2.      The Big Ten admits that NCAA rules in effect in 2019 established limitations on compensation provided to student-athletes for the actual or alleged use of their names, images, and likenesses. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 concerning the alleged contract between Duke University and Nike and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 2.

3.      The Big Ten admits that a small number of NCAA Division I athletic departments generate positive net revenues. The Big Ten further admits that NCAA rules include limitations on compensation to student-athletes for the actual or alleged use of their names, images, and likenesses. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 3 concerning alleged salaries of coaches and others and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 3.

4.      The Big Ten admits that the NCAA Constitution and Bylaws contain rules governing certain types of conduct of members relating to collegiate athletics, the benefits that may be provided to student-athletes, and other aspects of collegiate sports, and contain statements relating to the principles of amateurism and collegiate sports. The Big Ten further admits that the NCAA has previously advanced amateurism as a justification for certain of the rules set forth in the NCAA Constitution and Bylaws. The Big Ten denies the remaining allegations of Paragraph 4.

5.      The Big Ten admits that Plaintiffs seek to challenge NCAA rules setting forth limitations on compensation to student-athletes for use of their names, images, and likenesses. The Big Ten admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image, and likeness would not be impacted by the application of certain NCAA bylaws. The Big Ten denies the remaining allegations of Paragraph 5.

6.      The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 6 concerning unattributed comments allegedly made by the NCAA and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 6.

7.      The Big Ten admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness would not be impacted by the application of certain NCAA bylaws. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7 concerning alleged comments made by the NCAA and spending and profits derived by unidentified companies and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 7.

8.      The Big Ten admits that it is party to certain sponsorship agreements and, upon information and belief, admits that the NCAA, other conferences, schools and, in some instances, coaches have sponsorship or endorsement agreements. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 8 concerning alleged agreements between companies and persons or entities other than The Big Ten and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 8.

9.      The Big Ten admits that the NCAA and some conferences and schools utilize certain social media platforms. The Big Ten further admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness would not be impacted by the application of certain NCAA bylaws. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9 concerning the financial rewards allegedly received by unidentified persons from social media and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 9.

10.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 concerning alleged statements of Oliver Luck and on that basis denies them. The remaining allegations in Paragraph 10 contain conclusions of law to which no response is required; to the extent a response is required, The Big Ten denies the remaining allegations of Paragraph 10.

11.     The Big Ten specifically denies that it has violated the federal antitrust laws or any common law and denies the remaining allegations of Paragraph 11.

12.     The Big Ten admits that NCAA rules include limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses. The Big Ten further admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

4

Case No. 4:20-cv-03919-CW

effective or soon to be effective), with the result that certain activities relating to name, image and likeness would not be impacted by the application of certain NCAA bylaws. Upon information and belief, the Big Ten admits that there have been unverified media reports that certain student-athletes and in some sports have been offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations and quotations in Paragraph 12 concerning Katelyn Ohashi and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 12.

13.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 concerning Dave Bradley, Nick Saban, and unidentified "recent analyses" and the allegations in Paragraph 13 relating to the value of recent agreements for student-athletes and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 13.

14.     Upon information and belief, The Big Ten admits that according to unverified media reports, certain employees or representatives of NCAA member institutions have made public comments regarding the possible revision of NCAA NIL rules and considerations relating to any such revisions.  The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 concerning the salaries and/or purported comments of Scott Frost and Jim Harbaugh and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 14.

15.     The Big Ten admits that recently enacted state statutes, some of which became effective July 1, 2021, require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have begun to offer such educational resources and services. Upon information and belief, The Big Ten further admits that the University of Nebraska announced a partnership with Opendorse related to student-athlete NIL. The Big Ten lacks sufficient knowledge or information to form a

belief as to the truth of the allegations in Paragraph 15 concerning alleged comments of Rick George, any program at the University of Colorado, and the NAIA and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 15.

16.     Upon information and belief, The Big Ten admits that the NCAA entered an eight-year extension of its media contract to broadcast the annual NCAA Division I men's basketball tournament. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 16 concerning the terms of any contracts entered into by other entities and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 16.

17.     The Big Ten admits that California has passed the Fair Pay to Play Act and that multiple other states have introduced or passed legislation or issued executive orders relating to NIL. The Big Ten denies the remaining allegations of Paragraph 17.

18.     The Big Ten admits that the NCAA and its working groups studied, issued statements regarding, and drafted proposed rules for consideration related to certain NIL issues in 2019 and 2020. The Big Ten denies the remaining allegations in Paragraph 18.

19.     The Big Ten admits that the *Alston* defendants appealed the Ninth Circuit's decision to the United States Supreme Court. The Big Ten denies the remaining allegations of Paragraph 19.

20.     The Big Ten admits that the NCAA's Interim NIL Policy became effective on July 1, 2021, and that the laws of various states were due to go into effect on that date. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 20 concerning alleged lobbying efforts of the NCAA and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 20.

21.     The Big Ten admits that on June 21, 2021 the United States Supreme Court issued its opinion in *Alston*. The Big Ten further admits that on June 24, 2021 this Court issued its ruling on Defendants' motion to dismiss Plaintiffs' initial complaint in this action. The Big Ten denies the remaining allegations of Paragraph 21.

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

6

Case No. 4:20-cv-03919-CW

22.     The Big Ten admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness could or would not be impacted by the application of certain NCAA bylaws. The Big Ten denies the remaining allegations of Paragraph 22.

23.     The Big Ten admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness would not be impacted by the application of certain NCAA bylaws. The Big Ten denies the remaining allegations of Paragraph 23.

24.     Upon information and belief, The Big Ten admits that according to unverified media reports certain student-athletes at some schools and in some sports have been offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 24 concerning the University of Florida, the University of North Carolina, and the industry affiliations of entities allegedly entering agreements with student-athletes and on that basis denies them. Upon information and belief, The Big Ten admits that according to unverified media reports certain student-athletes at the University of Michigan are purportedly receiving or may receive compensation in connection with sports jersey sales. The Big Ten denies the remaining allegations of Paragraph 24.

25.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 25 and on that basis denies them.

26.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 26 and on that basis denies them.

27.     The Big Ten admits that state laws and the Interim NIL Policy have created opportunities for student-athletes to license NIL rights. Upon information and belief, The Big

Ten admits that according to unverified media reports certain student-athletes at the University of Nebraska and the University of Iowa are purportedly engaged in activities related to alleged apparel ventures.  The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 27 and on that basis denies them.

28.     Upon information and belief, The Big Ten admits that according to unverified media reports an entity located in Nebraska has offered compensation to certain student-athletes in connection with promotion of that entity on social media. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 28 and on that basis denies them.

29.     The Big Ten admits that recently enacted state statutes, some of which became effective July 1, 2021, require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have begun to offer such educational resources and services. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 29 and on that basis denies them.

30.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 30 concerning alleged comments of unidentified schools across the country and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 30.

31.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31 concerning alleged surveys and consumer sentiment and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 31.

32.     The Big Ten denies the allegations of Paragraph 32.

33.     The Big Ten admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image and likeness would not be impacted by the application of

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

certain NCAA bylaws. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 33 concerning alleged comments of Mark Emmert and on that basis denies them. The Big Ten denies that the injunction described in Paragraph 33 would be appropriate or legally justified. The Big Ten denies the remaining allegations of Paragraph 33.

34.     The Big Ten denies that the injunction described in Paragraph 34 would be appropriate or legally justified.  The Big Ten denies the remaining allegations of Paragraph 34.

35.     The Big Ten admits that Plaintiffs seek an injunction but denies that Plaintiffs are entitled to any injunction. The Big Ten specifically denies that it has engaged in any unlawful or anticompetitive conduct. The Big Ten denies the remaining allegations of Paragraph 35.

36.     The Big Ten admits that Plaintiffs seek the relief stated in Paragraph 36 but denies that Plaintiffs are entitled to such relief. The Big Ten specifically denies that it has engaged in any unlawful or anticompetitive conduct. The Big Ten denies the remaining allegations of Paragraph 36.

37.     The Big Ten admits that Plaintiffs seek the relief stated in Paragraph 37 but denies that Plaintiffs are entitled to such relief. The Big Ten specifically denies that it has engaged in any unlawful or anticompetitive conduct. The Big Ten denies the remaining allegations of Paragraph 37.

38.     The Big Ten admits that Plaintiffs seek the relief stated in Paragraph 38 but denies that Plaintiffs are entitled to such relief. The Big Ten specifically denies that it has engaged in any unlawful or anticompetitive conduct. The Big Ten denies the remaining allegations of Paragraph 38.

39.     The Big Ten admits that Plaintiffs allege that subject matter jurisdiction exists under the statutes cited in Paragraph 39, but denies that Plaintiffs or the purported class members are entitled to any relief sought. The Big Ten denies the remaining allegations of Paragraph 39.

40.     The Big Ten denies the allegations of Paragraph 40 but does not challenge venue in this action.

41.     The Big Ten admits that the defendants have transacted business (as that term is used in venue statutes) throughout the United States and that the University of California–Berkeley, Stanford University, Santa Clara University, the University of San Francisco, and St. Mary's College are located in the Northern District of California. The Big Ten denies the remaining allegations of Paragraph 41 but does not challenge personal jurisdiction in this action.

42.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 42 and on that basis denies them.

43.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 43 and on that basis denies them.

44.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 44 and on that basis denies them.

45.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 45 and on that basis denies them.

46.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 46 and on that basis denies them.

47.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 47 and on that basis denies them.

48.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 48 and on that basis denies them.

49.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 49 and on that basis denies them.

50.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 50 and on that basis denies them.

51.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 51 and on that basis denies them.

52.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 52 and on that basis denies them.

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

10

Case No. 4:20-cv-03919-CW

1   53.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
2   truth of the allegations of Paragraph 53 and on that basis denies them.

3   54.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
4   truth of the allegations of Paragraph 54 and on that basis denies them.

5   55.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
6   truth of the allegations of Paragraph 55 and on that basis denies them.

7   56.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
8   truth of the allegations of Paragraph 56 and on that basis denies them.

9   57.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
10  truth of the allegations of Paragraph 57 and on that basis denies them.

11  58.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
12  truth of the allegations of Paragraph 58 and on that basis denies them.

13  59.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
14  truth of the allegations of Paragraph 59 and on that basis denies them.

15  60.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
16  truth of the allegations of Paragraph 60 and on that basis denies them.

17  61.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
18  truth of the allegations of Paragraph 61 and on that basis denies them.

19  62.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
20  truth of the allegations of Paragraph 62 and on that basis denies them.

21  63.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
22  truth of the allegations of Paragraph 63 and on that basis denies them.

23  64.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
24  truth of the allegations of Paragraph 64 and on that basis denies them.

25  65.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
26  truth of the allegations of Paragraph 65 and on that basis denies them.

27

28  ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
    OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

66.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 66 and on that basis denies them.

67.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 67 and on that basis denies them.

68.     The Big Ten admits that Plaintiff Tymir Oliver competed for the University of Illinois men's football team. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 68 and on that basis denies them.

69.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 69 and on that basis denies them.

70.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 70 and on that basis denies them.

71.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 71 and on that basis denies them.

72.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 72 and on that basis denies them.

73.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 73 and on that basis denies them.

74.     The Big Ten admits that the NCAA is a voluntary unincorporated not-for-profit educational association of more than 1,200 colleges, universities, and athletic conferences, including the Conference Defendants, all of which are located throughout the United States. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 74 concerning comments the NCAA has allegedly made about whether it speaks and acts for colleges and universities on athletic matters at a national level and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 74.

75.     The Big Ten admits that the NCAA and its members have adopted a constitution and bylaws which set forth procedures for amendments thereto and contain rules governing certain types of conduct of member institutions relating to collegiate athletics, the benefits that

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

12

Case No. 4:20-cv-03919-CW

1  may be provided to student-athletes, and other aspects of collegiate sports, and contain
2  statements relating to the principles of amateurism and collegiate sports. The Big Ten further
3  admits that the NCAA enforces compliance with its bylaws and may, in some instances, impose
4  penalties for noncompliance. The Big Ten denies the remaining allegations of Paragraph 75.

5  76.     The Big Ten admits that the NCAA is comprised of numerous member
6  institutions organized into three divisions and that some of those institutions sponsor football
7  teams. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of
8  the allegations in Paragraph 76 concerning the specific number of institutions in the different
9  divisions or which sponsor football programs and on that basis denies them. The Big Ten denies
10  the remaining allegations of Paragraph 76.

11  77.     The Big Ten lacks sufficient knowledge or information to form a belief as to the
12  truth of the allegations of Paragraph 77 and on that basis denies them.

13  78.     Upon information and belief, The Big Ten admits that the Pac-12 is an
14  unincorporated association with its principal offices located in California, that it is a multi-sport
15  collegiate athletic conference, and that it is a formal "conference member" of NCAA Division I.
16  Upon information and belief, The Big Ten further admits that the Pac-12 is an IRS § 501(c)(3)
17  entity. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of
18  the remaining allegations of Paragraph 78 and on that basis denies them.

19  79.     The Big Ten admits that the Pac-12's current members are the institutions
20  identified in Paragraph 79. The Big Ten denies the remaining allegations of Paragraph 79.

21  80.     The Big Ten denies the allegations of Paragraph 80.

22  81.     The Big Ten admits that the Big Ten is a nonprofit corporation with its principal
23  offices located at the address stated in Paragraph 81, that it is a multi-sport collegiate athletic
24  conference, and that it is a formal "conference member" of NCAA Division I. The Big Ten
25  further admits that in its 2017 IRS Form 990 The Big Ten identified itself as a tax-exempt
26  organization pursuant to section 501(c)(3) of the U.S. Internal Revenue Code and stated that its

27
28

1   total revenue for the fiscal year ending June 30, 2018 was $758,899,883, the overwhelming
2   majority of which was distributed to its Member Institutions.

3       82.    The Big Ten admits the allegations of Paragraph 82.

4       83.    The Big Ten denies the allegations of Paragraph 83.

5       84.    Upon information and belief, The Big Ten admits that the Big 12 is a nonprofit
6   corporation with its principal offices located in Texas, that it is a multi-sport collegiate athletic
7   conference, and that it is a formal "conference member" of NCAA Division I. Upon information
8   and belief, The Big Ten further admits that the Big 12 is an IRS § 501(c)(3) entity. The Big Ten
9   lacks sufficient knowledge or information to form a belief as to the truth of the remaining
10  allegations of Paragraph 84 and on that basis denies them.

11      85.    The Big Ten admits that the Big 12's current members are the institutions
12  identified in Paragraph 85, and that all of its football members are in the Football Bowl
13  Subdivision. The Big Ten denies the remaining allegations of Paragraph 85.

14      86.    The Big Ten denies the allegations of Paragraph 86.

15      87.    Upon information and belief, The Big Ten admits that the SEC is an
16  unincorporated association with its principal offices located in Alabama, that it is a multi-sport
17  collegiate athletic conference, and that it is a formal "conference member" of NCAA Division I.
18  Upon information and belief, the Big Ten further admits that the SEC is an IRS § 501(c)(3)
19  entity. The Big Ten lacks knowledge or information sufficient to form a belief as to the truth of
20  the remaining allegations of Paragraph 87 and on that basis denies them.

21      88.    The Big Ten admits that the SEC's current members are the institutions identified
22  in Paragraph 88, and that all of its football members are in the Football Bowl Subdivision. The
23  Big Ten denies the remaining allegations of Paragraph 88.

24      89.    The Big Ten denies the allegations of Paragraph 89.

25      90.    Upon information and belief, The Big Ten admits that the ACC is an
26  unincorporated association with its principal offices located in Greensboro, North Carolina, that
27  it is a multi-sport collegiate athletic conference, and that it is a formal "conference member" of

28

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

1   NCAA Division I. Upon information and belief, The Big Ten further admits that the ACC is an

2   IRS § 501(c)(3) entity. The Big Ten lacks sufficient knowledge or information to form a belief

3   as to the truth of the remaining allegations of Paragraph 90 and on that basis denies them.

4           91.     The Big Ten admits that the ACC has 15 member institutions. Upon information

5   and belief, The Big Ten further admits that Notre Dame generally participates in all sports

6   except football and hockey, with exceptions. The Big Ten denies the remaining allegations of

7   Paragraph 91.

8           92.     The Big Ten denies the allegations of Paragraph 92.

9           93.     The Big Ten admits that Plaintiffs purport to give the terms identified in

10  Paragraph 74 the definitions set forth therein but denies that said definitions are accurate or

11  appropriate for any purpose in this matter.  The Big Ten denies the remaining allegations of

12  Paragraph 93.

13          94.     The Big Ten will respond separately to the various allegations in other Paragraphs

14  of the Complaint, and, except as expressly admitted in responses to such other allegations, denies

15  the allegations of Paragraph 94.

16          95.     The Big Ten denies the allegations of Paragraph 95.

17          96.     The Big Ten admits that Plaintiffs seek to challenge NCAA rules that include

18  limitations on compensation to student-athletes, including for the alleged use of their names,

19  images, and likenesses. The Big Ten denies the remaining allegations of Paragraph 96.

20          97.     The Big Ten admits that the NCAA Manual contains the provisions quoted in part

21  from NCAA Bylaw 12.5.2.1 in Paragraph 97. The Big Ten further admits that the NCAA

22  Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL

23  Policy, other NCAA guidance and interpretations, and state laws. The Big Ten denies the

24  remaining allegations of Paragraph 97.

25          98.     The Big Ten admits that the NCAA Manual contains the provisions quoted in part

26  from NCAA Bylaw 12.5.2.2 in Paragraph 98. The Big Ten further admits that the NCAA

27  Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL

28

Policy, other NCAA guidance and interpretations, and state laws. The Big Ten denies the remaining allegations of Paragraph 98.

99.     The Big Ten admits that NCAA rules include limitations on compensation to student-athletes, including for the alleged use of their names, images, and likenesses, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten denies the remaining allegations of Paragraph 99.

100.     The Big Ten admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaws 12.4.1 and 12.4.1.1 in Paragraph 100. The Big Ten further admits that the NCAA Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten denies the remaining allegations of Paragraph 100.

101.     The Big Ten admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaw 12.4.2.3 in Paragraph 101. The Big Ten further admits that the NCAA Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten denies the remaining allegations of Paragraph 101.

102.     The Big Ten admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaw 12.4.4 in Paragraph 102. The Big Ten further admits that the NCAA Manual sets forth NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten denies the remaining allegations of Paragraph 102.

103.     The Big Ten admits that the NCAA can enforce compliance with its bylaws and may, in some instances, impose various penalties for noncompliance as set forth in its bylaws. The Big Ten denies the remaining allegations of Paragraph 103.

104.     The Big Ten admits that the NCAA Manual sets forth current NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten lacks sufficient knowledge or information to

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

16

Case No. 4:20-cv-03919-CW

form a belief as to the truth of the allegations in Paragraph 104 concerning what sponsors could or may do and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 104.

105.    The Big Ten denies the allegations of Paragraph 105.

106.    The Big Ten denies the allegations of Paragraph 106.

107.    The Big Ten admits that the NCAA Manual sets forth current NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten denies the remaining allegations of Paragraph 107.

108.    The Big Ten admits that NCAA rules include limitations on compensation to student-athletes, including for the use or alleged use of their names, images, and likenesses, and rules governing student-athlete eligibility and certain conduct, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten denies the remaining allegations of Paragraph 108.

109.    Upon information and belief, The Big Ten admits that schools in NCAA Divisions II and III offer fewer scholarships than those in Division I, and that collective bargaining agreements of the NFL and the NBA include restrictions on which individuals are eligible to play in those leagues and the timing of when they are eligible. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 109 concerning NAIA, NCCAA, and USCAA schools, and the allegations concerning whether recruits "rarely forego" opportunities to play Division I sports in order to play professionally and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 109.

110.    The Big Ten admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

17

Case No. 4:20-cv-03919-CW

activities relating to name, image, and likeness would not be impacted by the application of certain NCAA bylaws. The Big Ten denies the remaining allegations of Paragraph 110.

111.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 111 concerning whether or not any NCAA member institutions have paid NIL compensation to student-athletes and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 111.

112.    Upon information and belief, The Big Ten admits that there have been unverified media reports that certain student-athletes in some sports have been offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 112 concerning whether or not any NCAA member institutions have paid NIL compensation to student-athletes. The Big Ten further lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 112 concerning Plaintiffs' awareness, or lack thereof, of NCAA member institutions' or conferences' NIL policies. The Big Ten denies the remaining allegations of Paragraph 112.

113.    The Big Ten admits that recently enacted state statutes, some of which became effective July 1, 2021, require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have begun to offer such educational resources and services. Upon information and belief, The Big Ten further admits that Michigan State University, University of Michigan, and Ohio State University announced educational programs for student athletes related to branding. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 113 and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 113.

114.    Upon information and belief, The Big Ten admits that unverified media sources report that certain student-athletes at some schools and in some sports have been offered and/or

accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 114 concerning Olivia Dunne and the alleged value of NIL rights and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 114.

115.    Upon information and belief, The Big Ten admits that unverified media sources report that certain student-athletes at some schools and in some sports have been offered and/or accepted compensation for the alleged use of their names, images, and likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big Ten denies the remaining allegations of Paragraph 115.

116.    The Big Ten denies the allegations of Paragraph 116.

117.    The Big Ten denies the allegations of Paragraph 117.

118.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 118 concerning the policies that various educational institutions may have relating to students other than student-athletes, and concerning alleged comments of Brian Freeman, CEO of HeartBeat and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 118.

119.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 119 concerning the practices of various educational institutions relating to students other than student-athletes, and concerning a YouTube channel at Colorado State University and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 119.

120.    The Big Ten admits that NCAA rules include limitations on compensation to student-athletes, including for the alleged use of their names, images, and likenesses. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 120 concerning Breana Dodd and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 120.

121.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 121 concerning alleged comments of Mark Emmert and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 121.

122.     The Big Ten denies the allegations of Paragraph 122.

123.     Upon information and belief, The Big Ten admits that former NCAA Executive Director Walter Byers wrote a book titled Unsportsmanlike Conduct:  Exploiting College Athletes, published in 1995. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 123 and on that basis denies them.

124.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 124 concerning any alleged website content and regarding reported statements made about or by the NCAA and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 124.

125.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 125 and on that basis denies them.

126.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 126 and on that basis denies them.

127.     The Big Ten admits that Article I of the NCAA Constitution contains the language quoted in Paragraph 127.

128.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 128 and on that basis denies them.

129.     The Big Ten admits that the NCAA is a voluntary, unincorporated, non-profit educational association of more than 1,200 member colleges, universities, and athletic conferences.  The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 129 and on that basis denies them.

130.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 130 and on that basis denies them.

131.    The Big Ten admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaw 3.02.3 in Paragraph 131. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 131 and on that basis denies them.

132.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 132 and on that basis denies them.

133.    The Big Ten admits that the NCAA legislative system involves boards, councils, and numerous committees, groups, and structures. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 133 concerning reported comments made by the NCAA and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 133.

134.    The Big Ten admits that the NCAA and its members have adopted a Constitution and Bylaws as set forth in the NCAA Manual, which is published annually and updated periodically. The Big Ten denies the remaining allegations of Paragraph 134.

135.    The Big Ten admits that the method of adoption of NCAA rules and amendments thereto is set forth in the NCAA Manual. The Big Ten further admits that the NCAA Manual contains the provisions quoted in part from NCAA Bylaw 5.2.2 in Paragraph 135. The Big Ten denies the remaining allegations of Paragraph 135.

136.    The Big Ten admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten further admits that the NCAA Manual contains the provisions quoted in part from Article 1.3.2 and Article 2.8.1 in Paragraph 136. The Big Ten denies the remaining allegations of Paragraph 136.

137.    The Big Ten admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten further admits that the NCAA Manual contains the

provisions quoted in part from Article 3.1 and Article 3.2.1.2 in Paragraph 137. The Big Ten denies the remaining allegations of Paragraph 137.

138.    The Big Ten admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten further admits that the NCAA Manual contains the provisions quoted in part from Article 3.2.4 and Article 3.2.4.4 in Paragraph 138. The Big Ten specifically denies that it has engaged in price-fixing activity. The Big Ten denies the remaining allegations of Paragraph 138.

139.    The Big Ten admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten further admits that Article 3.2.4.11 of the NCAA Manual contains the language quoted in Paragraph 139.  The Big Ten specifically denies that it has engaged in price-fixing activity. The Big Ten denies the remaining allegations of Paragraph 139.

140.    The Big Ten admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten further admits that the NCAA Manual contains the provisions quoted in part from Articles 2.8.3, 3.2.5.1, 3.01.4, and 3.2.5.1.1 in Paragraph 140. The Big Ten denies the remaining allegations of Paragraph 140.

141.    The Big Ten admits that member conferences assist with compliance with NCAA rules. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 141 concerning the Pac-12 handbook and the statements therein and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 141.

142.    The Big Ten admits that the NCAA Manual sets forth the NCAA rules, subject to the changes in application effected by the Interim NIL Policy, other NCAA guidance and interpretations, and state laws. The Big Ten further admits that the NCAA Manual contains the

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

22

Case No. 4:20-cv-03919-CW

provisions quoted in part from Bylaw 14.01.3 in Paragraph 142. The Big Ten denies the remaining allegations of Paragraph 142.

143.    The Big Ten denies the allegations of Paragraph 143.

144.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 144 concerning alleged comments of Mark Lewis and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 144.

145.    The Big Ten admits that a small number of NCAA Division I athletic departments generate positive net revenues after (as is appropriate) the expenses incurred by the institutions are offset against revenue generated by institutions and distributed to the institutions by the NCAA and conferences. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 145 concerning alleged revenues of the NCAA, other conferences, and individual athletic programs and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 145.

146.    The Big Ten denies the allegations of Paragraph 146.

147.    The Big Ten admits that in 2016 the NCAA announced a new eight-year agreement with CBS and Turner Sports for the rights to broadcast the NCAA Division I basketball tournament on television and that the license fee has been publicly reported to be approximately $8.8 billion over the eight-year term of the agreement. The Big Ten further admits that the NCAA distributes net revenues from the broadcast licenses to its members, which funds are used to support educational programs. The Big Ten further admits that it is a party to broadcasting agreements with Fox, ESPN, and CBS. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 147 concerning alleged terms of broadcast agreements of other entities and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 147.

148.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 148 concerning alleged advertising revenue at various

events and unnamed reports of advertising spending and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 148.

149.    The Big Ten admits that it is party to and/or receives revenue from certain sponsorship agreements. Upon information and belief, The Big Ten further admits that the NCAA, other conferences, and NCAA member institutions are parties to certain sponsorship agreements. The Big Ten denies the remaining allegations of Paragraph 149.

150.    The Big Ten admits that Senator Murphy published a report with certain statements as set forth in Paragraph 150. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 150 concerning alleged NCAA contractual agreements and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 150.

151.    Upon information and belief, The Big Ten admits that some NCAA member institutions have contracts with apparel companies. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 151 concerning specifics of alleged apparel agreements and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 151.

152.    Upon information and belief, The Big Ten admits that the University of Michigan and The Ohio State University have apparel contracts with Nike. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 152 concerning the terms of those agreements and the alleged agreement entered by UCLA and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 152.

153.    Upon information and belief, The Big Ten admits that Indiana University has an apparel contract with Adidas. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 153 concerning alleged apparel agreements and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 153.

154.    Upon information and belief, The Big Ten admits that apparel companies, through involvement in AAU basketball, might influence the selection of colleges by some high

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

24

Case No. 4:20-cv-03919-CW

school students. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 154 concerning the AAU and alleged apparel agreements and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 154.

155.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 155 concerning the percentage of prospects who attend a college or remain affiliated with merchandise brands in the NBA and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 155.

156.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 156 concerning alleged actions and comments of Sabrina Ionescu and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 156.

157.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 157 concerning alleged apparel agreements and alleged comments of Rick Pitino and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 157.

158.    The Big Ten admits that in 2017 the FBI announced the results of an investigation into certain identified issues and persons relating to college basketball, that complaints were filed, and that certain persons were indicted. The Big Ten denies the remaining allegations of Paragraph 158.

159.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 159 concerning alleged comments of Sonny Vaccaro and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 159.

160.    Upon information and belief, The Big Ten admits that the NCAA, other conferences, and/or certain NCAA member institutions are parties to certain social media agreements. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 160 and on that basis denies them.

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

25

Case No. 4:20-cv-03919-CW

161.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 161 concerning the University of Southern California and alleged comments of unidentified persons at Fox Sports and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 161.

162.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 162 concerning alleged social media agreements and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 162.

163.     The Big Ten admits that it is a party to and/or receives revenue from certain sponsorship agreements. Upon information and belief, The Big Ten admits that the NCAA, other conferences, and NCAA member institutions are parties to certain sponsorship agreements. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 163 and on that basis denies them.

164.     Upon information and belief, The Big Ten admits that Division I members invest funds for a variety of purposes, including but not limited to coaching contracts (which in many instances provide superior coaching for the benefit of student-athletes) and playing, training, and other facilities, which are beneficial and desirable to student-athletes. The Big Ten denies the remaining allegations of Paragraph 164.

165.     The Big Ten admits that institutions invest in facilities for various purposes, including but not limited to playing and training, and that those facilities have attributes which are beneficial and desirable to student-athletes. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 165 regarding facilities at Clemson and South Carolina and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 165.

166.     The Big Ten admits that NCAA member institutions pay the salaries and benefits of their administrators and coaches. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 166 concerning the alleged salary

information of coaches and administrators and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 166.

167.    Upon information and belief, The Big Ten admits that NCAA member institutions pay the salaries of and provide benefits to their administrators and coaches. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 167 concerning alleged salary, benefit, and endorsement information of the identified individuals and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 167.

168.    Upon information and belief, The Big Ten admits that some coaches enter commercial agreements with various entities. The Big Ten denies the remaining allegations of Paragraph 168.

169.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 169 and on that basis denies them.

170.    Upon information and belief, The Big Ten admits that Michigan State University entered an apparel agreement with Nike in or around 2014. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 170 related to the alleged terms of that deal and the alleged compensation of certain coaches and on that basis denies them.

171.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 171 and on that basis denies them.

172.    The Big Ten admits that NCAA rules include limitations on compensation to student-athletes and that coaches are not subject to those limitations. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 172 concerning Dabo Swinney and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 172.

173.    The Big Ten admits that NCAA rules include limitations on compensation to student-athletes. The Big Ten lacks sufficient knowledge or information to form a belief as to the

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

27

Case No. 4:20-cv-03919-CW

truth of the allegations in Paragraph 173 concerning offers allegedly made to student-athletes and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 173.

174.    The Big Ten admits that NCAA rules include limitations on compensation to student-athletes. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 174 concerning alleged reporting of ESPN and alleged comments of Kevin Lennon and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 174.

175.    The Big Ten denies the allegations of Paragraph 175.

176.    Upon information and belief, The Big Ten admits that EA Sports produced video games utilizing collegiate marks under licensing agreement with the NCAA and various schools and conferences until 2014. The Big Ten further admits that a lawsuit was brought by Sam Keller against EA and the NCAA related to those games. The Big Ten denies Plaintiffs' characterization of the resulting judicial decision. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 176 and on that basis denies them.

177.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 177 and on that basis denies them.

178.    The Big Ten denies the allegations of Paragraph 178.

179.    The Big Ten denies the allegations of Paragraph 179.

180.    The Big Ten admits that the United States Supreme Court issued its opinion in *NCAA v. Board of Regents* in 1984. The Big Ten further admits that a small number of NCAA Division I athletic departments generate positive net revenues, and that there is consumer demand collegiate sports. The Big Ten denies the remaining allegations of Paragraph 180.

181.    The Big Ten admits that the United States Court of Appeals for the 10th Circuit issued its opinion in *Law v. NCAA*. The Big Ten further admits that there is consumer demand for collegiate sports. The Big Ten lacks sufficient knowledge or information to form a belief as

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

28

Case No. 4:20-cv-03919-CW

1    to the truth of the allegations in Paragraph 181 concerning alleged salaries of assistant coaches

2    and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 181.

3         182.    The Big Ten denies Plaintiffs' characterization of the filings in *White v. NCAA*.

4    The Big Ten further admits that there is consumer demand for collegiate sports and that COA

5    grants-in-aid have been permitted and granted since 2015. The Big Ten denies the remaining

6    allegations of Paragraph 182.

7         183.    The Big Ten denies Plaintiffs' characterization of the opinions issued by this

8    Court and the United States Court of Appeals for the Ninth Circuit in *O'Bannon v. NCAA* and *In*

9    *re NCAA Athletic Grant-in-Aid Antitrust Litigation*. The Big Ten further admits that there is

10   consumer demand for collegiate sports and that COA grants-in-aid have been permitted and

11   granted since 2015. The Big Ten denies the remaining allegations of Paragraph 183.

12        184.    The Big Ten admits that United States Court of Appeals for the Ninth Circuit

13   issued an opinion in *In re NCAA Athletic Grant-in-Aid Antitrust Litigation* on May 18, 2020. The

14   Big Ten denies the remaining allegations of Paragraph 184.

15        185.    The Big Ten admits that the language quoted in Paragraph 185 appears in the

16   Ninth Circuit's decision in *In re NCAA Athletic Grant-in-Aid Antitrust Litigation*. The Big Ten

17   denies the remaining allegations of Paragraph 185.

18        186.    The Big Ten admits that the opinion in *NCAA v. Alston*, 141 S. Ct. 2141 (2021),

19   was issued on June 21, 2021. The Big Ten denies the remaining allegations of Paragraph 186.

20        187.    The Big Ten admits that on June 24, 2021 this Court issued its ruling on

21   Defendants' motion to dismiss Plaintiffs' initial complaint in this action. The Big Ten denies the

22   remaining allegations of Paragraph 187.

23        188.    Upon information and belief, The Big Ten admits that several state laws and

24   executive orders relating to student-athlete NIL went into effect on or about July 1, 2021. The

25   Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the

26   allegations in Paragraph 188 concerning the specific states that had legislation or executive

27

28

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

1    orders in effect as of July 1, 2021 and on that basis denies them. The Big Ten denies the

2    remaining allegations of Paragraph 188.

3        189.    The Big Ten admits that the NCAA issued an Interim NIL Policy (along with

4    accompanying materials) effective July 1, 2021 (the date that certain state laws and executive

5    orders addressing NIL were effective or soon to be effective), with the result that certain

6    activities relating to name, image, and likeness would not be impacted by the application of

7    certain NCAA bylaws. The Big Ten denies the remaining allegations of paragraph 189.

8        190.    The Big Ten admits that the NCAA issued an Interim NIL Policy (along with

9    accompanying materials) effective July 1, 2021 (the date that certain state laws and executive

10   orders addressing NIL were effective or soon to be effective), with the result that certain

11   activities relating to name, image, and likeness would not be impacted by the application of

12   certain NCAA bylaws. Upon information and belief, The Big Ten further admits that there have

13   been unverified media reports that certain student-athletes in some sports have been offered

14   and/or have accepted compensation for the alleged use of their names, images, and likenesses

15   following the passage of state NIL laws and issuance of the Interim NIL Policy. The Big Ten

16   lacks sufficient knowledge or information to form a belief as to the truth of the allegations in

17   Paragraph 190 concerning the alleged comments of Mark Emmert, Mike Bobinski, Bob

18   Bowlsby, and unidentified representatives of Defendants and on that basis denies them. The Big

19   Ten denies the remaining allegations of Paragraph 190.

20       191.    The Big Ten denies the allegations of Paragraph 191.

21       192.    The Big Ten denies the allegations of Paragraph 192.

22       193.    The Big Ten admits that Defendants' procompetitive benefits in past litigation

23   have included, among other things, consumer demand for the collegiate sports model. The Big

24   Ten denies the remaining allegations of Paragraph 193.

25       194.    The Big Ten admits that the opinion of the United States Court of Appeals for the

26   Ninth Circuit in the *NCAA GIA* litigation contains the language quoted in Paragraph 194. The

27   Big Ten denies the remaining allegations of Paragraph 194.

28   ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
     OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

195.    The Big Ten admits that the opinion issued by the United States District Court for the Northern District of California in *In re NCAA Athletic Grant-in-Aid Antitrust Litigation* contains the language quoted in Paragraph 195. The Big Ten denies the remaining allegations of Paragraph 195.

196.    The Big Ten denies the allegations of Paragraph 196.

197.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 197 concerning alleged unattributed surveys and on that basis denies them. The Big Ten specifically denies that it has engaged in any unlawful or anticompetitive conduct and denies the remaining allegations of Paragraph 197.

198.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 198 and on that basis denies them.

199.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 199 and on that basis denies them.

200.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 200 concerning alleged polling and what such polls might indicate and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 200.

201.    The Big Ten admits that the opinion issued by the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation contains the language quoted in Paragraph 201. The Big Ten denies the remaining allegations of Paragraph 201.

202.    The Big Ten admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in Paragraph 202. The Big Ten denies the remaining allegations of Paragraph 202.

203.    The Big Ten admits that NCAA rules include limitations on compensation to student-athletes, and that there are provisions in the rules allowing for limited, non-monetary athletic participation mementos and awards, pre-matriculation tennis awards, and awards presented by Olympic governing bodies to the few student-athletes who compete in the

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

Olympics. Upon information and belief, The Big Ten further admits that some Division I members have used Student Assistance Funds to purchase loss-of-value insurance policies to enable student-athletes to remain in college and compete in collegiate athletics. The Big Ten denies the remaining allegations of Paragraph 203.

204.    The Big Ten admits that the opinion issued by the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation contains the language quoted in Paragraph 204. The Big Ten denies the remaining allegations of Paragraph 204.

205.    The Big Ten admits that the NCAA has consistently sought to expand benefits available to student-athletes within its conception, and consistent with its principles, of amateurism. The Big Ten further admits that the NCAA began allowing full COA athletic grants-in-aid in 2015, which naturally increased the number of student-athletes who might receive above-COA total assistance. The Big Ten further admits that there is consumer demand for collegiate sports and that a minority of NCAA Division I college football and basketball programs generate positive net revenues. The Big Ten denies the remaining allegations of Paragraph 205.

206.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 206 concerning alleged amounts received by certain individuals, including Kyler Murray, and on that basis denies them. The Big Ten admits that there is consumer demand for collegiate sports. The Big Ten denies the remaining allegations of Paragraph 206.

207.    The Big Ten admits that Plaintiffs do not purport to challenge NCAA rules requiring student-athletes to be enrolled in their institutions and to meet academic eligibility standards. The Big Ten admits that recently enacted state statutes, some of which became effective July 1, 2021, require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have begun to offer such educational resources and services. The Big Ten lacks sufficient

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

32

Case No. 4:20-cv-03919-CW

knowledge or information to form a belief as to the truth of the remaining allegations of
Paragraph 207 and on that basis denies them.

208.    The Big Ten admits that the trial record and the opinions issued by the District
Court and the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation
contain the language quoted in Paragraph 208. The Big Ten denies the remaining allegations of
Paragraph 208.

209.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
truth of the allegations in Paragraph 209 concerning alleged comments by unidentified critics
and on that basis denies them. The Big Ten admits that in 2017 the FBI announced the results of
an investigation into certain identified issues and persons relating to college basketball, that the
FBI filed complaints, and that certain persons were indicted. The Big Ten denies the remaining
allegations of Paragraph 209.

210.    The Big Ten admits that the NCAA issued an Interim NIL Policy (along with
accompanying materials) effective July 1, 2021 (the date that certain state laws and executive
orders addressing NIL were effective or soon to be effective), with the result that certain
activities relating to name, image, and likeness would not be impacted by the application of
certain NCAA bylaws. Upon information and belief, The Big Ten further admits that there have
been unverified media reports that certain student-athletes at some schools and in some sports
have been offered and/or accepted compensation for the alleged use of their names, images, and
likenesses following the passage of state NIL laws and issuance of the Interim NIL Policy. The
Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the
allegations in Paragraph 210 concerning alleged evidence of the interests of consumers and
sponsors and on that basis denies them. The Big Ten denies the remaining allegations of
Paragraph 210.

211.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
truth of the allegations in Paragraph 211 concerning alleged comments of Mark Emmert. The
Big Ten admits that the NCAA issued an Interim NIL Policy (along with accompanying

materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be effective), with the result that certain activities relating to name, image, and likeness would not be impacted by the application of certain NCAA bylaws. The Big Ten admits that the opinion issued by the United States Court of Appeals for the Ninth Circuit in *O'Bannon v. NCAA* contains the language quoted in Paragraph 211. The Big Ten denies that the purported less restrictive alternatives proffered in Paragraph 211 would be appropriate or legally justified. The Big Ten denies the remaining allegations of Paragraph 211.

212.    Paragraph 212 does not contain allegations of fact and therefore no response is required. To the extent a response is required, The Big Ten denies the allegations of Paragraph 212.

213.    The Big Ten admits that integration of student-athletes is a procompetitive justification for various rules that have been challenged in litigation. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 213 concerning alleged comments by unidentified NCAA personnel and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 213.

214.    The Big Ten denies the allegations of Paragraph 214.

215.    The Big Ten admits that the opinion issued by the United States Court of Appeals for the Ninth Circuit in *O'Bannon v. NCAA* contains the language quoted in Paragraph 215. The Big Ten denies the remaining allegations of Paragraph 215.

216.    Upon information and belief, The Big Ten admits that students at college campuses have varying access to income or wealth. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 216 concerning the alleged impact on wealthier students and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 216.

217.    Upon information and belief, The Big Ten admits that some college students in America are employed and compensated. The Big Ten lacks sufficient knowledge or

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

34

Case No. 4:20-cv-03919-CW

information to form a belief as to the truth of the remaining allegations of Paragraph 217 and on that basis denies them.

218.    The Big Ten admits that the opinions issued by the District Court and the United States Court of Appeals for the Ninth Circuit in the *NCAA GIA* litigation contain the language quoted in Paragraph 218. The Big Ten denies the remaining allegations of Paragraph 218.

219.    The Big Ten admits that NCAA rules contain limitations on compensation to student-athletes for the use of their names, images, and likenesses. The Big Ten further admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in Paragraph 219. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 219 concerning the policies that various educational institutions may have relating to students other than student-athletes and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 219.

220.    The Big Ten admits that Plaintiffs do not purport to challenge NCAA rules requiring student-athletes to be enrolled in their institutions and to meet academic eligibility standards. The Big Ten further admits that recently enacted state statutes, some of which became effective July 1, 2021, require that institutions offer certain educational resources and services to student-athletes relating to name, image, and likeness, and that some NCAA member institutions have begun to offer such educational resources and services. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 220 and on that basis denies them.

221.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 221 and on that basis denies them.

222.    The Big Ten denies the allegations of Paragraph 222.

223.    The Big Ten denies the allegations of Paragraph 223.

224.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 224 concerning the alleged comments of John Shoop and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 224.

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

35

Case No. 4:20-cv-03919-CW

225.    The Big Ten admits that NCAA rules include limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses, which limitations have recently been altered by state laws and by the NCAA's Interim Guidance. The Big Ten denies the remaining allegations of Paragraph 225.

226.    The Big Ten denies the allegations of Paragraph 226.

227.    The Big Ten denies the allegations of Paragraph 227.

228.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 228 and on that basis denies them.

229.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 229 and on that basis denies them.

230.    Upon information and belief, The Big Ten admits that the NCAA's largest source of revenue is derived from media rights and attendance related to the NCAA Division I basketball tournament, and that the NCAA distributes a large portion of those funds to member institutions. The Big Ten denies the remaining allegations of Paragraph 230.

231.    The Big Ten admits that the NCAA indirectly makes payments to schools, which fund both men's and women's sports. The Big Ten denies the allegations in Paragraph 231 characterizing the alleged financial value associated with or derived from women's basketball, television viewership, and attendance. The Big Ten denies that the NCAA makes any payments to either men's teams or women's teams. The Big Ten denies the remaining allegations of Paragraph 231.

232.    Upon information and belief, The Big Ten admits that there have been unverified media reports that some administrators, legislators, and members of the public support various concepts of student-athletes having the opportunity to seek compensation for the use of NIL. The Big Ten denies the remaining allegations of Paragraph 232.

233.    The Big Ten admits that California has passed the Fair Pay to Play Act ("SB 206"), set to take effect in 2023, and that other states have passed and/or introduced legislation relating to NIL. The Big Ten lacks sufficient knowledge or information to form a belief as to the

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

36

Case No. 4:20-cv-03919-CW

truth of the allegations in Paragraph 233 concerning efforts to change the effective date of SB 206 and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 233.

234.    The Big Ten admits that SB 206 permits certain NIL compensation or benefits as provided in the statute. The Big Ten lacks knowledge, information, or belief sufficient to admit or deny the allegations in Paragraph 234 concerning the future effects of SB 206 and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 234.

235.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 235 and on that basis denies them.

236.    The Big Ten admits that numerous states have considered or passed legislation relating to student-athletes and NIL. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 236 and on that basis denies them.

237.    Upon information and belief, The Big Ten admits that the NCAA opposed certain aspects of SB 206 and communicated certain concerns to Governor Newsom regarding the bill. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 237 and on that basis denies them.

238.    The Big Ten denies the allegations of Paragraph 238.

239.    The Big Ten admits that unverified media sources report that the NCAA and some NCAA members have made public comments regarding possible revision of NCAA NIL rules and considerations relating to any such revisions. The Big Ten further admits that the NCAA and certain of its working groups have studied, issued statements regarding, and drafted proposed rules for consideration related to NIL in 2019 and 2020. The Big Ten admits that the United States Supreme Court issued an opinion in *Alston* and that this Court denied Defendants' motion to dismiss Plaintiffs' initial complaint in this action. The Big Ten admits that the NCAA issued an Interim NIL Policy (along with accompanying materials) effective July 1, 2021 (the date that certain state laws and executive orders addressing NIL were effective or soon to be

effective), with the result that certain activities relating to name, image, and likeness would not be impacted by the application of certain NCAA bylaws. The Big Ten denies the remaining allegations of Paragraph 239.

240.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 240 and on that basis denies them.

241.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 241 and on that basis denies them.

242.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 242 and on that basis denies them.

243.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 243 concerning the alleged comments of Warde Manuel and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 243.

244.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 244 concerning the alleged comments of Jack Swarbrick and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 244.

245.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 245 concerning the alleged comments of Kyle Kallander and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 245.

246.    The Big Ten admits that unverified media sources report that certain representatives of the NCAA and NCAA members have made public comments regarding possible revision of NCAA NIL rules and considerations relating to any such revisions. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 246 concerning the alleged comments of Scott Frost and Garrett Klassy and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 246.

247.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 247 concerning the alleged comments of Jim Harbaugh and

alleged revenues of the University of Michigan and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 247.

248. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 248 concerning the alleged comments of Chris Holtmann and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 248.

249. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 249 and on that basis denies them.

250. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 250 and on that basis denies them.

251. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 251 and on that basis denies them.

252. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 252 concerning the alleged comments of Kristin Williams and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 252.

253. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 253 concerning the alleged comments of Kyle Kallander and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 253.

254. The Big Ten admits that the NCAA issued an announcement in October 2019 that contains the language quoted in Paragraph 254. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 254 and on that basis denies them.

255. The Big Ten admits that the NCAA issued a Report of the NCAA Board of Governors on October 29, 2019 that contains the language quoted in Paragraph 255. The Big Ten denies the remaining allegations of Paragraph 255.

256. The Big Ten admits that the NCAA issued a Report of the NCAA Board of Governors on October 29, 2019 that contains the language quoted in Paragraph 256. The Big Ten denies the remaining allegations of Paragraph 256.

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

39

Case No. 4:20-cv-03919-CW

257.    The Big Ten admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains substantially the language quoted in Paragraph 257. The Big Ten denies the remaining allegations of Paragraph 257.

258.    The Big Ten admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in the last sentence of Paragraph 258. The Big Ten denies the remaining allegations of Paragraph 258.

259.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 259 concerning the alleged comments of the NCAA and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 259.

260.    The Big Ten admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains substantially the language quoted in Paragraph 260. The Big Ten further admits that the NCAA sought proposals from the three divisions. The Big Ten denies the remaining allegations of Paragraph 260.

261.    The Big Ten admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in part in Paragraph 261. The Big Ten denies the remaining allegations of Paragraph 261.

262.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 262 concerning the alleged comments of the Associated Press and alleged expenditures of other entities and on that basis denies them.

263.    The Big Ten admits that the conferences that are parties to this action sent a letter to congressional leaders on May 23, 2020 regarding potential federal NIL legislation. The Big Ten denies the remaining allegations of Paragraph 263.

264.    The Big Ten admits that the NCAA and its working groups have studied, issued statements regarding, and drafted proposed rules for consideration related to NIL in 2019 and 2020. The Big Ten further admits that in or about January 2021 the United States Department of Justice sent the NCAA a letter. The Big Ten denies the remaining allegations of Paragraph 264.

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

40

Case No. 4:20-cv-03919-CW

265.     The Big Ten admits that unverified media sources report that the NCAA and certain NCAA members have made public comments regarding possible revision of NCAA NIL rules and considerations relating to any such revisions. The Big Ten further admits that Rebecca Blank testified before the Senate Committee on Health, Education, Labor & Pensions in 2020 and at the *Alston* trial. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 265 and on that basis denies them.

266.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 266 concerning the alleged comments of Allen Greene and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 266.

267.     The Big Ten admits that Mark Emmert testified before the Senate Commerce Committee in June 2021. The Big Ten denies the remaining allegations of Paragraph 267.

268.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 268 and on that basis denies them.

269.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 269 concerning an alleged undated Knight Commission report. The Big Ten denies the remaining allegations of Paragraph 269.

270.     Upon information and belief, The Big Ten admits that the Knight Commission has issued statements concerning student-athlete NIL. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 270 concerning the alleged comments of the Knight Commission and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 270.

271.     The Big Ten admits that the NCAA has a process for accepting applications for waivers from student-athletes relating to the use of their NIL. The Big Ten further admits that the NCAA issued a Final Report and Recommendations on April 17, 2020 that contains the language quoted in part in Paragraph 271. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 271 concerning the number of waiver applications submitted and approved and concerning the alleged comments of

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

41

Case No. 4:20-cv-03919-CW

Bernadette McGlade and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 271.

272.    The Big Ten admits that the NCAA issued a Final Report and Recommendations on April 17, 2020. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 272 concerning the characterizations of the content and waivers allegedly granted and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 272.

273.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 273 concerning Arike Ogunbowale and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 273.

274.    The Big Ten denies the allegations of Paragraph 274.

275.    The Big Ten admits that NCAA rules include limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses. The Big Ten denies the remaining allegations of Paragraph 275.

276.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 276 and on that basis denies them.

277.    The Big Ten admits that Lilly King attended Indiana University and holds several records in, and has several Olympic medals for, swimming. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 277 and on that basis denies them.

278.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 278 and on that basis denies them.

279.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 279 and on that basis denies them.

280.    The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 280 and on that basis denies them.

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

42

Case No. 4:20-cv-03919-CW

1    281.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
2    truth of the allegations of Paragraph 281 and on that basis denies them.

3    282.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
4    truth of the allegations in Paragraph 282 concerning an alleged Axios.com report on Opendorse
5    and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 282.

6    283.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
7    truth of the allegations in Paragraph 283 concerning an alleged fivethirtyeight.com report on
8    Opendorse and on that basis denies them. The Big Ten denies the remaining allegations of
9    Paragraph 283.

10   284.    The Big Ten admits unverified media reports indicate that certain student-athletes
11   at some schools and in some sports have been offered and/or accepted compensation for the
12   alleged use of their names, images, and likenesses following the passage of state NIL laws and
13   issuance of the Interim NIL Policy. The Big Ten lacks sufficient knowledge or information to
14   form a belief as to the truth of the allegations in Paragraph 284 concerning the alleged comments
15   of Mark Emmert, the alleged interests of consumers, and the alleged beliefs of companies and on
16   that basis denies them. The Big Ten denies the remaining allegations of Paragraph 284.

17   285.    The Big Ten denies the allegations of Paragraph 285.

18   286.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
19   truth of the allegations in Paragraph 286 concerning the alleged views of unidentified business
20   leaders and senior executives and on that basis denies them. The Big Ten denies the remaining
21   allegations of Paragraph 286.

22   287.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
23   truth of the allegations of Paragraph 287 and on that basis denies them.

24   288.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
25   truth of the allegations of Paragraph 288 and on that basis denies them.

26   289.    The Big Ten lacks sufficient knowledge or information to form a belief as to the
27   truth of the allegations of Paragraph 289 and on that basis denies them.

28

290.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 290 concerning the alleged comments of Matt Micheli and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 290.

291.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 291 and on that basis denies them.

292.     Upon information and belief, The Big Ten admits that the University of Nebraska announced a partnership with Opendorse. The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 292 and on that basis denies them.

293.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 293 and on that basis denies them.

294.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 294 concerning the alleged comments of Blake Lawrence and on that basis denies them. The Big Ten specifically denies that it has engaged in any unlawful conduct and denies the remaining allegations of Paragraph 294.

295.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 295 and on that basis denies them.

296.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 296 concerning the alleged comments of Terry Tumey and on that basis denies them. The Big Ten denies the remaining allegations of Paragraph 296.

297.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 297 and on that basis denies them.

298.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 298 and on that basis denies them.

299.     The Big Ten lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 299 and on that basis denies them.

1    300.    The Big Ten admits that Plaintiffs seek to bring this action on behalf of the

2    putative class identified in Paragraph 300 but denies that such class is properly defined or that

3    this action can be maintained as a class action. The Big Ten denies the remaining allegations of

4    Paragraph 300.

5    301.    The Big Ten admits that Plaintiffs seek to bring this action on behalf of the

6    putative sub-class identified in Paragraph 301 but denies that such sub-class is properly defined

7    or that this action can be maintained as a class action. The Big Ten denies the remaining

8    allegations of Paragraph 301.

9    302.    The Big Ten admits that Plaintiffs seek damages from defendants relating to

10   NCAA rules that include limitations on compensation to student-athletes for the alleged use of

11   their names, images, and likenesses. The Big Ten denies that Plaintiffs are entitled to any

12   damages in this action. The Big Ten specifically denies that it has engaged in any unlawful

13   conduct. The Big Ten denies the remaining allegations of Paragraph 302.

14   303.    The Big Ten admits that Plaintiffs seek to bring this action on behalf of the

15   putative sub-class identified in Paragraph 303 but denies that such sub-class is properly defined

16   or that this action can be maintained as a class action. The Big Ten denies the remaining

17   allegations of Paragraph 303.

18   304.    The Big Ten admits that Plaintiffs seek damages from defendants relating to

19   NCAA rules establishing limitations on compensation to student-athletes for the alleged use of

20   their names, images, and likenesses. The Big Ten denies that Plaintiffs are entitled to any

21   damages in this action. The Big Ten specifically denies that it has engaged in any unlawful

22   conduct. The Big Ten denies the remaining allegations of Paragraph 304.

23   305.    The Big Ten admits that Plaintiffs seek to bring this action on behalf of the

24   putative sub-class identified in Paragraph 305 but denies that such sub-class is properly defined

25   or that this action can be maintained as a class action. The Big Ten denies the remaining

26   allegations of Paragraph 305.

27

28

306.    The Big Ten admits that Plaintiffs seek damages from defendants relating to NCAA rules establishing limitations on compensation to student-athletes for the alleged use of their names, images, and likenesses. The Big Ten denies that Plaintiffs are entitled to any damages in this action. The Big Ten specifically denies that it has engaged in any unlawful conduct. The Big Ten denies the remaining allegations of Paragraph 306.

307.    The Big Ten admits that Plaintiffs refer to the putative class and sub-classes identified in Paragraphs in 300, 301, 303, and 305 as "the Classes."  The Big Ten denies the remaining allegations of Paragraph 307.

308.    The Big Ten admits that Plaintiffs seek to bring this action on behalf of the putative class identified in Paragraph 308 but denies that such class is properly defined or that this action can be maintained as a class action. The Big Ten denies the remaining allegations of Paragraph 308.

309.    The Big Ten denies the allegations of Paragraph 309.

310.    The Big Ten denies the allegations of Paragraph 310.

311.    The Big Ten denies the allegations of Paragraph 311.

312.    The Big Ten denies the allegations of Paragraph 312.

313.    The Big Ten denies the allegations of Paragraph 313.

314.    The Big Ten denies the allegations of Paragraph 314.

315.    The Big Ten denies the allegations of Paragraph 315.

316.    The Big Ten denies the allegations of Paragraph 316.

317.    The Big Ten denies the allegations of Paragraph 317.

318.    The Big Ten denies the allegations of Paragraph 318.

319.    The Big Ten denies the allegations of Paragraph 319.

320.    The Big Ten denies the allegations of Paragraph 320.

321.    The Big Ten denies the allegations of Paragraph 321.

322.    The Big Ten incorporates, as if fully set forth herein, its answers and objections to the preceding paragraphs of the Amended Complaint.

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

46

Case No. 4:20-cv-03919-CW

1    323.    The Big Ten denies the allegation of Paragraph 323.

2    324.    The Big Ten denies the allegation of Paragraph 324.

3    325.    The Big Ten denies the allegation of Paragraph 325.

4    326.    The Big Ten denies the allegation of Paragraph 326.

5    327.    The Big Ten denies the allegation of Paragraph 327.

6    328.    The Big Ten denies the allegation of Paragraph 328.

7    329.    The Big Ten denies the allegation of Paragraph 329.

8    330.    The Big Ten denies the allegation of Paragraph 330.

9    331.    The Big Ten denies the allegation of Paragraph 331.

10    332.    The Big Ten denies the allegation of Paragraph 332.

11    333.    The Big Ten incorporates, as if fully set forth herein, its answers and objections to

12    the preceding paragraphs of the Amended Complaint.

13    334.    The Big Ten denies the allegation of Paragraph 334.

14    335.    The Big Ten denies the allegation of Paragraph 335.

15    336.    The Big Ten denies the allegation of Paragraph 336.

16    337.    The Big Ten denies the allegation of Paragraph 337.

17    338.    The Big Ten denies the allegation of Paragraph 338.

18    339.    The Big Ten denies the allegation of Paragraph 339.

19    340.    The Big Ten denies the allegation of Paragraph 340.

20    341.    The Big Ten denies the allegation of Paragraph 341.

21    342.    The Big Ten denies the allegation of Paragraph 342.

22    343.    The Big Ten denies the allegation of Paragraph 343.

23    344.    The Big Ten denies the allegation of Paragraph 344.

24    345.    The Big Ten incorporates, as if fully set forth herein, its answers and objections to

25    the preceding paragraphs of the Amended Complaint.

26    346.    The Big Ten denies the allegation of Paragraph 346.

27    347.    The Big Ten denies the allegation of Paragraph 347.

28

1

**DENIAL**

2

The Big Ten denies each and every allegation not specifically admitted above.

3

**AFFIRMATIVE AND ADDITIONAL DEFENSES**

4   Without limiting the generality of the foregoing and without regard to whether defenses

5   set forth below are affirmative defenses within the meaning of Federal Rule of Civil Procedure

6   8(c)(1), and without conceding that any such defenses must be set forth in this Answer or

7   assuming any burden of proof that it would not otherwise bear, The Big Ten asserts the

8   following defenses:

9

**FIRST DEFENSE**

10   Plaintiffs' claims and those of the members of the putative class and sub-classes are

11   barred, in whole or in part, by the doctrine of mootness to the extent that Plaintiffs seek

12   injunctive relief for student-athletes who are no longer participating in NCAA athletics and to

13   the extent that the NCAA bylaws that Plaintiffs seek to enjoin are no longer in effect.

14

**SECOND DEFENSE**

15   Plaintiffs' claims and those of the members of the putative class and sub-classes are

16   barred because their alleged damages are speculative and conjectural and are not capable of

17   calculation with a reasonable degree of certainty.

18

**THIRD DEFENSE**

19   Plaintiffs' claims and those of the members of the putative class and sub-classes are

20   barred, in whole or in part, by *stare decisis* and *res judicata* to the extent that those claims were

21   previously adjudicated in *NCAA v. Alston*, 141 S. Ct. 2141 (2021), *O'Bannon v. NCAA*, 802 F.3d

22   1049 (9th Cir. 2015), or *Marshall v. ESPN*, 668 Fed. App'x 155 (6th Cir. 2016), or to the extent

23   they are adjudicated in any other litigation brought by members of the proposed putative classes

24   as and against any of the Defendants that reaches final judgment before a judgment is rendered

25   in this action.

26

27

28

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

1

### FOURTH DEFENSE

Plaintiffs' claims and those of the members of the putative class and sub-classes are barred, in whole or in part, by collateral estoppel to the extent that those claims were previously adjudicated in *NCAA v. Alston*, 141 S. Ct. 2141 (2021), *O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015), or *Marshall v. ESPN*, 668 Fed. App'x 155 (6th Cir. 2016), or to the extent they are adjudicated in any other litigation brought by members of the Plaintiffs' putative classes and sub-classes against any of the Defendants that reaches final judgment before a judgment is rendered in this action.

### FIFTH DEFENSE

Plaintiffs' claims and those of the members of the putative class and sub-classes are barred, in whole or in part, by the applicable statute of limitations.

### SIXTH DEFENSE

Plaintiffs' claims and those of the members of the putative class and sub-classes are barred, in whole or in part, because the Complaint fails to state a claim for relief under the doctrine established in *Texaco Inc. v. Dagher*, 547 U.S. 1 (2006).  Specifically, the conduct alleged constitutes decisions made regarding core activities of a legitimate venture that are not unlawful restraints of trade under the antitrust laws.

### SEVENTH DEFENSE

Plaintiffs' claims and those of the members of the putative class and sub-classes are barred, in whole or in part, to the extent that any of the agreements, practices, or conduct at issue is required or has been approved by any order, award, directive or similar action of any court, arbitral body, or government agency.

### EIGHTH DEFENSE

Plaintiffs' claims and those of the members of the putative class and sub-classes are barred, in whole or in part, to the extent that any of the agreements, practices, or conduct at issue is required to comply with state or federal laws or regulations and to the extent that the relief

ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
OF DEFENDANT THE BIG TEN CONFERENCE, INC.

49

Case No. 4:20-cv-03919-CW

1  demanded by Plaintiffs is inconsistent with or prohibited by applicable state or federal laws or

2  regulations.

3                                      **NINTH DEFENSE**

4          Plaintiffs' claims and those of the members of the putative class and sub-classes are

5  barred, in whole or in part, and the actions of defendants are justified by the provisions of the

6  United States Constitution that guarantee free speech and the right to petition the government for

7  redress of grievances under the *Noerr-Pennington* doctrine.

8                                      **TENTH DEFENSE**

9          The claims of certain named plaintiffs and members of the putative class and sub-classes

10  are barred, in whole or in part, by the settlement and release finally approved by the Court in *In*

11  *re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*, Case

12  No. 14-md-02541 (N.D. Cal).

13                                   **ELEVENTH DEFENSE**

14         Plaintiffs' claims and those of the members of the putative class and sub-classes are

15  barred, in whole or in part, because the actions of defendants do not unreasonably restrain trade,

16  but are lawful, justified, and pro-competitive by preserving the distinction between college and

17  professional sports.

18                                    **TWELFTH DEFENSE**

19         Plaintiffs' claims and those of the members of the putative class and sub-classes are

20  barred, in whole or in part, because the actions of defendants do not unreasonably restrain trade,

21  but are lawful, justified, and pro-competitive given the need for institutional members of the

22  NCAA to prevent pay-for-play and improper recruiting inducements, including by imposing

23  uniform rules of national competition regarding financial incentives for student-athletes to attend

24  particular colleges or universities.

25                                  **THIRTEENTH DEFENSE**

26         Plaintiffs' claims and those of the members of the putative class and sub-classes are

27  barred, in whole or in part, to the extent that they were not injured by, or have been enriched by,

28  ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
   OF DEFENDANT THE BIG TEN CONFERENCE, INC.

Case No. 4:20-cv-03919-CW

1    the rules being challenged here, which preserve institutions' ability to offer a broad set of

2    athletics offerings and, thus, opportunities to student-athletes.

3                                        * * * * * *

4          The Big Ten has insufficient knowledge or information upon which to form a belief as to

5    whether it may have additional, as yet unstated, separate defenses available.   The Big Ten

6    reserves the right to amend this Answer to add, supplement, or modify defenses based upon legal

7    theories that may be or will be divulged through clarification of the Amended Complaint,

8    through discovery, or through further factual or legal analysis of Plaintiffs' allegations,

9    contentions, and positions in this litigation.

10                            **PRAYER FOR RELIEF**

11         **WHEREFORE**, The Big Ten prays that this Court deny the relief requested by

12   Plaintiffs, dismiss this action with prejudice, enter judgment that Plaintiffs have and recover no

13   relief from The Big Ten, tax costs and attorneys' fees against the Plaintiffs, and afford The Big

14   Ten such other and further relief as may be just and proper.

15   Dated:  September 22, 2021          **MAYER BROWN LLP**

16

17                                        By: */s/ Britt M. Miller*_____
                                          BRITT M. MILLER (*pro hac vice*)
18                                        bmiller@mayerbrown.com
                                          MATTHEW D. PROVANCE (*pro hac vice*)
19                                        mprovance@mayerbrown.com
                                          71 S. Wacker Dr.
20                                        Chicago, IL, 60606-4637
                                          Telephone: (312) 782-0600
21                                        Facsimile: (312) 701-7711

22                                        CHRISTOPHER J. KELLY (SBN 276312)
                                          cjkelly@mayerbrown.com
23                                        Two Palo Alto Square, Suite 300
                                          3000 El Camino Real
24                                        Palo Alto, CA  94306-2112
                                          Telephone: (650) 331-2000
25                                        Facsimile: (650) 331-2060

26                                        *Attorneys for Defendant The Big Ten Conference, Inc.*

27

28   ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES
     OF DEFENDANT THE BIG TEN CONFERENCE, INC.
                                        51
     Case No. 4:20-cv-03919-CW

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on September 22, 2021, I electronically filed the foregoing document

3

with the Clerk of Court using the CM/ECF filing system which will send notification to the

4

email addresses registered.

5

6

7

8

*/s/ Britt M.Miller*

9

BRITT M. MILLER

10

MAYER BROWN LLP

11

Attorneys for Defendant
THE BIG TEN CONFERENCE, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28