Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919 CW<br><br>**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF PLAINTIFFS' MOTION TO MODIFY CASE SCHEDULE** |
|---|---|

010912-11/1857607 V1

I, STEVE W. BERMAN, declare as follows:

1. I am an attorney duly licensed to practice law before this Court. I am a member of the Washington Bar, and I have been admitted to this Court *pro hac vice*. I am the managing partner of Hagens Berman Sobol Shapiro LLP and counsel for the Plaintiffs in the above-entitled action. Based on personal knowledge or discussions with counsel in my firm of the matters stated herein, if called upon, I could and would competently testify thereto.

2. In this class action lawsuit on behalf of current and former NCAA college athletes, Plaintiffs challenge anticompetitive NCAA rules that have restricted their ability to monetize their own names, images, and likenesses ("NILs"). Plaintiffs seek damages and injunctive relief.

3. Plaintiffs have diligently pursued discovery from the beginning of the case. Less than two weeks after written discovery commenced, on December 2, 2020, Plaintiffs served 44 document requests on each of the six Defendants.

4. The parties then engaged in lengthy meet-and-confers in spring 2021. When Defendants requested a three-month extension to the deadline to substantially complete production of these documents, Plaintiffs stipulated to move the deadline to August 31, 2021 (and to extend subsequent deadlines correspondingly). ECF Nos. 150, 151. This was the first requested time modification in the case.

5. In the meantime, following the Supreme Court's June 21, 2021 decision in *NCAA v. Alston*, 141 S. Ct. 2141 (2021), unanimously affirming this Court's trial order, and the Court's June 24, 2021 order in this case largely denying Defendants' motion to dismiss (ECF No. 152), Defendants announced monumental (albeit "interim") changes to their NIL rules commencing July 1, 2021. Following years of enforcing rules that completely forbid college athletes from receiving anything of value for the commercial use of their NILs—and asserting that allowing *any* NIL compensation would be disastrous for college sports—the NCAA adopted an interim NIL policy stating that, *inter alia*, college athletes would now be permitted to receive many forms of NIL compensation. *See* Consolidated Amended Complaint ("Complaint" or "Compl.") ¶¶ 4, 9, 19, 21-22, 259 (ECF No. 164). Plaintiffs then filed their amended Complaint on July 26, 2021, with Defendants

1  answering on September 22, after Plaintiffs stipulated to a one-month extension. *See* ECF Nos. 164-
2  172. This was the second requested time modification in the case.

3         6.     To understand what precipitated the NIL rule changes, why Defendants persist with
4  certain restraints, and to discover information about recently announced potentially seismic changes
5  to the NCAA governing structure (including a newly formed Constitution Committee), Plaintiffs
6  requested that Defendants supplement their production of documents in response to the first set of
7  requests and served a second set of document requests on September 1, 2021.

8         7.     After meeting and conferring, the parties stipulated to substantial completion of these
9  documents' production (and Plaintiffs' supplemental production) by April 1, 2022, to move the class
10 certification deadline to June 22, 2022, and to extend subsequent deadlines by similar amounts of
11 time. ECF Nos. 174, 175. This was the third requested time modification in the case.

12        8.     Plaintiffs have also sought data and documents about the ongoing NIL payments from
13 third parties, which is necessary to show how this case can proceed as a class action. Because
14 Defendants do not systematically collect NIL data, Plaintiffs have subpoenaed numerous third parties
15 (more than 200), including approximately 150 NCAA schools, many of whom are required to keep
16 records of NIL deals by state law or school policy.

17        9.     Plaintiffs started the process quickly, issuing subpoenas to schools in September
18 2021, but it has been an arduous and complex undertaking, involving over a hundred individual
19 negotiations with schools that never previously collected NIL data. Plaintiffs have been working with
20 these schools through, *inter alia*, confidentiality protections, such as the Family Educational Rights
21 and Privacy Act (FERPA, given the sensitive nature of student-specific and commercial data), and
22 understanding how the data is relevant and may be collected and produced (some schools are
23 collecting themselves, others are using third party platforms). This required, *inter alia*, guiding
24 nearly all schools through the lengthy FERPA notice process, modifying the protective orders for
25 nearly a dozen schools, and moving to compel production from schools that refused to produce.
26 Though close to a hundred schools have produced *some* documents, many have yet to produce the
27 seminal NIL deal data. Plaintiffs are negotiating with them to produce that data via initial or
28

BERMAN DECL. IN SUPP. MOT.    - 2 -
TO MODIFY CASE SCHEDULE
Case No. 4:20-cv-03919-CW
010912-11/1857607 V1

supplemental productions to capture as much of the academic year as possible. That is critical to gathering information about the NIL deals for winter ('21-'22) and spring ('22) sport athletes and more generally about the rapidly developing NIL marketplace, with recent deals involving ever broader groups of students.

10. Indeed, since Defendants' rule changes only nine months ago, there has been an explosion of NIL deals involving thousands of college athletes. For example, Built Brands, LLC announced a deal that will provide NIL compensation to every member of the Brigham Young University football team, including tuition reimbursement for all walk-on players. A true and correct copy of an August 25, 2021 article that appeared on the Brigham Young University Athletics website, at https://byucougars.com/story/football/1297331/byu-football-touts-groundbreaking-nil-agreements-built-brands, is attached as **Exhibit A** to this declaration.

11. In February 2022, it was reported that Grambling State University has plans for a deal that will provide NIL compensation to all of the school's scholarship athletes. The agreement is with Urban Edge Network (identified as a media company, which among other things, partners with Historically Black Colleges and Universities, https://urbanedgenetworks.com) and Athlyt (identified as the collegiate athletic NIL technology platform for all sports and all players, https://www.athlyt.co/). The deal is reported to be the first of its kind. A true and correct copy of a February 1, 2022 article that appeared on Yahoo!Sports, at https://sports.yahoo.com/grambling-state-nil-deals-scholarship-220536628.html, is attached as **Exhibit B** to this declaration.

12. On March 23, 2022, Adidas announced a new NIL network that will enable any college athlete at a NCAA Division I Adidas-sponsored school—covering more than 50,000 students across 23 sports at 109 schools—to become a paid spokesperson for the brand. Jim Murphy, Adidas NCAA program lead, said in a statement, "The adidas NIL network embodies our belief that sport has the power to change lives by upskilling athletes and giving them the ability to begin to experience an entrepreneurial path that will carry them beyond their college years." A true and correct copy of a March 23, 2022 article that appeared on the CNBC website, at

1   https://www.cnbc.com/2022/03/23/adidas-announces-new-network-that-will-allow-more-than-
2   50000-student-athletes-to-be-paid-ambassadors-.html, is attached as **Exhibit C** to this declaration.

3         13.    On March 28, 2022, the Sports Business Journal ("SBJ") published an article about
4   "college collectives," which are organizations formed to benefit college athletes at particular
5   institutions. The goal is generally to provide NIL financial opportunities for college athletes at those
6   schools. The SBJ reports that NIL collectives began appearing a few months ago and quickly became
7   recognized as the fastest and most efficient way to help college athletes make money off their NILs.
8   The SBJ also reports that there are close to 35 schools that now work with one or more collectives.
9   Several more collectives are expected to launch membership programs in the near future, according
10  to David Hickson, an executive vice president at RektGlobal, the company that's behind the
11  membership concept. A true and correct copy of a March 28, 2022 article that appeared in the Sports
12  Business Journal, is attached as **Exhibit D** to this declaration.

13        14.    On March 16, 2022, the Financial Times published a short film entitled, "NIL:
14  Changing the Game," which discusses the NIL revolution and how college athletes are now making
15  money through sponsorship and endorsement deals. In the video, the Financial Times' journalists
16  interview athletes, agents, and policymakers. A true and correct link to the cover article appears here:
17  https://www.ft.com/video/31282edd-c0fd-498a-891a-e091d335c33c, and a true and correct link to
18  the video only appears here: https://next-media-api.ft.com/renditions/16472672977020/
19  1280x720.mp4.

20        15.    On March 30, 2022, the Washington Post published an article entitled, "Who's
21  making the most from NIL? Women's basketball is near the top." The article reports, "As the Final
22  Four descends on Minneapolis with some of the biggest names in the game competing for the
23  national title, women's basketball continues to be the surprise winner in the first year of college
24  athletes being allowed to cash in on their name, image and likeness." The article identifies a study
25  that found that the sport ranks second to football in total NIL compensation, "as marketers have
26  found immense value in these women with massive reach through their social media endeavors." A
27  true and correct copy of the March 30, 2022 article that appeared in the Washington Post, available

28  
BERMAN DECL. IN SUPP. MOT.      - 4 -
TO MODIFY CASE SCHEDULE
Case No. 4:20-cv-03919-CW
010912-11/1857607 V1

1   online at https://www.washingtonpost.com/sports/2022/03/30/womens-college-basketball-
2   endorsements-nil/, is attached as **Exhibit E** to this declaration.

3         16.    On April 2, 2022, The Wall Street Journal published an article about Class
4   Representative Sedona Prince, a University of Oregon basketball player. The article explains that
5   Ms. Prince is famous for a video she posted on social media a year ago. "It compared the women's
6   tiny weight-room setup with the men's cavernous facility at the 2021 NCAA tournaments—a
7   comparison that triggered outrage, a months-long gender-equity NCAA review and an ongoing
8   overhaul of the women's event." The article discusses Ms. Prince's NIL deals, social media
9   activities (she has more than 43,000 followers on Twitter, 256,000 on Instagram, and 3.1 million
10  TikTok followers), and her social justice activism. The article further reports that "Prince was one of
11  the first Oregon athletes to have her branded items sold in the school's campus bookstore—five
12  apparel items are for sale there with her name or initials on them—a step that the school's previous
13  athletes could only dream of." A true and correct copy of the April 2, 2022 article that appeared in
14  the Wall Street Journal, entitled "Sedona Prince Is a TikTok Star Who Also Plays College
15  Basketball," is available online at https://www.wsj.com/articles/sedona-prince-tiktok-college-
16  basketball-oregon-11648917186/, and attached as **Exhibit F** to this declaration.

17        17.    Plaintiffs request a four-month extension of the class certification deadline from June
18  22 to October 21, 2022, which, based on information and belief (including discussions with
19  Plaintiffs' class certification experts), will permit Plaintiffs to obtain data from schools and third
20  parties for as close to a full year after Defendants' rule changes as possible, to capture data about the
21  recently announced NIL deals, and to then have Plaintiffs' experts assemble and assess what will be
22  a massive dataset for their reports (which Plaintiffs' experts estimate will take several months).

23        18.    On a March 17, 2022 telephonic meet-and-confer with all Defendants, Plaintiffs
24  requested this four-month extension of the class certification deadline from June 22 to October 21,
25  2022, and to modify all subsequent deadlines by the same amount of time.

26        19.    In a March 28, 2022 email from Cali Cope-Kasten, counsel for the NCAA, to
27  Plaintiffs' counsel, Ms. Cope-Kasten wrote, among other things, "Defendants oppose a 4-month
28

delay in class certification briefing at this time. We would, however, be willing to agree to Plaintiffs' request under the following two conditions: (1) Plaintiffs agree not to seek a further extension in class certification briefing beyond these 4 additional months; and (2) Plaintiffs agree not to serve any further RFPs on Defendants." A true and correct copy of this March 28, 2022 email is attached as **Exhibit G** to this declaration. Plaintiffs declined Defendants' conditions. As to the first condition, Plaintiffs intend to file their class certification motion at the end of the extension if granted, but given the evolving NIL landscape, can't forswear that another extension would not be in the best interests of the class. As to condition two, it would be unfair to not allow further requests for production in light of information that might be learned through the discovery process about the rapidly evolving NIL rules and marketplace and NCAA governance structure.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 4th day of April, 2022 at Seattle, Washington.

*/s/ Steve W. Berman*
STEVE W. BERMAN