Jacob K. Danziger (SBN 278219)
ARENTFOX SCHIFF LLP
44 Montgomery Street, 38th Floor
San Francisco, CA 94104 United States
Telephone: (734) 222-1516
Facsimile: (415) 757-5501
jacob.danziger@afslaw.com

Beth Wilkinson (*pro hac vice*)
Rakesh Kilaru (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
Cali Cope-Kasten (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
ccope-kasten@wilkinsonstekloff.com

Attorneys for Defendant
NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re College Athlete NIL Litigation | Case No. 4:20-cv-03919-CW<br><br>**DECLARATION OF KRIS RICHARDSON** |

A. **Personal Background**

1. I am a Director of Academic and Membership Affairs at the National Collegiate Athletic Association (the "NCAA"). I make this declaration of my own personal knowledge and, if called on to do so, could testify competently to the facts stated herein under oath.

2. I received my undergraduate degree from Capital University. I earned my juris doctorate from The Ohio State University in 1997 and my Masters' degree in sports management from The Ohio State University in 1998.

3. I joined the NCAA in August 2006 as an assistant director of membership services. I was promoted to an associate director of membership services in May 2007 and have served in my current position since the end of January 2012. In my current position, my responsibilities include directing and engaging in the work of the academic and membership affairs staff who support the NCAA Division I membership, including interpreting and deciding waivers of Division I legislation. My responsibilities also include supporting the Division I governance structure.

B. **The NCAA**

4. The NCAA is an unincorporated association that is tax exempt pursuant to Section 501(c)(3) of the Internal Revenue Code. The NCAA was founded in 1906. The 2022–23 Constitution and Bylaws of the NCAA are attached to this Declaration as Exhibit A.

5. As set forth in Article 2 of the Constitution, the NCAA is charged with, among other things, establishing the rules for sports competitions and participation, conducting NCAA championships, and promoting gender equity, diversity, and inclusion. The NCAA's mission is to achieve these goals in a way that maintains the highest standards of both academics and competitive sports.

6. The NCAA's membership is currently comprised of approximately 1,100 member institutions, including, in Division I, five autonomy conferences: The Atlantic Coast Conference (ACC), the Big Ten Conference (B1G), the Big 12 Conference (B12), the Pac 12 Conference (P12) and the Southeastern Conference (SEC). Some refer to these as the "A5" or "Power-5" conferences.

C. **In Any Given Season, Many Full Scholarship Student-Athletes Never Compete In A Single Broadcast Competition**

7. Within the autonomy conferences, there are various categories of student-athletes—each of which includes full scholarship student-athletes—who do not compete in broadcast competitions during any given season. Those categories include:

   a. *Redshirts*. Student-athletes who do not compete during a season, whether due to injury, personal choice, or a coach's decision, preserve a season of competition eligibility and often remain eligible to participate in practices. This is commonly referred to as "redshirting." While NCAA Rules changed in 2018 to allow football student-athletes to play in up to four games without using a season of competition, men's and women's basketball student-athletes use a season of competition by competing in a single competition. A football team at a school in an autonomy conference may have 5–10 student-athletes redshirt in any given year. And, while not as common, men's and women's basketball teams in an autonomy conference may have 1 or 2 student-athletes redshirt in any given year.

   b. *Transfers*. Prior to the adoption of more permissive transfer rules in April 2021, including during a significant portion of the class period in this case, student-athletes who transferred schools were required to serve one academic year in

residence at their new school before being eligible for competition, unless the school obtained a waiver of the residence requirement from the NCAA. Today, a student-athlete transferring from one four-year college to another for the first time will usually be immediately eligible for competition at their new school, provided the student-athlete met the notification of transfer requirements and does not have an unfulfilled residence requirement at their previous college. However, student-athletes who wish to transfer a second time, to a third four-year school, are required to serve one academic year in residence before being eligible for competition, unless an exception is met or the school obtained a waiver of the residence requirement from the NCAA. As an example, from the beginning of the 2016–17 academic year through the end of the 2019–20 academic year, thousands of football players, men's basketball players, and women's basketball players transferred to Division I schools and would therefore have been required to sit out for a season because the more permissive rules were not yet in place.

c. *Season-Ending Injury*. By definition, a student-athlete who experiences a season-ending injury before the start of a season will not compete in broadcast competitions during that season. Although it is an unfortunate truth that such injuries will happen to student-athletes in football, men's basketball, and women's basketball, it is entirely unpredictable to whom they will occur. For example, on August 2, 2022, Paige Bueckers—"one of the best [players] in women's college basketball"—tore a ligament in her knee that caused her to miss the entire 2022–23 women's collegiate basketball season. https://perma.cc/XKY8-SLGP. In a given year, one

   school may not have any of their scholarship student-athletes suffer such an injury, while another may have two or three scholarship student-athletes from their football, men's basketball and women's basketball teams suffer such injuries.

d. *Academically Ineligible*. NCAA Bylaw 14 requires student-athletes to be enrolled in at least a minimum full-time program of studies, be in good academic standing, and maintain progress toward a baccalaureate or equivalent degree in order to participate in intercollegiate athletic competitions.  While member institutions are not required to disclose academic ineligibility to the NCAA, based on my experience, it is not uncommon for some student-athletes who participate in football, men's basketball, or women's basketball to be academically ineligible at any given school, in any given year.  As an example, the University of Purdue lost its top returning wide receiver, Milton Wright, for the 2022 season due to academic ineligibility.  https://perma.cc/2URX-4JQB.  Although we cannot predict which student-athletes they will be, they will not be able to participate in broadcast competitions while academically ineligible.

e. *Failed Drug Test*. Under NCAA Bylaw 18.4.1.4.1, student-athletes who fail a drug test are ineligible to compete for at least 365 consecutive days.  Even if this only happens occasionally, if it happens to a scholarship student-athlete in football, men's basketball or women's basketball, the student-athlete will not compete in broadcast competitions while serving their penalty.  This recently happened, for example, to Nouredin Nouili, a University of Nebraska starting offensive lineman

who was ruled ineligible for the 2022 football season due to a failed drug test. https://perma.cc/BC6A-8K3M.

8. Additionally, scholarship student-athletes who are an academic redshirt, exhaust their competition eligibility, or receive a medical exemption after sustaining a career-ending injury may still receive their athletic scholarship from their institution but under those circumstances, they will not participate in broadcast competitions.

9. For these reasons, numerous scholarship student-athletes on football, men's basketball, or women's basketball teams, in any given year do not appear in a single broadcast competition.

D. **Plaintiffs' Assumption That All Full Scholarship Student-Athletes Participate In Broadcast Competitions Each Year Is Incorrect.**

10. I understand that Plaintiffs posit that all scholarship student-athletes would be compensated with a share of broadcast rights fees based on an assumption that all scholarship student-athletes would participate in broadcast competitions every year they receive a scholarship. For the reasons explained above, that is never the case for all scholarship student-athletes in any given year.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on April 24, 2023, in Indianapolis, Indiana.

_Kris Richardson_
Kris Richardson