Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Classes*

[Additional counsel on signature page]

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' EXPERT PROFESSOR BARBARA OSBORNE**<br><br>Date:        September 21, 2023<br>Time:        2:30 p.m.<br>Judge:       Hon. Judge Claudia Wilken<br>Courtroom: 2, 4th Floor |

1

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND .................................................................................. 3

III.  LEGAL STANDARD............................................................................................. 4

IV.  ARGUMENT ......................................................................................................... 5

    A.  Professor Osborne's opinions should be excluded because they are improper legal opinions. ................................................................................5

    B.  Professor Osborne's opinions should be excluded because they are beyond her expert qualifications and are unreliable. .....................................8

    C.  Professor Osborne's opinions should also be excluded because they are irrelevant to class certification. ......................................................12

V.  CONCLUSION....................................................................................................... 13

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

010912-11/2315617 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Arris Cable Modem Consumer Litig.*,
327 F.R.D. 334 (N.D. Cal. 2018) ........................................................................12

*Cloud v. Pfizer Inc.*,
198 F. Supp. 2d 1118 (D. Ariz. 2001) ....................................................................8

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ............................................................................................12

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) ..............................................................................12

*Crow Tribe of Indians v. Racicot*,
87 F.3d 1039 (9th Cir. 1996) ................................................................................5

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ..........................................................................4, 12

*Dobrosky v. Arthur J. Gallagher Serv. Co.*,
2014 WL 10988092 (C.D. Cal. July 30, 2014) ....................................................12

*Guidroz-Brault v. Missouri Pac. R. Co.*,
254 F.3d 825 (9th Cir. 2001) ................................................................................4

*Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ................................................................................5

*U.S. ex rel. Kelly v. Serco, Inc.*,
846 F.3d 325 (9th Cir. 2017) ................................................................................5

*In re Live Concert Antitrust Litig.*,
247 F.R.D. 98 (C.D. Cal. 2007) ..........................................................................12

*Nat'l Collegiate Athletic Ass'n v. Smith*,
525 U.S. 459 (1999) ........................................................................................2, 7

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ..............................................................................6

*Netscape Commc'ns Corp. v. St. Paul Mercury Ins. Co.*,
2010 WL 11519412 (N.D. Cal. July 16, 2010) ......................................................8

*U.S. ex rel. Oliver v. Parsons Co.*,
195 F.3d 457 (9th Cir. 1999) ................................................................................5

*Pinal Creek Group v. Newmont Mining Corp.*,
  352 F. Supp. 2d 1037 (D. Ariz. 2005) ....................................................................5

*Portz v. St. Cloud State Univ.*,
  297 F. Supp. 3d 929 (D. Minn. 2018) ....................................................................6

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ...............................................................................12

*Stevens v. Brigham Young Univ - Idaho.*,
  2020 WL 560572 (D. Idaho Feb. 3, 2020).............................................................6

*Strong v. Valdez Fine Foods*,
  724 F.3d 1042 (9th Cir. 2013) ...............................................................................5

*U.S. v. Campos*,
  217 F.3d 707 (9th Cir. 2000) .................................................................................5

*United States v. Chang*,
  207 F.3d 1169 (9th Cir. 2000) ...............................................................................8

*Yokoyama v. Midland Nat. Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) .............................................................................13

### STATUTES

Americans With Disabilities Act ....................................................................................5

False Claims Act ............................................................................................................6

Uniform Commercial Code.............................................................................................6

### OTHER AUTHORITIES

Federal Rule of Evidence 702................................................................................. *passim*

010912-11/2315617 V1

1

## **NOTICE OF MOTION AND MOTION**

2 **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3       PLEASE TAKE NOTICE THAT on September 21, 2023, at 2:30 p.m. before the Honorable

4 Claudia Wilken, District Court Judge, at the Oakland Courthouse, Courtroom 2, 1301 Clay Street,

5 Oakland, CA 94612, the Class Plaintiffs will and hereby do move the Court, under *Daubert v. Merrell*

6 *Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702, to exclude the

7 opinions of Defendants' expert, Professor Barbara Osborne.

8       This motion is based on this notice of motion and motion, the accompanying memorandum of

9 points and authorities, declarations, and pleadings and papers on file in this action.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

010912-11/2315617 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should exclude the opinions and testimony of Defendants' expert Professor Barbara Osborne, in whole or in part, under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because her opinions are impermissible, unreliable, and unhelpful to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants present the declaration of Professor Barbara Osborne ("Osborne Decl.") in support of their Opposition to Plaintiffs' Motion for Class Certification ("Opposition"). But Professor Osborne has not offered any opinion that would aid the Court in resolving the only issue before it at this stage— whether it can certify Plaintiffs' proposed damages classes.[1] Instead, she purports to offer her own unconventional legal interpretation of Title IX and its application to the but-for world that Plaintiffs' experts have modeled—legal opinions which are inadmissible and, in any event, unhelpful to the Court in resolving the class certification issue.

The opinions offered by Professor Osborne in her report can be summarized as follows:

- The payments contemplated in Plaintiffs' broadcast damages model would implicate schools' legal liability under Title IX even though the payments would not come from schools, but from the conferences, which Professor Osborne admits are not subject to Title IX requirements[2];

- The conferences' damages payments would violate Title IX even though Professor Osborne can identify no case in which Title IX has ever been applied to a damages award or settlement; and

- It would be financially impossible for schools to provide proportional benefits to women athletes to offset the payments to men athletes that are contemplated by Plaintiffs' broadcast damages model (even though Professor Osborne is not an economist or revenue expert and has done nothing to support this economic opinion).

Settled law prohibits the admission of each of these opinions.

*First*, Professor Osborne's opinions regarding the application of Title IX to the facts of this case invade the province of the Court and are inadmissible legal opinions. As explained in Section IV.A *infra*, expert testimony that interprets the law or applies the law to the facts of the case is improper. This is precisely what Professor Osborne does: "I'm providing my opinion about how I

---

[1] Defendants have not challenged the certification of Plaintiffs' Injunctive Relief Class. *See generally*, Opposition.

[2] *See* Ex. 61 (Osborne Dep. Tr.), 49:12-20 (Unless otherwise noted, "Ex. __" refers to exhibits attached to the Declaration of Steve W. Berman in Further Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith).

010912-11/2315617 V1

would apply the law."[3] While an expert may testify regarding the history and purposes of a statute, Professor Osborne goes far beyond that in offering her own interpretation of the legal requirements of Title IX and opining on how those requirements would apply to Plaintiffs' damages model. Moreover, Professor Osborne's opinions on the application of Title IX to the damages model are unaccepted legal speculation that is contrary to Ninth Circuit law. Indeed, Professor Osborne was not able to offer any support for her inadmissible legal opinion that Title IX would apply to Broadcast NIL payments by the conferences, as modeled by Plaintiffs' expert, Dr. Rascher. To the contrary, the governing case law is clear that organizations like the conferences and the NCAA, which do not receive any government funding, are not subject to Title IX requirements—a position which Defendants themselves have repeatedly taken in the courts.[4] Professor Osborne also offers no case law support whatsoever for the overarching premise of her report: that a *damages award for past harm* is even subject to Title IX. Despite being proffered as a Title IX expert, Professor Osborne could not cite a single case where a court held that Title IX applied to a damages award, much less reached this issue at class certification. Paragraphs 27-33, 45-65, 68, 74-79, 93-96, 99-115, 118-123, 125-130, 135-136, 143, 146-152, and 154 of Professor Osborne's declaration should, accordingly, be excluded.[5]

*Second*, Professor Osborne is unqualified to provide an opinion on the financial viability of Plaintiffs' damages model. Professor Osborne admits that if her theory of Title IX's application were correct, and disproportionate damages payments to male (as opposed to female) athletes violated Title IX, schools could proportionately increase the amount of benefits they provide to female athletes and thereby comply with the statute. Professor Osborne goes on to offer the economic opinion, however, that conferences and schools could not afford to do this. But Professor Osborne has not been put forward as an economic expert or an expert on college sports finances. Indeed, she is not an economist

---

[3] Ex. 61 (Osborne Dep. Tr.), 57:10-11.

[4] *See e.g.*, *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999).

[5] *See* Osborne Decl. ¶¶ 27, 45-64, 68, 74-75, 119-121 (explaining the legal requirements of Title IX); ¶¶ 30-31, 65, 78-79, 93-94, 152 (opining that the payments contemplated by Plaintiffs' broadcast damages model would still implicate schools' Title IX liability even though the payments would come directly from the conferences); and ¶¶ 28-29, 31-33, 95-96, 99-115, 118, 122-123, 125-130, 135-136, 143, 146-152, 154 (applying Osborne's legal interpretation of Title IX to Plaintiffs' damages model and opining that the payments contemplated by the model would violate Title IX).

and did not empirically analyze school or conference finances to formulate her opinions in this action and performed not a single economic model for any school to support her opinion. Her opinion in this regard is akin to the lay opinion testimony that was offered by various school officials in *Alston* that educational payments would hurt consumer demand, opinions that then and now are not supported by any economic analysis despite the availability of myriad economists at the Power Five schools. As explained in Section III .B *infra*, reliable expert testimony cannot include unsupported speculation or subjective beliefs by someone who lacks qualifications in the area in which the expert seeks to offer an opinion. That is clearly the case here with respect to Professor Osborne's speculation about Defendants' financial ability to offer proportionate NIL payments to male and female athletes. Professor Osborne's personal opinions on these points are not founded on any evidence, economic analysis, experience or expertise. On that basis, the following paragraphs of her report should be excluded: 117, 124, 131, 133, and 134.[6]

*Finally*, even if she were qualified to give them, the opinions set forth in Professor Osborne's report are not relevant because they do not address the issues at class certification: whether the damages model offered by Dr. Rascher matches Plaintiffs' theory of liability, and whether damages can be measured on a class-wide basis. As explained in Section III .C. *infra*, in order to be admissible, an expert opinion must be relevant to the issues currently before the court. Professor Osborne's opinions regarding whether the damages distribution that Plaintiffs' expert proposes would violate Title IX are not relevant to the Court's determination on class certification. This is simply a merits issue that is common to the entire class. For this additional reason, the entirety of Professor Osborne's report should be excluded.

## II.    FACTUAL BACKGROUND

Plaintiffs' economics expert Dr. Rascher proposes a damages methodology whereby football, men's basketball, and women's basketball players would receive Broadcast NIL payments from NCAA conferences. The conferences are not subject to Title IX—a fact that Professor Osborne does

---

[6] *See* Osborne Decl. ¶¶ 117, 124, 131, 134 (opining that schools could not afford to provide a proportionate amount of offsetting benefits to female athletes); ¶ 133 (opining that any offsetting payments to female athletes would be "pay for play").

not dispute—however, in one of their many efforts to undercut Plaintiffs' damages model, Defendants claim that implementing Dr. Rascher's methodology would violate Title IX.

The scope of Professor Osborne's assignment in this case was limited—she was not asked to undertake any comprehensive economic analysis of Plaintiffs' damages theory or methodology. Instead, her assignment was simply to "assess whether there are Title IX implications and/or gender equity concerns raised by Plaintiffs' proposed broadcast revenue share payment model."[7] In her report she forms a number of opinions, discussed in the introduction, which are novel interpretations of Title IX and its application to the facts of this case, ultimately offering the legal conclusion that Dr. Rascher's damages methodology would violate Title IX. Professor Osborne's report also contains other opinions related to the economic viability of spending by schools should Plaintiffs' damages model be implemented, though she admits that she is not an economist and has not done any empirical analysis of the finances at any particular school, much less across all Division I athletic programs.

## III.   LEGAL STANDARD

The proponent of expert testimony bears the burden of establishing its admissibility. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995). Federal Rule of Evidence 702 which governs the admissibility of expert testimony states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Ninth Circuit has summarized those requirements as follows: First, Rule 702 requires that the evidence "assist the trier of fact," or in other words, that it be ***relevant*** to the issues presently before the Court. Second, Rule 702 demands that expert testimony be ***reliable***—that it relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs. *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (citations

---

[7] Osborne Decl. ¶ 12.

omitted) (emphasis added). Moreover, under Rule 702, "'***matters of law are inappropriate subjects for expert testimony***.'" *U.S. ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 337 (9th Cir. 2017) (emphasis added) (quoting *Hooper v. Lockheed Martin*, 688 F.3d 1037, 1052 (9th Cir. 2012)). Rule 702 "requir[es] trial judges to serve as 'gatekeepers' to all expert testimony to ensure it meets these requirements." *U.S. v. Campos*, 217 F.3d 707, 719 (9th Cir. 2000) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)).

## IV.     ARGUMENT

### A.     Professor Osborne's opinions should be excluded because they are improper legal opinions.

Rule 702 provides in relevant part: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the *evidence* or to determine a *fact* in issue." (Emphasis added). Conversely, it is well-settled that "instructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *U.S. v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993)). For this reason, "[e]xpert testimony is not proper for issues of law" because an expert's role is limited to "'interpret[ing] and analyz[ing] factual evidence.'" *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (quoting *Brodie*, 858 F.2d at 496). Similarly, "'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *Hangarter*, 373 F.3d at 1016 (emphasis in original) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)).

Applying these principles, courts in the Ninth Circuit have consistently excluded expert testimony that "defines the governing law," as well as testimony that "applies the law to the facts" or that sets forth "what the law is and how it should be applied to the facts of the case." *Pinal Creek Group v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043 (D. Ariz. 2005); *see also Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046-47 (9th Cir. 2013) ("an expert witness is not permitted … to instruct the jury on the law of [Americans With Disabilities Act] compliance"); *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (excluding expert testimony regarding whether a

defendant's actions complied with the False Claims Act); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008) (excluding expert testimony on how the Uniform Commercial Code applied to underlying facts).

Applying these principles, while courts in this circuit and elsewhere have allowed experts to testify about "the history and purposes" of Title IX, as well as the "industry practice or standards" that are relevant to a case, they have consistently refused to allow "even a slight deviation . . . into the requirements of Title IX." *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 953 (D. Minn. 2018); *see also Stevens v. Brigham Young Univ - Idaho.*, 2020 WL 560572, *2 (D. Idaho Feb. 3, 2020) (permitting testimony regarding Title IX's history and purpose, but excluding "testimony regarding legal standards and their applicability to th[e] case").

The expert testimony offered in this case by Professor Osborne—an attorney and law professor—runs directly afoul of this case law. It unequivocally crosses the line by offering legal opinions about the requirements of Title IX and the application of those requirements to the facts in this case. One need look no further than the description of Professor Osborne's assignment to reach this conclusion. The overarching question she was asked to opine on is "whether there are Title IX implications . . . raised by Plaintiffs' proposed broadcast revenue share payment model."[8] Her deposition testimony confirmed that to carry out this assignment, she applied Title IX (the law) to Plaintiffs' proposed damages methodology (the facts of this case).[9] Such legal opinions are clearly inadmissible.

Indeed, Professor Osborne's report contains several improper legal opinions. For example, she opines that Plaintiffs' damages model would implicate schools' Title IX liability even though the payments would come from the conferences.[10] This is clearly an inadmissible legal opinion about how Title IX would apply. It is also inconsistent with existing legal precedent. Professor Osborne

---

[8] Osborne Decl. ¶ 12.

[9] *See* Ex. 61 (Osborne Dep. Tr.), 57:10-11 ("I'm providing my opinion about how I would apply the law"); 165:2-5 ("I looked at the broadcast model and applied Title IX, and so I offered my opinion as whether or not Title IX would be implicated by that model.").

[10] *See* Osborne Decl. ¶ 152 ("I would find that institutions that implement Plaintiffs' broadcast revenue share payments are in violation of Title IX"); *see also* Ex. 61 (Osborne Dep. Tr.) 47:2-52:15.

acknowledged that the Supreme Court expressly held in *NCAA v. Smith*[11] that the NCAA is not subject to Title IX because it is not a recipient of federal funding.[12] And, under the same reasoning, conferences, which also do not receive federal funding, would similarly not be subject to Title IX requirements.[13] Professor Osborne could not identify a single case or any other legal authority that has ever found Title IX to apply to the actions of the NCAA or the conferences.[14] Moreover, Professor Osborne offers the inadmissible, and unsupported, legal opinion that Title IX applies to a *damages award for past harm*. Putting aside that Professor Osborne could not cite a single case where a class was not certified because the proposed damages would violate Title IX, or a single case where a court held that damages could not be allocated in a particular way because it would violate Title IX, there can be no dispute that Professor Osborne is offering an inadmissible legal opinion about the applicability of Title IX.[15] While she tries to recast damages payments as "financial assistance" subject to Title IX, she offers no legal authority to support this opinion and conceded that she is not aware of any court that has ever addressed whether Title IX's financial assistance provisions could be applied in this manner.[16] She similarly is not aware of any cases to support her legal opinion that a damages award to a class would violate the equal participation and equal treatment provisions of Title IX.[17]

Simply put, Professor Osborne's testimony about the application of Title IX is nothing more than unreliable legal *ipse dixit* which cannot satisfy the admissibility requirements of Rule 702.[18] It is well-established that "expert testimony intended to aid the Court in choosing the correct rule of law or

---

[11] 525 U.S. 459.

[12] *See* Ex. 61 (Osborne Dep. Tr.), 68:17-69:1.

[13] *See* Ex. 61 (Osborne Dep. Tr.), 68:17-69:1.

[14] *See id.* at 98:21-99:20; 102:9-13; 103:17-22.

[15] *See id.* at 123:15-20.

[16] *See id.*

[17] *See* Osborne Decl. ¶ 99 ("Plaintiffs' Broadcast Model creates new and different levels of athletic participation opportunities based on sex that, if I were conducting an audit, I would flag as a violation of Title IX") and ¶ 118 ("I would flag these disproportionate payments as a violation of Title IX's equitable treatment provisions").

[18] *See* Ex. 61 (Osborne Dep. Tr.), 137:15-138:1 ("Q. Okay. So this is a novel conclusion based on your legal analysis of that case law, correct?... THE WITNESS: It is, because I think it's the appropriate application of the law.").

in interpreting that law constitutes impermissible opinion testimony on a question of law." *See Netscape Commc'ns Corp. v. St. Paul Mercury Ins. Co.*, 2010 WL 11519412, at *5 (N.D. Cal. July 16, 2010). Professor Osborne's legal opinions about the applicability of Title IX to the Rascher damages model fail that test.

**B.      Professor Osborne's opinions should be excluded because they are beyond her expert qualifications and are unreliable.**

Professor Osborne offers additional opinions on subjects that go vastly beyond her expertise and experience. For example, Professor Osborne acknowledged that, from a legal perspective, schools could provide additional benefits to male athletes and still maintain compliance with Title IX if they also offered increased benefits to female athletes,[19] but she then proceeded to opine that "it would be virtually impossible to locate sufficient additional funds to ensure some form of compensation for female student-athletes proportional to the significant amounts that Plaintiffs contemplate for male student-athletes under the Broadcast Model."[20] Professor Osborne is not qualified to offer that economic opinion in this case.

Rule 702 only permits an expert to testify on subjects for which she is qualified. *See United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) ("[T]he admissibility of expert testimony [is] a subject peculiarly within the sound discretion of the trial judge, who alone must decide the qualifications of the expert on a given subject and the extent to which his opinions may be required.") (citation and internal quotation marks omitted). And Rule 702 requires that expert testimony be "based on sufficient facts or data" and must be the product of the expert's application of "reliable principles and methods" to the facts of the case. Fed. R. Evid. 702. Reliance on anecdotal evidence does not suffice. *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1133-34 (D. Ariz. 2001) (reliance on compilations of occurrences do not satisfy Rule 702 or *Daubert I* (citing *Jones v. United States*, 933 F. Supp. 894, 899-900 (N.D. Cal. 1996), *aff'd* 127 F.3d 1154 (9th Cir.1997), *cert. denied* 524 U.S. 946 (1998))). Professor Osborne's opinions about the economics of college sports run afoul of each of these Rule 702 requirements.

---

[19] *See* Ex. 61 (Osborne Dep. Tr.), 144:21-145:16.

[20] Osborne Decl. ¶ 133.

To begin with, Professor Osborne does not even claim to be qualified to offer opinions about what benefits schools could afford to provide to female athletes. Nor did she do any work whatsoever to form such opinions. She simply speculates that proportionate benefits would not be possible.[21] Professor Osborne is not an economist,[22] and the only support she offers for her economic opinion that schools could not afford to provide proportionate NIL payments to male and female athletes is a handful of anecdotal evidence. She admitted that she did not conduct any independent studies or empirical work to determine the actual impact of Dr. Rascher's damages model on school finances.[23] She did not, for instance, do any analysis of how the conferences currently spend the massive revenues that they generate each year through their broadcast contracts.[24] Nor did she conduct any analysis of school budgets to determine whether schools could redistribute a portion of the millions of dollars they currently spend on coaching salaries and athletic facilities to female athletes if doing so was necessary to comply with Title IX.[25] Professor Osborne also acknowledged that none of the sources she cited to support her opinion analyzed what additional funds would actually be needed to compensate female athletes proportional to the amounts paid to male athletes under Dr. Rascher's model.[26]

Nor does she dispute that the only reason Dr. Rascher's model provides for greater Broadcast NIL payments to male athletes than female athletes is because of the undisputed fact that the broadcast rights for FBS football and Division I men's basketball generate much more revenue than the broadcast rights for Division I women's basketball—a fact admitted by *all three* of Defendants' experts: Professor Osborne, Defendants' broadcast expert, *and* Defendants' economic expert.[27] Rather than

---

[21] *See* Ex. 61 (Osborne Dep. Tr.), 183:19-189:21.

[22] *See id.* at 20:2-4, 176:24-177:9.

[23] *See id.* at 179:3-180:21.

[24] *See id.* at 186:17-187:2.

[25] *See id.* at 197:5-12.

[26] *See id.* at 185:9-18.

[27] *See, e.g.*, Osborne Decl. ¶ 28 (characterizing football and men's basketball as "the two primary 'revenue-generating' sports"); Ex. 58 (Thompson Dep. Tr.), 158:17-21 (recognizing that women's basketball and other Olympic sports are "not significant profit-makers"); Ex. 57 (Tucker Dep. Tr.), 47:9-48:18 (acknowledging that "the order of attracting eyeballs in broadcasting is that FBS football is number one, men's basketball is number two, and women's basketball is number three" and that "there's a positive correlation between the number of eyeballs and the [economic] value of the share").

arbitrarily "preferencing" male athletes over female athletes, Dr. Rascher's model is based on the real-world economics of college sports.

Similarly, Professor Osborne has no expertise to support her opinion that "any offsetting payments to female student-athletes . . . would amount to prohibited pay-for-play."[28] She does not cite any legal authority or the NCAA Bylaws for this opinion.[29] Further, she admitted during her deposition that she is neither an expert in interpreting the NCAA's rules,[30] nor has she ever worked for the NCAA, any conference, or any Division I school.[31] Her opinions about NCAA rules compliance boil down to rank, conclusory speculation by someone who has no qualifications or expertise to offer them.

Finally, Professor Osborne's overarching conclusions are based on her underlying assumption that, in the but-for world, schools would adopt her interpretation of Title IX and oppose any Broadcast NIL payments from the conferences that would allocate more money to male athletes.[32] That assumption is devoid of support. Indeed, it cannot be reconciled with the undisputed facts that Defendants (and their member schools) have always spent more money to support FBS football and men's basketball than women's basketball, and that it is the historical differences in broadcast revenues that explains why Broadcast NIL rights have been more valuable for FBS football and men's basketball than for women's basketball.[33] Given these facts, there is no basis for Professor Osborne to

---

[28] Osborne Decl. ¶ 133.

[29] *See* Ex. 61 (Osborne Dep. Tr.), 191:6-192:2.

[30] *See id.* at 194:13-15.

[31] *See id.* at 30:20-24.

[32] Defendants also offered declarations from a handful of school officials which contain self-serving statements indicating that those schools are committed to gender equity, but these declarations are at odds with the objective facts.

[33] *See* Rascher Reply Report ¶¶ 107-09; *see also* Expert Report of Edwin Desser at 68 ("In March 2021, after University of Oregon basketball star Sedona Prince posted an unfavorable comparison between the weight room facilities on TikTok from the Women's NCAA Basketball Championships, the NCAA commissioned Kaplan Hecker to perform a wide-ranging gender equity study. Desser Sports Media was selected to analyze the situation from a media perspective. In August 2021, the analysis was published, concluding that the women's basketball championship rights were substantially undervalued (worth between $81-112 million/year vs. the present package of 29 NCAA Championships sold for a total of $34 million/yr.); and that the design of sponsorship sales rights and the media rights were misaligned such that women's basketball sponsorship rights had just a 1/10 of 1% allocation compared with the men's rights.").

assume that the conferences would suddenly conclude that Title IX required them to equalize these revenue and spending disparities when they have never done so in the past.

While a significant portion of Professor Osborne's report purports to lay out the legislative history of Title IX, it fails to mention that the NCAA and its members have fought relentlessly to oppose the application of Title IX to college sports since it was enacted. In fact, the NCAA lobbied aggressively in support of each of the proposed amendments that are discussed in Professor Osborne's report, which would have exempted college athletics and revenue sports in particular from the gender equity protections of Title IX.[34] When those efforts were unsuccessful, the NCAA went a step further, filing a lawsuit challenging the legality of Title IX, and in the ensuing years, the NCAA continued to argue that the application of the law would destroy intercollegiate athletics. When a plaintiff in this case, Sedona Prince, exposed significant gender disparities at the 2021 March Madness basketball tournaments, the NCAA commissioned an independent gender equity report (which included the opinions of Plaintiffs' expert, Ed Desser, on the value of women's basketball). The report revealed that "gender inequities within the NCAA Division I basketball championships stem from the structure and systems of the NCAA itself."[35] Among other things, the report found that the NCAA has "prioritize[d] Division I men's basketball over everything else in ways that create, normalize, and perpetuate gender inequities."[36] And despite its extensive efforts to restrict and regulate virtually every other aspect of college sports—including by denying athletes the right to profit from their own NILs for decades—the NCAA disclaims any responsibility for enforcing Title IX compliance among its members. Numerous recent studies reveal that schools across all NCAA divisions spend more on athletic scholarships, recruiting, and coach compensation for men's sports.[37] Given the historical disparity in spending on men's and women's sports, Professor Osborne's assumption that schools

---

[34] *See* Osborne Decl. ¶ 72.

[35] Ex. 62 at 2 (Kaplan Hecker & Fink, *NCAA External Gender Equity Review, Phase I: Basketball Championships* (August 2, 2021))

[36] *Id.*

[37] *See* Ex. 65 (Women's Sports Foundation, *50 Years of Title IX We're Not Done Yet* (2022)); Ex. 66 (Chronicle of Higher Education, *Hundreds of Colleges May be Out of Compliance with Title IX* (October 23, 2019)); Ex. 67 (USA Today, *Title IX: Falling Short at 50, Female athletes stiffed on scholarships at some of the biggest colleges in the country* (August 17, 2022)).

would not have implemented the Broadcast NIL distributions Dr. Rascher predicts in the but-for world (which are dictated by the historical disparity in broadcast revenues among the sports) due to Title IX concerns is without any factual support. It is simply unsupported speculation that must be excluded.

## C.   Professor Osborne's opinions should also be excluded because they are irrelevant to class certification.

A proposed expert opinion offered under Rule 702 must have "a valid connection to the pertinent inquiry" and "logically advance a material aspect of the case." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010); *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *accord Daubert II*, 43 F.3d at 1321, n. 17 (expert testimony must be excluded unless it "speaks clearly and directly to an issue in dispute in the case"). Accordingly, even if the Court determines that certain of Professor Osborne's opinions are not improper legal conclusions and that they are within her expertise and reliable, those opinions would still be inadmissible because they are not relevant to class certification. *See, e.g.*, *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 143 (C.D. Cal. 2007) (excluding portion of expert's opinion at class certification stage because it related to the merits of the case); *Dobrosky v. Arthur J. Gallagher Serv. Co.*, 2014 WL 10988092, at *3 (C.D. Cal. July 30, 2014) (excluding expert report that "d[id] not address commonality, typicality, adequacy, predominance or any of the other issues relevant to class certification").

At class certification, the expert issues for damages are whether Plaintiffs' damages model is consistent with Plaintiffs' theory of liability and whether damages can be measured on a class-wide basis. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013). None of Professor Osborne's opinions about Title IX are relevant to these class issues, and the application of Title IX itself is a common issue for all class members. Because Professor Osborne's opinions are not relevant to class certification, they would not be helpful or admissible at the class certification stage. At best, her opinions are merits arguments against the damages allocation proposed by Dr. Rascher, which are irrelevant and thus inadmissible with respect to class certification. *See In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 370 (N.D. Cal. 2018) ("To the extent that Defendant asserts that the conjoint survey overstates the magnitude or frequency of the performance issues, that is a merits argument about the proper amount of damages, not a mismatch between Plaintiffs' damages model

and theory of liability."); *see also Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment.").

Because the issues on which Professor Osborne opines have no bearing on the Court's class certification determination, her expert testimony and report should be excluded.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that Professor Osborne's report, and the testimony provided in her deposition, be excluded.

1    Dated: July 21, 2023             Respectfully submitted,

2    HAGENS BERMAN SOBOL SHAPIRO LLP    WINSTON & STRAWN LLP

3    By: _/s/ Steve W. Berman_           By: _/s/ Jeffrey L. Kessler_

4        Steve W. Berman (*pro hac vice*)        Jeffrey L. Kessler (*pro hac vice*)
     Emilee N. Sisco (*pro hac vice*)          David G. Feher (*pro hac vice*)

5    Stephanie Verdoia (*pro hac vice*)        David L. Greenspan (*pro hac vice*)
     HAGENS BERMAN SOBOL SHAPIRO LLP    Adam I. Dale (*pro hac vice*)

6    1301 Second Avenue, Suite 2000       Sarah L. Viebrock (*pro hac vice*)
     Seattle, WA 98101             WINSTON & STRAWN LLP

7    Telephone: (206) 623-7292         200 Park Avenue
     Facsimile: (206) 623-0594          New York, NY 10166-4193

8    steve@hbsslaw.com              Telephone: (212) 294-4698
     emilees@hbsslaw.com            Facsimile: (212) 294-4700

9    stephaniev@hbsslaw.com          jkessler@winston.com
                            dfeher@winston.com

10                        dgreenspan@winston.com

11    Benjamin J. Siegel (SBN 256260)     aidale@winston.com
     HAGENS BERMAN SOBOL SHAPIRO LLP    sviebrock@winston.com

12    715 Hearst Avenue, Suite 202
     Berkeley, CA 94710

13    Telephone: (510) 725-3000        Jeanifer E. Parsigian (SBN 289001)
     Facsimile: (510) 725-3001         WINSTON & STRAWN LLP

14    bens@hbsslaw.com              101 California Street, 34th Floor
                            San Francisco, CA 94111

15    Jeffrey L. Kodroff             Telephone: (415) 591-1000
     SPECTOR ROSEMAN & KODROFF PC    Facsimile: (415) 591-1400

16    Two Commerce Square          jparsigian@winston.com
     2001 Market Street, Suite 3420

17    Philadelphia, PA 19103        *Counsel for Plaintiffs and the Proposed Classes*

18    Telephone: (215) 496 0300
     Facsimile: (215) 496 6611

19    jkodroff@srkattorneys.com

20

21    *Counsel for Plaintiffs and the Proposed Classes*

22

23

24

25

26

27

28

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

2          Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the

3    filing of this document has been obtained from the signatories above.

4

                                              /s/ *Steve W. Berman*
5                                         STEVE W. BERMAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

010912-11/2315617 V1