Jacob K. Danziger (SBD 278219)
**ARENTFOX SCHIFF LLP**
44 Montgomery Street, 38th Floor
San Francisco, CA 94104 United States
Telephone: (734) 222-1516
Facsimile: (415) 757-5501
jacob.danziger@afslaw.com

Beth A. Wilkinson (pro hac vice)
Rakesh N. Kilaru (pro hac vice)
Kieran Gostin (pro hac vice)
Calanthe Cope-Kasten (pro hac vice)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
ccope-kasten@wilkinsonstekloff.com

Attorneys for Defendant
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION
[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | CASE NO. 4:20-cv-03919-CW<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER AND DR. DANIEL RASCHER**<br><br>Hearing Date: Sept. 21, 2023<br>Time: 2:30 PM<br>Trial Date: Jan. 27, 2025<br>Judge: Hon. Claudia Wilken |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.    Desser's Opinions Are Inadmissible................................................................................... 2

    A.    Desser's 10% Opinion Does Not Have a Proper Foundation ................................ 2

        1.    Desser Cannot Opine on the Value of Something That Does Not Exist ............................................................................................ 2

        2.    Desser Failed to Validate His 10% Opinion ............................................. 4

        3.    Desser's "Experience" Cannot Save His 10% Opinion ............................ 4

    B.    Desser's Allocation Opinion Should Be Excluded ................................................ 6

II.    Rascher's Testimony Is Also Inadmissible For Class Certification .................................. 6

    A.    Rascher's BNIL Damages Model Is Unreliable ..................................................... 6

        1.    Rascher Improperly Assumes Fixed Prices In The Relevant Market ....................................................................................................... 7

        2.    Rascher's Model Is Premised On Speculative Inputs ............................... 8

        3.    Rascher's Opinion Ignores Laws That Affect The Market....................... 9

    B.    Rascher's Third-Party NIL Model Is Unreliable ................................................. 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
   738 F.3d 960 (9th Cir. 2013) ....................................................................................................4

*Ang v. Bimbo Bakeries USA, Inc.*,
   No. 13-CV-01196, 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) ..........................................10

*City of Pittsburgh v. W. Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998)...................................................................................................7, 9

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
   773 F.2d 1506 (9th Cir. 1985) .........................................................................................4, 7, 8

*Donovan v. Catlin Specialty Ins. Co.*,
   No. 14-CV-06, 2015 WL 10487712 (D. Mont. Nov. 2, 2015) ..................................................3

*In re Glumetza Antitrust Litig.*,
   336 F.R.D. 468, 476 (N.D. Cal. 2020)......................................................................................9

*Grodzitsky v. Am. Honda Motor Co.*,
   957 F.3d 979 (9th Cir. 2020) ...........................................................................................1, 7, 9

*House v. Nat'l Coll. Athletic Ass'n*,
   545 F. Supp. 3d 804 (N.D. Cal. 2021) ......................................................................................3

*Ibekwe v. White*,
   No. 14-CV-6523, 2016 WL 6963051 (C.D. Cal. Feb. 23, 2016) .............................................5

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
   103 F. Supp. 2d 268 (S.D.N.Y. 2000)......................................................................................8

*Knutson v. Daily Rev., Inc.*,
   468 F. Supp. 226 (N.D. Cal. 1979) ...........................................................................................4

*In re Lidoderm Antitrust Litigation*
   No. 14-MD-02521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .............................................9

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ............................................1

*In re Live Concert Antitrust Litig.*,
   863 F. Supp. 2d 966 (C.D. Cal. 2012) ......................................................................................4

*Longoria v. Kodiak Concepts LLC*,
   No. 18-CV-02334, 2021 WL 1100373 (D. Ariz. Mar. 23, 2021).............................................3

i

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

*Mansourian v. Bd. of Regents of Univ. of California at Davis*,
  816 F. Supp. 2d 869 (E.D. Cal. 2011)...................................................................................3

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) .............................................................................................10

*Michery v. Ford Motor Co.*,
  No. 12-CV-4957, 2017 WL 10362135 (C.D. Cal. Oct. 23, 2017),
  *aff'd*, 776 F. App'x 954 (9th Cir. 2019).................................................................................4

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  476 F. Supp. 2d 1143 (N.D. Cal. 2007) ..............................................................................7

*Mulderrig v. Amyris, Inc.*,
  340 F.R.D. 575 (N.D. Cal. 2021) ......................................................................................10

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
  No. 15-ML-2668, 2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) .....................................4, 9

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  No. 5:16-CV-06370, 2019 WL 4780183 (N.D. Cal. Sept. 30, 2019),
  *aff'd*, 20 F.4th 466 (9th Cir. 2021).......................................................................................5

*Potter ex rel. Potter v. Bowman*,
  No. 05-CV-00827, 2006 WL 3760267 (D. Colo. Dec. 18, 2006) .......................................3

*S.S. by & through Stern v. Peloton Interactive, Inc.*,
  No. 3:21-CV-01367, 2023 WL 2993391 (S.D. Cal. Apr. 17, 2023) ....................................5

*Vaquero v. Ashley Furniture Indus., Inc.*,
  824 F.3d 1150 (9th Cir. 2016) ...........................................................................................10

**STATUTES**

Ariz. Rev. Stat. Ann. § 15-1892(A) ..............................................................................................9

D.C. Code 24-0245 § 215 ..............................................................................................................9

Or. Rev. Stat. § 702.200(4) ............................................................................................................9

**RULES**

Rule 702 ................................................................................................................................1, 3, 8

ii

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

# INTRODUCTION

Plaintiffs fail to address how either of Desser's or Rascher's opinions are reliable. Their argument instead boils down to the contention that, at class certification, their burden under *Daubert* is so "modest" a hurdle that this Court should accept Desser's and Rascher's unsupported opinions at face value. *See* Opp. at 1. But that is not the law. Even at class certification, Plaintiffs must *prove* that Desser and Rascher's testimony is both "relevant and reliable." *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020) (citation omitted); *id.* at 987 (excluding an expert opinion as unreliable under *Daubert* and finding that "[i]n the absence of the report, the plaintiffs failed to demonstrate commonality"). This Court cannot just presume otherwise.

With respect to Desser, Plaintiffs do not meaningfully dispute that there is no reliable foundation for his opinion. They admit that Desser made up a market for the licensing of BNIL rights and that there are no direct, real-world comparators. Desser's purported expertise does not elevate fiction to fact and is no substitute for the real-world data needed to support his otherwise unreliable opinion. And, in any event, Desser admitted he lacks the *kind* of expertise needed here.

Plaintiffs likewise mischaracterize Defendants' motion to exclude Rascher's opinion as premised on merely "the inputs Rascher uses and assumptions he relies on." Opp. at 15. But even apart from unreliable inputs, Rascher's *methods* are unreliable and thus his opinions are inadmissible. *See* Mot. at 15–20. Even the "'tailored' *Daubert* test at the class certification stage" (Opp. at 15) "scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2017 WL 1391491, at *6 (N.D. Cal. Apr. 12, 2017) (citation omitted).

Ultimately, Plaintiffs' opposition deflects from their burden by wrongly claiming that Defendants are the ones to blame for the lack of any foundation for their experts' wholly speculative and unreliable opinions. *See, e.g.*, Opp. at 10; *id.* at 7. But that is circular, and would allow anyone to easily circumvent Rule 702's and *Daubert*'s requirements. *Plaintiffs* opted to seek class certification based on a non-existent BNIL market and on unreliable, unsupportable assumptions rather than working economic models focused on the labor market at issue here. That is an independent failing that warrants the exclusion of Desser's and Rascher's opinions.

1

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

# ARGUMENT

## I. Desser's Opinions Are Inadmissible

Plaintiffs' claim that this Court's analysis can start and stop with Desser's "expertise" fundamentally misinterprets the *Daubert* inquiry. To begin with, the claimed market is made-for-litigation and no one (including Desser) has expertise in it. Repeatedly invoking "expertise" does not confer reliability, especially considering Desser has no *relevant* expertise, centers his report around a non-existent market, and fails to present a reliable yardstick.

### A. Desser's 10% Opinion Does Not Have a Proper Foundation

#### 1. Desser Cannot Opine on the Value of Something That Does Not Exist

Plaintiffs repeatedly admit that the centerpiece of Desser's opinion, a market for BNIL, does not exist. *See* Opp. at 4 ("there are no examples of NIL-specific payments for broadcasts outside of this litigation"); *id*. at 11 ("other broadcast agreements valuing athletes' NILs separately do not exist" and no "standalone market" exists for BNIL). Because there is no BNIL market, no expert outside of this litigation has ever attempted to ascertain the value of alleged BNIL rights. Kilaru Decl. Ex. 6, ECF No. 254-6 at 34:3–7 ("Desser Tr.") (admitting "[t]his is the first engagement that focused on isolating NIL value"); Expert Reply Report of Edwin S. Desser, ECF No 290-3 at 3 ("Desser Reply") ("When Thompson says there is no 'separate market' for [BNIL], that may be accurate[.]"). Indeed, the existence of BNIL is merely an *assumption* baked into Desser's assignment for purposes of this litigation. His directive was to "isolate the value of NIL from the value of athletic performance on the field or court (among other things)." Expert Report of Edwin S. Desser, ECF No. 209-03 at 7 ("Desser Rpt.").[1] This is a made-for-litigation market.

Plaintiffs argue there is "no evidentiary rule that an expert cannot testify on a novel issue

---

[1] Conference warranties in broadcast agreements do not demonstrate the existence of a BNIL right or market, but reflect a standard risk allocation strategy employed by savvy media partners. The only evidence in the record on this issue confirms that BNIL has no separate value. *See* Mot. at 3. Moreover, Plaintiffs are wrong that Thompson testified that BNIL is a legal right. He said the opposite: "It is expected and understood within the broadcast industry that individual participants do not own or control any broadcast rights in sports events. It would be inherently impractical for individual participants to own or control broadcast rights in a sports event because any single participant could withhold those rights and prevent the broadcast from occurring." Kilaru Decl. Ex. 2, ECF No. 251-2 at 8 ("Thompson Rpt."). He also did not offer a legal opinion on whether athletes own a right to their NIL. Kilaru Decl. Ex. 1 at 53:9–14 ("Thompson Tr.").

2

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

presented for the first time in a litigation (Opp. at 12), but *none* of the cases they cite involve a non-existent market. For example, *Longoria v. Kodiak Concepts LLC*, No. 18-cv-02334, 2021 WL 1100373 (D. Ariz. Mar. 23, 2021), dealt with an expert opinion on the fair market value of models' images. The expert "appl[ied] his years of experience to the hypothetical situation at hand—a negotiation that never took place." *Id.* at *8. While the negotiation was hypothetical, *the market was real*, and the expert had negotiated over ten thousand contracts in that exact market. *Id.* at *7–8. In contrast, there is no real-world experience in Plaintiffs' fabricated BNIL market.[2]

      Plaintiffs' claim that Desser had to put forth this non-existent market based on Defendants' litigation positions is false and irrelevant.[3] *See* Opp. at 4. This Court's Order on Defendants' motion to dismiss allowed Plaintiffs to proceed on a theory of a but-for world involving a labor market: "The injury to competition that Plaintiffs allege here is the artificial suppression of the price of the bundle of goods and services that student-athletes can *receive in exchange for their labor* and the right to use their NIL *within the nationwide labor market*[.]" *House v. Nat'l Coll. Athletic Ass'n*, 545 F. Supp. 3d 804, 818 (N.D. Cal. 2021) (emphasis added); *id.* at 816 ("'[Plaintiffs'] allegations are sufficient . . . even if the student-athletes lacked publicity rights in broadcasts."). It was *Plaintiffs'* choice to avoid modeling a labor market in which their proffered outcomes would never exist (*see* Defs.' Opp. to Pls.' Class Cert. Mot., ECF No. 249 at 6–16 ("Class Cert. Opp.")) and instead devise a damages model on the unsupported theory that BNIL exists, has measurable value, and that student-athletes could somehow hold up a sports broadcast with BNIL "rights." Plaintiffs' burdens under Rule 702 and *Daubert* are not lessened because they

---

[2] Plaintiffs' other cases fare no better. *Donovan v. Catlin Specialty Insurance Co.*, No. 14-cv-06, 2015 WL 10487712, at *2–3 (D. Mont. Nov. 2, 2015), dealt with an expert opinion on whether a broker's liability was "reasonably clear." The court held that as long as the opinion was based on "sufficient facts or data," it was admissible. The case had nothing to do with a made-up market. In *Potter ex rel. Potter v. Bowman*, No. 05-CV-00827, 2006 WL 3760267, at *3 (D. Colo. Dec. 18, 2006), the court described the experts' opinions as "novel" not because they offered a non-existent market, but because they were "not generally accepted in the field of obstetrics." *Id.*

[3] Plaintiffs also claim that basing their class damages theory on a non-existent market is permissible given the "unique nature of the quasi-factual, quasi-legal issues" in this case, and cite *Mansourian v. Board of Regents of University of California at Davis*, 816 F. Supp. 2d 869, 886 n.16 (E.D. Cal. 2011). But the "issues" in *Mansourian* were about whether a school "complied with Title IX and achieved gender equity requirements," *id.*, and had nothing to do with proposed expert opinions about fabricated markets.

3

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

chose to model damages on the basis of a market that does not exist.[4]  *See* Mot. at 3, 7.

### 2. Desser Failed to Validate His 10% Opinion

Plaintiffs' attempt to point to Desser's "real-world comparators" does nothing to validate his 10% opinion. Even putting aside that there is no real-world data regarding the value of BNIL, comparing real-world NIL licenses for non-broadcast products and professional sports group license agreements to a fictional BNIL market is not a proper yardstick. The only cases Plaintiffs rely on to support Desser's approach involve comparisons between or within markets that *actually* exist. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, No. 15-ML-2668, 2023 WL 1813530, at *8 (C.D. Cal. Feb. 7, 2023) (involving two existing markets the Ninth Circuit had already determined to be comparable); *Michery v. Ford Motor Co.*, No. 12-CV-4957, 2017 WL 10362135, at *2 (C.D. Cal. Oct. 23, 2017), *aff'd*, 776 F. App'x 954 (9th Cir. 2019) (estimating sales in the same market); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 970 (9th Cir. 2013) (evaluating existing national, local, and state markets).

Even for comparisons involving similar, existing markets, a yardstick analysis is inadmissible unless it accounts for all "major factors." These are variables that, if excluded, impact the results of an analysis. *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 974 (C.D. Cal. 2012). But there is of course no way to account for major factors that could affect prices in a non-existent market that cannot be observed. The fact that the law recognizes NIL rights but does *not* recognize BNIL rights in the markets Desser uses as comparators is one major factor he ignores. Another one is that all broadcast and licensing agreements are unique, with differing combinations of rights that impact valuation, some of which are unquantifiable. Thompson Rpt. at 4.

### 3. Desser's "Experience" Cannot Save His 10% Opinion

Plaintiffs wrongly suggest that Desser's experience alone supplies a proper foundation for

---

[4] Plaintiffs also claim that Defendants are seeking to benefit from creating difficulty in proving the exact amount of injury. Opp. at 12–13. This argument is baseless, but even if it was supported, it does not eliminate Plaintiffs' burden to prove the existence or amount of damages at issue without speculation. Plaintiffs' cases directly support this proposition. *Knutson v. Daily Rev., Inc.*, 468 F. Supp. 226, 230 (N.D. Cal. 1979) (citation omitted) ("[E]ven where the defendant by his own wrong has prevented a more precise computation, the (trier of fact) may not render a verdict based on speculation or guesswork. The burden may be relaxed, but it is never eliminated."); *see also Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1512 (9th Cir. 1985) (same).

4

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

his 10% opinion.  This is wishful thinking.  An expert's experience must be relevant and tied to some real-world understanding of the subject at issue.  Given the lack of a BNIL market, Desser by definition lacks any experience in a BNIL market.  *See* Opp. at 11 ("[O]ther broadcast agreements valuing athletes' NILs separately do not exist[.]"); Desser Tr. 34:8–14 ("Q. [I]n your experience with broadcast agreements, have you ever known a situation where anyone else has tried to segregate the NIL value from the value of the broadcast rights package as a whole?  A. I'm not aware of that taking place before."); Desser Reply at 6 ("I have not separately negotiated agreements for [BNIL;] no one else has either.").  Desser also admitted that he lacks any experience negotiating college sports broadcast rights.  *See* Desser Tr. 32:18–20 ("Q.  But for college sports negotiations you haven't been in the room, so to speak?  A.  No.").

Plaintiffs' cases suggesting expertise alone can satisfy *Daubert* are inapposite.  None of them involve the situation here:  a purported opinion about the value of something for which there is no market in the real world.  *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370, 2019 WL 4780183, at *3 (N.D. Cal. Sept. 30, 2019), *aff'd*, 20 F.4th 466 (9th Cir. 2021) ("[A] witness's expertise must be related to the subject matter of their testimony."); *see also S.S. by & through Stern v. Peloton Interactive, Inc.*, No. 3:21-CV-01367, 2023 WL 2993391, at *3 (S.D. Cal. Apr. 17, 2023) (opining about treadmill safety warnings based on particular experience with treadmill safety); *Ibekwe v. White*, No. 14-CV-6523, 2016 WL 6963051, at *2 (C.D. Cal. Feb. 23, 2016) (opining about athlete pay, longevity, and lost wages due to injury based on experience in and specialized knowledge about norms of professional basketball contracts, pay, and post-injury valuation).  In each case, the expert's experience was a one-to-one match with the subject(s) of the testimony.  By contrast, Desser opines about a subject with which he has no experience.

Plaintiffs' attempt to distinguish Defendants' cases on the basis that they involve patent litigation (Opp. at 9) is also unavailing.  *Daubert* inquiries do not differ by area of law.  Defendants' cases (Mot. at 8) implicate modeling rates for purported rights and are therefore directly on point.  Plaintiffs also try to downplay Defendants' authorities because some are at the merits stage rather than class certification.  But, as discussed above, Plaintiffs have a meaningful burden under *Daubert*, not a modest one, on *both* the merits and at class certification.

5

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

In a last-ditch attempt to suggest Desser's experience itself is sufficient, Plaintiffs argue that Desser's reliance on "experience" to pick a 10% number out of thin air is akin to Thompson's valuation of back-end rights (like a right to renew a contract). But those rights "exist in the real world," are "very quantifiable," and are "traded on daily." Thompson Tr. 71:2–74:16. Thompson explicitly contrasted back-end rights to the fabricated concept of BNIL, which is "unquantifiable because they don't exist in the real world right now." *Id.* at 74:13–20. And even with back-end rights, which are part of every media agreement negotiation, Thompson testified that he uses more than "experience" to assign a value, including by reference to the value of various contracts, rights, and potential penalties. *Id.* at 72:2–73:22, 75:1–20.

### B.     Desser's Allocation Opinion Should Be Excluded

Desser's allocation opinion should be excluded for the same reason as his 10% opinion. Desser relies on his purported "expertise" and cherry-picked data unrelated to alleged BNIL to arrive at arbitrary allocation values. Ironically, Desser even admits that *in his experience*, broadcast revenue is almost never allocated across sports. Desser Rpt. at 49, 60.

Plaintiffs' Opposition conspicuously dances around this issue. Plaintiffs do not address the variation in college sports media agreements. Plaintiffs do not acknowledge that the SEC financial statement on which Desser focuses attributes a varying proportion of total value to football and other sports based on a single *particular* media contract. Plaintiffs do not explain how a Conference USA contract speaks to the allocation of value among sports by any of the A5 conferences. And Plaintiffs offer *no* basis for Desser's allocations to women's basketball and other Olympic sports, nor do they address the evidence that some Olympic sports have a greater value than women's basketball in certain parts of the country. Thompson Tr. 109:13–110:14.

## II.    Rascher's Testimony Is Also Inadmissible For Class Certification

### A.     Rascher's BNIL Damages Model Is Unreliable

Plaintiffs ask the Court to ignore at class certification that Rascher's BNIL but-for world eschews economic theory, his own academic work, and applicable state laws to conclude that all scholarship athletes would receive equal BNIL payments derived from Desser's 10% opinion. But economic analyses must model a free market and "account for the law of supply and demand,"

6

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

1  *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp. 2d 1143, 1155 (N.D. Cal. 2007), as well as the laws that affect the marketplace, *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 267–68 (3d Cir. 1998). Desser's BNIL damages opinion is inadmissible under *Daubert* and cannot reliably demonstrate class-wide injury. *See Grodzitsky*, 957 F.3d at 987.

### 1. Rascher Improperly Assumes Fixed Prices In The Relevant Market

Rascher's model fixes prices in the relevant market by imposing a floor and ceiling on the BNIL payments that conferences would pay to recruit student athletes. Expert Report of Daniel A. Rascher, ECF No. 209-2 ¶ 170 ("Rascher Rpt.") (fixing BNIL payments at 10% of broadcast revenue). Plaintiffs ask the Court, wrongly, to ignore this fundamental flaw because it "goes to [] weight, not … admissibility." Opp. at 16. A plaintiff's antitrust damages must be calculated by "comparison of profits, prices and values as affected by the conspiracy, with what they would have been in its absence *under freely competitive conditions*." *Dolphin Tours*, 773 F.2d at 1512 (citations omitted) (emphasis added). "[T]he burden of anticipating this hypothetical market is appropriately placed on antitrust plaintiffs." *Id.*

Plaintiffs do not dispute the real-world evidence showing that any hypothetical BNIL payments would vary by class member. For example, in equivalency sports where schools can award varying scholarships amounts, schools provide greater benefits to more talented student-athletes to recruit them. Rascher's but-for world ignores this reality and violates basic economics (and antitrust law) by positing that the conferences would *not* do the same by using BNIL payments to recruit more talented student-athletes. Further, Desser essentially conceded that BNIL payments to student-athletes would vary. Desser Tr. 54:5–55:7, 92:9–94:7.

Rascher's model also ignores the economic incentives that would necessarily push conferences to make differential payments. Kilaru Decl. Ex. 7, ECF No. 254-7 at 67:2–73:10 ("Rascher Tr.") (testifying to substantial BNIL payment variation across conferences). In Rascher's world, Conferences with lower broadcast revenues would not be able to recruit the most "watchable athletes," driving down "the value of the broadcasts they license to networks." Rascher

7

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

Rpt. ¶ 157; *see* Mot. at 16–17.[5] Conversely, Rascher's model predicts conferences with the largest broadcast revenues would pay supra-competitive prices to student-athletes, ignoring that "competitors attempt[] to maximize their own profits." *Dolphin Tours*, 773 F.2d at 1511. Rascher's model is thus unreliable because he presumes a market where compensation is static, even though he is "not entitled to assume favorable aspects of an anticompetitive market" or "limited competition." *Id.* at 1512.

Recognizing that Rascher's opinions make no economic sense, Plaintiffs claim that the NCAA would require equal payments within conferences following an injunction permitting BNIL compensation. *See* Opp. at 16. But there is no basis for this assumption. Indeed, Rascher admitted that in the but-for world, no NCAA rule would limit how the BNIL revenue share would be distributed. Rascher Tr. 120:7–17. And Plaintiffs are "challenging the various NCAA and Conference Defendant rules that . . . prohibit, cap, or otherwise limit the compensation that athletes may receive in connection with their names, images, and likenesses. . . . individually, and as interpreted and applied in conjunction with each other." Pls.' Resp. to NCAA 1st Interrog., No. 5. In other words, Plaintiffs seek to eliminate the very rules that Rascher claims will require equal payments in his but-for world. Rascher's model fails to establish antitrust injury and damages can be proven on a class-wide basis.

2.     Rascher's Model Is Premised On Speculative Inputs

Plaintiffs attempt to characterize Defendants' motion as a dispute about mere inputs.[6] Opp. at 15. To be sure, Rascher's model fails because its key input is Desser's speculative 10% opinion. But Rascher's model also is not premised on "known facts" or real-world data, as Rule 702 requires. There will be no accurate inputs at the merits stage, because Rascher has no data and his model contradicts the economic literature. *Supra* II.A.1; *cf. Johnson Elec. N. Am. Inc. v. Mabuchi*

---

[5] While "group-licensed activity" requires the entire team, Rascher Rpt. at 159, the value of the license is driven by the "watchab[ility]" of the athletes. *Id.* ¶ 157; *see also id.* ¶ 154 ("Failure to [make BNIL payments] would have allowed rival conferences to attract those athletes that would add the most value through the use of their NIL to the conferences media rights.").

[6] Desser's arbitrary 10% opinion is an "input" for Rascher's model and independently renders Rascher's model inadmissible. But as discussed above, a separate critical flaw is that Rascher's model fixes the prices (i.e., the amount of broadcast revenue conferences will pay to student-athletes) in the relevant market based on that input.

8

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

*Motor Am. Corp.*, 103 F. Supp. 2d 268, 283–84 (S.D.N.Y. 2000) ("[I]f the analysis is not based upon relevant and reliable data, the expert's opinion will be inadmissible."). The Court should not allow Rascher to "cobble together some form of generalized opinion, even one riddled with scientific and methodological flaws." *Grodzitsky*, 957 F.3d at 986.

Plaintiffs' authorities do not state otherwise. *In re Lidoderm Antitrust Litigation* involved a "well-researched market" and "well-recognized type of antitrust injury" allowing the expert to use "a 'before and after' benchmark for generic [drug] prices based on actual generic rates." No. 14-MD-02521, 2017 WL 679367, at *9–10 (N.D. Cal. Feb. 21, 2017). In *In re Glumetza Antitrust Litigation*, the contested inputs were grounded in actual sales data and "defendants' own market forecasts" as well as economic literature. 336 F.R.D. 468, 476, 479–80 (N.D. Cal. 2020). And in *Sunday Ticket* the court found "Rascher considered . . . important factors about the structural similarities between [college and football telecast markets] and thus ha[d] a valid basis to use [the former] as a yardstick." 2023 WL 1813530, at *8. Here, Rascher compares group licensing of student-athletes' BNIL value—a non-existent market—to licensing agreements for merchandise. Rascher Rpt. ¶¶ 171–73; Mot. at 14. His opinion is devoid of analysis regarding the "structural similarities" between those markets—because it is impossible as one market does not exist.

### 3. Rascher's Opinion Ignores Laws That Affect The Market

Plaintiffs do not dispute that economic analyses cannot ignore laws that affect the marketplace. *City of Pittsburgh*, 147 F.3d at 267–68. And while Plaintiffs quibble with Title IX's application, they do not contest that Title IX is a factor in collegiate athletics. *See* Opp. at 17–18. Yet Rascher failed to consider it entirely. Rascher Tr. 111:19–21. Likewise, Plaintiffs assert that Rascher need not consider state laws because they would not have existed but for the challenged rules. This ignores that the state laws continue to exist even *after* the NCAA's interim rule permitting forms of NIL compensation. Moreover, many of these laws continue to prohibit or restrict schools, conferences, and athletic associations from making NIL payments to student-athletes. *See* Mot. at 17 (citing Class Cert. Opp. at 3, 15–16, 28–29); Ariz. Rev. Stat. Ann. § 15-1892(A); Or. Rev. Stat. § 702.200(4); D.C. Code 24-0245 § 215; Class Cert. Opp. at 4 n.4. The failure to account for these laws is independently fatal to Rascher's BNIL damages model.

9

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

### B. Rascher's Third-Party NIL Model Is Unreliable

Rascher seeks to use a before-and-after yardstick analysis to demonstrate common impact for student-athletes' third-party NIL deals without confirming that the relevant market conditions would remain the same. This failure is dispositive. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (before-and-after analysis "was hopelessly flawed" when expert "did not confirm that relevant market conditions were the same before and after").

Rascher cannot merely "adjust" his model to account for major variables that impact the price—if any—student-athletes would have received in the before period. *See* Opp. at 19. Rascher's third-party NIL damages model assumes, without analysis, that *every* student-athlete that reported entering one or more NIL deals on or after July 1, 2021 (the after period) would have received the *same* value in NIL deals each year from the beginning of the 2016-2017 academic year through July 1, 2021 (the before period). *See, e.g.*, Rascher Tr. 219:18–220:8. And Plaintiffs' own authorities confirm that Rascher's defective model cannot be simply "finalized" at a later date. *See* Opp. at 19; *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196, 2018 WL 4181896, at *16 (N.D. Cal. Aug. 31, 2018) (where a model fails to "control for other changes . . . during the class period and does not account for whether such changes had any impact on price," then "[t]hat alone is fatal to th[e] model's ability to measure economic injury on a classwide basis"); *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions necessarily caused the class members' injury . . . No other factor could have contributed….").[7]

### CONCLUSION

For the foregoing reasons, Desser's 10% and allocation opinions and Rascher's BNIL damages and third-party NIL opinions should be excluded.

---

[7] Securities cases are far different in that all class members owned a security that traded at a specific price before and after the alleged violation, allowing "a workable damages model that, should loss causation be established, can feasibly calculate damages on a classwide basis." *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 589 (N.D. Cal. 2021). Rascher's own report confirms variation in payments (if any) for BNIL and there is no basis to assume that a star quarterback in the after period would have been a star as a freshman in the before period. Rascher Rpt. ¶ 162.

10

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

Dated: August 11, 2023

Respectfully submitted,

| **WILKINSON STEKLOFF LLP** | **LATHAM & WATKINS LLP** |
|---|---|
| By: /s/ *Rakesh N. Kilaru*<br>Beth A. Wilkinson (*pro hac vice*)<br>Rakesh N. Kilaru (*pro hac vice*)<br>Kieran Gostin (*pro hac vice*)<br>Calanthe Cope-Kasten (*pro hac vice*)<br>2001 M Street NW, 10th Floor<br>Washington, DC 20036<br>Telephone: (202) 847-4000<br>Facsimile: (202) 847-4005<br>bwilkinson@wilkinsonstekloff.com<br>kilaru@wilkinsonstekloff.com<br>kgostin@wilkinsonstekloff.com<br>ccope-kasten@wilkinsonstekloff.com<br><br>Jacob K. Danziger (SBN 278219)<br>ARENTFOX SCHIFF LLP<br>44 Montgomery Street, 38th Floor<br>San Francisco, CA 94104<br>Telephone: (734) 222-1516<br>Facsimile: (415) 757-5501<br>jacob.danziger@afslaw.com<br><br>Attorneys for Defendant<br>NATIONAL COLLEGIATE<br>ATHLETIC ASSOCIATION | By: /s/ *Christopher S. Yates*<br>Christopher S. Yates (SBN 161273)<br>Aaron T. Chiu (SBN 287788)<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>Telephone: (415) 391-0600<br>Facsimile: (415) 395-8095<br>chris.yates@lw.com<br>aaron.chiu@lw.com<br><br>Anna M. Rathbun (SBN 273787)<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004<br>Telephone: (202) 637-1061<br>Facsimile: (202) 637-2201<br>anna.rathbun@lw.com<br><br>D. Erik Albright (*pro hac vice*)<br>Jonathan P. Heyl (*pro hac vice*)<br>Gregory G. Holland (*pro hac vice*)<br>FOX ROTHSCHILD LLP<br>230 North Elm Street, Suite 1200<br>Greensboro, NC 27401<br>Telephone: (336) 378-5368<br>Facsimile: (336) 378-5400<br>ealbright@foxrothschild.com<br>jheyl@foxrothschild.com<br>gholland@foxrothschild.com<br><br>Attorneys for Defendant<br>THE ATLANTIC COAST CONFERENCE |

11

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

| | |
|---|---|
| **MAYER BROWN LLP** | **COOLEY LLP** |
| By: /s/ *Britt M. Miller* | By: /s/ *Whitty Somvichian* |
| Britt M. Miller (pro hac vice) | Whitty Somvichian (SBN 194463) |
| Daniel T. Fenske (pro hac vice) | Kathleen R. Hartnett (SBN 314267) |
| 71 South Wacker Drive | Ashley Kemper Corkery (SBN 301380) |
| Chicago, IL 60606 | 3 Embarcadero Center, 20th Floor |
| Telephone: (312) 782-0600 | San Francisco, California 94111-4004 |
| Facsimile: (312) 701-7711 | Telephone: (415) 693 2000 |
| bmiller@mayerbrown.com | Facsimile: (415) 693 2222 |
| dfenske@mayerbrown.com | wsomvichian@cooley.com |
| | khartnett@cooley.com |
| | acorkery@cooley.com |
| Christopher J. Kelly (SBN 276312) | |
| Two Palo Alto Square, Suite 300 3000 | Mark Lambert (SBN 197410) |
| El Camino Real | 3175 Hanover Street |
| Palo Alto, CA 94306 | Palo Alto, CA 94304-1130 |
| Telephone: (650) 331-2000 | Telephone: (650) 843-5000 |
| Facsimile: (650) 331-2060 | Facsimile: (650) 849-7400 |
| cjkelly@mayerbrown.com | mlambert@cooley.com |
| | |
| Attorneys for Defendant | Dee Bansal (*pro hac vice*) |
| THE BIG TEN CONFERENCE, INC. | 1299 Pennsylvania Ave. NW, Suite 700 |
| | Washington, DC 20004-2400 |
| | Telephone: (202) 842 7800 |
| | Facsimile: (202) 842 7899 |
| | dbansal@cooley.com |
| | |
| | Attorneys for Defendant |
| | PAC-12 CONFERENCE |

12

REPLY TO PLS.' OPP. TO DEFS.' MOT. TO EXCLUDE THE
OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER
AND DR. DANIEL RASCHER

| | | |
|---|---|---|
| 1 | **ROBINSON, BRADSHAW & HINSON, P.A.** | **SIDLEY AUSTIN LLP** |
| 2 | | By: /s/ *David L. Anderson* |
| 3 | By: /s/ *Robert W. Fuller* | David L. Anderson (SBN 149604) |
|   | Robert W. Fuller, III (pro hac vice) | dlanderson@sidley.com |
| 4 | Lawrence C. Moore, III (pro hac vice) | 555 California Street, Suite 2000 |
|   | Amanda P. Nitto (pro hac vice) | San Francisco, CA 94104 |
| 5 | Travis S. Hinman (pro hac vice) | Telephone: (415) 772-1200 |
|   | 101 N. Tryon St., Suite 1900 | Facsimile: (415) 772-7412 |
| 6 | Charlotte, NC 28246 | |
|   | Telephone: (704) 377-2536 | Angela C. Zambrano (pro hac vice) |
| 7 | Facsimile: (704) 378-4000 | angela.zambrano@sidley.com |
|   | rfuller@robinsonbradshaw.com | Natali Wyson (pro hac vice) |
| 8 | lmoore@robinsonbradshaw.com | nwyson@sidley.com |
|   | anitto@robinsonbradshaw.com | 2021 McKinney Avenue, Suite 2000 |
| 9 | thinman@robinsonbradshaw.com | Dallas, TX 75201 |
|   | | Tel: (214) 969-3529 |
| 10 | | Fax: (214) 969-3558 |
|   | Mark J. Seifert (SBN 217054) | |
| 11 | SEIFERT ZUROMSKI LLP | Chad Hummel (SBN 139055) |
|   | One Market Street, 36th Floor | chummel@sidley.com |
| 12 | San Francisco, California 941105 | 1999 Avenue of the Stars, Suite 1700 |
|   | Telephone: (415) 999-0901 | Los Angeles, CA 90067 |
| 13 | Facsimile: (415) 901-1123 | Tel: (310) 595-9505 |
|   | mseifert@szllp.com | Fax: (310) 595-9501 |
| 14 | | |
|   | Attorneys for Defendant | Attorneys for Defendant |
| 15 | SOUTHEASTERN CONFERENCE | THE BIG 12 CONFERENCE, INC. |

13