Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Classes*

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com

Jeanifer E. Parsigian (SBN 289001)
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919 CW <br><br> DECLARATION OF STEVE W. BERMAN IN SUPPORT OF OPPOSITION TO MOTION FOR ADMINISTRATIVE RELIEF FOR LEAVE TO CONDUCT A SUPPLEMENTAL DEPOSITION OF DR. DANIEL RASCHER <br><br> Judge:  Hon. Judge Claudia Wilken |

1       I, STEVE W. BERMAN, declare as follows:

2       1.     I am an attorney duly licensed to practice law before this Court. I am a member of the

3 Washington Bar, and I have been admitted to this Court *pro hac vice*. I am the managing partner of

4 Hagens Berman Sobol Shapiro LLP and counsel for Plaintiffs Grant House, Sedona Prince, and

5 Tymir Oliver in this matter.

6       2.     I submit this declaration in support of Plaintiffs' Opposition to Defendants' Motion

7 for Administrative Relief for Leave to Conduct a Supplemental Deposition of Dr. Daniel Rascher.

8 Based on personal knowledge or discussions with counsel in my firm of the matters stated herein, if

9 called upon, I could and would competently testify thereto.

10      3.     After several written meet-and-confer communications, on August 2, 2023, I met and

11 conferred by Zoom video conference with counsel for the NCAA, Rakesh Kilaru, about Defendants'

12 request for a second, supplemental deposition of Dr. Daniel Rascher. I asked Mr. Kilaru if

13 Defendants sought only a supplemental deposition of Dr. Rascher, or if they also sought to submit

14 additional briefing on class certification and/or to submit an additional class certification expert

15 report. Mr. Kilaru responded that for now, Defendants only sought the supplemental deposition, but

16 that they would not rule out later asking for additional briefing or permission to submit an additional

17 expert report.

18      4.     Attached as **Exhibit 1** to this declaration is a true and correct copy of excerpts from

19 the deposition transcript of Dr. Daniel Rascher, taken in the above action on January 10, 2023.

20

21     I declare under penalty of perjury under the laws of the United States that the foregoing is

22 true and correct. Executed this 14th day of August 2023 at Seattle, Washington.

23

24                              */s/ Steve W. Berman*
                                   STEVE W. BERMAN

25

26

27

28

# EXHIBIT 1

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                      OAKLAND DIVISION

4

5

6   IN RE COLLEGE ATHLETE NIL     )   Case No.
                                  )   4:20-cv-03919 CW
7   LITIGATION                    )
    _____)
8

9

10

11

12

13             DEPOSITION OF DANIEL RASCHER

14              Tuesday, January 10, 2023

15

16

17

18

19

20

21

22   JOB NO. 220885

23   REPORTED BY:

24   HEIDI BELTON, CSR, RMR, CRR, CCRR, CRC

25   CSR No. 12885

Page 14

1        Q.    Okay.  Do you have any economic models

2   that you intend to offer that are not contained in

3   the report that's sitting in front of you?

4        A.    I mean, to the extent that the report

5   discusses sort of the ongoing nature of this lit- --

6   of this case, I think I talk in the report a little

7   bit about, you know, doing this and doing that and

8   sort of describing those processes.

9              So if -- you know, if this case goes

10  forward, if I'm to continue in the case, then I -- I

11  plan to do some of the things that I talk about in

12  the report.

13       Q.    So let me give you an example.

14             Could you turn to paragraph 155 of your

15  report on page 76.

16       A.    I see that.

17       Q.    So the first sentence of that paragraph

18  talks about how you have modeled competition for

19  broadcast NIL group licenses at the Power Five

20  conference level as opposed to at the individual

21  school level.  Is that fair?

22       A.    I just have to read it.

23       Q.    Sure.

24       A.    (Witness reviews document.)

25             Okay.  Yes.

Page 15

1          Q.    Is that correct?

2          A.    That I've modeled -- done a modeling

3    competition between conferences as opposed to

4    between the schools directly?

5          Q.    Yes.

6          A.    Yes.

7          Q.    You haven't done any modeling of

8    school-level compensation decisions; right?

9          A.    In terms of the broadcast and NIL?

10         Q.    Yes.

11         A.    No, I don't believe so.

12         Q.    Okay.  Why haven't you done that to date?

13         A.    I mean, I haven't -- my analysis was

14   looking at for -- for broadcast, it's looking at the

15   broadcast contracts that the -- that the -- that the

16   conferences have.  And so I'm looking at -- at how

17   those contracts could lead to NIL payments to the

18   athletes.

19         Q.    So just to be clear, it's your opinion

20   that in the but-for world regarding broadcast NIL,

21   the conferences would be competing with each other

22   for student athlete labor services; correct?

23         A.    I believe that the conferences, the

24   members of the conference are the schools.  And they

25   set rules at the conference level.

1          A similar rule that they set as an example

2    is that they're going to share those revenues from

3    the broadcast contracts.  They generally share them

4    equally; right?

5          And so I'm modeling them setting another

6    set of rules about how they would share the name,

7    image and likeness payments to the athletes.

8          Q.   Right.  So your model assumes that the

9    competition for providing these payments to student

10   athletes is occurring at the conference level, not

11   the school level; correct?

12         MR. SIEGEL:  Objection; vague and

13   ambiguous as to "assume."

14         THE WITNESS:  So the schools are competing

15   for the athletes.  But within the rules that are set

16   by the conferences -- and obviously other rules that

17   are set by the NCAA and others.

18         So the schools are competing in the labor

19   market for the athletes.  But under a set of rules

20   that are -- that are determined at the conference

21   level.  And so the conferences compete with each

22   other also.  The schools within the conferences as

23   members are competing for athletes, they're

24   competing for sponsors, they're competing for media

25   deals and so forth.

 1   BY MR. KILARU:

 2        Q.   But to the extent the schools are

 3   competing with each other, in your model, they're

 4   doing so based on rules that are set by their

 5   conference regarding compensation; correct?

 6        A.   Can you say that again?

 7        Q.   Yes.  To the extent the schools are

 8   competing with each other in your model with

 9   broadcast NIL payments, they're doing so based on

10   rules that are set by their conference?

11        A.   Yes.  There's a -- a determination that --

12   that when -- that the schools will make joint

13   venture decisions within that conference, when

14   they're allowed to do that, often.

15             So they -- it's exactly how they already

16   deal with the broadcast.  They already have this

17   exact setup in place when they -- when they get the

18   broadcast deals and they distribute those revenues

19   to the schools generally equally.

20             So they're already doing that.  That's a

21   rule that they've all agreed to.  And they compete

22   with each other, right, for fans and everything and

23   yet they're still under this rule that shares those

24   revenues.

25        Q.   Right.  So I want to make sure we agree on

1                    CERTIFICATE OF REPORTER

2              I, HEIDI BELTON, a Certified Shorthand

3    Reporter, hereby certify that the witness in the

4    foregoing deposition was by me duly sworn to tell

5    the truth, the whole truth, and nothing but the

6    truth in the within-entitled cause;

7              That said deposition was taken down in

8    shorthand by me, a disinterested person, at the time

9    and place therein stated, and that the testimony of

10   the said witness was thereafter reduced to

11   typewriting, by computer, under my direction and

12   supervision;

13             That before completion of the deposition

14   review of the transcript was not requested.

15             I further certify that I am not of counsel

16   or attorney for either or any of the parties to the

17   said deposition, nor in any way interested in the

18   event of this cause, and that I am not related to

19   any of the parties thereto.

20   DATED:   January 11, 2023

21   _____

22        HEIDI BELTON, CSR, RMR, CRR, CCRR, CRC

23        CSR NO. 12885

24

25