Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Classes*

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com

Jeanifer E. Parsigian (SBN 289001)
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919 CW<br><br>**DECLARATION OF STEVE W. BERMAN IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' EXPERT PROFESSOR BARBARA OSBORNE**<br><br>Date: September 21, 2023<br>Time: 2:30 p.m.<br>Judge: Hon. Judge Claudia Wilken<br>Courtroom: Via Zoom Video Conference |

010912-11/2327509 V1

I, STEVE W. BERMAN, declare as follows:

1. I am an attorney duly licensed to practice law before this Court. I am a member of the Washington Bar, and I have been admitted to this Court *pro hac vice*. I am the managing partner of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and counsel for Plaintiffs Grant House, Sedona Prince, and Tymir Oliver ("Plaintiffs") in this matter.

2. I submit this declaration in further support of Plaintiffs' Motion to Exclude the Opinions of Defendants' Expert Professor Barbara Osborne. Based on personal knowledge or discussions with counsel in my firm of the matters stated herein, if called upon, I could and would competently testify thereto.

3. Attached hereto is a true and correct copy of the following Exhibit:

| Ex. | Description | Conf. Desig. |
|---|---|---|
| 74 | Excerpt from the Deposition Transcript of Barbara Osborne, Ph.D., taken in the above action on June 15, 2023 | None |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 1st day of September 2023 at Seattle, Washington.

/s/ Steve W. Berman
STEVE W. BERMAN

# EXHIBIT 74

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                    OAKLAND DIVISION
 4
 5   GRANT HOUSE and SEDONA PRICE,   )
 6   on behalf of themselves and     )
 7   all others similarly situated,  )
 8             Plaintiffs,           ) Civil Action No.
 9        v.                         ) 4:20-cv-03919-CW
10   NATIONAL COLLEGIATE ATHLETIC    )
11   ASSOCIATION; PAC-12 CONFERENCE; )
12   THE BIG TEN CONFERENCE, INC.;   )
13   THE BIG TWELVE CONFERENCE,      )
14   INC.; SOUTHEASTERN CONFERENCE;  )
15   and ATLANTIC COAST CONFERENCE,  )
16             Defendants.           )
17   _____ )
18         ** NETWORK STRICTLY CONFIDENTIAL **
19
20         VIDEO DEPOSITION OF BARBARA OSBORNE
21           June 15, 2023, 9:41 a.m. CST
22              150 North Riverside Plaza
23               Chicago, Illinois 60606
24
25   Job No. J9780979
```



```
 1        Q   Okay.  Thank you.  Thank you for when you
 2   remembered today --
 3        A   Yeah.
 4        Q   -- volunteering that.
 5            Just to go back, where was -- I was asking
 6   about different types of expert analysis or
 7   testimony you've given.
 8            So this is the first time you're analyzing
 9   an expert's proposed model for measuring past
10   damages; is that correct?
11            MS. CAPPS:  Objection, form.
12            THE WITNESS:  Yes, it is.
13   BY MR. SIEGEL:
14        Q   Okay.  Prior to this case, have you ever
15   been employed in a permanent or contracting
16   position by any of the defendants in this case?
17            MS. CAPPS:  Objection, form.
18            THE WITNESS:  No.
19   BY MR. SIEGEL:
20        Q   Okay.  So you've never worked for the NCAA
21   before?
22        A   No.
23        Q   Or any of the Power Five conferences?
24        A   No.
25        Q   And just to be clear, you understand that
```



```
 1   correct?
 2       A   If I were conducting an audit.
 3       Q   Okay.  Again, if you were looking at this
 4   payment scheme and I were asking you,
 5   Professor Osborne, do you believe it's a violation
 6   of Title IX, would that be your opinion?
 7           MS. CAPPS:  Objection, form.
 8           THE WITNESS:  So for -- in my report I
 9   state that I would flag it as a violation if I
10   were conducting an audit.
11   BY MR. SIEGEL:
12       Q   Okay.  But what if you were not conducting
13   an audit?  What if the Court were asking you:
14           Based on the review that you -- that you
15   conducted, Professor Osborne, do you believe that
16   the payment scheme is a violation of Title IX?
17           MS. CAPPS:  Objection to form.
18           THE WITNESS:  So, my -- I'm -- my job is
19   not to offer a legal opinion.
20           My job is to provide an expert opinion
21   related to how this all works and Title IX.  So I
22   would -- I -- as I said, that if I'm conducting an
23   audit, I would say that this is something that
24   would be a violation of Title IX.
25
```



1  reviewed the model and the facts and the
2  depositions under Title IX, which is your primary
3  area of research, your conclusion was that it
4  violated Title IX, right?
5          MS. CAPPS:  Objection, form, assumes facts
6  not in evidence, misstates her testimony and
7  misstates the report.
8          THE WITNESS:  So I believe I've answered
9  that question several times.  I'm not providing a
10 legal conclusion.  I'm providing my opinion about
11 how I would apply the law.
12 BY MR. SIEGEL:
13    Q   How you would apply the law to -- to the
14 model and the facts, right?
15         MS. CAPPS:  Objection, form.
16         THE WITNESS:  Yes.
17 BY MR. SIEGEL:
18    Q   And after you applied the model to the law
19 and the facts, you come to this conclusion that
20 the payment scheme is a violation of Title IX,
21 right?
22         MS. CAPPS:  Objection, form, misstates her
23 testimony and the report.
24         You can answer the question.
25         THE WITNESS:  Yes.



```
 1   would be measured for the broadcast payment
 2   payments.
 3          Do you see that?
 4       A  For the broadcast model payments, yes.
 5       Q  Broadcast model payments, sorry.
 6          Is that -- is that an accurate statement
 7   of your opinion also as you sit here today?
 8       A  Yes.
 9       Q  Okay.  Do you cite any legal authority to
10   support that conclusion that they're instructive?
11       A  No, I don't.
12       Q  Okay.  Are you aware of any court cases
13   that have adopted that position?
14       A  No, I don't, because no court cases have
15   had to look at this model.
16       Q  Okay.  The basis for your conclusions that
17   the regulations' provisions on athletic
18   scholarships are instructive as to how the Title
19   IX compliance would be measured for broadcast
20   payments, the ones that plaintiffs propose, is
21   based on your interpretation of the regulations as
22   applied to the facts of the case, correct?
23       A  Yes, but I think that those are the same
24   as anybody who looks at Title IX would apply it.
25       Q  Any layperson off the street?
```



800.211.DEPO (3376)
EsquireSolutions.com

```
 1        Q  -- generally these provisions on financial
 2   assistance apply to scholarship aid.  That's
 3   generally what's at issue?
 4            MS. CAPPS:  Objection to form.
 5            THE WITNESS:  No, that's not correct.
 6   Scholarship aid is included --
 7   BY MR. SIEGEL:
 8        Q  Okay.
 9        A  -- but in financial assistance, it talks
10   about assisting anyone that provides any type of
11   assistance, not just --
12        Q  Okay.
13        A  -- aid.
14        Q  Yeah, I understand that.
15            What I'm saying is:  Are you aware of any
16   court cases that have addressed the question of
17   whether the regulations, provisions on financial
18   assistance apply to nonscholarship aid?  Any
19   courts that have interpreted that?
20        A  I am not aware of any cases.
21        Q  Okay.  Are you aware of any policy
22   interpretation or letter produced by the U.S.
23   Department of Education that has answered that
24   question?
25            MS. CAPPS:  Objection, form.
```



```
 1         MS. CAPPS:  Objection, form.
 2         THE WITNESS:  I -- yes, I looked at the
 3   broadcast model and applied Title IX, and so I
 4   offered my opinion as whether or not Title IX
 5   would be implicated by that model.
 6   BY MR. SIEGEL:
 7      Q  Okay.  And again, you're opining about
 8   Dr. Rascher's class-wide methodology for awarding
 9   past damages to Power Five Conference football and
10   men's and women's basketball players, right?
11      A  Yes.
12      Q  Okay.  And, again, if you look at -- if
13   you look at your table of contents, Part V, one
14   conclusion is that plaintiffs' broadcast model
15   violates Title IX?
16      A  Yes.  I was going for a punchy headline.
17      Q  And you succeeded.
18         And, again, you understand that
19   Dr. Rascher's broadcast NIL damages model, in his
20   class certification report, is designed to explain
21   to the Court, among other things, how plaintiffs
22   can prove past class-wide impact and measure past
23   damages to award damages to members of the Power
24   Five men's football and basketball class and
25   women's basketball class?
```



```
 1  never been out there in the universe, and a Court
 2  has never had to decide about it.
 3      Q  I just want to make it clear you
 4  understand the breadth of what I'm asking --
 5      A  Uh-huh.
 6      Q  -- you, okay?
 7      A  Court has never held that to award
 8  damages to a plaintiff or single plaintiffs,
 9  whether or not to broadcast NIL damages or for any
10  other claim, would not be permitted because to
11  award damages in such a way would violate
12  Title IX.
13          MS. CAPPS:  Objection, form.
14  BY MR. SIEGEL:
15      Q  Is that true?
16          MS. CAPPS:  Calls for a legal conclusion,
17  asked and answered.
18          THE WITNESS:  I am not aware of any cases
19  that would have cited that, no.
20  BY MR. SIEGEL:
21      Q  Okay.  And what part of Title IX would
22  prohibit distribution of NCAA and conference funds
23  as damages to student-athletes as violative of
24  Title IX?
25          MS. CAPPS:  Objection, form.
```



```
 1       A   Okay.
 2       Q   I'll just take your word for it there.
 3           Did you conduct any independent studies
 4   for this case of what the impact of Rascher's
 5   damages model would have been on Power Five
 6   athletic programs during the class period?
 7       A   No.
 8       Q   So you didn't do any empirical work on
 9   this point, correct?
10       A   No, I did not.
11       Q   And certainly nothing -- no independent
12   studies to show that it -- that it would require a
13   massive overhaul of any NCAA athletic programs?
14       A   What do you mean by "no independent
15   studies"?
16       Q   You didn't do any empirical independent
17   work to determine whether or not it would have
18   required a massive overhaul of any NCAA athletic
19   programs?
20       A   No.  I looked at past research that had
21   been done relative to Title IX.
22       Q   But none of the academic studies or
23   analyses that you cited was anything close to an
24   analysis of Rascher's damages proposal to support
25   the contention that a massive overhaul would have
```



```
 1   that's true?
 2        A  I can assume that this information is
 3   correct.  It looks like it's all coming from news
 4   sources.
 5        Q  Okay.  Did you analyze any of these --
 6   coaching salaries or the salaries of commissioners
 7   or the salaries, like I said, of other coaching
 8   staff or athletic directors in coming to your
 9   conclusions about the budgets of the Power Five
10   schools and the implications of compensating
11   college athletes for their NILs?
12        A  No.
13        Q  Okay.  Are you aware that the salaries of
14   the top head coaches in FBS Football and
15   Division I's men's basketball often exceed
16   $11 million per year?
17        A  It says that on this information.
18        Q  And compensation for the top head coaches
19   in divisional women's basketball are approaching
20   3 million -- $3 million per year?
21        A  Okay.
22        Q  Are you aware that many athletic directors
23   and assistant coaches make over $2 million per
24   year?
25        A  According to this document, yes.
```



```
 1      CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC
 2           I, Cynthia J. Conforti, Certified
 3   Shorthand Reporter No. 084-003064, CSR, CRR, and a
 4   Notary Public in and for the County of Cook, State
 5   of Illinois, the officer before whom the
 6   foregoing deposition was taken, do hereby certify
 7   that the foregoing transcript is a true and
 8   correct record of the testimony given; that said
 9   testimony was taken by me stenographically and
10   thereafter reduced to typewriting under my
11   direction; that reading and signing was requested;
12   and that I am neither counsel for, related to, nor
13   employed by any of the parties to this case and
14   have no interest, financial or otherwise, in its
15   outcome.
16      IN WITNESS WHEREOF, I have hereunto set my
17   hand and affixed my notarial seal this 19th day of
18   June, 2023.
19
20   My commission expires: October 30, 2023
21
22
23   
     _____
24   Notary Public in and for the
25   State of Illinois
```