Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Classes*

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs and the Proposed Classes*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919 CW |
| | **PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL MOTION FOR LEAVE TO SUBMIT ADDITIONAL AUTHORITY IN SUPPORT OF OPPOSITION TO CLASS CERTIFICATION** |
| | **PUBLIC REDACTED VERSION** |
| | Hon. Claudia Wilken |

The Court ordered Defendants to file a brief "to argue the relevance of Dr. Rascher's supplemental deposition."[1] Defendants ignored that directive and submitted an unauthorized sur-reply in support of their opposition to class certification, often completely divorced from the limited topics ordered for Dr. Rascher's supplemental deposition, without even making the pretense of citing to the deposition transcript. Those arguments have no place in the briefing the Court ordered and should be ignored. But in any event, Defendants' Supplemental Motion[2] presents nothing that supports Defendants' arguments opposing class opposition.

Regarding Dr. Rascher's supplemental deposition, if the Court orders the deposition to become part of the class certification record, the entire transcript should be admitted for context.

**A.      Dr. Rascher Plausibly Models Class-Wide Damages from Lost BNIL Compensation.**

Defendants repeat their position that Dr. Rascher's BNIL damages model does not reflect what would have occurred in the but-for world because he opines that BNIL payments would have come from the conferences. *See* Supp. Mot. at 1. But the Supreme Court in *Comcast* explained that the only damages inquiry at class certification is whether the proposed model is consistent with plaintiffs' theory of liability and whether damages are "capable of measurement on a class-wide basis."[3] Plaintiffs explain in their class certification reply that Dr. Rascher's model easily meets those requirements. ECF No. 290 at 10.

Defendants nonetheless again trot out the argument that Dr. Rascher's conference-level BNIL payments model is based on "unsupported assumptions" because Dr. Rascher testified that schools compete with one another for recruits. Supp. Mot. at 1 (citing testimony). That testimony is not new or inconsistent with the model. Plaintiffs explained in their reply (ECF No. 290 at 10) that part of the way schools compete with one another in the relevant labor market is to form conferences, which offer benefits to members, and by extension, athletes. Indeed, the evidence is undisputed that conferences aggregate schools' broadcast rights, negotiate conference-wide broadcast agreements, affirmatively convey athletes' BNILs to broadcasters (or indemnify broadcasters for using athletes'

---

[1] *See* Minute Order, ECF No. 324, filed on Sept. 21, 2023.
[2] *See* Suppl. Mot. for Leave to Submit Additional Authority in Supp. of Defs.' Opp'n to Class Certification, ECF No. 332 (sealed), filed on Sept. 25, 2023 ("Suppl. Mot.").
[3] *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

1   BNILs), and distribute broadcast revenues to their member schools. Therefore, Dr. Rascher's opinion

2   that in the but-for world the conferences would have offered class members payments for their

3   BNILs through a group license is not only plausible, it is persuasive. Rascher Rep. ¶¶ 154-158;

4   Rascher Reply ¶¶ 85-86, 93-94.[4]

5       It is also remarkable that Defendants argue that Dr. Rascher's model is based on unsupported

6   assumptions when on the day of the class certification hearing, Jordan Acker, a regent of the

7   University of Michigan, stated in a New York Times Guest Essay that in the future college athletes

8   should be compensated with a percentage of the conference broadcast revenues.[5] He proposes the

9   Rascher model. While Plaintiffs cannot prove with 100% certainty this would have occurred in the

10  but-for world, as Judge Alsup explained in *Glumetza*, plaintiffs have "relatively broad leeway in

11  constructing a damages model" and describing the but-for world because "'[t]he vagaries of the

12  marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the

13  absence of the defendant's antitrust violation[.]' Plainly, we can't know exactly what would have

14  happened in that but-for world; defendants saw to that."[6] Dr. Rascher's opinion about conference

15  payouts easily meets this standard.

16      In that same vein, Defendants again argue that Dr. Rascher's damages model should be

17  rejected because Defendants believe star players would have received more BNIL compensation or

18  that Title IX makes his model unlikely. Suppl. Mot. at 2. These arguments should be ignored because

19  they are not topics Defendants requested for Dr. Rascher's supplemental deposition and are outside

20  of what the Court ordered Defendants to brief. ECF Nos. 303; 324. Defendants do not even bother to

21  cite to the deposition transcript for these arguments. *See* Suppl. Mot. at 2. Shame!

22      Defendants' arguments are also meritless and nothing new. Plaintiffs explained in their class

23

---

24  [4] Defendants also leave out of their proposed deposition excerpts where Dr. Rascher explained,
    again, that one way that schools compete for recruits is to form conferences, which have distinctive
25  media contracts, as exemplified by the recent exodus of schools from the Pac-12 to other
    conferences, including the ACC, with that exodus "largely driven by the media deals which are at the
26  conference level." Suppl. Rascher Dep., ECF No. 321-3 at 90:20-91.16.
    [5] The Only Way College Sports Can Begin to Make Sense Again, *available at*
27  https://www.nytimes.com/2023/09/21/opinion/college-sports-broken.html.
    [6] *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 479 (N.D. Cal. 2020) (quoting *J. Truett Payne*
28  *Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981)).

certification reply brief that there is myriad evidence to support Dr. Rascher's equal-sharing damages model. ECF No. 290 at 9-10 (citing evidence). Plaintiffs also explain in their class certification reply brief and *Daubert* briefing why Defendants' Title IX argument is contrary to prevailing law, not supported by any admissible expert evidence, and is, in any event, a common issue that actually supports class certification. ECF Nos. 290 at 3, 18-19; 293; 312.

**B.      Defendants' Arguments about Dr. Rascher's Third Party Damages Model are Meritless.**

First, Defendants are once again wrong that Dr. Rascher's model "assumes" identical NIL compensation in the pre-period. Suppl. Mot. at 3:7-8. Instead, Dr. Rascher's model relies on the well-accepted before-and-after methodology for antitrust damages that includes adjustments. ECF No. 290 at 12-13. The transactions that occur in the period unaffected by the alleged anticompetitive conduct (post-NIL rule changes) provide data relevant to the transactions that would have occurred in the before period. Dr. Rascher then makes appropriate adjustments for market conditions—such as a transfer, a change in playing time, or other adjustment factors—to model damages on a class-wide basis. *Id.*; *see* Rascher Rep. ¶¶ 179-220; Rascher Reply ¶¶ 129-49.

Second, Defendants' claim that the singular example of basketball player C.J. Frederick (presented to Dr. Rascher at his supplemental deposition) indicates that the model leads to "nonsensical" results is wrong. During the 2021-22 season, Mr. Fredrick was at a renowned top five basketball program, but played zero minutes and still earned ▮▮▮▮▮ in NIL compensation, which Dr. Rascher explained indicates his NIL value. Suppl. Rascher Dep. at 138:13-139:15. Defendants selectively cite to online articles to try to make his predicted NIL earnings of ▮▮▮▮▮ in 2018-19 seem implausible, but they omit that in that pre-NIL year where he also played zero minutes (like 2021-22), he was entering school on a full basketball scholarship at a Power Five program after being named 2018 Kentucky Gatorade Player of the Year and leading his high school team to a state title.[7] Suppl. Rascher Dep. at 139:16-140:15. Dr. Rascher's model accounts for these factors and adjusts for changes in market conditions during any of the seasons in which those changes occurred. Moreover, contrary to Defendants' unsupported assertion that this indicates that Dr. Rascher's model

---

[7] CJ Federick, UKAthletics, *available at* https://ukathletics.com/sports/mbball/roster/player/cj-fredrick.

reaches "implausible" results, in fact freshmen often obtain lucrative NIL deals before their seasons even start. And, in any event, debating the model's damages allocation for a single class member out of thousands is not a basis to deny class certification.[8]

Third, Defendants' claim that Dr. Rascher's third-party damages model is built to "assume" positive injury for everyone in the Additional Sports Class has it backwards. Rather, Dr. Rascher reliably opines that only athletes who (i) secured at least one third-party NIL deal in the "after" period (demonstrating that they have NIL value to third parties); and (ii) participated in the same sport for at least one year during the "before" period, would have received some NIL compensation in the before period. ECF No. 290 at 12. The Additional Sports Class is objectively defined to include only those athletes who meet these parameters, but Dr. Rascher's opinion about who would have received third-party NIL deals is independent of that definition and the basis for it, not the other way around. Defendants are right that Dr. Rascher stated it is "possible" that someone who meets that definition would not have received a deal in the but-for world, but they omit that in the same answer he says, "it's not likely, and my reasonable analysis shows otherwise." Suppl. Rascher Dep. at 116:2-8. As *Glumetza* explains, certainty is not required or possible in modeling the but-for world; Defendants saw to that.

Finally, Defendants' cases are inapposite because, unlike in those cases, *see* Suppl. Mot. at 4, Dr. Rascher's model is well-supported by the evidence and not based on "speculative assumptions." Indeed, the before-after-approach is particularly apt in a case like this when the real-world after-period permits third-party NIL compensation. Rascher Rep. ¶ 186.

**C.     Defendants' Arguments About the Common Injury of the Lost Opportunity to Participate in the NIL Market Are Wrong and Irrelevant to Class Certification.**

Plaintiffs and Dr. Rascher have explained why all members of Plaintiffs' damages classes suffered the common injury of being deprived by the former NIL rules of any opportunity to pursue NIL compensation. *See* Rascher Rep. ¶¶ 48, 97, 195; Rascher Reply ¶¶ 23-32; ECF No. 290 at 5. The economic evidence shows that Defendants' rules injured all Division I athletes by denying them the

---

[8] *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("Under *Tyson Foods* and our precedent, therefore, the rule is clear: the need for individual damages calculations does not, alone, defeat class certification.").

1    opportunity to monetize their NILs in a competitive market.

2          Defendants argue that "lost opportunity alone" cannot constitute injury (Suppl. Mot. at 5), but

3    they miss a fundamental point about the members of Plaintiffs' proposed damages classes. The

4    damages class members are a *subset* of Division I athletes—athletes for whom Dr. Rascher has

5    measured financial injury. *See* Suppl. Rascher Dep. at 17:9-18:3, 18:17-19:6. Plaintiffs' briefing and

6    evidence, including the supporting expert reports, show that **all members of Plaintiffs' proposed**

7    **damages classes** were injured because they would have received one or more types of NIL

8    compensation in the but-for world absent Defendants' unlawful rules: (1) compensation for their

9    BNIL rights (which injured all members of the Football and Men's Basketball Class and the

10   Women's Basketball Class); (2) compensation for use of their NILs in college football and men's

11   basketball video games (which injured all members of the Football and Men's Basketball Class and

12   some members of the Additional Sports Class); and/or (3) NIL compensation from third-parties

13   under the Prior NIL Rules (which injured all members of the Additional Sports Class, plus many

14   members of the Football and Men's Basketball Class and the Women's Basketball Class). *See* ECF

15   No. 209 at 29-34; ECF No. 290 at 4-16; Rascher Rep. ¶¶ 98-110; Rascher Reply ¶¶ 26-39.

16         Defendants are also fundamentally wrong that the lost opportunity to pursue NIL

17   compensation is not a cognizable injury, including in claiming that the cases they cite on page five of

18   their brief "rejected" this type of alleged harm. Indeed, they ignore that this Court's MTD Order

19   recognized that the lost opportunity to receive NIL compensation can show antitrust injury and cited

20   supporting authorities. *See* ECF No. 290 at 5 & n.9. Contrary to Defendants' contention (Suppl. Mot.

21   at 5:14), Dr. Rascher testified that all Division I college athletes denied the opportunity to participate

22   in the NIL market were harmed, but he conservatively only measured financial damages for those

23   who consummated an NIL deal in the after period or would have received BNIL or video-game NIL

24   compensation in the but-for world. Suppl. Rascher Dep. at 18:17-19:3; 22:7-10, 26:14-33:16. There

25   is no *Comcast* issue because Dr. Rascher's methodology for measuring damages matches Plaintiffs'

26   liability theory perfectly. *See Comcast*, 569 U.S. at 35.

27

28

Dated: September 27, 2023                    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP          WINSTON & STRAWN LLP

By:   _/s/ Steve W. Berman_                  By:   _/s/ Jeffrey L. Kessler_
      Steve W. Berman (*pro hac vice*)                 Jeffrey L. Kessler (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)             David G. Feher (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)           David L. Greenspan (*pro hac vice*)
1301 Second Avenue, Suite 2000               Adam I. Dale (*pro hac vice*)
Seattle, WA 98101                            Sarah L. Viebrock (*pro hac vice*)
Telephone: (206) 623-7292                    200 Park Avenue
Facsimile: (206) 623-0594                    New York, NY 10166-4193
steve@hbsslaw.com                            Telephone: (212) 294-4698
emilees@hbsslaw.com                          Facsimile: (212) 294-4700
stephaniev@hbsslaw.com                       jkessler@winston.com
                                             dfeher@winston.com
Benjamin J. Siegel (SBN 256260)              dgreenspan@winston.com
715 Hearst Avenue, Suite 300                 aidale@winston.com
Berkeley, CA 94710                           sviebrock@winston.com
Telephone: (510) 725-3000
Facsimile: (510) 725-3001                    Jeanifer E. Parsigian (SBN 289001)
bens@hbsslaw.com                             101 California Street, 34th Floor
                                             San Francisco, CA 94111
Jeffrey L. Kodroff                           Telephone: (415) 591-1000
SPECTOR ROSEMAN & KODROFF PC                 Facsimile: (415) 591-1400
Two Commerce Square                          jparsigian@winston.com
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496 0300                    *Counsel for Plaintiffs and the Proposed Classes*
Facsimile: (215) 496 6611
jkodroff@srkattorneys.com

*Counsel for Plaintiffs and the Proposed Classes*

1

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the

3

filing of this document has been obtained from the signatories above.

4

Dated this 27th day of September 2023.

5

_/s/ Steve W. Berman_

6

STEVE W. BERMAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28