DAVID R. SINGH (Bar No. 300840)
Email:  david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802-3000
Facsimile:  (650) 802-3100

Attorneys for Non-Party Network Intervenor
CBS BROADCASTING INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW |
| | **DECLARATION OF DANIEL WEINBERG IN SUPPORT OF PARTIES' JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL, FILED PURSUANT TO L.R. 79-5(f)(3)** |
| | Trial Date:  January 27, 2025 |
| | Judge:  Hon. Claudia Wilken |
| | Re: Dkt. No. 318 |

I, Daniel Weinberg, declare that the following is true:

1.      I am an Executive Vice President of Programming for non-party Network Intervenor CBS Sports, a division of CBS Broadcasting Inc. ("**CBS**"). I am over 18 years of age and make this declaration of my own personal knowledge, and, if called to do so, could testify competently to the facts stated herein under oath.

2.      I am advised that Plaintiffs and Defendants in this matter are seeking to file under seal information quoting, summarizing, or describing various terms and provisions of certain of CBS' highly confidential and competitively sensitive media agreements, including certain of CBS' agreements with the NCAA, Turner Broadcasting System, Inc. ("**Turner**"), Big Ten Conference ("**Big Ten**"), the Southeastern Conference (the "**SEC**"), and Conference USA ("**C-USA**") (collectively, the "**CBS Agreements**").

3.      Specifically, the parties have informed counsel for CBS that information derived directly from the CBS Agreements appears in the following party filings regarding class certification: Expert Report of Daniel Rascher [Dkt. 209-2]; Expert Report of Edwin Desser [Dkt. 209-3]; Declaration of Greg Sankey [Dkt. 249-1]; Expert Report of Catherine Tucker [Dkt. 251-1]; Expert Report of Bob Thompson [Dkt. 251-2]; Kilaru Decl. Ex. 6, Desser Deposition Transcript Excerpts [ECF No. 251-6]; Kilaru Decl. Ex. 7, Rascher Deposition Transcript Excerpts [Dkt. 251-7]; Declaration of Steve Berman IFSO Motion for Class Certification [Dkt. 289-1]; Reply Report of Desser [Dkt. 289-2]; Reply Report of Daniel Rascher [Dkt. 290-2]; Plaintiffs' Opposition to Defendants' Motion to Exclude the Opinions, Reports, and Testimony of Edwin Desser and Dr. Daniel Rascher [Dkt. 291] (the "**Class Certification Filings**").

4.      The CBS Agreements, from which information derived are included in the above-listed filings, have each been designated either (a) "House NSC – Outside Litigation Counsel Only Information" ("**House – NSC Information**") pursuant to paragraph 5 of the Stipulation and Order Supplementing and Amending Protective Order Regarding Conference and Network Strictly Confidential Documents ("**First Supplemental Stipulation**"), Dkt. 148 (February 8,

2021), or (b) "Network Strictly Confidential – Outside Litigation Counsel Only" ("**Alston NSC Information**") pursuant to Paragraph 4 of the Stipulation and Order Regarding Second Addendum to the Stipulated Protective Order ("**Alston Protective Order-Second Addendum**"), No. 4:14-md-02541-CW, Dkt. 512 (Oct. 12, 2016), No. 4:20-cv-03919-CW, Dkt. 136-1, Ex. C. The protections provided for in the *Alston* Protective Order-Second Addendum, with certain modifications, were incorporated in this action and "remain in effect with respect to the *Alston* documents deemed to have been produced in these actions." *See* Stipulation and Protective Order, Dkt. 137 ("**House Protective Order**").

5.      Pursuant to Paragraph 7 of the *Alston* Protective Order-Second Addendum, as incorporated by the House Protective Order, only select individuals may access Network Strictly Confidential Information, and "only to the extent necessary to litigate these actions," including certain of Defendants' outside litigation counsel of record, Plaintiffs' Interim Co-Lead Class Counsel, the Court, and consultants or expert witnesses and designated providers of litigation support services, both of which are required under Paragraph 7(c) and (f) to execute a certification annexed to the Protective Order-Second Addendum prior to viewing *Alston* Network Strictly Confidential Information. No. 4:14-md-02541-CW, Dkt. 512 (Oct. 12, 2016), No. 4:20-cv-03919-CW, Dkt. 136-1, Ex. C.

6.      Similarly, pursuant to paragraph 6 of the First Supplemental Stipulation, only select individuals may access House – NSC Information, and "then only during the course and scope of and to the extent necessary to litigate these action," including outside litigation counsel of record for Plaintiffs and Defendants, the Court, and consultants or expert witnesses and designated providers of litigation support services, both of which are required under Paragraph 6(b) and (e) to execute a certification annexed to the First Supplemental Stipulation prior to viewing House – NSC Information. Dkt. 148.

7.      Under the Stipulation and Order as Modified Modifying Sealing Procedures Relating to Class Certification Briefing and Related Documents ("**Stipulation and Order**

**Modifying Sealing Procedures**") (ECF No. 205), and Local Rule 79-5, as Designating Party, CBS hereby provides the below table, itemizing the excerpts of the Class Certification Filings CBS seeks to retain under seal and the compelling reason(s) why the court should allow sealing.

8. There are compelling reasons for protecting the confidential information at issue from disclosure in public court filings, CBS' legitimate private interests warrant sealing, denial of sealing would result in injury to CBS, and the below table reflects CBS' narrowly tailored request for sealing of only highly confidential and proprietary information such that a less restrictive alternative to sealing is not sufficient. *See* Joint Administrative Omnibus Motion, Dkt. 318, at 2.

9. A number of the below descriptions of the House – NSC Information and *Alston* NSC Information contained in the table below were provided to CBS' counsel by counsel for Plaintiffs and Defendants. However, neither I nor my counsel have seen a number of the portions of the Class Certification Filings at issue in unredacted form. As such, this declaration is written assuming the information provided by the parties is both accurate and complete.

| Expert Report of Daniel Rascher [Dkt. 209-2] | |
|---|---|
| **Location** | **Compelling Reasons for Sealing** |
| p. 90, Ex. 9 | Chart reflects a combination of annual rights fees derived from media agreements with broadcasters from 2009 to 2022, including CBS' media agreements with conferences and the NCAA, including the annual rights fees provided for in CBS' media agreements with the NCAA and Turner (contained in the "NCAA Tournament" column). This information is highly confidential and proprietary information of CBS, has been designated *Alston* NSC Information or House – NSC Information, and has not been disclosed publicly. Public disclosure of this information would inflict competitive harm on CBS. |
| pp. 90-91, n. 208 | Last clause of footnote contains source |

| | |
|---|---|
| | citations to the above row, which are CBS Agreements designated *Alston* NSC Information or House – NSC Information. |
| p. 92, Ex. 10 | Calculations in chart take into account annual rights fees paid by CBS to a specific conference from 2016 to 2021 and reflected in CBS' media agreements. If this information or the other calculations in this exhibit were to be unsealed, it would allow those within the industry to deduce the actual annual rights fees in CBS' media agreements with this conference. This information is highly confidential and proprietary information of CBS. These agreements have been designated *Alston* NSC Information or House – NSC Information and have not been disclosed publicly. Public disclosure of this information would inflict competitive harm on CBS. |
| p. 94, Ex. 12 | Calculations in chart take into account annual rights fees paid by CBS from 2016 to 2021 to a specific conference and reflected in CBS' media agreements. If this information or the other calculations in this exhibit were to be unsealed, it would allow those within the industry to deduce the actual annual rights fees in CBS' media agreements with this conference. This information is highly confidential and proprietary information of CBS. These agreements have been designated *Alston* NSC Information or House – NSC Information and have not been disclosed publicly. Public disclosure of this information would inflict competitive harm on CBS. |
| Appx Ex. C.5 | Calculations in chart take into account annual rights fees paid by CBS to a specific conference from 2016 to 2021 and reflected in CBS' media agreements. The Column "Conference Non-Bowl Agreements" is the total amount of rights fees the conference receives from all its media partners. If this |

4

| | |
|---|---|
| | information or the other calculations in this exhibit were to be unsealed, it would allow those within the industry to deduce the actual annual rights fees in CBS' media agreements with this conference. This information is highly confidential and proprietary to CBS. The source agreements have been designated *Alston* NSC Information or House – NSC Information and have not been disclosed publicly. Public disclosure of this information would inflict competitive harm on CBS. |
| Appx Ex. C.8 | Calculations in chart take into account annual rights fees paid by CBS to a specific conference from 2016 to 2021 and reflected in CBS' media agreements. The Column "Conference Non-Bowl Agreements" is the total amount of rights fees the conference receives from all its media partners. If this information or the other calculations in this exhibit were to be unsealed, it would allow those within the industry to deduce the actual annual rights fees in CBS' media agreements with this conference. This information is highly confidential and proprietary to CBS. The source agreements have been designated *Alston* NSC Information or House – NSC Information and have not been disclosed publicly. Public disclosure of this information would inflict competitive harm on CBS. |
| **Expert Report of Edwin Desser [Dkt. 209-3]** | |
| **Location** | **Compelling Reasons for Sealing** |
| p. 25 Sec. 6.7 | Language reflects certain specific representations regarding rights made in CBS' agreement with NCAA, and such terms are highly confidential and proprietary information of CBS, and have been designated House – NSC Information. Public disclosure of the fact that this agreement contains these terms would inflict |

| | |
|---|---|
| | competitive harm on CBS. |
| p. 26 n. 32 | Footnote cites to, quotes, and compares specific terms in two of CBS' media agreements with NCAA, NCAAGIA02196735, the Nov. 18, 1999 CBS-NCAA Agreement and NCAAGIA03941962, the NCAA's Mar. 14, 2016 Agreement with CBS and Turner. These terms include specific representations regarding rights made therein, and the text compares similarities and differences between those terms, the latter of which is still in place. These terms, and how they changed as between the two agreements, are highly confidential and proprietary information of CBS, and the agreements have been designated *Alston* NSC Information. Public disclosure of these agreements and their terms would inflict competitive harm on CBS. |
| p. 48 Sec. 10.3 | CBS does not seek to keep this clause under seal. |
| p. 48 n. 54 | CBS does not seek to keep this footnote under seal. |
| p. 62 Sec. 17.4 | Paragraph describes provisions in CBS' agreement with C-USA that relate to rights fees adjustments associated with specific games. This agreement was designated *Alston* NSC Information, is highly confidential and proprietary, and public disclosure of these non-public terms would inflict competitive harm on CBS. |
| p. 62 n. 78 | Footnote quotes a provision in the Term Sheet, CBSC/C-USA Rights Agreement Extension (Jun. 2, 2010), CUSA-GIA_00000509, between CBS and C-USA referenced in the above row, which was designated *Alston* NSC Information. This provision is highly confidential and |

DECL. OF DANIEL WEINBERG                              CASE NO. 4:20-CV-03919

| | |
|---|---|
| | proprietary, and public disclosure of these non-public terms would inflict competitive harm on CBS. |

| Declaration of Greg Sankey [Dkt. 249-1] | |
|---|---|
| **Location** | **Compelling Reasons for Sealing** |
| p. 14:5-9 | Testimony describes terms in CBS' agreement(s) with the SEC related to production costs. These agreements and the terms at issue are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. The source agreement(s) have also been designated *Alston* NSC Information or House – NSC Information, and have not been made public. |

| Expert Report of Catherine Tucker [Dkt. 251-1] | |
|---|---|
| **Location** | **Compelling Reasons for Sealing** |
| p. 121, n.303 | CBS does not seek to keep this footnote under seal. |

| Expert Report of Bob Thompson [Dkt. 251-2] | |
|---|---|
| **Location** | **Compelling Reasons for Sealing** |
| p. 9-10 | CBS does not seek to keep this text under seal. |
| p. 11-12 (3) | Language describes in detail the grant of broadcasting rights in a specific Big Ten agreement with CBS, BIGTEN-GIA 253098. This agreement and the terms at issue are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. This agreement and its terms have been designated *Alston* NSC Information and have not been made public. |
| p. 12-13 (5) | Language describes the grant of broadcasting |

DECL. OF DANIEL WEINBERG

CASE NO. 4:20-CV-03919

| | |
|---|---|
| | rights in the SEC's agreement with CBS. This agreement and its terms are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. This agreement and its terms have been designated House – NSC Information and have not been made public. |
| p. 14 | Language describes and cites to provisions in the March 14, 2016 Multi-Media Agreement between the NCAA, CBS, and Turner (NCAAHOUSE00249333) relating to corporate sponsors. This agreement and its terms are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. This agreement and its terms have been designated House – NSC Information and have not been made public. |
| p. 15, n.48 | CBS does not seek to keep this footnote text under seal. |
| p. 16, n.52 | Language describes the grant of broadcasting rights in the April 13, 2018 Big Ten/CBS Telecast Rights Agreement (BIGTEN-GIA253098). This agreement and the terms at issue are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. This agreement and its terms have been designated *Alston* NSC Information and have not been made public. |
| p. 18 | Language describes game selection rights and obligations in CBS' media agreements with SEC. These agreements and the terms at issue are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. These agreements and their terms have been designated *Alston* NSC Information or House – NSC Information |

8

| | and have not been made public. |
|---|---|
| p. 18-19 | Same as previous row. |
| p. 18, n.57 | Language describes the grant of broadcasting rights in the Aug. 6, 2008 CBS/SEC Short Form Agreement (SEC-HOUSE0113215). This agreement and the terms at issue are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. This agreement and its terms have been designated House – NSC Information and have not been made public. |
| p. 18, n.58 | Language describes the grant of broadcasting rights in the Aug. 6, 2008 CBS/SEC Short Form Agreement (SEC-HOUSE0113215). This agreement and the terms at issue are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. This agreement and its terms have been designated House – NSC Information and have not been made public. |
| p. 18-19, n.59 | CBS does not seek to keep this footnote under seal. |
| p. 23, n.70 | Language describes the grant of broadcasting rights in the Aug. 6, 2008 CBS/SEC Short Form Agreement (SEC-HOUSE0113215). This agreement and the terms at issue are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. This agreement and its terms have been designated House – NSC Information and have not been made public. |
| p. 24 | Language describes provision in NCAA's agreements with CBS relating with sponsorships of NCAA Tournament. This agreement and the terms at issue are highly |

9

| | |
|---|---|
| | confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. These agreements and their terms have been designated *Alston* NSC Information or House – NSC Information and have not been made public. |
| p. 26, n.85 | CBS does not seek to keep this footnote under seal. |
| p. 52 | Paragraphs describe and quote provisions in Term Sheet, CBSC/C-USA Rights Agreement Extension (Jun. 2, 2010), CUSA-GIA_00000509, between CBS and C-USA related to the grant of broadcasting rights and allocation of rights fees, including in reference to specific games. This agreement and its terms are highly confidential and proprietary information of CBS, were designated *Alston* NSC Information and would inflict competitive harm on CBS if disclosed publicly. |

**Kilaru Decl. Ex. 6, Desser Deposition Transcript Excerpts [ECF No. 251-6]**

| Location | Compelling Reasons for Sealing |
|---|---|
| p. 45:10-46:14 | Testimony describes provisions in CBS' agreement with the SEC related to grant of broadcasting rights and tiers of rights. This agreement and its terms are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. This agreement and its terms have been designated *Alston* NSC Information or House – NSC Information and have not been made public. |
| p. 98:1-5, 11 | Testimony identifies the amount of annual rights fees the SEC received from CBS in a specific year, which is highly confidential and proprietary information of CBS. Public disclosure of this information would inflict competitive harm on CBS. This agreement |

DECL. OF DANIEL WEINBERG                                    CASE NO. 4:20-CV-03919

| | |
|---|---|
| | and its terms have been designated House – NSC Information. CBS further understands that the SEC's sealing declaration will address a longer passage in which this testimony appears, and will further support sealing of this testimony. |
| p. 110:1-15 | Testimony describes terms related to allocation of rights fees, including in reference to specific games, contained in a CBS' media agreement with C-USA. This agreement and its terms are highly confidential and proprietary information of CBS, were designated *Alston* NSC Information, and would inflict competitive harm on CBS if disclosed publicly. |
| p. 112:8-113:4 | Testimony describes terms related the grant of rights, and allocation of rights fees, including in reference to specific games, contained in a CBS media agreement with C-USA. This agreement and its terms are highly confidential and proprietary information of CBS, were designated *Alston* NSC Information, and would inflict competitive harm on CBS if disclosed publicly. |

| **Kilaru Decl. Ex. 7, Rascher Deposition Transcript Excerpts [Dkt. 251-7]** | |
|---|---|
| **Location** | **Compelling Reasons for Sealing** |
| p. 67:6-9 | Testimony includes figure from a per-player damages calculation relating to a specific conference in the Expert Report of Daniel Rascher [Dkt. 209-2]. If this information were to be unsealed, it would allow those within the industry to deduce the actual annual rights fees in CBS' media agreements with this conference. This information is highly confidential and proprietary information of CBS. These agreements have been designated *Alston* NSC Information or House – NSC Information and have not been |

DECL. OF DANIEL WEINBERG                                    CASE NO. 4:20-CV-03919

| | |
|---|---|
| | disclosed publicly. Public disclosure of this information would inflict competitive harm on CBS and could be used to determine annual rights fees paid by CBS, which is highly confidential and proprietary information of CBS. |
| p. 68:8-13 | Same as previous. |
| p. 68:24-69:1 | Same as previous. |
| p. 69:6-16 | Same as previous. |
| p. 72:18-20 | Same as previous. |
| p. 72:21-24 | Same as previous. |
| p. 72:25-73:2 | Same as previous. |
| p. 73:3-13 | Same as previous. |
| p. 91:23-92:8 | Same as previous. |
| p. 93:4-15 | Same as previous. |
| p. 94:3-5 | Same as previous. |
| p. 131:10-14 | CBS does not seek to keep this testimony under seal. |
| p. 133:8-10 | Testimony describes terms in CBS' agreements with SEC and C-USA related to allocation of broadcasting rights and annual or other specifically allocated rights fees. These agreements and these specific terms are highly confidential and proprietary information of CBS, and public disclosure of this information would inflict competitive harm on CBS. They have also been designated *Alston* NSC Information or House – NSC Information and have not been |

| | |
|---|---|
| | disclosed publicly. |
| p. 134:12-19 | Testimony describes terms of CBS' media agreements with C-USA related to the grant of broadcasting rights and allocation of rights fees, including in reference to specific games. This agreement and its terms are highly confidential and proprietary information of CBS, were designated *Alston* NSC Information and would inflict competitive harm on CBS if disclosed publicly. |
| p. 139:17-140:8 | Testimony describes terms of a CBS- C-USA extension agreement, including the term of that agreement. This agreement and its terms are highly confidential and proprietary information of CBS, were designated *Alston* NSC Information and would inflict competitive harm on CBS if disclosed publicly. |
| p. 146:13-21 | Testimony describes terms of CBS' media agreement with C-USA related to the grant of broadcasting rights therein. This agreement and these terms are highly confidential and proprietary information of CBS, were designated *Alston* NSC Information and would inflict competitive harm on CBS if disclosed publicly. |
| p. 156:2-157:2 | Testimony includes figures from a per-player damages calculation relating to a specific conference in the Expert Report of Daniel Rascher [Dkt. 209-2], and specifically Exhibits and Appendices within. If this information were to be unsealed, it would allow those within the industry to deduce the actual annual rights fees in CBS' media agreements with a specific conference. This information is highly confidential and proprietary information of CBS. These agreements have been designated *Alston* NSC Information or House – NSC |

DECL. OF DANIEL WEINBERG

| | |
|---|---|
| | Information and have not been disclosed publicly. Public disclosure of this information would inflict competitive harm on CBS. |
| p. 157:3-158:1 | Same as previous. |
| p. 188:18-189:15 | Same as previous. |
| p. 191:10-23 | Same as previous. |
| p. 192:14-18 | Same as previous. |
| p. 193:24-194:9 | Same as previous. |
| p. 194:23-195:22 | Same as previous. |
| p. 196:21-24 | Same as previous. |
| p. 197:14-17 | Same as previous. |
| p. 201:17-202:4 | Same as previous. |
| p. 202:5-202:18 | Same as previous. |
| p. 207:11-22 | Same as previous. |

**Declaration of Steve Berman IFSO Motion for Class Certification [Dkt. 289-1]**

| Location | Compelling Reasons for Sealing |
|---|---|
| Ex. 69 | This exhibit is the entirety of the Term Sheet, CBSC/C-USA Rights Agreement Extension (Jun. 2, 2010), CUSA-GIA_00000509, between CBS and C-USA, which was designated *Alston* NSC Information. This agreement and its terms are highly confidential and proprietary information of CBS, and public disclosure of this information would inflict competitive harm |

DECL. OF DANIEL WEINBERG                    CASE NO. 4:20-CV-03919

| | on CBS. |
|---|---|
| **Reply Report of Desser [Dkt. 289-2]** | |
| **Location** | **Compelling Reasons for Sealing** |
| p. 21, ¶ 4.3.2 | Redacted portions of paragraph describe suite of rights granted to CBS in CBS' media agreements with the SEC. These agreements between the SEC and CBS and these specific terms are highly confidential and proprietary information of CBS, and would inflict competitive harm on CBS if disclosed publicly. These agreements and their terms have been designated House – NSC Information and have not been made public. |
| p. 22, ¶ 4.3.3 (specifically, dollar amounts attributed to CBS) | The redacted portions of this paragraph contain annual rights fees paid by CBS to the SEC under the terms of CBS' media agreements with the SEC, which is highly confidential and proprietary information of CBS. These agreements and their terms have been designated House – NSC Information and have not been made public. Public disclosure of this information would inflict competitive harm on CBS. |
| p. 23, ¶ 4.3.4 | The redacted portions of this paragraph describe terms in CBS' media agreements with C-USA related to the grant of broadcasting rights and allocation of rights fees, including in reference to specific games. This agreement and these specific terms are highly confidential and proprietary information of CBS, were designated *Alston* NSC Information, and would inflict competitive harm on CBS if disclosed publicly. |
| **Reply Report of Daniel Rascher [Dkt. 290-2]** | |
| **Location** | **Compelling Reasons for Sealing** |

DECL. OF DANIEL WEINBERG                    CASE NO. 4:20-CV-03919

| p. 51, ¶ 91 | The highlighted portions of this paragraph compare the rights fees paid by CBS to a specific conference under the terms of CBS' media agreements with that conference to the rights fees earned by a different conference, which is highly confidential and proprietary information of CBS, with confidentiality heightened by the comparison made in this paragraph. These CBS media agreements and their terms have been designated House – NSC Information or *Alston* NSC Information and have not been made public. Public disclosure of this information would inflict competitive harm on CBS. |

**Plaintiffs' Opposition to Defendants' Motion to Exclude the Opinions, Reports, and Testimony of Edwin Desser and Dr. Daniel Rascher [Dkt. 291]**

| Location | Compelling Reasons for Sealing |
| --- | --- |
| 14:17-19 | The redacted parenthetical in this paragraph citing to Ex. 69 to the Berman Declaration describes terms in CBS' media agreements with C-USA related to the allocation of rights fees, including in reference to specific games. This agreement and these specific terms are highly confidential and proprietary information of CBS, were designated *Alston* NSC Information, and would inflict competitive harm on CBS if disclosed publicly. |

10.    The CBS Agreements relate to the distribution rights for broadcasts of games related to the NCAA, certain NCAA championships, the SEC, Big Ten, and C-USA. CBS has sought to protect a limited set of documents by designating them as *Alston* NSC Information or House – NSC Information, all of which contain highly sensitive proprietary information, including license fees, renewal rights, termination dates, rights restrictions, distribution obligations and other consideration, that has never been made public, and which would highly

DECL. OF DANIEL WEINBERG                                        CASE NO. 4:20-CV-03919

prejudice CBS if disclosed, by hindering its ability to negotiate both licensing agreements to broadcast content and corporate partner agreements related to marketing and media rights in the future.

11.    College athletic conferences compete vigorously against one another to negotiate favorable terms with CBS, which itself attempts to negotiate the most favorable terms it can with certain college athletic conferences, and takes steps to ensure that the CBS Agreements and the highly confidential information contained therein are not disclosed outside of a group of persons within CBS who have a business reason to know their contents. Due to this inherently individualized and competitive negotiation process, the contracts CBS enters into with different Defendants and non-party conferences vary, as do the negotiation processes themselves. If Plaintiffs or Defendants filing documents in this case are forced to disclose by way of public filing the CBS Agreements, CBS' ability to negotiate would be damaged by the exposure of what CBS has agreed to in the past.

12.    For example, certain provisions in the CBS Agreements describe the suite of rights granted as consideration for the agreements, including terms related to the time period and mechanisms for exercising those rights. The negotiated bundle of rights granted under each of the agreements has not been shared publicly or with third parties outside of CBS, aside from required limited disclosures by way of the production of certain redacted CBS Agreements in this action and in *Alston*. These terms were heavily-negotiated and if disclosed in a public court filing, would give entities with which CBS negotiates for distribution of content an advantage because they could extract terms at least as favorable as the terms in these provisions of the CBS Agreements, hindering CBS' ability to negotiate bundles of rights in its future licensing agreements.

13.    Likewise, the payment structures and other provisions governing consideration described in the CBS Agreements are highly confidential. If CBS' potential business partners have access to the payment structures and other provisions governing consideration though a

public court filing, they can use that information as leverage to extract terms less favorable to CBS than CBS otherwise would have provided.

14.     To address these issues in this action, CBS negotiated with the Parties to obtain the terms of the First Supplemental Stipulation, which provided for the House – NSC Information designation and associated protections, including the requirement that no House – NSC information "shall be filed in the public record without either the written permission of each Network discussed or referenced therein or a court order denying an Administrative Motion to File Under Seal such House NSC Outside Litigation Counsel Only Information," and preserved the Networks' "rights to seek a writ of mandamus from the Ninth Circuit and/or a stay of any order denying an Administrative Motion to File Under Seal." *See* Dkt. 148, ¶¶ 5–9. CBS further negotiated to include in the First Supplemental Stipulation specific redaction procedures governing the redaction of CBS Media Agreement Documents produced in this matter. *See* Dkt. 148, ¶ 18. Finally, the First Supplemental Stipulation provides that, "[c]onsistent with certain Networks' [including CBS'] limited intervention in *Alston*, the parties agree and stipulate that the Networks have the same grounds to intervene in these actions as in *Alston* and shall be deemed to have intervened in these actions… for the limited purpose of enforcing their rights, as set forth in the Protective Order and this First Supplemental Stipulation." Dkt. 148, ¶ 19.

15.     This Court has already recognized the confidentiality of the CBS Agreements in prior litigations. In the *In re National Collegiate Athletic Association Grant-In-Aid Cap Antitrust Litigation* ("**Alston**"), this Court granted stipulations recognizing the confidentiality of the CBS Agreements and outlining processes for the production and redaction of these Agreements.  4:14-md-02541-CW (Dkt. 503) (Entered NCAA Stipulation); 4:14-md-02541-CW (Dkt. 392) (Entered SEC Stipulation); 4:14-md-02541-CW (Dkt. 499) (Entered Big Ten Stipulation).

16.     Further, this Court ordered the sealing of various CBS Agreements and information derived from such agreements in *Alston*, including many of the CBS Agreements

where sealing was supported by declarations filed by CBS pursuant to Local Rule 79-5(e)(1). Specifically, for example, on March 30, 2018, the *Alston* Court ruled on the administrative motions for leave to file under seal in connection with Defendants' and Plaintiffs' motions for summary judgment. *See* Order Granting in Part and Denying in Part Motions to Seal, No. 4:14-md-02541-CW, Dkt. 805 (ruling on Dkt. Nos. 654, 655, 702, 713, and 749). This Order provided that where the Designating Party filed a declaration in support of sealing its confidential information and/or documents demonstrating compelling reasons for sealing, as CBS did, the Court granted the associated motion to seal, except to the extent the existence of a contract, the name of the contract, or the parties to the contract were disclosed publicly (ruling that the information publicly disclosed would not be kept sealed). This Order applied to two administrative motions to seal for which CBS filed supporting declarations pursuant to Local Rule 79-5(e)(1), and granted sealing of *Alston* NSC Information for which CBS sought sealing. *See* 4:14-md-02541, Dkt. 655, 713; 4:14-cv-02758-CW, Dkt. 299, 332.

17.    On August 10, 2018, the *Alston* Court recognized the confidentiality of financial terms in CBS' Agreements in orders on pre-trial motions to seal, 4:14-md-02541-CW (Dkts. 959, 960, 963) (Orders on Defendants' Administrative Motions to Seal), and on October 24, 2018, the Court again recognized the confidentiality of the CBS Agreements' terms in post-trial sealing orders. 4:14-md-02541-CW (Dkt. 1101) (Order on SEC's Administrative Motion to Seal); 4:14-md-02541-CW (Dkt. 1110) (Order on C-USA's Administrative Motion to Seal); 4:14-md-02541-CW (Dkt. 1112) (Order on CBS' Administrative Motion to Seal). In this Court's order on CBS' Administrative Motion to Seal (Dkt. 1112), the Court granted sealing of individualized annual rights payments in all exhibits at issue, aggregate rights fees that had not been made public, and certain other financial terms of CBS Agreements. *See* 4:14-md-02541-CW, Dkt. 1112. On appeal in *Alston*, the Ninth Circuit further recognized the confidentiality of CBS and other broadcasters' media agreements in its order granting the broadcasters' motion to intervene for the purpose of keeping *Alston* NSC Information under seal on appeal, and further

granted sealing of all confidential information referenced in the appellate record, which had previously been ordered sealed by this Court. No. 91-15566 (9th Cir.), Dkt. 65 (Order Maintaining Sealing of Broadcasters' Confidential Information).

18.   This Court also recognized the confidentiality of the CBS Agreements in *O'Bannon v. NCAA et al.*, No. 4:09-cv-3329-CW (Dkt. 201) (granting in part and denying in part C-USA and Big 12's Administrative Motion to File Under Seal Confidential Trial Exhibits and allowing certain portions of CBS Agreements to remain confidential during trial). The declaration CBS filed in in support of the NCAA's Administrative Motion to File Under Seal Confidential Trial Exhibits in *O'Bannon* further supports the filing of the CBS Agreements under seal here. No. 4:09-cv-3329-CW (Dkt. 200-9). After CBS' filing of that declaration, the court in *O'Bannon* entered a stipulation and order recognizing CBS' declaration, ordering that certain portions of the NCAA and CBS/Turner Multi-Media Agreement (*O'Bannon* Trial Exhibit 400) remain redacted throughout the trial, and ordering that to the extent the Multi-Media Agreement was filed with any pleading or motion in the case, it must be filed under seal. No. 4:09-cv-3329-CW (Dkt. Nos. 209, 223).

19.   Based on the foregoing, we respectfully request that the Court protect the confidentiality of the CBS Agreements and information therein and order that the Class Certification Filings be sealed to the extent they excerpt, include, or describe information derived directly from the CBS Agreements, as described in the table under paragraph 9 above.

DECL. OF DANIEL WEINBERG                                    CASE NO. 4:20-CV-03919

1

2

3

4      I declare under penalty of perjury under the laws of the United States that the foregoing

5  facts are true and correct.

6

7      Executed on September 27, 2023, in New York, New York.

8

9

10                                                    DANIEL WEINBERG
                                                      EVP Programming
11                                                    CBS Sports

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          21