James A. Lamberth (Ga. Bar No. 431851)
James.Lamberth@troutman.com
T. Scott Mills (Cal. Bar No. 313554)
Scott.Mills@troutman.com
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
Telephone:     404.885.3000
Facsimile:     404.885.3900

Attorneys for Non-Party Network Intervenor,
Turner Broadcasting System, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**DECLARATION OF KEVIN GLIDEWELL IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL PORTIONS OF CERTAIN EXHIBITS DISCLOSING TURNER BROADCASTING SYSTEM, INC.'S CONFIDENTIAL INFORMATION**<br><br>Trial Date: 2025-01-27<br>Judge: Hon. Claudia Wilken |

I, Kevin Glidewell, declare and state as follows:

1. I am the Senior Vice President, Sports Legal Warner Bros. Discovery. I am over 18 years of age and competent to give this declaration. The following facts are based on my personal knowledge.

2. I understand that in connection with the Parties' class certification briefs and related documents, Plaintiffs and Defendants introduced certain exhibits that provide or summarize certain terms of highly confidential and competitively sensitive media agreements between Turner Broadcasting System, Inc., CBS Broadcasting, Inc. ("CBS"), and the NCAA. In particular, the exhibits at issue reveal terms from two agreements, the March 14, 2016 Multi-Media Agreement (NCAAHOUSE00249333) and the Amended & Restated Multi-Media Agreement (NCAAGIA03941962) (the "Multi-Media Agreements").

3. As explained below, two exhibits filed in connection with Plaintiffs' motion for class certification include information regarding the terms of the Multi-Media Agreements, including the dollar figures of license fees on a year-by-year basis for the Multi-Media Agreements, which are highly confidential, competitively sensitive information of Turner Broadcasting System, Inc. and its affiliates (collectively, "TBS, Inc."). The year-by-year license fees for the Multi-Media Agreements have never been publicly disclosed. As a non-party Network intervenor in this litigation (ECF No. 148, ¶ 19), TBS, Inc. is requesting that this information concerning the financial terms of the Multi-Media Agreements be maintained under seal. For the reasons stated below, there are compelling reasons and no less restrictive means to protect this highly confidential information from public disclosure.

4. Both of the Multi-Media Agreements (*i.e.*, NCAAGIA03941962 & NCAAHOUSE00249333) have been designated "Network Strictly Confidential – Outside Litigation Counsel Only" ("Network Strictly Confidential Information") pursuant to the protective orders in *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litigation*, Case Nos. 4:14-md-2541-CW, 4:14-CV-2758-cw) ("*Alston*") which were adopted in this case (ECF No. 137) and/or this Court's Order Supplementing and Amending Protective Order Regarding Conference and Network Strictly Confidential Documents (ECF No. 148) (collectively, the "Protective

Orders"). Pursuant to the terms of the Protective Orders, only select individuals may access Network Strictly Confidential Information to the extent necessary to litigate these actions, including Defendants' outside litigation counsel of record, Plaintiffs' outside counsel of record, consultants or expert witnesses, the Court, and providers of litigation support services.

5. Pursuant to the Stipulation and Order As Modified Modifying Sealing Procedures Relating to Class Certification Briefing and Related Documents (ECF No. 207), I, on behalf of TBS, Inc., as a Designating Party, submit this declaration in support of the Joint Administrative Omnibus Motion to Seal (ECF No. 318) (the "Omnibus Sealing Motion") as it relates to TBS, Inc.'s confidential information.

6. On September 15, 2023, the Parties filed the Omnibus Sealing Motion disclosing that the expert report of Daniel A. Rascher (ECF No. 209-2) (the "Rascher Report") and the expert report of Bob Thompson (ECF No. 251-2) (the "Thompson Report") contained the following information from the Multi-Media Agreements:

a. <u>Rascher Report pg. 90 and 90-91, fn. 208 [ECF No. 318-1 Entry Nos. 177, 178, 179]</u> – Exhibit 9 on page 90 (Entry No. 177) and the supporting citations in footnote 208 (Entry Nos. 178-179) of the Rascher Report includes the dollar figures of license fees on a year-by-year basis for the Multi-Media Agreements.

b. <u>Thompson Report pgs. 9-10, 14, and 15, fn. 48 [ECF No. 318-1 Entry Nos. 554, 577, and 584]</u> – the Thompson Report describes the nature of the Multi-Media Agreements (pgs. 9-10; Entry No. 554), as well as specific terms of the Agreements, including corporate sponsorships (pg. 14; Entry No. 577) and a composite logo for the March Madness tournament (pg. 15, fn. 48; Entry No. 584).

7. As a non-party, TBS, Inc. is requesting that the year-by-year license fees disclosed in the Rascher Report remain under seal in this litigation. For the reasons stated below, there are compelling reasons to protect this highly confidential information from public disclosure.

8. TBS, Inc., among other things, is in the business of managing and distributing content on multiple video programming services and platforms. TBS, Inc. frequently negotiates rights agreements with third party content providers in the sports, entertainment, and news

industries, which provide TBS, Inc. and its subsidiaries and affiliates with rights to manage and distribute such content on various video programming services and platforms.  TBS, Inc. also frequently negotiates sponsorship agreements that provide corporate sponsors with certain marketing rights.

9. The Multi-Media Agreements relate to the distribution rights for telecast of games of the NCAA Division I Men's Basketball Championship.  The financial terms of the Multi-Media Agreements are highly confidential and competitively sensitive to TBS, Inc.  TBS, Inc. takes steps to ensure that the Multi-Media Agreements are not disclosed outside of a group of persons within TBS, Inc. who have a business reason to know its contents.

10. There are a number of entities with which TBS, Inc. vigorously competes in its effort to obtain rights to manage and distribute content on its multiple video programming services and platforms.  Many of the terms of the rights agreements that TBS, Inc. enters into with content providers, including terms relating to license fees and other financial considerations, are heavily negotiated.  Communications and negotiations concerning the rights agreements include highly confidential information related to the proposed, revised, and ultimately agreed-upon terms of the agreements.  Public disclosure of the financial terms of the Multi-Media Agreements would harm TBS, Inc., among other things, in its efforts to obtain rights to manage and distribute content on its video programming services and other platforms.

11. In particular, if the heavily-negotiated, year-by-year monetary terms of the Multi-Media Agreements are publicly disclosed, the terms to which TBS, Inc. agreed will be available to both those entities with which TBS, Inc. negotiates for distribution rights and those entities with which TBS, Inc. competes to obtain distribution rights.  Knowledge of those terms could then be used strategically to TBS, Inc.'s detriment by a content provider in its negotiations with TBS, Inc. or by a competitor in its efforts to obtain the same distribution rights for which TBS, Inc. is negotiating.  If these terms are publicly disclosed, TBS, Inc. will be placed at a competitive disadvantage in its efforts to negotiate future rights agreements and therefore harmed.

12. In the *Alston* litigation, this Court previously ruled that these non-public financial figures in the Multi-Media Agreements should remain under seal.  Specifically, in its October 24,

2018, Order Granting Non-Party Turner Broadcasting System, Inc.'s Administrative Motion to Retain Under Seal Portions of Certain Trial Exhibits and Testimony Disclosing Certain Financial Terms of Its Media Agreements, the Court granted TBS, Inc.'s motion to keep the yearly value of license fees for the Multi-Media Agreements under seal. (*In Re: National Collegiate Athletic Association Athletic Grant-In-Aid Cap Antitrust Litig.*, Case No. 4:14-md-02541, ECF No. 1113.)

13. Based on the foregoing, TBS, Inc. respectfully requests that the Court protect the confidentiality of the monetary terms of the Multi-Media Agreements and order that the portions of the Rascher Report referencing TBS, Inc.'s highly confidential information (*i.e.*, Rascher Report pgs. 90 and 90-91, fn. 208; ECF No. 318-1 Entry Nos. 177, 178, 179) be filed under seal.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct.

Executed on September 29, 2023, in Atlanta, Georgia.

_____
Kevin Glidewell