LATHAM & WATKINS LLP
 Christopher S. Yates (SBN 161273)
 Aaron T. Chiu (SBN 287788)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600
Facsimile: 415.395.8095
Email: Chris.Yates@lw.com
  Aaron.Chiu@lw.com

LATHAM & WATKINS LLP
 Anna M. Rathbun (SBN 273787)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: 202.637.1061
Facsimile: 202.637.2201
Email: Anna.Rathbun@lw.com

*Attorneys for Defendant*
*Atlantic Coast Conference*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**DECLARATION OF BEN TARIO IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL** |
|---|---|

I, Ben Tario, declare as follows:

1. I am the Deputy Commissioner/Chief Financial Officer, Business and Administration of the Atlantic Coast Conference (the "ACC" or the "Conference"). I make this Declaration based on my personal knowledge and investigation, and if called as a witness to testify, I could and would testify competently to the following facts.

2. I have been employed with the ACC in various capacities since July 2007. During my tenure with the Conference, I served a number of roles, including football operations, multimedia, and technology. I currently serve as the Conference's Deputy Commissioner/Chief Financial Officer, Business and Administration.

3. In my capacity as Deputy Commissioner/Chief Financial Officer, Business and Administration, I lead all financial and business activities for the conference and serve as liaison to the Conference's media rights partners and conference members. In my role, I have participated in discussions with ACC media consultants and networks concerning licensing of distribution rights in connection with the ACC's media agreements. I have been involved in the Conference's negotiations with networks and have detailed knowledge regarding the terms of the Conference's broadcast media agreements with its media rights partners.

4. I am also familiar with the ACC's financial statements and reporting, including information regarding the Conference's budgeting and revenue forecasting, financial distributions, investments, and financial settlements.

5. This Declaration is being made in support of the Joint Administrative Omnibus Motion to Seal (ECF No. 318) ("Motion"), filed on September 15, 2023 (the "Motion"), and as contemplated by the Stipulation and Order as Modified Modifying Sealing Procedures Relating to Class Certification Briefing and Related Documents (ECF No. 207).

6. The ACC moves to maintain the confidentiality of certain portions of the documents provisionally filed under seal by the Parties in their class certification and related briefing that reflect the ACC's highly sensitive, non-public, current financial information.

7. Attached hereto as Exhibit A is a document prepared by the ACC that identifies the entries in Exhibit 1 to the Parties' Joint Administrative Omnibus Motion to Seal (ECF No.318-1)

1  which contain or reference materials the ACC produced in this litigation or in *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litigation* (Case Nos. 4:14-md-2541-CW, 4:14-cv-2758-CW) with one of the confidentiality designations identified in the stipulations and protective orders in this case (*see* ECF Nos. 136–37, 147–48, 180–81).

8.  The ACC requests that certain portions of the parties' briefing be maintained under seal, as identified in Exhibit A.  Pursuant to Civil L.R. 79-5(c)(1), the ACC has provided a basis for sealing each of the entries in Exhibit A that contains highly sensitive and confidential information, the public disclosure of which would harm the ACC and/or its member institutions.

9.  The ACC has also identified in Exhibit A those entries in the Parties' class certification and related briefing that the ACC does not move to maintain as confidential.  These documents, filed provisionally under seal by the Parties, do not contain any information that the ACC seeks to maintain under seal, and may be filed in the public record.

10.  I understand that a party may seek to avoid disclosure of confidential, proprietary, or otherwise protected documents by moving to file those documents under seal. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  I understand that a party seeking to file a document under seal must "establish that a document, or portions thereof, are sealable."  Civil L.R. 79-5(b).  In connection with a dispositive motion, I understand that a designating party must demonstrate that "compelling reasons" exist to protect the information from being disclosed.  *Kamakana*, 447 F. 3d at 1178-79 (9th Cir. 2006).  I understand that redactions, instead of complete removal, can be used to place "limited and clear" portions of information outside the public record.  *Id.* at 1183.

11.  I understand that a "compelling reason" to seal exists when not sealing the material would result in the release of trade secrets, *Kamakana*, 447 F.3d at 1179, or of "business information that might harm a litigant's competitive standing," *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016), *cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety*, 137 S. Ct. 38 (2016) (*quoting Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)).  I also understand that courts in this District have found that "compelling reasons" exist to seal confidential business information in the form of "license agreements, financial terms,

details of confidential licensing negotiations, and business strategies." *Guzman v. Chipotle Mexican Grill, Inc.*, No. 17-cv-02606-HSG, 2020 WL 1171112, *1 (N.D. Cal. Mar. 11, 2020) (citation and quotations omitted), as well as documents that reveal a company's "sales growth and decline," such as financial data, *Murphy v. Kavo Am. Corp.*, No. 4:11-CV-0410-YGR, 2012 WL 1497489, *2 (N.D. Cal. Apr. 27, 2012).

12. Many of the entries in Exhibit A that the ACC seeks to maintain under seal reflect or recite negotiated terms contained in the ACC's media rights agreements with networks like ESPN. The terms contained in the ACC's media rights agreements are highly confidential and proprietary, and are the result of extensive negotiation between the ACC and its contract counterparties. Those terms include, among other things, provisions concerning the rights fees to be paid (including the terms and timing of such payments), the rights to be licensed, ownership of copyrights to broadcasts, media and mediums in which broadcasts can be effected, and distribution of the broadcasts, all of which are highly negotiated.

13. If those terms were disclosed to the public, the ACC would be at a competitive disadvantage when negotiating future media rights deals with its current counterparties or other potential counterparties, because those counterparties could use the confidential contract terms against the ACC in contract negotiations. This would undermine the ACC's bargaining position, effectively setting a ceiling for key terms like the rights fees the ACC could obtain.

14. Disclosure would similarly undermine any efforts by the ACC to modify its existing contracts. If the ACC's current or future counterparties feared public disclosure of their confidential agreements with the ACC or of the terms included therein, it would further undermine the ACC's future negotiations as its counterparties often require that provisions remain confidential to prevent other conferences (or other similarly situated entities) from requesting the same contractual terms. In addition, the confidential information could give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC.

15. I also understand that many of the entries in Exhibit A pertain to portions of the Parties' briefing that cite to or rely on the NCAA's Membership Financial Reporting System ("MFRS") data. MFRS data includes, among other things, detailed reporting on the ACC's

member institutions' revenues, expenses, and capital relating to the intercollegiate athletics program. That information is not available to the public, other conferences, or NCAA member institutions at a conference- or school-specific level.

16. Disclosure of MFRS data reported by the ACC's member institutions would provide competitor institutions and/or conferences access to the ACC's and/or its member institutions' highly-sensitive financial information, causing irreparable harm to the ACC and its member institutions. If revealed, that information might put the ACC and/or its member institutions at a competitive disadvantage, for example by giving competitors valuable insight into the manner in which ACC member institutions distribute revenue among athletic programs and the value of those distributions.

17. I understand that, as the party that produced the MFRS data relied on in this litigation, the NCAA is providing justifications for sealing those entries relating to MFRS data in its own declaration in support of the Parties' omnibus sealing motion. For that reason, neither the ACC nor its member institutions have provided separate justifications for sealing the following entries: 355; 379–385; 399; 444-45; 536–37, 539; 712; 716. The ACC nonetheless believes that it and its member interests have a compelling interest in maintaining those entries under seal.

18. The limited redactions proposed by the ACC in Exhibit A are narrowly tailored, and seek to seal only highly sensitive and confidential information, the public disclosure of which would harm the ACC, its member institutions, and other parties in this litigation. Where possible, the ACC has endeavored to redact only portions of sentences or documents to ensure that the public's general right to inspect and copy public records and documents is not inhibited. The ACC believes that there is no less restrictive alternative to sealing the limited redactions it proposes that would be sufficient to protect its highly sensitive and confidential information.

**ACC MEMBER SCHOOL DECLARATIONS**

19. Many of the ACC's member institutions produced data and documents in this litigation in response to Plaintiffs' third-party subpoenas. The Parties cited materials produced by ACC member schools in their class certification and related briefing that reflects the confidential financial information of the institutions or reveals personal student-athlete information.

1  Accordingly, several of the ACC's member institutions prepared declarations in support of the
2  Parties' Joint Administrative Omnibus Motion to Seal.  As a matter of convenience to the schools,
3  the ACC is filing these signed declarations on behalf of its member institutions as attachments to
4  this declaration.  Counsel for the ACC, however, does not act as legal counsel to these institutions
5  in this litigation.  The ACC has attached hereto the following declarations:

- A true and correct copy of the Declaration of Carolyn A. Egan of Florida State University is attached hereto as Exhibit B.
- A true and correct copy of the Declaration of Marianne Corr of University of Notre Dame is attached hereto as Exhibit C.
- A true and correct copy of the Declaration of Todd Mesibov of Duke University is attached hereto as Exhibit D.
- A true and correct copy of the Declaration of Barry T. Meek is attached hereto as Exhibit E.

20.  I attest that I have permission to file the aforementioned declarations on behalf of the respective institutions.

21.  I also understand that several ACC member institutions have determined not to file a declaration in support of sealing their materials cited in the Parties' class certification and related briefing.  I understand that those institutions, listed below, have received notice from counsel for the ACC that their confidential information has been cited in the Parties' briefing, but do not intend to file declarations in support of keeping those materials under seal.  Those institutions include:

- Clemson University
- Georgia Tech University
- North Carolina State University
- Syracuse University
- University of Louisville
- University of Miami
- University of North Carolina
- University of Pittsburgh

- Virginia Polytechnic Institute and State University
- Wake Forest University

22. For the foregoing reasons, the ACC respectfully submits that compelling reasons exist to seal the information as identified above and in the Proposed Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2023, in Charlotte, North Carolina.

*Ben Tario*
**Ben Tario**
The Atlantic Coast Conference