# EXHIBIT A

*In Re College Athlete NIL Litigation*
Case No. 4:20-cv-03919-CW

**EXHIBIT A**

## A.  PLAINTIFFS' CLASS CERTIFICATION MOTION [ECF NO. 208]

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 8 | p. 8:17-20 | NSC | The text at p. 8:17-20 reflects the terms of the ACC's media rights agreements.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

## B.  EXPERT REPORT OF DANIEL A. RASCHER [ECF NO. 209-2]

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 150 | p. 76 ¶ 156 | NSC | The ACC does not request that the citation at p. 76 ¶ 156 remain under seal.  The text is a generalized statement regarding the broadcast rights agreements of the A5 Conferences and does not reveal any of the ACC's confidential information. |
| 151 | p. 77 ¶ 156 | NSC | The ACC does not request that the citation at p. 77 ¶ 156 remain under seal.  The text is a generalized statement regarding the broadcast rights agreements of the A5 Conferences and does not reveal any of the ACC's confidential information. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 152 | p. 77 n. 174 | NSC | The ACC does not request that the citation at p. 77 n. 174 remain under seal.  The text is a generalized statement regarding the broadcast rights agreements of the A5 Conferences and does not reveal any of the ACC's confidential information. |
| 153 | p. 77 n. 175 | NSC | Footnote 175 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0130449).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 164 | p. 84 n. 195 | NSC | Footnote 195 reflects the terms of two of the ACC's media rights agreement with ESPN (ACC-HOUSE0227974; ACC-HOUSE0227822).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 177 | p. 90 Ex. 9 | NSC | Exhibit 9 reflects the terms, in particular the rights fees, from the ACC's media rights agreements with ESPN (ACC-GIA130773, ACC-GIA130898, ACCGIA131046, ACC-GIA131115, ACC-GIA131127, ACC-GIA131142).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 178 | p. 90 n. 208 | NSC | On page 90, footnote 28 cites to the ACC's media rights agreements with ESPN (ACC-GIA130773, ACC-GIA130898, ACCGIA131046, ACC-GIA131115, ACC-GIA131127, ACC-GIA131142). The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 179 | p. 91 n. 208 | NSC | On page 91, footnote 28 cites to a couple of the ACC's media rights agreements for football playoffs (ACC-GIA130393, ACC-GIA130621).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 181 | p. 92 Ex. 10 | NSC | Exhibit 10 reflects the terms, in particular the rights fees, from the ACC's media rights agreements. The values reflected in Exhibit 10 rely on Desser's multisport allocation factor, and could be used with that allocation factor to determine the value of the ACC's media rights agreements.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 182 | p. 93 Ex. 11 | NSC | Exhibit 11 can be used in conjunction with the  broadcast damages per class member reflected in Exhibit 12 to calculate the values of the rights fees in the ACC's and other conferences' media rights agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 183 | p. 94 Ex. 12 | NSC | Exhibit 12 reflects the value of the rights fees from the ACC's media rights agreements relative to other conferences.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 193 | Appx Ex. C.4 | NSC | Appendix Exhibit C.4 reflects the terms, in particular the rights fees, from the ACC's media rights agreements as well as the distributions it receives from the NCAA.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

**C.  EXPERT REPORT OF EDWIN S. DESSER [ECF NO. 209-3]**

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 205 | p. 23 Sec. 6.4 | NSC | The redactions in Section 6.4 reflect the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0130449).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 207 | p. 23 n. 22 | NSC | Footnote 22 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0130449).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 209 | p. 23 n. 24 | NSC | Footnote 24 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0130449).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 212 | p. 24 Sec. 6.5 | NSC | Section 6.5 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228382).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | p. 24 n. 28 | | The ACC does not request that the citation at p. 24 n. 28 remain under seal.  The text cites to the bates number of the agreement between the ACC and ESPN referenced in Section 6.5, and does not reveal any of the ACC's confidential information. |
| 215 | p. 25 Sec. 6.7 | NSC | The ACC does not request that the redacted text at page 25 section 6.7 remain under seal.  The text does not reveal any of the ACC's confidential information. |
| 216 | p. 25 n. 30 | NSC | Footnote 30 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0130449).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 217 | p. 25 n. 31 | NSC | Footnote 31 reflects the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0130449) by referencing it in line with other conference agreements.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 218 | p. 26 Sec. 6.7 | NSC | The proposed redaction on page 26, section 6.7 reflects the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0227822).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 220 | p. 26 n. 33 | NSC | Footnote 33 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0227822).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 221 | p. 27 Sec. 6.7 | NSC | The proposed redaction on page 27, section 6.7 reflects the terms of the ACC's media rights agreements.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 228 | p. 32 n. 39 | NSC | Footnote 39 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0227974).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 232 | p. 47 Sec. 10.2 | NSC | The proposed redaction at page 47, section 10.2 recites the terms, specifically the rights fees, from the ACC's media rights agreement with ESPN (ACC-HOUSE0228078).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 235 | p. 47 n. 51 | NSC | The ACC does not request that the citation at footnote 51 remain under seal.  The text cites to the bates number of the agreement between the ACC and ESPN referenced in Section 10.2, and does not contain any confidential or proprietary information. |

**D.  DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [ECF NO. 249]**

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 258 | p. 7:13 | NSC | The table reciting Dr. Rascher's  per-student-athlete BNIL payments for the 2021 academic year could be used to identify the rights fees the ACC receives from its media rights agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 259 | p. 10:19 | Confidential | North Carolina State University has not requested that the citation at p. 10:19 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 265, 266 | p. 14:27-15:1 | NSC | The proposed redactions at p. 14:27-15:1 cite to confidential portions of the Declaration of Ben Tario at ¶ 31.  Those portions of Ben Tario's declaration reflect the terms of the ACC's media rights agreements with ESPN.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 278 | p. 26:22 | NSC | The proposed redaction at 26:22, if unredacted, would reveal confidential information regarding the per-student-athlete BNIL payments calculated by Dr. Rascher.  Dr. Rascher's calculations rely on and reflect the rights fees the Defendant conferences, including the ACC, receive in their media rights agreements, which are highly confidential and proprietary. The ACC's media rights agreements are the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 282, 283 | p. 36:22-23 | NSC | The proposed redactions at 36:22-23, if unredacted, would reveal confidential information regarding the per-student-athlete BNIL payments calculated by Dr. Rascher.  Dr. Rascher's calculations rely on and reflect the rights fees the Defendant conferences, including the ACC, receive in their media rights agreements, which are highly confidential and proprietary.  The ACC's media rights agreements are the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

**E.  DECLARATION OF BEN TARIO [ECF NO. 249-6]**

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 299 | p. 11 ¶ 29a | NSC | The proposed redactions in the Declaration of Ben Tario at ¶ 29a reflect the terms of the ACC's media rights agreements with ESPN.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 300 | p. 11 ¶ 29b | NSC | The proposed redactions in the Declaration of Ben Tario at ¶ 29b reflect the terms of the ACC's media rights agreements with ESPN.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 301 | p. 12 ¶ 31 | NSC | The proposed redactions in the Declaration of Ben Tario at ¶ 31 reflect the course of dealing between the ESPN and ACC with respect to the media rights agreements the two entities have executed.  The provisions the ACC negotiates in its media rights agreements are highly confidential and proprietary.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 302 | p. 13 ¶ 35 | NSC | The proposed redactions in the Declaration of Ben Tario at ¶ 35 reflect the course of dealing between the ESPN and ACC with respect to the media rights agreements the two entities have executed.  The provisions the ACC negotiates in its media rights agreements are highly confidential and proprietary.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 303 | p. 14 ¶ 35 | NSC | The proposed redactions in the Declaration of Ben Tario at ¶ 35 reflect the course of dealing between the ESPN and ACC with respect to the media rights agreements the two entities have executed.  The provisions the ACC negotiates in its media rights agreements are highly confidential and proprietary.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

**F.  DEFENDANTS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF TO EXCLUDE THE OPINIONS, REPORTS, AND TESTIMONY OF EDWIN DESSER AND DANIEL RASCHER [ECF NO. 250] which**

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 311 | p. 16:15-17 | Confidential | North Carolina State University has not requested that the citation at p. 16:15-17 remain under seal. *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 312, 313 | p. 16:23-24 | NSC | The proposed redactions at 16:23-24, if unredacted, would reveal confidential information regarding the per-student-athlete BNIL payments calculated by Dr. Rascher.  Dr. Rascher's calculations rely on and reflect the rights fees the Defendant conferences, including the ACC, receive in their media rights agreements, which are highly confidential and proprietary.  The ACC's media rights agreements are the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

**G. EXPERT REPORT OF CATHERINE TUCKER, PH.D. [ECF NO. 251-1]**

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 332 | p. 16 ¶ 25(e) | NSC | The ACC does not request that the citation at p. 16 ¶ 25(e) remain under seal. The text is a generalized statement regarding the broadcast revenues of certain A5 Conferences that does not reveal any of the ACC's confidential information. |
| 339 | p. 46 ¶ 56 | NSC | The proposed redaction in the last sentence of p. 46 ¶ 56 references the base compensation from Dr. Rascher's per-student-athlete BNIL calculation. The value relies on and reflects the rights fees received by the A5 Conferences in their media rights agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 341 | p. 47 (Table 2) | NSC | Table 2 includes per-student-athlete BNIL values from Dr. Rascher's report, associated with the various A5 conferences, including the ACC. By associating that value with the ACC, one could calculate the rights fees the ACC receives from its media rights agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 342 | p. 54 ¶ 63 | Confidential | *See* NCAA Declaration. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 343 | p. 55 (Fig. 3) | Confidential | *See* NCAA Declaration. |
| 348, 349 | p. 67 (Table 5); n. 153 | Confidential | The ACC does not request that Table 5 and footnote 153 on page 67 of Catherine Tucker's report remain under seal.  Table 5 aggregates student-athlete NIL data and provides generalized statements regarding the number of reported third-party NIL deals.  Neither the table nor footnote 153 reveal the ACC's confidential information. |
| 351 | p. 68 ¶ 76 | Confidential | The ACC does not request that the text at p. 68 ¶ 76 remain under seal.  The text references aggregated student-athlete NIL data and provides generalized statements regarding the relative value of reported third-party NIL deals.  The text does not reveal any of the ACC's confidential information. |
| 352, 353 | p. 68 (Table 6); n. 154 | Confidential | The ACC does not request that Table 6 and footnote 154 on page 68 of Catherine Tucker's report remain under seal.  Table 6 aggregates student-athlete NIL data and provides generalized statements regarding the relative value of reported third-party NIL deals.  Neither the table nor footnote 154 reveal the ACC's confidential information. |
| 353 | p. 68 n.154 | Confidential | The ACC does not request that the text at footnote 154 remain under seal.  The text does not reveal any of the ACC's confidential information. |

**EXHIBIT A** Declaration of Ben Tario ISO
Omnibus Motion to Seal
CASE NO. 4:20-CV-03919-CW

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 355 | p. 71 (Table 7) | Counsel only | *See* NCAA Declaration. |
| 356 | p. 72 Note 1 | Counsel only | The ACC does not request that note 1 on page 72 of Catherine Tucker's report remain under seal. Note 1 does not reveal any of the ACC's confidential information. |
| 360, 361, 362 | p. 102 (Table 8); Note 1; Note 2 | NSC | Table 8 and notes 1 and 2 on page 102 identify a broadcast-related payment per school for the ACC and other conferences using data from Dr. Rascher's report.  The value in the table relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 363 | p. 106 ¶ 118 | Confidential | Virginia Polytechnic Institute and State University has not requested that the citation at p. 106 ¶ 118 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 364 | p. 106 (Fig. 5) | Confidential | Virginia Polytechnic Institute and State University has not requested that the citation at p. 106 (Fig. 5) remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 365 | p. 106 n.268 | Confidential | Virginia Polytechnic Institute and State University has not requested that the citation at p. 106 n.268 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 366 | p. 107 Notes | Confidential | Virginia Polytechnic Institute and State University has not requested that the citation at p. 107 Notes remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 367 | p. 107 ¶ 119 | Confidential | The reference to ACC at p. 107 ¶ 119 should be redacted, as ¶ 119  reveals competitively-sensitive information from ACC member schools that is attributable to the ACC.  The ACC and its member schools would be harmed if non-public information regarding the details and specific manner in which ACC schools award financial aid were made public.  That information, if revealed to other NCAA institutions and conferences, could affect the ACC's and its member schools' ability to compete in the recruitment of student-athletes. |
| 368 | p. 108 (Fig. 6) | Confidential | Neither the University of Louisville nor North Carolina State University have requested that the citation at p. 108 (Fig. 6) remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 369 | p. 108 Notes | Confidential | Neither the University of Louisville nor North Carolina State University have requested that the citation at p. 108 Notes remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |

EXHIBIT A Declaration of Ben Tario ISO
Omnibus Motion to Seal
CASE NO. 4:20-CV-03919-CW

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 370 | p. 108 n.269 | Confidential | Neither the University of Louisville nor North Carolina State University have requested that the citation at p. 108 n.269 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 371 | p. 115 (Fig. 7) | Confidential | The University of Virginia has requested that the citation at p. 115 (Fig. 7) remain under seal.  *See* Ex. E, Declaration of Barry T. Meek.  Georgia Tech University, Virginia Polytechnic Institute and State University, the University of Miami, and North Carolina State University have not requested that the citation at p. 115 (Fig. 7) remain under seal.  *See* Tario Decl. ¶ 18. |
| 373 | p. 116 (Fig. 8) | Confidential | The University of Virginia has requested that the citation at p. 116 (Fig. 8) remain under seal.  *See* Ex. E, Declaration of Barry T. Meek.  Georgia Tech University, Virginia Polytechnic Institute and State University, the University of Miami, and North Carolina State University have not requested that the citation at p. 116 (Fig. 8) remain under seal.  *See* Tario Decl. ¶ 18. |
| 374 | p. 117 ¶ 129 | Confidential | Georgia Tech University, Virginia Polytechnic Institute and State University, the University of Miami, and North Carolina State University have not requested that the citation at p. 117 ¶ 129 remain under seal.  *See* Tario Decl. ¶ 18. |
| 376 | p. 117 ¶ 130 | Confidential | The University of Virginia has requested that the citation at p. 117 ¶ 130 remain under seal.  *See* Ex. E, Declaration of Barry T. Meek.  Georgia Tech University, the University of Miami, and North Carolina State University have not requested that the citation at p. 117 ¶ 130 remain under seal.  *See* Tario Decl. ¶ 18. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 378 | p. 118 (Fig. 9) | Confidential | The University of Virginia has requested that the citation at p. 118 (Fig. 9) remain under seal.  *See* Ex. E, Declaration of Barry T. Meek.  Georgia Tech University, Virginia Polytechnic Institute and State University, the University of Miami, and North Carolina State University have not requested that the citation at p. 118 (Fig. 9) remain under seal.  *See* Tario Decl. ¶ 18. |
| 379 | p. 120 ¶ 134 | Confidential | *See* NCAA Declaration. |
| 380 | p. 120 (Fig. 10) | Confidential | *See* NCAA Declaration. |
| 382 | p. 121 ¶ 135 | Confidential | *See* NCAA Declaration. |
| 383 | p. 121 n.303 | Confidential | *See* NCAA Declaration. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 384 | p. 121 n.304 | Confidential | *See* NCAA Declaration. |
| 385 | p. 121 n.305 | Confidential | *See* NCAA Declaration. |
| 386 | p. 127 ¶ 142 | NSC | The proposed redactions at p. 127 ¶ 142 reflect the ACC's broadcast rights fees relative to other conferences, relying on data from Dr. Rascher's report.  The broadcast-related payments Dr. Rascher calculates in his report rely on and reflect the rights fees received by the ACC in its media rights agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 387 | p. 127 n.323 | NSC | The proposed redactions in footnote 323 reflect the ACC's broadcast rights fees relative to other conferences, relying on data from Dr. Rascher's report.  The broadcast-related payments Dr. Rascher calculates in his report rely on and reflect the rights fees received by the ACC in its media rights agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 388 | p. 128 ¶ 143 | NSC | The proposed redactions at p. 127 ¶ 143 reflect the ACC's broadcast revenues relative to other conferences, relying on data from Dr. Rascher's report.  The broadcast-related payments Dr. Rascher calculates in his report rely on and reflect the rights fees received by the ACC in its media rights agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 389 | p. 128 n.325 | NSC | The proposed redactions at footnote 325 refer to the ACC and other conferences, and could be used to identify the parties to the redactions at p. 127 ¶ 143.  Those redactions reflect the ACC's broadcast revenues to other conferences, relying on data from Dr. Rascher's report.  The broadcast-related payments Dr. Rascher calculates in his report rely on and reflect the rights fees received by the ACC in its media rights agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 391 | p. 128 n.327 | NSC | The ACC does not request that the text at footnote 327 remain under seal.  The text does not reveal any of the ACC's confidential information. |
| 395 | p. 136 ¶ 151 | NSC | The proposed redactions at p. 136 ¶ 151 reflect the ACC's broadcast revenues relative to other conferences, relying on data from Dr. Rascher's report.  The broadcast-related payments Dr. Rascher calculates in his report rely on and reflect the rights fees received by the ACC in its media rights agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 397 | p. 138 ¶ 154 | Confidential | The proposed redactions at p. 138 ¶ 154 reflect how ACC member schools allocate shares of broadcast revenues across sports, relying on the MFRS data reported in Table 9 on page 139.  The ACC's total revenue share and contributions across sports is highly confidential.  Disclosure of that information would give the ACC's competitors valuable inside information regarding the ACC's funding priorities, affording them an advantage in competing with the ACC across sports. |
| 399 | p. 139 (Table 9) | Confidential | *See* NCAA Declaration. |
| 409 | p. 151 ¶ 168 (a) | Counsel Only | The ACC does not request that the text at p. 151 ¶ 168 (a) remain under seal.  The text refers to the number of eligible class members who have received a third-party NIL deal based on aggregate student-athlete NIL data reported by schools.  The text does not reveal any of the ACC's confidential information. |
| 410 | p. 152 ¶ 168 (b) | Counsel Only | The ACC does not request that the text at p. 152 ¶ 168 (b) remain under seal.  The text refers to the total dollar value of student-athletes' third party NIL deals based on aggregate student-athlete NIL data reported by schools.  The text does not reveal any of the ACC's confidential information. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 411 | p. 152 n.386 | Counsel Only | The ACC does not request that the text at footnote 386 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 412 | p. 152 n.389 | Counsel Only | The ACC does not request that the text at footnote 389 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 434 | p. 189 ¶ 223 | Counsel Only | Duke University has requested that the citation at p. 189 ¶ 223 remain under seal.  *See* Ex. D, Declaration of Todd Mesibov. |
| 435 | p. 189 n.498 | Counsel Only | Duke University has requested that the citation at p. 189 n. 498 remain under seal.  *See* Ex. D, Declaration of Todd Mesibov. |
| 436 | p. 189 n.499 | Counsel Only | Duke University has requested that the citation at p. 189 n. 499 remain under seal.  *See* Ex. D, Declaration of Todd Mesibov. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 442 | p. 200 ¶ 239 (b) | Counsel Only | The University of Miami has not requested that the citation at p. 200 ¶ 239 (b) remain under seal. *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 443 | p. 200 n.527 | Counsel Only | The University of Miami has not requested that the citation at p. 200 n.527 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 444 | p. 201 (Table 13) | Counsel only | *See* NCAA Declaration. |
| 445 | p. 201 n.530 | Counsel Only | *See* NCAA Declaration. |
| 447 | p. 203 ¶ 244 | Counsel Only | Virginia Polytechnic Institute and State University has not requested that the citation at p. 203 ¶ 244 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 448 | p. 203 ¶ 244 | Counsel Only | The University of Miami has not requested that the citation at p. 203 ¶ 244 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 449 | p. 203 ¶ 244 | Counsel Only | The University of Pittsburgh has not requested that the citation at p. 203 ¶ 244 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 450 | p. 203 n.533 | Counsel Only | Virginia Polytechnic Institute and State University has not requested that the citation at p. 203 n.533 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 451 | p. 203 n.534 | Counsel Only | The University of Miami has not requested that the citation at p. 203 n. 534 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 452 | p. 203 n.536 | Counsel Only | The University of Pittsburgh has not requested that the citation at p. 203 n.536 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 456 | p. 204 ¶ 245 | Counsel Only | The ACC does not request that the text at p. 204 ¶ 245 remain under seal.  The text relies on aggregate student-athlete NIL transaction data, and does not reveal any of the ACC's or its member schools' confidential information. |
| 459 | p. 204 n.541 | Confidential | The University of North Carolina has not requested that the citation at p. 204 n.541 remain under seal.  *See* Tario Decl. ¶ 18.  The ACC also does not request that the citation remain under seal. |
| 463 | p. 209-10 ¶ 250 | Counsel Only | The University of Virginia has requested that the citation at p. 209-10 ¶ 250 remain under seal.  *See* Ex. E, Declaration of Barry T. Meek.  The University of Notre Dame has also requested that the citation at p. 209-10 ¶ 250 remain under seal.  *See* Ex. C, Declaration of Marianne Corr. |
| 464 | p. 210 n.550 | Counsel Only | The University of Notre Dame has requested that the citation at p. 210 n. 550 remain under seal. *See* Ex. C, Declaration of Marianne Corr.  The University of Virginia has not requested that the citation at p. 210 n. 550 remain under seal.  *See* Ex. E, Declaration of Barry T. Meek. |
| 474 | p. 218 ¶ 257 | Counsel Only | The ACC does not request that the text at p. 218 ¶ 257 remain under seal.  The text relies on aggregate student-athlete NIL transaction data, and does not reveal any of the ACC's or its member schools' confidential information. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 477 | p. 218 n.575 | Counsel Only | The ACC does not request that the text at footnote 575 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 483 | p. 219 ¶ 259 | Counsel Only | The ACC does not request that the text at p. 219 ¶ 259 remain under seal.  The text relies on aggregate student-athlete NIL transaction data, and does not reveal any of the ACC's or its member schools' confidential information. |
| 488 | p. 220 (Table 15) | Counsel only | The ACC does not request that Table 15 remain under seal.  The Table relies on aggregate student-athlete NIL transaction data, and does not reveal any of the ACC's or its member schools' confidential information. |
| 492 | p. 220 n.582 | Counsel Only | The ACC does not request that the text at footnote 582 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 508 | p. 226 ¶ 265 | Counsel Only | The ACC does not request that the text at p. 226 ¶ 265 remain under seal.  The text relies on aggregate student-athlete NIL transaction data, and does not reveal any of the ACC's or its member schools' confidential information. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 512 | p. 227 (Table 16) | Counsel only | The ACC does not request that Table 16 remain under seal.  The Table relies on aggregate student-athlete NIL transaction data, and does not reveal any of the ACC's or its member schools' confidential information. |
| 513 | p. 227 n.603 | Counsel Only | The ACC does not request that the text at footnote 603 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 525 | p. 240 n.662 | Confidential | The ACC does not request that the text at footnote 662 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 536 | p. 249-50 ¶ 296 (a) | Counsel Only | *See* NCAA Declaration. |
| 537 | p. 250 ¶ 296 (b) | Counsel Only | *See* NCAA Declaration. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 539 | p. 251 (Fig. 16) | Counsel only | *See* NCAA Declaration. |
| 542 | p. 252 ¶ 300 | Confidential | The ACC does not request that the text at p. 252 ¶ 300 remain under seal.  The text relies on aggregate student-athlete NIL transaction data, and does not reveal any of the ACC's or its member schools' confidential information. |
| 543 | p. 252 n.680 | Counsel Only | The ACC does not request that the text at footnote 680 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 544 | p. 252 n.682 | Confidential | The ACC does not request that the text at footnote 682 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 548 | p. 255 n.689 | Confidential | The ACC does not request that the text at footnote 689 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |

## H.  EXPERT REPORT OF BOB THOMPSON [ECF NO. 251-2]

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 549, 550 | p. 8 n.23 & n. 24 | NSC | By reference to the text in Section 3.B, the redacted text in footnotes 23 and 24 reflect the terms of a  media rights agreement.  The terms contained in media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the counterparties.  Disclosure of this footnote would reveal information regarding these terms that would put the parties to the agreement at  a competitive disadvantage in negotiating future media rights deals, and would give competitors valuable inside information affording them a competitive advantage . |
| 551, 552, 553 | p. 9 | NSC | The proposed redactions on page 9 reflect the terms of the ACC's media rights agreements with ESPN.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 556 | p. 10 | NSC | The proposed redactions on page 10 reflect the terms of the ACC's media rights agreements with ESPN.  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 557 | p. 11 (1) | NSC | The proposed redactions at topic 1 on page 11 recite the terms of the ACC's media rights agreements with ESPN (ACC-HOUSE0228382; ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the |

28

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 560 | p. 11 n.27 | NSC | The ACC does not request that the text at footnote 27 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 561 | p. 11 n.28 | NSC | The ACC does not request that the text at footnote 28 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 578 | p. 14 | NSC | The proposed redactions on page 14 reflect the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 582 | p. 14 n.45 | NSC | The ACC does not request that the text at footnote 45 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 585 | p. 15 n.49 | NSC | By reference to the text in Section 4.C, the redacted text in footnote 49 reflects the terms of a media rights agreement.  The terms contained in media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the counterparties.  Disclosure of this footnote would reveal information regarding these terms that would put the parties to the agreement at  a competitive disadvantage in negotiating future media rights deals, and would give competitors valuable inside information affording them a competitive advantage . |
| 589 | p. 16 n.51 | NSC | The proposed redactions in footnote 51 recite the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 603 | p. 19-20 n.62 | NSC | The proposed redaction in footnote 62 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 604 | p. 20-21 n.63 | NSC | The proposed redaction in footnote 63 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

EXHIBIT A Declaration of Ben Tario ISO
Omnibus Motion to Seal
CASE NO. 4:20-CV-03919-CW

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 605 | p. 21 n.64 | NSC | The proposed redaction in footnote 64 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 608 | p. 22 n.68 | NSC | The proposed redaction in footnote 68 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 610 | p. 23 | NSC | The proposed redaction on page 23 reflects the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 611 | p. 23 n.70 | NSC | The proposed redaction in footnote 70 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 612 | p. 23 n.71 | NSC | The proposed redaction in footnote 71 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 613 | p. 23 n.72 | NSC | The proposed redaction in footnote 72 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 616 | p. 24 n.76 | NSC | The proposed redaction in footnote 76 recites the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 620 | p. 25 | NSC | The proposed redaction on page 25 reflects the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 626 | p. 25 n.82 | #N/A | The ACC does not request that the text at footnote 82 remain under seal.  The footnote does not reveal any of the ACC's confidential information. |
| 645 | p. 48 | NSC | The proposed redaction in Section 8.A. on page 48 reflects the terms of the ACC's media rights agreement with ESPN (ACC-HOUSE0228278).  The terms contained in the ACC's media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

## I.   EXPERT REPORT OF BARBARA OSBORNE [ECF NO. 251-3]

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 664a | p. 12 ¶ 25 | NSC | The table at p. 12 ¶ 25 recites the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC and other conferences in his report.  That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

**J.   JANUARY 10, 2023 DEPOSITION OF DANIEL RASCHER [ECF NO. 251-7]**

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 684 | p. 67:2-5 | NSC | The testimony at 67:2-5 recites the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report.  That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 686 | p. 68:7-8 | NSC | The testimony at 68:7-8 recites the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report.  That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 688 | p. 68:21-23 | NSC | The testimony at 68:21-23 recites the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report.  That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 700 | p. 122:21-123:11 | NSC | The testimony at 122:21-123:11 recites the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report.  That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 701 | p. 126:16-20 | NSC | The ACC does not request that the testimony at 126:16-20 remain under seal.  The testimony does not reveal any of the ACC's confidential information. |
| 702 | p. 127:20-24 | NSC | The testimony at 127:20-24 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report, and how it compares to the same values in other conferences. That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 703 | p. 128:16-19 | NSC | The testimony at 128:16-19 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report, and how it compares to the same values in other conferences. That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 704 | p. 129:18-20 | NSC | The testimony at 129:18-20 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report.  That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties.  Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 712 | p. 144:2-22 | Highly Confidential-Counsel Only | *See* NCAA Declaration. |
| 716 | p. 149:1-150:12 | Highly Confidential-Counsel Only | *See* NCAA Declaration. |
| 723 | p. 191:10-23 | NSC | The testimony at 191:10-23 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report, and how it compares to the same values in other conferences.  That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements.  The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. |

**EXHIBIT A** Declaration of Ben Tario ISO
Omnibus Motion to Seal
CASE NO. 4:20-CV-03919-CW

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 724 | p. 192:14-18 | NSC | The testimony at 192:14-18 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report, and how it compares to the same values in other conferences. That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 725 | p. 193:24-194:9 | NSC | The testimony at 193:24-194:9 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report, and how it compares to the same values in other conferences. That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 726 | p. 194:23-195:22 | NSC | The testimony at 194:23-195:22 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report, and how it compares to the same values in other conferences. That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. |

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 727 | p. 196:21-24 | NSC | The testimony at 196:21-24 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report, and how it compares to the same values in other conferences. That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 728 | p. 197:14-17 | NSC | The testimony at 197:14-17 reflects the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report, and how it compares to the same values in other conferences. That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |
| 733 | p. 202:17-18 | NSC | The testimony at 202:17-18 recites the calculated per-student-athlete BNIL value Dr. Rascher proposes for the ACC in his report. That value relies on and reflects the rights fees received by the ACC in its media rights agreements, and could be used to calculate the actual value of the rights fees in the ACC's media agreements. The rights fees the ACC receives in its media rights agreements are highly confidential and proprietary, the result of extensive negotiation between the ACC and its contract counterparties. Disclosure of these terms would put the ACC at a competitive |

EXHIBIT A Declaration of Ben Tario ISO
Omnibus Motion to Seal
CASE NO. 4:20-CV-03919-CW

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| | | | disadvantage in negotiating future media rights deals, and would give the ACC's competitors valuable inside information affording them an advantage in competing with the ACC. |

## K.  PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION [ECF NO. 289]

| Entry Number | Page/Line | Confidentiality Level | Reason for Sealing |
|---|---|---|---|
| 751 | p. 9:8-10 | NSC | The ACC does not request that the text at 9:8-10 remain under seal.  The text does not reveal any of the ACC's confidential information. |