Kenina Lee (*pro hac vice* pending)
klee@axinn.com
**AXINN, VELTROP & HARKRIDER LLP**
1901 L Street NW
Washington, DC 20036
Telephone:  202.912.4700
Facsimile:   202.912.4701

Neelesh T. Moorthy (SBN 341155)
nmoorthy@axinn.com
**AXINN, VELTROP & HARKRIDER LLP**
55 Second Street, 20th Floor
San Francisco, CA 94105
Telephone:  415.490.2000
Facsimile:   415.490.2001

*Attorneys for Non-Party Take-Two Interactive Software, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**NON-PARTY TAKE-TWO INTERACTIVE SOFTWARE INC.'S  STATEMENT IN SUPPORT OF PLAINTIFFS' AND DEFENDANTS' JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL [ECF NO. 318]** |

## I.      INTRODUCTION

Non-Party Take-Two Interactive Software, Inc. ("Take-Two") produced highly confidential business material in response to subpoenas served by Plaintiffs in the above-captioned litigation, which it designated as "Highly Confidential – Counsel Only" pursuant to the Protective Order in this case. *See* ECF No. 135. Both Plaintiffs and Defendants (the "Parties") cite to and describe Take-Two's highly confidential business material in certain expert reports supporting their class certification briefing, specifically, the expert reports of Daniel A. Rascher (ECF No. 209-2) (hereinafter, the "Rascher Report") and Bob Thompson (ECF No.  251-2) (hereinafter, the "Thompson Report"),  and in the expert reply report of Daniel A. Rascher (ECF No. 290-2)

(hereinafter, the "Rascher Reply Report" and, collectively, the "Expert Reports"). The Parties filed a Joint Administrative Omnibus Motion to Seal (ECF No. 318) on September 15, 2023, seeking to seal certain portions of the Parties' class certification briefing and supporting documents. On that date, counsel for Plaintiffs also provided notice to Take-Two that its highly confidential information is contained within the Expert Reports. On September 18, 2023, Plaintiffs' counsel further provided to Take-Two a chart with excerpts from the Parties' class certification filings containing Take-Two's highly confidential information in an unredacted or summarized form.

Take-Two has carefully reviewed the excerpts within the Expert Reports that contain Take-Two's highly confidential information. Pursuant to Civil Local Rule 79-5(f)(3), Take-Two submits this statement and declaration in support of the Parties' Joint Administrative Omnibus Motion to Seal and respectfully requests that the Court keep the following highly confidential material identified below under seal.[1]

| Portion of Document Sought to be Sealed (Pages: Lines or Exhibit) | Description of Portion of Document | Reasons for Sealing |
|---|---|---|
| Rascher Report (124: Exhibit C.2) | Exhibit C.2. contains forecasts of basketball video game revenues created by Dr. Rascher based on sales figures from Take-Two's NBA 2K videogame franchise. Ex. C.2. also contains revenue information on Take-Two's College Hoops basketball game. | Plaintiffs have informed Take-Two that it is possible to derive Take-Two's sales figures for its NBA 2K videogame from Dr. Rascher's revenue projections. Ex. C.2. Ex. C. 2 also contains sales figures for Take-Two's College Hoops video game. These sales figures are used by Take-Two in determining its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential business material, the disclosure of which would |

---

[1] Plaintiffs have also identified two excerpts from the Rascher Reply Report that cite to information designated by Take-Two as Highly Confidential. *See* Rascher Reply Report at 33 (para. 63); Rascher Reply Report at 33 n. 86. Take-Two is not requesting that the Court keep these excerpts from the Rascher Reply Report under seal.

| Portion of Document Sought to be Sealed (Pages: Lines or Exhibit) | Description of Portion of Document | Reasons for Sealing |
|---|---|---|
| | | cause injury to Take-Two that could not be avoided through any less restrictive alternative to sealing. |
| Thompson Report (p. 41-42)(last sentence of p. 41 that continues on the top of p. 42) | Includes details about a non-public licensing agreement between Take-Two and the NBA and affiliated entities. | This text contains details of a licensing agreement between Take-Two and the NBA and affiliated entities that Take-Two does not share publicly. If such highly confidential business material were publicly disclosed, Take-Two would suffer economic harm as potential negotiating partners and video game competitors may gain unique insight into Take-Two's competitive business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential business material, the disclosure of which would cause injury to Take-Two that could not be avoided through any less restrictive alternative to sealing. |
| Thompson Report (p. 42)(first full sentence of p. 42) | Includes details about a non-public licensing agreement between Take-Two and the NBA and affiliated entities, including information regarding financial terms under the agreement. | This text contains details of a licensing agreement, including financial terms, between Take-Two and the NBA and affiliated entities that Take-Two does not share publicly. If such highly confidential business material were publicly disclosed, Take-Two would suffer economic harm as potential negotiating partners and video game competitors may gain unique insight into |

| Portion of Document Sought to be Sealed (Pages: Lines or Exhibit) | Description of Portion of Document | Reasons for Sealing |
|---|---|---|
| | | Take-Two's competitive business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential business material, the disclosure of which would cause injury to Take-Two that could not be avoided through any less restrictive alternative to sealing. |

## II. THERE ARE COMPELLING REASONS TO SEAL TAKE-TWO'S HIGHLY CONFIDENTIAL BUSINESS MATERIAL

The public's right to inspect and copy public judicial records is "not absolute." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Specifically, a party or non-party can overcome the presumption in favor of public access to judicial records if it can show "compelling reasons" to justify placing highly confidential business material under seal. The "compelling reasons" standard applies at the class-certification stage. *Day v. GEICO Casualty Company*, 2022 WL 6584451 at *1 (N.D. Cal. Sep. 28, 2022), and is more lenient for non-parties seeking to seal highly confidential business material. *DeMartini v. Microsoft Corp.*, 2023 WL 4205770 at *6 (N.D. Cal. June 26, 2023).

Compelling reasons include the need to prevent the disclosure of "sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). Courts have broad discretion to prevent disclosure of "many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). In the Northern District of California, courts have found compelling reasons to justify sealing highly confidential business material when the disclosure of "confidential business material, marketing strategies, [and] product development plans could

1  result in improper use by business competitors seeking to replicate [the company's] business
2  practices and circumvent the time and resources necessary in developing their own practices and
3  strategies." *Adtrader, Inc. v. Google LLC,* 2020 WL 6391210 at *1 (N.D. Cal. 2020). Courts have
4  also held that the disclosure of "license agreements, financial terms, details of confidential
5  licensing negotiations, and business strategies" can be sealed under the "compelling reasons"
6  standard when disclosure would "harm a designating party's competitive standing and divulge
7  terms of confidential contracts or contract negotiations …" *DeMartini* at *2.

8        Here, non-party Take-Two seeks to seal financial projections from which Take-Two's sales
9  data can be derived, revenue data, and non-public terms of a heavily negotiated licensing
10 agreement. See Ex. 1 (Decl. of Linda Zabriskie). Take-Two uses its videogame sales data to assess
11 its business model and determine its future commercial strategies, and disclosure of such data
12 would provide Take-Two's competitors an advantage by offering an inside look into Take-Two's
13 financial performance that they could use to predict Take-Two's future competitive, commercial,
14 and marketing strategies. Similarly, the heavily negotiated structure of Take-Two's licensing
15 agreements, if publicly disclosed, would give potential negotiating partners an advantage during
16 negotiations and competitors the ability to discern Take-Two's confidential business and
17 commercial strategies. Public disclosure of the highly confidential business material Take-Two
18 seeks to seal would give competitors an unfair advantage. *See* Ex. 1 (Decl. of Linda Zabriskie);
19 *DeMartini* at *3-4 (sealing a non-party's financial data when disclosure would be "immensely
20 valuable to competitors in developing their own strategy against [the non-party], and to prospective
21 and current business partners in negotiating with the [non-party].")

## III. TAKE-TWO'S HIGHLY CONFIDENTIAL BUSINESS MATERIAL SHOULD BE SEALED

24       The highly confidential business material Take-Two seeks to seal is limited to financial
25 projections from which Take-Two's sales data can be derived, revenue data, and non-public terms
26 of a commercial agreement. Further, Take-Two's request to seal portions of the Expert Reports
27 represents a good faith effort to only seal business material that is confidential, commercially or
28 competitively-sensitive and that cannot be protected from public disclosure through less restrictive

means. The prejudice Take-Two would sustain if the above-referenced highly confidential business material were publicly disclosed outweighs any public interest in the public disclosure of such business material, especially as Take-Two, a non-party, "did not voluntarily put [its business material] at issue in this litigation." *United States v. Bazaarvoice, Inc.,* No. 13-cv-00133-WHO, 2014 WL 11297188, at *1 (N.D. Cal. Jan. 21, 2014).

### IV.   CONCLUSION

For the foregoing reasons, Take-Two respectfully requests that the Court grant the Joint Administrative Omnibus Motion to Seal (ECF No. 141) as it pertains to Take-Two's highly confidential business material identified in the chart above and in this Statement.

[Signature Page Follows]

Dated: September 29, 2023

/s/*Kenina J. Lee*

Kenina Lee (*pro hac vice* pending)
klee@axinn.com
**AXINN, VELTROP & HARKRIDER LLP**
1901 L Street NW
Washington, DC 20036
Telephone: 202.912.4700
Facsimile: 202.912.4701

Neelesh T. Moorthy (SBN 341155)
nmoorthy@axinn.com
**AXINN, VELTROP & HARKRIDER LLP**
55 Second Street, 20th Floor
San Francisco, CA 94105
Telephone: 415.490.2000
Facsimile: 415.490.2001

*Counsel for Non-Party Take-Two Interactive Software, Inc.*