# EXHIBIT  1

1

2

3

4

5

6

7

8

9

10

11

12

13

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW |
| | **DECLARATION OF CATRINA GIBSON IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL** |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Catrina Gibson, declare as follows:

I am the Chief Financial Officer at the Big 12 Conference, Inc. ("the Big 12"), which is a defendant in this action. I make this Declaration based on my personal knowledge and investigation, and if called as a witness to testify, I could and would testify competently to the facts set forth herein.

1.     This Declaration is being made in support of the Joint Administrative Omnibus Motion to Seal ("Motion"), and pursuant to Civil Local Rules 7-11 and 79-5.

2.     The Big 12 seeks to maintain the confidentiality of certain portions of documents filed under seal by the Parties that (1) reflect the Big 12's highly sensitive, non-public, recent financial information; (2) contain or reflect the Big 12's highly confidential and competitively sensitive media agreements to which the Big 12 is a party, as well as other documents that reference those agreements or otherwise contain highly confidential commercial information of the Big 12 and its member schools; and/or (3) contain or reflect confidential personal information of individual student-athletes.

3.     Specifically, the Big 12 requests that certain portions of the Expert Report of Daniel Rascher ("Rascher Report"), the Expert Report of Edwin Desser ("Desser Report"), Defendants' Opposition to Plaintiffs' Class Certification Motion, the Expert Report of Catherine Tucker, Ph.D. ("Tucker Report"), the Expert Report of Bob Thompson ("Thompson Report"), and the Daniel Rascher Deposition Transcript ("Rascher Transcript), as described below and in Exhibit 1a filed herewith, and as identified in the Proposed Order Regarding Joint Administrative Omnibus Motion to Seal ("Proposed Order") as entry numbers 153, 177–79, 181–83, 195, 205, 207, 215, 217–18, 220–22, 258, 341–43, 355, 357–61, 371–75, 378, 399, 444–46, 476, 479–80, 486, 490, 538–39, 541, 543, 547, 556, 558, 562–63, 579, 583, 585, 589, 600, 602, 606, 608–09, 611, 613, 616, 619, 624–25, 712, 719, and 731, be maintained under seal.

4.     I understand that the information regarding the Big 12's media agreements has been designated "Network Strictly Confidential – Outside Litigation Counsel Only" pursuant to the Protective Orders in place in this litigation and the Protective Orders in place in *In re NCAA Grant-in-Aid Cap Antitrust Lit.*, No. 4:14-md-02841-CW (N.D. Cal.).

5.     The Big 12 does not seek to maintain confidentiality of entry numbers 1–3, 38, 150–52, 332, 339, 348–49, 351–53, 377, 409–12, 456, 474, 477, 483, 488, 492, 508, 512–13, 525, 542, 544, 548, 714, 751 in the Proposed Order.  These entries, redacted provisionally by the Parties, do not contain any information that the Big 12 seeks to maintain under seal.

6.     I understand that a party seeking to file a document under seal must "establish that a document, or portions thereof, are sealable," Civil L.R. 79-5(c), and that a party seeking to avoid disclosure of confidential, proprietary, or otherwise protected documents must demonstrate "compelling reasons" to seal where the motion is "more than tangentially related to the merits of the case." *Adtrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2020 WL 6391210, at *2 (N.D. Cal. Mar. 24, 2020).  I also understand that courts in this district generally regard motions for class certification as "more than tangentially related to the merits of the case" and therefore, subject to the "compelling reasons" standard.  *See, e.g.*, *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2021 WL 3771785, at *21 (N.D. Cal. Aug. 24, 2021).  The standard is met if the designating party can "articulate compelling reasons supported by specific factual findings" for the need to seal a document.  *Opperman v. Path*, No. 13-cv-00453, 2017 WL 1036652, at *1 (N.D. Cal. Mar. 17, 2017) (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006)).  Redactions, instead of complete removal, can be used to place "limited and clear" portions of information outside the public record.  *Kamakana*, 447 F.3d at 1183.

7.     The Big 12 can demonstrate that compelling reasons exist to maintain the following narrowly tailored redactions under seal.

**CONFIDENTIAL INSTITUTIONAL FINANCIAL INFORMATION**

8.     The Tucker Report, the Thompson Report, and the Rascher Transcript contain information that reflects the financial statements and revenues for the Big 12 and its member institutions, which are not parties to this litigation.  The Tucker Report and the Rascher Transcript contain information that reflects the details of financial aid provided by Big 12 member institutions to student-athletes, as well as the specific manner in which that aid is awarded.  The Big 12 would be harmed by the disclosure of such financial aid distributions and revenue, as it would reveal non-public information regarding financial information and decisions of the Big 12 and its member

institutions to other NCAA members and other competitors. *See Guzman v. Chipotle Mexican Grill, Inc.*, No. 17-cv-02606-HSG, 2020 WL 1171112, *1 (N.D. Cal. Mar. 11, 2020) (A "compelling reason" exists to seal confidential business information in the form of "license agreements, financial terms, details of confidential licensing negotiations, and business strategies"); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

9.      Therefore, the Big 12 supports the Parties' Motion to redact those portions of the Tucker Report, the Thompson Report, and the Rascher Transcript, which contain confidential financial information, including how aid is distributed to student-athletes, as identified below and in the Proposed Order. These redacted portions are described in item-by-item detail in the accompanying Exhibit 1a:

| Document | Entry Number | Text to be Sealed |
|----------|:------------:|-------------------|
| Tucker Report | 355 | p. 71 (Table 7) |
| Tucker Report | 358 | p. 80, ¶ 89 (c) |
| Tucker Report | 371 | p. 115, Figure 7 |
| Tucker Report | 372 | p. 116, Note |
| Tucker Report | 373 | p. 116, Figure 8 |
| Tucker Report | 375 | p. 117, ¶ 130 |
| Tucker Report | 378 | p. 117, Figure 9 |
| Tucker Report | 399 | p. 139 (Table 9) |
| Tucker Report | 444 | p. 201 (Table 13) |
| Tucker Report | 445 | p. 201, n. 530 |
| Tucker Report | 446 | p. 202, ¶ 243 |
| Tucker Report | 538 | p. 250, ¶ 296(c) |
| Tucker Report | 539 | p. 251, Figure 16 |
| Thompson Report | 556 | p. 10 |
| Rascher Transcript | 712 | p. 144:2–22 |
| Rascher Transcript | 719 | 159:12–160:12 |
| Rascher Transcript | 731 | 202:9–11 |

1

2        **CONFIDENTIAL MEDIA AGREEMENTS**

3        10.     The Rascher Report, Tucker Report, Thompson Report, and Plaintiffs' Reply in

4   Support of Class Certification contain or reflect the Big 12's highly confidential and competitively

5   sensitive media agreements to which the Big 12 is a party, as well as other documents that reference

6   those agreements or otherwise contain highly confidential commercial information of the Big 12

7   and its member schools, which are not parties to this litigation.

8        11.     The terms contained in the Big 12 media agreements are highly confidential and

9   proprietary and the result of extensive negotiation between the Big 12 and its contractual

10  counterparties.  These confidential terms include the amount and timing of the rights fees paid to

11  the Big 12, scheduling requirements relating to how the Big 12 and its media partners schedule

12  games, and information relating to the timing and methods of negotiations between the Big 12 and

13  its media partners.

14       12.     If these terms were disclosed to the public, the Big 12 would be at a competitive

15  disadvantage in negotiating with its current counterparties or other potential counterparties,

16  because the terms could be used against the Big 12 in future negotiations.  This would harm the

17  Big 12's bargaining position in future negotiations by potentially setting a ceiling for key terms

18  like rights fees.  It would also undermine any efforts by the Big 12 to modify its existing contracts.

19  Further, if the Big 12's contractual counterparties fear future public disclosure of their confidential

20  agreements with the Big 12, it would further jeopardize the Big 12's future negotiations because

21  counterparties may agree to different provisions if they know the Big 12's competitors might have

22  access to the agreements.  Further, if the Big 12's competitors know information regarding its key

23  contractual terms, such as scheduling and negotiation windows, those competitors can use that

24  information to place the Big 12 at a competitive disadvantage.  *See Nixon*, 435 U.S. at 597–98.

25       13.     Therefore, the Big 12 supports the Parties' Motion to redact those portions of the

26  Rascher Report, Tucker Report, Thompson Report, and Plaintiffs' Reply in Support of Class

27  Certification, which contain or reflect the Big 12's confidential media agreement information as

28

identified below and in the Proposed Order. These redacted portions are described in item-by-item

detail in the accompanying Exhibit 1a:

| Document | Entry Number | Text to be Sealed |
|---|---|---|
| Rascher Report | 153 | p. 77, n. 175 |
| Rascher Report | 177 | p. 90, Ex. 9 |
| Rascher Report | 178 | p. 90, n. 208 |
| Rascher Report | 179 | p. 91, n. 208 |
| Rascher Report | 181 | p. 92, Ex. 10 |
| Rascher Report | 182 | p. 93, Ex. 11 |
| Rascher Report | 183 | p. 94, Ex. 12 |
| Rascher Report | 195 | Appx Ex. C.6 |
| Rascher Report | 205 | p. 23, Sec. 6.4 |
| Rascher Report | 207 | p. 23, n. 22 |
| Rascher Report | 215 | p. 25, Sec. 6.7 |
| Rascher Report | 217 | p. 25, n. 31 |
| Rascher Report | 218 | p. 26, Sec. 6.7 |
| Rascher Report | 220 | p. 25, n. 33 |
| Rascher Report | 221 | p. 27, Sec. 6.7 |
| Rascher Report | 222 | p. 27, n. 33 |
| Defendants' Opposition to Class Certification | 258 | p. 7:13 |
| Tucker Report | 357 | p. 80, ¶ 89 (a) |
| Tucker Report | 358 | p. 80, ¶ 89 © |
| Tucker Report | 359 | p. 80-81, ¶ 89 (d) |
| Tucker Report | 360 | p. 102 (Table 8) |
| Tucker Report | 361 | p. 102, Note 1 |
| Tucker Report | 541 | p. 252, ¶ 297 |

| Document | Entry Number | Text to be Sealed |
|---|---|---|
| Tucker Report | 543 | p. 252, n. 680 |
| Thompson Report | 556 | p. 10 |
| Thompson Report | 558 | p. 11 (2) |
| Thompson Report | 562 | p. 11, n. 29 |
| Thompson Report | 563 | p. 11, n. 30 |
| Thompson Report | 579 | p. 14 |
| Thompson Report | 583 | p. 14, n. 47 |
| Thompson Report | 585 | p. 15, n. 49 |
| Thompson Report | 589 | p. 16, n. 51 |
| Thompson Report | 600 | p. 19 |
| Thompson Report | 602 | p. 19, n. 61 |
| Thompson Report | 606 | p. 21, n. 66 |
| Thompson Report | 608 | p. 22, n. 68 |
| Thompson Report | 609 | p. 22, n. 69 |
| Thompson Report | 611 | p. 23, n. 70 |
| Thompson Report | 613 | p. 23, n. 72 |
| Thompson Report | 616 | p. 24, n. 76 |
| Thompson Report | 619 | p. 25 |
| Thompson Report | 624 | p. 25, n. 80 |
| Thompson Report | 625 | p. 25, n. 81 |

## CONFIDENTIAL STUDENT INFORMATION

14.     The Rascher Reply Report, the Tucker Report, and the Rascher Transcript reflects confidential personal information of student-athletes and/or potential student-athletes from the Big 12's member institutions, who are not parties to this litigation.  The Big 12's member institutions are required to keep confidential student personal information, and such information may not be disclosed to the public without first obtaining a release from the student or parent, as FERPA (Family Educational Rights and Privacy Act, 20 U.S.C. 1232g) requires.  *See Rosenfeld v.*

1   *Montgomery Cnty. Pub. Sch.*, 25 F. App'x 123, 132 (4th Cir. 2001) ("[T]he district court should

2   consider FERPA in making its determination whether sealing of the documents in question is

3   appropriate.").

4       15.     Therefore, the Big 12 supports the Parties' Motion to redact those portions of the

5   Rascher Reply Report, the Tucker Report, and the Rascher Transcript, which contain information

6   derived from the personal information of student-athletes and/or potential student-athletes from

7   the Big 12's member institutions, as identified below and in the Proposed Order. These redacted

8   portions are described in item-by-item detail in the accompanying Exhibit 1a:

| Document | Entry Number | Text to be Sealed |
|---|---|---|
| Tucker Report | 341 | p. 47 (Table 2) |
| Tucker Report | 342 | p. 54, ¶ 63 |
| Tucker Report | 343 | p. 55 (Fig. 3) |
| Tucker Report | 476 | p. 218, ¶ 257(b) |
| Tucker Report | 479 | p. 218, n. 577 |
| Tucker Report | 480 | p. 219, ¶ 257(b) |
| Tucker Report | 483 | p. 219, ¶ 259 |
| Tucker Report | 486 | p. 220, ¶ 259(b) |
| Tucker Report | 490 | p. 220, n. 580 |
| Tucker Report | 547 | p. 225, ¶ 302 |
| Tucker Report | 548 | p. 255, n. 689 |
| Rascher Transcript | 719 | p. 158:12–160:12 |
| Rascher Transcript | 731 | p. 202:9–11 |

    For the foregoing reasons, the Big 12 respectfully submits that compelling reasons exist to

seal the information as identified above and in the Proposed Order.

1    I declare under penalty of perjury under the laws of the United States of America that the
2 foregoing is true and correct.
3    Executed on September 29, 2023, in Northlake, Texas
4
5                                                  _____
6                                                          Catrina Gibson
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8

# EXHIBIT  1a

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| Expert Report of Daniel Rascher (ECF No. 209-2) | | | | |
|---|---|---|---|---|
| Mot to Seal Ex. 1 Entry No. | Page/Line | Confidentiality Level | Description | Reason for Sealing |
| 153 | p. 77, n. 175 | NSC | The redacted text quotes a provision of the Big 12's media agreement with FOX regarding representations and warranties, revealing the substance of the confidential terms of that agreement. | Reveals the terms of the Big 12's media agreement with FOX, which are highly negotiated, confidential, and competitively sensitive.  These provisions are, to the Big 12's knowledge, unique to the Big 12, and their public disclosure would cause prejudice to the Big 12 in future negotiations with broadcast entities. |
| 177, 178, and 179 | p. 90, Ex. 9; p. 90, n. 208; p. 91, n. 208 | NSC | Chart purports to show the total annual broadcast media revenue generated by the Big 12 through its broadcast agreements, as well as its participation in the College Football Playoff, bowl games, and NCAA tournament events. | Reveals in detail the revenue the Big 12 derives from specific broadcast media agreements and broadcast events.  This information is highly confidential and not publicly disclosed.  It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party.  The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
| 181 | p. 92, Ex. 10 | NSC | The redacted portions of the chart show Plaintiffs' alleged broadcast | In connection with publicly disclosed information, reveals in detail the |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | | |
|---|---|---|---|---|
| | | | NIL damages by conference and by sport, which information could be used in connection with publicly available information to reveal the financial terms of specific Big 12 broadcast media agreements. | revenue the Big 12 derives from specific broadcast media agreements. This information is highly confidential and not publicly disclosed. It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party. The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
| 182 | p. 93, Ex. 11 | NSC | The redacted portions of the chart show the number of putative class members by conference and by sport, which could be used in connection with other redacted information to reveal the financial terms of specific Big 12 broadcast media agreements. | In connection with other redacted information, reveals in detail the revenue the Big 12 derives from specific broadcast media agreements. This information is highly confidential and not publicly disclosed. It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party. The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
| 183 | p. 94, Ex. 12 | NSC | The redacted portions of the chart show alleged broadcast NIL damages | In connection with publicly disclosed information, reveals in detail the |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | | |
|---|---|---|---|---|
| | | | by conference, by sport, and per player, which, in the aggregate and in connection with publicly available information, could reveal the financial terms of specific Big 12 broadcast media agreements. | revenue the Big 12 derives from specific broadcast media agreements. This information is highly confidential and not publicly disclosed. It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party. The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
| 195 | Appx, Ex. C.6 | NSC | The redacted portions of the chart show the financial terms of and revenue derived from specific Big 12 broadcast media agreements, bowl agreements, College Football Playoff agreements, and NCAA tournament agreements. | Reveals in detail the revenue the Big 12 derives from specific broadcast media agreements and broadcast events. This information is highly confidential and not publicly disclosed. It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party. The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| **Expert Report of Edwin Desser (ECF No. 209-3)** | | | | |
|---|---|---|---|---|
| 205, 207 | p. 23, Sec. 6.4; p. 23, n. 22 | NSC | The redacted text describes a provision of the Big 12's media agreement with FOX regarding consent requirements, revealing the substance of the confidential terms of that agreement. | Reveals the terms of the Big 12's media agreement with FOX, which are highly negotiated, confidential, and competitively sensitive.  These provisions are, to the Big 12's knowledge, unique to the Big 12, and their public disclosure would cause prejudice to the Big 12 in future negotiations with broadcast entities. |
| 215, 217 | p. 25, Sec. 6.7; p. 25, n. 31 | NSC | The redacted text quotes a provision of the Big 12's media agreement with FOX regarding promotional use of student-athlete NIL, revealing the substance of the confidential terms of that agreement. | Reveals the terms of the Big 12's media agreement with FOX, which are highly negotiated, confidential, and competitively sensitive.  These provisions are, to the Big 12's knowledge, unique to the Big 12, and their public disclosure would cause prejudice to the Big 12 in future negotiations with broadcast entities. |
| 218, 220, 221, 222 | p. 26, Sec. 6.7; p. 26, n. 33; p. 27, Sec. 6.7; p. 27 n. 33 | NSC | The redacted text quotes a provision of the Big 12's media agreements with FOX, specifically from the representations and warranties section, revealing the substance of the confidential terms of that agreement. | Reveals the terms of the Big 12's media agreement with FOX, which are highly negotiated, confidential, and competitively sensitive.  These provisions are, to the Big 12's knowledge, unique to the Big 12, and their public disclosure would cause prejudice to the Big 12 in future negotiations with broadcast entities. |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 249) | | | | |
|---|---|---|---|---|
| 258 | p. 7:13 | NSC | The redacted text conceals the identity of each A5 conference associated with the plaintiffs' per-player broadcast NIL damages numbers by sport, which can be used in connection with publicly available information to reveal the financial terms of specific Big 12 broadcast media agreements. | In connection with publicly disclosed information, reveals in detail the revenue the Big 12 derives from specific broadcast media agreements. This information is highly confidential and not publicly disclosed. It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party. The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
| Expert Report of Catherine Tucker, Ph.D. (ECF No. 251-1) | | | | |
| 341 | p. 47, Table 2 | NSC | The redacted table conceals the plaintiffs' per-player BNIL damages amount for an SEC men's basketball student-athlete, as well as the value of that per-player amount compared to amounts potentially available from other A5 and non-A5 conferences, which can be used in connection with publicly available information to reveal the financial terms of specific broadcast media agreements. | In connection with publicly disclosed information, reveals in detail the revenue the Big 12 derives from specific broadcast media agreements. This information is highly confidential and not publicly disclosed. It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party. The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

|  |  |  |  | knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
| --- | --- | --- | --- | --- |
| 342, 343 | p. 54, ¶ 63; p. 55, Figure 3 | Confidential | See NCAA Declaration. | See NCAA Declaration. |
| 355 | p. 71, Table 7 | Counsel Only | See NCAA Declaration. | See NCAA Declaration. |
| 357, 358, 359 | p. 80-81, ¶¶ 89 (a), (c), (d) | NSC | The redacted text purports to show the total annual broadcast media revenue generated by the Big 12 through its broadcast agreements, as well as its participation in the College Football Playoffs, bowl games, and NCAA tournament events. | Reveals in detail the revenue the Big 12 derives from specific broadcast media agreements and broadcast events. This information is highly confidential and not publicly disclosed. It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party. The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
| 360, 361 | p. 102, Table 8; p. 102, Note 1 | NSC | The redacted information conceals the dollar amount of the maximum proposed BNIL payments for Big 12 member schools, which can be used in connection with publicly disclosed information to reveal the financial | In connection with publicly disclosed information, reveals in detail the revenue the Big 12 derives from specific broadcast media agreements. This information is highly confidential and not publicly disclosed. It could be used to derive the total financial value of |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | terms of specific Big 12 broadcast media agreements. | specific broadcast media agreements to which the Big 12 is a party.  The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
|---|---|---|---|---|
| 371 | p. 115, Figure 7 | Confidential | See University of Kansas and University of Texas Declarations. | See University of Kansas and University of Texas Declarations. |
| 372 | p. 116, Note | Confidential | See Virginia Tech Declaration. | See Virginia Tech Declaration. |
| 373 | p. 116, Figure 8 | Confidential | See University of Kansas and University of Texas Declarations. | See University of Kansas and University of Texas Declarations. |
| 375 | p. 117, ¶ 130 | Confidential | See University of Kansas Declaration. | See University of Kansas Declaration. |
| 378 | p. 117, Figure 9 | Confidential | See University of Kansas and University of Texas Declarations. | See University of Kansas and University of Texas Declarations. |
| 399 | p. 139, Table 9 | Confidential | See NCAA Declaration. | See NCAA Declaration. |
| 444, 445 | p. 201, Table 13; p. 201, n. 530 | Counsel Only | See NCAA Declaration. | See NCAA Declaration. |
| 446 | p. 202, ¶ 243 | Counsel Only | See NCAA Declaration. | See NCAA Declaration. |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| 476, 480 | p. 218, ¶ 257(b); p. 219, ¶ 257(b) | Counsel Only | See University of Oklahoma Declaration. | See University of Oklahoma Declaration. |
|---|---|---|---|---|
| 479 | p. 218, n. 577 | Counsel Only | See University of Oklahoma Declaration. | See University of Oklahoma Declaration. |
| 486, 490 | p. 220, ¶ 259(b); p. 220, n. 580 | Counsel Only | See University of Oklahoma Declaration. | See University of Oklahoma Declaration. |
| 538 | p. 250, ¶ 296 (c) | Counsel Only | See Texas Christian University Declaration. | See Texas Christian University Declaration. |
| 539 | p. 251, Figure 16 | Counsel Only | See Texas Christian University Declaration and Texas Tech University Declaration. | See Texas Christian University Declaration and Texas Tech University Declaration. |
| 541, 543 | p. 252, ¶ 297; p. 252, n.680 | Counsel Only NSC | The redacted information conceals the relative proposed value of the Big 12's total BNIL damages payments compared to another A5 conference, which information could be used in connection with publicly disclosed information to reveal the value or financial terms of the Big 12's broadcast media agreements. | In connection with publicly disclosed information, reveals in detail the revenue the Big 12 derives from specific broadcast media agreements.  This information is highly confidential and not publicly disclosed.  It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party.  The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | | prevent being prejudiced in future negotiations with broadcast entities. |
|---|---|---|---|---|
| 547, 548 | p. 225, ¶ 302<br><br>p. 255, n. 689 | Confidential | See University of Texas Declaration. | See University of Texas Declaration. |
| **Expert Report of Bob Thompson (ECF No. 251-2)** | | | | |
| 556 | p. 10 | NSC | The redacted information concerns the broadcast rights and related broadcast media agreement between the Big 12, other FBS conferences, and ESPN for the College Football Playoff games, the disclosure of which would reveal competitively sensitive and confidential information about the terms and operation of the College Football Playoffs broadcast agreement. | Reveals the substance of terms in the College Football Playoffs broadcast agreements, to which the Big 12 is a party, and which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its College Football Playoffs-related agreements |
| 558, 562, 563 | p. 11 (2);<br>p. 11, n. 29;<br>p. 11, n. 30 | NSC | The redacted text relates to the provisions of the Big 12's broadcast media agreements with FOX and ESPN, the obligations imposed by those agreements, and the terms of operation, the disclosure of which would reveal confidential, competitively valuable information about the structure of the agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | | |
|---|---|---|---|---|
| 579, 583 | p. 14; p. 14, n. 47 | NSC | The redacted material discloses information about the Big 12's sponsorship agreement, the disclosure of which would reveal competitively sensitive and confidential information about the terms of the Big 12's media agreements. | Reveals the substance of terms in the Big 12's sponsorship agreement, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its sponsorship agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 585 | p. 15, n.49 | NSC | The redacted material discloses confidential information about provisions of the Big 12's media rights agreements governing data rights. | In combination with publicly disclosed information, the redacted material would reveal confidential and competitively sensitive information about the Big 12's media rights agreements, which are highly negotiated.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 589 | p. 16, n.51 | NSC | The redacted material reveals the specific terms of the Big 12's media agreement with FOX regarding commercial promotions during Big 12 game broadcasts, the disclosure of which would reveal competitively sensitive and confidential information | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | | |
|---|---|---|---|---|
| | | | about the terms of the Big 12's media agreements. | which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 600, 602 | p. 19; p. 19, n. 61 | NSC | The redacted text details the contractually negotiated and agreed-upon method for game selection in the Big 12's broadcast media rights agreements with FOX, the disclosure of which would reveal competitively sensitive and confidential information about the terms of the Big 12's media agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 606 | p. 21, n. 66 | NSC | The redacted text provides detailed information about the terms of ESPN/ABC's game broadcasting obligations pursuant to its broadcast media agreement with the Big 12, the disclosure of which would reveal competitively sensitive and confidential information about the terms of the Big 12's media agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 608 | p. 22, n.68 | NSC | The redacted text provides detailed information about FOX's obligations related to shoulder programming under its broadcast media agreement with the Big 12, the disclosure of which would reveal competitively sensitive and confidential information about the terms of those agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  | which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 609 | p. 22, n.69 | NSC | The redacted text provides detailed information regarding the game window provisions of the Big 12's broadcast media agreements with FOX, the disclosure of which would reveal competitively sensitive and confidential information about the terms of those agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 611 | p. 23, n.70 | NSC | The redacted text provides detailed information regarding the game window provisions of the Big 12's broadcast media agreements with FOX, the disclosure of which would reveal competitively sensitive and confidential information about the terms of those agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 613 | p. 23, n. 72 | NSC | The redacted text provides detailed information regarding the game window provisions of the Big 12's broadcast media agreements with FOX and ESPN/ABC, the disclosure of which would reveal competitively sensitive and confidential information about the terms of those agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | | |
|---|---|---|---|---|
| | | | | which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 616 | p. 24, n.76 | NSC | The redacted text provides detailed information about the network rights provisions of the Big 12's broadcast media agreement with ESPN/ABC, the disclosure of which would reveal competitively sensitive and confidential information about the terms of those agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| 619, 624, 625 | p. 25; p. 25, n. 80; p. 25, n. 81 | NSC | The redacted text provides detailed information about the game broadcasting provisions of the Big 12's broadcast media agreements with ABC, ESPN, and FOX, the disclosure of which would reveal competitively sensitive and confidential information about the terms of those agreements. | Reveals the substance of terms in the Big 12's broadcast agreements, which are highly negotiated, confidential, and competitively sensitive.  If provisions or portions of those agreements were disclosed publicly, the Big 12 would be prejudiced when attempting to negotiate or renegotiate its broadcast agreements, which are, to the Big 12's knowledge, unique to the Big 12, in the future. |
| **Kilaru Declaration, Ex. 7, Rascher Deposition Transcript Excerpts (ECF No. 251-7)** | | | | |
| 712 | pp. 144:2-22 | Counsel Only | The redacted text reveals information reported by the Big 12 to the NCAA regarding its revenues and attribution of those revenues to particular sports. | Reveals confidential information regarding the Big 12's revenue sources and their attribution to particular sports, which information is reported to the NCAA and not available to the public, other conferences, or NCAA member institutions at a conference- or school- |

13

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | | |
|---|---|---|---|---|
| | | | | specific level.  This information could prejudice the Big 12 in future media rights negotiations with broadcast entities related to the valuation of particular sports, as well as reveal competitively valuable information about the Big 12's revenues. |
| 719 | p. 159:12-160:12 | NSC | The redacted text conceals the plaintiffs' per-player BNIL damages amount for a Big 12 football student-athlete and a Big 12 basketball student-athlete, which can be used in connection with publicly available information to reveal the financial terms of specific Big 12 broadcast media agreements. | In connection with publicly disclosed information, reveals in detail the revenue the Big 12 derives from specific broadcast media agreements.  This information is highly confidential and not publicly disclosed.  It could be used to derive the total financial value of specific broadcast media agreements to which the Big 12 is a party.  The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations with broadcast entities. |
| 731 | p. 202:9-11 | NSC | The redacted text conceals the plaintiffs' per-player BNIL damages amount for a men's basketball student-athlete and information about offers he received from a Big 12 school and other schools from A5 conferences, which can be used in connection with publicly available information to reveal the financial | In connection with publicly disclosed information, reveals in detail information from the Big 12's financial statements.  This information is highly confidential and not publicly disclosed. The Big 12 does not make available detailed line-item information about the financial aspects of its broadcast media agreements, which are, to the Big 12's |

THE BIG 12 CONFERENCE
EXHIBIT 1A TO C. GIBSON DECLARATION IN SUPPORT OF JOINT ADMINISTRATIVE OMNIBUS MOTION TO SEAL

| | | | | |
|---|---|---|---|---|
| | | | terms of the Big 12's broadcast media agreements. | knowledge, unique to the Big 12, to prevent being prejudiced in future negotiations. |