| | |
|---|---|
| Steve W. Berman (*pro hac vice*) | Jeffrey L. Kessler (*pro hac vice*) |
| Emilee N. Sisco (*pro hac vice*) | David G. Feher (*pro hac vice*) |
| Stephanie Verdoia (*pro hac vice*) | David L. Greenspan (*pro hac vice*) |
| HAGENS BERMAN SOBOL SHAPIRO LLP | Adam I. Dale (*pro hac vice*) |
| 1301 Second Avenue, Suite 2000 | Sarah L. Viebrock (*pro hac vice*) |
| Seattle, WA 98101 | Neha Vyas (*pro hac vice*) |
| Telephone: (206) 623-7292 | WINSTON & STRAWN LLP |
| Facsimile: (206) 623-0594 | 200 Park Avenue |
| steve@hbsslaw.com | New York, NY 10166-4193 |
| emilees@hbsslaw.com | Telephone: (212) 294-4698 |
| stephaniev@hbsslaw.com | Facsimile: (212) 294-4700 |
| | jkessler@winston.com |
| Benjamin J. Siegel (SBN 256260) | dfeher@winston.com |
| HAGENS BERMAN SOBOL SHAPIRO LLP | dgreenspan@winston.com |
| 715 Hearst Avenue, Suite 202 | aidale@winston.com |
| Berkeley, CA 94710 | sviebrock@winston.com |
| Telephone: (510) 725-3000 | nvyas@winston.com |
| Facsimile: (510) 725-3001 | |
| bens@hbsslaw.com | Jeanifer E. Parsigian (SBN 289001) |
| | WINSTON & STRAWN LLP |
| *Counsel for Plaintiffs and the Proposed Classes* | 101 California Street, 34th Floor |
| | San Francisco, CA 94111-5840 |
| | Telephone: (415) 591-1000 |
| | Facsimile: (415) 591-1400 |
| | jparsigian@winston.com |
| | |
| | *Counsel for Plaintiffs and the Proposed Classes* |

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | **Case No. 4:20-cv-03919-CW**<br><br>**DISCOVERY LETTER JOINT STATEMENT REGARDING DEFENDANTS' SUPPLEMENTATION OF INITIAL DISCLOSURES**<br><br>Hon. Claudia Wilken |

**PLAINTIFFS' POSITION.**  After nearly 3 years of discovery and with 10 witnesses already set to be deposed between now and the October 27 fact discovery cutoff, Defendants supplemented their Initial Disclosures and identified *37 new witnesses* including broad new categories of witnesses. Plaintiffs objected.  Judge Wilken then directed Defendants to justify their delay; Defendants failed to do so.[1]  Defendants' untimely disclosures are improper and prejudicial—Plaintiffs made critical decisions based on Defendants' prior disclosures (such as which depositions to take and written discovery to pursue) and would face an impossible burden to seek discovery from 30+ new witnesses without substantial delay.  Indeed, Plaintiffs' expert deadline is December 1, with reports being prepared now.  Defendants have admitted they believe several of these late-disclosed witnesses may have information relevant to expert issues.  But Plaintiffs cannot conduct the necessary additional discovery and still meet the Court's schedule.  And Judge Wilken not only rejected a recent stipulated schedule extension but also asked the parties to try to advance the trial date.  These witnesses should be excluded.[2]  Plaintiffs request an immediate conference to resolve these issues.

Initial disclosures are, as their name suggests: *initial*.  They are designed to "enable[] the opposing party to plan its discovery."  *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *3 (N.D. Cal. June 3, 2011).  Of course, Defendants were permitted to supplement their disclosures, but they were required to do so "in a timely manner."  Fed. R. Civ. P. 26(e)(1)(A).  What they could not do is wait until the waning days of discovery to, in coordinated fashion, spring dozens of new witnesses on Plaintiffs, particularly when the new witnesses were, or should have been, known to Defendants long ago.  *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 2016 WL 1394280, at *2 (S.D. Cal. Apr. 8, 2016) ("disclosure[] . . . must be made sufficiently in advance of the close of discovery for the party-opponent to have a reasonable opportunity to pursue discovery of the[] witnesses.").

To avoid exclusion, Defendants must show that their belated disclosures are "justified or harmless," considering "(1) prejudice or surprise to [Plaintiffs]; (2) [Plaintiffs'] ability . . . to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness [] in not timely disclosing the evidence."  *Id.* at *2; *accord Baird v. BlackRock Inst. Trust Co., N.A.*, 330 F.R.D. 241, 243 (N.D. Cal. 2021).  Each factor weighs in favor of exclusion.

*First* and *second*, Defendants have offered minimal explanation for their late disclosures, which impose substantial—and incurable—harm on Plaintiffs.  Plaintiffs cannot reasonably conduct detailed document or deposition discovery of more than *30* new witnesses, many of them third parties, in a mere three weeks.  As is, there are several depositions per week between now and October 27.  Allowing further depositions after the current fact discovery cutoff would not help either.  Plaintiffs' expert deadline is December 1, and the upcoming summary judgment deadlines cannot be delayed—if anything, Judge Wilken wants the trial dates to be accelerated; Plaintiffs concur and are in the process of seeking agreement on an earlier date and, if unsuccessful, will move to do so.  Plaintiffs will not have the chance to take additional depositions in time for their experts to analyze and issue

---

[1] Defendants' principal explanation is that the disclosures were made before the discovery cutoff—but that is no explanation at all.

[2] Plaintiffs do not seek to exclude ACC Commissioner Jim Phillips, Pac-12 Commissioner George Kliavkoff, or Big Ten COO Kerry Kenny because, despite the late disclosures, they were already document custodians and deponents.  Plaintiffs also offered to withdraw their objections to individuals who submitted declarations with Defendants' Class Certification Opposition, if Plaintiffs are permitted to depose any declarant included on Defendants' trial witness list after they appear on the list but before trial.  Defendants did not accept this compromise.

their reports. Yet, as Defendants admitted, many of these new witnesses may have information relevant to the parties' expert reports. Defendants' offer to unilaterally extend the court-ordered fact discovery deadline would mean that *their experts* would have ample time to review and analyze this new discovery, while Plaintiffs' experts would not. ***Third***, Defendants' late disclosures are likely to negatively impact trial. The lack of deposition discovery of these witnesses would create trial inefficiencies and will likely lead to additional pre-trial motion practice to exclude much of this testimony.[3] ***Fourth***, the willfulness of Defendants' late disclosures is clear. It is inconceivable that all 6 Defendants (each of whom added witnesses) contemporaneously learned of 30+ new witnesses at the tail end of the multi-year fact discovery period.

Indeed, Defendants' suggestion that they recently learned of many of these witnesses rings hollow. Darin Spease, for example, has been Deputy Athletics Director at UNC-Charlotte (a Division I NCAA member school) since 1998. And while John Cunningham and Trevor Wilson recently guided their schools to larger paydays (and their athletes to more onerous travel schedules) by joining a Defendant Conference, their schools have been members of the Football Bowl Subdivision ("FBS") for decades. Further, Defendants' vague claim that they recently learned of consulting firms Deloitte and Huron "as part of their investigation" is spurious. Documents produced in this case show that the ACC—which added the two firms to its disclosures—received reports from Deloitte relating to NIL issues in 2019 and 2021 and about COVID's impact on college athletics revenues in 2020. And documents produced from ACC Commissioner Jim Phillips' files include correspondence with Huron and former Big Ten Commissioner Jim Delaney from September 2022, which referenced athlete-compensation issues, work Huron did for Defendant Pac-12 Conference, and Commissioner Delaney's deposition *in this case*. Similarly, Defendants admit that they learned of six of the other new witnesses in April but waited almost six months before disclosing them.

Defendants' comparison to *Alston* is inapt. The *Alston* dispute involved *four* individuals who first appeared on Defendants' pre-trial witness list. To settle the dispute over those late disclosures, the *Alston* Plaintiffs offered to take pre-trial depositions because there was enough time to do so. Here, it would take months for Plaintiffs to fully investigate and conduct discovery of Defendants' 30+ new witnesses, not to mention the substantial burden and cost. In any event, the prejudice of not having the relevant information to make decisions about fact and expert discovery over the past three years is incurable. Defendants are also wrong to equate their belated disclosures with Plaintiffs noticing the deposition of one person who was neither previously disclosed nor a Defendant employee or official.[4] Plaintiffs notified Defendants of the deposition of this lone exception—Jordan Acker, University of Michigan Regent—on September 26, after he wrote an Op-Ed in the New York Times five days earlier, advocating for a college athletics revenue-sharing model.[5] If Defendants noticed the deposition of a single undisclosed witness, the magnitude of harm and options to cure it would be very different.

Nor can Defendants hide behind their prior disclosures of broad categories of witnesses (*e.g.*, "all current and former employees of member institutions"). While some of the new witnesses fit that category, so do *thousands of other people*, making Defendants' broad categorical disclosures

---

[3] For example, the CEO of USA Water Polo, newly disclosed by the ACC, likely has no foundation to testify to "the impact of [Plaintiffs'] relief on college athletics."
[4] Plaintiffs also took 30(b)(6) depositions of Michigan State University and University of Oregon witnesses. Plaintiffs first subpoenaed these universities for documents in 2021.
[5] Jordan Acker, *The Only Way College Sports Can Begin to Make Sense Again*, NEW YORK TIMES (Sept. 21, 2023), https://www.nytimes.com/2023/09/21/opinion/college-sports-broken.html.

inadequate. *See, e.g.*, *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2021 WL 4808597, at *2 (N.D. Cal. Mar. 17, 2021). Defendants provided exactly the sort of "evasive" and "incomplete disclosures" that violate Rule 26 and "are treated as [a] failure[] to respond." Fed. R. Civ. P. 37 advisory Committee's notes to 1993 amendments. Defendants' prior identification of these broad categories also shows the willfulness of their delay—they knew all along that they wanted to call school employees, yet waited three years to identify which ones. The Big 12, for example, identified on September 26 over a dozen athletics and school administrators who purportedly have knowledge about topics such as "the existence and application of rules regarding athletics-related financial aid and the benefits and limitations on compensation for student-athletes at [their] institution[s]." Defendants' conduct forced Plaintiffs "to guess which undisclosed witnesses may be called to testify" in making decisions about discovery—exactly the type of litigation gamesmanship that Rule 26 is designed to avoid. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014).

In any event, these new witnesses are unlikely to offer evidence so central that the "interests of justice of allowing the witnesses" would outweigh the demonstrable prejudice to Plaintiffs. Sept. 21 Hr'g Tr. at 7:12–18. In addition to athletics and University administrators, Defendants' belated disclosures identified individuals with no meaningful relationship to this case, such as retired Olympic swimmers and the CEO of USA Fencing. Defendants claim these witnesses have information relevant to "the impact of [Plaintiffs' proposed] relief on college athletics including on student-athlete opportunities and educational programs, women's and Olympic collegiate sports." But Judge Wilken rejected that justification in *O'Bannon*. 37 F. Supp. 3d 1126, 1151 (N.D. Cal. 2014).

Defendants should be precluded from calling these late-disclosed witnesses at trial.

**DEFENDANTS' POSITION.** This case involves NCAA NIL rules amended in mid-2021, ever-evolving changes to state NIL laws, and ongoing debate regarding the potential impact on college sports of revenue-sharing with a small number of student-athletes. Thus, it is no surprise that both Plaintiffs and Defendants continue to identify witnesses with relevant knowledge.

Plaintiffs seek to exclude witnesses who were disclosed at least 5 weeks and up to 7 months before the end of discovery, and soon after Defendants identified them. There is nothing untimely or improper here. Rule 26(e) contemplates that disclosures will be supplemented "sufficiently in advance of the close of discovery for the party-opponent to have a reasonable opportunity to pursue discovery." *Obesity Res.*, 2016 WL 1394280, at *2. "[T]he analytical threshold for determining whether there has been a disclosure violation is whether the opposing party had meaningful notice to prepare its case." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 617-18 (D. Nev. 2020). The burden is on Plaintiffs to show a violation. *Id*. at 618. Here, discovery is still open, and trial is more than a year away. Plaintiffs' own conduct illustrates the lack of merit in their position. They recently noticed depositions of witnesses that they have known about for months but never added to their disclosures. When Defendants pointed this out, Plaintiffs asserted there is no harm in noticing depositions of undisclosed witnesses—but only in *disclosing* witnesses with weeks remaining in the discovery period. This makes no sense.

Even if Defendants' disclosures were untimely (they are not), Plaintiffs are not prejudiced. The witnesses are available for deposition and material to Defendants' case, making the extreme remedy of exclusion improper. *Novoa v. The Geo Grp., Inc.*, 2020 WL 7315485, at *2 (C.D. Cal. Nov. 12, 2020). "[C]ourts look with disfavor on attempts to rely on technical violations of the rules in an attempt to gain unwarranted tactical advantages." *V5 Techs.*, 334 F.R.D. at 618 n.1. "Especially when a disclosure is made within or near the discovery cutoff, litigants should not automatically resort to a

motion for exclusion sanctions." *Id.* Moreover, Defendants offered to allow depositions after the close of discovery if necessary. In *Alston*, when Defendants disclosed witnesses shortly before trial and well after the close of discovery, this Court allowed the witnesses to testify, if they were available for deposition. Dkt. No. 841, Case No. 14-md-02541 (July 3, 2018). There is no reason for any different conclusion here, particularly since the witnesses were disclosed *during* discovery.

**April 2023 Declarants.**[6] Ten of the at-issue witnesses were disclosed when they submitted declarations in April 2023. Dkt. 249. Thus, supplementation was not required. Fed. R. Civ. P. 26(e) (requiring supplementation only if the "information has not otherwise been made known to the other parties during the discovery process"); *Novoa*, 2020 WL 7315485, at *2 (denying motion to strike disclosure of declarant). Defendants' supplements to clarify that they may rely on these witnesses at trial is the opposite of "sandbagging." Plaintiffs recognize the lack of prejudice; they offered to withdraw their objection if they can "depose any of these witnesses who appear on [Defendants'] trial witness lists before a trial takes place," but refuse to take the depositions until Defendants disclose their trial witness list (disproving Plaintiffs' concern about needing to depose witnesses before expert reports are due). Defendants agreed to allow the depositions (if the witness has not already been deposed or noticed for deposition), if they happen before December 15, 2023, rather than some indeterminate time before trial.

**Categorical Disclosures.**[7] Twelve of the witnesses are within groups that Defendants identified in their initial disclosures, putting all parties on notice of their relevance.[8] Defendants only recently identified the specific individuals on whom they may rely, and promptly disclosed them. The Big 12,[9] for example, initially disclosed "current and former employees of Big 12 member institutions," and specifically identified "presidents, coaches, administrators, and athletic directors" ("ADs"). The other A5 Conferences made similar disclosures. The supplemental disclosures identify by name members of these groups, whose names Defendants largely learned in late August or September 2023, mere weeks before disclosing them.

These names or the relevance of specific individuals were not known sooner because of the dynamic nature of this action.[10] In this constantly changing world of college sports, facts and witnesses are not static (nor are Plaintiffs' theories and arguments). For example, when all parties served their

---

[6] G. Arrick, P. Cairns, M. Harlan, B. James, M. Rhoades, S. Scebelo, C. Storey Lee, R. Tanner, B. Tario, and C. Weiberg.

[7] J. Booker, V. Boschini, J. Cunningham, T. Day, C. Hall, K. Hocutt, J. Holliday, J. Pollard, R. Sigmon, C. Smith-Gilbert, D. Spease, and T. Wilson. The Big Ten disclosed its CFO, Laura Anderson, whom Plaintiffs deposed as one of The Big Ten's 30(b)(6) witnesses. She replaced The Big Ten's previous CFO (Julie Suderman) who was on The Big Ten's earlier disclosures but has since left the Conference.

[8] *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812-13 (E.D. Cal. 2006) (refusing to exclude witnesses not listed on disclosures because the witnesses had been disclosed as former employees during discovery); *Johnson v. Couturier*, 2009 WL 3169965, at *1-2 (E.D. Cal. Sept. 28, 2009) (refusing to exclude witness "who was not named specifically," but was "within the category of 'the Noll Board of Directors" that was disclosed).

[9] The Big 12's new counsel joined the case in mid-July 2023 and supplemented disclosures within just two months, still five weeks before the end of discovery.

[10] None of Plaintiffs' cases stand for the "should have known" standard that Plaintiffs attempt to apply.

initial disclosures in November 2020, the July 1, 2021 interim NIL rules Plaintiffs challenge did not exist. In the last few months, member schools have moved into, out of, and between Conferences, changing both Plaintiffs' arguments (now claiming realignment is a key issue), and the potential witness pool. For example, John Cunningham and Trevor Wilson work at schools that were not members of any Defendant Conference until July 1, 2023. Prior to that date, Defendants did not know of these specific witnesses' relevant information. Similarly, Defendants did not know of Darin Spease, an employee at UNC-Charlotte, until they learned of his existence and knowledge when interviewing another witness on August 24, 2023, 14 days before disclosing him to Plaintiffs on September 7. These witnesses—employees of the very institutions that will be most impacted by this matter's adjudication—are critical to Defendants' defenses. Many are athletic department employees, such as ADs or coaches. Plaintiffs recognized the importance of such witnesses from the beginning, by listing numerous ADs, coaches, and AD associations in their own disclosures.[11] Many of the witnesses are members of the associations that *Plaintiffs* disclosed.

**Newly Relevant Witnesses.**[12] The remaining twelve witnesses only recently came to Defendants' attention or only recently became relevant, and Defendants supplemented promptly thereafter. If a party does not know that an individual has knowledge on a particular topic, or does not know that a particular topic is relevant, then the party has no obligation to disclose that individual.[13] Six of the individuals submitted comments around April 2023 to the California legislature opposing a bill that would require revenue-sharing with student athletes. Defendants became aware of them in the course of their investigation, conducted interviews, and then supplemented their disclosures. Defendants also learned as part of their investigation that certain consulting firms might have information about college athletics. Other witnesses became relevant as the issues in this case evolved (*e.g.*, as Title IX and Olympic sports took on more prominence). These witnesses have critical information about how Plaintiffs' claims will impact the majority of student athletes (e.g., by depleting resources available to non-revenue sports). Judge Wilken has not rejected that justification in this case, which (as Plaintiffs previously successfully argued) involves "material differences" from *O'Bannon* and *Alston*, including that athletes in non-revenue sports are part of the classes here. Dkt. 152 at 10; see Dkt. 102 at 4.

In short, there is no legal basis to justify excluding these witnesses. They were timely disclosed, either months ago when submitting declarations or weeks before the close of discovery. There is no prejudice to Plaintiffs given there is plenty of time to take depositions before trial. But there would be significant prejudice to Defendants if they were precluded from using these witnesses to present their case. Defendants' proposed compromise is as follows: Plaintiffs may depose anyone on Defendants' supplemental disclosures who has not already been noticed for deposition, if the deposition is taken by December 15, 2023.

---

[11] Plaintiffs' disclosures also identify witnesses by category, such as "Members of NCAA Federal and State Legislation Working Group." If Plaintiffs objected to Defendants' disclosures, they should have done so when the disclosures were made, as in the case that Plaintiffs cite, *Elite Semiconductor*, 2021 WL 4808597, at *2.

[12] P. Andrews, J. Bauerle, F. Busch, N. Coughlin Hall, L. Crandall, M. Fuller Kolsrud, C. Ramsey, S. Sanders Schlopy, Employees of Deloitte, Employees of Huron Consulting Group, Employees of USA Swimming, and a member of the U.S. Olympic & Paralympic Committee.

[13] *See V5 Techs.*, 334 F.R.D. at 618 (finding no violation for failure to disclose a witness because the plaintiff "did not plan on relying on [the witness's] testimony at th[e] time").

| | |
|---|---|
| Dated: October 6, 2023 | Respectfully submitted, |
| HAGENS BERMAN SOBOL SHAPIRO LLP | WINSTON & STRAWN LLP |
| By:   */s/ Steve W. Berman* <br>     Steve W. Berman (*pro hac vice*) <br> Emilee N. Sisco (*pro hac vice*) <br> Stephanie Verdoia (*pro hac vice*) <br> 1301 Second Avenue, Suite 2000 <br> Seattle, WA 98101 <br> Telephone: (206) 623-7292 <br> Facsimile: (206) 623-0594 <br> steve@hbsslaw.com <br> emilees@hbsslaw.com <br> stephaniev@hbsslaw.com. <br><br> Benjamin J. Siegel (SBN 256260) <br> 715 Hearst Avenue, Suite 202 <br> Berkeley, CA 94710 <br> Telephone: (510) 725-3000 <br> Facsimile: (510) 725-3001 <br> bens@hbsslaw.com <br><br> *Counsel for Plaintiffs and the Proposed Classes* | By:   */s/ Jeffrey L. Kessler* <br>     Jeffrey L. Kessler (*pro hac vice*) <br> David G. Feher (*pro hac vice*) <br> David L. Greenspan (*pro hac vice*) <br> Adam I. Dale (*pro hac vice*) <br> Sarah L. Viebrock (*pro hac vice*) <br> Neha Vyas (*pro hac vice*) <br> 200 Park Avenue <br> New York, NY 10166-4193 <br> Telephone: (212) 294-4698 <br> Facsimile: (212) 294-4700 <br> jkessler@winston.com <br> dfeher@winston.com <br> dgreenspan@winston.com <br> aidale@winston.com <br> sviebrock@winston.com <br> nvyas@winston.com <br><br> Jeanifer E. Parsigian (SBN 289001) <br> 101 California Street, 34th Floor <br> San Francisco, CA 94111-5840 <br> Telephone: (415) 591-1000 <br> Facsimile: (415) 591-1400 <br> jparsigian@winston.com <br><br> *Counsel for Plaintiffs and the Proposed Classes* |

| | |
|---|---|
| LATHAM & WATKINS LLP | WILKINSON STEKLOFF LLP |
| By:    */s/ Christopher S. Yates* <br>       Christopher S. Yates (SBN 161273) <br> Aaron T. Chiu (SBN 287788) <br> 505 Montgomery Street, Suite 2000 <br> San Francisco, CA 94111 <br> Telephone: (415) 391-0600 <br> Facsimile: (415) 395-8095 <br> Chris.yates@lw.com <br> Aaron.chiu@lw.com <br><br> Anna M. Rathbun (SBN 273787) <br> 555 Eleventh Street, NW, Suite 1000 <br> Washington, DC 20004 <br> Telephone: (202) 637-1061 <br> Facsimile: (202) 637-2201 <br> Anna.rathbun@lw.com <br><br> D. Erik Albright (*pro have vice*) <br> Jonathan P. Heyl (*pro have vice*) <br> Gregory G. Holland (*pro have vice*) <br> FOX ROTHSCHILD LLP <br> 230 North Elm Street, Suite 1200 <br> Greensboro, NC 27401 <br> Telephone: (336)0378-5368 <br> Facsimile: (336) 378-5400 <br> ealbright@foxrothschild.com <br> jheyl@foxrothschild.com <br> gholland@foxrothschild.com <br><br> *Attorneys for Defendant Atlantic Coast Conference* | By:    */s/ Rakesh N. Kilaru* <br>       Rakesh N. Kilaru (*pro hac vice*) <br> Beth A. Wilkinson *(pro hac vice)* <br> Kieran Gostin (*pro hac vice*) <br> Calanthe A. Cope-Kasten (*pro hac vice*) <br> 2001 M Street NW, 10th Floor <br> Washington, D.C. 20036 <br> Telephone: (202) 847-4000 <br> Facsimile: (202) 847-4005 <br> bwilkinson@wilkinsonstekloff.com <br> rkilaru@wilkinsonstekloff.com <br> kgostin@wilkinsonstekloff.com <br> carat@wilkinsonstekloff.com <br><br> Jacob K. Danziger (SBN 278219) <br> ARENT FOX SCHIFF LLP <br> 44 Montgomery Street, 38th Floor <br> San Francisco, CA 94104 <br> Telephone: (734) 222-1516 <br> Facsimile: (415) 757-5501 <br><br> *Attorneys for Defendant National Collegiate Athletic Association* |

| | |
|---|---|
| COOLEY LLP | MAYER BROWN LLP |
| By: */s/ Whitty Somvichian* <br>Whitty Somvichian (SBN 194463)<br>Kathleen R. Hartnett (SBN 314267)<br>Ashley Kemper Corkery (SBN 301380)<br>3 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111-4004<br>Telephone: (415) 693-2000<br>Facsimile: (415) 693-2222<br>wsomvichian@cooley.com<br>khartnett@cooley.com<br>acorkery@cooley.com<br><br>Mark Lambert (SBN 197410)<br>3175 Hanover Street<br>Palo Alto, CA 94304-1130<br>Telephone: (650) 843-5000<br>Facsimile: (650) 849-7400<br>mlambert@cooley.vom<br><br>Dee Bansal (*pro hac vice*)<br>1299 Pennsylvania Ave. NW, Suite 700<br>Washington, DC 20004-2400<br>Telephone: (202) 842-7800<br>Facsimile: (202) 842-7899<br>dbansal@cooley.com<br><br>*Attorneys for Defendant Pac-12 Conference* | By: */s/ Britt M. Miller* <br>Britt M. Miller *(pro hac vice)*<br>Matthew D. Provance (*pro hac vice*)<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 782-0600<br>Facsimile: (312) 701-7711<br>bmiller@mayerbrown.com<br>mprovance@mayerbrown.com<br><br>Christopher J. Kelly (SBN 276312)<br>Two Palo Alto Square, Suite 300<br>3000 El Camino Real<br>Palo Alto, CA 94306<br>Telephone: (650) 331-2000<br>Facsimile: (650) 331-2060<br>cjkelly@mayerbrown.com<br><br>*Attorneys for Defendant The Big Ten Conference, Inc.* |

| | |
|---|---|
| ROBINSON BRADSHAW & HINSON, P.A. | SIDLEY AUSTIN LLP |

By:  */s/ Robert W. Fuller III*
    Robert W. Fuller, III *(pro hac vice)*
Lawrence C. Moore, III *(pro hac vice)*
Amanda P. Nitto *(pro hac vice)*
101 N. Tryon St., Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rfuller@robinsonbradshaw.com
lmoore@robinsonbradshaw.com
anitto@robinsonbradshaw.com

Mark J. Seifert (SBN 217054)
SEIFERT ZUROMSKI LLP
One Market Street, 36th Floor
San Francisco, CA 941105
Telephone: (415) 999-0901
Facsimile: (415) 901-1123
mseifert@szllp.com

*Attorneys for Defendant Southeastern Conference*

By:  */s/ David L. Anderson*
    David L. Anderson
dlanderson@sidley.com
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7412

Angela C. Zambrano *(pro have vice)*
Natali Wyson *(pro hac vice)*
Angela.zambrano@sidley.com
nwyson@sidley.com
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214 969-3529
Fax: (214) 969-3558

Chad Hummel (SBN 139055)
chummel@sidley.com
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 595-9505
Fax: (310) 595-9501

*Attorneys for Defendant Big 12 Conference*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatories above.

*/s/ Jeanifer E. Parsigian*
JEANIFER E. PARSIGIAN