`

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COLLEGE ATHLETE NIL LITIGATION | Case No. 20-cv-03919 CW<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO EXCLUDE BARBARA OSBORNE'S OPINIONS FROM THE CLASS CERTIFICATION PROCEEDINGS**<br><br>(Re: Dkt. No. 293) |

Now before the Court is Plaintiffs' motion to exclude under Federal Rule of Evidence 702 from the class certification proceedings the opinions and report of Barbara Osborne, Defendants' expert on Title IX.  Docket No. 293.  Defendants oppose the motion.  Docket No. 305.  For the reasons set forth below, the Court grants the motion and excludes Osborne's opinions from the class certification proceedings.

I.      **BACKGROUND**

Barbara Osborne is Defendants' expert on Title IX.  Osborne Rep., Docket No. 254-3 (SEALED).  Osborne is a professor at the University of North Carolina at Chapel Hill with a joint appointment in the Department of Exercise and Sport Science and the School of Law.  *Id.* at 5. Osborne directs the graduate program in Sport Administration at the Department of Exercise and Sport Science, and she teaches courses on college athletics, NCAA governance and compliance, and sports law.  *See id.*  Osborne has a juris doctor degree from Boston College Law School.  *Id.* Osborne is also an independent Title IX consultant who has conducted Title IX programmatic reviews, audits, and evaluations for collegiate institutions, school systems, and athletics programs.

United States District Court
Northern District of California

1    *See id.* at 6.  Osborne has been appointed by courts in Pennsylvania, Florida, and Connecticut to

2    provide Title IX education and training at educational institutions as part of settlements, and to

3    conduct ongoing and periodic assessments of athletics programs pursuant to Title IX.  *See id.* at 6.

4    Osborne previously worked at Brandeis University's athletics department for fifteen years, where

5    she served as an Associate Athletics Director and Senior Woman Administrator.  *See id.*  Brandeis

6    University competes in NCAA athletics in Division III, not Division I.  Osborne Dep. Tr. at 29,

7    Docket No. 290-1.  Osborne has not worked for the NCAA or any of the Conference Defendants,

8    *id.* at 48, and she has never been an administrator at a school with a Division I athletic program or

9    at a school with a football team, *id.* at 30, 177.

10   The following is a summary of Osborne's opinions and report, which Defendants filed in

11   support of their opposition to Plaintiffs' motion for certification under Rule 23(b)(3) of proposed

12   classes that seek damages for the use of student-athletes' names, images, and likenesses (NIL) in

13   broadcasts of FBS football and Division I basketball games.

14   **Assignment.**  Osborne was asked by Defendants (1) to "evaluate Plaintiffs' Motion for

15   Class Certification and the accompanying expert reports" of Dr. Daniel A. Rascher and Edwin

16   Desser, who are Plaintiffs' economics and broadcasting rights experts, respectively; and (2) to

17   "assess whether there are Title IX implications and/or gender equity concerns raised by" the model

18   designed by Dr. Rascher for calculating damages for the use of proposed class members' NIL in

19   broadcasts (hereinafter, Dr. Rascher's BNIL model).[1]  Osborne Rep. at 7-8.  To perform this

20   assignment, Osborne "used a methodology based on the one [she] normally use[s] in the other

21   Title IX audits or reviews" that was tailored to the facts of this case, which involved reviewing

22

23      [1] Dr. Rascher's BNIL model is described in more detail in his report.  *See* Rascher Rep. at
         91-95 & Exhibits 10-12, Docket No. 209-2.  Dr. Rascher opined that, absent the challenged rules
24      (i.e., in his but-for world), members of the relevant proposed classes (i.e., student-athletes who
         played FBS football and men's and women's Division I basketball during the class period and
25      received a full grant-in-aid) would have received payments from their respective conferences for
         the use of their NIL in broadcasts of their respective sports based on the revenues each conference
26      received from broadcast contracts for each of those sports.  Because those payments would have
         been derived from the broadcast revenues that each conference made for each of the relevant
27      sports, and men's sports generate more broadcast revenues than women's sports, the payments
         contemplated by Dr. Rascher's BNIL model would have been higher for male student-athletes
28      relative to female student-athletes.

documents, depositions, and then conducting a "final analysis with the requirements of Title IX in mind." *See id.*

**Overview of Title IX**.  Osborne provided an overview of the legislative history, purpose, "fundamentals," and "historic application" of Title IX.  Osborne Rep. at 15.  Osborne stated that she is "familiar with the history and purpose of Title IX from [her] experiences as a student-athlete, athletics administrator, teacher, scholar, and consultant."  *See id.*  Osborne's opinions regarding the "fundamentals" of Title IX appear to be based on her interpretation of Title IX regulations, relevant policy guidance issued by the Department of Education's Office for Civil Rights (OCR), which is the federal agency charged with enforcing Title IX, and some case law. *See id.* at 18-24.  According to Osborne, Title IX prohibits educational institutions that receive federal financial assistance from discriminating on the basis of sex in the operation of their intercollegiate athletics programs.  *Id.* at 13, 24.  OCR "assesses compliance" with "three primary areas within an athletics program": (1) financial assistance; (2) treatment and benefits; and (3) participation opportunities.  *Id.* at 17-18 & n.23.

According to Osborne, the financial assistance provisions of Title IX prohibit institutions from providing "financial assistance" in a discriminatory manner based on sex and they require institutions to make available financial assistance to student-athletes of both genders in an aggregate amount proportional to their athletic participation rates.  *Id.* at 13, 18-19.  Osborne opined that individual assessments at each institution are required to determine the ratio of financial assistance that can be provided at each institution pursuant to Title IX's proportionality requirements.  *See id*. at 20.  Osborne did not provide a definition of "financial assistance" in her report other than the circular statement that "financial assistance" is "broad enough to include any financial assistance offered to student-athletes by an entity subject to Title IX."  *See id.* at 19.  The only support that Osborne cites to support that statement is 34 C.F.R. § 106.37, which is the regulation that prohibits institutions covered by Title IX from discriminating based on gender in the provision of "financial assistance" to students.  That regulation does not define "financial assistance" but it refers to awards of financial aid, fellowships, "athletic scholarships," and "grants-in-aid."  *See* 34 C.F.R. § 106.37.  During her deposition, Osborne testified that she was

United States District Court
Northern District of California

1    "not aware of any cases" that have addressed the question of whether Title IX's regulations on

2    "financial assistance" apply to non-scholarship aid.  *See* Osborne Dep. Tr. at 123.

3         Osborne opined that the equal treatment and benefits provisions of Title IX require that the

4    treatment and benefits each institution provides to its men's athletic program be equivalent to

5    those it provides to its women's athletics program.  Osborne Rep. at 13, 21-22.  Osborne opined

6    that determining compliance with those requirements requires examining the availability, quality,

7    and kinds of benefits, opportunities, and treatment for student-athletes across a "laundry list" of

8    "athletics program components," which include equipment and supplies, travel and per diem

9    allowances, coaching and tutoring, medical and training facilities, publicity, recruitment, and

10   support services.  *See id.* at 21.  Osborne did not provide a definition in her report for any of the

11   items on the laundry list.  *See id.*  Osborne opined that, for each program component on the

12   laundry list, Title IX requires a comparison of the men's athletics program as a whole to the

13   women's athletics program as a whole to determine whether male and female student-athletes are

14   treated in an equitable manner.  *See id.* at 21-22.  Osborne opined that an institution subject to

15   Title IX is "obligated to use all revenue from all sources [including from sources outside of the

16   institution] to provide equitable opportunities and treatment for male and female student-athletes."

17   *See id.* at 24.

18        According to Osborne, the participation opportunities requirements of Title IX focus on the

19   relative level of equity in the athletics participation opportunities that are offered at each

20   institution; compliance with those requirements depends on whether the selection of sports and

21   levels of competition at each institution effectively accommodate the interests and abilities of

22   student-athletes of both sexes.  *See id.*  The requirements mandate equal opportunity in the

23   selection of sports and levels of competition available to each sex and prohibit subclassifying

24   sports in a manner that disproportionately offers benefits or opportunities to members of one sex.

25   *See id.*

26        Osborne asserted that Congress rejected several efforts over the years to exclude revenue-

27   generating sports from the requirements of Title IX.  *See id.* at 13.

28

4

1   **Opinion that Dr. Rascher's BNIL model and the payments it contemplates are**

2   **subject to Title IX.**  Osborne opined that the payments contemplated by Dr. Rascher's BNIL

3   model, which would have been made by the Power Five Conferences, not by schools, in Dr.

4   Rascher's but-for world, are "subject to Title IX."  Osborne Rep. at 24-25.  The basis for that

5   opinion is that: "(a) Conferences are governed and controlled by a board of directors, which is

6   composed of representatives (usually Presidents and Chancellors) of their member institutions; (b)

7   Member institutions own the broadcast rights to their events and merely grant or transfer those

8   rights to the Conferences for purposes of negotiating favorable, Conferencewide broadcast

9   agreements; (c) Member institutions control the distribution of broadcast revenues generated by

10  Conference-organized and NCAA-promoted events (e.g., tournaments and championships); (d)

11  Conference bylaws, which are adopted or amended by each Conference's board of directors,

12  dictate the distribution of broadcast revenue to the member institutions; and (e) Funds are not

13  exempt from Title IX merely because they come from an outside source."  *Id*. at 30.  Osborne

14  opined that, "[i]n light of this combination of factors . . . Plaintiffs' Broadcast Model requires

15  member institutions' substantial involvement and approval," and that "substantial institutional

16  involvement and approval implicates Title IX."  *Id.*

17      The only authority that Osborne cited to support the proposition that schools' "substantial

18  involvement and approval" implicates Title IX is "34 C.F.R. § 106.37(a)(1)(2)."  *See id.* at 30

19  n.84.  That regulation does not exist.[2]  During her deposition, Osborne admitted that, to the best of

20  her knowledge, no "U.S. body with legal authority ever found a school liable under Title IX

21  because of the actions of the conferences under which it was a member[.]"  Osborne Dep. Tr. at

22  99.  She also admitted that there has never been "an allegation that because of something that a

23  conference did, a school's Title IX liability was triggered[.]"  *See id.* at 101.

24      Osborne opined in her report that, even if the payments contemplated by Dr. Rascher's

25  BNIL model could be made by the Power Five Conferences *without* the schools' direct

26

27      [2] 34 C.F.R. § 106.37(a)(1) and 34 C.F.R. § 106.37(a)(2) do exist but Osborne did not cite
    either in support of her conclusion that the BNIL payments contemplated by Dr. Rascher are
28  subject to Title IX.

involvement as described above, the payments would nevertheless "implicate Title IX" because schools would need to provide to the conferences the names, contact information, and financial aid records for student-athletes who are to receive the payments. *See* Osborne Rep. at 38. Osborne cited no authority or evidence to support the proposition that schools would need to provide to the conferences the information just described. Osborne opined that "providing personal information for student-athletes to facilitate the disparate payments Plaintiffs propose constitutes 'significant assistance'" implicating 34 C.F.R. § 106.31(b)(6). *Id.* at 38. Osborne cited no authority to support the proposition that the provision of student-athletes' personal information to conferences to facilitate the BNIL payments would qualify as "significant assistance" within the meaning of 34 C.F.R. § 106.31(b)(6).[3] *See id.*

**Opinions that Dr. Rascher's BNIL model and posited payments violate Title IX.**

Osborne concluded that "Plaintiffs' Broadcast Model violates Title IX by creating a significant disparity in the financial support provided to student-athletes based on sex." *See id.* at 39. Osborne opined that Dr. Rascher's BNIL model and the payments it contemplates "are not compatible with Title IX, and in particular, Title IX's financial assistance provisions, equal opportunities provision, and equal treatment provision" because the model "forces schools to treat male and female student-athletes differently and offer them vastly disparate benefits." *See id.* at 15.

In addition to those definitive conclusions regarding the applicability of Title IX to Dr. Rascher's BNIL model, and whether the posited BNIL payments would violate Title IX, Osborne's report also contains statements about what she "would advise" or "would conclude" if she "were conducting an audit" of an institution that "provided or facilitated the payments" proposed by Dr. Rascher. *See, e.g., id.* at 13, 18. Osborne opined that, if she were conducting an

---

[3] The only authority that Osborne cited is 34 C.F.R. § 106.31(b)(6) itself, but that regulation does not define "significant assistance." Section 106.31(b)(6) provides that an institution that is a recipient of federal financial assistance (and is therefore subject to Title IX) shall not "[a]id or perpetuate discrimination against any person by providing significant assistance to any agency, organization, or person which discriminates on the basis of sex in providing any aid, benefit or service to students or employees[.]" *See* 34 C.F.R. § 106.31(b)(6).

audit of a school, she "would advise that providing benefits to select teams in such a lopsided manner along sex-based lines would violate Title IX," *id.* at 13, and she "would flag Plaintiffs' Broadcast Model as a violation of Title IX's requirements" in each of the three areas described above, *id.* at 18.  Osborne testified that, when she flags Title IX violations in conducting an audit, she's "providing advice" to the school that is the subject of the audit but that advice is in the form of a "consulting opinion," not in the form of a "legal opinion."  Osborne Dep. Tr. at 153-54. Osborne testified that her "report is not [her] legal opinion."  *Id.* at 56.

**Opinions that the payments contemplated by Dr. Rascher's BNIL model cannot be calculated on a classwide basis if the payments are subject to Title IX.**  Osborne opined that the "Title IX concerns outlined [in her report] cannot be cured by adjusting" Dr. Rascher's BNIL model to comply with Title IX, because any such adjustment would "require a proportionality test for each campus under Title IX's financial aid regulations."  Osborne Rep. at 50.  Osborne explained that compliance with "Title IX requires that financial aid be provided proportional to participation and financial assistance of all types be distributed in a nondiscriminatory manner," and ensuring compliance with those requirements "necessitates a highly individualized inquiry based on the percentage of men and women participants at each member institution."  *Id.* at 50-51. Thus, according to Osborne, a proportional split of the BNIL payments contemplated by Dr. Rascher's model "would be difficult (if not impossible) to deduce on a class-wide basis because of the separate analysis that would still need to be performed every year at each school."  *See id.* at 51.  Osborne opined that, because the allocation of financial assistance would differ from institution to institution and from year to year, "there is no uniform formula for aid allocations that could be applied in an across-the-board manner to all institutions."  *See id.*

**Opinion that it would not be possible to distribute payments for BNIL pursuant to Dr. Rascher's BNIL model in a manner that complies with Title IX.**  Osborne opined that, even if Plaintiffs "could overcome complex proportionality calculations to ensure Title IX compliance with percentage-based disbursements," there are other reasons why the payments contemplated by Dr. Rascher's BNIL model are not feasible.  First, according to Osborne, "[i]t would be virtually impossible to locate sufficient additional funds to ensure some form of

7

compensation for female student-athletes proportional to the significant amounts that Plaintiffs contemplate for male student-athletes under the Broadcast Model." *See id.* at 52-53. Second, Osborne opined that, even if additional funds could be located to ensure that broadcast NIL payments are proportional, making proportional broadcast NIL payments would likely require "massive overhauls to athletics programs" at each school, which would likely result in a reduction of athletics participation opportunities, which in turn would harm some student-athletes. *See id.* at 52-55. Further, the additional payments to female student-athletes that would need to be made to ensure that Title IX's proportionality requirements are met (i.e., payments above what Dr. Rascher opined should be paid to female student-athletes pursuant to his BNIL model) would "amount to prohibited pay-for-play," because those additional payments would not constitute compensation for female student-athletes' NIL. *See id*. at 53.

Osborne testified that conducting a Title IX audit requires looking at a school's budgets and expenditures. Osborne Dep. Tr. at 183. She admitted, however, that her opinions regarding the feasibility of making broadcast NIL payments that comply with Title IX are not based on any Title IX audits or independent or empirical studies. *See id.* at 183-84; *see also id.* at 179-80. She also testified that she did not look at the budgets for the schools in the Power Five Conferences to determine whether adjusting Dr. Rascher's BNIL model to comply with Title IX would be possible. *See id.* at 186. She asserted that she did not look at how the Power Five Conferences spend the rest of the revenue they make from broadcast contracts (i.e., the broadcast contract revenue that Dr. Rascher does not propose allocating to student-athletes as payments for their BNIL) to determine whether that revenue could be used to comply with Title IX. *See id.* at 187-88, 197.

## II.     LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert is qualified as a witness if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The proponent of

1    expert testimony has the burden of proving admissibility in accordance with Rule 702.  *See* Fed.

2    R. Evid. 702 advisory committee's note to 2000 amendment.  "Rule 702 should be applied with a

3    'liberal thrust' favoring admission[.]"  *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232

4    (9th Cir. 2017) (citation and internal quotation marks omitted).

5         An expert may testify if the proponent demonstrates that: (i) the expert is qualified; (ii) the

6    expert's opinions are relevant to the suit; and (iii) the expert's opinions are reliable.  *See Daubert*

7    *v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993).  "[T]he trial court has discretion to

8    decide how to test an expert's reliability as well as whether the testimony is reliable, based on the

9    particular circumstances of the particular case."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.

10   2010) (citation and internal quotation marks omitted).  The focus of the district court's analysis

11   "must be solely on principles and methodology, not on the conclusions that they generate."

12   *Daubert*, 509 U.S. at 595.  In other words, the court's task "is to analyze not what the experts say,

13   but what basis they have for saying it."  *Wendell*, 858 F.3d at 1232 (citation and internal quotation

14   marks omitted).  "Shaky but admissible evidence is to be attacked by cross examination, contrary

15   evidence, and attention to the burden of proof, not exclusion."  *Primiano*, 598 F.3d at 564.

## III.   DISCUSSION

17        Plaintiffs move to exclude Osborne's opinions on the grounds that (1) her opinions that

18   Title IX applies to Dr. Rascher's BNIL model and the payments it contemplates, and that those

19   payments would violate Title IX, are impermissible legal conclusions and are unreliable; (2) her

20   opinions about the impossibility of modifying Dr. Rascher's BNIL payments to comply with Title

21   IX are unreliable; and (3) her opinions are irrelevant to the class certification inquiry.

### A.   Whether Osborne's opinions that Title IX applies to Dr. Rascher's BNIL model payments and that those payments would violate Title IX are impermissible legal conclusions or are otherwise unreliable

24        Plaintiffs move to exclude Osborne's opinions regarding the requirements for complying

25   with Title IX, and the application of those requirements to Dr. Rascher's BNIL model, on the

26   ground that they constitute impermissible legal conclusions.  Docket No. 293 at 12-13.  This is

27   because, according to Plaintiffs, Osborne's opinions interpret the legal requirements of Title IX

28   and apply those requirements to Dr. Rascher's BNIL model to conclude that the model and the

United States District Court
Northern District of California

but-for world payments it contemplates would violate Title IX.  Docket No. 293 at 2.  Plaintiffs contend that, if the Court does not exclude the opinions at issue on the basis that they are impermissible legal conclusions, it should exclude them as unreliable.  Plaintiffs argue that the opinions in question are premised on Osborne's legal conclusion that Title IX applies to the payments contemplated by Dr. Rascher's BNIL model even though they would have been made by conferences, not schools, but Osborne has not identified any reliable support for her conclusion that a school's Title IX obligations can be triggered because of the acts of a conference, or that the BNIL payments at issue fall within the scope of the "financial assistance" Title IX regulations that Osborne cites in her report.  *Id.* at 7.

Defendants respond that Osborne's opinions are not improper legal conclusions because they are not on the ultimate legal issue of Sherman Act liability in this case, and instead are being offered to demonstrate that Dr. Rascher's BNIL damages model suffers from a "fatal flaw" as a result of its purported failure to account for schools' Title IX obligations and the individualized assessments that those institutions must conduct to comply with Title IX.  Docket No. 305 at 1. Defendants further contend that, even if some of Osborne's opinions "are legal in nature, they are admissible because they are helpful in illuminating Title IX's application to Plaintiffs' unprecedented but-for world structure."  *Id.*  Defendants also argue that Plaintiffs' disagreement with Osborne's opinion that the BNIL payments at issue implicate Title IX is not a proper basis for excluding her opinions because Osborne has a sufficient basis for her conclusion that the BNIL payments at issue implicate Title IX, namely her review of conference bylaws and various agreements and other documents in the record.  Docket No. 305 at 12-13.  Defendants contend that Osborne does not need to cite case law for her opinions to be adequately based on "sufficient facts or data" as required by Rule 702 because no such case law exists, as the but-for world envisioned by Dr. Rascher's BNIL model is unprecedented.  *See id.*

The plain language of Federal Rule of Evidence 702 is clear that an expert may testify in the form of an opinion if her testimony "will help the trier of fact to understand the *evidence* or to *determine a fact* in issue."  *See* Fed. R. Evid. 702 (emphasis added).  "Expert testimony is not proper for issues of law.  Experts interpret and analyze factual evidence.  They do not testify about the law[.]"  *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (citation and

internal quotation marks omitted).[4]  "Resolving doubtful questions of law is the distinct and exclusive province of the trial judge."  *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) (internal citations and quotation marks omitted).  "[E]xpert testimony intended to aid the Court in choosing the correct rule of law or in interpreting that law constitutes impermissible opinion testimony on a question of law."  *Netscape Commc'ns Corp. v. St. Paul Mercury Ins. Co.*, No. C 06-00198 JW, 2010 WL 11519412, at *5 (N.D. Cal. July 16, 2010);[5] *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court.").

Here, Osborne's opinions that the but-for world payments contemplated by Dr. Rascher's BNIL model are subject to Title IX, and that those payments "violate," are "not compatible with," "contradict," or "implicate" Title IX, are the product of Osborne's application of her interpretation of the requirements of Title IX to the facts of this case.  *See, e.g.*, Osborne Rep. at 25 (opining that "the Broadcast Model payments Plaintiffs propose" are "subject to Title IX"); *id.* at 39 ("Based on my experience, my opinion is that Plaintiffs' Broadcast Model violates Title IX"); *id.* at 15 ("the contemplated broadcast revenue share payments are not compatible with Title IX"); Osborne Dep. Tr. at 57 ("I'm providing my opinion about how I would apply the law"); *id.* at 57 ("Q: And after you applied the model to the law and the facts, you come to this conclusion that the payment scheme is a violation of Title IX, right? [objection omitted] A: Yes."); *id.* at 165 ("I looked at the broadcast model and applied Title IX, and so I offered my opinion as whether or not Title IX would be implicated by that model.").  As such, those opinions are impermissible legal conclusions and the Court excludes them on that basis.  *See Humphreys v. Regents of Univ. of Cal.*, No. C 04-03808 SI, 2006 WL 1867713, at *5 (N.D. Cal. July 6, 2006) (excluding expert testimony that "consist[ed] of little more than a recitation of plaintiff's evidence, combined with

---

[4] Defendants do not address or distinguish this case in their opposition to the present motion even though Plaintiffs cited it in their opening brief.

[5] Defendants do not address or distinguish this case in their opposition to the present motion even though Plaintiffs cited it in their opening brief.

her conclusion that the evidence demonstrates that plaintiff was discriminated against" in violation of Title IX); *United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175-TEH, 2016 WL 3268994, at *1-2 (N.D. Cal. June 15, 2016) (holding that expert may not "offer any opinions about whether [defendant] PG&E violated the Pipeline Safety Act").

Osborne's opinions about what Title IX requires or does not require, based on her understanding of the history of Title IX or otherwise, also are impermissible legal conclusions. *See Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 952 (D. Minn. 2018) ("The Court will grant SCSU's motion [to exclude] to the extent that Dr. Lopiano seeks to testify about the legal requirements of Title IX or about her conclusions as to whether SCSU complies with Title IX," because "[e]xpert witnesses may not testify regarding the requirements of law") (citation and internal quotation marks omitted).

Osborne opined that, if she were conducting a Title IX audit of an institution that provided or facilitated the payments proposed by Dr. Rascher's BNIL model, (1) she would "advise" or "conclude" that the payments would violate Title IX; and (2) she would "flag" those payments as violations of Title IX. *See, e.g.*, Osborne Rep. at 13, 18, 42. Those opinions are worded in less conclusive terms than the ones discussed above. Osborne testified that her report is not a legal opinion, and that any advice she may offer in the context of a Title IX audit would be as a consultant, not a lawyer. *See* Osborne Dep. Tr. at 56, 152-54. Nevertheless, the opinions in question are a reflection of Osborne's application of her interpretation of Title IX's requirements to the facts of the case, and Defendants rely on them for the purpose of establishing a legal conclusion, namely that Title IX applies to the payments contemplated by Dr. Rascher's BNIL model and that such payments would violate Title IX. *See, e.g.*, Docket No. 252 at 29 ("As demonstrated above and in Osborne's report, Title IX obligations would outright preclude the sort of pay disparity proposed by Rascher's BNIL formula"); *see id.* at 26 ("The gaping disparity yielded by Plaintiffs' BNIL injury and damages formula violates Title IX—and does so in a way that cannot be solved."). As such, the Court excludes the opinions in question on the ground that they are impermissible legal conclusions.

Defendants argue that the opinions at issue are not impermissible legal conclusions because they are not about "the ultimate legal issue" of liability under Section 1 of the Sherman

Act.  Docket No. 305 at 7-8.  However, "there can be multiple ultimate issues in a case."  *See* 29 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Evid. § 6284 (2d ed.).  Defendants have not shown that the question of whether Title IX applies to the payments contemplated by Dr. Rascher's BNIL model is not an ultimate issue in this action.  Given that Defendants contend that Plaintiffs' motion for certification under Rule 23(b)(3) must be denied as to class members who allege BNIL injury on the basis that Title IX applies to Dr. Rascher's posited BNIL payments, the Court finds that the question of whether Title IX applies to those payments is an ultimate issue, at least at the class certification stage.  Osborne's opinions are, therefore, impermissible legal conclusions.  *See Hangarter*, 373 F.3d at 1016 ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.  Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court.").

Defendants also contend that, even if Osborne's opinions are legal conclusions, they are admissible because Title IX is "complex subject matter."  Docket No. 305 at 9-10.  However, Osborne's opinions are not being offered to assist a jury in determining complex issues but are instead being offered to help this Court decide whether Plaintiffs have satisfied the requirements of Rule 23(b)(3) for certification of three damages classes.  *See* Docket No. 305 at 5 (Defendants arguing that Osborne's opinions "are helpful to the Court in resolving Plaintiffs' class certification motion").  To the extent that the resolution of Plaintiffs' class certification motion requires a determination of whether Title IX applies to the payments contemplated by Dr. Rascher's BNIL model, that question must be brought to this Court for resolution.  It would be of no assistance to the Court for that question to be delegated to an expert for determination.

Even if the opinions discussed above were not subject to exclusion on the basis that they are impermissible legal conclusions, the Court would exclude them for the additional, independent reasons that they are unreliable and not helpful to the Court in resolving the issue of whether Plaintiffs have shown that their proposed damages classes can be certified under Rule 23(b)(3).  Osborne's opinions that Dr. Rascher's BNIL payments violate, are contrary to, or implicate Title IX, and opinions that flow from them, are predicated on her conclusion that those payments are subject to Title IX even though they would have been made by the conferences rather than schools.  That conclusion, which is legal in nature, lacks adequate support.

13

Osborne concluded that the payments contemplated by Dr. Rascher's BNIL model, which would have been made by the Power Five Conferences and not by schools, are "subject to Title IX." Osborne Rep. at 24-25. The basis for that opinion is quoted above. *See id.* at 30. Osborne opined that, "[i]n light of this combination of factors . . . Plaintiffs' Broadcast Model requires member institutions' substantial involvement and approval," and that "substantial institutional involvement and approval implicates Title IX." *Id.*

The only authority that Osborne cited to support her conclusion that schools' purported "substantial involvement and approval" in the BNIL payments implicates Title IX is "34 C.F.R. § 106.37(a)(1)(2)." *See id.* at 30 n.84. As noted, that regulation does not exist. Further, Section 106.37 of Title 34 of the Code of Federal Regulations governs the provision of "financial assistance" to students of institutions that receive federal aid and are, therefore, subject to Title IX. That section does not define "financial assistance" but it refers to awards of financial aid, fellowships, "athletic scholarships," and "grants-in-aid." *See* 34 C.F.R. § 106.37. Osborne did not cite any authority to support the premise implicit in her conclusion that the payments contemplated by Dr. Rascher's BNIL model fall within the scope of 34 C.F.R. § 106.37, namely that the payments qualify as "financial assistance" under 34 C.F.R. § 106.37. As noted, Osborne did not provide a definition of "financial assistance" in her report other than the circular statement that "financial assistance" is "broad enough to include any financial assistance offered to student-athletes by an entity subject to Title IX."[6] *See* Osborne Rep. at 19. During her deposition, Osborne admitted that she was "not aware of any cases" that have addressed the question of whether Title IX's regulations on "financial assistance" apply to non-scholarship aid. *See* Osborne Dep. Tr. at 123. Osborne also did not identify in her report any legal opinions, OCR opinions or determinations, or prior Title IX audits that have concluded that "financial assistance" covers non-scholarship aid. Accordingly, the Court finds that Osborne's conclusion that the BNIL payments in question fall within the scope of 34 C.F.R. § 106.37, which, again, is a legal conclusion, is unreliable. Any experience that Osborne may have in the context of conducting audits or other

---

[6] As support for this statement, Osborne cited only 34 C.F.R. § 106.37, which, as noted, does not define "financial assistance."

1    activities related to Title IX, or her familiarity with the history and purpose of Title IX, are not a

2    sufficient basis for her otherwise unsupported legal conclusion that the BNIL payments at issue

3    qualify as "financial assistance" under 34 C.F.R. § 106.37.

4         Osborne also opined in her report that, even if the payments contemplated by

5    Dr. Rascher's BNIL model could be made by the Power Five Conferences *without* the schools'

6    direct involvement, the payments would nevertheless "implicate Title IX" because schools would

7    need to provide to the conferences with the names, contact information, and financial aid records

8    for student-athletes who are to receive the payments. *See* Osborne Rep. at 38.  Osborne cited no

9    authority or evidence to support her opinion that schools would need to provide the information

10   just described.  That alone renders her opinion unreliable.  Osborne opined that "providing

11   personal information for student-athletes to facilitate the disparate payments Plaintiffs propose

12   constitutes 'significant assistance'" in violation of 34 C.F.R. § 106.31(b)(6).  *Id.* at 38.  Osborne

13   cited no authority to support her opinion that the provision of student-athletes' personal

14   information to conferences to facilitate the BNIL payments would qualify as "significant

15   assistance" within the meaning of 34 C.F.R. § 106.31(b)(6).  *See id.*  The only authority that

16   Osborne cited is 34 C.F.R. § 106.31(b)(6) itself, but that regulation does not define "significant

17   assistance."  Section 106.31(b)(6) provides that an institution that is a recipient of federal financial

18   assistance (and is therefore subject to Title IX) shall not "[a]id or perpetuate discrimination against

19   any person by providing significant assistance to any agency, organization, or person which

20   discriminates on the basis of sex in providing any aid, benefit or service to students or

21   employees[.]"  *See* 34 C.F.R. § 106.31(b)(6).  Osborne also cited no authority showing that the

22   BNIL payments at issue would qualify as "aid, benefit or service" within the meaning of 34 C.F.R.

23   § 106.31(b)(6).  Accordingly, the Court finds that Osborne's conclusion that the BNIL payments

24   in question fall within the scope of 34 C.F.R. § 106.31(b)(6), which is a legal conclusion, and any

25   opinions that flow from that conclusion, are unreliable.  Any experience that Osborne may have in

26   the context of conducting audits or other activities related to Title IX, or her familiarity with the

27   history and purpose of Title IX, are not a sufficient basis for the opinions at issue.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants contend Osborne is not required to cite any legal authority for her conclusion that Title IX applies to the BNIL payments contemplated by Dr. Rascher because "Professor Osborne is a Title IX expert, not a legal expert."  Docket No. 305 at 13.  Given that Title IX is a law, it would stand to reason that being a "Title IX expert" would make one an expert on Title IX law.  However, Defendants' disclaimer that Osborne is not a "legal expert" further supports the Court's finding that her opinions about what Title IX requires, that Title IX applies to the BNIL payments contemplated by Dr. Rascher, and that those payments would violate Title IX, are unreliable and unhelpful.  As noted, those opinions are *legal* in nature notwithstanding Defendants' attempts to characterize them otherwise, and they are being used to support *legal* arguments and conclusions in Defendants' opposition to Plaintiffs' motion for class certification.

Defendants also contend that Osborne is not required to cite any legal authority for her conclusion that Title IX applies to the BNIL payments contemplated by Dr. Rascher because those opinions are supported by her review of conference bylaws and agreements and other documents in the record and because Dr. Rascher's BNIL but-for world is unprecedented.  Docket No. 305 at 13.

The Court is not persuaded.  Conference bylaws and conference agreements may speak to the organizational structure of the conferences and the schools' involvement in the operation of the conferences (which are factual questions), but neither those documents nor other documents in the record can answer the question of whether any involvement by the schools in the conferences' activities can trigger Title IX obligations (which is a question of law).

Defendants' attempt to justify Osborne's failure to adequately support that conclusion by arguing that the dearth of relevant authority is the consequence of the unprecedented nature of Dr. Rascher's BNIL payments is not persuasive.  Authority that is directly on point is unlikely to exist.  Absent authority on point, it is the Court's role to determine legal conclusions.

Accordingly, the Court grants Plaintiffs' motion to exclude Osborne's opinions that the BNIL payments contemplated by Dr. Rascher are subject to, and violate, Title IX, as well as Osborne's opinions about what Title IX requires or does not require, and any opinions that flow therefrom, as discussed above.

1

**B.     Whether Osborne's opinion that it would not be feasible to provide broadcast NIL payments that complied with Title IX is unreliable**

2      Plaintiffs move to exclude Osborne's opinion that it would not be possible to provide

3  broadcast NIL payments to student-athletes in a manner that complied with Title IX, arguing that

4  the opinion is unreliable.  Docket No. 293 at 8-9.  Plaintiffs contend that Osborne is not qualified

5  to offer opinions as to whether it would be possible for Defendants to locate sufficient additional

6  funds to ensure some form of compensation for female student-athletes proportional to the

7  compensation that male student-athletes would receive under Dr. Rascher's BNIL model, because

8  that opinion is economic in nature.  Plaintiffs argue that Osborne is not an economist, and she did

9  not conduct or cite any independent studies or audits to determine whether it would be feasible for

10  Defendants to make proportional broadcast NIL payments to student-athletes.  Plaintiffs contend

11  that Osborne did not, for example, do any analysis of how the conferences currently spend the

12  revenues they generate each year from their broadcast contracts, and she did not conduct any

13  analysis of school budgets to determine whether schools could redistribute a portion of the money

14  they currently spend on coaching salaries and athletic facilities to female student-athletes.  *See id*.

15  at 9.  Plaintiffs also contend that Osborne is not qualified to opine that any additional payments to

16  female student-athletes made to comply with Title IX would amount to prohibited pay-for play,

17  because Osborne did not cite any legal authority or NCAA bylaws to support that opinion.  *See id.*

18  at 9.

19      Defendants respond that Osborne is sufficiently qualified to offer opinions about the

20  financial implications of Dr. Rascher's BNIL model because she "has first-hand experience in

21  athletics department administration, regularly reviews athletics department finances in the course

22  of conducting Title IX audits, and, in her capacity as an expert in this case, reviewed NCAA

23  financials proving that nearly all athletics departments are net-revenue negative."  Docket No. 305

24  at 5; *see also id*. at 20.  Defendants do not address Plaintiffs' arguments with respect to Osborne's

25  lack of qualifications to opine on whether any additional payments to female student-athletes

26  beyond those contemplated in Dr. Rascher's BNIL model would amount to prohibited pay-for-

27  play.  *See id.*

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1      The Court agrees with Plaintiffs that Osborne's opinion about the feasibility of making

2  BNIL payments to student-athletes in a manner that complies with Title IX is unreliable.  Osborne

3  acknowledged that the opinion at issue is not based on any independent or empirical studies.  *See*

4  Osborne Dep. Tr. at 183-84; *see also id.* at 179-80.  She also testified that she did not look at the

5  budgets for the schools in the Power Five Conferences to determine whether adjusting

6  Dr. Rascher's BNIL model and payments to comply with Title IX would be possible.  *See id.* at

7  186.  Osborne also testified that she did not look at how the Power Five Conferences spend the

8  rest of the revenue they make from broadcast contracts.  *See id.* at 187-88, 197.  The Court finds

9  that the opinion at issue lacks sufficient support and, accordingly, grants Plaintiffs' motion to

10  exclude it as unreliable.

11      Defendants have not pointed to any support for Osborne's opinion that any additional

12  payments to female student-athletes beyond those contemplated in Dr. Rascher's BNIL model

13  would amount to prohibited pay-for-play.  *See* Osborne Rep. at 53.  Because the opinion at issue

14  lacks a sufficient foundation, the Court grants Plaintiffs' motion to exclude it as unreliable.

15      **C.**    **Whether Osborne's opinions are pertinent to class certification**

16      Plaintiffs move to exclude Osborne's opinions on the alternative ground that they are not

17  relevant to the resolution of their motion for certification under Rule 23(b)(3).  Docket No. 293 at

18  12-13.

19      Defendants respond that Osborne's opinions are relevant to the class certification inquiry

20  because they "relate to predominance" and thus "bear directly on class certification" under Rule

21  23(b)(3).  *See* Docket No. 305 at 4.

22      Because the Court has excluded Osborne's opinions as impermissible legal conclusions

23  and as unreliable, the Court need not address whether the opinions are subject to exclusion on the

24  alternative basis that they are not pertinent to the class certification proceedings.

25  //

**IV.   CONCLUSION**

For the reasons discussed above, the Court grants Plaintiffs' motion to exclude the opinions of Barbara Osborne from the class certification proceedings.

IT IS SO ORDERED.

Dated: November 3, 2023

CLAUDIA WILKEN
United States District Judge