Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
Meredith Simons (SBN 320229)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com
merediths@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com

Jeanifer E. Parsigian (SBN 289001)
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE COLLEGE ATHLETE NIL LITIGATION

No. 4:20-cv-03919 CW

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO APPROVE MANNER AND FORM OF CLASS NOTICE**

Date: March 28, 2024
Time: 2:30 p.m.
Courtroom: Courtroom 2, 4th Floor
Judge: Hon. Claudia Wilken

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 28, 2024, at 2:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Claudia Wilken, Senior United States District Judge, in Courtroom 2 of the United States District Court for the Northern District of California in Oakland, California, Plaintiffs will move the Court pursuant to Federal Rule of Civil Procedure 23 for entry of an Order appointing Kurtzman Carson Consultants Class Action Services, LLC as the Class Certification Notice Administrator, approving the proposed manner and form of notice, and allowing a 60-day opt-out period.

This motion is based on the accompanying Memorandum of Points and Authorities, the supporting declarations of Carla A. Peak, Steve W. Berman, and attached exhibits; all papers and records on file in this matter; and the arguments of counsel.

Plaintiffs provided Defendants with drafts of the proposed long-form notice and postcard notice on February 8, 2024. Defendants suggested revisions to the long-form notice and postcard notice on February 14, 2024, and Plaintiffs incorporated Defendants' suggested revisions into the proposed notice documents concurrently filed with this Motion.

# TABLE OF CONTENTS


**Page**

NOTICE OF MOTION AND MOTION ..... 2

I. INTRODUCTION ..... 1

II. PROCEDURAL BACKGROUND ..... 1

III. ARGUMENT ..... 3

A. KCC is Qualified to Serve as Notice Administrator ..... 3

B. The Proposed Manner of Notice Complies with Rule 23 and Due Process ..... 4

C. The Proposed Form of Notice Complies with Rule 23 ..... 10

D. A Sixty-Day Opt-Out Period is Adequate and Fair ..... 11

IV. CONCLUSION ..... 12

## TABLE OF AUTHORITIES


Page(s)

**Cases**

*AdTrader, Inc. v. Google LLC*,
2021 WL 2073816 (N.D. Cal. Mar. 23, 2021) ........ 11

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ........ 4

*Chinitz v. Intero Real Estate Servs.*,
2020 WL 7042871 (N.D. Cal. Dec. 1, 2020) ........ 4, 6

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........ 10

*Cruz v. Dollar Tree Stores, Inc.*,
2009 WL 1974404 (N.D. Cal. July 2, 2009) ........ 11

*Ellsworth v. U.S. Bank, N.A.*,
2015 WL 1883911 (N.D. Cal. Apr. 23, 2015) ........ 11

*Fitzhenry-Russell v. Coca-Cola Co.*,
2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) ........ 4

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) ........ 5

*Maslic v. ISM Vuzem*,
2023 WL 8482868 (N.D. Cal. Dec. 7, 2023) ........ 11

*In re Packaged Seafood Prods. Antitrust Lit.*,
2023 WL 2483474 (S.D. Cal. Mar. 13, 2023) ........ 9

*Ross v. Trex Co., Inc.*,
2013 WL 791229 (N.D. Cal. Mar. 4, 2013) ........ 4, 5

*Schneider v. Chipotle Mexican Grill*,
336 F.R.D. 588 (N.D. Cal. 2020) ........ 4, 9

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ........ 4

*Smith v. Keurig Green Mountain, Inc.*,
2022 WL 2644105 (N.D. Cal. July 8, 2022) ........ 6

**Other Authorities**

Fed. R. Civ. P. 23 ........ *passim*

MANUAL FOR COMPLEX LITIGATION § 21.311 (4th ed.) ............................................................9, 10

## I. INTRODUCTION

Pursuant to this Court's Class Certification Order, Plaintiffs Sedona Prince, Grant House, and Tymir Oliver move this Court to appoint Kurtzman Carson Consultants Class Action Services, LLC ("KCC") as the Class Certification Notice Administrator, approve the proposed manner and form of notice to the damages classes, and allow a 60-day opt-out period.

The proposed notice plan satisfies due process and Rule 23 of the Federal Rules of Civil Procedure. The plan will provide class members whose contact information is reasonably available with direct, individual notice via email or regular mail. Class members whose contact information is not available will receive notice via a robust publication campaign, which has both paid digital media and earned media components. The digital media campaign will generate at least 70 million impressions across multiple websites, mobile apps, and social media platforms selected for their popularity with likely class members. The publication campaign alone is expected to reach at least 70 percent of class members, and the notice administrator will also disseminate information about the class via organizational outreach and a case-specific website.

## II. PROCEDURAL BACKGROUND

On September 22, 2023, this Court certified an injunctive relief class defined as "all college athletes who compete on, competed on, or will compete on a Division 1 athletic team at any time between June 15, 2020 and the date of judgment in this matter," excluding officers, directors, and employees of Defendants, and judicial officers presiding over the action and their immediate family members and staff.

On November 3, 2023, this Court certified three proposed damages classes, defined as:

> **Football and Men's Basketball Class**: All current and former college athletes who have received full Grant-in-Aid (GIA) scholarships and compete on, or competed on, a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), at any time between June 15, 2016 and November 3, 2023. This Class excludes the officers, directors, and employees of Defendants. This Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

> **Women's Basketball Class**: All current and former college athletes who have received full GIA scholarships and compete on, or competed on, a Division I women's basketball team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), at any time between June 15, 2016 and November 3, 2023. This Class excludes the officers, directors, and employees of Defendants. This Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.
>
> **Additional Sports Class**: Excluding members of the Football and Men's Basketball Class and members of the Women's Basketball Class, all current or former college athletes who competed on a Division I athletic team prior to July 1, 2021 and who received compensation while a Division I college athlete for use of their name, image, or likeness between July 1, 2021 and November 3, 2023 and who competed in the same Division I sport prior to July 1, 2021. This Class excludes the officers, directors, and employees of Defendants. This Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

Defendants filed a petition challenging certification of the damages classes pursuant to Fed. R. Civ. P. 23(f) on November 17, 2023. The Ninth Circuit denied Defendants' Rule 23(f) petition on January 18, 2024.

After the Court issued its order granting certification of the damages classes, Plaintiffs' counsel solicited bids from five reputable, national prospective class notice administrators. All prospective administrators suggested similar forms and manner of notice. After carefully reviewing each bid, counsel selected KCC to develop a proposed notice plan because KCC offered the most affordable services and has experience providing notice to similar classes in previous litigation.

Plaintiffs provided Defendants with drafts of the proposed long-form notice and postcard notice on February 8, 2024.[1] Defendants suggested revisions to the long-form notice and postcard notice (whose text is identical to that of the email notice[2]) on February 14, 2024.[3] Plaintiffs incorporated Defendants' suggested revisions into the proposed notice documents concurrently filed with this Motion.[4] Plaintiffs also asked Defendants whether they maintain records that contain the names and

---

[1] Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Approval of Manner and Form of Class Notice ("Berman Decl.") ¶ 3.

[2] *See* Exs. B and C to the Declaration of Carla A. Peak ("Peak Decl.").

[3] Berman Decl. ¶ 4.

[4] *Id.*

contact information of current or former student-athletes for purposes of providing direct notice to potential class members.[5] The NCAA and Conference Defendants all responded that they do not maintain such records.[6]

## III. ARGUMENT

### A. KCC is Qualified to Serve as Notice Administrator

Plaintiff has retained KCC to serve as the Class Certification Notice Administrator. KCC has been retained to administer more than 7,500 class actions and distributed settlement payments totaling well over a trillion dollars in assets.[7] KCC has been recognized as a best claims administrator by *The Recorder*, *The New York Law Journal*, and *The National Law Journal*, and has administered over 10,000 cases.[8] The 2022 Antitrust Annual Report on Class Action Filings in Federal Court, published in September 2023, reported that from 2009 to 2022, KCC ranked among the top claims administrators by aggregate settlement amount and second by number of settlements.[9]

KCC has previously managed the administration of notice and claims in similar cases, including *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*, No. 4:14-md-02541-CW (N.D. Cal.) ("GIA Antitrust Litigation") and *O'Bannon v. National Collegiate Athletic Association*, No. 4:09-cv-03329-CW (N.D. Cal.).[10] Through its performance of tasks related to those appointments, KCC is already familiar with administering notice campaigns aimed at the target audience (current and former NCAA college athletes), the demographics of likely class members, and the media outlets through which publication notice is proposed.[11] KCC also has contact information for class members in this case as a result of its administration of previous settlements with the NCAA.[12] This will allow for a more efficient administration process. This

---

[5] *Id.* ¶¶ 2–3.

[6] *Id.* ¶¶ 2, 5.

[7] Peak Decl. ¶ 5.

[8] *Id.* ¶ 8.

[9] *Id.*

[10] *Id.* ¶ 6.

[11] *Id.*

[12] *Id.* ¶ 15.

combination of factors—expertise and case-specific experience and knowledge—makes KCC particularly qualified to serve as Class Certification Administrator.

**B. The Proposed Manner of Notice Complies with Rule 23 and Due Process**

Due Process entitles a class member to "the best notice practicable, reasonably calculated under the circumstances to apprise him of the pendency of the class action and give him a chance to be heard." *Ross v. Trex Co. Inc.*, 2013 WL 791229, at *1 (N.D. Cal. Mar. 4, 2013) (citing *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)). Rule 23 requires individual notice "to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). When some class members' names and contact information "cannot be determined with reasonable efforts, notice by publication is generally considered adequate." *Ross*, 2013 WL 791229, at *2 (quoting *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012)).

Courts regularly approve class notice plans that include a combination of individual notice and publication notice, or publication notice alone. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) ("Courts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process."); *see also, e.g.*, *Silber,* 18 F.3d at 1451–52 (finding notice sufficient where identified class members were mailed notices and notice was published in national newspapers); *Chinitz v. Intero Real Estate Servs.*, 2020 WL 7042871, at *3 (N.D. Cal. Dec. 1, 2020) (approving notice plan with direct and publication notice components, "begin[ning] with email notice for each class member for whom an email address is available"); *In re Qualcomm Antitrust Litig.*, No. 17-MD-02773-LHK, ECF No. 815 (N.D. Cal. Dec. 6, 2018) (approving publication notice campaign with no individual notice component); *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *3 (N.D. Cal. Oct. 3, 2019) (same); *Ross*, 2013 WL 791229, at *2 (holding publication notice sufficient for class members for whom defendant did not have addresses). Here, the proposed notice plan satisfies due process by providing direct email or mail notice to class members whose contact information is reasonably available and publication notice to the rest of the class.

Although Rule 23 requires that reasonable efforts be made to reach all Class members, it does not require that each individual actually receive notice. Direct notice is considered the ideal under Rule

23(c)(2)(B), but when direct notice is impracticable, courts routinely approve notice programs that include other forms of notice designed to reach the target audience of likely class members. *See, e.g.*, *Schneider v. Chipotle Mexican Grill*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) ("Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice."); *Ross*, 2013 WL 791229, at *1 ("Individual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice, but it is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class members") (quotation omitted); *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014) ("[O]ur law has long recognized that direct notice to every class member is not always possible. What Rule 23 and the Due Process Clause require is "the best notice that is practicable under the circumstances[.]").

Here, the notice plan is comprised of four parts. *First*, KCC will provide direct notice to class members for whom it has contact information. Defendants do not maintain records of current or former student-athletes' contact information, so a complete list of contact information for class members is not available.[13] However, KCC has contact information for a subset of class members who were also members of the class in the GIA Antitrust Litigation.[14]

KCC has reviewed the data used to provide direct notice during the claims phase of the GIA Antitrust Litigation to determine whether any of the class members in that litigation are also members of the damages classes certified in this action.[15] It has determined that approximately 3,030 likely class members in this action were also members of the GIA Antitrust Litigation class.[16] That number represents about 9% of the total number of potential class members in this action.[17] The contact

[13] *See id.* ¶ 14; Berman Decl. ¶¶ 2, 5.

[14] Peak Decl. ¶ 15.

[15] *Id.*

[16] *Id.*

[17] *Id.*

information for those 3,030 overlapping class members will be used to create the Class List for direct notification purposes.[18]

KCC will send an email notice to all class members for which an email address is available on the Class List.[19] Email notice is ideal given that likely Class members are young people who prefer digital communication to paper-based communication.[20] The email notice will be designed to avoid common "red flags" that could cause the email to be blocked by spam filters.[21]

Email delivery will be attempted three times. If the third email delivery attempt fails, KCC will send a postcard summary notice to the class member's corresponding postal address on the Class List, if available.[22] Prior to mailing, the postal addresses will be checked against the National Change of Address database maintained by the United States Postal Service, certified via the Coding Accuracy Support System, and verified through Delivery Point Validation.[23] Postcard notices returned by the USPS as undeliverable will be re-mailed to any address available through postal service forwarding order information.[24] For any returned mailing that does not contain an expired forwarding order with a new address indicated, KCC will conduct further address searches using credit and other public source databases to attempt to locate new addresses and will re-mail these notices where possible.[25]

*Second*, KCC will conduct a robust media-based publication notice program designed to reach more than 70% of likely class members.[26] This is consistent with the recommendations of the Federal Judicial Center's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, which considers reach exceeding 70% to be reasonable.[27] *See Chinitz*, 2020 WL 7042871, at

---

[18] *Id.*

[19] *Id.* ¶ 16; *see also id.* Ex. B.

[20] *Id.* ¶ 16.

[21] *Id.* ¶ 18.

[22] *Id.* ¶ 19; *see also id.* Ex. C.

[23] *Id.* ¶ 20.

[24] *Id.* ¶ 21.

[25] *Id.*

[26] *Id.* ¶ 14.

[27] *Id.* ¶ 11.

*5 (approving a notice plan where the "combination of direct and indirect notice plans appear[ed] reasonably calculated to reach at least 70% of class members"); *Smith v. Keurig Green Mountain, Inc.*, 2022 WL 2644105, at *11 (N.D. Cal. July 8, 2022) (similar).

KCC used MRI-Simmons/comScore data[28] to study a proxy target audience of 18-34-year-olds who participated in an NCAA sport or watch an NCAA sport and currently attend college or have graduated from college. The data indicated that likely class members are young, mobile, and favor digital media, so KCC created a publication notice program tailored to likely class members' interests and media habits.[29] According to the data, the target audience prefers digital media (i.e., the internet and social media) over traditional media including magazines, newspapers, radio, or television.[30] Members of the target audience are 56.7% more likely to be heavy internet users and 52.3% more likely to be heavy social media users than the average U.S. adult.[31] The publication notice program therefore emphasizes digital media components, including:

**Programmatic Display Advertising.** Programmatic Display Advertising is the U.S.'s leading method of buying digital media impressions in the United States. It is a trusted method specifically utilized to reach defined target audiences.[32] This tool allows internet advertisements to be targeted specifically to likely class members and will provide them with opportunities to be apprised of the litigation and their rights. Objective syndicated data will be used to target these advertisements.[33] Using this form of objective data will allow the reach and frequency of the ads to be reported to the Court.[34] Multiple targeting layers will be utilized to ensure delivery to the most appropriate users. For example, targeting will include demographic, geographic, behavioral, and contextual layers such as age, college

---

[28] MRI-Simmons USA is a research firm that produces a quarterly, comprehensive study on American consumers. This nationally representative study employs address-based probabilistic sampling to measure the characteristics of real people across the United States. *Id.* ¶ 22 n.5.

[29] *Id.* ¶ 22.

[30] *Id.* ¶ 23.

[31] *Id.*

[32] *Id.* ¶ 24.

[33] *Id.*

[34] *Id.*

affiliation, NCAA affiliation, NCAA sports, and whether an individual follows NCAA-related accounts on social media.[35]

**Social Media.** The notice plan incorporates social media campaigns on Facebook, Instagram, and X (formerly known as Twitter). The social media campaign will engage with potential class members through a mix of news feed and "story" posts to optimize performance. The combination of programmatic display advertising and social media posts will generate approximately 70,375,000 digital media impressions.[36]

**Paid Search Campaign.** The Notice Plan also includes a paid search campaign to guide class members who are actively searching for information about the litigation to the dedicated case website. Paid search ads are driven by a user's search activity, meaning that if a class member searches for (or has recently searched for) terms related to the litigation, the user may be served with an advertisement directing them to the dedicated case website.[37]

**Press Release.** KCC will issue a nationwide press release to a variety of press outlets as well as AP News and a College Media Influencer List (a list of journalists who have requested information regarding college news). The press release will help garner "earned media" (*i.e.*, media outlines may report about the story). Earned media can play a valuable role in distributing information about the litigation to potential class members via trusted sources. This litigation has already received extensive news coverage from Reuters, the *New York Times*, *USA Today*, ESPN, Forbes, and *Sports Illustrated*, among other publications, so these outlets are likely to report on class notice and future developments in the litigation.[38]

*Third*, KCC will conduct an organizational outreach campaign to distribute class notice information to entities likely to be in contact with potential class members. These entities will include athletic conferences, sports groups, and collegiate alumni associations. They will be provided with

---

[35] *Id.* ¶ 25.

[36] *Id.*

[37] *Id.* ¶ 26.

[38] *Id.* ¶ 28–29.

class notice information and asked to share it with interested parties such as current and former college athletes. This outreach program will be performed via mail, email, and social media.[39]

*Fourth*, KCC will establish multiple response mechanisms for class members, including a case-specific website, toll-free number, and email address. The case-specific website will allow class members to obtain information about their rights as class members.[40] The long-form notice will be posted prominently on the website, which will also provide a summary of the case, all relevant documents, important dates, and updates concerning the litigation or settlement process. The website will also contain a form class members can use to submit their contact information if they wish to receive future updates about the litigation.[41] The website address will be displayed in the email and postcard notices and will be accessible through a hyperlink embedded in the digital notices.

The case-specific toll-free number will provide answers to frequently asked questions and allow class members to request that additional information be sent to them.[42] The case-specific email address will allow class members to correspond directly with KC regarding the litigation.[43]

This multi-pronged notice plan satisfies due process requirements. The plan of sending individual notice to all class members whose contact information can be identified through "reasonable effort" constitutes "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The plan to supplement this direct notice with extensive digital media notice and the class action website further supports the conclusion that the proposed plan satisfies due process. The Class Notice administrator estimates that the publication notice campaign alone will reach more than 70% of the class,[44] which meets the threshold recommended by the Federal Judicial Center's *Class Action Notice and Plain Language Guide*. When combined with the individual notice efforts, the notice

---

[39] *Id.* ¶ 30.

[40] *Id.* ¶ 31.

[41] *Id.*

[42] *Id.* ¶ 32.

[43] *Id.* ¶ 33.

[44] *Id.* ¶ 14.

program is expected to reach a substantially higher percentage of class members.[45] Both the Advisory Committee Notes for the December 2018 Amendments to Rule 23 and the *Manual for Complex Litigation, Fourth* ("*Manual*") at § 21.311 recognize electronic methods of notice as appropriate. And courts in this circuit regularly approve similar notice plans. *See, e.g.*, *Schneider*, 336 F.R.D. at 596; *In re Packaged Seafood Prods. Antitrust Lit.*, 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (approving a notice plan intended "to reach over 70% of potential Class Members via digital placements" and noting that "[c]ourts have repeatedly held that notice plans with similar reach satisfy Rule 23(c)(2)(b).").

**C. The Proposed Form of Notice Complies with Rule 23 and Due Process**

To satisfy due process, notice of a class action must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 330 U.S. 306, 314 (1950). The notice must provide the information required by Rule 23 "in plain and clear language." *Maslic v. ISM Vuzem*, 2023 WL 8482868, at *3 (N.D. Cal. Dec. 7, 2023).

The proposed long-form class notice states the following, as required by Rule 23(c)(2)(B): (1) the nature of the action;[46] (2) the definition of the class certified;[47] (3) the class claims, issues, or defenses;[48] (4) that a class member may enter an appearance through an attorney if the member so desires;[49] (5) that the court will exclude from the class any member who requests exclusion;[50] (6) the time and manner for requesting exclusion;[51] and (7) the binding effect of a class judgment on members under Rule 23(c)(3).[52]

---

[45] *Id.*

[46] Exhibit A to the declaration of Carla Peak, at Nos. 1–4.

[47] *Id.* No. 8.

[48] *Id.* Nos. 4–5.

[49] *Id.* No. 16.

[50] *Id.* Nos. 10, 12.

[51] *Id.* No. 13.

[52] *Id.* at 1 & No. 11.

The proposed notice also includes additional information recommended by the *Manual* at § 21.311 by: (1) describing succinctly the positions of the parties;[53] (2) identifying the opposing parties, class representative, and counsel;[54] and (3) explaining any risks and benefits of retaining class membership and opting out, while emphasizing that the court has not ruled on the merits of any claims or defenses.[55] The notice likewise contains additional information recommended (albeit for class action settlements) by the Northern District of California's *Procedural Guidance for Class Action Settlements* ("ND CA Procedural Guidance") at §§ 3-4 by including: (1) contact information for class counsel;[56] (2) the website address;[57] (3) instructions on how to access the case docket;[58] and (4) how to opt out via the submission of minimal information to KCC.[59]

In sum, the proposed notice documents—which are written in plain language and describe the case in neutral terms—provide sufficient information to class members to satisfy due process.

**D. A Sixty-Day Opt-Out Period is Adequate and Fair**

Plaintiffs propose that this Court allow a 60-day opt-out period, starting from the conclusion of the digital media campaign,[60] for class members to submit requests to exclude themselves from the class. This is longer than the 35-day period this District requires for class members to opt out of class action settlements,[61] and a 60-day period has consistently been held to be an adequate length of time to allow notice recipients to consider the notice, consult with an attorney, and opt out if desired. *Cruz v. Dollar Tree Stores, Inc.*, 2009 WL 1974404, at *2 (N.D. Cal. July 2, 2009); *see also, e.g.*, *Maslic*,

---

[53] *Id.* Nos. 4–5.

[54] *Id.* Nos. 1–2, 15.

[55] *Id.* Nos. 6, 10–12.

[56] *Id.* No. 15.

[57] *Id.* Nos. 14, 21.

[58] *Id.* No. 21.

[59] *Id.* No. 13.

[60] The proposed notice documents currently contain placeholders for the opt-out deadline. *See id.* No. 13; *id.* Exs. B, C. If the Court grants the instant Motion, KCC will determine when the digital media campaign will begin and end and will fill in the opt-out deadline in the final notice documents accordingly.

[61] *See* N.D. Cal. Procedural Guidance for Class Action Settlements at § 9.

2023 WL 8482868, at *3 (approving opt-out deadline of 60 days after notice was mailed); *AdTrader, Inc. v. Google LLC*, 2021 WL 2073816, at *1 (N.D. Cal. Mar. 23, 2021) (same); *Ellsworth v. U.S. Bank, N.A.*, 2015 WL 1883911, at *3 (N.D. Cal. Apr. 23, 2015) (same).

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court appoint KCC as the Class Certification Notice Administrator, approve the proposed manner and form of class certification notice, and allow a 60-day opt-out period.

DATED: February 20, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
Meredith Simons (SBN 320229)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com
merediths@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

Jeffrey L. Kodroff
SPECTOR ROSEMAN & KODROFF PC
Two Commerce Square
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496 0300
Facsimile: (215) 496 6611
jkodroff@srkattorneys.com

*Counsel for Plaintiffs and the Class*

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Counsel for Plaintiffs and the Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatories above.

Dated this 20th day of February, 2024.

/s/ *Steve W. Berman*
STEVE W. BERMAN