IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COLLEGE ATHLETE NIL LITIGATION | Case No. 20-cv-03919 CW<br><br>**DECLARATION OF CARLA A. PEAK REGARDING CLASS CERTIFICATION NOTICE PROGRAM** |

I, Carla A. Peak, declare as follows:

1.     My name is Carla A. Peak. I have personal knowledge of the matters set forth herein and if called as a witness I could and would testify competently to them.

2.     I am a nationally recognized expert in the field of legal notification, and I have served as an expert in countless federal and state cases involving class action notice plans.

3.     I am Vice President of Legal Notification Services for Kurtzman Carson Consultants Class Action Services, LLC ("KCC"), a firm that provides comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class actions. KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of settlements to ensure the orderly and fair treatment of class members and all parties in interest.

4.     The purpose of this declaration is to provide information related to KCC's qualifications and experience,[1] as well as to detail the proposed notice plan (the "Notice Plan") designed to provide notice to class members of this class action litigation.

## KCC BACKGROUND AND EXPERIENCE

5.     As an industry leader, KCC has been retained to administer more than 7,500 class actions and distributed settlement payments totaling well over a trillion dollars in assets. Our experience includes many of the largest and most complex administrations of both private litigation and of actions brought by state and federal government regulators. As such, we are familiar with, and guided by, Constitutional due process provisions, the Federal Rules of Civil Procedure, and the relevant case law relating to legal notification.

6.     More specifically, KCC has been appointed as the notice or claims administrator in cases involving collegiate athletics, including *O'Bannon v. National Collegiate Athletic Association*, No. 4:09-cv-03329-CW (N.D. Cal.), and *In re: NCAA Athletic Grant-In-Aid Antitrust Litigation*, No. 14-md-2541 (N.D. Cal.). Because of these previous appointments, KCC is already familiar with administering notice campaigns aimed at current and former NCAA athletes, the demographics of likely class members, and the media outlets through which publication notice is proposed.

7.     KCC has also been appointed as the notice or claims administrator in a variety of antitrust matters, including *Barba v. Shire U.S., Inc.*, No. 1:13-cv-21158 (S.D. Fla.); *In re Aftermarket Filters Antitrust Litigation*, No. 1:08-cv-04883 (N.D. Ill.); *In re Asacol Antitrust Litigation*, No. 1:15-cv-12730 (D. Mass.); *In re Blood Reagents Antitrust Litigation*, No. 09-md-

---

[1] KCC acquired Gilardi & Co. LLC in 2015. This Declaration combines the class action notice and administration experience of both firms.

2081 (E.D. Pa.); *In re Domestic Drywall Antitrust Litigation*, No. 2:13-md-02437 (E.D. Pa.); *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Company, Ltd.*, No. 2:09-cv-00852 (E.D. Wis.); *In re: Fresh and Process Potatoes Antitrust Litigation*, 4:10-md-02186 (D. Idaho*); In re HIV Antitrust Litigation*, No. 3:19-cv-2573 (N.D. Cal.); *In re Hypodermic Products Antitrust Litigation*, No. 05-cv-1602 (D. N.J.); *In re Intuniv Antitrust,* No. 1:16-cv-12396 (D. Mass.); *In Re Korean Ramen Antitrust Litigation*, No. 13-cv-4115 (N.D. Cal.); *In re Lidoderm Antitrust Litigation,* No. 3:14-md-02521 (N.D. Cal.); *In re Lithium Ion Batteries Indirect Antitrust Litigation*, No. 13-md-02420 (N.D. Cal.); *In re: Nexium (Esomeprazole) Antitrust Litig.*, No. 1:12-md-2409 (D. Mass.); *In re Potash Antitrust Litigation* (II), No. 1:08-cv-06910 (N.D. Ill.); *In re Remicade Antitrust Litigation*, No. 2:17-cv-04326 (E.D. Pa.);  *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, No. 1:14-md-02503 (D. Mass.); *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.); *In re Thalomid and Revlimid Antitrust Litigation*, No. 2:14-cv-06997 (D. N.J.); and *In re Titanium Dioxide Antitrust Litigation*, No. 10–CV–00318 (D. Md.). More information about KCC's experience can be found at www.kccllc.com.

8.      KCC has administered over 10,000 cases and has been recognized as a best claims administrator by *The Recorder*, *The New York Law Journal*, and *The National Law Journal*. The 2022 Antitrust Annual Report on Class Action Filings in Federal Court, published in September 2023, reported that from 2009 to 2022, KCC ranked among the top claims administrators by aggregate settlement amount and second by number of settlements.

9.      In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for more than 20 years. During that time, I have been involved in all aspects in the design and implementation of class action notice planning, as

well as drafting plain language notice documents that satisfy the requirements of Rule 23 of the

Federal Rules of Civil Procedure and adhere to the guidelines set forth in the *Manual for Complex*

*Litigation, Fourth* and by the Federal Judicial Center ("FJC").

10.     I have worked with class counsel to develop various forms of notice for Court

approval in this case. All forms of notice have been designed to be noticeable, clear and concise,

and written in plain, easily understood language.

11.     The reach of the Notice Program is consistent with other effective court-approved

notice programs. Additionally, the FJC's Judges' Class Action Notice and Claims Process

Checklist and Plain Language Guide (the "FJC Checklist") considers reach of 70% or greater

among class members reasonable.

<u>**NOTICE PLAN**</u>

***Class Definition***

12.     The Notice Plan is designed to provide notice to the following three damages

Classes:

> **Football and Men's Basketball Class**: All current and former college athletes who have received full Grant-in-Aid (GIA) scholarships and compete on, or competed on, a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), at any time between June 15, 2016 and November 3, 2023 (the date of the class certification order in this matter).

> **Women's Basketball Class**: All current and former college athletes who have received full GIA scholarships and compete on, or competed on, a Division I women's basketball team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), at any time between June 15, 2016 and November 3, 2023 (the date of the class certification order in this matter).

> **Additional Sports Class**: Excluding members of the Football and Men's Basketball Class and members of the Women's Basketball Class, all current and former college athletes who competed on a Division I athletic team prior to July 1, 2021 and who received compensation while a Division I college athlete for the use of their name, image, or likeness between July 1, 2021 and November 3, 2023 (the date of the class certification order in this matter) and who competed in the same Division I sport prior to July 1, 2021.

13.     All three Classes exclude the officers, directors, and employees of Defendants. These Classes also exclude all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

14.     It is my understanding that a complete list of contact information for Class members is not readily available. Therefore, direct notice will be provided to student-athlete class members whose contact information can be obtained from prior, similar litigation. And KCC has developed a digital media notice program designed to reach over 70% of likely Class members. When combined with the direct notice efforts, the notice program is expected to reach a substantially higher percentage. Although not measurable, the press release and organizational outreach will further extend reach and frequency of exposure among the Class.

### *Individual Notice*

15.     KCC has reviewed the data used to provide direct notice in the *In re: NCAA Athletic Grant-In-Aid Antitrust Litig.*, which KCC administered, to determine whether any of those class members overlap with any of the Classes certified in this Action. KCC has determined that 3,030 individuals were class members in the *Grant-In-Aid Antitrust Litigation* and are class members in this action. That number represents about 9% of the 33,000 likely class members in this action. The contact information for those 3,030 overlapping class members will be used to create the Class List for direct notification purposes.

16.     KCC will send an email notice to all Class members for which an email address is available on the Class List. Email notice is well suited to the demographics of the Class, is a preferred communication method of Class members, and the primary method of communication between students and universities/colleges.

17.     Prior to distributing the email notice, all email addresses will be subject to a

cleansing and validation process to, among other things, remove extra spaces and fix common domain name errors, as well as compare addresses against known bad email addresses and verify email existence with Internet Service Providers ("ISPs").

18.     The email notice will be designed to avoid common "red flags" that could cause the email to be blocked by spam filters. For example, the content of the notice will be placed in the body of the email rather than as an attachment, to avoid spam filters and improve deliverability. The email notice will contain a link to the case website.

19.     The email delivery will be attempted three times. The email campaign will return data regarding the number of emails successfully delivered and email bouncebacks. Many of the Initial Bouncebacks are temporary in nature and consist primarily of those that are blocked by ISPs, result from filled inboxes on the targets' computers, or result from some temporary technical difficulties. These three categories of bouncebacks ("Non-Fatal Bouncebacks") account for about 10-15% of all emails that are sent, and in other cases and tests we have found that about 85% of these emails could be deliverable if they were re-sent. Upon the third email bounceback for an individual Class member, KCC will send a single postcard summary notice to the Class member's corresponding postal address on the Class List, where applicable.

20.     Prior to mailing, the postal addresses will be checked against the National Change of Address (NCOA)[2] database maintained by the USPS; certified via the Coding Accuracy Support

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

System (CASS);[3] and verified through Delivery Point Validation (DPV).[4]

21.     Notices returned by the USPS as undeliverable will be re-mailed to any address available through postal service forwarding order information. For any returned mailing that does not contain an expired forwarding order with a new address indicated, KCC will conduct further address searches using credit and other public source databases to attempt to locate new addresses and will re-mail these notices to new addresses if possible.

### *Target Analysis*

22.     MRI-SIMMONS/comScore multi-platform data[5] was studied among a proxy target of adults 18-34 years of age who participate in an NCAA sport, watch an NCAA sport on television or online and either currently attend college or have graduated from college. The characteristics, demographics, interests, and media habits of the proxy target aided in the media planning and selection process. Given the young, mobile nature of the Classes, KCC created a digital media campaign to provide the best notice under the circumstances of this litigation.

23.     This data showed that our Target Audience are heavy users of the internet and social media platforms. The Target Audience prefers digital media (internet and social media) over other media vehicles, including magazines, newspapers, radio, or television. Members of the Target Audience are 56.7% more likely to be heavy internet users and 52.3% more likely to be heavy

---

[3] Coding Accuracy Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[4] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

[5] For decades, MRI and Simmons Research conducted two of the most trusted consumer studies in the United States. MRI's 'Survey of the American Consumer' was the gold standard for consumer audiences across industries. In 2021, MRI-Simmons combined these trusted, gold-standard consumer studies to launch MRI-Simmons USA, the most comprehensive study on American consumers. This high-quality, nationally representative study provides marketers, media, and agencies with the most accurate consumer truth set. Released quarterly, MRI-Simmons USA employs address-based probabilistic sampling, measuring real people, randomly chosen to represent the US population in all its variations.

social media users compared to the average U.S. adult. Therefore, KCC recommends utilizing a robust internet advertising campaign to best provide notice to Class members.

### *Digital Media Campaign*

24.     KCC will utilize programmatic display advertising[6] to allow internet advertisements to be targeted specifically to likely class members.  Utilizing objective syndicated data to measure the volume and targeting of the advertisements will allow the reach and frequency of the ads to be reported to the Court. Multiple targeting layers, including self-reported user data and third-party data, will be used to identify and target likely Class members based on their online interests and behaviors.

25.     Approximately 70,375,000 digital media impressions will be purchased programmatically and delivered across a variety of websites and mobile apps, as well as Instagram, X (f/k/a Twitter), and Facebook.[7] Targeting will be layered to ensure coverage. For example, targeting will include demographic, geographic, behavioral, and contextual layers such as age, college affiliation, NCAA affiliation, and whether the user follows NCAA-related social media accounts.

---

[6] Programmatic Display Advertising is the U.S.'s leading method of buying digital media impressions. It is a trusted method specifically utilized to reach defined target audiences. It has been reported that U.S. advertisers spent nearly $123.22 billion on programmatic display advertising in 2022, and it is estimated that approximately $141.96 billion will be spent on programmatic display advertising 2023. See https://www.insiderintelligence.com/content/us-programmatic-digital-display-ad-spending-2022. Programmatic display advertising uses algorithms to identify and examine demographic profiles and uses advanced technology to place advertisements on the websites that members of the target audience are most likely to visit.

[7] In the United States in 2023, Facebook has a reported 243.58 million users, Instagram has a reported 150.99 million users, and X/Twitter has a reported 64.9 million users. See: https://www.statista.com/statistics/408971/number-of-us-facebook-users; https://www.statista.com/statistics/293771/number-of-us-instagram-users; and https://www.oberlo.com/statistics/number-of-twitter-users-by-country.

26.     The Notice Plan also includes a paid search campaign to help drive Class members who are actively searching for information about the litigation to the dedicated case website. Paid search ads are driven by the user's search activity, meaning that if someone searches for (or has recently searched for) terms related to the litigation, the user may be served with an advertisement directing them to the dedicated website. The search terms used as part of the paid search campaign will directly relate to the litigation, as well as the subject matter of the class action.

27.     The digital media campaign will be monitored by KCC's digital specialists to analyze key campaign performance indicators and make real-time modifications, as needed.

### *Press Release*

28.     In addition to the digital media campaign, KCC will cause a press release to be issued nationwide to a variety of press outlets as well as AP News and a College Media Influencer List. The press release will help garner "earned media" (*i.e.*, other media may report about the story). Earned media can provide a valuable role in distributing news and information about the litigation through trusted sources. The College Media Influencer List will provide the press release directly to journalists who have specifically asked to receive information regarding college news.

29.     This litigation has already received extensive news coverage via Reuters, the *New York Times*, Sportico, *USA Today*, ESPN, SwimSwam, Bloomberg, Forbes, the *Los Angeles Times*, CBS Sports, Sports Illustrated, and other media outlets. These press outlets are likely to report on the class notice campaign as well as any future developments in the litigation.

### *Organizational Outreach*

30.     KCC will conduct an organizational outreach campaign whereby relevant conferences, sports groups, and collegiate alumni associations will be provided with information

about the litigation and asked to share it with interested parties. The outreach effort will be performed via mail, email and social media.

### *Response Mechanisms*

31.     KCC will establish and maintain a case-specific website, www.NILCollegeAthleteLitigation.com, to allow Class Members to obtain information and documents about the litigation. Class Members will be able to view, download, and/or print the Long Form Notice, the Class Action Complaints, Defendants' Responses to the Class Action Complaints, Plaintiffs' Motion for Class Certification, the Order Granting Motion for Certification of Damages Classes, and any other relevant documents and court filings. Class Members will also be able to submit their contact information to receive future updates on the litigation.

32.     KCC will establish a case-specific toll-free number to allow Class Members to call and learn more about the litigation by listening to answers to frequently asked questions and requesting that additional information be sent to them.

33.     KCC will establish a case-specific email address to allow Class Members to correspond directly with KCC regarding the litigation.

### *Conclusion*

34.     It is KCC's opinion that the proposed notice plan comports with the requirements of due process and of Fed. R. Civ. P. 23. The notice plan provides for direct notice to all individuals whose contact information is reasonably available, as well as a carefully targeted digital media campaign designed to reach more than 70% of the class. Although not measurable, the press release and organizational outreach will further extend reach and frequency of exposure among the Class.

35.     A true and correct copy of the proposed long-form notice is attached to this declaration as **Exhibit A.**

36.     A true and correct copy of the proposed email notice is attached to this declaration as **Exhibit B**.

37.     A true and correct copy of the proposed postcard notice is attached to this declaration as **Exhibit C**.


I, Carla A. Peak, declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of February 2024, at Ocean City, New Jersey.

_____
Carla A. Peak

# EXHIBIT A

# If you were denied NIL compensation opportunities any time between 2016-2023, your rights may be affected by a class action lawsuit.

*A federal court authorized this notice. It is <u>not</u> a solicitation from a lawyer.*

- A class action lawsuit has been filed against the National Collegiate Athletic Association (NCAA) and Pac-12 Conference, Big Ten Conference, Big 12 Conference, Southeastern Conference, and Atlantic Coast Conference, including Notre Dame ("Power Five Conferences").

- The lawsuit claims certain NCAA rules that restrict student-athlete compensation related to the commercial use of their names, images, and likenesses (NIL) are anticompetitive.

- You may be included in the lawsuit if you are a current or former college athlete who received a full Grant-in-Aid (GIA) scholarship and compete on, or competed on, a Division I men's or women's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), any time between June 15, 2016 and November 3, 2023 OR who competed on a Division I athletic team prior to July 1, 2021 and received compensation while a Division I college athlete for the use of your NIL between July 1, 2021 and November 3, 2023.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **DO NOTHING** | If you do nothing you are choosing to stay in the lawsuit. You will be eligible to share in any money that may be obtained through continued litigation or settlement. You will be bound by past and any future court rulings on, or settlement of, the claims against Defendants, and you will not be able to pursue your own claims against them. |
| **EXCLUDE YOURSELF** | If you exclude yourself from the lawsuit (*i.e.* opt out), you will not be able to share in any money that may be obtained in this case through continued litigation or settlement. You will not be bound by any past or future rulings against Defendants. You may pursue your own claims against Defendants. |

- These rights and options—and the deadlines to exercise them—are explained in this notice.

- Your legal rights are affected whether you act or not. Please read this entire notice carefully.

| WHAT THIS NOTICE CONTAINS |
|---|

**Basic Information** ......................................................................................................... **3**
    1.    Why was this notice issued? .................................................................. 3
    2.    What is a class action? ........................................................................... 3
    3.    Why is this lawsuit a class action? ...................................................... 3

**The Claims in the Lawsuit** ........................................................................................... **3**
    4.    What is the lawsuit about? ..................................................................... 3
    5.    How do the Defendants answer?
    6.    Has the Court decided who is right? .................................................... 4
    7.    What are the Class Representatives asking for on behalf of the Classes? .................. 4

**Who is Included?** ......................................................................................................... **4**
    8.    How do I know if I am included in the lawsuit? ................................... 4
    9.    Are there exceptions to being included? .............................................. 4

**Your Rights & Options** ................................................................................................. **5**
    10.    What are my options? ............................................................................ 5
    11.    What happens if I do nothing? .............................................................. 5
    12.    What happens if I ask to be excluded? ................................................. 5
    13.    How do I opt-out? ................................................................................. 5
    14.    How do I stay up to date on the status of the lawsuit? ........................ 5

**The Lawyers Representing You** .................................................................................... **6**
    15.    Do I have a lawyer in the case? ........................................................... 6
    16.    Should I get my own lawyer? ............................................................... 6
    17.    How will the lawyers be paid? ............................................................. 6

**The Trial** ...................................................................................................................... **6**
    18.    How and when will the Court decide who is right? ............................ 6
    19.    Do I have to come to the trial? ............................................................ 6
    20.    Will I get money after the trial? .......................................................... 6

**Getting More Information** ............................................................................................ **6**
    21.    How do I get more information? .......................................................... 6

## BASIC INFORMATION

### 1. Why was this notice issued?

This notice was issued because the Court has decided this lawsuit may proceed as a class action. This notice explains the lawsuit, who is included, and your legal rights and options.

Judge Claudia Wilken of the United States District Court for the Northern District of California is overseeing this lawsuit. The case is titled *In Re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919. The people who initiated this case are called the Plaintiffs. The entities the Plaintiffs sued are called the Defendants. They include the NCAA, the Pac-12 Conference, Big Ten Conference, Big 12 Conference, Southeastern Conference, and Atlantic Coast Conference. The conferences are also referred to as the "Conference Defendants" and "Power Five Conferences."

### 2. What is a class action?

In a class action, one or more people called Class Representatives (in this case, Sedona Prince, Grant House, and Tymir Oliver) sue on behalf of people who have similar claims. Together, the Class Representatives and the people represented by them are called a Class or Class members. One court resolves the claims of all Class members, except for those who exclude themselves from the litigation.

### 3. Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action because it meets the requirements of Federal Rule of Civil Procedure 23(b)(3), which governs class actions in federal courts. Specifically, the Court found that:

- There are hundreds, if not thousands, of student-athletes affected by the litigation;

- There are legal questions of fact that are common to each of them;

- The Class Representatives' claims are typical of the claims of the rest of the Classes;

- The Class Representatives, and the lawyers representing the Classes, will fairly and adequately represent the Classes' interests;

- The common legal questions and facts are more important than questions that affect only individuals; and

- This class action will be more efficient than having many individual lawsuits.

## THE CLAIMS IN THE LAWSUIT

### 4. What is this lawsuit about?

Plaintiffs allege that the NCAA and Conference Defendants prohibit, cap, and limit the compensation that Division I student-athletes may receive for the commercial use of their names, images, and likenesses through NCAA rules, regulations, and interpretations, and that these rules are anticompetitive. .

Specifically, Plaintiffs claim student-athletes were deprived of compensation that, depending on the Class, falls within three categories: (1) broadcast NIL (BNIL) injury and damages related to compensation that Plaintiffs argue the student-athletes would have received from conferences for the use of their NIL in broadcasts of FBS football or Division I basketball games in the absence of the challenged rules; (2) video game injury and damages related to compensation that Plaintiffs argue student-athletes would have received from video game publishers for the use of their NIL in college football or basketball video games in the absence of the challenged rules; and (3) third-party NIL injury and damages related to compensation that Plaintiffs argue student-athletes would have received from third parties for the use of their NIL from 2016 to July 1, 2021, before the interim NIL policy went into effect.

A copy of the Consolidated Amended Complaint is available at www.NILCollegeAthleteLitigation.com.

**5.   How do the Defendants answer?**

Defendants deny violation of the federal antitrust laws or common law, and deny that this case is properly brought as a class action.

A copy of each Answer to the Consolidated Amended Complaint as filed by the Defendants is available at www.NILCollegeAthleteLitigation.com.

**6.   Has the Court decided who is right?**

No, the Court has not decided whether the Class Representatives or Defendants are correct. By establishing the Classes and issuing this Notice, the Court is not suggesting that the Class Representatives will win or lose the case. The Class Representatives must prove their claims at a trial.

**7.   What are the Class Representatives asking for on behalf of the Classes?**

The Class Representatives are asking for injunctive relief and money damages on behalf of themselves and the Classes to compensate them for the compensation they may have received for the use of their NIL.

There is no money available now and no guarantee there ever will be.

## WHO IS INCLUDED?

**8.   How do I know if I am included in the lawsuit?**

The lawsuit includes four groups or "Classes" of athletes as defined below.

**Damages Classes**

- **Football and Men's Basketball Class:** All current and former college athletes who have received full Grant-in-Aid (GIA) scholarships and compete on, or competed on, a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), at any time between June 15, 2016 and November 3, 2023.

- **Women's Basketball Class:** All current and former college athletes who have received full GIA scholarships and compete on, or competed on, a Division I women's basketball team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), at any time between June 15, 2016 and November 3, 2023.

- **Additional Sports Class:** Excluding members of the Football and Men's Basketball Class and members of the Women's Basketball Class, all current or former college athletes who competed on a Division I athletic team prior to July 1, 2021 and who received compensation while a Division I college athlete for use of their name, image, or likeness between July 1, 2021 and November 3, 2023 in this matter and who competed in the same Division I sport prior to July 1, 2021.

**Injunctive Class**

- **Declaratory and Injunctive Relief Class:** All current and former college athletes who compete on, or competed on, a Division I athletic team at any time between June 15, 2020 and the date of judgment in this case.

**9.   Are there exceptions to being included?**

Yes, excluded from all three Damages Classes are the officers, directors, and employees of Defendants. These Classes also exclude all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

## YOUR RIGHTS & OPTIONS

**10. What are my options?**

If you are a member of one of the Damages Classes, you have two options:

- Do nothing, remain in the lawsuit, and await the outcome, or
- Exclude yourself (*i.e.* opt out) from the lawsuit.

If you are a member of the Injunctive Class:

- You will be bound by the outcome of the litigation. You do not have the ability to opt out of the Injunctive Class.

**11. What happens if I do nothing?**

If you do nothing you are choosing to remain in the lawsuit. You will keep the right to share in any money or benefits that may come from a trial or settlement of this lawsuit. However, you will give up your right to start another lawsuit, continue another lawsuit, or be part of any other lawsuit against any of the Defendants about the legal issues raised or that could have been raised in this case. All of the Court's orders in the case will apply to you and legally bind you. You will also be bound by any judgment in the lawsuit.

**12. What happens if I ask to be excluded from the Damages Classes?**

If you ask to be excluded or "opt-out" of the lawsuit, you won't get any money or benefits from this lawsuit even if Plaintiffs obtain them as a result of trial or from any settlement. However, you will not be legally bound by any of the Court's orders in this class action or any judgment or release entered in this lawsuit. You will keep your right to start another lawsuit, continue another lawsuit, or be part of another lawsuit against Defendants in the future about the legal issues in this case. If you exclude yourself so that you can start, or continue, your own lawsuit against Defendants, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations defense, which means your claims may be subject to expiration.

**13. How do I opt out of the Damages Classes?**

To exclude yourself you must send a letter to the Notice Administrator stating that you want to be excluded from the Class in *In Re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919. Your letter must include your name, address, telephone number, NCAA ID number, which Class you are part of (*i.e.* Football and Men's Basketball Class, Women's Basketball Class, or Additional Sports Class), and your signature.

You must mail your exclusion request to the Notice Administrator, so it is postmarked by **Month XX, 2024** to:

*College Athlete NIL Litigation* Notice Administrator
PO Box 301134
Los Angeles, CA 90030-1134

**14. How do I stay up to date on the status of the lawsuit?**

If you would like to be provided with updates about the lawsuit, including any compensation that may become available, go to www.NILCollegeAthleteLitigation.com and enter your contact information. The information you provide will be used to send you an email or postal mailing as updates become available.

## THE LAWYERS REPRESENTING YOU

### 15. Do I have a lawyer in the case?

If you remain in the Class, yes, the Court has already appointed attorneys from Hagens Berman Sobol Shapiro LLP and Winston & Strawn LLP to represent you and other Class members. These law firms are called Co-Lead Counsel for the classes. More information about these law firms and lawyers can be found at www.hbsslaw.com and www.winston.com/en. You can contact Steve Berman of Hagens Berman at steve@hbsslaw.com. You can contact Jeffrey Kessler of Winston & Strawn at jkessler@winston.com.

### 16. Should I get my own lawyer?

You do not need to hire your own lawyer because Co-Lead Counsel are working on your behalf. However, if you wish to do so, you may hire your own lawyer at your own expense.

### 17. How will the lawyers be paid?

If Co-Lead Counsel obtains money or benefits for the Classes they will ask the Court to award them reasonable attorneys' fees, as well as reimbursement of expenses. If the Court grants Co-Lead Counsel's requests, these fees and expenses would either be deducted from any money obtained for the Classes, or be paid separately by the Defendants.

## THE TRIAL

### 18. How and when will the Court decide who is right?

The Court will hold a trial in this case which is scheduled to begin in January 2025 at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California 94612. During the trial, a Jury or the Judge will hear all of the evidence to help them reach a decision about whether the Plaintiffs or Defendants are right about the claims in the lawsuit.

### 19. Do I have to come to the trial?

No, you do not need to attend the trial. Co-Lead Counsel will present the case for the Plaintiffs, and Counsel for the Defendants will present the defenses. You or your own lawyers are welcome to come at your own expense.

### 20. Will I get money after the trial?

If the Co-Lead Counsel obtains money or benefits as a result of the trial or a settlement, a new notice will be issued.

## GETTING MORE INFORMATION

### 21. How do I get more information?

More information is available at www.NILCollegeAthleteLitigation.com, by sending an email to info@NILCollegeAthleteLitigation.com, by calling 1-8xx-xxx-xxxx or by writing to *College Athlete NIL Litigation* Notice Administrator, PO Box 301134, Los Angeles, CA 90030-1134.

Complete copies of public pleadings, Court rulings, and other filings are also available by accessing the Court docket for this case, for a fee, through the Court's PACER system at https://ecf.cand.uscourts.gov or visiting the Clerk of the Court at the address listed above between 9:00 a.m. and 4:00 p.m. on Monday through Friday, excluding Court holidays.

# EXHIBIT B

# If you were denied NIL compensation opportunities any time between 2016-2023, your rights may be affected by a class action lawsuit.

*A federal court authorized this notice.*

A lawsuit has been filed against the NCAA and the "Power Five Conferences" (Pac-12, Big Ten, Big 12, Southeastern, and Atlantic Coast, including Notre Dame) about whether certain NCAA rules that restrict student-athlete compensation related to the commercial use of their names, images, and likenesses (NIL) are anticompetitive. Defendants deny any wrongdoing. The lawsuit seeks money for those included in the Classes.

**Who is included?** NCAA records indicate that you may be included in the lawsuit. Specifically, the lawsuit includes all current and former college athletes who received full Grant-in-Aid (GIA) scholarships and compete on, or competed on, a Division I men's or women's basketball team or a Football Bowl Subdivision (FBS) football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), any time between June 15, 2016 and November 3, 2023, <u>OR</u> who competed on a Division I athletic team prior to July 1, 2021 and received compensation while a Division I college athlete for the use of their NIL between July 1, 2021 and November 3, 2023.

**What are my rights and options?** If you do nothing, you will remain in the lawsuit and be able to share in any recovery that may be obtained. You will be bound by all court orders, and you will give up your right to pursue your own claims against Defendants. Alternatively, if you exclude yourself from the lawsuit (*i.e.*, opt out), you will not be entitled to any recovery that may be obtained, you will not be bound by any court orders, and you may pursue your own claims against Defendants. The deadline to exclude yourself is **Month XX, 2024**. Instructions on how to opt out are available at www.NILCollegeAthleteLitigation.com. If you would like to be updated about the status of the lawsuit and any possible compensation, or if you would like to learn more about this case and your rights and options, go to www.NILCollegeAthleteLitigation.com and provide your contact information.

**The Trial.** A trial for this case is scheduled to begin in January 2025 at the U.S. District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612. You may hire your own lawyer at your own expense, but you do not have to.

# EXHIBIT C

**If you were denied NIL compensation opportunities any time between 2016-2023, your rights may be affected by a class action lawsuit.**

*A federal court authorized this notice.*

**NILCollegeAthleteLitigation.com**

*College Athlete NIL Litigation* Notice Administrator
P.O. Box 301134
Los Angeles, CA 90030-1134



Postal Service: Please Do Not Mark Barcode

Claim#: CLGE-«ClaimID»
«First1» «Last1»
«CO»
«Addr1»«Addr2»
«City», «St»  «Zip»
«Country»



VISIT THE
SETTLEMENT
WEBSITE BY
SCANNING
THE PROVIDED
QR CODE

**CLGE**

A lawsuit has been filed against the NCAA and the "Power Five Conferences" (Pac-12, Big Ten, Big 12, Southeastern, and Atlantic Coast, including Notre Dame) about whether certain NCAA rules that restrict student-athlete compensation related to the commercial use of their names, images, and likenesses (NIL) are anticompetitive. Defendants deny any wrongdoing. The lawsuit seeks money for those included in the Classes.

**Who is included?** NCAA records indicate that you may be included in the lawsuit. Specifically, the lawsuit includes all current and former college athletes who received full Grant-in-Aid (GIA) scholarships and compete on, or competed on, a Division I men's or women's basketball team or a Football Bowl Subdivision (FBS) football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), any time between June 15, 2016 and November 3, 2023, OR who competed on a Division I athletic team prior to July 1, 2021 and received compensation while a Division I college athlete for the use of their NIL between July 1, 2021 and November 3, 2023.

**What are my rights and options?** If you do nothing, you will remain in the lawsuit and be able to share in any recovery that may be obtained. You will be bound by all court orders, and you will give up your right to pursue your own claims against Defendants. Alternatively, if you exclude yourself from the lawsuit (*i.e.,* opt out), you will not be entitled to any recovery that may be obtained, you will not be bound by any court orders, and you may pursue your own claims against Defendants. The deadline to exclude yourself is **Month XX, 2024**. Instructions on how to opt out are available at www.NILCollegeAthleteLitigation.com. If you would like to be updated about the status of the lawsuit and any possible compensation, or if you would like to learn more about this case and your rights and options, go to www.NILCollegeAthleteLitigation.com and provide your contact information.

**The Trial.** A trial for this case is scheduled to begin in January 2025 at the U.S. District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612. You may hire your own lawyer at your own expense, but you do not have to.