ANDREW W. LESTER (*pro hac vice*)
MARIANA PITTS (*pro hac vice*)
**SPENCER FANE LLP**
9400 N. Broadway Extension, Suite 600
Oklahoma City, OK
Telephone: (405) 844-9900
Facsimile: (405) 844-9958

JAMES SEARS BRYANT (*pro hac vice*)
W. LANCE CONN (*pro hac vice*)
RYAN EITZMANN (*pro hac vice*)
**NATIONAL LITIGATION LAW GROUP**
401 West Broadway Avenue
Enid, Oklahoma 73701
Telephone: (405) 835-6250
Facsimile: (580) 616-8997

[Additional Counsel on Signature Page]

Attorneys for Intervenor
Houston Christian University

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: COLLEGE ATHLETE NIL LITIGATION | CASE NO.: 4:20-CV-03919 CW |
| | **HOUSTON CHRISTIAN UNIVERSITY'S REPLY IN SUPPORT OF MOTION TO INTERVENE** |
| | Hon. Claudia Wilken |

REPLY IN SUPPORT OF MOTION TO INTERVENE

# TABLE OF CONTENTS

Page No.

I.   INTRODUCTION……………………………………………………………………..1

II.   ARGUMENT……………………………………………………………………...2

A. STANDARD OF REVIEW FOR GRANTING MOTION TO
INTERVENE………………………………………………………………….2

B. TIMELINESS……………………………………………………………………….2

1.   The Motion to Intervene was not filed too Early……………………………2

2.   The Motion to Intervene was not filed too Late……………………………..3

C. HCU'S PROTECTABLE INTERESTS………………………………………5

1.   HCU has a Significant Protectable Interest Relating to the Property or
Transaction that is the Subject of this Action…………………………………5

2. Disposition of this Action Will, as a Practical Matter, Impair or Impede HCU's
Ability to Protect its Interest………………………………………………...6

D. ADEQUATE REPRESENTATION………………………………………..7

1.   The Existing Parties do not Adequately Represent HCU's Interest…………7

E. MISCELLANY……………………………………………………………..9

1.   HCU Also Qualifies for Permissive Intervention………………………9

2.   HCU has Standing to Intervene……………………………………………9

III.   CONCLUSION………………………………………………………………10

1

## **TABLE OF AUTHORITIES**

2

**Cases**                                                                                          **Page(s)**

3  *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ……………………………………………8

4  *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179, 195 (2022) …………..8

5  *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 2010 WL 2228531, at *8 (N.D.

6  Cal. June 2, 2010………………………………………………………………………1,9,10

7  *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1021 n. 5 (9th Cir.

8  2022)..8

9  *California Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1120

10  (9th Cir. 2002) …………………………………………………………………………...3

11  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) ……………………………………...3

12  *City of Emeryville v. Robinson*, 621 F.3d 1251 (9th Cir. 2010) …………………………..7

13  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) ………………………………...2

14  *Fisher v. Arizona*, 594 F.App'x. 917, 919-20 (9th Cir. 2014) …………………………………7

15  *Lane v. Facebook, Inc.*, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) …………………………...2

16  *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) …………………………………..3

17  *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F.Supp. 1021, 1032 (N.D. Cal. 1999) ……………10

18  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ……………………2

19  *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004) …………………………6

20  *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) ………………………………...3

21  *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir.1990) ……………………………...3

22  *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995) ……………………………7

23  *Zepeda v. PayPal, Inc.*, 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014) …………………………..9

24  **Other Authorities**

25  Fed. R. Civ. P. 23……………………………………………………………………...1,2,9,10

26  Fed R. Civ. P. 24…………………………………………………………………….2,4,6,10

27  7C Wright, Miller, & Kane., Fed. Prac. & Proc. Civ. § 1908.1 (3d ed.) ………………………6

28

# I.    __INTRODUCTION__

Both Plaintiffs and Defendants object to Houston Christian University's request to intervene, claiming that HCU's motion is simultaneously too early and too late. Plaintiffs and Defendants claim HCU lacks standing to intervene: (a) Plaintiffs assert HCU's interest in its own funds is insufficient for standing, and, in any event, HCU is "an unnamed coconspirator" and, therefore, lacks "standing to object to the settlement" because, relying on Fed. R. Civ. P. 23 case law, HCU "does not profess to represent any class members," while (b) Defendants assert "as a non-party to these actions, it [HCU] lacks standing to object." *See Plaintiffs' Opposition* (Document 439) ("*Pfs. Opp.*") at 2, citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 2010 WL 2228531, at *8 (N.D. Cal. June 2, 2010); *See Defendants' Joint Opposition* (Document 440) ("*Dfs. Opp.*") at 2.

Plaintiffs and Defendants claim HCU has no right to object to the settlement under Rule 23, even though Rule 23 applies to "class plaintiffs," a group to which HCU simply does not belong. *Id.*; *see also* Fed. R. Civ. P. 23. Defendants – though not Plaintiffs – say HCU has no "cognizable interest under the Sherman Act," hence its "interest also has no relation to Plaintiffs' claims," even though neither HCU's motion nor the attached Complaint in Intervention mentions the Sherman Act. *Dfs. Opp.* at 5. Interestingly, Plaintiffs – though not Defendants – assert that "HCU's claimed interest is adequately protected by existing parties," putatively the Defendants, because the NCAA "speaks for its members," and the Power 5 conferences supposedly "share the same ultimate objective" as non-Power 5 conference member HCU. *Pfs. Opp.* at 3-4.

The assertions the parties make against HCU's Motion to Intervene are without merit. The Court should allow HCU to intervene.

*///*

## II.  ARGUMENT

## A.  STANDARD OF REVIEW FOR GRANTING A MOTION TO INTERVENE

To determine whether intervention is appropriate, courts are guided "by practical and equitable considerations." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). Courts must take all well-pleaded allegations in the motion to intervene as true. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Notably, a court must interpret the requirements for intervention "**broadly in favor of intervention**." *Donnelly*, 159 F.3d at 409. (emphasis added). To put it another way, "Rule 24(a)(2) is construed **broadly in favor of proposed intervenors**." *Id.* (emphasis added).

## B.  TIMELINESS

### 1.  The Motion to Intervene was not Filed too Early.

Both Plaintiffs and Defendants start their objections by claiming that HCU jumped the gun by filing too early. HCU, they argue, cannot object to the proposed settlement agreement because this Court has not granted preliminary approval to it and notice has not been sent to class members, as Rule 23 requires. *Pfs. Opp*. at 1; *Dfs. Opp*. at 1-3. In support, the parties cite several unpublished rulings involving interpretations of Rule 23. Plaintiffs reference an additional unpublished ruling, *Lane v. Facebook, Inc.*, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009), in which putative class members sought to intervene in a class action. *Pfs. Opp*. at 1; *See Lane* at *1.

But HCU is not and never will be a class member. HCU could not be a class member, as Plaintiffs' own epithet – "unnamed co-conspirator" – makes clear. It will not get notice sent to class members. It cannot object as a putative class member and will not do so. Unlike a class member, HCU will not even have an opportunity to opt out of the settlement.

HCU did not seek to object under Rule 23. It could not do so. Instead, HCU seeks to intervene under Rule 24.

///
///
///
///
///

**2.  The Motion to Intervene was not Filed too Late.**

Moreover, the parties claim HCU is not just too early, it is also too late. It is too late, they say, because this litigation against the NCAA and the Power 5 conferences has been on file since 2020 and HCU should have known that the anticipated settlement would likely be contrary to HCU's interests. *Pfs. Opp*. at 4; *Dfs. Opp*. at 3-4. But neither Plaintiffs nor Defendants adequately explain how HCU should have known this. Plaintiffs simply claim this litigation was filed in 2020 and everyone "long had notice of … its potential impact on Division I sports." *Pfs. Opp*. at 4. Defendants make a similar simplistic statement, that "there is no chance HCU was unaware of the three pending litigations at issue or the potential for a settlement." *Dfs. Opp*. at 4.

Knowledge that litigation is pending against other parties or that the parties might settle a case is not enough to show that "[a] party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *California Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002), quoting *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir.1990). Certainly, the filing of this litigation gave HCU no notice that the parties were seeking to adversely affect HCU. Plaintiffs chose their defendants carefully: they chose to sue only the NCAA and the Power 5 conferences. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) (as masters of their complaint, plaintiffs may choose who and for what to sue); *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) ("A plaintiff is the master of his complaint and responsible for articulating cognizable claims."). They did not name HCU or any other institution of higher education. And they chose only to sue the Power 5 conferences, specifically omitting the Southland Conference (to which HCU belongs) or any of the other unnamed 20+ Division 1 conferences.

HCU "acted as soon as [it] had notice that the proposed settlement was contrary to [its] interests." *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002). Settlement negotiations

///
///
///
///

1  have not been conducted publicly. Even Plaintiffs and Defendants agree. Defendants assert that
2  HCU's claims "are no more than nonspecific guesses about potential effects of a settlement
3  agreement HCU has not even seen yet." *Dfs. Opp.* at 5. Or, as Plaintiffs say, "HCU's claims about
4  the settlement terms and their impact are mere conjecture." *Pfs. Opp.* at 2. Indeed, counsel for
5  Plaintiffs represented to counsel for HCU that a term sheet exists but she was not free to share it
6  with HCU.

7       HCU first learned of the proposed settlement in late May 2024. On May 23, 2024, counsel
8  for Plaintiffs advertised on its website:

9       Today, Hagens Berman and Winston & Strawn LLP announced jointly with the
10      NCAA, Big Ten, SEC, Pac-12, Big 12 and ACC a landmark antitrust class-action
11      settlement poised to radically change the economic model of college sports and
12      provide billions of dollars in backpay damages and tens of billions of dollars in
13      future revenue-sharing to college athletes.[1]

14

15  At about the same time, NCAA President Charlie Baker also announced that "We have now reached
16  a proposed settlement in three major cases — House, Hubbard and Carter — involving back
17  damages and future compensation for Division I student-athletes."[2] The Baker statement lists
18  specific settlement numbers, e.g., "$2.78 billion, to be paid over 10 years, equating to
19  approximately $280 million annually" for "back damages." Simultaneously, the NCAA and the
20  Power 5 conferences also made public that "[t]he five autonomy conferences and the NCAA [are]
21  agreeing to settlement terms."[3] At approximately the same time, HCU learned that it would have
22  to pay approximately $3,000,000 over ten years for "backpay damages," despite no evidence that
23  HCU deprived anyone of name, image, or likeness rights.

24

---

25  [1] *See* https://www.winston.com/en/insights-news/hagens-berman-and-winston-and-strawn-secure-
26  historic-multibillion-dollar-settlement-for-college-athletes-and-bring-revolutionary-change-to-
     college-sports (last viewed on July 10, 2024).
27  [2] *See* https://ohiostatebuckeyes.com/news/2024/5/24/general-amessage-from-ncaa-president-
     charlie-barker (last viewed on July 11, 2024).
28  [3] *See* https://www.ncaa.org/news/2024/5/23/media-center-joint-statement-on-the-agreement-of-
     settlement-terms.aspx (last viewed on July 11, 2024).

REPLY IN SUPPORT OF MOTION TO INTERVENE

As HCU stated in its Motion to Intervene, the proposed settlement will cause HCU and other institutions of higher education to divert funds from the core mission of education and research, in favor of funding big-time sports entertainment, without any finding that HCU has deprived student athletes of their right to benefit from the use of their name, image, and likeness. To be sure, the rules of amateurism have prevented athletes from benefitting from their name, image, and likeness until recently. Yet, plaintiffs have not proved and cannot prove that HCU has caused approximately $3,000,000 of damages to its student athletes.

Indeed, the $2.8 billion settlement does not truly represent the loss of student athletes' name, image, and likeness. At a contested evidentiary hearing, HCU believes this number will be unsupportable. Instead, the majority of this amount represents the moneys institutions are diverting from core academic functions to induce players to enroll at their schools. This diversion of funds earmarked for academics is on top of the untold millions of dollars Division I sports loses each year. That is the basis for HCU's allegation that the proposed settlement will cause HCU and other similarly situated institutions and their officers and trustees to be in violation of their fiduciary duties.

## C.  HCU'S PROTECTABLE INTEREST

### 1.  HCU has a Significant Protectable Interest Relating to the Property or Transaction that is the Subject of this Action.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene…. [A]n absentee should be joined so that he may protect his interest which as a practical matter may be substantially impaired by the disposition of the action, he ought to have a right to intervene in the action on his own motion." Fed. R. Civ. P. 24, Notes of Advisory Committee on Rules—1966 Amendment. As one commentator has put it, "[i]t surely is sufficient also if the judgment will have a binding

///
///
///
///

**effect on the would-be intervenor**." 7C Wright, Miller, & Kane., Fed. Prac. & Proc. Civ. § 1908.1 (3d ed.) (emphasis added).

Oddly, Plaintiffs claim that HCU's ability to spend its own money on its core educational mission as opposed to funding big-time sports entertainment "is not a sufficiently concrete interest to warrant intervention." *Pfs. Opp.* at 3, citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004). Defendant's claim is even odder. They say HCU cannot intervene because HCU's claim "is not a cognizable interest under the Sherman Act," wholly ignoring the fact that HCU has not asserted a Sherman Act claim. *Dfs. Opp.* at 5. Plaintiffs and Defendants claim HCU's interest is "hypothetical," "conjecturing," "vague," "insincere," "nonspecific guesses," and "tenuous." *Pfs. Opp.* at 1-4; *Dfs. Opp.* at 5.

Both Plaintiffs and Defendants wholly ignore Rule 24 and its purposes. Rule 24 allows intervention by "anyone who … claims an interest relating to the … transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24. The transaction the parties propose will dispose of approximately $3,000,000 of HCU's money. That is not vague or conjecturing. Having to pay approximately $3,000,000 in past damages is neither hypothetical nor tenuous. It is not a "nonspecific guess." It is a quite specific statement of fact of what the proposed settlement will do. There is nothing "insincere" about being mandated to spend approximately $3,000,000 for non-educational purposes.

**2.   Disposition of this Action Will, as a Practical Matter, Impair or Impede HCU's Ability to Protect its Interest.**

Defendants assert that "HCU *presumes* the proposed settlement may divert funds towards college athletics." *Dfs. Opp.* at 5 (emphasis added). Plaintiffs assert "HCU offers no concrete explanation for how its interests would practically be impaired." *Pfs. Opp.* at 3. Interestingly,

///
///
///

///

REPLY IN SUPPORT OF MOTION TO INTERVENE

Plaintiffs cite an unpublished case, *Fisher v. Arizona*, 594 F.App'x. 917, 919-20 (9th Cir. 2014), for its citation of a different case, *City of Emeryville v. Robinson*, 621 F.3d 1251 (9th Cir. 2010). *Pfs. Opp.* at 3. *Emeryville* held that "[a]lthough the intervenor cannot rely on an interest that is wholly remote and speculative, **the intervention may be based on an interest that is contingent upon the outcome of the litigation**." *Emeryville*, 621 F.3d at 1259 (emphasis added), quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995). As stated in the previous section, the proposed settlement – that is, the proposed disposition of this action – will cost HCU approximately $3,000,000. Those are funds HCU will not be able to use for student scholarships or any other academic purpose. Those are funds HCU will not be able to use to "provide a learning experience that instills in students a passion for academic, spiritual, and professional excellence," as HCU's mission statement provides.

Those $3,000,000 will not be available to offset the cost to obtain a higher education for HCU's 2,300 highly diverse undergraduate students, 95% of whom receive financial aid. There is nothing "presumptuous" about the disposition of these $3,000,000. It is precisely what the proposed settlement would mandate. To put it bluntly, disposition of this action via the proposed settlement will, as a practical matter, impair or impede HCU's ability to protect its interest of serving its students with a learning experience that instills in them a passion for academic, spiritual, and professional excellence.

**D.      ADEQUATE REPRESENTATION**

    **1.      <u>The Existing Parties do not Adequately Represent HCU's Interest.</u>**

Plaintiffs claim that HCU is not entitled to intervene, because the NCAA purportedly "speaks for … HCU," and the Defendants generally "share the same ultimate objective" as HCU. *Pfs. Opp.* at 3-4. Defendants, on the other hand, do not claim to adequately represent HCU's interest. And well they did not so claim, as they realize their interests and actions are vastly different

///
///
///
///
///
///

1     from HCU's interests.

2         Plaintiffs cite *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003), for the proposition that

3 "where parties share the same ultimate objective, differences in litigation strategy do not normally

4 justify intervention." *Id.* at 1086. Yet, all Plaintiffs write to support the proposition is to imply that

5 the NCAA speaks for all of its members, "including HCU." *Pfs. Opp.* at 4. Moreover, they fail to

6 mention that the Ninth Circuit, in *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th

7 1013, 1021 n. 5 (9th Cir. 2022), has cast doubt on the holding of *Arakaki* in this regard, citing the

8 Supreme Court's decision in *Berger v. North Carolina State Conference of the NAACP*, 597 U.S.

9 179, 195 (2022) (calling into question a presumption of adequate representation, whereas "Rule

10 24(a)(2) **promises intervention** to those who bear an interest that may be practically impaired or

11 impeded[.]").

12         This reply has detailed how neither the NCAA nor the Power 5 conferences have

13 adequately represented HCU's interests. It is interesting to note that Plaintiffs sued both the NCAA

14 as well as the Power 5 conferences. Apparently, Plaintiffs believed that the Power 5 conferences

15 were not the same thing as the NCAA. Yet now, when confronted by a member of the Southland

16 Conference – not one of the Power 5 conferences – the NCAA magically represents HCU.

17         But the NCAA itself does not claim to represent HCU's interest at all, and certainly not

18 adequately. Neither the NCAA nor any of the Power 5 conferences consulted with HCU. They

19 simply did not consider HCU's interest. Defendants have struck what they apparently think is a

20 good deal for them. But it is not a good deal for HCU. None of the Defendants has represented

21 HCU's interest in any way or even pretended to do so.

22         The settlement terms themselves show no one represented HCU's interest. Virtually all

23 of the back damages were caused by the Power 5 conferences and done to Power 5 athletes. Yet

24 the Power 5 conferences will pay only a relatively small percentage of those damages, leaving non-

25

26 ///
/// 

27 ///
///

28 ///

1   Power 5 conferences, such as the Southland Conference (to which HCU belongs), pay a
2   disproportionately large amount of the back damages.

3   **E.  MISCELLANY**

4       **1.  HCU Also Qualifies for Permissive Intervention**

5           Defendants claim HCU does not qualify for permissive intervention because allowing
6   intervention would "upend years of litigation, long and careful negotiations, and a forthcoming
7   settlement." *Dfs. Opp.* at 6. To be sure, this case has been on file since 2020. But the "long and
8   careful negotiations" and the "forthcoming settlement" are the precise reasons HCU should be
9   allowed to intervene. These negotiations and the "forthcoming settlement" were all conducted
10   behind doors closed to HCU, did not take into consideration HCU's interests, and have resulted in
11   the parties' agreement to deprive HCU of HCU's funds, all to the benefit of the parties.

12           The only case Defendants cite for this proposition is *Zepeda v. PayPal, Inc.*, 2014 WL
13   1653246 (N.D. Cal. Apr. 23, 2014). But, as the first words of that ruling make clear, *Zepeda* is a
14   "putative class action," *id.* at *1, where the putative intervenors are putative class members in a
15   related case. As already stated, HCU is not a putative class member who will ever have a right to
16   object under Rule 23.

17           Finally, Defendants' claim that "HCU and Plaintiffs' claims are diametrically opposed,"
18   is beside the point. *Dfs. Opp.* at 6. HCU is not seeking to intervene to pursue Plaintiffs' claims. It
19   is seeking to intervene to protect its own rights to its own interests and those of its diverse students.
20   That is a protectible right under any circumstance.

21       **2.  HCU has Standing to Intervene.**

22           The parties' assertions that HCU lacks standing is wholly without merit. Citing
23   *Californians for Disability Rts., Inc. v. Cal. Dep't of Transp.*, 2010 WL 2228531, at *9 (N.D. Cal.

24   ///
25   ///
   ///
26   ///

27

28

June 2, 2010) and *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F.Supp. 1021, 1032 (N.D. Cal. 1999) – both of which are Rule 23 cases – Defendants claim that because HCU is "a non-party to these actions, it lacks standing to object." *Dfs. Opp.* at 7. Plaintiffs similarly cite *Californians for Disability Rts., Inc.*, and call HCU "an unnamed coconspirator." *Pfs. Opp.* at 2. Thus, Plaintiffs argue, a party who does not claim to represent a class member has no standing to object to a class settlement. But that is precisely the point. HCU is not a class member. Only class members have the right to object under Rule 23.

HCU, however, is not seeking to intervene under Rule 23 or as a class member. It is simply seeking to intervene under Rule 24, which applies to "anyone" who qualifies under Rule 24, as detailed above.

The parties' positions are nonsensical. They are fighting hard to bar HCU from proceeding in this case, claiming, pursuant to Rule 23, that as a non-class member HCU cannot object to the proposed settlement. They simultaneously claim that HCU cannot intervene under Rule 24 because HCU does not really have an interest in the litigation or the settlement, which will require HCU to contribute approximately $3,000,000. Yet they somehow also believe that HCU must be bound to the settlement.

## III.   <u>CONCLUSION</u>

The parties' arguments defy all logic. They claim HCU is both too early and too late, that the settlement they announced does not exist, and that, as Plaintiffs argue, Defendants fully represent HCU's interest, even though Defendants never claim to represent HCU's interests, or as Defendants put it, HCU is not aligned with Plaintiffs. Essentially the parties' position is that HCU has no right to its own money, but the Plaintiffs and Defendants do. They believe they can spend HCU's money as they see fit, all in furtherance of the cause of big-money sports and to the detriment of students pursuing a higher education at a non-Power 5 school. HCU simply desires to be heard, which is the most fundamental element of Due Process.

1

2      Dated:  July 12, 2024                                SPENCER FANE, LLP.

3

4                                                    By: _Jennifer L. Coleman_____
                                                         Jennifer S. Coleman
5                                                        Jedidiah L. Dooley
                                                         Spencer Fane LLP
6                                                        225 West Santa Clara St., Suite 1500
                                                         San Jose, California 95113
7

8

9                                                        Andrew W. Lester (pro hac vice)
                                                         Mariana Pitts (pro hac vice)
10                                                       SPENCER FANE LLP
                                                         9400 N. Broadway Extension, Suite 600
11                                                       Telephone: (405) 844-9900
                                                         Facsimile: (405) 844-9958
12                                                       alester@spencerfane.com
                                                         mpitts@spencerfane.com
13                                                       *ADMITTED VIA PRO HAC VICE*
                                                         *APPLICATIONS*
14

15                                                       C. Peter Goplerud (pro hac vice)
                                                         SPENCER FANE LLP
16                                                       1700 Lincoln Street, Suite 2000
                                                         Denver, CO 80203
17                                                       Telephone: (904) 502-9515
                                                         pgoplerud@spencerfane.com
18                                                       *ADMITTED VIA PRO HAC VICE*
                                                         *APPLICATIONS*
19

20                                                       James Sears Bryant (*pro hac vice*)
                                                         W. Lance Conn (*pro hac vice*)
21                                                       Ryan Eitzmann (*pro hac vice*)
                                                         NATIONAL LITIGATION LAW GROUP
22                                                       401 West Broadway Avenue
                                                         Enid, Oklahoma 73701
23                                                       *ADMITTED VIA PRO HAC VICE*
                                                         *APPLICATIONS*
24

25

26

27

28