| | |
|---|---|
| Steve W. Berman (*pro hac vice*) <br> Emilee N. Sisco (*pro hac vice*) <br> Stephanie Verdoia (*pro hac vice*) <br> Meredith Simons (SBN 320229) <br> HAGENS BERMAN SOBOL SHAPIRO LLP <br> 1301 Second Avenue, Suite 2000 <br> Seattle, WA 98101 <br> Telephone: (206) 623-7292 <br> Facsimile:  (206) 623-0594 <br> steve@hbsslaw.com <br> emilees@hbsslaw.com <br> stephaniev@hbsslaw.com <br> merediths@hbsslaw.com <br><br> Benjamin J. Siegel (SBN 256260) <br> HAGENS BERMAN SOBOL SHAPIRO LLP <br> 715 Hearst Avenue, Suite 300 <br> Berkeley, CA 94710 <br> Telephone: (510) 725-3000 <br> Facsimile: (510) 725-3001 <br> bens@hbsslaw.com <br><br> *Class Counsel for Plaintiffs* | Jeffrey L. Kessler (*pro hac vice*) <br> David G. Feher (*pro hac vice*) <br> David L. Greenspan (*pro hac vice*) <br> Adam I. Dale (*pro hac vice*) <br> Sarah L. Viebrock (*pro hac vice*) <br> Neha Vyas (*pro hac vice*) <br> WINSTON & STRAWN LLP <br> 200 Park Avenue <br> New York, NY 10166-4193 <br> Telephone: (212) 294-4698 <br> Facsimile: (212) 294-4700 <br> jkessler@winston.com <br> dfeher@winston.com <br> dgreenspan@winston.com <br> aidale@winston.com <br> sviebrock@winston.com <br> nvyas@winston.com <br><br> Jeanifer E. Parsigian (SBN 289001) <br> Drew H. Washington (SBN 350107) <br> WINSTON & STRAWN LLP <br> 101 California Street, 34th Floor <br> San Francisco, CA 94111 <br> Telephone: (415) 591-1000 <br> Facsimile: (415) 591-1400 <br> jparsigian@winston.com <br><br> *Class Counsel for Plaintiffs* |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919 CW <br><br> **DECLARATION OF STEVE W. BERMAN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL** <br><br> Date:        Sept. 5, 2024 <br> Time:       2:30 p.m. <br> Judge:      Hon. Judge Claudia Wilken <br> Courtroom: 2, 4th Floor |

I, STEVE W. BERMAN, declare as follows:

1. I am an attorney duly licensed to practice law before this Court. I am a member of the Washington Bar, and I have been admitted to this Court *pro hac vice*. I am the managing partner of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and counsel for the Class Plaintiffs ("Plaintiffs") in this matter.

2. I submit this declaration in support of Plaintiffs' Motion for Preliminary Settlement Approval. Based on personal knowledge or discussions with counsel in my firm of the matters stated herein, if called upon, I could and would competently testify thereto.

3. Plaintiffs filed this case on June 15, 2020 and have litigated extensively over the last four years to develop facts, economic theories, and models for class-wide damages. Plaintiffs negotiated discovery protocols and search terms and reviewed millions of pages of documents. To obtain the evidence needed to support their claims, Plaintiffs subpoenaed nearly 200 third parties, including 153 NCAA member schools, multiple professional leagues and player associations, and several other industry participants. Plaintiffs deposed 40 fact witnesses, including the President of the NCAA, conference commissioners, and athletic directors, and Defendants deposed the named Plaintiffs. Experts for both sides have been deposed, sometimes more than once, and have collectively submitted 22 reports totaling 2,885 pages. Plaintiffs' economists worked extensively with data from Defendants, hundreds of schools, and other sources to develop a model capable of calculating reliable damages estimates for the classes.

4. Settlement discussions began in November 2022, with the assistance of nationally prominent mediator Professor Eric D. Green, who has significant experience mediating disputes involving challenges to the NCAA's compensation rules. Mr. Green was the mediator in the *Alston* litigation that resulted in a $208 million settlement for the class in that case. After discussing resolution with Prof. Green in November 2022, the parties continued their discussions in early 2023.

5. On April 4, 2023, Class Counsel in *House* filed *Hubbard v. NCAA*, No. 4:23-cv-01593 (N.D. Cal.) on behalf of two former college athletes, Chuba Hubbard and Keira McCarrell.

6. The parties had four mediation sessions with Prof. Green in May, July, August, and September 2023. These sessions occurred after more than two-and-half years of active litigation in

1

Decl. of Steve W. Berman in Support of Pls.' Unopposed Mot. for Preliminary Settlement Approval
Case No. 4:20-cv-03919-CW

1    this matter, and were vigorous and detail-driven.  However, the parties could not reach agreement.
2    The sessions included discussions of NIL and compensation for athletic participation as of August
3    2023. Based on Class Counsel's role as Co-Lead Counsel in *Alston*, where the plaintiffs
4    unsuccessfully challenged the NCAA's pay for play rules, Class Counsel were well versed in both
5    the law and facts regarding such claims at the time the parties were holding settlement discussions as
6    well as the risk of litigating such claims.

7          7.      In fall 2023, this Court certified an injunctive relief class and three damages classes in
8    *House*. On December 7, 2023, *House* plaintiff Sedona Prince and two other current college athletes,
9    DeWayne Carter and Nya Harrison, filed *Carter v. NCAA*, No. 3:23-cv-06325-RS (N.D. Cal.).

10         8.      Settlement negotiations continued in December 2023 and into the spring of 2024, and
11   included discussions regarding *House*, *Hubbard*, and *Carter*. The parties participated in lengthy
12   mediation sessions on April 24 and 25, 2024.  Discussions were sharply focused during this round of
13   mediation, and in May, the essential elements of the settlement of all three cases were memorialized
14   in Settlement Terms Sheets, signed on May 23-24, 2024. Throughout, the discussions continued to
15   be separated for injunctive relief and damages. The parties first focused on negotiations regarding
16   settling the injunctive relief claims and agreed to terms of injunctive relief before turning to
17   discussions of damages. Plaintiffs made separate demands for damages relating to NIL damages and
18   athletic participation damages (and a demand relating to damages in the *Hubbard* matter).  The
19   demands, subsequent negotiations, and ultimate agreed-upon settlement amounts took into account
20   the differences in damages estimates, procedural posture, and risks and strengths of the claims in
21   each case.

22         9.      Indeed, throughout the mediation sessions with Professor Green, the settlement
23   discussions were structured to compartmentalize negotiations based on different relief and, from the
24   outset, the parties did not engage in any discussions about damages until the injunctive aspect was
25   settled. And, as for damages, these negotiations were done on a case-by-case basis separately for
26   NIL-related damages (the focus of *House*), Academic Achievement Award-related damages (the
27   focus of *Hubbard*), and damages related to compensation for athletic services (the focus of *Carter*).
28

10. After a competitive bidding process, Class Counsel selected Verita Global (previously known as KCC) to serve as the Notice and Claims Administrator. Prior to engaging Verita Global, Class Counsel sent a Request for Proposal ("RFP") to three other leading settlement administrators. The RFP included a carefully drafted outline requiring the respondents to make the same fixed assumptions about notice and settlement administration. All respondents provided comparable bids. All four proposed direct notice through email and notice postcards and indirect supplemental notice through media and publication. Verita Global offered competitive pricing, with the advantage of having served as the administrator for the comparable settlement achieved in the *In re: NCAA Grant-In-Aid Cap Antitrust Litigation*, Case No. 4:14-md-02541-CW. Verita also previously handled the litigation notice in this case and is well-positioned with institutional knowledge of the process of providing notice to these Classes

11. Although the attorneys' fees are ongoing in these cases, as of the date of this Motion, the lodestar for Hagens Berman is approximately $16,845,935.00 in *House*, with hours totaling approximately 31,869, $260,535.00 in *Carter*, with hours totaling approximately 390.1, and $1,081,785.00 in *Hubbard*, with hours totaling approximately 1891.5. The expenses billed to the litigation fund established for *House* are $7,568,096.79 and Hagens Berman has also separately spent $160,716.00 on the case. The expenses billed to the litigation fund established for *Hubbard* are $233,794.02 and Hagens Berman has also separately spent $4804.69 on the case. Hagens Berman's expenses in *Carter* are $6,235.90.

12. As indicated in the Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Motion for Preliminary Settlement Approval in *Hubbard*, as of July 19, 2024, Winston & Strawn's lodestar in *In re College Athlete NIL Litigation* was $29,168,257 corresponding to 35,155 hours billed, with $625,510 in litigation expenses.

13. As of the date of this Motion, based on information provided to me, the lodestar for supporting counsel, Spector, Roseman & Kodroff, P.C., is approximately $198,437.50 in *House*, with hours totaling approximately 220.5, and the firm has incurred approximately $763.64 in expenses.

3

DECL. OF STEVE W. BERMAN IN SUPPORT OF PLS.' UNOPPOSED MOT. FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 4:20-cv-03919-CW

14. Based on my experience in this settlement process—in conjunction with my overall experience litigating complex antitrust class actions for most of my career—I believe that the Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court. Indeed, I view this settlement as a landmark achievement concerning the issue of college athletes' compensation rights. The settlement is the culmination of more than 20 years of work challenging the NCAA's compensation restrictions that started with *In re NCAA I-A Walk-On Football Players Litigation*, 398 F. Supp. 2d 1144 (W.D. Wash. 2005), and has included both losses in *Agnew v. NCAA*, 1:11-cv-0293-JMS-MJD (S.D. Ind. 2011) and *Rock v. NCAA*, No. 12-cv-01019 (S.D. Ind. 2016), and advances in part, in *Keller v. Electronic Arts*, 4:2009-cv-01967 (N.D. Cal.) and *In re Athletic Grant-in-Aid Cap Antitrust Litigation*, 4:14-md-02541-CW (N.D. Cal).

15. Attached hereto is a true and correct copy of the following exhibit:

**Exhibit 1**:   Settlement Agreement dated July 26, 2024.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of July, 2024 at Seattle, Washington.

                                                    */s/ Steve W. Berman*
                                                    STEVE W. BERMAN