# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# (OAKLAND DIVISION)

|  |  |
|---|---|
| In re: College Athlete NIL Litigation | No. 4:2020-CV-03919 CW<br><br>**DECLARATION OF CARLA A. PEAK REGARDING SETTLEMENT NOTICE PROGRAM** |

I, Carla A. Peak, declare as follows:

1.    I have personal knowledge of the matters set forth herein and if called as a witness I could and would testify competently to them.

2.    I am a nationally recognized expert in the field of legal notification, and I have served as an expert in countless federal and state cases involving class action notice plans.

3.    I am a Vice President of Legal Notification Services for Verita Global, LLC ("Verita") f/k/a KCC Class Action Services, LLC or KCC, a firm that specializes in comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. With more than 30 years of industry experience, Verita has developed efficient, secure, and cost-effective methods to effectively manage the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest. Verita has

been retained to administer more than 7,500 class actions and distributed settlement payments totaling well over a trillion in assets. Our experience includes many of the largest and most complex administrations of both private litigation and of actions brought by state and federal government regulators.

4.      The purpose of this declaration is to provide information related to Verita's qualifications and experience,[1] as well as to detail the proposed notice plan (the "Notice Plan") designed to provide notice to class members about this settlement.

## VERITA'S BACKGROUND AND EXPERIENCE

5.      As an industry leader, Verita has been retained to administer more than 7,500 class actions and distributed settlement payments totaling well over a trillion dollars in assets. Our experience includes many of the largest and most complex administrations of both private litigation and of actions brought by state and federal government regulators. As such, we are familiar with, and guided by, Constitutional due process provisions, the Federal Rules of Civil Procedure, and the relevant case law relating to legal notification.

6.      More specifically, Verita was appointed as the notice administrator for the class certification phase of this case, as well as the notice or claims administrator in other cases involving collegiate athletics, including *O'Bannon v. National Collegiate Athletic Association*, No. 4:09-cv-03329-CW (N.D. Cal.), and *In re: NCAA Athletic Grant-In-Aid Antitrust Litigation*, No. 14-md-2541 (N.D. Cal.). Because of these previous appointments, Verita is already familiar with administering notice campaigns aimed at current and former NCAA athletes, the

---

[1] KCC acquired Gilardi & Co. LLC in 2015. KCC and Gilardi & Co. LCC rebranded as Verita Global LLC in June 2024. This Declaration combines the class action notice and administration experience of both firms.

demographics of likely class members, and the media outlets through which publication notice is proposed.

7.      Verita has also been appointed as the notice or claims administrator in a variety of antitrust matters, including *Barba v. Shire U.S., Inc*., No. 1:13-cv-21158 (S.D. Fla.); *In re Aftermarket Filters Antitrust Litigation*, No. 1:08-cv-04883 (N.D. Ill.); *In re Asacol Antitrust Litigation*, No. 1:15-cv-12730 (D. Mass.); *In re Blood Reagents Antitrust Litigation*, No. 09-md-2081 (E.D. Pa.); *In re Domestic Drywall Antitrust Litigation*, No. 2:13-md-02437 (E.D. Pa.); *Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Company, Ltd.*, No. 2:09-cv-00852 (E.D. Wis.); *In re: Fresh and Process Potatoes Antitrust Litigation*, 4:10-md-02186 (D. Idaho); *In re HIV Antitrust Litigation*, No. 3:19-cv-2573 (N.D. Cal.); *In re Hypodermic Products Antitrust Litigation*, No. 05-cv-1602 (D. N.J.); *In re Intuniv Antitrust,* No. 1:16-cv-12396 (D. Mass.); *In Re Korean Ramen Antitrust Litigation*, No. 13-cv-4115 (N.D. Cal.); *In re Lidoderm Antitrust Litigation,* No. 3:14-md-02521 (N.D. Cal.); *In re Lithium Ion Batteries Indirect Antitrust Litigation*, No. 13-md-02420 (N.D. Cal.); *In re: Nexium (Esomeprazole) Antitrust Litig*., No. 1:12-md-2409 (D. Mass.); *In re Potash Antitrust Litigation* (II), No. 1:08-cv-06910 (N.D. Ill.); *In re Remicade Antitrust Litigation*, No. 2:17-cv-04326 (E.D. Pa.);  *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, No. 1:14-md-02503 (D. Mass.); *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.); *In re Thalomid and Revlimid Antitrust Litigation*, No. 2:14-cv-06997 (D. N.J.); and *In re Titanium Dioxide Antitrust Litigation*, No. 10–CV–00318 (D. Md.). More information about VERITA's experience can be found at www.VeritaGlobal.com.

8.      Verita has administered over 10,000 cases and has been recognized as a best claims administrator by *The Recorder*, *The New York Law Journal*, and *The National Law Journal*. The

2022 Antitrust Annual Report on Class Action Filings in Federal Court, published in September 2023, reported that from 2009 to 2022, Verita ranked among the top claims administrators by aggregate settlement amount and second by number of settlements.

9.     Over the last two years, Verita has not served as the settlement administrator for Settlement Class Counsel Jeffrey Kessler of Winston & Strawn LLP or Steve Berman of Hagens Berman Sobol Shapiro LLP. Verita recently served as the class certification administrator for Mr. Berman and Mr. Kessler in *In re: College Athlete NIL Litigation*, No. 4:2020-CV-03919-CW. Verita also served as the settlement administrator, appointed more than two years ago, for Mr. Berman in *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, No. 8:10-ml-02151 (C.D. Cal.) and *In re: NCAA Athletic Grant-In-Aid Antitrust Litigation*, No. 14-md-2541 (N.D. Cal.).

10.     In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for more than 20 years. During that time, I have been involved in all aspects in the design and implementation of class action notice planning, as well as drafting plain language notice documents that satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC").

11.     I have worked with Settlement Class Counsel to develop various forms of notice for Court approval in this case. All forms of notice have been designed to be noticeable, clear and concise, and written in plain, easily understood language.

12.     The reach of the Notice Program is consistent with other effective court-approved notice programs. Additionally, the FJC's Judges' Class Action Notice and Claims Process

Checklist and Plain Language Guide (the "FJC Checklist") considers reach of 70% or greater among class members reasonable, which this Notice Plan is expected to exceed.

## NOTICE PLAN

### *Class Definition*

13.    The Notice Plan is designed to provide notice to the following Settlement Classes ("Classes") and their members ("Settlement Class Members"):

**Football and Men's Basketball Class**: All student-athletes who have received or will receive full GIA scholarships and compete on, competed on, or will compete on a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), and who have been or will be declared initially eligible for competition in Division I at any time from June 15, 2016 through September 15, 2024.

**Women's Basketball Class**: All student-athletes who have received or will receive full GIA scholarships and compete on, competed on, or will compete on a Division I women's basketball team at a college or university that is a member of one the Power Five Conferences (including Notre Dame), and who have been or will be declared initially eligible for competition in Division I at any time from June 15, 2016 through September 15, 2024.

**Additional Sports Class**: Excluding members of the Football and Men's Basketball Class and members of the Women's Basketball Class, all student-athletes who compete on, competed on, or will compete on a Division I athletic team and who have been or will be declared initially eligible for competition in Division I at any time from June 15, 2016 through September 15, 2024.

**Injunctive Relief Class**: All student-athletes who compete on, competed on, or will compete on a Division I athletic team at any time between June 15, 2020 through the end of the Injunctive Relief Settlement Term.

14.    All Classes exclude the officers, directors, and employees of Defendants. These Classes also exclude all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

15.    It is my understanding that Defendants have agreed to request recent contact information from Division I universities for the majority of Settlement Class Members. Direct notice will be provided to all Settlement Class Members where email or physical address

information is provided by Defendants and their member Division I universities, as well as those who registered their contact information with Verita during the class certification notice phase. Plaintiffs will also provide a list of approximately 11,000 athletes who provided contact information after hearing about the settlement publicly or did not object to contact information being provided in school productions throughout the course of litigation.

16.     Verita has developed a digital media notice program designed to reach over 80% of likely Settlement Class Members in this settlement, as well as class members in *Hubbard v. National Collegiate Athletic Association*, No. 4:23-cv-01593-CW (N.D. Cal.) ("*Hubbard*") (a similar settlement with the same Defendants and a class of former college athletes that will have noticed implemented simultaneously with this one to take advantage of the efficiencies). When combined with the direct notice efforts, the notice program is expected to reach a substantially higher percentage. Although not measurable, the press release and an extensive organic media effort will further extend reach and frequency of exposure among the Settlement Classes.

17.     Due to the overlapping nature of this settlement and overlapping identity of Settlement Class Members with the *Hubbard* settlement, one settlement website will be used. All notices, print and digital, will drive traffic to a single website where student-athletes will be able to determine whether they are included in one settlement or both settlements, one class or multiple classes, and file a claim for all monies they may be entitled to from both settlements. Utilizing one settlement website will enhance the overall experience for affected student-athletes and streamline the administration process. Verita expects a significant amount of traffic to the settlement website.

### *Individual Notice*

18.     Verita has reviewed the data used to provide direct notice in the *In re: NCAA Athletic Grant-In-Aid Antitrust Litig.*, which Verita administered, to determine whether any of

those class members overlap with any of the Classes certified in this Action. Verita has determined that 3,030 individuals were class members in the *Grant-In-Aid Antitrust Litigation* and are class members in this action. The contact information for those 3,030 overlapping class members will be used as an initial basis to create a list along with the approximately 11,000 athletes who provided unique contact information directly to Settlement Class Counsel previously, for direct notification purposes.

19.     Verita expects to send an email notice to all or nearly all Football and Men's Basketball Settlement Class Members and Women's Basketball Settlement Class Members, as well as all other Settlement Class Members for which an email address has been provided by the Defendants and/or an applicable university. Email notice is well suited to the demographics of the Classes, is a preferred communication method of Settlement Class Members, and the primary method of communication between students and universities/colleges.

20.     Prior to distributing the email notice, all email addresses will be subject to a cleansing and validation process to, among other things, remove extra spaces and fix common domain name errors, as well as compare addresses against known bad email addresses and verify email existence with Internet Service Providers ("ISPs").

21.     The email notice will be designed to avoid common "red flags" that could cause the email to be blocked by spam filters. For example, the content of the notice will be placed in the body of the email rather than as an attachment, to avoid spam filters and improve deliverability. The email notice will contain a link to the case website. A draft of the proposed email notice is attached as **Exhibit 1**.

22.     The email delivery will be attempted three times. The email campaign will return data regarding the number of emails successfully delivered and email bouncebacks. Many of the

Initial bouncebacks are temporary in nature and consist primarily of those that are blocked by ISPs, result from filled inboxes on the targets' computers, or result from some temporary technical difficulties. These three categories of bouncebacks ("Non-Fatal Bouncebacks") account for about 10-15% of all emails that are sent, and in other cases and tests we have found that about 85% of these emails could be deliverable if they were re-sent.

23.     After the third email bounceback for an individual Settlement Class Member, Verita will send a single postcard summary notice to the Settlement Class Member's corresponding postal address on the Class List, where applicable.  Additionally, any Settlement Class Member with a physical mailing address but without an email address on the Class List will be mailed a single postcard summary notice if applicable.

24.     Prior to mailing, the postal addresses will be checked against the National Change of Address (NCOA)[2] database maintained by the USPS; certified via the Coding Accuracy Support System (CASS);[3] and verified through Delivery Point Validation (DPV).[4]

25.     Notices returned by the USPS as undeliverable will be re-mailed to any address available through postal service forwarding order information. For any returned mailing that does not contain an expired forwarding order with a new address indicated, Verita will conduct further address searches using credit and other public source databases to attempt to locate new addresses and will re-mail these notices to new addresses if possible. A draft of the proposed postcard notice

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[3] Coding Accuracy Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[4] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

is attached as **Exhibit 2**.

26.     All email and postcard notices sent to Settlement Class Members will contain a unique ClaimID and PIN to allow athletes to review and update their contact information via the case website. Approximately 60 days after Notice is sent, upon logging into the case website, athletes will be provided with their estimated settlement awards and the information Plaintiffs have on the athlete's NIL deals that will be used to calculate their lost opportunity awards. This will be dependent upon the information that has been provided by the claimant and/or the applicable university.

27.     All email and postcard notices sent to known members of the Additional Sports Class will contain a unique ClaimID and PIN to allow athletes to review and update their contact information via the case website. Upon logging into the case website, each of these athletes will be asked to (1) confirm their reported NIL deal(s), and/or (2) file a claim for an unrecorded NIL deal, and/or (3) file a claim for videogame damages, and/or (4) file a claim for pay-for-play damages. Approximately 60 days after Notice has been sent, estimated awards for each Settlement Class Member (to the extent they are provided the Defendant and/or applicable university) will be available with the same unique ClaimID and PIN.

### *Target Analysis*

28.     Settlement Class Members, as defined, are not precisely measured by available advertising resources. Therefore, a proxy target was utilized to develop the media portion to the Notice Plan. Using a proxy target is a routine practice when developing class action notice plan.

29.     MRI-SIMMONS/comScore multi-platform data[5] was studied among a proxy target

---

[5] For decades, MRI and Simmons Research conducted two of the most trusted consumer studies in the United States. MRI's 'Survey of the American Consumer' was the gold standard for consumer audiences across industries. In 2021, MRI-Simmons combined these trusted, gold-standard consumer studies to launch MRI-Simmons USA, the most comprehensive study on

of adults 18-34 years of age who participate in an NCAA sport, watch an NCAA sport on television or online and either currently attend college or have graduated from college. The characteristics, demographics, interests, and media habits of the proxy target aided in the media planning and selection process. Given the young, mobile nature of the Classes, Verita created a digital media campaign to provide the best notice under the circumstances of this litigation.

30.     This data showed that our Target Audience are heavy users of the internet and social media platforms. The Target Audience prefers digital media (internet and social media) over other media vehicles, including magazines, newspapers, radio, or television. Members of the Target Audience are 56.7% more likely to be heavy internet users and 52.3% more likely to be heavy social media users compared to the average U.S. adult. Therefore, Verita recommends utilizing a robust internet advertising campaign to best provide notice to the Target Audience and therefore likely Settlement Class Members.

31.     It is important to note that the Target Audience is distinct from the class definition, as is commonplace in class action notice plans. Utilizing a proxy audience is considered a best practice among media planners and class action notice experts alike. Using proxy audiences is also commonplace in both class action litigation and advertising generally.[6]

---

American consumers. This high-quality, nationally representative study provides marketers, media, and agencies with the most accurate consumer truth set. Released quarterly, MRI-Simmons USA employs address-based probabilistic sampling, measuring real people, randomly chosen to represent the US population in all its variations.

[6] If the total population base (or number of class members) is unknown, it is accepted advertising and communication practice to use a proxy-media definition, which is based on accepted media research tools and methods that will allow the notice expert to establish that number. The percentage of the population reached by supporting media can then be established…The notice plan should include an analysis of the makeup of the class. The target audience should be defined and quantified. This can be established through using a known group of customers, or it can be based on a proxy-media definition. Both methods have been accepted by the courts and, more generally, by the advertising industry, to determine a population base. Id at 56.  Duke Law School, GUIDELINES AND BEST PRACTICES IMPLEMENTING 2018 AMENDMENTS TO RULE 23 CLASS ACTION SETTLEMENT PROVISIONS, at 56.

32.     Given the similarities between the Classes in this case and the class in the *Hubbard* settlement, the same Target Audience could and should be utilized. One media campaign has been developed and is proposed for both settlements. Utilizing one media campaign that encompasses both settlements and directs student-athletes to the same settlement website will provide efficient and effective communications as athletes may be included in either settlement or both settlements. It will also reduce confusion among overlapping class members, reduce administration costs, enhance online search results related to each settlement, and simplify the claims process as settlement class members will be able to file a claim, if required, for all monies they may be entitled to from both settlements.

### *Digital Media Campaign*

33.     Verita will utilize programmatic display advertising[7] to allow internet advertisements to be targeted specifically to likely Settlement Class Members.  Utilizing objective syndicated data to measure the volume and targeting of the advertisements will allow the reach and frequency of the ads to be reported to the Court. Multiple targeting layers, including self-reported user data and third-party data, will be used to identify and target likely Settlement Class Members based on their online interests and behaviors.

34.     Approximately  72,800,000  digital  media  impressions  will  be  purchased programmatically and delivered across a variety of websites and mobile apps, as well as Instagram,

---

[7] Programmatic Display Advertising is the U.S.'s leading method of buying digital media impressions. It is a trusted method specifically utilized to reach defined target audiences. It has been reported that U.S. advertisers spent nearly $123.22 billion on programmatic display advertising in 2022, and it is estimated that approximately $141.96 billion will be spent on programmatic display advertising 2023. See https://www.insiderintelligence.com/content/us-programmatic-digital-display-ad-spending-2022. Programmatic display advertising uses algorithms to identify and examine demographic profiles and uses advanced technology to place advertisements on the websites that members of the target audience are most likely to visit.

Facebook, YouTube, TikTok, and Reddit.[8] Targeting will be layered to ensure coverage. For example, targeting will include demographic, geographic, behavioral, and contextual layers such as age, college affiliation, NCAA affiliation, and whether the user follows NCAA-related social media accounts. Drafts of the proposed digital notices are attached as **Exhibit 3**.

35.     The Notice Plan also includes a paid search campaign to help drive Settlement Class Members who are actively searching for information about the litigation to the dedicated case website. Paid search ads are driven by the user's search activity, meaning that if someone searches for (or has recently searched for) terms related to the litigation, the user may be served with an advertisement directing them to the dedicated website. The search terms used as part of the paid search campaign will directly relate to the litigation, as well as the subject matter of the class action.

36.     The digital media campaign will be monitored by Verita's digital specialists to analyze key campaign performance indicators and make real-time modifications, as needed.

### *Press Release*

37.     In addition to the digital media campaign, Verita will cause a press release to be issued nationwide to a variety of press outlets as well as AP News and a College Media Influencer List. The press release will help garner "earned media" (*i.e.*, other media may report about the

---

[8] In the United States in 2023, Facebook has a reported 246.73 million users, Instagram has a reported 150.99 million users, YouTube reported 153.14 users, TikTok reported 170 users, and X/Twitter has a reported 64.9 million users. See:
https://www.statista.com/statistics/408971/number-of-us-facebook-users;
https://www.statista.com/statistics/293771/number-of-us-instagram-users;
https://www.demandsage.com/youtube-stats/#:~:text=62%25%20of%20YouTube%20users%20in%20the%20U.S.A.%20access,500%20hours%20is%20uploaded%20on%20YouTube%20every%20day; TikTok Statistics You Need to Know in 2024 (backlinko.com). and https://www.oberlo.com/statistics/number-of-twitter-users-by-country.

story). Earned media can provide a valuable role in distributing news and information about the litigation through trusted sources. The College Media Influencer List will provide the press release directly to journalists who have specifically asked to receive information regarding college news. The press release will contain information about this settlement, as well as the *Hubbard* settlement because of the overlapping nature of class membership.

38.     News of this settlement has already been reported via *Forbes*, ESPN, NBC Sports, AP News, *The New York Times*, ABC Sports, NBC Connecticut, the *Duke Chronicle*, the Bleacher Report, Fortune, and numerous law firm websites. Additionally, the litigation has received extensive news coverage via Reuters, *The New York Times*, Sportico, *USA Today*, ESPN, SwimSwam, Bloomberg, *Forbes*, the *Los Angeles Times*, CBS Sports, Sports Illustrated, and other media outlets. Verita anticipates these press outlets, and numerous others, to report on the settlement notice campaign and claims process. A draft of the proposed press release is attached as **Exhibit 4**.

### *Organic Media Effort*

39.     Verita will reach out to a variety of relevant influencers, current and former student-athletes, student-athletes based on school athletic team rosters during the relevant class periods, player associations, conferences, sports groups, collegiate alumni associations, sports agents and sports marketers to solicit their assistance in sharing the settlement information and encouraging claims filing. The outreach effort will be performed via social media, email, mail, and other methods as appropriate. The organic media effort request assistance in spreading the word about this settlement, as well as the *Hubbard* settlement.

***School Outreach Campaign***

40.     Verita will coordinate with the parties to contact various educational institutions to provide contact information for their student-athletes for the purpose of providing email and/or physical notice. Verita has drafted instructional letters and excel templates to be sent to each NCAA Power Five Conference School and each NCAA non-Power Five Conference School. The instruction letters detail how to download the excel template, provides detailed instructions regarding how to complete the template, contains data submission guidelines, and provides a unique School ID Code and PIN Code for the school to use to upload the completed excel template to Verita's secure online portal. Once the file is uploaded to Vertia's secure online portal, an email will be generated to the school indicating successful submission.

41.     Once collected, Verita will use this information to send email and/or mailed notice to student-athletes, as well as allow student-athletes to view their settlement payment amounts and update their contact information online.

***Response Mechanisms***

42.     Verita will create and maintain a settlement website, collegeathletecompensation.com, to allow Settlement Class Members to obtain information and documents about this settlement, as well as the *Hubbard* settlement. Settlement Class Members will be able to view, download, and/or print the Long Form Notice, the Class Action Complaints, Defendants' Responses to the Class Action Complaints, Plaintiffs' Motion for Class Certification, the Order Granting Motion for Certification of Damages Classes, the Stipulation and Settlement Agreement, and other relevant documents and court filings. Settlement Class Members will also be able to update their contact information or file a claim online, where applicable. A draft of the proposed long form notice is attached as **Exhibit 5**.

43. In addition, individuals who visit the case website, but have not received an email or mailed notice, will be provided with an opportunity to logon to the website with personal credentials such as their NCAA ECID. The settlement website will provide instructions regarding how users can locate their NCAA ECID.

44. Verita will update the toll-free number established during the class certification notice phase to allow Settlement Class Members to call and learn more about the settlement by listening to answers to frequently asked questions and requesting that additional information be sent to them. The toll-free number will provide information about this settlement, as well as the *Hubbard* settlement.

45. Verita will establish a dedicated email address, info@collegeathletecompensation.com, to allow Settlement Class Members to correspond directly with Verita.

### *Claims Process*

46. Settlement Class Members who are eligible for a payment without filing a Claim Form will be sent a settlement payment. Settlement Class Members who are required to submit a Claim Form will receive a pro rata share of the net settlement amount as determined by the economic experts in this case. A single Claim Form will be available for Settlement Class Members to, where necessary, submit claims for videogame damages, pay-for-play damages, and lost opportunity damages. A draft of the proposed Claim Form is attached as **Exhibit 6**. Settlement Class Members will also be able to file a claim on the settlement website, using an online claims filing page that will be engineered to be user- and mobile-friendly.

47. Due to the unique nature of this settlement, it is difficult to estimate claims rates based on comparable administrations. Therefore, Verita has estimated the claims rate based on its

experience with settlements affecting large, close-knit groups of individuals, sizable payment amounts, significant news coverage, and the number of affected individuals who will be required to file a Claim Form to receive a payment (according to information provided by the economic experts in this matter). Not all Settlement Class Members are required to file a Claim Form to receive a settlement payment. Of the Settlement Class Members who are required to submit a Claim Form, Verita estimates that (1) 10-20% of the pay-for-play portion of the Additional Sports Class will file a Claim Form and (2) 30-40% of the video game portion of the Additional Sports Class will file a Claim Form.

### *Administration Costs*

48.     Verita estimates the costs of notice and settlement administration through the initial distribution to eligible Settlement Class Members to be $297,053. These costs are based upon the scope of work currently contemplated administration through the initial distribution. This tasks include data intake and processing, distributing the email notice, printing and mailing the postcard notice, address searches, re-mailing postcard notices to updated and/or newly located addresses, postage, weekly case reporting, corresponding with class members, processing claim forms, processing exclusion requests, curing deficient claims, disbursements and handling, and staff hours, as well as costs that will be split with the *Hubbard* settlement such as implementing the media campaign, setting up and maintaining the settlement website, and updating and maintaining the settlement toll-free number. Additional costs will be incurred after the initial distribution.

49.     The costs of settlement administration are consistent with industry standards and cases of similar size and expected scope. These estimated costs are the product of extensive pre-administration consultation with the parties on the expected scope of work. Notice and settlement administration costs as a general matter are a combination of unitized pricing and hourly rates.

While Verita can and does project costs based upon input from the parties about the likely engagement, informed by our own past experience, ultimately, we are a neutral third-party administrator tasked with handling any administrative tasks requested and required by the circumstances of the administration, regardless of whether the administration falls within projections or greatly exceeds them. These realities are beyond Verita's control and cannot be altered by Verita to limit the work required.

### *Procedures for Securely Handling Data*

50.     Verita designed its in-house processing platform to securely safeguard client information, as well as mitigate potential external and internal fraud. Verita implements assurance controls that assure: (1) data transmission between Verita and its client organizations are complete; (2) new claims (participant data and noticing materials) are established accurately and completely; (3) claims processing is performed completely and accurately; (4) disbursements are authorized and performed accurately and completely; (5) output is printed accurately (e.g. claim forms, deficiency letters, etc.); (6) processing is appropriately authorized and scheduled and that deviations from scheduled processing are identified and resolved; (7) physical access to the data center is restricted to properly authorized individuals; and (8) changes to the existing applications are authorized, tested, approved, and properly implemented.

51.     As a result of providing administrative services within the public sector, most notably with the SEC, Verita continues to develop its system security posture. As a contractor, Verita is subject to annual reviews according to the SEC's information security program.

### *Conclusion*

52.     It is Verita's opinion that the proposed notice plan comports with the requirements of due process and of Fed. R. Civ. P. 23. The notice plan provides for direct notice to all

individuals whose contact information is reasonably available, as well as a carefully targeted digital media campaign designed to reach more than 80% of the classes in this settlement, and likely a higher percentage because of the overlapping nature with the class in the *Hubbard* settlement. Although not measurable, the press release, and extensive organic media effort will further extend reach, notice opportunities and frequency of exposure among the various Settlement Classes.

I, Carla A. Peak, declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of July 2024, at Ocean City, New Jersey.

_____
Carla A. Peak

# Exhibit 1

TO:
FROM:
SUBJECT:

ClaimID:
PIN:

Legal Notice

**If You Were a Division I College Athlete between 2016 and 2024,
You Could Get Money from a Class Action Settlement.**

*A federal court authorized this Notice.*

You are receiving this notice because school records indicate you are included in this class action settlement and may be eligible for a payment. To see how much money you could recover and to update your contact information and/or payment method, visit collegeathletecompensation.com and enter the ClaimID and PIN provided above. Estimated payments will be updated approximately 60 days from the date you receive this Notice and will be dependent on the information your school provided to us.

### What is this lawsuit about?

College athletes sued the NCAA and the Power 5 Conferences (Atlantic Coast Conference, Big Ten, Big 12, Pac-12 and SEC), together called the "Defendants."  This lawsuit claims that the Defendants illegally agreed not to pay college athletes for participation in athletics or for use of their name, image, and likeness ("NIL"), and they also agreed to prevent college athletes from receiving money from third parties for use of their NIL, and they agreed to limit scholarships available to college athletes. Defendants deny these claims. Defendants have agreed to the settlement to resolve the lawsuit against them.

### Are NCAA rules changing?

As part of the Settlement, Defendants have also agreed to change compensation rules going forward. Conferences and schools, starting in Fall 2025, may increase the number of athletic scholarships provided, and may provide direct benefits for NIL and participation in college sports. These increased compensation opportunities may impact you if you compete as a college athlete beginning in Fall 2025.

To see the full set of rule changes visit collegeathletecompensation.com.

### Who is a part of the lawsuit?

You are part of the Settlement as a "Class Member" if you:

Competed on any Division I athletic team and were declared initially eligible for competition between June 15, 2016 and September 15, 2024.

### What do I get?

Defendants have agreed to pay $2,576,000,000 and change compensation rules going forward to end this lawsuit. You may be eligible to receive some of this money now. The amount of money you get will depend on what sport you played, the years you played, where you played, your scholarship status, your recorded NIL deals, how many people are included, and how much money the Court approves for attorneys' fees,

class representative awards, and litigation and settlement costs. These payments, as well as attorneys' fees, will be paid out over a ten-year period.

### How do I get money?

If you got this notice, and you played football, men's basketball, or women's basketball for a school that competes in a Power Five Conference, you do not need to do anything to get money. You will automatically receive a payment if the settlement is approved and becomes final. To see an estimate of your payment amount or update your contact information and/or payment method visit collegeathletecompensation.com 60 days from the date you receive this Notice.

If you played a sport other than football or basketball at a school that is in a Power Five Conference, or competed in any sport for a school not within a Power Five Conference, you will need to complete a claim form.

If you received NIL compensation since 2021, and you competed prior to July 1, 2021, you can confirm your deal was reported by your school here, and then you will automatically receive payment.

### What are my rights?

If you do nothing, you will be bound by the Court's decisions. If you want to keep your right to sue the settling Defendants, or their member institutions, instead of getting money from this settlement, you must opt out by [**Month 00, 202X**]. You cannot opt out of the future rule changes (injunctive relief) but you can object. Please note that if you opt out, you will not receive any money from this settlement. If you want to stay in the settlement but do not agree with any part of it, you may object to it by [**Month 00, 202X**]. Details about these options is available by clicking here or by going to collegeathletecompensation.com.

The Court will hold a hearing on [**Month 00, 202X**] to consider whether to approve the settlement and a request for attorneys' fees and award for each of the class representatives. You or your own lawyer may appear and ask to speak at the hearing at your own expense.

### What if I received two notices?

If you received two notices by email and/or mail, NCAA records indicate that you are included in both this settlement and the *Hubbard v. National Collegiate Athletic Association* settlement. You may be eligible to receive money from both settlements.

Go to collegeathletecompensation.com to file a Claim Form in both settlements, if required, for you to receive all the money you qualify for.

### Questions?

**Collegeathletecompensation.com**          **info@collegeathletecompensation.com**          **1-877-514-1777**

# Exhibit 2



United States District Court
*In re: College Athlete NIL Litigation*
Case No. 4:20-cv-03919

# Class Action Notice

*Authorized by the U.S. District Court*



**Were you denied compensation opportunities as a college athlete any time between 2016-2024?**



**NCAA records indicate you may be entitled to compensation from a $2.576 billion settlement and may be eligible for future benefits.**



**To see how much money you are entitled to and to learn about your rights and options scan the QR code to learn more.**

**Key things to know:**

- This is an important legal document.
- If you take no action, any ruling from the court will apply to you, and you will not be able to sue the NCAA, or any of the Power Five Conferences, or their member institutions about the same issues.
- NCAA compensation rules are changing as part of this settlement, to understand how you are impacted, learn more at collegeathletecompensation.com or by scanning the QR code.

# Court-Approved Legal Notice



<<MAIL ID>>

<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

This is an important notice about a class action settlement.

# Exhibit 3





# DIGITAL MEDIA MESSAGING & DESIGN SAMPLES

*In re: College Athlete NIL Litig. and Hubbard v. NCAA*
July 23, 2024

Verita Global, LLC

**NOTE**: All creatives displayed herein are for representative purposes only and may not be to scale. Some ads are built on responsive platforms and may not display all text in view based on placement, screen size, etc. Images have been embedded with relevant alt text wherever possible.

*In re: College Athlete NIL Litig. and Hubbard v. NCAA*

# DISPLAY

Digital media impressions will be served on desktop and mobile devices via various websites and apps.

## Version 1



300x250



300x600



728x90

Version 2



300x600

300x250



728x90

Version 3



300x600



300x250



728x90

## Version 4



300x600

300x250



728x90

**Display Text:**

NCAA SETTLEMENTS

If You Were a Division I College Athlete, You Could Get Money from Class Action Settlements.

CollegeAthleteCompensation.com

LEARN MORE

**Click-through URL:** https://collegeathletecompensation.com/

# PAID SEARCH

Text ads may be served on Google's Search, Yahoo Search and Bing Search Engine Results Page(s) when relevant keywords are triggered.



**Google Search Headline (3 Required)**

**Headline 1** (27/30 characters used): Division I College Athlete?
**Headline 2** (28/30 characters used)**:**  Your rights may be affected.
**Headline 3 (only appears in certain placements)** (10/30 characters used)**:** Learn More

**Google Search Description (2 Required)**

**Description 1** (40/90 characters used)**:** If You Were a Division I College Athlete
**Description 2** (50/90 characters used)**:** You Could Get Money from Class Action Settlements.

**Website URL:** https://collegeathletecompensation.com/

# YOUTUBE

A 6-second video bumper ad may appear before and/or after certain videos on YouTube.

*Video Bumper Ad*



**YouTube Bumper Ad text:**

NCAA SETTLEMENTS

If You Were a Division I College Athlete, You Could Get Money from Class Action Settlements.

CollegeAthleteCompensation.com

LEARN MORE

**Click-through URL:** https://collegeathletecompensation.com/

*YouTube Companion Ad (appears alongside video ad)*



300x60

*In re: College Athlete NIL Litig. and Hubbard v. NCAA*

# SOCIAL MEDIA

Digital media impressions will also be served on Facebook, Instagram, Reddit and TikTok via select placements.

*Facebook Page*



*Facebook (Desktop Feed Ad)*









## Facebook (Mobile Feed Ad)






*In re: College Athlete NIL Litig. and Hubbard v. NCAA*

## Facebook (Stories Ad)









## Instagram (Mobile News Ad)









## Instagram (Stories Ad)









**Image text:**
NCAA SETTLEMENTS
If You Were a Division I College Athlete, You Could Get Money from Class Action Settlements.

CollegeAthleteCompensation.com

**Headline:** NCAA SETTLEMENTS

**Display Text:**
If You Were a Division I College Athlete, You Could Get Money from Class Action Settlements.

**Website URL:** https://collegeathletecompensation.com/
***URL as displayed:*** collegeathletecompensation.com

## *Reddit*






**Image text:**
NCAA SETTLEMENTS
If You Were a Division I College Athlete, You Could Get Money from Class Action Settlements.

CollegeAthleteCompensation.com

**Headline:**
If You Were a Division I College Athlete, You Could Get Money from Class Action Settlements.

**Website URL:** https://collegeathletecompensation.com/
*URL as displayed:* collegeathletecompensation.com

*In re: College Athlete NIL Litig. and Hubbard v. NCAA*

## *TikTok*







**Image text:**
NCAA SETTLEMENTS
If You Were a Division I College Athlete, You Could Get Money from
Class Action Settlements.

CollegeAthleteCompensation.com

**Headline:**
If You Were a Division I College Athlete, You Could Get Money from
Class Action Settlements.

**Website URL:** https://collegeathletecompensation.com/
*URL as displayed:* collegeathletecompensation.com

**Exhibit 4**

# Division I Athletes may be eligible for money from class action settlements

San Francisco, CA--(PR Newswire)--The following statement is being issued by Hagens Berman Sobol Shapiro LLP and Winston & Strawn LLP:

Settlements have been reached in class-action lawsuits alleging the NCAA and Power Five Conferences broke laws by agreeing not to provide benefits to college athletes for their participation in college sports or for the use of their names, images and likenesses (NIL), agreeing to limit scholarships, and agreeing not to provide college athletes academic achievement awards.

> "*NCAA college athletes have waited decades for this moment, and their right to receive the full value of their hard work has finally arrived*," said Steve Berman, managing partner and co-founder of Hagens Berman. "*We are incredibly proud to be in the final stages of historic change*."

You may be included in one or both of the settlements and be entitled to money or other benefits if (1) you competed on a Division I athletic team and were declared initially eligible for competition at any point from Fall 2016 to Sept. 15, 2024, and/or (2) you competed on Division I athletic team any time between the beginning of the 2019-2020 academic year and the end of the 2021-2022 academic year and you would have qualified for an academic achievement award at your school, and/or (3) you will compete as a Division I athlete beginning in Fall 2025.

Complete descriptions of the settlement classes will be available at collegeathletecompensation.com.

Payments will be automatically made to:

- Power Five Football and Men's Basketball athletes for broadcast awards, videogame awards, athletic services awards, and lost opportunities awards (if NIL deal information has been provided to Plaintiffs by your school);
- Power Five Women's Basketball athletes for broadcast awards, athletic services awards, and lost opportunities awards (if NIL deal information has been provided to Plaintiffs by your school); and
- Any Division I athlete who competed in the same sport prior to and after July 1, 2021, and received NIL deal(s) that has been provided to Plaintiffs by your school, other than Power Five Football and Basketball athletes for NIL deals if deal information has been provided to Plaintiffs by your school.

You must file a Claim Form to receive a settlement payment if:

- You are a Division I athlete other than a Power Five football or basketball player and you want to receive payments for participation in college sports;
- You are a football or basketball athlete not in the Power Five and you want to receive payment for athletic services or videogames;

- You are a Division I athlete who competed in the same sport prior to and after July 1, 2021, and received an NIL deal after July 1, 2021 that has not been provided to Plaintiffs by your school (check collegeathletecompensation.com to find out); or

- You competed on a Division I athletic team anytime during the 2019-2020, 2020-2021, or 2021-2022 academic years and you would have qualified for an academic achievement award at your school.

Review your estimated payment amount approximately [60 days from Notice Date] at collegeathletecompensation.com and file a Claim Form if it is required for you to receive all the money you qualify for.

**Claim Forms may be submitted online or printed and mailed to the Settlement Administrator by [date].**

In addition, student-athletes who did, do, or will compete on a Division I athletic team anytime between June 15, 2020 and Fall 2034 will benefit from changes to NCAA and conference rules that will allow athletes to receive direct benefits for NIL and participation in college sports, receive additional benefits over and above annual existing scholarships and all other benefits currently permitted by NCAA rules, and more. Complete details regarding these additional benefits are provided in the Injunctive Settlement, available at collegeathletecompensation.com.

Winston's Co-Executive Chairman Jeffrey L. Kessler, who also negotiated the class-action settlements that created the free agency systems for athletes in the NFL and the NBA, said, "*We're pleased to take this next step towards finalizing this historic, industry-changing settlement that will provide a fair system of revenue sharing for the college athletes who generate hundreds-of-millions-of-dollars for their schools.  For far too long, these athletes have been deprived of their economic rights in an unjust system that will now, finally, be fundamentally reformed.  The new system will allow athletes to be fairly rewarded for their contributions and college sports will continue to thrive.*"

# Exhibit 5



United States District Court

*In re: College Athlete NIL Litigation*

Case No. 4:20-cv-03919

# Class Action Notice

## Authorized by the U.S. District Court

**Were you denied compensation opportunities as a college athlete any time between 2016-2024?**

▶

**There is a $2,576,000,000 settlement of a lawsuit.**

**You may be entitled to money.**

**The settlement also changes NCAA compensation rules in the future.**

▶

**To see how much money you may get visit collegeathlete compensation.com on [60 days after notice date].**

**Read this notice.**

**Respond by [105 days after notice date], if needed.**

Important things to know:

- If you take no action, you will still be bound by the settlement, and your rights will be affected.

- If you would like to understand how NCAA compensation rule changes may give you more compensation opportunities in the future, please go to pg. 8.

- You can learn more at: collegeathletecompensation.com.

# Table of Contents

**Table of Contents**.................................................................................................... 2

**About This Notice** ..................................................................................................... 4

Why did I get this notice?.................................................................................. 4

What do I do next?............................................................................................. 4

What are the most important dates?................................................................. 5

**Learning About the Lawsuit** ..................................................................................... 5

What is this lawsuit about?................................................................................ 5

Why is there a settlement in this lawsuit?........................................................ 5

What happens next in this lawsuit?................................................................... 6

**Important Facts About How The Settlement Might Affect You** ............................ 6

What does the settlement provide? .................................................................. 6

How do I know if I am part of this settlement?................................................. 7

How much will my payment be?........................................................................ 7

Will any NCAA rules change?............................................................................. 8

**Deciding What to Do** ................................................................................................. 9

How do I weigh my options? ............................................................................. 9

**Getting a Payment** ................................................................................................... 10

How do I get a payment? .................................................................................. 10

How do I make sure I receive my payment? .................................................... 11

Do I need to file a Claim Form?........................................................................ 12

Do I have a lawyer in this lawsuit?................................................................... 13

Do I have to pay the lawyers in this lawsuit? .................................................. 13

**Opting Out** ................................................................................................................ 14

What if I don't want to be part of this settlement?......................................... 14

How do I opt out? ............................................................................................. 14

**Objecting**................................................................................................................... 15

What if I disagree with the settlement? ........................................................... 15

**Doing Nothing** ......................................................................................................... 16

What are the consequences of doing nothing?............................................... 16

2024-07-24 Draft House Long form Notice_240722v5docx 7/24/2024

**Key Resources** ...................................................................................................... **16**

How do I get more information? ..................................................................................16

# About This Notice

## Why did I get this notice?

This notice is to tell you about the settlement of a class action lawsuit, *In re: College Athlete NIL Litigation,* brought on behalf of current and former college athletes who competed on a Division I athletic team between June 15, 2016 and September 15, 2024. **You may be a member of the group of people affected, called the "class."** This notice gives you a summary of the terms of the proposed settlement agreement, explains what rights class members have, and helps class members make informed decisions about what action to take.

## What do I do next?

Read this notice to understand the settlement and to determine if you are a class member. Then, decide if you want to:

| Options | More information about each option |
|---|---|
| **Submit a Claim Form** | You may need to submit a claim to receive payment. See page 10. You will be bound by the settlement. |
| **Do Nothing** | Potentially receive one or more payments, if you qualify. Give up your right to bring a lawsuit against the NCAA, and the Power Five Conferences (the ACC, Big 12, Big Ten, Pac-12, SEC), including their member institutions, about the same issues. Possibly get no payment from certain settlement funds if a Claim Form is required.  See page 10. |
| **Opt Out** | Get no payment. Allows you to bring another lawsuit against the NCAA, ACC, Big 12, Big Ten, Pac-12, SEC and/or their member institutions about the same issues. You cannot opt out of the future rule changes (called injunctive relief). |
| **Object** | Tell the Court why you don't like the settlement. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

## What are the most important dates?

Your deadline to object or opt out: **[105 days after notice date]**

Settlement final approval hearing: **[date, at least 150 days after notice date]**

Your deadline to submit a Claim Form, if applicable to you: **[165 days after notice date]**

# Learning About the Lawsuit

## What is this lawsuit about?

Several college athletes sued the NCAA and Power Five Conferences in a class action lawsuit. The lawsuit alleges that the NCAA and Power Five Conferences broke the law by agreeing not to pay college athletes for their participation in college sports or for the use of their NIL (Name, Image, and Likeness), and limiting scholarships available to college athletes.

The NCAA and Power Five Conferences deny that they did anything wrong.

**Where can I learn more?**
You can get a complete copy of the Complaint, Settlement Agreement, and the Court's Orders at:
collegeathletecompensation.com

## Why is there a settlement in this lawsuit?

The parties agreed to settle, which means they have reached an agreement to resolve the lawsuit. Both sides want to avoid the risk and expense of further litigation.

The settlement is on behalf of college athletes who competed on a Division I athletic team between June 15, 2016 and September 15, 2024. The Court has not decided this case in favor of either side.

**What is a class action settlement?**
A class action settlement is an agreement between the parties to resolve and end the case. Settlements can provide money to class members and changes to the practices that caused the alleged harm.

The settlement also changes NCAA rules on compensation for athletes going forward. Schools may increase compensation opportunities that affect you going forward because of these rule changes.

## What happens next in this lawsuit?

The Court will hold a fairness hearing to decide whether to approve the settlement. The hearing will be held at:

**Where:** Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612

**When:** [time] on [date] [at least 150 days after notice date]

The date and time of the final approval hearing may change without further notice to the class. You should check the settlement website or the Court's PACER site to confirm that the date has not changed.

**Case:** *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

**Judge:** Claudia A. Wilken

The Court has directed the parties to provide this notice about the proposed settlement. Because the settlement of a class action decides the rights of all members of the proposed classes, the Court must give final approval to the settlement before it can take effect. Payments will only be made if the Court approves the settlement.

You don't have to attend the hearing, but you may do so at your own expense. You may also ask the Court for permission to speak and express your opinion about the settlement. If the Court does not approve the settlement or the parties decide to end it, the settlement will be void and the lawsuit will continue.

# Important Facts About How The Settlement Might Affect You

## What does the settlement provide?

The Defendants (NCAA and Power Five Conferences) have agreed to pay $2,576,000,000 into a settlement fund ("damages settlement"). This money will be divided among class members (according to a Distribution Plan) and will also be used to pay for costs and fees approved by the Court, including the cost of administering this settlement and awards to the class representatives for their help in the lawsuit.

> **Who are the Defendants?**
> NCAA, ACC, Big 12, Big Ten, Pac-12, and SEC

Defendants will also change NCAA and conference rules to allow student athletes to receive additional benefits, including for NIL, and participation in college sports and eliminate scholarship limits ("injunctive relief settlement").

Members of the settlement classes will "release" their claims as part of the settlement, which means they cannot sue any of the Defendants or their member institutions, for the same issues in this lawsuit. The full terms of the release can be found at collegeathletecompensation.com.

## How do I know if I am part of this settlement?

**You are part of the settlement and may be entitled to money if:** You competed on a Division I athletic team and were declared initially eligible for competition at any point from June 15, 2016 to September 15, 2024. You may have the opportunity to get money now and/or to receive more money going forward if you compete on a Division I athletic team after Fall 2025. For a complete description of each of the settlement classes, visit collegeathletecompensation.com.

**You are not part of the settlement if:** you are an officer, director, or employee of one of the Defendants or you are the staff or immediate family member of the judge in this case.

## How much will my payment be?

Your payment depends on the number of academic years you competed on an athletic team, the college or university you attended, the sport you played, your scholarship status, your reported NIL deals, the years you played, the number of athletes included in the settlement, the amount of money the court approves for costs, fees,

and awards, as well as other factors. Any payment you are entitled to will be paid out yearly over a ten-year period with equal amounts paid each year.

To see your estimated payment amount [60 days after notice date], go to collegeathletecompensation.com and login using the ClaimID and PIN in the email or postcard you received about this settlement or use your NCAA EC ID number if you did not receive an email or postcard. Please note, your estimated payment amount is based on the information your schools have on file for you and provided for distribution in this settlement. You may need to submit a Claim Form to receive all payments you qualify for.

## What if I received two notices?

If you received two notices by email and/or mail, records indicate that you are included in both this settlement and the Academic Achievement Award settlement (aka *Hubbard v. National Collegiate Athletic Association*). You may be eligible to receive money from both settlements.

Go to collegeathletecompensation.com to file a Claim Form in this settlement and in the *Hubbard v. National Collegiate Athletic Association* settlement, if required, for you to receive all the money you qualify for.

## Will any NCAA rules change?

Yes, under the injunctive settlement, NCAA and conference rules will be changed to allow student-athletes to:

- receive additional benefits, including for NIL;

- receive additional benefits over and above annual existing scholarships and other benefits currently permitted by NCAA rules.

Complete details regarding these rule changes, as well as additional benefits are provided in the Injunctive Relief Settlement, available at collegeathletecompensation.com. You cannot opt out of the injunctive settlement, you may only object if you disagree with these changes.

# Deciding What to Do

## How do I weigh my options?

You have four options. You can stay in the settlement and submit a claim (if needed), you can opt out of the damages settlement, you can object to the injunctive and damages settlement, or you can do nothing and be automatically sent your payment (if applicable). This chart shows the effects of each option:

|  | Submit an eligible Claim | Opt out | Object | Do Nothing |
|---|---|---|---|---|
| **Can I receive settlement money if I . . .** | YES | NO | YES | POSSIBLY |
| **Am I bound by the terms of this settlement if I . . .** | YES | NO | YES | YES |
| **Can I pursue my own damages case if I . . .** | NO | YES | NO | NO |
| **Will the class lawyers represent me if I . . .** | YES | NO | NO | YES |

**Choose the best path for you:**



# Getting a Payment

## How do I get a payment?

Payments will be **automatically** sent to:

- Power Five Football and Men's Basketball athletes for BNIL awards, videogame awards, athletic services, and lost opportunities (if NIL deal information has been provided to Plaintiffs by your school);

> **What is NIL and BNIL?**
> NIL refers to name, image and likeness. BNIL, as defined by Class Counsel in the litigation, refers to the use of an athlete's NIL via broadcasts like tv, radio, internet and other media.

- Power Five Women's Basketball athletes for BNIL, athletic services, and lost opportunities (if NIL deal information has been provided to Plaintiffs by your school); and

- Any Division I Athlete who competed in the same sport prior to and after July 1, 2021, and had an NIL deal after July 1, 2021 that has been provided to Plaintiffs by your school.

You **must file a Claim Form** to receive a payment if:

- You are a Division I athlete other than a Power Five football or basketball player and you want to receive payment for athletic services;

- You are a football or basketball athlete not in the Power Five and you want to receive payment for videogames;

- You are a Division I athlete who competed in the same sport prior to and after July 1, 2021, and had an NIL deal after July 1, 2021 that has not been provided to Plaintiffs by your school.

You may review your estimated payment amount [60 days after notice date] at collegeathletecompensation.com and file a Claim Form if any amounts are missing or a Claim Form is required for you to receive all the money you qualify for.

Claim Forms may be submitted online or downloaded from collegeathletecompensation.com and mailed to the Settlement Administrator. Claim Forms must be submitted online or postmarked by **[165 days after notice date]**.

## How do I make sure I receive my payment?

When you review your estimated payment amount and/or submit a Claim Form you should also make sure your contact information is accurate and current. If the contact information listed is incorrect, you can and should update it because it will be used to send you your money.

## Do I need to file a Claim Form?





**Do I need to file a claim if I am a Division I athlete not in the Power Five and I want to receive a payment for athletic services?**

Yes

**Do I need to file a claim if I I reviewed my estimated payment amount [60 days after notice date] AND amounts are missing?**

Yes

## Do I have a lawyer in this lawsuit?

In a class action, the court appoints class representatives and lawyers to work on the case and represent the interests of all the class members. For this settlement, the Court has appointed the following individuals and lawyers.

**Your lawyers:** Steve Berman of Hagens Berman Sobol Shapiro LLP and Jeffrey Kessler of Winston & Strawn LLP. These are the lawyers who negotiated this settlement on your behalf.

If you want to be represented by your own lawyer, you may hire one at your own expense.

## Do I have to pay the lawyers in this lawsuit?

Lawyers' fees and costs will be paid from the Settlement Fund. **You will not have to pay the lawyers directly.**

To date, your lawyers have not been paid any money for their work or the expenses that they have paid for the case. To pay for some of their time and risk in bringing this case without any guarantee of payment unless they were successful, your lawyers will request, as part of the final approval of this Settlement, that the Court approve a payment of up to 20% of the $1.976 billion NIL Settlement Fund and up to 10% of the $600 million Compensation for Athletic Services Fund in attorneys' fees, plus the reimbursement of out-of-pocket expenses. These fees will be paid out over ten years so they are aligned with any payments

you will receive.

With regard to the injunctive relief portion of the settlement, Class Counsel may also apply to the Court for an upfront injunctive fee and cost award of $20 million, which shall be paid for by Defendants, in addition to all other amounts paid. Annually, Class Counsel may apply to the Court, or a special master appointed by the Court, and apply for a percentage of the amounts athletes received that year as additional compensation. These payments to Class Counsel will count towards the maximum amount that all schools can spend in the next year. Further details on these payments can be found in the Settlement Agreement, available at collegeathletecompensation.com.

Lawyers' fees and expenses will only be awarded if approved by the Court as a fair and reasonable amount. You have the right to object to the lawyers' fees even if you think the settlement terms are fair. The lawyers' motion for attorneys' fees and costs will be filed with the Court and posted on the settlement website on or before [60 days after notice date].

Your lawyers will also ask the Court to approve a payment of up to $125,000 to the Class Representatives for the time and effort they contributed to the case. If approved by the Court, this will be paid from the Settlement Fund.

# Opting Out

## What if I don't want to be part of this settlement?

As to the damages settlement alone, you can opt out. If you do, you will not receive payment and cannot object to the settlement. However, you will not be bound or affected by anything that happens in this lawsuit and may be able to file your own case. You cannot opt out of the injunctive settlement.

## How do I opt out?

To opt out of the damages settlement, you must mail a letter to the Settlement Administrator at the address below by **[105 days after notice date]**. Your letter must include (1) your name, (2) your current

address, (3) your NCAA EC ID number if available, (4) a sentence stating, "I want to opt out from the damages classes in *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919," and (5) your signature.

> *In re: College Athlete NIL Litigation*
> Settlement Administrator
> P.O. Box 301134
> Los Angeles, CA 90030-30113

# Objecting

## What if I disagree with the settlement?

If you disagree with any part of the settlement (including the injunctive portion, and the lawyers' fees), you may object. You do not need to opt out of the damages settlement to make an objection. You must give reasons why you think the Court should not approve the settlement and say whether your objection applies to just you, one of the classes, or all of the classes. The Court will consider your views. The Court can only approve or deny the settlement — it cannot change the terms of the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object. You may, but don't need to, hire your own lawyer to help you.

To object, you must send a letter to the Court that:

(1) is postmarked by **[105 days after notice date]**;
(2) includes your full name, address and telephone number, and email address;
(3) includes your NCAA ECID number if available;
(4) includes the case name and number (*In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919)
(5) states the reasons for your objection;
(6) says whether either you or your lawyer intend to appear at the final approval hearing and your lawyer's name (if you have one); and
(7) your signature.

Mail the letter to:

> Ronald V. Dellums Federal Building & United States Courthouse
> c/o Class Action Clerk
> 1301 Clay Street
> Oakland, CA 94612

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

# Doing Nothing

## What are the consequences of doing nothing?

If you do nothing, you might not get any money or you might not get all of the money you are entitled to, but you will still be bound by the settlement and its "release" provisions. That means you won't be able to start, continue, or be part of any other lawsuit against any of the Defendants, including their member institutions, about the issues in this case. Please see the settlement agreement, which can be found at collegeathletecompensation.com, for a full description of the claims and entities who will be released if this settlement is approved.

# Key Resources

## How do I get more information?

This notice is a summary of the proposed settlement. To get a copy of the settlement agreement or get answers to your questions:

- contact your lawyers (information below)

- visit the case website at collegeathletecompensation.com

- access the Court Electronic Records (PACER) system online or by

visiting the Clerk's office of the Court (address below).

| Resource | Contact Information |
|---|---|
| **Case website** | collegeathletecompensation.com |
| **Settlement Administrator** | *In re: College Athlete NIL Litigation*<br>Settlement Administrator<br>P.O. Box 301134<br>Los Angeles, CA 90030-30113<br>info@collegeathletecompensation.com<br>1-877-514-1777 |
| **Your Lawyers** | Steve Berman<br>Ben Siegel<br>Emilee Sisco<br>Stephanie Verdoia<br>stephaniev@hbsslaw.com<br>206-268-9343<br>Hagens Berman Sobol Shapiro LLP<br>1301 Second Avenue, Suite 2000<br>Seattle, WA, 98101<br><br>Jeffrey Kessler<br>David Greenspan<br>Jeanifer Parsigian<br>Neha Vyas<br>nvyas@winston.com<br>212-294-2658<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166-4193 |
| **Court** | U.S. District Court<br>Ronald V. Dellums Federal Building & United States Courthouse<br>1301 Clay Street<br>Oakland, CA 94612<br><br>HOURS: 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays |

| | PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS. |
|---|---|

# Exhibit 6

*House v. NCAA* Settlement Administrator
P.O. Box 301134
Los Angeles, CA 90030-301134

## NCCO



VISIT THE SETTLEMENT WEBSITE BY
SCANNING THE PROVIDED QR CODE

*House, et al. v. NCAA, et al.*
U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case No. 4:20-CV-03919 (N.D. Cal.)

**«Barcode»**
Postal Service: Please do not mark barcode

NCCO: ClaimID: **«ClaimID»**
PIN: **«PIN»**
**«First1» «Last1»**
**«CO»**
**«Addr2»**
**«Addr1»**
**«City», «St» «Zip»**
**«Country»**

**Must Be Postmarked
By DATE**

**Claim ID: <<ClaimID>>
PIN: <<PIN>>**

## Claim Form

If you are or were a Power Five football or basketball player, you do not need to fill out a Claim Form to receive an award, but you do have the option to provide additional information about NIL deals in Section 3 for Lost NIL Opportunities. All other athletes, please fill out Section 1, Section 2, and Section 3 (if eligible) to ensure your claim is correctly processed.

### 1)   Contact Information

First Name

M.I.

Last Name

ClaimID from Email or Postcard Notice (if you did not get a notice, leave this blank)

Primary Address

Primary Address Continued

City

State

ZIP Code

Email Address

Area Code

Mobile Number

NCAA Eligibility Center ID



| FOR CLAIMS PROCESSING ONLY | OB | CB | DOC LC REV | RED A B |

## 2) __Basic Eligibility Information__

Please fill out the below to confirm the year(s), the sport(s), and the school(s), in which you competed in Division I college athletics.

○ 2015-2016 Academic Year

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)

○ 2016-2017 Academic Year

If the information for 2016-2017 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)

○ 2017-2018 Academic Year

If the information for 2017-2018 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)

○ 2018-2019 Academic Year

If the information for 2018-2019 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)

○ 2019-2020 Academic Year

If the information for 2019-2020 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)



○ 2020-2021 Academic Year

If the information for 2019-2020 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)

○ 2021-2022 Academic Year

If the information for 2019-2020 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)

○ 2022-2023 Academic Year

If the information for 2019-2020 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)

○ 2023-2024 Academic Year

If the information for 2019-2020 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)

○ 2024-2025 Academic Year

If the information for 2019-2020 is the same as above, please fill in this circle: ○

School Attended

Sport (e.g., Women's Basketball, Men's Lacrosse, etc.)

Redshirt semester(s) / semester(s) of ineligibility (e.g.: Fall, Spring)



In order for your claim to be processed for Compensation for Athletic Services and Video Games Damages, please ensure you complete sections 1 and 2 above.

To file a claim for Lost NIL Opportunities, please see Section 3.

Please confirm which category, or categories, you are submitting a claim for:

○ Compensation for Athletic Services (competed as a Division I athlete at any point from 2019-2024 or eligible to compete in 2024-2025)

○ Video Games (played Division I FBS Football or Men's Basketball at any point from 2016-2024)

○ Lost NIL Opportunities (competed prior to July 1, 2021 and received $ for NIL before July 1, 2023)

### 3)   School & Athletic Information for Lost NIL Opportunities

**If you answer no to either of the following two questions, you are not eligible and should not submit a claim.**

Did you compete on a Division I athletic team prior to July 1, 2021?   ○ Yes   ○ No

Did you earn money for your NIL from a third-party while competing as a college athlete since July 1, 2021 and before July 1, 2023?   ○ Yes   ○ No

**Do you have an NIL deal recorded in our database? Visit the settlement website at www.collegeathletecompensation.com to find out.**

○ Yes   ○ No

If you do, you will receive a direct payment if we have your updated contact information.

If not, or if our records are not complete, please submit your NIL records for review.

You can attach paper documents to this form if mailing, or submit electronically.

### 4)   Documentation

**Enclose a copy of any documents you think would be beneficial to prove your claim, including documents showing the dollar amounts and dates of transactions.**

**Enclose a copy of an official photo identification (like a driver's license or a Student ID).**

### 5)   Payment Selection

If you would like to receive your payment electronically via PayPal or Venmo, you must submit your claim on the website at www.collegeathletecompensation.com. Otherwise you will receive a check payment mailed to the address provided above.

### 6)   Certification & Signature

I declare under penalty of perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge and that I am authorized to submit this claim. I understand that my claim is subject to audit, review, and validation using all available information.

Signature: _____   Dated (mm/dd/yyyy): _____

Print Name: _____

Mail your Claim Form with copies of any supporting documents, **postmarked on or before <mark>MONTH DAY YEAR</mark>** to: *House v. NCAA* Settlement Administrator, P.O. Box 301134, Los Angeles, CA 90030-1134.

