Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
Meredith Simons (SBN 320229)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com
merediths@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Class Counsel for Plaintiffs*

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com
nvyas@winston.com

Jeanifer E. Parsigian (SBN 289001)
Drew H. Washington (SBN 350107)
WINSTON & STRAWN LLP
101 California Street, 34th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com
dwashington@winston.com

*Class Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919 CW<br><br>**DECLARATION OF MEDIATOR PROFESSOR ERIC D. GREEN OF RESOLUTIONS LLC IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Hrg. Date:   September 5, 2024<br>Time:          2:30 p.m.<br>Judge:         Hon. Claudia Wilken<br>Courtroom: 2, 4th Floor |

010912-11/2725713 V1

1    I, Eric D. Green, declare as follows:

2    1.    I submit this declaration in connection with the motion for preliminary approval of the proposed class action settlement between the named plaintiffs Grant House, Tymir Oliver, Dewayne Carter, Nya Harrison, and Sedona Prince, on behalf of themselves and all other similarly situated, in Civil Action No. 4:20-cv-03919-CW, (together, "Plaintiffs"), for themselves and on behalf of the proposed settlement class, and defendants The National Collegiate Athletic Association, Pac-12 Conference, The Big Ten Conference Inc., Big 12 Conference, Inc., Southeastern Conference, and Atlantic Coast Conference ("Defendants"). I have personal, first-hand knowledge of the matters set forth herein and, if called to testify as a witness, could and would testify competently thereto.

2.    I am a principal and co-founder of Resolutions, LLC, an ADR firm located in Concord, Massachusetts, and I am a full-time professional mediator. I am a retired Professor at the Boston University School of Law where for thirty years I taught negotiation, mediation, complex ADR processes, resolution of mass torts, constitutional law and evidence. I am a co-founder and principal of Resolutions, LLC. I previously co-founded JAMS/Endispute and was a member of the Center for Public Resources Institute of Dispute Resolution virtually since its inception and have served on many of its panels and committees and spoken at numerous of its conferences and programs on mediation and ADR. I was a co-author with Professors Frank Sander and Stephen Goldberg of the first edition of *Dispute Resolution*, the first legal textbook on ADR, and have written numerous books and articles on dispute resolution and evidence. I maintain an active ADR/mediation practice for complex, legally-intensive disputes, including class actions such as the present dispute.

3.    I have successfully mediated many high stakes cases, including the *United States v. Microsoft* antitrust case, portions of the Enron Securities class action cases, the Monsanto PCB cases in Alabama, the childhood and adult cancer cases in Toms River, New Jersey, numerous large construction cases, including most of the disputes arising out of the design and construction of major league baseball and football stadiums, insurance coverage, intellectual property, international disputes, ERISA cases, and consumer cases. I have also mediated many complex, multi-party mass and class action cases involving horizontal and vertical price-fixing anti-trust claims, mergers and acquisitions, contract disputes, patent disputes, securities fraud, shareholder derivative claims,

1   accounting problems, mass torts, employment and consumer claims, and opioid abatement claims by

2   the fifty State Attorneys General, thousands of cities and countries, and hundreds of Tribes.

3         4.   I am a 1968 Honors graduate of Brown University and graduated in 1972 from

4   Harvard Law School, magna cum laude, where I was Executive Editor of the Harvard Law Review. I

5   am a member of the bars of the states of California (inactive) and Massachusetts, the United States

6   District Courts for the Northern and Central Districts of California and the District of Massachusetts,

7   several Courts of Appeal, and the Supreme Court of the United States. Prior to teaching at Boston

8   University School of Law, I clerked for the Hon. Benjamin Kaplan, Supreme Court of Massachusetts

9   and then was an associate and partner at Munger Tolles & Olson in Los Angeles.

10         5.   I have delivered hundreds of lectures, panel discussions and training sessions on ADR

11   and taught or supervised more than a thousand students in ADR while mediating more than a

12   hundred cases a year for over 30 years. In 2001, I was awarded a Lifetime Achievement Award from

13   the American College of Civil Trial Mediators. I was voted Boston's Lawyer of the Year for

14   Alternative Dispute Resolution for 2011 based on my "particularly high level of peer recognition." In

15   2011, I received the rarely awarded James F. Henry Award for Outstanding Contributions to the field

16   of ADR from The International Institute for Conflict Prevention & Resolution.

17         6.   I was retained by the Parties in November 2022 in the above-referenced matter to

18   serve as a mediator to facilitate potential settlement discussions, as the Parties informed the Court.

19   As discussed below, I believe the settlement of the class action, negotiated after an extended

20   mediation process and hard-fought litigation represents an arms-length principled, well-reasoned,

21   and sound resolution of highly uncertain litigation. The Court, of course, will make determinations as

22   to the fairness, reasonableness, and adequacy of the settlement under applicable legal standards.

23   From the mediator's perspective, however, I can attest that the proposed settlement is a reasonable

24   result, obtained at arm's-length after a difficult, protracted, adversarial negotiation, and is consistent

25   with the risks and potential rewards of the claims asserted when measured against the "no-agreement

26   alternative" of continued, uncertain litigation. Based on my over 40 years of experience as a

27   mediator, and my personal discussions with the Parties, I believe that the proposed settlement is fair

28

and reasonable. Without waiving the mediation privilege, I provide the following information in support of my view.

7. The first in-person mediation was conducted in Boston on May 25, 2023. In advance of the mediation, counsel for the Parties submitted detailed mediation statements, with multiple exhibits including the complaint, motion to dismiss briefing, class certification briefing, discovery responses, and expert reports setting forth their positions on the key liability, class certification, and damages issues. During this initial mediation session, the Parties engaged in vigorous, arms-length debate about all aspects of the merits of the case and potential recovery. I met with each party individually to discern areas of common ground. In these individual sessions, I engaged in candid discussions with counsel from each party concerning the risks associated with their respective positions. At this time Plaintiffs informed Defendants of their intention to bring additional cases challenging compensation for athletic services and the likelihood that resolving injunctive relief claims would need to address the compensation structure in college sports more broadly. Defendants indicated they were interested in engaging in discussions on that basis. The session lasted the entire day but the Parties did not negotiate damages, and this meeting did not result in an agreement to settle the Plaintiffs' claims.

8. The Parties proceeded to meet in-person four times over the next year, on July 19, 2023, August 18, 2023, September 28, 2023, and April 24-25, 2024, before finalizing a settlement agreement. Each of these sessions were attended by counsel for both Parties who engaged in vigorous, arms-length debate advocating for their respective positions. In addition, at most of these sessions the negotiations were attended by Power 5 Conference Commissioners and in-house counsel, as well as outside counsel, who were tasked with reporting back to over 100 member schools before any agreement took place.

9. The Parties insisted on structuring the settlement negotiations to initially—and exclusively—discuss, and resolve, the injunctive relief prior to any discussion regarding the damage claims. The Parties and I were familiar with the issues raised in the Second Circuit's decision in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016). As a result, at no point did the Parties condition resolving the injunctive relief on knowing what the

damage demands would be. There were never any discussions of negotiating for less favorable injunctive relief to obtain greater damages, or vice versa. In addition, any attorney fee provisions attributed to the injunctive relief settlement were not negotiated until the entire settlement agreement, including damages, was finalized.

10. During the final in-person mediation session in Dallas, the Parties structured the damage settlement negotiations to intentionally discuss each claim separately. The Parties were committed to appropriately assessing the associated damages and litigation risk for each distinct claim. The recovery for each aspect of anticompetitive conduct that was released is a product of those separate discussions. The final agreed-upon damage amount for each claim was determined prior to any discussion of the next claim.

11. After the Parties agreed to the final terms, Defendants had to further receive sign-off from the NCAA Division I Board of Directors, the NCAA Board of Governors, the Board of Directors for each Power 5 Conference—including votes by member schools, culminating in an extraordinary effort by both Parties to finalize the settlement agreement.

12. Throughout the settlement process, including the negotiations outside the formal mediation process, this case was conducted on both sides by highly experienced and capable counsel who were fully prepared and had an excellent understanding of the strengths and weaknesses of the contrasting claims and defenses. The quality of the advocacy on both sides was extremely high. All counsel were professional and cooperative, but each side zealously advanced their respective arguments in the best interests of their clients. Moreover, each side demonstrated a willingness to continue to litigate rather than accept a settlement that was not in the best interest of their clients. During the negotiations, the Parties had extensive discussions about potential resolutions, and made several proposals, offers and counter-offers, after extensive discussions with the mediator.

13. Although all Parties were confident in the strength of their respective positions, it was clear that continued litigation carried substantial risks for both sides. If the case had not settled, the litigation and appeals process would have continued for a very long time and at great expense to both sides with uncertain results. Defendants, while adamant that they were not liable, could not be sure of a favorable outcome. Similarly, Plaintiffs faced obstacles to establishing liability, as well as

challenges to their damages model. In fact, even if the Class was successful and established liability at trial, the jury could have awarded damages much less than the amount sought by Plaintiffs or the amount of settlement. Both sides also faced the risk that a jury could react unfavorably to the evidence presented.

14. From the inception of the mediation process, it was apparent that the litigation was extremely complex and involved numerous difficult legal, actuarial, and factual issues. Based on my review of the mediation briefing and supporting documentation supplied to me by the Parties, the detailed presentations by Plaintiffs' Counsel and Defendants' Counsel, the mediation sessions, and the many hours of telephone and in-person conversations I conducted with respective counsel, it is my opinion that continued litigation posed great risks for both sides.

15. Based on the facts and circumstances presented by the Parties and my experience in the mediation of class actions, it is my opinion that the settlement is an excellent result for the entirety of the putative classes that reflects the strenuous negotiations between highly professional counsel to secure a result for the class without the risks of continued litigation where their claims could have been denied at trial or on appeal. Similarly, the NCAA and Power Five Conference Defendants made a responsible business decision to avoid further litigation that had the potential to expose them to a significant financial loss. All of this I attribute to exceptional and professional legal work on both sides. Both sides' counsel are among the most capable and experienced lawyers in the country in these kind of cases. Plaintiff's Counsel took on an extremely risky and complicated case, invested a lot of time and resources, and achieved an outstanding result for Plaintiffs and the putative class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 15, 2024

_____
Professor Eric D. Green
Resolutions, LLC