**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGE ATHLETE NIL

LITIGATION

Case No. 4:20-cv-03919-CW

**DECLARATION OF PROFESSOR ROBERT H. KLONOFF ADDRESSING THE**

**ARGUMENT [DOC. 473] THAT SEPARATE COUNSEL MUST BE APPOINTED TO**

**REPRESENT THE INJUNCTIVE CLASS**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................... 1

II.     QUALIFICATIONS ................................................................ 2

III.     MATERIALS RELIED UPON ............................................... 14

IV.     BACKGROUND ................................................................. 15

V.     SUMMARY OF OPINIONS ................................................. 18

VI.     DETAILED OPINIONS ...................................................... 19

     A.    A Separately Represented Injunctive Relief Subclass is Not the Only
         Way to Ensure the Absence of Conflicts and Tradeoffs .................................. 19

     B.    Courts Routinely Approve Damages and Injunctive Class Settlements
         Without Separate Counsel ................................................................. 25

     C.    The Effectiveness of the Phased Negotiation Approach Here is
         Strongly Supported by the Well–Accepted Practice of Phased
         Negotiations of Class Recovery and Attorneys' Fees ...................................... 27

     D.    The Colorado Objection's Principal Authority is Readily
         Distinguishable on Multiple Grounds ............................................... 32

VII.     CONCLUSION ................................................................. 37

**APPENDIX A: Curriculum Vitae**

## VI.  INTRODUCTION[1]

1.    In an opposition to preliminary approval, the five Plaintiffs in the Colorado Cases (hereafter, "Colorado Objection") argue that class counsel operated under a fatal conflict of interest in negotiating both the damages settlements and the injunctive settlement.[2]  The Colorado Objection maintains that separate class counsel were required to negotiate the injunctive claims to avoid trading away the injunctive claims for the damages claims.  I have been asked by class counsel to provide an expert opinion with respect to the Colorado Objection's arguments.

2.    As I explain in detail below, it is my opinion that it is not necessary or desirable for this Court to unwind this complex settlement and appoint separate counsel to negotiate on behalf of the injunctive relief class members.  As I discuss below, courts routinely approve class settlements in which the same counsel negotiated both the damages and injunctive components of a settlement.  Designating separately represented subclasses is not the only method for eliminating potential conflicts.  Here, the parties and the experienced mediator ensured structural integrity—

_____

[1] All citations to court filings are to the court-assigned page numbers, not those in the original filings.

[2] *See* Plaintiffs in the Colorado Cases Response in Opposition to Motion for Preliminary Approval, *In Re College Athlete NIL Litigation*, No. 4:20-cv-3919-CW (N.D. Cal. Aug. 9, 2024) [Doc. No. 473] (filed on behalf of the 5 named plaintiffs in *Fontenot v. N.C.A.A.,* No. 1:23-ev-03076 (D. Colo.)).

A similar objection was raised by Amici Curiae Richard J. Volante and David M. West.  Brief of Amici Curiae Richard J. Volante and David M. West in Opposition to Preliminary Settlement at 6, *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW (N.D. Cal. Aug. 12, 2024) [Doc. No. 485] (hereafter, "Volante/West Amici").  Class counsel have moved to strike the Volante/West amicus brief. *See* Plaintiffs' Response to Brief of Amici Curiae Richard J. Volante and David M. West in Opposition to Preliminary Settlement, *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW (N.D. Cal. Aug. 26, 2024) [Doc. No. 501].  That motion is pending.

and the avoidance of any potential conflicts—by finalizing an agreement on the injunctive claims before commencing negotiations regarding the damages claims.  This approach of ensuring structural integrity by negotiating issues seriatim is well supported by the universally accepted approach for addressing potential conflicts when class counsel negotiate both classwide recovery and attorneys' fees: Attorneys' fees are not discussed until after the classwide recovery is fully negotiated.  As in that context, the negotiation of the injunctive relief before discussing damages ensured that the injunctive remedy was not compromised to ensure larger benefits for the damages class members.  The Colorado Objection's sole support for requiring separate counsel in the context of injunctive and damages claims, a Second Circuit case,[3] was based on unique facts indicating the existence of an actual conflict that injured injunctive class members, and it is distinguishable on multiple grounds.

3.    I offer my opinions with the possibility that they may be helpful to the Court.

**II. QUALIFICATIONS**

4.    As discussed below (¶¶ 11–12) I have qualified as an expert in numerous class actions and have opined on class settlement issues in a number of those cases.  I am currently the Jordan D. Schnitzer Professor of Law at Lewis & Clark Law School and have held that position since June 1, 2014.  This is an endowed, tenured position at the rank of full professor.  From July 1, 2007, to May 31, 2014, I served as the Dean of Lewis & Clark Law School, and I was also a full

---

[3] *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 827 F.3d 223 (2d Cir. 2016) (hereafter, *Payment Card Interchange Fee*).

professor at Lewis & Clark during that time.  Immediately prior to assuming the deanship at Lewis & Clark, I served for four years as the Douglas Stripp/Missouri Professor of Law at the University of Missouri-Kansas City School of Law (UMKC).  That appointment was an endowed, tenured position at the rank of full professor.  Before joining the academy in a full-time capacity, I served for more than a dozen years as an attorney with the international law firm of Jones Day, working in the firm's Washington, D.C. office.  I was an equity partner at the firm for most of that time. I continued to work for Jones Day while I was employed at UMKC; my status with the firm during that period changed from partner to of counsel.  I ended my relationship with Jones Day in 2007, when I became Dean of Lewis & Clark Law School.  While working at Jones Day (before joining the UMKC faculty), I also served for many years as an adjunct professor of law at Georgetown University Law Center.  Before joining Jones Day, I served as an Assistant United States Attorney and as an Assistant to the Solicitor General of the United States.  Immediately after graduating from law school, I served as a law clerk for Chief Judge John R. Brown of the U.S. Court of Appeals for the Fifth Circuit.  I received my law degree from Yale Law School in 1979.

5.   In my various academic positions, I have taught (among other subjects) complex litigation, class actions, civil procedure, federal courts, and federal appellate procedure.  With respect to my scholarship, I am a co-author of the Wright & Miller treatise, *Federal Practice and Procedure*.  I have sole responsibility for the three volumes of the treatise focusing on class actions (including class settlements).  In addition, I co-authored the first casebook devoted specifically to class actions, and I am now the sole author of that book: *Class Actions and Other Multi-Party Litigation: Cases and Materials* (West 4th ed. 2017, with annual supplements).  I am also the sole author of the West Nutshell on class actions, *Class Actions and Other Multi-Party Litigation in a*

3

*Nutshell* (West 6th ed. 2021), and the West Nutshell on federal multidistrict litigation, *Federal Multidistrict Litigation in a Nutshell* (West 2020). These texts, which address aggregate settlement issues, are used at numerous law schools and have been cited by many courts and commentators.[4] I have also authored or co-authored many scholarly articles on class actions and other topics.[5]

6. In September 2011, Chief Justice John G. Roberts, Jr., appointed me to serve a three-year term as the academic voting member of the Judicial Conference Advisory Committee on Rules of Civil Procedure ("Advisory Committee"). The Advisory Committee considers and recommends amendments to the Federal Rules of Civil Procedure. Only one professor in the

---

[4] As just a small sample, *see*, *e.g.*, *Forsythe v. Teva Pharm. Indus. Ltd,* 102 F.4th 152, 156 n.9 (3d Cir. 2024) (*citing* casebook); *Kolbe v. BAC Home Loans Servicing, LP,* 738 F.3d 432, 468 (1st Cir. 2013) (*citing Class Action Nutshell*); *Culver v. City of Milwaukee,* 277 F.3d 908, 913 (7th Cir. 2002) (*citing Class Action Nutshell*); *Adams v. United Services Automobile Ass'n*, No. 2:14-CV-02013, 2016 WL 1465433, at *7 (W.D. Ark. Apr. 14, 2016) (*citing Class Action Nutshell*), *rev'd on other grounds*, 863 F.3d 1069 (8th Cir. 2017); *LaRocque ex rel. Spang v. TRS Recovery Servs., Inc.,* 285 F.R.D. 139, 151 (D. Me. 2012) (*citing Class Action Nutshell*); *Soileau v. Churchill Downs Louisiana Horseracing Co.,* L.L.C., 2021-0022 (La. App. 1 Cir. 12/22/21), 334 So. 3d 901, 940, writ denied, 2022-00243 (La. 4/12/22), 336 So. 3d 83 (*citing* casebook); Samir D. Parikh, *The New Mass Torts Bargain*, 91 Fordham L. Rev. 447, 476 (2022) (*citing Federal Multidistrict Litigation Nutshell*); Brian T. Fitzpatrick, *Many Minds, Many MDL Judges*, 84 Law & Contemp. Probs. 107, 108 (2021) (*citing Federal Multidistrict Litigation Nutshell*).

[5] My articles have been frequently cited. For example, my 2013 article, *The Decline of Class Actions*, 90 Wash. U. L. Rev. 729 (2013), has been cited well over 350 times by courts and commentators. As just a small sample, *see, e.g.*, *In re Parish*, 81 F.4th 403, 419 (5th Cir. 2023); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 & n.18 (3d Cir. 2018); *In re National Football League Players' Concussion Injury Litig.*, 775 F.3d 570, 576 (3d Cir. 2014); *Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014) (Posner, J.); *In re Johnson*, 760 F.3d 66, 75 (D.C. Cir. 2014); *Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2019 WL 4572799, at *20 (S.D. Texas, Sept 20, 2019); *Immigration-Remedies-Garland v. Aleman Gonzalez*, 136 Harv. L. Rev. 410, 419 (2022); Helen Hershkoff and Luke Norris, *The Oligarchic Courthouse: Jurisdiction, Corporate Power, and Democratic Decline*, 122 Mich. L. Rev. 1, 54 (2023); Christine P. Bartholomew, *Antitrust Class Actions in the Wake of Procedural Reform*, 97 Ind. L.J. 1315, 1317 (2022); J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1291 (2022).

United States is selected by the Chief Justice to serve in that role during any three-year term.  In May 2014, Chief Justice Roberts reappointed me to serve a second three-year term on the Advisory Committee.  I completed that service in May 2017. (The maximum period of service on the Advisory Committee is six years.)  I also served on the Advisory Committee's Class Action Subcommittee, which took the lead for the full Advisory Committee on proposed amendments to the settlement and notice provisions of federal class action rule, Federal Rule of Civil Procedure 23(e).  Those proposed amendments became effective on December 1, 2018.

7.    I have been a member of the American Law Institute ("ALI") for more than 20 years.  Since 2023, I have served on the ALI Council, the ALI's governing body.  I was an Associate Reporter for the ALI's class action (and other multi-party litigation) project, *Principles of the Law of Aggregate Litigation*; in that capacity, I was the principal author of Chapter 3, which addresses, *inter alia*, class action settlements.  The ALI project was unanimously approved by the membership of the American Law Institute at its annual meeting in May 2009 and was published by the American Law Institute in May 2010.  It has been frequently cited by courts and commentators.[6]

---

[6] As just a small sample, *see*, *e.g.*, *Smith v. Bayer Corp.*, 564 U.S. 299, 316 n.11 (2011); *Home Depot USA, Inc. v. Lafarge N. Am.*, 59 F.4th 55, 67, 68 (3d Cir. 2023); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1122–23 (9th Cir. 2021) (Bade, J., concurring), *cert. denied.* 143 S. Ct. 107 (2022); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 331 (3d Cir. 2019); *Keepseagle v. Perdue*, 856 F.3d 1039, 1069–70 (D.C. Cir. 2017) (Brown, J., dissenting); *Hill v. State Street Corp.*, 794 F.3d 227, 229 (1st Cir. 2015); *Burns v. SeaWorld Parks & Entm't, Inc.*, No. CV 22-2941, 2024 WL 1621337, at *12 (E.D. Pa Apr. 15, 2024); *In re Splunk Inc. Sec. Litig.*, No. 20-CV-08600-JST, 2024 WL 923777, at *7 n.2 (N.D. Cal. Mar. 4,

8.   In October 2014, I was elected to membership in the International Association of Procedural Law ("IAPL"), an organization of preeminent civil procedure scholars from around the world.  I was selected in a competitive process to present a scholarly article on class actions at the May 2015 Congress of the IAPL, an event held once every four years.

9.   In addition to my academic work, I have 44 years of experience as a practicing lawyer. I have had eight oral arguments before the U.S. Supreme Court, and numerous oral arguments in other federal and state appellate courts throughout the country, including oral arguments in eight federal circuits.  As an attorney at Jones Day, I personally handled more than 100 class action cases, mostly (but not entirely) on the defense side.  I have also served as co-counsel in numerous high-profile class actions and MDLs post-Jones Day, including cases in the U.S. Supreme Court and numerous federal circuits.

10.  I have lectured and taught on class actions and other litigation topics throughout the United States and abroad, including presentations at law schools in Australia, Cambodia, Canada, China, Colombia, Croatia, Ecuador, France, Germany, India, Israel, Italy, Japan, the Philippines, Russia, South Africa, South Korea, Taiwan, and Turkey.  Over the years, I have frequently

---

2024); *Hawes v. Macy's Inc.*, No. 1:17-CV-754, 2023 WL 8811499, at *14 (S.D. Ohio Dec. 20, 2023); Matthew Shapiro, *Democracy, Civil Litigation, and the Nature of Non-Representative Institutions*, 109 CORNELL L. REV. 113, 168 n.268 (2023); Abbe R. Gluck & Elizabeth Chamblee Burch, *MDL Revolution*, 96 N.Y.U. L. REV. 1, 30 (2021); Elizabeth Chamblee Burch & Margaret S. Williams, *Judicial Adjuncts in Multidistrict Litigation*, 120 COLUM. L. REV. 2129, 2121–22 (2020).

appeared as an invited speaker at class action symposia, conferences, and continuing legal education programs.[7]

11.  I have testified as an expert in numerous class action cases and in other cases raising complex civil procedure issues.  These include, among many others:

- *Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRD (W.D. Mo.), and *Gibson v. Nat'l Ass'n of Realtors*, Docket No. 4:23-cv-00788 (W.D. Mo.) (submitted expert declarations, dated 8/20/24, and 9/13/24, on attorneys' fees requested by class counsel);

- *In re JUUL Labs, Inc. Marketing, Sales Practices, and Products Liab. Litig.*, No. 19-md-02913-WHO (N.D. Cal.) (submitted expert declaration, dated 6/23/23, on attorneys' fees for settlement with JUUL; submitted expert declaration, dated 1/11/24, on attorneys' fees for settlement with Altria);

- *Rogowski v. State Farm Life Insurance Company*, No. 4:22-cv-00203-RK (W.D. Mo.) (submitted expert declaration, dated 2/13/23, in support of class counsel's motion for attorneys' fees, costs, and service awards for class plaintiffs);

- *In re Marjory Stoneman Douglas High School Shooting FTCA Litigation*, No. 01:18-62758-WPD (S.D. Fla.) (*Parkland Shooting*) (submitted expert declaration, dated 2/08/22, on a motion to terminate lead counsel; submitted supplemental expert declaration, dated 10/28/22, on attorneys' fees issues in Federal Tort Claims Act civil litigation);

---

[7] Examples of those courses and speaking engagements are contained in my attached curriculum vitae (Appendix A).

- *Githieya v. Global Tel Link Corp.*, No. 1:15-cv-00986-AT (N.D. Ga.) (submitted expert declaration, dated 4/01/22, on attorneys' fees issues; submitted expert declaration, dated 7/22/22, on class certification and fairness issues in connection with a proposed class settlement);

- *Rosie D. v. Baker,* C.A. No. 01-30199-RGS (D. Mass.) (submitted expert declaration, dated 11/23/21, on attorneys' fees issues);

- *Bahn v. American Honda Motor Co.*, No. 2:19-cv-5984 RGK (C.D. Cal.) (submitted expert declaration, dated 11/22/21, on attorneys' fees issues);

- *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637 (N.D. Ill.) (submitted expert declaration, dated 9/15/21, on attorneys' fees issues raised by the court);

- *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) (submitted expert declaration on attorneys' fees, dated 10/29/19; submitted supplemental expert declaration on class settlement terms, dated 12/15/19);

- *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices &Products Liability Litigation*, No. 3:17-md-02777-EMC (N.D. Cal.) (submitted expert declaration on settlement fairness, dated 4/25/19);

- *In re Syngenta AG MIR162 Corn Litigation*, No. 2:14-MD-02591-JWL-JPO (D. Kan.) (submitted expert declaration on attorneys' fees, expenses, and service awards, dated 7/10/18; submitted supplemental declaration on attorneys' fees, dated, 8/17/18);

- *In re Chinese-Manufactured Drywall Litigation*, MDL No. 2047 (E.D. La.) (submitted expert declarations on attorneys' fees issues, dated 5/4/17 and 8/1/18);

8

- *Jabbari v. Wells Fargo & Co.*, No. 15-cv-02159-VC (N.D. Cal.) (submitted expert declaration on class certification, settlement fairness, attorneys' fees, costs, and incentive payments in unauthorized accounts litigation, dated 1/19/18; submitted supplemental declaration, dated 5/21/18);

- *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (submitted expert declaration addressing objections by class members to proposed 3.0-liter and Bosch settlements, dated 4/28/17);

- *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (submitted expert declaration, dated 9/30/16, addressing objections by class members to proposed 2.0-liter settlement);

- *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, Nos. 12-970, 15-4143, 15-4146, and 15-4645 (E.D. La.) (submitted expert declaration on class certification, settlement fairness, and attorneys' fees relating to proposed Halliburton/Transocean class settlement) (dated 8/5/16);

- *Skold v. Intel Corp.*, Case No. 1-05-CV-039231 (Super. Ct. of Cal., Santa Clara Cnty.) (submitted expert declaration, dated 12/30/14, on class settlement approval, attorneys' fees, and incentive payments to class representatives);

- *In re National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323-AB (E.D. Pa.) (submitted expert declaration, dated 11/12/14, on class certification, class notice, and settlement fairness);

- *MBA Surety Agency, Inc. v. AT&T Mobility, LLC*, Case No. 1222-CC09746 (Mo. 22d Dist.) (submitted expert declaration on class certification and settlement fairness, dated 2/13/13;

submitted a supplemental expert declaration, dated 2/19/13; and testified in court on 2/20/13;

- *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, No. 2:10-md-02179-CJB-SS (E.D. La.) ("Deepwater Horizon") (submitted expert declarations on class certification, fairness, and attorneys' fees for the economic and property damages settlement [Doc. No. 7104-3] and class certification, fairness, and attorneys' fees for the personal injuries settlement [Doc. No. 7111-4] (both dated 08/13/12), and submitted supplemental expert declarations for both class settlements [Doc. No. 7727-4] (economic and property damages), [Doc. No. 7728-2] (medical) (both dated 10/22/12)); and

- *In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, MDL No. 2147, Case No. 1:10-cv-02278 (N.D. Ill.) (submitted expert declarations on the fairness of a proposed class action settlement [Doc. No. 163-3] and on attorneys' fees and incentive payments [Doc. 164-1] (both dated 03/08/11) and testified in court on March 10, 2011)).

12.  Courts evaluating class settlement and attorneys' fees issues have relied extensively on my testimony.  For example:

- In the *Deepwater Horizon* MDL litigation, Judge Carl Barbier cited and quoted my declarations (relating to a proposed settlement with British Petroleum) more than 60 times

in his two opinions analyzing class certification and fairness.[8]  In a later order in that MDL, Judge Barbier repeatedly cited another declaration of mine—which I filed in connection with a class settlement involving defendants Transocean and Halliburton.[9]

- In the *Volkswagen Clean Diesel* MDL litigation, Judge Charles Breyer repeatedly cited and quoted my two declarations in his three opinions—relating to the fairness of the 2.0-liter VW class settlement, the 3.0-liter VW class settlement, and the class settlement with VW's co-defendant, Bosch.[10]  In submitting those declarations, my role was to offer my opinions on various objections lodged by class members.

- In the *AT&T Mobility* MDL litigation, then–District Judge (now Seventh Circuit Judge) Amy St. Eve cited and quoted my declarations more than 20 times in approving a class settlement and awarding attorneys' fees.[11]

---

[8] *See In re Deepwater Horizon*, 910 F. Supp. 2d 891, 903, 914–16, 918–21, 923–24, 926, 929–33, 938, 941, 947, 953, 955, 960, 962 (E.D. La. 2012) (approving economic and property damages settlement), *aff'd*, 739 F.3d 790 (5th Cir. 2014); *In re Deepwater Horizon*, 295 F.R.D. 112, 133–34, 136, 138–41, 144–45, 147 (E.D. La. 2013) (approving medical benefits settlement).

[9] *See* Order and Reasons, Case No. 2:10-md-02179-CJB-JCW [Doc. No. 22252] (E.D. La. 02/15/17), *available at* https://www.laed.uscourts.gov/sites/default/files/OilSpill/2152017 OrderAndReasons%28HESI% 26TOsettlement%29.pdf (last visited Aug. 15, 2024).

[10] *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices & Prod. Liab. Litig.*, No. 3:15-md-02672-CRB, 2016 WL 6248426, at *18, *19, *20 (N.D. Cal. Oct. 25, 2016), *aff'd sub nom. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018), and *aff'd sub nom. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 741 F. App'x 367 (9th Cir. 2018); Order Granting Final Approval of the Consumer and Reseller Dealership 3.0-Liter Class Action Settlement, Case No. 3:15-md-02672-CRB [Doc. No. 3229] (filed 05/17/17), at 34, 35, 38; Order Granting Final Approval of the Bosch Class Action Settlement, Case No. 3:15-md-02672-CRB [Doc. No. 3230] (filed 05/17/17), at 18.

[11] *See In re AT&T Mobility Wireless Data Serv. Sales Tax Litig.*, 789 F. Supp. 2d 935, 956–59,

- In the *Syngenta MIR 162 Corn* MDL litigation, Judge John Lungstrum cited my two declarations on attorneys' fees issues numerous times in his two opinions.[12] Indeed, Judge Lungstrum credited my opinions on attorneys' fees over the contrary opinions of five law professor experts retained by various objectors.[13]

- In the *JUUL* MDL, Judge William Orrick utilized my proposed methodology for determining the lodestar cross-check in a complex class settlement.[14] The settlement for which fees were sought was a consumer class settlement involving JUUL, but the work performed by class counsel also related to the separate government entity cases and personal injury cases, as well as to a consumer class action against Altria. Judge Orrick noted, in deciding an attorneys' fee issue of first impression, that "Professor Klonoff's method of roughly calculating a lodestar cross-check [was] helpful," and he adopted that approach over a number of alternatives offered by plaintiffs as the one that "makes the most sense[.]"[15] In a subsequent settlement of a consumer class action involving a

---

961, 963–65 (N.D. Ill. 2011) (approving class settlement); *In re AT&T Mobility Wireless Data Serv. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1032 n.3, 1034–35, 1037, 1040, 1042 (N.D. Ill. 2011) (awarding attorneys' fees).

[12] *See In re Syngenta AG MIR 162 Corn Litig.,* 357 F. Supp. 3d 1094, 1112 (D. Kan. 2018) (granting final approval of class settlement and awarding total attorneys' fees), *aff'd.*, *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1257 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1022 (2023); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 6839380 (D. Kan. Dec. 31, 2018) (allocating attorneys' fees among common benefit counsel and individually retained private attorneys), *aff'd, Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1257 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1022 (2023), and *aff'd, In re Syngenta AG MIR 162 Corn Litig. (Hossley-Embry Grp. II),* No. 21-3110, 2024 WL 3684788 (10th Cir. Aug. 7, 2024).

[13] *In re Syngenta*, 2018 WL 6839380, at *4.

[14] *In re JUUL Labs, Inc. Marketing, Sales Practices, and Products Liab. Litig.*, No. 19-md-02913-WHO, 2023 WL 11820531, at *3 (N.D. Cal. Dec. 18, 2023).

[15] *Id*. at *2, 3 n.5.

different defendant—Altria—Judge Orrick again found my methodology "helpful" and once again used it conducting a lodestar cross-check with respect to a settlement of the consumer class against Altria.[16]

- In *In re Broiler Chicken Antitrust Litig.*, Judge Thomas Durkin cited and quoted my declaration numerous times in awarding attorneys' fees of more than $55 million; he specifically stated that he found my declaration (and one other) to be "very helpful[.]"[17]

- In *Zakikhani v. Hyundai Motor Co.*, Judge Stanley Blumenfeld, Jr., cited my declaration in approving attorneys' fees to class counsel.[18]

- In *Githieya v. Global Tel Link Corp.*, Judge Amy Totenberg cited and quoted my declaration several times in awarding attorneys' fees to class counsel.[19]

- In the *Equifax Data Breach* case, Judge Thomas Thrash considered various expert reports relating to a class settlement and proposed attorneys' fees; he noted that, although he exercised his own independent judgment, he found my declaration to be "particularly helpful."[20]

---

[16] *In re JUUL Labs, Inc. Marketing, Sales Practices, and Products Liab. Litig.*, No. 19-md-02913-WHO, 2024 WL 2202009, at *3 (N.D. Cal. May 15, 2024).

[17] No. 16 C 8637, 2021 WL 5578878, at *2 n.4, *3–4 & n.5 (N.D. Ill. Nov. 30, 2021).

[18] *Zakikhani v. Hyundai Motor Co.*, No. 8:20-CV-01584-SB-JDE, 2023 WL 4544774, at *8 (C.D. Cal. May 5, 2023), *reconsideration denied*, No. 8:20-CV-01584-SB-JDE, 2023 WL 4544771 (C.D. Cal. June 14, 2023).

[19] *Githieya v. Global Tel Link Corp.*, No. 1:15-cv-00986-AT (N.D. Ga. Aug. 30, 2022) [Doc. No. 369].

[20] *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, No. 20-10249, 2021 WL 2250845 (11th Cir. June 3, 2021).

- In the *Wells Fargo Unauthorized Accounts* litigation, Judge Vince Chhabria cited my declaration in connection with the issue of whether objectors to a class settlement should be ordered to post an appeal bond.[21]

- In *Skold v. Intel Corp.*, Judge Peter Kirwan cited my declaration in approving a class settlement and awarding attorneys' fees.[22]

13.  For my expert work in the present litigation, I am being compensated at my standard 2024 hourly rate of $1,125.00.  Payment for my services is not contingent on the outcome of the motion for preliminary approval or on the substance of my opinions.

14.  Additional information regarding my qualifications and experience—including a list of my publications—can be found in my curriculum vitae (attached hereto as Appendix A).

**III. MATERIALS RELIED UPON**

15.  I have reviewed the motions for preliminary approval in the *Hubbard* and the *House* cases, along with the objections and declarations filed in connection with those motions.  I have also reviewed the transcript of the videoconference preliminary approval proceedings held on

---

[21] *Jabbari v. Wells Fargo & Co.*, No. 15-CV-02159-VC, 2018 WL 11024841, at *7 (N.D. Cal. June 14, 2018).

[22] *See Skold v. Intel Corp.*, No. 1-05-CV-039231 (Cal. Super. Ct. Santa Clara County) (Jan. 29, 2015), at 7, *available at* http://lawzilla.com/blog/janet-skold-et-al-vs-intel-corporation/.  I should also note that in *Rogowski v. State Farm Life Insurance Company*, No. 4:22-cv-00203-RK (W.D. Mo.) although the court did not cite my declaration, it did award—consistent with my testimony— 33⅓ of a mega-fund. *Rogowski v. State Farm Life Ins. Co.*, 2023 WL 5125113, at *5 (W.D. Mo. Apr. 18, 2023).

September 5, 2024. Transcript of Videoconference Proceedings, September 5, 2024 (hereafter "9/5/24 Tr.").

### IV. BACKGROUND

16. The Court is thoroughly familiar with the background of this litigation and the terms of the settlement. I discuss only those facts that are critical to my opinion.

17. The proposed classwide settlements at issue would resolve both the *Hubbard* case (with a total payment of $200 million) and the *House* and *Carter* cases (with a total payment of $2.576 billion, as well as comprehensive injunctive relief). The proposed damages class would be settled under Rule 23(b)(3); the proposed injunctive relief class would be settled under Rule 23(b)(2).

18. At issue is whether separate counsel must be appointed to negotiate the injunctive claims. Under the injunctive portion of the settlement, counsel secured a historic revenue sharing arrangement. For more than 100 years, and despite multiple litigation efforts, Division 1 (D-1) college athletes have been barred from sharing in the revenues they generate for their schools. Those revenues have grown to many billions of dollars a year for football and basketball. Under the injunction settlement, D-1 athletes would be able to receive new benefits and compensation directly from their schools; such benefits are estimated to total at least $20 billion over the next ten years. In combination with the existing benefits the athletes receive, which will continue, this amounts to approximately 51 percent of projected D-1 revenues, which is the same percentage of revenue sharing that professional athletes enjoy. *See* Declaration of Daniel A. Rascher [Doc. 450-4, July 26, 2024] ¶¶ 39, 82-87. The injunction will also eliminate all NCAA scholarship limits,

which have been particularly restrictive of the non-revenue sports. The combination transforms college sports in a way that will unquestionably benefit the injunctive class without any tradeoffs to benefits awarded to the damages classes. Class counsel advise me that, prior to the mediation sessions, no one involved in the litigation had expected that such an achievement would be possible without several additional years of hard-fought and uncertain litigation.

19. As discussed below, both the injunctive and damages settlements were negotiated by highly respected and experienced class counsel, including Steve Berman and Jeffrey Kessler. With the oversight and active participation of a renowned mediator, Professor Eric Green, the parties first negotiated the injunctive settlement and only thereafter negotiated the various categories of damages. Despite this structure, however, the Colorado Objection argues, *inter alia*, that "new counsel should be appointed to represent the injunctive relief class to avoid a thicket of ethical conflicts regarding the settlement of injunctive relief and damages claims by the same counsel." Colorado Objection at 20. According to the Colorado Objection, "college athletes whose careers ended years ago have different priorities than college athletes beginning their careers next season." *Id.* Thus, the Colorado Objection asserts that "those with damages claims and the future athletes limited to injunctive relief . . . deserve separate counsel to protect their interests." *Id.* at 22. The Colorado Objection relies primarily on the Second Circuit's opinion in *Payment Card Interchange Fee*. 9/5/24 Tr. at 53.[23]

---

[23] The Volante/West Amici similarly argue that "given the inherent tradeoffs between retrospective damages and prospective injunctive-style relief, it is an impossibility that the legal counsel involved would be able to appropriately negotiate the portions of the Settlement related to all current and future collegiate athletes while upholding the duties owed to their clients." [Doc. 485 at 6].

16

20.   In responding to the Colorado Objection about the need for separate counsel to avoid a fatal conflict of interest, class counsel submitted a joint declaration by lead class counsel Steve Berman and Jeffrey Kessler [Doc. No. 494-1] and a separate declaration by mediator Eric Green [Doc. 494-2].

21.   The Berman/Kessler declaration noted that at the time of the mediation sessions, class counsel were "well-aware" of *Payment Card Interchange Fee* and that they "discussed the *Payment Card* case with the mediator and Defendants and structured the settlement negotiations so that [they] first exclusively discussed and resolved injunctive relief issues, to ensure no conflicts arose in this case." [Doc. 494-1 at 5].  They "paid careful attention to make sure there would be no discussion of, or any tradeoffs between, injunctive relief and damages." *Id*.  They "made this point to Defendants repeatedly and refused to negotiate the damages amounts for the classes before the terms of the injunctive relief settlement [were] agreed upon"; in addition, "the attorney fees provisions for the injunctive settlement were not negotiated until the other terms of the injunction were agreed to." *Id*.

22.   Likewise, mediator Eric Green explained that "[t]he parties insisted on structuring the settlement negotiations to initially—and exclusively—discuss, and resolve, the injunctive relief prior to any discussion regarding the damages claims."  [Doc. 494-2 at 4].  He noted that he and the parties "were familiar with the issues raised" in *Payment Card Interchange Fee* and that "at no point did the Parties condition resolving the injunctive relief on knowing what the damage demands would be."  *Id.* at 5.  According to Green, "[t]here were never any discussions of negotiating for less favorable injunctive relief to obtain greater damages, or vice versa," and "any

attorney fee provisions attributed to the injunctive relief settlement were not negotiated until the entire settlement agreement, including damages, was finalized." *Id.*

23.  I am advised by class counsel that there are approximately 148,000 class members who are eligible for damages and are also likely to be impacted by the forward-looking injunctive relief.

24.  On September 5, 2024, the Court conducted a hearing on plaintiffs' motions for preliminary approval of comprehensive classwide settlements involving both damages and injunctive relief.  The Court raised several issues, including whether separate counsel were required to negotiate on behalf of the injunctive subgroup. *See* 9/5 24 Tr. at 43-59.  Accordingly, class counsel has asked me to provide my expert opinion on the Colorado Objection's assertion that the settlements must be rejected and renegotiated because separate counsel were not appointed to negotiate on behalf of the injunctive relief class members.

### V. SUMMARY OF OPINIONS

25.  In my opinion, this Court need not and should not unwind these complex and historic settlements and appoint separate counsel to negotiate on behalf of the injunctive relief class members.  I believe that the careful negotiation structure implemented by the parties and the experienced mediator assured that class counsel were not trading off the injunctive claims against the damages claims.  The tool of designating separately represented subclasses is only one of many methods to assure structural integrity and the absence of conflicts, and the Second Circuit's *Payment Card Interchange Fee* case is distinguishable for multiple reasons, as discussed *infra* (¶¶ 46-51).  The Colorado Objection maintains that there is an *inherent* conflict—requiring separate

18

counsel—between those seeking damages and those seeking forward-looking relief.  However, it is routine and unremarkable for class counsel to negotiate both injunctive claims and damages claims, and courts have repeatedly approved such settlements.  Moreover, the structure of negotiating the injunctive relief and various damages claims seriatim is supported by the analogous, universally accepted technique for avoiding potential conflicts in the negotiation of class relief and attorneys' fees: Attorneys' fees are addressed only after the relief for the class has been negotiated.  Here, the parties and the mediator were aware of the potential for a conflict up front and, as in the attorneys' fees context, they deliberately and carefully structured the negotiations to prevent a theoretical conflict from becoming an actual one.

## VI. DETAILED OPINIONS

26.  In the following paragraphs, I explain in detail the reasons why I believe there is no need to unwind this comprehensive and historic settlement and appoint separate counsel to negotiate on behalf of the injunctive relief class members.

### A.  A Separately Represented Injunctive Relief Subclass is Not the Only Way to Ensure the Absence of Conflicts and Tradeoffs.

27.  In the wake of *Amchem Products, Inc. v. Windsor*[24] and *Ortiz v. Fibreboard Corp.*,[25] class objectors frequently assert that a class settlement should be unraveled because separate counsel were not appointed to represent purportedly conflicting interests.  It is possible, however,

---

[24] 521 U.S. 591 (1997).
[25] 527 U.S. 815 (1999).

in virtually any class settlement to assert putative conflicts among various segments of the class. For instance, in a case involving business loss and property damages, one could posit a conflict between the two categories of class members because, given a fixed amount a defendant is willing to pay, there is a potential for a single attorney or single group of attorneys to trade off the claims of some class members against those of others.  Indeed, even when all class members are seeking the same relief, it is theoretically possible to posit conflicts.  For instance, in a multistate class, some class members arguably have stronger claims under their particular state's laws, some class members have weaker claims because the statute of limitations has arguably run as to them, and some class members have stronger claims because they have documentary proof that other class members lack.

28.   In my opinion, there is a substantial cost in designating multiple separately represented subclasses.  The negotiations become far more complicated, and as a result, the likelihood of a stalemate increases.   Moreover, with separate counsel negotiating subsets of the claims, no attorney for a particular subgroup can offer global peace.  By contrast, a single group of lawyers, capable of settling the entire controversy, wield increased bargaining power that benefits all class members.[26]  As one scholar has noted, the defendant's interest in conducting negotiations in the class action context "is to wrap up all of the claims and resolve the entire litigation in a single

---

[26] *See, e.g., In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 208 (5th Cir. 1981) ("logic dictates that one set of negotiators, with the authority to release defendants from all claims, would be in a better bargaining position than negotiators with authority to compromise only part of the action").

transaction."[27]  Indeed, if the multiple groups of attorneys representing different segments of the class are at a stalemate as to how to resolve the various subgroups, the result is no settlement at all.

29.  Moreover, if the imposition of separate counsel for the injunctive and damages subgroups comes at the back end—after a fully negotiated class settlement has been presented to the Court—the expenditure of substantial time and expenses (including, in many instances, costly mediator fees) are wasted.  The parties are forced to start over, with no certainty that a fairer settlement—or indeed, any new settlement—will be reached.  Endorsement of the per se position urged by the Colorado Objection would essentially require the appointment of separate counsel in every case involving damages and injunctive relief. Defendants will not want to take the risk of spending substantial time and resources to negotiate global peace, only to have the settlement eviscerated because of the absence of separately represented subclasses.

30.  Courts have wisely understood the serious costs of imposing multiple separately represented subclasses, recognizing the potential for "Balkanization."[28]  More fundamentally, courts have repeatedly made clear that requiring separately represented subclasses is only one option for dealing with potential conflicts, not the only one.  Thus, courts have recognized that *Amchem* and *Ortiz* "appear to hold that Rule 23(a)(4) calls for *some type* of adequate structural

---

[27] D. Theodore Rave, *When Peace is Not the Goal of a Class Action Settlement,* 50 GA. L. REV. 475, 483 (2016).

[28] *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d. 241, 271 (3d Cir. 2009) (citation omitted) (noting that, "[w]hile subclasses [with separate representation] can be useful in preventing conflicts of interest, they have their drawbacks," including the potential to "create a 'Balkanization' of the class action and [they] present a huge obstacle to settlement if each subclass has an incentive to hold out for more money").

protection," but not necessarily separately represented subclasses.[29]  Put another way, requiring separately represented subclasses "is appropriate only when the court believes it will materially improve the litigation."[30]  At bottom, "[n]ot all conflicts require separate representation."[31]

31.  Leading commentators agree.  For example, the McLaughlin treatise explains: "Absent the kind of stark divergence of interests that is present in mass tort cases between present and future claimants, the district court has considerable discretion to decide whether appointment of separate counsel is required for a particular subclass."[32]  Likewise, the Newberg/Rubenstein treatise notes that the designation of separately represented subclasses "is one mechanism, *though not the only one*, by which courts can solve conflict of interest problems in class suits."[33]

32.  I have opined as an expert on similar issues in a number of cases, including *Deepwater Horizon* and *NFL Concussion*.  In both cases, the courts rejected attempts by objectors to unwind settlements and create new separately represented subclasses.

33.  In *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,[34] objectors tried to undo a massive economic and property damage settlement by arguing

---

[29] *Juris v. Inamed Corp.,* 685 F.3d 1294, 1323 (11th Cir. 2012) (emphasis in original; citations omitted).

[30] *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am. AFL-CIO,* 803 F.2d 878, 880 (6th Cir. 1986) (citation omitted).

[31] *Murray v. Grocery Delivery E-Servs. USA Inc.,* 55 F.4th 340, 345 (1st Cir. 2022).

[32] 1 McLaughlin on Class Actions § 4:45 (20th ed. 2023) (emphasis added).

[33] 3 Newberg and Rubenstein on Class Actions § 7:31 (6th ed. June 2024 update) (emphasis added).

[34] No. 2:10-md-02179 (E.D. La.) ("*Deepwater Horizon*"),

that separately represented subclasses were necessary.[35] I opined (along with Professor Jack Coffee) that separately represented subclasses would be unnecessary and counterproductive.[36] Judge Carl Barbier, citing my Declaration and that of Professor Coffee, rejected the objectors' arguments and refused to impose the requested relief.[37] The Fifth Circuit affirmed.[38]

34. Similarly, in *In re National Football League Players' Concussion Injury Litigation,*[39] objectors challenged a massive settlement by arguing that separate representation of several subsets of the class was necessary.[40] I opined that the relief sought by various objectors would be unnecessary and unproductive, and would create an unmanageable settlement process.[41] Judge Anita Brody ultimately rejected the objectors' arguments, holding that the fact that class counsel simultaneously represented players with varying diagnoses, ages, and lengths of service did not create a fundamental conflict of interest.[42] In her view, the requested relief "would not have

---

[35] *See, e.g.*, Memorandum In Support Of Consolidated Objections of 795 Unnamed Class Members To Deepwater Horizon Settlement Agreement at ¶¶ 48–61, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" Objection to Settlement*, No. 2:10-cv-07777 (E.D. La. Sept. 7, 2012) [Doc. No. 198].

[36] Supplemental Expert Report of Robert H. Klonoff Relating to the Proposed Economic and Property Damages Class Settlement at ¶¶ 45–46, *Deepwater Horizon*, No. 2:10-md-02179 (E.D. La. Oct. 12, 2012) [Doc. No. 7727-4].

[37] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 917–18 (E.D. La. 2012).

[38] *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

[39] No. 2:12-md-02323-AB (E.D. Pa.) ("*NFL Concussion*").

[40] *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 375–79 (E.D. Pa. 2015) (summarizing and responding to objections).

[41] *See* Declaration of Robert H. Klonoff Relating to The Proposed Class Settlement in The National Football League Players' Concussion Injury Litigation at ¶ 33-49, *NFL Concussion*, No. 2:12-md-02323-AB, (E.D. Pa. Nov. 12, 2014) [Doc. No. 6423-9].

[42] *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. at 378.

increased the total recovery of Class Members," and if the relief sought by the objectors had been mandated, negotiations would have "ground to a halt."[43]  The Third Circuit affirmed.[44]

35.  In my opinion, a requirement of separately represented subclasses should be the exception, not the rule.  That approach should be limited to the situation in which the conflicts are flagrant and no alternative structural method short of imposing separate counsel can be employed to protect against such conflicts.  As noted above, the imposition of new attorneys to represent separate subgroups imposes serious costs and delays and may jeopardize the parties' ability to reach any settlement at all.

36.  Indeed, there are particular reasons to be cautious about ordering separate representation for the injunctive class members here.  As noted (¶ 23), approximately 148,000 class members are eligible for both damages relief and injunctive relief.  As a result, the Colorado Objection's proposal to appoint separate counsel for the injunctive group would mean that these 148,000 class members would be simultaneously represented by two different groups of attorneys—the original class counsel and the newly added counsel.  The fact that so many class members have both damages claims and injunctive claims undermines the concern that counsel were trading away the claims of one group to benefit the other.

---

[43] *Id.* at 379.
[44] *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 432 (3d Cir. 2016), as amended (May 2, 2016).

**B. Courts Routinely Approve Damages and Injunctive Class Settlements Without Separate Counsel.**

37.   The Colorado Objection is premised on the notion that there is an *inherent* conflict in the same attorneys representing individuals pursuing damages and those pursuing forward-looking injunctive relief.   Colorado Objection at 20 (stating that "the settlement of injunctive relief and damages claims by the same counsel" raises a "thicket of ethical conflicts").[45]   From that assumption, the Colorado Objection leaps to the conclusion that the *only* way to address the situation is to mandate separate counsel for the injunctive claims.   *See id.*   The Colorado Objection cites only one case to support this approach in the context of damages and injunctive claims, *Payment Card Interchange Fee*.   As discussed *infra* (¶¶ 46-51), that case, which is not controlling in the Ninth Circuit, is based on unique and readily distinguishable facts.

38.   The Colorado Objection fails to mention that there are numerous class settlements—approved by the Ninth Circuit and by district courts within the Ninth Circuit—in which the same class attorneys negotiated both the damages component and the injunctive component of the settlement.[46]   Likewise, there are numerous cases within the Second Circuit—the Circuit that decided *Payment Card Interchange Fee*—that approve damages and injunctive settlements

---

[45] *Accord* Volante/West Amici at 6 (asserting that there are "inherent tradeoffs between retrospective damages and prospective injunctive-style relief").

[46] *See, e.g., Farrell v. Bank of Am. Corp., N.A.,* 827 Fed. Appx. 628 (9th Cir. 2020); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998); *Corker v. Costco Wholesale Corp.,* No. 2:19-CV-00290-RSL, 2023 WL 6558033 (W.D. Wash. Sept. 21, 2023); *Nevarez v. Forty Niners Football Co.,* LLC, 474 F. Supp. 3d 1041 (N.D. Cal. 2020); *McKibben v. McMahon,* No. EDCV 14-02171 JGBSPX, 2018 WL 11350605 (C.D. Cal. Sept. 10, 2018).

negotiated by a single set of attorneys.[47]   And there are many other cases elsewhere around the country—too numerous to count—that have approved class settlements in which the damages and injunctive components were negotiated by the same class counsel.[48]

39.   A court that reviews a class settlement acts as a fiduciary for the class and thus cannot approve a settlement with a fatal conflict of interest.[49] As a result, acceptance of the Colorado Objection's position would mean that countless courts have breached their fiduciary duties by not ordering separate counsel for injunctive claims in class actions seeking both damages and

---

[47] *See, e.g., Charron v. Wiener*, 731 F.3d 241, 250 (2d Cir. 2013); *Parker v. Time Warner Ent. Co., L.P.,* 631 F. Supp. 2d 242 (E.D.N.Y. 2009), *aff'd sub nom. Lobur v. Parker,* 378 F. App'x 63 (2d Cir. 2010); *Sheppard v. Consol. Edison Co. of N.Y.*, No. 94-CV-0403(JG), 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002); *see also Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 89–90 (2d Cir. 2015) (upholding certification of injunctive class and damages class represented by same counsel); *In re Vitamin C Antitrust Litig.,* 279 F.R.D. 90, 113 (E.D.N.Y. 2012) (granting certification and expressly rejecting the argument that the same class counsel could not adequately represent a damages class and an injunction class in settlement negotiations).

[48] *See, e.g., In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241 (3d Cir. 2009); *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 894–901 (6th Cir. 2019); *Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999); *Keli v. Lopez*, 862 F.3d 685 (8th Cir. 2017); *In re Blue Cross Blue Shield Antitrust Litig*. MDL 2406, 85 F.4th 1070 (11th Cir. 2023); *Phillips v. Caliber Home Loans, Inc.,* No. 19-CV-2711 (WMW/LIB), 2022 WL 832085 (D. Minn. Mar. 21, 2022); *Henderson v. Emory Univ*., No. CV 16-2920-CAP, 2020 WL 9848978 (N.D. Ga. Nov. 4, 2020); *Tussey v. ABB, Inc.,* No. 06-CV-04305-NKL, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019); *Tennille v. W. Union Co.,* No. 09-CV-00938-JLK-KMT, 2014 WL 5394624 (D. Colo. Oct. 15, 2014); *Hooper v. Advance Am.,* No. 08-4045-CV-C-NKL, 2010 WL 11469807 (W.D. Mo. Nov. 4, 2010); *McCoy v. Health Net, Inc.,* 569 F. Supp. 2d 448 (D.N.J. 2008).

[49] *See, e.g., Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (noting, in deciding whether to approve a class action settlement, that "the district court has a fiduciary duty to look after the interests of those absent class members.") (citations omitted); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 280 (7th Cir. 2002) ("the district judge in the settlement phase of a class action suit [is] a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries"); *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 22 (2d Cir. 1987) ("In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.") (internal quotations omitted).

injunctive relief.  The answer, in my opinion, is *not* that all of these courts erred; rather, my opinion is that the Colorado Objection's argument—that separate counsel are mandatory whenever a case involves both damages and injunctive relief—is not persuasive.   A mandatory rule requiring separate counsel whenever there are claims of both damages and injunctive relief would greatly complicate the class action litigation and settlement process: Class negotiations would be substantially more difficult and protracted (and in many instances would grind to a halt).  In most such instances, there are no conflicts at all, or if conflicts potentially exist, they can be addressed through other structural assurances, such as the kind of phased negotiation that occurred here.  *See* ¶¶ 40-45, *infra*.[50]

## C.   The Effectiveness of the Phased Negotiation Approach Here is Strongly Supported by the Well–Accepted Practice of Phased Negotiations of Class Recovery and Attorneys' Fees.

40.   In my opinion, the careful negotiation process structured by class counsel and mediator Eric Green provided structural assurance that the damages segment of the class would not trade away the claims of the injunctive segment.

---

[50] Moreover, the notion that the five plaintiffs who submitted the Colorado Objection are presenting an objective argument for additional counsel must be assessed in light of the fact that the attorneys who submitted the Colorado Objection are proposing that *they* should be appointed as the additional counsel [Doc. 473 at 22-23, 31]. *Cf. In re Hyundai and Kia Fuel Economy Litigation,* 926 F.3d 539, 572 (9th Cir. 2019) (criticizing objector's argument that the court should reject a class settlement and create a subclass—represented by her and her counsel—as an attempt to "hold hostage any class recovery under the settlement until she received the unique benefit of being certified to represent a . . . subclass").

41. As an initial matter, having one of the country's most respected mediators involved throughout the negotiation process is one piece of the puzzle in demonstrating fairness.[51] As the Berman/Kessler Declaration and the Green Declaration make clear, mediator Green was heavily involved throughout the protracted mediation process. *See* ¶¶ 19-22.

42. But there is far more here than simply the presence of a respected mediator. Rather, recognizing the potential for a conflict, and fully aware of the *Payment Card Interchange Fee* case, the parties and the mediator proactively ensured from the outset that the negotiations were phased—with the injunctive portion fully negotiated before the parties addressed damages. *See* ¶¶ 19-22. In my opinion, this phasing was not a mere formality; rather, it was a crucial and tangible structural protection to ensure that potential conflicts would not materialize.

43. This approach of phased negotiations is not an untested approach that the parties and mediator Green made up out of whole cloth. Rather, this concept of phased negotiations is the

---

[51] *See, e.g., In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 948 (9th Cir. 2011) (noting that the "presence of a neutral mediator" is a "factor weighing in favor of a finding of non-collusiveness"); *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 327 (N.D. Cal. 2018) ("Courts in this district have recognized that 'the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'") (*quoting G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015)); *Satchell v. Fed. Express Corp.,* No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (same) *McKibben v. McMahon*, No. EDCV1402171JGBSPX, 2018 WL 11350605, at *12 (C.D. Cal. Sept. 10, 2018) (same).

gold standard for dealing with the potential conflict that arises whenever class counsel negotiate

both the recovery for the class and the recovery of their own attorneys' fees.[52]

44. For example, in *In re Bluetooth Headset Products Liability Litigation*, the Ninth

Circuit recognized that, while careful scrutiny of class settlements and fees was required, conflict

concerns in class negotiations could be reduced where the parties provide "corroborating

evidence" that they "negotiate[d] the 'core terms' of the settlement agreement with a neutral

mediator before turning to fees."[53]   In *Shames v. Hertz Corp.*, Judge Michael Anello found that

class counsel's fee request did not present a conflict of interest because "[t]he fee amount was

---

[52] Numerous courts have noted the potential conflict when class counsel simultaneously negotiate class recovery and attorneys' fees. *See, e.g., Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (recognizing "the possibility of a tradeoff between merits relief and attorneys' fees" where negotiations take place simultaneously) (*citing Marek v. Chesny*, 473 U.S. 1 (1985)); *Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003) (recognizing that where fees are settled concurrently with the merits "the obvious risk arises that plaintiffs' lawyers will be induced to forego a fair settlement for their clients in order to gain a higher award of attorneys' fees"); *Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *8 (N.D. Cal. Jan. 13, 2016) ("simultaneously negotiat[ing] Plaintiffs' settlement payments and attorneys' fees . . . raises the specter of collusion because it suggests that Plaintiffs' counsel may have been motivated to undercut their clients' (and the putative class's) recovery in order to quickly generate higher attorneys' fees for themselves").

[53] 654 F.3d 935, 948 (9th Cir. 2011). Notably, the court found that the settlement at issue was potentially collusive, in part, because class counsel did *not* corroborate their "bald assertions" that the class settlement and fees were negotiated separately. *Id.*  Importantly, that corroboration was supplied to the district court on remand.  *See In re Bluetooth Headset Prod. Liab. Litig.*, No. 07-ML-1822 DSF EX, 2012 WL 6869641, at *9 (C.D. Cal. July 31, 2012) (finding no collusion and noting that "the parties have now substantiated their 'bald assertions' with corroborating evidence': declarations from the negotiators of the settlement as well as the retired judge who mediated the settlement. All testify that fee discussions were handled separately and after the discussion of substantive relief.").  Here, the Colorado Objection does not challenge the sworn testimony in the Berman/Kessler and Green Declarations regarding the structure of the settlement negotiations. *See* ¶¶ 21-22, *supra* (summarizing those declarations).

negotiated separately and only after the class settlement was finalized."[54]   Similarly, in a

shareholder derivative case, Judge Jeremy Fogel emphasized that "[t]he parties first agreed on a

gross settlement . . . and only then did they allocate the attorneys' fees"; this negotiation structure,

in Judge Fogel's view, weighed against any inference of a collusive settlement.[55]   Numerous other

cases have made the same point.[56]   As Judge Anello recognized in *Shames*, given that attorneys'

---

[54] No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *13 (S.D. Cal. Nov. 5, 2012).

[55] *In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008).  *See also In Re Ring LLC Privacy Litig*., No. CV 19-10899-MWF, 2024 WL 2845978 at *6 (C.D. Cal. May 28, 2024) (citing *Apple Computer, id.,* and noting that "the parties' separately negotiated arrangement regarding attorneys' fees warrants significant deference"); *Ohuche v. Autovest, LLC*, No. LA CV 21-06376 JAK (PVCx), 2023 WL 8375213, at *12 (C.D. Cal. Mar. 8, 2023) (granting preliminary approval and noting that the fact that "the parties did not discuss attorney's fees until after an agreement was reached on settlement of claims" weighed against a finding of collusion), *final approval granted in* Order Re Plaintiff's Motion for Attorney's Fees and Costs; Plaintiff's Motion for Final Approval of Class Action Settlement, *Ohuche v. Autovest, LLC*, No. LA CV 21-06376 JAK (PVCx) (C.D. Cal. Nov. 21, 2023) [Doc. No. 647].

[56] *See, e.g., In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1091 (10th Cir. 2021) (in assessing the fairness of a class settlement, "a district court may consider the structure of the negotiation process, including . . . whether negotiations on fees and costs were reserved until after the parties reached an agreement on class compensation"); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 335 (3d Cir. 1998) (agreeing with the district court that "'the parties obviated the danger of an actual or apparent conflict of interest on the part of class counsel by'. . . negotiat[ing] attorneys' fees . . . after they had finished negotiating the settlement agreement") (citation omitted); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 918 (E.D. La. 2012) (finding no conflict of interest, in part, because "there was no discussion of attorneys' fees until all other terms of the agreement were negotiated . . . so Class Counsel could not have engaged in trading off the interests of class representatives or absent class members so as to maximize their fee recovery") (*citing* Klonoff declaration); *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 845 (E.D. La. 2007) (by negotiating class recovery before any discussion of attorneys' fees, class counsel "exponentially decrease[d] the possibility of collusion" and avoided "tainting the fairness of settlement bargaining"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 67 (S.D.N.Y. 2003) ("fees were negotiated separately and after the settlement amount had been decided, thus

fees and the class's recovery were negotiated separately and that the settlement provided substantial value to the class, "there [was] no evidence that Plaintiffs 'negotiated away' anything to garner a higher fee amount."[57]

45. In my opinion, the sequential negotiation approach repeatedly approved by courts for reducing or avoiding conflicts in negotiating class recovery and attorneys' fees was equally effective in the context of negotiating claims for injunctive relief before negotiating the claims for damages. Here, the sequential negotiations—carefully implemented at the outset of negotiations by both the parties and the mediator—ensured that a potential conflict did not rise to the level of an actual one. In my opinion, given this well-established approach of sequencing negotiations, there is no valid reason to undo this settlement and start over again with separate counsel for the injunctive class members. Doing so would achieve no additional structural protection and would only result in delay (and perhaps lead to a stalemate).

---

considerably removing the danger that attorneys' fees would unfairly swallow the proceeds that should go to class members"); *Manchaca v. Chater*, 927 F. Supp. 962, 966 (E.D. Tex. 1996) ("The decision by plaintiffs to pursue attorneys' fees and costs subsequent to judicial approval of a settlement agreement demonstrates their commitment to arms-length negotiations."). *See also* 4 Newberg and Rubenstein on Class Actions § 13:50 n.13 (6th ed. June 2024 update) ("'Although there is no bar to [lump sum settlements encompassing both class claims and attorneys' fees], the simultaneous negotiation of class relief and attorney fees creates a potential conflict. Separate negotiation of the class settlement before an agreement on fees is generally preferable.'") (quoting Manual for Complex Litigation, Fourth, § 21.7); 2 McLaughlin on Class Actions § 6:4 (20th ed. 2023) (noting that there is a "special danger of collusiveness" when attorneys' fees and damages are negotiated simultaneously and that counsel should "defer discussion of fees at least until after negotiations of the substantive terms of the settlement are concluded, and [should] maintain a record that can demonstrate this chronology") (citation and internal quotation marks omitted).

[57] *Shames*, 2012 WL 5392159, at *13.

**D. The Colorado Objection's Principal Authority is Readily Distinguishable on Multiple Grounds.**

46.   The only authority the Colorado Objection cites holding that separate counsel were required to ensure conflict-free representation of damages claims and injunctive claims is *Payment Card Interchange Fee*, a non-binding case from the Second Circuit.[58]   In my opinion, that case involved very different facts and should not be read to require separate representation of the injunctive claims here.

47.   First, and most importantly, there is no indication in *Payment Card Interchange Fee* —either in the Second Circuit's opinion or in the briefing—that the parties used the sequential negotiation approach that was used here.   Had there been such structural protection, class counsel surely would have pointed that out to the Second Circuit.[59]   Rather, the Second Circuit was almost certainly dealing with a situation (simultaneous negotiation of damages and injunctive relief) where there was indeed a possibility of a tradeoff.   Having completed the simultaneous negotiations, class counsel in that case could not unring the bell.   To harken back to the analogy

---

[58] *See* 9/5/24 Tr. at 53 (argument of Mr. Broshuis) (distinguishing other authority of the Colorado Objection as addressing "different people with different damages cases" and referencing only *Payment Card Interchange Fee* as authority involving "the same counsel representing an important injunctive relief class and also trying to represent a damages class").   The Volante/West Amici cite no authority at all for their argument that there are "inherent tradeoffs between retrospective damages and prospective injunctive-style relief." [Doc. 485 at 6].

[59] To the contrary, the objectors' Second Circuit brief noted (without refutation by class counsel): "As lead counsel for the Class Plaintiffs acknowledged at the preliminary hearing: 'The negotiations before the mediators were always—one issue was monetary, the other issue was equitable relief. *One was not going to be reached without reaching the other.*'" Joint Final Form Brief for Objectors-Appellants and Plaintiffs-Appellants, *In re Payment Card Interchange Fee Merch. Disc. Antitrust Litig.*, No. 12-04671 (2d Cir. Dec. 23, 2014) [Doc. No. 1304], at 77 (emphasis added).

involving the negotiation of damages and attorneys' fees, *Payment Card Interchange Fee* is analogous to a situation in which damages and attorneys' fees were negotiated *simultaneously*, not one in which they were negotiated sequentially.

48. Second, the Second Circuit made clear that it was *not* adopting a per se rule. To the contrary, it emphasized that its holding does not mean "that (b)(3) and (b)(2) classes necessarily and always require separate representation."[60] The Colorado Objection does not explain why the present case, unlike virtually all other cases involving both damages and injunctive relief, requires separate counsel for the damages and injunctive claims, particularly given the structural protections that were utilized by the parties and the mediator.

49. Third, the facts in *Payment Card Interchange Fee* are markedly different than those here. There, the majority of merchants in the (b)(2) class "gain[ed] no appreciable benefit from the settlement" while the remainder "gain[ed] no benefit at all."[61] Furthermore, "class counsel knew at the time of the Settlement Agreement was entered into that [the injunctive relief] was virtually worthless to vast numbers of class members."[62] Here, by contrast, as explained in detail in ¶ 18, the injunctive relief is historic and extraordinary, worth tens of billions of dollars to the injunctive class members. It is the polar opposite of the glaring deficiencies of the injunctive relief

---

[60] *Payment Card Interchange Fee,* 827 F.3d at 235.
[61] *Id.* at 236.
[62] *Id.* at 238.

emphasized in *Payment Card Interchange Fee,* in which large numbers of the (b)(2) injunctive class stood to gain nothing or virtually nothing.[63]

50. Fourth, a critical fact in *Payment Card Interchange Fee* was that the settlement occurred without a prior contested certification, making it "especially vulnerable to conflicts of interest."[64]  As *Amchem* explained, where settlement negotiations took place prior to certification, "[c]lass counsel . . . could not use the threat of litigation to press for a better offer, and the court would face a bargain proffered for its approval without benefit of adversarial investigation."[65]  As *Amchem* further noted, class counsel who cannot invoke the threat of class certification if settlement talks are unsuccessful are "disarmed"; for that reason, district courts must apply "undiluted, even heightened, attention" when reviewing a request for settlement-only class certification.[66]  As one leading scholar has explained, "Without the power to take class claims to

---

[63] Another distinguishing fact is that in *Payment Card Interchange Fee,* there was "little overlap" in class members seeking damages and those seeking injunctive relief.  *See In re Blue Cross Blue Shield Antitrust Litig.*, MDL 2406, 85 F.4th 1070, 1091 (11th Cir. 2023) (noting this point).  Here, by contrast, there are 148,000 class members who are in both categories.  *See* ¶ 36.  The substantial overlap here is a factor that weighs against the appointment of separate counsel, who would be representing these same class members with interests in both damages and injunctive relief.

[64] *Id.* at 235 (noting that the settlement was "approved simultaneously with class certification"); *see also In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement."); *Staton v. Boeing*, 327 F.3d 938, 952–53 (9th Cir. 2003) (stating that courts "must pay 'undiluted, even heightened, attention' to class certification requirements" when they are settled before the court certifies the class) (*quoting Amchem,* 521 U.S. at 620).

[65] *Amchem,* 521 U.S. at 621 (citation omitted).

[66] *Id.* at 620.  The only exception is for manageability under Rule 23(b)(3)(D); the district court need not inquire into manageability of a class trial because "the proposal is that there be no trial." *Id.*

trial, the lawyer purporting to negotiate on behalf of absent class members lacks the leverage that is essential on both sides of any litigation compromise."[67]   By contrast, where settlement negotiations follow contested proceedings leading to class certification—as is the case here—class counsel have a much stronger hand, thereby greatly reducing concerns about collusion.[68]   Indeed, *Payment Card Interchange Fee* emphasized this precise distinction: "Of course we have blessed multi-class settlements that were the product of unitary representation, but those were entered into *after* class certification."[69]   The court recognized that, in the latter circumstances, it is "more skeptical of allegations that subclass conflicts require[] separate representation."[70]   In the present

---

[67] Howard M. Erichson, *The Problem of Settlement Classes,* 82 G.W. L. REV. 951, 958 (2014).

[68] *See, e.g., In re Integra Realty Res., Inc*., 354 F.3d 1246, 1262 (10th Cir. 2004) (declining to apply heightened scrutiny to settlement because "unlike in *Amchem*, the class was certified before settlement negotiations began"); *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1145–46 (8th Cir. 1999) (holding that the "circumstances in *Amchem* and *Ortiz* that called for heightened attention" were not present where "the class was certified . . . many months before the parties reached the settlement"); *In re Cendant Corp. Sec. Litig.,* 109 F. Supp. 2d 235, 252–53 (D.N.J. 2000) (approving class settlement and stating that "*Amchem* and *Ortiz* are readily distinguished" where the class "was already scrutinized and certified for litigation"), *aff'd sub nom. In re Cendant Corp. Litig.,* 264 F.3d 201 (3d Cir. 2001).

[69] *In re Payment Card Interchange Fee,* 827 F.3d at 236 (emphasis in original).

[70] *Id.*  To be sure, the contested classes that were certified here were modified to some extent in the settlement process.  But that does not undermine the point.  *See, e.g., Petrovic v. Amoco Oil Co.,* 200 F.3d at 1146 ("Although a mandatory class was also certified for purposes of injunctive relief in connection with the settlement in our case, we think that this additional certification lacks legal significance in this context. The district court still had the benefit of the parties' extensive trial preparation, and the definition of the mandatory class was the same as the definition of the class originally certified under Fed.R.Civ.P. 23(b)(3) (although, obviously, the mandatory class also included those who opted out of the class litigation with respect to compensatory relief)."); *Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-CV-2353-DDC-TJJ, 2015 WL 1645798, at *2–3 (D. Kan. Apr. 14, 2015) (refusing to apply *Amchem*'s heightened scrutiny to a class settlement despite changes in class definition that extended the class period and included additional class members), *final approval granted in Nieberding v. Barrette Outdoor Living, Inc.*, 129 F.

case, the Court has already certified both damages classes and injunctive classes in *House*, represented by the same counsel.

51. Finally, the events in *Payment Card Interchange Fee* following the Second Circuit's decision reveal that courts should exercise great caution before assuming that the retroactive insertion of additional counsel will cleanse a purported conflict and lead to a new, more robust, injunctive settlement.  In *Payment Card Interchange Fee*, on remand from the Second Circuit, Judge Margo Brodie appointed separate counsel to represent class members with injunctive claims. Those attorneys proceeded to negotiate a new settlement of the injunctive claims.  However, after a careful review of the proposed new settlement, Judge Brodie denied preliminary approval, finding that the proposed settlement was fraught with serious issues.[71]  The chronology of events leading to this outcome demonstrates why a court should pause long and hard before requiring separate counsel to negotiate the injunctive relief.  In that case, the litigation began in *2005*; a settlement in which the same attorneys negotiated both the damages and injunctive claims was reversed by the Second Circuit in 2016; Judge Brodie appointed separate counsel in 2016; a new damages-only settlement was reached in 2019 and later was affirmed by the Second Circuit; an injunctive settlement with new counsel was reached in 2024; and later in 2024, Judge Brodie

Supp. 3d 1236 (D. Kan. 2015).  The configuration of classes frequently changes during the settlement review process.  *See, e.g., Brown v. Hain Celestial Group, Inc.,* No. C 11-03082LB, 2014 WL 6483216, at *6 (N.D. Cal. Nov. 18, 2014) ("It is an unremarkable feature of class actions that class definitions are refined to reflect the developing realities of a given suit.").  The crucial point is that the existence of hard-fought, contentious class certification proceedings—leading to an order granting class certification—undermines any concern that the settlement negotiations were collusive because class counsel were "disarmed."

[71] *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05-MD-1720, 2024 WL 3236614 (E.D.N.Y. June 28, 2024).

*denied* preliminary approval.[72]  In an opinion totaling close to 90 slip opinion pages, Judge Brodie found that she was unlikely to approve the injunctive settlement negotiated by the separately appointed attorneys.[73]  Among other grounds, Judge Brodie found that "the Settlement does not treat Class Members equitably relative to one another" because it "provides the least benefit to the merchants with the most valuable claims."[74]  As these events reveal, the Colorado Objection errs in assuming that the appointment of their attorneys to represent the injunctive class would be a silver bullet to ensure a new, stronger injunctive settlement.  To the contrary, the events in *Payment Card Interchange Fee* belie any such assumption.  There is a huge advantage to the injunctive class members in having the new benefits provided by the settlement commence next year.  If this settlement is derailed, and it takes a number of additional years before new benefits will be provided, tens of thousands of the injunctive class members will no longer be in school to receive them.  Even more concerning, it is possible that *no* new settlement would be reached.

## VII.  CONCLUSION

52.  In my opinion, there is no valid reason to unwind the extraordinary and historic settlement now before the Court on the ground that separate counsel must be appointed to represent the class members seeking injunctive relief.  The Colorado Objection's sole authority is distinguishable on multiple grounds; and the Objection's argument that a settlement involving both

---

[72] *Id* at *1–*4.
[73] *Id.* at *41.
[74] *Id.* at *37.

damages and injunctive relief is per se collusive unless separate counsel are appointed belies common sense and conflicts with countless cases approving such settlements without separate counsel. Most importantly, the parties, under the supervision of an experienced mediator, carefully implemented phased negotiations—a technique universally approved and time-tested to ensure conflict-free negotiation of damages and attorneys' fees—to eliminate the possibility that there would be tradeoffs between the injunctive and damages classes. The additional structural protection sought by the Colorado Objection is not only unnecessary; it risks the possibility that no new settlement will be reached—or that a settlement will be delayed for many years. As the Third Circuit eloquently noted in *NFL Concussion*, in rejecting objector demands for multiple separately-represented subclasses, the court should not "risk making the perfect the enemy of the good."[75]

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on information known to me.

Robert H. Klonoff

September 24, 2024

---

[75] *In re Nat'l Football League Players Concussion Inj. Litig.,* 821 F.3d 410, 447 (3d Cir. 2016), as amended (May 2, 2016).

# Appendix A

## CURRICULUM VITAE

**ROBERT H. KLONOFF**
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
Tel:  503-768-6935 (Office)
E-Mail:  klonoff@lclark.edu

Date of Birth:  March 15, 1955
Place of Birth:  Portland, Oregon

### EDUCATION:

J.D., Yale University, 1979

A.B., University of California, Berkeley, 1976, Majored in Political Science/Economics (Highest Honors)

### WORK EXPERIENCE:

#### Current Positions:

Jordan D. Schnitzer Professor of Law, Lewis & Clark Law School (since 2014)

Panelist, FedArb (alternative dispute resolution)

#### Prior Positions:

Dean of the Law School, Lewis & Clark Law School (2007-2014)

Douglas Stripp/Missouri Endowed Professor of Law, University of Missouri-Kansas City School of Law (2003-2007)

Jones Day, Washington, D.C. (Partner, 1991-July 2003; Of Counsel, 1989-1991, 2003- 2007)

Adjunct Professor of Law, Georgetown University Law Center (class action law and practice) (1999-2003)

Visiting Professor of Law, University of San Diego School of Law (1988-1989)

Assistant to the Solicitor General of the United States (1986-1988)

Assistant United States Attorney (Criminal Division, District of Columbia) (1983-1986)

Associate, Arnold & Porter, Washington, D.C. (1980-1983)

Law Clerk to the Honorable John R. Brown, Chief Judge, United States Court of Appeals for the Fifth Circuit (1979-1980)

Summer Associate, Baker & Botts, Houston, and Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C. (1978)

Summer Associate, Sidley & Austin, Washington, D.C. (1977)

## SPECIAL HONORS AND ACHIEVEMENTS:

Member, Council of the American Law Institute

Recipient, Lewis & Clark Law School's 2020 Leo Levenson Award for Excellence in Teaching (the law school's most prestigious award)

Recipient, 2018 Albert Nelson Marquis Lifetime Achievement Award in the field of law from *Who's Who in America*

Member, 2011-2017, United States Judicial Conference Advisory Committee on Civil Rules (appointed by Chief Justice John G. Roberts, Jr., in 2011 as the sole voting member from the law school academy; reappointed May 2014 for a second three-year term)

Elected Member, International Association of Procedural Law

Fulbright Specialist Scholar at the University of Hong Kong Faculty of Law (2016)

Recipient, Oregon Consular Corps Award for Individual Achievement in International Outreach, Portland, Oregon (May 2013)

Associate Reporter, American Law Institute's *Principles of the Law of Aggregate Litigation* (class action project; drafts presented at several annual meetings; final version approved by full ALI in May 2009 annual meeting and published in May 2010)

Fellow, American Academy of Appellate Lawyers

Sustaining Life Fellow, American Bar Foundation

Academic Fellow, Pound Institute

Recipient, 2007 Award for Outstanding UMKC Law Professor (based on vote of 3d year class)

2007 UMKC Law School Commencement Speaker (based on vote of 3d year class)

2

Recipient, 2006 UMKC Law School Elmer Pierson Teaching Award for Most Outstanding Teacher in the Law School (selected by the Dean)

Recipient, 2005 President's Award for Outstanding Service from the UMKC Law School Foundation

Reporter, 2005 National Conference on Appellate Justice (co-sponsored by the Federal Judicial Center, National Center for State Courts, and other organizations)

Co-Recipient, District of Columbia Bar's Frederick B. Abramson Award for Superior Service to the Community (June 1998)

Attorney General's Special Achievement Award for Outstanding Work as an Assistant to the Solicitor General of the United States (1986, 1987)

Attorney General's Special Achievement Award for Outstanding Work as an Assistant United States Attorney (1984, 1985)

The Benjamin N. Cardozo Prize for Best Moot Court Brief for Academic Year 1978-1979, Yale Law School

Semi-Finalist, Moot Court Oral Argument, Yale Law School (Fall, 1978)

Phi Beta Kappa

U.C. Berkeley's Most Outstanding Political Science Student (1976)

The Edward Kraft Award for Outstanding Work as a Freshman Student, U.C. Berkeley (1974)

## MEMBERSHIPS:

U.S. Supreme Court Bar

Various Federal Circuit and District Courts

District of Columbia Bar

Missouri State Bar

Oregon State Bar

Multnomah County Bar

American Law Institute

American Bar Association

American Bar Association Committee on Class Actions & Derivative Suits (Section of Litigation)

**PUBLICATIONS:**

**Books:**

Wright & Miller, *Federal Practice and Procedure* (co-author with sole ongoing responsibility for the three volumes devoted to class actions)

Klonoff, "Objections to Class Action Settlements: Ethical Considerations," chapter in *Class Actions and Other Complex Litigation: Ethics* (Lexis Nexis forthcoming 2025)

Castanias & Klonoff, *Federal Appellate Practice in a Nutshell* (West 3d ed. 2023)

Klonoff, *Introduction to the Study of U.S. Law:  Cases and Materials* (West 2d ed. 2021) (with teacher's manual)

Klonoff, *Class Actions and Other Multi-Party Litigation in a Nutshell* (West 6th ed. 2021)

Klonoff, *Federal Multidistrict Litigation in a Nutshell* (West 2020)

Klonoff, *Class Actions and Other Multi-Party Litigation in a Nutshell* (West 5th ed. 2017)

Castanias & Klonoff, *Federal Appellate Practice in a Nutshell* (West 2d ed. 2017)

Klonoff, *Class Actions and Other Multi-Party Litigation: Cases and Materials* (West 4th ed. 2017) (with teacher's manual)

Klonoff, *Introduction to the Study of U.S. Law: Cases and Materials* (West 2016) (with teacher's manual)

Klonoff, *Class Actions and Other Multi-Party Litigation in a Nutshell* (Thomson West 4th ed.) (2012)

Klonoff, Bilich & Malveaux, *Class Actions and Other Multi-Party Litigation: Cases and Materials* (West 3d ed.) (2012) (with teacher's manual)

Klonoff (associate reporter), *Principles of the Law of Aggregate Litigation*, American Law Institute Publications (2010) (along with Samuel Issacharoff, reporter, and associate reporters Richard Nagareda and Charles Silver)

Castanias & Klonoff, *Federal Appellate Practice and Procedure in a Nutshell* (Thomson West) (2008)

Klonoff & Colby, *Winning Jury Trials:  Trial Tactics and Sponsorship Strategies* (NITA 3d ed.) (2007)

4

Klonoff, *Class Actions and Other Multi-Party Litigation in a Nutshell* (Thomson West 3d ed.) (2007)

Klonoff, Bilich & Malveaux, *Class Actions and Other Multi-Party Litigation: Cases and Materials* (Thomson West 2d ed.) (2006) (with teacher's manual)

Klonoff, *Class Actions and Other Multi-Party Litigation in a Nutshell* (Thomson West 2d ed.) (2004)

Klonoff & Colby, *Winning Jury Trials:  Trial Tactics and Sponsorship Strategies* (Lexis Nexis 2d ed.) (2002)

Klonoff & Bilich, *Class Actions and Other Multi-Party Litigation: Cases and Materials* (West Group 2000)

Klonoff, *Class Actions and Other Multi-Party Litigation in a Nutshell* (West Group 1999)

Klonoff & Colby, *Sponsorship Strategy:  Evidentiary Tactics for Winning Jury Trials* (Michie Co. 1990)

### Articles and Book Chapters:

Klonoff, *Federal Rule of Civil Procedure 23(f): Reflections After a Quarter Century,* 75 Syracuse L. Rev. __ (forthcoming 2025)

Klonoff, *COVID-19 Aggregate Litigation:  The Search for the Upstream Wrongdoer,* 91 Fordham L. Rev. 385 (2022)

Klonoff, *3M's Bankruptcy Maneuver Raises Issues for Justice System* (Law 360, Aug. 11, 2022)

*Francis McGovern: The Consummate Facilitator, Teacher, and Scholar*, 84 Law & Contemporary Problems 1 (2021) (co-author)

Klonoff, *International Handbook on Class Actions,* chapter on the Future of U.S. Aggregate Litigation, Cambridge University Press (2021)

Klonoff, *The Judicial Panel on Multidistrict Litigation:  The Virtues of Unfettered Discretion*, 89 UMKC L. Rev. 1003 (2021)

Klonoff, *Class Action Objectors: The Good, the Bad, and the Ugly*, 89 Fordham L. Rev. 475 (2020)

Klonoff, *Foreword—Class Actions, Mass Torts, and MDLs:The Next 50 Years*, 24 Lewis & Clark Law Review 359 (2020)

*Application of the New Discovery Rules in Class Actions: Much Ado About Nothing,* 71 Vanderbilt L. Rev. 1949 (2018)

*Class Actions in the U.S. and Israel: A Comparative Approach*, 19 Theoretical Inquiries in the Law 151 (2018) (co-author)

*Class Actions Part II: A Respite from the Decline*, 92 N.Y.U. L. Rev. 971 (2017)

*The Remedy For Election Fraud Is A New Election,* Law 360 (July 20, 2017) (www.law360.com/whitecollar/articles/946569/the-remedy-for-election-fraud-is-a-new-election)

*Class Actions in the Year 2025: A Prognosis*, 65 Emory L.J. 1569 (2016)

*Why Most Nations Do Not Have U.S.-Style Class Actions*, 16 BNA Class Action Litigation Report, Vol. 16, No. 10, at 586 (May 22, 2015) (selected for presentation at the May 2015 World Congress of the International Association of Procedural Law, Istanbul, Turkey)

*Federal Rules Symposium:  A Tribute to Judge Mark R. Kravitz -- Introduction to the Symposium*, 18 Lewis & Clark L. Rev. 583 (2014) (co-author)

*Class Actions for Monetary Relief Under Rule 23(b)(1)(A) and (b)(1)(B):  Does Due Process Require Notice and Opt-Out Rights?*, 82 Geo. Wash. L. Rev. 798 (2014)

*The Decline of Class Actions,* 90 Wash. U. (St. Louis) L. Rev. 729 (2013)

*Reflections on the Future of Class Actions,* 44 Loy. U. Chi. L.J. 533 (2013)

*Richard Nagareda: In Memorium,* 80 U. Cin. L. Rev. 289 (2012)

*Introduction and Memories of a Law Clerk,* 47 Houston L. Rev. 529, 573 (2010)

*ALI's Aggregate Litigation Project Has Global Impact,* 33 ALI Reporter 7 (Fall 2010)

Book Review, *In the Public Interest,* 39 Env. Law 1225 (2009)

*The Public Value of Settlement,* 78 Fordham L. Rev. 1177 (2009)(co-author)

*Making Class Actions Work:  The Untapped Potential of the Internet,* 69 U. Pitt. L. Rev. 727 (co-author)(2008), adapted and published in 13  J. Internet Law 1 (2009)

*The Class Action Fairness Act:  An Ill-Conceived Approach to Class Settlements*, 80 Tul. L. Rev. 1695 (co-author) (2006)

*The Twentieth Anniversary of* Phillips Petroleum v. Shutts, *Introduction to the Symposium*, 74 UMKC L. Rev. 433 (2006)

*The Adoption of a Class Action Rule:  Some Issues for Mississippi to Consider*, 24 Miss. C. L. Rev. 261 (2005)

*Antitrust Class Actions:  Chaos in the Courts*, 11 Stan. J. L. Bus. & Fin. 1 (2005), reprinted in Litigation Conspiracy:  An Analysis of Competition Class Actions (Stephen G.A. Pitel ed. Irwin Law 2006), and 3 Canadian Class Action Review 137 (2006)

*The Judiciary's Flawed Application of Rule 23's "Adequacy of Representation" Requirement*, 2004 Mich. St. L. Rev. 671 (2004)

*Class Action Rules — Are They Driven by Substance?*, 1 Class Action Litigation Report 504 (Nov. 10, 2000) (co-author)

*Response to May 2000 Article on Sponsorship Strategy*, 63 Tex. B.J. 754 (Sept. 2000) (co-author)

*A Look at Interlocutory Appeals of Class Certification Decisions Under Rule 23(f)*, 1 Class Action Litigation Report 69 (May 12, 2000) (co-author)

*The Mass Tort Class Action Gamble*, 7 Metro. Corp. Counsel 1, 8 (Aug. 8, 1999) (co-author)

"Legal Approaches to Sex Discrimination" (co-author), in H. Landrine & E. Klonoff, *Discrimination Against Women: Prevalence, Consequences, Remedies* (Sage Pub. 1997)

*Sponsorship Strategy:  A Reply to Floyd Abrams and Professor Saks*, 52 Md. L. Rev. 458 (1993) (co-author)

*A Trial Lawyer's Roadmap for Handling Bad Facts:  The Role of Credibility*, 16 Trial Diplomacy Journal 139 (July/Aug. 1993) (co-author)

*Opening Statement*, 17 Litigation 1 (ABA Spring 1991) (co-author)

Contributing Editor, *Criminal Practice Institute Trial Manual*, Young Lawyers Section, Bar Ass'n of D.C. (1986)

*The Congressman as Mediator Between Citizens and Government Agencies:  Problems and Prospects*, 15 Harv. J. Legis. 701 (1979)

*A Dialogue on the Unauthorized Practice of Law*, 25 Villanova L. Rev. 6 (1979) (co-author)

*The Problems of Nursing Homes:  Connecticut's Non Response*, 31 Admin. L. Rev. 1 (1979)

**SIGNIFICANT LEGAL EXPERIENCE:**

Argued eight cases before the U.S. Supreme Court

Authored dozens of U.S. Supreme Court filings (certiorari petitions, certiorari oppositions, merits briefs, reply briefs)

Briefed and argued numerous cases before various U.S. circuit and district courts and state trial and appellate courts

Tried dozens of cases (primarily jury trials)

Handled more than 100 class action cases as co-counsel, including *TransUnion v. Ramirez* (U.S. Supreme Court) and *In re National Prescription Opiate Litigation* (Sixth Circuit)

Served as an expert witness in numerous class action and other aggregate cases, including *NFL Concusssion, BP Deepwater Horizon, Wells Fargo Fraudulent Accounts, Volkswagen Clean Diesel, Parkland Shooting (Civil Litigation), Equifax Data Breach, JUUL Consumer Litigation,* and numerous others (*see* Appendix B, *infra*, for a sample list of courts citing my testimony)

Worked extensively with testifying and consulting experts on class action issues, including economists, securities experts, medical and scientific experts, and leading academics

Presented more than 100 cases to the grand jury while serving as an Assistant U.S. Attorney

Handled hundreds of sentencing hearings, preliminary hearings, and probation revocation hearings

**SIGNIFICANT TEACHING AND SPEAKING ENGAGEMENTS**

Speaker, Texas Tech School of Law MDL Judicial Summit, Aspen, Colorado (June 3, 2024)

Speaker, Private Law Course, Comparative (U.S./French) Aggregate Litigation, The Sorbonne Faculty of Law, Paris, France (November 6, 2023)

Speaker, Faculty Symposium, Comparative (U.S./South African) Aggregate Litigation, Stellenbosch University Faculty of Law, Stellenbosch, South Africa (October 26, 2023)

Bartlett Lecture Series, U.S. District Court, W.D. Mo., Kansas City, Mo. (June 30, 2023)

Speaker, Baylor MDL Judicial Summit, Aspen, Colorado (June 19, 2023)

Speaker, Navy JAG Corps Training on Litigation Strategy, Coronado, CA (May. 27, 2023)

Moderator, Panel on Federal Multidistrict Litigation, Duke University School of Law, Durham, North Carolina (May 25, 2023)

Speaker on Henrietta Lacks Case for Symposium, Southern University, Baton Rouge, LA (March 14, 2023)

Speaker on Multidistrict Litigation and Moderator on Case Management  Breakout Session, Mass Tort MDL Certificate Program, Bolch Judicial Institute, Duke University School of Law (Nov. 7, 2022) (held remotely)

Speaker on Class Actions and Moderator of Class Actions Breakout Session, 2022 Transferee Judges' Conference (approximately 125 federal judges), the Breakers, Palm Beach, Fla. (Nov. 1, 2022)

Speaker, Class and Aggregate Litigation in Europe and North America, New York University School of Law's Campus in Florence, Italy (July 8, 2022)

Speaker and Co-Organizer, McGovern Symposium on Civil Litigation, Duke University School of Law, Durham, North Carolina (May 27, 2022)

Moderator of Panel, Advanced MDL Certificate Program, Duke University School of Law, Durham, North Carolina (May 26, 2022)

Speaker, The Jewish Influences, Life & Legacy of Justice Ruth Bader Ginsburg, Cardozo Society of Washington State and Philadelphia Brandeis Society (April 5, 2022) (held remotely)

Panelist, Mass Torts/Bankruptcy Conference, Fordham University School of Law, New York, New York (Feb. 25, 2022)

Speaker on the Legacy of Justice Ruth Bader Ginsburg (held remotely), Temple Beth Sholom Synagogue, Salem Oregon (June 27, 2021)

Panel Moderator, Mass-Tort MDL Bench-Bar Conference (held remotely), George Washington University Law School, Washington, D.C. (June 10, 2021)

Speaker on Class Actions (held remotely), Oregon Association of Defense Counsel, Portland Oregon (May 20, 2021)

Speaker on Class Actions and Multidistrict Litigation (held remotely), South Ural State University Institute of Law, Chelyabinsk, Russia (April 8, 2021)

Speaker on Class Actions and Multidistrict Litigation (held remotely), Northwestern Pritzker School of Law, Complex Litigation Seminar, Chicago, Illinois (March 31, 2021, and again on March 30, 2022)

Speaker on Multidistrict Litigation, Class Actions, and the *Volkswagen Clean Diesel* Case (held remotely), Bahcesehir University, Istanbul, Turkey (July 15, 2020)

Speaker, Multidistrict Litigation Conference (held remotely), Emory University School of Law, Atlanta, Georgia (June 19, 2020)

Speaker, Class Action Conference, Fordham Law Review and the Institute for Law & Economic Policy, New York, New York (Feb. 27-28, 2020)

Keynote Speaker, Harold Schnitzer Spirit of Unity Peace Leadership Award Ceremony, Salem, Oregon (Nov. 20, 2019).

Conference Chair and Participant, 2019 Symposium on Class Actions and Aggregate Litigation, Pound Civil Justice Institute and Lewis & Clark Law School, Portland, Oregon (Nov. 1-2, 2019).

Speaker, International Class Actions Conference, Vanderbilt Law School, Nashville, Tennessee (Aug. 23, 2019)

Keynote Speaker, Pound Civil Justice Institute, Aggregate Litigation in State Court: Conference of State Court Appellate Judges, San Diego, California (July 27, 2019)

Visiting Professor of Law, University of Bologna School of Law, Ravenna, Italy (July, 2019) (faculty member for summer program on Transnational Torts)

Visiting Professor of Law, University of Trento School of Jurisprudence, Trento, Italy (May, 2019) (taught Introduction to U.S. Law)

Visiting Professor of Law, Royal University of Law and Economics, Phnom Penh, Cambodia (April 2019)

Speaker, Impact Fund Class Action Conference, San Francisco, California (Feb. 22, 2019)

Speaker on Class Actions, 17th Annual Impact Fund Class Action Conference, San Francisco, California (Feb. 23, 2019)

Visiting Professor of Law, National Taiwan University, Taipei, Taiwan (December 2018) (taught course on U.S. Class Actions)

Speaker on the National Football League Concussion case, National Taiwan University, Taipei, Taiwan (December 20, 2018)

Speaker on Class Actions, Live Webinar Broadcast, Rule 23 Will Be Amended in Four Days: Are You Ready, American Bar Association (Nov. 27, 2018)

Speaker, American Bar Association's 22d Annual Institute on Class Actions, Chicago, Illinois (Oct. 18, 2018)

Speaker, MDL at 50 –The 50th Anniversary of Multidistrict Litigation, New York University School of Law, New York, New York (Oct. 12, 2018)

Visiting Professor of Law, University of Bologna School of Law, Ravenna, Italy (July 2018) (faculty member for environmental law program; lectured on environmental class actions)

Speaker on Class Actions, Freie University Faculty of Law, Berlin, Germany (June 26, 2018)

Visiting Professor of Law, Royal University of Law and Economics, Phnom Penh, Cambodia (April 2018) (taught course on Introduction to United States Law)

Co-Chair, Moderator, and Panelist, Posner on Class Actions, Columbia Law School, New York, New York (March 2, 2018)

Panelist on Civil Discovery, Vanderbilt University School of Law, Nashville, Tennessee (October 13, 2017)

Panelist on the Civil Rules Committee Process, University of Arizona College of Law, Tucson, Arizona (October 7, 2017)

Visiting Professor of Law, University of Bologna School of Law, Ravenna, Italy (July 2017) (faculty member for environmental law program; lectured on environmental class actions)

Visiting Professor of Law, University of Trento School of Jurisprudence, Trento, Italy (May 2017) (taught course on Introduction to U.S. Law)

Panelist on Class Actions, Beard Group, Class Action Money and Ethics Conference, New York, New York (May 1, 2017)

Visiting Professor of Law, Tel Aviv University, Tel Aviv, Israel (January 2017) (taught course on class actions)

Panelist on Class Actions, Tel Aviv University, Fifty Years of Class Actions – A Global Perspective (January 4, 2017)

Panelist on Class Actions, New York University Law School Conference on Rule 23@50, New York, New York (December 2, 2016)

Panelist on Class Actions, Appellate Judges Education Institute, Philadelphia, Pennsylvania (November 11, 2016)

Speaker on Class Actions, National Legal Aid Defender Association National Farmworker Conference, Indianapolis, Indiana (November 10, 2016)

Panelist on Class Actions, American Bar Association Class Action Institute, Las Vegas, Nevada (October 20, 2016)

Panelist, Duke University Law School Conference on Class Action Settlements, San Diego, California (October 6, 2016)

Fulbright Scholar, Hong Kong University School of Law (August- September 2016) (taught course on class actions and delivered campus-wide lecture on criminal procedure)

Visiting Professor of Law, National Taiwan University, Taipei, Taiwan (June 2016) (taught course on Introduction to United States Law)

Speaker on Class Actions, University of Zagreb Law School, Zagreb, Croatia (May 11, 2016)

Panelist on Civil Litigation, Association of American Law Schools Annual Meeting, New York, New York (January 8, 2016)

Visiting Professor of Law, Bahçeşehir University School of Law, Istanbul, Turkey (December 2015) (taught Introduction to United States Law)

Participant, Conference on Civil Justice (Pound Institute) Emory University Law School, Atlanta, Georgia (October 15, 2015)

Participant, Conference on Class Actions, Duke Law School, Arlington, Virginia (July 23-24, 2015)

Participant, Conference on Class Actions, Defense Research Institute, Washington, D.C. (July 23-24, 2015)

Participant, Civil Procedure Workshop, Seattle University Law School, Seattle, Washington (July 17, 2015)

Panelist on Class Actions, Annual Meeting, American Association for Justice, Montreal, Canada (July 12, 2015)

Speaker on Class Actions, International Association of Procedural Law, Istanbul, Turkey (May 28, 2015)

Panelist, Subcommittee on Class Actions of U.S. Judicial Conference Advisory Committee on Civil Rules, American Law Institute Annual Meeting, Washington, D.C. (May 17, 2015)

Moderator, Ethical Issues in Class Actions and Non-Class Aggregate Litigation, American Law Institute Annual Meeting, Washington, D.C., (May 17, 2015)

Visiting Professor of Law, University of Trento School of Jurisprudence, Trento, Italy (March 2015) (taught U.S. Class Actions)

Speaker on Class Actions, European University Institute, Fiesole, Italy (February 23, 2015)

Visiting Professor of Law, University of Notre Dame, Fremantle Australia (January 2015) (taught course on U.S. Civil Rights and Civil Liberties)

Visiting Professor of Law, Universidad Sergio Arboleda, Bogota and Santa Marta, Colombia (December 2014) (taught course on Introduction to United States Law)

Visiting Professor of Law, National Taiwan University, Taipei, Taiwan (November 2014) (taught course on Introduction to United States Law)

Panelist, American Bar Association, National Institute on Class Actions, Chicago, Illinois (October 23, 2014)

Visiting Professor of Law, East China University of Political Science and Law, Shanghai, China (October 2014) (taught U.S. Class Actions)

Visiting Professor of Law, Herzen State Pedagogical University of Russia, St. Petersburg, Russia (September 2014) (taught U.S. Class Actions)

Visiting Professor of Law, Royal University of Law and Economics, Phnom Penh, Cambodia (July 2014) (taught Introduction to United States Law)

Speaker on U.S. Legal Education, Universidad Sergio Arboleda School of Law, Bogota, Colombia (June 3 and 5, 2014)

Speaker on Class Actions, Superintendencia de Industria y Comercio, Bogota, Colombia (June 3, 2014)

Speaker on Class Actions and the Fukushima Nuclear Accident, Waseda University School of Law, Tokyo, Japan (January 24, 2014)

Speaker on Class Actions, Osaka Bar Association, Osaka, Japan (January 23, 2014)

Speaker on Class Actions, East China University of Political Science and Law, Shanghai, China (January 15, 2014)

Speaker on Class Actions, AmCham Shanghai, Shanghai, China (January 14, 2014)

Speaker on Development of Animal Law in the Legal Academy, 2013 Animal Law Conference, Stanford Law School, Palo Alto, California (November 25, 2013)

Speaker on U.S. Law and Legal Education, Royal University of Law and Economics, Phnom Penh, Cambodia (October 1, 2013)

Speaker on U.S. Law and Legal Education, Paññāsāstra University of Cambodia, Phnom Penh, Cambodia (October 1, 2013)

Speaker on U.S. Legal Education, International Association of Law Schools International Deans' Forum, National University of Singapore Law School, Singapore (September 26, 2013)

Speaker on Class Actions, Japan Federation of Bar Associations, Tokyo, Japan (September 19, 2013)

Speaker on Class Actions, Waseda University School of Law, Tokyo, Japan (September 19, 2013)

Speaker on Ethics of Aggregate Settlements, American Association for Justice Annual Meeting, San Francisco, California (July 22, 2013)

Speaker on the British Petroleum Class Action Settlement, International Water Law Conference, National Law University of Delhi, Delhi, India (May 31, 2013)

Speaker on U.S. Supreme Court Confirmation Process, Jewish Federation of Greater Portland's Food for Thought Festival, Portland, Oregon  (April 21, 2013)

Speaker on Class Actions, Class Action Symposium, George Washington University Law School, Washington, D.C. (March 8, 2013)

Speaker on Class Actions, Impact Fund Class Action Conference, Oakland, California (March 1, 2013)

Speaker on Class Actions, Hong Kong University Department of Law (November 15, 2012)

Speaker on Class Actions, Fudan University Law School (Shanghai, China) (November 13, 2012)

Keynote Speaker, National Consumer Law Center Symposium, Seattle, Washington (October 28, 2012)

Speaker, American Bar Association, National Institute on Class Actions, Chicago, Illinois (October 25, 2012)

Speaker, Conference on Class Actions, Washington University St. Louis School of Law and the Institute for Law and Economic Policy (April 27, 2012)

Speaker, Conference on Class Actions, Loyola Chicago School of Law (April 13, 2012)

Panelist on leadership and world peace with Former South African President F.W. De Klerk, University of Portland (February 29, 2012)

Panelist on class actions before the Standing Committee on Rules of Practice and Procedure, Phoenix, Arizona (January 5, 2012)

Speaker on Class Actions Lawsuits in the U.S., University of the Philippines, College of Law, Quezon City, Philippines (August 2011)

Speaker on Environmental Class Actions, Kangwon University Law School, Chuncheon, South Korea (August 2011)

Speaker on Class Actions, Federal Judicial Center Conference on Class Actions, Duke University School of Law (May 20, 2011)

Speaker, Conference on Aggregate Litigation, University of Cincinnati College of Law (April 1, 2011)

Speaker on Class Actions, Seoul National University School of Law (May 18, 2010)

Keynote Speaker (addressing US Supreme Court confirmation process), Alaska Bar Annual Meeting (April 28, 2010)

Speaker, Conference on the Future of Animal Law, Harvard Law School (April 11, 2010)

Speaker, Conference on Aggregate Litigation: Critical Perspectives, George Washington University Law School (Mar. 12, 2010)

Speaker, U.S. Supreme Court Confirmation Process, Multnomah County Bar Association and City Club of Portland, (Sept. 30, 2009)

Speaker on Class Actions, American Legal Institutions, and American Legal Education at National Law Schools of India in Bangalore, Hyderabad, Calcutta, Jodhpur, and Delhi (August 2009)

Speaker, China/U.S. Conference on Tort and Class Action Law, Renmin University of China School of Law, Beijing, China (July 11-12, 2009)

Speaker on Class Actions, Southeastern Association of Law Schools annual meeting, Palm Beach, Florida (August 1, 2008)

Speaker on Class Actions, National Foundation for Judicial Excellence (meeting of 150 state appellate court judges), Chicago, Illinois (July 12, 2008)

Speaker on Class Actions, Practising Law Institute, New York, NY (July 10, 2008)

Speaker at Conference on Class Actions in Europe and North America, sponsored by New York University School of Law, the American Law Institute, and the European University Institute, Florence, Italy (June 13, 2008)

Speaker on Class Actions at the American Bar Association Tort and Insurance Section Meeting, Washington, D.C. (Oct. 26, 2007)

Speaker on Antitrust Class Actions at the American Bar Association's Annual Antitrust Meeting, Washington D.C. (April 18, 2007)

Chair, Organizer, and Moderator of Class Action Symposium at UMKC School of Law (April 7, 2006) (other speakers (26 in all) included, *e.g.*, Professors Arthur Miller,

Edward Cooper, Sam Issacharoff, Geoffrey Miller, and Linda Mullenix, as well as several prominent federal judges and practicing lawyers)

Speaker on Class Actions, Missouri CLE (Nov. 18, 2005)

Speaker on Class Actions, Practising Law Institute (July 29, 2005)

Speaker on Class Actions, Kansas CLE (June 23, 2005)

Speaker on Class Actions at Bureau of National Affairs Seminar on the Class Action Fairness Act of 2005 (June 17, 2005)

Visiting Lecturer on Class Actions, Peking University (May 30-June 3, 2005)

Speaker on Oral Argument, American Bar Association 2005 Section of Litigation Annual Conference (April 22, 2005) (part of panel including Second Circuit Chief Judge Walker and several others)

Speaker on Class Actions, Federal Trade Commission/Organization for Economic Co-operation and Development, Workshop on Consumer Dispute Resolution and Redress in the Global Marketplace (April 19, 2005)

Speaker at Antitrust Class Action Symposium, University of Western Ontario College of Law (April 1, 2005)

Speaker at Class Action Symposium, Mississippi College of Law (February 18, 2005)

Speaker on Class Actions, Practising Law Institute (July 30, 2004)

Visiting Lecturer on Class Actions, Peking University (June 2004)

Visiting Lecturer on Class Actions, Tsinghua University (June 2004)

Speaker at Class Action Symposium, Michigan State University (April 16-17, 2004)

Speaker on U.S. Supreme Court advocacy, David Prager Advanced Appellate Institute (Kansas City Metropolitan Bar Association) (Feb. 27, 2004)

Speaker on Class Actions, Institute of Continuing Legal Education in Georgia (Oct. 24, 2003)

Speaker on Class Actions, Practising Law Institute (July 31, 2003)

Speaker on Class Actions, Practising Law Institute (Aug. 5, 2002)

Speaker on Class Actions, Practising Law Institute (Aug. 16, 2001)

Speaker on many occasions throughout the country on "Sponsorship Strategy"  (1990-present)  and advocacy before the U.S. Supreme Court (1988-present)

## OTHER PROFESSIONAL ACTIVITIES:

Member of American Bar Association Group Evaluating Qualifications of Merrick Garland to serve on the U.S. Supreme Court (reviewed Judge Garland's civil procedure opinions)

Member, Editorial Board of International Journal of Law in a Changing World (South Ural University, Chelyabinsk, Russia)

Board Member, The Judge John R. Brown Scholarship Foundation

Advisory Board, The Flawless Foundation (an organization that serves troubled children)

Member, Board of Directors, Citizens' Crime Commission (Portland, Oregon) (2007-2011)

Advisory Board Consulting Editor, *Class Action Litigation Report* (BNA)

Served on numerous UMKC School of Law committees, including Programs (Chair), Promotion and Tenure, Appointments, and Smith Chair Appointment

Chair of pro bono program for all 27 offices of Jones Day (2000-2004); also previously Chair of Washington office pro bono program (1992-2003)

Member, Board of Directors, Bread for the City (a D.C. public interest organization providing medical, legal, and social services) (2001-2003)

Master, Edward Coke Appellate Practice Inn of Court in Washington, D.C. (other participants include Ted Olson, Seth Waxman, Ken Starr, Walter Dellinger, and several sitting appellate judges) (2001-2003)

Member, Board of Directors, Washington Lawyers' Committee for Civil Rights and Urban Affairs (2000-2003); Advisory Board Member (2003-present)

Member, D.C. Court of Appeals Committee on Unauthorized Practice of Law (1997-2000)

Handled and supervised numerous pro bono matters (*e.g.*, death penalty and other criminal defense, civil rights, veterans' rights)

Played a major role in establishing a walk-in free legal clinic in Washington, D.C.'s Shaw neighborhood

## VOLUNTEER WORK:

Numerous guest speaker appearances at public schools and retirement homes; volunteer at local soup kitchen; volunteer judge for Classroom Law Project.

## APPENDIX A

## SAMPLE LIST OF COURT AND ACADEMIC CITATIONS TO PROFESSOR KLONOFF'S SCHOLARSHIP

**Court Citations:**

*In re Jefferson Parish*, No. 23-30243, __ F4th __, 2023 WL 5445822 at *12 (5th Cir. Aug. 24, 2023);

*Wolff v. Aetna Life Ins. Co.*, 77 F.4th 164, 167 n.1 (3d Cir. 2023);

*Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 & n.18 (3d Cir. 2018);

*In re National Football League Players' Concussion Injury Litig.*, 775 F.3d 570, 576 (3d Cir. 2014);

*Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014) (Posner, J.);

*In re Johnson*, 760 F.3d 66, 75 (D.C. Cir. 2014);

*Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 468 (1st Cir. 2013);

*Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002).

**Academic Citations:**

J. Maria Glover, *Mass Arbitration*, 74 STAN. L. REV. 1283, 1291 (2022);

Andrew Faisman, *The Goals of Class Actions*, 121 COLUM. L. REV. 2157, 2159 n. 8 (2021);

Abbe R. Gluck & Elizabeth Chamblee Burch, *MDL Revolution*, 96 N.Y.U. L. REV. 1, 60 (2021);

Pamela K. Bookman, *The Arbitration–Litigation Paradox*, 72 VAND. L. REV. 1119, 1143 n.146 (2019);

Zachary D. Clopton, *National Injunctions and Preclusion*, 118 MICH. L. REV. 1, 34 n. 203 (2019);

Libby Jelinek, *The Applicability of the Federal Rules of Evidence at Class Certification*, 65 UCLA L. REV. 280, 286 n.27, 291 n.65, 297 n.101, 316 n.206 (2018);

Fred O. Smith, Jr., *Abstention in the Time of Ferguson*, 131 HARV. L. REV. 2283, 2346 n. 507 (2018);

Andrew D. Bradt & D. Theodore Rave, *The Information-Forcing Role of the Judge in Multidistrict Litigation*, 105 CAL. L. REV. 1259, 1269 n. 47 (2017);

Brian T. Fitzpatrick, *Justice Scalia and Class Actions: A Loving Critique*, 92 NOTRE DAME L. REV. 1977, 1979 (2017);

Maureen Carroll, *Class Action Myopia*, 65 DUKE L.J. 843, 846 n.8, 876–78 & nn.181, 183 & 190–93, 881 nn.211 & 213, 883 n.225 (2016);

Robert G. Bone, *The Misguided Search For Class Unity*, 82 GEO. WASH. L. REV. 651, 654 n.6 (2014);

David Freeman Engstrom, *Private Enforcement's Pathways: Lessons From Qui Tam Litigation*, 114 COLUM. L. REV. 1913, 1920 n.17 (2014);

Thomas O. Main, *The Fourth Era of American Civil Procedure*, 162 U. PA. L. REV. 1839, 1853 n.80 (2014);

Arthur R. Miller, Keynote Address, *The Preservation and Rejuvenation of Aggregate Litigation: A Systemic Imperative*, 64 EMORY L.J. 293, 294 n.7 (2014);

Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 COLUM. L. REV. 149, 151 n.5 (2003).


## APPENDIX B

## SAMPLE LIST OF COURT CITATIONS TO PROFESSOR KLONOFF'S EXPERT TESTIMONY

*Syngenta MIR 162 Corn* MDL litigation:

> *In re Syngenta AG MIR 162 Corn Litig.,* 357 F. Supp. 3d 1094, 1112 (D. Kan. 2018), *aff'd.*, *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1257 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1022 (2023);

> *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 6839380, at *4 (D. Kan. Dec. 31, 2018) (accepting Klonoff testimony over contrary testimony by five other law professors), *aff'd.*, *Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1257 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1022 (2023).

*Zakikhani v. Hyundai Motor Co.*, No. 8:20-cv-01584-SB-JDE, at *1 (C.D. Ca. May 5, 2023) (Doc. 160);

*Githieya v. Global Tel Link Corp.*, No. 1:15-cv-00986-AT (N.D. Ga. Aug. 30, 2022) (Doc. 369);

19

*In re Broiler Chicken Antitrust Litig.*, 2021 U.S. Dist. LEXIS 228367, at *47 n.4, *49–50 & n.5 (N.D. Ill. Nov. 30, 2021);

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, No. 20-10249, 2021 WL 2250845 (11th Cir. June 3, 2021);

*Wells Fargo Unauthorized Accounts* litigation: *Jabbari v. Wells Fargo & Co.*, No. 15-cv-02159-VC, slip op. at 14 (N.D. Cal. June 14, 2018).

*Volkswagen Clean Diesel* MDL (numerous citations):

> *In re Volkswagen "Clean Diesel" Marketing, Sales Practices & Prod. Liab. Litig.*, No. 3:15-md-02672-CRB, 2016 WL 6248426, at *18, *19, *20 (N.D. Cal. Oct. 25, 2016), *aff'd*, 895 F.3d 597 (9th Cir. 2018);

> Order Granting Final Approval of the Consumer and Reseller Dealership 3.0-Liter Class Action Settlement, at *21, *24, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 2212783 (N.D. Cal. May 17, 2017) (Doc. No. 3229);

> Order Granting Final Approval of the Bosch Class Action Settlement, at *18, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 2212780 (N.D. Cal. May 17, 2017), *aff'd*, 746 F. App'x 655 (9th Cir. 2018) (Doc. No. 3230).

*In re Deepwater Horizon* (more than 60 cites to Klonoff testimony):

> *In re Deepwater Horizon*, 910 F. Supp. 2d 891, 903, 914–16, 918–21, 923–24, 926, 929–33, 938, 941, 947, 953, 955, 960, 962 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir. 2014);

> *In re Deepwater Horizon*, 295 F.R.D. 112, 133–34, 136, 138–41, 144–45, 147 (E.D. La. 2013);

> Order and Reasons, Case No. 2:10-md-02179-CJB-JCW, *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, on April 20, 2010, 2:10MD02179 (E.D. La. Feb. 15, 2017) (Doc. No. 22252);

*AT&T Mobility* MDL litigation:

> *In re AT&T Mobility Wireless Data Serv. Sales Tax Litig.*, 789 F. Supp. 2d 935, 956–59, 961, 963–65 (N.D. Ill. 2011);

> *In re AT&T Mobility Wireless Data Serv. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1032 n.3, 1034–35, 1037, 1040, 1042 (N.D. Ill. 2011).