# APPENDIX S

# Players Associations' Joint Statement on Legislation Affecting the Rights of College Athletes



**January 18, 2024**

The Major League Baseball Players Association (MLBPA), Major League Soccer Players Association (MLSPA), National Basketball Players Association (NBPA), National Football League Players Association (NFLPA), and National Hockey League Players Association (NHLPA) ("Players Associations") represent the players in the five major professional sports in the United States. We write today to express our thoughts and concerns about legislation the Committee is considering which would affect the rights of college athletes, many of whom will someday be members of our Associations.

Each Association is governed by an Executive Board of Player Representatives who are elected directly by their fellow players. Collectively, we have over 200 years of experience serving the interests of our athlete members. Our sole focus is establishing, enforcing, and advancing the rights and benefits of athletes, thousands of whom are no older than the college athletes whose rights are being discussed at this week's Subcommittee hearing. Since the early days of the Players Associations, our work on behalf of athletes has expanded and diversified exponentially. While our core function remains to negotiate and enforce the collective bargaining agreements which set terms and conditions of employment such as wages, hours, and working conditions, for years we have also represented our athlete members at the forefront of issues that relate directly to the legislation currently under consideration by the Subcommittee on Innovation, Data, and Commerce. These issues include:

- Player Name, Image, and Likeness ("NIL")
- Rights of publicity
- Individual & group licensing agreements
- Athlete corporate sponsorships

- Collection, protection & monetization of athletes' performance data
- TV broadcasting
- Enhanced access TV programming
- Monetization of social media
- Sports betting
- Regulation of player agents & agencies

The issues now before the Subcommittee are intimately familiar to the Players Associations. We have decades of experience in protecting athletes' rights in NIL-related matters, and we write to express significant concerns with the "discussion draft" of the FAIR College Sports Act that was recently released.

### Any federal intervention aimed at "Protecting Athletes' Dealmaking Rights" must actually place athletes' interests first.

It is imperative that any legislation advanced by the Subcommittee act to protect and advance athletes' rights. There are several ways that federal NIL legislation can be tailored to achieve such ends:

- **Keep It Simple:** Any legislation should simply prohibit the NCAA and other related entities from denying athletes the right to profit from their NIL, consistent with existing laws, as a condition of their athletic participation.
- **Prohibit Lifetime Contracts:** Any legislation should ensure NIL contracts signed during an athlete's college eligibility do not interfere with the athlete's NIL rights and freedom to contract after their college eligibility has expired.
- **Create Additional Safeguards from Predatory Contracts**: Any legislation should establish safeguards against predatory NIL contracts and specifically prohibit contracts that entitle third parties to receive a percentage of a college athlete's future earnings (in college or beyond).
- **Protect International Athletes:** Any legislation should establish that international college athletes receive the same protections and can utilize their NIL rights in the same manner as their teammates.

**Reinforce, and Do Not Eliminate, Existing Protections:** Any legislation that seeks to standardize NIL rules should include the strongest possible protections against unauthorized commercial use of NIL, and any federal right of publicity should act as a baseline standard that state law is permitted to exceed. As explained in more detail below, NIL legislation purporting to protect athletes should not be used as a trojan horse to nullify athletes' legal rights or status.

### Legislation that is meant to protect college athletes should under no circumstances eliminate or diminish their rights under contract, tort, antitrust, and/or labor laws.

The Players Associations have a strong interest in protecting all athletes against illegal exploitation by third parties. Our interest applies not just to the college athletes who will one day become our members, but to all collegiate athletes and indeed to athletes of all ages. For this reason, we continue to closely monitor the college NIL bills which are or will be under consideration in both the House and Senate, including the FAIR College Sports Act. The Players Associations are deeply concerned that what was once a narrowly tailored legislative draft has

recently morphed into a wide-ranging permission slip for the NCAA to continue exploiting the very individuals that the FAIR College Sports Act is meant to protect.

For months, the drafts of the FAIR College Sports Act have been silent on the NCAA's well- publicized campaign to secure legislative immunity from antitrust laws, labor laws, and other state and federal worker protections. Recently, however, provisions have been added that would appear to, in the stroke of a pen, nullify thousands of athletes' rights under important and long-standing federal and state antitrust laws, tortious interference laws, and laws prohibiting unfair competition. (1)

Equally concerning, the updated bill also prevents college athletes from being considered employees of a school, a conference, or the NCAA, thereby stripping them of a wide range of rights and benefits that arise under federal and state laws that protect workers. For the reasons explained below, the Players Associations unequivocally oppose the NCAA immunity and employee-status prohibition recently added in Sections 201 and 301 of the draft of the FAIR College Sports Act.

While no one could credibly dispute that the NCAA finds itself enmeshed in multiple high- stakes lawsuits, these and past lawsuits illustrate that it is athletes, not the NCAA, who have been improperly exploited. And it is the NCAA, not athletes, or Congress for that matter, who bears the responsibility to effect change going forward. This is apparent from a multitude of court decisions that have attacked the NCAA's policies and practices. Consider Supreme Court Justice Kavanaugh's recent observation (in his concurring opinion in *NCAA v. Alston*) that "the NCAA's business model would be flatly illegal in almost any other industry in America."(2) It is also apparent from the words and deeds of important NCAA stakeholders. Look no further than University of Michigan Head Football Coach Jim Harbaugh, a recent national championship coach and former college athlete himself, who recently remarked of the NCAA's restrictions on athlete compensation: "the thing I would change about college football is, to let the talent share in the ever-increasing revenues…**we're all robbing the same train**."(3) To the extent that the FAIR College Sports Act's newly inserted liability carve-out might in any way enable the NCAA or other entities to "continue robbing the same train," that provision should be removed in its entirety.

So too should the Subcommittee excise any bill language that prevents college athletes from being deemed employees or that otherwise blocks their right to organize and collectively bargain.

- First, despite the NCAA's self-serving protests to the contrary, the nature scope, and economic value of the work performed by college athletes fits the definition of an employee under relevant federal and state laws. (4)
- Second, even if one accepts for argument's sake that collegiate athletics will implode without some form of antitrust immunity or limitation of liability, treating college athletes as employees with the right to unionize and collectively bargain is actually the most direct, fairest, legally recognized, and repeatedly proven way to accomplish this goal. Many, if not all, of the unilaterally implemented policies that have put the NCAA in its billion-dollar bind would be legal if they were instead negotiated via good faith collective bargaining with a Players Association, consistent with existing law. (5)

- Finally, and perhaps most importantly, Congress should not only reject all efforts to preemptively strip college athletes of employee status, it should proactively take up recently introduced legislation that moves in the opposite direction by codifying college athletes' right to organize and collectively bargain. (6) As even university officials and others associated with the NCAA are beginning to recognize, collective bargaining is the best way to offer the athletes a true seat at the table. (7) Moreover, collective bargaining can also ensure that players' voices are heard on critical non- economic issues such as: health and safety, work hours, travel, diagnosis and treatment of work-related injuries, assessment of concussions and return to play protocols, health benefits, mental health resources, post-playing medical benefits, anti-bullying and hazing policies, and sports betting policies (to name just a few).

In sum, we implore the Subcommittee to focus on protecting college athletes' dealmaking rights, as the title of today's hearing suggests. Any bill it advances should do so with no strings attached. Enactment of even the most player-friendly NIL regulations imaginable will represent an entirely pyrrhic victory if lawmakers simultaneously nullify athletes' rights under antitrust laws, labor laws, or any other federal or state laws that protect other adults in the American workforce.

**Tony Clark**
Executive Director
Major League Baseball Players Association

**Martin J. Walsh**
Executive Director
National Hockey League Players Association

**Andre Iguodala**
Executive Director
National Basketball Players Association

**Bob Foose**
Executive Director
Major League Soccer Players Association

**Lloyd Howell**
Executive Director
National Football League Players Association

---

1 Steve Berkowitz, *NCAA President Charlie Baker to appear at legislative hearing addressing NIL*, USA Today (Jan. 11, 2024) (*available at* https://www.usatoday.com/story/sports/college/2024/01/11/ncaa-president- charlie-baker-congressional-hearing-on-nil/72191813007/)
2 *NCAA v. Alston*, 141 S. Ct. 2141, 2167 (2021) (Kavanaugh, J. concurring)

3 Tara Suter, *Michigan coach Jim Harbaugh suggests college athletes unionize after championship win*, The Hill (Jan. 9, 2024) (emphasis added) (*available at* https://thehill.com/homenews/education/4393414- michigan-harbaugh-college-athletes-unionize-championship-nil/)

4 Joshua Hernandez, *The Largest Wave in the NCAA's Ocean of Change: the 'College Athletes are Employees' Issue Reevaluated*, 33 Marq. Sports L. Rev. 781 (2023); Marc Edelman, Michael McCann, and John Holden, *The Collegiate Employee-Athlete*, Univ. of Ill. L. Rev. (2023) (*available at* https://ssrn.com/abstract= 4360802); Robert McCormick & Amy McCormick, *The Myth of the Student-Athlete: The College Athlete as Employee*, 81 Wash. L. Rev. 72 (2006); *see also* NLRB General Counsel Memorandum 21-08, *Statutory Rights of Players at Academic Institutions (Student-Athletes) Under the National Labor Relations Act*, (Sept. 29, 2021) (*available at* https://apps.nlrb.gov/link/ document.aspx/09031d458356ec26); Milly Harry, *A Reckoning for the Term "Student Athlete,"* Diverse (Aug. 26, 2020) (*available at* https://www.diverseeducation.com/sports/article/15107633/a-reckoning-for-the-term-student-athlete)

5 Dan Papscun, *For NCAA's Antitrust Woes, Athlete Unions Pose Ironic Solution*, Bloomberg Law (Aug. 6, 2021) (*available at* https://news.bloomberglaw.com/daily-labor-report/for-ncaas-antitrust-woes-athlete- unions-pose-ironic-solution)

6 *See* Sen. Chris Murphy, Press Release (Dec. 6, 2023) (*available at* https://www.murphy.senate.gov/ newsroom/press-releases/ with-support-from-major-labor-unions-and-players-associations-murphy- sanders-warren-reintroduce-legislation-to-strengthen-college-athletes-collective-bargaining-rights)

7 Joe Moglia, *Is College Athletics Ready to Take on Players Unions?*, Sportico (Dec. 13, 2023) (*available at* https://www.sportico.com/personalities/executives/2023/college-athletics-players-unions-joe-moglia-1234755725/); Shehan Jeyarajah, *Notre Dame AD calls for collective bargaining rights for college athletes: 'I think it's worth considering,'* (Oct. 17, 2023) (*available at* https://www.cbssports.com/college- football/news/notre-dame-ad-calls-for-collective-bargaining-rights-for-college-athletes-i-think-its-worth- considering/); *see also* Suter, *supra* note 3 (Harbaugh: athletes] would be bad. If people aren't gonna do [what's right] out of their own goodwill...that's probably the next step.")