# APPENDIX T

HOME

LAW

ANALYSIS

# CONGRESS TO CONSIDER BILL DECLARING COLLEGE ATHLETES ARE NOT EMPLOYEES



BY MICHAEL MCCANN

June 12, 2024 2:38pm



**U.S. Rep. Bob Good (R-Va.) is sponsoring the bill, which will test the NCAA's existential wager.** PHOTO BY ANNA MONEYMAKER/GETTY IMAGES

The U.S. House of Representatives Education and the Workforce Committee will hold a markup hearing Thursday that will test the NCAA's existential wager: If the NCAA agrees college athletes should be paid to play, will Congress agree those athletes aren't employees?

The committee will examine **H.R. 8534**, dubbed the "Protecting Student Athletes' Economic Freedom Act." The bill would deny college athletes the chance to be declared

employees of their colleges, conference or the NCAA. Since labor law requires that union members be employees, H.R. 8534 would also prevent college athletes from unionizing.

In recent years the NCAA has lobbied Congress to pass legislation declaring college athletes are not employees. It has done so while the law has shifted in the other direction. In February, NLRB regional director Laura Sacks **declared** the 15 men's basketball players at **Dartmouth College** are school employees within the meaning of the National Labor Relations Act. Those players then voted to **unionize** through the Service Employees International Union Local 560. Dartmouth has thus far refused to bargain with these employees and is hoping the agency's board will find the players are not employees.

ADVERTISEMENT

Meanwhile, an administrative law judge in Los Angeles could find that USC football and men's and women's basketball players are employees of their school, conference and the NCAA. Also, in *Johnson v. NCAA*, the players **argue** they are employees within the meaning of the Fair Labor Standards Act, a federal law requiring employers to pay overtime pay and minimum wage—including for work-study students employed by colleges.

NCAA president **Charlie Baker** hopes that **reaching** an agreement with attorneys for players to settle three **antitrust** cases (*House v. NCAA, Carter v. NCAA* and *Hubbard v. NCAA*) will earn the NCAA goodwill in Congress. If approved, the $2.7 billion settlement will pay athletes for earnings they could have made for the commercial use of their name, image and likeness, video games and broadcasts had NCAA rules permitted such payments.

It would also reorganize college sports so that colleges can pay athletes to play.

In a statement released to the media Wednesday, the Power Five conferences urge the committee to support H.R. 8534. "Protecting student-athletes' status as students, not employees, is vital for preserving athletic and educational opportunities," the conferences insist. "Categorizing student-athletes as employees of their institutions would cause harm to the future viability of many college sports programs, particularly women's and Olympic sports."

Thursday's markup hearing, which can be **watched online** beginning at 10:45 a.m. ET, will feature debate over nine bills, including "the Promoting Responsible Oversight to Eliminate Communist Teachings (PROTECT) for Our Kids Act" and "the Combating the Lies of Authoritarians in School Systems (CLASS) Act." Members will consider whether to recommend each bill for a vote by the House. Debate will include discussion about possible changes and amendments.

ADVERTISEMENT

There are many reasons to believe H.R. 8534 faces long odds. Over the past decade, college sports federal legislation has netted bold headlines but produced no results.

To that point, members of Congress from both parties have introduced bills that would regulate NIL and, in the context of college sports, health care, revenue sharing and employment. While these bills have drawn the attention of journalists and, in some cases,

procured interesting hearings, none has advanced out of committee.

H.R. 8534 also lacks bipartisan support, at least currently.

U.S. Rep. Bob Good, a Republican from Virginia and a former senior associate athletics director at Liberty University, is the sponsor, and 10 co-sponsors are Republicans, too. Given that both the House and Senate are so narrowly divided—the House **has** 218 Republicans and 213 Democrats while the Senate **has** 47 Democrats, four independents who caucus with the Democrats, and 49 Republicans—legislation that lacks support from both parties faces a daunting path.

President Biden might also veto legislation like H.R. 8534 should it arrive at his desk. Biden is a strong supporter of union rights and his pick for NLRB general counsel, Jennifer Abruzzo, is one of the most **outspoken advocates** of college athletes as employees. Given Biden's much-publicized **problems** attracting the youth vote, he might be particularly disinclined to sign a bill that would prevent 18-to-22 year olds from gaining employment and unionizing.

SEIU legislation director John Gray submitted a letter to the committee Wednesday urging members "in the strongest possible terms to vote no on this bill." Gray emphasized Abruzzo's advocacy for college athletes' rights and said H.R. 8534 would take the choice of Dartmouth basketball players to unionize "away from them and nullify their election victory."

Election years are also known to slow the legislative process. Members spend more time away from D.C. in their districts to attract votes, hold fundraisers and work as surrogates for other campaigns.

There's also the fact that while the NCAA and power conferences have reached an agreement on a settlement term sheet with attorneys representing players, there is (1) no settlement yet as **many key details** need to be ironed out; (2) U.S. District Judge Claudia Wilken has **not yet approved** a settlement; and (3) there could be opt-outs, objectors and

impacted athletes and schools who challenge the settlement at the U.S. Court of Appeals for the Ninth Circuit or in separate litigation.

Members might also view the antitrust settlement as reason to *oppose* H.R. 8534.

The settlement calls for colleges to directly pay college athletes in a salary cap model that includes revenue sharing. In other words, this looks a lot like a pro league, with athletes paid to play.

This new world is in stark odds with previous NCAA admonitions that paying college athletes would destroy amateurism and morph college sports into minor league sports. Members might wonder why they should strip college athletes of the potential for employment status when the NCAA's chosen path forward contemplates college athletes resembling pro athletes.

The bill also carries legal risk for the NCAA.

In a world where college athletes can't unionize, NCAA rules regulating college athlete compensation would continue to face potential antitrust lawsuits. The only way the NCAA can preempt antitrust litigation would be through the non-statutory labor exemption. The exemption reflects U.S. Supreme Court decisions holding that when management and labor negotiate rules impacting wages, hours and other terms of employment, those terms are exempt from antitrust scrutiny. Although a settlement can resolve antitrust litigation, it can't immunize the NCAA from antitrust lawsuits.

Although H.R. 8534 would declare college athletes are not employees under under federal or state law, it does not contain a preemption clause and its declaration that college athletes are not employees is prefaced by "notwithstanding any other provision of Federal or State law."

Should college athletes be deemed employees in a state, colleges in that state would likely gain a recruiting advantage. That, in turn, could incentivize other states to make the same determination. The same mentality led to a sudden flood of states overthrowing NCAA rules

and approving NIL legislation when it became evident that California's 2019 NIL law could give schools in that state a leg up in attracting top athletes.

Even if H.R. 8534 passed the House and Senate and Biden signs it into law, the legislation could be challenged in court.

*Sportico* has obtained a **letter** Paul McDonald, co-counsel for the plaintiffs in *Johnson*, sent this week to the chiefs of staff and legislative directors for the committee's 44 members.

McDonald warns that since H.R. 8534 singles out college athletes "to be denied the same hourly employee status, rights and pay as fellow students in Work Study-style program," he believes it violates Equal Protection guaranteed in the U.S. Constitution.

As he **explores in *Johnson***, which is currently before the U.S. Court of Appeals for the Third Circuit, McDonald insists college athletes meet criteria for hourly employee status within the meaning of the FLSA more than classmates employed in work study. Work study students, some of whom attend college on academic scholarships, are paid minimum wage when they collect game tickets and sell hot dogs and beverages to fans in stadiums. They are under the supervision and control of the college while performing these non-academic tasks. Work study students also fill out timesheets.

McDonald argues college athletes are in the same basic situation: They are supervised while performing non-academic tasks for their school (i.e., playing sports and the various responsibilities that carries) and are required by NCAA rules to fill out timesheets.

"When two groups of students are functionally the same," McDonald writes, "no law can deny one group protections afforded the other."

McDonald also urges committee staffers to weigh a lingering question: "What is a financially sustainable way of fairly compensating all College Athletes in compliance with Title IX?"

He contends the answer is simple. "Use NCAA-required timesheets," he writes, "to fold College Athletes into existing Work Study-style programs and pay them comparable hourly wages."

(This story has been updated with a statement from the SEIU in the 13th paragraph and a clarification of the limits of H.R. 8534 in the 21st paragraph.)

RELATED STORY

# NLRB's College Athlete Rulings to Face Election Fallout

**READ MORE ABOUT:**
antitrust
charlie baker
dartmouth college
employee rights
ncaa legal issues

ADVERTISEMENT