# EXHIBIT A

**Question and Answer:  Impact of the Proposed Settlement on Current Division I Student-Athletes**
**(December 13, 2024)**

The NCAA, Atlantic Coast Conference, Big Ten Conference, Big 12 Conference, Pac-12 Conference and Southeastern Conference entered into a proposed settlement with the plaintiffs in the *House, Hubbard* and *Carter* cases which has been preliminarily approved.  The initial question-and-answer document on the impact of the proposed settlement on Division I schools is available [here](#).

This document focuses on the interaction of the settlement with student-athletes if approved by the court.  The lawyers representing the student-athlete class have established [www.collegeathletecompensation.com](http://www.collegeathletecompensation.com) as their source of information about the case, the damages award allocation, and the overall settlement.

This document is not exhaustive and will be supplemented and updated as needed.

**Question No. 1**:  Will all student-athletes receive name, image and likeness (NIL) payments from their school?

**Answer**:  Whether a school provides payment for the use of a student-athlete's NIL is a decision between student-athletes and their school.

**Question No. 2**:  If a school provides additional benefits or NIL payments, will all student-athletes at a particular school or on a particular team receive the same amount of NIL payments or benefits from the school?

**Answer**:  Schools may provide additional benefits, including payments for use of NIL, to some, all or none of their student-athletes for use of their NIL.  Benefits may vary by student-athlete, team or otherwise.

**Question No. 3**:  Is a student-athlete's athletics scholarship guaranteed?

**Answer**:  The proposed settlement does not alter any of the scholarship guarantees that became effective August 1, 2024.  With the new scholarship protections, schools cannot reduce, cancel or fail to renew athletics scholarships in NCAA sports for athletics reasons (such as injury, physical or mental illness, athletic ability or performance, contribution to team success or roster management decisions).  These requirements continue to apply regardless of any roster management decisions unless and until the student-athlete in question graduates or elects to transfer.   The settlement also provides additional protections for scholarships that could otherwise be affected by changes in roster limits.

**Question No. 4**:  Is a student-athlete's roster spot guaranteed?

**Answer**: No. As has always been true, schools have complete discretion whether to include a student-athlete on a particular team.  Schools that choose to opt-in to the settlement by providing additional benefits, including additional scholarships or payments for use of NIL, are bound by set roster sizes.  Decisions related to those available roster spots are up to the school, regardless of whether a school provides additional benefits or NIL payments.

**Question No. 5**:  Do student-athletes need to disclose all NIL agreements?

**Answer**:  If the settlement is approved, all NIL deals whether with a school or third-party will need to be disclosed.  Student-athletes must disclose all NIL agreements with third parties if the involved payment(s) exceed $600 in total.  Schools are responsible for disclosing any additional payments or benefits provided under the settlement.

**Question No. 6**:  May student-athletes sign an NIL agreement with anyone?

**Answer**:  Yes.  Depending on who the agreement is with, the considerations below may apply:

- **A student-athlete's school (including any entity owned operated or controlled by the school):**  The total amount of NIL money provided to all student-athletes by a school or one of its entities must not exceed the annual pool amount allowed for each school.

- **Third parties who are "associated entities or individuals" (that is, certain boosters and all collectives):**  These entities and individuals may engage in NIL agreements with student-athletes only if the NIL money is paid for a valid business purpose to promote goods and services provided to the general public for profit, with payments at fair market value rates, consistent with existing NCAA rules.  These assessments will be subject to challenge in a new neutral arbitration system.

- **Third parties who are not considered "associated entities or individuals":** Agreements with other third parties are permissible and not subject to further review but must be disclosed if payments exceed $600 in total.

**Question No. 7**:  How do student-athletes know if an individual or company is an "associated individual or entity"?

**Answer**:  The settlement defines "associated entities or individuals." Your school, your agent or representative, the individual or company and counsel representing student-athletes in this case will be able to assist you in determining an individual's or company's status consistent with the terms of the settlement.

**Question No. 8**:  Who determines whether the money provided by an associated entity or individual is at a fair market rate?

**Answer**:  Once the settlement is approved, student-athletes will be provided instructions on where to submit all third-party NIL contracts over $600.  If any NIL agreements involving associated entities and individuals are deemed impermissible, student-athletes will have the opportunity to challenge that decision through a new neutral arbitration system.  If the decision is upheld by the

Q&A Impact of the Proposed Settlemet on
 Current DI Student-Athletes
December 13, 2024
Page No. 3

_____

neutral arbitrator, the student-athlete and the associated entity or individual will be given an opportunity to renegotiate their agreement.

**Question No. 9**: What can schools do to help student-athletes find NIL opportunities?

**Answer**: In addition to paying student-athletes for use of their NIL consistent with the terms of the settlement, schools can help find outside opportunities and provide services to support student-athletes in their search for NIL opportunities as long as student-athletes maintain final authority (such as, determining terms of agreement, deciding whether to accept or reject NIL agreement) over all NIL opportunities.

**Question No. 10**: Can student-athletes sign NIL agreements with schools *AND* outside third parties?

**Answer**: Yes. Student-athletes can also agree to sign exclusive NIL agreements with schools if the school offers exclusive NIL agreements. Student-athletes should work with their agent or representative and their school to learn of any school-specific requirements for NIL agreements.

**Question No. 11**: Are there any other restrictions on schools that student-athletes should be aware of?

**Answer**: Schools may not make any payments for NIL agreements prior to July 1, 2025, and all offers must be contingent on final approval of the settlement. Schools also may not enter into NIL agreements with student-athletes that extend past the time of a student-athlete's eligibility, other than for the continuing use of any content that was created during a student-athlete's eligibility.

**Question No. 12**: Where can student-athletes go if they have questions about participation in the settlement?

**Answer**: Student-athletes with questions about the settlement should visit www.collegeathletecompensation.com.

**Question No. 13**: Where can student-athletes go if they have questions about the Division I NIL environment?

**Answer**: Student-athletes can visit www.nilassist.ncaa.org for a registry of professional service providers, a dashboard outlining Division I NIL landscape and education on NIL-related topics.