Steven F. Molo (*pro hac vice*)
Eric A. Posner (*pro hac vice*)
Thomas J. Wiegand (*pro hac vice*)
Elizabeth K. Clarke (*pro hac vice*)
Bonnie St. Charles (*pro hac vice* pending)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL  60654
smolo@mololamken.com
eposner@mololamken.com
twiegand@mololamken.com
eclarke@mololamken.com
bstcharles@mololamken.com
(312) 450-6700

Lois S. Ahn (*pro hac vice*)*
MoloLamken LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
lahn@mololamken.com
(202) 556-2000

*Admitted only in New York; practice limited to matters before federal courts and federal agencies*

William J. Cooper (CA Bar No. 304524)
Natalie Cha (CA Bar No. 327869)
Conrad | Metlitzky | Kane LLP
217 Leidesdorff Street
San Francisco, CA  94111
wcooper@conmetkane.com
ncha@conmetkane.com
(415) 343-7100

Alexandra C. Eynon (*pro hac vice*)
Catherine Martinez (*pro hac vice*)
Pratik K. Ghosh (*pro hac vice* pending)
Swara Saraiya (*pro hac vice*)
Sara Tofighbakhsh (*pro hac vice*)
MoloLamken LLP
430 Park Avenue
New York, NY  10022
aeynon@mololamken.com
cmartinez@mololamken.com
prajghosh@mololamken.com
ssaraiya@mololamken.com
stofighbakhsh@mololamken.com
(212) 607-8160

*Counsel for Objectors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**OBJECTORS' PARTIAL OPPOSITION TO JOINT MOTION FOR APPROVAL OF ADDITIONAL SETTLEMENT CLASS COMMUNICATIONS**<br><br>Hon. Claudia Wilken |

**INTRODUCTION**

When this Court denied preliminary approval of the original settlement agreement, it noted, "taking . . . things away from people is usually not too popular." Dkt. 525 ("Hr'g Tr.") at 71:17-18. The Amended Settlement Agreement does just that. It proposes roster limits that deprive thousands of student-athletes the opportunity to compete in sports they love. The proposed question-and-answer document ("Q&A") provides misleading and incomplete information on the harm the proposed roster limits inflict. Accordingly, this Court should reject it and require a fair and accurate Q&A.

**BACKGROUND**

**Roster Limits**

The National Collegiate Athletic Association ("NCAA") does not currently impose any rules on team roster sizes. Instead, it imposes scholarship limits per sport at each school. *See* Dkt. 535-2 at 70, art. 4 § 1. The Amended Settlement replaces scholarship limits with roster limits. *Id.* at 129-33 (Appendix B). The roster limits set a maximum team size for each sport, and permit schools to "unilaterally" reduce the number of sports offered. *Id.* at 133.

Many of the roster limits drastically reduce the roster sizes currently maintained for many sports. For example, cross country rosters often exceed thirty or more runners, but the Amended Settlement decreases those to seventeen.[1] To comply with the roster limits, schools must cut players from existing teams, limit incoming recruits, and eliminate walk-ons. The result is a dramatic decrease in the total number of roster spots across ***all*** college sports, whether or not athletes earn a scholarship.

The roster limits already have inflicted harm. Anticipating them, schools have cut student-athletes from teams. Student-athletes have flooded the transfer portal, making finding a new team

---

[1] Ross Dellenger, *Historic House-NCAA Settlement Leaving Hundreds of Olympic Sport Athletes in Peril*, Yahoo! Sports (Oct. 25, 2024), https://bit.ly/3DnSGum.

1

often challenging.[2]  Dedicated high school students who toiled to play in college have had promised roster spots rescinded.  And because they had already committed to a school, they have been foreclosed from pursuing opportunities to play for another.[3]  Thousands of student-athletes who honored one set of rules are seeing their lives upended and dreams shattered because another set of rules is being arbitrarily forced on them.

Students and parents have pleaded with the Court to reject the Amended Settlement's roster limits.  *See* Dkts. 573, 574, 575, 579.  Numerous other student-athletes and parents have contacted Objectors' counsel to express their concerns about the roster limits, and Objectors' counsel have shared this with Class Counsel.  *See* Ex. A.  The parties are well aware of the damage caused by roster limits.  But they've chosen not to mitigate this awful situation.

**The Proposed Q&A**

The parties address roster limits in their proposed Q&A.  Dkt. 581-1.  It reads:

> Question No. 4:  Is a student-athlete's roster spot guaranteed?
>
> Answer:  No.  As has always been true, schools have complete discretion whether to include a student-athlete on a particular team.  Schools that choose to opt-in to the settlement by providing additional benefits, including additional scholarships or payments for use of NIL, are bound by set roster sizes.  Decisions related to those available roster spots are up to the school, regardless of whether a school provides additional benefits or NIL payments.

*Id.* at 1.

## ARGUMENT

Absent class members cannot make informed decisions about a class action unless they "'receive accurate and impartial information regarding the status, purposes ***and effects*** of the class action.'"  *Chalian v. CVS Pharmacy, Inc.*, No. 2:16-CV-8979-AB-AGR, 2020 WL

---

[2] Eddie Pells, *Roster Limits in College Small Sports Put Athletes on Chopping Block While Coaches Look for Answers*, Associated Press (Nov. 12, 2024), https://bit.ly/3P4xigj ("*Athletes on Chopping Block*").

[3] Dan Murphy and Michael Rothstein, *Pending NCAA Settlement, Roster Limits Pose National Signing Day Uncertainty*, ESPN (Nov. 11, 2024), https://bit.ly/49QQEiO ("*National Signing Day Uncertainty*").

2

OBJECTORS' PARTIAL OPPOSITION TO JOINT MOTION FOR APPROVAL
OF ADDITIONAL SETTLEMENT CLASS COMMUNICATIONS
CASE NO. 4:20-CV-03919-CW

7347866, at *3 (C.D. Cal. Oct. 30, 2020) (emphasis added) (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985)). Parties "may not give 'false, misleading, or intimidating information, conceal material information, or attempt to influence'" class members' decisions to "'request exclusion'" from a certified class. *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010). Misleading communications to class members "pose a threat to the fairness of the litigation process, the adequacy of representation and the administration of justice." *In re Apple Inc. Device Performance Litig.*, No. 18-MD-02827-EJD, 2018 WL 4998142, at *4 (N.D. Cal. Oct. 15, 2018). "[O]missions and failure to provide enough information" are enough to render class communications misleading. *Astra USA, Inc.*, 2010 WL 2724512, at *3. The proposed Q&A does just that.

**The Proposed Q&A Is Misleading**

Question No. 4 misleadingly implies that schools' discretion is ***currently*** bound by set roster sizes under NCAA rules. It is not. The ***Amended Settlement*** imposes those boundaries. This incomplete Q&A "'will surely result in confusion'" among potential Class Members and must be corrected. Dkt. 581 ("Mot.") at 3 (quoting *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980)).

Posing the question—"Is a student-athlete's roster spot guaranteed?"—is ***itself*** misleading. The issue is not whether roster spots are guaranteed. The issue is whether the Amended Settlement changes the availability of roster spots. The parties would rather not answer that question, so they have proposed answering a carefully crafted softball instead.

It is not true that schools will continue to have "complete" discretion about "whether to include a student-athlete on a particular team." Dkt. 581-1 at 1. The Amended Settlement will replace schools' ***prior*** "complete" discretion to select team rosters with ***limited*** discretion. Any Division I school that opts in to the Amended Settlement ***may not choose*** to honor preexisting written or verbal "guarantees" regarding a current or prospective student-athlete's roster spot. The Amended Settlement requires teams to cut from ***somewhere***—either their existing athletes,

future athletes, or, more likely, both. The proposed Q&A therefore omits the most important information about how the Amended Settlement changes the state of play for countless student-athletes.

**The Q&A Should Be Corrected**

Question No. 4 must be corrected to provide Class Members with fair and accurate information about the Amended Settlement. Objectors propose modifying it as follows, with proposed additions in bold underline, and deletions in strikethrough:

> Question No. 4: **If a school has guaranteed me a roster spot, am I at risk of losing that spot because of the settlement?** ~~Is a student-athlete's roster spot guaranteed?~~
>
> Answer: ~~No. As has always been true, s~~**Yes. Under current rules, schools** have complete discretion **about how many student-athletes to include on a particular team, and schools may have as many student-athletes on their teams as they choose**. **Under the settlement, that will no longer be the case.** Schools that choose to opt-in to the settlement by providing additional benefits, including additional scholarships or payments for use of NIL, ~~are~~ **will be** bound by set roster sizes **established by the NCAA. They may have to cut existing student-athletes from teams.** ~~Decisions related to those available roster spots are up to the school, regardless of whether a school provides additional benefits or NIL payments~~.

This proposed modification accurately reflects the effect of the Amended Settlement. It will aid "potential Class Members in making informed decisions regarding the pending Settlement if approved." Mot. at 3.

## CONCLUSION

Objectors respectfully request that, if the Court enters an Order approving publication of the parties' proposed Q&A, the Court correct Question No. 4 prior to publication as described herein.

4

OBJECTORS' PARTIAL OPPOSITION TO JOINT MOTION FOR APPROVAL
OF ADDITIONAL SETTLEMENT CLASS COMMUNICATIONS
CASE NO. 4:20-CV-03919-CW

Dated: December 20, 2024

Respectfully submitted,

/s/ William J. Cooper
William J. Cooper (CA Bar No. 304524)
Natalie Cha (CA Bar No. 327869)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111

/s/ Steven F. Molo
Steven F. Molo (*pro hac vice*)
Eric A. Posner (*pro hac vice*)
Thomas J. Wiegand (*pro hac vice*)
Elizabeth K. Clarke (*pro hac vice*)
Bonnie St. Charles (*pro hac vice* pending)
MOLOLAMKEN LLP
300 N. LaSalle Street
Chicago, IL 60654

Alexandra C. Eynon (*pro hac vice*)
Catherine Martinez (*pro hac vice*)
Pratik Raj Ghosh (*pro hac vice* pending)
Swara Saraiya (*pro hac vice*)
Sara Tofighbakhsh (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022

Lois S. Ahn (*pro hac vice*)*
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037

*Admitted only in New York; practice limited to matters before federal courts and federal agencies*

*Counsel for Objectors*