# EXHIBIT A

**Question and Answer:  Impact of the Proposed Settlement on Current Division I Student-Athletes**
**(December 23, 2024)**

The NCAA, Atlantic Coast Conference, Big Ten Conference, Big 12 Conference, Pac-12 Conference and Southeastern Conference entered into a proposed settlement with the plaintiffs in the *House, Hubbard* and *Carter* cases which has been preliminarily approved.

This document focuses on the interaction of the settlement with student-athletes if approved by the court.  The lawyers representing the student-athlete classes have established www.collegeathletecompensation.com as their source of information about the case, the damages award allocation, and the overall settlement.  Student-athletes are encouraged to go to that website to obtain more information about the settlement (including a copy of the settlement agreement itself) and/or obtain the contact information of the lawyers representing the student-athlete classes, who can answer questions about the settlement.

The lawyers representing the student-athlete classes and Defendants have agreed upon the answers in this document and the Court has approved their distribution.  This document is not exhaustive and will be supplemented and updated as needed.

**Question No. 1**:  Will all student-athletes receive name, image and likeness (NIL) payments from their school?

**Answer**:  Whether a school provides payment for the use of a student-athlete's NIL is a decision between student-athletes and their school.

**Question No. 2**:  If a school provides additional benefits or NIL payments, will all student-athletes at a particular school or on a particular team receive the same amount of NIL payments or benefits from the school?

**Answer**:  Schools may provide additional benefits, including payments for use of NIL, to some, all or none of their student-athletes for use of their NIL.  Benefits may vary by student-athlete, team or otherwise.

**Question No. 3**:  Is a student-athlete's athletics scholarship guaranteed?

**Answer**:  The proposed settlement does not alter any of the scholarship guarantees that became effective August 1, 2024.  With the new scholarship protections, schools cannot reduce, cancel or fail to renew athletics scholarships in NCAA sports for athletics reasons (such as injury, physical or mental illness, athletic ability or performance, contribution to team success or roster management decisions).  These requirements continue to apply regardless of any roster management decisions unless and until the student-athlete in question graduates or elects to transfer.

**Question No. 4**:  Is a student-athlete's roster spot guaranteed?

**Answer**:  No. Schools have discretion whether to include a student-athlete on a particular team.  Schools that choose to opt-in to the settlement will be bound by set roster sizes.  Decisions related to those available roster spots will be up to the school, regardless of whether a school provides additional benefits or NIL payments.

Q&A Impact of the Proposed Settlement on
 Current DI Student-Athletes
December 23, 2024
Page No. 2

_____

**Question No. 5**: Do student-athletes need to disclose all NIL agreements?

**Answer**:  If the settlement is approved, all NIL deals whether with a school or third-party will need to be disclosed.  Student-athletes must disclose all NIL agreements with third parties if the involved payment(s) exceeds $600 in total.  Schools are responsible for disclosing any additional payments or benefits provided under the settlement.

**Question No. 6**: May student-athletes sign an NIL agreement with anyone?

**Answer**: Yes.  Depending on who the agreement is with, the considerations below may apply:

- **A student-athlete's school (including any entity owned, operated or controlled by the school):** The total amount of NIL money provided to all student-athletes by a school or one of its entities must not exceed the annual pool amount allowed for each school.

- **Third parties who are "associated entities or individuals" (that is, certain boosters and all collectives):** These entities and individuals may engage in NIL agreements with student-athletes only if the NIL money is paid for a valid business purpose to promote goods and services provided to the general public for profit, with payments at fair market value rates, consistent with existing NCAA rules.  These assessments will be subject to challenge in a new neutral arbitration system.

- **Third parties who are not considered "associated entities or individuals":** Agreements with other third parties are permissible and not subject to further review but must be disclosed if payments exceed $600 in total.

**Question No. 7**: How do student-athletes know if an individual or company is an "associated individual or entity"?

**Answer**:  The settlement defines "associated entities or individuals." Your school, your agent or representative, the individual or company and counsel representing student-athletes in this case will be able to assist you in determining an individual's or company's status consistent with the terms of the settlement.

**Question No. 8**:  Who determines whether the money provided by an associated entity or individual is at a fair market rate?

**Answer**: If the settlement is approved, student-athletes will be provided instructions on where to submit all third-party NIL contracts over $600.  If any NIL agreements involving associated entities and individuals are deemed impermissible by the designated enforcement entity, student-athletes will have the opportunity to challenge that decision through a new neutral arbitration system.  If the decision is upheld by the neutral arbitrator, the student-athlete and the associated entity or individual will be given an opportunity to renegotiate their agreement.

**Question No. 9**: What can schools do to help student-athletes find NIL opportunities?

**Answer**: In addition to paying student-athletes for use of their NIL consistent with the terms of the settlement, schools can help find outside opportunities and provide services to support student-athletes in their search for NIL opportunities as long as student-athletes maintain final authority (such as, determining terms of agreement, deciding whether to accept or reject NIL agreement) over all NIL opportunities.

**Question No. 10**: Can student-athletes sign NIL agreements with schools *AND* outside third parties?

**Answer**: Yes. Student-athletes can also agree to sign exclusive NIL agreements with schools if the school offers exclusive NIL agreements. Student-athletes should work with their agent or representative and their school to learn of any school-specific requirements for NIL agreements.

**Question No. 11**: Are there any other restrictions on schools that student-athletes should be aware of?

**Answer**: Schools may not make any payments for NIL agreements prior to July 1, 2025, and all offers must be contingent on final approval of the settlement. Schools also may not enter into NIL agreements with student-athletes that extend past the time of a student-athlete's eligibility, other than for the continuing use of any content that was created during a student-athlete's eligibility.

**Question No. 12**: Where can student-athletes go if they have questions about participation in the settlement?

**Answer**: Student-athletes with questions about the settlement should visit www.collegeathletecompensation.com. Student-athletes may also contact the lawyers who represent the student-athlete classes or the settlement administrator. Their contact information can be found on the case website.

**Question No. 13**: Where can student-athletes go if they have questions about the Division I NIL environment?

**Answer**: Student-athletes can visit www.nilassist.ncaa.org for a registry of professional service providers, a dashboard outlining Division I NIL landscape and education on NIL-related topics.

**Question No. 14**: What is the correct way for student-athletes to express their objections to the settlement, if any?

**Answer**: If you disagree with any aspect of the settlement, you may send a letter to the Court that is postmarked no later than January 31, 2025, in which you provide reasons in writing why you think the Court should not approve the settlement. More information about how to submit written objections to the Court can be found on the notice for the settlement, a copy of which can be accessed on the case website, www.collegeathletecompensation.com.

**Question No. 15**: Can the Court change the terms of the settlement agreement?

**Answer:** The Court can only approve the settlement or deny approval of the settlement. The Court cannot change the terms of the settlement. If the Court denies approval, the lawsuits will continue. Student-athletes are encouraged to access a copy of the notice for the settlement for more information, which can be found on the case website.