Kwame Etwi
NCAA ECID: 1310507733
ketwi15@gmail.com
32341 Cypress Enclave Lane
Spring, TX 77386

12/27/2024

**Judge Wilken**
United States District Court
Northern District of California

**FILED**

JAN -6 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

**Re:** In re: College Athlete NIL Litigation, Case No. 4:20-cv-03919

**Dear Judge Wilken,**



My name is Kwame Etwi, and I am a former football player for Texas A&M University (TAMU) in College Station during 2015-2019. I am writing to formally contest the criteria for the damage class regarding the Broadcast NIL (BNIL) portion of the House v. National Collegiate Athletic Association settlements, specifically the Football and Men's Basketball Class.

The definition of this class is as follows:

"All current and former college athletes who have received full Grant-in-Aid (GIA) scholarships and compete on, or competed on, a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), at any time between June 15, 2016, and the date of the class certification order in this matter."

I contest the criteria because it unfairly excludes athletes like me who had Division 1 offers but chose to play at a more dominant school and, despite making significant contributions to their teams, did not receive a full GIA scholarship from their chosen school. As a preferred/priority walk-on, meaning I did not have to try out for the team, I played in over 20 games, was on the active roster, and traveled as a first- or second-string player to every game except one due to injury throughout my collegiate career. My contributions included participating in media interviews and representing the university in ways that were comparable to, if not exceeding, some scholarship players who did not actively participate on the field. Despite my efforts and sacrifices, I am not eligible for any compensation under the current criteria.

It is particularly disheartening that the current criteria prioritizes scholarship status over actual contributions to the team. Medically retired players who may have never stepped on the field, as well as players who never played a single snap, are awarded tens of thousands of dollars solely because they received a scholarship. Meanwhile, athletes like me, who actively contributed on the field throughout our entire collegiate careers and bore the financial burden of tuition, receive nothing. This exclusion dismisses the value of on-field contributions and creates an inequity that fails to recognize the sacrifices and commitments of active roster walk-on athletes who met the same demands, adhered to the same rigorous schedules, and upheld the same standards as scholarship athletes.

I respectfully urge the court to reconsider the criteria for the damage class to include athletes who actively participated and contributed to their teams, regardless of scholarship status. The

argument for limiting the class to full scholarship athletes assumes that scholarship status equates to guaranteed participation or greater contribution, which is not always the case. Only including full scholarship athletes assumes that these individuals would have been guaranteed a spot on any team in an alternative world where compensation rules were different. However, this assumption unfairly marginalizes walk-ons who proved their value through measurable contributions on the field. In fact, participating in games at a Power Five institution arguably demonstrates greater guaranteed contribution to broadcast value than scholarship status alone, as these conferences command the largest television audiences and media rights deals. The focus on full scholarship athletes also ignores the fundamental reality of broadcast revenue—<u>only players who appear in games generate value through media exposure</u>. Athletes like myself, who chose to attend more competitive programs and actively contributed, should not be excluded simply because we bore the financial burden of tuition rather than receiving institutional aid.

By implementing or adding an alternative criterion, such as an in-game participation threshold measured by games played or appearances on the active roster—a straightforward and easily verifiable measure—the settlement could more accurately and equitably reflect the contributions of all athletes while still maintaining a clear and objective standard for eligibility. This approach would address the imbalance created by the current criteria and honor the true impact of those who committed to their teams on and off the field.

Additionally, I would like to provide evidence to support my case. Below are links to official records and statistics that detail my active participation and contributions as a member of the Texas A&M University football team:

- Texas A&M Athletics Profile: https://12thman.com/sports/football/roster/kwame-etwi/6432
- ESPN Player Stats: https://www.espn.com/college-football/player/stats/_/id/3917321/kwame-etwi
- Sports-Reference Player Profile: https://www.sports-reference.com/cfb/players/kwame-etwi-1.html

Thank you for your attention to this matter. If applicable, I would like to speak at the final approval hearing to further address these concerns and provide additional context. Should I have the opportunity to speak, I respectfully request to participate electronically via Zoom or any other approved virtual method, as I am located in Texas.

Sincerely,
**Kwame Etwi**