FILED
JAN 27 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

January 20, 2025

The Honorable Judge Claudia Wilken
1301 Clay Street
Oakland, CA 94612

RE: **Proposed Roster Limits** (*House v. NCAA*, Case No. 4:20-cv-03919-CW)

Honorable Judge Claudia Wilken,



It is after much research and thought that I write this letter of objection on behalf of my daughter and all student-athletes and families who are affected by the *proposed roster limits* in *House v. NCAA*, Case No. 4:20-cv-03919-CW. I write this objection anonymously for fear of consequence to my daughter, a student-athlete whose future is now at-risk due to this settlement.

Before detailing the many issues with the proposed roster limits, I want to first note the glaring issues with the House settlement as a whole.

1) A multitude of legal firms and individual lawyers have evidenced that this settlement violates anti-trust and collective bargaining laws, and thus, warrants disapproval on just that merit alone. The cap on earning potential (which many have noted simply replaces an existing cap ($0) with a new cap ($20.5 million), continues to violate student-athletes in the same way. Many articles have already been published on the appeals that will be drafted and advanced through the courts if this settlement is approved, which begs the question of why any party involved would want to push forward incomplete or inadequate terms only to have them further battled and revised (at the expense of thousands of athletes, like those at risk of losing their roster spot, who are collateral damage in the process).

2) Perhaps the largest, most blatant offense is **the lack of representation** of *all* class members and the "back door" deals that were negotiated. Certainly college football and men's basketball have had some voice, but only the top few % even in those categories.

3) It's a major red flag that so many administrators, coaches, athletes, and lawyers have spoken out against this settlement. Even the athletes that were used as plaintiffs in the case have publicly strongly opposed big aspects of the settlement (**i.e., roster limits**) and feel it falls short in providing a long-term fair system for athletes (i.e., the call for representation and collective bargaining ability). It begs the question as to why lawyers pushing the settlement are desperate to ram it through without due diligence on addressing these issues (even with their own plaintiffs and the very members they claim to represent).

4) In addition to multiple private legal experts that have dismantled the credibility of the *House* settlement, the Department of Justice, Department of Education, and the former executive director of the National Basketball Players Association to name a few have all voiced major objections to the *House* settlement. Lawyers associated with the settlement have simply retorted that this settlement can be passed and those issues passed on to the schools, effectively "kicking the can down the road" while they cash in on a doomed-to-fail approach.

5) With regard to Title IX, it has been widely documented that this settlement does not adequately address how Title IX rights will be protected, from the likely slashing of roster spots and entire sports (if this settlement is approved) to revenue sharing. This is yet another detail that shouldn't be disregarded or pushed aside; rather, any settlement should do due diligence in protecting all student-athletes, including women.

6) The <u>legal fees are excessive</u>. Period. This further illustrates that the rights of student-athletes are not a primary concern in this settlement (as it is implied to the public).
7) The *House* settlement fails to meet the "fair," "reasonable," and "adequate" benchmarks required for approval. It is <u>not fair</u> to the vast majority of the members of the class (nor those incoming kids given verbal promises to join a roster only to force colleges to revoke them). It is <u>not reasonable</u> to approve a settlement that has yet to address so many legal issues it, in turn, creates (i.e., Title IX issues, a lack of collective bargaining, anti-trust, etc.). It is <u>not adequate</u> to approve a settlement that is so riddled with holes, with lawsuit drafts already underway for appeal in the case that it is passed. Nor is it adequate to pass something that is short-sighted and only benefits a very small percentage of the people it affects (while creating devastating, irreversible effects to the rest of the students impacted).

Specific to the proposed roster limits, many have voiced dissention and have established strong arguments for why they are unfair, unjust, and a weak, inadequate solution to the NCAA's legal and financial vulnerabilities. Given those arguments have been well-documented, I would like to focus on the need for a better <u>solution</u> that still meets the needs of the NCAA, schools, and student-athletes alike. It's rare to be able to find a win-win-win solution that delivers a fair outcome for all parties involved, but in this instance there is a clear one that meets the needs of all – **delay roster limits until 2027** and delay approval of the settlement until issues noted above are addressed and class members have truly been given a voice in the proposed solution.

While the NCAA and those who seek backpay push solutions based on financial gain and legal advantages, I implore the court to consider that <u>there are real, unrepresented kids and young adults feeling the crushing blows of these proposed changes.</u> My 17 year-old daughter, like so many others, spent more than a decade pursuing her dream to play her sport in college -- thousands of hours and dollars of training, studying, traveling, playing, and investing towards her future and her dreams with a drive and dedication we wish to see in our children. The sacrifices she has made to reach the highest level of her sport have been numerous. It was the happiest moment of her life to get that call and offer from her dream school early last year, coupled with the overwhelming feeling that she had finally achieved her goal; she committed to them on the spot and began taking steps toward her future at this school. What followed were multiple trips to campus, team-bonding events with her future teammates and coaches, media blitzes, and all the celebration that came with such a big accomplishment. In short, <u>she is already emmeshed in this team and already has made academic decisions during this past year to align herself with her degree program at this school</u>. Fast forward to a couple months ago, where she received the most heart-breaking call of her life – from her future coach -- telling her that she does not want to lose her, but that she can no longer guarantee her a spot on the team due to this settlement. *Utter devastation.* Unfortunately, many athletes in the class of 2025 have gotten that call based on the preliminary approval of *the House vs. NCAA* settlement. Again, curious is the fact that the primary plaintiff himself (Grant House) has spoken out <u>against</u> roster limits and noted that aspect was not part of the original settlement discussion. It's as if the settlement evolved away from its original intent of representing the *rights* of student-athletes to prioritizing the financial *needs* of the NCAA and legal teams.

<u>If</u> the *House* settlement is approved (and I'm with the vast chorus of voices who hope it isn't), there is an obvious solution to roster limits not impeding commitments that have already been made between institutions and student-athletes – **a phase-in approach starting with the Class of 2027**, giving institutions and athletes time to prepare and manage future offers accordingly for such a change. Commitments/verbal offers have been made with the Classes of 2025 and 2026, and those in the Class of 2025 will be given notice with no opportunity to react given they are only a few months from graduating. My daughter turned down 3 other offers a year ago (2 of them full scholarships) to accept her current partial scholarship offer at her dream school. Those opportunities are now gone.

Other proposals (like adding a practice squad or grandfathering in only current college athletes) only resolve part of this problem and still force institutions to go back on their commitments to student-athletes; for my daughter, it would completely kill her opportunity and risk her losing the ability to find a new team at all. Ultimately, there is only one solution that makes good on the verbal promises and commitments made, and keeps these student athletes who are mere months away from showing up on campus from losing all they have earned – **delay any roster limit until 2027**. If this is merely about financial risk to the NCAA, another objector proposed signing away her rights to take future legal action. We would welcome that as well. This was never about money for my daughter. She turned down much bigger money when she made her commitment. This is about fulfilling a personal dream while obtaining a top-notch education, and continuing to grow in her leadership and collaborative skills while making an impact in her community through sport.

It is my hope that Your Honor consider the irreversible consequences of approving immediate roster limits on thousands of athletes. This settlement fails to represent so many classes of athletes and it certainly does not represent those immediately impacted by their roster spot being stripped away; rather, it disregards their position entirely. The longer this hangs in limbo, the more their opportunities continue to shrink. Though the settlement decision is set for April, 2025 (one month before high school seniors, like my daughter, graduate), it is my hope that an **earlier decision** will be made about the inclusion of roster limits for 2025. I have yet to see a good argument that they be tacked on to the main settlement terms to begin with (vs. a stand-alone issue to be debated and determined). Ultimately, there is major, widespread harm to imposing these limits immediately, yet there seems to be zero downside to delaying them beyond following through on the promises that have been made to the Classes of 2025 and 2026.

Thank you for your consideration.

Sincerely,

A concerned parent (among the thousands opposed to immediate roster limits)



Honorable Judge Claudia Wilken
1301 [illegible] Street
Oakland, CA 94612

KNOXVILLE TN 37[?]
22 JAN 2025 PM 1

RECEIVED
JAN 27 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

