1

Larry Wright III
7260 York Ave S, Apt 302
Edina, MN, 55435
lowrightiii@gmail.com
651-587-9728
NCAA ECID: 1811355225

**FILED**

JAN 28 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1/23/2025

Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612



Re: *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919

Dear Judge Wilkins,

    My name is Larry Wright III, and I am a former football player at the University of Minnesota between 2019-2022 and a member of the Additional Sports Class, and on behalf of Preferred Walk-Ons (PWOs), or non-scholarship student athletes, I object to the Settlement Damages Class definition, which arbitrarily limits membership to full grant-in-aid (GIA) scholarship student athletes on the Football and Men's Basketball, and Women's Basketball teams.

    The Settlement Damages Class definition fails to account for the contributions of all team members who participated in revenue-generating activities for the NCAA. The exclusion of PWOs, specifically on Football and Men's Basketball, and Women's Basketball teams, unjustly narrows the scope of the class eligible for BNIL recovery in a manner that violates Rule 23 of the Federal Rule of Civil Procedure.

    Moreover, given the court's ruling that injury-in-fact is satisfied by demonstrating the deprivation of the opportunity to receive compensation, PWOs therefore must be included in the damages class as they satisfy the injury-in-fact. They were subjected to the same anticompetitive

restraints and clearly share the same injury as their full GIA scholarship peers. Therefore, I **respectfully urge the court to <u>Deny This Settlement</u> and order the parties to amend the Settlement Damages Class definitions of the Football and Men's Basketball, and Women's Basketball Class to include Preferred Walk-Ons so that all student athletes injured by the Defendants receive compensation.**

## I.   PERSONAL TESTIMONY

In 2018, I was blessed to be offered the opportunity to play football at the University of Minnesota as a Preferred Walk-On before my senior season in high school. I was beyond excited for this opportunity as I always wanted to play football there and I grew up watching the Gophers. I accepted the opportunity to play there and began my collegiate career in the summer of 2019.

Upon arrival, I was informed that I was eligible for a $4,000 U Promise scholarship, a need-based scholarship for University of Minnesota students who demonstrate financial need. However, NCAA rules prohibited me from accepting this scholarship due to their regulations, as it would render me ineligible to compete. This restriction created a financial burden on my family as we now had to pay a large amount of money each semester for me to attend my dream school, along with taking the max amount of student loans out to cover the cost of attendance.

Over the course of three years, I worked hard and steadily moved up the roster as a PWO, earning the respect of coaches and teammates. By my third year, winter 2022, I was competing for a spot in the rotation, with promises of playing time. Despite my progress and dedication to the team, I had to meet with my head coach after spring of 2022 and inform him that I could not stay at the University of Minnesota if I was not put on scholarship, because the financial strain eventually became too great. With my family and I unable to afford the remaining three years of eligibility without any additional financial aid, I was forced to enter the transfer portal in 2022. Within 48 hours I was offered numerous scholarships, and I accepted an offer at Missouri State University to finish my collegiate career.

This experience illustrates how the NCAA's unfair rules greatly harmed my football career at my dream school, but also my finances. With the rules now amended, and no redress for PWOs, it feels like my experiences are overlooked just to save money for an organization who has

demanded academic excellence and athletic performance from student athletes as they profit off their labor. If I was given any form of compensation, scholarship, or now broadcast revenue, I would have finished my football career and graduated at the University of Minnesota in my hometown.

The exclusion of PWOs from the Settlement Damages Class perpetuates these inequities. PWOs were subject to the same NCAA rules and suffered the same harm, yet they are not included in the compensation for this injury. Including PWOs in the Football and Men's Basketball, and Women's Basketball Classes is necessary to ensure fair and equitable relief for all athletes affected by the NCAA's restraints.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23 governs the legal procedure of class actions. Rule 23(a) establishes four prerequisites for class actions:

1. **Numerosity** – the class must be so numerous that joinder of all members is impracticable.
2. **Commonality** – there must be question of law or fact common to the class.
3. **Typicality** – the claims of defenses of the representative parties must be typical of the claims or defenses of the class.
4. **Adequacy** – the representative parties must fairly and adequately protect the interests of the class.

Under the Federal Rule of Civil Procedure Rule 23(b)(3), the proposed class must demonstrate that common questions of law or fact between class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Federal Rule of Civil Procedure Rule 23(c)(1)(C) states that an order that grants or denies class certification may be altered or amended before final judgement.

## III.  ARGUMENT

## A. All Student Athletes Were Subject to the NCAA's Anticompetitive Restraints

The theory of liability in this litigation arises from the NCAA's systematic and anticompetitive restraints of BNIL and NIL compensation through its rules and regulations, impacting all student athletes. The anticompetitive restraints of the NCAA are set forth in the "NCAA Division I Manual." These bylaws plainly state that all student athletes must abide by their rules, forcing all to relinquish their rights to be compensated in an increasingly competitive market. A few examples of the NCAA bylaws:

"NCAA Bylaw 12.5.2.1 ("Advertisements and Promotions After Becoming an **Student-Athlete**") states:
> After becoming a **student-athlete**, an individual shall not be eligible for participation in intercollegiate athletics if the individual:
>> (a) Accepts any remuneration for or permits the use of his or her name or picture to advertise, recommend or promote directly the sale or use of a commercial product or service of any kind; or
>>
>> (b) Receives remuneration for endorsing a commercial product or service through the individual's use of such product or service."

NCAA Bylaw 12.1.2 ("Amateurism and Athletics Eligibility") states:

> A **[student athlete]** loses amateur status and thus shall not be eligible
> for intercollegiate competition in a particular sport if the individual:
>> (a) [u]ses athletics skill (directly or indirectly) for pay in any form in that sport; [or]
>> (b) [a]ccepts a promise of pay even if such pay is to be received following the completion of intercollegiate athletics participation . . . .

These are just two examples of the NCAA bylaws. The subject of these bylaws are not directed specifically to full GIA scholarship recipients, they are directed to all student athletes in

the NCAA, and all must follow these regulations. There is no mention of scholarship status that distinguishes individuals subjected to the NCAA's bylaws. The NCAA Division I manual plainly states that all student athletes (which includes PWOs) are/were the subject of these bylaws. The exclusion of PWOs in the Settlement Damages Class does not satisfy the requirements of Rule 23(a) and Rule 23(b), as the current class definition of the Football and Men's Basketball Class and Women's Basketball Class fails to include PWOs who were harmed by the Defendants' restraints in the exact same way as full GIA scholarship student athletes.

### B. The Class Definition is Contradictory to the Theory of Liability

The antitrust claims presented in this litigation are equally applicable to PWOs who have been unjustifiably excluded from the Settlement Damages Class. The Class Representatives proposed definitions that specifically excludes PWOs as class members who share the exact same antitrust claims and injuries as the named Plaintiffs. This exclusion directly contradicts the theory of liability that is asserted in this case. See below, the settlement class definitions in question:

> The class definition for the **"Football and Men's Basketball Class"** is:
>> "All current and former college athletes who have received or will receive a full Grant-in-Aid scholarship and compete on, competed on, or will compete on a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), and you have been or will be declared initially eligible for competition in Division I at any time between June 15, 2016 through September 15, 2024."

> The class definition for the **"Women's Basketball Class"** is:
>> "All current and former college athletes who have received full GIA scholarships and compete on, or competed on, a Division I women's basketball team at a college or university that is a member of one the Power Five Conferences

(including Notre Dame), at any time between June 15, 2016, and the date of final judgment in this matter."

This court held that the NCAA's anticompetitive restrictions caused a cognizable antitrust injury by depriving student athletes of NIL compensation they would have received absent those rules. This injury applies equally to PWOs, who were subjected to the exact same restraints as full GIA scholarship athletes. The exclusion of PWOs from the damages class undermines the theory of liability and creates a class definition that is unfair and is misaligned with the full scope of the harm. Thus, this the settlement must be amended, and the class definitions need to align with the antitrust theory of liability ensuring it reflects "the contours of the settlement." *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at *6 (N.D. Cal. Nov. 18, 2014).

The "contours of the settlement" must include all individuals harmed by the NCAA's restraints who were prevented from receiving NIL and BNIL compensation. The Supreme Court has continually reinforced that a court has an obligation before certifying a class to "determine that Rule 23 is satisfied," *Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013). By maintaining the current damage class definition that excludes PWOs, the class fails to satisfy Rule 23(a) and Rule 23(b), as it does not fully encompass all harmed by the NCAA's anticompetitive conduct.

### C. Common Questions of Fact and Law are Common to PWOs

Rule 23(a)(2) requires that there must be common questions of fact or law common amongst the class. The underlying theory of liability in this lawsuit asserts that the NCAA's restraints on BNIL and NIL compensation violate antitrust law, systematically harming student athletes under their rules. These restraints were imposed on all student athletes and is well-documented in the NCAA Division I Manual. By restricting class membership to full GIA scholarship athletes, the class excludes individuals who have raised identical common questions of law and fact common to the class. According to the Plaintiffs, the common questions applicable to the classes are:

> (1) whether the challenged rules constitute a horizontal agreement, contract, or combination that caused significant anticompetitive effects in the relevant markets for student-athletes' labor services.
>
> (2) whether Defendants' procompetitive justifications for the challenged NCAA rules are valid.
>
> (3) whether any procompetitive justifications for the challenged NCAA rules can be achieved with less restrictive alternatives.

(ECF 387 at 8)

These questions are equally relevant to PWOs who were subjected to the NCAAs unlawful restraints. The inclusion of PWOs would satisfy Rule 23(a)(2)'s commonality requirement to the highest degree, as "not all factual or legal questions raised in the lawsuit need be common so long as a single issue is common to all class members." *Thillens, Inc. v. the Cmty. Currency Exch. Ass'n of Ill., Inc.*, 97 F.R.D. 668, 677 (N.D. Ill. 1983). This court has already determined the NCAA's conduct violates antitrust law, so excluding class members subjected to the same unlawful restraints is unjustifiable.

### D. PWOs Share Identical Claims and Defenses

Rule 23(a)(3) establishes the typicality requirement which requires that "the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *See, e.g., In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir.1992*); Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir.1986); *German,* 885 F.Supp. at 554-55; *Maywalt,* 147 F.R.D. at 57; *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 200 (S.D.N.Y.1992); *Dura-Bilt,* 89 F.R.D. at 99.

The legal theory presented by the Plaintiffs, being that the NCAA's anticompetitive restraints on BNIL and NIL compensation caused measurable harm, clearly applies to Preferred Walk-Ons. PWOs, just as scholarship athletes, were subject to the same NCAA bylaws that prohibited them from earning compensation for their athletic contributions. Absent the challenged rules, PWOs

would have the same opportunity to receive broadcast revenue and NIL compensation as their scholarship teammates.

> Plaintiffs state that:
> "Each of the named Plaintiffs are or were Division I athletes and allege the same antitrust violations as the members of the proposed Settlement Classes, namely that the challenged restrictions are anticompetitive and caused them cognizable antitrust injury by depriving them of compensation they would have received if the rules had not been in place."
> (ECF 450 at 34-35)

Preferred Walk-Ons, who are Division I athletes, were subjected to the exact same anticompetitive restrictions and allege the same claims as the Plaintiffs and the settlement classes. They were restrained from receiving compensation just as "all class members alleging the same antitrust violation by defendants." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. at 539. Their exclusion from the damages class is not legally defensible when they share the same injury and legal claims as the current class members.

Moreover, the main purpose of Rule 23(a)(3) is "to satisfy the court's general obligation to fully protect absentee members." *Thillens, Inc. v. the Cmty. Currency Exch. Ass'n of Ill., Inc.*, 97 F.R.D. 668, 678 (N.D. Ill. 1983). By excluding PWOs from the damages class, the court fails to protect absentee members who suffered identical injuries as the class. The uniform enforcement of these unlawful restraints injured every student athlete on the Football and Men's Basketball team, and Women's Basketball teams. With a class definition that includes PWOs, this would protect all absentee members injured and fully satisfying Rule 23(a)(3).

### E. PWOs are not Adequately Represented in This Lawsuit

Preferred Walk-Ons were subjected to the NCAA's anticompetitive restraints that prevented them from profiting from their NIL and from receiving broadcast revenue. Rule 23(a)(4) requires that the Class Representatives must fairly and adequately protect the interests of all class members. This requirement is fundamentally unmet when there are a portion of individuals

affected, being PWOs, that are excluded from the settlement damages class, despite suffering the exact same injury.

Rule 23(a)(4) requires that the Class Representatives be adequate in representing the entire class. As previously discussed, the "commonality and typicality requirements blend together in determining whether the representative Plaintiffs' claims are typical enough of the class wide claims that the representatives will adequately represent the class." *General Tel. Co.*, 457 U.S. at 157 & n. 13, 102 S.Ct. at 2370-71 & n. 13. In this case, the Plaintiffs assert that they adequately represented the class because their "interests are aligned with members of those classes in challenging the lawfulness of the challenged rules and in proving that those rules damaged class members." (ECF No. 387 at 11).

However, this assertion is inaccurate because the challenged NCAA rules applied to all student athletes, not just those receiving full GIA scholarships. This court has already ruled that the Plaintiff, "can show that it was injured in fact by alleging that it was deprived of the opportunity to receive compensation it otherwise would have received but for the challenged conduct." *Grant House v. Nat'l Collegiate Athletic Ass'n*, 545 F. Supp. 3d 804, 816 (N.D. Cal. 2021). By excluding PWOs who have established the same injury-in-fact, the current class definition leaves individuals without redress for their injuries and failing to adequately be represented in this lawsuit.

### F. Addressing Potential Conflicts

This objection raises concerns of a potential conflict which "the Supreme Court has held that Plaintiffs must satisfy both prongs of a two-pronged test to qualify as adequate representatives:

> (1) the representatives' interests must not conflict with the class members' interests
>
> (2) the representatives and their attorney must be able to prosecute the action vigorously."

*General Tel. Co.*, 457 U.S. at 157 & n. 13, 102 S.Ct. at 2370-71 & n. 13; *Dean v. Coughlin*, 107 F.R.D. 331, 334 (S.D.N.Y.1985).

While the Plaintiffs' counsel undeniably satisfies the second prong due to their experience and qualifications, the class representatives have failed to meet the first prong by overlooking

PWOs in the Football and Men's Basketball, and Women's Basketball classes. PWOs share the same legal defenses, claims, and injuries as full GIA scholarship athletes, and their exclusion creates a conflict that undermines the adequacy of representation.

The Defendants may contend that including PWOs introduces a conflict warranting decertification of the class under Rule 23. However, this contention would be meritless, as courts have consistently ruled that potential internal conflicts, particularly regarding damages do not preclude class certification. *See In In re Plywood Anti-Trust Litigation*, 76 F.R.D. 570, 580-82.

Furthermore, this court has already ruled that the Defendants are liable for the conspiracy alleged by the Plaintiffs. At this stage in the litigation, "all the members of the class have a common interest in a favorable verdict on the issue of a conspiracy, the possibility that it may develop that the interests with respect to damages of several groups within the class will conflict, cannot at this point justify the denial of a class action." *Sol S. Turnoff Drug Distributors, Inc. v. N.V. Nederlandsche Combinatie Voor Chemische Industries*, 51 F.R.D. 233 (E.D.Pa.1970).

Additionally, courts have "rejected efforts by Defendants to defeat certification by raising the possibility of hypothetical conflicts or antagonisms among class members, especially regarding proof of damages." *In National Super Spuds, Inc. v. New York Mercantile Exchange*, 77 F.R.D. 361 (S.D.N.Y.1977). Therefore, the complaint must be accepted as true for purposes of this motion. *See In re Nasdaq Market-Makers Antitrust Litigation*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996). Under Rule 23(c)(1)(C), the court has the authority to alter or amend the class definition before the final judgement. The inclusion of PWOs poses no fundamental conflicts or inconsistencies between the claims alleged by the Plaintiffs. Therefore, this court should amend the class definition of the Football and Men's Basketball, and Women's Basketball class to include PWOs to fairly represent all student athletes harmed by the NCAA's conduct.

### G. The NCAA's Conspiracy Harming All Student Athletes Predominates Scholarship Status

To maintain a class action, Plaintiffs must satisfy Rule 23(b)(3), which states that the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As stated previously, a student

athlete "can establish injury in fact in this context merely by showing that the restraint deprived it of the opportunity to receive the compensation." *Grant House v. Nat'l Collegiate Athletic Ass'n,* 545 F. Supp. 3d 804, 816 (N.D. Cal. 2021). The arbitrary exclusion of Preferred Walk-Ons in the Football and Men's Basketball Class and Women's Basketball Class has no legal or factual basis and directly violates the predominance requirement under rule Rule 23(b)(3).

The Plaintiffs argued that the predominance requirement is met for all three of the proposed damages classes, because the questions central to their claims are capable of resolution on a classwide basis with common proof. The common proof presented to this court was the challenged NCAA rules, whether the proposed classes suffered antitrust injury, and that there are measurable damages.

As previously stated, all student athletes, including PWOs were subject to the challenged NCAA rules; this court has already addressed a class members' proof of injury-in-fact; and there are measurable damages according to Dr. Rascher's analysis and the opinion of this court which stated, that "student-athletes are prevented from selling or negotiating licenses for the use of their names, images, and likenesses at the exact moment when those licenses are most valuable." *In re NCAA Student-Athlete Name & Likeness Licensing Litigation,* 37 F. Supp. 3d 1126, 1139 (N.D. Cal. 2014). Therefore, the common proof here is "sufficient to support an inference that, in the absence of the NCAA's restrictions on student-athlete pay, a market would exist for these group licenses." *Id.* at 1145.

The antitrust claim in this litigation is the predominate issue that is common to all class members, and "the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members." *In re Nasdaq Market-Makers Antitrust Litigation,* 169 F.R.D. 493, 518 (S.D.N.Y. 1996). Scholarship status does not alter the fact that all student athletes, including PWOs, were subject to the same anticompetitive restraints that prevented them from receiving compensation. The NCAA's rules applied uniformly to all student athletes, making the common legal questions of liability and injury predominant over any individual differences such as scholarship status.

**H. The Inclusion of PWOs in This Settlement is the Superior Method**

The denial of BNIL and NIL compensation due to the NCAA's restraints is systemic and applies uniformly to all team members, regardless of one's scholarship status. These restraints forbid PWOs from accepting academic scholarships (FAFSA grants were permitted but does not cover all of tuition or cost of attendance) and using their NIL, finding other means to pay off their tuition while meeting the labor demands of Division I athletics. These restrictions of compensation brought many to take student loans out that will harm many for the rest of their lives, and the NCAA rules are now amended to permit NIL compensation, including a *pro rata* distribution of broadcast revenue for Football and Men's Basketball and Women's Basketball full scholarship recipients.

The exclusion of PWOs falls short to satisfying the superiority requirement of Rule 23(b)(3). This class action should be the superior method for adjudicating the controversy in a fair and efficient way. The denial of NIL compensation was applied uniformly to all student athletes and excluding PWO athletes from the damages class disregards their shared injury and fails to address the full scope of the harm which is contradicting Rule 23(b)(3)'s superiority requirement. Including PWOs who were injured by the NCAA would not diminish the settlement's overall equity, or fairness, rather, it would further strengthen the legal theory asserted by the Plaintiffs in this lawsuit. The underlying theory of liability would now encompass all harmed, bolstering the legal defensibility, and ensuring efficient resolution without fragmenting the settlement or encouraging future litigation by excluded parties.

## I. Entitlement to Broadcast Revenue

After the court granted Plaintiffs leave to amend their complaint, they pursued a theory of antitrust liability and to seek monetary damages for the harm afflicted upon student athletes. This court has ruled the NCAA liable for antitrust liability, and the NCAA will compensate current and former student athletes. Those alleged antitrust allegations this court has found the Defendants liable for harmed all student athletes under the NCAA's restraints. The NCAA's unlawful restraints prohibited student athletes from using their NIL for compensation and the sharing of broadcast revenue. With the absence of those restraints, it now allows every member of the Football and Men's Basketball, and Women's Basketball teams to receive a share of the broadcast revenue. The issue arises with the language of the Plaintiffs' Complaint, which uses

13

"student athletes," "athletes," and "college athletes," when asserting their claims and defenses throughout the entire litigation, but then classifies the damaged class using scholarship status without providing any justification. Plaintiffs' complaint reads:

> "In the absence of the challenged restraints, market-based competition would have led student-athletes to receive, among other things, a share of revenues for the group licensing of their BNILs. These athletes would be able to offer group licenses to their schools and conferences, which could in turn package them to broadcast and other companies with school and conference rights. Due to the ongoing unlawful NIL restraints of Defendants, members of the Football and Men's Basketball Class and Women's Basketball Class have been deprived of the opportunity to receive group licensing compensation for their BNIL rights that they otherwise would have received from NCAA members or conferences."

All members on any given team were subjected to those restraints, which includes PWOs. They continue by stating that **student athletes** would be able to receive a share of the broadcast revenue absent the challenged restraints, those restraints that all members on any given team, including PWOs, were subjected to.

> *See In re NCAA Student-Athlete Name & Likeness Licensing Litigation,* 37 F. Supp. 3d 1126, 1141. ("The NCAA's challenged rules obviously play a key role in ensuring that student-athletes are not paid for their performances in televised games. But, absent those rules, student-athletes would have an economic interest in being able to sell group licenses for the rights to broadcast their games" They finish by saying that those unlawful NIL restraints of the Defendants have deprived class members "of the opportunity to receive group licensing compensation for their BNIL rights that they otherwise would have received from NCAA members or conferences.")

Furthermore, this court has held that a student athlete "is not required to establish that it has a legal entitlement to the compensation in question to show that it was injured in fact by a restraint that prevented it from receiving the compensation." *Id.* at 816. According to the NCAA's bylaws,

any student athlete, regardless of scholarship status, were subjected to the challenged restraints this court has ruled anticompetitive. PWOs contributed to the same broadcasts and revenue streams as scholarship athletes but are unfairly excluded from receiving compensation without any clear, factual, or legal basis, *See In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 463 (S.D.N.Y. 1996). The NCAA benefits from the efforts of all athletes, whether on full GIA scholarships or as Preferred Walk-Ons. The substantial revenue generated by broadcast media, is driven by the presence and contributions of all athletes regardless of scholarship status. Excluding PWOs from the settlement damage classes creates an inequity that undermines the fairness of the settlement, which seeks to remedy the injuries caused by the NCAA's conduct on all student-athletes in the Power Five Conferences.

### J. Issues With the Exclusion of PWOs

The exclusion of PWOs presents unreasonable assumptions, it suggests that student athletes who contribute meaningfully to their teams, but are not on full GIA scholarships, would not have received any media coverage. It would also assume that there has never been a PWO who has played on television, a story hasn't been written about them, or their NIL has never been used for gain by their conference or the NCAA. These assumptions are meritless, there are many PWOs since the inception of the NCAA rule change in 2022 who have received NIL deals themselves, there are also many PWOs in all sports who play for their teams, and there are many who receive media coverage. The damage class definition uses scholarship status alone to classify whether a student-athlete should be compensated from the broadcast revenue the conferences made which broadcasts every member of the team regardless of scholarship status.

Additionally, this settlement allocates BNIL payments to all class members equally, it doesn't matter if one has never played, a PWO plays over them, or if they were medically retired, all members in the proposed damage class are paid equally. This rationale is flawed, while it is fair for class members to be paid equally from BNIL, the class definition allows for a <u>medically retired full GIA recipient</u> to receive BNIL compensation and not PWOs. Medically retired student athletes do not participate in games, practices, or media, and they aren't named on the roster. Yet, they are included as class members while PWOs, who are members of their team,

who followed the NCAA's unlawful regulations, who meet the labor demands of Division I athletics, who have played on broadcast and contributed for their team to be overlooked.

### K. Administrative Feasibility of BNIL Recovery

The inclusion of PWOs in the settlement damage class is administratively feasible. Dr. Rascher's analysis on the BNIL damages estimate that student-athletes in the proposed settlement damage classes stand to receive significant sums for their participation in Power Five Division I athletics. For example, the estimate projects that eligible football athletes could receive between $15,177 and $41,932 annually, depending on the year. Eligible men's basketball athletes could receive between $20,243 and $61,428 annually, and eligible women's basketball athletes between $3,297 and $13,099.

Scholarship status is irrelevant to Dr. Rascher's methodology, as BNIL revenue is tied to participation in broadcasts rather than the financial aid structure of individual athletes. This estimate is also based on calculations on a *pro rata* basis, and the inclusion of PWOs does not introduce any complexity as they would receive the same amount as their full GIA scholarship peers, and they are already identified in the Additional Sports Class.

### L. Proposed Revision of the Damage Class Definition

To remedy the deficiencies, I propose the following revision for the definitions of the settlement damage classes:

1. **Football and Men's Basketball Class:** All student-athletes who compete on, competed on, or will compete on a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), and who have been or will be declared initially eligible for competition in Division I at any time from June 15, 2016 through September 15, 2024. This Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

2. **Women's Basketball class:** All student-athletes who compete on, competed on, or will compete on a Division I women's basketball team at a college or university that is a member of one the Power Five Conferences (including Notre Dame), and who have been or will be declared initially eligible for competition in Division I at any time from June 15, 2016, through September 15, 2024. This Class excludes the officers, directors, and employees of Defendants. This Class also excludes all judicial officers presiding over this action and their immediate family members and staff, and any juror assigned to this action.

This revised definition satisfies Rule 23, and by fully addressing the full scope of the harm including all student athletes harmed by the NCAA. Furthermore, it does not segregate specific members on the Football and Men's Basketball, and Women's Basketball teams, and places those members into the Additional Sports Class, as if they were never on their respective teams.

## IV. CONCLUSION

For the reasons stated above, **I respectfully urge the court to <u>Deny This Settlement</u> and order the parties to amend the class definition of the Football and Men's Basketball, and Women's Basketball class to include Preferred Walk-Ons, so that all student athletes injured by the Defendants receive compensation.** Preferred Walk-Ons deserve to be recognized in this settlement, their exclusion would represent an inequitable and unjust outcome. I trust the Court will take these concerns that I have mentioned into consideration and ensure that all athletes, regardless of scholarship status, be redressed in this settlement.

I would like the opportunity to speak at the final approval hearing if any opposition arises or if the court has any questions or concerns. Thank you for your attention to this matter.

Sincerely,

**Larry Wright III**

*[signature]*

1/24/2025