# APPENDIX B

HAGENS BERMAN

# NCAA Student-Athlete Name, Image & Likeness Senator Blumenthal Letter

View Case Page (https://www.hbsslaw.com/cases/ncaa-student-athlete-name-image-and-likeness)

## Calling on Congress

*The following is a letter from Hagens Berman's managing partner and co-fouder, Steve W. Berman, in light of the firm's* Name, Image and Likeness antitrust class action against the NCAA (https://www.hbsslaw.com/cases/ncaa-student-athlete-name-image-and-likeness). *It is our firm's hope that Congress will join us in the fight for college athletes' rights.*

July 3, 2020

The Honorable Richard Blumenthal
United States Capitol
First Street, S.E.
Washington, D.C. 20004

Dear Senator Blumenthal:

It's been since tobacco that we have interacted and I hope this letter finds you and your family in good health. I write on a matter I know you have an interest in, the request by the NCAA for unprecedented antitrust immunity. My firm currently represents the thousands of student-athletes across the nation who compete in Division I intercollegiate sports, in an antitrust action filed on June 15, 2020 in the U.S. District Court for the Northern District of California, captioned House, et al. v. NCAA, et al. (Case No. 5:20-cv-03919-CW). We have also served as counsel in numerous other groundbreaking antitrust and NIL lawsuits against the NCAA seeking to uphold the rights of athletes and ensure a fair and safe environment. We understand that you are a member of the Senate Committee on Commerce, Science, and Transportation and that the committee held a hearing earlier this week to discuss potential federal legislation addressing college athletes' rights related to the use of their names, images, and likenesses (NILs). We are writing today in support of your efforts on this very important issue and to oppose any legislation that would grant the NCAA immunity from the federal antitrust laws. Such an exemption would impair the legal rights of student-athletes for the economic benefit of the NCAA, its members, and its corporate partners, and would undermine the purpose of the antitrust laws themselves.

Big-time college sports are a multi-billion dollar entertainment industry attached to one of the most important institutions in American culture: higher education. The success of Division I athletes has translated into massive television deals, multi-million dollar coaching contracts, lavish facilities, and lucrative commercial licensing agreements that benefit the NCAA and its members significantly. Yet, while their own financial gains seem virtually limitless, the NCAA and its members ensure— through a web of onerous restrictions enforced under the guise of maintaining "amateurism"—that student-athletes are unable to be compensated for the enormous value they create.

We urge Congress to decline the NCAA's requests to afford it a license to continue to enrich itself and its members at the expense of athletes, many of whom come from disenfranchised and economically underprivileged backgrounds. College athletes should not be deprived of their legal rights, which have proven critical in their prolonged struggle to obtain fairer compensation in light of the tremendous revenues they generate and the sacrifices they make for their schools. In a system that has otherwise rendered them largely powerless and unprotected from exploitation, student-athletes have been able to achieve meaningful change almost exclusively through the courts. An antitrust exemption would thus eliminate what history has shown to be the most effective legal tool for protecting athletes and fostering positive change in college sports.

Despite the progress that has been made, the NCAA's compensation restraints continue in many ways to trample upon fundamental capitalist principles of American labor markets. As it stands, major college sports operate as a business in a free market system for everyone involved, except for the athletes who make it all possible. History has proven that forces of competition greatly benefit the public interest by creating the best prices, highest quality, most choices, and greatest opportunity for innovation. Yet the NCAA persists in denying college athletes the opportunity to earn money based on what a free market would allow, and thus deprives them of their basic economic rights. The broad exemption NCAA seeks would only result in further injustice for these athletes.

The history of the NCAA with respect to treatment of its student-athletes demonstrates that it does not deserve immunity and cannot be trusted. Let's start with the Keller case.[1] (https://www.hbsslaw.com/#_ftn1) There, the NCAA authorized Electronic Arts to monetize the names and likenesses of college football players in EA's football games. We successfully represented student-athletes and won compensation for this brazen theft of athletes' NIL rights. The NCAA fought us tooth and nail. Then we brought an antitrust case seeking to abolish NCAA rules that prohibited schools from paying the full cost of attendance. We settled for $208 million, almost full damages, and we went on to try the injunction aspect of the case. The NCAA fought tooth and nail against the relief we sought, which would have abolished rules that prevented more compensation if it was related to education—for example, schools could compete for athletes by offering graduate school scholarships. How could competing for more education hurt the NCAA's ability to promote sports? The district court and the Ninth Circuit agreed with us.[2] (https://www.hbsslaw.com/#_ftn2) Again, the NCAA's posture in the Alston case shows that it cannot be trusted and has done nothing to warrant the extraordinary immunity it now seeks.

The NCAA has demonstrated time and again that it will not act voluntarily to address the inequities and exploitation in the current system. The NCAA has long behaved more like a trade association protecting its members' rights to commercially exploit college athletic programs than a governing body designed to protect athletes. Even as to the NIL compensation that it now claims to support, just a few years ago, the NCAA vehemently opposed such compensation, characterizing it as "no less anathema to amateurism than paying football players $100 per sack."[3] (https://www.hbsslaw.com/#_ftn3) Congress is right to be highly skeptical of the NCAA's claim that it now intends to make the long-overdue changes to its NIL restrictions if it is granted complete authority over the rules and absolute antitrust immunity. Indeed, the NCAA has perpetuated similar false narratives for years, all the while avoiding, delaying, and actively fighting against changes on NIL or any other student-athlete welfare issue that threatens its lucrative business model.

In prior litigation, the NCAA has repeatedly argued that it should have the sole authority to govern collegiate athletics, yet it now insists that Congressional intervention is suddenly necessary to save college sports, relying on the same recycled arguments that it has already lost multiple times, over multiple decades, before the antitrust courts. To be sure, while the NCAA acknowledges that student-athletes should be able to monetize their NILs, it has maintained its position that any changes must be made within the context of its antiquated, self-serving conception of "amateurism"—the same indefinite and ever-evolving term that the NCAA has historically used to impose unfair restrictions on college athletes and protect its own financial interests. Please keep in mind that, normally, restraints like the ones NCAA imposes are per se illegal. And, while the courts have given it some latitude, the NCAA has abused that latitude as was demonstrated in Alston. In that case, the NCAA could produce no economic or survey evidence that additional compensation would hurt demand for college sports. The trial made it clear that the NCAA's restriction on what athletes can and cannot get paid is nothing more than an arbitrary line decided by those who make billions off the labor of student-athletes.[4] (https://www.hbsslaw.com/#_ftn4)

Against this backdrop, the NCAA's most recent promises should inspire little, if any, confidence that meaningful change is actually on the horizon if it is left to its own devices. Without the threat of future antitrust liability, the NCAA would be even less likely to implement change voluntarily and would be emboldened to enact even more draconian rules in the future, which would protect powerful university and corporate interests while harming student-athletes. The NCAA has had more than a decade to resolve the NIL issue and has instead kicked the can down the road while the money continued to roll in. Now that its greed and neglect has caught up, the NCAA hopes Congress will provide a federal bail-out in the form of legislation that places its anticompetitive restraints beyond the reach of courts and state legislatures. Because it has consistently failed to demonstrate the ability or willingness to prioritize student-athlete wellbeing above its own profits, the NCAA cannot be trusted to fairly oversee the implementation of athlete NIL or any other compensation rights and should certainly not be rewarded with broad immunity from the antitrust laws

Finally, insofar as the NCAA claims an antitrust exemption is necessary because many states are, consistent with longstanding personal property rights, passing laws to protect athletes' NIL rights, the NCAA has it backwards. The fact that states across the country have recognized and responded to the disturbing ways in which college athletes are economically exploited illustrates why the NCAA must be held to the law—not exempted from it.

If you or your staff have any questions about this subject we would be pleased to answer them.

Respectfully,

HAGENS BERMAN SOBOL SHAPIRO LLP

/s/ Steve W. Berman

Steve W. Berman

---

[1] (https://www.hbsslaw.com/#_ftnref1) Keller v. Electronic Arts, Inc., et al., Case No. 09-1967 CW, filed May 5, 2009 ("Keller").

[2] (https://www.hbsslaw.com/#_ftnref2) In re NCAA Grant-in-Aid Cap Antitrust Litigation, 958 F.3d 1239 (9th Cir. 2020) ("Alston").

[3] (https://www.hbsslaw.com/#_ftnref3) NCAA Br. at 57, O'Bannon v. NCAA, Nos. 14-16601 & 14-17068 (9th Cir. Nov. 14, 2014) (Dkt. No. 13-1).

[4] (https://www.hbsslaw.com/#_ftnref4) In re NCAA Grant-in-Aid Cap Antitrust Litigation, 958 F.3d 1239 (9th Cir. 2020) (Smith, M., concurring).

**Settlement Resource Center:**

Supplemental Brief in Support of Motion for Preliminary Approval » (https://www.hbsslaw.com/sites/default/files/case-downloads/ncaa-nil/2024-09-26-supplemental-brief-in-support-of-motion-for-preliminary-settlement-approval.pdf)

Reply to Settlement Objectors » (https://www.hbsslaw.com/hagens-berman-responds-to-objectors-of-ncaa-nil-settlement)

Settlement FAQ » (https://www.hbsslaw.com/ncaa-student-athlete-name-image-and-likeness/faq)

Payout Estimates » (https://www.hbsslaw.com/ncaa-student-athlete-name-image-and-likeness/settlement-payout-estimates)

Motion for Preliminary Approval in *House* » (https://www.hbsslaw.com/sites/default/files/case-downloads/ncaa-nil/2024-07-26-pls-notice-of-motion-and-motion-for-preliminary-settlement-approval-house.pdf)

Motion for Preliminary Approval in *Hubbard* » (https://www.hbsslaw.com/sites/default/files/case-downloads/ncaa-nil/2024-07-26-pls-notice-of-motion-and-unopposed-motion-for-preliminary-settlement-approval-hubbard.pdf)

Class Plaintiffs' Preliminary Approval Slides » (https://www.hbsslaw.com/sites/default/files/case-downloads/ncaa-nil/class-plaintiffs-preliminary-approval-slides.pdf)

---

### PRESS RELEASES

OCT 7, 2024

Hagens Berman Announces Preliminary Court Approval in Historic NCAA Name, Image and Likeness Litigation (https://www.hbsslaw.com/press/ncaa-student-athlete-name-image-and-likeness/hagens-berman-announces-preliminary-court-approval-in-historic-ncaa-name-image-and-likeness-litigation)

SEP 26, 2024

Hagens Berman and Winston & Strawn File Amended Settlement in NCAA Name, Image and Likeness Litigation Affecting College Athletes (https://www.hbsslaw.com/press/ncaa-student-athlete-name-image-and-likeness/hagens-berman-and-winston-strawn-file-amended-settlement-in-ncaa-name-image-and-likeness-litigation-affecting-college-athletes)

JUL 26, 2024

Hagens Berman and Winston & Strawn Seek Court Approval of Historic Settlement to Revolutionize College Sports (https://www.hbsslaw.com/press/ncaa-student-athlete-name-image-and-likeness/hagens-berman-and-winston-strawn-seek-court-approval-of-historic-settlement-to-revolutionize-college-sports)