# APPENDIX V

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (OAKLAND DIVISION)

| | |
|---|---|
| IN RE: COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**DECLARATION OF FRANK MASON III IN SUPPORT OF OBJECTION TO SETTLEMENTS ON BEHALF OF CLASSES OF PAST, CURRENT AND FUTURE NCAA COLLEGE ATHLETES**<br><br>Hon. Claudia Wilken |

## I. INTRODUCTION AND SUMMARY

1. My name is Frank Mason III. I am a former student-athlete at the University of Kansas, then and now a member of the Big 12 Conference, where I played basketball for four years. During my senior year at Kansas, the 2016-17 college basketball season, I was named the Associated Press's (AP) National Player of the Year, was a unanimous First-Team AP All-American selection, the Big 12 Player of the Year, and was the first consensus National Player of the Year in Kansas' storied basketball history. Following my collegiate athletic career, I have played basketball professionally in the National Basketball Association (NBA) for four years, in the NBA's "G-League" for two years, and overseas since 2023.

2. As a decorated former college athlete who Class Counsel purports to represent, I submit this declaration in opposition to the proposed damages classes settlement ("DCS") negotiated between Class Counsel in the *House* and related cases and the NCAA. I have reviewed materials related to the settlement, including information made available to former athletes such as myself on the website https://www.collegeathletecompensation.com/. I have contacted the University of Kansas, the Big 12 Conference, and the NCAA concerning the settlement.

3. Given my own experiences as a college athlete and as a former college athlete who must soon decide whether to opt in or out of the proposed settlement, it is my belief and opinion that the proposed DCS should not be given final approval by this Court for two reasons. *First*, the settlement unfairly excludes athletes, such as myself, who participated in collegiate athletics during the 2016-17 season from "Lost NIL" payments entirely. *Second*, the settlement provides no mechanism or consideration to distinguish the value of "Broadcast NIL" payments for highly decorated athletes, such as myself, with outsized effects on the value of broadcast rights, in comparison to other college athletes.

## II. THE PROPOSED DCS PURPORTS TO COVER SCHOLARSHIP ATHLETES DURING THE 2016-2017 COLLEGIATE ATHLETICS SEASON BUT FAILS TO PROVIDE SUCH ATHLETES "LOST NIL" PAYMENTS.

4. As a member of the Kansas Jayhawk basketball team from 2013-2017, I engaged in countless activities and made dozens of appearances annually premised on the use of my name, image, and likeness. These activities included for example, my participation in autograph signing sessions for fans and boosters, team and individual photograph sessions for fans and boosters, meet-and-greets with fans and boosters, my service as a camp and clinic counselor at various Kansas basketball camps and clinics, and speaking publicly at events and parties hosted by the University and Big 12 Conference. I received no compensation for these and other activities on behalf of the team, University, and Conference.

5. From the time I became a member of the University of Kansas' men's basketball team, continuing to this very day, the University of Kansas has profited off the sale of merchandise featuring my name, image, and likeness. For example, the "Kansas Jayhawks

Official Store" continues to sell online for $119.99 jerseys with my name "Mason III" and number "0" adorning the jersey, https://www.kustore.com/kansas-jayhawks/frank-mason-iii-jerseys/t-12297953+a-5644516795+d-20138+z-9-2489852372 (last visited, Jan. 16, 2025). In addition to the sale of merchandise featuring my name, image and likeness, online, this merchandise was sold by the University of Kansas at stores and shops locally on campus and at games featuring the Jayhawks men's basketball team. I received no compensation for the sale of merchandise featuring my name, image, and likeness.

6. During my time at Kansas, NCAA, Big 12 and University rules prevented me entirely from being able to legally profit from my name, image, and likeness by seeking out the types of NIL deals widely available to today's college athletes. As one of the most decorated collegiate basketball players in history, many such opportunities would have otherwise been available to me.

7. Despite the repeated use of my name, image, and likeness for profit by the University of Kansas, and despite being prevented from otherwise seeking legal opportunities to myself profit from the use of name, image, and likeness, I have been deemed "not eligible" for Lost NIL payments.

### III. THE PROPOSED DCS IMPROPERLY PROVIDES NO MECHANISM OR CONSIDERATION TO DISTINGUISH THE VALUE OF "BROADCAST NIL" PAYMENTS FOR HIGHLY DECORATED ATHLETES WITH OUTSIZED EFFECTS ON THE VALUE OF BROADCAST RIGHTS.

8. According to the terms of the settlement, my Broadcast NIL payment value is $55,420.32.

9. The settlement severely undervalues my Broadcast payment value because the value is formulaic and provides no consideration for the real-world effect that particular and specific college athletes have on the value of broadcast rights.

10. For example, according to the NCAA, the 2017 NCAA "March Madness" Tournament, in which the Kansas Jayhawks reached the "Elite Eight", was the most-watched NCAA tournament in 24 years across television and digital media platforms. https://www.ncaa.com/news/basketball-men/article/2017-03-20/2017-ncaa-tournament-most-watched-24-years-across-television (last visited, Jan. 16, 2025). Two of the ten most watched games during the 2016-17 regular season were games broadcast on ESPN that I played in against Kentucky and Duke, with combined viewership of over 5.5 million viewers.

11. As the consensus National Player of the Year for the 2016-17 season, the effect I had on viewership during the regular and postseason for that year alone is incomparable via a formulaic calculation to that of the vast majority of other collegiate athletes. As a result, the use of a formulaic calculation has severely undervalued my Broadcast NIL payment value.

## IV. CONCLUSION

12. For the foregoing reasons, it is my belief and opinion, based on my experience and involvement in college athletics, that the proposed DCS should not be granted final approval by this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on information know to me.

DATED: ___1/22/2025___    _____
              FRANK MASON III

---

3
**DECLARATION OF FRANK MASON III IN SUPPORT OF OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR FINAL APPROVAL OF SETTLEMENTS ON BEHALF OF CLASSES OF PAST, CURRENT AND FUTURE NCAA COLLEGE ATHLETES**

# APPENDIX A

# Frank Mason III

## Board Member

Grays Peak Academy is honored to announce Frank Mason III as board member. While he needs little introduction, Frank, born in Petersburg, VA, played for the University of Kansas from 2013-2017. His senior season earned him Big 12 POY, consensus First Team All-American, and consensus Naismith National Player of the Year. Drafted 34th in the 2017 NBA draft to the Sacramento Kings where he played two seasons. Frank went on to play for the Milwaukee Bucks and Orlando Magic and was awarded G-League MVP in 2020. Frank has taken his game overseas and is also currently playing in the TBT for Mass St.

Frank is excited to be joining Grays Peak Academy board and is looking forward to contributing to player development and program success

