Patrick A. Bradford, *pro hac vice* forthcoming
 pbradford@bradfordedwards.com
Denver Edwards, SBN 268822
 dedwards@bradfordedwards.com
Panda Kroll, SBN 211877
 pkroll@bradfordedwards.com
BRADFORD EDWARDS LLP
1150 S. Olive St., 10th Floor
Los Angeles, CA 90015
Telephone: (213) 868-3310

*Attorneys for K. Braeden Anderson*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| IN RE: COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**DECLARATION OF CLASS MEMBER K. BRAEDEN ANDERSON IN SUPPORT OF OBJECTION TO CERTAIN TERMS OF THE PARTIES' PROPOSED SETTLEMENT**<br><br>Hon. Claudia Wilken |
|---|---|

1. I am an attorney duly licensed to practice law in New York and the District of Columbia.

2. After graduating from Seton Hall Law School, I worked as an associate at two national law firms: Sidley & Austin and Kirkland & Ellis. I now maintain my own law practice in the District of Columbia.

3. I am a 6-foot, 9-inch former forward and Division 1 basketball player, having played for Fresno State and Seton Hall. I played basketball for Fresno State from 2012-2015 and for Seton Hall from 2015-2016; from 2016-2017, I remained on the Seton Hall roster on full scholarship.

4. I am a member of the settlement class of D1 athletes in the above-captioned case, which class is represented by Winston & Strawn and Hagens Berman Sobol Shapiro LLP.

5. I have written about the Supreme Court's decision in *NCAA v. Alston*, 594 U.S. 69 (2021), including in a U.S. Law Week article of August 12, 2021, titled "Compensating College Athletes: Moving the Ball Forward," a true and correct copy of which is attached hereto as Exhibit A.

6. I am the author of the book "Black Resilience – The Blueprint for Black Triumph in the Face of Racism," Post Hill Press (2023). I have a demonstrated concern about the well-being of the Black community in general, including the economic rights to D1 athletes to receive full compensation for our labor.

7. I am concerned that all D1 athletes, especially Black athletes, have the opportunity to learn about the pending settlement so that these athletes can submit a claim form, opt-out, or as I have asked my counsel to do, submit an objection requesting modification of the settlement.

8. I did not know about the pending settlement until my attorney, Patrick A. Bradford, contacted me on January 16, 2025. Thereafter, I submitted a claim form online, but not without difficulty.

9. Once I learned about the pending settlement, I contacted many of my former D1 Basketball classmates, however I learned that the majority had not heard about the pending settlement.

10. My difficulties in submitting my claim form were as follows.

11. The online form contains a field marked with an asterisk for the claimant to enter an NCAA Eligibility Center ID:

*NCAA Eligibility Center ID

[   ]

12. When I first attempted to complete the online form, I did not have an NCAA Eligibility Center ID. In response to my correspondence requesting information necessary to submit my claim, the Claims Administrator advised:

    a. I could obtain my NCAA ID number by visiting www.eligibilitycenter.org; and

    b. I would be allowed to submit the claim without my NCAA ID number or PIN number by selecting "No" when asked if I had this information, as shown below:

> To submit a claim without claim ID and PIN, follow the steps below:
> Please click HERE and select "NO" when asked "Do you have a Claim ID and PIN, or a NCAA Eligit Center ID?" This will allow you to submit your claim. You will be asked to provide your NCAA Eligibili ID number on the claim form.

A true and correct copy of the Claims Administrator's response to my request is attached hereto as Exhibit B.

13. Neither of the representations in the response were accurate:

    i. The website, www.eligibilitycenter.org did not provide me with my NCAA ID number.

    ii. I was unable to submit the form, even after selecting "No" when asked if I had my NCAA ID number, because there was an asterisk next to the NCAA Eligibility Center ID field.

14. I reached out to Mr. Bradford, who put me in touch with Adam Dale, a partner in the New York City Office of Winston & Strawn. On January 17, 2025, Mr. Dale wrote, "You should be able to put 'unknown' in that field and submit. Let me know if that doesn't work." A true and correct copy of Mr. Dale's January 17, 2025, 10:29 a.m. email is attached hereto as Exhibit B.

15. I was ultimately able to submit my form by typing "unknown" in the field as Mr. Dale advised, however, that information was nowhere on the extensive claims website, https://www.collegeathletecompensation.com; nor did the Claims Administrator provide me with this necessary information when I requested it.

16. On January 17, 2025, Mr. Dale acknowledged in an email to me that the problem "was supposed to be fixed weeks ago. I asked them to fix it immediately." Exh. B. Later that day, Mr. Dale wrote in a subsequent email: "By the way, we fixed the NCAA Eligibility Center ID requirement on the claim form. Thanks for flagging." A true and correct copy of Mr. Dale's January 17, 2025, 1:28 p.m. email is attached hereto as Exhibit C.

17. Thus, this basic claims form submission problem was corrected only fourteen (14) days before the January 31, 2025 deadline. As I stated to Mr. Dale during our email correspondence, typing "unknown" in the NCAA Eligibility Center ID section of the claims form is not intuitive. Exh. B.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true. Executed this _____ day of January, 2025 at

_____, _____.

_____
K. BRAEDEN ANDERSON

# EXHIBIT A

US Law Week
Aug. 12, 2021, 4:01 AM EDT

# Compensating College Athletes: Moving the Ball Forward

By Braeden Anderson and Michael Schmidtberger

The U.S. Supreme Court's decision on NCAA policy for college athletes' educational benefits opened the door for their compensation, say Sidley Austin LLP's Michael Schmidtberger and Braeden Anderson, who played college basketball for Seton Hall while he attended law school. But the NCAA needs to change its business model to institute fair changes and improve transparency with athletes in mind, and not for its own bottom line, they say.

In a unanimous decision, the U.S. Supreme Court rejected the NCAA's arguments that its system of "amateurism" should receive blanket protection under the antitrust laws. The court altered the rules of the game for compensation of college athletes, and signaled that more change may be on the way through future litigation.

The court's opinion in *NCAA v. Alston*, written by Justice Neil Gorsuch, sets the stage for colleges and conferences to exercise leadership in moving the ball forward in a thoughtful, fair, and practical way.

### NCAA Lost Touch With the Needs of Student Athletes

In *Alston*, the court upheld a lower court's injunction against restrictions on education-related compensation to student-athletes. Subjecting the NCAA to the same antitrust rules as other organizations, it rejected its own comment in a 1984 opinion that "there can be no question" that the NCAA needs "ample latitude" to play its "critical role in the maintenance of a revered tradition of amateurism in college sports."

The court's newfound skepticism is warranted. The NCAA had sought the protection of a "revered tradition" of amateur college play without providing a consistent meaning for "amateurism." While the NCAA in this case did not even argue that its rules served the interests of student-athletes, and instead defended its rules on the ground that consumers (sports fans) preferred an amateur product, the organization has not always focused on the interests of the spectator over those of the athlete.

The NCAA was founded in 1906 to protect student-athletes, but it has undeniably lost touch with this mission along the way. The *Alston* decision provides notice that it is time for the NCAA to regain its focus on the interests of student athletes—and enact rules that not only financially reward athletic participation but also protect and support the academic benefits promised to student athletes.

### NCAA Rules Should Not Revolve Around Its Financial Interest

NCAA rules should no longer revolve around the protection of their own financial interests. These sentiments are broadly supported by Justice Brett Kavanaugh in his concurrence, which rejects the NCAA's defense of its "amateurism" system. Kavanaugh stated the following: "In my view, that argument is circular and unpersuasive," and, "the NCAA's business model would be flatly illegal in almost any other industry in America."

Kavanaugh's concurrence makes an important and practical point about capitalism in the U.S. In this nation, we believe that each individual should enjoy the right to share in the profits of his or her labor. The court's decision in *Alston* anticipates further scrutiny of non-education compensation of student-athletes, including fair compensation for work performed.

*Alston* marks a historic moment and a turning point, but this is only the beginning. This case represents an opportunity for the NCAA and its conferences to exercise leadership. NCAA governance bodies took an important first step on June 30, adopting a uniform interim policy suspending NCAA name, image and likeness (NIL) rules for all incoming and current student-athletes in all sports—but much more needs to be done.

### NCAA Business Model Should Serve Educational Needs

The NCAA's suspension on NIL restrictions does not resolve the broader issue with the "amateur" system, or absolve the NCAA's need to further enhance its business model to serve the educational interests of college athletes.

If the NCAA wants to create a system of true amateurism, then it must lead all stakeholders, including Congress, in proposing and implementing the following fair and pragmatic reforms:

- Lifting limits on financial aid for student-athletes and expanding funding for educational pursuits;
- Enforcing limitations on mandatory sport-related activities;
- Providing student-athletes with the ability to negotiate and profit from commercial licensing agreements; and
- Granting student-athletes freedom to form a players' associations, and be represented by legal counsel.

Improving Transparency With Students

As for transparency, the NCAA should consider:

- Requiring member schools to institute and enforce more rigorous academic requirements for student-athletes;
- Prohibiting member schools from creating academic courses offered solely to student-athletes;
- Prohibiting member schools from providing recruits with forecasts or projections as to their future professional sports prospects;
- Requiring member schools to disclose to all potential recruits the percentages of student-athletes from that particular school, that school's conference, and the entire NCAA who have successfully been drafted onto professional sports teams after playing in the NCAA for the past 10 academic years, and indicate which level of professional sports team for each alumnus (i.e., indicate if an alumnus reached minor league baseball or if they reached the major league);
- Requiring member schools to disclose to all potential recruits the true time commitment for a player on the school's NCAA team—inclusive of conditioning and travel;
- Requiring member schools to have in place a comprehensive well-being program;
- Requiring member schools to disclose the graduation rates of the general undergraduate population and the student-athlete population; and
- Requiring member schools to disclose the transfer rates of the general undergraduate population and the student-athlete population.

If the NCAA can execute on the objectives enumerated above and work proactively and collaboratively, with universities and student-athletes, to improve the financial and non-financial benefits to student-athletes, the best interests of all parties, including the NCAA, will be served.

The alternative in the best case would be involve years of additional litigation, a patchwork of state laws, all with uncertain results and potential remedies that in the long run may not serve the best interests of any of the parties or amateur sports in general.

The alternative in the worst case could mean the death of the NCAA and the amateurism system as we know it.

*This column does not necessarily reflect the opinion of The Bureau of National Affairs,Inc. or its owners.*

*Write for Us: Author Guidelines*

## Author Information

*Braeden Anderson is an associate with Sidley Austin LLP. He played basketball for the Seton Hall Pirates where he won the Big East Conference Championship while attending law school.*

*Michael Schmidtberger is chairman of Sidley's Executive Committee.*

*This article has been prepared for informational purposes only and does not constitute legal advice. This information is not intended to create, and the receipt of it does not constitute, a lawyer-client relationship. Readers should not act upon this without seeking advice from professional advisers. The content therein does not reflect the views of the firm.*

© 2025 Bloomberg Industry Group, Inc.   All Rights Reserved

# EXHIBIT B

**Patrick Bradford**

| | |
|---|---|
| From: | Dale, Adam I. |
| Sent: | Friday, January 17, 2025 11:24 AM |
| To: | Braeden Anderson; Patrick Bradford |
| Subject: | RE: [External] A question from an NIL settlement class member about registering for a claim without an NCAA Eligibility Center ID |

Yes – it was supposed to be fixed weeks ago. I asked them to fix it immediately.

**Adam I. Dale**
Winston & Strawn LLP

winston.com

**WINSTON & STRAWN**
LLP

From: Braeden Anderson
Sent: Friday, January 17, 2025 11:23 AM
To: Dale, Adam I.                             Patrick Bradford
Subject: Re: A question from an NIL settlement class member about registering for a claim without an NCAA Eligibility Center ID

Thanks, I was able to put "unknown" in the field. I think this should be explained for folks – not intuitive.

**K. BRAEDEN ANDERSON**
Principal Attorney

**ANDERSON P.C.**
1717 K Street NW, Suite 900
Washington, D.C. 20006

***************************************************************

This e-mail is sent by a law firm and may contain privileged and confidential information, including attorney-client communications and attorney work product. If you are not the intended recipient, please delete this e-mail and any attachments immediately, and notify the sender. Unauthorized use, disclosure, or distribution of this communication is prohibited.

***************************************************************

From: Dale, Adam I.
Date: Friday, January 17, 2025 at 10:29 AM
To: Patrick Bradford                                       , Braeden Anderson

**Subject:** RE: A question from an NIL settlement class member about registering for a claim without an NCAA Eligibility Center ID

Braeden,

You should be able to put "unknown" in that field and submit. Let me know if that doesn't work.

**Adam I. Dale**
Winston & Strawn LLP

winston.com

**WINSTON & STRAWN**
LLP

**From:** Patrick Bradford
**Sent:** Friday, January 17, 2025 10:27 AM
**To:** Braeden Anderson
**Cc:** Dale, Adam I.
**Subject:** A question from an NIL settlement class member about registering for a claim without an NCAA Eligibility Center ID

Dear Braeden, If what you are saying is that after selecting "no," the electronic form requires you to put in an ID number in order to actually submit the form, that is a REAL problem. I'm copying Adam Dale, a partner at Winston & Strawn who is representing class members like you. Adam says he is authorized to answer questions about the claims process. If you really cannot submit a claims form electronically without a Claim ID/PIN or ACAA Eligibility Center ID, I think the court should know. And the website should tell you want to do. Best, Patrick

**From:** Braeden Anderson
**Sent:** Friday, January 17, 2025 10:16 AM
**Subject:** Re: [External] final draft of press release

You can't – it is a required field.

*Mobile Number

[redacted]

*Email Address

[redacted]

*NCAA Eligibility Center ID

## 2. Basic Eligibility Information

Please fill out the below to confirm the year(s), the sport(s), and the s< competed in Division I college athletics.

☑ **2015-2016 Academic Year**

**K. BRAEDEN ANDERSON**
Principal Attorney

**ANDERSON P.C.**
1717 K Street NW, Suite 900
Washington, D.C. 20006
[redacted]

*********************************************************************************
This e-mail is sent by a law firm and may contain privileged and confidential information, including attorney-client communications and attorney work product. If you are not the intended recipient, please delete this e-mail and any attachments immediately, and notify the sender. Unauthorized use, disclosure, or distribution of this communication is prohibited.
*********************************************************************************

**From:** Patrick Bradford
**Date:** Friday, January 17, 2025 at 10:03 AM
**Subject:** RE: [External] final draft of press release

The idea is to submit your form using the "without ID" option so that you get it in on time. Once it's in on time, there's time to verify the information, including time to find each player's correct numbers.

**From:** Braeden Anderson
**Sent:** Friday, January 17, 2025 9:28 AM
**Subject:** Re: [External] final draft of press release

Re: Claim ID and PIN - Urgent 



○ Claims Administrator <collegeathletecompensation@admin.kccllc.com>
**To:** ○ Braeden Anderson

Thank you for contacting the College Athlete Compensation Settlement information center.

You may locate your NCAA ID number by visiting www.eligibilitycenter.org.

To submit a claim without claim ID and PIN, follow the steps below:
Please click HERE and select "NO" when asked "Do you have a Claim ID and PIN, or a NCAA Eligibility Center ID?" This will allow you to submit your claim. You will be asked to provide your NCAA Eligibility ID number on the claim form.

For further information, we invite you to visit College Athlete Compensation

Regards,

**Eveline**
Customer Service Agent
Settlement Administration

**From:**
**Sent:** Friday, January 17, 2025 8:22 AM
**To:** admin@collegeathletecompensation.com
**Subject:** Claim ID and PIN - Urgent

Hi, I am reaching out to request my NCAA Eligibility ID / Claim ID and PIN number. My name is Braeden Anderson. I played at Fresno State and Seton Hall University. 2012-2016.

**K. BRAEDEN ANDERSON**
Principal Attorney

4

**ANDERSON P.C.**
1717 K Street NW, Suite 900
Washington, D.C. 20006

***

This e-mail is sent by a law firm and may contain privileged and confidential information, including attorney-client communications and attorney work product. If you are not the intended recipient, please delete this e-mail and any attachments immediately, and notify the sender. Unauthorized use, disclosure, or distribution of this communication is prohibited.

***

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# EXHIBIT C

# EXHIBIT C

# Patrick Bradford

| | |
|---|---|
| **From:** | Dale, Adam I. |
| **Sent:** | Friday, January 17, 2025 1:28 PM |
| **To:** | Patrick Bradford; Braeden Anderson |
| **Subject:** | RE: [External] Can you answer Braeden's question - RE: [External] NCAA Eligibility Center ID Request - URGENT |

When you submitted your claim, you should have received a ClaimID/Confirmation number. Email admin@collegeathletecompensation.com and include the confirmation number you received and say you got your NCAA Eligibility Center ID and that you want to add it to the file.

By the way, we fixed the NCAA Eligiblity Center ID requirement on the claim form. Thanks for flagging.

**Adam I. Dale**
Winston & Strawn LLP

winston.com


WINSTON
&STRAWN
LLP

**From:** Patrick Bradford
**Sent:** Friday, January 17, 2025 1:25 PM
**To:** Braeden Anderson
**Cc:** Dale, Adam I. <AIDale@winston.com>
**Subject:** Can you answer Braeden's question - RE: [External] NCAA Eligibility Center ID Request - URGENT

Adam, Can you answer Braeden's question below? Should he resubmit his claim form using his ID number now that he has it? Thanks, Patrick

**From:** Braeden Anderson
**Sent:** Friday, January 17, 2025 1:04 PM
**To:** Patrick Bradford
**Subject:** Fw: [External] NCAA Eligibility Center ID Request - URGENT

Is there any way for you to retroactively add this to my submission?

**K. BRAEDEN ANDERSON**
Principal Attorney

**ANDERSON P.C.**
1717 K Street, Suite 900
Washington, D.C. 20006

1

From: Stefany Valentino
Sent: Friday, January 17, 2025 12:29:21 PM
To: Braeden Anderson
Cc: Deontae Grist
Subject: Re: NCAA Eligibility Center ID Request - URGENT

Hello Braeden,

Your NCAA ID number is ▓▓▓▓▓ Please let me know if you need any other information.

On Fri, Jan 17, 2025 at 8:57 AM Robert Acunto <racunto@mail.fresnostate.edu> wrote:

Hi Braeden,

Good morning.

By way of this email I am connecting you with two members of our Compliance Office, Deontae Grist and Stefany Valentino, who will be able to provide you with your NCAA Eligibility Center/Clearinghouse ID number.

Respectfully,
Rob

On Fri, Jan 17, 2025 at 6:46 AM Braeden Anderson <braeden@anderpc.com> wrote:

Hi there – I played men's basketball for Fresno State from 2012 – 2015. I am requesting my NCAA Eligibility Center / Clearing House ID Number. Can you please advise at your earliest convenience?

This is extremely time sensitive.

Thanks much.

K. BRAEDEN ANDERSON

Principal Attorney

2

ANDERSON P.C.

1717 K Street NW, Suite 900

Washington, D.C. 20006

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This e-mail is sent by a law firm and may contain privileged and confidential information, including attorney-client communications and attorney work product. If you are not the intended recipient, please delete this e-mail and any attachments immediately, and notify the sender. Unauthorized use, disclosure, or distribution of this communication is prohibited.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

--

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.