Gerry Goldstein
32362 Ridgeway Ave
Laguna Niguel, CA 92677
gerry.goldstein@gmail.com
949-274-2633

January 30, 2025

National Collegiate Athletic Association
700 W. Washington Street
Indianapolis, IN 46206

Subject: Concerns Regarding the Impact of Proposed Roster Limits on Student-Athletes' NIL
Opportunities and Collegiate Experience

Dear NCAA Leadership,

As a parent of a freshman and sophomore college athlete that plays Men's Volleyball at the
Division 1 level, I am writing to express serious concerns regarding the proposed roster limits
set to be implemented in the 2025-26 academic year (College Athlete NIL Litigation, Case No.
4:20-cv-03919). While I understand the NCAA's efforts to expand scholarship opportunities,
these roster limits may unintentionally create profound negative consequences for student-
athletes, including diminished NIL (Name, Image, and Likeness) opportunities, reduced access
to essential student benefits, and other lasting life and career impacts related to sudden
changes in participation in their sport.

First and foremost, the new proposed roster limits unfairly impact athletes who have dedicated
significant portions of their lives to their sport and have selected a college in large part due to
the athletic opportunity and 4-year commitment from the university. Many of these young
individuals have been training from an early age, making considerable personal sacrifices to
excel in their chosen disciplines. For those who made college decisions based on the
combination of college and athletic opportunities, the sudden risk of elimination of the athletic
opportunity undermines years of hard work and strategic academic and athletic planning.

Additionally, the sudden removal from a collegiate sports program imposes unanticipated
financial burdens on affected athletes and their families. Without adequate preparation, athletes
who are removed from rosters may face increased tuition costs, loss of stipends, or additional
expenses for housing and academic support. Many student-athletes structure their academic
and career paths around the assumption of continued athletic participation. Stripping these
opportunities on short notice and with little recourse can have lasting impacts on their
educational trajectories and professional prospects.

Moreover, the imposition of roster caps threatens to strip athletes of key benefits that are
essential for their collegiate success. Many student-athletes currently receive housing support,

academic tutoring, and class registration priority—benefits that support their demanding dual roles as students and athletes. When athletes lose roster spots due to these new caps, they stand to lose access to these vital resources, putting their college success in jeopardy.

The proposed changes will also have cascading effects on high school athletes. As displaced collegiate athletes seek to continue their athletic careers by transferring to other programs via the transfer portal, high school athletes will face reduced opportunities to secure roster spots at the collegiate level. This influx of experienced college athletes into the transfer portal will create a highly competitive environment, squeezing out new entrants who have trained diligently throughout their high school years.

The legal implications of these changes are also worth noting. In *Pavia v. National Collegiate Athletic Association*, the court recognized the undue restraint imposed by certain NCAA eligibility bylaws. The parallels are clear: imposing restrictive roster caps may similarly violate antitrust principles by arbitrarily limiting athletes' opportunities to compete and monetize their NIL rights during their college sports eligibility. Such limits could invite legal challenges, further complicating an already contentious landscape.

In light of these significant concerns, I urge the NCAA to reconsider the implementation of these roster limits. A more inclusive and equitable solution must be sought—one that expands scholarship opportunities without stripping existing athletes of their rightful participation, benefits, and futures.

I respectfully recommend that the NCAA grandfather in all existing college athletes to ensure ongoing ability to participate in their sport of choice and engage in dialogue with athletes, coaches, and legal experts to explore alternatives that support both athletic and academic development while minimizing harm to student-athletes.

Thank you for your thoughtful consideration.

Sincerely,

Gerry Goldstein