

Alex R. Straus
Partner
280 Beverly Hills Drive
Beverly Hills, CA 90212
Telephone: 855-252-0878
Facsimile: 919-600-5035

January 30, 2025

Re:  OBJECTION TO SETTLEMENT
     IN RE: COLLEGE ATHLETE NIL LITIGATION, CASE NO. 4:20-CV-03919

Hon. Claudia A. Wilken
Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street Oakland, CA 94612

Dear Judge Wilken:

   Class members Reese Brantmeier and Maya Joint (the "Tennis Prize Money Objectors") object to two aspects of the Injunctive and Damages Class settlement: 1) the scope of the Releases, which may be misconstrued to encompass claims they have asserted in *Brantmeier v. NCAA*, M.D.N.C. No. 1:24-CV-00238-CCE-JEP ("*Brantmeier*") that have a different factual predicate than those in this case; and 2) the request that this Court "approve all existing NCAA rules regarding compensation and benefits that may or may not be provided by Division I conferences or schools to student-athletes, revised as necessary to conform to the terms of this Injunctive Relief Settlement." Both of these provisions violate a fundamental limitation on Class Action releases: that a Class Action settlement can release only claims that were litigated, or that arise from an "identical factual predicate," as the settled case. *House v. NCAA*, 545 F. Supp.3d 804, 819 (N.D. Cal. 2021) (Wilken, J.). Independently of this limitation, the excessively broad releases are fundamentally unfair to those Class members who receive no consideration for releasing claims that were not alleged in the Third Amended Complaint or otherwise litigated.

   I.   **THE *BRANTMEIER V. NCAA* LITIGATION**

   Brantmeier and Joint are the named plaintiffs in *Brantmeier,* a putative class action against the NCAA. The first complaint in that action was filed on March 18, 2024. Brantmeier, on behalf of a putative class, alleged that the NCAA's rules barring athletes competing in Individual Sports from accepting most prize money offered by professional sports tournaments, constituted a group boycott violating the Sherman Act, and sought injunctive relief from these restrictions. *Brantmeier*, Dkt. 1.

On March 20, 2024, Counsel for NCAA notified Brantmeier's Counsel that they planned to designate the Action as a potential tag along to a pending MDL petition that would have transferred *Brantmeier* to this Court as related to *Carter v. NCAA*. *See Fontenot v. National Collegiate Athletic Association*, MDL-3105. The MDL Petition was denied, with the Panel noting that "the related actions identified by the parties [including B*rantmeier*] differ from the actions on the motion in important ways." *Order Denying Transfer*, MDL-3105, Dkt. 43 at 2 & n.1 (J.P.M.D.L. Apr. 11, 2024).

Following full briefing and oral argument, the *Brantmeier* Court denied Plaintiff Brantmeier's Motion for Preliminary Injunction on October 7, 2024. *Brantmeier,* Dkt. 51. Brantmeier and Joint together filed an Amended Complaint on November 8, 2024, adding Joint as a second plaintiff, limiting the scope of the proposed Class to tennis players, and adding a claim for compensatory damages. *Brantmeier,* Dkt. 58, attached as Exhibit A. The NCAA has answered the Amended Complaint, asserting that the claims are barred in whole or in part by the *House*, *Hubbard*, *Carter* and *Fontenot* actions. *Brantmeier*, Dkt. 64, at 48. Discovery is ongoing, and trial is set for September 2026.

## II.     THE TENNIS PRIZE MONEY RESTRICTIONS

In *Brantmeier*, Brantmeier and Joint seek to represent a Class of individuals who won prize money at non-NCAA tennis tournaments, and were faced with a Hobson's choice between forfeiting their prize money to maintain their NCAA eligibility, or accepting prize money and forfeiting any opportunity to compete in the NCAA. The requirement to forfeit either prize money or NCAA eligibility is embodied in NCAA Bylaws 12.1.2(a) and (d), subject to limited exceptions for tennis players described in bylaws 12.1.2.4.2.1 and 12.1.2.4.2.1:

> **12.1.1 Validity of Amateur Status.** As a condition and obligation of membership, it is the responsibility of an institution to determine the validity of the information on which the amateur status of a prospective student-athlete (including two-year and four-year college transfers initially enrolling at an NCAA Division I institution) and student-athlete is based.
>
> 1**2.1.2 Amateur Status.** An individual loses amateur status and thus shall not be eligible for intercollegiate competition in a particular sport if the individual:
>
> (a) Uses athletics skill (directly or indirectly) for pay in any form in that sport;
>
> . . .

Hon. Claudia A. Wilken                                Page 3                                January 30, 2025

(d) Receives, directly or indirectly, a salary, reimbursement of expenses or any other form of financial assistance from a professional sports organization based on athletics skill or participation, except as permitted by NCAA rules and regulations; . . .

**12.1.2.4.2 Exception for Prize Money -- Tennis.** . .

**12.1.2.4.2.1 Prior to Full-Time Collegiate Enrollment**. In tennis, prior to full-time collegiate enrollment, an individual may accept up to $10,000 per calendar year in prize money based on place finish or performance in athletics events. Such prize money may be provided only by the sponsor of an event in which the individual participates. Once the individual has accepted $10,000 in prize money in a particular year, the individual may receive additional prize money on a per-event basis, provided such prize money does not exceed the individual's actual and necessary expenses for participation in the event. The calculation of actual and necessary expenses shall not include the expenses or fees of anyone other than the individual (e.g., coach's fees or expenses, family member's expenses).

**12.1.2.4.2.2 After Initial Full-Time Collegiate Enrollment**. In tennis, after initial full-time collegiate enrollment, an individual may accept prize money based on place finish or performance in an athletics event. Such prize money may not exceed actual and necessary expenses and may be provided only by the sponsor of the event. The calculation of actual and necessary expenses shall not include the expenses or fees of anyone other than the individual.

Ex. A ¶ 52, quoting 2024-25 NCAA Bylaws

Brantmeier and Joint contend that these restrictions (the "Tennis Prize Money Restrictions") violate the Sherman Act. These restrictions preclude prospective NCAA tennis student-athletes from accepting prize money greater than $10,000 or the amount of their actual and necessary expenses for a particular event, as defined by the NCAA, before they have even joined an NCAA team, and greater than the amount of expenses incurred after they have joined an NCAA team. Once these tennis players enroll with an NCAA member institution, they are only permitted to accept their actual and necessary expenses. Brantmeier and Joint seek both injunctive relief to end the loss of NCAA eligibility for acceptance of Tennis Prize Money, and damages for out-of-pocket losses incurred by prospective, current, and former student-athletes related to the forfeiture of prize money in non-NCAA tennis events. Ex. A, Prayer for Relief.

### III. THE OBJECTORS

#### a. Reese Brantmeier

Brantmeier is currently a junior student-athlete receiving a full athletic scholarship at the University of North Carolina at Chapel Hill ("UNC" or the "Tar Heels"), competing for its NCAA Division I women's tennis team. Ex. A ¶ 18. She represented UNC in intercollegiate competition as a freshman and sophomore, and is listed as eligible to receive benefits from this settlement on the settlement website. She is a Member of the Additional Sports Class.

In August 2021, prior to her enrollment at UNC, Brantmeier was a finalist and first runner-up in the United States Tennis Association ("USTA") Billie Jean King Girls 18's National Championship in singles, which qualified her to play in the 2021 US Open Qualifying Tournament at the US Open in Flushing Meadows, New York. *Id.* ¶ 74. Brantmeier advanced to the third round of singles in the 2021 US Open Qualifying Tournament and competed in the first round of the main draw of the 2021 US Open Mixed Doubles Championship. *Id.* ¶ 75.

As a result of her performance in the 2021 US Open, Brantmeier was entitled to receive $49,109 in total Tennis prize money from the USTA— $45,109 for advancing to the third round in singles, and $3,900 for playing in the first round of mixed doubles. After deducting an automatic racquet stringing charge, Brantmeier earned a total of $48,913 in prize money. *Id.* ¶ 77. However, because of the NCAA's Prize Money Restrictions, she was was forced to forfeit much of the Tennis Prize Money she earned at the 2021 US Open as well as other tournaments in 2021, lest she jeopardize her eligibility to play college tennis. In total, the NCAA's Tennis Prize Money Restrictions deprived her of such money earned at the 2021 US Open and caused economic damage in the amount of $35,040. *Id.* ¶ 80.

Subsequently, the NCAA disputed her calculation of the amount of expense reimbursement she had been permitted to retain from her past tournaments, and required her to donate an additional $5,100 of her past winnings to charity before certifying her eligibility to play for the Tar Heels. *Id.* ¶ 87.

#### b. Maya Joint

Joint received a full tennis scholarship to enroll in the University of Texas in the Fall of 2024. She was Texas tennis roster in the Fall of 2024, and is listed as eligible to receive benefits from this settlement on the settlement website. She is a Member of the Additional Sports Class.

Prior to college, Joint was a heavily recruited tennis player out of Grosse Pointe, Wayne County, Michigan. She was the No. 3 ranked women's tennis player in the United States and the No. 1 ranked women's tennis player in Michigan for the 2024 high school class. As of July

Hon. Claudia A. Wilken                          Page 5                          January 30, 2025

2024, she is ranked No. 179 and No. 282 in the world in women's singles and doubles tennis, respectively, by the WTA. Ex. A ¶ 27. Joint received full scholarship offers from colleges and universities throughout the United States but ultimately accepted a full scholarship offer from Texas. She signed her National Letter of Intent in November 2023 and enrolled at Texas in August of 2024. *Id.* ¶ 28. As a dual citizen of Australia and the United States, Joint currently competes under the Australian flag. For the calendar year preceding her enrollment at Texas, Joint competed and trained through Tennis Australia, the national governing body of tennis in Australia and analogous to the United States Tennis Association.

Joint advanced to the third round of singles in the Qualifying Tournament 2024 Australian Open in Melbourne, Australia and lost in first round of the mixed doubles main draw. *Id.* ¶ 96. As a result of her performance, Joint earned and was entitled to $68,450 AUD ($45,163 USD) in tennis prize money from Tennis Australia— $65,000 AUD for advancing to the third round in singles and $3,450 AUD for the first round of mixed doubles. *Id.* ¶ 97. As a junior tennis player, and in order to preserve her eligibility to play collegiate tennis in the United States, Joint was then subject to the NCAA's Tennis Prize Money Restrictions, specifically Bylaw 12.1.2.4.2.1 applying to tennis prize money acceptance prior to college enrollment. Ex. A ¶ 98. By operation of such restrictions, Joint was only permitted to accept $8,987 AUD ($5,929 USD) in tennis prize money for her finish in the 2024 Australian Open, forfeiting the remaining $59,463 AUD ($39,234 USD). *Id.* ¶ 99. In July 2024, Joint competed in the Qualifying Competition at the 2024 Wimbledon in London, England, where she advanced to the second round in the singles competition and earned £25,000 GBP ($32,282 USD) in tennis prize money from the All England Lawn Tennis & Croquet Club. *Id.* ¶ 100. However, by operation of the above Tennis Prize Money Restrictions, she was again forced to forfeit approximately £15,000 GBP ($19,370 USD) in prize money funds. *Id.* ¶ 101.

As of August 10, 2024, Joint was enrolled and considered an active student-athlete at Texas. Accordingly, she was subject to Bylaw 12.1.2.4.2.2 of the NCAA's Tennis Prize Money Restrictions, which does not permit acceptance of up to $10,000.00 in prize money per calendar year, as is allowed prior to college enrollment. *Id.* ¶ 104.

In late August 2024, Joint advanced to the second round of the main draw in the 2024 US Open in Flushing Meadows, New York. As a result of her performance, Joint earned and was entitled to $146,657 in prize money from the USTA, including stipends and per diems. *Id.* ¶ 103. By operation of such Tennis Prize Money Restrictions, Joint was forced to forfeit a substantial portion of what she had earned at the conclusion of the US Open on September 8, 2024. *Id.* ¶ 105.

Hon. Claudia A. Wilken     Page 6     January 30, 2025

## IV. THE DEFINITIONS OF "RELEASED CLASS CLAIMS"[1] ARE IMPERMSSIBLY BROAD AND VIOLATE NINTH CIRCUIT PRECEDENT ON THE PERMISSIBLE SCOPE OF SETTLEMENT RELEASES

This Court has previously ruled that a class action settlement can release only claims that are "based on the identical factual predicate as that underlying the claims in the settled class action." *House*, 545 F. Supp.3d at 819 (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590-91 (9th Cir. 2010)); *see also In re Western States Natural Gas Litig.* 725 Fed. Appx. 560, 563 (9th Cir. 2018) (claims "that . . . depend on proof of different facts to establish a different injury" not released by prior class action); *In re Walgreen Co. Wage and Hour Litig.,* 747 Fed. Appx, 619, 619 (9th Cir. 2019) ("Though the release is broadly written, it is enforceable only as to subsequent claims based on the identical factual predicate as that underlying the claims in the settled class action").

This Court found that Tymir Oliver's claims in *House* were not released by the *Alston* settlement because, *inter alia*, "[t]hey are based on (1) challenges to some rules that were not challenged in *Alston* and (2) a legal theory that was not raised in *Alston*, which requires different facts from those litigated in *Alston*. . . " *House,* 545 F. Supp.3d at 819. This is also true for the claims in the *Brantmeier* action. First, *Brantmeier* challenges NCAA Bylaw 12.1.2.4.2, Ex. A ¶ 52, which is applicable only to tennis and is nowhere mentioned in the

---

[1] The terms in the Settlement Agreement are:

> "Released Damages Class Claims" means, for each of the Plaintiffs and each and every member of each of the Damages Settlement Classes who does not opt out, all manner of claims, . . . , that the Releasors, . . . ever had, . . . that . . . could have been raised in the Action prior to Final Approval (1) on account of, arising out of, or resulting from any and all previously existing NCAA and conference rules regarding monies and benefits that may be provided to student-athletes by the NCAA, Division I conferences and/or Division I Member Institutions, . . . For the avoidance of doubt, the Released Damages Class Claims do not include the Unreleased Claims.
> "Released Injunctive Class Claims" means all declaratory and injunctive relief claims, . . . that the Releasors, . . . ever had, ,. . . that . . . could have been raised in the Action prior to Final Approval or during the Injunctive Relief Settlement Term on account of, arising out of, or resulting from the continuation of existing (at the time of filing for preliminary approval of the Injunctive Relief Settlement) NCAA and conference rules, . . . , regarding (1) monies and benefits that may be provided to student-athletes by the NCAA, Division I conferences, and/or Division I Member Institutions under NCAA or conference rules .. . For the avoidance of doubt, the Released Injunctive Class Claims do not include the Unreleased Claims.

Amended Settlement Agreement, Dkt. 535-1, ¶¶ 1(oo) and 1(pp).

Hon. Claudia A. Wilken                    Page 7                    January 30, 2025

Third Amended Complaint. Second, the legal theory in *Brantmeier* requires the critical fact that plaintiffs and Class members in that case had been awarded prize money in non-NCAA tournaments, *id.* ¶ 151, a fact irrelevant to, and not pleaded in, the *House* Third Amended Complaint.

Indeed, the claims in *Brantmeier* have a far different factual predicate – that is, require proof of different facts -- than the claims in this action. Brantmeier and Joint must establish that they have played in non-NCAA tennis tournaments, were awarded tennis prize money that exceeded the amount that NCAA rules permitted them to retain, and consequently either forfeited a portion of the prize money, or forfeited their NCAA eligibility. No such evidence is part of the factual predicate of *House*, where the "Plaintiffs request an injunction permanently restraining Defendants from enforcing all of their unlawful and anticompetitive rules that restrict the compensation available to class members *from conferences and schools*, . . ." and seek damages for "compensation that these class members would have received *fromschools or conferences* absent Defendants' unlawful restraints on pay-for-play compensation and the compensation that these class members would have received for their NILs from third parties in individual NIL agreements . . . ." Third Amended Complaint ¶¶ 8, 11 (emphases added). Forfeited prize money is not money that student-athletes would have received *from schools or conferences*, or *from NIL contracts*. In fact, there are no allegations at all regarding acceptance or forfeiture of tennis prize money in the *House* Third Amended Complaint. Nor did any of the Class Representatives allege that they played either professional or collegiate tennis.

Another clear difference between the factual predicates for the cases is that the Injunctive Relief Class in *House* is limited to "All student-athletes who compete on, or competed on, a Division I athletic team at any time between June 15, 2020 through the date of any injunctive relief ordered by the Court," *Id.* ¶ 312, while the proposed Class in *Brantmeier* includes individuals who competed in non-NCAA tennis tournaments that award prize money, but who have not competed within the NCAA, and may not compete within the NCAA before the ending date of injunctive relief ordered in this case. Ex. A ¶ 151(a).

A district court's approval of a settlement that releases claims based on a non-identical factual predicate than those pleaded is an abuse of discretion and reversible error. *Belew v. Brink's Inc.,* 721 Fed. Appx. 734, 735 (9ᵗth Cir. 2018) ("There was an abuse of discretion in approving the Joint Stipulation that included an overbroad release of claims."). Even though it may be unenforceable, the scope of the release in the settlement will mislead Class Members into believing that they have settled their Tennis Prize Money claims.

Affiliates/Locations | California | Georgia | Kentucky | Mississippi | New Jersey | New York | North Carolina |
Puerto Rico | South Carolina | Tennessee | Washington |
Netherlands | Portugal | United Kingdom
**www.milberg.com**

Hon. Claudia A. Wilken					Page 8					January 30, 2025

NCAA Bylaw 12.1.2 declares student-athletes ineligible for competition if they accept prize money beyond permitted amounts, and precludes schools from offering scholarships to players who are ineligible for competition, so the claims in *Brantmeier* might be construed to be "Released Damages [and Injunctive] Class Claims." The absence of *Brantmeier* in the definition of "Unreleased Claims," Dkt. 535-1 ¶ 1(vv), increases the risk of such a construction.

The definitions are overly broad, and could be misinterpreted to encompass many claims that do not rely on an "identical factual predicate" as *House*, including those alleged in *Brantmeier*, even though they were not litigated in *House,* are not remedied by the proposed settlement, and are not the basis for any part of the consideration available to members of the Additional Sports Class. Specifically, the Prize Money Restrictions arguably affect "monies and benefits that may be provided to student-athletes by the NCAA, Division I conferences, and/or Division I Member Institutions under NCAA or conference rules" because they prevent the member institutions from providing benefits - i.e. the benefit of being able to compete in intercollegiate athletics - to tennis players who have previously

Aside from legality, requiring Class members to release claims that were not litigated in the Class Action, and could not have been litigated by any of the Class Representatives, is fundamentally unfair. Brantmeier, Joint and the tennis players they seek to represent gain nothing relevant to their concerns in the settlement in exchange for the possible release of these claims. Neither the injunctive nor the damages settlement provides any greater benefit for Additional Sports Class members who, like Brantmeier and Joint and their putative class, have tennis prize money claims.[2] In short, their claims, although never litigated in this case, are given zero value.

### V.     THE COURT SHOULD REJECT THE PARTIES' REQUEST FOR APPROVAL OF HUNDREDS OF UNIDENTIFIED AND UNLITIGATED NCAA BYLAWS

Brantmeier and Joint also object to the Settlement Agreement's provision requesting that this Court make a legal determination regarding unidentified NCAA Bylaws that have not

---

[2] As the Intercollegiate Tennis Association noted in its comments on this settlement, "At the same time when it is reported that the pay of some football players is now three to four, or even six, million dollars per year, tennis players have been told that they may not accept prize money for well-earned victories at the U.S. Open Tennis Championships, a premiere Grand Slam event where the best in the world compete. This is also the case at other professional tennis tournaments." https://wearecollegetennis.com/2025/01/29/ita-submits-a-letter-of-concern-to-judge-claudia-wilken/

been the subject of this litigation. *See* Amended Settlement Agreement, Dkt. 535-1, Appendix 1, art. 4, § 2 ("The Parties shall request that the Court approve all existing NCAA rules regarding compensation and benefits that may or may not be provided by Division I conferences or schools to student-athletes, revised as necessary to conform to the terms of this Injunctive Relief Settlement"). Although a statement of "approval" by this Court would not bind another District Court, it prejudices the Tennis Prize Money Objectors because other courts may grant weight to such an "approval" in considering the validity of NCAA Bylaws.

Essentially, the NCAA is requesting that this Court issue an unprecedented declaratory judgment determining that *all* of the regulations in the 443 pages of Bylaws are lawful under the Sherman Act and all other laws, except for those challenged in the present litigation. What's more, such a blanket "approval" would conflict with rulings by other federal courts. *E.g.*, *Ohio v. NCAA,* 706 F. Supp.3d 583, 602 (N.D.W.Va. 2023) ("the NCAA is enjoined from enforcing the Transfer Eligibility Rule, NCAA Bylaw 14.5.5.1, insofar as it requires a transferor to sit out for an academic year of residence, and the Rule of Restitution, NCAA Bylaw 12.11.4.2 . . . .").[3] Many of the Bylaws, including those challenged in *Brantmeier*, apply only to a single sport, and few if any have affected the Class Representatives in this case. Absent an enumeration of all of the rules that may fit into the broad category, neither this Court nor the class members can possibly know the scope of what the Court is asked to approve. The Court, in effect, is being asked to enter judgment about a body of unidentified regulations that have not been litigated.

As to the *Brantmeier* claims in particular, the Court has no basis to determine the legality of the Tennis Prize Money Restrictions, or whether the injunctive relief settlement provides an adequate remedy for class members' release of those claims. These issues were not, and could not have been, litigated in the underlying actions. The Court should decline the Parties' invitation to rule on such unknown and unexplored matters.

## VI.   REMEDY

Brantmeier and Joint acknowledge that their concerns affect a small group of athletes relative to the numbers who may benefit from the proposed Settlement. Plaintiffs do not seek to upset the entire settlement. The Court and the settling parties can address the Objectors' concerns simply by adding *Brantmeier* to the definition of "Unreleased Claims." Dkt. 535-1, ¶ 1(vv). That definition now specifies claims in two pending cases, *Choh v. Brown* and *Johnson v. NCAA,* as well as any claims related to Title IX. Adding *Brantmeier* to the list of Unreleased Claims in the Final Approval Order would not impede final approval of

---

[3] After this ruling, Bylaw 14.5.5.1 has been amended, but Bylaw 12.11.4.2 has not been.

the settlement. *Belew*, 721 Fed. Appx. at 735 (reversing approval of class action settlement; ordering district court to enter a new Final Order eliminating release of specific claims that "were considered by [the defendant] to have zero value, and the settlement contained no separate consideration for those claims.").

This Court's declining to "approve" unnamed NCAA regulations would require no modification of the Settlement Agreement. The Agreement requires only that the Parties request this approval from the Court. Dkt. 535-1, App. 1, art. 4, § 2. The Court's denial of this request would not affect the scope or finality of the proposed settlement.

## VII. CONCLUSION

This Court should clarify that the *House s*ettlement does not release the claims now being litigated in *Brantmeier*, and refrain from granting blanket approval to NCAA Bylaws that have not been litigated in this litigation.

## VIII. REQUEST FOR ORAL ARGUMENT

The Tennis Prize Money Objectors request that their Counsel be permitted to participate in oral argument at the Final Settlement Hearing.

Sincerely,

/s/ Alex R. Straus
Alex R. Straus (SBN: 321366)
astraus@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 Beverly Hills Drive
Beverly Hills, CA 90212
Telephone: (855) 252-0878
Facsimile: (919) 600-5035

PEGGY J. WEDGWORTH
405 East 50th Street
New York, New York 10022
(212) 594-5300
pwedgworth@milberg.com

ARTHUR M. STOCK
900 W Morgan Street
Raleigh, North Carolina 27603
(919) 600-5000
astock@milberg.com

**MILLER MONROE  
& PLYLER, PLLC**  
JASON A. MILLER  
ROBERT B. RADER III  
WILLIAM W. PLYLER  
JOEL L. LULLA (*Of Counsel*)  
1520 Glenwood Avenue  
Raleigh, North Carolina 27608  
(919) 809-7346  
jmiller@millermonroe.com  
rrader@millermonroe.com  
wplyler@millermonroe.com  
Joel_lulla@yahoo.com  

Counsel for Objectors Reese Brantmeier and Maya Joint

Signed and approved by:

_____  
Reese Brantmeier  
W4025 Piper Rd,  
Whitewater, WI 53190-2937  
NCAA ID No. 2109322463

_____  
Maya Joint  
789 St. Clair St.  
Grosse Point MI  48230  
NCAA ID No 2205553534

**MILLER MONROE  
& PLYLER, PLLC**  
JASON A. MILLER  
ROBERT B. RADER III  
WILLIAM W. PLYLER  
JOEL L. LULLA (*Of Counsel*)  
1520 Glenwood Avenue  
Raleigh, North Carolina 27608  
(919) 809-7346  
jmiller@millermonroe.com  
rrader@millermonroe.com  
wplyler@millermonroe.com  
Joel_lulla@yahoo.com  

Counsel for Objectors Reese Brantmeier and Maya Joint

Signed and approved by:

_____  
Reese Brantmeier  
W4025 Piper Rd,  
Whitewater, WI 53190-2937  
NCAA ID No. 2109322463

*MJoint*

_____  
Maya Joint  
789 St. Clair St.  
Grosse Point MI  48230  
NCAA ID No 2205553534

Affiliates/Locations | California | Georgia | Kentucky | Mississippi | New Jersey | New York | North Carolina | Puerto Rico | South Carolina | Tennessee | Washington | Netherlands | Portugal | United Kingdom  
**www.milberg.com**

Document Ref: SEZZ7-QIRAJ-A4BUY-CUG5R