# Buchalter

1624 Market Street
Suite 400
Denver, CO 80202
303.253.6740 Phone

303.927.3028 Direct
ddepeppe@buchalter.com

January 31, 2025

**BY EMAIL AND OVERNIGHT MAIL**

Ronald V. Dellums Federal Building
& United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

      Re:    College Athletes NIL Litigation (No. 4:20V-03919 (N.D. Cal)

Dear Judge Wilken:

Through the undersigned counsel, we offer this objection letter on behalf of our clients who are NCAA Division I sport athletes on a team roster for the 2024 fall season, including redshirt and scholarship athletes. Our clients are Olympic sport athletes falling under the Additional Sport Class and Injunctive Relief Class. We are maintaining our clients' anonymity concerning this objection letter to avoid any potential negative consequences related to the publicity of this lawsuit and their objections to certain aspects of the proposed settlement.[1] Our clients received notification on January 24, 2025, via email from the "NCAA Settlements Administrator" to their university email address concerning their rights to participate in the settlement in the above-captioned litigation. Our clients hereafter are referred to as "the at-risk athletes" or "they."

The court preliminarily approved the proposed settlement on October 7, 2024. This letter presents the objection of the at-risk athletes concerning one aspect of the proposed settlement: the new roster limits the NCAA announced for every sport ("the roster limits"). Terms for the roster limits are contained in the Injunctive Relief Settlement, which is incorporated into the proposed settlement. According to pleadings in the lawsuit, "Only after agreeing to the principal terms of the injunctive relief settlement did the parties turn to discussions of damages." (*See* PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL; p.6) Thus, coming to terms concerning the roster limits provision was evidently a predicate for negotiating financial terms of the settlement.

---

[1] We note that a named plaintiff, Grant House, has publicly acknowledged receiving threats from this lawsuit. *See* https://swimswam.com/grant-house-says-hes-received-death-threats-over-house-v-ncaa-lawsuit/

buchalter.com

Los Angeles
Denver
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

# Buchalter

Ronald V. Dellums Federal Building
& United States Courthouse
January 31, 2025
Page 2

The at-risk athletes were informed by their coaches that the roster limits jeopardized their future on the team. This notice was similar to the risk disclosed by coaches to dozens of other athletes at the at-risk athletes' school. Media reports suggest that many thousands of similarly situated athletes across the country received similar at-risk notices since the court's preliminary approval of the proposed settlement. Insofar as scholarship money is involved with our clients, if cut from the sports program as a result of the roster limits, financial harm will occur. On information and belief, all Division I athletes who lose their roster spot from implementation of this NCAA governance change will lose their athletic scholarship funding (and the opportunity to participate in sport-related NIL monetization).

In several other letters of objection to the proposed settlement, this Honorable Court has been urged to compel changes to the proposed settlement terms. Indeed, in an unusual circumstance, the named plaintiffs (Grant House, Sedona Prince and Nya Harrison), independent from their respective attorney representation in this case, voiced concern about "a critical need for structural changes to protect athletes and to prevent the failures of the past [by the NCAA]…" (December 2, 2024, letter to the court from House, Prince, and Harrison). Moreover, while addressing the roster limits matter, former athlete Noah Henderson's letter to the court complained that the settlement terms concerning the roster limits represent another instance of the NCAA seeking to "unilaterally impose[]" unfair rules that will cause the "unjust displacement of athletes…" Mr. Henderson's letter called for changes specifically to the roster limits provisions in the proposed settlement. In doing so, Mr. Henderson highlighted the court's responsibility for ensuring fair class representation under the Federal Rules of Civil Procedure (FRCP). (December 23, 2024, letter to the court from Henderson). Several other submitted letters similarly complain about the discrepancy between the interests of the Additional Sports Class from members of other certified classes.

An Unrepresented Class: Impacts from the Roster Limits

The at-risk athletes, and others similarly situated (i.e., notified of roster cuts), have markedly different interests than the certified classes. Any athlete cut from a Division I sport roster will be harmed because of the roster limits provision of the proposed settlement. Whereas financial benefits await certain athletes in the certified classes, a variety of harms to other athletes will result if the court approves the settlement terms in their current form. The root cause of this impending harm is the roster limits provision that the NCAA seeks to impose through the court's approval of the putative settlement.

The principal legal theory for our clients' objection arises from the mandatory requirements for class certification. The at-risk athletes, and others like them who face harm from the preliminary settlement terms, have interests that are distinctly different from others in the certified classes. Under FRCP Rule 23(a)(2), the issues of the lawsuit must be "common to the class"; and under FRCP Rule 23(a)(4) the "representative parties [must] fairly and adequately protect the interests of the class." Those tests are not met where <u>certain class members will be harmed</u> by the roster limits.

FRCP Rule 23(e)(2) further provides that the court's approval of the proposed settlement carries a prerequisite finding that it is "fair, reasonable, and adequate after considering whether: … (D) the proposal treats class members equitably relative to each other." Finally, as this letter accomplishes, any

# Buchalter

Ronald V. Dellums Federal Building
& United States Courthouse
January 31, 2025
Page 3

class member may object to the proposed settlement. In doing so here, we state that the objection applies to both the at-risk athletes as well as to all members of each certified subclass who faces the risk of being cut from his/her roster as a result of the roster limits provision in the proposed settlement.

Insufficient Notification

The email notification from the Settlements Administrator provided a link to the collegeathletecompensation.com website where a Frequently Asked Question webpage provides (in full):

> Will any NCAA rules change?
>
> Yes, under the Injunctive Relief Settlement, NCAA and conference rules will be changed to allow schools and conferences to provide to student-athletes, up to an aggregate yearly amount specified in the Settlement:
>
> - additional benefits, including for NIL;
> - additional benefits over and above annual existing scholarships and other benefits currently permitted by NCAA rules.
>
> NCAA rules regarding the payments that student-athletes will be permitted to receive from third parties for their NIL while remaining eligible to play Division I sports will also be modified pursuant to the Settlement. Complete details regarding these rule changes, as well as additional benefits, are provided in the Injunctive Relief Settlement, available HERE. You cannot opt out of the Injunctive Relief Settlement; you may object if you disagree with these changes.

Our clients have been unable to ascertain from any notification materials made available to them from the Settlements Administrator whether the roster limits provision in the putative settlement places them at a disadvantage relative to other class members. Indeed the sole piece of information concerning "rule changes" arising from the proposed settlement, shown above, fails to even mention roster limits. This insufficient notification fails FRCP Rule 23(e)(2)(D). Put simply, our clients and many other roster limit-impacted athletes have not been adequately informed about the circumstances of the proposed settlement concerning the manner in which they will be adversely impacted from the roster limits.

Conclusion.

The NCAA's approach here in seeking court-approval of new governance – in the form of the roster limits – is inappropriate as it has been unilaterally fashioned in response to a lawsuit. There has not been ordinary and appropriate NCAA Division I-wide coordination among Division conferences and universities; nor have affected athletes been adequately informed. Most critically, there is an obvious conflict among and between members of the certified classes arising from the roster limits provision.

# Buchalter

Ronald V. Dellums Federal Building
& United States Courthouse
January 31, 2025
Page 4

Requested Relief.

The appropriate relief, which we respectfully ask to court to order, is as follows:

1) The court should not approve the proposed settlement unless the roster limits are removed from the proposed settlement.

2) The court should extend today's deadline for objections, and further order the Settlements Administrator to specifically notify class members how the roster limits affect the interests of affected class members.

Counsel would like to appear at the final approval hearing.

Sincerely,

BUCHALTER
A Professional Corporation

Douglas M. DePeppe

BUCHALTER
A Professional Corporation

Robert B. Hinckley, Jr.

DMD:mt