# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF THOMAS J. WIEGAND**

I, Thomas J. Wiegand, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am an attorney in good standing with the bars of Illinois and New York and a partner of the firm MoloLamken LLP. I am admitted *pro hac vice* to this Court. I represent Grace E. Menke, Flannery Dunn, Mia Levy, Madison Moore, Sierra Bishop, Georgiana Barr, Mila Yarich, Rachael Holp, Charlotte Forman, Audrey Leak, John Weidenbach, Lance Hollingshead, and Rachel Wheatley (together, the "Objectors"). I make this declaration in support of the Objection to the Amended Settlement Agreement and Opposition to Final Approval.

2. All of the Objectors are members of the "Additional Sports Class" and/or the "Injunctive Relief Settlement Class" as defined in the Amended Settlement Agreement. *See* Dkt. 535-1 at 6-7.

3. Starting in September 2024, I have spoken with student athletes and their parents and learned of hundreds of high school and Division I college athletes whose current or impending collegiate athletic careers have been cut short or put into jeopardy by the roster limits proposed in the Amended Settlement.

4. Many student athletes faced a number of obstacles in objecting to the roster limits aspect of the Amended Settlement. First, many students and their parents were confused about roster limits. None of the student athletes or their parents reported learning of the roster limits through the class notice or any other official communication. They learned about some possibility of roster limits either through social media or from team discussions, but those often did not explain that the athletes could object to roster limits. Roster limits are not mentioned in the Class

1

Notice and are not prominently featured in the terms of the Amended Settlement, where they are mentioned on pages 129-132 of the 133-page Settlement Agreement as being applied to some unstated subset of schools.

5. Second, where student athletes and their parents had realized that roster limits could be imposed if the Amended Settlement is approved in its current form, they often expressed fear of raising an objection. No student athlete or parent who I spoke to understands why the roster limits are being imposed. That exacerbates their fear in deciding whether to voice their objection, because they don't know who might be offended by an objection or why. Thus they expressed that voicing an objection risks offending the very coach who the athlete hopes will commit to them during recruiting, keep them on the college team, or accept them as a portal transfer. They feared being unfairly labelled as "troublemakers" or "whistleblowers" at this critical juncture in their lives. Silence is thus often the result for many of the parents and athletes who are undeniably being injured by roster limits.

6. The fear of many of the athletes and their parents was also grounded in the immense power imbalance they felt. The athlete is on the bottom of the power scale – especially the athlete who feels at risk of being cut from a team. The coach of that team has the power to decide who is or is not cut if roster limits are imposed. And that coach is beholden to the athletic director of the school, who is beholden to the conference leaders, who are beholden to the NCAA. Combined with not knowing who wants roster limits or why, the athletes' fear is again heightened. The power imbalance felt even more intimidating for many of the athletes and their parents when they learned that in order to object, they have to publicly disclose what is otherwise private information – their personal address and confidential NCAA ECID number.

7. Many of the student athletes I spoke with were also concerned that, by coming forward in opposition to the settlement, they would be subject to bullying and criticism on social media and in online forums. These concerns were exacerbated not only by having to disclose their address and NCAA ECID number, but also because some athletes reported that teammates believe roster limits are required in order for the number of scholarships on their team to be increased. This is a misunderstanding. For example, the scholarship cap for a swim team could

be increased to 30 without also making 30 the roster limit. But this misunderstanding has resulted in some athletes reporting pressure from teammates to not object to roster limits, so that their teammates can receive scholarships.

8. Finally, many student athletes are suffering emotionally due to the threat of roster limits, and in many cases, because roster limits are already inexplicably being applied during the current school year. Student athletes and their parents report the significant mental and emotional trauma that results when an athlete devotes countless waking hours, and sacrifices other life events, in order to pursue athletic dreams and the life lessons that come through that pursuit – and then has it all abruptly cut short while they are mid-stride, without warning and without reason. Many, if not all, of these student athletes have built self-identities around this athletic pursuit and their life with their teammates. The emotional trauma of many athletes has been so great, and is still so raw, that they cannot yet objectively tell its tale through a written objection.

9. Most of the student athletes who I spoke with, and who ultimately decided to submit objections to the proposed roster limits, expressed many of the above fears or reservations, but overcame them in deciding they were able – and needed – to be heard. But I know from talking with student athletes and their parents that there are many, many more athletes, including teammates of theirs, who are being negatively impacted and have not objected for some or all of the above reasons. This includes many student athletes or their parents who have asked whether they can submit objections anonymously. It is clear that the number of student athletes who submitted written objections regarding roster limits represents only a small fraction of those who will be harmed by the proposed limits.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Chicago, Illinois
January 31, 2025

_____
Thomas J. Wiegand
MOLOLAMKEN LLP
300 N. LaSalle Street
Chicago, Illinois 60654
(312) 450-6700
twiegand@mololamken.com

3
DECLARATION OF THOMAS J. WIEGAND
CASE NO. 4:20-CV-03919-CW