# EXHIBIT E

Cameron Abaqueta
1879 Dembridge Dr
Davidson, NC  28036

January 24 , 2025

Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Cameron Abaqueta.  I am a current Division I athlete at the University of Florida and my NCAA ECID number is 2003824830.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

/s/ Cameron Abaqueta

1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

|  |  |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>Hon. Claudia Wilken |

<u>**DECLARATION OF CAMERON ABAQUETA**</u>

I, Cameron Abaqueta, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a junior at the University of Florida and, until December 2024, I was a member of its NCAA Division I men's swim team.  I am thus a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I began swimming when I was 4 years old.  I love the sport and have put in countless hours developing as a swimmer.  Although I initially split my time between swimming and tennis, I made the decision at the age of 10 to focus exclusively on swimming.  In high school, I was a four-time NCISAA state champion in the 100-meter backstroke event.  Along with three teammates, I also set a U16 national record in the 4x100 free relay.  One of my proudest achievements so far was being a Scholastic All-American all four years.  To do so, I had to maintain a 3.5 GPA while also qualifying for the Junior Nationals.

3.      Academics were an important consideration for me during the recruitment process.  I received interest from many of the top tier swimming programs in the country and ultimately decided on the University of Florida because of its strong tradition in both academics and athletics.  The Florida swim team has consistently achieved at the highest national level for several years.

4.      During my first two years swimming for Florida I have competed in over a dozen meets, placing in the top five at least six times.  I also earned SEC Men's Freshman of the Week in January of 2023 and SEC First-Year Academic Honor Roll for the 2022-2023 season.

5.    About six months ago the coaches told the team generally about a possible settlement in this lawsuit and that it had something to do with roster limits. The information did not seem to have any impact on us and so we went back to practice as normal, focusing on our training for the upcoming season.

6.    Then, in December 2024, I was called in for a meeting with two of the assistant coaches. They informed me that related to the roster limits being created as part of the settlement, the SEC had met and decided to further limit the size of men's swim teams to 22 starting next season. I was told that because of those limits they would have to make cuts to the current roster and I was being cut from the team, effective immediately. There were five other swimmers, all friends of mine, who were also cut from the team that day. I was told that additional cuts will be made at the end of the season.

7.    Being cut from the team mid-season came as a total shock, and it has been extremely disappointing, to say the least. Swimming has been such an important part of my life for the last ten years. I've invested countless hours training in the pool to improve as a swimmer, striving to get better and better each day, each month, each year.

8.    My training schedule consisted of 20 hours of swimming per week, plus an additional 5 hours of weightlifting per week, during both my freshman and sophomore years of college. I was willing and ready to put in the work needed to meet the demands of a collegiate swimming program. I thought that my significant efforts would at least result in opportunities to compete in the sport I love.

9.    If roster limits remain in place, it is unlikely that I will be able to swim at the collegiate level again. I struggle to understand why roster limits are being imposed and why they are being implemented so suddenly. Transferring is not an option for me given the strong connections I have made here at Florida. I also do not want to disrupt my progress towards graduating with a finance degree, and Florida has a strong finance program.

10.    I will have to bear significant financial costs as a result of being cut from the swim team. The status of my athletic scholarship for the next academic year is uncertain. Even setting aside my athletic scholarship, I will not have access to athletic facilities and resources

2

like academic tutoring and advising. These are critical services that I relied upon as a student.

11.    The NCAA is supposed to provide avenues for student athletes like me to develop and compete when we earn it. The roster limits contradict this mission. Instead, the implementation of roster limits will result in thousands of student athletes like me being shut out of collegiate athletics altogether. The settlement should not be approved if it will result in the imposition of these unfair roster limits.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Davidson, North Carolina
    January 24, 2025

Signed by:

Cameron Abaqueta
NCAA ECID No. 2003824830
18719 Dembridge Dr
Davidson, NC 28036

DECLARATION OF CAMERON ABAQUETA
CASE NO. 4:20-CV-03919-CW

Julie Addison
475 Grayrock Drive
Crozet, VA 22932

January 28, 2025

     Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Julie Addison.  I am a current Division I athlete at the College of William & Mary and my NCAA ECID number is 2303829244.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                      Sincerely,
                                        Julie Addison

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF JULIE ADDISON</u>

I, Julie Addison, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore at the College of William & Mary and am a member of the NCAA Division I Men's and Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Our coaches have explained to us that roster limits if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.      We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively impact those who are cut and our team at large.

I declare under penalty of perjury that the foregoing is true and correct.

1    Dated: Williamsburg, VA

2           January 28, 2025

Signed by:

*Julie Addison*

371E80CA66C2417...

Julie Addison

3                          NCAA ECID No. 2303829244

                                475 Grayrock Drive

4                          Crozet, VA 22932

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Zoe Arakelian**
19 Red Hill Road
Warren, NJ 07059

January 27, 2025

Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken,

      My name is Zoe Arakelian. I am a current Division I athlete at William & Mary; my NCAA ECID number is 2108291394. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                    Sincerely,
                    Zoe Arakelian

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF ZOE ARAKELIAN

I, Zoe Arakelian, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a sophmore at William & Mary and am a member of the NCAA Division I Men's and Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Our coaches have explained to us that roster limits, if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.      We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team

1

1  and at our school, together. We do not feel roster limits help our team or our sport, but they will

2  negatively impact those who are cut and our team at large.

3      I declare under penalty of perjury that the foregoing is true and correct.

4  Dated: Williamsburg, VA

5      January 27, 2025

Zoe Arakelian
NCAA ECID No. 2108291394
19 Red Hill Road
Warren, NJ 07059

Ryann Aycock
1971 University Blvd.
Lynchburg, VA 24515

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Ryann Aycock.  I am a current Division I athlete at Liberty University and my NCAA ECID number is 2106206268.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                  Sincerely,
                                                  Ryann Aycock

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF RYANN AYCOCK**

I, Ryann Aycock, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am a sophomore at Liberty University and am a member of the NCAA Division I women's cross country and track team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    I started running cross country in middle school and gave up all other sports to focus on running in the 9th grade. Outside of school, running took up most of my time, between 2-hour practices every day and countless weekends spent at meets. I also dealt with a couple running-related injuries in high school from training at a high level that led to more time spent doing rehab, going to doctor's appointments, and cross training in the pool as I built back strength and fitness to be able to run again.

3.    In high school, I was able to hit Liberty's team standards for track and cross country and I earned a partial athletic scholarship. I won 11 state titles in the NCISAA and was at the top of my class of recruits in North Carolina. Despite this, it would have been very challenging for me to even make Liberty's roster had the roster limits been in place during my senior year.

4.    I was recruited by several schools including East Carolina University, NC State University, and the University of Delaware. However, I chose Liberty University because of their mission, their team culture, and their coaching staff. Up front, I was promised a small scholarship from Liberty that I was able to increase by hitting one of the scholarship time standards for the team. I turned down substantial financial offers from both University of

1

Delaware and East Carolina University in favor of Liberty. My coach told me that my scholarship could not be decreased, only increased, during my time at Liberty.

5.      I first heard about roster limits last summer (2024) through Instagram accounts like the Stride Report. This past November, our assistant athletic director spoke to the entire track team about the upcoming roster limits, which was the first time some of my teammates even heard about the cuts. All athletes will be allowed to finish out the 2024/25 season, but starting fall of 2025, Liberty will have to adhere to the roster limits set by the NCAA if the House Settlement passes. We currently have 32 girls on our cross country team and almost 70 girls total on our track team, meaning that around 25 girls could lose their spots.

6.      As a scholarship athlete at Liberty University, I am less at risk of losing my spot on the team. However, the sport of cross country can be very unpredictable, as injuries are somewhat common and can change the course of a season. I do not know how the House Settlement factors in injuries, but there is a possibility that I could lose my spot, as I am currently returning from an injury from cross country season. The House Settlement puts some pressure on my return to competition, as I feel that I must perform well as I get back into racing to prove that I still belong on the team. Additionally, I have seen many of my teammates facing similar or even more pressure, as they feel like they now must compete with one another to stay on the team next year. Girls are having to reassess their future at Liberty, making decisions now whether they want to stay at Liberty as a non-athlete or transfer to another smaller school to continue running. Almost all the girls on our team who are most heavily affected are freshman this year, meaning that many of them are having to make big decisions about next year only a few months after arriving on campus. The House Settlement is causing uncertainty about the future for everyone involved, leading to more pressure on our younger athletes in both their races and the decisions they are forced to make.

7.      If I were cut from the team, I would lose my athletic scholarship, which covers my cost of living, dining plan, and other fees. I would also lose access to the tutors and academic advisors provided by the team, as well as the opportunity to eat at the athlete-only dining hall. Additionally, many of my friendships would be affected by the roster cuts if I or any of my

teammates lose their spots, as the girls on my team are my closest friends.

8.    Running cross country and track at Liberty has been one of the greatest opportunities in my life. I object to the roster limits clause of the House Settlement because of the devastating impact it will have on my own team and countless other student athletes across the country.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Lynchburg, Virginia
    January 28, 2025



Ryann Aycock
NCAA ECID No. 2106206268
1971 University Blvd.
Lynchburg, VA 24515

3

Melinda Aznar Klein
5417 Carmel Park Drive
Charlotte, North Carolina 28226

January 29, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Melinda Aznar Klein. I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                    Sincerely,

                                                    Melinda Aznar Klein

**15**

1

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

3

4

5

6

7

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

**DECLARATION OF MELINDA AZNAR KLEIN**

9

I, Melinda Aznar Klein, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10

11

12

13

1.    I am 18 years old and am in 12th grade at Deerfield Academy. I have been competing as a swimmer since I was 8 years old and have been a competitive rower throughout high school. I have committed to row D1 at Boston College starting Fall 2025 and was recruited for the women's rowing team.

14

15

16

17

2.    I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college. I therefore am a class member who could be affected by the terms of the settlement. I object to the settlement for the reasons stated below, both for myself and for other class members like me.

18

19

3.    I practice 6-7 days per week and look forward to competing at the D1 level in college.

20

21

22

23

24

25

4.    My mother, brother, grandfather, cousin aunt, and uncle have all competed in college athletics. They have always encouraged our family to play sports and aspire for collegiate opportunities.  My family has always shared the many positive things that came from sports, especially college sports. Structure in schedule, aspiring to always do better, learning how to deal with failure, learning how to deal with success, learning how to work with others, and learning how to be coached in different ways. .

26

27

28

5.    I believe having roster limits will destroy youth sports and developing athletes. I believe that many families won't see the purpose if there are no long-term opportunities for growth. I believe roster limits will impact the mental health current athletes and future athletes.

1

If current athletes are stripped of their current roles, they will most likely find it hard to find new ones, will lose all support they were promised, from academic support, athletic support, metal health support and professional development support preparing for post college.

      6.      Please remove roster limits from this and allow for athletes to participate, allow for current athletes to be grandfathered into their roster they signed on with, and allow future athletes to participate no matter what the numbers are.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: Charlotte, North Carolina
      January 30, 2025

Melinda Aznar Klein
5417 Carmel Park Drive
Charlotte NC 28226

Natalie Grace Aznar Klein
5417 Carmel Park Drive
Charlotte, North Carolina 28207

January 29, 2025

       Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Natalie Aznar Klein. I am a middle school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                Sincerely,

                                Natalie Aznar Klein

**18**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF NATALIE AZNAR KLEIN**

I, Natalie Aznar Klein hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am 13 years old and am in 7th grade. I have been competing ad training as a basketball player for 4 years and a rower for 2 years. I have dedicated my time and efforts almost every day in hopes to compete in college at the D1 level.

2.      I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college. I therefore am a class member who could be affected by the terms of the settlement. I object to the settlement for the reasons stated below, both for myself and for other class members like me.

3.      I currently train 5 or 6 days a week in basketball and 3 days a week in rowing. I enjoy my time with my teammates and the friendships I have made. We have common goals and realize that being in a sport helps us become better citizens – by being dedicated, kind and driven in the pool, on the field and in the classroom.

4.      I am very proud of my accomplishments in both of my sports. To many people, they might not be impressed with my results, because I am not winning championships or making every travel team. But I have knowledge that most people do not. I have older siblings that have also competed in Division 1 and Division 3 sports and who developed later in their athletic careers. If I am patient and allow my body to grow and develop while I continue to work on skills and personal development, success will come. I know that all good things come with time. However, given the new restrictions with roster limits, it is very unlikely that time will be on my side and that opportunities will be waiting for me.

1

5.      My mother, uncle, sister, brother, grandfather, cousins and aunt have all competed in college athletics. They have always encouraged our family to play sports and aspire for collegiate opportunities.  My family has always shared the many positive things that came from sports, especially college sports. Structure in schedule, aspiring to always do better, learning how to deal with failure, learning how to deal with success, learning how to work with others, and learning how to be coached in different ways.

6.      I believe having roster limits will destroy youth sports. I believe that many families won't see the purpose if there are no long-term opportunities for growth and development. I believe roster limits will impact the mental health current athletes and future athletes.  If current athletes are stripped of their current roles, they will most likely find it hard to find new ones, will lose all support they were promised, from academic support, athletic support, metal health support and professional development support preparing for post college.

7.      Please remove roster limits from this and allow for athletes to participate, allow for current athletes to be grandfathered into their roster they signed on with, and allow future athletes to participate no matter what the numbers are.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Charlotte, North Carolina
     January 30, 2025

*Natalie Aznar Klein*

Natalie Aznar Klein
5417 Carmel Park Drive
Charlotte, NC 28226

Will Benoit
21 Orford Street
Lowell, MA 01854

January 15, 2025

  Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Will Benoit.  I am a current Division I athlete at the University of Massachusetts, Lowell and my NCAA ECID number is 2010946073.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

              Sincerely,
              Will Benoit

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF WILL BENOIT</u>**

I, Will Benoit, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     My name is Will Benoit and I am a member of the track and field team at the University of Massachusetts, Lowell.   I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.     Four years ago, I was blessed with an opportunity to become a UMass Lowell River Hawk and realize my dream of becoming a Division One track and field athlete. Since then, I have met my best friends, I have pushed myself to accomplish athletic feats I would have deemed impossible at my time of commitment, and I received a high-class education that has prepared me for life beyond the track.

3.     But this life I am so grateful to be living, and this team I feel so privileged to be a part of, would have been no more than a far-off dream if the House v. NCAA settlement had occurred before my freshman year.

4.     I came from a small high school in southern Massachusetts and a graduating class of only 195 students. Being from a small school, I was often overlooked as an athlete. I had inexperienced coaches and an athletic program that lacked the funds to pay for trips to the competitive meets I longed to run in.

5.     I desperately emailed dozens of colleges and universities, eagerly explaining my situation and hoping they would give me a chance. I prayed my passion for running would prove evident to these established coaches and that I could be awarded a walk-on spot.

6.     I was hungry to compete. I was hungry to get better. And I was willing to work

1

harder than anyone else.

7.      Finally, after many silent weeks, I got an email from Coach Gary Gardner and his coaching staff at UMass Lowell. I was ecstatic. I took a visit early in 2020 and committed a few months later. What sold me most on UMass Lowell were two things.

8.      The first selling point for UMass Lowell was Gary's recognition of my drive and his emphasis on consistency and persistence. He told me in our first Zoom phone call, "The work you are doing now may not show tomorrow, it may not show this year, it may not even show until 2 or 3 years down the line, but if you stay consistent, the results will come." I was sold. I got to work and never looked back. He had the foresight that I was looking for. While I may not have been the best runner coming out of the class of 2021, he recognized that I was an under-trained and thus, underrated athlete with a burning desire to get better. He gave me his time and attention and slowly but surely, the results started coming.

9.      I did not make a conference roster for my first year and a half in college. Since then, however, I have had the honor of being part of five conference championships, and multiple all-conference teams as an individual. More importantly, I am now helping mentor and be a role model to the next generation of Riverhawks. As Gary said, the results didn't come quick and they did not come easy.

10.     To me, college athletics is about growing and developing athletes, not merely taking the best high schoolers you can find and pushing them through a system like cogs in a machine. The House v. NCAA settlement would effectively take away this system of athletic development from hundreds of future students in situations like my own. I object to the roster limits and do not think they belong in college athletics.

11.     The second selling point for me was the team camaraderie. Gary and this program have a special gift of finding motivated athletes who are eager to become great. It also happens to be that these student-athletes come together to form the most genuine and loving community I have ever been a part of. Our team is reliant on the size of our roster. And our relatively large roster has shaped UMass Lowell's championship-winning culture. When you step on the track, you are running for everyone on the team, not just yourself and your event group. From the best

1  guy to the last, everyone makes a difference. As Gary always says, "The last guy pushes the next

2  guy, who pushes the next."

3      12.    The House v. NCAA settlement would crush our team and bring many promising

4  young careers to an end. Had this come into effect my freshman year I never would have been a

5  first-team all-conference runner. I never would have traveled to Wisconsin, Virginia, and North

6  Carolina with my best friends. I never would have met these friends. I never would have earned

7  a scholarship to pay for an education that I otherwise would have struggled to afford.

8      13.    The House v. NCAA settlement would have taken this all away from me, and I

9  can only humbly ask that you not take these opportunities away from any student-athlete to

10  come.

11      I declare under penalty of perjury that the foregoing is true and correct.

12  Dated: Lowell, Massachusetts
13      January **15**, 2025

14  Will Benoit
   NCAA ECID No. 2010946073
15  [Mailing Address]

16  21 Orford Street
17  Lowell, MA 01854

18

19

20

21

22

23

24

25

26

27

28

Corey Berry
4243 Zephyrhills Dr. NW
Acworth, GA 30101

January 25, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Corey Berry.  I am a current Division I athlete at Kennesaw State University and my NCAA ECID number is 2010940284.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,
            Corey Berry

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF COREY BERRY</u>

I, Corey Berry, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a sophomore at Kennesaw State University and I am a member of the NCAA Division I men's baseball team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      To become a division 1 college athlete took multiple hours of preparation. In high school, I spent 30-40 hours a week to have the chance of being a Division I college athlete. I gave up my evenings, my weekends, and my school breaks including winter break and spring break. I was not able to see my sister's games or spend time with friends during the season. I chose this because I wanted to play baseball in college. My high school coach did not really help us get recruited to play at the next level so I did everything on my own and with the help of my travel team coach.

3.      My sophomore year of high school was taken away by COVID. I would have had a chance to play varsity that year and improve my skills. I played varsity for my junior and senior year. In junior year, I won the defensive mvp for my team and in senior year, I won the offensive MVP for my team. I was voted first team all region for both years. We made the playoffs both years and my junior year we made it to the Elite Eight and tied a school record for wins in a season.

1

4.      Recruiting did not go as well as I wanted it to. I was undersized even though my skills were competitive. I was fortunate to get a juco opportunity at Wallace Community College in Dothan, Alabama. I played all games my freshman year and we were conference runners-up. My second year was cut short due to a season-ending surgery. Thankfully, Kennesaw State University had offered me that summer before. The Kennesaw offer was a good one and promised that I could continue playing for the last three years there and the offer was not taken away even after my injury. I know if I do my part, I will be on the team. I make A's and B's and work out daily even in the off season. I put in approximately 40 hours weekly to improve. The scholarship I was given helps my family tremendously to be able to send me to college. I also play baseball in the summer which means I cannot get a part-time job. This summer I will be in Minnesota all summer and play 6 days per week while living with a host family.

5.      I learned about the proposal for roster limits on the news and the coach has mentioned them as well. Roster limits are very concerning for me. My height and weight are still considered undersized so many coaches will not even consider offering me a scholarship. My goal is to continue my education and continue playing as long as I can. I already lost some credits by transferring from a juco in a different state and if I get cut and have to transfer again, it will delay my graduation. I may have to change my major and it is already going to take me an extra year to graduate due to prerequisites and requirements.  There will not be a place for many players including some of my teammates if roster limits are put in place. Many of these guys will quit school if that happens. I would probably quit school as well because I love baseball and if I cannot play anymore, I will have to make some decisions.

6.      This idea of roster limits is taking a toll on my teammates and I. It puts a lot

more unnecessary pressure on this season and the stats I have to get to stay on the team. I am already fighting for playing time but I feel like if I screw up, then I won't have a roster spot for next year at a school and team I have grown to love. The mental toll is going to make things stressful as a team. Our team would play better if this was not an option for next year. The season is already a grind when we play 4 games a week and have a lot of travel. Many of our players have not traveled this much. We are also beginning play in a new conference this year which is making competition harder anyway.  Then we still have to keep our grades up, get enough sleep and eat to maintain weight.

7.      If I am cut, I will lose lots of financial aid which means I will have to take about 10,000 more dollars in school loans per year. My family will not be able to pay what I lose. I will truly miss being part of my team and being with the guys outside of baseball. I will have to change my room on campus and lose my roommates who have become friends and teammates. I will probably have to move back home because I will not be able to get a room on campus. I will not have the support academically which helps me stay on track since so much time is spent on baseball. I will lose the treatment of our athletic trainer which has already helped me recover from shin splints and muscle tightness. I just turned 21 and I have no idea what I will do if I get cut. The whole situation sounds hopeless.

8.      I have considered the transfer portal but since all teams are full, will there be any place to go. The past season's portal already had hundreds of guys who did not get picked up. I need to stay at my current school to be able to finish my degree but I won't want to do that if I cannot play baseball. Trying to guess what a coach will be like and if I will get playing time from a portal offer are stressful and not guaranteed. I had a juco teammate who had a DI offer and it was withdrawn the week before school started. I have heard nightmares from other schools over recruiting guys and this will only make things worse.

9.      Please do not implement roster limits for college sports. Many sports will be devastated including baseball. Baseball needs lots of pitchers and currently we have about 20 on our roster. If there are only 34 spots then there will not be enough position players to survive the season if there are injuries or people cannot finish the season. Baseball pitchers cannot pitch every day and take care of their arms. They must have days to rest. If teams play 4 games weekly, they will usually need a minimum of 12 pitchers and that is if everything goes well which it will not every game so teams will have to keep 20 or more pitchers on the roster. Colleges have already cut other sports and teams.

10.      I urge you to consider all of the athletes and families who will lose if you implement this rule that will have a negative impact on athletes for years to come.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Kennesaw, Georgia

January 25, 2025

Signed by:

*Corey Berry*

0807282A815D4C7...

Corey Berry
NCAA ECID No. 2010940284
4243 Zephyrhills Dr NW
Acworth, GA 30101

Carly Bixby
5420 Shenandoah Lane N
Plymouth, MN  55446


January 20, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Carly Bixby.  I am a current Division I athlete at Auburn University and my NCAA ECID number is 1909692413.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Carly Bixby

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

## DECLARATION OF CARLY BIXBY

9      I, Carly Bixby, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10      1.      I am a freshman and member of the swim team at Auburn University.  I am a

11 member of the Injunctive Relief Settlement Class and object individually and on behalf of the

12 class.

13      2.      I began swimming when I was seven and started competing more seriously while

14 in middle school. In high school, I was a Minnesota Class A state champion in the 100 Y Fly, I

15 went to the USA winter junior nationals in 2022 and 2023, and I was named a USA Swimming

16 Scholastic All-American in 2021, 2022, and 2023.  This required me to maintain a 3.5 GPA

17 while recording a Winter Junior Nationals qualifying time.

18      3.      I started receiving college recruiting attention early on in my junior year.  I was

19 ecstatic. It had been my dream to make it to the collegiate level since I was a child.  I stuck with

20 swimming because of the community and friends I made, and I wanted to continue to be part of

21 that community. I ultimately made my verbal commitment to Auburn in October of 2022 and

22 signed my National Letter of Intent on November 8, 2023.  Auburn's swimming program was a

23 big reason for my choice. I loved its team culture, the coaches and the environment. Everyone

24 on the team was kind and it felt like a community.

25      4.      I first heard about the settlement the August before I started college. The roster

26 limits will require the program to shrink to just 30 athletes next season. There are currently 43

27 swimmers and divers on the women's roster.  So, after accounting for graduating seniors and

28 incoming recruits, at least 13 swimmers and divers will have to be cut from the team.  The

1

decisions around who will be cut are looming over everyone's head. This has taxed the team's culture and cohesiveness. We are living with the uncertainty of whether we will be the ones cut and what we will do if so. We feel like we are competing against each other to avoid being cut due to these limits.

5. My anxiety over the situation is made worse by the financial impacts. If I am cut from the swim program, I would lose a number of benefits, including: the remaining three years of my athletic scholarship, access to academic resources like free tutoring, access to athlete dining facilities, access to the wellness kitchen, and free healthcare through our team doctor. In addition, prior to hearing about the roster limits, I signed a lease for the 2025-2026 school year. In the event I am forced to transfer, it would be very costly to break this agreement- for both me and my parents, who acted as co-signers.

6. Even if I decide to transfer, there is no guarantee that I could find a spot on a team. Almost all Division I swim programs will be made to comply with the impending roster limits decision. As a result, the transfer portal will be far more crowded than in the past—not to mention the normal difficulties associated with transferring. It is unlikely that all my class credits would transfer, making it difficult to graduate on schedule in 2028. In order to meet school specific degree requirements, I would probably have to enroll in, and pay for, classes at a new university that I may have already taken at Auburn. This sets up a really difficult choice between staying at Auburn without swimming, my passion, and taking on a substantial financial burden in pursuit of a spot on another collegiate swim team.

7. I love Auburn University, and I love my team. I have made so many great friends at this program and it would be terrible to lose them now due to the settlement's roster limits. If people have to be cut, the team just won't be the same.

8. The roster limits hurt the ability of Division I programs to provide a space for students to develop as athletes and grow as individuals. I came to Auburn because I loved the culture that the swim team provided. Roster limits have already changed that culture and the culture won't be the same if they go into effect. They should not be approved.

1      I declare under penalty of perjury that the foregoing is true and correct.

2   Dated: Plymouth, Minnesota
3          January 21, 2025                    _____
4                                              Carly Bixby
                                               NCAA ECID No. 1909692413
5                                              5420 Shenandoah Lane N
                                               Plymouth, MN  55446

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Adam Boeheim
2 Quaker Manor Lane
Patterson, NY 12563

January 27, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Adam Boeheim.  I am a current Division I athlete at Syracuse University and my NCAA ECID number is 2405286584.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                   Sincerely,

                  Signed by:

                  *Adam Boeheim*
                  5BA55463CE19445...

                  Adam Boeheim

1

2

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

3

4     IN RE COLLEGIATE ATHLETE NIL
      LITIGATION

5

6

7

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8                   <u>**DECLARATION OF ADAM BOEHEIM**</u>

9          I, Adam Boeheim, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10         1.      I am a freshman at Syracuse University and a member of its NCAA Division I

11    football team.  I am a member of the Injunctive Relief Settlement Class and object to the

12    proposed roster limits, both individually and on behalf of the class.

13         2.      I played on the varsity football team at Carmel High School in Carmel, New

14    York, for my sophomore, junior, and senior years.  Our team won the New York State

15    Championship in my first year and we were runners-up my senior year; we were section

16    champions all three years I played.  During my senior year I was selected to the All-Conference

17    team and received the Golden Dozen Honorable Mention Scholar Athlete award by the

18    Westchester Chapter of The National Football Foundation and College Hall of Fame.

19         3.      I love playing football and I wanted to preserve those high school memories, so

20    during my senior year I put together a highlight reel.  Our county is pretty small and we don't

21    have a history of sending off Division I athletes, so I initially just did this for myself.  But when

22    my family and high school coaches saw it, they said I should try to play in college, so I sent it to

23    some college coaches. I was excited to receive some interest, including the offer of a scholarship

24    from one school.

25         4.      But Syracuse has been my dream school since I was young.  I travelled with my

26    family to watch many sporting events, and the longtime former basketball coach is a family

27    relative.  I took a formal tour of the Syracuse University campus when my older brother

28    considered going to college there.  While my older brother decided to attend college elsewhere,

Syracuse remained my top choice. So, when the offensive coordinator called me and offered me a preferred walk-on spot on the roster at the end of my senior year, I was thrilled. By that time, I had already received my acceptance to Syracuse University based on academics. At this point I was invited for an athletic visit and tour; after I saw the facilities and met the team and more coaches, I was even more sold on Syracuse. I was being offered a spot on the football team and the chance to prove myself – saying yes was the easiest decision I ever made.

5.     My first year on the football team has been spent training to develop my strength, speed, and skills. I am an offensive lineman and truly enjoy practicing with my teammates, especially my fellow freshmen. My two roommates are also freshmen on the team. During practices we often play on the "scout team," where we help the defense prepare by mimicking the offensive scheme of our opponent for the next weekend. We even get to try new positions – while I am an offensive lineman, I sometimes play tight end or fullback on the scout team and enjoy learning something new. The scout team helps us develop during our early years on the team, in hopes of earning a spot on the first or second line in our later years on the team.

6.     I have formed strong bonds with many of my teammates already, but especially with my classmates on the team. There is a separate facility where we all go not only for training and all our meals, but also for incredible academic counseling and tutoring. I am a Business Analytics major and currently in the 3+3 program, which grants a bachelor's degree in three years and then guaranteed admission into the three-year law school at Syracuse. This support helps me focus on academics and ensures that football does not get in the way of my goal of getting a law degree.

7.     Our team also learns much more from being on the team than just football. Our head coach talks to us all the time about what he wants from us – to be good young men. He never says he just wants us to be good football players. And he means it. I already have learned important life lessons from my teammates and coaches, and I am truly in awe thinking of how much more this will be true after the next three years.

8.     I have tried to keep this statement short, but have recorded it to let the Court know how tragic it would be to have this all ripped away if roster limits are imposed. The proposed

2

1  roster limit of 105 is less than the approximately 120 players who are currently on the team.

2  Forced roster cuts would tear down the common experiences that my classmates and I have been

3  building on the team.  I know that some of us would have to be cut, and regardless of who it is,

4  we all will suffer for it.  My roommates and I live together where the other players live, and we

5  spend over half of the day together.  We eat meals together.  If anyone is cut, they no longer

6  would go to our facility – they could not work out there, eat there, laugh there, or get tutoring

7  there.  That is an incredibly important benefit to us, but it also promotes our bonding.  Some of

8  us would be broken apart, and the thought of it hurts.

9       9.      I also want the Court to understand the problem that roster limits will impose on

10  future walk-on athletes like me.  If roster limits existed last year, when I put together a highlight

11  reel and tried to get a college team to take a chance on me, I probably wouldn't have received a

12  spot.  Not at Syracuse.  And yet I was given a chance, and am proud that I have been told I could

13  survive a cut if it had to happen.  But many future athletes won't have that chance if roster limits

14  are imposed.  I have already become an example for high school and younger kids who play

15  sports in my county, because we don't send many players to play DI sports.  I owe it to them to

16  stand up for their right to find their limits also.

17      10.      Finally, even though I might be safe for now if roster limits are imposed, roster

18  limits are also unfair to players who get injured.  That can happen to any of us, and it's bad

19  enough on its own.  If one of us is injured he has to mend and rehab, he gets to stay on the team.

20  He eats with us, he receives rehab and training in our facility, he is supported in his academics,

21  and he hopes to return to the field.  But roster limits could result in injured players being cut

22  because the full limit of players is needed just to implement practices.

23      11.      I beg you not to impose roster limits to be forced onto student athletes and their

24  teams.  It is my understanding that no one will be cut if roster limits are not imposed.  Give us

25  the chance to play out our dreams and to learn the courage to find our limits.  Sports and

26  teamwork are an incredibly important part of our education.

27       I declare under penalty of perjury that the foregoing is true and correct.

28

1  Dated: Syracuse, New York

2           January  27, 2025

Signed by:

Adam Boeheim

5BA55463CE19445...

3           Adam Boeheim

           NCAA ECID No. 2405286584

4           2 Quaker Manor Lane

           Patterson, NY 12563

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Carmel Bollag
1207 17th Ave E.
Seattle WA 98112

January 26, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Carmel Bollag.  I am a current Division I athlete at the University of Washington, and my NCAA ECID number is 2203459272.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at he Fairness Hearing on April 7, 2025.

            Sincerely,
            Carmel Bollag

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF CARMEL BOLLAG

I, Carmel Bollag, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.    I am a Sophomore at the University of Washington and a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    Becoming a Division I college athlete was one of the toughest but most rewarding experiences.  In high school I devoted six days a week to this sport. From the hours of 3-7:00 pm, my mind was on rowing. Early Saturdays discounted me from fun Friday nights, a Northwest regional championship fell over junior prom weekend, and countless nights up past 12 pm were spent catching up on homework. But it was all worth it to see me and my teammates on the podium, reach for new personal erg records, go to the National Championships twice, and form lifelong friendships.

3.    Growing up in Seattle, I saw the Washington boats gliding over the lake, in awe of their seemingly effortless perfection. From the moment I started rowing I told my family I wanted to row at Washington, a dream that would slowly dwindle over the years as my mind clouded with self-doubt. It wasn't until Sam Greenblatt reached out to me inquiring about my interest in Washington Rowing that a window opened which I thought had closed. The promise of free meals, snacks, priority class registration, and laundry services were all

1

attractive features of the offer. I was looking at several other teams at the time, none of which I felt particularly drawn to and none of which offered the same benefits. I knew I was looking for a team that would challenge me, had a history of success, and provide an unmatched collegiate athletic experience but I also was considering my academics. Majoring in biochemistry with the hopes of going to dental school - the University of Washington ticked those boxes. After several calls, practice visits, and discussions with my family, I signed the National Letter of Intent that detailed the guarantee of a scholarship for all four years and my commitment to the recruiting process at Washington. I was also given a document which stated the erg standards required to stay on the team. It was stated simply: hit 1:57.5 by the time of sophomore year to stay on the team. It provided a challenge but also a reassurance that how I could ensure my spot was in my hands.

4.      I first heard about the roster limit of 68 floating around the boathouse at the beginning of the 2045/25 academic year. People were chatting, speculating, and questioning. Coach Yasmin Farooq sat the whole team down in the middle of January and shared the facts she had learned. We were told that an individual's probability of making a boat would influence the cap. That completely butchers the growth path of a rower who has not yet reached their potential. With a current team roster of just over 100, we were all left wondering how that would impact the decision to take on more freshmen, transfers, and fifth years, as well as our own fates too. Because the roster cap would come into effect with the first intercollegiate race, it would mean we no longer would compete at some of the most cherished and iconic fall races such as Head of the Charles or Head of the Lake. The intention for this would be to allow as many rowers as possible to progress the entire fall season with the hope that the long term development would help in eventual selection.

5.      Rowing is already incredibly exhausting, mentally challenging, and time

consuming. The added stress of an impending roster cap is undoubtedly a stressor. To hear that no matter how hard you work, how fast you get, or how devoted you are, a roster cap will eventually have the final say is as discouraging as it is scary.

6.      I have thought about being cut, and how much I would be losing, how different my life would become. Not only would I lose a team I love but I would also lose the ability to register for classes with priority, three meals a day that save me money and time, tutoring services that provide much needed academic support, the essential resource of mental health services, athletic training and healthcare I wouldn't otherwise have access to, and a book scholarship which aids in the costly nature of chemistry classes at university. But I think the biggest thing I'd lose is myself. Rowing is my biggest passion, has taught me my most valuable lessons, given me a family away from family, and turned me into someone I am incredibly proud to be. It has also given me leadership roles. I haven't always been confident in myself but since joining the Washington rowing team I have learned to recognize my power and resilience and understand that what we do is not easy. I now realize I am capable of hard things and this is not something to brush under the rug or deny others the experience of.

7.      Immediately after the news was shared the first thought I had was what I would do if I did not make the top 68. I didn't like to think about it but I felt it was necessary. Without a doubt I knew I would be done with collegiate rowing. For me, rowing at Washington is the only answer. I do not wish to be part of any other program, be anywhere but Row Town USA. I would stay in Washington knowing it would never be the same to not being part of the greatest team I have ever had the privilege of being on.

8.      I completely reject the concept of the roster cap. I believe it goes against everything that makes Washington Rowing such a beautiful program. A program that finds incredibly talented athletes, harnesses their skill, and develops them into champions. If this

roster cap had been initiated last year, I don't know if I would still be on the team today. My erg scores this year are much faster than they ever have been, I'm seeing numbers I never thought I could be capable of producing - numbers that would shock my high school self - and the thing I have to thank is time. Time to develop my technique, build strength, and build a place for myself on the team. If I had been cut last year I never would have seen the growth I made this year. It is impossible for someone to prove their full potential in the sport of rowing in a matter of months and this roster cap will forever limit prospective athletes, negatively impacting the entire sport of rowing. I plead to the court to not allow this roster cap to take away the dreams and potentially highly successful rowing careers of athletes.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington

January 26, 2025

Carmel Bollag
NCAA ECID No. 2203459272
1207 17th Ave E,
Seattle WA 98112

Emma Carlton
47-745 Kamehameha Hwy
Kaneohe, HI 96744

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Emma Carlton.  I am an alum of the University of Tennessee, where I was a Division I athlete and my NCAA ECID number is 1508264796.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                  Sincerely,
                                    Emma Carlton

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF EMMA CARLTON

I, Emma Carlton, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I graduated from the University of Tennessee in 2023, where I was a Division I swimmer. I am a member of the Injunctive Relief Class and object individually and on behalf of the class.

2.      Swimming has always been an important part of my life. While I am now retired from swimming, I swam competitively for 15 years, including at the Division I level for two different schools. I swam for two years at Texas A&M before transferring to Tennessee.

3.      Women's swim teams are like families. At Tennessee, I served as the team captain for two years. It was always critical to me to make sure that my teammates spent time together outside of practice. My teammates were, and are, my best friends, and I know this is true of many collegiate swimmers.

4.      I made friends at Tennessee and Texas A&M that I will keep for the rest of my life, including my best friend.

5.      My best friend was not the fastest swimmer on the team. She never qualified for SEC Championships. But she made an incredible positive impact on the team. She served as a leader among us, including on the Student Advisory Council. She encouraged me to explore my passions outside of swimming. She made me—and continues to make me—a better person and teammate.

6.      In college athletics, it is important to have a team with members who each contribute something different. We need leaders, academics, and positive thinkers. Sometimes

1

these people aren't the fastest, but they are critical to the team. Having a well-rounded team improves every team member's experience.

7.      If the roster cuts went into effect when I was swimming at Tennessee, my best friend would probably have been cut from the team. And that is not fair. She contributed so much more to our team than just her times. We would have been worse off without her.

8.      These roster limits are scary. Student athletes are under a lot of pressure to perform. Because of this pressure, my teammates and I saw our team psychologist weekly while in college.

9.      Oftentimes, I felt so much pressure that I would shut down. I was terrified of failure. And I wasn't alone. I have a friend who would physically shake from performance anxiety. The night before a meet, I would struggle to sleep.

10.     The possibility of these roster limits only exacerbates the high amount of stress on student-athletes. Roster limits greatly raise the stakes. While before, you might have to worry about not making conference championships or swimming in a meet, now, you have to worry about your spot on the team at all. Student-athletes could lose their financial aid, their friends, the ability to graduate in four years, and the opportunity to keep improving at their sport because of these roster limits. This kind of stress will inevitably impact these athletes' academic performance, too.

11.     This stress isn't just limited to current Division I athletes. High schoolers who have committed to schools have been told that they may not have a spot on teams next year because of the limits. I cannot imagine committing to a school and then being told after the commitment that you don't have a spot, that's outrageous.

12.     Entering the transfer portal isn't a feasible alternative for everyone, either. I swam at Texas A&M my first two years of college before transferring to Tennessee. I realized after two seasons that Texas A&M's training program was not well-suited to my needs as a swimmer. Deciding to transfer, though, was an incredibly difficult decision. When I told my teammates I was going to transfer, they all started to cry. I was scared that my new team wouldn't accept me.

13.    By entering the portal, I knew that I could lose my athletic scholarship at Texas A&M. I knew that I would not likely get as much scholarship money at a new school—and that was true. Tennessee offered me less money. But I was lucky that my parents were able to support my move to attend Tennessee. When I transferred, I also had to switch majors to graduate in four years since many of my Texas A&M credits did not transfer.

14.    Not every student athlete that is cut from their team due to roster limits will have the means to move to another school, even if they are able to find another roster spot. Some student athletes who are cut because of roster limits will have to pay more tuition and will take longer to graduate if all their credits do not transfer.

15.    These roster limits will be a disaster. I believe that this settlement should not be approved if they are included.

16.    I also feel the need to speak up because my younger brother, Wyatt, is currently a college athlete. He could be cut from his team. Even if he makes it through the initial cuts, I am afraid that he will continue to feel immense pressure to keep his roster spot. And more than one round of cuts seems likely at many programs.

17.    If the roster limits are imposed, many student athletes will be impacted. Some will be put in worse financial situations and be forced to move states, leave their friends, and even delay their completion of college if they wish to continue playing their sport. They must be removed from this settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Oahu, Hawaii
January 26, 2025

Emma Carlton
NCAA ECID No. 1508264796
Address
47-745 Kamehameha Hwy
Kaneohe, HI 96744

3

Wyatt Carlton
2705 River Vista Loop
Mount Vernon, WA  98273


January 4: , 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Wyatt Carlton. I am a current Division I athlete at the University of Tennessee and my NCAA ECID number is 2106197546.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                          Sincerely,
                                                        Wyatt Carlton

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF WYATT CARLTON**</u>

I, Wyatt Carlton, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore and member of the swim team at the University of Tennessee. I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.      Leading up to college, I was the 2023 3A WIAA State Champion in the 100 Fly and runner up in the 200 Free.  I earned All-American Consideration times and set the meet record in at the District Championships, 2023. In 2022, I was the 3A WIAA State runner up in the 100 fly and the 200 free.  I currently hold the Pacific Northwest Record for the 100 Butterfly in LCM (Long Course Meters) and ranked in the National Top 20 for boys by USA Swimming in the 100 Butterfly and 200 Butterfly for the years 2021-2023.  I also won the 2022 USA Swimming Futures Championship in the 100 Fly in Santa Clara, California.  I qualified for and competed in the Summer and Winter Junior Nationals, finishing 11th in the country in August of 2023 in the 100 Butterfly.

3.      I was first exposed to the world of collegiate swimming when I was just 11 years old when I accompanied my older sister, who is also a swimmer, on some of her college visits. I followed in my sister's footsteps and decided to swim competitively as well.  She swam on Tennessee's Division I Women's Swim and Dive Team. When it came time for my college recruitment, I considered a number of colleges but found Tennessee to be the perfect fit. Tennessee has always been my dream school, and receiving an acceptance email from them during my junior year was an amazing feeling.  Tennessee had the academic degree I was seeking as well as the swim team I longed to be a part of.

1

4.      I first heard about the settlement in this lawsuit last summer, before the start of my sophomore season.  There were lots of discussions about the roster limits among teammates, but no official communications regarding the issue from the program.  Then, halfway through this season, our coach said they were being forced to cut the team down to 22 spots for men, effective this spring.  We were told that they already withdrew offers from some of the committed high school seniors.

5.      Next, I had a personal meeting with an assistant coach.  He said there was a good chance that I'll be cut as well, but that no decision has been made yet.  This has been incredibly stressful news to receive. While training in the pool 25+ hours a week and maintaining good grades, I have been extremely nervous and scared about losing my spot on the team--a spot I was promised to have with a scholarship for all four years.  As college athletes, we are continually pressured to perform at the highest level, but the roster limits issue has brought on a stress I never thought possible. This news has also deeply affected the team culture, which had a family dynamic before the looming threats of roster limits.  We have one of the strongest teams in terms of bonds among teammates that the school has ever had.  The cuts that will need to be made because of the roster limits will unfortunately end those bonds.

6.      This situation is especially difficult for me as an underclassman, as I am still developing as a swimmer.  Our training is designed so that we hit our peak performance at the end of the spring.  That time to develop is critical as it gives developing swimmers like me the chance to realize our potential.  I suffered from an illness last summer, which prevented me from training and caused significant weight loss.  I have been putting in the work necessary to get back into shape for competing, despite being sidelined due to a health issue.  Although this has not been easy, but I am happy to put in the work because of how passionate I am about swimming.

7.      Being cut from the team would also cause me to take on significant financial burdens, most notably, the cost of additional benefits I receive as a Tennessee Student Athlete. I receive a partial scholarship from Tennessee of between $15,000 and $20,000 a year.  Although I could have gone to a smaller program that would have offered me a full scholarship to attend

2

(at no cost to me or my family), I chose Tennessee because I was promised that I would be able to swim here for four years, Tennessee has the academic program I was seeking, and it has the most incredible coaches. Due to the roster limits, I am now at risk of losing my partial scholarship as well as other benefits like healthcare, access to the athletic cafeteria for breakfast and lunch, academic tutoring and class placement support, and the option of taking classes during the summer and winter terms. These benefits provide almost $25,000 in value that my parents would need to pay if I stopped receiving them as a student athlete.

8.    Entering the transfer portal would immediately put my scholarship and benefits at risk. This puts me in a difficult spot. I really do not want to transfer because Tennessee has been my dream school since a very young age, I am halfway through coursework completing the field of study for my bachelor's degree and I feel extremely connected to my team and view them like my own family. I have already signed an apartment lease for the school year, 2025-2026, which I have with three other swimmers on the team. Thinking about transferring to another school due to the financial hardship placed on my parents has become a nightmare to imagine.

9.    I am not the only one at my program who is disappointed with the cuts happening because of roster limits. Our coaches, especially our head coach, Matt Kredich, want the team to stay together if possible. The coaches believe in developmental progress. Certain swimmers, like myself, have only just scratched the surface and have so much more potential to realize. The coaches also want to honor the commitments they made to us when we signed our National Letters of Intent. As a newly signed recruit, I remember being ecstatic when the coaches and team told me about the tradition of all seniors signing the rafters after their final collegiate meet. I was promised the opportunity to compete and get my name up in the rafters.

10.    I think the roster limits are going to harm all collegiate athletics, and especially the Olympic sports. Teams will not be able to accommodate developing student athletes. There will be fewer overall Division I opportunities available for students like me. Being a student athlete has been especially valuable for me because I have been able to work on communication skills that are necessary for success in the workplace. These same opportunities will not be

available to countless developing student athletes if roster limits are forced on us.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Mount Vernon, Washington
      January 28, 2025

Wyatt Carlton
NCAA ECID No. 2106197546
2705 River Vista Loop
Mount Vernon, WA  98273

Grace Chelberg
517 W. 4th Street
Shawano, WI  54166


January 17, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Grace Chelberg.  I am a current Division I athlete at Liberty University and my NCAA ECID number is 2306935701.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                   Sincerely,
                                   Grace Chelberg

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF GRACE CHELBERG

I, Grace Chelberg, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am an 18-year-old freshman and runner at Liberty University. I am a member of the Injunctive Relief Settlement Class. I object individually and on behalf of the class.

2.      I have been running since around fourth grade and started competing on the middle school track team. I love running track and cross-country. My favorite distances are the 800 meter and 1600 meter races. Once I got to high school, I improved so much that I knew I wanted to pursue running in college. I was on the varsity team running 10 races a season every year in high school. My proudest accomplishment was placing eighth in the Wisconsin state 800-meter race, which was my first individual event.

3.      I am a devout Christian and only intended to attend a Christian college. I knew early on that all I wanted to do was run for Liberty University. In senior year, I filled out a Liberty questionnaire to express my interest in running cross country and track and field. I knew exactly what I wanted and didn't even try looking into other options. Fortunately, Coach Mark Fairley reached out to me and offered me a spot on the cross country team. I was so excited that, even though I wasn't offered any scholarships, I committed to Liberty in fall 2023.

4.      I arrived on campus in August 2024 and joined the women's cross country development team coached by Coach Fairley. There are 32 total runners on the entire cross country team. The development team has 17 runners, nearly all freshmen or sophomores. Coach Fairley told us that we would develop into top runners in two to three years, and get good enough to run on the competition team. Because injuries can happen with some frequency, we are also

1

1  expected to work hard so we can sub in at competitions if needed.

2    5.    My team quickly became my exclusive circle of friends. We are tight knit and

3  support each other in running, school, and life. Because I am a Liberty athlete, we live together

4  in team housing, eat together in the athlete cafeteria, and train together at the Liberty Athletic

5  Center. We also practice together every day (except Sundays), including captain-led long runs

6  on Saturdays.

7    6.    As an athlete, I have access to other support services at Liberty. There are tutors,

8  advisors, and trainers who are available to help me balance the intense training schedule with

9  my coursework. Keeping up my grades in addition to racing is important to me because I want

10  to be an educator after college.

11    7.    Then in mid-November, Coach Fairley told us that due to new NCAA roster

12  limits in the House v. NCAA settlement, he would have to cut *15 runners* from the women's

13  cross country team. He told us the roster limits were so strict, the athletic department couldn't

14  even move us around between cross country and track and field to keep us on the teams.

15    8.    We were shocked. Fifteen cuts basically means the entire development team. We

16  are the least experienced runners on the team, so we all knew that it was likely all the cuts would

17  be made to our group.

18    9.    I feel sad and frustrated at the near-certain prospect of being cut at the end of the

19  school year. I was promised four years of running for Liberty, and before I could even get my

20  feet under me, that promise was broken. I will be thrown out of team housing, lose access to all

21  the campus spaces that I have just managed to get comfortable with, and lose my friends.

22    10.    Transferring is not a realistic option for me. I knew for a long time that Liberty

23  was the only college I wanted to attend, and I never even considered going anywhere else. I also

24  don't want to add to the flood of women runners overwhelming the transfer portal. One of my

25  teammates has already entered the transfer portal, and many others I've spoken to are considering

26  it. I would feel even worse if I joined them, because even if I managed to land on another team,

27  I'd be sick and guilty about taking a spot from one of my teammates. I can't do that to my

28  friends.

DECLARATION OF GRACE CHELBERG
CASE NO. 4:20-CV-03919-CW

1      11.      I started the year hopeful for a new beginning.  None of us knew our hopes were

2 false.  I don't blame Coach Fairley.  It isn't his fault.  The settlement just has no regard for how

3 runners like me, who come to school to get better over time, are thrown away like none of us

4 matter.

5      12.      I never expected to earn NIL money.  I am paying my own way through school

6 because I want to run for the Liberty team so badly.  It isn't fair that my dreams and expectations

7 have been shattered overnight for no good reason.  I just want to keep what I was promised

8 almost 2 years ago.

9      I declare under penalty of perjury that the foregoing is true and correct.

10
Dated: Shawano, Wisconsin

11         January 17, 2025

12                                              Grace Chelberg
                                               NCAA ECID No. 2306935701
13                                             517 W 4th St.
                                               Shawano, WI, 54166
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nicholas Ciocca
329 Lenape Drive
Berwyn, PA 19312


January 7, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Nicholas Ciocca.  I am a current Division I athlete at the University of Notre Dame and my NCAA ECID number is 2102106239.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                      Sincerely,
                                      Nicholas Ciocca

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF NICHOLAS CIOCCA

I, Nicholas Ciocca, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a 19-year-old college freshman at the University of Notre Dame in Notre Dame, Indiana. I play on the Division I golf team at Notre Dame and thus am a member of the Injunctive Relief Class. I am writing to object to the inclusion of roster limits in the settlement on behalf of the class.

2.      In seventh grade, I fell in love with golf. I started spending all my time at the golf course. I joined my school's golf team in middle school and began traveling to tournaments. I knew very quickly that I wanted to play Division I golf in college, so I started reaching out to college coaches during my freshman year of high school.

3.      Many programs expressed interest in me playing on their teams. But when I visited Notre Dame in February 2022, I fell in love with the place. I knew that it was the perfect school for me. It had a great golf program, great academics, and it aligned with my Catholic faith, which has always been important to me.

4.      I verbally committed to Notre Dame to play on their Division I golf team in July 2022, and I signed my letter of intent on Signing Day in November 2023. I received a scholarship to play on the team. I was so excited to begin my collegiate golf career and to matriculate at Notre Dame.

5.      Before starting at Notre Dame in August 2024, I developed a wrist injury. Because of my injury, I had to sit out several tournaments in the fall of 2024, including Notre Dame's home tournament. My injury also prevented me from playing to my full capabilities. I

1   have been working with a trainer to heal my injury, but I will still have to go undergo surgery
2   after the spring season.

3       6.     In the fall, I knew that roster limits were looming, but I thought there was a good
4   chance a phase-in would be implemented. I did not think anyone—including me—would be cut
5   from the team this year. However, the way the settlement was progressing, it seemed like a
6   reality that this could happen way sooner than expected. As far as our team goes, we have three
7   incoming freshmen, which leaves two current players that will be cut. Our coaches told us that
8   they don't agree with the roster limits either, but that this was out of their hands.

9       7.     My teammates and I wrote letters to the Commissioner of the Atlantic Coast
10  Conference to try and stop the conference from opting in to the settlement and enforcing roster
11  limits. I even wrote a research paper about why a phase-in for roster limits would make more
12  sense. Despite our efforts, Notre Dame and the ACC both have opted-in to the settlement.

13      8.     In November, I found out that I would be cut from the team. I was shocked. If
14  the roster limits are included in the settlement, I will play the spring season at Notre Dame, but
15  next year I will no longer have a spot on the team, as well as my biggest support network at
16  school. I am especially disappointed because I have not been able to perform to the best of my
17  abilities so far because of my wrist injury.

18      9.     The golf team at Notre Dame is incredibly close-knit. My best friends are my
19  teammates. It will be difficult to adjust to not only spending less time with my friends, but also
20  less time playing the sport I love. Additionally, it is not clear whether I will be able to continue
21  to access the athletic resources—like academic counseling and tutoring, or the team gym—next
22  year after being cut from the team. This will also be an adjustment.

23      10.    All my teammates have expressed disappointment about the roster limits.
24  Throughout this year, we have built a great team culture with a lot of camaraderie. We work
25  hard and we have fun doing it. No one wants to see team members cut because of these arbitrary
26  roster limits.

27
28

I declare under penalty of perjury that the foregoing is true and correct.

1

2    Dated: Berwyn, Pennsylvania
     January 7, 2025

3                                    Nicholas Ciocca
                                     NCAA ECID No. 2102106239
4                                    329 Lenape Drive
                                     Berwyn, PA  19312
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3**
**DECLARATION OF NICHOLAS** CIOCCA
**CASE NO. 4:20-CV-03919-**CW

Boden Clark
12303 98th Ave Ct NW
Gig Harbor, WA 98329


January 26, 2025

      Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Boden Clark.  I am a current Division I athlete at Mercyhurst University and my NCAA ECID number is 2201410123.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                 Sincerely,
                                                 Boden Clark

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF BODEN CLARK

I, Boden Clark, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a Sophomore, Class of 2027, at Mercyhurst University and am a member of the NCAA Division I Men's Lacrosse team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have committed countless hours over the years to achieve the opportunity to compete as a Division 1 college athlete. As a student-athlete, I have been dedicated myself to rigorous training sessions and practices, 20-40 hours a week depending on the time of year.  I had to make a choice to forgo part-time employment, social events, high school experiences and family vacations.  My commitment required discipline and resilience which I made willingly to pursue my dream to play lacrosse at a higher level.

3.      My athletic achievements were recognized by coaches across the country, amongst all divisions, and I received multiple college offers.  I chose Mercyhurst University because it was the right fit for me academically, athletically and socially.

4.      The recruiting process was long and competitive.  My coach promised me a spot on his roster all four years, and the opportunity to compete for playing time based on my attitude, skill and effort.  I made the choice to turn down several other offers because I believed in the vision for my future here, both as a student and an athlete.

1

5. I am deeply concerned about the impact of the proposed roster limits and consider them unfair and inequitable. The proposed roster limits would mean our current team of 63 players would be forcibly reduced to 48. This means 15 of my brothers would be cut, possibly including myself. My knee was seriously injured during practice a few months ago which required an extensive surgery and 10-12 months of rehabilitation. I am on medical redshirt status until I am able to return to the field. While I have been working hard to recover, and remain engaged daily with the team, this roster reduction threatens my future as a student-athlete. In fact, the roster limit incentivises coaches to let go of any injured players, thus essentially ending their athletic careers.

6. My coach says the administration at Mercyhurst University is still unsure if they will opt-out of the proposed settlement. The looming uncertainty is taking a heavy mental toll on myself and teammates. The mental requirements of being a student-athlete are already demanding, and the added stress of potentially losing my position has exacerbated these challenges as well as complicated my recovery. The thought of potentially being cut, because I am injured, and cannot compete to retain my position, is affecting my daily well-being.

7. If I am cut, as a result of the proposed roster limits, I will lose much more than just my position as a player. I will lose the camaraderie and sense of belonging that being part of the team provides. The friendships I have built over the years have become an integral part of my college experience, and being part of the team has helped shape my identity and purpose as a student-athlete. Additionally, the team benefits extend to networking and expanded career opportunities. Thus roster limits have the potential of a lifelong negative impact.

8. As a result of the proposed roster limits, I am left with considerable uncertainty and anxiety about whether or not I will be able to continue competing for my university, have to transfer or will be forced to stop playing collegiate sports completely. This all affects my

1  ability to afford tuition and graduate on time.  The intent of the student-athlete path is to assist

2  and enrich the college experience not hinder or derail one's future.

3    9.    I respectfully ask the court to consider the human impact of these roster limits

4  and all the complexities this entails.  Revenue sports should not, and cannot, be the only

5  priority of the NCAA.  I hope the court will recognize the deep, lasting impact these cuts will

6  have on me and my teammates, and all athletes affected, and that a fair solution can be found

7  that allows us to continue pursuing our dreams as student-athletes.

8    I declare under penalty of perjury that the foregoing is true and correct.

9

Dated: Erie, PA

10    January 26, 2025

Boden Clark
NCAA ECID No. 2201410123

12303 98th Ave Ct NW
Gig Harbor, WA 98329

DECLARATION OF BODEN CLARK
CASE NO. 4:20-CV-03919-CW

Kayla Coates-Robertson
8321 172nd Ave NE
Redmond, WA 98052


January 26, 2025

  Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Kayla Coates-Robertson.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2309118129.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

               Sincerely,
               Kayla Coates-Robertson

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

## DECLARATION OF KAYLA COATES-ROBERTSON

9      I, Kayla Coates-Robertson, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10      1.      I am a Freshman at the University of Washington and a member of the NCAA

11  Division I Women's Rowing team.  I am a member of the Injunctive Relief Settlement Class and

12  object both individually and on behalf of the class.

13      2.      Although I have no regrets, I would like to highlight that on the path to becoming

14  a Division I college athlete I went from running a club at my middle school to dedicating my

15  extracurricular time almost solely to rowing in high school.  While my peers gained part time

16  job experience, leisurely spring breaks, and benefited from hours of time to study after school

17  each day, I was rowing. I missed friends' birthday parties and family vacations.  To be successful

18  in rowing you can't miss practice.  Your success is dependent on your whole boat being fast,

19  meaning not only do you have to buy in, but you have to inspire others to buy in.   Any

20  relationship that doesn't have to do with rowing has to be very strong to withstand the level of

21  dedication required to rowing and rowing only.

22      3.      In my high school rowing career, I qualified for Youth Nationals three times, for

23  the women's 2V 8 sophomore year, and the Varsity 8 my junior and senior year.  I won my

24  club's indoor 2k erg race my junior year and I was my club's fastest erg time for the class of

25  2024.  At Northwest Regionals I placed 2nd in the 2V 8 my sophomore year, 2nd in the Varsity

26  4- and 3rd in the Varsity 8 my junior year, and 3rd in the Varsity 4- and 2nd in the Varsity 8 my

27  senior year.  This year I hope to compete at Big 10's in a novice 8.

28      4.      Fall of my senior year my mom and I flew multiple times so that I could meet

1

coaches, see schools, and interact with what my potential future teams could be. One of the things I valued the most was rowing somewhere I would be able to compete and grow over time. I wanted role models to look up to like I had in high school. The University of Washington told me the first time I talked to them that I should only consider their school if I was ok with spending my first few months rowing with people who had never rowed before. As someone who started rowing after COVID and consequently had a very large novice class in high school, this was a positive. There are few things more inspiring than watching people discover and develop a love for the sport that has changed your life.

5.    During recruitment I shared my love for racing and explained that in college I wanted to continue to improve my individual scores and race at the collegiate level. Imagine my disappointment when Coach Yasmine Farooq (Coach Yaz) shared with us that we will not be able to race until our roster is capped on December 1, sacrificing our entire fall racing schedule.

6.    I learned about roster limits the evening of January 17, 2025 from our head Coach Yaz. She sat us down and walked us through how the settlement in the *House v. NCAA* case will implement a 68 person roster cap. With a freshman class of 40 athletes, we were well aware that the UW women's rowing team thrives off of a large roster size and time spent cultivating athletes from a wide range of initial skill levels. She stressed to us that our coaching staff would be doing their best to give each of us our best shot at making that 68-person cap by sacrificing our fall racing season, giving all of us chances to find new speed before the cap was finalized on December 1, 2025. On a team of nearly 100 athletes, that means saying goodbye to 32% of our team.

7.    With the impending 68 person cap, I am incredibly stressed about my chances, and my friends' chances, of making the team next year. In our sophomore year, we will no longer just be competing against novice rowers for boating. Instead, our competition becomes our fellow teammates who are Olympians, record holders, and truly incredible athletes. As a young woman even with years of experience in rowing behind me, proving to myself that I am a competitive athlete is a continuous struggle. In a sport that requires not only physical strength but also the mental strength to force the body to exert itself beyond the point where our minds

tell us to quit, the added competition of a 32% decrease in team size is a significant hinderance. Every day I weigh time spent sleeping, versus training, studying, eating, or socializing. Now I run these equations twice as often, with four times as much anxiety. How do I get optimal performance? How do I waste less time? I want to focus on my love for this sport, not exacting the optimization of my time for it.

8.      I started rowing my sophomore year of high school and I never looked back. Rowing has provided me stability and self confidence in the most turbulent years of child and young adulthood. People tell young women all the time that they are strong, but there are not very many chances the world creates for them to prove it to themselves in a safe and uplifting environment. The people I plan to live with next year are rowers, many of my close friends and support systems are past or present teammates. I can take economics classes and feel confident of my success because of individualized athletic tutoring, and I have access to high quality food via athlete dining. The most immeasurable benefit, however, is the aid the rowing community provided me transitioning from high school to college, which I pray I will continue to benefit from in the coming years.

9.      Because of roster limits I must consider a future that might not include rowing. I do not want to transfer. My family is a 20-minute drive away, and I chose the University of Washington for its impressive facilities and on campus boathouse. The way I live is intertwined with my love for rowing. My practice schedule has helped me manage my time, but the sport has helped me manage my life. Because of rowing I know how to self-motivate, how to be friends and be successful with people who are very different from me, and how it feels to dedicate yourself wholly to a cause dependent on the cooperation of many.

10.      Protecting women's sports is not a new fight, but we should be moving forwards, not backwards. While I am sympathetic to the athletes searching for monetary compensation, what about the hundreds of women past and present and potentially future who gain things far more valuable than money from women's rowing? Our team's success and culture come from its ability to empower people starting from all different skill levels and showing them that the sky is the limit. While joining UW's women's rowing team is a potential path to the Olympics,

it is more importantly a certain path to self-confidence.  Don't allow the colligate sporting world
to be one for only male athletes and money.  This roster cap will ruin the spirit of something I
and my teammates value above almost everything.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
      January 26, 2025

Kayla Coates-Robertson
NCAA ECID No. 2309118129
8321 172nd Ave NE
Redmond, WA 98052

Greyson Connor
1529 Ideal Way
Charlotte, NC. 28203

January 26, 2025

Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Greyson Connor.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

*Greyson Connor*

Greyson Connor

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF GREYSON CONNOR**

I, Greyson Connor, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am 15 years old and am in 9th grade at Charlotte Latin School in Charlotte, North Carolina. I have been a competitive swimmer since I was 9 years old and hope to compete on a Division I college team.

2.      I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college. I therefore am a class member who could be affected by the terms of the settlement. I object to the settlement for the reasons stated below, both for myself and for other class members like me.

3.      I currently practice 6 days a week in and out of the pool for 2-3 hours per day for 49 weeks out of the year. I compete for a club team that trains and competes 12 months out of the year and also for my high school team that competes in the winter. My two teams have swim meets 1-2 times per month, which means I am often swimming 7 days per week. I love the sport of swimming and want to have the opportunity to continue my swimming career in college. Because of my dedication to practice and meets, I sometimes have to miss school, social events, football games, and other activities my classmates are able to enjoy.

4.      I first started swimming when I was 5 on a summer league swim team before I starting swimming competitively at 9 years old. At 10 years of age, I qualified for my first Age Group State Championship. Since then, I have continued to qualify for the state championship meet each year, as well as a regional sectional meet called Southern Premier since I was 12.

5.      I have learned many lessons from swimming. To be successful requires hard

1

1    work and dedication, as well time management.   I have become a better student from these

2    lessons because I cannot afford to procrastinate and must be efficient with my limited free time

3    after swim practice.   My father was on the swim team at the University of North Carolina at

4    Chapel Hill, and my sister has committed to swim for Georgetown University this fall.  I hope

5    to have the opportunity to follow in their footsteps.

6         6.    I believe that college sports teams should not have roster limits imposed because

7    it will reduce the number of opportunities for athletes to play the sport they love at the college

8    level. I have seen how hard my sister has worked over the years to be eligible to swim in Division

9    I, and it would be devastating for her hard-earned spot to be in jeopardy in the future due to

10    roster limits. Student-athletes work tirelessly for many years and are dedicated to their sport and

11    education.   Playing a sport creates lifelong friendships, encourages teamwork, promotes

12    leadership, and teaches perseverance after disappointment and other life lessons.  Athletes like

13    my sister and me just want the chance to continue our athletic careers.

14         7.    The percentage of high school athletes who continue to play their sport in college

15    is already extremely small.  To impose roster limits would further reduce the dream of many

16    high school athletes.  Thank you for your consideration of athletes who just want to play the

17    sport they love for their college.

18         I declare under penalty of perjury that the foregoing is true and correct.

19    Dated: Charlotte, North Carolina

20         January 26, 2025

21                            *Greyson Connor*
                          Greyson Connor

22                              1529 Ideal Way
                          Charlotte, NC 28203

23

24

25

26

27

28

2

DECLARATION OF GREYSON CONNOR
CASE NO. 4:20-CV-03919-CW

Lila Connor
1529 Ideal Way
Charlotte, NC. 28203

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Lila Connor.  I am a high school student committed to be a Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

*Lila Connor*

Lila Connor

73

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF LILA CONNOR

I, Lila Connor, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am 18 years old and am in 12th grade at Charlotte Latin School in Charlotte, North Carolina.  I have been competing as a swimmer since I was 11 years old and have committed to compete at Georgetown University this fall.

2.     I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college.  I therefore am a class member who could be affected by the terms of the settlement.  I object to the settlement for the reasons stated below, both for myself and for other class members like me.

3.     I practice for 3 hours Monday through Saturday during the school year.  During the summer and over school breaks, the training increases to 5 hours per day.  Swim meets occur at least twice a month over 3 days with morning preliminaries and evening finals sessions lasting 3-4 hours each. I train 49 weeks out of the year.  I love the sport, as it challenges me in different ways than in the classroom.  With swimming, I found an endless drive for more.  Once a goal or a best time is achieved, there is always a new goal.  I have made sacrifices for swimming including deciding between sleep and homework during very limited free time after practice.  I've had to miss school for meets, and it is challenging to make up the work and missed instruction time.  I have also missed school and social events such as football games and dances due to swim meets.

4.     I first qualified for the Age Group State Championship swim meet when I was 12 years old. Since then, I have qualified for swim meets at the regional and national levels,

1

1  including Futures Championships and Winter Junior National Championships. While competing

2  for my varsity school swim meet, I have won state championships in both individual and relay

3  events and named Most Valuable Player for the most points scored.

4      5.      My father swam for the University of North Carolina at Chapel Hill and inspired

5  me to swim. I thrive in a structured schedule, and swimming requires a lot of scheduling and

6  time management, which forces me to be efficient. Through swimming, I'm able to strengthen

7  my body and mind because the sport is mental in addition to physical.

8      6.      I believe that Division I athletic teams should not have roster limits imposed

9  because of how much harder it will be to compete for a spot on a collegiate team. If my spot at

10  Georgetown was cut due to roster limits, I would be devastated. I signed my Letter of Intent to

11  swim at Georgetown on April 8, 2024, and I have been looking forward to swimming with the

12  team every day since then. However, with this ruling, my spot could be cut before I even have

13  my first practice as a Georgetown swimmer. Additionally, my younger sister is a freshman in

14  high school and hopes to swim at the collegiate level. With this roster limit, it will be

15  substantially harder for her to find a school and team that is the right match for her and has spaces

16  available. It is possible that my sister may not get the same opportunities that I had during the

17  recruitment process due to this ruling. Younger swimmers across the country should not be

18  forced to stop competing at such a high level because schools that would have been an option

19  for them a year ago, suddenly have to be much more selective.

20      7.      Thank you for your consideration of the effect roster limits will have on student

21  athletes. Roster limits will crush so many athletes' hopes of competing at the Division I level

22  and must not be imposed.

23      I declare under penalty of perjury that the foregoing is true and correct.

24  Dated: Charlotte, North Carolina
25         January 26, 2025

26                              _Lila Connor_
                                Lila Connor
27                              1529 Ideal Way
                                Charlotte, NC. 28023
28

2

DECLARATION OF LILA CONNOR
CASE NO. 4:20-CV-03919-CW

Kaitlyn Conover-Emmert
2549 Fairbrook Dr
Mountain View, CA 94040

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Kaitlyn Conover-Emmert.  I am a current Division I athlete at the College of William & Mary and my NCAA ECID number is 2304846881.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                Sincerely,
                               Kaitlyn Conover-Emmert

1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8      **<u>DECLARATION OF KAITLYN CONOVER-EMMERT</u>**

9      I, Kaitlyn Conover-Emmert, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10     1.     I am a sophomore at the College of William & Mary and a member of the NCAA

11 Division I Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and

12 object both individually and on behalf of the class.

13     2.     Our coaches have explained to us that roster limits, if implemented, will cause

14 our team to incur and suffer from cuts of four of our teammates. We do not yet know if these

15 will be athletes currently on our team, incoming freshmen, or a combination. We do not want

16 this and feel we should not have to worry about losing teammates or have any concerns

17 surrounding our own position on the team. Added stress does not help performance or team

18 spirit. Nor will a limited roster benefit our team.

19     3.     We function as a team in and out of the pool. We eat together, study together,

20 relax together, and live together; we have strong mentoring systems on our team and pride

21 ourselves on helping one another in and out of the pool; we are a tight, supportive group. We

22 worked incredibly hard throughout high school in order to have this opportunity; we all want to

23 remain on this team and at our school, together. We do not feel roster limits help our team or our

24 sport, but they will negatively impact those who are cut and our team at large.

25

26

27

28

1

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Dated: Williamsburg, VA

Signed by:

*Kaitlyn Conover-Emmert*

3    January 28, 2025

24CAD82B3A7D4BF...

Kaitlyn Conover-Emmert

4    NCAA ECID No. 2304846881

2549 Fairbrook Dr

5    Mountain View, CA 94040

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Mina Cook
3516 NE 96th Street
Seattle, WA 98115


January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Mina Cook.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2209659266.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                    Sincerely,
                                    Mina Cook

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF MINA COOK

I, Mina Cook, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am a freshman at the University of Washington and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    This past year has been my first year of competing as a college athlete. So far it has been one of the most rewarding yet demanding things I have ever done. I first started rowing when I was in eighth grade. In the five years between starting my sport and becoming a Division I athlete I spent countless hours dedicated to my sport. I have been training 6 days a week, every week since I was twelve years old. This dedication of time to my sport meant making numerous sacrifices. Because of my sport I was not able to experience many key high school experiences, such as going to a school dance or walking at graduation. This is just a small portion of what I missed out on in my pursuit of Division I athletics. However, the dream of competing and my passion for the sport made all the sacrifices worthwhile.

3.    Most young rowers in Seattle dream of rowing for the University of Washington at some point in their careers, and I was no different. After learning of the deep history of the rowing program at Washington, and hearing of the many stories of excellence, I began imagining what it would be like to represent Washington as an athlete. I remember as a freshman in high school, watching in awe as the fleet of UW boats rowed past me, each athlete and crew perfectly in sync navigating the glassy waters of Lake Union. That is when I knew I wanted to be a Husky, and from that moment on I worked tirelessly to try and make this achieve this goal.

1

4.      During my junior year of high school, after three years of work, I was finally fast enough to catch the attention of the coaches at Washington and was invited to watch a practice. I don't think I slept the night before my visit, the mix of excitement and nerves making it feel impossible. During my visit I watched the athletes complete a twenty-kilometer row on the rowing machine. Looking out at the rows upon rows of athletes, I saw that there was power in the size of the team, and that the scale brought a mightiness and an impressive comradery to the group. I signed my commitment letter a few weeks later. In that letter I was promised a spot on the team as long as I hit some athletic benchmarks; something that I knew was possible as long as I applied myself fully.

5.      In the months leading up to the start of the school year, and throughout the past few months at school, I have been working hard to set myself up to hit those benchmarks. However, after learning about the newly proposed roster limits my efforts feel aimless. Development in rowing takes time, and with the proposed roster cuts, I and many other athletes will not have time to develop in order to compete for a spot on the team. This development time impacts current and incoming freshmen the most. With the proposed roster cut day, most of us will stand no chance against the older athletes. This is not only damaging to us as individuals, but it also threatens the future of our sport. This has been an incredibly difficult reality for me and my peers to accept.

6.      Losing a spot on this team would be detrimental to my mental and physical well-being. I have only been on the team for a few months, but it has quickly become like a second family to me. All of my closest friends are on the team, and I can't imagine losing the time I have with them. Not only would I lose my community, but I would also lose benefits that the team brings, such as food, academic resources, and medical coverage. This would make things more difficult for me and would greatly increase costs of going to school.

7.      If cut, I would be forced to make a very difficult choice. I can enter the transfer portal and get to continue to pursue my passion, but I will have to move away from all of my friends and family, as well as pay for out of state tuition, something that my family cannot afford. Or, I stay at my school and keep my community, but I lose what has been the biggest part of my

1  life for the past six years. I deeply hope that I will not be forced to make that decision.

2      I declare under penalty of perjury that the foregoing is true and correct.

3  Dated: Seattle, Washington

4      January 26, 2025

_____
5                          Mina Cook
                          NCAA ECID No. 2209659266
6                          3516 NE 96th Street
                          Seattle, WA 98115
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3
DECLARATION OF MINA COOK
CASE NO. 4:20-CV-03919-CW

**82**

Griffin Craig
24328 Philson Farm Road,
Bartlesville, OK 74006


January 27, 2025

      Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Griffin Craig.  I am a current Division I athlete at the University of Missouri and my NCAA ECID number is 2207616892.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Griffin Craig

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF GRIFFIN CRAIG

I, Griffin Craig, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a student-athlete at the University of Missouri and a member of the NCAA Division I men's swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     I object to the roster limits proposed in the *House v. NCAA* settlement.  These roster limits are unfair for the student athletes that are currently participating in college sports.

3.     I am afraid of being one of one of the athletes affected by these roster limits.  It will be very hard on my family, because for me to remain at the University of Missouri, my family would have to the cost of out-of-state tuition.  I was recruited by the University of Missouri over 2 years ago.  I may not have committed to this out-of-state cost had I known that roster limits could risk my spot on the team.

4.     There are also hundreds of benefits that I, along with many other college athletes at risk of being cut, would lose if we are cut.  They include athletic services such as meals, clothing, housing, and academic support.  There are so many athletes that rely on their athletics to pay for these things in college along with the cost of school, and losing this opportunity would financially hurt them and their families.

5.     The transfer portal is no solution.  It is too late for athletes to enter the transfer portal and find a spot on another team.  At the same time, it is cost prohibitive for many to remain where they currently are without scholarships that they could lose if cut.

6.     Roster limits will not only have a huge financial impact on thousands of college

1

athletes, they will also cause significant emotional and mental health issues. For me, my team has become like a second family, and the thought of losing them has a significant impact on my mental health. I rely on my teammates to get me through my days of school, long practices, and being homesick. I know I am not the only athlete who feels this way.

7.    It is imperative that the Court reject the roster limits in the settlement and consider the thousands of student athletes that will be affected financially and emotionally by these roster limits. At minimum, I ask the Court to please allow me and all affected athletes to be "grandfathered in" without being cut due to roster limitations that were not in place when I was recruited to swim for the University of Missouri.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Columbia, Missouri

January 26, 2025

Signed by:

*Griffin Craig*

7071AAC9E89C48C...

Griffin Craig
NCAA ECID No. 2207616892
24328 Philson Farm Road,
Bartlesville, OK 74006

Audrey Cronin
4330 Little Canoe Channel Ne,
McCarty Hall, Rm 314,
Seattle, WA 98195


January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Audrey Cronin. I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2206584208. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                            Sincerely,
                                            Audrey Cronin

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF AUDREY CRONIN</u>

I, Audrey Cronin, hereby declare as follows pursuant to 28 U.S.C. §1746:

1. I am a freshman at the University of Washington and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2. Before rowing at the University of Washington, I started rowing as a high school freshman at St. Andrew Rowing Club in 2020. I remember my novice year being incredibly challenging and grueling. I came into the sport at 5'6", 190 lbs, with minimal athletic experience. I was one of the slowest kids on the team. I lacked the power and endurance to be able to pull my weight in the boat. Through steady progress and perfect attendance at practice, I earned the opportunity to seatrace for the U17 Youth Nationals pair but ended up losing my seatrace by over 15 seconds. I knew this meant that the rest of my high school years were going to require sacrifices if I wanted to be successful in this sport. So I started following in the footsteps of my teammates who were in the 1V and 2V8s. I was doing extra ergs, changed my diet, and created an erg spreadsheet with goals for every workout. I started beating people who were taller and more powerful than me on erg workouts. Practices were 6 days a week for 3 hours a day. Every single Saturday morning I would do a threshold workout before practice, practice on the water,

1

and come back to lift, totaling around 5 hours of practice. In my sophomore year, I won the St. Andrew Women's Most Improved Varsity award, and in my junior year, I broke the St. Andrew Rowing Club Lightweight women's 2k record pulling 7:29.3 at 134 lbs. I've medaled at Youth Nationals 3 times: 3rd in 2022, 3rd in 2023, and in my senior year, I won a USRowing Youth National Championship in the Women's 4+ by over 6 seconds.

3.      At 5'7" and 135 lbs in my junior year, I had a difficult time proving my speed in open-weight recruiting. Some of my top schools, like Penn, Princeton, or UMichigan, liked my race results but didn't consider me a top recruit because of my height and raw erg scores. Luckily for me, I was able to begin talking with the University of Washington because of a former coxswain on my team, Olivia Murdock, who saw my potential as an athlete and recommended me to the UW coaching staff. At the time of this recommendation, I had a 7:41 2k and my best race result was a 3rd place medal in the Women's Youth 4+. From this point on, I continued to update Coach Sam, the recruiting coordinator, with my new PRs and race results, and by the fall of my senior year, I knew that Washington was the right place for me because I kept in conversation with them before I had any solid erg scores or race results. I was recruited for my work ethic and who I was as an athlete and not simply for my metrics and if I am no longer on this team next year I will struggle to find a program that follows that outlook when recruiting.

4.      I was recently informed of the roster cut during a team meeting and I knew what it meant for athletes who are still developing. The journey I experienced in high school opened my eyes to the process of athlete development. If I had been cut from my high school team based on my height and erg scores by the beginning of my sophomore year, I never would have won Nationals my senior year. Athleticism is so much more than what means the eye and athletes like myself require time to reach their potential. Whether physically or mentally, I believe that given the right atmosphere, anyone can create a legacy and be successful in the sport of rowing.

2

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, WA
        January 26, 2025

_____
Audrey Cronin
NCAA ECID No. 2206584208
4330 Little Canoe Channel Ne,
McCarty Hall, Rm 314,
Seattle, WA 98195

Emma Cronin
McCarty Hall, Room 219
4330 Little Canoe Channel NE
Seattle, WA 98195

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Emma Cronin.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2206590624.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Emma Cronin

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF EMMA CRONIN

I, Emma Cronin, hereby declare as follows pursuant to 28 U.S.C. §1746:

I am a first year at the University of Washington and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

Prior to rowing at the University of Washington, I spent my 4 years in high school rowing at the youth level. I had practices every day of the week except for Sundays; the typical weekday practice would last 3 hours while Saturdays typically extended to 5 hours. These practices consisted of erging, rowing, body circuits, strength training etc. I pushed my physical limits, there were pieces I barely finished and times where I pulled erg scores I didn't know were ever going to be possible. Emotional, physical, and social sacrifices were involved, but my goals were clear: I wanted to improve my athletic ability and row at the collegiate level. With this experience I had one major takeaway: rowing is a sport in which it takes time to develop, grow, and succeed, regardless of the individual's prior experience.

For me, becoming an athlete proved to be no easy task. Before picking up rowing in high school at Saint Andrew Rowing Club, I was an extremely unathletic and unmotivated individual. I had participated in sports throughout elementary and middle school, but I never had enough accountability to continually play one. I remember telling my parents to

purposefully come late to swim practice so we could skip running sprints before getting in the pool. Instead, I spent the majority of my hours on my computer, playing video games and watching online content. These habits were worsened by COVID, I began to isolate myself from my friends and neglect my physical and emotional health. As a result, I was diagnosed as obese by doctors and weighed 210 lbs as a freshman in high school. Additionally, I had no more friends to talk to: I felt alone. Something had to be done to turn my life around, to prove I could be more than who I was becoming.

Rowing became my chance, my opportunity to prove I could be capable of something bigger than myself: a team. However, it took me a long time to acquire any success. In my first year of rowing, despite attending every single practice, I had the worst weight-adjusted 2000m erg score on the team. This meant that on the water, I would have been beaten by every single person on the team, some of whom had joined the team weeks before the test. Statistics showed that I produced "negative wattage" for my weight, meaning if I had been pushing as hard as I possibly could for a 2000m race, I would have slowed down the speed of the boat. I can guarantee that if my youth rowing club had a roster cut or cap, I would be cut for a lack of athletic ability and potential.

Thankfully I was given the opportunity to grow, develop, and improve. I made intense sacrifices, including coming to the boathouse at 5am on Saturday mornings to log extra meters, staying after practice to finish strength training, or constantly asking my coach technical questions to improve my technique. Even if this meant I had less time to play video games or attend social events, every practice felt worth it. I saw myself transform, both physically and mentally. Once I had a taste of what it felt like to do something hard, I never wanted to look back. In my junior year, I made the firm decision that I wanted to pursue a higher level of rowing in college.

Towards the end of my high school career is when I saw the most amount of success. At the end of my sophomore year, I earned a bronze medal at the USRowing Youth National Championships in the Women's U17 4+. In my junior year, I won another bronze medal in the Women's Youth 4+ event. Finally, in my senior year, my team and I won a national championship, winning the Women's Youth 4+ event by over 6 seconds and earning my club team its first national championship in club history. Additionally, I won a team award titled, "The Spirit of Saint Andrew," in recognition of my work ethic, effort, and ability to be a trustworthy teammate. The title is awarded to the athlete that best exemplifies the "spirit" of what it means to be a rower on the team. This proved that my gains were not just physical, but I had become a better person and human being over the course of my rowing journey. I would not trade the friendships I made and life lessons I learned regarding empathy, accountability, and leadership for anything.

Had I not continued to row in high school, had I been cut for the rower I was in my freshman or sophomore year, I would have never been able to win a national championship. I would have never felt the pride of starting from ground zero and working toward success.

Not only do I want to continue to grow and flourish as an athlete in college, but I dream of sharing this experience with my friends and teammates on the UW women's rowing team. My closest friends, and my current roommate are walk-ons, they have zero or very little rowing experience. The current proposed roster cut would be detrimental for anyone who needs time to develop before flourishment in the sport of rowing. It would be a tragedy to close the door on the dozens of current rowers who are pushing their limits to be the best athletes they can be; it takes time to learn the proper technique and gain boatspeed. I do not want to imagine where I would be if I had not gotten the chance to continue rowing in high school: a very similar story can be told about collegiate rowing. I can not imagine the athletes in the sport of rowing would

3

undoubtedly lose if coaches were forced to make a short-term decision about the future of their athletes.

I heard about the roster cuts from my head coach, Yasmin Farroq. She informed us that a large number of the team would be cut on December 1st, 2025 in order to achieve a roster count of 68 athletes. There is no doubt that whether or not I am on this list, it will put strain on my relationships with friends. There would be no more time training and rowing together at practice, studying in the athletic academic building, or eating meals together in the dining hall. Furthermore, if I were to be cut, I would inevitably be joining the transfer portal. As an out-of-state athlete, my family depends on my opportunity to earn a scholarship, the financial burden would be too much to support my twin sister and I for all four years of college with no athletic benefits. Even without a scholarship, some benefits include free meals and snacks as an athlete, priority spots when selecting classes, and the dozens of staff and faculty that can assist athletes academically, physically, and mentally.

I personally plead for an extension of the rowing roster limit, collegiate athletes deserve the time to achieve their full potential.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
    January 26, 2025

*Emma Cronin*

NCAA ECID No. 2206590624
Room 219, McCarty Hall
4330 Little Canoe Channel NE
Seattle, Washington 98195

4

Trey Cunneen
10416 Donoho Pl,
St. Louis, MO 63131


January 24, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Trey Cunneen. I am a current Division I athlete at the University of Missouri and my NCAA ECID number is 2101996651. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,
            Trey Cunneen

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF TREY CUNNEEN

I, Trey Cunneen, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.     I am a freshman at the University of Missouri (Mizzou), where I am a swimmer on the Division I swim and dive team.  I am a member of the Injunctive Relief Class, and I object individually and on behalf of the class.

2.     Going into high school, I was not the strongest swimmer.  However, I was consistent in my work and dedication and proceeded to get stronger.  My sophomore year I went 15:53 and 9:26 in the mile and 1,000-meter respectively, which allowed me to get recruited to many strong schools.

3.     Being from Missouri, it had been a dream of mine to swim at Mizzou since I was about 8 years old and attended a swimming camp there.  When Coach Andrew Sansoucie first emailed me, I was ecstatic.  As I visited schools, I decided that Mizzou was the best fit for me.  I committed to knowing that I was outside of Southeastern Conference (SEC) scoring range and would likely have to fight each year for a roster spot.

4.     Unfortunately, my junior and senior year of high school were filled with setbacks due to illness and injury.  This led to one of the hardest moments of my life.  On November 7, 2023, the day before national signing day, I received a call from Coach Andrew Grevers at Mizzou.  He said that while he was more than excited to have me on the team next

1

year, it would be as a preferred walk-on. In essence, my scholarship off had been rescinded.

5. I could have accepted a scholarship offer at another school. But that was never an option for me. I knew that Mizzou was my home, and where I wanted to swim. So even though I had no athletic financial aid, I committed to Mizzou.

6. Fast forward to March of 2024. After another spring plagued by injury, I decided to skip my senior summer and go to Mizzou early to train with the team. On June 1, 2024, I arrived at Mizzou, put my head down, and got to work. I lived in an apartment with 3 complete strangers, 10 minutes away from the rest of the team, and 15 minutes away from the pool, because I was committed to improve my swimming. I spent most of my days that summer swim training or spending time alone in my apartment because it was incredibly important that I apply myself and prove that I deserved to be there.

7. Things got better, and by the time fall came, I was sure I was ready for a monster freshman year. Unfortunately, the first two months of my freshman year were also plagued with injury and illness, including a concussion and pneumonia. Still, my coaches and I feel like I have made significant progress. While I do not know what the end of the year looks like, I am confident that I am a better swimmer this year because of the training I received at Mizzou.

8. I oppose the roster cuts because Mizzou and the SEC made a commitment to us when we joined. If you asked every single swimmer on signing day how long they planned to stay at the school they were signing to, almost every single one would say four years. There was never a thought in my mind that I was committing to Mizzou for anything less than all four years. I doubt that I would have been recruited here had I told the coaches that I was only in for a year. Similarly, every single member of the class of 2028 committed to their SEC school with the intention of swimming there for four years. Had I known that the NCAA

would cut rosters to 30 swimmers – the SEC would further cut rosters to just *22* – because of the settlement in *House v. NCAA*, I would not have chosen Mizzou.

9.    When schools recruit athletes, they make a commitment to keep athletes on the roster as long as they are deserving of the investment and support it takes to excel at the sports we love.  Athletes like me have done nothing but work hard and follow the rules set out by the SEC schools, and we deserve to have at least one more year to prove ourselves.  But because of the roster limits in the settlement (and the SEC's even more dramatic limits), we find ourselves on the outside looking in without fair notice.  At minimum, athletes who weren't subject to roster limits before should be grandfathered in to allow schools to fulfill their commitments to hardworking student athletes like me.

10.    Most swimming student-athletes at risk of being cut are receiving little to no financial compensation right now, but they are committed to swim anyway.  I receive no scholarship to swim at Mizzou, and many members of the freshman class are in the same or similar boats.  Money is not what this is about for us.  If you gave anyone affected by these roster cuts the option to remain at Mizzou as a walk-on, they would take that opportunity in a heartbeat.

11.    Even if the coaches said that I would get no gear and would have to pay for my own travel for the next three years, I would jump at the opportunity to remain on the team.  The people affected by these cuts are not looking for NIL money, or even scholarship money.  We are simply asking for the opportunity to prove ourselves, and maybe one day earn money for doing what we love.  We are asking the NCAA and SEC to consider giving us the fair opportunity that was promised to us back on signing day.

12.    The roster cuts take away the ability for underclassmen to develop.  When I came to Mizzou, I was told by the coaches that freshman year was for development.  I have

watched myself and my teammates get better technique in the pool and stronger in the weightroom. Swimming is already one of the few college sports where freshmen are expected to compete and score at conference their freshman year. By cutting the rosters after freshman year you are taking away the ability for us to develop and reach our potential. Perhaps myself or one of my teammates is the next breakout star or US Olympian, but because of these cuts they will not even get the opportunity to make it to their sophomore year of swimming.

13.    I currently sit around 50th for my event in the SEC. This past college football season the receiver who had the 50th most yards was Missouri's Marquis Johnson. Johnson is a sophomore who was a former three-star recruit. He is expected to be one of Mizzou's top receivers next season. Could you imagine if he had been cut from the team here after his freshman season? It wouldn't make any sense. That is because to expect an incoming freshman to pick up the sport at the college level and compete in the best conference in the country is just shy of insane. Sure, there are people who do it, but with the new roster limits that will be the new expectation. There will be no more walk-on superstars who develop by their junior or senior years, because these people will not even be given a shot. Cutting swimming rosters to 22 would hurt not only college swimming but also USA swimming by not allowing for proper development of underclassmen.

14.    Almost 500 athletes are going to have to make an impossible at the end of this season because of roster limits. I can either leave Mizzou to pursue my athletic career, or I can give up the almost 15 years of hard work that it took to get here and quit swimming all together so I can stay at my school. It is a pick your poison kind of choice.

15.    Another school is not a realistic option. At Mizzou, I am enrolled in an extremely selective business program that promises to set me up for future success. I am also close to home where my friends and family have been able to watch me compete this year.

4

Perhaps most importantly, I have made the best friends I have ever had in my life through Mizzou swimming. They are truly like a second family to me, and I don't know what I would do without them. That is what I would be leaving behind if I wanted to continue my athletic career.

16.    This past year I have spent 20 hours in the pool, many hours studying to maintain a high GPA, recruiting other swimmers, and participating in other athletic sponsored events. I have committed my life to this. Because of the roster limits, I could be forced to let all that go to waste and quit swimming entirely. This is the choice that so many athletes are going to face. Changing schools is not easy, and neither is giving up on your dreams.

17.    There is a simple solution to this. Do not approve the roster limits.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Columbia, Missouri
          January 24, 2025

_____
Trey Cunneen
NCAA ECID No. 2101996651
10416 Donoho Pl
St. Louis, MO 63131

DECLARATION OF TREY CUNNEEN
CASE NO. 4:20-CV-03919-CW

**Kiersten Dagg**
**103 Meadowgreen Dr.**
**Royersford, PA 19468**


January 27, 2025


Re:      *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken,

     My name is Kiersten Dagg. I am a current Division I athlete at William & Mary; my NCAA ECID number is **2108305503**. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

Kiersten Dagg

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

### <u>DECLARATION OF KIERSTEN DAGG</u>

I, Kiersten Dagg, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.    I am a Junior at William & Mary and am a member of the NCAA Division I Men's and Women's Swim Team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    Our coaches have explained to us that roster limits, if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.    We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively impact those who are cut and our team at large.

1

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Williamsburg, VA

January 27, 2025

Signed by:

*Kiersten Dagg*

DEAA8A001F30438...

Kiersten Dagg
NCAA ECID No.   2108305503

103 Meadowgreen Dr.
Royersford PA, 19468

Landon D'Ariano
132 Hidden Pond Way
West Chester, PA  19382


January 27, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Landon D'Ariano.  I am a current Division I athlete at the University of Texas – Austin.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2024.

                            Sincerely,
                            Landon D'Ariano

Docusign Envelope ID: AE0DB3E5-877A-4983-8831-78B07E78D3E5

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF LANDON D'ARIANO**

I, Landon D'Ariano, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman on the men's swimming and diving team at the University of Texas – Austin.  I am a member of the Injunctive Relief Settlement Class and object individually and on behalf of the class.

2.      I began swimming at the age of 9.  In high school, I was on my high school swim team, as well as the Germantown Academy Aquatic Club team.  My high school practice schedule consumed a lot of my time: I had practice in the pool six days a week, including two practices a day four times a week, in addition to weight training three times week.

3.      During high school, I was a 3-time NCSA champion, 2-time USA National Junior Team member, 4-time USA Swimming Scholastic All-American, and made the USA Olympic Trials in the 200 IM and 400 IM.

4.      During the recruitment process, I was contacted by around 100 schools. I narrowed it down to four schools to visit.  I ultimately decided that I wanted to go to Texas, because of how legendary the program is, having produced Olympians and U.S. record holders, and how much I love the school itself.

5.      By going to Texas, I was giving up a bigger financial offer from another school, but I would be swimming at my dream school, so it was worth it.  I was very excited to get my degree from a well-respected university in academics and be able to pursue my swimming career while I was at it.

6.      When I was being recruited, it was made clear that as long as I don't violate the

1

code of conduct and stay true to myself, I would be able to stay on the team.

7.      I first heard about the roster limits and the lawsuit the summer before I arrived at school.  I didn't think too much about it at first, but as it got more traction and Texas switched from the Big 12 Conference to the SEC, the possibility became more real.

8.      At the very first team meeting of the year, the coach talked about making cuts because there are roster limits included in the settlement, and the roster limits have been brought up in every meeting since then.  We've been told that those who misbehave will be cut, but at other times the cuts seem to be fully performance based.  It has created a lot of uncertainty and fear for all of us on the team.

9.      Ultimately, I feel like these roster limits prevent younger athletes from developing, because they must come in already prepared to compete with the older kids.  It's especially hard on freshmen because there's no room for freshmen to develop and reach their potential.  I am asking that roster limits not be approved by the Court because they are unfair to the athletes.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Austin, Texas
            January 27, 2025

Signed by:

*Landon D'Ariano*

DACFD78F7832E54

Landon D'Ariano
132 Hidden Pond Way
West Chester, PA  19382

DECLARATION OF LANDON LLOYD
CASE NO. 4:20-CV-03919-CW

Micah Davis
1006 Granger Ave
Ann Arbor, MI 48104

01/28/2025

Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Micah Davis. I am a current Division I athlete at Western Michigan University and my NCAA ECID number is 2110342314. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

Micah Davis

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF MICAH DAVIS**

I, Micah Davis, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am a Sophomore at the Western Michigan University and am a member of the NCAA Division I men's football team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    In high school I poured my blood, sweat, and tears into receiving the opportunity to play D1 Football player. I missed out on my freshman and sophomore year of high school football due to breaking my ankle weeks before my teams first games. I already had to fight against the odds due to only playing my junior and senior year. Through those years I had year round football trainings, practices 4 days a week during the season along with putting in work in the weight room 6 days a week. I had to miss out on a lot of "normal" high school activities, family events, vacations, etc. I spent more money, and time than most people could understand traveling to extra practices, workouts, and camps. All of this just to receive the opportunity to play at the next level.

3.    I was the captain of my high schools varsity team helping lead us to a regional championship my senior year. I was 2x all area, all region, all conference, and all state. I placed in states for track 3 times and was an Adidas nationals track runner up in the 4x2.

4.    I wasn't recruited highly due to my lack of football experience. I earned 2 D1 scholarship, along with many other opportunities to go play at the next level. My recruiting experience was very stressful and frustrating. I never felt that I got the looks I deserved. I was offered Preferred Walk-On spots to the University of Michigan, Michigan State, and Eastern

1

Michigan but in the end turned down scholarships to Marshall University, and University of UT Martin to play at Michigan as a Walk-On.

5.     I along with all the Walk-Ons had to figure out about the roster cuts on our own. We would pay attention to the media, as well as what we experienced in our day to day lives at Michigan. We were never told or warned that roster cuts would come into place. From my understanding there was going to be around 50 guys being cut from our 135 man roster. I was told by my coaches that they wanted to keep me on the roster however could not promise it. I was told to stay and compete for my spot through bowl prep and spring ball of this last year. Michigan told me I would play in our bowl game however the closer we got to game time they started to reduce my play time and roster positions. I knew that my time at Michigan was coming to an end, so I ended up transferring to insure a spot at this level elsewhere.

6.     This whole process took a huge mental toll on me and my teammates. We had to come in every day and work our butts off from 6 a.m to 8 p.m 6 days a week knowing that we were going to be cut. As a walk-on you receive no grace and the range for error is zero. We were held to a higher standard than scholarship athletes while being treated worse in every way possible, and had to pay for our opportunity just to play football. I had to go back to my house every night knowing that I was going to repeat the same stressful, physically abusive, and mentally tolling day all over again while knowing that I was going to be cut

7.     Being cut would impact a lot in my life. I would lose any sort of aid that a walk-on gets. Such as occasional money used for tuition, tutoring, football supplied food, academic counseling, and many other things. I've also lost some of my best friends that Ive built over the past 2 years at Michigan. Not to mention the many problems arising around housing and what my new life would look like.

8.     I have entered to transfer portal to insure a spot at another school. The portal was flooded and I've heard many players talk about not getting any interest from schools due to the amount of players that have entered. Me having to transfer effected me more than what I could've understood. I don't get to live with my best friend, and am away from the countless relationships I've built for the last 2 years. I have to basically restart what I had built at Michigan elsewhere.

The school I chose to attend due to the roster limits uncertainty only accepted a number of my credits I collected at Michigan. This will affect my timing on graduating.

9.    I ask the court to hear me and countless others out and stop roster cuts from coming into place. This decision will affect thousands of student athletes just like me who worked our tails off just for opportunities. We knew the odds were against us to start and we accepted that. Taking away football is like taking a large chunk of our lives. The relationships, opportunities for the future, and our dreams will all be taken away. I've already had to deal with this pain, and the discomfort of relocating and starting over. I wish the stress on no one else and pray no one else has to go through it. I declare under penalty of perjury that the foregoing is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Ann Arbor, Michigan
            January 28, 2025

_____
Micah Davis
NCAA ECID No. 2110342314
1006 Granger Ave
Ann Arbor, MI 48104

Julia Janette Dean
4330 Little Canoe Channel NE,
Seattle, WA 98195

January 25, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Julia Dean.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2208641673.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                Sincerely,
                                Julia Janette Dean

**111**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF JULIA JANETTE DEAN

I, Julia Dean, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a 2028 at the University of Washington and am a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      The NCAA settlement agreement encapsulates many things that impact me as a collegiate athlete greatly. As a rower, I am used to a large and welcoming team. When I was looking at the University of Washington as my potential future school, this was something that was so important to me. I come from a high school rowing team in a very small town, and our full co-ed team was about 30 people. Because of this, we were tight knit, but we also experienced plenty of issues. External feelings made their way into the team and the culture was forever changed because of these. You had to see every single person every day and never had the chance to meet any new people. This is why I strived to be a part of a huge and warm community, you don't have these issues on a team so large because everything has to work out, and everyone is mature is capable with a roster so large, because they understand the privilege and role you have on a team like this. There's never a "top dog" with a huge ego because there are so many unique people who truly care for one another. Our current roster borders on triple digits. I have been given the opportunity to meet and become close with the coolest people ever. I have friends now because of this team from Australia, the UK, Italy, Canada, and all across the US. These are opportunities I would never have with a smaller team. Both I wouldn't be able to be here, and they wouldn't be able to extend their radius.

3.      Additionally, this community has given me strength and knowledge and shown me the boundlessness of love and friendships. These girls are the hardest working and driven people I have ever met, and the environment of a large team facilitates these qualities. With a small roster we wouldn't have so many different personalities to motivate ourselves and compete with. It's so important in a sport like rowing to be able to have inter squad healthy competition with the people you love and its so hard to have this when the roster is just your top few boats, we need people to develop through this competitive nature and environment.

4.      Overall, to me roster cap would be detrimental to my rowing career. When I was in the seventh grade before I even started rowing, I read "The Boys in the Boat". My entire family had attended the University of Washington, so I've been a husky since birth. By the time high school came around my freshman year started during COVID. I began rowing and it was my escape. We could take out singles and be alone, and eventually we were able to take out larger boats and become a real team. I found myself through rowing. I found a community throughout the world, found my best friends in high school and college, found a true passion that fulfilled me, unlike any of the other many sports I had tried, and found something that was truly for me. I have never been the fastest on the team, I have few gold medals, but I have always prided myself on being the hardest worker. I push myself in the workouts and also take care of myself to the best of my ability. This team is my home. No place has welcomed me and cared for me like this team. There is not one person I could not name and not one person who has said anything but positive comments. Rowing is about the team. It is about the community. It's not like gymnastics or baseball where everyone has their individual position. It is about coming together to create a machine, and it is near impossible to do that with a roster cap. So please let our programs shine, let our communities grow, and let our spirits fly. These people are my family and we never want to let each other down.

2

1    I declare under penalty of perjury that the foregoing is true and correct.

2   Dated: Seattle, WA, USA

3          January 25, 2025
                                        Julia Dean
4                                       NCAA ECID No. 2208641673
                                        4330 Little Canoe Channel NE,
5                                       Seattle, WA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jackson DeBruin
8283 Velda Trail
Sarasota, FL 34241
January 22, 2025

     RE: In re Collegiate Athlete NIL Litigation

Dear Judge Wilken,

     My name is Jackson DeBruin. I am currently a Junior in Riverview High School in Sarasota, Florida. I am a student-athlete and have plans to swim with a Division 1 college once I graduate high school. My NCAA Eligibility ID# is 2312175069. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In RE Collegiate Athlete NIL Litigation,* Case No. 4:20-cv-03919-CW.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                         Sincerely,

                                          Jackson DeBruin

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

### <u>DECLARATION OF JACKSON DEBRUIN</u>

I, Jackson DeBruin, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a high school junior and swimmer and am being recruited to compete on a Division I college team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have been swimming competitively since I was seven years old. My parents picked up and moved my family from Illinois to Florida in 2021 so that my two younger brothers and I could continue to swim competitively and have the best possible training and chance to be recruited by a Division I college. Over the last several years, I have been practicing about 20-22 hours per week in order to have the chance of being a Division I college athlete. That training consists of both in-the-water training and dryland/conditioning with high level coaches and staff. I have missed countless social activities and events with friends and family, as well as family trips, functions, and gatherings in order to focus on my swimming career. I have the drive to succeed in the sport of swimming in college and beyond, and I love to push myself to the limit and I can promise that I'm not even close to reaching my limit, neither physically nor mentally.

3.      I am currently around the top 150 of the high school class of 2026 male swimmer recruits. I have four qualifying times for the U.S. Winter Juniors and three qualifying times for the U.S. Open. I was awarded as a 2024 USA Swimming Scholastic All-American athlete, and Riverview High School Scholar Athlete for my freshman, sophomore, and junior years.

4.      When the recruiting process started for me on June 15, 2024, I was super excited, because I had several Division I colleges reaching out to me and lengthy, personal phone

1

conversations with the coaches. As I made connections with these coaches, I was even more enthusiastic about the whole recruiting process. I had about a handful of those Division I colleges at the top of my list. Over the months that followed, I was slowly either being told that the rosters of those schools that were so interested in me were filled due to the upcoming roster limits or was receiving no return communication from them at all. It's been quite the roller coaster ride for the last seven months. Sadly, the whole recruiting process has now come to a standstill for me, and it is very frustrating.

5.    I was made aware of the roster limits by the college coaches I've talked to, as they have emphasized caution in moving forward until they know more regarding next steps. In almost all cases, the college coaches have stopped communicating with me altogether.

6.    I was really looking forward to the college recruiting process as I entered my junior year in high school, but it has been anything but exciting. It has been exhausting and frustrating as my entire college swimming career lies in the balance, and I'm not even sure that I will ever accomplish my dream of swimming for a Division I college. I honestly thought that by this time in my high school career I'd be committed to a Division I school and could focus my time on current meets, as well as my studies in school. It has been stressful to know that my future after high school is on the line, which also includes my dream of going to the Olympics.

7.    I truly hope that this objection is heard as I, as well as so many other athletes, have worked way too hard, for way too long, to push our bodies and minds beyond the limits to be able to make it to a Division I college. We all aspire to do big things in the future, and I firmly believe that for me, it starts with going to a Division I school that will help me to continue toward my goal of reaching my full potential in the pool. The roster limits don't even give a high performing high school athlete a chance by adding fifth year college students to the mix, as well as completely inundating the transfer portal. Nothing about these roster limits seems reasonable to the athletes. In almost all cases, athletes are the ones that not only perform at a high level in their sports, but also in the classroom.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Dated: Sarasota, Florida

3        January 22, 2025          *Jackson DeBruin*

4                                  Jackson DeBruin
                                    NCAA ECID No. 2312175069
5                                   8283 Velda Trail
                                    Sarasota, FL 34241

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Maeve DeYoung
19656 Suncrest Drive
West Linn, OR 97068

January 23, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Maeve DeYoung. I am a current Division I athlete at the University of Missouri and my NCAA ECID number 2109313122.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                  Sincerely,
                                  Maeve DeYoung

**119**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF MAEVE DEYOUNG</u>**

I, Maeve DeYoung, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a freshman swimmer on the University of Missouri's Division I swim and dive team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I started swimming when I was six years old, and I was recruited to swim at Missouri during high school.  I am originally from Oregon, and I won the state championship in the 100-yard back in my junior and senior years.   In June 2022, the summer before my junior year, coaches started reaching out to me.  A lot of schools were interested in signing me.  More than 30 schools reached out to me about joining their programs.  I narrowed it down to three and went on official visits to these schools, including Missouri.

3.      In November of my senior year, I signed a letter of intent that promised a spot on the swim team for four years of college with an athletic scholarship.  I picked Missouri even though other schools offered me more money.  I came to Missouri because of the team culture. We treat each other like one big family.  There are no cliques on our team.  Every single team member is valued.  This type of culture was important to me.

4.      The first time I heard from Missouri about potential roster cuts was in October when our head coach told us that there were rumors going around about potential roster cuts in

1

the SEC.  He told us that nothing was confirmed yet, but he believed that it was likely that roster limits would be put in place for the following school year.

5.     At this point, some of my teammates started worrying.  People weren't completely sure how many swimmers and divers would be cut from the team.  Our coaches indicated that more men than women would be cut if the limits were approved, so I saw swimmers on the men's team grow extremely concerned about getting cut from the team.  My friends on the men's team began counting down the days until they might be cut.  Everyone knows that with transfers coming in, many swimmers will not be able to stay on the team.

6.     In mid-December, we had additional meetings with the coaches.  At that point, we were told the number of transfers that might come in and how many roster spots would be left.  We also were told when individuals on the men's team could be cut:  the end of February.  The coaches told everyone on both the men's and women's teams how to enter the transfer portal in case we were to get cut.

7.     At this point, the coaches have not formally cut anyone from the team.  But they have told individuals that their spots are at risk.  The men's roster currently has roughly 30 swimmers.  The coaches plan to maybe keep 15 of those individuals.  On the women's side, the cuts would not be as drastic, but the coaches told us that some women may be cut, too.  Whether they make cuts depends on whether roster limits are adopted that cause higher-ranked schools to make cuts, because swimmers from those schools could transfer to Missouri.

8.     I do not think I am at a high risk of being cut.  But I am very concerned about my friends getting cut.  Here at Mizzou, we have a freshman class made up of 12 men and 10 women.  I feel like the freshmen are most at risk because we are the newest members of the team and do not have seniority here.

9.     These teammates have truly become some of my best friends and are like a second

2

family to me. I am always with my teammates. We all live on the same floor of the same dorm. It would be devastating to lose some of them.

10. The culture of our team is going to change completely if a large clump of individuals is cut. The mental health of the cut athletes, as well as the athletes who get to stay on the team, will decline severely. And, further, the cut athletes will lose access to the mental health counseling that we receive for free as part of our benefits at Mizzou.

11. The primary goal of the NCAA is to support the success and well-being of student-athletes, but if the settlement is approved, my teammates—and athletes across the country—will be severely affected and not taken care of.

12. This new settlement's main victims are non-revenue sports athletes, especially the college class of 2028. Over a year ago, we all signed four-year scholarship agreements with our universities without the knowledge that our teams would be downsized tremendously. This is extremely unfair.

13. It is a huge decision to transfer to another school. I know some swimmers who are older than me and who swam Division I when their colleges shut down their programs during the pandemic. These student-athletes faced major academic setbacks when transfer universities did not accept certain credits. In some cases, they had to delay graduating or retake certain classes. If you are blindsided by some unexpected shutdown or rule change and must transfer, it is very difficult to rearrange your life and your future plans.

14. Further, if schools decide to cut juniors and seniors from the team, plenty of those student-athletes will choose to quit their sport altogether instead of transferring and risking their academic progress at another school. If I were cut as a junior or senior, that is what I'd do. I believe this is against what the NCAA is about. College athletes planned to swim for four years of college. We should be able to do so without concern for our roster spots.

15.     These roster limits are toxic and harmful to athletes.  They go against everything the NCAA stands for.  I hope that the Court will not approve the settlement with them in it. I declare under penalty of perjury that the foregoing is true and correct.

Dated: Columbia, Missouri
        January 23, 2025

_____
Maeve DeYoung
NCAA ECID No. 2109313122
19656 Suncrest Drive
West Linn, OR  97068

4

Alyssa Dittoe
4330 Little Canoe Channel NE
Seattle, WA 98195


January 26, 2025

Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Alyssa Dittoe.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2403246531.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Alyssa Dittoe

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW
Hon. Claudia Wilken

<u>**DECLARATION OF ALYSSA DITTOE**</u>

I, Alyssa Dittoe, hereby declare as follows pursuant to 28 U.S.C. §1746:

1. I am a freshman at the University of Washington and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class. Last year I was recruited by the rowing team as a walk-on, with no true experience or knowledge of the sport. The only thing I had to my name was 7 years of club and high school volleyball. The year before that, I was in the worst shape of my life, both mentally and physically. I was diagnosed with Anorexia Nervosa, a disease that can chip your life away.

2. Anorexia set me back, all my efforts were put toward ED recovery, and everything else was cast aside. I had planned to get recruited for volleyball, but this made me late to the punch; the number of recruiting coaches was dwindling, and I was running short on options. Then, I was given an unanticipated opportunity. My dream school's rowing team was still recruiting for the class of 2028. Rowing was a light at the end of the tunnel, I saw an opportunity to escape from the personal purgatory I had curated. A community of powerful women, dedicated to lifting each other up, competing to be the best, and finding the version of themselves that makes them unstoppable. It was just what I needed, I wanted to feel strong. Moving forward with the intention of rowing at the UW that fall, that spring of my senior year I fully dedicated myself to recovery. I just needed time to get there.

1

3. And with it I did. After using the summer to hone in on my fueling and training habits, I had built myself back up to the bare minimum I needed to survive in such a demanding environment. I entered fall with a fiery passion to pave a path for myself. However, it wasn't soon before I realized that the bare minimum wasn't cutting it. I needed more. More strength, more food, more speed, more time.

4. Gradually, things started to fall into place. I found myself. Starting with the outstanding community that I found on the team. Friends that have changed my life for the better, and I can't imagine losing to the transfer portal because of roster cuts. I found a love for improvement, being out on the water, setting a rhythm on the erg, and getting stronger. Every day I see a new way that I've progressed, whether it's a lower split or a higher weight at lift. And it's not just me, I'm surrounded by a hundred other women who have dedicated themselves to embracing the hurt, to relentless improvement. We inspire each other to work harder every day, it's vital to the team's psyche. Time has built this community, brick by brick, person by person, and roster cuts threaten to cut it in half.

5. If it weren't for time, I wouldn't be here today. It took time to heal from anorexia. It took time to build my strength back up. It's taking time for my coaches to develop me on the water. It took time to get my 6k time to where it is now, and it's going to take even more time to get it to where it needs to be for me to make varsity next year. Time is crucial to athletic development, no athlete should have it taken away from them. Roster cuts would hurt athletes who need that extra bit of practice, who have the potential to do great things but need some more work. Someone like me, a walk-on who has started from the bottom of the barrel and is slowly but surely working their way up, can't be excluded from the equation. The December first roster cap deadline is what could do just that.

1

2      I declare under penalty of perjury that the foregoing is true and correct.

3

4   Dated: January 26, 2025

5   Seattle, Washington

    Signed by:

    *Alyssa Dittoe*

    411857BB86FC4C9...

6                   Alyssa Dittoe
                    NCAA ECID No. 2403246531
7                   4330 Little Canoe Channel NE
                    Seattle, WA 98195

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Jenna Doolen
14501 Eastwood Dr.
Arcadia, OK 73007

January 18, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Jenna Doolen.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                         Sincerely,
                                         Jenna Doolen

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF JENNA DOOLEN

I, Jenna Doolen, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am an 18-year-old high school senior.  I live with my parents in Arcadia, Oklahoma.  I am a member of the Injunctive Relief Settlement Class.  I object individually and on behalf of the class.

2.      I run on the track and field and cross-country teams at Edmond Memorial High School.  Our mascot is the Bulldogs.

3.      I've run track for four years, and I knew from the beginning that I wanted to run on a Division I college team.  My mother played Division I soccer and playing on a Division I team in college feels like carrying out her legacy.  Ever since I was a freshman, it has been my dream to run track in college.

4.      Throughout high school, I worked hard to get recruited to a top-level college track and field team.  I know I'm good enough for Division I.  In my junior year, I won the Oklahoma State Championship 400-meter race, Division 6A, which is the highest division in the state.

5.      I was being recruited by my dream school even before I won the state championship in spring 2024.  Earlier in junior year, I had a track meet at University of Kansas on April 18-20, 2024.  The University of Missouri, Kansas City (UMKC) coach came up and spoke with me after the meet.  Later, and just five minutes after I won the state championship, he called to congratulate me on my victory.

6.      I was working on getting recruited by a few schools after the state championship.  The recruiting process is stressful, and I had a few important requirements for college.  I didn't want to be too far away from home, and I wanted to study business.  The UMKC was a little

1

further from home than I preferred, but I made an exception because it was my number one. It was also perfect because the business program at UMKC does not have coursework on Fridays, which fits well with a track and field schedule. Meets are on the weekend and traveling happens on Fridays, so UMKC would allow me to focus on track without sacrificing academics.

7.    Most importantly, however, I needed an athletic scholarship to afford college. Even though I wanted to run for UMKC, I knew I need to keep my options open. I visited a few other schools in the summer, but my heart was set on UMKC.

8.    Then on July 8, 2024, my dream school came through. The UMKC coach visited my home and promised that I would get a spot on the track and field team and a scholarship if I came to campus. I was ecstatic. I stopped actively pursuing recruitment with other schools quickly.

9.    I visited UMKC on September 15-16, 2024. There, the coach answered all of my questions and concerns. He reassured me even if I didn't meet expected times, I would not lose my scholarship. He told me performance would be a reflection of coaching, not me. I also got to meet the team, and we bonded immediately. We even went to Top Golf for a few hours to hang out.

10.    Then the coach verbally offered me admission and a generous athletic scholarship to run track for all four years of college. It was better than I could have imagined.

11.    I received a written offer for a near-full ride scholarship with a total value of $18,356 my freshman year. The scholarship covered full tuition, and the coach told me that it would keep up with tuition increases every year. I was also offered a $3,000 stipend, and the coach said that the stipend could be bumped up to $5,000 based on my expected performance in high school this season. The only thing that wasn't covered was the full cost of housing, but I had the option to live with the other girls on the track team, which would cost less. The coach also told me that if I shaved two seconds off my time, I could potentially get more aid that could cover housing.

12.    After receiving the scholarship offer, I was absolutely committed to UMKC and cut off other colleges. I couldn't wait for signing day in November when I would officially

1    accept UMKC's offer.

2      13.    Then two days before signing day, the coach called and told me my offer was

3    being retracted.  Not only would I no longer be offered the scholarship or the stipend, but I also

4    couldn't even be on the team.  He told me the reason UMKC broke its promise is because of new

5    roster limits in the *House* settlement, and that the school had put a freeze on 2025 recruitment

6    for all Olympic sports.  I was still admitted to the UMKC if I wanted to go, but I couldn't run on

7    the team or get a scholarship.  I couldn't even try out as a walk-on.  He said that if the roster

8    limits are not approved, he might be able to get me back on the team.  Otherwise if I went in

9    2025, I'd have to give up running competitively.

10      14.    That was one of the worst days of my life.  I found out in the middle of the school

11    day.  I was so devastated, I had to leave early and go home, even though that ruined the perfect

12    attendance record that I am proud of.

13      15.    I can't afford UMKC without a scholarship.  Even if I could, I don't want to go

14    to college and not be able to run track.  I had to restart my recruiting search all over again.  By

15    then, it was too late.

16      16.    I'm looking at other schools again, but I am finding it impossible to find a college

17    that has open roster spots on track and field for their incoming classes.  There just aren't enough

18    spots available if the settlement goes through, and every school I have tried to get into is limiting

19    their freshman roster already.  And every other school I'd been talking to had already made their

20    financial aid commitments.  There was no money left.  I have little hope that I will be able to get

21    the same offer I got from UMKC somewhere else.

22      17.    I don't blame the UMKC coach.  He was not happy about having to pull my offer.

23    The coach and I bonded so well during the recruiting season that even after he told me the terrible

24    news, he is helping me attempt to find another college to run at for next year.  Still, it is hard.

25      18.    Taking a gap year and waiting for the next season is not an option.  A gap year

26    would completely derail my athletic career.  I'd no longer be able to train and race on a team.  If

27    I don't get on a track team for the 2025 season, my running career is over.

28      19.    I am in limbo.  I have been admitted to a few schools, but there is no financial aid

left, and they haven't even been able to offer me a spot on the track team.  I'm holding out hope for a partial scholarship from one school, but it's much further from home than UMKC.

20.     I feel anxious and depressed all the time.  A lot of my teammates on the track team are struggling the same way with recruitment, but I'm the only one who had my scholarship taken away.  My track coach said he's never seen anything like this before.

21.     I don't know what to do now.  All I have ever wanted to do is run track.  I am good at it, and I did everything right to run at my dream school.  I never expected to be paid for doing what I love.  Now I probably can't do it at all.  My whole world turned upside down in an instant for no good reason.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Arcadia, Oklahoma
        January 18, 2025



Jenna Doolen
NCAA ECID No.  2306929354
14501 Eastwood Dr.
Arcadia, OK 73007

Sarah Dunham
415 Richmond Rd
Williamsburg, VA 23185

January 27, 2025

     Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Sarah Dunham.  I am a current Division I athlete at the College of William & Mary and my NCAA ECID number is 2203460287.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                            Sincerely,
                            Sarah Dunham

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF SARAH DUNHAM

I, Sarah Dunham, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore at the College of William & Mary and am a member of the NCAA Division I Men's and Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Our coaches have explained to us that roster limits if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.      We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively impact those who are cut and our team at large.

I declare under penalty of perjury that the foregoing is true and correct.

1

Dated: Williamsburg, VA

2

January 27, 2025

3

Signed by:

4

Sarah Dunham
NCAA ECID No. 2203460287
415 Richmond Road,
Williamsburg, VA 23185

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Thor Dyke**

901 Canterbury Rd
Raleigh, NC 27607

January 27, 2025

**Re:** *In re College Athlete NIL Litigation*, **No. 4:20-cv-03919-CW**

Dear Judge Wilken,,

  My name is Thor Dyke. I am a current Division I athlete at
William & Mary; my NCAA ECID number is 2109320935. For the reasons
stated in my attached declaration, I object to the roster limits in the settlement
agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am
a member of the Injunctive Relief Class. I make this objection individually and
on behalf of the Injunctive Relief Class.

  I designate the firm of MoloLamken LLP to speak on my behalf at t
Fairness Hearing on April 7, 2025.

       Sincerely,

       Thor Dyke

Docusign Envelope ID: C1286F68-5FD9-4F3G-A8C3-5659C6FD6510

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF THOR DYKE</u>

I, Thor Dyke, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a member of the class of 2027 at the College of William and Mary and a member of the NCAA Division I Men's Swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I practiced in and out of the pool for 20-25 hours a week during high school to have the chance of being a Division I college athlete. I dedicated thousands of hours to the sport including lifts, two practices a day, and even beginning my coaching career in high school with the intention of continuing it during and after college.  I sacrificed a lot of a "normal" high school experience, often missing social events and other activities.  As a result of my hard work, I was a North Carolina State Championship qualifier, regional champion, and state record holder, along with being captain of my club and high school swimming team.

3.      Getting recruited for college is hard.  The experience of swimming in college is cutthroat and athletes are constantly fighting mental and physical battles.  Eliminating roster spots for current athletes and high schoolers won't help these issues.

4.      I learned about roster limits through countless social media posts discussing Grant House.  As a swimmer he knows how hard it is to continue the sport throughout college. He was lucky enough to have swum in college for seven years and now he is trying to take it away from others.

5.      Our coach here at William and Mary told us about how we are cutting four girls at the end of the year and the whole pool deck went silent.  I have never heard a pool deck as

1

quiet as I did then. It was possibly the worst experience I have had in the sport, even worse than injury or poor results on meet day.

6. This is taking a huge mental toll on people not just as athletes, but as humans. How would you feel if the thing that has been such a big part of your life—like swimming to me and my teammates—was ripped away in an instant because of a court case? These are young men and women that are being affected. Cutting them from their respective teams will be detrimental to their current mental health and their future.

7. If I were cut, it would be disastrous. It would affect many aspects of my life and I would lose many things. One, I would lose the one sport that I have been working towards my whole life. Two, I would lose friends, relationships, mentors and even the possibility of staying in the school because of monetary reasons. I would never want this to happen to someone else.

8. These roster limits will not affect me as an individual, but I have mentored many current college athletes. These people are like my brothers or sisters, and many will be or have already been cut by their programs. Almost all of my friends from my high school club team are currently swimming Division I. Well over half of them have now been cut, which is a terrible situation to be in.

9. Please give the next generations the same fair opportunities that me, my teammates, and alumni have had in the past. Think of this as if it was your kid. Would you want your kid to be cut from the sport they've worked so hard at for the past 10-15 years of their life? I ask that you do not approve the settlement with the roster limits in it.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Raleigh, Wake County, NC

January 27, 2025



Thor Dyke
NCAA ECID No. 2109320935
901 Canterbury Rd
Raleigh, NC  27607

Emily Ellis
21010 Aqua Bay Court
Cypress, TX 77433

January 4, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Emily Ellis.  I am a current Division I athlete at the University of Tennessee and my NCAA ECID number is 2106217274.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                           Sincerely,
                                           Emily Ellis

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>Hon. Claudia Wilken |

## DECLARATION OF EMILY ELLIS

I, Emily Ellis, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a sophomore at the University of Tennessee, where I compete as a member of the cross country and track teams. As explained below, I object to the roster limits included in the Injunctive Relief Settlement that is part of the proposed settlement in this lawsuit. I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.     I am from Cypress, Texas, where I competed in high school cross country and track. I was named All-State in each of 2020, 2021, and 2022 as a cross country/distance track runner. I am particularly proud of having ran a personal best of 17:32 for the 5,000m (a district record) in 2020 and being a 17-time UIL 6A individual champion in cross country and track. I was recruited by several schools with scholarship offers. I chose the University of Tennessee as the best place for me to both compete on nationally ranked cross country and track and field programs as well as to receive an excellent education.

3.     The University of Tennessee women's cross country roster currently consists of 27 runners and the women's track and field roster currently consists of 55 runners. Currently there are no roster limits for these sports. However, the roster limits proposed for those sports in the proposed settlement are 17 and 45, respectively, so at least 10 women have to be cut from each of those teams if the roster limits go into effect.

4.     During the most recent season, the fall 2024 season for cross country, I had two separate injuries that prevented me from running in meets. Such injuries are common for distance runners, where the volume of work inevitably injures a significant portion of every

1

*E.P.E*

team, often in the range of 30% of a team at any given time. When injured, a runner still spends a considerable amount of time working through physical therapy to recover and compete again, and indeed I was able to recover from my injuries and am healthy to run. Most distance runners are injured for at least some portion of their collegiate career.

5.    Nevertheless, in early December 2024 I had a meeting with my assistant cross-country coach where she told me that I would be cut from the team if the roster limits that are a part of the proposed settlement in this lawsuit were approved. She said if the roster limits do not go into effect, that I would be able to remain on the team and be able to compete for the rest of my career at Tennessee.

6.    Competing in cross country and track for the University of Tennessee has been an incredibly important part of my collegiate experience. Starting even before high school, being a runner has been an important part of my identity. That part of my identity has grown even more in college. The prospect of being cut from the roster feels like losing that important piece of my identity.

7.    Being cut from my team would also mean losing out on spending time with the close friends I have made on the Tennessee cross country team. If some of my teammates and I are cut from the team, we will no longer be able to train together, have team meals together, and we may not even be able to attend the same school.

8.    As a result of the threat of the roster limits being imposed, some of my teammates have already entered the transfer portal in hopes of being able to run competitively at another school, and others have discussed being interested in entering the transfer portal later this year. If my teammates lose the financial benefits the University of Tennessee provides their athletes, they may not have the choice of staying at the University of Tennessee because of the financial costs and may be forced to transfer.

9.    In considering my personal circumstances, I also recognize that I have come to truly enjoy my major in Biosystems Engineering. Before the announced roster limits, my path was clear – to continue running at Tennessee and earn a bachelor's degree in Biosystems Engineering. I want to continue running competitively, but being a Biosystems Engineering

2

major makes that very difficult. Tennessee is one of the few universities in the country to have a major in Biosystems Engineering, and the list of those schools that also have competitive running programs is very small. I believe Tennessee is the best combination, and while there is one other school that is strong in both – Auburn University – it currently has 31 women on its cross country team and will have an even greater roster spot problem than Tennessee, so it is not a realistic option.

10.    Transferring may also derail my studies. I earned a 3.8 GPA and made the Dean's List each semester at Tennessee. Going to a new school midstream risks disrupting my successful academic record and may cause me to be required to retake certain courses or take additional courses which will increase costs and delay my graduation.

11.    I also will be facing serious financial hardships if I am cut from the cross country and track teams. Over the past year I received the following, all of which will be taken away if the proposed roster limits are imposed:

    a.  $7,785.35 as a tuition benefit for summer semester classes given by the University of Tennessee to student athletes, which covered two classes I was able to take over the summer toward my major;

    b.  $4,260.00 per year in the form of a summer stipend offered by the University of Tennessee to student athletes;

    c.  $2,990.00 per semester in Alston Awards for education expenses;[1]

    d.  a meal plan in the student-athlete's cafeteria, which otherwise costs $4,986 if bought from the school; and

    e.  medical insurance and benefits, which otherwise would have cost $2,928 for the year.

12.    The total value of these benefits for my remaining years at Tennessee would be $25,939.35 per year if the school's prices remain the same, but they will probably increase. If

---

[1] Alston Awards are named after the Supreme Court's decision in *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69 (2021).

E. P. E

1  roster limits are imposed, I will need to find a way to cover these costs on my own.

2      I declare under penalty of perjury that the foregoing is true and correct.

3  Dated: Cypress, Texas

4      January 4, 2025

5  *Emily Ellis*

    Emily Ellis

6      NCAA ECID No.: 2106217274

    21010 Aqua Bay Court

7      Cypress, TX 77433

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

DECLARATION OF EMILY ELLIS
CASE NO. 4:20-CV-03919-CW

Emma Ervi
704 Kings Rd
Lynchburg, VA 24502


January 29, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Emma Ervi.  I am a current Division I athlete at Liberty University and my NCAA ECID number is 2309999975.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                      Sincerely,
                                      Emma Ervi

1
2

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

3

4     IN RE COLLEGIATE ATHLETE NIL
5     LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

6
7
8

## DECLARATION OF EMMA ERVI

9     I, Emma Ervi, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10         1.      I am a freshman at the Liberty University and am a member of the NCAA

11    Division I women's Cross-Country team.  I am a member of the Injunctive Relief Settlement

12    Class and object both individually and on behalf of the class.

13         2.      I have practice Monday through Saturday for two-three hours. I lift three times a

14    week for an hour each session. I run over forty miles a week, which includes easy normal runs

15    Monday and Thursday, workouts Tuesday and Friday, a cross train on Wednesday, and a long

16    run or race on Saturday. Cross Country requires intentional sacrifices to sleep over eight hours

17    a night, eat enough calories to recover and keep my body strong, hydrate, and recovering via ice

18    baths, stretching and rolling, and seeing the trainers.  In addition to these things, I am pursuing

19    a major in Business Finance and outside of practice, I highly prioritize time to do homework and

20    stay on top of my assignments by communicating with teachers about traveling for meets and

21    things like that. Maintaining A's in school and reaching for faster times on the track cause me to

22    miss social events even as simple as Hall meetings and Community groups. Being an NCAA D1

23    athlete is not easy, and it takes hard work and dedication so school and sport.

24         3.      This season, I broke my PR of 18:30 and ran 17:53 for the 5K and in the 21:00s

25    for the 6K. I ran 4:58 in the mile when my original PR was 5:02.

26         4.      When I was recruited, I had just run the best track season and started considering

27    running in college. Then, Coach Heather reached out to me about recruitment and then a visit

28    and I was so excited. I never would have dreamed that I would run D1 at any college, let alone

1

Liberty University. I was already looking to attend Liberty because they are a Christian school, and they teach their subjects from a Chrisian worldview. When I started looking to run at Liberty, I really wanted a team atmosphere what would pull me closer to the Lord and push me to run faster. My sister has walked on to the LU team her freshman year and she would be going into her junior year on the team when I was coming on. As I committed to the team, I had the understanding that I was not on scholarship, but I could be added when I ran the times. I was also under the impression that I would have four years to achieve this goal, providing that I did not have an injury or decided to stop running. I was ready to run for liberty all four years and build friendships with the thirteen other freshman that came on with me.

5.      I had heard rumors from social media and other connections with other runners at other schools. Then, our head coaches called a meeting and told us that the NCAA has enacted a rule that is drastically cutting roster spots after the spring season. They made it clear that to be safe from the cut was to be on scholarship and, if they had room, they could hold tryouts at the beginning of next semester (Fall of 2025). They made it clear that our following races did not determine who was on the roster next year and that they did not know the true number of spots we had. However, they did know roughly that the maximum number we would be allowed. We have 33 girls on our team, and we would have to cut to 17 or maybe less.

6.      Yes, it has impacted our team tremendously. First, my roommate, Lila Bensenhaver, left the team because she came to LU to run. It was so sad that she had to leave because we both wanted to be roommates again in the following semesters at Liberty. Second, the rule has changed our team culture. This is not at all influenced by the coaches because they have made it clear that so decisions about cuts have been made. It is solely since there is a limit and our running for Liberty Track and Field and Cross Country has been cut terribly short. It is an impossible feat to see the end drawing near and not be sad and even a little stressed about it. Our team culture is amazing, uplifting, encouraging, and Christ-centered, but it's not without sadness and heavy hearts that we view this NCAA ruling. There is more to life than sports but, but I want Track and Field to be a part of my life. I feel that the choice has been taken from me, forcing me to walk away from high level competition against my will. When we walk into the

1  locker room, some of us think, this will not be the same next year and start to wonder if we will
2  still see our teammates when we aren't running. Competing is stressful for any athlete, but it
3  should but be tainted with the thought that it's possibly their last.

4        7.     I will lose running with an amazing group of girls at a D1 level. I will lose the
5  ability of choosing my housing early and my roommate. I will lose the ability to choose my
6  classes early and access to an academic coordinator that helps me get tutors, communicates to
7  my professors, helps me get extensions for assignments, and helps me think through future
8  classes so that I can graduate. I will lose access to athletic trainers, hot tubs, cold tubs, recovery
9  pants, cupping, stem, and the athletic center that offers snacks and quiet places to study. I will
10 lose access to the indoor track facilities, which includes a private weight room, locker rooms,
11 recovery room for stretching and rolling, protein shakes. And a beautiful track to run on. I will
12 lose eating at the special dining hall for athletes that opens three times a week. I will lose the
13 ability to earn athletic scholarships. I have lost multiple friends, my roommate Lila that I've
14 already mentioned, and many more that are transferring next semester to continue their collegiate
15 running careers. I lose the title of being a D1 athlete and coaching from knowledgeable coaches.
16 I lose personalized training plans, training logs, and weightlifting routines.

17       8.     As a result of the ruling, I will cease to be a D1 athlete become and regular student
18 at Liberty University. Liberty has the degree I want along with the minor I am pursuing. But I
19 also decided to come here because they recruited me to run. I have been a serious runner for a
20 long time, and I love competing. Due to the roster limits, I will be forced to stop competing
21 because I will not have coaching, training plans, lifting routines, trainers, academic help, or a
22 place to train and compete at a high level. Going from running competitively at a D1 level then
23 going to a for run club is not a fair trade. That is not the equivalent of running for a collegiate
24 sports team. It is an insult to go from almost hitting scholarship worthy times to running with
25 people who have never raced in their life.

26       9.     This roster limit should not be allowed. Athletes should not have their colligate
27 careers cut short against their will. There is a plethora of talent on Liberty Track and Field and
28 to cut them would be to waste God-given talent because of a lack of opportunity. The ruling has

Docusign Envelope ID: 50677271-A541-4838-9744-F90BBFF92929

already caused heartache and tension amongst teams and is separating teams that should stay together.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Lynchburg, Virginia

January 29, 2025

Signed by:

*Emma Ervi*

DDA418E458654FE...

Emma Ervi
NCAA ECID No. 230999995
704 Kings Rd
Lynchburg, VA 24502

Docusign Envelope ID: 4C13F892-B998-4689-ACF0-A40044409EA2

Adelyn Fairley
143 Crozier Dr.
Lynchburg, VA 24502

January 28, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Adelyn Fairley.  I am a current Division I athlete at Liberty University  and  my NCAA ECID number is 1809300190.   For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.   I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

       Sincerely,

       */s/ Adelyn Fairley*

**149**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF ADELYN FAIRLEY**</u>

I, Adelyn Fairley, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a graduate student in my sixth year at Liberty University and am a member of the NCAA Division I women's cross country and track teams.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     Throughout my athletic career, I have worked tirelessly to excel in my sport.  In high school, I was recruited by several universities, including Michigan State University, the University of Michigan, Grand Valley State, and Cedarville University.  I ultimately chose to attend Liberty University on an athletic scholarship because I thought it was the best fit for me.

3.     My athletic accomplishments include winning eight conference titles, qualifying twice for the NCAA Cross Country Nationals, and contributing to Liberty's first-ever team qualification at Nationals. I have also set numerous records, including the ASUN 3K conference record and Liberty's 10K program record. These achievements reflect the immense time, effort, and sacrifice I have invested in my sport.

4.     The potential implementation of roster limits has profoundly impacted me and my teammates.  While I am at the end of my NCAA eligibility, I have witnessed the devastating effects this issue has had on our team. Several of my teammates have been forced to transfer, disrupting their lives and leaving them uncertain about their futures. Other teammates have had their athletic careers cut short altogether.  Seeing these opportunities taken away from athletes who have dedicated their lives to the sport is both unfair and disheartening.

5.     My teammates and I were promised the opportunity to compete for four years as

1

1   part of the team.  However, the looming roster limits have broken these promises, leaving many

2   athletes unable to fully realize their potential.  This situation has created a sense of instability

3   and stress that has affected our team dynamic, and ability to perform at our best without thinking

4   about the implications of the roster limits on next years team.

5       6.    I respectfully ask the Court to reject the implementation of roster limits. These

6   arbitrary restrictions undermine the principles of fairness and opportunity that collegiate athletics

7   should uphold. Every athlete deserves the chance to compete and achieve their goals without

8   facing sudden and unjust barriers.

9       I declare under penalty of perjury that the foregoing is true and correct.

10  Dated: Lynchburg, Virginia

11      January 28, 2025

Adelyn Fairley
NCAA ECID No. 1809300190
143 Crozier Dr.
Lynchburg, VA 24502

2

Anakin Fischer
901 Hitt St, Columbia, MO 65201


January 24, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Anakin Fischer. I am a current Division I athlete at the University of Missouri and my NCAA ECID number is 2107283735.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                            Sincerely,
                                          Anakin Fischer

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF ANAKIN FISCHER**</u>

I, Anakin Fischer, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at the University of Missouri and a member of the NCAA Division I men's swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I am extremely blessed to have been given the opportunity to compete as a Division I athlete in the NCAA at a program in the Southeastern Conference (SEC).  However, this did not come without great time commitment and work.  I had been swimming competitively for over a decade when I received the offer to attend and compete at the University of Missouri. This included averaging around 18 hours of practice in the pool each week, with an additional 12 hours of weight training and recovery.  With three practices a week starting at 5:30 AM, and hours of homework to do each night when I returned home from afternoon practice, I consistently went without a full night's sleep.

3.      On top of this, weekends were often occupied with competition.  These were usually raced in a preliminary/final format with two separate sessions each day, requiring full commitment to the sport.  Not to mention that there were several competitions requiring travel to cities like Indianapolis or Orlando.  This was demanding on myself as I was forced to miss days of school in order to attend these meets and compete at a high level.  If I was fortunate enough to have the meet align with a break from school, I had to give up the possibility of a vacation to attend.  As a result of this, I often missed out on social events.  There is even a joke within the swimming community that when asked if we are available to spend time with

1

someone, the response is always "Sorry, I have to swim." I gave up countless vacations, family trips, social events with friends, and much more due to my commitment to my sport.

4.     These are just the sacrifices that I made, however. My parents had to commit hundreds of hours into supporting me as well. If I had a swim meet, they had to be there as well, giving up their weekends, and occasionally needing to take off work. Not only did they have to spectate and support me at these meets, but they had to fund my participation. Unfortunately, this sport is not cheap either. A new competition suit can cost hundreds of dollars, and equipment for training has a similar price tag. When I traveled for a meeting, they had to pay for a hotel, flights, food, rental cars, and other expenses. My family sacrificed greatly to give me the opportunity to compete at such a high level.

5.     Thankfully, all of this work paid off. By the end of my sophomore year I had achieved 3 Speedo Winter Junior Qualifying times in my best events. I participated on a relay team that set 7 different Wisconsin State Records. I had also won the Wisconsin Swimming LSC State Championship several times. By the time I graduated high school I was a 21-time champion at this meet and a two-time overall high point champion. My high school team, Arrowhead Union High School, was runner up at the Wisconsin Interscholastic Athletic Association State Championship as well. Concluding my four years on this team, I hold three school records, won an event at the Greater Eight Conference Meet 8 times, and placed in the top five at the state meet 5 times as well.

6.     Due to my achievements, I was recruited by many Division I programs, beginning on June 15th of my sophomore year. This included schools in the SEC, ACC, PAC-12, BIG 10, and Ivy League. When I was being recruited, I was looking for a team that could support both parts of being a student athlete: helping me develop into a better swimmer and grow as a person during my college experience. I was able to narrow down my list of options until finally accepting the offer I received from Coach Andrew Grevers at the University of Missouri.

7.     This was a hard decision to make, as I had other offers from alternative programs. There was also a long period of time where I considered not competing in college. In high school, I was a National Merit Scholarship Finalist with a high GPA and could have attended

several renowned academic institutions. However, this school had what I wanted out of a program, with positive coaching, great academic and athletic resources, a beautiful campus, up to date facilities, and a strong, thriving team culture.

8.      When I accepted this offer and verbally committed, it was under the understanding that I was on the team for four years. While the coaching staff did inform me that there was a code of conduct to sign upon my arrival, I was also told that a violation of this was the only way I would be removed from the team. I was given a 15% athletic scholarship as well for my first year that would decrease to 10% the following years. The National Letter of Intent that I signed in my senior year of high school reiterated this, that I would receive this scholarship and was signing on to compete for four years. In addition to this scholarship, I was promised that if I maintained a 3.5 GPA, I would receive a stipend from the SEC as well for each semester and that this would continue for all four years.

9.      Many of these promises and statements have now become blurry with the *House v. NCAA* proposed roster limit of Men's Swimming and Diving teams to 30 spots, and the further announcement of the SEC limiting roster to only 22 spots. I was informed of the roster limits in October by my coach who stated that there would need to be cuts next year.

10.     Currently, my team holds 28 men with five graduating seniors and two incoming freshmen. This would mean that to meet the standard of 22, three members of my team would need to be cut. My coaches have already been forced to rescind offers to incoming freshmen as the incoming class of 2025 was originally 5 members just a few months ago.

11.     This also does not account for the transfer portal. Programs like the University of Florida and University of Auburn have many more athletes than the proposed limit and would need to make heavy cuts in order to remain compliant. A program like Florida, who is consistently within the top five at the NCAA Championship Meet, would have many athletes that could easily transfer to a less renowned program and take a spot from someone who was on the team the year prior. Essentially, members cut from top SEC teams can transfer to lower teams within the conference, causing a dramatic shift in athletes being forced out of the conference to make room on the roster.

12.     This has definitely taken a mental toll on the team.  Many of us are already starting to consider what our options will be if we are cut from the roster.  Within the team, people have begun comparing themselves to each other far more often, trying to determine if they will be cut or be able to remain on the team.  This is already an extremely mental sport, with many members of the team seeking mental health resources through the University.  I personally have sessions with both a sports psychologist and a therapist.  Most of what my conversation has been with them lately is surrounding these roster cuts.

13.     Much of this stress is due to what I may lose if I am cut from the team.  For one, I would lose my ability to remain at a school I love while being able to compete.  I would be forced to make the incredibly difficult decision of transferring to continue competing or remaining at the University of Missouri without the sport I've dedicated my life to.  If I am cut, the stipend from the SEC as well as my athletic scholarship would likely be revoked.  Besides this monetary value, I would lose access to the athlete dining hall, the weight room, the athletic training room, medical care, team gear, equipment, and academic counseling.  These are not just perks athletes receive, but necessary in order for us to compete at a high level.  We work extremely hard, dedicate countless hours, and give up a lot of our social lives to be able to compete and enjoy these aspects of being an athlete.

14.     If I am cut, I will be forced to consider transferring or staying at my current University without being on the team.  My situation is worse than many due to my scholarships that were not contingent on my competing.  I declared my National Merit Finalist Scholarship, as well as a scholarship from my high school, and from Wisconsin Swimming LSC for the University of Missouri.  Since they have been declared, I am unable to change what school they will be applied to, and thus the prospect of transferring would be extremely costly in the scholarships I would be forfeiting.  I accepted a large academic scholarship at Missouri worth over $22,000 due to my status as a National Merit Finalist.  Many other schools offer similar scholarships; however, they only offer them to incoming freshmen which I would not be.

15.     Beyond that, I will likely be slowed down in my degree process and may have to take an extra semester if I was to transfer.  In addition, the thought of transferring would result

in a loss of my entire current social group. Due to the time commitment, it is usually difficult for athletes to form friendships with people outside of the athletic department. I spend so much time with my teammates that they are my strongest connections. If I transferred, I would lose these friendships. However, if I remained here, I would still have strained relationships with those able to remain on the team. If I am cut, regardless of whether I transfer or stay, it would have a dramatic effect on my social life and mental health.

16.    I ask that roster limits are not enacted in fall of 2025. At minimum they should be delayed until fall of 2028. Imposing a sudden limit to 22 or even 30 spots is drastic, with almost a third of current teams being affected. Those that are affected committed and signed to schools with the expectation of being able to compete and be a member of the roster for four years. It is unfair and unjust for us to be punished for something we had nothing to do with.

17.    If the roster limits are delayed until 2028, it will allow all athletes that signed under the previous circumstances to keep what we were promised and signed for. Programs can be careful with their recruiting and slowly taper their teams' rosters down, so that by the time the last affected class graduates, they are down to 30 or 22 roster spots. This is the best compromise I have been able to think of, allowing the NCAA and SEC to still do what they feel is necessary while protecting college sports and the athletes who made decisions based on things previously set in stone.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Columbia, Missouri

January 24, 2025

Anakin Fischer
NCAA ECID No.2107283735
901 Hitt St,
Columbia, MO 65201

Carly Frank
76 Beverly Road
Montclair, NJ 07043

January 26, 2025

  Re:  *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Carly Frank.  I am a current Division I athlete at the College of William & Mary and my NCAA ECID number is 2206584719.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

              Sincerely,
              Carly Frank

**158**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF CARLY FRANK

I, Carly Frank, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at the College of William & Mary and am a member of the NCAA Division I Men's and Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Our coaches have explained to us that roster limits if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. This would be devastating to both the swimmers' commitment to the program and the coaches who committed to us when we declared intent to attend William and Mary. Before I verbally committed to William and Mary, I had five official visits scheduled to other schools the fall of my senior ear of highschool. By verbally committing to William and Mary, I gave up the opportunities to visit these schools, four of which I was confident to get offered a spot on the team, and terminate my recruiting process. This was not an easy decision, especially considering I spent over a year talking to coaches  and visiting schools searching for my best opportunity. When I had the rest of my current teammates committed to William and Mary it was under the conditions we would be offered an actively competing roster spot. If the roster limits are put in place for swimmers on the William and Mary Women's team will have their conditions of commitment violated by being cut from the program. This would be a devastating loss to the program and an irreplaceable loss of opportunities to those swimmers. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit.

1

Nor will a limited roster benefit our team.

3.     We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. The motto for William and Mary is "tribe" and no one on our campus takes that more seriously than the swim team. This program demonstrates exactly what college Division 1 sports should be about. Learning how to improve through both hard work and critical thinking, developing better athletes and people, and becoming a part of something bigger than ourselves. We are a team. We win, lose, grow, and fight together not individually. Losing any member would go against who we are and what college athletics should prioritize. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. I have not even completed my freshman year and I can already see how four years on this team would transform who I am as a person and prepare me for life after school. I hope I have the opportunity to experience this. It would be unfair to rob any swimmer the ability to fully develop as athletes and team leaders.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Williamsburg, VA
       January 27, 2025

Carly Frank
NCAA ECID No. 22065847194
76 Beverly Road,
Montclair, NJ 07043

2
DECLARATION OF CARLY FRANK
CASE NO. 4:20-CV-03919-CW

Jordan O. Freer

5660 Petersen Lane,

Lotus, CA 95651


January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:


     My name is Jordan Freer.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2207609092.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.


     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.


                                         Sincerely,

                                         Jordan O. Freer

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF JORDAN FREER**

I, Jordan Freer, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a senior at the University of Washngton and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I was not a rower in high school; instead, I swam for fourteen years and played water polo in high school. I am from an extremely small town in Northern California, with a population of less than 250 people. To go to school and compete in sports, we had to drive 30 minutes to the next largest small town. In high school, I swam for both a year-round club team and my high school team, as well as playing water polo. In the fall, during water polo season, I would go straight from my last class to water polo practice, which would last 90-120'. Practice was at a neighboring high school, because my own school's was not big enough to practice in. As soon as practice finished I would get out of that pool and drive 15 minutes to a different one for my club swim practice, which was two hours. I stored boxes of granola bars and dried fruit in the back of my car to eat during the drive in between, and the seat of my car never dried from where I sat in my wet suit between practices. Once swim practice ended and I'd stayed behind to put the covers on the pool and put away kickboards and buoys, I'd drive the 30 minutes home and hope there was still dinner left out in the kitchen at 9pm. I'd eat while starting my homework, often not going to bed until midnight or later because of assignments that needed to be finished by the next morning. During the high school swim and water polo seasons, when I doubled those sports on top of club swimming, I spent at least 15 hours, often closer to 20, in practices - without

1

even including the driving time. I had no social life outside of sport. I never slept. Even then, I had little chance of making a college athletics team. With absolutely no resources to assist me in the recruiting process, no advice or support, and no knowledge of any of the steps to take, D 1 was out of reach for me. I firmly believe that roster caps will further exacerbate the difficulty for high school athletes like me, doing their best to be independently recruited, to be chosen to join collegiate athletics programs. There will be no room to take a chance on someone - someone who could be incredible.

3.      My freshman year of college, I attened UC Santa Barbara, where I walked onto the club rowing team after missing the chance to swim as a Gaucho. Within my first quarter of being on the team, I had put up erg times that were faster than almost every varsity rower. UCSB Rowing has a policy of not allowing any novice rowers without previous experience to join the varsity squad, so I continued to train with the novice team under a first-year coach who did not have the knowledge, leadership, or technical ability to be remotely competent. He would be fired within the next year. While the entire squad struggled on the water and placed poorly in almost every event, I did additional erg workouts on my own or with one other athlete, and by the end of the year I had a 2k and 6k time that were extremely positive for my experience level.

4.      A varsity rower at UCSB told me at the end of that first year that my erg times were well within the range that D 1 college coaches would be excited to see. Though skeptical, I had nothing to lose by looking into it, so that summer I sent emails to about eight West Coast schools with Dl women's rowing programs. I wasn't sure what I was looking for in a school or team, or what kind of offers I should be expecting to get based on my times. I had gone from barely knowing this sport existed to having schools fly me out to visit their campuses - I was shell-shocked. I also had very little time to make my decision, as it was already mid-summer when everything began. As I whittled away at the short list of schools I could go to, it became clear that I was going to attend UC Berkeley or the University of Washington. I remember a message I received from Coach Yaz during that process, that has stuck with me to this day: "Jordan, don't underestimate yourself. We believe in you. Come to Washington." That message changed my life. How many fewer people will get to be believed in that manner if these

2

roster caps go into effect? How many people just like me may never have the opportunity I was so fortunate to have? I remember very clearly a moment from my visit to Washington, standing outside of the boathouse and looking at the stadium. I knew it was where I belonged. There was no concrete reason - Berkeley made more sense in every possible logical regard. My dad is a disabled veteran, meaning that I do not pay tuition at any California UC or CSU school. I would have been closer to my family, closer to my long-distance partner, closer to the mountains and rivers and ocean that I love, closer to my brothers' sports games and my mom's plays. I went to Washington on a feeling, not a logical decision, and I haven't regretted it a second - but without Washington Rowing, I certainly would. When people ask me if I like Seattle, if I like Washington, if I like UW, my answer is always the same: "I love the team and that is why I am here. That is enough." How many fewer people will not have the chance to love and value and cherish their experience as a part of a D 1 rowing program so much that it supersedes ever possible logical opposition to their college experience?

5.      Our head coach called a team meeting a little over a week ago to discuss the proposed roster caps and how they would impact our team. She did so from a place of empathy and kindness to all of us, to give us time to consisder our options from now until December so as not to blindside us. We have been told that our coaches intend to keep our team as large as possible until the last second before the maximum size must be reached, and that doing so will require us to sacrifice all of our fall racing opportunities, so as to give as much time as possible to set the roster.

6.      I've never heard the team as quiet as it was walking out of that meeting. There would have normally been chatter about weekend plans, speculation about the launch time for the following morning, laments of assignments due and sore legs and the need for a sweet treat to end the night. Last Friday, though - the team was quiet. People walked out in little knots of housemates, shoulders slumped and backs twisted and hunched around this little knife slipped so quietly through the fabric of our team and between the ribs of our sisters. They weren't wondering what time we'd have to wake up tomorrow - they were wondering how many more times they would get to set their alarms for the crack of dawn for the privilege of

pulling this team. It was devastating to watch. People were openly sobbing - some not even those at risk of being cut, but who knew the devastating impact this would have on our team as a whole. I have the privilege of being one of two commodores of the Women of Washington this year, meaning I am a link between the psyche of the team and the coaches and vice versa. The sadness and devastation from both sides was abundantly clear that night and every day since. Make no mistake, this is a devastation of our team. This is sisters tom from sisters, teammates ripped from team, a family tom apart. This is an execution of hopes and dreams. This is a decision that was made for us with massive implications, with no consideration given to us. The freshmen come to me with worries about their beautiful little atmosphere of support and uplifting each other curdling in the vinegar of fighting for a spot on the team. The juniors who have nearly finished their degrees, who have built lives here counting on this team, who love rowing and each other are shattered at the thought of losing everything. This is absolutely taking a mental toll on every single member of this team. We need to focus, to study and to train, but people are instead having to draw contingency plans and weigh their values against their odds.

7.    If cut, I would lose a great deal of my personal identity and my life. I rowed for the USA on the U23 National Team this summer. Losing my spot on this team would decimate any dreams of continuing to compete after college. I would lose my friends.  I would lose my place in the world. I would lose scholarship money that allows me to attend an out-of-state school, meaning I would lose my chance to finish my degree. I would lose all of my resources - mental health, physical health treament, academic counseling, tutoring, academic financial aid, my meal plan, medical insurance, almost all of the food I eat. I have been a competitive athlete my entire life. I would lose who I am.

8.    I truly cannot fathom the implications this will have for athletes who are forced out of their program as a result of the roster cuts. I elected to transfer from my previous school and team, and even that was a devastatingly difficult decision with implications I still grieve. Having that autonomy stripped from those who won't have a choice of whether or not to remain on the team is simply cruel. This team is a family. With a roster of over 100 athletes this year,

we are still truly, deeply, a family. The opportunity to love so many people so deeply is a chance that is not found frequently. There is no upside to the roster cap - no sensible notion that with less people we will able to be closer-knit, more deeply interconnected, a stronger unit. We are all of these things to an even higher degree with the magnitude of our team. Our size strengthens us, gives us the opportunity to love so many people, to have an infinite well of strength and support at our backs, to learn from and be buoyed by the courage and knowledge and power of these people we have the privilege of being on a team with. The strength of the dog is the pack; to cut our sisters from our sides is to hobble us and to leave us bleeding and mutilated. Additionally, my transfer decimated my academic prognosis. I came into college with nearly two year's worth of credits from AP classes, but after my transfer it became nearly impossible for me to graduate without taking a fifth year. I took classes at UW that were exactly the same as those I'd taken at UCSB because the credits weren't accepted the same way. Not only is this a waste of my time, it is expensive -especailly when paying out-of-state tuition. Athletes who can't afford to transfer to out-of-state schools will have their options severely limited. Transferring was an extremely, extremely difficult decision for me, and if people lose a huge amount of autonomy in that choice; if they have to choose between the sport they love and the school they attend; it will have extreme consequences for a great many athletes.

9.      This team is everything to me. Four years ago, I barely knew the sport of rowing existed. Athletes enter collegiate rowing from millions of different backgrounds and experience levels. Those who succed in rowing often are not those with some natural, innate talent that shines through on day 1. They are those who are gritty, tenacious, and willing to stand up over and over again in the face of failure and setback More often than not, these athletes - these people whose driving merit is their perseverence - will not be the best or the fastest on day 1. Nor will they be on day 2, day 3, or day 45, when - depending on the first day of the school year - their fate on the team would be decided. There are so many incredible athlete who will lose their opportunity entirely to compete in this sport. I went to the USA Under 23 National Team Selection Camp this year with Grace Vander Griend, my teammate of two years. She had walked onto the team with no rowing experience her freshman year at UW. If cuts were made

5

on December 1, she may not have made the team. Two years later, we raced for a national championship together and became part of the second fastest 2V boat in the country. The next year we contended again, and that summer went on to trial for Team USA U23. There are so many stories like hers and like mine - people who would not have made it onto a smaller team. People who need time to grow and to work for their development. People who end up being great. The proposed NCAA roster caps will devastate an incredible number of young female athletes who just need a chance to be exceptional.

     I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle/King County, WA

      January 26, 2025

_____
Jordan O. Freer
NCAA ECID No.2207609092
5660 Petersen Lane
Lotus, CA 95651

# INTENTIONALLY LEFT BLANK

Julia J. Gehrig
601 Robmont Rd
Charlotte, NC 28270

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Julia J. Gehrig.  I am a current Division I athlete at the College of William & Mary and my NCAA ECID number is 2105159377.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Julia J. Gehrig

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF JULIA J. GEHRIG

I, Julia J. Gehrig, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a  Sophomore at the College of William & Mary and am a member of the NCAA Division I Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Our coaches have explained to us that roster limits if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.       We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively impact those who are cut and our team at large.

1

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Dated: Williamsburg, VA

3        January 28, 2025

4

5        _____

6        Julia J. Gehrig
         NCAA ECID No. 2105159377
7        601 Robmont Rd
         Charlotte, NC 28270

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Daniel Gordon
5505 East Berlin Road
East Berlin, PA 17136

January 16, 2025

     Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Daniel Gordon. I am a current Division I athlete at the University of Florida and my NCAA ECID number is 2011963657. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2024.

                                     Sincerely,
                                     Daniel Gordon

1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

Case No. 4:20-cv-03919-CW

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Hon. Claudia Wilken

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DANIEL GORDON

I, Daniel Gordon, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am a junior and swimmer at the University of Florida. I am a member of the Injunctive Relief Settlement Class and object individually and on behalf of the class.

2. I started competitive swimming when I was 9 years old. I have mostly competed in the 50-yard and 100-yard freestyle events. In high school, I qualified twice for Summer Junior Nationals. My first time there was the summer after my junior year. Earlier that year, I recorded one of the top 50-yard freestyle times in the country for the U16 division at the time. I was also a four-time Pennsylvania 3A State Championship finalist and two-time Champion. More recently, I participated in the Olympic Trials for the Irish national team.

3. I started getting significant college recruiting attention during the summer prior to my junior year. All in all, I had some level of interest from about 45 Division I schools. I ultimately chose Florida because of its elite swimming program and my interest in its mechanical engineering program. I passed on several full scholarships for this reason.

4. Unfortunately, prior to arriving for my freshman season, I suffered a severe fall during a training session. I broke my L2 vertebrae and several bones in my foot. As a result, I spent most of my freshman year recovering from these injuries. A subsequent weightlifting injury during that season further delayed my return. I was not able to do flip turns or starts in the pool for several months and it impacted my performance at meets that year.

5. When I returned for my sophomore year, my coaches felt that they had rushed my recovery the previous year. As a result, I spent most of that season practicing with the mid-

1

distance group, instead of with my sprint group.  I did not have the opportunity to compete in a meaningful way at any meets that season.  At the end of the season, I was entered into a meet (considered my taper meet) where I was the only male swimmer in my event.

6.      Needless to say, I was really looking forward to finally having a normal season this year and the opportunity to compete in the sport that I love.  However, last month, my entire team was gathered for a meeting with an athletic administrator from the school.  She informed us that due to roster limits included in the settlement, the swimming program would undoubtedly be undergoing roster cuts.

7.      Later, I was called in for a meeting with two of my coaches.  I was told that I will not have a spot on the team next year because of the roster cuts.  My coach informed me that I could choose between entering the transfer portal or quitting the team mid-season.  There was no option to continue attending practices and meets for the remainder of the season if I did not intend to transfer.  They said there was no point in me racing unless I needed to show the results to other collegiate swimming programs.  They thought the team dynamic would suffer if all swimmers didn't have the same reasons for showing up every day. I am passionate about swimming, but there are no good options to pursue it.

8.      I've dedicated so many years of my life to the collegiate level in swimming and my family and I made a lot of sacrifices, both financially and timewise.  Now, it feels as if my journey is over before I've even had a chance to show what I can do.  I wanted my parents to be able to watch me swim again at a meet this year, which is also no longer possible.

9.      In addition to the emotional impact of this forced decision, the benefits I receive through my spot on the swim team may be at risk.  I turned down several more financially lucrative scholarships to join the program at Florida, due to its strong engineering program as well as the swim team.  In order to do so, I have relied on benefits like free meals for athletes and a subsidy of my cost of attendance by the athletic department.  It is still unclear how the settlement and associated roster limits will affect my benefits.  This has caused further anxiety for my family and me.

10.      The NCAA is meant to protect student-athletes like me and allow us the

2

opportunity to compete in the sports we love. But nobody is looking out for us. The roster limits

steal our ability to continue competing and should not be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: East Berlin, Pennsylvania
    January 20, 2025

_Daniel Gordon_

Daniel Gordon
NCAA ECID No. 2011963657
5505 East Berlin Road
East Berlin, PA, 17316

Alexandria Grasso
2 Barberry Rd
North Reading, MA 01864

January 15, 2025

  Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Alexandria Grasso.  I am a current Division I athlete at the University of Massachusetts, Lowell and my NCAA ECID number is 19086656264.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                Sincerely,
                Alexandria Grasso

**176**

1
2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

3
4
5
6
7

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

**DECLARATION OF ALEXANDRIA GRASSO**

9

I, Alexandria Grasso, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10      1.      I am a graduate student at the University of Massachusetts, Lowell. I run on the
11 Division I track and field team. I am a member of the Injunctive Relief Settlement Class and
12 object on behalf of the class.

13      2.      When I arrived on UMass Lowell's campus as a freshman during the height of
14 the COVID-19 pandemic, everything felt uncertain. I didn't know many people and restrictions
15 made it very difficult to make friends. The track and field team became my whole world. They
16 weren't just teammates. They were my support system and the reason I got through that
17 challenging time.

18      3.      One of the best parts about being on a big team that year was how many different
19 kinds of people I had to connect with and look up to. We had athletes from every background
20 and event group: jumpers, sprinters, throwers, distance runners, and more. Each of them had
21 their own story, their own advice, and their own way of approaching the sport. Whether it was
22 learning how to manage my time, hearing how someone came back from an injury, or just
23 watching older athletes handle the ups and downs of competition, I gained so much from being
24 around them. If roster limits had been in place, the size and diversity of the team would have
25 been so much smaller, and I would have missed out on those connections and lessons.

26      4.      One of those teammates is someone who has become one of my closest friends.
27 She tore her ACL right before signing, but our coaches still took a chance on her and gave her a
28 spot on the team. If these proposed roster limits had been in place, she might not have gotten that

1

1   opportunity. Today, she has grown into a phenomenal athlete and someone I look forward to

2   training with every day. Stories like hers show why having room for development and second

3   chances is so important.

4       5.      Track and field is special because it's for everyone. We all come together to make

5   one big team. Roster limits would change that. Entire event groups could be cut, and athletes

6   who might not be the top recruits but have tons of potential wouldn't get the chance to develop.

7   It would change the whole dynamic of what makes track and field so unique. For me and so

8   many of my teammates, track and field is about more than winning or setting records. It's about

9   the relationships we've built, the lessons we've learned, and the sense of community we've

10  found. Losing these opportunities for future athletes would be devastating.

11      6.      The NCAA settlement may have been created with good intentions, but the

12  proposed roster limits would do more harm than good. I urge decision-makers to consider the

13  stories of athletes like me, my friend, and so many others who've found a home in this sport.

14  Roster limits would not only take away life-changing opportunities but also hurt the foundation

15  of collegiate track and field. Please protect what makes this sport so special. Not just for us, but

16  for the athletes who come after us.

17      I declare under penalty of perjury that the foregoing is true and correct.

18  Lowell, Massachusetts
19  January 15, 2025

20

21  *Alexandria Grasso*
    Alexandria Grasso
22  NCAA ECID No. 19086656264
    [Mailing Address]
23
    2 Barberry Rd
24  North Reading, MA 01864

25

26

27

28

DECLARATION OF ALEXANDRIA GRASSO
CASE NO. 4:20-CV-03919-CW

Katherine R. Guenther
821 Mt. Vernon Avenue
Charlotte, NC 28203


January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Katherine R. Guenther.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.


                        Sincerely,
                        Katherine R. Guenther

<table>
<tr><td>1</td><td></td></tr>
<tr><td>2</td><td></td></tr>
</table>

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF KATHERINE R. GUENTHER

I, Katherine R. Guenther, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am 15 years old and am in 10th grade at Myers Park High School in Charlotte, NC. I have been competing as a swimmer since I was 7 years old and hope to compete on a Division I college team.

2.      I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college.  I therefore am a class member who could be affected by the terms of the settlement.  I object to the settlement for the reasons stated below, both for myself and for other class members like me.

3.      I love the sport of swimming as it provides me joy, discipline, fitness, and personal fulfillment.  I swim year-round for my club team, the Aquatic Team of Mecklenburg, as well as for my high school in the winter.  I put in 3 hours per day, 6 days per week, of pool time, dryland and weight training in order to maintain my place near the top of my swimming class. I love the competition, friendships, and self-confidence the sport has given me. Furthermore, swimming has allowed me to become a better student and person as I have to juggle these athletic pursuits around a rigorous academic workload.  I appreciate what I have and I try to be a role model for the members of my team and for my fellow students.

4.      I am a Junior National Championships qualifier in multiple events, ranked in the Top 40 in the country in my recruiting class, and I just attended the 2024 Girls National Select Camp in Colorado Springs, CO, a stepping stone for many junior swimmers on their way to Division I universities and beyond.  I also maintain straight A's in the classroom.

5.      My family has been an inspiration to me as my father was an All-American swimmer at UNC-Chapel Hill, my oldest brother followed in his footsteps to UNC, and my other brother is also a competitive high school swimmer.  My parents preach the benefits of the sport, but also want to make sure we love what we do.  I would not do this without their love and support, and I would not sacrifice time and energy needed if I did not love the sport of swimming.

6.      The limitation of roster spot in collegiate athletics takes away opportunities for young women and men who wish to continue chasing their dreams of individual or team glory, or just the joy of being part of a team dynamic with common goals.

7.      There must be logical or economic reasons for wanting to limit collegiate roster spots, but one of the foundational aspects of sport - allowing children to pursue their dreams, regardless of whether they are the best or not – should not be compromised.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 28, 2025

Signed by:

*Katherine Guenther*
65CE66E0CA4E4C7...

Katherine R. Guenther
821 Mt. Vernon Avenue
Charlotte, NC 28203

Elizabeth Guthrie
4816 Montibello Drive
Charlotte, NC  28226


January 30, 2025

         Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Elizabeth Guthrie.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                        Sincerely,
                        Elizabeth Guthrie

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF ELIZABETH GUTHRIE

I, Elizabeth Guthrie, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a high school freshman golfer, and hope to be recruited to compete on a Division I college team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I practice golf more than 25 hours a week along with going to school during the school year and travel to play tournaments with the goals of playing college golf and going to a great college.

3.      I have won Tournaments and had high finishes in many prestigious events.

4.      I feel like roster limits are bad in college athletics because it is taking away playing and competition opportunities for student athletes who have worked so hard and sacrificed so much just to play in college.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Charlotte, North Carolina
        January 30, 2025

Signed by:
*Elizabeth Guthrie*
28856BF82D3C445...
Elizabeth Guthrie
4816 Montibello Drive
Charlotte, NC  28226

Ella Hansen
5825 Longview Rd.
Shawnee, KS  66218


January 25, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Ella Hansen.  I am a current Division I athlete at the University of Missouri and my NCAA ECID number is 2209670046.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                        Sincerely,
                                                      Ella Hansen

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW |
| | Hon. Claudia Wilken |

## DECLARATION OF ELLA HANSEN

I, Ella Hansen, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at the University of Missouri and am a member of the NCAA Division I Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      As a 3x state champ, a Junior National qualifier, and a U.S. Open qualifier comes with a lot of practices including: Swimming, dry land, and weightlifting. This also include sacrifices like having to miss other activities or social events.

3.      My recruiting process started later than others, since I got my Junior National cut my junior year of High School. Getting that cut opened the door for swimming at the Division I level. I got a call from the coaches at the University of Missouri and they offered me a visit. Once I stepped foot on campus, I knew I was going to call this place home. I looked at plenty of other schools but nothing compared to the University of Missouri. The team felt like instant family, and I knew I wanted to be part of it instantly. I could tell the coaching staff cared for each athlete not only as a swimmer but as a person.

4.      I heard about roster limits after I signed with The University of Missouri.  My club coach mentioned it, but he had said it probably won't affect my roster spot. Since then, however, my teammates and I fear that there will be a chance we get cut. Many teams in the Southeastern Conference want to make space on teams for possible

1

transfers, leading to potential cuts on the team in addition to the roster limits. My understanding of this proposed settlement is that there will only be 30 spots starting in the 2025 fall season because of the roster limits. Next year the women's team will be under 30, but my spot could still be at risk with the potential of transfers.

5.     These roster limits are taking a huge mental toll on not only swimmers, but many athletes in other sports. Knowing that this could be the last normal season with my teammates and last normal year with this team is stressful. Swimming is already a very mental sport, and adding the uncertainty of potential roster limits is bringing on a lot of unwanted stress on athletes.

6.     If cut, I would lose several benefits of being a member of this team, such as financial aid and award money, tutoring, academic counseling, meal plan, athlete-only dining, athletic medical insurance, and my housing lease for next year.

7.     If I am told that my spot is at risk, I could try to enter the transfer portal. However, once you enter the transfer portal, your athletic scholarship is revoked. If one is in the portal but can stay on the team, then one has to negotiate a whole new scholarship agreement with the coaches. The process for athletes and coaches is not easy. These roster limits and additional transfers are going to affect the team dynamic significantly. The culture that this team and our coaches have crafted is truly something special. That team camaraderie is something that is built over time and is at risk with these roster limits.

8.     I think roster limits should be gradually phased in by fall of 2029 so the coaches have until then to plan how many kids they need for each class year. If we signed an National Letter of Intent back in November of 2023 or 2024, we should be considered grandfathered in.

2

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Columbia, Missouri

January 25, 2025


Signed by:

Ella Hansen
100949E56B7B473...

Ella Hansen
NCAA ECID No. 2209670046
5825 Longview Rd.
Shawnee, KS 66218

David Hatt
201 Wire Rd.
Auburn, AL 36849
Aubie Hall, Apt. 324C

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is David Hatt.  I am a current Division I athlete at Auburn University and my NCAA ECID number is 2206593670.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                         Sincerely,
                                         David Hatt

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF DAVID HATT</u>

I, David Hatt, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at Auburn University and a member of the NCAA Division I Men's Swim and Dive team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      When I was in middle and high school, I participated in the Nebraska Diving Club, and I practiced for three hours a day during school and six during the summers. I also competed in NSAA high-school level diving in which I had to practice for an extra two hours late at night from 7:30-9:30, making it roughly 5 hours of practice daily from November to February. On top of this, I lifted weights early in the morning and pushed myself to become the best diver in the state of Nebraska. I regularly travelled all over the United States to compete in USA Diving meets to put myself out there as a relevant athlete. I went to training camps with famous coaches to get as much wisdom as I could from them because I wanted to make an electric impression at my last few club meets. I did all of these things in order to build my resume so I could have a better chance of getting into a prestigious program and open enormous opportunity for myself.

3.      I love musical theater and playing piano, but I chose to largely forgo those activities in high school to focus on my sport. I missed several productions I would have loved to be a part of, and I never got to be in band because my athletics would not allow for it. I missed out on hanging out with friends on Friday nights because I had practice, and I had to wake up early for morning practice on Saturdays. Out of the many opportunities I had, I chose this sport

1

as the avenue for my future success.

4.      I am the 2023 and 2024 Nebraska State men's diving champion, I am a four-time Heartland Athletic Conference champion, I am a four-time National High School All American, I am a four-time letterman, I was in the top 25 Athletes at USA Diving Nationals on the platform event in 2023, and I was coached in my earliest years of diving by the well-respected Hoffman family, who gave me an incredible foundational skill set. These achievements attracted the interest of my several prospective coaches and show that I belong at a Division I program.

5.      My recruiting experience was incredible. I met the most prestigious coaches and programs in the United States, not because of my exceptional skill at the time, but because of my exceptional attitude and work ethic. I attended a training camp called "2028 and Beyond" where I met the U.S. Olympic coach Drew Johansen. He took an interest in my desire to make corrections and my coachability. I learned a lot from him at that camp and more importantly got his contact and secured his interest. I also met John Fox, who at the time was the head coach of the hosting club. He connected me with Ted Hautau at the University of Kentucky. Coach Fox later became the head coach at Auburn University, and he certainly did not forget my attitude and work ethic at his camp.

6.      I took visits to Florida State University, Indiana University, University of Kentucky, and Auburn University. I was looking for a school that had a good platform diving facility, could offer me some scholarship money, had a good Catholic community, a beautiful campus, a film program, and a coach that I respected. For a number of reasons, I was not at home at FSU or IU, so that left me with UK and AU as options.

7.      I felt guided by the Lord when I made my decision to come to Auburn. It was my last recruiting trip, and we were about to go to the football game. I talked it over with my mother (who is also my high school dive coach) and we both agreed that this school checks all the boxes. I committed on the spot while we were eating dinner and surprised the heck out of my coach. I am receiving athletic as well as academic scholarships, and my coach promised me a spot and the right to compete the following year. He said no meets would have roster limitations, unlike Indiana. He made it clear that he wanted Auburn to be my home for the next four years by

1   showing me the plan he had for each diver's progression and training cycles. I'm afraid that I

2   won't get to complete the progression laid out for me and my potentially successful career will

3   be cut off prematurely. I turned down other offers because I wanted to dive and thrive at Auburn

4   University. This is my new home. I have friends in my church and friends on my team that I will

5   potentially have to leave because of this movement.

6       8.      Within the first couple of weeks of diving, Coach Fox gathered us around and

7   said he had some important news. This was the very day after the initial release of the roster

8   limits. He seemed flustered and not sure exactly how to communicate this reality to us, but he

9   was and is determined to be completely transparent with the whole team about every new thing

10  he hears. I felt my stomach drop when he told me. I realized that now I not only have to work

11  hard to be a great diver, earn the respect of my teammates, make friends, and get good grades,

12  but now I must fight for my life to stay on this team and remain in my new home. I quickly did

13  the math in my head and realized that with four available spots, an upperclassman, and two

14  incoming freshmen, there is effectively one spot that five of us are fighting for. I would give

15  nearly anything for a better chance to stay on this team.

16      9.      This has been incredibly stressful for me this year. Multiple times I would have

17  days when I would despair because of the seeming hopelessness of my situation. It was

18  sometimes hard for me to muster that characteristic work ethic because of the pressure to be

19  perfect immediately. While I've made some fantastic improvements this year, I have also stalled

20  out several times because of the nature of my sport. In diving, you must make precise, minute

21  corrections to your form that can easily take months to ingrain. Becoming a new diver takes time

22  and time is not something I have. This means that on a day-to-day basis I have had to grapple

23  with the enormous pressure to level up and prove that I deserve to stay, and the inherent patience

24  that diving requires. This has eaten me up and been an enormous source of stress, pressure, and

25  discontent.

26      10.     It has been my dream to go somewhere far away from home and be an

27  independent young man pursuing greatness. Were I removed from this team, I would be forced

28  to return home and attend a local school. Without the financial support and privileges I get at

3

Auburn, including but not limited to scholarship, nutrition, medical insurance, academic counseling, clothing, priority registration, free event passes, travel expenses, beautiful facilities, personal training staff, and a personal purpose, it would not be financially feasible or sensible for me to attend this amazing school. Personally, I don't think I could bear to stay here and, while watching my friends continue, sit out of diving.

11.    As a result of these roster limits, I may quit my sport. After having participated in such a prestigious and elite program, I may only find disappointment elsewhere. In order to continue diving, I would have to enter the transfer portal and hope that I can make the roster of another Division I program which will be difficult considering that thousands of athletes are being displaced. If I can't, I would be forced to go Division II, and I would rather quit. If I quit, I would be forced to attend a local university in Nebraska and live at home while I do my studies. My dream was to go far away from home and pursue excellence at diving and Auburn gave me that chance. It's a shame that it may be taken from me. I will also have to break off many friendships that I have formed this year because, living half a continent away from them, it will be difficult to maintain them.

12.    I think that roster limits are ruining amateurism in college athletics. I think that making this change so suddenly is inconsiderate to all the young athletes whose careers and dreams are being squashed. It's clear to me that the recent movements of the NCAA concerning NIL and now roster limits have not been in the best interest of the athletes, but rather in their own financial interests. I think that if this must be implemented, it would be prudent to give universities a 5- or 6-year timeframe to reach the expected limit. This way both incoming classes and current freshmen have a chance at living their dreams and not having them suddenly ruined. Ideally, however, I feel that this should never go through, and we should preserve amateurism in college athletics.

1         I declare under penalty of perjury that the foregoing is true and correct.

2 Dated: Auburn, Alabama

3         January 28, 2025

David Hatt

NCAA ECID No. 2206593670

201 Wire Rd.

Aubie Hall, Apt. 324C

Auburn, AL 36849

DECLARATION OF DAVID HATT
CASE NO. 4:20-CV-03919-CW

Tim Havlick
621 Custer Ave.
Colorado Springs, CO 80903


January 26, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Tim Havlick.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

               Sincerely,
               Tim Havlick

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

**<u>DECLARATION OF TIM HAVLICK</u>**

9      I, Tim Havlick, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10      1.      I am a high school junior and swimmer, with a goal to be recruited to compete on

11  a Division I college team.  I am a member of the Injunctive Relief Settlement Class and object

12  both individually and on behalf of the class.

13      2.      I have been swimming competitively and practicing on a year-round basis for

14  more than five years.  In an average week I swim 8-10 hours, do dryland training (weights and

15  stretching) for an additional 2-3 hours weekly, and usually swim 15 or more miles.  Training

16  requires a lot of sacrifice, time, energy, and expense, including fitting this in on top of my high

17  school commitments and other demands on my time such as playing trombone in the Colorado

18  Springs Youth Orchestra and working at the local YMCA as a lifeguard.

19      3.      I hope to continue to improve as a swimmer to attract the interest of collegiate

20  coaches.  As a freshman and sophomore in high school I qualified for the Colorado State High

21  School Boys Swimming Championships (4A) as a member of 200 medley and 200 and 400 free

22  relay teams, and was less than 0.5 seconds off state cuts in the individual 50 free and 100 breast.

23  I am aiming to qualify individually for the state meet in both these events in 2025, as well as the

24  100 fly and 200 IM.  By 2026, my goal is to make the finals in one or more of these individual

25  events.

26      4.      I have not yet started the college recruiting process, but have learned from the

27  experience of my older sister who is currently running at the Division I level for a Power 4

28  university (she did not feel comfortable submitting an objection, but is actively concerned about

1

the proposed roster limits and how that will affect her standing on the team).

5.    I learned about the proposed roster limits from my parents and sister, who was informed of the proposed limits by her teammates and, later, her team coaches. My swim coaches have not mentioned anything about roster limits and my impression is that even though many of my teammates hope to swim in college, there has been little communication about roster limits shared with high school-aged athletes.

6.    The prospect of roster limits makes the already-stressful process of planning for college even more challenging, as D1 roster spots are likely to become more scarce.

7.    Since I am still in high school, I can only imagine what prospective benefits I would lose by not being on a team due to roster cuts. From my sister's experience, the hypotheticals seem very real, and many of these impacts would affect myself and our whole family: She faces the loss of a wide array of benefits she currently has as a D1 athlete. Some of these are financial, such as scholarship aid, *Alston* money, a monthly food stipend, additional money provided for travel meets, and periodic team meals that reduce monthly food costs. Other benefits at risk are academic, including access to athletic tutors, dedicated study spaces, and priority enrollment each semester for scheduling classes. There are health benefits, too, that would be lost including access to athletic trainers, team doctors, MRIs and other tests to detect and respond to injuries, and rehabilitation facilities. Other losses include the loss or disruption of social connections developed as teammates, the elimination of many of the central organizing features of daily/weekly life on campus (such as dry land and weight sessions and daily practices), and the sense of identity as a student-athlete.

8.    As a high school student, the prospect of roster limits is pressing me to consider a wider range of college possibilities, leading me to question whether or not it's even worth continuing with swimming after high school, despite the fact that I've devoted so much time and energy to swimming for so long! It's not clear to me if there will be a realistic number of rosters spots not just at my top schools, but also at other schools that are likely to be impacted by the trickle-down effects of roster limits.

9.    I realize that my own position in this case looks to the future, but the concerns

2

seem very real to me. I am less than nine months away from needing to make most or all of my college application decisions and many of these feel very contingent due to the uncertainty over what roster limits could do to the Division I athletics. As I've tried to highlight throughout this letter, the possibility of these caps is also already very much affecting my sister and my family in ways that are disruptive. For current Division I student-athletes, a one- or two-year delay in implementing roster caps could be remedy enough to allow them to compete for the remainder of their college career, but for those of us in high school or younger, clearly this is no remedy at all. I ask you to **eliminate the roster cap provisions** of this settlement in the interest of preserving some of the structure and developmental potential and openness (including walk-on athletes) that currently exist as important aspects of Division I sports.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Colorado Springs, Colorado
        January 26, 2025

Tim Havlick
621 Custer Ave.
Colorado Springs, CO 80903

Olivia Grace Hay
9201 Interlake Ave N,
Seattle, WA 98103


January 26, 2025

       Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Olivia Hay.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 1907637117.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                             Sincerely,
                             Olivia Hay

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW |
| | Hon. Claudia Wilken |

## <u>DECLARATION OF OLIVIA HAY</u>

I, Olivia Hay, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Senior, Class of 2025, at the University of Washington and am a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      To give myself the opportunity to be a Division 1 student athlete it took an enormous amount of hard work and dedication, training 11-12 times a week through high school for 5+ years before this dream became a reality. Along with this, I faced many setbacks, disappointments and not making boats, but stayed resilient knowing I could keep working hard and one day it would pay off. Along with this, many sacrifices were made like missing family/friends birthdays, Christmas's and weddings but it has all been worth it to compete for my sport that I love so much.

3.      In high school I won the GU18 4x+ in 2019 at nationals in New Zealand which attracted the interest of some coaches. I gained a trial for the Under 19 NZ rowing team, and then went on to compete in the New Zealand under 21 team in 2021, and the New Zealand under 23 team in 2022, and 2023 representing my country in the quadruple sculls and single sculls respectively. Along with this I rowed in UCLA's 1v8 for 2 years, until I transferred schools and was recruited to row at the University of Washington.

4.      When I was in high school I was interested in finding a school that had a balance of rowing, academics and being in an environment that supported me as a person. I was talking to a lot of coaches from a number of different schools all over the country, and it was important

1

to me to choose the right school as I knew this would shape my life for the next 4 years. Talking to coaches, I was always guaranteed that I would completely change as a person and a rower over the 4 years I was in college, and that my development was incredibly important to them. This was also incredibly important to me, as I have always wanted to return to New Zealand to try and make the Olympics. I originally chose UCLA because when I was in high school, I thought it was everything I needed in a school, I absolutely loved it there, but after 2 years, I wanted to further my development as a rower so transferred to the University of Washington to give myself a better opportunity with rowing. Both schools I have been at have been incredible, and these past 4 years have been the best 4 years of my life. Both schools had made it clear that I would be on the team for my full 4 years at each university. I turned down offers at other schools that were offering more money as I really wanted to row for Washington.

5.      My coach Yaz made me aware of the roster limits and from what I understand, all rowing teams in the NCAA are now required to have a roster cap of 68 athletes. We currently have a team of over 100, so this would be a huge percentage of our team that will not be able to return next year. Over 35 athletes would need to cut, and this would be based on their rowing ability, and who would help contribute to making the team go as fast as possible. It was not yet specified how these cuts/decisions would be made yet. I understood that once the roster was named for that year, you would not be able to rename or change this roster meaning these selections would be done very early in the year.

6.      This is new roster cap is taking a huge mental toll on my teammates and I have an incredible amount of empathy for them. Whilst this roster cap is not going to directly impact me as I will have graduated, I can understand the relentless amount of effort, and dedication it takes to get to this point in sport, and for some of my teammates it will be taken away from them. Rowing alone is a sport that takes a huge mental toll, and this added pressure of a roster cap is really effecting peoples stress levels and therefore athletic and academic performance. The pressure of not knowing if you are going to be on this team next year is incredibly overwhelming especially when you have put so much into making this team in the first place.

7.      For someone on my team who could be cut, they would lose a team, a community,

but most of all a family. Our team is a place where you can be a part of something bigger than yourself, and work towards a common goal with others. It's incredibly special and hard to find in other areas of life outside of sport. Along with this, if my teammates were cut from the team they would also loose financial benefits, tutoring, meal plans, counseling, medical treatment, and student athlete study facilities. For a lot of athletes on my team, this is a huge financial benefit, and helps them to perform at their best in both sport and in their academics too.

8.    With these new roster limits, for me as a co commodore on our team, I am considering a lot about giving advice and helping my teammates to make the best decision for their future development as a rower and a person. It is so challenging for my teammates when you love this school and choose it because you were excited about your development you can make in 4 years, but it now this might be taken away from you. A lot of my teammates are now needing to consider life changing options like transferring schools, or giving up the sport to stay at this school, which feels incredibly unfair. Spots at other schools might also be limited as they will also need to be cutting their roster. Transferring schools can be an incredibly risky experience, especially if you don't find the same community or friends like you had. Academically this can also be challenging, from my experience I lost about 1 year worth of work from transferring as my credits that I had earned were not accepted at my new institution. This can be a waste of time, energy and money for a lot of students for something that was out of their control. Along with this, I also had to switch my major when transferring schools, as the requirements were different at my new school that what I had previously been studying.  All up, transferring had meant I needed to take an extra year of study, which was by choice, but I have a lot of empathy for my teammates who would be forced to transfer school if they wanted to keep rowing in college, and were cut from the rowing team due to the roster cap.

9.    I am pleading to the court to please revoke the roster cap for NCAA division 1 schools. Thousands of athletes all over the country and the world have committed their lives to play sport, and it is absolutely heart breaking that this could be taken away from them. Rowing is a sport that takes time to develop, meaning potential talent could be cut before they get the opportunity to shine. These roster caps would mean walk-ons would not be possible, and there

3

have been many Olympic champions that were once a walk on in college. Having no cap, allows teams to have the room to develop and grow young talent, and take four years to develop them properly.

I declare under penalty of perjury that the foregoing is true and correct.



Dated: Seattle/King County, Washington

January 26, 2025

Olivia Hay
NCAA ECID No. 1907637117
9201 Interlake Ave, N,
Seattle, Washington 98103

Anna Heck
4485 Canadaville Loop
Eads, TN 38028

January 18, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Anna Heck.  I am a current Division I athlete at the University of Notre Dame and my NCAA ECID number is 2106202181.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

              Sincerely,
              Anna Heck

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF ANNA HECK**

I, Anna Heck, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.     I am a sophomore on the women's golf team at the University of Notre Dame. I am a member of the Injunctive Relief Class and object individually and on behalf of the class.

2.     I've been playing golf for as long as I can remember. I played my first competitive tournament at the age of five. In high school, I was the Individual State Champion my senior year, a two-time Memphis-Area Girls Golfer of the Year, a three-time Individual Regional Champion, and a three-time Team MVP.

3.     I always knew I wanted to play golf at Notre Dame. My older sister played golf there and had nothing but good things to say about it. Notre Dame was fortunately also interested in me when I approached them during the recruiting season.

4.     When they gave me an offer, I was so excited I could barely speak. I committed during my junior year of high school, and formally signed the offer in my senior year. Notre Dame promised me an athletic scholarship and a roster spot on the golf team for four years as long as there was no misconduct on my end.

5.     My freshman year on the team went very well. I was in the starting lineup for 3 tournaments and participated in all practices and workouts. I did everything that was asked of me and more, both for the golf team, and for class.

6.      We first heard about the possibility of roster limits at the start of the Fall semester in my sophomore year, but no one thought they were a serious possibility at the time. The coach first mentioned the settlement and the likelihood of roster caps being set somewhere in the middle of the semester, but we didn't discuss them as a team until the end of the semester. That was when it all became real to us.

7.      We have nine girls on the team right now, and the roster limit for women's golf is nine. Two seniors are graduating, but with three freshmen coming in, someone will need to be cut. We're lucky to have coaches who care and don't want to cut anybody, but this process will keep going and there will be no way to avoid it. I feel sick to my stomach knowing that our team will be broken apart for no reason.

8.      Our team is very close. We care about each other a lot, and don't want anyone to be cut. We're upset to have to go into the Spring season essentially competing against each other just to stay on the team, but we don't have any other choice. Either I get cut, or someone I deeply care about gets cut.

9.      It is hard to think about. Our team culture is strong. Regardless of who gets cut, I know we will all remain very close. But with that one person not attending practice and traveling with the team, it will be much harder.

10.     While I've thought about the transfer portal, I don't think I will enter it if I'm cut. Aside from the fact that I would have to give up my friends, my school, and my studies by transferring to another team, I know how overwhelmed the portal will be with so many players being cut.

11.     This is why the roster limits are extremely unfair to high schoolers. I know many girls in high school who are good golfers, but they have not been able to get recruited because coaches are prioritizing the transfer portal or just don't have enough roster spots.

1    12.    I am lucky that Notre Dame will honor my scholarship, but I know that not all

2 other athletes are as lucky.  Some athletes are only able to attend college because of their

3 athletic scholarships, so if they're cut at a school that won't honor their scholarship, they'll

4 need to transfer or drop out of college.

5    13.    That is heartbreaking.  These roster limits go beyond sports – they affect

6 people's lives and educations.  It isn't fair at all.

7    I declare under penalty of perjury that the foregoing is true and correct.

8

Dated: South Bend, Indiana

9    January 18, 2025

Anna Heck
NCAA ECID No. 2106202181
4485 Canadaville Loop
Eads, TN 38028

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

3

**Sophia Heilen**

4306 Mountain View Dr.
Haymarket VA, 20169

January 28, 2025

**Re:** *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken,

My name is Sophia Heilen. I am a current Division I athlete at William & Mary. My NCAA ECID number is 2001774650. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

Sophia Heilen

207

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF SOPHIA HEILEN**</u>

I, Sophia Heilen, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a junior at the College of William and Mary and a member of the NCAA Division I women's swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I chose William & Mary's swim team because it was an incredible group of people who foster a culture of success and support. The team is like a family. We were all brought here to be a part of that family and were promised a spot competing and training with that family for 4 years.

3.      I work hard on the team. I swim 20 hours a week and spend many additional hours prepping for practice, stretching, dealing with injuries, and going to meets.

4.      I heard of roster cuts on the news. Our coaches told us because of the cuts, we will need to cut 4 women.  The team is incredibly stressed about the potential cuts.

5.      I fear being cut.  If cut, I would lose the sport I love and a great group of people. I will not continue my competitive swimming career if I lose my roster spot.  Instead, I'll stay at William & Mary and graduate.  I don't want to give up swimming yet.  I came here to swim for four years—not three.

6.      These roster cuts will affect every single college athlete either directly (if they are cut) or by tearing apart their team. College sports is about unity and overcoming challenges together. The cuts attempt to address the effects from the NIL lawsuit by doing the opposite of what college sports are about. Athletes are what make the NCAA. Without them there is nothing.

1

1    If cuts are necessary, the court should have a grandfather period do them of a few years to allow

2    teams to recruit smaller classes to make roster limits.

3

4        I declare under penalty of perjury that the foregoing is true and correct.

5    Dated: Haymarket, VA

6        January 28, 2025
            Sophia Heilen
            NCAA ECID No. 2001774650
7            4306 Mountain View Dr.
8            Haymarket, VA 20169

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Anya Helgerson
12303 98th Ave Ct NW
Gig Harbor, WA 98329


January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Anya Helgerson.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                      Sincerely,
                                      Anya Helgerson

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>Hon. Claudia Wilken |

## **DECLARATION OF ANYA HELGERSON**

I, Anya Helgerson, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.     I am 15 years old and am in 10th grade at Peninsula High School in Gig Harbor, WA. I have been competing as a lacrosse player since I was 10 years old and hope to compete on a Division I college team.

2.     I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college.  I therefore am a class member who could be affected by the terms of the settlement.  I object to the settlement for the reasons stated below, both for myself and for other class members like me.

3.     As I pursue my dream to play collegiate athletics, I am driven to practice and train long hours, and prioritize that goal over time with friends, part-time employment or other endeavors. I have learned a lot about myself through this dedicated effort and know it will help me become a stronger, more purposeful individual.  I am in the middle of my recruiting season and extremely concerned and anxious about how the proposed roster limits will affect not only myself but the future of women's sports. I am already reading announcements from universities who plan to cut programs, roster spots and athletics completely as a direct result of this settlement.

4.     Women's non-revenue sports, such as lacrosse, already operate under significant

financial constraints compared to their male counterparts in revenue-generating sports. Our program relies on larger roster sizes to create competitive and diverse teams, as well as accommodate the need for a robust athlete development pipeline. Reducing roster limits would severely hinder the ability of these programs to maintain competitive standards, develop athletes and foster team camaraderie. With women's lacrosse specifically, there will be a gender disparity and inequality created with men's future roster cap at 48 while women's teams will only be allowed 38 players. The NCAA's proposal unfairly undermines the core values of inclusivity and equal opportunity.

5.      For many female student-athletes in non-revenue sports, the opportunity to participate in college athletics is also a critical part of their path toward future leadership roles, including the military. I intend to pursue ROTC as a student-athlete. The proposed roster limits put myself, and others on this path, at an even greater disadvantage. For example, an athlete who is injured or has to take time off for ROTC training may find themselves at risk of losing their roster spot, despite their commitment and sacrifice. The NCAA's roster limits would mean coaches are less incentivized to hold spots for injured players or those pursuing ROTC commitments, which is particularly harmful to women's non-revenue sports where the margin for error is smaller and every athlete is critical to the team's success.

6.      The potential loss of athletic scholarships disproportionately affects women as most are non-revenue, and these sports are the most impacted by financial cuts in athletic programs. This economic burden will exacerbate and widen the equality divide in college athletics and potentially make a college education unattainable for many.

7.      Instead of limiting opportunities, the NCAA should prioritize the sustainability of athletic programs, ensuring resources and opportunities remain in place to develop both successful student-athletes and future military and social leaders.

DECLARATION OF ANYA HELGERSON
CASE NO. 4:20-CV-03919-CW

8.    I respectfully request the court consider the human impact of these roster limits and all the complexities this will entail.  Revenue sports should not, and cannot, be the only priority of the NCAA.  I hope the court will recognize the deep, lasting negative impact these cuts will have on me and my teammates, and all athletes affected.  The parties can do better and a fair solution can be found that allows us to continue pursuing our dreams as student-athletes.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Gig Harbor, WA
       January 26, 2025

Anya Helgerson

12303 98th Ave Ct NW
Gig Harbor, WA 98329

3

Alayna Henage
339 Lauren Landing
Ballwin, MO 63021


January 9, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Alayna Henage.  I am a current Division I athlete at the University of Kansas and my NCAA ECID number is 2204538652.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.


              Sincerely,
              Alayna Henage

1
2

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

3
4
5
6
7

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

**DECLARATION OF ALAYNA HENAGE**

9    I, Alayna Henage, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10    1.    I am a 19-year-old college freshman at the University of Kansas (KU).  I am

11    currently on the 2024-2025 roster of the KU Division I women's swim team.  I am a member of

12    the Injunctive Relief Settlement Class and object individually and on behalf of the class.

13    2.    I worked hard to swim to the best of my ability since I started swimming at 6

14    years old.  I began swimming competitively at 9 years old.  I have trained year-round, up to 6

15    days per week, for the past 10 years.

16    3.    I also worked hard to balance my intense swimming practice schedule with my

17    academic work.  I graduated from high school *summa cum laude* and was an Honor Roll

18    recipient.  At the same time, I competed on the national level for the Parkway Swim Club and

19    Parkway South High School.  I was on the team that won my school its first ever Missouri state

20    high school championship in back-to-back years (2022 and 2023).  After getting second place in

21    the 100-meter breaststroke in my sophomore and junior years, I won the individual state

22    championship in the 100-meter breaststroke and 200-meter individual medley as a senior.  Those

23    wins were my greatest accomplishments.

24    4.    Just before I started my junior year in high school, the KU women's swim coach

25    invited me to visit and meet the team.  I instantly fell in love with the team's positive chemistry.

26    Afterwards, the coach offered me a four-year athletic scholarship starting in 2024-2025.  I had

27    been casually looking at about five other colleges, but since KU was my top choice, I didn't need

28    to apply to other schools.  I was ecstatic and committed to KU in October 2022.

1

5.      I also earned an academic scholarship that covered the other half of tuition that was not covered by the athletic scholarship.  I was promised that so long as I maintain a 3.25 GPA, I have a full ride to KU from 2024-2028 with both scholarships.

6.      As soon as I started at KU in August 2024, I was determined to be the best student and athlete I could be.  I dove into the intense training schedule, which involves nine practices a week, six days a week.  There are multiple days where we practice in the early morning and in the afternoon.  I initially had a tough time balancing the demanding practice schedule with my coursework, but I adjusted quickly.  I ended up with a 4.0 GPA in the Fall 2024 semester.

7.      At first, things were great.  I was one of 34 swimmers at the beginning of the year.  The positive team environment was incredible, and everyone was so close and supportive.  That team spirit kept me going through the tough period of adjusting to the rigorous practice schedule and new school environment.

8.      I never thought that my dream could be ripped away so soon.  In August, the coach announced that after the mid-season meet in November, he would cut four players from the team to meet a new roster limit of 30 players for the women's swim team, but that freshmen would be safe for this round.  After he cut two seniors, a junior, and a sophomore, he told the team that he would have to cut even more of us, freshman included, to make space for nine new freshmen who had already been recruited for next season. These cuts are all due to the anticipated new roster limits that are a part of the proposed settlement.

9.      Soon after, I had a personal meeting with our coach, who told me that I am likely to get cut unless I pulled my race times up relative to my teammates.  I was devastated.  I asked about that would happen to my athletic scholarship, and he said he didn't know.  He only told me that he would help me through the transfer portal.

10.      I'm not ready to decide whether I should transfer to another school so I can still compete.  I am sick to my stomach.  It is not fair that I am feeling pressure to leave KU after only four months.  I barely had a chance to adjust to the new team and coaching style, and now I may be cut before the end of my freshman year.

11.      The pressure to make the right decision is immense.  It's a huge gamble to even

2

try the transfer portal. I'd only have a few weeks to decide to go to another school, and I don't know if I jeopardize my scholarships just by applying. Even if I could transfer, I'd likely forfeit my scholarships. I'm unlikely to get anything like the same offers at another school.

12. The financial burden of losing my scholarships is huge. On the one hand, I can't let my parents down by going to a school without a scholarship just so I can swim on a college team. On the other, there is nothing I have wanted to do more than swim in college. All I want to do is stay on the team and finish out my four years at KU like I was promised.

13. The fear of getting cut from the team has infected the mood at KU, too. Our healthy sense of competition has suddenly become cutthroat. I loved the KU women's swim team because we were positive and collaborative, but the atmosphere is toxic now. Everyone is on edge. We've become obsessed with our race times compared to everyone else on the team. No one talks to each other about how they plan to navigate the new cuts, but the topic is the elephant in the room at every practice and meeting. The team atmosphere went from supportive to tense and suspicious.

14. I am terribly stressed out. I feel like the weight of the world is on my shoulders, and I fear the mental pressure will affect my athletic and academic performance in the new semester.

15. When I was recruited in my junior year of high school, I didn't imagine that my freshmen year would be a kill-or-be-killed competition. The worst part is that the roster limits seem to be completely arbitrary. I don't understand why there are roster limits at all, or why they must become effective so soon. Even our coach thought that the limits would be phased in until the KU athletic department told him to make the cuts this year.

16. I worked incredibly hard for years to get here. I just want to keep what I was promised two years ago. It isn't fair to rip that away now.

3

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Ballwin, Missouri
January 9, 2025

_____
Alayna Henage
NCAA ECID No. 2204538652
339 Lauren Landing
Ballwin, MO 63021

Avery Henage
339 Lauren Landing St.
Ballwin, MO 63021


January 21, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Avery Henage.  I am a high school sophomore and soccer player.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Avery Henage

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF AVERY HENAGE**</u>

I, Avery Henage, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a high school sophomore and soccer player.  I hope to be recruited to compete on a Division I college team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I began playing soccer when I was four years old and started playing at the club soccer level when I was eight.  I currently play for St. Louis Development Academy in the Girls Academy League, which is a national level girls league.  This level of play requires three practices per week, and we travel throughout the country to compete against other high-level club teams.  I compete at this level because it is my dream to play college soccer at the Division I level.  Because I travel throughout the country, I sometimes have to miss social activities such as school dances and multiple sporting events.  But the game of soccer is my passion and I love competing, so it is worth the sacrifice.

3.      This winter, my team and I competed in the Girls Academy College Showcase where hundreds of college scouts were in attendance.  We ended up winning our age group bracket, which garnered the attention of many Division I coaches.  Due to NCAA recruiting rules, I cannot speak to coaches until June 15th, 2025; but I am very excited for the opportunity to go through the college recruiting experience soon.

4.      However, I am hearing a lot of information on the effects the proposed NCAA roster limits will have on the college recruiting process; and I am very worried these limits will affect my chances to play Division I soccer.  If college coaches are forced to limit their roster

1

sizes, there will be a trickledown effect to recruiting. Coaches will be forced to live within arbitrary limits and if their rosters are full, they will be recruiting less high school students and recruiting more college aged students who are transferring through the portal. Or, they will be looking for older athletes from other countries.

5.    I have already heard of several current high school seniors and juniors getting the offers to play in college pulled due to these limits. It's heartbreaking to see players' dreams ripped from underneath them. I'm very concerned this could happen to me and my teammates.

6.    All this uncertainty is causing stress. I feel very on-edge when I know college scouts are watching me play because the entire recruiting process has become more cutthroat.

7.    I don't understand the reason for these limits being a part of the NCAA NIL lawsuit. Most soccer players just want to play soccer in college and receive an education. We will not be in it to earn money, we just want to continue playing the sport we love at the college level. The only sports that generate huge amounts of money for NIL are football and men's basketball. The non-revenue generating sports at colleges will be severely impacted with roster and budget cuts which will impact those sports or eliminate them at certain colleges.

8.    If I am not able to play soccer in college, I will be crushed. I've worked very hard for many years to make this dream come true. My parents spend a lot of money for me to travel and play club soccer, with the understanding that I could receive an athletic scholarship to play in college. If I am not able to play in college, I will feel bad that my parents spent so much money helping me chase my dreams.

9.    I hope something will change with these roster limits so that many of the current and future athletes that have been working so hard can live out their dream to continue their sport in college.

1

I declare under penalty of perjury that the foregoing is true and correct.

2

Dated: St. Louis County, MO

3

January 21, 2025

Avery Henage
339 Lauren Landing St.
Ballwin, MO 63021

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Avery Henke
934 McKinley Ave.
Auburn, AL 36830

January 20, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Avery Henke. I am a current Division I athlete at Auburn University and my NCAA ECID number is 2106194071. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                 Sincerely,
                                 Avery Henke

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF AVERY HENKE**</u>

I, Avery Henke, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a swimmer and sophomore at Auburn University.  I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.      I began swimming at a very young age, but the sport became my life once I got to high school and realized I wanted to swim in college.  Teurlings Catholic High School had a very small swim program.  Yet even though I was very good at other sports, I sacrificed joining my friends at packed football stands and baseball fields to devote my life to swimming.  I practiced every day, including twice a day, three times a week.  Although my rigorous practice schedule prevented me from having a "normal" high school experience at times, it was worth it because of how much I love my sport.

3.      In high school, I won numerous state championships and to this day hold numerous team and state records, in addition to being the fastest swimmer in Teurlings Catholic High School's history.  I was also the No. 1 recruit in the state of Louisiana at the time I was recruited.

4.      This greatly benefited me in the recruiting process, and I was very fortunate to have a lot of schools reach out to me.  I spoke with many coaches and received offers from many schools.  When I spoke to coaches, the conversations focused not only on swimming, but also logistics and personalities.  I grew up a lot during the recruitment process.  Deciding where I would be for the next 4-5 years of my life at the age of 16 was a tough decision.

5.      I ultimately went on three visits, but as soon as I visited Auburn, I knew I couldn't

1

1   live without it.  It had the best culture, people, and school spirit, and I knew I'd fit in very well.

2       6.    Since I arrived on campus, I've made many friendships and have learned a lot

3   about myself.  My first year was a blast.  The team and I got along so well, and I loved every

4   minute of practice and competition.  I didn't think anything could derail my dream.

5       7.    When I first heard about the roster limits in late summer 2024, and I didn't know

6   much other than the fact that Grant House, who is also a swimmer, was filing a lawsuit against

7   the NCAA.  I only realized the roster limits would seriously impact me when the SEC announced

8   a further cut to the NCAA roster limits with a 22-man roster.

9       8.    Since then, my coaches haven't told us any specifics about who is getting cut and

10  when, but they have been encouraged not to let the possibility of the cuts affect our training or

11  meet performance.  I don't know how that's possible.  We are all impacted with fear and

12  uncertainty.  It seems like our coaches are planning for the worst while hoping for the best when

13  it comes to the cuts, because there is still a lot of ambiguity.  No one knows anything, which

14  means no one can plan for anything.

15      9.    As far as team culture goes, we have been supportive of one another, but all of us

16  are distressed about the possibility of losing some of our teammates next year.  We know some

17  people are 100% safe, but are equally aware that there are people who will get cut if these roster

18  limits go through.

19      10.   I am afraid to get cut from the team, not just because I love it, but also because it

20  will put me and my family in a tough position financially.  I am fortunate to have a partial

21  academic scholarship, and I currently receive numerous athletic benefits that I would lose if I

22  were cut.  Right now, I can eat in the athletic cafeteria, which saves me a tremendous amount of

23  money because it provides free meals Monday-Friday.  I also get free healthcare from the athletic

24  clinic, where we can go for urgent care needs like X-rays. Additionally, athletes get access to

25  free tutoring, world-class athletic facilities, and various school sporting events.  Having access

26  to this was what I was promised when I committed to Auburn, and part of the reason I came.

27      11.   I am also sad about the possibility of being cut because I feel like I haven't had

28  the chance to reach my full potential on the team.  I know I bring a lot of value to the team and

I'm a great teammate, but I still have room to grow in the pool. In swimming, athletes tend to reach their peaks in their junior and senior years, because as underclassmen, they're still adjusting to life as a college student and athlete.

12. No one from my team has transferred yet, but I know the portal is getting oversaturated with swimmers trying to find another team because of the roster limits. As much as I don't want to be anywhere but Auburn, if I am cut, I may have no choice but to try my chances in the transfer portal because no matter what, I do not want to retire from swimming.

13. My main concern about the roster limits in this settlement is how it will affect the whole sport of swimming, especially in the United States. Our universities provide amazing opportunities that aren't available in a lot of other countries, which is why we have so many international students here in the United States. In the swimming world, developing swimmers will lose the ability to grow into top athletes, which will hurt the entire sport.

14. Some of the fastest swimmers at Auburn were not as strong in high school, but they were able to exceed everyone's expectations once they got to college. If roster limits are approved, many swimmers will be discouraged from even trying at younger and younger ages. I'm afraid many young people will just quit the sport altogether instead of competing in an even more vicious environment, where you have to swim for your life to survive. That's not what college sports should be about.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Auburn, Alabama
        January 20, 2025

_____
Avery Henke
NCAA ECID No. 2106194071
934 McKinley Ave.
Auburn, AL 36830

Victoria Henkel
509 N. Gertruda Ave. #1
Redondo Beach, CA 90277


January 29, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:


My name is Victoria Henkel.  I am a current Division I athlete at Long Beach State University and my NCAA ECID number is 2208643161. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                              Sincerely,
                                              Victoria Henkel

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF VICTORIA HENKEL</u>

I, Victoria Henkel, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I grew up in Redondo Beach, California, and just finished the first semester of my freshman year at Louisiana State University in Baton Rouge, Louisiana. I have been a member of LSU's Division I beach volleyball team and thus am a member of the class of student athletes in this lawsuit. I am submitting this declaration to object to the roster limits that are included in the proposed class settlement.

2.      I started playing indoor volleyball when I was 9 years old and started competitive beach volleyball when I was 11 years old.

3.      I soon focused on beach volleyball and quickly improved. In tenth grade, I joined a nationally ranked beach volleyball club team and was selected as a member of the U.S. National Team Development Program.

4.      The Junior Volleyball Association named me "Best of the Beach" during my junior and senior years and my club team won the national championship in both of those years. My senior year, I played on the top court for my club team and was recognized as a First Team All American.

5.      I started to be recruited by LSU and several other college teams in the summer following my sophomore year of high school. I visited the LSU campus during my junior year and verbally committed to play on their Division I Beach Volleyball team shortly thereafter. I signed my formal letter of intent to play at LSU on signing day during my senior year in November 2023.

1

6.      I turned down offers from other programs to play at LSU. I wanted to challenge myself and play on the best team I could. LSU is consistently one of the top-ranked beach volleyball teams in the country, and I knew the coach from the National Team Development Program. It seemed like the perfect place to take my game to the next level.

7.      I first heard about the proposed roster limits soon after starting at LSU. In September 2024, about a month after starting at LSU, during a team meeting our coaches told us about the roster limits being proposed. They said our team was over the limit and that they would need to cut existing players.

8.      This truly changed everything for me at LSU. I no longer could concentrate on enjoying my college experience nor being a great student. Instead, it seemed like every moment I was being judged.   This changed my experience at LSU to the negative. I became unhappy and disillusioned with the whole experience and became depressed.

9.      I worked extremely hard through high school to get to Division I. Roster sizes had never been limited before. When I was being recruited, I was offered and accepted a roster spot, but now a spot for me or my teammates was being taken away because of some lawsuit settlement that had nothing to do with us. This doesn't seem fair, and it seems wildly arbitrary.

10.      My unhappiness led me to the transfer portal.  I am fortunate that I was able to transfer to Long Beach State, where I will play on their beach volleyball squad this spring. Long Beach's team, however, currently has more athletes that are allowed under the roster limit. The coach will have to make cuts after the spring season to ensure compliance with the roster limits next year if this settlement is approved.

11.      These roster limits are harmful and nonsensical. We should be supporting more student-athletes in Olympic sports, not fewer. Further, it seems like the settlement does not understand the format of certain sports. For example, beach volleyball is played in pairs. An even-numbered team allows every player to participate in a full-team scrimmage because every player has a partner. Yet the settlement sets the roster limit for beach volleyball at 19 student-athletes—leaving one player as the odd person out. This is just another way that this makes no sense.

12.     I feel lucky that I was able to transfer to a new team and be close to home and happy again. Many of my friends and teammates will be limited from teams in the future. I heard the number of girls who will lose a place to play next year to be at 75!  75 girls will no longer be able to chase their dreams! And for what? Because we were swept up in some larger lawsuit settlement which has nothing to do with us. A larger lawsuit settlement that has to do primarily with Football and Basketball and nothing to do with us! So why are we being harmed by it?

13.     These roster limits only serve to hurt student-athletes, and I object to them being adopted.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Redondo Beach, California

January 29, 2025

Signed by:

*Victoria Henkel*

041754A4B5244C9...

Victoria Henkel
NCAA ECID No. 2208643161
509 N. Gertruda Ave. #1,
Redondo Beach, CA 90277

Abigail Hood
287 Pheasant Hill Drive
Rockwall, TX 75032

January 30, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Abigail Hood.  I am a current Division I athlete at Texas A&M University and my NCAA ECID number is 2202434924.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

               Sincerely,
               Abigail Hood

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF ABIGAIL HOOD**

I, Abigail Hood, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Freshman at the Texas A&M University and a member of the NCAA Division I Women's Swimming and Dive team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I practiced multiple times a day, 6 days a week, in high school to have the chance of being a Division I college athlete.  I had to miss other activities and social events because of my dedication to swimming.

3.      I placed 3rd in the Texas UIL 6A 100 Butterfly at the state meet, setting a school record in the process. With my club team I achieved a U.S. Open cut, multiple Junior National cuts, and many Futures cuts.  I am a 4-time NISCA All American.

4.      During recruiting, I chose Texas A&M over other schools for its high level of competition in the Southeastern Conference (SEC), the fact that the coach had a history of developing swimmers to reach their full potential, the quality of Texas A&M University, and the proximity to home.  The coach promised that if I hit certain times in the pool, I would receive more scholarship money.  He emphasized that my initial offer could increase as I progressed.

5.      Ultimately, I turned down an offer of a 90% scholarship to compete for a different D1 school to accept the opportunity to swim at Texas A&M.  I was attracted to the higher level of competition and room for development, even though my initial offer was considerably less.  I knew I could work hard to earn more scholarship money.

6.      I learned about the roster limits in the *House v. NCAA* settlement from news

1

articles.  Ten girls were cut last summer when a new coach arrived.  Currently, we will have 35 women on the roster in the fall, which means 5 people will need to be cut under the proposed limits.

7.    This is taking a toll on the team.  Because of the cuts last summer, we all feel the uncertainty of what is coming with new freshman coming in the fall.

8.    If cut, I will lose my current scholarship, the food provided in the athlete dining hall and team room, medical care I am currently receiving, tutoring, access to athlete-only facilities, and counseling.

9.    Because of the pending limits, I am considering what it may look like to either stay at my school and finish my degree or transfer to another school to compete.  Unfortunately, I had to redshirt due to an injury, so the chance of transferring is low.  If I am cut from the team, I will likely be forced to retire from swimming long before I was led to believe when I committed to swim at Texas A&M.

10.    I do not agree with imposing roster limits without consideration of the existing student athletes who will be negatively impacted.  The roster limits will cause tremendous harm on thousands of athletes.  I ask that you do not approve the settlement as it is written.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Rockwall, Texas

January 30, 2025

Signed by:

_6648701FAF0548A._

Abigail Hood
NCAA ECID No. 2202434924
287 Pheasant Hill Drive
Rockwall, TX 75032

2

DECLARATION OF ABIGAIL HOOD
CASE NO. 4:20-CV-03919-CW

Avery Hudzik
2631 Normandy Rd,
Charlotte NC 28209

January 21, 2025

  Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Avery Hudzik.  I am a current high school student at Charlotte Country Day School and a swimmer.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

         Sincerely,

         Avery Hudzik

**234**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF AVERY HUDZIK</u>**

I, Avery Hudzik, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am 14 years old and am in 8th grade at Charlotte Country Day School. I have been a competitive swimmer since I was 5 years old and hope to swim on a college swim team. I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college.  I therefore am one of the class members who could be affected by the terms of the settlement, and I object to the settlement for the reasons stated below, both for myself and for other class members like me.

2.      I am a member of the Mecklenburg Aquatic Club Swim Club,  the top age group club in the country made up of swimmers from North and South Carolina. We swim 52 weeks per year, 7 days per week, sometimes twice per day.  I spend more time on my sport than almost anyone I know, except for my friends on the swim team.  It's a lot, but I do it because I love it and for what it teaches me about how to be a better teammate and overall person. I also know that this is the work that's needed if I want to swim in college.

3.      My favorite events are the 100 free and 200 free.  Just this year I achieved the milestones of swimming under 55 seconds and 2:00 minutes respectively in these events and qualified for 10 events at the State Championships and 8 for southern sectionals.

4.      My mother was a competitive runner in college.  She often talks about how

1

important her college athletic experience was to her; specifically how much the discipline and structure helped her excel in her studies, the lifelong friends she made, and she insists that her achievements in college athletics was critical in helping her secure her first job at a top consulting firm.

5.     Sure, it would be great if I were to secure a scholarship, but that's not my ultimate goal, I simply want to be able to continue my swimming career into college, so that I can continue to achieve both athletic and academic success, make great lifelong friends like my mom did, and best prepare myself to excel post college.  I am worried that if colleges have a limited number of spots on the team that I either won't have the opportunity to swim at all, or that I may find myself without a spot if I get injured or sick, or that my friends and teammates might have that experience.  It would honestly be devastating.

6.     I don't know if a judge will listen to an 8th grader, but I am submitting this because I hope so.  Roster limits could have a big effect on the future for my teammates and me, and it's a bad idea.

I declare under penalty of perjury that the foregoing is true and correct.

Charlotte, North Carolina
January 21st, 2025

*Avery Hudzik*
_____
Avery  Hudzik
2631 Normandy Rd.,
Charlotte NC 28209

2

Eleanor Hughes
Defoe-Graham Hall
901 Hitt St
Columbia, MO  65201-52088

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Eleanor Hughes.  I am a current Division I athlete at the University of Missouri and my NCAA ECID number is 2303813992.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                           Sincerely,
                                           Eleanor Hughes

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF ELEANOR HUGHES</u>**

I, Eleanor Hughes, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Freshman at the University of Missouri (Mizzou) and am a member of the NCAA Division I women's swimming and diving team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Throughout high school, my aspiration for college was to secure an opportunity to participate in a high-level Division I swim program.  Recognizing the arduous path to achieving this goal, I realized the need for increased dedication and a commitment to consistent practice.  My club team's rigorous schedule entailed practicing both before and after school, resulting in continuous 12-hour days spent at the pool and in class.

3.      Each week, I dedicated over 20 hours to practice, while keeping up with my academic responsibilities, including college-level courses, and attempting to maintain a social life.  Sacrifices to pursue my dream included missing crucial academic tests in order to participate in swim meets, forgoing summer camp with friends to continue improving my capability to compete throughout the year, and deviating from the typical high school experience to prioritize my training.  My peers often struggled to comprehend my absences from various activities and the significant time I spent at the pool, all driven by my singular objective of competing for a Division I team.

4.      My high school and club swimming teams were both highly competitive.  During my high school swimming career my team won two out of three state championships. Personally, I was a key contributor in a state championship relay while establishing a new state

1

record.  I placed second and sixth in the MN high school State Championship meet and was an All-American.

5.      On the club team, I was an individual state champion three times while achieving three state championships within relays.  I placed sixth in the nation on a relay and eighth in the nation individually.  These achievements throughout high school helped me get recruited by teams I had worked so hard to be a part of, and ultimately led me to The University of Missouri.

6.      In my recruiting experience, I sought a competitively high-level swim and dive team while also considering a school that aligned with my long-term personal interests.  During conversations with coaches, I prioritized the team's culture and its emphasis on valuing each swimmer as an individual beyond their athletic abilities.  Having come from two teams that prioritized these qualities, I recognized the significance of these attributes in a team environment and sought to find such a program in a competitive college environment.

7.      In my Junior year, I verbally committed to a school and swimming program that was well known and would have allowed me to serve my personal interests as well as my country.  However, upon deep reflection and continued success in my swimming and academic pursuits, I decided to shift my plan in March of my senior year, essentially restarting the recruiting process.  At this stage, most coaches had finalized their recruiting classes and were unlikely to add new recruits.  However, I remained steadfast in my pursuit of a competitive program that would complement my personal interests while providing a required amount of financial support.

8.      While I initially thought The University of Missouri would be an ambitious step, the coaching staff extended an invitation to be a part of their swim and dive program and provided the financial support that my family and I required at that time.  When I made the decision to swim at Mizzou, roster reductions were not a concern, and I was very excited to see how much I could grow and contribute to the team for the next four years.  The coaching staff recognized my potential and anticipated that their program would enhance my performance, and I proceeded with an expectation that I would have the opportunity to compete with the team throughout my collegiate career.  I was particularly drawn to the team culture that the coaches

at Mizzou had established, particularly emphasizing a focus on each individual as a person, rather than solely as their capability as a swimmer. Despite a short time of recruitment, the coaches were very welcoming, very hopeful and they provided me with a financial scholarship I needed to attend college.

9.     Within a few weeks of my time swimming at Mizzou, I gained an initial knowledge of potential roster limits due to Southeastern Conference-imposed (SEC) restrictions stemming from the *House vs. NCAA* settlement. While I had a basic understanding of some of the dynamic environment within the NCAA, I learned more as I engaged in discussions about it with my teammates, which prompted me to conduct further research as I began to become concerned about my ability to continue increasing my swimming capabilities and contributions at Mizzou.

10.     In late November 2024, our coaching staff held separate meetings with the women's and men's teams to discuss roster limits. This was the first time the team received in-depth information from the coaching staff regarding the potential impact on the 2025 spring and fall seasons.

11.     For the majority of the year, we were aware that these roster limits would significantly affect the men's program. However, it was during this meeting that we learned that the limits would also extend to the women's program. Currently, I understand the women's cap will be 30 team members under the *House* Settlement, while the men's team will be 22 under the SEC's proposed additional limits. If this is indeed the final decision for SEC swim and dive teams, this will require critical cuts for both the women's and men's programs. Furthermore, we were informed that additional cuts may be required beyond those necessary to reduce the number of athletes on the team in order to facilitate the recruitment of transfers from other programs.

12.     Presently, I find myself in a challenging position on the team, with significant uncertainty about my future. I was involved in a severe accident early in November of my first season (this year), which has impacted my improvement and performance as I was prevented from training for approximately 6 weeks. Prior to the accident, with the help of the high-level training from Mizzou, I was on track to achieve one of my best seasons and contribute

substantially to the team's success.  However, the accident hindered my progress.  I am training and competing again, and I continue to make improvements just as I had been making prior to my accident.  However, with coaches needing to make roster decisions based on NCAA and SEC limits, I now believe my position on the team – and potential to continue to improve and be both a significant contributor at Mizzou and within the SEC – is in jeopardy.

13.     Given the implementation of roster limits, I am concerned about the possibility of being cut due to these restrictions.  If the limits were not in place, with the help of the Mizzou coaching staff and program, I could focus on continuing to regain my competitive fitness level and improving my performance both in and out of the water.  However, with roster limitations, I now feel a pressure to perform at an upperclassmen level in order to secure a position on the team.  ***As the NCAA prioritizes three important principles – academic success, student-athlete well-being, and fairness – I feel compelled to share that the House vs. NCAA settlement (and subsequent SEC) roster limitations are not reinforcing those priorities for me.***

14.     As for my teammates, my closest friends are also at risk of being eliminated from the roster.  In a relatively short period, I have forged some of my closest friendships with teammates on this team.  As a class, we have developed a unique and exceptionally close bond.  The roster limitations not only have a profound impact on the individuals who are eliminated but also affect those who remain.  The newly formed team will be required to construct a new team culture and values, in the midst of potentially lost and cherished friendships, each of which are essential for our team to achieve success.  Together, we have established one of the most robust team cultures this program has witnessed in recent years.  Each member recognizes the significance of our team culture in our performance, and we firmly believe that the absence of this rich culture would have a substantially detrimental effect on the team's performance.

15.     The topic of roster limitations has had a significant psychological impact on me and my teammates over the past few months.  We have not only had to balance the mental demands of our sport, academics, and adjustment to college life, but we have also grappled with substantial stress, sadness, and mental challenges stemming from roster limits.  As a freshman class, we have forged a strong bond and engaged in numerous conversations and shed tears

4

contemplating the possibility of being cut or the potential trajectory of our class next year. We have approached every dual meet and midseason competition with the apprehension that underperformance may result in our removal from the team.

16.     Even during practices, I have harbored the fear that subpar performance could jeopardize my position. These concerns have engendered a substantial mental strain and burden that would not have arisen during our freshman year had this topic not been persistently discussed within the team. Furthermore, this situation has adversely affected the team dynamic, fostering a competitive environment where individuals prioritize securing a spot on the team rather than fostering camaraderie and encouraging teammates to enhance their performance so that the team can improve.

17.     If I were to be cut from the swim team next year, I would suffer significant consequences. The most detrimental impact would be the loss of my passion for the sport. Being removed from this program that has been my dream throughout my high school career would be devastating. I feel I would lose my excitement for the sport because I would no longer have the team I come to know and cherish by my side every day. I would also miss the coaches who have become close friends and mentors, and the determination that has driven me to compete in swimming since I was seven years old.

18.     Furthermore, I would unexpectedly lose financial aid that the team provides me with. This aid covers essential expenses such as tuition, housing, and other living costs. Additionally, I would lose the SEC academic incentive of $3,000 for a 3.5 GPA or higher, which helps me cover my tuition, housing, and other important aspects of college life.

19.     The athlete dining hall, which provides us with affordable meals, would also be a loss. I am currently in the process of signing a three-year housing lease, but my roommates and I are uncertain about our future at the school. Therefore, we are in a state of uncertainty due to the need to secure housing while not knowing the financial impact we may incur if we are no longer swimming with the program or attending Mizzou due to financial hardships encountered as a result of no longer swimming.

20.     My father has been unemployed for over a year, and the financial aid provided

DECLARATION OF ELEANOR HUGHES
CASE NO. 4:20-CV-03919-CW

by the swim team has significantly helped my family afford the cost of attending college. Without this aid, I would not be able to be a student athlete at Mizzou. Consequently, if I were no longer a part of the swim team, my family would not be able to afford attending the university, and I would likely have to relocate to a different school to pursue my college education.

21.    In essence, the consequences of being cut from the team would be far-reaching and detrimental. I would lose my identity in the sport, as a significant portion of my success has come from swimming. If my four years of swimming at Mizzou were to be shortened due to an unforeseen roster reduction that I didn't know about prior to committing to the program, I would be disheartened and lose the love and purpose that drive me as an athlete.

22.    The list of potential losses is extensive, encompassing aspects such as my purpose, identity, financial stability, college education, friendships, coaches, academic incentives, and many more facets of this sport.

23.    Over the past two months, I have been contemplating the potential consequences of being removed from this program because of roster cuts. Each day, I find myself considering various scenarios. While I have contemplated the possibility of entering the transfer portal, I had not anticipated the need to transfer schools during the recruitment and consideration process. This school and team hold a special place in my heart, and I cannot envision transitioning to a completely different team culture and school environment.

24.    Our coaches have indicated that they will inform us of any potential risks of being cut by the end of the season. In such a scenario, they recommend that we enter the transfer portal as a precautionary measure. However, if we believe we're at risk and wish to maximize our ability to speak with other coaches and immediately choose to consider other programs via the transfer portal, our scholarship at Mizzou will be terminated, regardless of whether we remain with the team in subsequent years or not.

25.    If I were to be cut this upcoming season, I am uncertain whether I would continue swimming in college due to the loss of the determination and passion I have for this sport.

26.    If I were to enter the transfer portal, I would encounter a competitive pool of fast swimmers, and I believe it would be challenging to find a similarly high-level Division I program

1  that would provide a similarly rich experience that I anticipated and committed to at Mizzou. I

2  also believe the roster limitations at each school going forward would have a significant impact

3  on the availability of spots for transfer students, thus limiting my ability to join another team.

4      27.    I firmly believe that implementing these roster limits would have not only a

5  negative effect on me personally, but they would have a profoundly detrimental impact on the

6  sport of swimming as a whole. Such restrictions would fundamentally alter the image of

7  collegiate swimming, thereby diminishing the opportunities available to swimmers of all levels.

8  From the viewpoint of a high school swimmer, these limits would significantly curtail their

9  chances of pursuing swimming in college due to the cascading effect they would have on every

10  NCAA Division and every institution involved.

11      28.    The unintended consequences of roster limits are far reaching. Therefore, I ask

12  that the Court reconsider and remove mandated roster limits entirely. At minimum, I ask for

13  roster limits to be phased in over time. This will allow athletes – like me – who have already

14  entered collegiate programs to continue our participation in those programs. We committed to

15  programs and a path for our future under very different circumstances without the knowledge

16  that such drastic roster decisions would impact our experience.

17      29.    Eliminating or phasing in roster limits over time would allow me, and thousands

18  of others like me, to proceed with a collegiate athletic experience that fulfills the NCAA's

19  principles that prioritize not only academic success, but student-athlete well-being and fairness.

20      30.    Thank you for your consideration.

21      I declare under penalty of perjury that the foregoing is true and correct.

22  Dated: Columbia, Missouri

23      January 26, 2025

24                  Eleanor Hughes

25                  NCAA ECID No. 2303813992
                Defoe-Graham Hall

26                  901 Hitt St
                Columbia, MO  65201-5208

27

28

DECLARATION OF ELEANOR HUGHES
CASE NO. 4:20-CV-03919-CW

John Ingram
2103 Cypress Point West
Austin, Texas 78746


January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is John Ingram.  I am a current Division I athlete at Vanderbilt University and my NCAA ECID number is 2303800157.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                     Sincerely,
                                     John Ingram

1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

2

3

4

5

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

6

7

8

**DECLARATION OF JOHN INGRAM**

9

I, John Ingram, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10

1.    I am a tennis player at Vanderbilt University.  I am a member of the Injunctive

11

Relief Settlement Class, and I object individually and on behalf of the class.

12

2.    I began playing tennis when I was seven years old.  It has always been a huge

13

part of my life.  I played for my middle and high school teams, and I also trained at the Austin

14

Tennis Academy.

15

3.    My hard work has resulted in significant accomplishments.  In high school, I was

16

ranked first in the nation in 18&U doubles.  I finished second at a Level 1—the highest level—

17

junior tennis tournament.  I made it to the quarterfinals of the Boys 18&U National Hard Court

18

Championship tournament in doubles.  I was consistently ranked as a top five tennis player in

19

Texas.  My high school team that I captained won the state championship.   And I went

20

undefeated in matches my senior year of high school.

21

4.    Playing college tennis has been my goal for a long time.  I started talking to

22

Division I coaches during my junior year of high school, after I had achieved a string of great

23

results.  Coaches suggested that they would have better opportunities for me if I joined as a class

24

of 2024 recruit, rather than a class of 2023 recruit.  They explained that this was because Covid

25

had given many college players a fifth year of eligibility, so they were staying on teams for one

26

more year and there would be more openings in 2024.  So, I took a gap year after I graduated

27

from high school in 2023 to work on my game and to improve my recruitment options.  I was

28

rated a five-star recruit and had multiple offers, including some with substantial scholarships.

1

DECLARATION OF JOHN INGRAM
CASE NO. 4:20-CV-03919-CW

5. During my gap year, I began speaking with the coach at Vanderbilt. I liked the Vanderbilt coach immensely, and my Austin Tennis Academy coaches highly recommended him. The coaching staff at Vanderbilt watched me play at a few tournaments during my gap year and offered me a spot on their team and a partial academic scholarship. My scholarship was guaranteed for my four years of college.

6. The coaching staff really believed in me. While they told me I might not see match play right off the bat, they believed that I could develop into a top player. They even told me that they could increase my scholarship amount if I developed the way they anticipated. So, even though Vanderbilt did not offer me the most scholarship money out of the schools who recruited me, I decided to accept the offer.

7. It didn't hurt that Vanderbilt is a top-notch school. Academics are important to me. I want to make sure that I am getting a high-quality education while I work at tennis. Vanderbilt made it so that I didn't have to choose between a fantastic education and a wonderful tennis program. The SEC is the most competitive tennis conference, so I knew I would grow on the court over 4 years. But I also knew that Vanderbilt would push me in the classroom.

8. So far, my experience at Vanderbilt has not disappointed—except for the potential roster limits. I have become close friends with all my teammates. The team has a great culture where we all support one another, on and off the court. My roommate is also on the tennis team, and we have become fast friends. Off the court, I am really enjoying my coursework and I am succeeding academically with a 3.8 GPA.

9. I decided to attend summer school at Vanderbilt before starting my freshman fall. One morning, I was eating breakfast and looking at Instagram as usual. A post came up on my Instagram that talked about the House settlement and the potential imposition of roster limits. I did not think too much of it at the time.

10. But roster limits did not go away. In October 2024, the coaches told the team that the House settlement had been preliminary approved and that the roster limits could go into effect next year. The head coach told us that he did not plan to make decisions about cuts until he had to, but that, if the limits went into effect, he would be cutting members of the team.

1 Vanderbilt currently has 15 players on its roster.

2   11.   Things changed in December 2024.  My coach attended the all-coach SEC

3 meeting, and the SEC told him that the roster limit for men's tennis would be nine players.

4   12.   After my coach returned, he called me for a meeting.  He told me about the new

5 potential limit of nine players.  And he told me that he did not envision keeping me on the team

6 if the roster limits went into effect.  He encouraged me to enter the transfer portal as soon as

7 possible and told me he would lend me his full support in trying to find another roster spot.  I

8 entered the transfer portal shortly thereafter.

9   13.   These roster limits are not fair.  I feel that I fell behind my peers because of the

10 NCAA rules governing gap years and so am now more likely to be cut.  The NCAA does not

11 allow players on a gap year to play in a tournament from March of their gap year until they are

12 fully enrolled at a university.  So, from March 2024 until August 2024, I was prohibited from

13 playing in matches.  That was fine because I was already recruited to Vanderbilt and did not

14 think I would have to get recruited again next year.  As a result of the gap year, the coaching

15 staff at the schools I am looking at have less recent data about my performance and my potential

16 for improvement and so my recruiting options are more limited now than they were before.

17   14.   The potential for roster limits has greatly impacted my teammates, too.  They are

18 nervous about the potential cuts.  Many of them struggle to practice because they are so worried

19 about their futures at Vanderbilt.

20   15.   I have worked incredibly hard to get to the top level of tennis.  I am a very strong

21 doubles player, and Division I tennis develops some of the best doubles players in the world.  I

22 do not want to lose my opportunity to work on my game while getting a great education.  Getting

23 cut from the team poses a hard choice: quit playing college tennis and stay at Vanderbilt where

24 I am very happy, or transfer to another school and start all over and continue playing tennis.  I

25 don't want to be forced into making such a big decision by arbitrary NCAA rules.

26   16.   Further, tennis has been my identity for my entire life.  If I am cut from the team

27 because of the limits, but choose to stay at Vanderbilt, I will have to rearrange my entire life.

28 Doing this to tennis players is ripping their entire worlds apart.  Many athletes' best friends will

3

1  be cut from teams. And for what? These roster limits do not serve a purpose. They have no

2  place in this settlement.

3        I declare under penalty of perjury that the foregoing is true and correct.

4  Nashville, Tennessee
5  January 26, 2025

7                    _____
                     John Ingram
8                    NCAA ECID No. 2303800157
                     2103 Cypress Point West
9                    Austin, Texas 78746

---

4

DECLARATION OF JOHN INGRAM
CASE NO. 4:20-CV-03919-CW

Taylor Inouye
5200B Ravenna Ave NE
Seattle, WA 98105


January 26th, 2025

   Re:  *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Taylor Inouye.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 2311152465.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,
            Taylor Inouye

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF TAYLOR INOUYE**

I, Taylor Inouye, hereby declare as follows pursuant to 28 U.S.C. §1746:

I am a sophomore at the University of Washington and a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

In September of 2023, I attended a "UW Women's Rowing Informational Session," with at least 100 other women who had no clue what rowing was. Prior to this, I had no idea what rowing really was or that it was something I could have an opportunity to pursue at a collegiate Division 1 level. Following this session, I went through a four-week tryout period where I learned how to erg, row, and eventually cox. At the end of this period (end of October 2023), I was one of 14 women selected to join the Class of 2027 on the Women's Rowing Team as a walk-on coxswain.

At the start of my freshmen season, I was one of six freshmen coxswains, and being the only one from this group to never row prior to the start of college, I had a lot of groundwork to make up if I wanted a shot at being anywhere near the level of my peers. When an injury took me out for one month in January of 2024, I had even more work to catch up on and felt like I would never be able to be at the same level as my teammates. But with motivation from my teammates, help and advising from the varsity members of the team, and asking as many

1

Docusign Envelope ID: D0E125C0-6EA2-4B65-A390-46F3D14C6A92

questions as I possibly could, I realized that I could make my goals into a reality. After lots of good and bad practices filled with learning experiences, feedback from coaches and teammates, and self-reflection and growth I started finding a groove and gained some self-confidence in myself as a person and coxswain.

Come May 2024, end of the school year, the Pac-12 Selection list had come out and before reading it I already had assumed my name wouldn't be on there. To my surprise, listed amongst the names was "Inouye." In those 3 months after my injury, I had gone from the bottom-ranked coxswain of my class with the least experience and knowledge, to top three in my class to make these selections. And when only three coxswains from our class were invited back for the 2024-2025 season, I was grateful and fortunate that I was one of those three.

Had the roster limits been in class for my freshman year, those three months of growth, learning, and development would have never happened. I wouldn't have made the coxswain I was at the start, and I never would have known my potential that I have now. Since then, I have grown so much as a coxswain, athlete, and person. I have raced with the varsity team, learned to cox a new type of shell, worked with Olympians on our team, and grown new relationships with coaches and teammates I never would have thought possible. Our large team, and getting to work with so many people either new or heavily experienced in rowing really helped me progress as a coxswain and gave me a wonderful environment to learn and grow in.

Going to that informational session changed my life in ways I never would have thought possible. Those three months of growth transformed me as a person and showed me how capable I am with hard work and dedication. I am forever grateful for the experiences I've had the opportunity to live through and for the walk-on culture at UW. It is so powerful to be surrounded by so many other coaches (some who just went to the Paris 2024 Olympics) who were walk-ons like myself. It shows that with enough time and dedication given, we can develop into fabulous

1    assets to our team. This growth and development comes with time, time that the roster limits

2    would strip.

3        I declare under penalty of perjury that the foregoing is true and correct.

4

5    Dated: January 26, 2025

6    Seattle/King, Washington

Signed by:

*Taylor Inouye*

83F2F3B53F2B462...

7    Taylor Inouye
     NCAA ECID No. 2311152465
8    5200B Ravenna Ave NE
     Seattle, WA 98105
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Emelia Jordan
4330 Little Canoe Channel NE
McCarty Hall 571
Seattle, WA 98195

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Emelia Jordan.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 2209669676.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                      Sincerely,
                                      Emelia Jordan

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

DECLARATION OF EMELIA JORDAN

I, Emelia Jordan, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a 2028 at the University of Washington and am a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I spent my high school career and a gap year preparing to be a college athlete. Gradually, building my training hours to upwards of 18 hours a week - 9 practices a week. I was working towards the goal of earning a spot on a Division I cross-country ski team, my main sport prior to rowing. During the winter I would travel most weekends to reach the most competitive races, sometimes making the 9 hour drive back and forth between Rochester, NY and northern Maine 3 weekends in a row. The time commitment and dedication to sport caused me to miss out on birthday parties, graduation parties, and regular weekend hangouts with friends. Despite these sacrifices, I gained mentors, a community, a love of sport, and a team as close as family.

3.      I had success on the local, regional, and national cross-country skiing stage. As an 8th grader, I was the anchor of the sectional and then state winning relay, the first State Championship victory for the Brighton High School nordic ski team since its founding 85 years prior.  As a team we continued to dominate the section and the state through the 2022

1

season. My freshman year, I qualified to attend the US Cross-Country Junior National Championship. I first attended the event at age 16, my best result was 31st place out of 98 of the best U18 athletes in the nation. I attended Junior Nationals again as a top member of the Mid-Atlantic Team in 2023, and made my final trip in 2024 as part of the Intermountain Division Team, the second best division in the country.

4.      Despite my success in this sport, I still struggled with college recruitment. Cross-country skiing has very limited collegiate opportunities. To the best of my knowledge, there are only 21 teams in the country, each with limited rosters and resources to provide to athletes. Due to this, most teams can only support 2-3 athletes per admission cycle and can accept a few more who gain admittance to the school without assistance. I had several offers for spots on teams if I was able to gain admission to elite Ivy League and comparable small liberal arts schools. In the end, after a several year long process, my last opportunity fell through, the coach had more athletes than expected get into the school on their own. The coach sent me a very apologetic email stating that her team was beyond full, she was going to have to make cuts in the upcoming season, and could not accommodate more athletes. My recruiting story is not uncommon for the sport of cross-country skiing, the availability of roster spots simply does not match the amount of talent in the nation. While grieving the loss of something I loved, I chose to pivot and reconnect with my values and aspirations to find a school that would fit. I had been admitted to the University of Washington, applying because I had seen pictures of the campus online and had read about the university's pre-med program. I attended admitted students day and fell in love with the school. I researched the very well-known University of Washington Rowing walk-on program. Excited by the prospect of trying a new sport and the strong reputation of Washington academics, I sent in my deposit.

5.      In a recent team meeting, head coach Yasmin Farooq described how the

incoming roster limits would affect Washington Rowing. She informed us that on December 1st 2025, the roster will be cut to 68. Our current roster consists of over 100 athletes. As a walk-on, this cut in the roster could eliminate my opportunity for development and eventually attend conference and NCAA championships. I have been rowing for 6 months, while some of my teammates have been rowing for 5-10 years. The proposed roster cut does not take into account the nature of a sport like rowing, where athletes need years to develop their skill and fitness. The sport also requires a unique format of team building, both within a boat of eight, and from inter team competition for seats in the competing boats. With roster cuts the time needed for each individual athlete and for the team as a whole to develop will be far too limited. This powerful team has built its famed history in large part from walk-on athletes. The proposed roster limit of 68 will drastically impact this development for me and others like me. The limit also leaves little room for injury, illness, or strategic placement in filling the 53 available spots to compete in Big 10 Championships.

6.    These proposed roster cuts have spiked anxiety for all members of the team. It is challenging to show up to practice twice a day and continue to strive for a goal that may not be available to you in 11 months. I am discouraged when I see older team members, who I idolize, brought to tears by the incoming changes. I came to the sport looking for a new place to work hard and compete against some of the best athletes in the nation. I was not expecting to receive compensation for the hours I spend in the boathouse each day. I was only hoping my hard work would be rewarded by the feeling of being a part of something challenging, empowering, and fun.

7.    If I am cut from Washington Rowing I will lose much of what supports my daily life. I will lose access to academic counseling and tutoring which helped me make the Dean's List in my first quarter. I will lose access to the 3 free meals a day, which have maintained my

ability to push to my physical and academic limits. And worst of all, I will again have to grapple with my identity and find a new way to feel fulfilled as an athlete. I will lose my new found family, my best friends, and my coaches who all believe in me.

8.      I hope the extreme loss and mental health risk that these roster cuts will cause is taken into consideration. I have personally experienced the grief caused by losing the ability to continue a sport that is a foundational part of my identity. I experienced that loss due to roster limits. I was able to emerge from that grief by putting the same energy towards a new sport, and now my place in sport may be taken away again. Some NCAA priorities as listed on their website are, "coordinate and deliver safe, fair, and inclusive competition", "promote innovation that improves health, safety and performance", and "inspire the next generation of athletes". The proposed roster cuts would dramatically undermine each of these priorities. Roster cuts of women's rowing teams and other collegiate sports teams are the opposite of fair and inclusive. The cuts will cause a decrease in safety and performance of all the teams affected. Dramatic decreases in the number of opportunities available will discourage and limit the next generation of athletes. To maintain the integrity of NCAA athletics and the culture of college sport, there must be no roster cuts.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
       January 26, 2025

*Emelia Jordan*
_____
Emelia Jordan
NCAA ECID No. 2209669676
4330 Little Canoe Channel NE
McCarty Hall 571,
Seattle, Washington 98195

Docusign Envelope ID: 68884288-19AE-4943-9B52-5FA234EC8E93

**Lindsay Juhlin**
1007 Lafayette St.
Williamsburg, VA 23185

January 27, 2025

Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken,

My name is Lindsay Juhlin. I am a current Division I athlete at William & Mary; my NCAA ECID number is 2001783849. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

Lindsay Juhlin

259

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF LINDSAY JUHLIN**</u>

I, Lindsay Juhlin, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am a freshman at the College of William and Mary and a member of the NCAA Division I Women's Swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    Our coaches have explained to us that roster limits, if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.    We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively impact those who are cut and our team at large.

4.    Please do not approve the roster limits in the *House v. NCAA* settlement.

1

Docusign Envelope ID: 68884288-19AE-4943-9B52-5FA234ECBE93

1  I declare under penalty of perjury that the foregoing is true and correct.

2  Dated: Williamsburg, VA

3  January 27, 2025

Signed by:

*Lindsay Juhlin*

E42D36C24CF14FF...

4  Lindsay Juhlin
NCAA ECID No. 2001783859

5  1007 Lafayette Street
Williamsburg, VA  23185

Hannah Justice
1924 Kings Manor Court
Matthews, NC 28105

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Hannah Justice.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Hannah Justice

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF HANNAH JUSTICE</u>**

I, Hannah Justice, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am 14 years old and am in 9th grade. I have been competing as a swimmer since I was 5 years old and hope to compete on a Division I college team.

2.    I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college.  I therefore am a class member who could be affected by the terms of the settlement.  I object to the settlement for the reasons stated below, both for myself and for other class members like me.

3.    I train 18 hours a week, on average. I give my life to this sport as I have chosen to exclude many social and other extracurricular activities from my life so that I can focus on swimming. I am the oldest of 6 children and my parents make daily time, money, and energy sacrifices so that I can swim.

4.    My best events are the 1650, 1000, 800, 500, and 400 free. I believe that with the progress I am making and the direction I am heading, I can earn a scholarship to swim at a Division I institution with my specialty in long-distance freestyle events, which will be crucial for my large family, as my parents cannot fund my college education.

5.    My mother played soccer and my father played football at Wake Forest University. They would not have been able to attend such a prestigious university without their scholarships. While my father earned a lot of money for the school at the time through his name, image, and likeliness, he believes that the scholarship he received was more than enough for any benefit he provided to the school. My father also went on to play in the NFL and now he and my

mother serve out community through their small fitness studio.

6.    College sports teams should not have roster limits imposed because the benefits that college athletics have on young adults is unmatched. From the walk-on to the full-scholarship athlete, young adults learn hard-work, discipline, time-management, self-sacrifice, and are overall better contributors to society through their experience in college athletics.

7.    Please, Judge Wilken, consider my appeal. I am not the best of the best when it comes to swimming, but I am doing the best I can to be the best I can be. I hope and pray that I can swim in college one day. You can still make that a reality for me and my family.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Matthews, North Carolina
      January 28, 2025



_____
Hannah Justice
1924 Kings Manor Court
Matthews, NC 28105

Hope Justice
1924 Kings Manor Court
Matthews, NC 28105


January 28, 2025

> Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Hope Justice.  I am a middle school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Hope Justice

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF HOPE JUSTICE**

I, Hope Justice, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am 12 years old and in 6th grade. I have been competing as a swimmer since I was I was 5 years old and hope to compete on a Division I college team.

2.      I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college.  I therefore am a class member who could be affected by the terms of the settlement.  I object to the settlement for the reasons stated below, both for myself and for other class members like me.

3.      I train 15 hours a week, on average. I give my life to this sport as I have chosen to exclude many social and other extracurricular activities from my life so that I can focus on swimming. I am the second oldest of 6 children and my parents make daily time, money, and energy sacrifices so that I can swim.

4.      My best events are the 50 free, 50 butterfly, and the 50, 100, and 200 backstroke. I believe that with the progress I am making and the direction I am heading, I can earn a scholarship to swim at a Division I institution with my specialty in short-distance freestyle events, which will be crucial for my large family, as my parents cannot fund my college education.

5.      My mother player soccer and my father played football at Wake Forest University. They would not have been able to attend such a prestigious university without their scholarships. While my father earned a lot of money for the school at the time through his name, image, and likeliness, he believes that the scholarship he received was more than enough for any benefit he provided to the school. My father also went on to play in the NFL and now he and my

1

mother serve out community through their small fitness studio.

6.      College sports teams should not have roster limits imposed because the benefits that college athletics have on young adults is unmatched. From the walk-on to the full-scholarship athlete, young adults learn hard-work, discipline, time-management, self-sacrifice, and are overall better contributors to society through their experience in college athletics.

7.      Please, Judge Wilken, consider my appeal. I am not the best of the best when it comes to swimming, but I am doing the best I can to be the best I can be. I hope and pray that I can swim in college one day. You can still make that a reality for me and my family.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Matthews, North Carolina
         January 28, 2025

_____

Hope Justice
1924 Kings Manor Court
Matthews, NC 28105

Docusign Envelope ID: 6EE61D47-6EE6-468A-B83D-F0FB8A246F99

Brianna Kappeler
343 Palomino Hill Ct.
Chesterfield, MO  63005


January 29 , 2025

> Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Brianna Kappeler.  I am a current Division I athlete at Missouri State University and my NCAA ECID number is 2106227840.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2024.

Sincerely,


Brianna Kappeler

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF BRIANNA KAPPELER**

I, Brianna Kappeler, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a freshman at Missouri State University.  I was a member of the Division I
women's soccer team until December 2024 and thus I am a member of the Injunctive Relief
Class.  I object individually and on behalf of the class.

2.     I have been playing soccer since I was 3 years old.  I joined my first club team
when I was 7 years old and have played competitively for a decade.  Before college, I played 7
seasons for the St. Louis Scott Gallagher Soccer Club, which competes in a national league.  I
competed in both the 2021 and 2022 Elite Clubs National League Championships.

3.     I also played for the Marquette High School soccer team, where I started all four
seasons.  I led Marquette High to its first ever conference championship as a junior and was an
all-conference first-team selection that year.

4.     Playing club soccer in a national league was an achievement in and of itself,
though it came with a lot of sacrifice.  I practiced 6 of the 7 days a week.  Most weekends, I
traveled for games.  I had to learn how to balance academics.  I gave up the typical high school
experience, like school dances, in order to continue my athletic development.  Beginning my
sophomore year, I also took the initiative in reaching out to college coaches to begin my college
recruitment process.  My dedication resulted in a number of Division I collegiate programs
showing interest in recruiting me.

5.     After visiting and considering a number of Division I programs, I decided to
attend Missouri State University.  It was clear that Missouri State was the right choice for me

1

after my visit.  The university has both a strong athletic and academic tradition, and I was immediately drawn by the team's culture and competitive spirit.  It was clear to me from the beginning that everyone on the team is very close and that there is an open line of communication between the coaches and the players.

6.    I was fortunate enough to receive a partial athletic scholarship, which covers approximately one-third of the cost of attendance for my freshman year.

7.    Unfortunately, I tore my ACL early in the season and have been undergoing the rehabilitation process since.

8.    Although rumors about roster cuts had been going around since I arrived on campus, the team did not have a meeting about the issue until after the end of our season.  After the NCAA tournament, our coach told the entire team that they would need to make cuts because of the upcoming roster limits.  Then, the week before Thanksgiving, our coach held individual meetings with me, as well as two of my other teammates, to tell us we were cut from the team.

9.    I was shocked and disappointed by the news.  Since I have not even completed my freshman year, I feel as though I have not had the chance to show the coaches what I am capable of.  Especially given that I was sidelined for much of this season due to an injury.  I feel as if my collegiate athletic career was abruptly cut short before I had a meaningful chance of realizing my potential.

10.    I am now faced with a lot of uncertainty about my future.  If I want to continue playing soccer, I will have to transfer schools.  However, my injury earlier this season makes transferring exceedingly difficult.  I have no game film that I can show to coaches during the recruitment process.  Additionally, I am aware that many other schools are making similar cuts and that the transfer portal will be oversaturated with hundreds of other student athletes looking for a place to land after being cut.  I also do not know if I will be able to transfer the class credits I have taken so far, and I do not want to delay the completion of my degree.  As it currently stands, I am on pace to complete my degree in three years.  I may end up having to stay at Missouri State without the soccer team, and without my athletic scholarship.

11.     My coach told me that I can stay on the team through the spring so that I can finish my physical therapy.  My partial scholarship will continue to the end of my freshman year, but I would lose my scholarship after that.  Being cut from the team will mean that I will have to take on a significant and unexpected financial burden to complete my degree.

12.     Being cut from the team will also mean that I will lose touch with my teammates, many of whom have become my close friends as I have gotten to know them this past year.  My roommate, a student from England, was cut from the team as well.  We had become friends, and she even got to experience her first American Thanksgiving with my family this past November.  However, because of these roster limits, she also lost her spot on the team and had to abruptly transfer schools.  The prospect of losing some of the connections I have made with my fellow teammates is truly disheartening.

13.     The roster limits that are a part of this settlement have resulted in a sudden end to my collegiate soccer career.  Despite all of the hard work and countless hours I have put in to developing myself as an athlete, I was cut from my team because of something totally out of my control.  The roster limits are deeply unfair and I strongly object to their inclusion in the settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Chesterfield, Missouri

January 29, 2025

Signed by:

*Brianna Kappeler*
B239CE1DBBCE4DE...

Brianna Kappeler
NCAA ECID No. 2106227840
343 Palomino Hill Ct.
Chesterfield, MO  63005

Docusign Envelope ID: CB07DA36-DE04-41C2-AF4A-507F5626E769

**Kelsey Katt**
**107 Delaware Ave,**
**Williamsburg VA, 23185**

January 26, 2025

Re:      *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken,

My name is Kelsey Katt I am a current Division I athlete at William & Mary; my NCAA ECID number is 2101984427. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Kelsey Katt

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF KELSEY KATT

I, Kelsey Katt, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.       I am a senior at William & Mary and am a member of the NCAA Division I Men's and Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.       Our coaches have explained to us that roster limits, if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.       We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively impact those who are cut and our team at large.

1    I declare under penalty of perjury that the foregoing is true and correct.

2 Dated: Williamsburg, VA

      *Kelsey Katt*

3    January 26, 2025

      Kelsey Katt

4         NCAA ECID No. 2101984427

         107 Delaware Ave,

5         Williamsburg VA, 23185

Evan Keogh
3915 Somerset Dr.
Siesta Key, FL  34242

January 30, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Evan Keogh.  I am a current Division I athlete at the University of Florida and my NCAA ECID is  2105167478.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                         Sincerely,
                                                        Evan Keogh

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

|  |  |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>Hon. Claudia Wilken |

## <u>DECLARATION OF EVAN KEOGH</u>

I, Evan Keough, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore at the University of Florida.  Until recently, I was a member of the men's NCAA Division I Swimming and Diving team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have been swimming competitively since I was 7 years old.  I worked extremely hard to improve in the sport, and I was competitively successful in my pre-college career.  As a high school athlete, I competed for the Sarasota Tsunami Swim Team at the club level.  I was also a Junior Nationals qualifier in 5 events.  In the summer going into my junior year of high school, I qualified for the 2021 Olympic Trials in the 200-meter backstroke.

3.      As a result of my high school accomplishments, I received recruitment interest from nearly 25 Division I programs in the summer of my sophomore year.  Following a few official visits to various Division I programs, I ultimately committed to the University of Florida. I was offered a four-year athletic scholarship paying part of my tuition costs.

4.       My freshman year at the University of Florida went well.  I accomplished two of my best times, had an excellent training year, and was able to avoid major injuries.

5.      Then, when I returned to campus early to start training, some people on the team had heard about roster limits but didn't know anything for certain.  We experienced notably increased internal stress as we worried about what might be coming.  In December, the athletics director informed the Swimming and Diving team that we would all have mid-season evaluation talks with our coach.

OBJECTION TO SETTLEMENT AGREEMENT AND
OPPOSITION TO MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 4:20-CV-03919-CW

276

6.      Soon after that, I had a meeting with my head coach and two assistant coaches, who told me that I wouldn't be on the roster for the 2025-26 team.  Although they said I could be on the team for the rest of the season, if I did not plan to transfer to a different school, I should stop coming to practice immediately and I would no longer be able to race.

7.      After a week and a half of deliberation following this meeting, I decided that I didn't want to transfer schools and start over as a junior in college, so I told my coaches that, given my choices, I would be retiring from swimming.

8.      Getting cut from the team was devastating.  After swimming for 12 years, I wanted to retire on my own terms, but instead, I was told I was done.  I was proud of my times and know that they would continue to improve.  Knowing I put so much effort into my sport, and I don't even have a choice about when to walk away feels unfair.

9.      In addition to the stress and sadness I feel about getting cut from my team, losing my spot on the roster has also raised financial questions.  The roster limit will affect my access to benefits that I rely on, such as our athletic center and my athletic scholarship.  This has caused serious and unexpected added anxiety for my family and me.

10.      I committed to the University of Florida because I understood that the school was making a commitment to me too: that if I worked hard and gave my best effort I would have a place on the team, an opportunity to find my potential, and an opportunity to compete on race day.   The new roster limits have taken away my opportunity to compete in the sport I love.  They should not be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Siesta Key, Florida
    January 30, 2025

DocuSigned by:

_____
445DC8036CA246F

Evan Keogh
NCAA ECID No. 2105167478
3915 Somerset Dr.
Siesta Key, FL  34242

OBJECTION TO SETTLEMENT AGREEMENT AND
OPPOSITION TO MOTION FOR PRELIMINARY SETTLEMENT APPROVAL
CASE NO. 4:20-CV-03919-CW

277

Calissa Kissinger
1971 University Blvd
Flames Box 205227
Lynchburg, VA 24515

January 20, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Calissa Kissinger.  I am a freshman and Division I athlete at Liberty University, and my NCAA ECID number is 2106181927.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                            Sincerely,
                            Calissa Kissinger

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF CALISSA KISSINGER</u>

I, Calissa Kissinger, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at Liberty University and am a member of the NCAA Division I women's swimming & diving team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have been swimming competitively since I was 6 years old and have taken lessons since I was 6 months old.  Swimming has always been a significant part of my life. Leading up to and during the college recruiting process, I was training 9 times a week, which equaled about 17 hours a week in the water.  This does not include additional time spent doing dryland exercises, weightlifting, and often commuting over an hour to the pool.

3.      In high school I had national level qualifying times and was ranked in the top 60 in my state for my recruiting class.  In my best events, I had the twelfth, eighteenth, and thirty-first fastest times in my local swimming committee.

4.      My recruiting process began in May of my sophomore year of high school (2021) and lasted until December of my gap year (2023).  It was an extremely long and stressful process that took a lot of effort.  The type of school I was looking for changed quite a bit from the beginning of the recruiting process to the end.

5.      At first, I was not considering the possibility of going to a Division I school, though I wanted to get into Liberty from the beginning.  Liberty was exactly the kind of school I wanted to attend for college due to its culture and how the swim and dive team foster and grow that culture. I was just not confident in myself, and unsure if Division I was possible.

1

6.      I reached out to the coach at Liberty. When he responded, I worked even harder to improve on my times and show that I was capable of swimming competitively at a Division I school like Liberty.  I ended up choosing Liberty as a preferred walk-on over multiple other schools that offered me spots with athletic scholarships because Liberty offered exactly the kind of education and culture I wanted, as well as the opportunity to be on a team where I was going to be pushed to get better every day.

7.      During the recruiting process, the possibility of being cut never came up.  All I was told was that there was a possibility of earning an athletic scholarship in the future.  I was given the impression that even as a walk-on, the coaches did not intend to cut anyone.

8.      The first time I heard about possible roster limits in the *House v. NCAA* settlement was from vague references to it on social media and different news articles.  We first heard about it as a team during a team meeting after practice.  According to my older teammates, before this year, cuts were not because of roster limits but only if there was misconduct or a culture fit issue.

9.      I became very nervous when I realized that roster cuts to our team are mathematically inevitable if roster limits are approved with the settlement.  When I started the season, we had 35 women on the team.  Nine will be graduating this year, and 7 have already committed for 2025.  That means the team must cut at least 3 of us for next season if the new roster limit of 30 goes through.

10.      The reality is that cuts would probably be even deeper.  Without saying it outright, our coach hinted that the team may cut even more of us to be able to accept faster transfers from other schools that also have to cut their teams down to meet the roster limits.  My coach has not addressed the possibility of not needing to make cuts if the roster limits are not approved.  He is also not waiting:  He is planning on making cuts after our championship meet in February.

11.      This knowledge has taken a significant toll on myself and others on my team who know they are the most likely to get cut.  For myself, and many others on my team, it has taken a lot of the joy out of the sport we love.  Most of what I can think about is that I must perform so I don't get cut.  The stress and anxiety I feel has impacted my performance, which is leading to even more stress at the next meet or practice to prove I am good enough to stay on this team.

2

1  It's a horrible downward spiral.

2      12.    I already put so much work into this sport to be able to swim for this school.  This

3  was especially difficult after already having to build back after not being able to swim at all for

4  months during COVID-19, then an additional year of limited and restrictive practices and meets.

5  Now, it feels like that additional work was pointless because the pressure of performing to save

6  my spot on the team has turned the thing I love into a source of pain and stress, instead of joy.

7      13.    If I am cut, I will lose the support that Liberty provides to support their athletes.

8  I will lose access to dedicated academic counseling and tutoring, dining options created

9  specifically with the nutrition needs and schedules of athletes in mind, and free specialty medical

10  care provided for the athletes at Liberty.  Most importantly, though, I will lose the ability to

11  compete in the sport I love for the school my heart was absolutely set on.

12      14.    I will not necessarily completely lose the relationships I have built on the team,

13  but they will not be the same when I am not spending upwards of 4-6 hours a day with them

14  training and talking about nearly anything that comes to mind.  I was already stripped of my

15  close relationships during the pandemic, and the roster limits are threatening to repeat that

16  loneliness and isolation all over again.

17      15.    If I am cut, transferring will be difficult with the degrees I am majoring in.  Even

18  if I drop one of my degrees, I have limited options of schools that will permit me to continue my

19  degree and swim.  I know there is not a single school outside of Liberty that has the kind of

20  culture my team has, and it's really the only one I want to be a part of at a college.  I may end

21  up staying at the school and trying to compete for a club in the area, or I may go back home and

22  back to the club I used to compete for and complete one of my degrees online.  That might be

23  the only way I can continue to swim through college.  But if I do that, it will basically be the end

24  of my college experience.

25      16.    My plea to the Court is to reject the roster limits.  Roster limits only serve to harm

26  non-revenue sports.  The idea of roster limits is only causing pain and harm to both coaches and

27  athletes at the Division I level.  Even with every other aspect of this settlement, non-revenue

28  sports will already lose much of their funding, which will cause more financial stress on the

3

1  funding which will cause more financial stress on the student-athletes so there is no need to cause

2  more stress and hurt by forcing teams to cut their hard working athletes.

3          I declare under penalty of perjury that the foregoing is true and correct.

4  Dated: Lynchburg, Virginia

5          January 20, 2025                    *Calissa Kissinger*

                                            Calissa Kissinger
6                                           NCAA ECID No. 2106181927
                                            1971 University Blvd
7                                           Flames Box 205227
                                            Lynchburg, VA 24515
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
4

DECLARATION OF CALISSA KISSINGER
CASE NO. 4:20-CV-03919-CW

Taylor Jane Klein
645 Hempstead Place
Charlotte, North Carolina 28207


January 30, 2025

   Re:  *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Taylor Klein. I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.


           Sincerely,

           *Taylor Klein*

           Taylor Klein

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF TAYLOR KLEIN**

I, Taylor Klein, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am 17 years old and in 11th grade at Charlotte Country Day School. I have been competing as a swimmer since I was 8 years old. I competed as a field hockey player through 8th grade, but after starting high school I stopped playing field hockey. I wanted to focus on swimming to prepare for recruiting and participating in D1 athletics in college.

2.      I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college. I therefore am a class member who could be affected by the terms of the settlement. I object to the settlement for the reasons stated below, both for myself and for other class members like me.

3.      I practice 6-7 days per week and on average about 3 hours per day. I swim about 45 minutes from my house, so I spend an extra 1.5 hours a day commuting to practice. I have given up a lot of things for swimming. I am unable to attend a lot of family holidays, graduations and more. I have also given up social time with friends at school, but it's worth it, because I have gotten so much from the sport and plan on receiving even more in hopes of competing at the D1 level in college.

4.      I have just recently "taken off" in swimming. I was a late bloomer, and my successes have mostly happened later in high school. I have qualified for Junior National Championships (and scored), US Open Championships, and USA National Championships. I am a conference and state champion for my high school and have both school and state records in swimming.

1

5. Why do I swim? I love swimming and I love everything that it has given me. My mother, father, grandfather, brother, cousin and aunt have all competed in college athletics. They have always encouraged our family to play sports and aspire for collegiate opportunities. My family has always shared the many positive things that came from sports, especially college sports. Structure in schedule, aspiring to always do better, learning how to deal with failure, learning how to deal with success, learning how to work with others, and learning how to be coached in different ways. My best friends and role models are all competitive swimmers – many of my role models are D1 collegiate athletes.

6. I believe having roster limits will destroy youth sports and developing athletes. I believe that many families won't see the purpose if there are no long-term opportunities for growth. I believe roster limits will impact the mental health of current athletes and future athletes. If current athletes are stripped of their current spots, they will most likely find it hard to find new ones, and will lose all support they were promised, from academic support, athletic support, metal health support and professional development support preparing for post college.

7. Please remove roster limits from this and allow for athletes to participate. Allow current athletes to be grandfathered into the rosters they signed on with, and allow future athletes to participate no matter what the numbers are.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Charlotte, North Carolina
         January 30, 2025

*Taylor Klein*
_____

Taylor Klein
645 Hempstead Place, Charlotte, NC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF JAKE KLUVER

I, Jake Kluver, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am writing to formally object to the recent decision to impose roster limit cuts for collegiate golf programs. As a former collegiate golfer at Creighton University from 2020 to 2024, I've witnessed how larger teams foster a competitive, growth-driven environment. Reducing team sizes would limit opportunities for players to push one another, slow development, and ultimately hinder the overall competitiveness of the sport. Especially for programs in "mid-major" conferences that rely on larger roster sizes to build a more competitive team.

2.      In golf, internal competition is crucial. Larger teams create an environment where athletes are consistently challenged to improve, both in practice and competition. Cutting rosters would stifle this dynamic and limit the potential for programs to develop depth, which is essential to long-term success and growth

3.      Collegiate golf should be about nurturing talent, building team strength, and promoting competition, not restricting it. I urge you to reconsider this decision to ensure the best possible environment for student-athletes to thrive. Schools and coaches should be making decisions that affect their programs, not NCAA committees.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Dated: Omaha, Nebraska

3    January 29, 2025

Signed by:

Jake Kluver
NCAA ECID No. 2001780023
1415 Cuming St, Apt 221
Omaha, NE 68102

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF LUKE KLUVER</u>

I, Luke Kluver, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.       I am writing to express my concerns regarding the NCAA's decision to impose roster limits for collegiate golf programs. I am currently a professional golfer and as a former Division I golfer at the University of Kansas and the University of Oklahoma, I have personally experienced the profound impact of being part of a collegiate team—an experience that I fear will be diminished for many aspiring student-athletes under these new restrictions.

2.       Firstly, these roster limits could unfairly disadvantage local athletes who may not have the same opportunities to showcase their talent. Smaller programs often serve as a platform for local players to develop and thrive. By imposing limits, the NCAA risks reducing access for talented athletes from surrounding communities, many of whom dream of representing their hometowns on a collegiate stage.

3.       Additionally, the ability to walk on to a collegiate golf team has historically been a gateway for countless players to prove themselves. Walk-ons often bring passion, grit, and a relentless work ethic that can elevate a team's dynamic. Curtailing these opportunities not only undermines their value but also narrows the pipeline for talent to emerge outside of traditional recruiting pathways.

4.       Lastly, limiting team rosters impacts more than just competition—it affects the camaraderie that is at the heart of college athletics. The bond formed between teammates goes beyond the golf course; these are friendships and brotherhoods that last a lifetime. With fewer players allowed on rosters, the team environment risks becoming more transactional and less

inclusive, denying many young athletes the chance to experience one of the most cherished aspects of college sports.

5.    Collegiate golf is about more than just wins and losses. It is about fostering opportunities, building relationships, and shaping individuals into leaders both on and off the course. I urge the NCAA to reconsider these roster limitations to preserve the integrity, inclusivity, and developmental nature of college golf.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Norfolk, NE

January 28, 2025

DocuSigned by:

*Luke Kluver*

C0E3D578A0E54B4...

Luke Kluver
NCAA ECID No.  1808261773
607 Charles St
Norfolk, NE

Amadeusz Knop
2287 SW 38th DR, Apt 62
Gainesville, FL 32607

January 25, 2025

     Re:   *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Amadeusz Knop.  I am a current Division I athlete at the University of Florida and my NCAA ECID number is 2003830154.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                      Sincerely,
                      Amadeusz Knop

**290**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>Hon. Claudia Wilken |

<u>**DECLARATION OF AMADEUSZ KNOP**</u>

I, Amadeusz Knop, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore swimmer at the University of Florida and a member of its men's NCAA Division I Swimming and Diving Team.  I am a member of the Injunctive Relief Class and object individually and on behalf of the class.

2.      I started swimming competitively at the age of ten.  By the time I was 13 years old, I was competing in multiple state and national events.

3.      In high school, I trained year-round for about 20-22 hours each week.  I rarely went on vacations and rested about three weeks each calendar year.  That hard work paid off in my meet results.  I won multiple events at the Florida State Championships, at the Class 4A level, which is the highest level.  I was a finalist several times in multiple events in the U.S. Open Championships.  I have also competed in the finals in multiple events in the U.S. Nationals and Winter Juniors competitions—national events for athletes ages 18 and under.  In 2021, I qualified for the Olympic Trials. I also competed in the Poland Nationals for 17 and 18-year olds, where I earned second place in two events.

4.      Coaches from Division I schools started recruiting me during the summer before my junior year of high school.  I was contacted by almost every Division I school and I visited four of them. I was offered scholarships or financial assistance that would cover my full tuition at three of them, including Harvard and Florida.

5.      I ultimately accepted an offer at Florida.  While being able to graduate debt-free was an important factor in my decision, I also chose Florida because out of all the schools I

1

visited, I thought it was academically excellent and had the most rigorous swimming program.

6.     I trained hard throughout my first year at Florida with my teammates, and I looked forward to sophomore year on the team.  Then, in a meeting with my head coach and head assistant coach this past fall, I was told I would not have a spot on next year's team due to the roster limits.  They suggested that I transfer to another school or stay at Florida and not swim.

7.     If I stay at Florida and I don't swim, my coaches could not guarantee that I would receive the same financial aid package.  I also hope to qualify for another Olympic Trials, but if I'm not practicing with a college team I'm much less likely to be able to get the training I need to achieve that goal.

8.     Had I not prioritized swimming in my decision about college, I likely would have chosen to attend Harvard because I liked the school and the academics.   If I tried to transfer to Harvard now, my degree credits would not transfer and I would have to start my college career all over again.

9.     The new roster limits have made me feel like I'm not valued as a whole athlete and person, and that instead I'm just another number to the NCAA and my school.

10.     In my opinion, roster limits will harm college-level swimming overall.  Without the roster limits, top Division I programs have the opportunity to bet on student athletes who haven't yet realized their potential.  I've seen this happen with some of my teammates— they began college without having competed at the top level, but in the program they developed into championship-winning swimmers.  With the roster limits, those opportunities to develop student athletes will be eliminated.

11.     I have dedicated my life to my sport.  The roster limits threaten my ability to even continue competing in the sport I love, much less to continue on to a possible Olympic career. The roster limits should not be included in the settlement.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Dated: Gainesville, Florida
3            January 25, 2025

                                    _____
4                                   Amadeusz Knop
                                    NCAA ECID No. 2003830154
5                                   2287 SW 38th DR, Apt 62
                                    Gainesville, FL 32607

Ellen Natalia Koselka
5209 39th Ave NE
Seattle, WA 98105

January 26th, 2025

Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Ellen Natalia Koselka.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 2003830179.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Ellen Natalia Koselka

294

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF ELLEN NATALIA KOSELKA

I, Ellen Natalia Koselka, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.     I am a senior at the University of Washington and am a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     Growing up to a family of successful D1 swimmers,  I always knew that I wanted to play a D1 sport. D1 athletics runs in my family, from my grandfather running track at Michigan to my mom and dad swimming at Notre Dame and my big sister swimming at Michigan. For much of my life, I trained as a swimmer alongside my triplet siblings. By high school the three of us branched out to separate sports, me to rowing, my sister to running and my brother to swimming. Outside of school and chores on my family farm, rowing was my life in highschool, and I wouldn't have had it any other way. While missing homecoming dances and school prom for away races, I learned lessons in resilience, and felt the value of hard work. Through rowing, I gained a special kind of toughness only hands torn up by blisters; 2k time trials in freezing rain, and grueling winter erg training will teach you. During my four years I rose from the bottom of the roster (on a very competitive high school team—consistently top two at midwests) to the very top, earning myself a reputation for being small and scrappy, but the fiercest competitor on the course.

1

3.      By the time I was a senior I had earned multiple medals at the Michigan State Rowing Championships and the Midwest Regional Championships. I had also earned silver medals at the Canadian Scholastic National Championships and US Scholastic National Championships regattas and had proven myself to be a capable and quickly rising competitor at summer international competitions. I was awarded "most improved" twice (freshman and sophomore year) and  was recognized as the team's MVP with the "Columbia Blue Crew Award" during my junior and senior years. I was elected captain all three seasons of my senior year.

4.      While my hard work and dedication had seen me become the top rower on my team, I still had never competed on the US junior national team. At 5 '9" and 135 lbs, I was considered small for a college rower and though I was extremely strong (earning my highschool record for weight efficiency), few top collegiate programs gave me many looks. It was also the height of the COVID19 pandemic and I had no idea how to get recruited for rowing. Several lower caliber D1 heavyweight programs and a couple lightweight programs recruited me, but I had my sights set on doing the same thing I'd done in highschool--working hard to rise from the bottom to the top of a highly competitive and successful team—I reached out to the University of Michigan (as an Ann Arborite, it felt like a natural choice), and the coaches encouraged me to walk on. I spent my freshman year at Michigan and made significant improvements on my erg scores, but with arrogant coaches who didn't put stock into long term development of young female athletes like me (data shows female athletes don't see their peak until their late twenties—rowers will often continue improving through their mid to late 30s), I was cut (alongside all but 5 of my freshman teammates) after my freshman year. Not wanting to give up on my goal of improving at a top program, I entered the transfer portal and was recruited by the University of Washington, one of the most dominant programs in the

country. At Washington I found coaches who saw the potential that I knew I had. They offered me an opportunity to develop amongst some of the best rowers in the world. Most of all, they offered me an incredible team full of young women who had stories just like mine. I knew immediately that it was the right place for me and am forever thankful for the opportunity I received to row here. I know now that I owe this opportunity, in large part, to the lack of caps on the team roster that makes room for hard working people like me, who are willing to travel far from home, without a rowing scholarship, for the chance to pursue their dream.

5.      I initially learned about the proposed roster limits from my triplet sister who runs at Michigan. Having redshirted her freshman year, she was disappointed because the new roster cap of 15 for track and cross country would make opportunities extremely competitive and make it very unlikely that she'd be offered a 5th year since injuries slowed her progress in her first 4 years. My coaches at Washington introduced our team to the rowing roster cap proposals in a recent team meeting because they wanted to be transparent about how it would affect our team. While 68 may seem like a large number, it would uniquely upset the current opportunities available to walk-on athletes in rowing. It would also create an uncomfortable waiting period where athletes training for the team for several months could eventually find out they were cut as late as Dec 1. That idea is upsetting as it means that lower recruited athletes (like I was initially) would exist in a sort of second tier to the athletes on the rest of the team who would not be waiting to find out if they would make it or not. The second tier athletes would likely get denied meals and gear (all the typical student athlete perks) that their more highly recruited counterparts would be given, while still doing the same 20+ hour a week training. What normally is a 2-week tryout period would turn into 3 months. I weathered tryouts at Michigan, and I know how it feels to be treated as second tier. Washington's culture is one of the best in the country, and yet it still would be a horrible experience. I can not

3

1    imagine how it would be at other schools, and I would not wish that upon anyone.

2         6.     I do believe this is taking a toll on my teammates because there are many who

3    realize that if this settlement passes they will inevitably be cut. The standard, which is already

4    extremely high, may become higher. I have improved significantly while at Washington and

5    am likely not in a position to be cut (I plan to take a 5th year). Any hiccup though, like a new

6    injury, could shake everything. With a roster cap of 68, there is no room for people rehabbing

7    from injury to have a spot saved for them. For me, the situation adds motivation, not fear. For

8    others, it may feel more bleak. Having trained back from a hamstring injury late this summer

9    and been threatened with being cut this fall if I didn't hit a certain 6k time (because coaches

10   assumed I'd lost a lot of fitness), I know that even great and wellmeaning coaches can cause

11   terrible harm to an athlete's well being with new cuts and standards like the ones that will

12   inevitably be imposed if the settlement passes. I ultimately PR'd on that 6k and beat the time

13   by a substantial margin, but that will not be the reality for everyone. Inevitably a lot of

14   deserving young people who rightly believe they can develop into top athletes on this team will

15   be served up ultimatums that are unfair and **avoidable**.

16        7.     I would ask that the court consider the harm that roster limits will impose on

17   young developing college athletes. Most athletes, particularly young women, do not reach their

18   peak growth years until well into their college years and beyond. If coaches, or the system

19   itself— by way of never admitting them—close doors for them to continue to pursue their sport

20   in these years, the effects will be farreaching and disasterous. I feel that this settlement

21   considered only a fractional number of athletes when reaching its ultimate decision and failed

22   to consider the countless others whose lives are shaped by their collegiate athletic experiences,

23   but get little recognition for the work they do. College athletics in the United States are more

24   than football and basketball, they are also a uniquely pivital development ground for the

4

1   Olympians of the future. Olympic women's rowers often don't peak until their mid 30's. These

2   future stars frequently emerge, not as junior national team members in high school, but as

3   walk-ons at high level university programs that gave them a spot on their roster to develop.

4   Think of all the harm that this settlement will do to more that 20,000 collegiate athletes who

5   spent their lives, up to this point, working to be on the D1 program they are on now, but will be

6   cut next year if the settlement passes. Think of the women who fought for decades for Title IX

7   protections only to have them completely undercut, 53 years later, when a faulty settlement

8   asked Universities to somehow fulfill their obligations while also upholding inherently unequal

9   roster quotas. College sports, at their core, are about giving athletes a competitive environment

10  within which to develop. With each decision like this, that prioritizes money over that prized

11  ideal, the very system of college athletics is undermined.

12      I declare under penalty of perjury that the foregoing is true and correct.

13  Dated: Seattle, Washington

14      January 26th, 2025

Signed by:

*Ellen M Koselka*

3B5937BC0C5244C...

15  Ellen Natalia Koselka
    NCAA ECID No. 2003830179
16  5209 39th Ave NE Seattle, WA 98105

James Kotowski
162 Riverside St. Apt. 2
Lowell, MA 01854

January 15, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is James Kotowski.  I am a current Division I athlete at the University of Massachusetts, Lowell and my NCAA ECID number is 2109324650.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                    Sincerely,
                    James Kotowski

**300**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

NCAA ECID No.: _____
Objection to Settlement Roster Limits

## DECLARATION OF JAMES KOTOWSKI

I, James Kotowski, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     My name is James Kotowski and I am a member of the track and field team at the University of Massachusetts, Lowell.  I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.     I committed to going to UMass Lowell early on in my senior year of high school in 2019. I was also accepted to the Francis College of Engineering as an aspiring Mechanical Engineering student. When I decided to go to UMass Lowell, I did not have an offer to run on the track and field team.

3.     I had no Track & Field offers to any colleges.  My best high school mark in any event I had competed in was 150 feet in the Javelin throw after competing for one season in my junior year.  That year, I placed sixth at the MIAA Division 4 State competition.

4.     I had planned to practice and train my senior year in addition to playing fall and winter sports, so that I could have a chance at increasing my javelin mark from the previous year and give myself a shot at making the Track & Field team at UMass Lowell. Everything was going according to plan until the Covid-19 pandemic took over in early 2020.

5.     My senior year outdoor Track & Field season was completely canceled, as well as the rest of my high school experience. There were no sports, no prom, no graduation, and no memories with my childhood friends. My plans had taken a hard turn, and I was forced to adapt. Stuck in my house with nothing to do, I could have given up and just played video games and slept through the pandemic until it was time to go to college. Instead, I took advantage of the

1

1    small home gym my dad has used for years with a set of dumbbells and a bench.

2          6.    I emailed UMass Lowell in hopes of being able to try out in the following fall
3    given that I expected to be on campus, and I received a response saying they would give me a
4    chance when the fall semester started, so I got to work. I spent my spring and summer getting
5    stronger by running and lifting and even invested a good chunk of money to buy my own javelin.
6    A week before I was set to move into my dorm at UMass Lowell, I received an email that I
7    would need to stay home and complete my first year of college online, which spoiled my chances
8    of trying out for the team.

9          7.    Fast forward to fall of my sophomore year. I finally moved onto campus and was
10    ready for my second fall semester. I emailed the track and field coaches again in hopes of being
11    given the chance to try out again.

12          8.    The generous coaches at UMass Lowell gave me my chance and I wanted to make
13    sure they didn't regret it. The throws coach, Barbara Smith, saw I had some potential and allowed
14    me to continue through my sophomore year to see how I would do in a competition.

15          9.    In my first competition, I threw a personal best of 178 feet while dealing with an
16    injury. Then, in my second competition, I broke the UMass Lowell school record with a throw
17    of 216 feet. I have competed at three consecutive NCAA regional competitions, achieved 1st
18    and 2nd place finishes at the America East Conference Championships, and achieved a 5th place
19    finish at the U.S Olympic Trials with a personal best throw at that competition of 248 feet.

20          10.    Having grown up in the small town of Stoneham, Massachusetts, I did not have
21    many resources at my disposal from my high school such as funds, equipment, and coaching.
22    UMass Lowell provided me with the necessary resources to help unlock my potential and I will
23    be forever grateful for that.

24          11.    These have been the best years of my life so far, and none of it would be possible
25    if they had not given me a chance to try out for the team.  I object to roster limits because they
26    will prevent athletes like me from receiving opportunities to develop at the college level.

27          12.    With limited roster spots, underdeveloped high-school athletes, like me, who do
28    not have access to the necessary resources will never be able to get their opportunity. I am lucky

to have been able to get my chance before the NCAA limits roster sizes, but I know future athletes will not get the same chance, and others will have their dreams crushed as they will not be able to show their true capabilities. I can't imagine what it would have felt like to train through the adversities of Covid-19 and only to be denied a chance to try out for the team because the roster was full.

13.     Sports have always been about inclusion, and limited rosters will drive others away from sports as they will feel they are not good enough.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Lowell, Massachusetts
        January 15, 2025

James Kotowski
NCAA ECID No. 2109324650
[Mailing Address]
162 Riverside St. Apt 2
Lowell, MA 01854

Leo Kurucz
1004 SW Sunflower Drive
Lee's Summit, MO  64081


January 17, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Leo Kurucz.  I am a current Division I athlete at the University of Missouri and my NCAA ECID number is 2110338799.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,
            /s/ Leo Kurucz

Docusign Envelope ID: 6ZA64F4F-BC06-4DD9-9A18-382A5666483E

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF LEO KURUCZ</u>

I, Leo Kurucz, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am a sophomore at the University of Missouri, where I am a member of its Division I swim and dive team. I am a member of the Injunctive Relief Class and object individually and on behalf of the class.

2. I started swimming when I was seven and made many sacrifices over the following years so that I could become a competitive swimmer. At thirteen, I quit participating in other sports—football, basketball, and baseball—to focus on swimming. At one point, I switched teams and had to drive 45 minutes each way to practice, twice on many days. Through this focus I realized some successes. Junior year I won a state championship in the medley relay, and senior year I was the state champion in the 200-yard freestyle. I set multiple high-school and state records.

3. College coaches started recruiting the summer before my junior year. Over ten schools reached out to me about joining their programs. College coaches liked that I could swim any freestyle event, from the 50 to the mile. I ultimately committed to Mizzou. I was promised, for all four years, a partial athletic scholarship and partial academic scholarship, along with access to the athletic training center, athletic dining hall, mental performance coaching, free physical rehabilitation, and academic support. The deal was too good to pass up. Plus, I got to stay close to home.

4. I had a successful freshman year at Mizzou. But halfway through the season, I suffered a back injury that required surgery, which I underwent this January.

1

5.      Last year, another teammate broke three ribs.  My coach did not cut him.  And when he recovered, he qualified for the U.S. Olympic Trials.  I am optimistic that, if I am allowed to stay on the team, I will also recover and return to peak performance.

6.      Early this past fall, the coaches told the team that eleven swimmers would be cut from the men's side and three or four would be cut from the women's side.

7.      Additionally, there are a lot of recruits coming and I know that some of them have already been told that they may not have a spot even next year.  I cannot imagine committing to a school and then being told after the commitment that you don't have a spot.  That's not fair to them either.

8.      It is highly likely that I will get cut from the team. I'm not for sure.  The likelihood of them keeping me on the team if I am injured is low.  If there are no roster limits, however, I know that my coaches wll aid in my recovery process and give me the time I need to get back into the sport.  They are helpful right now and have been a huge support system for me.  We just don't know what the future holds, and that is tough to think about especially after a big surgery. If the roster limits are not imposed, the coach has told us that all of us will have a place on the team.  He cares about us and does not want to make cuts to the team.  But if the roster limits are approved, he won't have a choice.

9.      I want to keep swimming, so if I am cut, I would enter the transfer portal.  But I am scared that I will not know whether I am cut or not in time to enter the transfer portal this year.  Plus, the portal will be flooded with swimmers like me who are trying to find another roster spot.  I am also concerned that schools will be hesitant to give me a chance because of my injury—that terrible timing makes the possibility of roster cuts even worse.  They might want to see my performance after a year of recovery if they are not sure that I will swim at the same level as before my injury.

10.      I do not want to be cut, nor do I want to transfer.  I have become very close with my teammates over the past two years.  I love the team culture at Mizzou.  I do not want to have to choose between my friends and teammates and my dream of swimming in Division I.

11.      Even though I have been injured, I am still very close with my teammates.  I live

with my teammates on a cul-de-sac—and all my neighbors are also swim teammates and some track and field athletes. But the threat of roster cuts has all of us anxious and unsure about what happens next year.

12.    If I have to transfer, I will lose my scholarships and potentially the opportunity to pay in-state tuition. I also might have to break my lease, which will have financial repercussions.

13.    These roster limits serve no purpose and are causing student-athletes like me a lot of stress and anxiety. I cannot be the only injured player who is facing this situation. Without roster limits, injured players like me would be able to continue fighting for our dreams of playing college sports at the highest level.

I declare under penalty of perjury that the foregoing is true and correct.

Columbia, Missouri
January 17th, 2025

Signed by:

Leo Kurucz
NCAA ECID No. 2110338799
1004 SW Sunflower Drive
Lee's Summit, MO  64081

Nick Laffey
11717 Morning Star Drive
Germantown, MD 20876

January 17, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Nick Laffey.  I am a current Division I athlete at Loyola University –
Maryland and my NCAA ECID number is 2208636047.  For the reasons stated in my attached
declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL
Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this
objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at
the Fairness Hearing on April 7, 2025.

                                                       Sincerely,
                                                       Nick Laffey

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF NICK LAFFEY</u>**

I, Nick Laffey, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a sophomore at Virginia Tech and was, until this winter, a member of the Division I men's soccer team.  I am a member of the Injunctive Relief Class and I object individually and on behalf of the class.

2.      I started playing soccer when I was three years old and fell in love with the sport.  I continued working on my game through high school, and my hard work paid off.  I was named the 2021 & 2022 D.C. Gatorade Player of the Year, the 2021 Washington Catholic Athletic Conference Player of the Year, and was recognized in 2021 & 2022 as All-Met First Team for the D.C. area.

3.      Beginning in the summer before my junior year, I started to receive college recruitment interest, including from multiple Division I programs.  This included Virginia Tech.

4.      As part of the recruiting process, I visited Virginia Tech and immediately felt at home on campus and with the team. After receiving a scholarship offer, I committed to the program.  I played on the soccer team during my freshman year and greatly enjoyed it.  I got to play the sport I love with great coaches, great teammates, and great facilities.

5.      I was looking forward to my sophomore season when I arrived on campus this

1

past August.  In September, though, I started hearing about the possibility of roster limits from my teammates.   I did not think much of it at the time because it sounded like only a small chance.

6.    This all changed on November 11, when my coach told me during a meeting that I would be cut from the team, effective immediately.  I would not be able to finish my sophomore year on the team.  My coach told me that roster limits were the reason he was cutting me from the team.  That same day, he cut other players from the team, too.

7.    Playing college soccer has been my dream, and I was immediately determined not to let it end so soon.  After I heard that I was cut, I entered the transfer portal.  This was a hard decision for me, because my entire life is at Virginia Tech.  My teammates are my best friends, and Virginia Tech offers amazing benefits for its athletes.  Transferring meant that I would give all of this up just to keep playing soccer.

8.    I feel lucky that I was able to get another roster spot and that I will continue my soccer career at Loyola Maryland.  But I will not get an athletic scholarship during the spring to play at Loyola.  And while I am excited to join Loyola's squad, the university does not offer as many perks to its athletes.  For example, it does not offer free weekday meals like Virginia Tech does.  My new coach has told me I should get an athletic scholarship down the line, but nothing seems guaranteed.

9.    Transferring is causing me to uproot my entire life to continue playing soccer.  When I started at Virginia Tech, I had no idea that this could happen.  I believed I would play as a Hokie for my entire college career.

10.    I know that I am one of the "lucky" ones because I found a new roster spot.  So many athletes will not be this lucky and will have to prematurely retire from the sports they love.  This is not fair.

11.    It hurts so much more because there is no reason for it.  The NCAA does not need to implement these roster limits.  The roster system was not broken before.  It does not need fixing.  The roster limits have negatively impacted me personally but will also negatively impact hundreds of other college athletes.  Roster limits have no place in this settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Montgomery County, Maryland
      January 17, 2025

Nick Laffey
NCAA ECID No. 2208636047
11717 Morning Star Drive
Germantown, MD  20876

Carly Lauritzen
4040 7th Ave NE
Seattle, WA 98105


January 26, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Carly Lauritzen. I am a current Division I athlete at the University of Washington and my NCAA ECID number is 1909693548. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

              Sincerely,
              Carly Lauritzen

312

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF CARLY LAURITZEN**

I, Carly Lauritzen, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a senior at the University of Washington and am a member of the NCAA Division I Women's Rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have been an athlete my entire life. For ten years, I was a competitive gymnast, dedicating myself to four-hour practices, six days a week. Being an athlete has always been a fundamental part of who I am. When I reached high school, I retired from gymnastics and became a pole vaulter—a new challenge that was both exciting and intimidating. I had never participated in school sports before, as gymnastics had consumed all my extracurricular time. However, once I committed to pole vaulting, it became my passion, and I ultimately became a state champion. I had hoped to continue my athletic career at the University of Washington as a track and field athlete, but due to the COVID-19 pandemic, athletic recruiting became difficult. When I accepted my offer to attend UW, I had no assurance of a spot on the track team. Just weeks before moving to campus, I received an email from the UW Women's Rowing Team, inviting incoming female students to try out for their program as walk-ons. I thought my dreams of competing as a Division I athlete were over, but this email gave me another chance. I had no prior knowledge of rowing, yet I knew this opportunity was rare. The program welcomed me, taught me the sport, and helped me develop a passion for something I had never imagined myself competing in. Once I made the team, I began training alongside national champions, world champions, and even Olympians. The learning curve was steep—rowing requires an immense

1

technical and physical foundation—but over the course of a year, I built the skill and fitness necessary to compete at the varsity level. Our head coach, Yaz Farooq, recently gathered our team to inform us of the potential roster caps. Our team is currently the largest it has ever been, with 103 athletes. This depth is crucial to our development as a team and as individuals. In rowing, novices need time to develop, and their progress in that first year is exponential. The proposed roster cap would severely limit these opportunities, potentially eliminating future Olympians before they even have a chance to grow into the sport. The roster cap would fundamentally change the dynamic of our team and harm athletes at every level. Walk-ons, like me, would not have enough time to develop before being evaluated for a permanent spot, effectively ending their athletic careers before they begin. Fewer athletes would be recruited, reducing the pipeline for future Olympic and national team rowers. Current varsity members would face uncertainty about whether there is a place for them on the team. Injuries, a common reality in rowing, could become career-ending, as athletes may hesitate to seek treatment for fear of being cut. Personally, I suffered a season-ending back injury just over a year ago. Thanks to the care and support of our incredible staff, I was able to recover fully and return to the sport this season. Had a roster cap been in place, I likely wouldn't have had the chance to rehabilitate and make a comeback. Worse, I might not have had access to the medical treatment I needed through the athletic department. Athletes are already under immense stress balancing academics and athletics. A roster cap would only worsen this burden by creating an environment of fear—fear of getting cut, losing financial aid, access to tutors, medical care, housing, and so much more. Many student-athletes, myself included, would face devastating consequences if we were suddenly forced off our teams. Because of my injury, I have an extra year of eligibility to compete. I had planned to extend my undergraduate degree at UW to continue rowing, accepting the financial burden this extra year will have on me and my family in order to pursue the sport that I love. However, if the roster cap forces me off the team, this investment—both financially and emotionally—will have been for nothing. I would lose my chance to compete, my access to crucial athletic and academic resources, and most heartbreakingly, my teammates, who have become my family. I plead with the court not to impose these roster limits. This decision will

2

devastate thousands of student-athletes and severely restrict opportunities for so many who, like me, came to their sport through unconventional paths. Rowing, and collegiate athletics, thrive on depth, development, and opportunity. Please do not take that away from us.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
        January 26, 2025

Carly Lauritzen
NCAA ECID No. 1909693548
4040 7th Ave NE
Seattle, WA 98105

Caroline Law
528 Briar Rd.
Bellingham, WA 98225

1/30/2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Caroline Law.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2308985316.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                 Sincerely,
                                               Caroline Law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF CAROLINE LAW**

I, Caroline Law, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Freshman at the University of Washington, and I am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I came onto UW rowing team as a recruited walk-on after previously playing soccer and a variety of other sports as a child. Although I didn't have any rowing experience prior to college, my experiences with other types of competition prepared me to be a D1 athlete. For almost half my life, I spent every weekend at soccer games, often having to drive several hours to away games in Seattle or across the state. Summers were taken up by soccer tournaments and summer nights were for soccer practices. My life revolved around sports, and I couldn't see my life without it. For years I convinced myself that I loved soccer and that all the time and resources My family and I were putting into it were worth it. I ignored the fact that I dreaded the two-hour drive to Seattle every weekend and lacked the confidence to excel in the sport. I often felt like a failure and wondered what was wrong with me. I did all the training and more needed to be a decent soccer player, yet I simply wasn't clicking for me. I would do extra cardio, hours of footwork in my garage, and watch soccer games every weekend. But it was never enough. I lacked the confidence and mental strength required to be successful, and I hated myself for it. I had all the physical capabilities I would need, yet my mind failed me time and time again. That is until I found a niche sport called rowing.

3.      My brother had just walked-on to the men rowing team, and my mom was

1

1  ushering me to try it out by filling out a questionnaire the women's team had on their social

2  media. I was hesitant at first because I had heard how challenging it was from my brother, but I

3  eventually caved because why not? So, I filled out the questionnaire and got a response within a

4  couple days saying I could come out to see a practice. A few weeks later, I was watching the

5  team from a safety launch, idolizing the rowers, not knowing one day I would be rowing right

6  next to them.

7       4.     Although I didn't have any significant athletics achievements, the coaches were

8  eager to recruit me and were consistent with staying in contact with me and notifying me of

9  anything I needed to know. They invited me to events and practices, and when it was time to

10  sign the NLI, they immediately connected me to my future teammates and gave me the proper

11  resources to prepare for college athletics. Even though nothing about me was very 'standout',

12  except for my height, the coaches took a chance on me simply because they could. If the roster

13  limit wasn't the number that currently is, they wouldn't have taken a chance on me, and I

14  wouldn't be where I am today, a freshman walk-on that has exceeded varsity standard erg times

15  and has trained in varsity boats. I have found a deep love for this sport and confidence that I

16  haven't had with any other sport that I've played, finally proving myself wrong and that I'm

17  capable of showing my true potential and pushing back on mental barriers that I've struggled

18  with for so long.

19       5.     I am forever grateful for the opportunities that have been given to me because of

20  this program, and it would not be possible without a big roster. I found my community, my

21  friends, and my support system through rowing, and I wouldn't be at the University of

22  Washington if it weren't for scholarships for local athletes, like the Hometown Husky

23  scholarship as well as the possibility of NCAA scholarships. The impact the team atmosphere

24  has on everyone's performance is enormous and having people you trust by your side at all times.

25  If there were large cuts to the team, my support system would be significantly reduced, along

26  with many other people, and it would impact performance both athletically and academically. It

27  would be a serious detriment to team moral and mental health, which would hurt our team's

28  performance. If close to 40% of the team in cut in the middle of the school year, I can only

imagine the repercussions it would have on both the people being cut and people losing their friends and teammates. Much of the joy I have from this sport is seeing my friends and my teammates at practice every day, and if that were to be ripped from me with one fell swoop, it would completely change the team environment and will have lasting consequences.

6.    It's vital that the roster limit isn't cut down to only 68 spots, because it wouldn't give developing athletes like myself the chance to discover their true potential It would disrupt the team dynamic and environment, with people losing their support systems in the middle of the school year, making them question their ability to compete as such a high level, further impacting the stability of the team. As a walk-on, I wouldn't have this opportunity without big roster limits, and I wouldn't be able to contribute to the team as I have this season and continue the amazing walk-on legacy at the University of Washington.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, WA

      January 30, 2025

Signed by:

Caroline Law
NCAA ECID No. 2308985316
528 Brair Rd
Bellingham, WA 98225

3

Isaac Lee
122 Princeton Lane
Tullahoma, TN 37388


January 22, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Isaac Lee.  I am a current Division I athlete at Auburn University and my NCAA ECID number is 2204525161.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                    Sincerely,
                                    Isaac Lee

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF ISAAC LEE**

I, Isaac Lee, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am freshman at Auburn University and a member of its NCAA Division I men's swim team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have been swimming since I was five years old, and I dreamed of having the chance to swim at the Division I level for as long as I can remember. I was so excited when Auburn University gave me the opportunity to swim for their team. It is a true privilege to swim for Auburn and their coaching staff.

3.      The proposed roster limits in the *House v. NCAA* Settlement are unfair for student athletes that are currently participating in college sports like me. It is also unfair to their coaches. My coaches as well as other college coaches have spent hours of their personal time recruiting swimmers, developing those swimmers, and cultivating the team's relationships. These roster limits will effectively destroy the current teams that they have brought together.

4.      In addition, freshman swimmers like myself will never be given the opportunity to grow and develop as swimmers. Most freshman athletes need to be given the chance to adapt to the rigorous training Division I sports require.

5.      Auburn University gave me a 4-year athletic scholarship, and I hope that will be honored if I am cut. However, my parents would be responsible for an additional $30,000 per year to cover the almost $60,000 price tag to attend Auburn as an out-of-state student if I was dropped from the team. I would lose free dining, free healthcare, free tutoring, and summer

1

1  stipends, just to name a few.

2      6.    I would no longer be able to stay at Auburn with these additional costs.  Since I

3  had a four-year contract, I never dreamed that I could potentially lose my position on the team

4  before I graduate.  I have also signed a leasing agreement for housing next year and my parents

5  are co-signers.

6      7.    I have dedicated most of my life to this sport and I deserve the chance to become

7  the swimmer that I know I can become.  I want to do this at Auburn because I want the honor of

8  graduating from the University I believe in.

9      8.    In addition, it is too late for swimmers to enter the portal and find another school.

10 For most of us, it is cost prohibitive to remain at the university without the financial benefits of

11 being an athlete.

12     9.    Please consider the thousands of us that will be in the same position across the

13 nation and at least allow us to be "grandfathered in" since we made decisions for our future based

14 on information and promises that we thought were immutable.  Please consider the thousands of

15 hopeful high school athletes as well.  Their opportunities to swim or compete in other sports at

16 the collegiate level are deteriorating due to the imposed limits.  Please consider the coaches that

17 have devoted their lives to the development of the sport and their teams.

18     10.   Please reject the roster limits.

19     I declare under penalty of perjury that the foregoing is true and correct.

20 Dated: Tullahoma, TN

21      January 22, 2025                     *Isaac Lee*

22                                          Isaac Lee
                                           NCAA ECID No. 2204525161
23                                         122 Princeton Lane,
                                           Tullahoma, TN 37388

24

25

26

27

28

Megan Lee
9201 Interlake Ave. N
Seattle, WA 93105


January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Megan Lee.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 1711967922.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                    Sincerely,
                                                    Megan Lee

**323**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF MEGAN LEE</u>

I, Megan Lee, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a graduate student at the University of Washington and am a member of the NCAA Division I Women's Rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Being a Division I Athlete has been one of the greatest privileges of my life. The idea of being recruited to row in college pushed me to be a better student in highschool because it pushed me to get my grades up in order for the coaches to recruit me. In turn, this motivation in school has set me up for future success. The desire to become a Division 1 Athlete took sacrifice. Every summer I moved away to a different state to pursue the Junior National team with the hopes it would help my chances of being recruited to a top university. I missed family gatherings, vacations, and most of all, I missed out on working a job to earn money. The pursuit of rowing in college has left me with less money than those of my friends who were able to work all summer. However, every single sacrifice was worth it because I got the opportunity to be on a Division 1 rowing team where I learned more life skills than any class could ever teach me.

3.      The recruiting process was very exciting for me. It felt that all of my hard work in high school was paying off. I had coaches reaching out to me through email, I was on phone calls with coaches, and I visited numerous campuses to see which school felt right for me. During my process I learned about how I could have the best of both worlds; pursue my sport at a very high level while gaining an amazing education. I was urged by many people in my life that I needed to choose a school that was right for me in both an athletic and academic sense. After my

visit, I immediately knew where I wanted to spend the next four years. I chose Duke University as my undergraduate school to commit to. Nothing could sway me from the desire to attend Duke. I worked harder than I ever had to ensure the coaches would offer me a spot. I hung Duke posters all around my room, I thought about Duke during every hard workout, and I began dreaming of my life as a Duke Student-athlete. It paid off; a few months later, the coaches offered me a spot in their freshman recruiting class with a 25% scholarship. They told me I was committed to their school and would only be cut if I did not keep my GPA up through the rest of high school or if I had any disciplinary action. I could finally take a deep breath knowing that my future was secure. My hard work had paid off and now I could focus on improving myself as an athlete instead of stressing about my spot on the team. This is a luxury that student athletes will not have anymore with the creation of the roster caps. My recruiting process for my graduate year proves even further the detriment of a roster cap. I developed a lot through my time at Duke, and am progressing through the National team with the hopes of making the 2028 Olympic team. I had one more year of eligibility and wanted to further my education while rowing at the University of Washington which is the best of the best. I made a last minute decision in July, to come to UW for the upcoming school year and it has been one of the best decisions I've made. This would not have been possible for me if there were a roster cap because the coaches would not have been able to add a last minute addition so late in the summer. This roster cap would have stunted my development and denied me another year of education to better myself for life after sport.

4.      Roster limits have been a looming stress for the past few months. Last week we had a meeting with our coach where she outlined the process that the team will follow in order to decrease our team to fit within the limits. The obvious effect is that many of our current teammates will not continue on our team. However, an unseen effect is that the team will not get to race in the fall. Teams must be at 68 members by December 1st or by their first competition. Our team needs as much time as possible to decide who will be included in the 68 athletes so we will not be finalizing the roster until December 1st. This ruling takes away what we all love so much about our sport- both racing and our teammates

5.      Rowing is all about long term development. A female rower does not reach her peak until 28 years old. This is very different than other sports where in high school, an athlete has almost reached their potential. These roster cuts are forcing rowers to focus on short term success, instead of long term development. The walk on program at universities is a strong pipeline to the USRowing National Team. There have been numerous Olympians that walked onto their collegiate rowing team and are now Olympic medalists. This ruling not only affects students at the collegiate level, but it also impacts the future success of the United States Olympic team.

6.      Since I am a graduate student, these cuts will not personally affect me. However, if these cuts had been in place during my undergraduate education, my college experience would have been very different. My best friend, Charlotte, was a walk-on with no rowing experience. With the roster cap, she would not have been on the team, and our team would have significantly suffered because of it. Charlotte was the heart and soul of our team. She boosted everyone's mood, built bonds between the classes, aided the captains in logistical decisions, and rowed her way to a silver medal at the ACC championships. At times, without her, my performance in a top boat would have been worse and I would not have loved my university as much as I did. I use this example to prove that even people not competing at the top of the team play a significant role in the success of the team and taking these people away would change the entire team's trajectory.

7.      The NCAA states "Grow the college sports ecosystem" as one of their missions and priorities. This roster limit is in direct opposition to the NCAAs mission and priority. Please consider revoking the roster limits in order to allow full development of student-athletes as students, athletes, and well rounded people.

1    I declare under penalty of perjury that the foregoing is true and correct.

2

3

4   Dated: Seattle/King County, WA

5        January 26, 2025

Megan Lee
NCAA ECID No. 1711967922
9201 Interlake Ave N.
Seattle, WA 93105

Alana Lei Lin Uehara
McCarty Hall, Room #748
4330 Little Canoe Channel NE* Seattle, WA 98195


1.27.25

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Alana Lei Lin Uehara.  I am a current Division I athlete at the University of Washington, Seattle and my NCAA ECID number is 2207615078.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                        Sincerely,
                        Alana Lei Lin Uehara

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

Case No. 4:20-cv-03919-CW

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Hon. Claudia Wilken

## <u>DECLARATION OF ALANA LEI LIN UEHARA</u>

I, Alana Lei Lin Uehara, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a freshman at the University of Washington, Seattle and am a member of the NCAA Division I Women's Rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I am from Oʻahu, Hawaiʻi where there is only one youth team and one boat in the entire state. I worked for almost 3 years, 5 days a week and 1.5-2 hours a day at 5:15 AM before school, the only time our coach could be there before her day job started chasing the dream I had of becoming a collegiate athlete at the University of Washington. My parents and family sacrificed so much for me to be able to attend camps to learn more about rowing and to have the best chance I could since there is little to no rowing where I am from. I attended an online school so that I could focus on pursuing my passion and missed out on many high school experiences such as proms, parties, and football games/rallies so that I could put myself in the best position to have the opportunity for recruitment at my dream school. These are all experiences that I truly would never have changed or went back on.

3.      Due to the sport and the opportunities that my teams' hard work got us to, we were able to race in the first 2,000m race that any team from Hawaiʻi had raced in 50 years at the San Diego Crew Classic. We raced in an 8+ although we only had a 4+ to prepare with

Docusign Envelope ID: 5091EBF5-B1F4-4C15-B4BB-B250756A63AD

throughout our months of training and only 3 of the athletes (including me) had ever been in an 8+ before the race weekend. This was my very first race and an extremely huge growth experience for me. I am a coxswain and was able to get my first race recording here to continue reaching out to coaches to really have more of a chance at achieving my dream of participating in collegiate athletics. I worked to prepare for this race for months, reaching out to coxswains and rowers who had completed the course to get perspective and insights on how best to prepare my crew.

4.    My recruiting experience was truly a blessing and a journey I searched for a team that allowed me an equal opportunity to be selected, with a truly incredible team culture where I could grow the most. I chose the University of Washington because it promised me all of the above. I turned down other opportunities including those that promised me scholarships because I know that Washington helps to develop world class athletes with the foundation being individuals who maybe never would have found the sport if not given the opportunity. Washington is everything I could have hoped for and more but now hearing about the drastic roster limits is truly and absolutely devastating.

5.    I learned about roster limits through a team meeting and from talk of other athletes and news after the limits were introduced. I know that many teams and athletes have already been cut in anticipation for these huge changes. There have been an incredible amount of athletes affected. I know that my team has always had a larger incoming class because it helps us to set the stage for an incredible year with many more opportunities for growth for coxswains and rowers alike. We are privileged to have these numbers and they help to make our team who we are with the diversity in backgrounds, experiences, and expertise. I know that if the roster limits are passed, many athletes will never be able to live up to their full potential or even have the chance to. Dreams will be cut off at the very base and years of sweat, tears,

1    sacrifices, and work will all be in vain if these cuts pass.

2        6.    These cuts are absolutely taking a huge mental toll on all of my teammates.

3    Individually, I know all of the freshmen coming already have something to prove, but the idea

4    of these cuts only creates discouragement, fear, and dread at the thought of making mistakes or

5    underperforming. There is an insane amount of psychological and physical pressure within the

6    sport of rowing and in addition to the 20 hour weeks we have just transitioned to, drastic cuts

7    for our team to reach the extremely lowered number of spots will be devastating for the team

8    dynamic and psyche. I have talked to some of the athletes and the situation really feels

9    hopeless and it feels like our work will have been in vain.

10       7.    If I am cut, I stand to lose almost everything. I am a student athlete with

11   learning differences, my family requires financial support and my parents have put in a loan to

12   be able to even send me here to be able to follow my dreams of collegiate athletics. If I am cut,

13   I will lose the academic support that I have truly thrived with, the meal plan and benefits of

14   food and nutrition from the team, the psychological support and counseling that I have

15   benefitted so much from, and the identity and purpose that I have revolved around for the past

16   4 years of my life. I have made lifelong best friends through this sport. I have met people that I

17   will want to know for the rest of my life. Not to mention the support from the school for

18   student athletes and the emotional and mental support that we have the privilege of receiving,

19   but also my family will have sacrificed so much and it will all feel almost as if it were for

20   naught.

21       8.    Due to roster limits, I am having to consider what other opportunities will be

22   available for me and may have to transfer or even go back home. I don't know if I could

23   imagine not competing or not being surrounded by the powerful individuals that make up my

24   team and push me to be better every single day. For the position of a coxswain, there are

extremely limited opportunities especially at places that truly care about the growth and holistic wellbeing of their coxswains such as University of Washington, where I am now. I will not only have to leave behind the support, growth, and progress that I have made here, but I will also have to try and find somewhere else that I can truly feel at home at.

9.    I beg that the court please consider our desperate pleas to not pass the roster limit. Many of us have worked for this dream to become collegiate athletes for our entire lives and our goals and futures revolve around this chance that our families have sacrificed so much time, energy and resources to support us in pursuing. Sports at the college level are already very competitive, which is the nature of it all, but adding in roster limits will limit both our opportunities as athletes but also our chances as women to have equal opportunities as male athletes. As an Asian American and Pacific Islander woman, I have worked countless hours to have the chances that my counterparts do both in sport and in life. I truly believe that the roster limits would only hurt our teams, athletes, and people. Please do not take away our chances at finding our true potential and seeing how great we could really be. I prayed and worked for these opportunities every day as did my teammates and as did all of the athletes that these limits will be impacting.

10.    Please don't take away our dreams to put these roster limits into place. Please don't throw away the years of sacrifices both us and our families made to have these opportunities over one decision.

1    I declare under penalty of perjury that the foregoing is true and correct.

2

3   Dated: Seattle, King County,
    Washington

4        January 27, 2025

    Signed by:

    Alana Lei Lin Uehara
    NCAA ECID No. 2207615078
    McCarty Hall, Room #748
    4330 Little Canoe Channel NE*
    Seattle, WA 98195

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Macy Lewis
1901 Mission Hill Cir
Edmond, OK 73025

1/30/2025

Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Macy Lewis.  I am a current Division I athlete at Texas A&M and my NCAA ECID number is 2109321092.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Macy Lewis

334

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF MACY LEWIS</u>**

I, Macy Lewis, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at Texas A&M University and a member of the NCAA Division I women's swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      To get to this level, I practiced year round since I was 7 years old.  As I got older, I practiced 7-8 practices a week, which totaled 12 hours a week.  I gave up most other activities because of my commitment to swimming.  I travelled and missed school dances, parties, didn't join other social clubs because I was so busy with swimming practice.  My family scheduled our vacations around my swim schedule to help me achieve this goal.

3.      I made Sectionals national cuts at 13 years old, and then Futures time cuts at 14.  I made Junior National times by my sophomore year in high school, all while also getting a 3.67 GPA at a college prep high school.  I was the State Champion for three years in high school on my two individual events, and runner up on the two individual events the other year.  I led my Relays to victory against the team that won state two years in a row.

4.      I chose Texas A&M University because it has a great swim program, and the coach offered to develop me to be even better.  A&M has excellent academics, so this was a school I could also get a degree from for my future career.  The team atmosphere was great and the swimmers all seemed to get along.  My mom went to A&M, too, so that made it even more special for me to go to the same school!

5.      The school spirit is amazing and no other school can match it.  The swimmers

1

there stayed all four years which showed me it was a good program.  It is also only 6.5 hours from home, which was important to me because I didn't want to go too far away.  I turned down other offers to go to Texas A&M, and do not want to have to pick between not swimming or transferring to another school.

6.      The coaches haven't talked about it, but I found out from social media and the website SwimSwam.  It gave me a lot of anxiety and trepidation starting college.  I was I leaving home for the first time and having to practice 20-25 hours a week for swimming, but now, I feel the pressure that if I don't perform I can be cut.  The coach that recruited me left the school, too, so the new coaches did not know me.  They may just go to the portal.  Honestly, our team is suffering from the stress of this and some people are not doing as well because of it.

7.       My first semester was really hard to adjust.  I cried a lot and had anxiety, as did my teammates.  Most of us had to go see the sports psychologist at least once.  Swim is also combined with dive in the roster limits, so no one knows how many divers will be kept.  This just adds another layer of uncertainty.

8.      My parents already had to sign a lease in the fall, which is common for big schools.  So if I get cut, I have to sub-lease my apartment if I want to swim somewhere else.  A lot of people on the team are depressed, and several have left practice crying.  It is hard to enjoy swim with this kind of pressure.

9.      I also want to do well in school so it means I don't have much free time to enjoy college and get to know more people.  I also think it has affected my performance because it has caused me to second guess my abilities.  I also found out the new coach had cut 12 girls last year to get ready for the settlement roster limits, but she did it after the portal closed for those swimmers. So that is also stressful to know that could happen to me.

10.      If I am cut I will lose my meal plan, which is equivalent to $9,000, my sport I love, my friends, tutoring, academic counselling, eating at special dining hall with teammates, and my identity and purpose as an athlete.

11.      One of my biggest worries is that, if I have to sublet my apartment because I need to transfer to swim somewhere else, this will be an added expense on my parents.  I haven't had

2

time to join other organizations because of swim, so if I am cut from the team I will have to start over with friends, even if I stay and A&M.

12.    The choices I am facing is to transfer to another school to swim, or stay and don't swim and socially starting all over again at my school. It is stressful because I just went through this adjustment as a freshman in college, and really don't want to have to do this again. If I transfer I may also lose college credits and add another year onto college. My teammates could lose two or more years of college credits if they are older.

13.    This is not a fair choice to make. Swimmers don't get full rides so none of us swim to get rich. It is just nice to get some school paid for to take the burden off my parents. After all the work I and other athletes have put in for years, it is really disheartening that this is all happening.

14.    Please do not have the schools put roster limits in place for any sport in college. The U.S. Olympic team will also be greatly affected as most Olympians come from college teams in the US. With a generation that already struggles with anxiety, the roster limits are creating hardships on athletes that we don't need.

15.    College is also so expensive. Making athletes choose between their sport and adding more years to earn our degrees creates unnecessary hardships on the athletes and our families. Please stop the roster limits.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: College Station, TX

January 30, 2025

Signed by:

E056B59C9C2D4C1...

Macy Lewis
NCAA ECID No. 2109321092
1901 Mission Hill Cir
Edmond, OK 73025

Kyley Lloyd
111 Monument View Lane
Cary, NC  27519

January 21, 2025

  Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Kyley Lloyd.  I am a current high school student at Green Hope High School and a swimmer. My NCAA ECID number is 2312186494.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                Sincerely,
                Kyley Lloyd

**338**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF KYLEY LLOYD**</u>

I, Kyley Lloyd, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a 17-year-old high school junior and swimmer, and I hope to be recruited to compete on a Division I college team.  My older brother is Landon Lloyd, who is a freshman swimmer at Auburn University.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have been swimming competitively since I was 5 years old.  Like my brother did, I swim with the Triangle Aquatic Center Titans and my high school, Green Hope High School.  And, just like him, I have also been working hard to be good enough to swim on a Division I college program.

3.      My brother and I faced significant challenges growing up.  Our Dad had ALS. Our family was always emotionally and financially stressed as a result.  My Mom worked hard to support me and my brother in our dreams to swim for a Division 1 college, while also taking care of my dad.  Because of this, my brother and I both knew we had to get financial aid to be able to support ourselves in college.

4.      I have been practicing in the water 6 days a week, for at least 2.5 hours a day.  I also have dryland training 3 days a week, lasting an hour.  On some days we have two practices a day.  I've had to sacrifice many life events like birthday parties, family trips, school functions, to accommodate my practice schedule.

5.      My hard work paid off in high school.  In my freshman and sophomore year, I helped my high school team make it as conference and regional champions.  At the North

1

Carolina high school state competition last year, I also helped lead my team to a second place finish and claimed my first state championship title in the women's 4x50-meter free relay. I am also an All-American athlete.

6.    I learned about the roster limits proposed in the *House v. NCAA* settlement from my brother. He is very smart (he has a 4.0 GPA in engineering), but he is very concerned about being cut from his team even though he signed a 4-year contract. The extra stress he and my Mom are enduring because they don't know if he will be able to continue at Auburn has been terrible. By the time he finds out whether he has a roster spot, he will have missed the deadlines to apply to an in-state university. My Mom is also stressed because he already signed a lease for the following semester, and it would cost our family a lot to break it.

7.    I am worried for him – and for myself. The roster limits will limit my own chances of competing at the next level when I graduate from high school in 2026. Being able to earn a place on a college swim team would greatly help me pay for my college education, in addition to giving me the structure and focus I have worked so hard to obtain to get to the next level of swimming. But due to the roster limits, I am afraid that dream is now out of reach.

8.    I have personally experienced the effects of the roster limits on high schoolers like me. My own recruiting process was interrupted last year because I suffered a major knee injury in November, which led me to have surgery in late December 2024. I had been talking to about 25 schools before my injury, but since then, I have not been able to focus on recruiting. I am concerned that when I am healed, there will be no spot for me because the roster limits are causing schools to make fewer offers.

9.    I want to swim in college so badly. Swimming is part of who I am, and it helped me take care of myself while my Dad was sick. I don't know what I'll do if all of that is cut short because the roster limits mean there is no space for me in any competitive college swim roster.

10.    It is not fair to implement the roster limits so suddenly and without warning. Athletes who have worked so hard to earn a place on a college swim should not have the results of their hard work and success yanked out from under them.

1    Athletes who have worked so hard to earn a place on a college swim should not have the

2    results of their hard work and success yanked out from under them.

3        I declare under penalty of perjury that the foregoing is true and correct.

4

5    Dated: Cary, North Carolina
     January 21, 2025                          *Kyley Lloyd*

6                                              Kyley Lloyd
                                              NCAA ECID No. 2312186494
7                                              111 Monument View Lane
                                              Cary, NC 27519

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3
DECLARATION OF KYLEY LLOYD
CASE NO. 4:20-CV-03919-CW

Landon Lloyd
111 Monument View Lane
Cary, NC  27519


January 25, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Landon Lloyd.  I am a freshman NCAA Division I athlete at Auburn University, and my NCAA ECID number is 2204498641.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                               Sincerely,
                               Landon Lloyd

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF LANDON LLOYD

I, Landon Lloyd, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at Auburn University, where I swim for the men's Division 1 swimming and diving team. I am a member of the Injunctive Relief Settlement Class and object to roster limits individually and on behalf of the class.

2.      I have been swimming competitively since I was 7 years old. While in high school, I competed with the Triangle Aquatic Center Titans. Since I was 12 years old, I knew I wanted nothing more than to swim on a Division I college program.

3.      I faced many challenges in my life to get to Division I. Growing up, training was difficult because my father suffered from ALS. It was tough on all of us, and we did everything we could as a family to care for him. On top of that, his medical bills were extremely high. My family experienced financial instability for most of my life as a result.

4.      I wanted to swim in college so badly, but paying out of pocket for school would be brutal on my mother, who struggled every day to provide for me and my sister while caring for our father. Simply knowing about the debt I'd have to take on just to attend college was a huge source of stress in my life. To relieve the financial burden on my family, it was important that I earn an athletic scholarship.

5.      So, I worked very, very hard to get great at swimming. I was a North Carolina 4A High School State finalist in the 100-meter freestyle. I was also a USA Swimming Futures Championship qualifier in the freestyle, backstroke, butterfly, and individual medley events. I

spent years developing in my sport and made countless sacrifices along the way to reach the performance standards needed to earn a Division I swim scholarship.

6.    When recruiting started, over 30 schools contacted me through text, emails, and phone calls. I also reached out to a few schools through text and phone calls of my own accord. The schools that showed the most interest, and which I considered most seriously, were the University of North Carolina, Auburn, and Virginia Tech. I received two offers of financial aid. Virginia Tech offered me a 15% cost of attendance coverage for 3 years, while Auburn offered me a scholarship for approximately $24,000, including an *Alston* award that covered housing and food, and extra for expenses.

7.    The scholarship offered by Auburn was offered in a four-year National Letter of Intent – a contract – that I later signed. Due to my financial circumstances, there was no question that Auburn's offer was more competitive. I also *liked* Auburn. While I compared the cost of attending many more schools, Auburn and Virginia Tech were my favorites regardless of the financial incentives they offered me. I ultimately chose Auburn because of the financial aid *and* because of the wonderful engineering campus, student facilities, and the campus environment. I loved Auburn's culture and how the school presented itself as a small yet exciting town.

8.    Earning a spot on Auburn's roster was a significant milestone in my swimming career and a tremendous relief for my family. It brought my mother peace of mind knowing I could look forward to a stable college environment in which to swim, compete, and grow. And, my athletic scholarships offered us a financial lifeline.

9.    I was so excited to start my freshman year at Auburn. I arrived on campus full of hope. I was aware, however, that something ominous was going on. I originally learned about the proposed roster limits in the *House v. NCAA* settlement over the summer through social and online media. I had talked about the settlement with fellow club and future teammates over the summer, but it hadn't yet occurred to me that I would be personally impacted.

10.    Then, when I began my first season in Fall 2024, my coach mentioned that roster cuts were possibly on the horizon and that there was a lot of uncertainty about what the Southeastern Conference's (SEC) and NCAA's roster policies would be because of the settlement. Other than that, neither the coaching staff nor the school gave us details about the roster limits. Everything else I learned about the roster limits impacting my team came from online sources or word of mouth speculation by teammates and friends. I never asked our coaches about what would happen to my athletic scholarships, because they hinted that if I were cut, I would lose my position on the team *and* my scholarships.

11.    The silence from the school has only increased the fear and distress on my team. Many of the freshman in my class are worried about roster cuts, especially those who are not as fast or developed as other teammates, and we worry for each other. My teammates and I love Auburn and the people we train with, so getting the news that everything could be taken away from us so quickly was shocking and disheartening.

12.    I am also worried. I know a lot of my freshman teammates will enter the transfer portal, but because it is already overwhelmed with people – and likely to be even more overwhelmed if the roster limits are approved – the chances of finding another team are low. I am afraid that my teammates' swimming careers will be cut short for no reason.

13.    Even setting aside how oversaturated the transfer portal is, transferring is personally unrealistic. I love my school and engineering program too much to leave. Going to another school could require me to choose another degree or lose opportunities I have been granted at Auburn. I could be stuck in the transfer portal instead of advancing the degree I started here, which could delay my graduation and set me back a year. I am concerned that many of my class credits will not transfer if I have to go to another school.

14.    If I'm cut, I'll also have to eat the cost of the housing lease I'd already entered for next semester. Even without the financial cost, my plans at Auburn are already threatened by the roster limits. I am living with 3 other athletes whose futures are also jeopardized by the roster cuts, and who might have to transfer because of them. The idea that I would be forced

3

345

1
2
apart from my friends and roommates after just one year at school for no good reason is upsetting.

3
4
5
6
7
8
9
10
11
15.    I am extremely distressed at the prospect of getting cut and losing everything I worked so hard to achieve. My family and I relied on promises from Auburn that it is now breaking. Not only do I face the possibility of losing my scholarships, but I would also have to break financial commitments that my mother and I made in reliance on me finishing out my athletic and academic career at Auburn, like my housing lease and class fees for the upcoming terms. I have no way to plan out my future in the short or long term because everything is up in the air. If I am cut or forced to transfer, I'd have to settle those obligations with little notice or planning. The financial stability I fought so hard for is being threatened.

12
13
14
16.    My teammates and I, who have grown and flourished together, also face immense uncertainty about our futures. We are pitted against each other. I made fast friends on the swim team, and we are being torn apart for no reason.

15
16
17
18
17.    The roster limits will cause irreparable damage for many college student-athletes. College athletics represents more than just playing a sport—it represents an avenue for affordable higher-level education, and an unparalleled environment for personal development, all while letting students do what they love.

19
20
18.    Ripping everything I worked so hard to achieve away from me now is cruel and unfair. Roster limits should not be approved.

I declare under penalty of perjury that the foregoing is true and correct.

21
22
23
24
Dated: Cary, North Carolina
    January 25, 2025

_____
Landon Lloyd
NCAA ECID No. 2204498641
111 Monument View Lane
Cary, NC 27519

25
26
27
28

4

346

Benjamin Long
12130 Thornhill Court
Lakewood Ranch, FL 34202

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Benjamin Long.  I am a current Division I athlete at the University of Kansas and my NCAA ECID number is 2110348694.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Benjamin Long

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

### DECLARATION OF BENJAMIN LONG

I, Benjamin Long, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore on the golf team at the University of Kansas.  I am a member of the Injunctive Relief Settlement Class and object individually and on behalf of the class.

2.      I began playing golf at the age of six in my home country of Canada.  I spent the first part of my life in Toronto, but my brother and I became passionate about golf. My family made a lot of sacrifices by moving us to Florida so that I could play golf. My father commuted from Toronto to Florida every few weeks, and my mom gave up her career.

3.      In Florida, I played on my high school team at Saint Stephen's Episcopal School, where I helped the team win the state championship during my junior year. Even before I won a state championship, college coaches had begun reaching out to me about playing on their teams.  I talked to over 20 schools before narrowing my search to three.  One even offered me nearly a full-ride scholarship to play on their squad.

4.      I ultimately chose Kansas because I liked the team and the facilities.  Further, Kansas's team is very competitive, and it seemed like a great place to improve my game.  I signed a four-year letter of intent and was offered an athletic scholarship that covers a significant portion of my tuition.  Additionally, as an athlete at Kansas, I get other benefits like academic counseling, tutoring, free gym use, physical therapy,

1

DECLARATION OF BENJAMIN LONG
CASE NO. 4:20-CV-03919-CW

access to the indoor and outdoor golf facilities, medical and dental insurance, and all my meals covered.

5.      I originally heard about the proposed roster limits during the summer from my teammates, but heard nothing from the school.  Then, in mid-November, my coach sent an email saying that our roster had to be cut down to nine.  This meant three guys would be cut from the team.

6.      At the end of November, my coach called me in for a meeting.  He told me he was cutting me from the golf team because of the roster limits.

7.      Hearing this news was incredibly difficult.  I redshirted my freshman year because the coach told me he wanted me to play five—not one-and-a-half—years at Kansas.  And about six months ago, I suffered an injury and haven't been able to compete for Kansas this year.

8.      Playing golf at the highest level has always been my dream.  I entered the transfer portal immediately upon learning that I would be cut from the team.  But transferring would mean that I have to forfeit my amazing relationships with my current teammates.  And I do not know that I will get the same scholarship at another school.  It seems likely that anywhere I transfer will cost significantly more than Kansas.  It is also possible that I will not find a spot on another Division I team.

9.      Another reason I chose Kansas was because of its undergraduate Business major, which is a program that not all universities offer to undergraduates.  If I transfer to continue playing golf, I may have to change my major.

10.     This has all been very stressful, because in addition to the possibility of losing the ability to play my sport, I may also have to say goodbye to the people I've built relationships with.

11.     I know I haven't hit my ceiling in golf yet.  Golf is a sport where many players don't hit their peak until their thirties. Cutting golfers during their early developmental years means cutting golfers who could in a few years be some of the very best in the

2

DECLARATION OF BENJAMIN LONG
CASE NO. 4:20-CV-03919-CW

world. This cuts off a key development pipeline for professional players. Roster limits simply do not make sense in this context.

12.    Roster limits also greatly impact the ability of a player to recover from an injury as a redshirt. This is especially true if a player needs additional time to recover. The pressure to keep a roster spot may encourage athletes to return to play before their injury is fully healed—and this can lead to even greater, potentially career-ending injuries. No one should feel like they have to play through an injury just to stay on the team.

13.    Most of my life has been dedicated to golf, and now my entire future is being jeopardized. I must choose between golf and my school and friendships. The possibility of roster limits has contradicted what athletes like me were promised when we committed to our schools. We signed on to play for four years and to have the opportunities to develop through hard work, and now our time may be cut short.

14.    These roster limits are destructive. Please do not approve them.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: Lawrence, Kansas
    January 26 2025

_____
Benjamin Long
NCAA ECID No. 2110348694
12130 Thornhill Court
Lakewood Ranch, FL 34202

Kathryn Long
157 Rudder Court
Lexington, SC 29072

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Kathryn Long.  I am a current Division I athlete at Auburn University and my NCAA ECID number is 2210690193.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                    Sincerely,
                    Kathryn Long

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF KATHRYN LONG**

I, Kathryn Long, hereby declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at Auburn University. I am a member of the NCAA Division I swimming and diving team and thus a member of the Injunctive Relief Class.  I am writing to oppose the roster limits, and my objection applies to that class.

2.      Diving has been central to my life since I was in kindergarten, and it's the reason I came to Auburn.  When I committed, I was promised a spot on Auburn's diving team.

3.      I've dedicated my life to diving and I don't know what I would do if I couldn't dive anymore. In high school, I did other things outside of diving, but since becoming a D1 athlete at an SEC school, I have truly dedicated my whole life to my sport.  I've missed out on a lot of things I used to enjoy in order to work on improving my diving.  At the moment, I spend many hours a day training, whether that be in the pool, conditioning, or lifting weights.

4.      I have accomplished a lot in my diving career thus far.  I qualified for the NCAA Zone qualifier seven times and the Junior National Championship four times.

5.      It is unfair for my roster spot to be taken away after I haven't even been at Auburn for a full year, especially after I have greatly improved my dives since the start of the season.

6.      Even if I got cut from the team at Auburn, I'm not sure I would be able to transfer anywhere because these cuts are happening at every school.  So, no matter what, there will be people who have dedicated their lives to the sport that will no longer be able to dive.

7.      Impending roster cuts can negatively affect team dynamics.  The pressure of these looming cuts is affecting many peoples' mental health.  Several very talented athletes are

1

considering quitting in anticipation of potentially being cut.

8. I hope that the court stops these unfair roster limits so that students like me can continue to participate in sports we love.

I declare under penalty of perjury that the foregoing is true and correct.

Auburn, Alabama
January 28, 2025

_____
Kathryn Long
NCAA ECID No. 2210690193
157 Rudder Court
Lexington, SC 29072

2

Jack MacKinnon
839 Siesta Key Circle,
Sarasota, FL 34242

January 27, 2025

      Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Jack MacKinnon.  I am a current Division I athlete at the University of Nevada and my NCAA ECID number is 2206576255.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                            Sincerely,
                            Jack MacKinnon

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF JACK MACKINNON**

I, Jack MacKinnon, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a 20-year-old college sophomore and football player.  Until a month ago, I was a proud Wolverine at the University of Michigan in Ann Arbor.  This month, I'll start a new college career as a defensive end for the University of Nevada Wolf Pack.

2.      I am a member of the Injunctive Relief Settlement Class.  I object individually and on behalf of the class.

3.      I have always loved playing sports – *all* sports.  I started playing football in second grade.  I also played baseball and basketball.  When I attended Cardinal Mooney High School in Sarasota, Florida, I excelled on both the baseball and football teams.

4.      I worked hard to improve.  In football in 2021, as a junior, I helped the Cardinal Mooney Cardinals post a 7-3 record.  In 2022, my senior year, I led the team to an 8-3 record, contributing 58 tackles, 36 solo, 26 tackles for a loss, 13 sacks, one pass break up, a fumble recovery, and a blocked field goal.  I am most proud of helping my team make it to the playoffs that year.  After my senior season, I earned Florida High School Athletic Association second-team All-State honors and was recognized by SBLive Sports Florida on its 2022 All-South Suncoast Football Team.

5.      In baseball I was a pitcher and outfielder, and college coaches scouted me early on.  The University of South Florida (USF) offered me a scholarship to play baseball.  The offer of financial aid was important for my family and initially resolved my dilemma over which sport to pursue in college, and I was close to committing to play baseball for USF.

6.      But I did not stop playing football.  Though I performed well on the baseball mound, I was more dedicated to football.  My whole life, I loved playing football with my friends and building deep, long-lasting relationships with my teammates and coaches.  I missed it so much that even with my generous baseball scholarship, I could not rule out football.

7.      Something amazing brought me to Michigan.  Jack Harbaugh is the father of legendary coach Jim Harbaugh.  Coach Harbaugh has since left Michigan to coach the Los Angeles Chargers, but in 2022, he was still coaching at Michigan.  While visiting family who happened to live near my hometown in Florida, Jack Harbaugh saw me play and – without me knowing – sent a videotape of me playing football to his son and recommended that he look me up.

8.      Coach Harbaugh himself contacted me.  He said he couldn't offer me a scholarship to play football, but he offered me a preferred walk-on position at Michigan instead.

9.       I was speechless.  As a walk-on, I wouldn't have financial aid.  Nor was I offered an academic scholarship.  But I would be playing for ***Michigan***, one of the most storied college football programs in the country, for ***Coach Harbaugh***.  It didn't hurt that I loved the school and valued the opportunity to get a degree from such a great institution.  I accepted instantly and never looked at another school again.

10.     My freshman year at Michigan was a dream.  I did not see game action, but I loved working hard to support the team every day, even when I was just helping the starters prepare for each game.  I met the most incredible friends, and we soon ended up training and rooming together.

11.     One of my roommates was John Weidenbach, another preferred walk-on.  We bonded through our fanatic dedication to football and became fast friends.  I respect John for his talent, drive, leadership, and intellect.  It was an honor to be his teammate.

12.     It was John who, in mid-2024, first told me about the potential for roster limits in the *House v. NCAA* settlement.  He told me that football teams could be limited to 105 players – far less than the number of guys on the Wolverines.  I was disturbed, but at that point it was very up in the air, so I thought we'd all be okay.

13.     As we went on with the year, however, we started panicking as speculation about roster limits kept lurking.  Eventually, the pressure built to where my group of friends realized that the threat of being cut from the team was not theoretical.

14.     No one from the football staff or university administration said anything to us about whether we were likely to be cut.  After discussing at length with my family and closest friends, I came to the hard decision that I would have to protect myself.  I did not want to leave Michigan, my team, or my good friends, but I saw that the transfer portal was about to be flooded with players in my exact position, and I couldn't count on having a spot on the team next year.  If I wanted to make sure I could keep playing football, I had to leave.  So, after a lot of worrying, I finally made the decision to enter the transfer portal in December 2024.

15.     I got lucky.  I received a few offers, and Nevada made me the first one.  I was torn about leading my friends and the incredible opportunity I had at Michigan behind, but I had already committed to protecting myself as much as possible.  I visited, enjoyed the team and atmosphere, and accepted the offer.  I will have a spot on the team for next year at least and am slotted to be a starter.  I am not certain, however, if my roster spot will be available for the following year.

16.     I know I'm one of the lucky ones, at least today.  I was able to transfer to a good school, and I'll keep playing the sport I love.  But most athletes will not be as lucky as me.

17.     The last time I checked, there were over 7,000 players in the transfer portal.  No matter what, many football players will not find another home because of these roster limits.  It's unfair to pull the rug out from under so many feet and tell them they can no longer play the sport they love – even though their school has a team and wants them – or force them to decide between their school and their sport.

18.     I deeply miss my group of friends at Michigan.  We keep in touch, and we will be lifelong friends no matter what.  And if it weren't for John, I wouldn't have known how to voice my objection to the settlement.  I never received any sort of notice by email or mail telling me about the settlement and how I could object to it.

19.     The roster limits are throwing the entire Division I football class into turmoil.  I

should have been given the opportunity to make my decision to enter the transfer portal based on my own merits and experience at Michigan – not based on arbitrary limits.

20.    The roster limits are wrong and shouldn't be a part of the settlement.  I may be just fine, but that is exactly why it is important for people like me to speak up on behalf of others who are unjustly getting their lives destroyed by the roster limits.

21.    Separately, on their behalf, I object.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Sarasota, Florida
       January 27, 2025

DocuSigned by:

EB868F3EB43E440...

Jack MacKinnon
NCAA ECID No. 2206576255
839 Siesta Key Circle,
Sarasota, FL 34242

Madeleine MacNeille
10505 Avenida Del Rio
Delray Beach, Florida 33446


January 30, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Madeleine MacNeille.  I am a current Division I athlete at the University of Texas at Austin and my NCAA ECID number is 2102107716.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.


                                      Sincerely,
                                      Madeleine MacNeille

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF MADELEINE MACNEILLE**

I, Madeleine MacNeille, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a sophomore at the University of Texas at Austin and a member of the NCAA Division I women's tennis team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     From the age of 8 years old, I spent countless hours training, with the single goal of becoming a Division 1 athlete. Every day was a testament to my commitment as I spent early mornings and long afternoons at practice. At the age of 14, I chose to leave the school I attended from the age of 4 to attend a new school that accommodated my practice schedule. During high school, my training consisted of 5 hours of time on court each day plus competing on weekends. I missed out on countless hangouts with friends, family events, and regular childhood experiences because I was focused on achieving my goal of playing tennis at a division 1 school. My parents made immense financial sacrifices to support my dream, spending money on training, travel, equipment, and coaching, often forgoing family vacations or time together so I could attend practices and competitions. There were weekends when instead of relaxing or enjoying holidays together, my family would be on the road, cheering me on at events or making sure I had everything I needed to succeed.

3.     Throughout my tennis career, I've been fortunate to achieve several milestones that I'm incredibly proud of. I was honored to be named First Team All-County, an accomplishment that reflected my dedication and hard work on the court. One of my most significant achievements was becoming my school's first-ever state qualifier for the state

1

championship, where I made it all the way to the finals. I was also awarded the prestigious Scholar-Athlete 'Pride' Award, a recognition that celebrated not just my athletic performance, but my commitment to academics as well. I was also a state doubles finalist and was nominated as Palm Beach County Player of the Year. Perhaps most notably, is that I was able to achieve all these athletic accomplishments while maintaining a 4.6 GPA and graduating as Salutatorian of my high school class. Each of these accomplishments is a testament to my passion for the game, my relentless pursuit of improvement, and the support from my family, coaches, and teammates along the way.

4.    Upon graduating from high school, I was fortunate to have several collegiate opportunities, but I made the difficult decision to take a gap year to further my training and tennis development in pursuit of my dream of playing at a top-tier Division 1 school. It wasn't an easy choice, especially as all my friends were heading off to college, but I felt that taking this time to focus solely on my game would give me the best chance to reach my full potential. During my gap year, I committed myself to six-hour training sessions on the tennis courts every day, competing every weekend to refine my skills and gain experience. My hard work paid off, as I made significant progress and attracted the attention of several college coaches.

5.    Despite receiving athletic scholarship offers, I ultimately accepted the opportunity to play tennis at the University of Texas at Austin as a recruited walk-on. I chose UT Austin because of the caliber of their team and the outstanding athletic training and development resources they offered. Throughout the recruiting process, my coach promised me the same opportunities and benefits as the scholarship players, including private lessons, access to personal nutritionists, specialized training professionals, mental health services, meals, tutoring, full medical care, athletic gear, travel costs, and a $6,000 stipend per year for educational expenses.

6.    I recently learned through media reports about the potential roster limits that may be imposed if the court approves the settlement. My coach has had limited information to share with me regarding the situation, which has made it difficult to fully understand the implications. I've come to learn that the school recently cut walk-on on other teams. There are currently three

recruited walk-ons on the women's tennis team, including myself, who could be affected by the outcome of the settlement. If the court adopts the roster limits, the women's tennis team will be capped at 10 players. If the school chooses to increase the number of scholarships from 8 to 10, unfortunately, all three of the walk-ons would lose our spots on the team.

7.    The possibility of losing my spot on the roster has been weighing heavily on my mental health, and I know I'm not alone—my teammates are also feeling the stress and uncertainty. The constant worry about roster cuts and the lack of clear communication from leadership is affecting our morale and focus.

8.    Personally, it's taking a toll on my ability to perform both academically and athletically. The pressure to prove myself on the court, while also keeping up with my studies, is incredibly challenging when I'm constantly wondering if my future with the team is in jeopardy. I made so many sacrifices to get to this point—spending a gap year solely focused on tennis, turning down other opportunities, and choosing this school because of its team and the chance to develop as a player. The idea of not being a part of this team or having to transfer to another school is daunting. I've invested so much into this dream, and the uncertainty about whether it will all come to an end is affecting my overall well-being. It's hard to stay motivated and perform at my best when the future feels so uncertain, and the fear of losing everything I've worked for is ever-present

9.    Being cut from the team would be an incredibly difficult loss, both emotionally and financially. Emotionally, it would mean losing not only my place on the team but the entire experience I've worked so hard for. The relationships I've built with my teammates and the sense of camaraderie we share have been such a vital part of my college experience. The team has become my family, and the thought of losing that support system is heartbreaking.

10.    On a financial level, being cut would strip me of several crucial benefits that come with being a part of the team. I'd lose access to private lessons, personal training, tutoring, academic counseling, and the meal plan that allows me to eat with my teammates at a special dining hall. I'd also lose travel costs, medical care, and mental health services—all of which are incredibly important as I balance the demands of being a student-athlete. Additionally, the

educational stipend of $6,000 per year would no longer be available, which is a significant financial burden. My whole college experience is tied to being a member of the team, and the prospect of losing that opportunity is devastating.

11.    To make matters even more complicated, my parents have already signed a lease for next year that I'm unable to get out of if I were to transfer to another school. The financial and emotional repercussions of losing my spot on the team would be immense, and it's something I'm struggling to come to terms with.

12.    Faced with the uncertainty of the outcome, I'm now being forced to confront the difficult reality of potentially having to transfer to another school, even though it's very late in the recruiting season to secure another opportunity. The idea of switching schools at this stage feels overwhelming, especially with so many unknowns—like whether I'll even be able to find a spot on another team. If I can't find a new opportunity, I'd be left with no choice but to stay at UT Austin to continue my education without being able to compete. This would mean not only having to navigate a new social and academic environment, but also losing the sense of belonging and community I've built with my current teammates. Their training and competitive travel schedules would no longer align with mine, so I'd have to make entirely new friends and rebuild my college experience from scratch. Another concern is whether my academic credits would even transfer if I did decide to leave. The potential financial impact could be enormous, not to mention the possibility of having to stay in school longer to make up for any credits that don't transfer.

13.    I respectfully urge the court to consider grandfathering all current walk-ons in its decision regarding the roster limits. For many of us, becoming a part of our teams has been the culmination of years of sacrifice, hard work, and dedication, not only from ourselves but from our families who have supported us along the way. We made the decision to join these programs with the understanding that we would have the same opportunities to develop as athletes and contribute to the team as the scholarship players. The uncertainty surrounding the potential cuts to the roster is having a profound impact on our mental and emotional well-being, and the thought of losing everything we've worked so hard for—especially after making significant

Docusign Envelope ID: 59C5BF71-6FC2-46A5-974D-8574728A9BE9

sacrifices to get here—would be devastating. Grandfathering the current walk-ons would honor the commitment we've already made, ensure that our sacrifices were not in vain, and allow us to continue pursuing our dreams without the added burden of fear and uncertainty.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Delray Beach, Florida

January 30, 2025

Signed by:

_Madeleine MacNeille_
8069CD20597C413...

Madeleine MacNeille
NCAA ECID No 2102107716
10505 Avenida Del Rio
Delray Beach, Florida 33446

5

Tristan Martinez
4448 Loina Place
Honolulu, HI, 96818

January 15, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Tristan Martinez. I am a current Division I athlete at Clemson University and my NCAA ECID number is 2201423524.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2024.

                        Sincerely,
                       /s/ Tristan Martinez

**365**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF TRISTAN MARTINEZ</u>

I, Tristan Martinez, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am a junior at Clemson University. Until the beginning of January, I was a wide receiver on its Division I football team. I am a member of the Injunctive Relief Settlement Class, and object individually and on behalf of the class.

2. I have played football since I was a kid. In high school, I was able to be a starting wide receiver for my high school team. In 2021, as a junior, my high school won the Hawaii High School Athletic Association state championship. In 2022, I was named first-team All-Conference and Interscholastic League of Honolulu.

3. Playing for Coach Dabo Swinney, the head football coach at Clemson, has always been a dream of mine. He is a man of integrity who has achieved incredible results on the field, and I grew up watching his teams win on television. I also followed his public interviews, including after games, and was struck by his integrity. He talked about preparing players for life, which he sees as bigger than winning games. So when I was in high school, I scratched and clawed to have a chance to attend Clemson's high school camps twice: during the summers before my junior year and my senior year. I traveled more than 4,000 miles from my home in Hawaii to attend camp.

4. I worked hard at camp, and the coaching staff noticed. After my second trip to camp, Coach Swinney offered me a preferred walk-on spot. I took it immediately. I was absolutely thrilled to play for the Clemson Tigers.

5. As a preferred walk-on, I receive a lot of benefits, including access to the football

1

facility, team meals, gear from our sponsors, priority class registration, and academic counseling and tutoring. I am a serious student who hopes to be a lawyer, and I take advantage of all of it.

6.      My concerns with roster limits started in the summer of 2024 when our head coach, Dabo Swinney, told us about the House settlement. He said that if the House settlement was approved, he would have to cut at least 30 walk-ons like me.

7.      In November, Coach Swinney called a meeting with all non-scholarship players. He told us that from that point forward the team would be operating under the assumption that the Court would approve the House settlement. As a result, he told us that he would make final cuts to ensure the roster was under the 105-player limit by August 2025. He also told us that if we wanted to enter the transfer portal, we could have a meeting with him to talk about it.

8.      Coach Swinney told us in no uncertain terms that the NCAA is making a huge mistake. He believes that the NCAA is not considering how vital walk-ons are to football programs. Coach Swinney knows that you can't run a productive football practice without walk-ons. He was a walk-on at Alabama, where he eventually received a scholarship. He described the day that he learned he would have to cut the walk-ons as the worst day of his coaching career. He continues to be a man of integrity.

9.      After November, I had two one-on-one meetings with Coach Swinney. At the first meeting, I asked him if he planned to keep me on the team if the roster limits went into effect. He said that he was not, and I would likely be cut. At the second meeting, Coach Swinney told me that it was very unlikely that I would have a roster spot next year if the roster limits were approved with the settlement.

10.      On January 10, I had a call with my position coach, who confirmed that I probably would not have a roster spot for my senior year.

11.      The shock of roster limits has been incredibly sudden. One week I was dressing out to play in the College Football Playoff against Texas. The next I was cleaning out my locker. The whole process has been heart-wrenching.

12.      I worked my whole life to get a shot to play at this level. I have been playing football since I was a kid. I played in middle school. I played in high school. The amount of

1    work it took to get on a Division I program was huge.  For this to be taken away by people in

2    suits who I have never met is incredibly disappointing.

3        13.    These roster limits have prevented me from achieving my dream of playing as a

4    Clemson Tiger for four years.  Without them, I still have a chance to play for my senior year.  I

5    know that many others are in my same position, including some of my Clemson teammates.

6    Please do not approve these roster limits.

7    I declare under penalty of perjury that the foregoing is true and correct.

8    Dated: Clemson, South Carolina

9        January 15, 2025

         Tristan Martinez
10       NCAA ECID No. 2201423524
         4448 Loina Place
11       Honolulu, Hawaii  96818

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Marin Maycotte
2301 Shoal Creek Blvd
Austin, TX 78705

01/26/2025

    Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Marin Maycotte.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 2211729273.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,
            Marin Maycotte

**369**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF MARIN MAYCOTTE</u>**

I, Marin Maycotte, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a freshman at the University of Washington and am a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     My entire life has been dedicated to this sport since I was 13 years old. Before rowing I was lost. I wasn't confident, I wasn't strong, I wasn't the person I wanted to be. This sport single-handedly saved me. As long as I can remember, I have prioritized my training, mental energy, and teammates above all else. While it has been a sacrifice, it is one I would make over and over again. Rowing requires an unparalleled level of dedication. It's the first thing on my mind when I wake up early for practice and the last thing I think about as I fall asleep after an exhausting, rewarding afternoon of rowing. I've invested countless hours outside of practice on the rowing machine and in the weight room, and I've trained year-round—even during summer and winter breaks. Besides my own home, I have spent the most time of my life on the dock, in a boat, and on a rowing machine. This journey has shaped my identity and transformed my life in ways I never imagined. I would do anything to continue this journey. My coach would have to physically rip the oar out of my hand before I would.

3.     When you commit to a sport like rowing, it becomes more than just a competition. It's an investment, a family, and an outlet for stress. My journey began humbly—I started out in the slowest boat on my team. For the first time in my life I was okay with not being the best. I had tried so many other sports, but I always quit the next year because I wasn't automatically

1

'talented.' Rowing was the first sport I stuck with. Instead of being discouraged, I found joy in the process and worked harder. Slowly but surely, I improved. I still remember every personal record I've achieved, each one a testament to countless hours of grit and determination. By my senior year of high school, I reached a benchmark that set me apart, earning team captain honors twice and leading my team to historic successes. Rowing is unique in how it demands time, patience, and relentless effort to truly master. Most people don't even start rowing until high school, and it can take years to reach your full potential. This sport taught me the value of perseverance and showed me the strength I didn't know I had. My dedication inspired my teammates to push their limits as well, and together we achieved incredible things. I was fortunate to compete at Nationals four times, along with many other races. My team was an underdog team, so we had to work even harder when all odds were against us. When our hard work paid off, it felt even more special because we had earned it against the toughest challenges. Junior year, I won the erg hammer award because I truly pushed myself past my limits every single day. I still remember lying in the dirt after the hardest workouts, covered in cobwebs, staring at the sky with a smile on my face. That became what I was known for—pushing boundaries and inspiring others to do the same. I was honored to be part of history for my club as our boat achieved rankings higher than ever before, and those moments are etched in my heart forever.

4.    When I went through the recruiting process, honestly I had no idea what to expect. I was told many times over that I wasn't tall enough or fast enough to row at Division I level. But I refused to let others define my potential. I still remember my first recruiting call, I was sitting on my living room couch shaking with a notebook in my lap filled with questions and notes. I was nervous because I felt like no one would want me. When I received my first call from the University of Washington, I knew it was the perfect fit. The program's culture of excellence, resilience, and hard work resonated with me. I wanted a team who would sacrifice as much as I have to be here and truly enjoy putting in the effort. The way the coaches talked about the sport was unlike anything I had ever seen. The dedication, sweat, and tears are what makes this sport special. I turned down incredible opportunities, including offers from the Naval

DECLARATION OF MARIN MAYCOTTE
CASE NO. 4:20-CV-03919-CW

Academy and UC Berkeley, to join a program where I knew I would be pushed to my limits. I could have easily chosen a school that I would be a top athlete on the team, but I chose this one–one of the most competitive programs so I could challenge myself.

5.     I'm only a freshman, but I came here with big dreams: to one day compete at NCAA Championships. That dream requires time, patience, and development—things that roster limits would jeopardize. I believe myself and every other athlete has the right to develop all four years. I had no idea there would be an expiration date on our success. Rowing is a sport that takes years to master. It's not uncommon for athletes to start at the bottom and eventually become key contributors. One of my teammates, who spent her entire first year training on land, is now an essential part of our team's success. If roster limits had been in place, her potential—and our team's success—might never have been realized. The team isn't just about being the fastest person, it's about building each other up from the bottom. I love this team more than I could have imagined and I cannot imagine being ripped away from the sport and family I love.

6.     When our head coach informed us about the proposed roster cap, it felt like the ground was pulled out from beneath us. The news was met with silence, shock, and tears. This proposal threatens to undermine the very foundation of our team. Rowing is a sport built on camaraderie and mutual support. Cutting athletes not only limits individual potential but also weakens the team's spirit and dynamic.

7.     This uncertainty has taken a significant mental toll on my teammates and me. Rowing is already a demanding sport, both physically and mentally. Adding the stress of potential cuts has affected our focus, our morale, and even our academic performance. Personally, I've found it hard to concentrate on my studies, knowing that everything I've worked for could be taken away.

8.     If I were to be cut, I would lose more than just a spot on the team. I would lose my potential to earn financial aid, access to academic support, and the unique bond I share with my teammates. The dining halls, the housing arrangements, the shared laughter after a grueling practice—all of it forms the fabric of my college experience. My identity as an athlete is intertwined with my sense of purpose and belonging. Losing that would be devastating.

9.      I've had to consider the unthinkable: entering the transfer portal. But transferring isn't as simple as it seems. There's no guarantee that other programs will have spots available. Even if I found another team, transferring could disrupt my academic progress, as not all course credits transfer seamlessly. I chose the University of Washington not only for its rowing program but also for its academic excellence. Leaving would mean giving up on both my athletic and academic dreams.

10.     This proposal feels particularly unfair in light of Title IX. Allocating resources disproportionately to football while capping opportunities for women's rowing sends a message that female athletes are less valued. Rowing is one of the few sports that provides opportunities for women at this level, and these proposed limits threaten to roll back decades of progress. Why should men's sports get more spots, money, and opportunities when we contribute just as much.

11.     I respectfully urge the court to reject this proposal. Roster limits would not only harm individual athletes but also erode the culture of perseverance, inclusivity, and teamwork that makes collegiate rowing so special. Please allow us the opportunity to continue pursuing our dreams, growing as athletes and individuals, and contributing to the legacy of this sport.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, WA

        January 26, 2025

_____

        Marin Maycotte
        NCAA ECID No. 2211729273
        2301 Shoal Creek Blvd
        Austin, TX 78706

4
DECLARATION OF MARIN MAYCOTTE
CASE NO. 4:20-CV-03919-CW

373

Raini Mayo
2501 W Whittaker Close
Williamsburg, VA  23185


January 29, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Raini Mayo.  I am a current Division I athlete at Liberty University and my NCAA ECID number is 2310144728. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                          Sincerely,
                          Raini Mayo

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF RAINI MAYO</u>**

I, Raini Mayo, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Freshman at Liberty University and am a member of the NCAA Division I women's Track and Cross-Country team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      When I decided that I wanted to pursue running at the collegiate level it cost me a lot of time and effort. I spend most of my days either going to practice or to races competing for my team. This often made me miss out on other opportunities like other extracurricular activities and social events. In addition, pursuing a collegiate running career also cost me the ability to also pursue opportunities to pursue a collegiate basketball career.

3.      In high school, I was the second scoring runner that helped lead our team to a Cross-Country state championship. I received All-State honors in both Track and Cross Country my Junior and Senior year. I finished my high school career placing 3rd at our Track State Championship at Liberty University where I would go to run the next year. Collegiately, I was the fourth Liberty freshman to break 10:20 in the 3k.  Additionally, I was 2 times All Region, and an All-State basketball player.

4.      Being torn between whether to pursue Division 2 or 3 basketball collegiately or running, I arrived at a late decision to run at the collegiate level.  I was being recruited by a few Divisions I programs in running and then additionally reached out to schools that I had interest in being a part of their team.   During my unofficial visit to Liberty, I realized that being on this team would be an incredible opportunity.  I was offered a spot as a preferred Walk-on and

1

thought to clarify what that would mean for my potential to stay on the team throughout my college time.   My coaches led me to believe (because I believe this is what they truly believed to be true) that I would have a spot for all 4 years.   After making a commitment to join the team at Liberty University, I didn't speak to other schools or explore other potential opportunities in any sport.

5.      A couple days prior to hearing officially,  I began to hear of rumors  that the next year we would have the roster limits that would threaten my ability to continue to be a part of the team; However,  I wasn't completely aware of the reality of the situation until our athletic director at Liberty came and explained the situation to our Track team once they knew it was happening. Later that night, the coaches held a meeting with us to further explain that because of the new roster limits, more than half of our women's distance team would be cut. I don't know exactly where I stand on the team, but I know that I am at risk of one who could be cut. It was a very heavy emotional time as we began to grieve what we would lose in terms of friendships and opportunities and trying to process the shock that this news blindsided us with.

6.      This decision has taken its toll by changing our team dynamics.  Although, our program has done a great job of putting on friendly faces and continuing to be kind toward each other.  I believe there is an undercurrent that has changed our dynamics. There is a weight that those of us who may be on the bubble, or those that feel they are going to be affected carry where every poor performance is something that may seal our fate. We feel a lot of stress to not have any bad days and face a temptation to disregard our bodies because this might be our last shot. We want to continue to be great teammates, but subconsciously know that if we don't beat that girl, she may take the roster spot.  We are told not to worry, but we know that if we don't perform well, we may lose our opportunity to have this dream continue. Our coaches have been very compassionate about the situation; however, this further adds to the sorrow since we care deeply for them, and we continue to see the burden this places on them. In general, it has added a mental strain to all our relationships spoken and unspoken.  This surfaces in things like not wanting to share our successes because we know our teammate may not be in the same place, or just in thinking about the sadness of our team not being the same next year.

2

7.      If I were cut from this team, I would lose the access to resources which include studying our athletics center and eating at our athletic dining hall. I would lose the eye opening experiences that travel and competing against different universities provide. But most importantly I would lose access to hours together with teammates who have become like family and my coach who since being at Liberty for my first year in college has been a mentor and encourager to me even outside of running. Without them I don't know what the college experience is going to entail.   As a college athlete, we train most of the hours that we are not in class, so my life in college will be totally remade.  And without our coaches, specifically my own group Coach, as a readily available resource I would lack the daily guidance that he provides me and don't know who in a "regular" student experience would fill this void

8.      I haven't decided if I want to enter the transfer the portal but because I am currently selected for the nursing program here. Transferring will possibly jeopardize my current career path of being a nurse and as a military brat I was really looking forward to spending 4 years in one place.  I will choose to stay at Liberty and have to lose my dream of working my way into being a contributor on the team.

9.      I strongly object to the roster limit decision.  Not only, is it not right that current affected athletes were told one thing and then rules changed so suddenly that it affected them with no grandfathering in but also for those high school athletes that will never be given the opportunity that I got, if even for a year.


Dated: Lynchburg, Virginia

     January 29, 2025

Signed by:

*Raini Mayo*

AB068F6532CB440...

Raini Mayo
NCAA ECID No. 2310144728
2501 W Whittaker Close
Williamsburg, Virginia 23185

3

Cassidy McArthur
5320 NE 187th St
Lake Forest Park WA, 98155

January 26, 2025

        Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Cassidy McArthur.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2307958825.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                      Sincerely,
                      Cassidy McArthur

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF CASSIDY MCARTHUR

I, Cassidy McArthur, hereby declare as follows pursuant to 28 U.S.C. §1746:

I am a freshman at the University of Washington and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

Since I have been in middle school I have been attending training six days a week. By the time I was a sophomore in highschool I had sacrificed countless moments with my family, friends and community. Although I got used to saying, "sorry I can't have practice" it never got easier. I was constantly asked whether or not it was worth sacrificing so much. However, when I committed to row Division I at my dream school those questions stopped. My loved ones could finally see why I had pushed myself through all those long, painful and exhausting training sessions for the last 5 years. Entering my freshman year of college athletics I was prepared to do it all over for the sport I love so deeply. Then I learned that everything I have worked for could all come to an end. January of this year we had a team meeting where we learned about the potential for a new roster limit. We were told how limiting this would be for both current and future rowers at Washington. Our program relies on the development of athletes. Having a 68 person roster, which would need to be finalized by December would have numerous negative impacts on our team. Not only would it prevent walk-ons from learning the

1

sport of rowing, it would also prevent recruits from receiving the experience our program is meant for, which is development. As our coach told us the news, she reminded us that this is about more than a roster limit. This is the legacy of women's athletics. And unfortunately this is just one more way that women have to fight for the positions they have earned. Therefore we can not stand aside and allow women to be pushed out of athletics.

Since learning about the roster cut, there has been a sense of gloom amongst our team. As if being a full time student-athlete was not enough, my teammates and I are now left wondering whether there will be a place for us come December. It has taken a toll on the mental health of many athletes. The anxiety associated with next year is immense. The potential dread of transferring to continue the sport you love, or to stay and earn your degree while sacrificing your athletic dreams is ongoing. These are just a few reasons the NCAA cannot put this roster cap in place. There would be thousands of Division I athletes unjustly stripped of their sports and their athletic futures.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, WA

     January 26, 2025

Cassidy McArthur
NCAA ECID No. 2307958825
5320 NE 187th St
Lake Forest Park WA, 98155

Grace McCardle
1371 Bundoran Dr
North Garden, VA 22959


January 27, 2025

**Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW**

Dear Judge Wilken,,

My name is Grace McCardle. I am a current Division I athlete at William & Mary; my NCAA
ECID number is 2303808087. For the reasons stated in my attached declaration, I object to the
roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No.
4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection
individually and on behalf of the Injunctive Relief Class.


I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the
Fairness Hearing on April 7, 2025.

Sincerely,
Grace McCardle

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF GRACE MCCARDLE</u>**

I, Grace McArdle hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at the College of William and Mary and a member of the NCAA Division I Women's Swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Our coaches have explained to us that roster limits, if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.      We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively impact those who are cut and our team at large.

4.      I ask the Court not to approve the roster limits in the *House v. NCAA* settlement.

1    I declare under penalty of perjury that the foregoing is true and correct.

2   Dated: Williamsburg, VA

3         January 27, 2025

Signed by:

*Grace McCardle*

DA8E0E36473A477

Grace McCardle
NCAA ECID No. 2302808087
1371 Bundoran Dr.
North Garden, VA  22959

Perry McLoughlin
21 Orchard Farm Rd
Port Washington, NY 11050

January 26, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Perry McLoughlin.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 2208650896.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

           Sincerely,
           Perry McLoughlin

384

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF PERRY MCLOUGHLIN**

I, Perry McLoughlin, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a Sophomore at the University of Washington and am a member of the NCAA Division I Women's Rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     In my high school career, I participated in 6-8 practices per week, and this is what it took to have the chance of being a Division I college athlete; also include sacrifices, having to miss other activities or social events.

3.     During my recruiting process, I was looking for a team where I could excel and be surrounded with the most supportive teammates and staff. University of Washington offered the most welcoming environment where I could learn and grow through my four years here and strive to work for scholarships based upon boating and performances. This gave me the opportunity and incentive to learn from every experience and grow alongside my teammates in the most supportive environment.

4.     I was informed about the roster limits just recently from my head coach, as a way to spread transparency about the issue. As just one of just over 100 women's rowers at the University of Washington, my whole entire team will be impacted. Close to half of our team will be left with no opportunity to row at this program any longer, when they have dreamed their whole lives of coming to Washington and adding to our legacy. These limits will impact not only the participation of our team, but the participation of our team in fall events, events we've been participating in for years. These races are key events in our season and help build our racing

1

experience early on in the season.

5.     These roster limits and events are taking a major mental toll on my teammates and I and have inevitable impacts on our performance on the water and in the classroom.

6.     If I am cut from the team, I will lose academic tutoring, academic counseling, mental health counseling, nutritional counseling, my meal plan, medical plan, and most of all, my support system of teammates and staff.

7.     With these threats of roster limits, I have to consider my opportunities away from this team, the team that has given me the most wonderful experience in this sport of rowing yet. Even with the thought of transferring, I'm worried I will never find another program like this one and scared I will not even be able to find a coxswain roster spot on a team. This brings threats to my mental health, my academic career, and my rowing career.

8.     I beg of you, please rethink your decision on these roster limits and consider how this is detrimental to the wellbeing of not only thousands of athletes, but of our sports that we have worked so hard as women to achieve.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
       January 26, 2025

PERRY MCLOUGHLIN
NCAA ECID No. 2208650896
21 Orchard Fann Rd
Port Washington, NY 11050

2
DECLARATION OF PERRY MCLOUGHLIN
CASE NO. 4:20-CV-03919-CW

Faith Meyer
1575 SW 134th Ave
Beaverton, OR  97005

January 22, 2025

        Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Faith Meyer.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2106196406.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                    Sincerely,
                                    Faith Meyer

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF FAITH MEYER**

I, Faith Meyer, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am a freshman at the University of Washington and am a member of NCAA Division I Women's Rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    Becoming a Division I college athlete demands unwavering dedication and significant sacrifice. As a high school athlete, I committed around 5 hours a day to sports— whether it was practice, lifting, or watching film—often with little to no days off, totaling 15– 20 hours a week. I regularly missed school for tournaments, which disrupted assignments and exams, and sacrificed holidays and family events for competitions and travel. My social life was limited, as friends enjoyed weekends and vacations while I was either training or competing. The physical and mental toll was immense, as I pushed through injuries, fatigue, and constant pressure to perform, all while juggling academic responsibilities. Ultimately, becoming a D1 athlete required a lifestyle fully dedicated to the sport.

3.    During my high school basketball career, I achieved numerous accolades, including a state championship, three league championships, and several tournament titles. I was honored with MVP, Most Improved Player, and Most Inspirational Player awards, along with being named First Team All-League twice and Second Team All-League once. Additionally, I earned a spot in the prestigious OSAA 10-Foot Club.

4.    As I've shared above, my dedication and passion for basketball have been unwavering throughout my high school career. This hard work led to offers/ interest from four

1

Division I schools, over 10 Division II schools, as well as several Division III and NAIA programs for basketball. I also had interest from a Division I school, the University of Washington, regarding their rowing program— a sport I had never even heard of before April 2023. Curious about the opportunity, I decided to explore it. Throughout the recruiting process, I focused on finding a program that valued team chemistry, passionate and supportive coaches, determination, hard work, and grit—qualities like integrity, excellence, perseverance, camaraderie, and tradition. Of all the schools I spoke with, the University of Washington embodied these values in every way. Despite having no rowing experience, it felt like the place where I truly belonged. I took a leap of faith and decided to become a Woman of Washington. My mindset going into this was clear: I wanted to compete for four years, knowing that the university had a track record of success with walk-on athletes. They spoke of the potential I could unlock if I gave everything I had, and I knew that by fully committing, they would give everything they had to help me become the best rower possible.

5.      On January 17th, 2025, we were called into a team meeting regarding the NCAA House Settlement. Our coach delivered the difficult news that the women's rowing roster cap would be reduced to 68, meaning that nearly half of the talented athletes on our team would no longer have a place on the roster next year.

6.      This situation is undoubtedly taking a significant toll on the athletes, increasing stress and pressure to perform both athletically and academically. Despite our best efforts to manage it, it's also beginning to affect our team dynamic.

7.      If I find myself without a spot on the team next year, I will lose my opportunity to earn essential financial aid, and many helpful resources, including my dining plan, tutoring, academic counseling, mental health resources, and medical insurance. Additionally, I would lose my sense of identity and purpose as an athlete. Choosing the University of Washington's women's rowing team was a decision I made based on everything it represented, and now, without that opportunity, I would also lose the chance to continue competing at the collegiate level. After taking a significant amount of time off from basketball, it would be impossible for me to return to that sport and compete seriously at this level.

DECLARATION OF FAITH MEYER
CASE NO. 4:20-CV-03919-CW

8.     As a result of the roster limits, I am faced with a difficult decision about what path is best for me. Should I enter the transfer portal and potentially switch schools, which could impact the quality of my academics? Or should I remain at the University of Washington, risking the possibility of having to stop competing altogether? This decision weighs heavily on me, and the uncertainty surrounding the timeline only adds to the overwhelming nature of the situation.

9.     In conclusion, Judge Wilken, I urge you to consider the significant impact the NCAA House Settlement will have on female athletes and the toll it will take on us. Having personally experienced the implications of Title IX, I've seen firsthand how male athletes often receive priority—whether in fan attendance, practice times, or resources—despite our women's teams being top-tier. Just when it seemed like progress was being made for women in sports, this settlement feels like a step backward. Women's sports are still in the early stages of growth, and if given the chance, we can unite to raise awareness and advocate for the continued support of women in athletics.

10.    Specifically regarding rowing, the proposed roster cap will have a devastating effect. Rowing development takes time—athletes often require years of physical and technical development. Teams like ours, which consistently contend for conference and national titles, are made up of athletes who progress over four years. It's not uncommon for student-athletes to spend their first year or more developing before competing at a championship level. The roster cap could remove these athletes at a critical stage of their development, before they have had the opportunity to compete at the highest levels.

11.    In women's rowing, most athletes don't peak until their late 20s, making their college years crucial to long-term success—especially for Olympic rowing. Many of Washington's Olympic medalists, both from the U.S. and internationally, began their careers in development boats at UW, and would have likely been cut under the proposed December 1 deadline. Walk-ons in rowing differ from those in other sports. Many are accomplished athletes from other disciplines who learn rowing from scratch when they arrive at university. We are a quarter school, beginning training in late September, so the December 1 deadline leaves us with only two months to prove ourselves and for coaches to finalize the 68 athletes who will compete

in the spring.

12.     With just 68 spots, illness or injury leaves little room for replacement. Some teams may struggle to field full lineups, and the timing of the roster cap doesn't account for student-athletes' well-being. The December 1 deadline falls during a critical academic period when student-athletes are preparing for final exams. Furthermore, the transfer portal opens after the roster cap deadline, meaning those who enter the portal will do so during a time of lower demand, reducing their chances of finding opportunities to compete that year.

13.     This decision will have far-reaching consequences for both the development of athletes and the future of women's sports, and I hope you will reconsider its impact on the athletes who are striving to reach their potential.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: Seattle, Washington
        January 22, 2025

_____
Faith Meyer
NCAA ECID No. 2106196406
1575 SW 134th Ave
Beaverton, OR 97005

Docusign Envelope ID: 3B27D4AF-E850-43F8-B85A-DR2F39F59C22

Isabel Michaelson
311 Church Ave
Mukilteo, WA 98275

January 27, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Isabel Michaelson.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2209658080.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                      Sincerely,
                                        Isabel Michaelson

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF ISABEL MICHAELSON</u>

I, Isabel Michaelson, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at the University of Washington and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have put in endless hours of training to get to this program. I would wake up by choice at 3:50 every morning during the weeks in spring season and drive 30 miles to Seattle to practice with another club before school. I would then turn around and get to class barely on time and go to practice with my high school team after classes. I have worked with a number of different teams to get good enough at coxing to come to Washington. I have gone through years of self-coaching and bringing myself to my mental limit just to get a chance to be on this amazing team.

3.      I have competed at the Head of the Charles regatta 4 times with different teams and medaled this year. I won 9 medals at the Northwest Masters regional championship in one year. I have won the Husky open men's 60+ 8 event and the Windermere men's 60+ event. I have been invited to all of the U.S. Rowing pathways camps, including ODP where I won gold in the women's 1v 8, Selection Development where I won gold in the women's 1v 8 open category against U23 dev boats and other collegiate programs, and Selection camp where I won gold with my 8 at Canamex.

4.      I have always wanted to cox for Washington. Having lived in state my whole life I have known about the boys and the women in the boat since I started coxing. Washington has

1

always been a machine. Washington rowing is an intense, well-run, absolutely massive beast of a team and I wanted to be a part of it. I wanted to be a part of the 'meat grinder' that you come out of with some of the most talented women in the country with. It's called coxswain U for a reason. 10 Olympic women's 8+'s have been coxed by someone from UW. I have dreamed about going to the Olympics since I was 12 and did everything I could to get myself to coxswain U so I can go about pursuing that goal.

5.      Our Coach Yaz told us about the roster limits in a team meeting. She told us the cap would be 68. This is including some staff, but we currently have 157 people in our team group chat. Over half of this amazing team is going to be crushed. Everyone at Washington wants to be here with every fiber of their being, that's why it's such an amazing program. Yaz told us that she will do everything she can to help us but I know that if we get cut, a lot of us will never row again. I personally don't see myself happy anywhere but Washington. I have big dreams that I want the chance to chase and I can't do that anywhere but here.

6.      I am incredibly worried about this. I came to Washington to row. I don't even have a major. Rowing is my life and if I can't do it anymore I don't know where that will leave me. When we found out about these roster limits the team and myself were in tears. This is crushing. The NCAA can't just cut our team in half. This is my family and I love and care about every one of them. I can't imagine not being able to see my team every day. It's hard to focus on school when your purpose for being there is at risk.

7.      I will lose just about everything if I am not on this team. I will lose my friends, my purpose for attending Washington, my long-term goals, my motivation and the best part of my life. I will lose access to free meals so I can afford books, therapy, medical care, tutoring, academic support, and nutritional support.

8.      My family is trying to save up for my sister's college fund and a lot of that has to come out of mine. My sister is my best friend and has struggled horribly with her mental health her entire life. School is something incredibly important to her and if my parents can't afford her tuition the effects will be extreme. I could lose my sister. I need to help her get to a better place and I think college is the way to do that. I need to cut as many costs as I can for her.

9. I don't even want to think about transferring. If I can no longer compete for Washington I will drop out of school. There is no point in me going to college and taking away from my sister's fund if I don't know what I want to do. I am at Washington to row and I can't imagine myself happy doing anything else.

10. Please do not approve the roster limits. I have worked too long and hard to get here. I have struggled with internal and external battles since 7th grade to continue rowing. I have had to switch to 3 different teams and cox for multiple to get a chance to come here.

11. My team is my family. I am happier now than I have ever been in my life. I want to do everything I can to try for the Olympics. I need to be on this team to do that. I have amazing coaches here dedicated to making this team as fast as possible and I don't want to lose the privilege to be taught by them. If I can't row I feel like I'm starting my life from square one. Please don't let this happen.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Mukilteo, WA

January 27, 2025

Isabel Michaelson
NCAA ECID No. 2209658080
311 Church Ave
Mukilteo, WA 98275

Reid Miller
133 West Franklin St. #438
Chapel Hill, NC 27516

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Reid Miller.  I am a current Division I athlete at the University of North Carolina and my NCAA ECID number is 1905586465.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                           Sincerely,
                           Reid Miller

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

### DECLARATION OF REID MILLER

I, Reid Miller, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Junior at the University of North Carolina and am a member of the NCAA Division I Men's Swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      The work and effort it took to have a chance of being a D1 college athlete is immense.  I spent my childhood and teenage years working 30+hrs/ week training intensely hard for the opportunity to swim at the D1 level. I had to set aside life known by most young people in order to be competitive in this sport. To compete at the top in swimming, it's imperative you train mornings and evenings 5-6 days/week. Many competitions are held during the week a dozen times a year, for which I missed school. I missed school field trips, I wasn't able to participate in other extracurriculars or clubs, social gatherings, prom, homecoming etc. At one time I was a very good baseball player, a sport that I had to give up playing in order to remain competitive in swimming.  I wasn't able to work a job, swimming is a full-time job.  The time it takes to train for this sport is mentally and physiologically taxing.  You leave a long day of training and classes at school only to get home to manage your academic studies and your recovery so that you're able to train hard again the next morning. Swim is a sport requiring dedication and specialization, swimmers have to sacrifice so much to compete in this sport.

3.      Among my list of achievements that attracted college coaches to recruit me include State Champion 100 Free 2022,  three-time State Champion 50 Free 2020 2021 and 2022.  I set the state championship record in the 50 free and 100 free as a high school Senior.  I

1

am a Scholastic All-American. I was named my high school's Athlete of the Year in 2022. I have always been a strong student both in the classroom and in the pool, I have a high GPA, my work ethic is highly regarded by my coaches and teammates. I was the exact caliber of athlete college coaches were looking to add to their roster.

4. I committed to swim for the University of North Carolina for 4 years with athletic scholarship for all 4 years. I had many offers from a dozen schools, and chose UNC for many reasons some of which include an athletic department that supports its athletes, the coaches here are as genuine as they come, a top program that tailors training by specialization, a combined Men's/Womens team that trains together, the strong academics offered at UNC, the quality professors and fellow students at UNC, the variety of majors offered, the opportunity to develop leadership skills along with my athletic and academic pursuits, the opportunity to grow with a program aspiring to climb into the NCAA Top 10. I am currently in my Junior year, and my experience has been everything I hoped it would be. I am very happy here at UNC with my coaches, teammates, academic and leadership pursuits.

5. The news of roster limits is startling, to say the least. We've been told that these rules will be implemented by the NCAA, and coaches have no choice but to abide by them regardless of how they feel. It's an awful situation for student-athletes and coaches alike. Coaches made guarantees to their athletes, signed into contract, guarantees they otherwise would keep. I have friends and teammates that have already been cut from other D1 teams across the country, and many more will be affected in the coming months. With my own team no cuts have been made yet, but we know there will be, it's a matter of time. And this timing couldn't be worse; Our championship season is upon us right now, we have Conference Championships (ACC's, SEC's etc) in less than a month with NCAA's a couple weeks after that. We've been training extremely hard since August, not to mention our whole life leading up to this season, for this opportunity to compete at ACC's and NCAA's. And now with worry of the state of our sport, the state of our program, our teammates' positions on the team, along with our own individual position on the team swirling around in our minds.

6. Absolutely this is taking a mental toll on me and my teammates, from the top of

the roster to the bottom, including the coaches. Every teammate on a swim team has a job to do, whether you're a point scorer in meets, a leader in the planning room, or a practice lane lead in the pool, every swimmer on the roster has value. We're all uncertain about your standing right now, when we've been guaranteed something and it's being swept away, at no fault of our own, we're being disregarded as a number, there's nobody that has our back. Your guarantee you worked so hard for, your NLI contract, isn't a guarantee anymore. In a sport that's already mentally and physiologically taxing, it's extremely hard to push forward right now academically and athletically not knowing what your future looks like.

7.     If cut, you'd lose your identity, your purpose, you're why. You'd lose your entire friend group and support network. You'd lose your award money which you already earned and was promised to you in your NLI. You'd lose access to your campus support services;  your coaches who are your champions in life, the athletic trainers and medical team, tutoring and study table space in Loudermilk, athletic academic counselors, early priority registration for athletes, athletic meals at The Training Table, athletic academic incentive awards. Life without your sport would look completely different than life with it. This loss is significant and devastating.

8.     This is an absolutely awful situation to be in. If the NCAA proceeds with these roster cuts, lawmakers will have failed athletes and college sports as a whole. Losing a roster spot, something you were guaranteed in writing, is devastating, for that to be taken away by a body of authority, at no fault of your own, is so damaging to these athletes who want nothing more than to earn their education while competing in their sport. They're losing the opportunity they've worked for their entire life due to external factors that they have no control over. There's no recovering from this. For each athlete, they'll handle this differently depending on their individual circumstance. Entering the already crowded transfer portal will not help many if any at all, as with this ruling, all programs are having to make cuts, there will be no open spaces to fill with athletes in the portal. Being cut for no fault of your own is devastating enough to result in many athletes taking a gap year to regroup. For college swimmers, because of the demanding and time intensive training schedule, you're limited to only a handful of hours each day to take

class, many swimmers choose majors that happen to offer classes in this small window.  There are many majors that swimmers aren't able to choose because they're unable to get the required classes into their schedule in time for graduation.  If cut, many of these swimmers may take a pause from their academics along with their sport, to regroup, and maybe pick back up at a later time.

9.     I don't think sports should have a roster limit as a result of other sports monetary success.  This undermines the principle of NCAA sports; fairness, equal support for all sports, giving equal opportunity to compete in all sports.  This ruling is taking this away, with this ruling, there's a loss of opportunity for people to compete in college sports.  The roster cuts in D1 trickle down to D2, to D3 and below, limiting the opportunity for all athletes at all levels in college sports.  I hope that the current roster sizes can remain without these drastically reduced limits, which negatively impacts school spirit within athletic departments around the country.  Just because sports don't make money doesn't mean they shouldn't exist, cutting the roster weakens the pipeline of American Olympic level athletes, without having college programs as training grounds for athletes to dominate on a national stage, you hurt American sports. You hurt people who want to get a degree while competing at a high level in their sport, people who want to setup their future career path to contribute to society once their athletic career ends, cutting out people who are good at their sport who need the athletic aid to attend college who wouldn't be able to afford college without the aid.  Many Olympians emerge from NCAA programs; limiting roster sizes in these sports hurts American sports dominance in the Olympics.  There's alot of community in these sports, club teams in and around college campuses bring an extra community of support and fundraising to campus life, they help build spirit and engage the alumni with the school and athletic department, further extending the school's reach and legacy.  Losing a spot, due to no fault of your own, for something you were guaranteed is devastating.  If you were guaranteed something, I believe you should be guaranteed it, and I believe authority and lawmakers should ensure those guarantees are met.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Dated: Chapel Hill, NC

Signed by:

*Reid Miller*

3        January 28, 2025

0A2BBED330C14C3

Reid Miller
NCAA ECID No. 1905586465
133 West Franklin St.  #438
Chapel Hill, NC 27516

Jacob Modleski
21121 Carrigan Crossing
Noblesville, IN 46062


January 12, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Jacob Modleski.  I am a current Division I athlete at the University of Notre Dame and my NCAA ECID number is 2198284462.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                Sincerely,
                Jacob Modleski

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF JACOB MODLESKI**

I, Jacob Modleski, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore and golfer at the University of Notre Dame. I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.      Notre Dame has been my home for the past year and a half. I've built relationships with teammates, coaches, and friends that will undoubtedly last me a lifetime. Additionally, I've developed into an elite athlete, but more importantly a better young man.

3.      I started playing golf when I was three years old, but I didn't start playing at the highest competitive level until my sophomore year of high school. By the end of my junior year of high school, I had compiled a very respectable resume, but I was nowhere near a fully developed player.

4.      Despite this, Notre Dame took a chance on me. I wasn't a nationally touted recruit. I wasn't on every school's top list of stars. I had plenty of natural talent, sure, but I was a 140-pound Indiana kid who needed maturing as both a player and a person. Coach Handrigan and Coach Zedrick saw my potential. Not all coaches did.

5.      This story is common. There are hundreds, if not thousands, of athletes like me that coaches take chances on. In fact, it is almost every recruit. Yes, some prodigies are bound to find immediate success from high school to the professional level in a few short years, barring injuries. But predicting the future of high school athletes is nearly impossible.

6.      When I first stepped foot on campus at Notre Dame, I needed physical development on and off the golf course, growth as a student in adapting to the difficult academic

1

1    environment that Notre Dame offers, and an understanding of how to develop my character so

2    that I am closer to the type of person I strive to be.

3        7.    All of these things take time. Lots of time. In the past year and a half, with

4    unwavering support from my coaches and my teammates, I have made strides forward in my

5    physical golf ability but, more importantly, in becoming a better person.

6        8.    The proposed changes to roster sizes across NCAA sports limit students'

7    opportunities for this same development for no reason. I understand the call for equality across

8    the entire landscape of collegiate sports, but fairness cannot come from picking and choosing

9    who has access to these opportunities.

10       9.    Further, these changes force coaches into impossible situations. Instead of

11   focusing on plans for development and growth, coaches are forced to decide who to keep and

12   who must go. That's not what coaches signed up for, and that's certainly not what hundreds of

13   coaches have pledged to recruits and players over the past four years. A coach's most valuable

14   assets are honesty and integrity, and the current settlement as it stands undermines both of those

15   in the most painful way possible for a coaching staff.

16       10.    I also do not want to see my hardworking teammates cut because of these limits.

17   Every team member is valuable and each one of my teammates pushes me to be a better person

18   and a better player—regardless of their scholarship status or their ranking on the team. Everyone

19   on a team contributes to the team culture and to a team's success.

20       11.    I ask for at least a grace period to extend a chance to play college sports to those

21   who were promised an opportunity. Kids spend their entire lives to have a chance to play

22   Division I sports, and to be denied that opportunity because of this settlement—which is out of

23   their control—simply isn't right. There should be at least a two-year grace period to allow the

24   transition towards smaller teams and to allow teams to maintain the cultures that they have spent

25   decades cultivating.

26

27

28

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Dated: Notre Dame, Indiana

3         January 12, 2025

_____

Jacob Modleski

4         NCAA ECID No. 2198284462

5         21121 Carrigan Crossing

         Noblesville, IN  46062

3

Kalee Verd
5232 12th Ave NE
Seattle, WA 98105

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Kalee Verd.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2309116282.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                             Sincerely,
                                             Kalee Verd

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF KALEE VERD</u>

I, Kalee Verd, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore at the University of Washington and a walk-on athlete on the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I joined the Washington rowing team as a freshmen new to college with no expectation of making the roster, but it has been a life-changing experience so far.  Rowing has shaped me in ways I never imagined, and I can confidently say that this program of strong, amazing women has profoundly impacted my life.  I cannot imagine where I'd be today without this opportunity, and I don't think I'd be quite as confident or driven as I am now without it.

3.      I am writing to express my concerns about the NCAA's proposed implementation of a 68-athlete roster cap for women's rowing, which is set to take effect in the 2025–26 academic year due to the *House v. NCAA* settlement.  While I understand that the NCAA has made strides in increasing roster spots and scholarships for some sports, I am concerned that this new cap will severely limit opportunities for walk-on athletes like myself and negatively impact the growth of women's rowing programs.

4.      When I first joined the team, I had no scholarship or guaranteed spot on the roster. I simply showed up, worked hard, and gave everything I had, and I was lucky enough to earn a place.  For walk-on athletes, the opportunity to be part of a team is often the key to our athletic journey.  The chance to prove ourselves without the pressure of scholarship status is invaluable. If the roster cap were in place when I walked on, there's a significant chance I wouldn't have

1

had the chance to prove myself or make the team. The new cap could severely limit the number of walk-ons, reducing the diversity and depth of athletes who can contribute to their teams.

5.     A larger roster allows for more opportunities for athletes, regardless of their starting point. It ensures that walk-ons have a chance to develop their skills and earn a spot, and helps build the supportive, inclusive community that is essential to a team's success. It's not just about the athletes on the roster today, it's about creating opportunities for the athletes of tomorrow.

6.     While the settlement may provide more scholarship opportunities and allow Division I schools to share athletic department revenues with athletes, the roster limits will still create unnecessary barriers for those of us who don't initially have a scholarship. The focus on increasing scholarship numbers is positive, but it's equally important to ensure that walk-on athletes are not left out. The roster cap could lead to the exclusion of many athletes who are ready to contribute and may not be on scholarship, but are eager to prove their worth.

7.     The team culture in women's rowing is everything. It's about collaboration, camaraderie, and lifting each other up. Without the opportunity to be part of a larger team, I fear that many athletes, especially walk-ons, will miss out on the chance to experience this dynamic. For many of us, being part of a team like this goes beyond just the sport, it's about the friendships, the life lessons, and the support system that comes with it. It's a community where every athlete, no matter their scholarship status, has a chance to grow and make an impact.

8.     If the settlement moves forward with this 68-athlete roster cap, I am concerned that we will lose these opportunities for future athletes. This policy may limit the growth of women's rowing and prevent other athletes like myself from having the same transformative experience I've had. I strongly urge the Court to reconsider this cap and recognize the importance of fostering inclusion and opportunity for all student-athletes, particularly for walk-ons who bring a unique and valuable energy to their teams.

9.     Thank you for your time and consideration. I hope the NCAA will continue to support and expand the opportunities for women in collegiate sports, allowing programs like ours to thrive and giving athletes like me the chance to become the best versions of ourselves.

2

1      I declare under penalty of perjury that the foregoing is true and correct.

2   Dated: Seattle, Washington

3          January 26, 2025

Kalee Verd
NCAA ECID No. 2309116282
5232 12th Ave NE
Seattle, WA 98105

**Jackson Mueller**
9136 Rigney Terrace
Glen Allen, VA 23060

January 29, 2025

Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken,

My name is Jackson Mueller. I am a current Division I athlete at William & Mary; my NCAA ECID number is 2206582862. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

Jackson Mueller

1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

Case No. 4:20-cv-03919-CW

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Hon. Claudia Wilken

8

**DECLARATION OF JACKSON MUELLER**

9

I, Jackson Mueller, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10

1.      I am a class of 2028 at William & Mary and am a member of the NCAA Division

11

I Men's and Women's Swim Team. I am a member of the Injunctive Relief Settlement Class and

12

object both individually and on behalf of the class.

13

2.      Our coaches have explained to us that roster limits, if implemented, will cause

14

our team to incur and suffer from cuts of four of our teammates. We do not yet know if these

15

will be athletes currently on our team, incoming freshmen, or a combination. We do not want

16

this and feel we should not have to worry about losing teammates or have any concerns

17

surrounding our own position on the team. Added stress does not help performance or team

18

spirit. Nor will a limited roster benefit our team.

19

3.      We function as a team in and out of the pool. We eat together, study together,

20

relax together, and live together; we have strong mentoring systems on our team and pride

21

ourselves on helping one another in and out of the pool; we are a tight, supportive group. We

22

worked incredibly hard throughout high school in order to have this opportunity; we all want to

23

remain on this team and at our school, together. We do not feel roster limits help our team or our

24

sport, but they will negatively impact those who are cut and our team at large.

25

26

27

28

1

Docusign Envelope ID: 19A7A596-D322-4E53-AA9B-939F556809D5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Williamsburg, VA

January 29, 2025

Signed by:

E8FF531DFC974A2...

Jackson Mueller
NCAA ECID No. 2206582862
9136 Rigney Terrace
Glen Allen, VA 23060

Leah Nash
4757 35th Ave NE,
Seattle WA 98105


January 26, 2025

       Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Leah Nash.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2107283083.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                           Sincerely,
                           Leah Nash

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

### <u>DECLARATION OF LEAH NASH</u>

I, Leah Nash, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a senior at the University of Washington and am a member of the NCAA Division women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I learned about the new roster limits recently from my head coach, who explained that our cap, as of December 2025, would be 68 athletes, down from our current number of 103. This would mean that a huge percentage of our team and athletes would face the risk of not being on the roster after next fall. People who haven't been able to have enough time to develop as rowers by next fall will not be able to compete at the University of Washington any longer.

3.      I was deeply hurt in hearing this new information, as I began my rowing career here at the UW as a walk-on my freshman year. It took over two years to develop into the athlete I am today, at the top of the team as one of the fastest rowers. If there had been a roster cap in place in my first two years on this team, I would have been an individual that was cut from the team. I would not have become a PAC-12 Conference Champion and NCAA Runner-Up in the Spring of 2023.

4.      If I am cut from the team, I will lose my financial aid, sense of food security, medical insurance, my community and family, and opportunity to further develop my rowing with the hopes of rowing at the national and Olympic level.

5.      As a result of roster limits, I am facing the possibility of not being able to graduate and finish school at the University of Washington. I would not be able to afford tuition, housing,

1

and food if I were to be cut from the team.

6.    I strongly object to the new roster limits that are being imposed. When I first joined this team, I had just left my family and my life and moved across the country to Seattle to start school in hopes of creating a better life. Having the opportunity to try-out for the rowing team and find my community through this sport quite literally has saved my life, which was threatened both physically and mentally at the start of my college career. Earning a scholarship helped allow me to continue my education and not be faced with extreme financial burden as a young adult.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, WA

January 26, 2025

_Leah Nash_

Leah Nash
NCAA ECID No. 2107283083
4757 35th Ave NE
Seattle, WA 98105

Joshua Noll
3423 W. Brenwick Dr.,
Peoria, IL, 61614, United States

January 28, 2025

      Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Joshua Noll.  I am a current Division I athlete at Auburn University and my NCAA ECID number is 2105176455.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                    Sincerely,
                                    Joshua Noll

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF JOSHUA NOLL**

I, Joshua Noll, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore at Auburn University and a member of the NCAA Division I Men's Swim and Dive team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I started swimming when I was five years old and started excelling in the sport by middle school. So, I started thinking about swimming in college during middle school, when my older siblings went to college to swim. There were ups and downs, but I continued to work through the global pandemic to swim in college. After a rough junior year of high school, I even moved away from my parents and lived with my cousin three hours away from home to have a better opportunity with a better club team. That led to a great senior year of high school and kept up good momentum into college.

3.      I was a Junior National qualifier in multiple events along with being a Scholastic All American for three years in a row in high school. I also still hold multiple records for both club teams that I swam for.

4.      I was honored to be recruited by roughly thirty different Division I schools. After talking with multiple coaches, I narrowed it down to five official visits and one unofficial visit. Five out of those six visits were to SEC schools as I wanted to move further south a little bit than my home in Illinois and cousins in Missouri. I wanted a team that felt like a family, and I found that when I visited Auburn University. I chose Auburn because of the team being so close knit and the campus feeling like home as soon as I got there for my visit. When I signed with Auburn,

1

I was promised an athletic scholarship along with the full Alston benefits for the four years of my eligibility. I also received an academic scholarship to attend Auburn University. I turned down a few other offers to attend Auburn because of the bond with my recruiting class along with the team environment.

5.    I heard about roster limits through a SwimSwam article that was posted on Instagram. Our coaches haven't directly addressed the lawsuit; however, they have talked about impending roster cuts. We haven't been told who will be cut or retained, but roughly half the team will be affected along with some incoming freshmen.

6.    This has been taking a mental toll on both me and some of my teammates in a negative way. It's created a lot of stress and fear of the unknown while we also try to have fun and perform our best without thinking about our future, whether that is in Auburn or not. It adds a lot on top of the pre-existing tough mental requirements for swimming and academics that I deal with already. I am thinking and stressing about the limits more and more.

7.    It is not entirely clear what I will lose if I am cut besides the athletic scholarship. But I know I will lose the benefits of being an athlete at Auburn University such as free tutoring, academic counseling, an athlete dining hall, and free entry to other sporting events on campus. I have signed my lease for next year already too, which means I will have to find a potential sublease to fill my spot. I will also lose the bond I have with my teammates and coaches that I created through my visit when I was in high school and while on the team the past two years.

8.    Due to roster limits, I am considering multiple avenues such as entering the transfer portal and trying to find a spot on another team or staying here at Auburn University and earning my degree while watching my teammates continue to compete. If I transfer, I am not sure if all my course credits transfer which might make me take another semester to graduate.

9.    With the SEC Men's Swim and Dive team roster limit going down to 22, it doesn't allow room for development or mistakes or injuries as all 22 would be on the conference championship team. It also makes it easier for foreigners who might be older and have already developed to make the team compared to a high school aged American.

10.    These roster limits don't make any sense and you should not approve them.

2

1      I declare under penalty of perjury that the foregoing is true and correct.

2   Dated: Auburn/Lee, Alabama

3          January 28, 2025

Signed by:

*Joshua Noll*

ECE84A4849BD4CE

Joshua Noll
NCAA ECID No. 2105176455
3423 W. Brenwick Dr., Peoria, IL
61614, United States

Grayson Nye
3308 Langston Circle
Apex, NC 27539

January _20_ , 2025

    Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Grayson Nye. I am a current Division I student athlete at the University of Tennessee and my NCAA ECID number is 2111371952.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2024.

            Sincerely,

            *Grayson Nye*
            Grayson Nye

**420**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

### DECLARATION OF GRAYSON NYE

I, Grayson Nye, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at the University of Tennessee.  I am a member of the University of Tennessee's Division I men's swim team and thus I am a member of the Injunctive Relief Class.  I object individually and on behalf of the class.

2.      I started swimming at an early age and have put in countless hours into improving as a swimmer.  In high school, I was a three-time North Carolina swimming state champion. This past summer, I qualified for the opportunity to compete in the Olympic Trials in Indianapolis, Indiana.  While I did not ultimately earn a spot on the team U.S. men's swim team for the Olypmics, I was honored to have a chance to compete for a spot in Paris.

3.      I started my recruitment process in the sophomore year of high school.  My strong high school swimming record led to my placement as the sixth-ranked high school recruit in North Carolina and a top 100 recruit in the nation.  As a result, I received strong interest from a number of Division I programs.  I took visits at the University of Kentucky, Auburn University, the University of Alabama, the University of Southern California, and the University of Michigan.  After considering all of my options, I eventually committed to the University of Tennessee late in the fall of my senior year.  I loved my interactions with the coaching staff and the competitive culture of the team.

4.      The roster limits issue first came onto my radar when I arrived on campus for summer training.  It was not until November 2024 that I learned how they would affect me and my team.  Our coaches sat us down and let us know that they would be forced to cut a certain

1

number of student athletes at the end of the year because of the roster limits. We were told that we would have until after the last meet in March to compete for a spot on the team. Although no cuts have been made yet, the coaches made clear to us that they will have to make cuts because of the roster limits. There is a lot of uncertainty amongst my teammates as to what the future will hold for our collegiate athletic careers.

5.    The fallout from the impending cuts has caused considerable anxiety for me and many of my teammates. The first year as a college swimmer is a huge transition that has required me to quickly adapt to new schedules, coaching styles, and training methods. Despite the transition, I felt as though I was continuing to improve as a swimmer.

6.    I have barely had the opportunity to show my coaches my level of competition and ability to improve. I worry that developing swimmers like me will be the first ones cut from rosters, despite oftentimes being the hardest working swimmers on the team.

7.    I have worked extremely hard and have earned the opportunity to compete at the collegiate level. Now, for reasons entirely out of my control, I could lose my spot before the end of the season, and without a full opportunity to prove myself. I know that there are many other swimmers, and student athletes in general, who feel the same.

8.    The cuts by the roster limits could cause significant upheavals to my personal life as well. I have had to put my life on hold in a lot of ways because of the roster limits. For example, I live with some of my teammates, and we are no longer in a position to sign a lease for the next school year because we do not know how many of us will be transferring to other schools because of cuts.

9.    My social life is also bound in many ways to the swim team. Our training schedules are very busy and as a result we don't get many chances to interact with the rest of the student body. Instead, I spend most of my time with my teammates, in spaces reserved for student athletes like the athletic dining facilities. I am happy to do so, as my teammates have become some of my closest friends. Being cut from the team would also mean losing some of these important connections with my teammates, which I find incredibly disheartening.

DECLARATION OF GRAYSON NYE
CASE NO. 4:20-CV-03919-CW

10.    A lot of my teammates, including some of the best swimmers on my team, are against the roster limits.  The cuts caused by the roster limits will fundamentally change the fabric of our team for the worse and deeply impact team morale.  At the very least, there should be some sort of transitional phase to ease into the new roster limits.  The abrupt change is simply not fair to myself and my teammates.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Apex, North Carolina
    January 20, 2025

Grayson Nye
NCAA ECID No. 2111371952
3308 Langston Circle
Apex, NC 27539

Liv Ormseth
P.O. Box 562
Vashon, WA 98070


January 26, 2025

        Re:   *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Liv Ormseth.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 2206596199.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                  Sincerely,

                                  Liv Ormseth

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF LIV ORMSETH</u>

I, Liv Ormseth, hereby declare as follows pursuant to 28 U.S.C. §1746:

I am a Freshman at the University of Washington and am a member of the NCAA Division I Women's Rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

I have always had a love for competition, camaraderie, and exercise. Starting in Kindergarten, I played basketball, wrestling, soccer, track, lacrosse, baseball– wrestling, track, and lacrosse only lasted a few years, but the others continued through my childhood. At one point, my dream was to get to play basketball for Washington.

I began rowing in 8th grade at a club team on my small island. Throughout the next five years, I devoted countless hours of my time– six to seven practices per week, time per practice typically reaching three hours, if not more. I eventually had to give up soccer and basketball, as doing all of them was too much. The sport and the community changed who I am completely. I learned proper work ethic, leadership skills, accountability, and what it meant to be a good teammate, just to name a few. I developed self-confidence and respect for myself that I hadn't found in anything else.

I got the opportunity to travel to competitions that hosted national and international competitions, such as the Head of the Charles in Boston, and Youth Nationals in Florida. I

1

worked so hard that as a Sophomore, I just barely missed qualifying for Nationals in the U19 single category– an age category that I was at the youngest end of, only being 16 years old.

In the June after my Sophomore year, as a result of overworking myself, I suffered a back injury that sidelined me up until the May of my Junior year. The MRI showed a disc bulge on my L5-S1. I was distraught, and found myself very depressed. I played basketball again, but I just felt as though a part of me was missing. Despite believing that I would never get to row again, a part of me held onto hope, and I worked hard in physical therapy, and by the spring, I qualified for my club's top boat!

At the end of my Sophomore year, I had been communicating with college coaches, my heart set on rowing in college. I had gone on a tour at Washington at the beginning of Junior year, but all communications went silent on my end, as I didn't have the heart to tell coaches what was going on. As that year ensued, I had given up on getting to row in college, thinking that I was too late, and no coaches would want me due to my injury making me a liability. That spring, I received another email from Washington. They were still interested. This was my opportunity.

Washington offered a spot on the team, but you had to work for it. Nothing is promised, you earn your spot through hard work. I turned down acceptances at the nine other colleges I was accepted to, some of them were painful to turn away. But I wanted to be a Husky. I feel pride and gratitude every day that I get the opportunity to be a part of Washington Rowing.

About a week ago, we came together as a team to talk about the roster limits that would be enacted next year. Our head coach, Yasmin Farooq, explained the situation in detail, wanting us to have all the information we needed to make an informed decision of what we wanted to do with our own future. Sitting in a room of 90-100 of my teammates, there was not one person I could look at that hadn't become a part of my life that I didn't want to give up. We

push ourselves and each other every day; sometimes rowing can be miserable, cold, sopping wet, or painful, but I still look forward to it every day. This is because I get to surround myself with the most amazing people. In each of them, I can see qualities that I aspire to develop in myself. This quarter, I've gotten the opportunity to be the Freshman representative on the leadership board for the rowing team. This means I've gotten to attend meetings with the coaching staff and the representative for each of the grades above me to help maintain the functionality of the team, and solve problems in the boathouse. This has been yet another chance for me to learn from role models that will help me become a better person. The team culture that has been fostered would be diminished by nearly half if the roster is capped at 68, forcing coaches to cut so many of us.

Knowing that we may only have about half of our current capacity next year, every day of practice feels like a test. Pressure feels heightened, and we search for hidden meaning in every lineup and message from coaches to indicate whether we will be kept on the team next year.

Being part of Washington Athletics makes getting an education far more manageable and affordable for me. I get access to free meals most of the week, a center for academics that includes tutors, priority registration, and an advisor, and resources for medical, nutritional, and mental help. I also get opportunities to attend career workshops, and connections to a legacy of Washington Rowers. In return, I commit myself to working hard every day, putting my best foot forward at each practice, and trying to make my team a better place when I'm there, and for the future generations. I won't only lose these opportunities and resources; if rowing is taken away, I fear that I will return to the way I felt when I had to step away from it for a year in high school. Rowing houses my support network and my closest friends, it gives me self respect and confidence, and it structures my life and pushes me to be my best self.

Docusign Envelope ID: 24B00DC9-7CF8-435G-9788-3D1265366925

I am still developing as an athlete. I come from a smaller team where I was always at the top, and had nobody to compare myself to and to push me. Surrounded by incredibly strong and hard-working teammates at Washington, I surprise myself on each test. I am hitting times that I've never seen before. I need more time to develop into the athlete I want to believe I can one day be. Next year, I might not be at my full capacity, and if the roster limits are slashed in half, I may never reach it. I love the state of Washington, I've grown up here my whole life. The offer of in-state tuition, and proximity to my family is very important to me. If I am cut next year, I would want to continue rowing at the competitive level I get at Washington, but I don't want to have to sacrifice the education and connections I have made here. There doesn't seem to be a good solution to that decision, and the likelihood of being put in that position is greatly heightened by a roster limit of 68.

I hope that the roster limits can be reconsidered as being cut from the team would greatly impact the lives of so many– myself, and my close friends and teammates, as well as people across the country who are in the same position on their rowing team. Rowing is undoubtedly life-changing, and rewards those who are willing to work hard and be good teammates, and it feels wrong to prevent athletes from being able to do that on the basis of a system that is fully able to change.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, WA
        January 26, 2025

Signed by:

_2A3171A5E1C44AF..._

Liv Ormseth
NCAA ECID No. 2206596199
P.O. Box 562
Vashon, WA 98070

**Veronika Owen**
2619 Puritan Court
Herndon, VA 20171

January 28, 2025

**Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW**

Dear Judge Wilken,

My name is Veronika Owen. I am a current Division I athlete at William & Mary; my NCAA ECID number is 2209661624. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate the firm of MoloLamken LLP to speak on my behalf at t Fairness Hearing on April 7, 2025.

Sincerely,

Veronika Owen

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF VERONIKA OWEN**</u>

I, Veronika Owen, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a freshman at the College of William & Mary and am a member of the NCAA Division I women's swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     I trained nine times a week, 15 hours a week, for six years to gain enough experience and training to have the chance to be a Division I college athlete.  The rigorous training with swimming required it to remain my top priority throughout high school, and as such, I sacrificed numerous academic and social opportunities in order to maintain optimal training or compete.  I was unable to commit myself to the full International Baccalaureate diploma experience because I understood I had to keep being able to swim constantly during my junior and senior years to realize my goal of competing at the Division I level.  Moreover, I was unable to join debate club, book club, or creative writing club because of after school practices and drylands.  In my junior and most of my senior year, I was unable to attend Model UN conferences because of conflicts with major meets.  In addition, I consistently missed other social events such as attending high school sports games, dances, honors societies meetings and other activities.

3.     I was recruited to William & Mary because I demonstrated the same principles of the athletes that represent the school's program.  In high school, I showcased my competitive skill and competed at multiple national meets including Winter Junior Nationals, TYR Pro Series, and Futures. Furthermore, I demonstrated academic excellence because I was a part of

1

the 2022 Scholastic All American Team and 2022-2023 PVS Scholar Athletes. Lastly, I'm a two time record breaker for my high school.

4. During my recruiting process, I knew that I was looking for an academically rigorous, mid-sized school at a mid-major Division I school. When I reached out to the William & Mary coaches, I realized with enthusiasm this was the place I wanted to be, and the coaches reciprocated that enthusiasm for me. The coaching staff was eager to introduce me to the team and its kind, welcoming dynamic. After a few months of communicating, I was offered a spot on the team which I graciously accepted. I was so grateful I had found the perfect school for me to pursue my athletic and academic dreams for the next four years. I had considered other schools, but I was drawn to the unique cohesiveness and bond the team had, and I knew there was no place I'd rather be to compete, learn and grow alongside other incredible athletes and people.

5. My coach told us about the roster cuts at a team meeting a few months ago when there was more uncertainty. At the time, no cuts had occurred. A few months later, our head coach announced that if the roster limits were to go into effect, four female athletes would be cut from the team next year. It's uncertain if the incoming class, current teammates or a combination of both will be cut, but as of right now, the cuts are expected. Swimming is such a representative sport of outstanding female athletes, and to have four women cut from the team would be detrimental to our program. Since William & Mary does not have a dive team, every single swimmer on our team is absolutely necessary to swim and score points at meets given our automatic 32-point disadvantage. The roster cuts would not only gravely affect the team's morale; it would make the point difference even harder to make up in dual and championship meets.

6. These propositions for roster cuts have taken an enormous mental toll on myself and my teammates. Swimming is an incredibly difficult sport with intense aerobic and anaerobic, muscular, and mental strength to perform at the Division I level. That strength comes from our teammates and our comradery in practice and meets, lifting each other up. However, these roster cuts have induced anxiety in the team as to who will and will not be swimming next

year.  I have had to begin taking anti-anxiety medication because the dread of losing my teammates or my spot has induced such immense stress that it has gravely impacted my performance this season.

7.      Swimming has an enormous influence in my life and is a large part of who I am. It's how I take a break from academics and spend time with my best friends.  If I get cut from the team, I will lose that piece of me.  I will lose out on tutoring services, class priority registration, and other academic resources.  I will not be able to be as close with my friends as I am now without seeing them every day at lift and practice.  I will have to go through the rest of college knowing that I should have – and would have – been there alongside them but that I couldn't because of something that I couldn't control or stop.

8.      If I am cut from the team, my athletic career will have to end.  Because William & Mary has one of the best International Relations programs in the country, no other swim program that could offer me a spot would be able to offer the classes, resources, and professors I require to be successful in the future.

9.      I implore the court to reconsider the roster limits.  There is no good to come of them as it only damages the team dynamic and individual members' mental health.  Denying young people the opportunity to pursue their dreams because of roster limits imposed by the lawsuit is completely abhorrent, and I would urge the court to realize the immense toll it would take on not just those that are cut from my team, but a generation of student-athletes for years to come.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Williamsburg, Virginia
        January 28, 2025

Veronika Owen
NCAA ECID No. 2209661624
2619 Puritan Court
Herndon, VA 20171

Sophia Park
1006 Kearney Drive,
North Brunswick, NJ, 08902

January 21, 2025

Re:  *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Sophia Park. I am a current Division I athlete at Liberty University and my NCAA ECID number is 1903446698. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

*/s/ Sophia Park*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF SOPHIA PARK

I, Sophia Park, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.    I am a sophomore and a member of the NCAA Division I track and cross country teams at Liberty University. I am thus a member of the Injunctive Relief Settlement Class and object to the settlement on behalf of myself and the class.

2.    Running has always been a passion of mine. In high school, I was part of three New Jersey state championship teams in cross country and track and field, and I set school records in the 1600, 4x800, and distance medley relay.

3.    I chose to attend Liberty University and joined the team as a walk-on. I am not on an athletic scholarship, and work very hard to contribute to the team.

4.    My freshman year was filled with memorable experiences. During the 2024 outdoor track season, I achieved personal bests in the steeplechase (11:36.49), the 1500m (4:44.11), and the 5K (18:11.51). I competed in the C-USA steeplechase final, where I placed fifth, and was named the Most Improved Team Member by my coaches in the fall of 2024 for Cross Country.

5.    I was also recognized for my academic efforts, earning a C-USA Commissioner's Academic Medal and a spot on the C-USA Commissioner's Honor Roll. Balancing a rigorous training schedule with academics has been challenging, but I feel as

1

though I was able to strike a balance and have been able to flourish in both academics and athletics here at Liberty.

6. I first heard about the settlement in this lawsuit and the roster limits last fall. Our coaches have not given us many details about how the roster limits will impact our team, and the uncertainty has been very stressful. I know that there could be significant cuts to the team, but I do not know whether or not I will be cut from the team.

7. The uncertainty has been stressful. The possibility of losing my place on the roster has made it difficult to plan for my future at Liberty University. Roster limits disproportionately affect athletes like me, developmental athletes who may not have been top performers in high school but have shown improvement at the collegiate level. Liberty has a strong emphasis on developmental athletes like me, and the coaching staff has been very supportive in making sure that I have the time and training that I need to be able to compete at the collegiate level.

8. If I am cut, I will lose access to team resources, including coaching, athletic facilities, and structured training. These resources have been critical to my personal growth and as a runner and student.

9. The proposed roster limits undermine the mission of collegiate athletics by eliminating opportunities for walk-on student athletes like me. With roster limits in place, teams will no longer have the room on their rosters to accommodate walk-on athletes who may not have had the same exposure to the sport and training before college, or who simply may need a little extra time to develop in order to be able to compete at the next level.

10. My time at Liberty has been defined by the opportunities to compete, improve, and represent my school. Losing those opportunities would be extremely disheartening. I object to the roster limits in the proposed settlement because of the harm they will cause to

1  countless student-athletes.

2

3

4  Dated: Lynchburg, Virginia
       January 22, 2025

Sophia Park
NCAA ECID No. 1903446698
1006 Kearney Drive
North Brunswick, NJ, 08902

DECLARATION OF SOPHIA PARK
CASE NO. 4:20-CV-03919-CW

Elizabeth Peery
23110 NW 11th Ave,
Ridgefield, WA 98642


January 26, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Elizabeth Peery.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2301757867.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

               Sincerely,
               Elizabeth Peery

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF ELIZABETH PEERY

I, Elizabeth Peery, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.　　I am a 2028 at the University of Washington and am a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.　　I have spent roughly 30 hours a week, every year since I was around 8 years old, to get to the position to compete at the Division 1 level. Constant driving to practice. Dedication of myself, my family, friends, and all others who supported me. Being a student athlete is not for the weak, as many might know, however it takes a village to get to compete at a D1 level.

3.　　5 State Championships appearances, 3 National Championship appearances, several qualifiers in different sports, tournaments every weekend of the summer/fall, and last but not least the life lessons I have learned on the journey through my sports. All the medals/awards I have won, were not easily attained. One must work tirelessly to earn the opportunity to compete at the highest level. To do so, you lose countless friendships, opportunities (outside of sports), parties, and so on. To be an athlete at this level, you sacrifice "fun," for more time on the court, field, and water.

4.　　My recruiting experience was quite normal. The stress of emailing a coach. The

1

pressure of choosing the right college that will inevitably change the trajectory of your future. The endless pain that haunts you when your dream school turns you down. For me, my main recruiting was for softball. I spent 4 years of my life dedicated to writing emails, talking to coaches, research, and practicing until I dropped to make sure I was good enough to compete at the highest level. Near the beginning of my senior year, I received an email from coach Allie Lohrenz (hometown husky recruiting coordinator) from UW rowing. I responded, visited UW, and ended up ending my softball career to try something new, rowing. When I made the decision, I was told that if I continued to work hard throughout college, there would be an opportunity for scholarship money. While this was not the main reason for committing, it gave me something to look forward to.

5.      For the University of Washington team specifically, they recruit several walk-ons. Both before the school year and during. Walk-ons being someone who has never competed or trained in the sport of rowing. For my freshman year, we had almost 12 walk-ons try-out for the chance to be a Woman of Washington Rower. With this being said, we needed an extensive amount of training to learn how to row, the proper mechanics, the different parts of the boat, and make friendships with both the coaches and teammates. As the potential roster cap states, the roster has to be finalized no later than December 1st. This is nowhere near enough time to train, grow both in strength and mindset, and be able to compete with others who have been working at rowing for the past 3-4 years. At Washington, it is shown that walk-ons can become Olympians and National Champions given the proper time and growth it requires to become a strong athlete at the highest level. My teammates and I were told this past week at our team meeting that there was going to be a roster cap set in place for the upcoming season. As a team with a large roster, almost double what the cap is set to be placed at, the freshman were quite concerned. Starting off the season with around 60 freshmen and roughly

58 varsity members, we were nervous about the large roster however we were reassured that this was for a reason and that we will only grow stronger as a team. As I, and teammates have learned, the larger the team, the more we grow.

6.      This is unfortunately taking a large toll on both my own, and my teammates' state of mind. As we go to practice, we try and over-compete with each other to stay for the upcoming season. This hurts our relationships and does not build a good team aura.

7.      As many of us have trained for years, we are bound to have a set routine. Specifically for injuries, meals, practices, and so on. For injuries, whether they are past, present, or reoccuring, athletes who have trained their whole life need the best help they can receive medical care from doctors who are very familiar with these specific injuries. For meal plans, as a student athlete who is given snacks, lunch and dinner 5 times a week, and food support at all times, it is a very large adjustment to go into something that you are not used to. This can cause malnutrition and a lot of money that the athletes will be losing out of pocket to provide their own food. Practices have been built into athletes' schedules since they were very young and it is a big change when they don't have something to attend to, workout, or build time back in their schedule. This causes depression, athletes can lose their personality, and many other scary mental illnesses that come along with being dropped from a sport.

8.      As for the roster cap, I am a walk-on freshman who is still learning how to row, the terminology, and so much more that comes along with the sport. From a team with a large roster, my position on the team is not guaranteed as the roster cap closes in. This is very devastating as I came to the school with the idea that I was going to have a built in community, schedule, meal plan, and personal trainer. As many know, the University of Washington is quite expensive, so for my family, paying for all of the extra things that sports give me will bring quite a toll. I am afraid that even though the University of Washington is my dream school and

I am here for a specific major that I intend to complete, I will have to transfer to another school to be able to afford the price that such a school requests. Something I never thought I would have to do.

9.      If I have any opportunity to suggest another option, other than a roster cap, I would love to do so. A roster cap would mean cutting the life and soul out of thousands of athletes who have worked their entire life for the opportunity to compete at the next level. I plead that roster caps are not implemented and another option is reviewed. For myself, teammates, and future D1 athletes, I ask that you give us an opportunity to do what we worked so hard to do. Thank you.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
         January 26, 2025

_____
Elizabeth Peery
NCAA ECID No. 2301757867
23110 NW 11th Ave,
Ridgefield, WA 98642

4

Alessandro Perez
712 Belmont Dr
Georgetown, TX 78626


January 28, 2025

    Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Alessandro Perez. I am a current Division I athlete at Texas A&M University and my NCAA ECID number is 2104158503. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                      Sincerely,

                    /s/ *Alessandro Perez*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF ALESSANDRO PEREZ

I, Alessandro Perez, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore and a member of the NCAA Division I football team at Texas A&M University. I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.      In high school, I was a four-sport athlete, competing in powerlifting, track, wrestling, and football. I put in countless hours training every day to improve as an athlete. My efforts paid off. I was ranked as a top five defensive lineman in the state of Texas and led my high school in sacks. I was also a state qualifier in wrestling and have earned several more accolades in track and powerlifting. I took my academics seriously as well, and received academic honors in high school.

3.      Two months prior to graduation, I was contacted by the football recruiting staff at Texas A&M. They invited me on campus visit and subsequently offered me preferred walk-on status with the team. I was ecstatic to have the opportunity to continue playing the sport I love and competing at the highest level of collegiate football.

4.      I redshirted my freshman year in order to maximize my development potential, so I could compete for playing time in the future. My hard work earned me team accolades like scout team player of the year nominee and if I continued to develop as a player, I would likely be getting playing time next season. Unfortunately, I recently suffered a devastating knee injury mid-season- this past October- tearing my ACL. Despite my injury post-surgery, I was still determined to continue playing football. I have been diligent in my rehabilitation journey and

1

1   expect to make a full recovery before next season.

2       5.    I first heard about the roster limits issue on social media at the beginning of my
3   sophomore year. Later in the season, we were told by our coaches that the roster limits would
4   result in cuts to the football team's roster. We were told by the coaches that the roster cuts would
5   disproportionately affect the walk-on student athletes like me. I was told that due to my injury,
6   and because of the number of transfer students coming in next season, that it was unlikely that I
7   would be able to retain my spot on the roster next season. Although a final decision has not yet
8   been made, it seems likely that I will be cut if the roster limits are approved.

9       6.    Some of my teammates, who are also walk-on student athletes, have already been
10  cut in anticipation of the roster limits going into effect. There has been a lot of uncertainty and
11  panic amongst the walk-on athletes as we don't know whether we will be able to keep our roster
12  spots next season. Walk-ons like me are some of the hardest working athletes on the team. We
13  put in countless hours of training and study just for the chance to get any time on the field, and
14  this uncertainty puts our future at risk of being displaced with little to no time to plan for an
15  alternative.

16      7.    Losing my spot on this team would be devastating to me. I've committed over a
17  decade of my young life to get to this point, sacrificing time with friends and family for grueling
18  workouts and training as often as three times a day. I was always happy to do so, because the
19  investment in myself was supposed to unlock opportunities to compete on the field and to be
20  part of a team. Now, I feel crushed and in a sense of panic over what to do next.

21      8.    It seems that I will now have to either remain at Texas A&M and be forced to end
22  my collegiate football career entirely or risk leaving all my connections here to enter a highly
23  congested transfer portal while still in recovery. In the meantime, I will potentially be losing out
24  on benefits like access to the Texas A&M athletic facilities, supplemental food support, and my
25  tuition support annual scholarship for student-athletes. This decision, and the rushed timing
26  forced by both my injury and the roster limits, have caused great distress for me and my family.

27      9.    The Texas A&M football program and home of the 12th man prides itself on the
28  opportunities it provides to walk-on athletes like myself. Our coaches consistently give walk-

2

1  on athletes the chance to prove their abilities on the field.  The roster limits in this settlement

2  will put an end to that opportunity for hard-working student athletes like me.  Allowing student

3  athletes to develop and giving them a chance to prove their talents on the field is the entire point

4  of collegiate athletics.  The NCAA should be maximizing these opportunities, not stripping them

5  away from people.

6      I declare under penalty of perjury that the foregoing is true and correct.

7  Dated: College Station, Texas
8      January 28, 2025

Alessandro Perez
9      NCAA ECID No. 2104158503
      712 Belmont Dr
10      Georgetown, TX  78626

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Docusign Envelope ID: 66C411136-0A78-4645-9FC5-370028DE0665

**Faith Perry**
1007 Lafayette St
Williamsburg, VA 23185

January 28, 2025

Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken,

My name is Faith Perry. I am a current Division I athlete at William & Mary; my NCAA ECID number is 2002804849. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate the firm of MoloLamken LLP to speak on my behalf at t Fairness Hearing on April 7, 2025.

Sincerely,

Faith Perry

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF FAITH PERRY**</u>

I, Faith Perry, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Senior at William & Mary and am a member of the NCAA Division I
Men's and Women's Swim Team. I am a member of the Injunctive Relief Settlement Class and
object both individually and on behalf of the class.

2.      Our coaches have explained to us that roster limits if implemented, will cause our
team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be
athletes currently on our team, incoming freshmen, or a combination. We do not want this and
feel we should not have to worry about losing teammates or have any concerns surrounding our
own position on the team. Added stress does not help performance or team spirit. Nor will a
limited roster benefit our team.

3.      We function as a team in and out of the pool. We eat together, study together,
relax together, and live together; we have strong mentoring systems on our team and pride
ourselves on helping one another in and out of the pool; we are a tight, supportive group. We
worked incredibly hard throughout high school in order to have this opportunity; we all want to
remain on this team and at our school, together. We do not feel roster limits help our team or our
sport, but they will negatively impact those who are cut and our team at large.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Dated: Williamsburg, VA

3          January 28, 2025

          Faith Perry
4         NCAA ECID No. 2002804849
          1007 Laffayette St.
5         Williamsburg, VA 23185

Matthew Prigmore
3947 Cascade Terrace
Weston, FL 33332


January 10, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Matthew Prigmore.  I am a current Division I athlete at the University of Central Florida and my NCAA ECID number is 2107279753.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                Sincerely,
                                             Matthew Prigmore

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF MATTHEW PRIGMORE**

I, Matthew Prigmore, hereby declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore at the University of Central Florida ("UCF").  I am a member of the NCAA Division I football team and thus a member of the Injunctive Relief Class.  I am writing to oppose the roster limits, and my objection applies to that class.

2.      Football has been central to my life since I began playing as a freshman in high school.  The game has shaped my identity, teaching me discipline, perseverance, and teamwork.  By my junior year, my efforts were recognized, and I received a preferred walk-on opportunity at Florida Atlantic University.  However, after the coaching staff at FAU was replaced, I sought a program that was a better fit for me.  UCF emerged as that program—offering not only a strong football culture but also an exceptional academic environment.  Accepting a preferred walk-on position at UCF allowed me to pursue my dreams both on the field and in the classroom.

3.      A preferred walk-on position on the football team provides a guaranteed roster spot but does not include an athletic scholarship.  Nevertheless, UCF has supported me with academic tutoring, athletic gear, some meals, access to the athletic facilities, priority housing, and priority class registration.  This support system has been invaluable as I strive to balance the rigorous demands of being a student-athlete.

4.      During my first year at UCF, I redshirted in order to have more time to develop as a football player.  However, this year, just before Thanksgiving, I learned from our former offensive line coach that the proposed settlement in this case would impose a limit on the roster size for the UCF football team.  I was shocked when I later confirmed this through social media

1

and saw widespread backlash from players and fans. This announcement has introduced tremendous uncertainty into my future and that of my teammates.

5.      The proposed roster limits would not only jeopardize my place on the team but also fundamentally alter my college experience. Football is more than a game to me—it's a defining part of who I am. If I were cut from the team, I'd face a difficult choice: either enter the transfer portal to try to continue my football career elsewhere or give up the game altogether.

6.      UCF's strong academics make it my preferred choice, but the thought of losing my spot on the team is devastating. I also receive an in-state academic scholarship from Florida's Bright Futures scholarship program which I would lose if I transferred out of state.

7.      I committed to this program as a student-athlete prior to graduating high school. I had other offers to various schools throughout the country; however, I accepted my dream offer at UCF as a preferred walk-on. It seems unfair that this potential settlement could change my trajectory. If given this information prior to accepting this offer, my plans would have been different.

8.      Walk-on athletes like me are among the hardest working members of any team. We don't receive scholarships, stipends, or NIL compensation. Instead, we play for the love of the game and the chance to contribute to something bigger than ourselves. Many walk-on athletes excel academically because we rely on academic scholarships, which require us to maintain high GPAs.

9.      The student-athletes that will be disproportionately cut from their teams as a result of these proposed roster limits will be walk-on athletes. The students that will be harmed most are those of us who have overcome obstacles to earn our place on the roster. It eliminates opportunities for athletes who embody the core values of perseverance and dedication.

10.     Roster limits also pose practical challenges for football programs. Injuries are a reality of the sport, and at any given time, about 10 players on our team are sidelined due to injury. Reducing roster sizes increases the risk of overworking the remaining players, potentially leading to more injuries. Smaller practice squads would also slow preparation for games, harming the team's overall performance.

Docusign Envelope ID: 929AD3F2-C723-4D3A-9B14-637C0E7DDBEE

11. The proposed limits would disrupt essential benefits I receive as part of the team. If I were removed from the roster, I would lose access to the athletic cafeteria facility. I would also have to bear the cost of academic tutoring, which is currently provided by the team. These resources are vital to my success as a student-athlete and would be extremely burdensome to replace on my own.

I declare under penalty of perjury that the foregoing is true and correct.

Orlando, Florida
January 10, 2025

DocuSigned by:

1E3C110032A1468...

Matthew Prigmore
NCAA ECID No. 2107279753
3947 Cascade Terrace
Weston, FL  33332

Nathan Quarterman
2115 East 18th Street, Unit B
Austin, TX 78702

January 29, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

     My name is Nathan Quarterman.  I am a current Division I athlete at the University of Texas and my NCAA ECID number is 1907641514.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

     I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                   Sincerely,
                                   Nathan Quarterman

Docusign Envelope ID: 363B3B0C-01B0-434B-8BE8-070ADDB13523

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF NATHAN QUARTERMAN</u>**

I, Nathan Quarterman, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a senior at the University of Texas and, until December 2024, was a member of the NCAA Division I men's swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I began swimming competitively at a young age and, during high school, became a fifteen-time Idaho state champion.  I dedicated countless hours to training and competing, which earned me the opportunity to swim at the collegiate level.  I have also been named a four-time conference academic All-American during my time at the University of Texas.

3.      My journey to become a Division I swimmer required significant personal sacrifices, including missing social events and balancing rigorous training schedules with academic responsibilities.  I have always taken pride in my role as a student-athlete.

4.      I first learned about this lawsuit in the summer of 2024 and heard about the potential for roster limits.  At the time, I did not fully understand the details or how the roster limits might affect me and my teammates.

5.      In December 2024, our coach informed the team that if we did not meet certain time standards or qualify for the SEC championship roster, we would be cut from the team.  The SEC roster is limited to 22 athletes, including divers, which means only 18 swimmers can compete.  Unfortunately, I did not make the SEC roster and was informed that I would no longer be part of the team for the remainder of the season. This decision effectively ended my collegiate swimming career mid-season, as the season typically runs through March.  I was allowed to

1

participate in the senior night meet, but only as a ceremonial acknowledgment.  I will not be permitted to continue training with the team.

6.      My situation is somewhat unique, as I am eligible for an additional year of competition due to a medical waiver.  However, with the current roster limits, I do not believe I will have the opportunity to swim for the University of Texas next year.  This has left me considering whether to transfer as a graduate student to another program, a decision complicated by the uncertainty of finding a place to train and ensuring my academic credits will transfer.

7.      The roster limits have caused significant stress and anxiety amongst me and my teammates.  Many of us have devoted years to achieving and maintaining this level of performance, only to abruptly lose our roster spots without clear justification.  This has negatively impacted our mental health, and has been a major distraction from both our athletic and academic pursuits.

8.      Being cut from the team has disrupted my sense of identity and purpose as an athlete and fractured the close bonds I shared with my teammates. Not just my own, but those of the members of the team who are still currently swimming as well.

9.      These arbitrary restrictions unfairly punish athletes who have worked tirelessly to represent their schools and compete at the highest level. Losing these opportunities undermines the principles of fairness and merit that should guide collegiate athletics.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Austin, Texas

      January 29, 2025

Nathan Quarterman
NCAA ECID No. 1907641514
2115 East 18th Street, Unit B
Austin, TX 78702

Tyler Quarterman
3506 Speedway #302
Austin, TX 78705

January 21, 2025

Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Tyler Quarterman. I am a current Division I athlete at the University of Texas and my NCAA ECID number is 2106218600. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2024.

Sincerely,

*/s/ Tyler Quarterman*

456

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF TYLER QUARTERMAN**</u>

I, Tyler Quarterman, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at the University of Texas, where, until January 2024, I was a member of the men's swim team.  I am a member of the Injunctive Relief Settlement Class.  I object individually and on behalf of the class.

2.      I have been swimming competitively since a young age.  As a high school athlete, I was an eight-time state champion in Idaho.  This includes wins in multiple relays, the 100-yard backstroke and 200-yard freestyle as a senior.  I am also proud to have broken a state record in the 200-yard medley relay.  I was also a two-time Junior Nationals qualifier, and a finalist in 2024.

3.      My high school accomplishments led to my ranking as the number one college recruit in Idaho for the class of 2024.  As a result, I received recruitment interest from a number of Division I programs including the University of Kentucky, the University of Southern California, and the University of Cincinnati.

4.      Ultimately, I decided to attend the University of Texas.  I've always had a strong connection to the University of Texas due to our family history.  My father swam for Texas in the 80s and my brother was a senior on the swim team until quite recently.  It has been my dream to compete as a Longhorn for as long as I can remember.

5.      I first heard about the settlement in this lawsuit prior to arriving on campus last fall.  Within a month of the semester beginning, my coach discussed the possibility of roster limits leading to cuts with the team.  The coaches did not get into specifics on the cuts, and so I

1

1    focused instead on what I could control: working hard at school and training hard in the pool.

2        6.    Last month, however, our head coach called the whole team in for another

3    meeting.  This time, he mentioned that due to the settlement moving forward, he would have to

4    make cuts because of the roster limits.  He added that he would be making decisions after our

5    next swim meet.  Despite performing well at our meet, four of my teammates and I were

6    informed that we no longer had a spot on the team.  We were told that we could no longer even

7    practice with the team.

8        7.    I was crushed by this news to say the least.  I have been swimming my whole life,

9    and I have put in countless hours with the dream of competing at the collegiate level.  Now, after

10   swimming in only four meets, that dream has abruptly ended.  My family takes a lot of pride in

11   Texas swimming, and I wanted a chance to keep that tradition alive for all of us.  I felt really

12   disheartened with the roster limits decision.

13       8.    The most frustrating aspect of being cut from the team is that I feel like I did not

14   have an opportunity to show what I was capable of.  I am a developing swimmer at the very

15   beginning of my collegiate athletic career, and I've improved a lot over the past year.  Not having

16   the opportunity to continue to develop into the swimmer I could become has been incredibly

17   disheartening.

18       9.    If I want to continue swimming at the collegiate level, I will likely have to transfer

19   out of state.  Doing so would come at a considerable financial cost to myself and my family, as

20   I am currently paying in-state tuition at Texas.  Transferring would mean losing all of the friends

21   I have made here at Texas, and I would have to build new relationships with coaches at a brand

22   new school.  It would mean a total upheaval of a large part of my life.

23       10.   There is no guarantee that I will even be able to secure a spot on another roster in

24   the transfer portal.  I know that student athletes across the country are entering the transfer portal

25   now because of cuts being made by the prospect of roster limits.  There will likely be many

26   student athletes competing for a reduced number of roster spots.

27       11.   If I do stay at Texas, I would lose access to important benefits I was able to rely

28   on as a student athlete.  I currently have access to athletic facilities on campus, such as the student

2

Docusign Envelope ID: 7D8390EC-EAF9-41A9-BDE4-E50C6B6D091E

athlete dining hall, academic tutoring and advising.  I also receive swimming gear, books for my classes, and a $6,000 dollar per year stipend for student athletes.  Covering the costs of these benefits on my own will be a significant financial burden for myself and my family.

12.     I always thought that if I consistently put in the work in the pool, that I would at least have an opportunity to compete on race day.  The cuts that have been made because of these roster limits throw this idea into question for myself and countless other student athletes.  I have abruptly had my life turned upside down without any say in the matter.  These roster limits should not be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Austin, Texas

January 21, 2025

Signed by:

*Tyler Quarterman*

A2863FDA6784D6...

Tyler Quarterman
NCAA ECID No. 2106218600
3506 Speedway #302
Austin, TX 78705

3

Harrison Ranier

6110 Silver Eagle Way

Concord, NC 28027

January 30, 2025

      Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Harrison Ranier.  I am a current Division I athlete at Auburn University and my NCAA ECID number is 2101997484.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                      Sincerely,

                                                    Harrison Ranier

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF HARRISON RANIER

I, Harrison Ranier, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore at Auburn University and am a member of the NCAA Division I Men's Swimming & Diving team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      To have the chance of being a Division I college athlete, I practiced swim 12 hours per week plus 3 days of competition per month during middle school every night after school from 6:00-8:00 p.m. and on Saturday mornings, 12 months out of the year. In high school, I attended school from 7:15a.m.-2:15p.m. and practiced swim 28 hours per week plus 3 days of competition per month. During the week, I awoke at 4:30a.m., drove to practice 30 minutes away, practiced from 5:30a.m.-6:30a.m., drove to school for my academic day, then back to practice from 3:00-6:00 p.m. I ate meals in the car between practice and school and had no time for any activities during high school outside of classes and swim. I also had practice from 6:00am-9:00 a.m. every Saturday and Sunday. This practice schedule was active 12 months out of the year, with mandatory training trips and double practices (morning and evening) during the two weeks between Christmas and New Year's and the summer months. I also swam for my high school swim team which added four hours to my schedule each week during the months of November - February every year. Currently at Auburn University, I practice 24 hours per week from August - June each year plus multiple competitions that require

1

travel as far as 9 hours away. To earn the opportunity to swim at Auburn University, I was unable to participate in high school and social activities, I missed most weekends and many vacations with my family, I did not have time to nurture other hobbies, I did not have a strong friend group outside of my swim team because I did not have time to grow relationships outside of swim. My family made tremendous sacrifices of time and money to allow me to swim at a high level.

3.      My achievements in swim during high school attracted the interest of over sixty NCAA coaches across the country. I was a year-round swimmer with USA Swimming with NC Swim Teams - Sailfish Aquatics and #1 Nationally Ranked SwimMAC Carolina. I was a top club swimmer multiple years. I won multiple individual state championships and was a nationally-ranked swimmer.  I qualified for multiple national championship meets. I was a two-time USA Swimming Scholastic All-American (USA Swimming Scholastic All-American award recognizes athletes in 9-12th grade who have maintained a minimum 3.5 grade point average and met a National Cut time competition criteria in the pool).  I was a 5-time National Interscholastic Swim Coaches Association award winner. (In order for a swimmer to be considered as a NISCA High School All-American he must compete for an interscholastic team & be scholastically eligible as determined by the NCHSAA. The athlete must achieve a qualification time in the pool). In 2022, I won the NC High School Athletic Association (NCHSAA) Sportsmanship Award. I was named Most Valuable Swimmer at Northwest Cabarrus High School (Concord, NC) in 2021, 2022, and 2023. I am still the school record holder in 7 of 8 individual events.  I am a school record holder in 2 of 3 relay events.  I was the NCHSAA 3A State Champion in multiple individual & relay events. In 2021, 2022, and 2023, I was recognized by NC Swimming (a division of USA Swimming) as an All-Star, Top-5 fastest, and Top-10 fastest state ranked swimmer in multiple events.  NC Swimming is the most competitive USA Swimming state sending the highest

number of athletes to the Olympic Trials each qualifying year.

4.      My NCAA recruiting experience in 2021 was exhilarating and I compare it to dating. On the first day of recruiting, 31 different coaches contacted me from Yale, Princeton, Harvard, Villanova, UNC Wilmington, University of Georgia, University of Cincinnati, Notre Dame, Dartmouth, Army West Point, Mizzou, Bryant Univ, Michigan, LSU, Minnesota, Miami of Ohio, Binghamton Univ, Univ of Virginia, Univ of Pittsburgh, Utah, Auburn, USC (South Carolina), Indiana University , West Virginia University, Univ of Wyoming, UNC Chapel Hill, Northwestern University, Florida State, University of Louisville, Univeristy of Kentucky, and Cleveland State. Many additional schools contacted me during a period of five days after the recruitment period opened. I spoke with every single coach on the telephone at least one time. Per NCAA rules, I then had to select five schools to visit. I selected Indiana University, Auburn, University of Louisville, Florida State, and University of Kentucky. I was looking for a competitive Men's Swimming program, a personality fit with coaches, a campus that didn't feel too big or too small, a school that had academic majors aligned with my interests, a safe campus, and a safe city within a one-day drive of my home in North Carolina. Of the multiple offers I received, I narrowed my choice to Indiana University because I have family near campus, and Auburn University. Despite Auburn being 370 miles from home and me not knowing a single person in Auburn, I selected Auburn because I felt a strong connection to the coaches, I liked the size of the campus, I loved the swimming and diving facility, and the financial offer that I received of $15,000 for my freshman season, along with a scholarship and grant that I received, was significant enough to offset the exorbitant out-of-state tuition costs. Coach told me during my recruiting visit that I had a promising future at Auburn and he couldn't wait for me to come into his office at the end of the first season and ask him for more scholarship money because he expected me to have much success my freshman year and every year thereafter. I felt like I had a home and 4-year career at Auburn as a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

swimmer and as a result, accepted Auburn's offer and declined a financial offer and spot on the Men's Swimming team at Indiana University. I moved from North Carolina to Auburn in June 2023 to begin my NCAA swim career.

5.     I learned about the House v. NCAA thirty (30) person roster limit from a SwimSwam news article titled "House Settlement Terms Reveal New Division I Roster Limit of 30 Swimmers and Divers per Team" on July 27, 2024 prior to arriving to Auburn in August for the start of the 2024-2025 swim season. When our team re-convened for our first practices of the 2024-2025 season the first week of August 2024, a buzz among the swimmers about the settlement was building, but because the settlement didn't require the limit until the 2025-2026 season, we didn't think much of it. That all changed quickly in September when we heard from our coaches that the Southeastern Conference (SEC) was discussing a much stricter roster limit of 22 swimmers and divers. I knew then that over half our team (currently 48 Men) would be cut at the end of the year. My plan was to swim hard and fight for my roster spot, but I unfortunately had some health issues in September that took approximately six weeks to resolve. I still attended practice, but was not 100%. In October 2024, we received the unfortunate news that the SEC finalized the 22-person roster decision and in a horrible move, made the decision effective immediately for competition rosters during the 2024-2025 regular season instead of waiting until the 2025-2026 season per the NCAA v. House decision which impacted many of us not being permitted to travel to away meets this season. Because all of this is still evolving, our coaches have not told us anything with finality, likely because they do not know exactly what will happen regarding limits and cuts for the team creating much uncertainty and stress about our futures with the team.

6.     This uncertainty has taken a tremendous toll on my mental health. Because of my physical health issue in September, I started the 2024-2025 season from a difficult place and wasn't allowed to properly recover and heal due to the stress of fighting for

Docusign Envelope ID: 6645C14F-08EE-4D50-958A-447CB25A306A

my position on the roster. Because of the SEC imposing a 22 person limit this season, I have not been able to travel with the team to away meets and have only been permitted to swim home meets as an exhibition (non-scoring) swimmer only because of the unfortunate timing of my medical issue that made my swim times slower than normal. After being named the SEC Freshman Male Swimmer of the Week on October 10, 2024, and being named to the 2024 SEC Academic Honor Roll for outstanding academic accomplishment while competing in intercollegiate athletics, this 2024-2025 year and the confusion surrounding SEC roster limits imposed a year earlier than the House Settlement requires and imminent cuts at the end of the season in March of 2025, tension has been extremely high and my year has been full of confusion, anxiety, stress, and disappointment. The stress of being a D1 athlete in a normal season is tremendous due to swim practice commitments, the pressure of competitions,   the physical toll on my body, finding time to nutritionally fuel properly throughout the day, mandatory academic advising appointments, classes, etc., but the pressure and confusion caused by roster limits has made for a difficult environment causing many team members to sabotage one another for sake of saving the self. It is like the Hunger Games. Team morale has definitely been negatively impacted and coaches are in the unfortunate position of playing favorites and not elevating or working with the swimmers who will likely be cut from the team at the end of the season. The swimmers who have not been permitted to compete due to the SEC's 22 person limit are lame ducks and not worthy of personal coaching attention.

7.      If I am cut from the team, I will lose everything that I have worked to build these last two years. I will lose over $15,000 of athletic financial aid, in addition to losing free tutoring, athletic academic strategy counseling, athlete free meal plan, free health care, free psychological counseling services, free athletic event tickets to football, basketball, and more sports. I had to sign my 2025-2026 housing lease in October 2024 and if I am cut, will be put in a position to try to sublet my home or pay

for it in full regardless of my ability to remain a student at Auburn University. If my roommate is cut from the team, but I am not, I will be forced to find a new roommate to offset my housing expenses. Even more difficult to reconcile will be the loss of close friends on the team who will have no choice due to financial constraints to leave Auburn because of the cuts. I have done nothing but swim since I was in middle school and as much as I try not to wrap my identity around swimming, it has been a huge part of my life and I will suffer if my career is unexpectedly cut short before I've reached my peak potential. My family will be in the unfortunate position of deciding whether I can finish my academic career at Auburn solely due to financial reasons.

8.      As I consider a future different than I planned - being possibly cut from the team due to roster limits but likely not knowing definitively until the late date of May 2025, I am processing through many possible paths. My hope is to remain a member of the Men's Swimming and Diving team at Auburn University. I love my home in Auburn, my housing situation is good, I love the town. If I do get cut, I have to consider whether or not I want to continue to swim competitively at a different school (enter the transfer portal only IF I am notified of my cut in time to do so) despite the fact that many of my credits will not transfer to a different school therefore extending my time as a student and overextending my 4 year budget. I might stay at Auburn without swimming despite financial hardship to finish my degree. I might club swim and go back to a USA Swimming team and swim Master's league. I might quit swim. I possibly could withdraw from college altogether and move back home to NC to mentally rest and regroup before figuring out a different life path. While it seems like a no brainer to enter the transfer portal, the issue is that thousands of swimmers will be flooding the portal this year for schools that may already have their rosters full. Additionally, it will be very difficult to assimilate into a team as a junior and that is a major transition and stress in and of itself. The uncertainty and lack of time to create a new plan is paralyzing so I try to remain in the present and enjoy where I am today

6

because I am well aware that I may not be here in a few months.

9.      In this declaration, I provided many personal and selfish reasons as to why I am opposed to roster limits. On a larger scale, I am opposed to the strict 22 person SEC roster limit because this limit includes swimmers AND divers. If a swimmer gets sick or injured, there will not be a "bench" swimmer to replace said swimmer, therefore putting a team at a scoring disadvantage. 22 nor 30 athletes is simply enough to develop and maintain a healthy swimming pipeline for the teams. Additionally, many successful male Olympic swimmers did not have a successful college career until they were juniors and/or seniors. Imminent roster cuts may cut men from teams before they have reached their peak around age 22, which is unfortunate and will negatively impact USA Swimming's Olympic Pipeline. From a larger trickle down affect, roster limits will impact youth swimming because parents are likely not going to sacrifice the cost or family time to allow youth to swim if the dream of NCAA D1 swimming is out of reach. I love the sport of swimming. I love being a D1 athlete. I believe much like swimmers who were impacted by the Covid-19 pandemic year were granted an extra year of eligibility, current D1 swimmers should be allowed to remain on their teams until graduation. It is simply tragic that lifelong NCAA dreams that have been earned by years of tireless work, practice, training will be cut short expeditiously and prematurely by an NIL ruling that was intended originally to benefit athletes but now instead is destroying thousands of athletes by stripping them of their academic and athletic careers.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 30, 2025

Lee County, Auburn, AL

Signed by:

E19EC9764CB74D3...

Harrison Ranier
NCAA ECID No. 2101997484
6110 Silver Eagle Way
Concord, NC 28027

Samantha Anabella Rietbroek
1807 Greenlea Cv,
Southlake, TX 76092


January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Samantha Rietbroek.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2402216351.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                               Sincerely,
                                  Samantha Anabella Rietbroek

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF SAMANTHA RIETBROEK</u>**

I, Samantha Rietbroek, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a 2028 at the University of Washington and am a member of the NCAA Division I women's Rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      My entire life changed when I started rowing at the age of 14. Before rowing, I felt unsure of myself, didn't consider myself athletic, and struggled to find my place in high school. Rowing transformed everything—it gave me a sense of community, long-term goals, and improved my physical and mental well-being.

3.      From the very beginning, rowing became my top priority. Friday nights were dedicated to early bedtimes in preparation for Saturday morning practices. Weekday evenings and weekends were consumed by the hour-long drive to and from my boathouse, followed by 2-3 hours of practice. Every school break became a training trip. There were no spring break vacations or visits to see my extended family—only rowing. I trained year-round, spending countless hours on the boat, in the weight room, and on the rowing machine to become stronger and faster.

4.      While these sacrifices meant giving up social events and free time, I would make them again in a heartbeat. Rowing demands an unparalleled level of dedication. It's the first thing on my mind when I wake up for morning practice and the last thing I think about before I fall asleep at night. Being out on the water with my teammates, focusing on my oar cutting through the water, brings me a sense of purpose and peace I look forward to every

1

single day.

5.    On average, I've trained 3-4 hours a day, six days a week, since I was 14. These countless hours have given me lifelong healthy habits and a bond with teammates who have become my closest friends. As someone who has moved internationally eight times, rowing has been the one constant in my life since my freshman year of high school.

6.    My journey began as a Novice at New Trier High School in Winnetka, Illinois, then continued at Dallas United Crew in Texas, and now, as a freshman rower at the University of Washington. Each stage has shaped my identity and strengthened my commitment to this sport. I wouldn't have even discovered this university if not for rowing, and I am grateful for the opportunities it has brought me.

7.    Rowing has truly transformed my life, teaching me the value of discipline, perseverance, and teamwork. Despite the sacrifices, I wouldn't trade this journey for anything.

8.    My biggest achievements come from rowing. The highest moment of my life come from rowing races. My results include 2024 US Rowing Summer Nationals 1st Place Women's U23 4-, 2024 US Rowing Summer Nationals 3rd Place Women's U23 4+, 2024 US Rowing Summer Nationals 1st Place Women's U19/U23 4x sprint, 2024 Heart of Texas Regatta 2nd Place Women's Youth 8+, 2023 Head of the Oklahoma 1st Place Women's Youth 8+, 2023 US Rowing Summer Nationals 5th Place U19 4-, 2022 Head of the Hooch 2nd Place Women's Youth 4x, 2022 US Rowing Youth National Championships 9th Place U17 2x, 2021 US Rowing Central Youth Regional Championships 1st Place U17 2x, 2021 US Rowing Midwest Youth Championship 1st Place Girls Novice 4+. I am also a member of the Peruvian National Rowing Team, I am very proud to be able to represent my mother's home country.

9.    I entered the recruiting process completely unsure of what to expect. My journey began the summer after my sophomore year of high school and ended in the fall of my senior year when I committed to the University of Washington. The process was filled with uncertainty. Some coaches told me I needed to get faster before they could consider me for their program, while others said I wasn't the right fit. For a year and a half, I spent hours every week calling, texting, emailing, and visiting coaches, all while dealing with sleepless nights

wondering where I would end up—or if I would even have the opportunity to row in college.

10.    Initially, the University of Washington wasn't even on my radar. It was so far from home that I had never seriously considered it, and to be honest, I didn't know much about the school. But everything changed after my first call with the UW coaches. From that moment, I knew I had found my future home.

11.    When I received my offer from the University of Washington, I didn't hesitate for a second. Everything about the program felt right, from the opportunity to row year-round to becoming part of an incredible legacy of strong women. These were women who fought for what they believed in, whether that was winning NCAA championships or championing equality in women's sports—a fight we continue to this day.

12.    I came to UW with the understanding that I had earned my spot and that as long as I held up my end of the commitment, working hard and constantly striving to improve, that spot would remain mine. However, with the new proposed roster limit, the spot I fought so hard to earn might not be there next year. Despite this uncertainty, I am determined to keep fighting. This is not just a fight for a spot on the roster but for the opportunities and values that brought me to this program in the first place.

13.    On January 17th, 2025, our team was called into a meeting regarding the NCAA House Settlement. Our coach delivered devastating news: the women's rowing roster cap would be reduced to 68, meaning nearly half of the talented athletes on our team could lose their spots. The room fell silent as the weight of this announcement settled in. Shocked and emotional, many of us were brought to tears. This proposal threatens to undermine the very foundation of our team. Rowing is a sport built on camaraderie, mutual support, and the collective strength of individuals coming together for a shared goal. Cutting athletes doesn't just impact those directly affected—it disrupts the unity and bond that makes rowing more than just a sport.

14.    This situation is undoubtedly taking a significant mental toll on us as athletes, adding stress and pressure to an already demanding environment. Rowing requires immense mental strength in normal circumstances, but the uncertainty surrounding roster cuts has amplified these challenges. The weight of knowing that some of us may no longer have a place

on the team next year is affecting both our athletic and academic performance. It's hard to stay focused when the future feels so uncertain. Despite our best efforts to remain united and supportive of one another, the stress is beginning to strain our team dynamic.

15.    If I were to be cut, I would lose more than just a spot on the team. I would lose access to financial aid, academic counseling, tutoring, and the unique privileges that come with being a student-athlete. The dining halls where I eat with my teammates, the housing arrangements built around our schedules, and the shared laughter after practices together—all of these moments form my college experience.

16.    Being part of this team isn't just about rowing; it's about a sense of belonging and identity. My role as an athlete gives me purpose and has shaped who I am today. Losing that connection would be devastating. Most importantly, I would be losing the close bond I share with my teammates—my second family. These relationships, built through countless hours on and off the water, are irreplaceable.

17.    The possibility of being cut feels like losing a part of myself, as this team has been my home, my support system, and my inspiration to keep pushing forward every day.

18.    I've had to consider the unthinkable: entering the transfer portal. However, transferring is far from a simple solution. There's no guarantee that other programs will have roster spots available, especially with so many athletes now facing similar situations. Even if I were to find another team, transferring could significantly disrupt my academic progress. Not all course credits transfer seamlessly, and I would risk delaying my graduation or losing progress toward my degree.

19.    I chose the University of Washington not just for its rowing program but also for its academic excellence. It's a place where I've found a balance between pursuing my athletic goals and earning a degree that aligns with my future aspirations. Leaving would mean walking away from both my athletic and academic dreams, as well as the relationships I've built with my teammates, classmates, and coaches.

20.    The thought of starting over somewhere else—adjusting to a new academic system, building new relationships, and competing to prove myself all over again-feels

4

overwhelming. Yet, the possibility of losing my place on this team is forcing me to confront these difficult choices, none of which come without significant challenges or sacrifices.

21.    I respectfully urge the court to reject the proposed roster limits. As a female athlete, this proposal feels deeply unfair and undermines the progress we have made under Title IX. Allocating resources disproportionately to men's sports, such as football, while capping opportunities for women's rowing sends a harmful message: that female athletes are less valued. Rowing is one of the few sports that offers women this level of opportunity, and imposing these limits threatens to undo decades of progress.

22.    Women's rowing demands patience, perseverance, and long-term development. Athletes often spend their first year—or longer—learning the sport and building the physical and technical foundation required to compete at the highest level. Capping rosters at 68 will cut athletes during critical stages of their development and will stifle their potential before they even have the chance to show what they're capable of. Many Olympic rowers from the University of Washington, both from the U.S. and internationally, started as developmental athletes. If this cap had been in place, those athletes might never have achieved greatness.

23.    Beyond individual growth, rowing is built on teamwork, inclusivity, and a shared culture of mutual support. Cutting rosters to such a limited number undermines this foundation. With only 68 spots, the margin for illness or injury leaves little room for adjustment. Additionally, the December 1 deadline is poorly timed—it coincides with a crucial academic period when athletes are preparing for finals. The stress of this deadline, combined with the academic pressure, compromises both mental well-being and performance. To make matters worse, the transfer portal opens after the deadline, limiting athletes' ability to find other opportunities and leaving them in a state of limbo.

24.    Personally, if this cap goes into effect, I would lose not only my spot on the team but also my sense of identity, my purpose as an athlete, and access to the resources that have helped me thrive academically and personally. Rowing has given me a community, lifelong friendships, and the confidence to chase my dreams. Without it, I feel as though I would lose a part of myself.

5

25.    This decision has far-reaching consequences that go beyond individual athletes—it sets a precedent for devaluing women's sports. Progress takes time, and women's athletics are still in the early stages of growth. We need more support, not more restrictions. I urge the court to reconsider the devastating impact this proposal will have on women's sports, on our development as athletes, and on the legacy of perseverance and opportunity that rowing embodies.

26.    Please allow us the chance to continue pursuing our dreams, to grow as individuals and athletes, and to uphold the values of teamwork, inclusivity, and dedication that make collegiate rowing so special.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington

January 28, 2025

_____

Samantha Rietbroek
NCAA ECID No. 2402216351
1807 Greenlea Cv,
Southlake, TX 76092

Jake Rimmel
622 Kinvarra Pl
Purcellville, VA 20132

January 20, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Jake Rimmel.  I am a current Division I athlete at Virginia Polytechnic Institute and State University and my NCAA ECID number is 2110358456.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

              Sincerely,

              /s/ Jake Rimmel

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

## DECLARATION OF JAKE RIMMEL

9    I, Jake Rimmel, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10    1.    I am a sophomore and, until December 2024, a member of the NCAA Division I

11  track and field team at Virginia Polytechnic Institute and State University ("Virginia Tech"). I

12  am a member of the Injunctive Relief Settlement Class and object to the settlement both

13  individually and on behalf of the class.

14    2.    I have been a runner since I was young, and my passion for running has driven

15  me to compete at the highest levels. In high school, I was a nine-time All-State honoree, a two-

16  time state champion, and an All-American as part of a distance medley relay team.

17    3.    At Virginia Tech, I have continued to develop as an athlete. In the 2024 outdoor

18  track season, I set personal records of 3:48.66 in the 1500m at the Hill City Twilight and 1:53.04

19  in the 800m at the Wake Forest Invitational. I am also proud to have made the ACC Academic

20  Honor Roll which I achieved by balancing athletics while maintaining a strong GPA.

21    4.    Virginia Tech felt like the right fit for me because of its strong athletic culture

22  and supportive teammates. As a walk-on athlete, I have worked hard to continue to develop as

23  a runner and to contribute to the team.

24    5.    I heard about the roster limits issue in Summer 2024, although we did not receive

25  any official communications regarding the issue from Virgina Tech. Last March, four students

26  were cut from the track team, followed by another four students in June. After surviving those

27  cuts, I felt a sense of security with respect to my spot on the roster.

28    6.    However, in late December 2024, I was told I was being cut from the team, along

1

1   with three other students. My coach explained that the new roster limits left no room for
2   developmental athletes like me. He was disappointed and expressed how difficult it was to make
3   these cuts.

4     7.  Virginia Tech's track program has a strong tradition of supporting developmental
5   athletes—students like myself who show a lot of promise but need time and coaching to progress
6   to the level. There are many athletes like myself on the team who are strong runners, but are not
7   quite fast enough to earn the required scores at conference meets. Coaches have worked hard to
8   train these athletes so they can eventually contribute to the team's success.

9     8.  After being cut, I have decided to enter the transfer portal to try and find a
10  university where I will have the opportunity to compete. Finding a team through the transfer
11  portal has been difficult given the large number of runners who were also cut and are also trying
12  to transfer. There's an oversaturation of student athletes that have been displaced because of the
13  proposed roster limits.

14    9.  Being cut from the team has disrupted both my athletic and academic life.
15  Without access to the athletic program, I am no longer able to run or train with the team, and no
16  longer have access to important athletic and academic resources that were critical to my
17  development both as a student and as a runner.

18    10.  The implementation of roster limits undermines the mission of collegiate athletics
19  by depriving student-athletes of opportunities to develop and compete. If the settlement is
20  approved, thousands of student-athletes like me will lose the chance to pursue their passions and
21  achieve their potential.

23  Dated: Blacksburg, Virginia
24    January 20, 2025

             Jake Rimmel
             NCAA ECID No.2110358456
             622 Kinvarra Pl
             Purcellville, VA 20132

Addyson Roberts
529 26th Street
Virginia Beach, VA 23451


January 30, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Addyson Roberts.  I am a current Division I athlete at Liberty University and my NCAA ECID number is 2101988408.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                    Sincerely,
                                               Addyson Roberts

Docusign Envelope ID: E79C9F80-25BD-4037-9779-64CCF306F985

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF ADDYSON ROBERTS</u>**

I, Addyson Roberts, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Freshman at Liberty University and a member of the NCAA Division I Women's Swim and Dive team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      In high school, I swam for more than 30 hours a week to prepare for college swimming. I often missed holidays, events, school trips and programs, and many other things in pursuit of my dreams to swim at the Division I NCAA level.

3.      I am a 3-time high school state champion, a member of the TIDE Swimming National team, a district, regional, and state record holder, and a 4-time High School All American.

4.      I was recruited by multiple Division I schools and visited many wonderful campuses and programs during my junior and senior year. Every school offered promises of a wonderful swimming and educational career. It was wonderful to have options, but at the same time made it difficult to choose a school. My choice ultimately came down to what program could make me better as an athlete and give me the opportunity to get a quality education.

5.       The recruiting process was the most overwhelming and draining process I have experienced to date. To have to go through that again, after having been offered a spot I thought I would have for 4 years would be very difficult.

6.      I learned about the roster limits at practice one day in the fall. We currently have 35 swimmers and divers, and were told that, in order to meet the new regulations, that number

1

would have to be cut down to 30. Suddenly, everyone on my team was my competitor. The stakes were raised so high as a new freshman navigating college and being a college athlete. Things such as illness and injuries became a huge deal and weighed heavily on all of us. It is hard to face such uncertainty while working so hard alongside your teammates who are also facing the same thing.

7.  The stress that these roster limits have brought onto our team is immense. Everyone feels like they can't get sick or injured. Your friends and roommates are now all competing for the same spots. The mental and physical toll of not knowing what next year will bring, while you are working the hardest you've ever had to work at anything in your life, is exhausting.

8.  If I am cut from the team, I will miss the community of swimmers and coaches, who I chose for their leadership and values, the most, along with the way they made me feel like I'm a part of something so important and special. I would lose the ability to represent my school in a meaningful way, and possibly the chance to swim at the collegiate level.

9.  The transfer portal is already overused by so many athletes, and the roster limits will cause it to explode with more swimmers that are all looking for a place to go. Swimming is my passion, so I would have to try to leave my school and find a new place to go, uprooting the college experience I thought I'd have for 4 years. The NCAA asks us to be honorable, leaders, and have integrity in our sports and on our campuses, yet they offer no protection to us as student-athletes.

10. I believe that student athletes that have already committed to their schools and are continuing to add value to their programs should be exempt from roster limits and that roster limits should only affect the incoming classes, it they should affect anyone at all. I believe that coaches should have the ability to decide what is best for their athletes and programs.

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Dated: Virginia Beach, Virginia

3        January 30, 2025

Signed by:

Addyson Kay Roberts
NCAA ECID No. 2101988408
529 26th Street
Virginia Beach, VA 23451

3

Sarah Ross
87 Glendale Road
Agawam, MA 01001

January 17, 2025

  Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Sarah Ross. I am a current Division I athlete at University of Massachusetts – Lowell and my NCAA ECID number is 2008907152. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

          Sincerely,
          /s/ Sarah Ross

**483**

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

## DECLARATION OF SARAH ROSS

9      I, Sarah Ross, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10      1.      I am a senior and Division I runner at the University of Massachusetts Lowell. I

11  am a member of the Injunctive Relief Settlement Class and object individually and on behalf of

12  the class.

13      2.      Coming out of high school, I wanted to find a school where I could pursue my

14  academic goals and compete for a team that would help me improve and contribute. Being from

15  a small high school program, I was somewhat inexperienced in training, and my times were not

16  within some comparable programs' recruiting standards. But I was fortunate to receive the

17  opportunity to join this UMass team that prides themselves on Mill City grit, led by a coach that

18  believes in potential and good people. Our team consists of athletes that played other sports or

19  started running later in high school, of athletes that overcame injuries, of walk-ons who showed

20  tenacity and have become our leaders, and of local and international athletes who share the

21  common goal of bettering themselves for the success of the team.

22      3.      From the outside looking in, recruiting for track and field appears to be very

23  quantifiable. Coaches have access to times, marks, and placements in meets. But athletes,

24  coaches, and others close to the sport know that success is about so much more than just these

25  numbers. The implementation of these roster limits means that the opportunity to compete at the

26  collegiate level for so many athletes with potential far beyond their high-school numbers will

27  cease to exist. And the future of track and field, which rests on their shoulders, is at stake.

28      4.      Now, as a senior, I can confidently say that being a part of UMass Lowell's track

1

and field and cross-country team has been the best aspect of my college career. This team has given me my best friends, role models, and the opportunity to contribute to the Women's Team's first indoor track Conference Championship since the program transitioned to Division I. I think that result refutes the misconception that track and field is an individual sport. It always rang true for us that every person and every point matters, but this was exemplified when the championship was decided by half of a point. Every throw, every jump, every sprint, and every final kick someone gritted out mattered.

5. A team culture of leaving everything on the track, pushing through when it hurts, and competing for something bigger than yourself is integral to the sport. With the proposed roster limits, the meaning of a cohesive team is threatened. With less available spots, teams may choose to specialize in certain event groups. This means that the conference and national championships will be won by teams that perhaps are great in one discipline, but not all of them. This is antithetical to the idea underpinning track and field:  the best teams depend on the contributions of athletes in every discipline.

6. When considering the value of college athletics, themes of opportunity, friendship, discipline, and pursuit of the best version of oneself are prevalent. In the face of change that undermines these core principles, the love of sport remains. Although I am fortunate to compete for a school that will be opting out of the settlement, since the ramifications of this decision will affect many current and future athletes, all the NCAA is affected.

7. Thus, it is all of our duties to protect the opportunity to compete, to meet one's best friends, to develop, and to pursue a college education that we were all so lucky to receive because of sport. I implore decision-makers to prevent the House v. NCAA settlement—including the roster limits—from eliminating the possibility for future athletes to share in the unique, wonderful world of college athletics. We would not be here if someone had not taken a chance on us; you must help to protect others' chances.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Dated: Lowell, Massachusetts
3    January 17, 2025

_Sarah E. Ross_
Sarah Ross

4    NCAA ECID No. 2008907152

5    87 Glendale Road
6    Agawam, MA   01001

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Megan Rourke
14 Stratford Lane
Ho-Ho-Kus, NJ 07423

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Megan Rourke.  I am a current Division I athlete at College of William & Mary and my NCAA ECID number is 2105164494.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                      Sincerely,
                      Megan Rourke

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF MEGAN ROURKE**</u>

I, Megan Rourke, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.       I am a sophomore at the College of William & Mary and am a member of the NCAA Division I Men's and Women's Swim Team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.        Our coaches have explained to us that roster limits, if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.       We function as a team in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively impact those who are cut and our team at large.

I declare under penalty of perjury that the foregoing is true and correct.

1    Dated: Williamsburg, VA

2           January 28, 2025

Signed by:

*Meghan Rourke*

8C45412BBDA3420...

Megan Rourke
NCAA ECID No. 2105164494
14 Stratford Lane,
Ho-Ho-Kus, NJ 07423

Ella Ryter

8201 Corliss Ave N

Seattle, WA 98103

January 26, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Ella Ryter.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2209667973.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,
            Ella Ryter

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF ELLA RYTER</u>**

I, Ella Ryter, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am part of the class of 2028 at the University of Washington and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      To become a Division I college athlete, I spent five years competing with the rowing club Green Lake Crew. We practiced for about 15 hours a week, six days per week. Additional hours were spent commuting to practice, preparing for and competing at races, running bake sales to fundraise, and putting in additional hours of individual exercise. I left my high school class early every day in order to arrive at rowing practice with sufficient time to prepare the equipment. I spent many of my weekends competing at rowing regattas, and if there was not a regatta, I had to catch up on homework from previous weeks that were dedicated to regattas. I was unable to attend my high school's prom dance due to competition, and many of my teammates missed their high school graduation when they were traveling to a regatta. My parents were never able to spend as much time with me as they hoped, but they supported me and paid the steep fees necessary to keep practicing and competing. This dedication was worth it because I received the opportunity to race at the USRowing Youth National Championship for three years before joining the University of Washington's rowing team.

3.      I was honored to be recruited by the University of Washington because they have one of the most successful women's rowing programs in the United States. I grew up in Seattle reading *Boys in the Boat* and hearing about their legacy. I was attracted by the incredible

1

resources the school provides for their athletes to improve, their strong team culture, and their desire and plan to get better every day. When I was recruited, I was told that I could remain on the team as long as I was a great teammate who showed good character and sought to improve every day. Now, my future place on the team is uncertain.

4.    Our rowing team has the second largest roster after football at the University of Washington. If the roster limits were enacted, about one third of my team would lose their spot. It is nearly impossible for me to imagine the full scope of the negative impacts that could occur for myself, athletes on my team, and across the nation. Freshmen who are committed to join our team in Fall 2025 now face the heightened pressure of actually making the team.

5.    This proposed roster cap has already been detrimental to my mental health, and I know my teammates are struggling too. Student athletes have extremely busy and stressful schedules all year, and this added pressure makes it difficult to navigate daily activities effectively. If I am cut, I will lose access to athlete tutoring, academic counseling, mental and physical health support, eating at the athlete dining hall with my teammates, and I would not be able to see my closest friends as often. Since I love the academics at the University of Washington, I will likely not consider the transfer portal next year. If cut, I would be unable to keep participating in the sport that I love so much. My life has been filled by rowing for a long time, and I cannot imagine what my day would look like without it. I thrive on being busy and I feel valued when I help the team improve every day.

6.    Development in rowing takes time. Teams like ours, who contend perennially for conference and national titles, are made up of athletes who develop physically and technically over four years. It is not unusual for a student athlete to learn and develop for a year or more before competing in a conference or NCAA championship. The roster cap could remove these student-athletes at a peak stage of development and before they are able to compete at a conference or NCAA level.

7.    Historically in women's rowing, because most athletes don't peak until their late 20s, the development years in college are critical for Olympic women's rowing. We have had both American and international student-athletes start out in development boats on the squad and

later go on to represent their national and Olympic teams. Many of Washington's Olympic medalists learned the sport at UW and would have likely been cut with the December 1 deadline.

8.      Walk-ons in our sport are different from walk-ons in other sports. Some of our rowers are top athletes from other sports who are true novices that learn the sport of rowing from scratch upon arrival at university. We are a quarter school that begins school and training at the end of September. The December 1 roster cap deadline gives us only two months to develop and determine the final 68 people who will be allowed to compete in the spring.

9.      53 Student athletes compete in the Big Ten championship in mid-May. A roster cap of 68 leaves little room for illness or injury. Some teams will struggle to field all of the lineups.

10.      The timing of the proposed roster caps does not take student athlete well-being into account. The December 1 roster cap date for spring sports is a terrible time academically as all student athletes are preparing for final exams for fall quarter/fall semester. The transfer portal opens in December, but because it opens after the roster cap deadline, those who go into the portal will be going in at a time of lower demand, reducing their options of competing that year.

11.      The proposed House Settlement harms far more student athletes educationally and emotionally than the very few who will benefit monetarily. Having a smaller rowing roster will increase stress on athletes, remove opportunities for athletes who require more time to develop, and drastically change the lives of those who are cut. So many athletes across the nation are grateful to simply be on a team, regardless of if they receive opportunities to compete or not. These athletes still add to a team's culture, and they help their teammates improve. I hope you reconsider the roster caps due to their negative impact on thousands of student athletes across the nation.

1      I declare under penalty of perjury that the foregoing is true and correct.

2   Dated: Seattle, WA

3        January 26, 2025

4                                                    _____
5                                                        Ella Ryter
                                                          NCAA ECID No. 2209667973
6                                                        8201 Corliss Ave N
                                                        Seattle, WA, 98103
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Calvin Schaper
1 Aman Ct.
Durham, NC 27713

January 21, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Calvin Schaper.  I am a high school junior and swimmer, and my NCAA ECID number is 2401200620.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Calvin Schaper

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF CALVIN SCHAPER

I, Calvin Schaper, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a 16-year-old swimmer and junior at Research Triangle High School in Durham, North Carolina.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I have been swimming as long as I can remember.  My earliest memories are in the pool.  I started swimming competitively a decade ago, when I was 6 years old.  It is not an exaggeration to say that swimming is my life.

3.      I swim for my high school and the Carolina Aquatic Team, a USA Swimming club.  My specialty is the 100 yard/meter and 200 yard/meter breaststroke, and my times are competitive, to say the least.  I've been the USA Swimming North Carolina state breaststroke champion twice since I was 13 years old.  Last year, I was the 10th fastest 100LCM breaststroker in the country for my age, and I won the high school state championship.  I'm also one of the top 500 breastrokers in the world (for all ages).

4.      I am proud of what I've accomplished.  It has taken a lot of sacrifice to reach that level.  I practice 8 times a week for 2-3 hours per session.  Altogether, I'd estimate that I have spent 20 hours per week on training for the last decade.  At the same time, I have maintained a 4.5 GPA in high school so far.

5.      In swimming, college recruiting starts in June between sophomore and junior years of high school.  I had high expectations because I witnessed many older friends go through the same process.  Typically, schools will invite a potential recruit to visit campus during the

1

1    Fall of their junior year in high school.  I knew my times made me competitive for many Division

2    I programs because I saw swimmers who are older than me be recruited with times that were

3    similar or worse than mine.

4           6.      I started the recruiting process in June 2024 determined to follow the same path

5    I saw my friends follow.  I sent about 100 emails to as many different schools, asking to be

6    invited to see the university.  But instead of interest, I mostly got crickets.  I was shocked.  At

7    one of my high school meets before the settlement was announced, a state college coach came

8    out to watch me and talked to me afterwards, clearly expressing interest in joining the team.  But

9    now, he is quiet – and so was everyone else.

10          7.      I have gotten emails and phone calls from some coaches, but no offers.  Those

11   coaches told me that they were drastically reducing their recruiting this year, with some only

12   taking 6 or even just 2 male swimmers for their entire freshman class.  Last year, my times would

13   have comfortably landed me at least a few invitations to campuses.  This year, they didn't get

14   me anything.  As of now, I have yet to be invited by any school to any campus.

15          8.      I follow the news, and so I knew about the roster limits proposed in the *House v.*

16   *NCAA* settlement.  Most of the schools I spoke to have swim rosters larger than the proposed

17   roster cap of 30 for men's swimming.  It is no coincidence that this year, the recruiting season

18   has been silent.  All the schools I have spoken to will have to make cuts to their rosters to meet

19   the cap, and limit their recruits – in other words, limit me.

20          9.      The roster limits are a terrible idea.  I am not a slow swimmer.  But the limits

21   apparently leave universities with no capacity to develop young swimmers at all.  Since many

22   international students come to U.S. schools to compete, the roster spots available to someone

23   like me are even more limited.  I know I could make it to their level if I am given training and

24   investment.  But with the roster limits, it seems like I won't even get the chance.

25          10.     Roster limits mean hundreds of perfectly competitive swimmers will be forced to

26   give up competing in their sport because after high school, the only path to continue swimming

27   competitively is through college.  The recruiting process was competitive enough without roster

28   limits.  I personally know many other fast swimmers who were so discouraged by the intensity

of recruiting that they didn't even try, and that was **before** the roster limits. With roster limits, more will be discouraged from pursuing their sports in high school and college – even if they are good!

11.     Roster limits will also destroy the swimming community. It raises the barrier of entry to the sport when that barrier was already too high. The doors are currently being slammed in the faces of current college swimmers and 2025 recruits, but the roster limits will ensure that I am next. I am already being held back by them, because no college will give me a second look.

12.     The complete shutout I have experience in the recruiting process has caused me significant stress. I feel stuck. I worked my whole life to get to a level I knew is good enough to get into a Division I swim program, and I never thought I could be forced to quit overnight due to something that wasn't my fault.

13.     The proposed roster limits will destroy swimming, not just for me, but for many swimmers younger than me. Please do not approve them.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Durham, North Carolina
        January 21, 2025

Signed by:

*Calvin Schaper*

Calvin Schaper
NCAA ECID No. 2401200620
1 Aman Ct.
Durham, NC 27713

Alex Schwartz

3351 Lapp Lane

Naperville, IL

60564

January 23, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Alex Schwartz. I am a current Division I athlete at the University of Missouri and my NCAA ECID number is 2303795552. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,

                                        Alex Schwartz

                                        *AS*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>Hon. Claudia Wilken |

### DECLARATION OF ALEX SCHWARTZ

I, Alex Schwartz, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am freshman at the University of Missouri and am a member of the NCAA Division I men's swim team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I had to put in at least 18 hours of swim training a week during high school to get to a level where I could swim collegiately. This forced me to miss out on many activities, especially in the band, where I was the first chair Bass Clarinetist and missed many competitions due to my conflicts with swim.

3.      I was initially recruited based on my times from the 2024 Illinois High School State Swim Meet, where I had the fastest 50 Freestyle split in the state. Also, I became a 20-second 50 freestyler in my individual event for the first time, achieving Academic All-American awards in both my Junior and Senior years.

4.      I came to Mizzou as an athlete with early success in the sport of swimming under the premise of being developed by the coaching staff. Mizzou coaches promised to develop me to my fullest potential. If I were to lose my spot on the team, I would be forced to look for another school to compete with, and risk losing my four-year academic scholarship which totals over eighty-thousand dollars for undergraduate studies.

5.      The roster restrictions per the House v. NCAA settlement were not in place

when my teammates and I went through recruiting and chose to attend the University of Missouri. My freshman-year experience has been significantly impacted by the tension and concern created by these forthcoming roster cuts, having created significant stress and uncertainty over my future as a collegiate athlete in the SEC. I came to Mizzou as an athlete with early success in the sport of swimming under the premise of being developed by the coaching staff. Forthcoming roster limits will eliminate any opportunities to develop rising athletes like myself, and SEC swim programs will suffer from a developmental standpoint.

6.      The Mizzou coaches were very open about the roster cuts being up in the air, advising that the only athletes who would be guaranteed a spot were those who made the NCAA championship.

7.      These roster cuts have placed me in a vulnerable position to now begin a search for a different school, most likely outside of the SEC conference, that will afford me the opportunity to compete. In addition to the mental strains of this sport, this has created added stress based on my uncertainty about where I will be attending college in my sophomore year.

8.      Notwithstanding potential financial losses that may result from roster cuts, Athletic Dining, training, and other benefits as a student-athlete at Mizzou are now all at risk of being taken away from me with the looming reorganization efforts. Tutoring, academic counseling, eating at a special dining hall with teammates, award money, and the uncertainty of not knowing where I will be residing next year as I mentioned above are now all at risk.

9.      As a student-athlete, I have no intention of forfeiting my right to compete on a college team. To do so, I will be forced to seek other options, including the transfer portal.

10.      In the past five months, I have developed enormous pride in becoming a Mizzou Tiger and in the opportunity that I have been given. Becoming an SEC swimmer has

not been an easy path, but I came here intending to maximize this opportunity to develop athletically, academically, and personally. Grandfathering current athletes would allow me to continue on my path of development to realize my full athletic potential. It is my hope before these decisions become a reality, further consideration will be given to these sweeping roster cuts.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Columbia, Missouri
     January 23, 2025

Alex Schwartz
NCAA ECID No. 2303795552
3351 Lapp Lane
Naperville, IL
60564

Julia Seeley
19564 Greggsville Rd
Purcellville VA, 20132

January 29, 2025

    Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Julia Seeley.  I am a current Division I athlete at Liberty University and my NCAA ECID number is 2307964420.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

          Sincerely,
          Julia Seeley

Docusign Envelope ID: 902E4032-2914-4687-878D-4E8450377FA3

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF JULIA SEELEY

I, Julia Seeley, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.     I am a Freshman, 2028 at Liberty University and am a member of the NCAA Division I women's cross country and track and field team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     During high school I practiced twelve hours a week, consisting of two hour practices Monday- Saturday and sometimes Sunday, which adds up to five hundred and eighty eight hours of practicing a year.  In order to reach the goal of a Division 1 college athlete I had to sacrifice going out with friends and missing social events. I missed going to school basketball games with my friends because my body needed at least eight hours of sleep per night so I could train well the next day.

3.      I placed second in the 800m junior year at the Virginia State Catholic Track & Field Championships and second place my senior year at the Virginia State Catholic XC Championships in the 5k. I helped lead my high school team to back- to- back first place team victories at the Virginia State XC Championships- an accomplishment that had never been achieved in program history. I am a six- time Adidas Nationals Qualifier in indoor and outdoor track, and a two-time Adidas All American in the 4 x 800.

4.     I had a wonderful recruiting experience, I had great conversations with all the

1

coaches I spoke to. I was looking for a team and school that was centered around Christ and is outspoken about their Christian beliefs. I was also looking for a team that had an uplifting and positive culture. Coach Mark Fairley was the reason I chose Liberty. His coaching philosophy is top notch; he has helped me overcome my mental struggles, gives me the confidence I need to compete and to push through challenging workouts. When I committed to Liberty I was told I would be competing and on the roster for four years. The words 'your cut' were not in my future, I was on a specific track to peak in my junior year of college. I was told not to worry about financial cost because scholarship would be in my future. I was told that my coaches saw a lot of potential that once tapped into I would be a top athlete. I turned down a full ride to compete at Liberty because of the promises my coaches told me and I was given an opportunity to run Division 1.

5.      I became aware of the roster limits when we had a team meeting. The Liberty NCAA representative came and explained the situation to us. Later that evening our coaches had another meeting with us explaining again how it was affecting each individual athlete and the team. The cuts will be happening after the 2025 outdoor track season. This ruling is affecting twenty five thousand or more athletes across the country. Thirty girls on Liberty University's team, including me, have been negatively impacted. Between ten to twenty freshman recruits have been robbed a chance to compete at the Division 1 level. The opportunity I had a short while ago is no longer achievable for them. If the roster limits are not adopted by the court, I will have my spot on Liberty University's Cross Country and Track and Field team but if they agree on the roster limits my opportunity to continue competing is over.

6.      This ruling has taken a toll on my mental health. I started the school year off with stability and security knowing that I would be at Liberty for the next four years. Since I will be cut after my outdoor season of 2025, the fear of the unknown is causing anxiety and unnecessary

levels of stress. From the conversations I've had with my teammates, they have experienced some level of anxiety and sadness. No one knows what the team will look like in the future but change is never an easy task, especially for a close team. When I found out about the ruling, it impacted my last Cross Country race of the season. I felt mentally defeated and that there was no point in trying because I will be cut.

7.      If I am cut I will lose my title of a Division 1 athlete which I've worked hard for 5 years. I will lose access to tutors, academic counseling, financial counselors, athletic trainers, meal plans, eating at special dining halls with teammates, medical treatment, and my rooming/ housing situation for next year is uncertain. My family and I do not know where I will be next year and this ruling has caused high levels of stress for my family.

8.      I had to enter the athletic portal in November to look for opportunities. Spots are very limited at other schools because this ruling has affected every athlete across the nation. If I stay at Liberty I will no longer be able to compete but I can continue to pursue my degree. If I transfer relationships with friends will change and I will be alone. Academically speaking- only some of my course credits will transfer, making graduation longer for me to achieve. I may have to change my major, which will add more money and time to graduate.

9.      Roster limits should not be allowed. So many opportunities for women are being taken away from us. The years of hard work, determination and perseverance were for nothing. I am living in fear of the unknown everyday, I do not know where I will be next year. I will have to leave Liberty University, my friends, coaches and support group to an unknown place. Running under a new coach and learning their routine not only takes a toll mentally and physically but is frightening for a nineteen year old girl. I ask that you will listen to my plea and my fellow teammates from across the country and you will not pass this ruling. We have worked very hard to get here and all our goals and dreams have been crushed.

Docusign Envelope ID: 902E4032-2914-4C87-878D-4F8450377FA3

10.     I declare under penalty of perjury that the foregoing is true and correct.

Dated: Lynchburg/Campbell County, Virginia

     January 29, 2025

*Julia Seeley*

Julia Seeley
NCAA ECID No. 2307964420
19564 Greggsville Rd
Purcellville, Virginia 20132

Brody Singley
54178 Faraway Place
Callahan, FL 32011


January 19, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Brody Singley.  I am a current high school student and swimmer and my NCAA ECID is 2301754812.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                             Sincerely,
                                             Brody Singley

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF BRODY SINGLEY

I, Brody Singley, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a senior at West Nassau County High School.  I am a competitive swimmer and Division 1 recruit.  I am a member of the Injunctive Relief Class, my NCAA ID is 2301754812 and I object individually and on behalf of the class.

2.      I started taking swimming seriously at a very young age.  I have won Florida High School Athletic Association Class 2A State Championships my junior and senior year with wins in the 200-yard and 500-yard freestyle and 100-yard fly.  I also competed at the Futures Championship in 2022, 2023, and 2024, and traveled and competed at the Winter Junior Nationals in 2022, Summer Junior Nationals in 2023, and Open Water Nationals in 2023.  My family and I invested considerable time and resources in allowing me to compete in these tournaments, which were sometimes held in places as far away from my home in Florida as California.

3.      My performance in high school earned the attention of several college swim teams. Beginning the summer before my junior year, I talked with and visited top programs like Florida, Arizona State, and Indiana.  I ultimately decided to attend Auburn University, owing to the high level of competition and strong swim team culture it had to offer.

4.      As the process normally goes, I made a verbal commitment to Auburn's head coach in November of my junior year.  I was thrilled to have something new to train for each day.  The process seemed to be going off without a hitch; per the athletic department's instructions, I submitted my application to the school in September and put down my housing

1

1  deposit.

2     5.    Then, only a week before signing day in November, I received a phone call from

3  the coach at Auburn. He informed me about the *House v. NCAA* settlement and the associated

4  roster limits. Due to the roster limits, he said the program would have to cut their roster down

5  from over 40 swimmers to just *22*.

6     6.    He then gave me two options: I could either decommit right away, lose my

7  guaranteed spot, and maybe have a shot to try out in the summer. Or, I could wait it out a bit

8  more, but he said it was likely that I would be cut.

9     7.    This news has thrown my plans for next year entirely up in the air. I have been

10  preparing practically and mentally to attend Auburn in the fall. Now, I have to scramble to try

11  and explore other programs before applications close. This process is further complicated by

12  the fact that many other recruits have lost their spots due to the roster cuts. Because so many

13  other swimmers have also been cut from their college teams, the recruiting pool is oversaturated.

14     8.    I have reached out to countless schools, only to be told that there are simply no

15  spots left. This is in stark contrast to my first recruiting experience, which felt geared towards

16  factors like whether the school was a good fit academically and athletically. Now the only

17  consideration seems to be whether the team has already reached the roster limit or not.

18     9.    I have been told by coaches that, if the roster limits are approved, incoming

19  freshman athletes will be held to extremely high standards. Coaches will be looking to only

20  bring in swimmers who can score at conference championships as a freshman.

21     10.    This will hurt the experience of underclassmen swimmers. They will be forced

22  to rush through their transition into college in a very negative way. The pressure of competition

23  is hard enough without the additional knowledge that you are competing for your spot on the

24  team at all.

25     11.    The roster limits have also caused my family considerable stress over the loss of

26  my scholarship offer. I was offered an athletic scholarship that would have covered $9,000

27  worth of room and board per year and with the potential for that to increase over my time at

28  Auburn. Now, we are left wondering whether I will be able to get scholarship money from any

1  program at all.

2      12.    I am extremely saddened and frustrated that these roster limits only became an

3  issue the year I was hoping all my hard work in the pool was going to pay off.  I trained my

4  whole life to be at a high enough level to get my college swimming offer, and now it feels like

5  my whole life was spent on nothing.

6      13.    Getting my roster spot revoked was a huge shock and felt like a betrayal.  I always

7  thought the NCAA was around to provide opportunities for hard working student athletes who

8  wanted to reach their full potential.  The roster limits do the opposite – they are killing our

9  potential as athletes and as students early.  They should not be approved.

    I declare under penalty of perjury that the foregoing is true and correct.

Dated: Callahan, Florida
       January 19, 2025

                                Brody Singley
                                54178 Faraway Place
                                Callahan, FL 32011
                                NCAA ECID 2301754812

Jake Sisk
18 West Princeton Circle, Apt. 28
Lynchburg, Virginia 24503

1/29/2025

   Re:  *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Jake Sisk.  I am a current Division I athlete at Liberty University and my NCAA ECID number is 2301753897.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,
            Jake Sisk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF JAKE SISK

I, Jake Sisk, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Junior (Athletic Eligibility) at Liberty University and am a member of the NCAA Division I men's Track and Field team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Being a Division One college athlete is a full time job in itself. I train 15 to 20 hours a week with the team and on my own. I then spend another 15 to 20 hours a week meal prepping, reviewing educational pieces and meetings with coaches during that time on a weekly basis. All of this over the course of years gave me the opportunity just to compete at the Division One level. it took to have the chance of being a Division I college athlete; also include sacrifices, having to miss other activities or social events]

3.      I was a state qualifier in high school, and played other sports that helped with my fitness to contribute to running track and field in college at a Division One level. I've practiced for thousands of hours to have the qualifying times to attract the interest of Division One coaches. I have ran and tracked over 5000 miles just to get to this level. All of this is at a risk of being taken away for no legitimate reason. This could potentially nullify years and years of training not just for myself but many other athletes who have even better accolades than myself. I have teammates that have ran over 18,000 miles just to be able to compete for a Division One team and have the qualifying times to be recruited by our coaching staff. Just think about that for a second. This is thousands of hours of training. The recruiting experience has been fantastic and I have nothing but great things to say about Liberty University. The standard protocol is you run

1

Docusign Envelope ID: 2DA27743-BE7C-4596-B3E1-699546C5B274

a certain time to be eligible to run for the team. And you continue performing get better as the years go on. Because of these potential roster cuts even though my times have been getting better, there is no longer space for all the improvements I've made over the years and I may not have the opportunity to run for my senior year of athletic eligibility which would be an even more disheartening way to go out than being an athlete and missing out on a season because of the pandemic as well. This would be the second time in five years or less that a season has been stripped from US athletes. Our coach let us know that if we got better and continue to hit the times that were required there would be space for us on the team. Now because of no fault of their own this may no longer be possible. I turned down over a half a dozen schools for the dream of being able to compete at Division One level. To have access to the best races and the best competition is what a lot of Division One athletes strive for.

4.      I learned about roster limits from our school's compliance center and then found out about it on social media online. How sad is that? We have been told that more than 1/4 of our roster will most likely be cut next year between men and women to make room for the new roster cuts. This is also greatly impacted the ability to bring in new teammates and new freshmen and high school athletes who would be our teammates next year. The morale has definitely dipped because of all of the talk about cuts. It's very difficult to focus on a season when you know that many of your teammates unfortunately will not be with you next year. It also creates an unhealthy environment of competition because it's not healthy competition it's competing against your own teammates for next year's spot before this year is even completed. The added pressure to game day performances of now having to outperform your teammates for something that is not affecting us this year is not a healthy way to compete. I have even seen teammates just leave the team because they've been so dejected because they know that there is no chance of them having a spot next year. There's no point in transferring schools after already having a bunch of credits, and there is no point of competing and training for something that you know will be taken away without the chance of you completing what many of my teammates went to school here for. That has been sad to see a few of them leave after hearing the news

5.      Absolutely. The stress in every capacity has been heightened because of the

Docusign Envelope ID: 2DA27743-BE7C-4596-B3E1-699546C5B274

financial burdens of coming to a school that can no longer satisfy the prerequisites from an athletic perspective of why you picked the school you went to in the 1st place. I turned down many schools personally, that were closer to home just so I can have the opportunity to run at a Division One athletic program. It is very disheartening to many of us. This is a pivotal point in our lives where making decisions that compound and are beneficial to our future self is important. When a major event like this is presented to us at an age where we're learning what we want to do with the rest of our lives leaves a negative impact on us. It's just one more thing to think about on a daily basis. One more stressor.

6.      I will lose access to the athletic academic health centers, new shoes that keep me healthy when I run, free tutoring, academic counseling, access to athletic department cafeterias which contains healthier food to keep me well nourished, access to treatments anytime I get injured practicing or competing, team camaraderie, potential housing uncertainty for next year, my purpose as an athlete, everybody I know at my new school since I transferred in this year is on this track and field team. I came down to this school and I'm taking online classes and losing access to my teammates while also being hundreds of miles away from my family would not be good for my mental health. This is my first time living on my own and we are very social beings period to remove a big aspect of our lives would leave a negative impact on not just myself but many of my teammates who are all close with one another. 10s of thousands of dollars will be wasted in transferring down here and taking out a student loan just for the opportunity to be a Division One athlete. To have that taken away from me in my senior year would be disheartening to say the least.

7.      I'm considering having to drop out of school completely because I cannot transfer to a third university without having to take out another student loan to make up for any credits that don't transfer. There are no other spots at other schools as they have all moved on once I picked my new university. I would have to stay at my current school away from my family without access to any of my teammates and have to be cut from the roster. There's no point of trying to continue in school after being stripped of the opportunity to compete, because I would rather be closer to my family than to be down here alone. That will make all of the time money

3

and effort spent on transferring to my new school a drastic waste of my time. Which in turn will leave a negative impact on my well-being, and I feel like many people would say the same thing period it is like taking a job moving out away from your family spending thousands of dollars on a space to live on getting acclimated at a new location only to be fired. The worst part about this analogy is we can't even collect any compensation from this decision! My major is very specific as it is a niche part of psychology that many schools don't offer, and a lot of my credits would not transfer over. It will take me longer to graduate and more money, all while not being able to compete in the sport I love and have spent thousands of hours and years training for. I greatly hope you take the time to reconsider this and leave a lasting legacy on your career with positive decision for us athletes. I pray that you reconsider the roster limits that the NCAA wants to uphold.

8.    I'm praying from the bottom of my heart that you would think about saving our student athletes from the daunting possibility of roster limits next year and I hope that you consider why we feel so strongly they shouldn't be allowed. This is our life and something we've trained for for a really long time period and it would be a really sour way to end our career, many of us athletes already have lost another year very recently because of the pandemic. To lose an entire year in high school and now in college would be devastating to not only myself but many athletes in college. We hope that you agree that they should not be allowed either. Thank you and God bless. I declare under penalty of perjury that the foregoing is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Lynchburg, Virginia
        January 29, 2025

Signed by:

830E396D4CF44E9

Jake Sisk
NCAA ECID No. 2301753897
18 West Princeton Circle, Apt 28,
Lynchburg, Virginia 24503

Connor Michael Smith
17804 Crystal Preserve Dr.
Lutz, FL 33548


January 29, 2025

      Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Connor Michael Smith.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                  Sincerely,
                                  Connor Michael Smith

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF CONNOR SMITH**

I, Connor Smith, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a high school sophomore and swimmer, and hope to be recruited to compete on a Division I college team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      I practice approximately 20 hours per week which includes time in the pool and dryland activities. My dedication to the sport includes waking up at 4:40 each morning for practice before school and not arriving home until 7:00 pm in the evening after our afternoon practice.  Swimming is a sport that a seasonal sport and in order to compete at the highest levels you must train all year long – I get only three weeks off per year (one in the spring and two in the summer).  Swim meets are regularly 3 day long events on the weekends which drastically reduces the amount of time I am able to socialize with friends.  I have also had to miss Homecoming the past two years as it was scheduled at the same time as High School States which took priority.

3.      I've qualified for Florida Senior Championships since I was 13, USA Swimming Southern Zone Sectional Championships, Florida Swimming Open Water Zone Team, and Florida 1A High School State Championships.

4.      I have not been able to fully start the recruiting process as coaches can not contact me until June 15, 2025 but I am concerned about the recently proposed roster limits as Men's Swimming is already extremely competitive from a recruiting standpoint due to the limited number of teams at colleges and universities.

1

5. I learned of the possible roster limits as my older sister recently went through the recruiting process as a current high school senior. I also saw that if affected her friends with offers being pulled after they had verbally committed to programs.

6. The possibility of not being able to continue swimming in college is very stressful. I have swam competitively for over eight years and this is a major part of my life. My goal since I was a small child was to follow in my mom's footsteps to swim for a D1 program and with the proposed roster limits this might no longer be a possibility. Swimming is a sport that has taught me to be disciplined in all areas of my life (e.g., training, diet), time management skills and how to be good teammate.

7. The benefit of being a student athlete at any college or university varies but typically includes priority selection on classes, tutoring assistance, possible financial aid and assistance with admittance but it also provides you immediate friendships and a support system.

8. Swimming to me is so much more than just a sport. It's a part of my identity. Swimming has taught me so much inside and outside the pool. I have learned to push past my personal boundaries and been so much more successful than I ever thought possible. It has instilled a tremendous work ethic and time management skills. The proposed roster limits especially for Men's Swimming are extreme and will quickly kill the sport. Historically swimmers have had some of the highest GPAs and highest graduation rates in the athletic departments – they are the epitome of Student Athletes.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Tampa, FL

January 29, 2025

Signed by:

C003CAE4BA064FD

Connor Michael Smith
NCAA ECID No. 2501503092
17804 Crystal Preserve Drive
Lutz, FL 33548

McKenna Ann Smith
17804 Crystal Preserve Dr.
Lutz, FL 33548

January 29, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is McKenna Ann Smith.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                    Sincerely,
                                    McKenna Ann Smith

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF MCKENNA SMITH</u>

I, McKenna Smith, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a high school senior and swimmer, and have been recruited to compete on a Division I college team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     I sacrifice 20 hours of my time at 10 practices every week to have had the chance to be recruited to swim at the Division 1 level. I wake up hours before and get home hours after all of my classmates, and still take the same rigor and courseload of classes. My weekends could be filled with catching up on sleep, hanging out with my friends, or getting ahead in class, but chose to spend it at an all-day-long meet to achieve times that are enticing to colleges. I also rarely take breaks, as swim is not a seasonal sport, but rather an all-year-long endeavor.

3.     I have time cuts for USA Swimming Futures and have qualified for finals in that meet. I have qualified for Florida Senior Championships since I was 12, Southern Zone Sections since I was 13, qualified to represent Florida on the All-star team, am a Florida Senior Champion, and medaled at one of the most competitive Florida high school states.

4.     It was more difficult to obtain a roster spot on many teams, as this year was especially competitive due to the NCAA roster limits placed on many teams. I was looking for a school that I would be able to grow my swimming career at, but also prioritize academics. I have committed to swim at Davidson College, and have been promised minimal athletic scholarship for four years.

5.     I have learned about the roster limits through the recruitment process and general

1

athletic news. I have many friends who are athletes looking to compete at the collegiate level and have been undergoing the recruitment process. One of my friends in particular plays tennis and was very interested in a Division 1 college. She was going to be offered a spot on the team until the news of roster spots came out. The team then had room for only one incoming freshman and they had already offered the spot to someone else. Now my friend will likely not play tennis in college because she has had a similar experience at many other schools.

6.    The possibility of the roster cuts added additional stress to an already stressful process (i.e., recruiting) and finding a fit for both swimming and academics. I had to make my decision during Hurricane Milton living in the Tampa Bay area as the college needed an answer or my roster spot was going to be offered to another athlete.  If the roster limits were not there I would have had additional time and not stressed myself or my family out during an already stressful time with a major hurricane directly impacting our home.

7.    If I were to be cut from the team, I will lose my scholarship at this very expensive institution and the benefits of having a separate athlete-academic counseling staff. In addition to financials, swimming is where I have made some of my closest friends and my bond with my siblings has grown immensely stronger. I have not started college yet, but I can imagine it will be a similar situation. I will also loose the relationships with my teammates, which is essential for college freshman, when they are still finding their way. Swimming has also shaped my life over the past 8 years. It has taught me discipline, time management, and perseverance. Without swimming, I will lose my schedule and decline on these learned skills.]

8.    When I was going through the recruitment process, many schools have had to decrease my recruitment class size in order to fit within the constraints of the roster limits. This made the process harder, and limited my options to the point where if I wanted to attend an academically rigorous college and be able to pursue my life-long passion of swimming, I had to choose somewhere with an extremely expensive tuition.

9.    I encourage the courts to fully look at the impact to all student athletes at all levels.  Placing these roster limits will force athletes to look at other programs and other levels causing major downstream effects. I worry that my younger brothers won't be able to swim in

college as Men's Swim programs are few and far between as it is and this will drastically reduce the number of spots available. Swimmers are historically found to have some of the highest GPAs and graduation rates of the athletic department. Those student athletes are highly employable as they have learned leadership, time management and team work skills through athletics.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Tampa, FL

January 29, 2025

Signed by:

McKenna Ann Smith
NCAA ECID No. 2211723941
17804 Crystal Preserve Dr.
Lutz, FL 33548

Ryan Smith
2353 Tuscany Avenue
Merced, CA 95340

January 12, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Ryan Smith. I am a current Division I athlete at University of the Pacfic and my NCAA ECID number is 210199482. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        /s/ Ryan Smith

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF RYAN SMITH</u>**

I, Ryan Smith, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a sophomore at the University of the Pacific, where I play on the Division I men's water polo team.   I am a member of the Injunctive Relief Class and object individually and on behalf of the class.

2.     I started playing water polo at age eight, and I knew very quickly that I wanted to play in college.  I started recruiting for water polo in high school.  Getting recruited in water polo is hard—there are not many programs.  But in January of my senior year, I received a commitment from the University of the Pacific to play on their water polo team as a preferred walk-on, meaning that I would not receive an athletic scholarship but that I had a spot on the team for my four years of college.

3.     There isn't much scholarship money for water polo, and most of it is given to international players.  That means that the majority of my team is made up of preferred walk-ons like me.  I was thrilled to be able to play at the University of the Pacific and achieve my goal of playing college water polo.

4.     My team is very tight.  In addition to maintaining full academic courseloads, we train every day, some days twice.  Our captains often organize events for us to hang out together outside of practice, and I live with a group of my sophomore teammates.  They are my closest friends and have been a huge part of my college experience.

5.     In mid-December, the coaches told us that roster limits might go into effect.  My coach told us that if the roster limits are approved in April, he will have to cut twelve players

1

from the team.  He then took twelve players—including me—aside and told us that we would be cut if the roster limits are approved.  He said if the limits are not approved, he will not cut any of us.

6.      If the limits are approved and I am cut, I would want to transfer to another program where I could play.  There are only 27 Division I programs for men's water polo.  Many of these schools already have too many players, and they have also made commitments to incoming freshmen.  Dozens of water polo players like me will enter the transfer portal, but there are simply not enough spots for all of us.  I am worried that I will not be able to find another spot and that I will have to give up playing water polo.

7.      If I lose my roster spot, I also would be separated from my closest friends.  Some of my teammates will also likely try to leave if they are cut.  This would have a big impact on my support network and on my day-to-day life.

8.      These limits make no sense and will negatively impact athletes' mental health.  We have all spent many years of our lives working toward college sports.  It is not fair to us to take away previously guaranteed roster spots after we have continued to work so hard.

9.      In water polo, everyone knows that there isn't much money—for scholarships or otherwise.  We work towards Division I because we want to play the sport.  No one is doing this for money.  We want more opportunities for people to play water polo in the U.S., not fewer.  These roster limits make no sense for sports like water polo.  I hope you will not approve them.

I declare under penalty of perjury that the foregoing is true and correct.

Stockton, California
January 12, 2025

Ryan Smith
NCAA ECID No. 210199482
2353 Tuscany Avenue
Merced, CA  95340

Avery Stein
8000 Connerwood Lane
Fishers, IN 46038

January 25, 2025

  Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

  My name is Avery Stein.  I am a current Division I athlete at the University of Missouri and my NCAA ECID number is 2204519075.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

  I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,
            Avery Stein

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW |
| | Hon. Claudia Wilken |

## <u>DECLARATION OF AVERY STEIN</u>

I, Avery Stein, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman swimmer at the University of Missouri (Mizzou), which is in the Southeastern Conference (SEC).  I am a member of the Injunctive Relief Settlement Class.  I object individually and on behalf of the class.

2.      I started swimming competitively at 6 years old.  I trained hard to make it to the top of my sport when I was in high school.  I knew I wanted to make it to a Division I swim team.

3.      My hard work paid off.  I was a 4x High School All-American, 3x USA Swimming Scholastic All-American, the 2024 recipient of the Indiana High School Athletics Association Mental Attitude Award, and a Junior National qualifier.

4.      The roster limits in the *House vs. NCAA* settlement were not in place when my teammates and I went through recruiting and made the very intentional decision to compete for the University of Missouri.  As a freshman, I have only been able to train with my new team for the past five months.  With a sport like swimming, it can take up to a year to fully adapt to new training conditions.

5.      It's been a big adjustment to move away from home, embrace the challenges of new training and new coaching, and do all of that with a positive attitude and full trust in a new process.  I was determined to take on these anticipated challenges in the pool, while also being a dedicated student in the classroom.  I am fortunate to have earned a 4.0 GPA in my first semester.  I am not alone: 16 women and 3 men on the swim team also earned 4.0 GPAs.  We

1

take academics seriously and have excellent support from our athletic department.

6.    I know other athletes have spoken to the financial losses that may result from roster cuts.  I am fortunate in to say that is not my primary concern, though it would be tough to lose my athletic scholarship, which covers a significant portion of tuition.  I'd also lose access to athlete dining and other perks that come with being a Mizzou athlete.

7.    What's more important to me is the bigger picture, which seems to be ignored by the proposed settlement.  That is the cultural damage being done to all Division I athletic programs *right now* in face of the looming reorganization efforts.

8.    The primary reason I chose to be a student-athlete for Mizzou is the swim program's culture of excellence.  Head coach Andrew Grevers aims to develop the whole person, not just the athlete.  While it's important to me to be able to compete in the sport I love, swimming will eventually come to an end.  What will I carry with me into my adult and professional life will be the memories of those who helped me achieve my goals.

9.    When I was being recruited in high school, the other programs I was considering were not as focused on whole-person success.  When I made the decision to become a Mizzou Tiger, I did so with the long term vision of being a proud and active swim and dive alumnus, representing our "ZOU-style" values for the rest of my life.

10.    I am concerned high quality athletic programs throughout the SEC will suffer from this cultural standpoint.  It can take decades to create a true culture of excellence.  The roster limits threaten to destroy what makes each of these programs special and replace their long-standing traditions with short-sighted hyper-competitiveness overnight.  The brand and reputation of those athletic programs is being torn apart without reason, not to mention the lives of hundreds of signed student-athletes whose college experiences will be ruined.

11.    There is just one question for student-athletes in my position:  Why jeopardize the unmatched school spirit, tradition, and overall special experience of competing in the SEC when a roll-out of the roster plan could ensure a successful transition for all?

12.    Everyone involved in this situation is struggling.  My fellow freshman teammates have been on an emotional roller since the start of the Fall semester.  No one is their best self

under these conditions.  Our men's team in particular is struggling to stay positive.  All of us are suffering knowing these changes could have a significant impact on our team culture and our college experience moving forward.

13.    My coaching staff, as resilient as they are, is struggling knowing they may be forced to crush many of their athletes' dreams.  How is it fair to force them to flip this terrible switch on the swim program they dedicated themselves to for years?  Wouldn't a kinder approach be to let the athletes under current contracts be permitted to honor their agreements and for their colleges to honor them back?

14.    In just the past five months I have developed tremendous pride in being a Mizzou Tiger.  It's taken a lifetime of hard work and dedication to realize the dream of representing a school like Mizzou.  What my team values most is not what the program gives us financially, but that we get to be part of an incredible organization that is much bigger than ourselves.  Isn't that connection and purpose what makes college athletics special?

15.    Please consider this before you insist on imposing these abrupt roster limits.  Give us the chance to live out our dreams under the conditions we agreed upon before system-wide damage is felt by every athlete in the SEC.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Columbia, Missouri
        January 25, 2025

Avery Stein
NCAA ECID No. 2204519075
8000 Connerwood Lane
Fishers, IN 46038

3
DECLARATION OF AVERY STEIN
CASE NO. 4:20-CV-03919-CW

Luke Stelmach
33 Goodale St.
West Boylston, MA 01583

January 15, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Luke Stelmach.  I am a current Division I athlete at the University of Massachusetts, Lowell and my NCAA ECID number is 2104147412.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                      Sincerely,
                                        Luke Stelmach

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF LUKE STELMACH

I, Luke Stelmach, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     My name is Luke Stelmach, and I am a member of the track and field team for the University of Massachusetts Lowell. I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.     As a senior, I have spent nearly 4 years training, competing, and spending a large percentage of my time with the team. I have been able to make connections with countless athletes, coaches, and athletic staff to the point that I don't feel like I am a part of a team, it is more of a family. The proposed roster limits would severely impact the family I have found in Lowell and would fundamentally change the dynamic of countless teams across the entire country. To be clear, I object to these roster limits. I don't believe they have any place in college track and field or will lead to any benefits for the programs.

3.     I came to Lowell in the fall of 2021 as a yearlong tryout. My situation is fairly common in Lowell, an athlete with potential upside that coaches are willing to take a chance on and develop. With help from the aforementioned coaches, teammates, and other staff, I have been able to progress as an athlete, student, and a person. I am a conference champion, team leader, team mentor and a Summa Cum Laude graduate working towards a master's degree. Without the original chance that the coaches took on me at UMASS Lowell, there is no possible way I would have developed into the adult I am today. If there was a limit of 45 athletes for my team, there is a high possibility I would never have gotten a chance and I probably would not be running collegiate track and field right now.

1

4.    I believe that these frivolous roster limits would limit and potentially remove stories like mine and so many other athletes that were given a chance. However, the impact of roster limits goes beyond my own story. I know a great deal of athletes (teammates and opponents) who made their team as a tryout or walk-on. Many of these competitors went on to have successful careers, some have even exceeded their highly recruited opponents. However, with the implementation of staunch roster limits, many of these stories would be nothing more than what-ifs.

5.    I believe the Lowell track and field team would not be the tight knit family it is today and I don't think we would have had the success seen in recent years if we were bound to a pointless roster limit. These roster limits should be reconsidered and I think there needs to be some common sense injected into the conversation regarding this topic.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Lowell, Massachusetts
           January 15, 2025

Luke Stelmach
NCAA ECID No. 2104147412
[Mailing Address]
33 Goodale St.
West Boylston, MA 01583

Katherine Stevenson
330 Sheffield Avenue,
Mill Valley, CA 94941

January 26, 2025

Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Katherine Stevenson.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2302777037.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Katherine Stevenson

534

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF KATHERINE STEVENSON

I, Katherine Stevenson, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at the University of Washington and am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.       After rowing for four years, six days a week and over three hours a day, I cannot even begin to count the amount of time that I dedicated towards achieving greatness within the sport of rowing. This dedication came with many social, mental and emotions sacrifices as well, from missing friends' birthday parties to missing family events and graduations. I sacrificed my well-being, my relationships, and even my high school experience in order to ensure my teammates and I did well. While I certainly don't regret any of the sacrifices I have made, I wouldn't be telling the truth if I didn't speak on the physical, mental and emotional toll training to become a Division I athlete has taken on me.

3.      Throughout my high school rowing career, I qualified for San Diego Crew Classic during my sophomore and senior years of high school by being the first novice 8 and 2V for Marin Rowing. I was one of two of the team captains for the Marin Rowing Varsity Women my senior year of high school and worked alongside them as we placed 7th in the Women's Youth IV category for the Head of The Charles Regatta.

4.      My experience with being recruited to row at the University of Washington was a very personal decision I made to in order to show my gratitude and dedication to my family and myself. Both of my parents came from very hard lives of abuse, abandonment, addiction,

1

and even suicide, so it's a big deal to me and my family for me to have the opportunity to row at such a prestigious university and high-end rowing program.

5.    A large percentage of my tuition was donated to me by my great aunt Mel – the same woman who took my father and his siblings in after their mother (her sister) committed suicide. I've been dedicated to rowing at the University of Washington for as long as I can in order to honor her and my family's hard work and dedication. Whether we were eating off food stamps or living with my grandparents, my family has always been there for me and has never fallen short in showing their support of me in every way they can.

6.    As for choosing to row at Washington, I remember being starstruck by the team's passion towards their sport and rowing with each other. While on my official visit with the team last February, I witnessed more passion and inclusivity in two practices than I would have seen in high school over two years. When I committed to Washington, I was promised unconditional love and commitment as long as I gave the same to my teammates.

7.    I had head about the possibility of roster limits but was unaware of the extent of them until I learned about them from my head coach, Yazmin Farooq.

8.    The possibility of being cut has taken a huge toll on the team. Discussions about the cuts have sparked new anxieties amongst us, along with questions and fears that develop every day about what the future of Washington rowing may look like. All of the women on our team, whether they are Olympic medalists or first year novices, have earned the right to be here and represent the legacy of both Title IX and the University of Washington.

9.    If I get cut, I will lose everything that represents me and has helped me become the person I am today. I cannot afford to lose the precious resources that being on this team has provided me. Those resources include a community that shows love and appreciation, a cafeteria that provides nutritional food, academic resources that enrich my learning, a campus that I feel safe on, and disability resources to ensure I have a chance at excelling both on and off campus.

10.    The possibility of being cut due to the roster limits has also forced me to reconsider my future. Do I enter the transfer portal with no guarantee of a chance to compete next year, as well as the possibility of reduced academic quality? Do I go back home? Do I stay

2

at the University of Washington and lose my chance to compete entirely? The decision I have to make is incredibly overwhelming, especially due to the fact that the proposed December 1 timeline is so impractically timed, especially because it is before final exams and too late to ensure I am able to change schools.

11.     Not only are the roster limits unfortunate for certain teams, but they also serve as a symbol of the reality that is women's sports and how they are treated. There are girls around the world that are inspired by the legacy of the University of Washington's women's rowing team. How would those girls feel if they found out that their beloved inspiration was being cut in half die to the unjust laws of athletics? Washington thrives due to its large roster size. It encourages and accepts women from all around the world with all types of skills. Whether they have been rowing for a month or a decade, everyone deserves enough time to grow and advance. I urge you to consider all of the complications that these roster limits will cause.


I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
      January 26, 2025

*Katherine Stevenson*

Katherine Stevenson
NCAA ECID No. 2302777037
330 Sheffield Avenue
Mill Valley, CA 94941

DECLARATION OF KATHERINE STEVENSON
CASE NO. 4:20-CV-03919-CW

Sydney Stewart
17804 33rd Pl W
Lynnwood, WA, 98037

January 24, 2025

    Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Sydney Stewart.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2404279818.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

             Sincerely,
             Sydney Stewart

**538**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## <u>DECLARATION OF SYDNEY STEWART</u>

I, Sydney Stewart, hereby declare as follows pursuant to 28 U.S.C. §1746:

I am a Freshman at the University of Washington and I am a member of the NCAA Division I women's rowing team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

In order to be given the chance to become a Division I college athlete, I had to work all throughout high school to become the best version of myself. I played multiple sports as well as participated in multiple extra curricular activities just to prove to colleges that I could not only balance a challenging academic life, but also have time to prove how strong of an athlete I could be. For multiple years of high school, this meant not having a job after school, due to prioritizing my athletic journey. I had to pass up on multiple opportunities to earn money I could've used, as well as pass on social events with my friends and at my school, since I had practice every day and saw that as my number 1 priority.

I was noticed by the University of Washington by a former alumni who my dad met through his work. My dad connected me to her and when I met up with her, she saw the potential in me through hearing about my athletic journey. I was on my high school swim team for 3 years, and still managed to get the 2nd fastest time on the team in the 50 freestyle after having had 3 knee surgeries. I also had been weight lifting for 3 years, every day after school, 6

1

days a week. Training every day and working on my strength as well as endurance in multiple sports is what gave everyone the confidence that I could go on to be a Division I athlete. I had 3 reconstructive knee surgeries my first 3 years of high school, and after each one of them, I could've given up completely on sports. I was set back so many times and forced to start over on numerous occasions, however each time it happened, I ignored all the signs telling me to give up. I knew from the beginning that I was supposed to be an athlete, and no matter what happened to me or what my body went through, I kept the promise to myself to always be the best I could be, which is still true today.

My recruiting experience was unique because I was able to get into the University of Washington due to my commitment to the rowing team. After having a meeting with a former alum, she reached out to the coaches on my behalf, and I was invited to come to a morning practice the following week. After attending that practice, the Freshman team coach formally asked me to join their roster for the next school year. At the time, I had been waitlisted at the University of Washington, but thanks to our rowing coaches, I was given the opportunity to attend my dream school, as well as carry on my athletic journey I had been preparing for for years prior. Before committing to the rowing team, I was planning on attending another school in Washington, but didn't really know what my future held. I had dreamed of attending the University of Washington for years and always expected that to become my reality, but when I got waitlisted, I didn't know what to do. I felt as though my future was ruined and I didn't see any hope until I found rowing. When I joined this team, I was told that this would be my future for the next 4 years; that I would get to compete my whole time at this school and would be part of an incredible legacy of women, something that now is at risk.

I found out about the roster limits from our varsity coach very recently. We were informed that in December of this year, only 3 months into our next season, our roster will be

limited to 68 women. Our incredible team at the University of Washington currently holds over 100 powerful women who are now being forced to question what they're going to do. If these cuts happen, dozens of strong women with so much potential are going to be forced to leave their sport, not out of a lack of skill, but simply because the team can no longer hold them. Dozens of women who worked for years to become as strong as they could be, who worked every day for hours in order to prove themselves worthy, are going to have that stripped away from them with total disregard of how that will impact them. Our sport is not something you can see the potential in after only 3 months. Women's rowing is a sport that invites women of all rowing experience to join a team of strong female leaders to become part of a legacy that is truly inspiring. The walk-ons of next year's Freshman team will have no chance of becoming their best by the time cuts happen. 3 months into a sport you've never played is simply not enough time to show how good you can be. I was a walk-on to this year's team, and if these cuts had been forced to happen this season, I would not be where I am now. Rowing is a sport that takes time and precision no matter your experience, and to force our roster down to 68 is simply insane. Our head varsity coach stated to us that she was a walk-on, and if these cuts had been occurring when she was a Freshman, she would've been cut from the team. If that doesn't prove that this sport is about time and precision, then I'm not sure what will. It takes time for a rower to hone in on their skills and go on to win competitions, and if you don't allow an athlete time to succeed, there is no possible chance in having a strong team. Majority of the people from our women's rowing team who go on to join the Olympics were walk-ons. These are athletes who have more potential and athletic ability than anyone you'll ever meet, but if they're not given a chance, so many future legends in women's sports will be lost.

This pending decision has harmed every single person on our team. During our meeting about the bill that may be passed, multiple of our teammates were crying, thinking about what

they would do if this were to become a reality. So many people have worked their entire lives for a sport, and to all of a sudden say that those people are going to be cut from their lifelong dream is unforgiving. Students who chose to come to a school in order to play their sport, students who can't afford school without help from their sport, students whose mental health simply relies on them playing their sport, quite literally any situation you can think of is a reality for somebody. Division I athletes and the skills they possess is a rarity, and to take that for granted is insulting. Instead of focusing on our future in our sport and what we could accomplish and prove this next season, now all our team can think about is what's going to happen to so many of us who have worked so hard to be where we are.

If I get cut next year, I will lose everything I've worked so hard for. I've made my closest friends at college from this team, I've gained access to a much needed therapist as well as nutritionist from this team, I get to eat at our athletic dining hall which helps save my family so much money on food, etc. I also am able to save my parents thousands of dollars in medical insurance because I get to attend physical therapy through the University thanks to being on a sports team here. Because of my past knee issues, I still have to attend physical therapy multiple times a week, and already this season I've had to get a small procedure done as well as an x-ray which thanks to being on an athletic team, I didn't have to pay for right out of my own wallet. I've never known my life without being an athlete, and I'm not at all ready to lose something that precious to me. So much of my purpose and identity revolves around sports and to threaten to take that away from thousands of students across the country shouldn't be allowed to happen.

With the discussion of roster limits happening, I've had to think about what my future could look like. Many people are having to consider transferring, but for myself personally, I don't think I could take the toll of transferring to another school, and if I were to transfer

somewhere out of state, I'm not ready to pay the money to attend an out of state school. This would mean I would stay at the University of Washington but no longer get to compete and be a part of the women's rowing team. I would have to stay and earn my degree, but with that, a large portion of who I am and what is most important to me would be lost. Many of my closest friends I've made from this team also are being forced to weigh their options. I have a very close friend who doesn't think she can afford to stay at this school without being on the team, and that's a very common trend that multiple people are dealing with which is truly heartbreaking after thousands of people have been promised a spot and an opportunity.

I truly believe that these roster limits are going to harm thousands of students across the country. These cuts shouldn't be allowed to happen due to the amount of tremendous athletes that will be lost due to this bill passing. Some of the best athletes of our time wouldn't have made it to where they are if these cuts had happened earlier, and we can't let these cuts happen now and impact the future of athletics. So many athletes' dreams will be ruined with the passing of this bill, mine included, and I beg that the court take all of our sides into consideration. These roster limits will impact all of us astronomically more than you think they will, and athletes like me who rely on their sports so heavily will simply be at a loss for what to do.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
      January 24, 2025

Signed by:
*Sydney Stewart*
DEE6551C4DCF400...
Sydney Stewart
NCAA ECID No. 2404279818
17804 33rd Pl W
Lynnwood WA, 98037

Tristan Stine
6612 Mitra Drive
Austin, TX 78739

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Tristan Stine. I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class. My NCAA ECID number is 2401196271. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                     Sincerely,
                                     Tristan Stine

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>DECLARATION OF TRISTAN STINE</u>

I, Tristan Stine, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am tennis player and a high school senior at Austin Tennis Academy College Prep in Austin, Texas.  I am a member of the Injunctive Relief Settlement Class and object on behalf of the class.

2.       I have been a competitive tennis player since I was nine years old.  I love the sport, and I'm dedicated to improving.  I consistently compete at some of the top youth tennis tournaments in the country.  In the last couple of years, I placed first and won the "Gold Ball" award for the U16 Boy's doubles competition with the United States Tennis Association, won second place in doubles at Clay Court Nationals, and placed third in the Boys U18 doubles division at USTA nationals.

3.      During the summer prior to my junior year, I started to receive some attention from college recruiters.  By December of that year, I was getting significant attention from a number of tennis programs, including an invitation to visit LSU.   I was excited about the possibility of continuing my tennis career in a Division I program and continuing to improve once in college.

4.      I ultimately received and accepted an offer to play tennis at LSU.  I was promised a roster spot for four years and the chance to work my way up.   If I reached number one or two on the team, I could even earn a full scholarship.

5.       Last fall, the LSU coach informed me that if the roster limits were to come into effect, he would have to prioritize the older, more experienced international recruits.  Because

1

the roster limit is set at only nine slots for tennis, I might lose my offer to join LSU's program.

6.      I know of several other college hopeful tennis players facing similar issues as a result of the settlement agreement.  Before the roster limits, Division I teams tended to have about 14 players, so the opportunities for recruitment are already very competitive.  Now many more highly competitive players will be shut out of the opportunity to play Division I tennis.

7.      Because I accepted LSU's offer to join their tennis team, I didn't think I needed to apply to other colleges.  Since I may lose my offer at LSU, I've had to try to play catch up in my college search, and I feel very behind.  I missed the early application period for a number of schools I was interested in.  I have a strong academic record, but the accelerated timeline of this decision may still affect my final college choices.  If I had known about the threat of roster limits earlier, I would have adjusted my plans significantly.

8.      The roster limits will prejudice my graduating class, and the high school class of 2026, in particular.  College players who are cut will look for opportunities at less competitive programs, leading to a new round of cuts at those programs and so on.  This would significantly reduce the number of players recruited out of high school. I believe this could cascade and leave no roster spots available for members of the class 2026.

9.      I am also worried about the impact that reduced roster sizes will have on a team's ability to deal with injuries. Typically, a team will only have three bench players on reserve at a tournament.  Tennis is a demanding sport that leads to injuries all the time.  If there aren't enough players to step up in the event of injuries, teams will end up having to forfeit matches or the players will have even more pressure to play injured.

10.     The NCAA is supposed to protect student-athletes like me and says that it prioritizes the whole athlete.  The roster limits go against that mission and should not be approved.

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Dated: Travis County, Maryland
3        January 26, 2025

Signed by:

*Tristan Stine*

Tristan Stine
4  NCAA ECID No. 2401196271
5  6612 Mitra Drive
   Austin, TX  78739

Aleena Stukus
11134 Robert Carter Road
Fairfax Station, VA 22039

January 21 , 2025

Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Aleena Stukus.  I am a current Division I athlete at Virginia Tech and my NCAA ECID number is 2206588162.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Aleena Stukus

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF ALEENA STUKUS

I, Aleena Stukus, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a freshman swimmer at Virginia Tech. I am a member of the Injunctive Relief Class. I object individually and on behalf of the class.

2.      I began swimming competitively at the age of 6. I have always been competitive with myself, and I pushed myself all through middle and high school to get better and better at my sport. I was on my high school swim team at Robinson Secondary School, where I helped the team become runner-up state champions my senior year. I achieved Summer and Winter junior championship cuts in 2023 and numerous Spring and Summer championship Next College Student Athlete (NCSA) times. I also qualified for the Virginia Class 6 state championship in multiple events every year since 8th grade, and I was the district champion for multiple years.

3.      I had gotten good, but I wanted to be even better. I knew the only way to do that was to compete at a higher level in college, in a competitive swim program that could push me even further.

4.      I received a lot of interest from Division I swim teams during the summer after my sophomore year of high school. Throughout the recruiting process, I spoke to around 50

1

DECLARATION OF ALEENA STUKUS
CASE NO. 4:20-CV-03919-CW

schools and visited many of them. Although I didn't leave anything to chance and made sure to look at every possible swim program I'd be alright with, my heart was set on Virginia Tech. It is a famously competitive program, and exactly what I wanted to get me to the next level.

5.      One school offered me academic and athletic scholarships to join their team. It was a tempting offer, but when Virginia Tech offered me a spot without any scholarships, I was torn, but Virginia Tech won out eventually. Even without a scholarship, I turned down the other school and chose Virginia Tech because I wanted to be on a team where I would be challenged and would grow as an athlete.

6.      Virginia Tech also has a research focused neuroscience program, which not many other schools have. Since I want to go into medicine after college, I wanted to swim at a school that was competitive both athletically and academically in my area of interest.

7.      Before committing to Virginia Tech, I spoke to coaches and other swimmers about their program. They told me that they do not cut athletes for injuries or poor performance, and that the program was very well-rounded and supportive overall.

8.      I was so excited to begin my freshman year at Virginia Tech in Fall 2024. But then, just two days before classes began, I had a terrible accident. I was hit by a car and suffered a concussion. I missed the first month of training and have been experiencing post-concussion symptoms ever since.

9.      Fortunately, the school and the team were very supportive throughout my recovery process. I am offered daily concussion screenings, meetings with the team doctor and sports psychologist, and tutoring. The school's support was extremely helpful mentally and physically. It was also a lifesaver financially, because the team covered most of the medical costs of my recovery.

10.     My race times are not yet what they were before the accident, but since I was

2

1  cleared to return to training after the accident, I pushed myself. It was extremely difficult to
2  fight through daily headaches resulting from the concussion. Still, I downplayed my symptoms
3  because it is in my nature to push past the pain. I believe I am on track to a full recovery, but I
4  am not there yet.

5      11.    There is only so much I can do to ignore my continuing symptoms, however.
6  Recently, at a meet, I pushed myself to the brink to swim at my best, but ultimately could not
7  compete because outside stimuli like strobe lights and loud music triggered my neurological
8  symptoms.

9      12.    Then, our coach told the team about the roster limits for the first time. Because
10  we had too more girls on the team than the limit for swimming, the coach told us the school
11  would need to cut 5-6 of us. We were all shell-shocked. The coaches said that they will not be
12  making that decision until April and will be prioritizing character over swim times, but that
13  didn't resolve my fear and anxiety.

14      13.    I am worried that due to my injury, character-based assessment or not, I could
15  be on the chopping block. I've been so stressed ever since. The roster limits have put a lot of
16  pressure on me and my teammates, which wouldn't be there if the limits weren't floating over
17  our heads. And we knew that the only reason this was happening to us was because of the
18  roster limits. Our coach said were it not for those, the coach wouldn't cut *anyone*.

19      14.    All of us also feel strained about potentially losing our teammates next year.
20  We are all very close, so not being on the same team would be devastating. I have already
21  signed a lease with two of my teammates for next year, and one of the international students on
22  the team spent this past Thanksgiving with my family. Tearing us all apart when we were just
23  starting to build deep relationships with one another is especially cruel.

24      15.    While I've thought about the transfer portal, it's not feasible for me. I wouldn't

1  be able to take advantage of Virginia Tech's neuroscience program at another school, even if I

2  could *find* another school with an open roster on their swim team who would take me.

3  16.    Even more depressing, I know my injury will be an issue for me in the portal.

4  There are going to be many swimmers trying to land on their feet, and they won't have been hit

5  by a car recently.

6  17.    The trauma of the accident is still reverberating in my life and in my head.

7  Given my condition, I don't feel like I can cognitively handle beginning yet another stressful

8  recruitment process all over again at this time.

9  18.    I feel left behind though I didn't do anything wrong. If it weren't for the roster

10  limits, I could stay and recover with the team I chose, at the school I chose. The thought that I

11  am going to lose all that now because of the roster limits fills me with sadness.

12  19.    It isn't fair. Please don't let the roster limits go through.

13  I declare under penalty of perjury that the foregoing is true and correct.

14

Dated: Blacksburg, Virginia

15  January 21, 2025

16  Aleena Stukus
   NCAA ECID No. 2206588162

17  11134 Robert Carter Road
   Fairfax Station, VA 22039

18

19

20

21

22

23

24

Brayden Stukus
11134 Robert Carter Road
Fairfax Station, VA 22039

January 20, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Brayden Stukus.  I am a current high school senior and sprinter.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                              Sincerely,

                              Brayden Stukus

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

### DECLARATION OF BRAYDEN STUKUS

I, Brayden Stukus, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am a 17-year-old high school senior, and a sprinter on my high school track and field team. I live with my parents in Fairfax Station, Virginia. Aleena Stukus is my older sister and a swimmer at Virginia Tech. I am a member of the Injunctive Relief Class, and I object individually and on behalf of the class.

2.    I played football as a cornerback all four years of high school and was team captain my senior year. I initially took up sprinting in junior year of high school as a way to build my speed during the off-season.

3.    I found out I am good at sprinting, and more importantly, I enjoy it. I was fast—and I knew if I continued training, I could get even faster.

4.    I won recognition for my sprinting. I was All-District and All-Regionals. I made the finals in regional and district competitions. A qualified for Virginia Class 6 state meet my first season. My distance is the 100-meter, and my personal best is 10.9 seconds.

5.    I knew by the end of my first year on the track team that I was fast enough to be a Division I sprinter, and that became my goal for college. My times already make me very competitive as a freshman for many Division I track and field programs. I improved so much in just a year, and I know with the right college program I would get even better. As a senior, am running indoor track for the first time and anchored my 4 X 200 relay team to a national qualifying time.

6.    I also want to pursue a career in engineering after college, so it was important that

1

the college I attend have a strong academic program as well. I have good grades in high school. My GPA is 3.85, and I was nominated for National Honors Society. With my race times and academics, I should be able to be recruited to a strong Division I track program at a good school.

7. The roster limits changed all that. I estimate that I reached out to about 50 schools during my recruiting search since July 2024. ***None of them*** have a spot for me. I'm faster than many of the runners who are currently on team at some of the schools I have been talking to, but I am still finding that I have been completely shut out.

8. The coaches of the teams that showed the most interest in me told me that they expect the roster limits in the *House v. NCAA* settlement will happen, so none of them have roster spots. They said that if I were applying last year, I'd have no problem. Even after I applied and got into schools that had shown a lot of interest in me, coaches told me that the rosters are full, and I could not run track if I went there.

9. I don't understand how this happened. I have been conditioning for football for years even before I ran track, and as soon as I applied myself to sprinting, I improved so much in one year, and I should be a Division I sprinter based on my achievements. I have a lot more potential, but I'm suddenly getting all the doors slammed in my face.

10. Taking a gap year is not realistic. I don't want to, and I shouldn't have to, delay getting a bachelor's degree in engineering just because of the roster limits. And it would be a challenge to maintain the training that I currently do to stay at, and improve on, my current times for a whole year. It isn't fair that I might be asked to postpone my life because of something that didn't exist a year ago while I was training to be a Division I sprinter.

11. The roster limits don't make sense and are unfair. Please don't approve them.

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Dated: Fairfax Station Virginia

3        January 20, 2025

_____
4                                    Brayden Stukus
                                     11134 Robert Carter Road
5                                    Fairfax Station, VA 22039

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

**Chloe Swatts**
**707 Catamount Court**
**Chesapeake, VA 23322**

January 26, 2025

Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken,

My name is Chloe Swatts. I am a current Division I athlete at William & Mary; my NCAA ECID number is 2012982920 For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

I designate the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,

Chloe Swatts

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF CHLOE SWATTS

I, Chloe Swatts, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Sophomore at William & Mary and am a member of the NCAA Division I Men's and Women's Swim Team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Our coaches have explained to us that roster limits, if implemented, will cause our team to incur and suffer from cuts of four of our teammates. We do not yet know if these will be athletes currently on our team, incoming freshmen, or a combination. We do not want this and feel we should not have to worry about losing teammates or have any concerns surrounding our own position on the team. Added stress does not help performance or team spirit. Nor will a limited roster benefit our team.

3.      When I was a little girl my dream of swimming in college seemed larger than any other problem I had. As a high school athlete with one goal in mind, it caused me to make tremendous sacrifices with a 16-hour week practice schedule. I missed my senior prom so I could go train in Colorado in hopes of getting a little faster. Now, what I have been working for the last 15 years, my dream, has become a reality. We function as a team during our 20-hour practice schedule in and out of the pool. We eat together, study together, relax together, and live together; we have strong mentoring systems on our team and pride ourselves on helping one another in and out of the pool; we are a tight, supportive group. We worked incredibly hard throughout high school in order to have this opportunity; we all want to remain on this team and at our school, together. We do not feel roster limits help our team or our sport, but they will negatively

1

impact those who are cut and our team at large.

4.      I was MVP and team captain of my high school swim team my senior year. I placed top 3 in my events leading up to senior year in which I won the 200 freestyle at VISAA State meet.

5.      When I was looking for schools and talking with coaches, I was offered spots from other Division 1 schools but chose William and Mary for the promise that I would be a part of this team. I am extremely grateful for the opportunity my coaches gave me.

6.      Imagine you hike Mount Everest. You train with your clan for years; what to do when you run out of food, how to camp out at night, how to stay warm. You then embark on your journey. You are doing the thing. It's very hard but you've been working on it for so long and you are actually doing it. You will get to say you climbed Mount Everest. Then, they leave you. Someone comes and says you have to get down. Well, I am on my climb right now. They're telling me I might have to get down. Do I even keep on climbing? They tell me I can join another clan. But I've spent the entire climb with these people. They know me. My team knows me. We are not us without all 34 of us. I walk into practice every day wondering if these might be my last few times. I am scared that the next meet will be my last one. At the dining hall when roster cuts come up, we all shy away afraid it might be one of us. The eleven girls in my class aren't us without one another. I am afraid to sign the lease for my new house with the unknown that I might not be a part of this team next year. I don't wish this feeling upon anyone.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Williamsburg, VA

      January 28, 2025



Signed by:

651CBE1A2660457...

Carly Swatts
NCAA ECID No. 2012982920
707 Catamount Ct.
Chesapeake, VA 23322

Giuliana Swatts
707 Catamount Ct.
Chesapeake, VA 23322

January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Giuliana Swatts.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                               Sincerely,
                               Giuliana Swatts

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF GIULIANA SWATTS</u>**

I, Giuliana Swatts, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a high school freshman and lacrosse player and I hope to be recruited to compete on a Division I college team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      In hopes of one day competing at the Division I level, I joined Coast VA Lacrosse and have gone to every tournament and put my full effort into getting better at every opportunity. These tournaments, practices, offseason clinics, and at home stickwork or wall ball has caused me to miss out on a lot of the social aspects of being a high schooler. However, I am willing to make the sacrifices in order to play at the collegiate level.

3.      My sister is a swimmer at William and Mary. I watched my sister growing up practicing at least fourteen hours a week year-round with her team in order to compete in Division I which she has made it to but these roster cuts have been worrying for her future in swimming. She sacrificed so much for swimming it is heartbreaking to see that all her hard work may be ending not by her choice, but by the choice of the NCAA. She missed her senior prom to go on a trip to the Olympic Training Center, missed countless social events because of practice the next day, and missed out on family activities for swim meets.

4.      I have just begun the recruiting process, although exciting, it is scary thinking about my future past high school and what is to come. I live in Chesapeake which is not an area where lacrosse is very popular, there are not many local club teams and it is hard to get elite training. It is even harder competing at prospect days and tournaments with girls in northern

1

states who play for multiple teams and have all of these opportunities around in the area. With this considered, it will already be extremely difficult to get to the Division I level, but roster cuts are going to make it that much more difficult.

5.    My sister has put in so much work on her current team as well. The roster cuts may disrupt her academic and social life in the very near future. If she gets cut, her relationships with her teammates, coaches, and other athletes will suffer as well as adding extra anxiety. These cuts may also cause her to transfer schools leading to a possible delay in graduation and moving farther away from family. In the recruiting process, she turned down other offers because she felt that the William and Mary team and atmosphere was the best for her.

6.    I respectfully urge the court to reconsider the roster limits imposed by the NCAA. These cuts not only harm current athletes who have dedicated their lives to their sport but also discourage aspiring athletes like me from pursuing our dreams. Division I athletics are built on the principle of opportunity, and these roster limits undermine that foundation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Chesapeake, Virginia
   January 28, 2025

                 _____
                 Giuliana Swatts
                 707 Catamount Ct.
                 Chesapeake, VA 23322

Abhay Tharakan
824 Haddon Hall Dr,
Apex, NC 27502


January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Abhay Tharakan.  I am a high school senior and swimmer.  My NCAA ECID number is 2212746770. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                  Sincerely,
                                                  Abhay Tharakan

1
2
3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

4
5

6

### DECLARATION OF ABHAY THARAKAN

7    I, Abhay Tharakan, hereby declare as follows pursuant to 28 U.S.C. §1746:

8    1.    I am a high school senior and swimmer. Until recently, I had been recruited to

9    compete on the Georgia Institute of Technology (Georgia Tech) Division I swim team in 2025.

10   I am a member of the Injunctive Relief Settlement Class and object both individually and on

11   behalf of the class.

12   2.    I began swimming competitively when I was just 8 years old. I knew I wanted to

13   swim on a Division I team since I was 12 years old.

14   3.    Each day for the last 10 years of my life I have worked tirelessly at the pool. I

15   spend 20 hours each week on swim practice and dryland exercise. After swimming, I also work

16   hard at school to maintain good grades, with the hope of swimming at a Division 1 school. With

17   my commitments to swimming and school work, I have very limited time for social

18   activities.

19   4.    I currently swim for Apex High School and my year-round swim club, the TAC

20   Titans, in North Carolina. I am a three-time USA Swimming Scholastic All-American. I am

21   primarily a backstroker, though I make sure to keep up my strength in other strokes as well. My

22   years of hard work and dedication paid off with U.S. Open qualifying times in the 100-meter and

23   200-meter backstroke. I also have Futures cuts in all distances of the fly, breaststroke, individual

24   medley (IM) and some freestyle events. I am proud of racing for my team and hold some team

25   records. In 2023 and 2024 I finished 1st in the 100 yard backstroke for my high school

1

1  Conference and Regional meets. I also finished in the top 5 at the State Championships in the
2  past two years.

3       5.     My recruiting took place mostly during the summer of my sophomore year and
4  continued into the beginning of junior year. Recruiting was a long process and extremely stressful
5  for me. I spoke to countless coaches and spent hours researching schools that would be a good
6  fit for my goals. Every day in the summer consisted of going to practice and then coming home
7  and speaking to coaches. I want to study Industrial Engineering and that was my main criteria
8  while identifying the swim programs at D1 colleges. Finally, I decided to commit to Georgia
9  Tech in the fall of 2023 as it is the top engineering school for Industrial Engineering and it had a
10  competitive swim program. It was a no-brainer as it was a perfect fit for my future aspirations.
11  Georgia Tech also offered me annually a 25% scholarship with a $6000 additional scholarship.

12       6.     I verbally committed to Georgia Tech in November 2023. I was excited to join
13  the Yellow Jackets! As far as I was concerned, my search was over and I no longer needed to
14  research other schools or line up alternatives. Popular swimming news website SwimSwam
15  picked up the story of my commitment to Georgia Tech in May 2024: Sidney Zacharias,
16  *Backstroker Abhay Tharakan Hands Verbal to Georgia Tech (2025)*, SwimSwam (May 7, 2024),
17  https://swimswam.com/backstroker-abhay-tharakan-hands-verbal-to-georgia-tech-2025/.

18       7.     At the time, there was no hint that NCAA or conference roster limits could
19  endanger my spot on the team. I remained committed to Georgia Tech for 11 months, never
20  considering that the rug could be pulled out from under me before I even stepped foot on campus.

21       8.     I heard about the roster cuts in the summer of 2024 but was mostly unaffected. I
22  was improving and maintaining my swim times. Georgia Tech's team was not as big as other
23  college teams I had visited. My recruiting class consisted of 4 boys (which was a small number
24  compared to the 6-8 sizes most classes contain). I had regular phone calls with the coaching staff
25  at Georgia Tech and everything seemed to be going along as usual. Why would I have any need
26  to be worried about getting cut? I submitted my application to Georgia Tech on 20 Oct, ahead of
27  the Early Action 2 deadline, and waited for the signing letter which was to arrive before 13 Nov,
28  the National Signing Day for high school athletes.

2

9.    On October 28, 2024, everything came to a screeching halt. Just before the November 1 early admission application deadline for other competitive colleges, the Georgia Tech interim head coach informed me that, due to proposed roster limits in the *House v. NCAA* settlement, Georgia Tech no longer had a spot for me on the team. It was devastating news, and it took me a long time to process. I couldn't believe that almost a year after I committed, and arranged my life in reliance on that commitment, the school could just take away my spot.

10.    I was so distressed that I missed the early admission deadline for other schools. Realistically, I had no way of rallying in time to apply – after committing to Georgia Tech nearly a year prior, I had no need to research other programs or pull together application materials. I thought I was set and had no reason to believe that my spot was in jeopardy.

11.    In November, I scrambled to reach out to other college coaches and prepare materials for application deadlines in January 2025. About five or six other schools initially expressed quite a bit of interest, and that was followed by the Division I-wide recruiting shutdown in December. After the new year, most of the coaches of the swim programs that I was interested in, got back to me saying that, because of the roster limits, they also did not have a spot for me.

12.    I am at a complete loss. I committed myself to the singular goal of making it on a Division I swim team nearly my entire life, and I did. Then at the eleventh hour, it was ripped away for no reason. Now I'm stuck. I'm going to graduate in the summer, and most Division I schools have already filled their rosters. I feel like I am being punished for pursuing my dreams and planning ahead. All I wanted to do was swim in college, but because of the roster limits, that is looking more and more unlikely at this time.

13.    Not fair" is an understatement. I feel completely abandoned. Not once, in the history of College Sports, has something like this ever happened. It has completely affected my future, and I have absolutely no control over it. It has added to the stress of all my athletic performances as each race seems like a do or die situation to get into college. I don't know what I will do for college at the moment.

3

14.    From being cut I lost numerous things. I lost my college admission, I lost a scholarship, I lost new friends and a community, I lost a top tier education, and I lost an incredible swim program. I've been swimming competitively since I was 8 and this is the first time in those 10 years where I'm not sure if I will continue to swim after high school. My parents are lost as well, they've sacrificed so much time, driving to and from practice, cooking meals for me, cheering me on, making sure I'm the best I can be in the pool. All of their effort has been a waste as well.

15.    Roster limits are unfair, tens of thousands of athletes are being affected by them and there is nothing that they can do about it. Legal or regulatory compliance requirements are usually applied in a phased manner, over a few years if needed, giving the affected parties time to make the required changes. First, implementing such drastic roster limits i.e., reducing a team size from 35 to 22, may have result in teams with not enough competition within the team, and burnout or injured athletes. Secondly, the roster limits or any legal compliance requirement should not result in colleges not honoring their commitments to athletes like me and jeopardizing our future.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Apex, North Carolina

January 26, 2025

Abhay Tharakan

NCAA ECID No. 2212746770

824 Haddon Hall Drive

Apex, NC 27502

Jackson Tuck
886 Thoreau Trail
Valparaiso, IN 46383


January 28, 2025

Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Jackson Tuck.  I am a current Division I athlete at Indiana University of Indianapolis and my NCAA ECID number is 2202428752.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Jackson Tuck

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF JACKSON TUCK

I, Jackson Tuck, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a sophomore at Indiana University of Indianapolis and am a member of the NCAA Division I men's Cross Country and Track team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      To become a Division 1 athlete, I had to sacrifice countless activities such as time, work, school, etc. While in high school, practice would run from 3:15 to 5:30 Monday through Friday. On the weekends, it would go from 8:00 am to 10 am. I would practice roughly around 13 hours, and this didn't include the time I had to put in on my own. Due to this, it was difficult to find jobs that were flexible enough for me to attend the practices. It also caused me to miss school events when I had state for example. I did all of this in hopes of competing at the Division 1 level even though I knew it meant I would have to cut out my social life to make sure I was getting the proper rest even if it meant going to bed around 10:00 pm on a Friday night before a big meet all in hopes of being able to compete at the Division 1 level, which I was able to do but is now being threatened.

3.      I was a 4-x state competitor in cross country and 2 x competitor in track. I led my team to a 9th-place finish at the state meet in my senior year of cross country. During my 4 years at Chesterton High School, I ran the 4th fastest 1600m run with a time of 4:19.6 and 7th fastest 800m run with a time of 1:57.4 I was asked to run in the Indiana all-stars meet my senior year for the 3200 as well, but unfortunately, I had a stress fracture at the time.

4.      During my recruitment process, I was stressed about picking the right school that

Docusign Envelope ID: 124BC26D-870E-4A4B-B5F1-1355E8EA512A

would fit my career interests while also being a good fit to run. Had I known about this when I was still deciding, I might have leaned towards a lower Division in the NCAA or even NAIA. I chose IU Indy because of its history with the program as well as its Exercise Science program and P.T school right on campus. I was promised 4 years of scholarship to help with my financial aid and that it wouldn't be removed unless I was cut from the team or quit. Furthermore, I was promised I wouldn't be cut as long as I did what was right and did what I was supposed to. Even with injury, I was promised I wouldn't be cut from the team, and I have been dealing with the aftermath of a stress fracture and tendinitis now in my hip region for almost 2 years. This scholarship made this school one of the more affordable options for me. Due to this, I had to turn down several offers and a couple were a little cheaper but because of this school's strong Pre-P.T program, I decided that the reward was worth a couple more thousand dollars.

5.      I learned about the roster limit this year, as a sophomore through Instagram. It became a reality when the head coach gave the team a talk about the roster limit cuts. With IU Indy being a part of the Horizon League, the cross-country roster limit was lowered to 17 and the track team to 45. Those who weren't top 17 would be moved to the track team since our school is strictly a distance program and has enough room not to cut anyone off completely. However, when I first committed here, I was told I would compete for both Cross Country and Track for the 4 years I was here. I am not sure what this means for my scholarship either as half of it was for cross and the other half was for track. Due to my injury, I am not sure how my future career will play out with whether or not I will be able to get healthy enough in time to make the top 17.

6.      This has caused me a lot of worry and anxiety. My injury already causes enough anxiety as I haven't been able to race yet in college, but the risk of being cut has now ramped that up. I am supposed to be healthy and run my way into the top 17 all in the next 7 months and I am already behind my fellow sophomores, the freshman class, and the incoming recruits. Besides the running aspect, it makes me wonder about whether or not I have to switch schools if I lose my scholarship as that helps pay for a big chunk of my tuition. I am losing sleep as I am already almost 2 years into the Exercise Science program here and the possibility of transferring

2

could potentially set me back with some credits maybe not transferring over.

7.    If I am cut from the cross-country team, I lose the ability to see the athletic trainer during the fall and as an injury-prone athlete, that is a resource I need if I want to become successful. I also pose the risk of losing half my scholarship which I need for financial aid to pay for school. I also will lose medical insurance from the school during the fall so if I have to run on my own just to stay fit for track and get hurt, I will have to pay for anything and everything that occurs before track season. My identity is greatly shaped by the teammates I have, and I could potentially lose friendships if certain teammates are also cut and have to transfer schools to which I most likely wouldn't see them again. The team is like a family and breaking that up has negative emotional consequences.

8.    Due to this roster limit I am having to consider the possibility that I might have to transfer schools if half of my scholarship is revoked; otherwise, deal with the increase in my tuition somehow. Furthermore, with a lot of athletes being impacted the transfer portal will be quite competitive and with zero races under my belt, there is a low chance a team would pick me up, especially with my ongoing injury. As I mentioned before, if I were to transfer, some of my credits might not transfer and that will push back my graduation which means more money and time.

9.    I am asking the court to take my experience as well as the countless others into account and how this affects us in more ways than just running for a team. Our identities are connected to this sport, the affordability of being able to still attend school is potentially going to be impacted, close friends could be lost, and a lot of confusion and fear has already taken place.

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Dated: Indianapolis, IN

3        January 28, 2025

Signed by:

_Jackson Tuck_

8A87C84C8D4544AA...

Jackson Tuck
NCAA ECID No. 2202428752
886 Thoreau Trail, Valparaiso, IN
46383

4

MARIST VERES ROYAL
65 Spring Meadow Drive #65-4
Buffalo, NY 14221


January 28, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Marist Veres Royal.  I am a Division I student-athlete beginning Fall 2025 at University at Buffalo and my NCAA ECID number is 2304842372.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

            Sincerely,


            Marist Veres Royal

**573**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF MARIST VERES ROYAL

I, Marist Veres Royal, hereby declare as follows pursuant to 28 U.S.C. §1746:

1. I am a high school senior and football player and have taken the extraordinary steps to accelerate my graduation, obtain an early decision acceptance from University at Buffalo and relocate with my family from the New York City area to Buffalo, New York, for the purpose of competing on a Division I college team as a walk-on. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

1. Like many athletes, I have trained virtually my entire life, since age 7, to ny practice, to develop, and to compete year round for the chance of being a Division I college athlete. My family and I have made many sacrifices during this journey including most recently, foregoing my last two years of high school by graduating early in 2025 because of the fear that this proposed settlement and the current transfer portal will close the door on opportunities for me and high school athletes like me by 2027.

2. I have been recognized as a football athlete by achieving a rank #54 overall and #11 for my position by Prep Redzone in the state of New Jersey in my freshman year. I was also invited in 2023 and 2024 by the US Army National Combine Series in Frisco, Texas - being selected from thousands of regional prospects across the country.  As a 15 year-old 6'3" 250 lb fullback and tight end, the hard work and sacrifice by me and my family had seemingly paid off.

1

This circumstance, however, puts that all in jeopardy.

3.     That my family and I chose to act proactively in light of the NCAA changes, including the transfer portal and this proposed settlement, I forwent the opportunity to engage in the recruiting experience with my peers that I might have otherwise undergone. But before I did, I had been contacted by coaches at Rutgers, Syracuse and Cornell universities via the X platform. Ultimately, I chose the walk-on path at University at Buffalo because it is a great program and one my family could afford to pay out-of-pocket for tuition and expenses. My experience with the principal recruiter and admissions office has been very welcoming and I am, as of today, looking forward to my walk-on tryout opportunity which is to occur this spring - assuming this settlement will not prevent it. Many of the Buffalo's top players have been walk-ons and have even received national awards and accolades, and I am confident I would be a contributor to the team with my size and skillset. However, the risk of foregoing my high school eligibility to enter University at Buffalo early and move to Buffalo to train for 6 months in preparation of my walk-on opportunity, is a huge risk which would be devastating if roster limits would prevent me, at this stage in the athletic process, of having that opportunity to join the team.

4.     I learned about the proposed roster limits on X in the fall of 2024 and have kept up with the developments and reactions relating to it through social media and television. The fear I have for me and many of the players from my former high school team at Saint Joseph Regional in NJ – who like me have not only practiced and developed year round most of our lives – is the economic loss our parents who have made significant financial commitments, and often hardships, to ensure that we could attend the best schools to obtain D1 College opportunities.

5.     Even though many of my friends have received college offers for the year 2026,

many are fearful, like me, that they might not ever see those offers become a reality with two headwinds now hitting them: older players from the transfer portal and the proposed roster limits taking their opportunities away.

6.      The mental stress of the possibility that I, like many of my former teammates, may not get the opportunity to get to play in college is heightened for me as I took the chance to step into the fire and actually come to college early. I know that many of my former teammates are looking at my story to see if I did the right thing by acting and not reacting to the NCAA changes, and all of this does take a mental toll on me; while also training and maintaining my 4.0 GPA. I also can't  imagine how players at University at Buffalo must feel as I look at the spring 2025 roster that is already above the 105 limit if you include the incoming 2005 fall freshman and portal players who have just arrived on campus. That means that some of them will for sure  lose their roster spots. For me, what initially was a situation of me coming  to college to try-out as a walk-on for one of 125 spots, has now turned into me  having to get on the team by taking someone's spot in order to achieve my goal.

7.      It would be devastating to not even have an opportunity to get on the team, as uprooting my family to come to Buffalo was a very major undertaking. I would not be here if I thought I could not make the team based on my talent, but at least that is something I can control. It would not be right to deny me or other players the opportunity which we cannot control, and for which no coaching staff I have ever seen on television or in the media has supportive of.

8.      This whole issue of the transfer portal will have top-to-down domino effect, that exacerbates realities of the proposed settlement.  Even if I or other high school players have to attend lower division schools in order to get an opportunity to play, we would still be competing against more experienced players nation-wide who have been cut from their rosters as well. In essence, high-school players will be the losers.

1    9.    For the reasons stated above, I hope that the court in approving this settlement,

2   will do so in a way that is not in a vacuum and balance  the burden that the transfer portal,

3   looming roster cuts, life-long development and financial commitments  with the satisfactory

4   settlement of this case's impacting people that have no say in  the outcome.

5    10.    I believe a solution could be that a voluntary waiver could be signed by players

6   who fall above the 105 limit that their voluntary participation would not entitle them to whatever

7   monies are at stake in this  settlement now or in the future.

8    I declare under penalty of perjury that the foregoing is true and correct.

Dated: Buffalo/Erie County, New York
         January 28, 2025



_____
Marist Veres Royal
NCAA ECID No. 2304842372
65 Spring Meadow Drive #65-4
Buffalo, NY 14221

4

Mary Kate Walker
130 Glennann Drive
Landenberg, PA 19350

January 11, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Mary Kate Walker.  I am a current Division I athlete at Sacred Heart University and my NCAA ECID number is 2107277300.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                        Sincerely,
                                        Mary Kate Walker

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF MARY KATE WALKER

I, Mary Kate Walker, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a freshman at Sacred Heart University (SHU), where I play on the Division I women's soccer team. I am a member of the Injunctive Relief Class and I object individually and on behalf of the class.

2.      I started playing soccer when I was only three years old. I have dedicated thousands of hours to soccer since then playing for school, club, and national programs.

3.      Throughout my freshman and sophomore years of high school I spent hundreds of hours researching schools, emailing college coaches, compiling highlight videos, and attending recruiting clinics. SHU offered me a spot on their team during the fall of my junior year of high school. The four-year letter of intent and athletic scholarship SHU offered were crucial factors in my decision to commit there.

4.      I first heard about the roster limits included in the House v. NCAA settlement from an online source in approximately August – September 2024. To date, the settlement proposal and roster limits have not been explicitly discussed with me by anyone at my school. During my end-of-season player meeting in October 2024, my coach indicated that roster limits may be imposed in the future. If this is the case, at least eight players will need to be cut from our roster.

5.      I tore my ACL during my senior year of high school. My recovery of skills and stamina after the surgery and rehabilitation continued through the fall 2024 season. If the roster limits go into effect, I am afraid I could be cut from the team because I was not able to perform

1

1  to pre-injury levels, redshirting my first season at SHU.

2      6.    If I lose my roster spot, I could lose my athletic scholarship. My remaining
3  athletic scholarship is nearly $140,000 and includes tuition, room and board. Without my
4  scholarship, I cannot afford to attend SHU. Although I love my school, I would have to transfer
5  to another institution. It is highly improbable that I would find a roster spot on another team at
6  such a late stage in the year, let alone a spot with a scholarship. Further, even as a 4.0 student,
7  my access to a quality institution would also be limited. Some of the schools I would potentially
8  be interested in considering require transfer student applications to be submitted prior to the
9  April 7, 2025 Final Fairness Hearing in this case and before I know whether the roster limits will
10  be implemented.

11      7.    The proposed roster limits cause undue stress for me, my current teammates, and
12  my former club teammates now attending other schools. Due to injury recovery, I was unable to
13  prove myself this fall. Now, due to the proposed roster limits, my spot is in jeopardy because I
14  couldn't recover from my injury fast enough. Another teammate tore her ACL within five
15  minutes of her first collegiate appearance this fall. She is in the same position. We could be cut
16  simply because of our injuries. Others, who may not log many minutes on the field, are
17  nonetheless valuable and important components of our team. We all deserve the opportunity to
18  continue our college athletic careers. Nobody deserves to be cut, and without the roster limits,
19  nobody will be cut.

20      8.    Imposing roster limits will force abrupt cuts and undermine the commitments
21  made to student-athletes, like me, who made 4-year decisions long before the House v. NCAA
22  settlement agreement was filed. The NCAA is supposed to protect student-athletes, prioritize the
23  whole athlete—including mental well-being—and ensure student-athletes can complete their
24  collegiate careers under the terms they agreed upon when signing. The roster limits are entirely
25  inconsistent with that mission and should not be approved.

26

27

28

1     I declare under penalty of perjury that the foregoing is true and correct.

2  Dated: Chester County, Pennsylvania

3         January 11, 2025                *Mary Kate Walker*

4                                          Mary Kate Walker
                                           NCAA ECID No. 2107277300
5                                          130 Glennann Drive
                                           Landenberg, PA 19350

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Margaret Ward
3217 Tallyho Ln
Madison WI 53705


January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW


Dear Judge Wilken:


      My name is Margaret Ward.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 2311160202.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.


      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.


                                    Sincerely,

                                  Margaret Ward

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

<u>**DECLARATION OF MARGARET WARD**</u>

I, Margaret Ward, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a member of the class of 2028 at the University of Washington and a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Becoming a Division I athlete is not easy, it takes grit, hard work, commitment, time and energy. My junior year of high school I spent most of my free time outside of school, alongside 3-hour practices every day, working on being recruited to be a Division I athlete. To be successful at rowing you must constantly be doing it.  I don't take breaks.  In high school, I would spend at least 14 hours a week at practice.  I didn't mind because it was my outlet.

3.      I achieved great results in high school that got me noticed by college coaches.  I was lucky enough to attend U.S. Rowing Youth Nationals in Sarasota twice and Head of the Charles, the world's largest regatta, three times.

4.      Visiting schools and my rowing schedule would often make me miss school and social activities. I tell people getting recruited is like a job: constant outreach, rejection and energy is spent figuring out where you want to go and who wants you.  During my recruitment process, I would find myself filling out questionnaires in class instead of doing my homework, taking recruitment calls in my counselor's office, and making a ton of lists to decide where I wanted to spend my next four years.

5.      Like I mentioned above, recruiting is not easy. You must find a college that wants you, and you also have to want them.  When I was looking for schools, I was looking for a good

1

team environment, good coaches, resources, and also competitiveness.  I chose the University of Washington because they offered all of those things. Although I wasn't ground breakingly fast, they still gave me an opportunity to be on this team and get better.  That is what is so special about UW: they give athletes like me time to develop and become extraordinary.

6.      Development in rowing takes time.  Teams like ours, who contend perennially for conference and national titles, are made up of athletes who develop physically and technically over four years.  It's not unusual for a student athlete to learn and develop for a year or more before competing in a conference or NCAA championship.

7.      The roster cap could remove these student-athletes at a peak stage of development and before they are able to compete at a conference or NCAA level.  In my commitment letter there are certain requirements/times I must hit in order to stay on the team.  I was under the impression that if I hit those requirements and continues to uphold the standards of being a Woman of Washington, I would have a spot on this team. With the possibility of roster limits this might not be the case.

8.      I first heard about the roaster limits through my teammates.  At that point, no one really knew what was going on, but there were lots of rumors about the cuts.

9.      The potential cuts will greatly affect our team. Washington Women's Rowing has roughly around 100 rowers currently.  The new roster limit is 68, meaning 32 people will not have a spot on the team if the cuts are approved.  There are nearly 40 freshman this year; more than half of use will have to be cut.  Every person on the team will be affected by this—they will either be cut or they will have to watch their teammates by cut.  The team dynamic has already changed because of the looming cuts.

10.      This is taking a mental toll on me and all of my teammates. We are all worried about our spots on the team.  Every day feels like I have to prove myself and work even harder to keep one of those 68 spots.  It is driving all of us to be the best we can not because we want to, but because we know we have to fight for our roster spots.  Moral is really low and everyone is stressed about what their futures look like.

11.      Washington athletics provides me with so many resources.  I will forever be

grateful for what they have given me.  If I am cut, I would lose: my therapist, medical care, meal plan, tutoring, academic counseling, and rowing.  This amount of change makes it really difficult to plan for the future.

12.    Additionally, and most importantly, I would also lose my family.  The women on this team are inspiring and I am so lucky to get to practice and learn from them.  This team makes me a better person.

13.    As a result of the roster limits, I have greatly considered entering the transfer portal. One of my greatest concerns: will there be a spot for me at any schools?  That I truly don't know.  I don't want this ruling to end my rowing career, but it might. Transferring is not easy and would require me to restart the recruiting process. Transferring would uproot everything.  Finding a school with a good undergraduate social work program, which I am planning on pursuing here at UW, would also be a challenge and I would have to reconsider what I want to do academically.  The timing of the proposed roster caps does not take student athlete well-being into account. The December 1 roster cap date for spring sports is a terrible time academically as all student athletes are preparing for final exams for fall quarter/fall semester. The transfer portal opens in December, but because it opens after the roster cap deadline, those who go into the portal will be going in at a time of lower demand, reducing their options of competing that year.

14.    I hope the court understands what the roster limits would do to me and thousands of rowers and athletes all over the United States. Limiting rosters would ruin the careers of many athletes and make sports more unethical.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington
     January 26, 2025

Margaret Ward
NCAA ECID No. 231116020
3217 Tallyho Lane
Madison, WI  53705

DECLARATION OF MARGARET WARD
CASE NO. 4:20-CV-03919-CW

Emma Waters
5212 15th Ave NE
Seattle, WA 98105

January 28, 2025

    Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Emma Waters.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2201424168.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                        Sincerely,
                        Emma Waters

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF EMMA WATERS

I, Emma Waters hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am a graduate student at the University of Washington and a member of the NCAA Division I women's Rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    Originally from Ireland, I started rowing as a novice during my undergraduate studies in late 2019 at the University of Galway. I had just turned 20 years old and was looking for a pastime to keep active and maybe make a few friends. Within a few weeks of joining the club, I knew I had found something special: a sport where I could express myself and a community that supported me. I was hooked.

3.    I trained day in and day out, trying to build my strength and learn the basics of rowing on the water, looking forward to racing in the summer season. Unfortunately, that March, the COVID-19 pandemic hit, and all training and racing were cancelled. This went on for two years, which meant that while I was getting physically stronger on the erg/rowing machine, I couldn't develop my skills on the water.

4.    By 2022, I had finished my undergraduate degree, and rowing had become an integral part of my lifestyle. A friend of mine mentioned that there might be an opportunity to join a team in the US and study for a master's degree. So, I started reaching out to colleges. At the time, I was physically very strong on the rowing machine but only had three racing events under my belt and two years of eligibility left, so I knew it would be a gamble for a coach to take me on. I was also limited financially, as I couldn't afford to fund myself in the US, even with a

1

partial scholarship.

5.      Luckily, I received an offer to join the Rutgers Women's Rowing Team in New Jersey. It was a good fit for me at the time. I developed quickly after joining the program; we had great competition in the Big Ten and a packed racing schedule that gave me the opportunity to improve in areas where I was lacking. With my development accelerating, I decided to take a year out and try to get on the Rowing Ireland Women's Team that was gearing up for the Paris Olympic Games. After trials that September, I made the training squad but wasn't selected for the boat, which mainly came down to my lack of skill on the water.

6.      Motivated to further develop my skills and having finished my degree at Rutgers, I knew I wanted to move to a more competitive school program so I could surround myself with athletes who had similar goals of competing in the Olympics. I reached out to my dream school, the University of Washington, which agreed to take me on for my final year of eligibility.

7.      Then, I received devastating news.  Last week, our coach met with the entire team to discuss the potential implementation of roster limits in women's rowing next year. This news deeply resonated with me as I reflected on my rowing journey and realised how different my life could have been if these limits had existed in 2022 when I finished my undergraduate degree.

8.      Each program I joined at a U.S. university took a chance on me, and I know that if roster limits had been in place, I might not have had the opportunity to be part of a team. Additionally, the financial barrier to entry in rowing would have been insurmountable for me, making it impossible to continue pursuing the sport at any level.

9.      I am urging the Court to recognize that roster limits in NCAA women's rowing will close the door for many women like me that have found rowing at a later age but have desires to become the best in the world. I believe that these limits will damage the quality of our sport, placing barriers to entry for athletes all around the world and will have lasting effects in the future.

1    I declare under penalty of perjury that the foregoing is true and correct.

2   Dated: Seattle, WA

3        January 28, 2025                    *E Waters*

4                                        Emma Waters
                                         NCAA ECID No. 2201424168
5                                        5212 15th Ave NE
                                         Seattle, WA  98105
6

Caroline Wazac
465 Sunset Dr.
Fairfax, IA 52228

January 22, 2025

   Re: *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

   My name is Caroline Wazac.  I am a high school senior and volleyball player.  My NCAA ECID number is 2208635147. For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

   I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

           Sincerely,
           Caroline Wazac

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**<u>DECLARATION OF CAROLINE WAZAC</u>**

I, Caroline Wazac, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am a high school senior who is committed to Wichita State University as a member of the NCAA Division I women's volleyball team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.     I've been playing volleyball competitively since I was 10 years old. I've been to multiple national tournaments, having played at the highest levels, and have competed for and won many titles. I was on the varsity roster for three years of high school and have played club. It has been a year-round commitment. My parents have driven countless miles and spent thousands of dollars just to give me the opportunity to play at the college level. We haven't had a family vacation in years because of the sacrifices they've made for me. My goal was to play at the Division I level.

3.     Like most high-level volleyball players, I'm very tall. It's unusual for a girl to be over six feet, but on the court, I fit right in. Dating is difficult because of my size, and I feel awkward and huge around my friends. But when I'm playing, I'm in my element. The sport gave me the opportunity to find a place where I feel at home. I'm not too big and I belong. It's also been the one place where I have excelled. I've broken a school record and I've been all-conference, all-metro, all-district, and all-state. I'm ranked 16th in my region and 2nd in my position. I'm also left-handed, which is a valuable trait in volleyball.

4.     On June 15, 2023, I woke up to texts from schools all over the country. This was the first day that Division I schools could talk to me as a potential recruit. Some were big, others

1

small, but it was mostly mid-major and small Division 1 schools. My parents travelled around the country so I could visit campuses, attend camps and talk to many coaches. Ultimately, I chose Wichita State. I clicked with the coaches, and they have strong science programs along with partnerships with a few dental schools (I want to be an orthodontist).

5.      The decision was not easy. I was offered a walk on spot with the possibility of a full scholarship my junior and senior years. I knew that it wasn't a guarantee, but I also know how hard I work and that there was a good chance I could make it happen. My parents do not want me tied down with student loans, so they've been putting as much money away as they can so I could have the opportunity to go to my dream school and play volleyball. I could've taken a spot where I'd have a full ride right away, but Wichita State was where I felt at home. The Shockers have always carried a big roster and have their reasons for that, so roster limits are a blow to the entire program.

6.      My mom read about the roster limits in the news. She researched a lot about it, but since Wichita State doesn't have a football team, it sounded like they didn't have to participate. At first, we were confident that everything would be okay because we thought the coach would let me know if something changed. Signing day came and I signed the paperwork along with the rest of my recruiting class. In November, I got an email from the Athletic Director that Wichita State would be participating in the settlement. Again, we assumed that if there was an issue, my coach would let me know, so we still weren't worried.

7.      When the portal opened, several players left, so I was feeling confident. That all fell apart when new players were brought in from the portal. Between the current group and the incoming freshmen, we are sitting at 26 for the fall. The proposed limit is 18. My mom pushed me to reach out to the coach to ask if there will be cuts. I texted him and was told that he won't know until April, but that if 18 is the number, 8 girls will have to be cut. I wasn't told if I'll be one of them and we are hoping to talk to the coach soon. But, looking at the current roster, my chances don't look good. I also think that the players who are cut from the big conferences will end up at schools like WSU. No one is safe right now because they could get bumped by someone who could be a little better.

8.     This is extremely stressful. I thought this part of my future was planned. It's my senior year and I'm supposed to be relaxing and enjoying my final year of high school. Committing to a top mid-major made me feel like all the "no's" I've heard during my time in this sport and all the years of being not quite good enough to be among the best of the best were going to pay off. Now it's looking like I'm going to be told no yet again.

9.     If I'm cut in April, I'm going to be scrambling to find a new college. My parents took video clips for years to help prepare for recruiting and when I committed, they put the camera down. We are trying to be proactive to find video to throw something together so that I have something to show potential new coaches. There isn't much and what we've found is bad quality. Even if I was able to put together video, I am not allowed to reach out to other coaches since I'm signed.

10.     Being a volleyball player is a big part of my identity. Although I'm a walk-on my first year, there are financial benefits that I'll be losing. The academic support would be a benefit for me when it comes time to apply to dental school. And learning health habits that would last a lifetime. I'm sure there are many opportunities and financial benefits that I'm not aware of, since I'm not there yet. I've worked hard for this and the thought of starting over is scary. Will any school even want me? Will it be harder to get recruited this time since there are fewer spots? If someone does want me, will I be pushing another player out of her spot?

11.     Wichita is a 7-hour drive from home, so without volleyball, I don't have a reason to go there and pay out of state tuition when I'm not going to be playing. I'd love to be able to start reaching out to other schools now, but I can't do that unless I decommit on my own, which I'm not willing to do. At this point, I have no idea what's next and it'll be a few months before I know for sure. I've gotten to know my future teammates and forming those bonds somewhere else in a shorter period is going to be hard.

12.     Roster limits are wrong and unnecessary. Financial and emotional problems are only a small part of it because from a recruiting standpoint, it is going to be a mess with thousands of athletes suddenly becoming available. I'm asking the court to consider the athletes who aren't worried about profit sharing- we just want to compete with the schools we committed to.

13.     Roster limits will severely limit the opportunity for everyone, not just Division I athletes. One of the arguments for the limits is that top schools will hoard the best athletes. I guarantee there are very few of us who are willing to sit on a bench for a paycheck. We've worked too hard. So many of us are just happy for the opportunity to continue playing, scholarship or not. Don't take our dreams away. Let us play at the schools who want us to play there.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Fairfax, Iowa

     January 22, 2025

Signed by:

*Caroline Wazac*

8633296E87F4440...

Caroline Wazac

NCAA ECID No. 2208635147

465 Sunset Dr.

Fairfax, IA 52228

Anzley Wevodau
P.O. Box 2865
Yelm, WA 98597

January 26, 2025

Re:     *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

My name is Anzley Wevodau.  I am a current Division I athlete at University of Washington and my NCAA ECID number is 2209679689.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

Sincerely,
Anzley Wevodau

595

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF ANZLEY WEVODAU

I, Anzley Wevodau, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a Sophomore at the University of Washington and am a member of the NCAA Division I women's rowing team.  I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.      Becoming a Division 1 athlete for the sport of rowing was my most unique life experience to date. I am a true walk-on rower, so this meant that prior to September of 2023, I had never had any rowing instruction. I trained cardio and weights around 20 hours per week, 6 days per week. My training was self-directed, as I did not live near any rowing teams. As the only person from my community set to go Division 1 for the sport of rowing, I was forced to be an individual. I often had to miss out on social events or extracurricular activities to devote time to training. In addition, as a walk-on, I knew that my chances of earning athletic scholarship in my early development years on the team would be minimal. I worked a minimum wage job, 18 hours per week to generate savings to use in college. This time commitment was in addition to my full training load and high achievement academic pursuits as a highschool student and position as an ASB officer. I used my sports background having been a varsity cross country and track and field athlete to grow myself further as an athlete in preparation for joining the University of Washington NCAA Division 1 women's rowing team.

1

3. As a walk-on rower, my accomplishment as a multi-sport varsity athlete for my high school was one of few accolades I could present to coaches. Through recruitment forms and grassroots connections I was able to convey my affinity for sport, max lifts, and 5k cross country times, as well as an unyielding commitment to the sport of rowing despite having never done it before. I and my current coaches at the University of Washington took an equal chance on each other with the opportunity presented. My team's ability to receive and develop walk-on athletes alongside those more experienced is a remarkable display of equity. Without my team's ability to front a full roster, myself and hundreds of other walk-ons over the years would have been deprived of the experiences and benefits that sport at this level provides.

4. For recruitment to row at Washington, my initial introduction was through an alumni rower of the women's team. I had met her brother and he shared with great reverence and rapport of his sister's experience walking-on to the Washington rowing team, and assured me that if I were to make my mind up to it, I could do the same. This claim was validated again by his sister, the alumni Washington rower. She put me into contact with the recruit first-contact and coaches at the University of Washington. As someone from a rural small town in the state of Washington, the experience was both a fruition of everything I had ever worked for, and excitement for all that I could look forward to in the 4 years to come. My conversations and visits with the coaching staff were informative and inspiring. From every interaction, the legacy, values, and aspirations of this team were at once exactly what I wanted to cultivate within myself and elevate my peers to the highest level. Deciding to come to the University of Washington to row as a true walk-on meant understanding the promise between my team and myself. It was conveyed that by development of courage, grit, passion, and perseverance I would have a place on my team. By continued dedication, humility, compassion, and kindness, my teammates and I would continue to have the opportunity to

2

participate in our sport at the highest amateur level. This emphasis on values from all levels of our team and sport is what makes it so important. My team's ability to front a roster of over 100 rowers spanning from international recruits, Olympians, experienced rowers, and walk-ons sealed the deal for me. Coaches clearly conveyed the possibility of every athlete on our team's potential to become an Olympian, with a large portion of Washington Rowing Olympic alumni having begun the sport as a walk-on. This kind of elite development is a long term goal, and I have full faith in my team and program to continue to uphold this legacy. This of course came with the understanding that my peers and I might spend one to three years on the development squad to have the chance to compete for conference and national title. Having turned down multiple academic scholarships and admissions offers at other esteemed universities, I made the decision to commit to row and expand my academic pursuits at the University of Washington.

5.      From my initial recruitment process, coaches and staff expressed the roster cap for women's rowing at the University of Washington, with over 100 available spots, being second only to football. This had been explained as a necessary measure to allow for every individual athlete to develop themselves and contribute to their team at the highest amateur level, while also attaining a degree in their desired field of interest. Having so many teammates committed to elevating one another to be better students, better athletes, and better people is truly inspiring. I had always known that cuts would be made when finalizing the roster; coaches had communicated these cuts were not only performance based, but individual to an athlete's development potential. However, with the current talk of diminishing our team's roster by force of law rather than need or desire, I am concerned for any incoming freshmen/transfers and current teammates' position on the team. The proposed roster cap would diminish our team's number of athletes by nearly half. These numbers each represent a person

from every walk of life. Women's sports provide a place for all kinds of athletes to thrive, whether they be women, girls, transgender, intersex, non-binary, etc. The benefits gained from participating in sport at this level are intangible. No sum of money could outweigh what it means to have the opportunity to participate in my sport surrounded by the 100+ athletes who make it an experience worth having and living for. I want to secure the opportunity for generations of women/people to participate in sport, even if they had never tried theirs before college, at the highest amateur level and experience the same intangible benefits.

6.      If cut from my team's roster, I would lose the completion of the greatest opportunity presented to me. To include tangibles such as: tutoring, academic counseling, meal plan, medical coverage and care, mental health resources, financial award opportunities, housing leases, affiliated opportunities for advocacy and community outreach, and connection to my support network. The quality friends and relationships gained from my participation on my team thus far are unequivocally irreplaceable, an intangible of high value.

7.      As a result of enforcement of proposed roster limits I am forced to consider what it would mean to cease participation in my sport. My sport itself is not always accessible at the recreational level, making its presence and breadth of support at the Division 1 level even more prevalent. I do not wish to row for any other university, as I made a commitment to my team and coaches with the intent of seeing it through. I decided on my university not singularly as a student, not singularly as an athlete, but cohesively with the intent of being an amateur student-athlete seeking both academic and technical education. The transfer portal is out of the question due to: other schools having limited roster spots, legally binding housing leases dated for the matriculated school year, extension of schooling required to fulfill degree, and damage to well-being and relationship with myself and my teammates.

8.      The proposed roster cap inadvertently seeks to marginalize women's sports not

even 54 years after the passage of Title IX of the Civil Rights Act. We, as a society still have a long way to go when it comes to securing equity and equality for all. Women's sports are a small step in a greater battle still in need of triumph. No action is without consequence, and I urge consideration of every possible implication brought to the attention of those with power to make change, protect, and guard those whom they are sworn to serve. As a current non-scholarship student-athlete, my participation as a walk-on rower is purely amateur in every regard. Amateur is defined as a person who engages in a pursuit, especially a sport, on an unpaid rather than a professional basis. The word amateur comes from the Latin root *amare*, meaning "to love," and that is why I and my teammates participate in our sport. I, like hundreds of others, seek to compete at the highest amateur level because better athletes make better people; better people make a better world. We love ourselves and each other and want to thrive. When it comes to women, sport, and life, our strength is certainly found in numbers. In looking toward the future, one constant remains: it is truly *all of us or none of us*. I urge the court to consider carefully this declaration of myself and those of many others before making their decision, and thank the court for their time and thoughtful consideration.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, Washington

January 26, 2025



Anzley Wevodau
NCAA ECID No. 2209679689
P.O. Box 2865
Yelm, WA 98597

DECLARATION OF ANZLEY WEVODAU
CASE NO. 4:20-CV-03919-CW

Ryan Williams
PO Box 1638
Tahoe City, CA 96145

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Ryan Williams.  I am a current Division I athlete at The University of Tennessee and my NCAA ECID number is 2005863755.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                               Sincerely,
                                             Ryan Williams

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

**DECLARATION OF RYAN WILLIAMS**

I, Ryan Williams, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am a Junior at the University of Tennessee and am a member of the NCAA Division I men's Swim & Dive Team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2. I started swimming when I was five years old, and while I competed in other sports growing up, swimming has been a constant for me throughout my life. As I moved up in age, I began swimming year round typically training 11 months per year and an average of 11 hours per week. Beyond the time in the pool, swimming is where I have made some of my closest friends and has resulted in more memories than I can possibly list.

3. Throughout High School, my team won the Team Nevada State Championship twice and I was a three time State Champion. I also achieved Junior National Time Standards, was awarded Scholastic All American, and was recruited actively by many Division 1programs throughout my Senior Year.

4. I ended up taking official visits to 4 schools (The University of Arizona, LSU, SMU and The University of Tennessee). Each school offered different unique opportunities but I felt like I'd found a home when I visited The University of Tennessee. Throughout my official visit, I was thoroughly impressed with the campus, athletic facilities, and resources available to student athletes. More importantly, I felt a real connection with the coaches and team and was excited to compete as a Vol! I was offered a small scholarship that was actually less than what I had

1

received from other schools, but the combination of Alston Funds along with Summer School Scholarship Funds made The University of Tennessee still within range of what my family could afford. I was promised that I would receive the same level of coaching and support as any athlete within the program and that the University was committed to my success both in and out of the pool throughout my four year tenure as a Student Athlete.

5. In the Fall of 2024, our team was informed by our coaches of the 22 person roster limit being imposed by the SEC (despite the 30 person roster limit proposed as part of the House vs NCAA Settlement). We were told that inevitably there would have to be some cuts to the team, and since that time, some of my teammates have been advised that there would not be a spot for them next year and that Alston Funds would not be rewarded starting in the Fall of 2025.

6. As of today, I have not yet been informed as to whether or not I will be impacted by the proposed roster limits. If I were to be cut from the program, it would present a very difficult financial position for my family. As an out of state student, the "all-in" cost to attend The University of Tennessee is around $52,000 per year. When taking into consideration my athletic scholarship, Alston Funds awarded to Student Athletes, summer school scholarship and off campus living stipend, access to athletic dining hall / meal plan, 100 % paid health care, access to student athlete tutors and academic resources, my net cost to attend is currently around $32,000 per year. If I were to lose these funds, it could force me to have to transfer to another University and possibly lose credits therefore costing me additional time and money needed to complete my degree.

7. I respectfully request that the court remove roster limits from the House vs. NCAA Settlement. At the very least, please consider "grandfathering" in existing Student Athletes thereby making them exempt from roster limits and allowing for a reasonable transition period that doesn't disrupt their current educational tract.

1          I declare under penalty of perjury that the foregoing is true and correct.

2    Dated: Knoxville/Knox County, TN

3          January 26, 2025

4                                                    _____

5                                                    Ryan Williams
                                                     NCAA ECID No. 2005863755
6                                                    PO Box 1638
                                                     Tahoe City, CA 96145

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Carson Wright
10725 W. Central Ave.
Wichita, KS 67212

January 17, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Carson Wright.  I am a current Division I golf athlete and my NCAA ECID number is 2201425903.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                        Sincerely,
                        Carson Wright

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF CARSON WRIGHT

I, Carson Wright, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a 19-year-old freshman and golfer on a Division 1 golf team.  I am a member of the Injunctive Relief Settlement Class.  I object individually and on behalf of the class.

2.      I am on partial athletic and academic scholarships.  I was recruited and signed a National Letter of Intent in 2023, well before the proposed roster limits.

3.      I arrived on campus in late August 2024, feeling nervous but excited to start my journey.  After completing the Fall golf season and spending just eight weeks on campus, my coach informed me and two teammates that, although I had done nothing wrong, I would likely not have a spot on the 2025 roster due to the new roster limits.

4.      I was given the option to enter the transfer portal in December (before it filled up with other golfers in similar situations) or to play through the Spring season and then explore transferring to a new school in Fall 2025 to continue playing competitive golf.  I could also stay at my current school as a non-athlete.

5.      Needless to say, I am heartbroken.  All that I had worked so hard for and was promised to me was taken away in one short meeting.

6.      My National Letter of Intent states that I will receive scholarship money for athletic and academic achievements over four years.  I earned these scholarships from all that I accomplished in the classroom and in golf leading up to college.

7.      Roster limits will take this away from me.  I had no idea my dream of playing Division 1 golf could be stripped from me in an instant, especially since I had done everything

that was asked of me.  I've gone above and beyond what has been expected of me in my short time at the university.

8.    The NCAA advertises itself to be pro-student-athlete.  Please help me, and many others, understand how roster limits help student-athletes.  How are so many student-athletes who have worked so hard to be where they are in their lives now about to be displaced?  Lives are being turned upside down, and it seems as if rules are being changed, with no one being able to fully explain why or make sense of any of it.

9.    My coach told me I was the hardest to deliver the news to since I hadn't done anything wrong.  He said that I was doing everything right.

10.    This was hard to hear.  It's hard to process.  None of it makes any sense.  It feels like a complete betrayal.

11.    I love my current school, my teammates, and my coaches.  I don't want to transfer and start over, but I also don't want to give up playing the sport I truly love and have dedicated myself to.  I don't expect to receive NIL money or any revenue sharing that may come from this settlement.  I never have.  I just want to represent my school by playing the sport I love, get a good education, and continue on the path that was laid out for me during the recruiting process and was promised to me when I signed my National Letter of Intent.

12.    Thousands of student-athletes are going to be negatively affected by this ruling.  So many are hesitant to come forward or sign their name on letters due to any backlash they may face by doing so.

13.    I have been hesitant to put my name on any objection due to the potential negative consequences I might face from my current school or coaches at other schools I may consider transferring to.  However, I feel I need to speak out for myself and for the thousands of other student-athletes that are being forced into this horrible situation by no fault of their own.  The right thing can still be done.

I declare under penalty of perjury that the foregoing is true and correct.

DECLARATION OF CARSON WRIGHT
CASE NO. 4:20-CV-03919-CW

1  Dated: Wichita, Kansas

2    January 17, 2025

              Carson Wright

3               NCAA ECID No. 2201425903

               10725 W. Central Ave.

4               Wichita, KS 67212

Isaac Wright
10725 W. Central Ave
Wichita, KS 67212


January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Isaac Wright.  I am a high school student aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                                 Sincerely,
                                               Isaac Wright

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>Hon. Claudia Wilken |

## DECLARATION OF ISAAC WRIGHT

I, Isaac Wright, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am 17 years old and a junior in high school.  I have been playing golf since I was six years old and hope to compete in college on a Division I team.

2.     I understand that the settlement in this lawsuit will govern NCAA Division I sports for the next decade, which is when I will be in college. I therefore am a class member who could be affected by the terms of the settlement. I object to the settlement for myself and for other class members like me.

3.     I don't know what the future holds for me, but approving roster limits may prevent me and so many others in similar situations an opportunity to do what we love and have dedicated so much of our time and energy on. It could close doors and opportunities that await me. It will hurt the future of golf and keep athletes like me from developing in college.

4.     I oppose the roster limits and ask the Court not to approve them.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Wichita, KS
      January 28, 2025

_____
Isaac Wright
10725 W. Central Avenue
Wichita, KS 67212

1

Stella Wright
10725 W. Central Ave
Wichita, KS 67212


January 28, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Stella Wright.  I am a Junior in high school aspiring to be a future Division I athlete, and a member of the Injunctive Relief Class.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW.  I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                       Sincerely,
                                       Stella Wright

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

8

**<u>DECLARATION OF STELLA WRIGHT</u>**

9      I, Stella Wright, hereby declare as follows pursuant to 28 U.S.C. § 1746:

10      1.      I am 17 years old and a junior in high school. I have been playing golf since I was

11  six years old and hope to compete in college on a Division I team.

12      2.      I understand that the settlement in this lawsuit will govern NCAA Division I

13  sports for the next decade, which is when I will be in college. I therefore am a class member who

14  could be affected by the terms of the settlement. I object to the settlement for myself and for

15  other class members like me.

16      3.      I've been on the varsity golf team since my freshman year of high school. I

17  qualified for state golf both my sophomore and junior years.  I played well enough to advance

18  to the final rounds both years.

19      4.      Golf is in my blood. I have an aunt, an uncle, two cousins and brother who

20  were/are Division I golfers. My brother loves playing collegiate golf.  He loves being part of a

21  team and representing his university. I see what being a member of the team has done for my

22  brother. I want that as part of my college experience, too.

23      5.      I feel being part of a team will provide me a sense of belonging when I move

24  away to college. To be a Division I athlete, the expectations are high on and off the course. I

25  want those high expectations and I have worked hard to meet them. I know that being held

26  accountable and having good discipline are good motivators for me.

27      6.      Colleges have already shown interest in me to play golf for them at the next level.

28  I fear that if the roster limits get passed the opportunity for me to play college golf may be taken

away.

7. Approving roster limits may prevent me and so many others in similar situations an opportunity to do what we love and have dedicated so much of our time and energy on. It could close doors and opportunities that await me. They are unfair to people like me who worked hard to succeed in a system without roster limits, and are now having the rug pulled out under us.

8. I ask the Court not to approve the roster limits.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Wichita, KS
        January 28, 2025

_Stella Wright_
Stella Wright
10725 W. Central Avenue
Wichita, KS 67212

2

Margaret Young
6035 25th Ave NE
Seattle, WA 98115

January 26, 2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

    My name is Margaret Young.  I am a current Division I athlete at the University of Washington and my NCAA ECID number is 2210686997.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class.  I make this objection individually and on behalf of the Injunctive Relief Class.

    I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                      Sincerely,
                                      Margaret Young

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

IN RE COLLEGIATE ATHLETE NIL
LITIGATION

Case No. 4:20-cv-03919-CW

Hon. Claudia Wilken

## DECLARATION OF MARGARET YOUNG

I, Margaret Young, hereby declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a junior at the University of Washington and am a member of the NCAA
Division I women's rowing team.    I am a member of the Injunctive Relief Settlement Class
and object both individually and on behalf of the class.

2.      In high school, I played varsity basketball for three years. I was team captain for
two years, my team's most valuable player senior year, and my league second-team senior year
as well.

3.      I decided to come to the University of Washington for its plethora of academic
opportunities and love for the city of Seattle.  The summer before my freshman year of college,
I moved into the dorms early to take part in an early start program. Competing for
Washington's rowing team was never on the forefront of my mind until Allie Lohrenz, head
novice coach, emailed students about the walk-on program at UW. I was immediately
interested and followed up with her, asking how I could best prepare myself for tryouts. She
replied, asking me if I wanted to come down to the boathouse to meet with her. I made my way
down to Conibear Shellhouse one afternoon. We had a great conversation about the team and
the legacy of walk-ons at the UW. She showed me the champion's room and she pointed to the
wall of Olympic names who rowed for Washington, pointing to the names who had learned the

sport in that shell house.. Our conversation ended with her offering a spot on the team and I ecstatically replied "Yes". I remember feeling over the moon that I have received the opportunity of a lifetime – to learn to row at the University of Washington.

4.     Our head coach Yaz Farooq held a team meeting to inform us of the roster cuts. The room was overtaken with a silent sadness. I looked over at my teammates to see their faces covered in tears. For our team, we pride ourselves on developing as athletes together.  These roster caps would cut our team in half meaning that people who have not gotten enough time to improve would be let go. That means losing half of my teammates. If the roster caps are opposed, our team can remain together and we can stay the big family that we are. We could each keep developing and learning together.

5.     Since the roster caps have been announced, I have felt the sadness take over a part of the team. There is fear among us all about losing the opportunity to compete for the team that we love and losing the experience of rowing with our best friends every day. Rowing brings so much joy and happiness to my life and the thought of that going away makes me feel crushed.  I am worried and scared for myself and others.

6.      If I were cut, my life would not be the same at all. First off, I would lose access to many academic resources like academic advisors, career coaches, tutoring, early class registration, and learning specialists. I would lose access to food supplies such as snacks and meals provided by sports nutrition, increasing the financial burden of buying groceries as a college student. My support staff would be taken away such as therapists and mental health specialists. Above all, I would lose connection with the amazing coaching staff at Washington and the ability to be with all of my teammates every day.

7.     If I am rowing, I want to be a University of Washington. This is where I have not only learned to row but where I have developed as an individual for the last three years. I

don't want to be anywhere else.

8.      Roster limits destroy teams and opportunities for athletes of all experience levels. My team thrives from being a place where people of all backgrounds can come together, , and learn and develop from each other.  As a walk-on athlete at the University of Washington, the opportunity to learn the sport of rowing will not be possible for future athletes like myself with these roster caps in place. I plead with the court to consider the dreams and hopes of athletes that this hearing impacting.

9.      I declare under penalty of perjury that the foregoing is true and correct.

Dated: Seattle, WA

January 26, 2025

Margaret Young
NCAA ECID No. 2210686997
6035 25th Ave NE
Seattle, WA 98115

Jessie Zealand
1388 Old Hickory Lane
Forest, VA 24551

1/20/2025

      Re:    *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW

Dear Judge Wilken:

      My name is Jessie Zealand. I am a current Division I athlete at Liberty University and my NCAA ECID number is 2110337547.  For the reasons stated in my attached declaration, I object to the roster limits in the settlement agreement in *In re College Athlete NIL Litigation*, No. 4:20-cv-03919-CW. I am a member of the Injunctive Relief Class. I make this objection individually and on behalf of the Injunctive Relief Class.

      I designate Steven F. Molo and the firm of MoloLamken LLP to speak on my behalf at the Fairness Hearing on April 7, 2025.

                                       Sincerely,
                                       Jessie Zealand

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

|  |  |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>Hon. Claudia Wilken |

**DECLARATION OF JESSIE ZEALAND**

I, Jessie Zealand, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am a sophomore at Liberty University, and I am a member of the NCAA Division I woman's cross-country track & field team. I am a member of the Injunctive Relief Settlement Class and object both individually and on behalf of the class.

2.    Many hours a week of my high school career were devoted to practicing making the Liberty Track & Field qualification standards to be on the team, which had always been a dream of mine. I practiced every day for at least 5 hours. My Dad and all my uncles had previously been on the team during their time in college and I had always aspired to follow in their footsteps. As a result, I had little to no close friends in my classes and many friends on my team. I never went to parties, took long social trips, or stayed up late to respect my training and prioritize recovery.

3.    I had always wanted to compete for Liberty, and when I got a call one day to officially visit, I informed the other D2 and D3 schools who had recruited me that I was uninterested. I was immediately taken by the healthy team culture and girls who were so welcoming and friendly. They made me feel like I was already on the team with them, like I was family. I had no second thoughts about committing, I already knew. Being on the Liberty Cross Country Track & Field team had been the greatest and most character-shaping time thus far in my life. I was informed about the times I would have to make, but I was already hitting them and steadily improving, so I had no worries about being cut in the future. I was promised 4 years of eligibility by the coaches and in the contract I signed.

1

4.      I had heard of rumors of deep cuts on the team but never actually thought that they would come to pass. I finally came to terms with it when the coaches announced it at Monday's team meeting and explained all the repercussions of the ruling. That was very emotionally difficult for me to go through, as well as all my freshman teammates, who had only been on the team for one semester but had already bonded with teammates and made deep connections that they were in jeopardy of losing. Cuts are expected to come into effect in the fall of 2025, but because of the announcement, many girls from our team have already left, leaving a hole in the team and creating a very sad and anticlimactic end to their time at Liberty and on the team. This was a very morbid day for our team, and you could feel the hopelessness and utter sadness in everyone's eyes as we all attempted not to cry.

5.      Overall, this has been very hard on me and all my teammates. It creates stress, sadness, and depression at practice because those who thought they had three years left now only have one semester. It changes the whole trajectory of my next three years. It is hard to imagine college life without the structure, support, and comradery of my team, which I have grown accustomed to from my first years as a freshman. It fills me with sadness that I will no longer get to see them every day during college, that my time on the team will end abruptly, and that I will not even get to finish with my graduating class and be a celebrated senior on the team.

6.      I lose a lot if I am cut from the team. First, I lost my whole regular daily routine and schedule, up to this point in my life, classes, social events, etc. revolve around practice and racing. It will be quite the adjustment to still be in college but not have that routine that has permeated every aspect of my life for the last three years, not counting high school as well. Second, I lose close contact with all my closest friends. This will be the hardest to go through and the reality that I dread the most. My friends are my lifeline, my encouragement, and many times, my reason for waking up in the morning. They bring meaning and joy to my life. These are friendships that we have cultivated over the last three years and are very hard to let go of. Third, I will lose all of my student-athlete benefits that come with priority registration, academic achievement recognition, tutoring, and academic help that is convenient, being able to eat meals with teammates, go to the training room and recover.

2

**620**

7.      Even if I am cut from the team, I will still stay at Liberty to finish my undergraduate degree because I am already three years into it. My next fall will be very different, I will have to somehow fill my calendar with completely new things and find all new friends.

8.  I respectfully ask the court to consider the negative impact that roster limits can have, not just on groups, but on individuals like me. In my experience, these restrictions often do more harm than good. They create unnecessary barriers that prevent people from reaching their full potential and being part of something meaningful. Roster limits foster an unhealthy competitive environment, where people feel pressured to compete against each other just to stay involved. Instead of encouraging collaboration and growth, it creates stress and discourages those who might already feel like they're on the outside looking in. For someone like me, who values the chance to contribute and improve, this kind of environment can be disheartening. More than that, roster limits take away opportunities. I've seen firsthand how deserving individuals, me included, can be excluded—not because we lack ability or passion, but because of an arbitrary number. These opportunities mean so much more than just a spot on a team or in a group; they represent a chance to grow, to learn, and to feel like you belong. I hope the court understands how deeply this can affect people. Roster limits don't just impact statistics or logistics—they impact lives. I urge you to see the value in allowing more inclusivity and opportunity so that everyone willing to work hard and contribute can have the chance to do so. Thank you for taking the time to hear me out and for considering what this means to people like me.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Forest, VA

January 20, 2025

_Jessie Zealand_
[Name]   JESSIE ZEALAND
NCAA ECID No. 211 0337547
[MailingzAddress]
1388 Old Hickory ln
Forest VA 24551

3