January 29, 2025

Honorable Claudia Wilken
C/O Clerk of the United States District Court
Northern District of California
1301 Clay Street, #400S
Oakland, CA 94612

**FILED**
JAN 31 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Re: In re College Athlete NIL Litigation, Case No. 4:20-cv-03919-CW (N.D. Cal.)

Dear Judge Wilken,

My name is Benjamin Burr-Kirven and I am a former First Team All-American linebacker on the University of Washington's ("UW") football team for whom I played from 2015-2019. Three of my four seasons at UW are covered by the damages class. I submit this letter as an objection to the proposed damages class settlement terms in the above-captioned case. As I will discuss in more detail below, I object to the settlement for two reasons:

1. The means of determining payouts for the damages class is opaque, unclear, and illogical, and has resulted in grossly unfair estimated payouts; and
2. The settlement method creates a "second class" where those who were most harmed by the NCAA rules are not eligible for fair compensation.

I was recruited to UW (then a member of the Pac-12 conference and now a member of the Big Ten conference), to play linebacker on the football team and received a full scholarship. I played for UW's football team starting in the fall of 2015 and ending on New Year's Day 2019. During my sophomore year we won the Pac-12 Conference championship, and were ranked 4th in the country – earning UW a spot at the College Football Semifinal game in Atlanta. I became the starting middle linebacker my junior year, and in my senior year, we won the Conference championship again, and played in the Rose Bowl on New Year's Day 2019.

During my senior year, I received numerous conference and national accolades. In 2018-2019, I was the most decorated player on the UW football team and one of the most decorated football players in the entire Pac-12 conference. For example, I was:

- the #1 tackler in the nation
- awarded the Pat Tillman Pac-12 Conference Defensive Player of the Year
- the Pac-12 Scholar of the Year (the first and only time a football player has received both awards)
- a First Team All-American
- a finalist for the Ronnie Lott Impact Trophy.

After graduating with my degree in Comparative Literature, I was drafted by the Seattle Seahawks in the spring of 2019.

During my tenure at UW, NCAA rules prevented me from capitalizing on what would have likely been millions of dollars in NIL payments for the use of my name, image and likeness. ("NIL"). As a result of my personal success and that of UW's football team, I had a large fan base and was well-known and recognized, not just in Washington State, but throughout Northern California as well. UW featured me in promotional and fundraising materials. Yet, under the then existing NCAA rules, a friend who was an alum couldn't even buy me a hamburger.

My understanding of one of the purposes of the class action lawsuit against the NCAA was to *fairly* compensate college athletes for their lost earnings via 3rd party NIL, video game, and broadcast media rights. I understood from the plaintiff lawyers that former NCAA athletes, such as myself, would be compensated based on their performance/contribution, the sport they played and its contribution, and that a player's accolades and success would be significant factors in determining payouts. I've come to learn this is not true.

The payouts for the damages class are inconsistent, illogical and unfair

On December 17, 2024, when I visited the Settlement Website to see my payout estimate as a result of the proposed settlement, I was beyond shocked. From what little information I have since been able to find out, the payout scheme is illogical, inconsistent, and undecipherable. Comparing myself to players whose relevant football playing years mirror mine, my payout of $57,000 is

- Identical to a defensive teammate at UW, who was a walk-on and rarely played in games.
- Less than another teammate on offense, who received $98,000 and was compensated for Hubbard and Athletic Services, despite the fact we played in the same number of games for UW over the same seasons.
- Less than a player on offense at Washington State University who was awarded $103,000 – who had no personal conference or national accolades and his team did not perform as well as UW in the conference or nationally. (no Rose Bowl, no College Football semi-final)
- Less than a fellow defensive teammate, who received $105,800. He was not a starter for UW, and received no conference or team accolades. His video game payment is 70% higher than mine, his broadcast NIL payment is 62% higher than mine, and he is receiving both Hubbard and Athletic Services payments, despite the fact he played in fewer games than I did, during the same seasons at UW.

The data requested by plaintiffs' attorneys from the University of Washington to determine player payouts did not include information on a player's performance – the key factor that logically would and should drive NIL payments for the damages class. I cannot decipher why performance would not be considered, with the result that I am paid so much less than players on my own team during the same time period.

The damages class payment scheme treats past athletes unfairly

As an NCAA athlete in the era immediately preceding the NIL era, the unfairness to me and those like me, is stark, compared to those players who were lucky enough to receive NIL

payments while they were in school. I engaged in all the same activities, and played just as hard as NIL era athletes. Yet, they are receiving NIL payments and I am not.

One example includes a UW special teams player who graduated in 2022 and was awarded $259,000, including $138,000 for lost 3rd party NIL. It is illogical that a special teams player is being paid nearly 5x the amount of an All-American linebacker, Conference player of the year, and the nation's leading tackler.

The logic is circular. You can only get compensated for lost NIL if you got NIL. Players in my cohort, who were under the thumb of the NCAA rules during their entire tenure, are not able to get compensation for lost 3rd party NIL. My limited research in this area points to Rule 23 of Federal Civil Procedure where "parties seeking approval demonstrate that the proposal treats class members equally relative to each other." If the intent of this settlement is a fair way to right past wrongs by the NCAA – the damages class settlement fails to do that.

When the "average" expected amount was announced, I anticipated that I would receive well-above average due to my exceptional performance as an athlete on UW's football team. In fact, when they announced that the top payout level would be $1.8 million – given my performance in football, I expected I might get about half of that. $57,000 pales in comparison to my contributions to UW's football team. Given the payouts I've seen, my corresponding 3rd party, broadcast NIL, and video game value likely have a fair value closer to $900,000.

The estimated payouts for the damages class are random, inconsistent, and unfair. The methodology is opaque. Relevant information, such as performance, is not even being considered or requested to inform the calculations, and it appears lawyers involved in the case have simply thrown up their hands and said it's too hard to come up with a fair system to compensate former NCAA athletes. But I'm confident there are ways to do it, so that people like me are treated fairly and consistently. This settlement, however, is not it.

I have put my trust and faith into the system and the plaintiff attorneys to represent me and my interests. I understand that this is a large, complicated case and that they have worked hard to get to this point. However, it would be a travesty to see the outcome of this hard work be blatantly illogical and unfair to athletes such as myself.

I would also like to request permission to address the court in person at the hearing on April 7, 2025.

Respectfully,

*[signature]*

Benjamin Burr-Kirven