Gracelyn Laudermilch
209 Crawford Lane
Rome, PA 18837
570-637-4508
gllaudermilch@gmail.com

January 31, 2025

Re: College Athlete NIL Litigation, Case No. 4:20-cv-03919)

To whom it may concern,

My name is Gracelyn Laudermilch, and I am a senior at Northeast Bradford Jr/Sr High School in Rome, Pennsylvania.  I am writing on behalf of the thousands of senior student-athletes unable to make a decision on their college sports career due to the roster limits and constant evolution of the NCAA vs. House Settlement.

I am a cross-country and track athlete planning on running Division 1.  I am a 4-time state medalist, 5-time district IV champion, 3x national qualifier, and school record holder.  I began my college search process early in my freshman year when I began to follow different programs.  During my junior year, I maintained communication with multiple coaches, and at the beginning of my senior year, I visited my potential schools. One of the schools distinguished itself among the rest, and I made the call to commit to the university.  On the phone with the coach, she informed me that three hours earlier, she had been informed that they were opting into the settlement. This was October 31st, 2024.  She advised me against committing and told me that while they wanted me on the team, they would have to cut at least fifteen of the thirty-two girls on the team.  She explained that she was unsure of the times an athlete would need to make the team, and what the selection process would be.  She also explained that this ruling went directly against her philosophy of coaching and her morals as a person.

Track and field and cross country are often forgotten sports, much like gymnastics or wrestling.  It only garners attention from the general public every four years at the Olympics.  Those involved in the sport truly love to better themselves as people and athletes.  Personal development is at the core of Track and Field.  This lawsuit would cause regression in the methods and training of thousands of athletes.  Instead of individualized training focused on progression over time, immediate results would be desired by coaches.  It would be a one-size-fits-all survival of the fittest competition.  Coaches would take their athletes from zero to 100 and if the athlete makes it, great, if they do not, they are off the team.  This philosophy eliminates the potential of athletes who do not thrive in that training.  Parker Valby (runner for New Balance Boston) is an excellent example of this.  During her freshman and sophomore

years, she struggled with multiple injuries. Her coach then switched her to a low-mileage plan with supplemental cross-training. After switching to this program, she broke the NCAA records in the indoor and outdoor 5000, as well as the 10,000. She won six NCAA titles and capped off her collegiate career by qualifying for the Paris Olympics in the 10,000. She placed 11th. She represents a new era of American distance running, where training is fit to what works to that individual athlete. I often think about how there would not have been a Parker Valby if this settlement had been started five years ago. Chances are, at the arrival of her first injury, her career would have been over.

This settlement also hinders the athletes that have slower upward trajectories. Emily Mackay (also a runner for New Balance Boston) is an excellent example of this. She entered college as a prominent runner in New York, yet she was nowhere near the best. The coach at Binghamton University saw a chance to develop a runner with potential. Investing in Emily Mackay led her to the the World Indoor Track Championships where Emily took 3rd, and then she competed in the Olympics. If Emily Mackay was a senior graduating high school this year, she would be in a very similar position to me, wondering if there is a place in Division I athletics for me to reach my potential, whatever that may be.

In addition to these concerns, it seems disrespectful to throw Title IX out the window for this settlement, after all, how are all the NCAA sports, minus football and men's basketball supposed to function on 5% of the funding? This would also have a retrograde effect on womens' sports. The gap has finally begun to be bridged between men and womens sports though 51% of female athletes drop out of sports by the age of seventeen according to Voice in Sport. The gap of girls dropping out of sports is twice what is for teenage boys. The settlement will cause more girls to drop out of sports due to the roster limits.

Another reason to consider is the fact that college sports are meant for the development of athletes. The purpose is to provide athletes with an educational opportunity and facilitate the achievement of their potential. I believe that when college age students begin to receive payment from their unviersity for something that they usually do for the love of the sport, the overjustification effect will cause regression in the athletic realm because athletes will no longer be playing for the love of the sport, but rather their publicity, endorsements, and paycheck. College athletes are not professional athletes. Cutting funding and rosters for our sports like track and field, gymnastics, and swimming hurts the sports that the US excels in at the olympics. 1200 NCAA collegiate athletes (present and former) competed in the 2024 Olympics according to the NCAA. Many of those athletes struggled with adversity that, starting in fall 2025, would have caused them to be cut from their teams and end their careers.

I appreciate the opportunity to share my reasons for concern in this situation.  I would consider it a privilege to be invited to speak at the final approval hearing.  I look forward to hearing your response and possible solutions to the situation.

Sincerely,
Gracelyn Lee Laudermilch

NCAA ID# 2306927455