

Women's Sports Foundation
247 W. 30th St.
5th Floor
New York, NY 10001

National Women's Law Center
1350 I Street NW
Suite 700
Washington, DC 20005

January 31, 2025

RECEIVED
FEB -5 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

The Honorable Claudia Wilken
United States District Court
Northern District of California
Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

Re: House v. NCAA, Case No. 4:20-cv-03919-CW

Dear Judge Wilken,

As organizations concerned about gender equity in sports, we are writing to urge you to more fully scrutinize the impact on women resulting from the proposed settlement agreement in *House v. NCAA*. We are concerned that there is a misrepresentation of Title IX protections contained within the settlement and that calculations for past damages allocations will be assumed permissible for future payments. In order for this settlement to fairly and adequately serve student-athletes, the interest of *all* eligible student-athletes must be equitably respected.

Release of Title IX Claims
The initial filing of *House v. NCAA* noted the historic mistreatment of women athletes, yet women athletes, for whom there is no separate class representation, are expected to receive less than 5% of back pay[1]. At the September 5, 2024 hearing, counsel for both Plaintiffs and Defendants represented to this Court that the settlement would not include a Title IX release. This was confirmed in Plaintiffs' Supplemental Brief: "In further response to the Court's questions and directions, the parties also have amended the Settlement Agreement to expressly provide that the release of claims by class members does not extend to any Fair Labor Standards Act or similar labor law claims, any claims asserted against the Ivy League rule in the Choh litigation, or any Title IX claims."[2] **Nonetheless, the subsequent Amended Settlement Agreement submitted to this Court contradicts these prior statements by releasing all Title IX claims related to payment of *past damages*.** More specifically, as preliminarily approved, the amended settlement agreement lists as unreleased: "Claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., other than any claims arising out of or relating to the distribution of the Gross Settlement Fund."[3]

---

[1] SI.com. (September 5, 2024). Current and former college athletes claim House v. NCAA settlement 'undercompensates female athletes.' Retrieved from: https://www.si.com/college/gonzaga/basketball/current-and-former-college-athletes-claim-house-v-ncaa-settlement-undercompensates-female-athletes-01j71hrwngsn

[2] Plaintiffs' Supplemental Brief in Support of Motion for Preliminary Settlement Approval at 5, House v. NCAA, Case No. 4:20-cv-03919-CW. (Emphasis added.)

[3] Amended Stipulation and Settlement Agreement at 15, House v. NCAA. Case No. 4:20-CV-03919.

## Using Settlement Distributions for Future Payments

We fear that schools, which have historically inequitably allocated resources to men's sports, will continue this pattern by using the allocation of past damages as permission to allocate future payments similarly. In fact, many schools have begun to share their plans on revenue distribution, with some intending to distribute as much as 75% to men's football players and 18% to men's basketball players.[4] This distribution will violate Title IX. In fact, guidance published by the Office for Civil Rights on January 16, 2025[5] states "compensation provided by the school for the use of a student-athlete's NIL constitutes athletic financial assistance under Title IX." And, it further states that financial assistance must be made available to male and female student-athletes in a manner that is substantially proportionate to the number of students of each sex participating in intercollegiate athletics at that school. The intent expressed by many schools to provide at least 90% of the revenue share to male athletes clearly contradicts this guidance. **We ask you to make clear that the allocation of settlement funds should not be used as the default formula for future payments nor presumed compliant with Title IX.**

## Insufficient Representation

Finally, given the absence of separate legal representation for women athletes, we are concerned that women have not received sufficient information regarding their rights to opt-out, object, or submit a claim. The January 31, 2025 deadline for submissions to the court of exclusions and objections, when paired with such momentous consequences, provides a woefully inadequate window during which thousands of women athletes are expected to be notified and informed of the implications of the preliminary *House* settlement terms. Forfeiting the right to submit Title IX claims in exchange for an estimated 5% of past due damages is not only an exorbitant price to pay, but it also highlights the absence of representation for the interests and rights of women athletes.

**The final approval of the settlement must grant *all* student-athletes the academic, athletic, and financial benefits of their endeavors without forfeiting their legal rights. Title IX has created pathways of opportunity for women athletes for over 50 years and those opportunities should not be negated in this settlement. We urge you to only approve a final settlement which contains clear language that no Title IX rights are released and specifies the allocation of settlement funds should not be used as the default formula for future payments nor be presumed to be compliant with Title IX.**

We thank you for your attention to this matter.

Sincerely,

Danette Leighton
CEO, WSF

Neena Chaudhry
Vice President and General Counsel, NWLC

Sarah Axelson
Vice President, Advocacy, WSF

Shiwali Patel
Senior Director of Safe and Inclusive Schools, NWLC

---

[4] Atozsports.com. (December 17, 2024). Texas Athletics' revenue sharing model likely similar to what Texas Tech is planning for Red Raiders' athletes. Retrieved from: https://atozsports.com/college-football/texas-longhorns-news/texas-athletics-revenue-sharing-model-likely-similar-to-what-texas-tech-is-planning-for-red-raiders-athletes/

[5] Fact Sheet: Ensuring Equal Opportunity Based on Sex in School Athletic Programs in the Context of Name, Image, and Likeness (NIL) Activities at 8. United States Department of Education Office for Civil Rights. Retrieved from: https://www.ed.gov/media/document/ocr-factsheet-benefits-student-athletes