

January 30th, 2025

Email: cwpo@cand.uscourts.gov

Honorable Judge Claudia Wilken

c/o Ronald V Dellums Federal Building

& United States Courthouse

1301 Clay Street

Oakland, CA 94612


Activate Sports Management

Peter Boyle

750 S Ash Ave Suite 100

Tempe, AZ 85281

(480)390-1026

peter@activatesportsmanagement.com

*(Representative in NIL matters for the Objectors)*


IN RE: COLLEGE ATHLETE NIL LITIGATION

Case No. 4:20-cv-03919-CW


OBJECTION TO DAMAGES CLASS SETTLEMENT TERMS ON BEHALF OF PAST AND CURRENT NCAA STUDENT ATHLETES AT ARIZONA STATE UNIVERSITY.

# TABLE OF CONTENTS

I. Introduction
II. List of Objectors
III. Argument
   a. Objectors have not been properly educated on the DCS
   b. There is not a proper support channel for athletes to ask questions or fix issues
   c. Schools have not communicated with athletes who have transferred
   d. Objectors who have transferred schools are only seeing numbers from one institution
   e. The compensation website is often down, shows incorrect information, or athletes have log in issues
   f. Damages calculated in the DCS fluctuate with no explanation provided
   g. Damages awarded in the DCS vary from athlete to athlete within the same profile (team, year, scholarship, etc)
   h. Damages awarded in the DCS are not equal to the estimated NIL & BNIL of the Objectors in comparison to student-athletes with less estimated NIL & BNIL value
   i. Damages in the DCS are not equal to potential NIL earnings the athletes could have made through any channel
IV. Conclusion

## I.     INTRODUCTION

Activate Sports Management is an NIL agency founded in Tempe, AZ in 2023. We represent 43 NCAA Division I athletes across 11 varsity sports at five universities. Our client base includes an almost equal number of men's and women's student-athletes, including past and current athletes participating in Football, Men's Basketball, Women's Basketball, Volleyball, Beach Volleyball, Baseball, Softball, Lacrosse, Men's Ice Hockey, Swimming, and Water Polo.

Our aim is to be a "full service" NIL agency, assisting athletes with both sourcing and negotiating business deals, and securing media and marketing opportunities. Since December of 2023, we have secured more than $377,000 (combined cash and FMV in-kind donations) from local business NIL deals. We have also provided our athletes with over 70 media appearances, to include television news, podcasts, radio, print media, and social media.

In addition to our primary objective, we provide educational services and keep our athletes up to date on the rapidly changing landscape of college sports. This obviously includes your preliminary approval of the *House v NCAA* settlement (case 4:20-cv-03919-CW) on October 7th, 2024.

Since your ruling, we have been closely monitoring the situation as schools, collectives, and legal experts react to the potential of both the DCS and IRCS parts of the proposed settlement. A large part of this has been introducing them to the website www.collegeathletecompensation.com where they have been directed by their institutions to go for settlement related questions. As we will lay out in III – Argument A-E, this has been a disaster for all of us to navigate and has proven more harmful than helpful. Athletes are often lacking necessary information such as PIN numbers, and have experienced difficulties with the website.

In addition, as we will lay out in III-Arguments F-H, when anticipated damages in the DCS were released via the website on December 17th, the compensation numbers the Objectors found were non-sensical and lacked any explanation. They often fluctuate and do not seem to be tied into any element of value tied to an athletes Name, Image, or Likeness.

With these issues in mind, the athletes listed below object to the DCS portion of the Settlement in *House v NCAA* case 4:20-cv-03919-CW and request to appear before you at the hearing on April 7th, 2025.

## II. OBJECTORS

For this letter only, this list encompasses the entirety of the Objectors in this case.

Anthony Dowd, Arizona State University, Hockey

Artem Shlaine, Arizona State University, Hockey

Benji Eckerle, Arizona State University, Hockey

Bennett Schimek, Arizona State University, Hockey

Charlie Schoen, Arizona State University , Hockey

Chase Hamm, Arizona State University, Hockey

Cole Gordon, Arizona State University, Hockey

Cole Helm, Arizona State University, Hockey

Cruz Lucius, Arizona State University, Hockey

David Hymovitch, Arizona State University, Hockey

Dylan Jackson, Arizona State University, Hockey

Ethan Szmagaj, Arizona State University, Hockey

Gibson Homer, Arizona State University, Hockey

Jalyn Brown, Arizona State University, Women's Basketball

Kyle Smolen, Arizona State University, Hockey

Lukas Sillinger, Arizona State University, Hockey

Luke Pavicich, Arizona State University, Hockey

Marissa Schuld, Arizona State University, Softball

Noah Beck, Arizona State University, Hockey

Ryan Alexander, Arizona State University, Hockey

Ryan Kirwan, Arizona State University, Hockey

Tony Achille, Arizona State University, Hockey

Tucker Ness, Arizona State University, Hockey

Ty Jackson, Arizona State University, Hockey

Ty Murchison, Arizona State University, Hockey

### III.    ARGUMENTS

A. I began contacting the student-athletes I represent by text message on October 27th, 2024 to notify them of their eligibility as part of the DCS. I contacted 52 student-athletes (past and current clients) to provide a brief explanation of your preliminary approval of the settlement, and to introduce them to www.collegeathletecompensation.com

Of the 52 athletes contacted, 41 were unaware of the existence of the lawsuit, or unaware they were eligible for damages from the DCS portion of your preliminary approval. Three of the Objectors listed in this letter replied, "what is this?". Once I explained further, I was contacted by 21 additional student-athletes at the suggestion of my clients / their teammates. This included prominent student-athletes in "revenue sports" who were completely unaware a potential settlement existed.

The primary reason this objection is being filed near the deadline, is because the Objectors felt they still didn't have any formal education or institutional guidance to make a decision, until being forced to do so by the deadline set forth in the preliminary approval.

Student-athletes I represent at many institutions, including the Objectors, were not provided with any educational material or coaching by their school or the NCAA. While www.collegeathletecompensation.com does have an FAQ section, it is woefully lacking in actual responses – often redirecting the Objectors to another page or a link out. Under the FAQ titled "How do I get more information?" the website redirects the Objectors to a link out page that contains a link to the original website and a phone number for the plaintiff's attorneys.

When the Objectors aren't even aware the DCS exists or applies to them 3 ½ months before they are expected to decide to opt-in or not, there is no way they can be educated enough in time to make

that decision. Therefore, they object to the settlement on these grounds.

B. As expressed above in the example of the www.collegeathletecompensation.com FAQ section, under the question titled "How do I get more information" the only further information provided to the student-athlete is a link to the original website they just left, plus contact information for two attorneys they have never met, and information to contact the court. These are not easy to access means of providing education and support. 18-25 year old's in 2025 are not accustomed to having this level of difficulty in accessing information. They have been raised with chat-bots, live chat options, and the ability to communicate with whomever they want at the touch of a button. To belief "contact a lawyer you've never met" is either a viable option for them, or a scalable solution for the amount of student-athletes eligible for the DCS, is not rational.

To further demonstrate that the support system is not viable, you don't need to look any further than the Objectors who tried the suggested remedies. Over the course of 3 months, multiple calls were placed by the Objectors to the attorneys listed on the FAQ page of www.collegeathletecompensation.com All of those calls went unanswered and unreturned. Additional calls were made by Objectors and other student-athletes to two different attorneys for the plaintiff that were provided by Arizona State University, which also went unanswered and unreturned.

Absent Marissa Schuld, the Objectors in this letter are all in the middle of an academic year and an athletic season. To not provide upfront educational resources AND to not have a viable solution to ask questions or fix issues, puts the student-athlete in an impossible situation to decide on their involvement with the settlement.

In addition to not having an easy to access and native to use platform for the student-athletes to receive education, there is no reasonable recourse to fix issues needed to access the limited information and education that is provided. Over the course of the previous three

months, most of the Objectors have had technical issues or issues related to education that result in a technology failure. By way of example, many of the Objectors who have transferred to Arizona State University after playing Division 1 hockey elsewhere, were unable to locate or never received notifications from one or more of their previous institutions. In addition, many were unable to locate their NCAA enrollment number or PIN to access the limited information the website provides.

Not only does this highlight the lack of education listed in III – Arguments – A, but it shows the lack of a viable support solution for student-athletes when they run into basic technical issues.

When the Objectors are having basic issues logging into a system, finding support, having someone accessible to help them troubleshoot, and experiencing basic technical failures like the repeated crash of the website or repeated failed log-in attempts, they can not possibly ask the questions they need answered in order to opt-in or believe that the settlement should be approved. Therefore, they object to the settlement on these grounds.

C. Many of the Objectors have attended and competed at multiple Division 1 schools during the period outlined in the DCS. Since the value of their Name, Image, and Likeness (including BNIL) aren't tied to a specific school, the entirety of the time they competed as a Division 1 Hockey player and student-athlete which falls within the DCS window, should be considered when calculating their damages.

However, that does not seem to be the case. In many instances the Objectors who fit this profile, did not receive any information from their previous institutions as required. In addition, many attempts to reach out to those institutions went unreturned. In the case one Objector was able to speak to the compliance office of their former institution, they were told to contact the same attorneys listed on www.collegeathletecompensation.com Subsequent phone calls to those attorneys by the Objector went unanswered and unreturned.

When the Objectors receive inadequate or no information from multiple schools and no viable support solution to seek answers to these questions prior to the deadline to opt-in to the settlement, there is simply no way they can know if they are receiving the full value of their name, image, and likeness in the DCS. Therefore, they object to the settlement on these grounds.

**D.** Whether it's because of the technical issues and lack of adequate support channels listed above in III – Arguments – A,B many of the Objectors who fit into the transfer category, either only received the required notification and PIN number from their current institution (Arizona State University) and not from any previous institution as required, but their listed damages pursuant to the DCS are often incongruent with their peers who have not transferred.

In one case, one of the Objectors transferred from a more prominent athletic program with higher attendance, more televised games (BNIL), and a larger fan following, which is proven to lead to more interest in NIL deals with local businesses. However, this Objector's DCS number is less than half of their teammate who did not previously transfer and has been at Arizona State University for their entire collegiate career. How can this be the case if the calculation for the settlement amount received is supposed to factor in the exact NIL and BNIL equations outlined above.

Once again, absent proactive education and a viable support channel, and with lack of information for transfer student-athletes, the Objectors are unable to understand why this would be the case or if their full name, image, and likeness value is being considered. As we will address in III – Arguments – F,G this is a common theme with DCS dollar figures lacking any explanation or common sense. Therefore, they object to the settlement on these grounds.

E. In addition to all of the issues with lack of education and a non-viable support system for the student-athletes, the Objectors have found fundamental technical issues with the website www.collegeathletecompensation.com

Several Objectors have reported the inability to log-in or prompt of an "incorrect username and password" when they are using the same username and password they have previously used to log-in. In addition, several Objectors reported the website "crashing" on them mid-use or freezing during use. These fundamental issues experienced by multiple Objectors further drives them away from being able to access the limited information and support that is provided.

Multiple Objectors have also noticed their expected compensation number change or fluctuate, without them inputting any new data. With multiple technology failures and a lack of support, the Objectors are unable to determine if this is a bug or technical issue, or what factors are causing the amount to fluctuate and often drop seemingly randomly.

Without the ability to consistently and reliably use the website provided for the Objectors, or a path to understand why their compensation number is changing, they are unable to make decisions as it pertains to whether to opt-in or opt-out of the settlement. Therefore, they object to the settlement on these grounds.

F. As mentioned in III – Arguments – E, multiple Objectors have noticed their compensation number either change or decrease randomly at times while checking their amount due in damages on www.collegeathletecompensation.com

In one example, an Objector originally was shown an anticipated DCS number of $1500. One month later upon checking again, the number was $500. No explanation was provided, no new information had been uploaded by the Objector, and phone calls placed to the

plaintiff attorneys seeking clarification went unanswered and unreturned.

In another example, an Objector was originally shown an amount of $12,000 which then increased significantly when they were able to get in contact with their previous school and that information was added. Absent that institution communicating with the Objector (which is often not the case) she would not have been receiving her full value.

Lastly, another Objector was originally shown an amount of $1200, which then went to $1500, and then to $1100. Again, no explanation was provided, no new information had been uploaded by the Objector, and phone calls placed to the plaintiff attorneys (the recommend remedy for questions or problems) went unanswered and unreturned.

With DCS compensation being the core decision making component for this group of Objectors, and their inability to confidently understand what that number will be and if it will stay that way after they decide to opt-in or opt out, they are not armed with all of the information they need to make that decision. Therefore, they object to the settlement on those grounds.

G. Although not all of my clients are Objectors, they have all shared their data with me. Because of the diversity of student-athletes that make up my client base (men, women, revenue sports, non-revenue sports, etc) this gives me a very good window into what estimated DCS compensation looks like for different profiles. For example, a women's basketball player with 4 years in a prominent role at the Division 1 / Power 4 level, should expect somewhere in the range of $55,000. A men's baseball athlete with 1 year of experience at the Division 1 / Power 4 level, with limited exposure or marketing, should expect a number closer to $2500. In section III – Arguments – H we will explore how the numbers the Objectors have been shown compare to the numbers of profiles with significantly less name, image, and likeness value – In this section, I want to explain how the

numbers the Objectors are seeing vary within their own specific profile.

One Objector has played 3 years of Division 1 hockey, in two prominent conferences, and has similar broadcast time (BNIL), similar playing times, similar following, and similar current NIL deals as several other Objectors. One of those Objectors is being shown an anticipated DCS compensation number of $1500, another $1200, and another $750. They don't know why that is, as their representative I can't explain it to them, and they have no way to better understand why other than to contact the court or the plaintiff's attorney. Phone calls made to the attorneys to "find out more" as suggested by www.collegeathletecompensation.com went unanswered and unreturned.

The Objectors are unable to determine why their compensation estimates are different from each other, when they objectively have the same "NIL profile". This makes it impossible for them to know how this is being determined, if it's accurate, and if they are being compensated fairly should they opt-in. Therefore, they object to the settlement on these grounds.

H. The Objectors are no different than any other student-athlete, in that they live with, workout with, hangout with, eat with, study with...each other. In this world of name, image, and likeness, and particularly with the lack of education and support as it relates to the settlement decision they each need to make, this naturally means they talk to each other about what they see and what they hear.

In addition to this, as mentioned above with variety of people I represent including the Objectors listed here, we feel as though we have a very good understanding of the DCS compensation numbers student-athletes of all types are being shown. Simply put, they don't make sense.

We have exhaustively touched on the pain points with education, support, and communication for the Objectors in this letter – however we only made brief mention of the fact that when shown the

DCS compensation number, the athlete is not shown a breakdown of how the panel or system arrived at that number. If the numbers were all the same, for example 3 years at ASU Hockey means you are worth $1500, then it may be easier to understand. However, as I outlined in III – Arguments – G, that is not the case.

Having said that, where it becomes even more confusing for the Objectors, is when they learn what they are being told the DCS compensation will be, versus those who common sense would tell you have less NIL & BNIL value.

For example, many of the Objectors have a number ranging from $500-$1500 as Division 1 hockey players. Arizona State University hockey plays a very high level of hockey, with an average attendance of around 4,500 per game the last several years, or about 115,000 per season (third behind Football and Men's Basketball). There are many season ticket holders, several luxury suites, and NIL merchandise and jerseys are available for sale. In addition, all of their games are broadcast on the radio, and most games are available on the local Fox affiliate in Phoenix.

Water Polo student-athletes have a DCS compensation number ranging from $200-5,000. Water Polo is not a ticketed event at Arizona State University, therefore has a less engaged fan base, and most competitions are not broadcast on radio or television.

It is important to point out here that the argument is NOT that Water Polo student-athletes are being overvalued or do not deserve their rightful compensation – the analogy cited is to point out that there seems to be something off or missing in the way the DCS compensation is being calculated, versus the NIL damages the hockey players sustained during the term.

Absent an understanding of why they are being devalued in comparison to other student-athletes who a common person would deem to have less NIL & BNIL value, and with no viable support system in place to explain the reasoning to them, there is no way the Objectors can reasonably determine if they are being compensated

> fairly should they opt-in. Therefore, they object to the settlement on these grounds.
>
> l. Since these will be public documents, the Objectors have chosen not to go individual by individual and disclose their estimated DCS compensation number. Having said that, upon reviewing the numbers and providing some examples in this letter, I can attest that they are far below what the Objectors could have made in missed NIL opportunities. Therefore, they object to the settlement on those grounds.

## IV. CONCLUSION

My hope is that the stories and information shared in this letter, are insightful to you as you make your decision. I believe we've laid out a series of facts and issues that are likely affecting tens of thousands of athletes not represented in this objection, just as they are the Objectors.

The Objectors have not been properly educated on the settlement. Despite all of my personal efforts to provide them with guidance, the system hasn't been set up in a way that delivers the facts to them in a way they can understand.

There isn't a viable support system in place that can provide reliable, real time "customer service" to the Objectors. Suggesting they go back to the same website they were just on, combined with providing two cell phone numbers for attorneys they've never met, who they can't successfully reach – surely we can't expect them to feel supported by that.

Objectors who have transferred schools, aren't receiving the required information from their previous institution. They only get it from one place and not the others, they don't know if they are missing potential compensation that should be reported. We rightfully expect these institutions to provide all that a student-athlete needs to be successful, why would we not expect the same here.

The website www.collegeathletecompensation.com lacks basic functionality and latency. It often crashes, stalls out, or prompts bad log in responses. It's bad enough that the content inside the site doesn't provide answers, to not even be able to use the basic functionality is troubling.

Compensation numbers on the website often fluctuate. At any given time, an Objector could log in (hopefully) and find their number has been changed with no explanation, and no support system in place to seek one.

Those same numbers differ between Objectors of the same "profile". Again, with no way for them to understand why that is, it's challenging for them to know if they are being fairly compensated under the terms of the settlement. Likewise, they're DCS compensation estimates seem to be inconsistent with how their NIL value is calculated. While equally as deserving, when breaking up the "pie" by class, a common person would not find a Water Polo student-athlete to have higher NIL value than a hockey player.

The primary goal of the Objectors here is to have shared enough of their stories to cause you to take them under real consideration, and NOT approve the settlement on April 7th.

In reviewing all of the factors mentioned in this objection letter, and given that they more than likely apply to tens of thousands of other student-athletes in the Damages Class of the case, we don't believe any other finding can be reached by April.

These Objectors simply want to be armed with the information they need, the time they need to digest it, and someone on the inside to help them through the issues we have outlined have above.

Asking them to make what could be life changing financial and legal decisions absent the same basic things we would want for our kids, just doesn't seem fair. We are already asking them to be the best students, world class athletes, stand up members in their communities, role models for kids, and now businessmen and women if they want to be – all they're asking of us in this case is for some time and a little bit of help. We are asking you to give that to them by rejecting the settlement and forcing the parties to fix these issues.

If all of the eligible members of the Sun Devils Hockey team can be brave enough to stand up together and say "these things need to be fixed before anything gets approved", then I think that warrants a real discussion.

We want to sincerely thank you for your time, and for taking these 25 objections under sincere consideration. We hope you'll allow us the courtesy of appearing in front of you on April 7th, 2025 to continue to make our voices heard on this critically important matter.

Sincerely,

Peter Boyle

Activate Sports Management