January 30, 2025



Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

    Re:    Objection to *House v. NCAA* Settlement Agreement due to (i) Unreasonable Denial of Damages Concerning Division 1 FBS Football Walk Ons

To whom it may concern,    4:20-cv-03919-cW

    My name is Tyler Phillips. My address is 4919 Oaklawn Drive, North Little Rock, Arkansas 72116. My email address is tyler.phillips.nlr@gmail.com. My NCAA ECID number is 1403653568. The formal identification of the case to which this objection relates is *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919. I would appreciate the opportunity to speak personally at the Final Approval Hearing. I am a licensed attorney, but I will not appear at the Final Approval Hearing on anyone else's behalf if I am authorized to speak at such hearing.

    I was a "preferred" walk on football player at the University of Arkansas, and I am a plaintiff with a filed claim concerning *House v. NCAA*. Though I appreciate that attorneys have brought this case on my behalf and though I have trusted throughout this process that my attorneys would reasonably represent the interest of all of their clients to whom they owe a fiduciary duty, I do not appreciate that current and former Division 1 FBS football walk ons (such as myself) are yet again being baselessly excluded from the compensation they deserve. Additionally, it is wrong to include scholarship limits in the general release forced upon all players when (a) scholarship limitations were not an issue that is relevant to any claim raised in the lawsuits related to this settlement and (b) all of the class representatives had full scholarships, meaning they could not have possibly litigated the claims related to scholarship limitations. Therefore, I hereby formally object to the current terms of the *House v. NCAA* settlement agreement for the following reasons:

1) There is **no reason set forth in any of the court documents** concerning this case **that supports the assumption that BNIL payments would not have been given to Division 1 FBS football walk ons**. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments, and any settlement that denies such damages payments to Division 1 FBS football walk ons is unreasonable.

2) BNIL payments to Division 1 FBS football players would not have been limited in quantity or limited to scholarship players. BNIL payments would have been given to Division 1 FBS football walk ons as well. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments.

    a) As was expressly noted by in the *Order Granting Motion for Certification of Damages Classes* issued in connection with this case, Division 1 FBS football players would not "have had to compete with each other for BNIL payments that are limited in quantity." In such order, the court made it clear that this situation

would not be one where "only some (but not all) of the proposed class members would have been able to receive a BNIL payment." In such order, this court also expressed that it understands that "Plaintiffs theory of liability does not require each proposed class member to prove his or her entitlement to BNIL damages in a manner that would necessarily eliminate the recovery of other class members." If that is the case, then all Division 1 FBS football players should be entitled to BNIL damages.

    b) Division 1 FBS football walk ons received the additional benefits that Division 1 FBS football programs were able to provide to their walk ons, especially benefits that were related to marketing and brand exposure. For example, walk ons were provided all of the branded clothing provided by the apparel companies affiliated with the football programs. Additionally, Division 1 FBS football walk ons were provided the same monetary payments and received all other gifts provided to all of the Division 1 FBS football when they would attend bowl games. Other non-marketing related monetary payments were also given to walk ons in the program under the same terms as other players such as travel per diem paid to players when they travel for games. Ultimately, Division 1 FBS football walk ons received the additional non-academic benefits that Division 1 FBS all football programs received the benefits provided to the scholarship players, and the current allocation of BNIL damages is unreasonably out-of-touch with the reality of the provision of non-academic benefits to Division 1 FBS football walk ons.

    c) Dr. Rascher's expert opinion, which is relied upon as the basis for the estimation of damages, provides that "there likely would be other Division 1 football and basketball players who would have received Broadcast NIL payments in the but-for world in which such payments were permitted." Rascher Rep. at 73.

3) There are some Division 1 FBS football walk ons who would have commanded more money as compensation for their name, image, and likeness than some of the Division 1 FBS football scholarship players that are receiving BNIL payments, and there are some Division 1 FBS football walk ons who played in games more and appeared on college football broadcasts more than some of the Division 1 FBS football scholarship players that are receiving BNIL payments. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments.

    a) I was a consensus 3-star recruit coming out of high school with Division 1 FBS scholarship offers for football at smaller Division 1 FBS schools. I was also recruited to be a "preferred" walk on at other big-time football programs such as Florida State, Ohio State, and Oregon. I could've been a Division 1 FBS scholarship player at other schools, but I chose to accept an academic scholarship to play football in my home state in the Southeastern Conference, the highest level of collegiate football. I participated and experienced great success at Nike's "The Opening" before attending college. "The Opening" was an event limited to the top 120-ish football players in the country that Nike wanted to invite to its headquarters in Oregon. Such Nike event was broadcast on ESPN, and I received many benefits from Nike for my participation in the event and my appearance on the broadcast,

despite the fact that I would eventually walk on at the University of Arkansas. I received a lot of publicity for this, and that likely caused my NIL value to be substantially higher than many of the scholarship players that were in my incoming football class at the University of Arkansas and many other scholarship players at other Division 1 FBS football programs. I played in games and earned my letterman after redshirting my freshman year by playing on three (3) different special teams units during that year. There is a scholarship player that was in my incoming football class at the University of Arkansas who played the same position as me, but he never appeared in any games or broadcasts. There is no reasonable explanation that supports the assertion that such person is more entitled than me to receive a BNIL damages payment.

b) Baker Mayfield began his college career as a walk on, but he was the freshman offensive player of the year for his Division 1 FBS conference. He later walked onto a different football program after the school he was at did not award him a scholarship. At that time, he surely would've commanded more compensation for his name, image, and likeness than some of the Division 1 FBS football scholarship players that are receiving BNIL payments. Mr. Mayfield was awarded a scholarship by the 2nd football team that he walked onto as soon as a scholarship came available. Mr. Mayfield then won the Heisman Trophy, the most prestigious award in college football, in 2017 (during the time period at issue in this lawsuit) and was selected as the first pick in the 2018 NFL draft.

4) The court recognized in the *Order Granting Motion for Certification of Damages Classes* issued in connection with this case that there are no Title IX considerations that would limit the amount of BNIL damages that could be paid to Division 1 FBS football walk ons. Therefore, Division FBS football walk ons should receive BNIL damages payments.

5) It is wrong to include scholarship limits in the general release forced upon all players when (a) scholarship limitations were not an issue that is relevant to any claim raised in the lawsuits related to this settlement and (b) all of the class representatives had full scholarships, meaning they could not have possibly litigated the claims related to scholarship limitations. The doctrine of the "identical factual predicate" would almost certainly cause the scholarship limitation portion of the general release to be unenforceable because the facts relevant any action concerning scholarship limitations are not present in this class action. See *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2nd Cir. 1982).

The forgoing assertions summarize the reasons for my objection to the proposed settlement agreement in *House v. NCAA*. I hereby object to the proposed settlement agreement and request to speak at the Final Approval Hearing.

Sincerely,

*Tyler Phillips* (signature)

Tyler Phillips

U.S. POSTAGE PA
FCM LETTER
NORTH LITTLE RO
AR 72114
JAN 31, 2025
$7.47
S2324N506334-5

94612

Retail
RDC 99

CERTIFIED MAIL

9589 0710 5270 1439 2494 32

Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

Tyler Phillips
4919 Oaklawn Drive
N. Little Rock, AR 72116

FSC MIX Envelope FSC® C137131

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

© USPS 2022