

**Judge Wilken**

United States District Court

Northern District of California

January 31, 2025

**Re:** In re: College Athlete NIL Litigation, Case No. 4:20-cv-03919 - CW

**Dear Judge Wilken**

**Objection to the BNIL Settlement Criteria**

My name is Landry Estes, and I am a former football player at Texas A&M University, where I competed from January 2016 to December 2018. I am writing to formally contest the criteria for the damage class regarding the Broadcast NIL (BNIL) portion of the *House v. National Collegiate Athletic Association* settlements, specifically the Football and Men's Basketball Class.

I walked onto the team as a sophomore after competing at the Division II level as a freshman. I remained a walk-on for the entirety of my career, and that fact alone is the reason for my objection today.

My core objection is this: the financial compensation awarded to plaintiffs should not be based solely on scholarship status. As stated above, I was a walk-on for my entire time at Texas A&M. I had little on-field playing time, but this objection is not about personal statistics or highlight reels. It is about the disproportionate sacrifices and contributions of walk-ons—athletes like myself who gave everything to their teams yet are excluded from the compensation we rightfully deserve.

Like many walk-ons, I was not recruited with fanfare. As a high school offensive lineman, I was undersized for my position. I never harbored NFL dreams because I understood my physical limitations. But playing college football was my dream. And was the sole focus of my athletic pursuits my entire young life. Just before signing day in 2014, I received a call from West Texas A&M, offering me a chance to visit. Given the late timing, I expected a walk-on opportunity. Instead, I was offered a half-scholarship, which I immediately accepted.

However, Division II football was not what I envisioned. After one season, I made the difficult choice to step away from athletics and transfer to Texas A&M to focus on my education. Then, I experienced Kyle Field as a student for the first time. The roar of 105,000

fans. The passion of the 12th Man. In that moment, I knew: I had to find out if I was good enough to play at this level. Many walk-ons share this story—a deep-seated desire to prove ourselves, not for money, not for glory, but for the privilege of representing our university.

When I walked on, the coaches made one thing clear: the only way I would make the team was by changing positions to defensive line. I accepted without hesitation. For the next three years, I met every single expectation of a scholarship athlete—every practice, every weightlifting session, every conditioning run, every film session, and every team meeting. I had no scholarship, but I had the same responsibilities. Through relentless effort, I improved enough to earn a spot on the travel roster my senior year—an accomplishment I take immense pride in. Yet, none of this qualifies me for compensation under this settlement.

This lawsuit is rooted in the idea that college football's popularity exploded during our era—and that players should be compensated for the revenue generated, particularly through NIL. But the court's method of determining compensation is fundamentally flawed. A typical Division I football roster has 120 players. Of those, 85 are on full scholarships. 65 are on the travel roster, meaning nearly half the team never steps on the field. Only about 45 players see meaningful playing time. That means that 66% of a football team does not regularly play on Saturdays—scholarship or not. Yet, this settlement ignores that reality and instead rewards scholarship status, not contribution. Many scholarship players I played with had just as little playing time as I did—yet they will receive life-changing compensation, while walk-ons like myself are left with student debt that prevents us from buying homes, supporting our families, or building our futures.

I take nothing away from my scholarship teammates. I celebrate their success. But the undeniable truth is this: scholarship athletes were already financially supported. Their tuition, housing, and meals were covered. Many even left college with money in savings thanks to stipends. Walk-ons, meanwhile, had to pay for the privilege of competing. We worked as hard—if not harder—than many of our scholarship teammates while taking on crippling debt just to stay on the team. Now, this settlement compounds that injustice.

This lawsuit asserts that college athletes of my era would have profited immensely had NIL been allowed. I was never going to sign a multi-million dollar NIL deal—and I never expected to. But could I have earned enough to cover my tuition? Could I have avoided living off student loans just to get by? That is what this lawsuit should be about: compensating those who helped build the sport's value, regardless of scholarship status.

I did not play college football to get rich. I was not an All-American. I was not a star. But I did everything that was asked of me. And now, I—along with thousands of walk-ons

nationwide—am being excluded simply because I was not on scholarship. That is unjust. I am willing to give in-person testimony if it were to help the court in any way.

This settlement presents a historic opportunity to correct a longstanding inequity in college athletics. Now, with your consideration, perhaps the courts can finally right this wrong.

Thank you,

Landry Estes

*[signature]*

Email: Landry.estes@gmail.com

Phone: 817-253-9561

Address: 1917 Thorndyke Ln, Bryan Tx, 77807

ClaimID: 10266213701
PIN: 4183