Cody Markel
1120 N Roxboro St.
Durham, NC 27701

January 31, 2025

The Honorable Claudia Wilken
Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

Re: *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919 – CW

Dear Judge Wilken:

I write to object to the proposed grouping of class members—Preferred Walk-Ons ("PWOs") versus Grant-in Aid scholarship ("GIA") athletes. The class members in this settlement are able to recover partially because of our value added toward television broadcast revenues. Because scholarship is not a fair proxy for broadcast value, the current grouping would violate Federal Rule of Civil Procedure 23(e)(2)'s requirement that the proposal is fair and reasonable. Instead, class recovery should go to every football athlete who played on the broadcasts. We had a class action because we played games earning revenue. We have a settlement because our games earned revenue. Our class's money should be divided in the same spirit.

**Background**

For background, my name is Cody Markel. I am a third-year law student at Duke University School of Law. Vanderbilt recruited me to play football as a part of the 2016 class as a PWO. I had a guaranteed spot on the team, received preferential admission treatment from the university, and—as far as any outside observer could tell—was treated in the same way as any GIA player. I played four years on the football team, which was a NCAA Football Bowl Subdivision ("FBS") team in the Southeastern Conference ("SEC"). The only difference between my experience as a PWO and those with full GIA scholarships was financial: I paid for my own tuition and did not receive the same financial benefit payments from Vanderbilt for food and housing.

On the field, I played in twenty-three career games from 2016 to 2019, including four starts on the offensive side of the ball with three against marquee SEC opponents. These starts do not include the offensive and special teams snaps I played throughout my four years at Vanderbilt. Despite two season-ending injuries, I played an equal or greater number of snaps than many of the GIA players that were in my class. The television broadcasts featured my Name, Image, and Likeness ("NIL") in the same way that the broadcasts featured GIA players and their NIL. PWOs and GIA players spent the exact same time in practice, the weight room, the film room, and the locker room. The academic and eligibility requirements were the same as our GIA teammates. Not to mention I was the first male student-athlete in Vanderbilt history to win the SEC's Brad

Davis Community Service Leader of the Year Award. Just because I was a PWO does not mean I contributed less or made less of an impact on and off the field.

### The Restriction and Utilization of NIL

PWOs play in games—whether on offense, defense, or special teams—broadcasted nationwide. Any PWO's NIL should thus be considered no differently than a GIA player, especially when PWOs may be featured more in games than their GIA counterparts. In the current settlement construction, PWOs suffer greatly—some by over an estimated $100,000 as compared to their GIA teammates—solely because one player, who may have played less in the actual games, received a full scholarship from an institution.

The NCAA and institutions used and restricted the NIL of their PWOs the same way those institutions used and restricted the NIL of their GIA athletes. My junior year, I started a pediatric cancer research non-profit to honor a teammate who passed away from cancer. With the NIL restrictions in place, I was not able to use my NIL during gamedays or over video to raise funds. All while my NIL was benefited off of during games. The NIL of both PWOs and GIA athletes were utilized and restricted the same, and there should be no difference in their treatment now.

### The Current Segmentation is Unfair and Unreasonable

The current segmentation of the class for "Broadcast NIL Payments" is both unfair and unreasonable under FRCP 23(e)(2). Attorneys representing this class seemingly used the simplest method to split the broadcast revenue payments that my teammates and I earned. This is unreasonable because PWOs performed on the broadcasts—sometimes more than their GIA counterparts—where their NIL was exploited without payment. The attorneys for the class requested a significant fee for their work—for that payment, I believe that their calculations and work should be more involved to better represent the interests of all FBS football players.

### Better Avenues are Available

Two better options exist to disperse the "Broadcast NIL Payments." The first is by number of games played. This would be a simple measure because every institution tracks this information. Those who played in the games—whether a PWO or a GIA athlete—should be the ones to receive the greatest share of the broadcast revenue payments because broadcasts used their NIL. The second solution is even simpler. Any player who played in a game in a given year would qualify for the "Broadcast NIL Payments." This, again, would be very easy for the attorneys to determine. It would make sure that any players who played on the field as a part of the television product in any given year would receive payment for the exploitation of their NIL.

### Moving Forward

Dividing payments based on GIA status is a flawed methodology, unfair, and unreasonable. Fair and reasonable alternatives exist—any of which would make this settlement more equitable to the harmed athletes. I would like to speak at the upcoming hearing if my opinions would be of any use to the court. I would be willing to appear in person or over Zoom.

Please contact me if you need any additional information and thank you for considering my letter in opposition to the class split to this settlement.

Sincerely,

Cody Markel
Vanderbilt University Football, 2016–2019
NCAA ECID: 1511342520