January 30, 2025

Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

FILED
FEB 10 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

    Re:    Objection to *House v. NCAA* Settlement Agreement due to (i) Unreasonable Denial of Damages Concerning Division 1 FBS Preferred Football Walk Ons

To whom it may concern,

    My name is Byron Keaton. My address is 2355 Thomas Avenue, Dallas, Texas 75201. My email address is byronkeaton5@rocketmail.com. My NCAA ECID number is 1408806404. The formal identification of the case to which this objection relates is *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919. If I could attend virtually, I would be willing to speak only on my own behalf if necessary (I am a licensed attorney).

    I was a "preferred" walk on football player at the University of Arkansas, and I am a plaintiff with a filed claim concerning *House v. NCAA*. Though I appreciate that attorneys have brought this case on my behalf and though I have trusted throughout this process that my attorneys would reasonably represent the interest of all of their clients to whom they owe a fiduciary duty, I do not appreciate that current and former Division 1 FBS preferred football walk ons (such as myself) are yet again being baselessly excluded from the compensation they deserve. Additionally, it is wrong to include scholarship limits in the general release forced upon all players when (a) scholarship limitations were not an issue that is relevant to any claim raised in the lawsuits related to this settlement and (b) all of the class representatives had full scholarships, meaning they could not have possibly litigated the claims related to scholarship limitations. Therefore, I hereby formally object to the current terms of the *House v. NCAA* settlement agreement for the following reasons:

1) There is **no reason set forth in any of the court documents** concerning this case **that supports the assumption that BNIL payments would not have been given to Division 1 FBS football walk ons**. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments, and any settlement that denies such damages payments to Division 1 FBS football walk ons is unreasonable.

2) BNIL payments to Division 1 FBS football players would not have been limited in quantity or limited to scholarship players. BNIL payments would have been given to Division 1 FBS football preferred walk ons as well. Therefore, Division 1 FBS preferred football walk ons should receive BNIL damages payments.

    a) As was expressly noted by in the *Order Granting Motion for Certification of Damages Classes* issued in connection with this case, Division 1 FBS football players would not "have had to compete with each other for BNIL payments that are limited in quantity." In such order, the court made it clear that this situation

would not be one where "only some (but not all) of the proposed class members would have been able to receive a BNIL payment." In such order, this court also expressed that it understands that "Plaintiffs' theory of liability does not require each proposed class member to prove his or her entitlement to BNIL damages in a manner that would necessarily eliminate the recovery of other class members." If that is the case, then all Division 1 FBS football players should be entitled to BNIL damages.

    b) Division 1 FBS football walk ons received the additional benefits that Division 1 FBS football programs were able to provide to their walk ons, especially benefits that were related to marketing and brand exposure. For example, walk ons were provided all of the branded clothing provided by the apparel companies affiliated with the football programs. Additionally, Division 1 FBS football walk ons were provided the same monetary payments and received all other gifts provided to all the Division 1 FBS football when they would attend bowl games. Other non-marketing related monetary payments were also given to walk ons in the program under the same terms as other players such as travel per diem paid to players when they travel for games. Ultimately, Division 1 FBS football walk ons received the additional non-academic benefits that Division 1 FBS all football programs received the benefits provided to the scholarship players (including injured players), and the current allocation of BNIL damages is unreasonably out-of-touch with the reality of the provision of non-academic benefits to Division 1 FBS football walk ons.

    c) Dr. Rascher's expert opinion, which is relied upon as the basis for the estimation of damages, provides that "there likely would be other Division 1 football and basketball players who would have received Broadcast NIL payments in the but-for world in which such payments were permitted." Rascher Rep. at 73.

3) There are some Division 1 FBS football walk ons who would have commanded more money as compensation for their name, image, and likeness than some of the Division 1 FBS football scholarship players that are receiving BNIL payments, and there are some Division 1 FBS football walk ons who played in more games and appeared on college football broadcasts more than some of the Division 1 FBS football scholarship players that are receiving BNIL payments. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments.

    a) I was a 3-star recruit and number 1 ranked cornerback in Arkansas coming out of high school with a Division I FBS scholarship offers for football at smaller Division I FBS schools. I also received offers from FCS schools and recruited to be a "preferred" walk on at other prestigious programs like Oregon and Texas. I could've been a Division 1 FBS scholarship player at another school, but I chose to accept an academic scholarship to play football in my home state and play in the Southeastern Conference, arguably the highest level of collegiate football. I participated and experienced immense success at several camps throughout my high school career while being offered to play for a high school national football all-star game with NUC and a statewide all-star game. Even though I would

      eventually walk on at the University of Arkansas, by marketing myself to many fans, teammates, and social media users, my NIL value was likely substantially higher than some of the scholarship players in my football class at the University of Arkansas and scholarship players at other Division 1 FBS football programs. I played in at least 12 games my redshirt freshman year and earned my lettermen. I played on three different special teams units and recorded snaps on defense, and I followed up the next year with more snaps on special teams. There are scholarship players from my class that did not record any snaps or appear on broadcasts that are likely set to receive more than me. There is no reasonable explanation that supports the assertion that such person is more entitled than me to receive a BNIL damages payment.

    b) Baker Mayfield began his college career as a walk on, but he was the freshman offensive player of the year for his Division 1 FBS conference. He later walked onto a different football program after the school he was at did not award him a scholarship. At that time, he surely would've commanded more compensation for his name, image, and likeness than some of the Division 1 FBS football scholarship players that are receiving BNIL payments. Mr. Mayfield was awarded a scholarship by the 2nd football team that he walked onto as soon as a scholarship came available. Mr. Mayfield then won the Heisman Trophy, the most prestigious award in college football, in 2017 (during the time period at issue in this lawsuit) and was selected as the first pick in the 2018 NFL draft.

    c) After my redshirt freshman year, I was recognized as Brandon Burlsworth scholar for my exceptional athletic and academic achievement. Similar suited non-athletes received a $5,000 check from the Brandon Burlsworth Foundation. I reached out to the foundation, and they redirected me to the University of Arkansas. Per NCAA compliance rules at the time, I was unable to receive the $5,000 deal because it would be deemed a NIL payment or athletic scholarship at the time. This evidences I was more marketable than the current settlement.

4) The court recognized in the *Order Granting Motion for Certification of Damages Classes* issued in connection with this case that there are no Title IX considerations that would limit the amount of BNIL damages that could be paid to Division 1 FBS football walk ons. Therefore, Division FBS football walk ons should receive BNIL damages payments.

5) It is wrong to include scholarship limits in the general release forced upon all players when (a) scholarship limitations were not an issue that is relevant to any claim raised in the lawsuits related to this settlement and (b) all of the class representatives had full scholarships, meaning they could not have possibly litigated the claims related to scholarship limitations. The doctrine of the "identical factual predicate" would almost certainly cause the scholarship limitation portion of the general release to be unenforceable because the facts relevant any action concerning scholarship limitations are not present in this class action. *See TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2nd Cir. 1982).

The forgoing assertions summarize the reasons for my objection to the proposed settlement agreement in *House v. NCAA*. I hereby object to the proposed settlement agreement and request to speak virtually at the Final Approval Hearing or receive additional compensation comparable to the scholarship players at the University of Arkansas who also lettered.

        Sincerely,

        /s/ Byron T. Keaton
        ByronKeaton5@rocketmail.com