January 30, 2025

**FILED**

FEB 1 0 2025 *km*

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

Re:     Objection to *House v. NCAA* Settlement Agreement due to (i) Unreasonable Denial of Damages Concerning Division 1 FBS Football Walk Ons

To whom it may concern,

My name is Cameron Devon Colbert. My address is 2383 Edison Drive, West Lafayette, IN 47906. My email address is camdcolbert@gmail.com. My NCAA ECID number is 1306351562. The formal identification of the case to which this objection relates is *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919. This letter will serve as voiced concern of the disparity in compensation for scholarship versus "preferred" walk on players. I am currently a Strength & Conditioning coach and will not be able appear at the Final Approval Hearing due to the timing of the hearing and work schedule.

I was a "preferred" walk on football player at the University of Arkansas, and I am a plaintiff with a filed claim concerning *House v. NCAA*. Though I appreciate that attorneys have brought this case on my behalf and though I have trusted throughout this process that my attorneys would reasonably represent the interest of all of their clients to whom they owe a fiduciary duty, I do not appreciate that current and former Division 1 FBS football walk ons (such as myself) are yet again being baselessly excluded from the compensation they deserve. Additionally, it is wrong to include scholarship limits in the general release forced upon all players when (a) scholarship limitations were not an issue that is relevant to any claim raised in the lawsuits related to this settlement and (b) all of the class representatives had full scholarships, meaning they could not have possibly litigated the claims related to scholarship limitations. Therefore, I hereby formally object to the current terms of the *House v. NCAA* settlement agreement for the following reasons:

1) There is **no reason set forth in any of the court documents** concerning this case **that supports the assumption that BNIL payments would not have been given to Division 1 FBS football walk ons**. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments, and any settlement that denies such damages payments to Division 1 FBS football walk ons is unreasonable.

2) BNIL payments to Division 1 FBS football players would not have been limited in quantity or limited to scholarship players. BNIL payments would have been given to Division 1 FBS football walk ons as well. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments.

   a) As was expressly noted by in the *Order Granting Motion for Certification of Damages Classes* issued in connection with this case, Division 1 FBS football

players would not "have had to compete with each other for BNIL payments that are limited in quantity." In such order, the court made it clear that this situation would not be one where "only some (but not all) of the proposed class members would have been able to receive a BNIL payment." In such order, this court also expressed that it understands that "Plaintiffs theory of liability does not require each proposed class member to prove his or her entitlement to BNIL damages in a manner that would necessarily eliminate the recovery of other class members." If that is the case, then all Division 1 FBS football players should be entitled to BNIL damages.

b) Division 1 FBS football walk ons received the additional benefits that Division 1 FBS football programs were able to provide to their walk ons, especially benefits that were related to marketing and brand exposure. For example, walk ons were provided all of the branded clothing provided by the apparel companies affiliated with the football programs. Additionally, Division 1 FBS football walk ons were provided the same monetary payments and received all other gifts provided to all of the Division 1 FBS football when they would attend bowl games. Other non-marketing related monetary payments were also given to walk ons in the program under the same terms as other players such as travel per diem paid to players when they travel for games. Ultimately, Division 1 FBS football walk ons received the additional non-academic benefits that Division 1 FBS all football programs received the benefits provided to the scholarship players, and the current allocation of BNIL damages is unreasonably out-of-touch with the reality of the provision of non-academic benefits to Division 1 FBS football walk ons.

c) Dr. Rascher's expert opinion, which is relied upon as the basis for the estimation of damages, provides that "there likely would be other Division 1 football and basketball players who would have received Broadcast NIL payments in the but-for world in which such payments were permitted." Rascher Rep. at 73.

3) There are some Division 1 FBS football walk ons who would have commanded more money as compensation for their name, image, and likeness than some of the Division 1 FBS football scholarship players that are receiving BNIL payments, and there are some Division 1 FBS football walk ons who played in games more and appeared on college football broadcasts more than some of the Division 1 FBS football scholarship players that are receiving BNIL payments. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments.

a) I was also recruited to be a "preferred" walk on at the University of Arkansas and other football programs as well as scholarship opportunities in some Division 1 FBS schools, but I chose to play football in my home state in the Southeastern Conference, the highest level of collegiate football. After being severely injured in a near-fatal a car accident one-month prior to my high school junior season and had to sit out my whole junior season and part the off-season, I was able to come back my senior season and receive all conference, 57 receptions, 9 touchdowns with 889 yards. Staying close to my hometown of Little Rock, AR, and accepting

the "preferred" walk on spot was the best choice for me after experiencing such a life-changing event.

b) Baker Mayfield began his college career as a walk on, but he was the freshman offensive player of the year for his Division 1 FBS conference. He later walked onto a different football program after the school he was at did not award him a scholarship. At that time, he surely would've commanded more compensation for his name, image, and likeness than some of the Division 1 FBS football scholarship players that are receiving BNIL payments. Mr. Mayfield was awarded a scholarship by the 2nd football team that he walked onto as soon as a scholarship came available. Mr. Mayfield then won the Heisman Trophy, the most prestigious award in college football, in 2017 (during the time period at issue in this lawsuit) and was selected as the first pick in the 2018 NFL draft.

4) The court recognized in the *Order Granting Motion for Certification of Damages Classes* issued in connection with this case that there are no Title IX considerations that would limit the amount of BNIL damages that could be paid to Division 1 FBS football walk ons. Therefore, Division FBS football walk ons should receive BNIL damages payments.

5) It is wrong to include scholarship limits in the general release forced upon all players when (a) scholarship limitations were not an issue that is relevant to any claim raised in the lawsuits related to this settlement and (b) all of the class representatives had full scholarships, meaning they could not have possibly litigated the claims related to scholarship limitations. The doctrine of the "identical factual predicate" would almost certainly cause the scholarship limitation portion of the general release to be unenforceable because the facts relevant any action concerning scholarship limitations are not present in this class action. See *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456 (2nd Cir. 1982).

The forgoing assertions summarize the reasons for my objection to the proposed settlement agreement in *House v. NCAA*. I hereby object to the proposed settlement agreement.

Sincerely,

Cameron Devon Colbert



INDIANAPOLIS IN 460

1 FEB 2025    PM 6 L

FOREVER / USA

RECEIVED

FEB 10 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

RONALD V DELLUMS FEDERAL BUILDING & US COURTHOUSE

C/O CLASS ACTION CLERK

1301 CLAY STREET

OAKLAND, CA 94612

CAMERON D COLBERT
2383 EDISON DR
WEST LAFAYETTE, IN 47906

94612-520001

