January 31, 2025

**DELIVERY VIA U.S. MAIL**
The Honorable Claudia Wilken
United States District Court
Northern District of California
1301 Clay Street
Oakland, CA 94612



Re:   *In re College Athlete NIL Litigation*
      Case No. No. 4:20-cv-03919-CW

Dear Judge Wilken:

I write to you as concerned Parent, a knowledgeable Advocate, and a educated Representative in this Settlement case. I am the Father of two Power Five Division 1 ACC and SEC Football Players being represented in this Damages and Settlement Agreement. I am also a Former Division 1 Football Player who has been advocating for over 15 years for fairer, more equitable treatment of the College Football Players, and for more Expansive and Inclusive Educational, Health, and Economic Benefits that are better aligned with and indicative of the enormous Financial, Athletic Entertainment, and Campus Morale benefits that they bring to their Universities. These College Football Players give and risk the most and disproportionately receives least in every measurable Educational, Health and Financial Benefits category. This letter serves as my formal objection to the proposed Injunctive Relief Settlement and Damages Class Settlement (collectively the "Settlement"). Pursuant to the terms of the Class Action Notice, **my objection to the INJUNCTIVE RELIEF portion of the Settlement** is based on the following reasons:

1. **The Settlement Proposes an Insufficient Class Member Payment**
   The proposed Damages Settlement pool for Defendants' failure to compensate Class Members for use of their Names, Images, and Likenesses ("NIL") does not account for real-world NIL market value projections for the Injunction Class Period. Further, for means of damages settlement calculation, Class Counsel has negotiated a settlement of claims where revenue sharing is subject to the discretion of the NCAA and Division I colleges, payments that should be treated as revenue are excluded, revenue sharing is capped at an estimated $21 million per educational institution, and athlete benefits (*i.e.*, Alston awards, new athletic scholarships, proceeds of third-party arrangements, and other personal benefits) are counted against the damages settlement pool. The total compensation for players remains fixed by agreement. The Proposed Settlement thus leaves in place an agreement among competitors that causes the precise type of harm "to the free market" that the antitrust laws prohibit.

### 2. The Settlement Proposes an Overreaching Injunctive Relief Settlement Term

The proposed Injunctive Relief Settlement seeks to bind future student-athletes to a 10-year settlement term in an NCAA-restricted market, which would hinder them from fairly negotiating a NIL deal with NIL Collectives. Moreover, the Settlements' treatment of future college athletes is also very troubling. Future college athletes have a different interest than current college athletes and many members of the Damages Class Settlement. Yet, the Settlements seek to bind future college athletes to a ten-year contract that they played no role in negotiating. Contrary to the best interests of future college athletes, the Injunctive Relief Class Settlement has united Class Counsel with Defendants in a quest to deny the rights of such athletes by seeking to secure antitrust immunity and preemption of state laws for the NCAA from the United States Congress that conflicts with Class Counsel's obligations. Furthermore, the restriction of NIL Collectives will have the negative effect of reducing earning potential for student-athletes.

### 3. The Settlement Seeks to Eliminate Competition of Collegiate Athletic Recruitment

The NCAA's classification of NIL Collectives as "boosters"—subsequently revised as "Associated Entities or Individuals of a Member Institution"—prohibits NIL Collectives from discussing potential NIL deals with student-athletes until they commit to a particular school to avoid the appearance of impermissible inducements. Allowing the Defendant to continue such conduct, even with a disclosure of NIL arrangements to the education institution, amounts to a violation of federal and state antitrust laws.

### 4. The Settlement Proposes to Earmark Disproportionate Revenue for Collegiate Football and Basketball Programs

I feel that is not fair or equitable to the Football Players whose "Net Positive" Revenue is Calculated the same as the other sports "Net Loss" Revenue. I feel that our Earnings and Financial Contributions are being diluted too many times in this current calculation formula. Football Players generate enormous Positive Revenues during the Regular Season, during the Postseason Bowl Games, and during the College Football Playoffs. I feel that the Football "Net Positive" Revenue will be used to pay for 90% of the $2.8B dollars Damages and 100% of the $210M dollars Decade-long Injunctive Relief amounts. I do not feel that the numbers add up for the Football Players, 70% of $21M annual Injunctive Relief equals roughly $14 million dollars and $14M divided by the $100M-$250M that the Football Players generate annually for their schools equals a net revenue share of roughly 14% at $100M all the way down to 5.6% at $250M of Football Players' generated Revenue. When you compare the Football Players' benefits from their contributed Revenue to the Benefits that the other Athletes, Administrators, and Departments will receive from this same Revenue, the Inequality, Disparity, and continued Exploitation of this Class continues to be a glaring stain on this Antitrust System that continues to Exploit these Impoverished, majority Minority Kids, Families, and Communities. None of these Billions of Dollars get back to the Families and Communities where these young poorly educated, low scoring, highly skilled Football Players are Recruited and Taken from to go hundreds and thousands of miles away to enrich other individuals, families, businesses, and institutions with their already acquired highly skilled 3, 4, and 5 Star Talent.

      This letter also serves as my formal request to speak at the Final Approval Hearing currently scheduled for April 7, 2025.

Thank you for your time and consideration in this matter.

Sincerely,

_____
[PRINT NAME]
NCAA Eligibility Center ID No. [NUMBER]

MikeCline@PostseasonNil.com
561-212-9180
2255 Glades Rd, 205E, Boca Raton, FL 33431

Cc: Counsel of Record
[Students Name]
[Students Address]

William Cornwell
(WHC) Weiss, Handler, Cornwell, P.A.

Michael McDlamry
(PM) Pope, McDlamry, Kilpatrick, Morrison & Norwood, P.C.
3391 Peachtree Rd, 300, Atl, GA 30326

www.PostseasonNIL.com | MikeCline@PostseasonNIL.com
170NE 2nd Street, Boca Raton, FL 33432 PROPERTY OF MIKE CLINE, AAF and PostseasonNIL, ALL RIGHTS RESERVED, 2024

Mike Cline
170 NE 2nd Street
871
Boca Raton, Fl
33432

MIAMI FL 330
3 FEB 2025 PM 2 L

$0.69
US POSTAGE
FIRST-CLASS
063S12346754
33433
000013459

RECEIVED
FEB 10 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

The Honorable
Claudia Wilken
US District Court
Northern District of California
1301 Clay Street
Oakland, CA 94612