

www.imlca.com

Bob Ekstrand
General Counsel
Direct: 919.452.4647

Via Electronic Mail
The Honorable Claudia Wilken
U.S. District Judge
U.S. District Court, Northern District of California
cwpo@cand.uscourts.gov
c/o Office of the Clerk
1301 Clay Street
Oakland, California 94612

Re: *In re College Athlete NIL Litigation*, 4:20-cv-03919-CW
Objections of the Intercollegiate Men's Lacrosse Coaches Association to the Parties' Proposed Stipulation and Settlement Agreement

Dear Judge Wilken:

Pursuant to the court's order (ECF No. 544) granting leave for non-party stakeholders to file objections to the parties' Proposed Stipulation and Settlement Agreement ("SSA" or "Settlement Agreement") in the above-referenced class action, the Intercollegiate Men's Lacrosse Coaches Association ("IMLCA") respectfully submits the enclosed objections to the proposed Settlement Agreement.

Sincerely,

Bob Ekstrand
IMLCA General Counsel

FILED
FEB 13 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE:<br>COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>THE INTERCOLLEGIATE MEN'S LACROSSE COACHES ASSOCIATION'S OBJECTIONS TO CERTAIN TERMS OF THE PROPOSED SETTLEMENT<br><br>Hon. Claudia Wilken |

## The Objectors

The Intercollegiate Men's Lacrosse Coaches Association serves the intercollegiate men's lacrosse coaches and by extension their programs and student-athletes at 447 colleges and universities, including 78 NCAA Division I programs; 77 Division II programs; 245 Division III programs; 47 NAIA programs. All told, these programs involve 1,215 collegiate coaches and 17,977 student-athletes.

## IMLCA's Objections

The IMLCA will tailor its objections to the principles governing the court's consideration and approval of the proposed Settlement Agreement. In that regard, the IMLCA is concerned that the proposed SSA will not "cure the ill effects of the illegal conduct, and assure the public freedom from its

1

continuance," *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950), which a full remedy to the alleged violations following a finding of liability would need to do, *see United States v. Microsoft*, 253 F.3d 34, 103 (D.C. Cir. 2001). The IMLCA believes that the Roster Limit Rule and the NIL Payment Cap fails to meet this standard for the reasons set out below.[1]

### The Roster Limit Rule

However, our member coaches are more concerned about the SSA's proposed "roster limits" across all sports, including men's lacrosse. Under the SSA, Roster Limits will be imposed for all NCAA sports. The first iteration of those limits is set out in Appendix B of the SSA. See ECF No. 450-3, 128-133.

The IMLCA's objection to the SSA's Roster Limits has a legal and normative basis. Legally, the SSA appears to trade one antitrust violation for another: scholarship limits for roster limits. Article 4, Section 1 of the SSA clearly articulates that trade. Namely, in exchange for the elimination of "[a]ll NCAA Division I scholarship limits" the SSA authorizes the NCAA "to adopt Division I roster limits." SSA, ECF No. 450-3 at 68. But that is not all. While the

---

[1] With respect to the NIL Payment Cap, other objectors have addressed the likelihood that the Settlement Agreement's cap on NIL payments may itself be an agreement in restraint of trade. *See, e.g.*, Statement of the United States of America, ECF No. 595 (explaining "the Proposed Settlement allows the NCAA, an adjudicated monopsonist, to continue fixing the amount its member schools can pay students for the use of their name, image, and likeness.") The IMLCA shares the concerns for the reasons discussed in the Statement of the United States of America and other objectors. *See, id.*

2

SSA specifies the roster limits the NCAA member institutions have agreed to adopt for each sport at the outset of the ten-year term of the agreement, "[m]ember Institutions each maintain the right to unilaterally reduce the number of sports, the roster size, and/or the number of athletic scholarships available to student-athletes of any sport" and, likewise, "Conferences each maintain the right to unilaterally reduce . . . the roster limits within their conference. . . ." SSA, art. 4 § 1 ECF 450-3 at 68. As a legal matter, the SSA seeks to remedy the NCAA member institutions' anti-competitive agreement fixing the number of athletic scholarships by removing the restriction altogether. The IMLCA has no objection to that. However, in the same breath, the SSA includes an agreement among NCAA member institutions to limit roster sizes for all sports including men's lacrosse. This Roster Limit Rule appears to be an anti-competitive agreement to limit the number of student-athletes who can participate in a sport for the purpose of limiting the cost of athletic scholarships.

In the class-action settlement context, a court must determine whether a proposed settlement, "taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (citing Fed. R. Civ. P. 23(e)). In so doing, courts consider a variety of factors, including whether the settlement "furthers 'the objectives [of]' . . . and does not 'violate the statute upon which the complaint was based.'" *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990) (quoting *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO*

*C.L.C. v. City of Cleveland*, 478 U.S. 501, 525-26 (1986)). Indeed, the court is required to set aside a settlement if it authorizes "clearly illegal" conduct. *Fraley v. Batman*, 638 Fed. Appx. 594, 597 (9th Cir. 2016). As it stands, the SSA's Roster Limits appear to serve the same anti-competitive function for the NCAA member institutions that the admittedly anti-competitive scholarship limits served, namely an agreement among NCAA member institutions to cap the cost of athletic scholarships. As such, the SSA does not appear to meet the threshold legal requirement that a class-action settlement "does not 'violate the statute upon which the complaint was based.'" *Sierra Club*, 909 F.2d 1350, 1355.

The normative basis for the IMLCA's objections is that the Roster Limits — which have no defined floor — will likely deprive student-athletes of an opportunity to compete at the highest level of competition in their sport, particularly non-revenue sports. In men's lacrosse, this can happen in several ways. First, the roster limit of 48 will require many men's lacrosse programs to cut current student-athletes from their programs immediately. This concern has been raised in objections across all sports, regardless of revenue. See, e.g., Objections of John Weidenbach, Univ. of Michigan (ECF No. 579) (a walk-on member of Michigan's football team who will be removed from the program when the settlement is approved, noting his circumstances will be replicated hundreds of times in Division I football programs); *see also*, Noah Henderson, *New NCAA Roster Limits: The Death of the Walk-On Athlete*, Sports Illustrated, October 30, 2024. ("[L]ost in much of the discourse is a discussion on the implications of the new settlement's roster limits that could impact a

4

significantly greater quantity of collegiate athletes" than will the $22,000,000 annual pool for the payment of student-athletes.)[2]

Historically, the only limitation on NCAA Division I men's lacrosse rosters is the number of scholarship awards, not size. This has enabled NCAA member institutions to provide all of their student-athletes with the talent to compete at the highest level of collegiate lacrosse to do so. The SSA's Roster Limit will prevent NCAA member institutions who "opt-in" from continuing to do so. This will be immediate: current members of NCAA Division I men's lacrosse programs will be removed from the program immediately to meet the 48-man roster limit. Moreover, men's lacrosse programs, like many sports, are funded by tuition and fees paid by its members. Moreover, this revenue stream will be curtailed at a time when the SSA's requirements will place unprecedented pressures on member institutions, creating a significant risk of irreparable damage to hundreds of thousands of collegiate student-athletes and coaches in programs outside of football and basketball, including men's lacrosse.

Although thousands of coaches and student-athletes participating in Division I men's lacrosse and the majority of other collegiate sports are likely to suffer these and other unforeseen harms, they have had no meaningful representation in this litigation or in the negotiation of the proposed SSA or its Roster Limit provisions.

---

[2] *See also*, Objections of Kevin Cunneen, Jr. ECF No. 575 (parent of a student-athlete explains the near-certainty of his son being cut from his SEC program and asks the court to phase-in the roster limit over four years or otherwise protect student-athletes' reliance interest in their agreements with universities).

For that and all of the foregoing reasons, the IMLCA respectfully requests that (i) the court decline to approve the SSA to the extent it includes the Roster Limit Rule; or, in the alternative, (ii) make clear that the court's approval of the SSA does not constitute a judgment of the competitive impact of the Roster Limit Rule or a determination that the Roster Limit Rule complies with the antitrust laws.

Respectfully submitted this 31st day of January 2025, by

/s/ Bob Ekstrand
IMLCA General Counsel
110 Swift Avenue, Second Floor
Durham, North Carolina 27705
(919) 452-4647
rce@ninthstreetlaw.com