FILED

FEB 18 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

In Re: College Athlete NIL Litigation, Case No. 4:20-cv-03919

Dear Judge Wilken,

**Subject: Objection to Settlement – Roster Caps**

We are writing this anonymously because we fear the possibility of retribution against the co-author of this letter, who is a Division 1 student athlete and a member of the class. We hope you understand and appreciate how difficult the situation is for current student athletes who wish to object to the settlement proposed, in part, by the NCAA, which represents the schools for which they compete. Whether it was intentional or not, the threat of roster cuts accompanying this settlement has silenced the voices of a large portion of the class that believes its interests conflict with the interests of the Class Representatives.

We believe that no settlement should be approved that objectively and significantly harms tens of thousands of class members that the settlement purports to protect. Therefore, we object to this settlement because it will impose roster caps that will immediately result in roster cuts and harm tens of thousands of student athletes who will lose the many tangible and intangible benefits of participating in college athletics.

The NCAA estimates that there are roughly 190,000 student athletes participating in Division 1 sports each year. Sports Illustrated has estimated that Division 1 college sports could lose 25,000 roster spots.[1] That would mean that roughly 13% of the class members currently competing on college rosters would be significantly harmed by this settlement. In addition to those who are immediately and unceremoniously cut from their rosters, the fear and uncertainty of potential roster cuts will harm many more athletes impacting their mental health and their athletic and academic performance. Moreover, there are hundreds of thousands of high school athletes whose lives have been disrupted as well.

**Diversity of Interests Among Class Members, Roster Cuts are not Equitable or Inclusive**

The NCAA promotes its commitment to diversity, equity and inclusion. However, they fail to acknowledge that the interests of their athletes are also diverse. Most athletes in the class are satisfied and grateful for their student athlete experience. Only a small percentage of student athletes have complained and only a handful of sports will benefit from the settlement's proposed revenue sharing plans. Furthermore, it was recently reported that only 40,000 out of an estimated 570,000 unique student athletes that are eligible class members have filed a claim for "back pay". That means only 7% of current and former student athletes are making claims.

In order to hand out "back pay" to 7% of former athletes, the settlement will significantly harm 13% of current athletes by imposing roster cuts, which of course is the opposite of equitable or inclusive. It is unclear how the Class Representatives can represent all these diverse interests, when none of them will be eligible to participate in college sports when the settlement takes effect. None of them will have to live with the consequences of their actions. None of them will be cut from a roster.

---

[1] Proposed NCAA Settlement Threatens Non-Revenue Sports: Roster Caps Jeopardize 25,000 D1 Roster Spots

In Re: College Athlete NIL Litigation, Case No. 4:20-cv-03919

**The Class Representatives do not adequately represent the entire class, or even a majority of the class, and, in fact, their interests conflict with a material number of class members.**

The Class Representatives are the "one-percenters" and, factually, they are not typical of the remaining "ninety-nine percent" of athletes in the class

All four Class Representatives are athletes that were (or are) on scholarship. Furthermore, it appears that each of these athletes was awarded very valuable and rare "full scholarships". The NCSA reports that only 1% of Division 1 athletes are on a full scholarship.[2] These elite athletes are literally the "one-percenters", and their college athletic experience differed greatly from the experience of ninety-nine percent of Division 1 college athletes, who compete without any athletic scholarship or receive a partial one.

The named plaintiffs have all exhausted their eligibility, while a significant portion of the class is still eligible to compete in college and harmed by the proposed roster caps.

Each of the class representatives has exhausted their eligibility and completed their college athletic careers or will do so by the time the settlement is finalized. In fact, two of the Class Representatives benefited from at least six (6) years of eligibility and scholarships. These plaintiffs have very divergent interests from those athletes who are on rosters today. Notably, the roster caps proposed in the settlement directly harm a material number of class members and do not impact any of the Class Representatives. Sports Illustrated has estimated that Division 1 college sports could lose 25,000 roster spots.[3]

It seems truly absurd that Class Representatives that voluntarily competed in college for four to six years fully aware of the rules, the burdens, and the benefits of being a student athlete can now claim they were somehow exploited and, as a result, destroy opportunities for tens of thousands of other athletes. Every single Class Representative voluntarily participated in their sport fully understanding the bargain of competing in return for a scholarship, room and board, the best coaches, facilities, trainers, healthcare, etc....

Moreover, every single Class Representative could have "turned pro" earlier than they did to earn money, whether as a professional athlete or on their name, image and likeness. Notably, the lead plaintiff was a college swimmer, which is a sport in which many top athletes do not compete in college, like Michael Phelps, and instead earn money competing and via sponsorships. Instead, the lead plaintiff voluntarily chose to remain in college, presumably because the benefits of the bargain were greater there, where he traded his services as an athlete for tuition, room and board and training with top swimmers and coaching from Bob Bowman, who is considered one of the top coaches in the world.

---

[2] Most student-athletes do not receive a full-ride scholarship—in fact, only 1 percent do. Still, full-ride scholarships are the goal for many athletes, as they typically cover tuition and fees, books, room and board, supplies, and sometimes even living expenses.

[3] Proposed NCAA Settlement Threatens Non-Revenue Sports: Roster Caps Jeopardize 25,000 D1 Roster Spots

In Re: College Athlete NIL Litigation, Case No. 4:20-cv-03919

These Class Representatives received what they were promised. They received compensation in the form of tuition, room and board, nutrition, training and healthcare. The total value of these benefits was far greater than any revenue generated by their activities. Now, after they reaped the rewards of their bargain, they are complaining. And to appease this tiny percentage of class members, the parties plan to disrupt the lives of tens of thousands of other athletes, who voluntarily participate in their sport, are happy with the benefits they receive, and do not feel exploited. As hundreds of thousands of young student athletes participate in college sports, and millions more pursue that dream, the vast majority do not feel exploited. They understand the value of college sports and are happy to compete, whether they are on full scholarship, partial scholarship or like many college athletes, walk-ons.

### Imposing roster caps will create tangible and intangible losses for all athletes, including non-scholarship and walk on athletes.

The NCAA promotes the many "Benefits to College Student-Athletes".  While most people acknowledge scholarships as the single largest benefit to student athletes, there are many more less tangible benefits, which are difficult sot quantify.  The NCAA lists, a college education, the higher rate of academic success for student athletes, the availability of academic support services, medical care, elite training opportunities, healthy living, exposure and experiences, and preparation for life.  The NCAA even cites the Harvard Business Review as evidence that employers are more likely to hire former college athletes because of the lessons learned by student athletes competing in college. Every student athlete cut because of the roster caps imposed by this settlement will lose the benefits and suffer very real losses.

When college sports are coupled with the lessons learned in the classroom, our educational institutions produce talented leaders that are needed to help lift society. These young women and men turn into great leaders and this country needs to perpetuate the development of these leaders rather than to destroy the institutions that produce them.

In the end, we believe that a class action settlement is the wrong venue to try to settle the diverse issues and interests among the class members.  And, the proposed settlement terms clearly harm a larger percentage of class members than it will help.  And no settlement should be approved that harms so many class members.  The roster caps must be rejected.

Thank you for considering this letter.

*Anonymous*



Case No. 4:20-cv-03919-CW

Ronald V. Dellums Federal Building
And United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

RECEIVED
FEB 18 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE