

FILED

FEB 18 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## AMENDED & RESTATED
## OBJECTION TO PROPOSED SETTLEMENT AGREEMENT

February 13, 2025

Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

> Re:    Amended and Restated Objection to *House v. NCAA* Settlement Agreement due to
> the (A) Unfair and Unreasonable Denial of BNIL Damages Payments Concerning
> Division 1 FBS Football Walk Ons, (B) Unfair and Unreasonable Denial of
> Compensation for Athletic Services, and (C) Inadequate Relief Provided

To whom it may concern,

My name is Tyler Phillips. My address is 4919 Oaklawn Drive, North Little Rock, Arkansas 72116. My email address is tylerphillips.works@gmail.com. My NCAA ECID number is 1403653568. The formal identification of the case to which this objection relates is *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919. I would appreciate the opportunity to speak personally at the Final Approval Hearing. I am a licensed attorney, but I will not appear at the Final Approval Hearing on anyone else's behalf if I am authorized to speak at such hearing. Regardless, this amended and restated objection is submitted (i) on behalf of myself and other Division 1 FBS football walk ons that are class members in regard to the BNIL Damages Payments assertions made and also (ii) on behalf of myself and other similarly situated class members in regard to the unreasonable exclusion from compensation for athletic services and inadequate relief provided.

I timely submitted an objection (which was filed of record on February 5, 2025) to the Amended Stipulation and Settlement Agreement filed on September 26th, 2024 concerning *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919 (the "**Settlement Agreement**"). That objection contained inaccuracies because it was based upon an outdating pleading filed in connection with this class action. After reviewing the Third Consolidated Amended Complaint and otherwise becoming more familiar with additional inequities present in the Settlement Agreement and the inadequacy of the scope of the claims for relief set forth in the Third Consolidated Amended Complaint, I realized that there are additional matters within the Settlement Agreement to which I object that should be addressed and that there were inaccuracies in my original objection that should be corrected. Therefore, I hereby amend and restate my previously submitted objection in its entirety to assert the following reasoning for my objection:

I was a "preferred" walk on football player at the University of Arkansas, and I am a plaintiff with a filed claim concerning *In re: College Athlete NIL Litigation*. Though I appreciate that attorneys have brought this case on my behalf and though throughout this process I have trusted that my attorneys would adequately represent the interests of all of their clients to whom they owe a fiduciary duty, I do not appreciate that current and former Division 1 FBS football walk ons (such as myself) are yet again being baselessly excluded from the compensation they deserve.

As further set forth below, I assert that the proposed settlement is unfair, unreasonable, and inadequate and should not be approved by the court because (x) the class representatives and/or class counsel have not adequately represented the classes, (y) the proposed settlement does not treat class members equitably relative to each other, and (z) the relief provided for the class is inadequate. Such considerations are factors that I believe weigh against approval of the Settlement Agreement pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure.

Therefore, I hereby formally object to the current terms of the Settlement Agreement for the following reasons:

(A)    Broadcast Name, Image, and Likeness Damages Payments ("**BNIL Damages Payments**")

1)    There is no reason set forth in any of the court documents concerning this case that supports the assumption that BNIL payments would not have been given to Division 1 FBS football walk ons. Therefore, Division 1 FBS football walk ons should receive BNIL Damages Payments, and any settlement that denies such damages payments to Division 1 FBS football walk ons is unreasonable and inequitable.

2)    BNIL payments to Division 1 FBS football players would not have been limited in quantity or limited to scholarship players. BNIL payments would have been given to Division 1 FBS football walk ons as well. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments.

a)    The compensation for NIL payments related to video games being provided to Division 1 FBS football walk ons shows that the negotiating parties understand that Division 1 FBS football walk ons should have received payments in connection with the use of their name, image, and likeness ("**NIL**") in commercial productions. There is no explanation for why BNIL Damages Payments should not be distributed pro rata among all participating athletes within each sport for each academic year rather than only paying such BNIL Damages Payments to scholarship players. Equal distribution of compensation to all participating athletes within each sport for each academic year has been applied to the distribution of compensation for use of athletes' NIL in commercial productions in the Settlement Agreement in connection to video games, so such method of distribution should likewise be applied to the compensation concerning similar commercial productions, such as nationally televised broadcasts. The inconsistency of the distribution of compensation amongst participating athletes within the same sport and the same

academic year amounts to inequitable treatment of class members relative to each other when sufficient justification for such inconsistency has not been set forth.

b) Division 1 FBS football walk ons received the additional benefits that Division 1 FBS football programs were allowed to provide to their walk ons under NCAA rules, especially benefits that were related to marketing and brand exposure. For example, walk ons were provided all of the branded clothing provided by the apparel companies affiliated with the football programs. Additionally, Division 1 FBS football walk ons were provided the same monetary payments and received all other gifts provided to all of the Division 1 FBS football when they would attend bowl games. Other non-marketing related monetary payments were also given to walk ons in the program under the same terms as other players such as travel per diem paid to players when they travel for games. Ultimately, Division 1 FBS football walk ons received a wide variety of benefits that Division 1 FBS football programs also provided to the scholarship players, and the current allocation of BNIL damages is unreasonably out-of-touch with the reality of the provision of such benefits to Division 1 FBS football walk ons.

c) Dr. Rascher's expert opinion, which is relied upon as the basis for the estimation of damages, supports the assertion that it would be inequitable to only provide BNIL Damages Payments to Division 1 FBS scholarship football players while withholding such payments from Division 1 FBS football walk ons when Dr. Rascher states that "there likely would be other Division 1 football and basketball players who would have received Broadcast NIL payments in the but-for world in which such payments were permitted." Rascher Rep., Docket No. 209-2 at 73.

d) As was expressly noted by the court in the *Order Granting Motion for Certification of Damages Classes* issued in connection with this case, Division 1 FBS football players would not "have had to compete with each other for BNIL payments that are limited in quantity." In such order, the court made it clear that this situation would not be one where "only some (but not all) of the proposed class members would have been able to receive a BNIL payment." In such order, this court also expressed that it understands that "Plaintiff's theory of liability does not require each proposed class member to prove his or her entitlement to BNIL damages in a manner that would necessarily eliminate the recovery of other class members." If that is the case, then all Division 1 FBS football players should be entitled to BNIL damages.

3) There are some Division 1 FBS football walk ons who would have commanded more money as compensation for their NIL than some of the Division 1 FBS football scholarship players that are receiving BNIL payments, and there are some Division 1 FBS football walk ons who played in games more and appeared on college football broadcasts more than some of the Division 1 FBS football scholarship players that are receiving BNIL payments. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments.

a) I was a consensus 3-star recruit coming out of high school with Division 1 FBS scholarship offers for football at smaller Division 1 FBS schools. I was also

recruited to be a "preferred" walk on at other big-time football programs such as Florida State, Ohio State, and Oregon. I could've been a Division 1 FBS scholarship player at other schools, but I chose to accept an academic scholarship to play football in my home state in the Southeastern Conference, the highest level of collegiate football. I participated and experienced great success at Nike's "The Opening" before attending college, finishing 3rd in the nation in Nike's national SPARQ combine and starting on the team that won the 7-on-7 championship at the Opening. "The Opening" was an event limited to the top 120-ish football players in the country that Nike wanted to invite to its headquarters in Oregon. Such Nike event was broadcast on ESPN, and I received many benefits from Nike for my participation in the event and my appearance on the broadcast, regardless of the fact that I would eventually walk on to play football at the University of Arkansas. I received a lot of publicity for my appearance and performance at The Opening, and that appearance and performance likely caused my NIL value to be substantially higher than many of the scholarship players that were in my incoming football class at the University of Arkansas and many other scholarship players at other Division 1 FBS football programs. I played in games and earned my letterman after redshirting my freshman year by playing on three different special teams units during that year. There is a scholarship player that was in my incoming football class at the University of Arkansas who played the same position as me, but he never appeared in any games or broadcasts. There is no reasonable explanation that supports the assertion that such person is more entitled than me to receive a BNIL Damages Payment.

   b) Baker Mayfield began his college career as a walk on, but he was the freshman offensive player of the year for his Power-5 Division 1 FBS conference. He later walked onto a different football program after the school he was at did not award him a scholarship. At that time, he surely would've commanded more compensation for his NIL as a walk on than almost all of the Division 1 FBS football scholarship players that are receiving BNIL payments. In the end, Mr. Mayfield won the Heisman Trophy, the most prestigious award in college football, in 2017 (during the time period at issue in this lawsuit) and was selected as the first pick in the 2018 NFL draft. Mr. Mayfield is an example that shows a person's scholarship status is not representative of their impact to their team or the value they contribute to a broadcast.

4) The court recognized in the *Order Granting Motion for Certification of Damages Classes* issued in connection with this case that there are no Title IX considerations that would limit the amount of BNIL damages that could be paid to Division 1 FBS football walk ons. Therefore, Division 1 FBS football walk ons should receive BNIL damages payments.

(B)    Compensation for Athletic Services

       The compensation for athletic services set forth in the Settlement Agreement is inadequate because 1) class members such as myself who were participating athletes prior to the 2019-2020 academic year should receive compensation for athletic services and 2) class members such as myself who were participating athletes but while participating were denied grant-in-aid and other

compensation provided to exclusively to scholarship athletes due to the unlawful scholarship limitations should receive the compensation for which we were wrongfully denied such as grant-in-aid compensation, medical benefits, and such other compensation that was provided to the athletes on scholarship, which types of compensation are identified in Section 5.1 of the *Declaration of Daniel A. Rascher* dated July 26, 2024.

1) The claims regarding compensation for athletic services should be available to those class members such as myself who were participating athletes prior to the 2019-2020 academic year, and a fourth consolidated amended complaint should be filed that corrects the unnecessarily restriction that limits the claims concerning compensation for athletic services to athletes participating from the 2019-2020 academic year to present. The relation back doctrine is applicable to claims concerning compensation for athletic services for athletes such as myself who participated during the academic years at issue in this class action lawsuit prior to the 2019-2020 academic year.

   a) Though (i) the claims concerning compensation for athletic services were not raised in the original pleading that initiated this class action lawsuit and (ii) the statute of limitations would've expired regarding those claims concerning student athletes who participated prior to the 2019-2020 academic year if such person attempted to independently initiate litigation asserting such claims without the application of any tolling that might be available, "an amendment to a pleading relates back to the date of the original pleading when… the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure. In other words, "[a]n otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1006 (9th Cir. 2014). "Under Rule 15(c)'s liberal standard, a plaintiff need only plead the general conduct, transaction, or occurrence to preserve its claims against a defendant." *Id.*

   b) The general conduct and occurrence plead in the original pleading that initiated this class action lawsuit was the promulgation and enforcement of restrictions set forth by the NCAA in its bylaws that amount to an illegal restraint on trade. The NCAA's conduct was the same concerning the restrictions related to compensation for athletic services during the academic years at issue in this class action lawsuit prior to the 2019-2020 academic year as it was from the 2019-2020 academic year to present. The court has already similarly determined that the claims concerning compensation for athletic services are reasonably related to the conduct at issue in the original pleading, as evidenced by its Related Case Order filed on December 15, 2023.

   c) Therefore, the Third Consolidated Amended Complaint should have sought compensation for athletic services for all class members because the relation back doctrine set forth in Rule 15 of the Federal Rules of Civil Procedure allows such claims to be sought even if the statute of limitations applicable to such claims may have otherwise expired. The class counsel's unnecessary time-related limitation on the claims concerning compensation for athletic services set forth in the Third

Consolidated Amended Complaint is evidence that (i) the class counsel has not adequately represented the classes in connection with such pleading or the Settlement Agreement negotiated in connection such pleading and (ii) the Settlement Agreement does not treat class members equitably relative to each other by denying compensation for athletic services to class members who might otherwise receive such compensation if their claims had been properly plead and negotiated.

d) Considering the reasoning set forth above, the NCAA and the other defendants would not be unduly prejudiced by the relation back doctrine in this instance because "once litigation has been commenced, an opposing party is on notice that the pleading party may subsequently raise any claims or defenses that form part of the same conduct, transaction or occurrence as the original pleading." *Id.* at 1005. Additionally, the parties have already known almost all of the information (and can readily access most other information) necessary to properly address compensation for athletic services for athletes such as myself who participated during the academic years at issue in this class action lawsuit prior to the 2019-2020 academic year to the extent it is address for other class members. Also, it is equitable to relate the claims back to the original pleading because the NCAA is (i) enjoying the benefits of the efficiency of combining all of the claims at issue in this class action and (ii) receiving the benefits of being released from claims relating to compensation for athletic services from all class members.

2) The Settlement Agreement does not treat class members equitably in relation to each other and the class counsel has not adequately represented all class members in regard to compensation for athletic services because class members such as myself who were participating athletes but while participating were denied grant-in-aid and other compensation provided to scholarship athletes due to the unlawful scholarship limitations should receive the compensation for which we were wrongfully denied such as grant-in-aid compensation, medical benefits, and such other compensation that was provided to the athletes on scholarship, which types of compensation are identified in Section 5.1 of the *Declaration of Daniel A. Rascher* dated July 26, 2024 (collectively, the "**Standard Compensation**").

a) The denial of compensation for athletic services due to the unlawful scholarship limitations is a claim for which relief is sought in the pleadings preceding this Settlement Agreement.

b) The *Declaration of Daniel A. Rascher* dated July 26, 2024 states that the Standard Compensation is the primary means by which athletes have been and will be compensated for their athletic services.

c) The estimation of potential damages arising from claims related to compensation for athletic services in such declaration accounts for the Standard Compensation that was paid to the athletes that were on full scholarship by deducting such amounts from the estimated total that such athletes would have received as compensation for their athletic services if such compensation was not unlawfully

withheld. The difference that was calculated is then used as the basis for compensation for athletic services. While this method is reasonable for calculating the estimated compensation for athletic services in addition to the Standard Compensation (the "**Adjusted Compensation**"), the *Declaration of Daniel A. Rascher* dated July 26, 2024 does not even consider (i) damages arising from claims related to the unlawful scholarship limitations imposed by the NCAA or (ii) compensation to class members related thereto.

d) A substantial portion of class members did not receive either (i) any portion of the Standard Compensation or (ii) the full benefit of the Standard Compensation.

e) The Settlement Agreement neglects any remedy concerning the unlawful denial of the full benefits of the Standard Compensation for participating athletes that did not receive the full benefits of the Standard Compensation during the academic years at issue. Therefore, the allocation of compensation for athletic services set forth in the Settlement Agreement does not treat class members equitably in relation to each other, and the class counsel has not adequately represented all class members in regard to compensation for athletic services.

(C)    Inadequate Relief Provided

The total settlement amount, particularly the Additional Compensation Claims Settlement Amount (as defined in the Settlement Agreement), is inadequate because the estimations upon which such settlement amount was based did not address damages arising from or compensation related to (1) claims concerning compensation for athletic services for athletes such as myself who participated during the academic years at issue in this class action lawsuit prior to the 2019-2020 academic year and (2) claims concerning scholarship limitations for those class members who did not receive either (i) any portion of the Standard Compensation or (ii) the full benefit of the Standard Compensation.

**Conclusion**

Though I appreciate that attorneys have brought this case on my behalf and though throughout this process I have trusted that my attorneys would adequately represent the interests of all of their clients to whom they owe a fiduciary duty, I do not appreciate that the Settlement Agreement (A) unfairly and unreasonably denies BNIL Damages Payments to Division 1 FBS Football walk ons, (B) unfairly and unreasonably denies compensation for athletic services to certain class members as set forth above, and (C) provides inadequate relief as set forth above.

The forgoing assertions summarize the reasons for my objection to the Settlement Agreement in *In re: College Athlete NIL Litigation*. I hereby object to the proposed settlement agreement and request to speak at the Final Approval Hearing.

Sincerely,

Tyler Phillips

Tyler Phillips

Tyler Phillips
4919 Oaklawn Drive,
N. Little Rock, Arkansas 72116

9589 0710 5270 1830 3037 26



RDC 99

94612

U.S. POSTAGE
FCM LETTER
FAYETTEVILL
FEB 13, 2025

**$9.96**

S2324K500439

Ronald V. Dellums Federal Building
& U.S. Courthouse
1301 Clay Street
Oakland, CA 94612

9461235200  C037

CERTIFIED MAIL

AID

AR 72703

9