# Buchalter

1624 Market Street
Suite 400
Denver, CO 80202
303.253.6740 Phone

303.927.3028 Direct
ddepeppe@buchalter.com

303.253.6760 Direct
rhinckley@buchalter.com

February 20, 2025

Ronald V. Dellums Federal Building
& United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA  94612

      Re:    College Athletes NIL Litigation (No. 4:20V-03919 (N.D. Cal)

Dear Judge Wilken:

      We write to you anew, having previously submitted an objection on behalf of class members (Dkt. 655), to call upon the Court to enjoin the NCAA from taking any action related to the proposed settlement unless and until the court approves it. Through this letter, we alert the Court that the NCAA has recently informed all Division I schools that they have a deadline of March 1, 2025 to declare whether they will opt in to the proposed settlement and commit to all of its terms—including roster limits—even though the settlement has yet to obtain final approval. In our view, the NCAA's action is improper and should be enjoined. On information and belief, Division I schools are already cutting athletes in advance of this new, artificial March 1 deadline.

      The NCAA's premature attempt at a *fait accompli* is causing new harm. Some of our clients, and likely thousands of other roster limit-impacted athletes, enrolled this spring semester with the expectation of having an opportunity to prove their merit to earn a roster spot before the announced April 7th settlement decision by this Court. However, the NCAA's preemptive action has effectively and unfairly accelerated the roster cut date to March 1st.

      Requiring schools to opt in to roster limits before the Court has even ruled on the many filed objections is putting the proverbial cart before the horse and places athletes at an even greater risk of being cut from their teams before the settlement has been approved. Once these athletes are cut from their teams, the harm is irreparable. Thus, we respectfully request that the Court order an immediate injunction pursuant to the All Writs Act and F.R.C.P 23(d) to prevent the NCAA from imposing its unilateral March 1, 2025 deadline on schools until the Court has an opportunity on April 7th to rule on the objections to the proposed settlement and either grants or denies final approval.

buchalter.com

Los Angeles
Denver
Napa Valley
Orange County
Portland
Sacramento
Salt Lake City
San Diego
San Francisco
Scottsdale
Seattle

**Buchalter**

Ronald V. Dellums Federal Building
& United States Courthouse
February 20, 2025
Page 2
_____

I.      **Relevant Background**

As the Court is aware, a hearing is set for April 7, 2025 to determine whether the proposed settlement should be granted final approval. To date, numerous class members have objected to roster limits arguing *inter alia* that roster limits harm class members and create irreconcilable intra-class conflicts ("the unrepresented sub-class"). For example, in addition to our objection and those of many others, the MoloLamken firm submitted objections to roster limits on behalf of 159 athletes, all of whom submitted affidavits detailing the concrete harm they have suffered or are expected to suffer due to the settlement's proposed roster limits. *See, e.*g., Dkt. 628-3, 628-5. There are likely many more athletes who are or could be harmed by the imposition of roster limits but did not object for various reasons including fear of retribution and lack of information from the NCAA. *See* Dkt. 655 at 3. Notably, that intra-class conflicts have been highlighted in the numerous objections signifies that their distinct interests have not been fairly and adequately represented.[1]

Notwithstanding the numerous objections from members of the unrepresented sub-class, on or around February 12, 2025, the NCAA sent a memorandum to Division I schools notifying them of a March 1, 2025 deadline to declare whether they will opt in to the proposed settlement including all of its terms. *See* Ex. A. Indeed, the NCAA published guidance stating that "Schools must notify the NCAA it will opt in by March 1" and that by opting in, "your school is bound by new roster sizes." *See* Ex. B. Respectfully, March 1, 2025 is a curious deadline to require schools to opt in since it is well before the April 7, 2025 hearing date and the NCAA's March 3, 2025 deadline to file a motion for final approval and respond to the numerous objections to roster limits. We do not believe the timing here is unintentional.

II.     **This Court Should Enjoin the NCAA From Requesting Any School to Declare Its Intent to Opt In to a Settlement That Has Not Been Approved and That Could Harm Class Members**

It is improper for the NCAA to require schools to declare their intent to opt in to the proposed settlement before this Court has ruled on the objections to roster limits and either granted or denied final approval of the settlement. The NCAA's actions are creating an even greater risk that class members will be prematurely cut from their teams. Critically, once a class member is cut from their team, the chance of returning back to the team if roster limits are overruled is highly unlikely.

Thus, the Court should exercise its authority under the All Writs Act and F.R.C.P. 23(d) to enjoin the NCAA's conduct until the objections are ruled upon and the Court either grants or denies final approval. The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who (though not parties to the original action or engaged in wrongdoing) are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co*., 434 U.S. 159, 160 (1977). Even before a federal judgment

---

[1] Notably, no athlete, even those facing roster cuts, is permitted to opt out of the Injunctive Relief Class. Hence, the unrepresented sub-class would be bound by the proposed settlement even if harmed.

# Buchalter

Ronald V. Dellums Federal Building
& United States Courthouse
February 20, 2025
Page 3

___

is reached, the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985).[2]

      Here, the NCAA is peremptorily acting without final approval of the settlement thereby frustrating the proper administration of justice—i.e., the Court's ability to properly consider and rule upon all the objections to the proposed settlement—and undermining the integrity of the final approval process. Importantly, as mentioned above, the March 1, 2025 deadline is before the NCAA's March 3, 2025 deadline to file a motion for final approval and provide responses to all objections. By imposing a deadline on schools to commit to the settlement before the March 3, 2025 response deadline, the NCAA has not only ignored the hundreds of objections filed against roster limits but is acting as if no objections were raised at all. Meanwhile, any class members who are cut due to the NCAA's conduct will have experienced the very irreparable harm they complained of in their objections without *any* administration of justice. An injunction is therefore necessary to prevent harm to class members until the Court has ruled on the proposed settlement.

      We thank the Court for its time and consideration of this important issue. We welcome the opportunity to further brief this issue if the Court so desires. If further briefing is requested, we ask that the Court issue a temporary injunction and/or stay in the interim so as to prevent any harm to class members caused by the NCAA's unilateral March 1, 2025 deadline.

      Sincerely,

      BUCHALTER
      A Professional Corporation

      Douglas M. DePeppe

      BUCHALTER
      A Professional Corporation

      Robert B. Hinckley, Jr.

DMD:mt

---

[2] Indeed, in a particularly speedy action, a court issued an injunction <u>in one day</u> to preserve its role in a complex class action when ancillary legal actions threatened the court's role in the settlement. *See In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 300 n.2 (8th Cir. 1995).

To: Division I CCA, Presidents/Chancellors, Directors of Athletics, Faculty Athletics Representatives, Senior Woman Administrators, Senior Compliance Administrators, and Commissioners of a single-sport conference with Division I members.

The deadline for schools to declare their intent to provide benefits consistent with the proposed *House* settlement during the 2025-26 academic year is March 1.

This email includes information on the following:

- Process for submitting a school's intent, by March 1, to provide settlement-related benefits pending court final approval;

- Educational resources on the impact of the proposed settlement on Division I schools; and

- A summary of the Implementation Committee's work to date.

**Process for Submitting a School's Intent.**
Later today, Directors of Athletics at every NCAA Division I and multidivisional school with a Division I sport will receive a unique survey link requesting their school declare its intent to provide such benefits.

Each school outside the defendant conferences (ACC, Big Ten, Big XII, Pac-12, SEC) should respond to the survey regardless of its intent. If your school is a member of the defendant conferences, its intent to provide settlement-related benefits pending court final approval will be assumed and it does not need to declare the school's intent.

The sole question in the survey is as follows:

**Does your institution intend to deliver additional benefits to student-athletes pursuant to the proposed settlement in the House litigation during the 2025-26 academic year?**

Here are a few notes for consideration:

- While Directors of Athletics are responsible for submitting the declarations, this communication explaining the declaration process and implications of opting in is being sent to a broader audience for transparency purposes.

- The link is unique to each school and should not be shared outside the school. Only one response per school will be accepted.

- LBi, the vendor chosen to manage the monitoring of cap benefits, will provide additional details on the mechanics of using the web-based platform in the coming weeks.  Similarly, Deloitte, the vendor chosen to manage the NIL Clearinghouse, will provide additional information in the coming weeks.

- Division II and Division III schools that sponsor a Division I sport may opt in for the Division I sport.  If the Division I sport chooses to opt in, requirements related to opting in apply only to the relevant Division I sport.

*NCAA Division I Educational Resource*

# House Settlement: Opting In



## APPLIES TO ALL DIVISION I SCHOOLS

1. Division I schools are permitted but not required to provide new benefits (e.g., direct name, image and likeness (NIL) payments, scholarships above limits permitted in the 2024-25 Division I manual) to student-athletes made available through the settlement. For schools that opt in, each school may determine the level of benefits to provide up to the limit set forth in the settlement.

2. General release of legal claims by student-athletes against NCAA, conferences and Division I schools.

3. All scholarships will be converted to equivalencies and for all schools that opt in, NCAA Division I scholarship limits will be eliminated.

4. All student-athletes must report third-party NIL deals worth $600 or over.



## STEP ONE: DETERMINE WHETHER YOUR SCHOOL OPTS IN*

Does your school plan to provide payments or additional scholarships made available through the settlement?



**YES** ⇔ **NO**

**Your school is opting in.**

In this scenario, your school is bound by new roster sizes and should determine which benefits it will provide to student-athletes. Continue to step two.

*Schools must notify the NCAA it will opt in by March 1 of each year, beginning March 1, 2025.

**NO side:**
- Your school will not provide direct NIL payments to any student-athletes.
- Your school will not exceed current Division I scholarship limits in any sport outlined in the Division I 2024-25 rules manual.
- Your school may provide Alston payments up to $5980 per student-athlete.

## STEP TWO: PROVIDING BENEFITS

Determine the level of benefits your school provides to student-athletes.



### Examples of opting in

| | | |
|---|---|---|
| Your school provides educational incentives and graduation bonuses to student-athletes in addition to existing Alston payments capped at $5980. | Your school does not provide any additional benefits or scholarships but wants the flexibility to provide additional benefits or scholarships during an academic year. | Your school exceeds the equivalency maximum in any sport in the Division I 2024-25 rules manual. |
| | | Your school provides direct NIL payments to student-athletes. |

*If your school plans to provide direct NIL payments to student-athletes or your school exceeds current equivalency maximums, your school is opting in.*


*QR code to the comprehensive question-and-answer document for schools.*

**ACADEMIC AND MEMBERSHIP AFFAIRS**

NCAA is a trademark of the National Collegiate Athletic Association. Winter 2025.