Hon. Claudia A. Wilken
Ronald V. Dellums Federal Building
& United States Courthouse
C/O Class Action Clerk
1301 Clay Street
Oakland, CA 94612



FILED

FEB 07 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

Re: OBJECTION TO SETTLEMENT

IN RE: COLLEGE ATHLETE NIL LITIGATION, CASE NO 4:20-CV-03919 & HUBBARD V. NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, ET. AL., CASE NO. 4:23-CV-01593

January 28, 2025

To the Honorable Claudia A Wilken:

My name is Michael Mastrodicasa. I am a preferred walk-on football player with the Baylor University Football Team ("Baylor"), a Division I, FBS football team. I have been a member of the Baylor football team since June of 2021. I am writing to formally contest the criteria for the damage class regarding the House v. National Collegiate Athletic Association ("NCAA") settlement, specifically the Football and Men's Basketball Class. Additionally, I am writing to contest the criteria used for the damage class regarding the Hubbard v. NCAA case. I write to you not only for myself, but on behalf of the many other FBS walk-on football players that actively participated in games each week of the football season, those that actively built their individual Name Image and Likeness (NIL) brand, those that helped increase the prominence and marketability of their respective FBS football team through broadcast media, social media, press releases, and other venues, and those athletes that achieved significant academic achievements.

**With regard to the NIL litigation, the definition of the Football and Men's Basketball Class is as follows:**

"All current and former college athletes who have received full Grant-in-Aid (GIA) scholarships and compete on, or competed on, a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), at any time between June 15, 2016, and the date of the class certification order in this matter."

I contest the above criteria because it unfairly excludes athletes like me who made "gameday" and other contributions to their team but did not receive a full GIA scholarship from their school. The argument for limiting the class to full GIA scholarship athletes assumes that having a scholarship equates to guaranteed participation or greater BNIL contribution, which is simply not true in many cases. Like myself, there are many (non-scholarship) preferred-walk-on players on FBS teams that have earned significant playtime over full GIA scholarship players. There's a degree of camaraderie and fellowship that comes with being a college football player, and

speaking firsthand, I can safely say I've met and know many walk-on athletes that have earned significant play time while remaining a walk-on player (no scholarship) for the duration of their college football career. Using myself as an example, since the last quarter of the 2022 football season, I have played in 19 football games, I was on the active roster, and I traveled as a reserve player for just about every other scheduled football game that I didn't participate in. It simply seems unfair and inequitable for efforts such as this to be excluded from the Football and Men's Basketball class. In addition to "game day" contributions, my "off the field" contributions helped promote and increase my NIL marketing brand and that of my school and athletic conference by serving as the Chapter President for Uplifting Athletes, participating in various Baylor social media efforts, helping with football-community outreach programs, helping teach young high school athletes/potential future recruits at numerous offseason football camps, and being publicly recognized by both Baylor and the Big 12 Conference ("Big 12") for various achievements. Some specific examples of these off-field contributions include: (1) achieving the Big 12's highest academic achievement award for an athlete, the Dr. Gerald Lage Academic Achievement Award, which was posted in a Big 12 press release and social media distribution; (2) serving as the public face of Baylor Football's annual Lift for Life fundraiser for rare diseases; (3) being named Academic All-Star by a prominent Baylor Athletics corporate sponsor which was posted on the team's social media and also shown on the jumbotron at Baylor home basketball games; and (4) earning a number of Baylor football achievements over the years, including the Baylor Standard Award which was widely shown on the school's social media pages. As a participant in the largest revenue generating college sport, it seems very reasonable that any team or conference benefiting from using an athlete's NIL and various achievements in their promotions, press releases, or social media should provide reasonable compensation in exchange for use. It's also worth noting that many walk-on football players are now receiving NIL and video game compensation. Given this fact, it seems counterintuitive to exclude walk-on athletes from the Football and Basketball Class (Is the assumption that walk-on's didn't play a role in generating BNIL revenue in the past but they do now?) Lastly, there are plenty of recent examples of walk-on football players with NIL agreements that are equal to NIL agreements with full GIA scholarship football athletes. This would seem to support the concept that a football player's NIL, BNIL, and video game market value is more closely tied to game day participation, facetime, social media presence, and other intangibles versus a simple measure of full GIA scholarship status.

Taking all of the above into consideration, I respectfully urge the court to reconsider the criteria for the damage class and to insist that the class include athletes who actively participated and contributed to their team, irrespective of their scholarship status. Specifically, the settlement class should include all football players listed on a team's active roster. If this is not an option, as an alternative, the Football and Men's Basketball class should include a criterion for walk-on athletes that participated in a certain percentage of their team's scheduled contests in a given season. A participation rate of 20 percent per season seems fair and reasonable given that at least one athletic conference, the Big 12, uses this 20 percent metric to determine certain athletic awards. Please refer to the following hyperlink for an example (interesting side note - approximately 35% of the Baylor football players that earned this award are walk-on players): All-big-12-team -

http://big12sports.com/news/2024/2/13/general-2023-fall-academic-all-big-12-team-recognizes-956.aspx

In summary, a large number of current and former walk-on football players have made significant contributions to their school, team, athletic conference, and FBS college football overall. I believe that excluding them from the Football and Men's Basketball BNIL settlement class would be an unfair and inequitable distribution of settlement proceeds, and would be harmful to this subset class of athletes. To remedy this imbalance, consider amending the class definition to include certain non-scholarship football and basketball athletes (i.e., walk-ons) as previously described above.

**With regard to the Hubbard litigation (i.e., Academic Achievement Award litigation), the definition of the settlement class is as follows:**

"All current and former NCAA athletes who competed on a Division I athletic team at any time between April 1, 2019 and September 15, 2024 who would have met the requirements for receiving an Academic Achievement Award <u>under the criteria established</u> by their schools for qualifying for such an Award."

It is my understanding that walk-on athletes are currently excluded from earning financial academic achievement awards (i.e., Alston Awards) per Big 12 Conference rules and/or the rules of certain FBS football teams in the Big 12 Conference. It is also my understanding that most, if not all, FBS football teams in the Southeastern Conference (the SEC) and the Big 10 Conference do not have such limitations or exclusions preventing walk-on athletes from earning Alston awards. I believe this variance between conferences and/or schools could potentially lead to an unfair and inequitable distribution of settlement proceeds by excluding certain individuals if they haven't received full GIA scholarships. To remedy this disparity, I respectfully urge the court to insist that a change be made to the definition of the settlement class to include <u>all</u> athletes, irrespective of scholarship status. Such an approach would require all teams, schools, and conferences to evaluate and measure an athlete's academic achievement and related financial compensation without any consideration given to the athlete's scholarship status.

Thank you for your attention regarding this matter. If warranted, I welcome the chance to speak at the final approval hearing to further address these concerns and provide additional context. If given the opportunity to speak, since I reside in Texas, I respectfully request to participate electronically via Zoom, phone call, or other acceptable virtual method.

Sincerely,

*Michael Mastrodicasa*
Michael Mastrodicasa

Mastro DiCasa
2516 Rio Mesa Drive
Austin, TX 78732



Hon. Claudia A. Wilken
Ronald V. Dellums Federal Building
& United States Courthouse
C/O Class Action Clerk
1301 Clay Street
Oakland, CA 94612

**PRIORITY MAIL®**

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

APPLY PRIORITY MAIL POSTAGE HERE

Retail





94612

US POSTAGE PAID
PM
AUSTIN, TX 78759
JAN 30, 2025

$9.37

RDC 03    0 Lb 0.90 Oz    S2324H505173-9

TO: HON. Claudia Wilken
Ronald Dellums Federal Building
c/o Class Action Clerk
1301 Clay St.
Oakland, CA 94612

EXPECTED DELIVERY DAY: 02/03/25

USPS TRACKING® #



Label 228, December 2023    FOR DOMEST

For international shipments, the maximum weight is 4 lbs.

