Rebecca Peterson-Fisher (SBN 255359)
KATZ BANKS KUMIN LLP
235 Montgomery St., Ste. 665
San Francisco, CA 94104
Telephone: (415) 813-3271
Email: peterson-fisher@katzbanks.com

John Clune (*Pro Hac Vice*)
Ashlyn L. Hare (*Pro Hac Vice*)
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
Telephone: (303) 442-6514
Email: john.clune@hbcboulder.com
       ashlyn.hare@hbcboulder.com

*Counsel for Objectors*

**UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20:-cv-03919-CW<br><br>**TITLE IX OBJECTORS' RESPONSE IN OPPOSITION TO MOTION FOR FINAL SETTLEMENT APPROVAL**<br><br>Hon. Claudia Wilken |

Objectors Kacie Breeding, Eden Hardy, Hannah Taylor, Alexis Drumm, Emmie Wannemacher, Savannah Baron, Riley Haas, Emma Appleman, Kate Johnson, and Elizabeth Arnold (collectively, the "Objectors"), by and through their undersigned counsel Hutchinson Black and Cook, LLC, and Katz Banks Kumin LLP, hereby respond in opposition to Plaintiffs' Motion for Final Settlement Approval and Omnibus Response to Objections:

## I. THE PARTIES' MOTIONS IGNORE THE SETTLEMENT'S $1.14 BILLION TITLE IX PROBLEM.

In their omnibus responses to objections, it is apparent that the parties hope to avoid a fundamental Title IX problem looming over the damages Settlement by pretending it doesn't exist. This Court, however, cannot do the same. The issue remains unaddressed that the proposed BNIL and ASC damages suggest an allocation that could not have been possible due to Title IX.

Plaintiffs' Motion makes only the following passing references to the issue and Defendants avoid the topic entirely. *See* ECF No. 717 at 48-50; ECF No. 721. First, Plaintiffs' brief reference to *NCAA v. Smith*, wrongly asserting that it is the "only case to address Title IX's applicability to conferences," is plainly inaccurate. *NCAA v. Smith* did not even address Title IX's applicability to the *conferences*. 525 U.S. 459 (1999). Furthermore, numerous courts since *NCAA v. Smith* have concluded that Title IX applies to athletic associations as briefed in the Objection.[1] This sole reference to *Smith* also wholly ignores Title IX's applicability to but-for damages from Athletic Services Compensation which would have been paid *directly from the schools* to the athletes, and

---

[1] *See, e.g.*, *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F. 3d 1282, 1294 (11th Cir. 2007) ("[I]f we allowed funding recipients to cede control over their programs to indirect funding recipients but did not hold indirect funding recipients liable for Title IX violations, we would allow funding recipients to receive federal funds but avoid Title IX liability."); *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 271-72 (6th Cir. 1994); *Barrs v. Southeastern Conf.*, 734 F. Supp. 2d 1229, 1234 (N.D. Ala. 2010); *A.B. by C.B. v. Haw. State Dep't of Educ.*, 386 F. Supp. 3d 1352, 1357-58 (D. Haw. 2019); *Cmtys. For Equity v. Mich. High Sch. Athletic Ass'n,* 80 F. Supp. 2d 729, 735 (W.D. Mich. 2000).

1  Plaintiffs make no effort to address how those but-for payments would not be subject to Title IX.
2  Further, Plaintiffs wrongly assert that Objectors' argument relies on a now-rescinded Fact Sheet from
3  the Department of Education's Office for Civil Rights.  However, as set forth fully in the Objection,
4  that guidance was merely illustrative of existing Title IX regulations and supporting case law that
5  make clear that NIL is no different from other financial aid and educational benefits that have *always*
6  been subject to Title IX's proportionality mandate.  *See* ECF No. 618 at 7-10.

7  Additionally, Plaintiffs argue, without any analysis, that the antitrust damages in this case
8  should be determined solely on "market realities"—presumably the comparative market value of
9  men's and women's sports—and the analysis disregards Title IX because no Title IX claims were
10 brought in this case.  ECF No. 717 at 49-50 ("Plaintiffs did not assert Title IX claims in this litigation
11 and the settlement does not and cannot address them.").  However, as explained in the objection, the
12 "market realities" in this case necessarily include "real world conditions," such as application of
13 relevant gender equity laws.  *See ICTSI Or., Inc., Int'l Longshore and Warehouse Union*, Case No.
14 3:12-cv-1058, 2022 WL 16924139, at *8-9 (D. Or. Nov. 14, 2022) (rejecting argument that
15 consideration of "but-for world" damages should not take into account "real world" factors).
16 Plaintiffs provide no support for their argument, nor could they, that consideration of "market
17 realities" in an antitrust case permits a court to ignore other laws that may impact the amount or
18 allocation of recoverable damages.  Nor do they in any way address the completely speculative
19 assumption that conferences would have directly paid BNIL when they have never provided
20 monetary support to athletes.  Absent any lawful analysis to the contrary, and the parties have chosen
21 to provide none, the proposed settlement is both speculative and grossly unfair to thousands of class
22 members and must be rejected. *See Moore v. James J. Matthews & Co.*, 682 F.2d 830, 836 (9th Cir.
23 1982).

24

Had the damages allocation accounted for Title IX in its "but-for" world, female athletes would take home 47% of the BNIL and ASC—**approximately $1.14 <u>billion</u> more** than they will under the proposed Settlement.  *See* Zimbalist Decl. at 3, ECF No. 618-1; *see also NCAA Demographic Database* (Oct. 2024), https://www.ncaa.org/sports/2018/12/13/ncaa-demographics-database.aspx.  Individually, that amounts to a reduction of damages of over $5,500 per female athlete, based on the previously estimated 389,700 class members.  And surely more female athletes would have submitted claims if the amount at stake was $6,000 instead of $600.  Rather, the proposed "but-for" damages allocations for Broadcast NIL ("BNIL") and Athlete Services Compensation ("ASC") indisputably violate over fifty years of precedence that make clear that direct payments from schools and conferences to athletes are subject to Title IX's proportionality standards.  34 C.F.R. § 106.31; 34 C.F.R. § 106.37; *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 964 (9th Cir. 2010).  As a result of the erroneous analysis, 90% of the $2.415 billion damages, or $2.174 billion, for BNIL and ASC will go to male athletes.  On average, that is $10,525 for male athletes and only $660 for female athletes.  "In considering whether a proposed settlement treats class members equitably relative to each other, courts consider whether the method of distribution or allocation of the settlement proceeds is fair, reasonable, and adequate." *Grady v. RCM Tech., Inc.*, 671 F. Supp. 3d 1065, 1082 (C.D. Cal. 2023).

Plainly, the Settlement is based on grossly inaccurate damages calculation that is unfair and unreasonable towards female athletes, and it therefore must be rejected.

## II. THE ISSUE OF TITLE IX'S APPLICABILITY TO SCHOOL AND CONFERENCE PAYMENTS TO ATHLETES CANNOT BE DEFERRED.

Plaintiffs have repeatedly asserted that the Court does not need to resolve the massive Title IX problem underlying the damages allocation in order to approve the Settlement, asserting that "if there

is ultimately a determination that Title IX does apply to NIL revenue sharing . . . schools will need to comply with Title IX." ECF No. 717 at 50.  Not so.  As an initial matter, the law is already clear that direct payments from institutions to athletes are subject to Title IX and must be distributed proportionately.  *See* ECF No. 618; *see also, e.g.*, 34 C.F.R. § 106.31; 34 C.F.R. § 106.37; *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 964 (9th Cir. 2010).  There is no reason to believe these payments can, or should, be treated any differently, nor have Plaintiffs provided any reason to do so.  Further, assuming a court in the future concludes specifically that schools cannot allocate 90% of their allotted revenue-sharing to male athletes under the injunctive relief due to Title IX's mandate of proportionate financial aid, then this Court will have approved damages in this Settlement that undercompensate female athletes by over a <u>billion</u> dollars, putting that money into the pockets of male athletes that the schools cannot then take back.  That is an untenable result.  Accordingly, this Court must make a finding as to whether the proposed allocation of damages in this case could have been paid as suggested.  Otherwise, the Settlement is unfair, unreasonable, and inadequate to female athletes on its face and must be rejected.

### III.    CONCLUSION

Accordingly, for the reasons stated in the Objection, ECF No. 618, and the foregoing reasons, this Court must deny final approval of the Settlement because it grossly undercompensates female athletes who are entitled to their proportionate share of BNIL and ASC damages under Title IX.

1    Dated: March 17, 2025

2                                             */s/ John Clune*

3                                             John Clune (*Pro Hac Vice*)
                                              Ashlyn L. Hare (*Pro Hac Vice*)
4                                             HUTCHINSON BLACK AND COOK, LLC
                                              921 Walnut Street, Suite 200
5                                             Boulder, CO 80302
                                              Telephone: (303) 442-6514
6                                             Email: john.clune@hbcboulder.com
                                                        ashlyn.hare@hbcboulder.com
7

8                                             Rebecca Peterson-Fisher (SBN 255359)
                                              KATZ BANKS KUMIN LLP
9                                             235 Montgomery St., Ste. 665
                                              San Francisco, CA 94104
10                                            Telephone: (415) 813-3271
                                              Email: peterson-fisher@katzbanks.com
11

12                                            *Counsel for Objectors*

TITLE IX OBJECTORS' RESPONSE IN OPPOSITION TO MOTION FOR FINAL SETTLEMENT APPROVAL
CASE NO. 4:20-CV-03919-CW
5

**FILER'S ATTESTATION**

I, John Clune, am the ECF user whose identification and password are being used to file **TITLE IX OBJECTORS' RESPONSE IN OPPOSITION TO MOTION FOR FINAL SETTLEMENT APPROVAL**.  In compliance with Local Rule 5-1(h)(3), I hereby attest that all signatories hereto concur in this filing.

By:   */s/ John Clune*
      John Clune