Caroline G. McGlamry
CA Bar No. 308660
Michael L. McGlamry
GA Bar No. 492515
Jay F. Hirsch
GA Bar No. 357185
**POPE, McGLAMRY, KILPATRICK,**
**MORRISON & NORWOOD, P.C.**
3391 Peachtree Road NE, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706
carolinemcglamry@pmkm.com
mmcglamry@pmkm.com
jayhirsch@pmkm.com

William J. Cornwell
FL Bar No. 0782017
WEISS, HANDLER & CORNWELL, P.A.
2255 Glades Road, Suite 205E
Boca Raton, GL 33431
Tel: (561) 997-9995
wjc@whcfla.com
filings@whcfla.com

*Counsel for Objector Thomas Castellanos*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(OAKLAND DIVISION)**

| | |
|---|---|
| **IN RE: COLLEGE ATHLETE NIL LITIGATION** | Case No. 4:20-cv-03919-CW <br><br> **OBJECTOR THOMAS CASTELLANOS' RESPONSE OBJECTING TO MOTION FOR FINAL SETTLEMENT** <br><br> Hon. Claudia Wilken |

Pursuant to Fed. R. Civ. P. 23(e), Class Member/ Objector Thomas Castellanos, an NCAA Division 1 quarterback at Florida State University, files this Response Objection to the Motion for Final Settlement, in further support of his Objection to the parties' proposed Settlement of this case. Objector Castellanos shows the Court, as detailed in his Objection and below, that the proposed Settlement should be rejected both because it includes an undefined, unaffiliated, and non-contributing

1

THOMAS CASTELLANOS' RESPONSE OBJECTING TO MOTION FOR FINAL SETTLEMENT
IN RE: COLLEGE ATHLETE NIL LITIGATION, Case No. 4:20-cv-03919-CW

1  Releasee, "College Football Playoff" and because it is unclear whether Title IX will
2  apply to past and future NIL-related income, rendering it impossible for male NCAA
3  Division 1 athletes to evaluate the value of the settlement.

## I. INTRODUCTION

### A. Procedural History

In this NCAA Division 1 College Athlete "Name, Image, & Likeness" (or "NIL") class action, the parties have reached tentative settlements for Damages Classes and an Injunctive Relief Class to pay NCAA Division I athletes for the NCAA's and certain conferences' past use of their NIL, and to establish a framework for paying for their future use of such athletes' NIL. The Settlement Agreement defines the "Releasees" – those being released from liability – to include the undefined words "College Football Playoff." *See* ECF No. 450-3 at 13. But the "College Football Playoff" was not named a defendant, brought in as a party, identified as an affiliate, or even mentioned in any pleading prior to its inclusion as a purported Releasee in the Settlement Agreement. Although this capitalized term is undefined and unexplained, these three words were intentionally included in the Settlement Agreement, with the apparent intention of providing a broad release while failing to notify class members exactly who or what they were releasing.

Although "CFP Administration, LLC," which administers the (uncapitalized) actual "college football playoffs," recently entered into a $7.8 billion contract with ESPN to broadcast college football playoff games, neither it nor any other "CFP" entity has agreed to do anything in regard to its past or future use of NCAA Division 1 college football players' NIL. Furthermore, there is no indication that "CFP Administration, LLC," "CFP Events, Inc.," "CFP Foundation, LLC," the non-entity "College Football Playoff," or any other CFP-related entity has paid any part of the consideration for the settlement or agreed to compensate college athletes in the future for using their NIL.

Class Member Thomas Castellanos thus objected, asking the Court to deny

2

THOMAS CASTELLANOS' RESPONSE OBJECTING TO MOTION FOR FINAL SETTLEMENT
IN RE: COLLEGE ATHLETE NIL LITIGATION, Case No. 4:20-cv-03919-CW

final approval of the proposed settlement based on the settlement's improper release of undefined non-party, non-entity "College Football Playoff." Castellanos further objected based on a January 16, 2025 United States Department of Education Fact Sheet that required colleges to comply with Title IX in regard to NIL activities and thus rendered it unclear how much compensation male NCAA Division 1 athletes like him would receive from the settlement.

### B. Factual Background

#### 1. It is unclear what is being released under the term "College Football Playoff."

It is wholly unclear what the undefined term "College Football Playoff" refers to in the Settlement Agreement, given that there is no known legal entity or other legal "person" with that name. "College Football Playoff" is not a known legal person or entity, and, while not denominated by their correct names, it may be that the Settlement Agreement is intended to release "CFP Administration, LLC," which runs the college football playoffs, or some other CFP-related entity (such as CFP Events, Inc. or CFP Foundation, LLC). Moreover, while "College Football Playoff" is capitalized as if it were a defined term in the Settlement Agreement, the only mention of the "College Football Playoff," in the entirety of the agreement, is in the paragraph denominating the "College Football Playoff" as a purported Releasee. This further obfuscates what, if any, person or entity is meant to be released under this term. Whatever it is, the first and only mention of "College Football Playoff" in this litigation is in the Releasees section of the Settlement Agreement.

Further compounding the ambiguity and the problem of identifying exactly what is intended to be released as the "College Football Playoff," BCS[1] Properties, LLC owns the trademark to the word mark "College Football Playoff," along with the ubiquitous black and gold football logo used to advertise the college football playoffs,

---

[1] "BCS" refers to the "Bowl Championship Series," which was the predecessor to the college football playoffs.

3

1 as well as the trophy awarded to the college football playoff champion team.[2] BCS
2 Properties, LLC is thus making significant income – likely tens of millions of dollars
3 annually – selling the use of its trademarked term "College Football Playoff." The
4 Settlement Agreement contains no mention of BCS Properties, LLC whatsoever,
5 making it unclear whether that entity is part of the scope of the intended release
6 while demonstrating that BCS Properties, LLC is not contributing any amount or
7 future relief to the settlement.

### 2. The "College Football Playoff" is not an affiliate of any party.

9 Despite Defendants' protestations, "College Football Playoff" is not an affiliate
10 of any party. (ECF No. 717 at p. 65 of 73.) The best evidence of any relationship
11 between any Defendant and the so-called "College Football Playoff" is these parties'
12 own words. For more than a decade, each Defendant has disavowed any knowledge
13 of, affiliation with, or relationship with the "College Football Playoff." The records in
14 this case, along with the records in related NCAA collegiate athlete NIL litigation,
15 bely any such affiliation.

16 This Court has been intimately involved with the extensive litigation involving
17 the NCAA and the Power 5 Conferences (SEC, ACC, Big 10, Big 12, and Pac 12),
18 concerning the use of college athletes' NIL. This litigation started in 2020 with *House*
19 *v. Nat'l Collegiate Athletic Ass'n*, No. 4:20-cv-03919-CW (N.D. Cal.), a/k/a *In re*
20 *College Athlete NIL Litig.*, No. 20-cv-03919-CW (N.D. Cal.) ("*House*"), and *Oliver v.*
21 *Nat'l Collegiate Athletic Ass'n*, No. 4:20-cv-04527-CW (N.D. Cal.). Later-filed cases
22 include *Hubbard v. Nat'l Collegiate Athletic Ass'n*, No. 4:23-cv-01593-CW (N.D. Cal.),
23 and *Carter v. Nat'l Collegiate Athletic Ass'n*, No. 3:23-cv-6325-RS (N.D. Cal.).

24 Other similar cases have been filed in other federal district courts, including
25 *Bewley* v. *Nat'l Collegiate Athletic Ass'n*, No. 1:23-cv-15570 (N.D. Ill.), *Fontenot v.*
26 *Nat'l Collegiate Athletic Ass'n et al.*, No. 1:23-cv-03076-CNS-STV (D. Colo.)

---

[2] *See* https://trademarks.justia.com/862/75/college-football-86275222.html (last visited March 13, 2025).

("*Fontenot*"), *Chalmers v. Nat'l Collegiate Athletic Ass'n*, No. 1:24-cv-05008 (S.D.N.Y.), *Pryor v. Nat'l Collegiate Athletic Ass'n*, No. 2:24-cv-04019 (S.D. Ohio), and *Robinson v. Nat'l Collegiate Athletic Ass'n*, No. 2:24-cv-12355 (E.D. Mich.).[3]

And earlier cases were filed in the Northern District of California, including *Keller v. Nat'l Collegiate Athletic Ass'n*, No. 4:09-cv-1967 (N.D. Cal.), which were previously settled, and *In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.* ("*Alston*"), No. 4:14-md-02541-CW (N.D. Cal.), which also settled, following summary-judgment rulings.

According to Defendants, these cases arise from an overlapping issue: "whether and how student-athletes should be compensated in the alleged nationwide labor market for their services." *See, e.g.,* Defs.' Motion to Transfer under 28 U.S.C. § 1404(a), filed in *Fontenot*, No. 1:23-cv-03076-CNS-STV (D. Colo.), at ECF No. 90 (listing and describing the cases above). Yet, in none of these cases did any Defendant disclose "CFP," the "College Football Playoff," "CFP Administration, LLC," or any other CFP-related entity as an affiliate or an interested party whose interests could be affected by the outcome of the litigation.[4]

These Defendants have gone out of their way to disavow any affiliation with or relationship to "College Football Playoff," and any CFP entity. For example, the *Alston* Plaintiffs' Second Amended Complaint (ECF No. 194), in Case No. 4:14-md-02541-CW (N.D. Cal.), made allegations concerning the purpose for the College Football Playoff ("CFP"); the relationship between the NCAA and the CFP; revenue generated by the CFP; and revenue distribution from the CFP to the Power 5

---

[3] This list includes only NCAA litigation involving college football players, omitting many others involving other men's and women's collegiate sports and athletes.

[4] *See NIL (House),* Case No. 4:20-cv-03919-CW (N.D. Cal.), ECF Nos. 21, 71, 73, 80, 82, 112; *Hubbard*, No. 4:23-cv-01593-CW (N.D. Cal.), ECF Nos. 29, 66, 75, 80, 85; *Alston*, No. 4:14-md-02541-CW (N.D. Cal.),30, 31, 36, 46, 50, 65; *Oliver,* 4:20-cv-04527-CW (N.D. Cal.), ECF Nos. 25, 56, 66, 69, 72, 81; *Carter,* No. 3:23-cv-6325-RS (N.D. Cal.), ECF Nos. 27, 57, 67, 82; *Fontenot,* No. 1:23-cv-03076-CNS-STV (D. Colo.), ECF Nos. 37, 50, 55, 66, 69; *Robinson*, No. 2:24-cv-12355 (E.D. Mich.), ECF No. 20; *Pryor*, No. 2:24-cv-04019 (S.D. Ohio), ECF Nos. 38, 42; *Keller*, No. 4:09-cv-1967 (N.D. Cal.), ECF No. 41; *Chalmers*, No. 1:24-cv-05008 (S.D.N.Y.), ECF Nos. 51, 56-58, 67, 91.

THOMAS CASTELLANOS' RESPONSE OBJECTING TO MOTION FOR FINAL SETTLEMENT
IN RE: COLLEGE ATHLETE NIL LITIGATION, Case No. 4:20-cv-03919-CW

Conferences. (*See Alston*, ECF No. 194 at ¶¶ 53, 80-82, 99). The NCAA answered the substantive allegations with: "The NCAA lacks sufficient knowledge or information to form a belief as to the truth of the [remaining] allegations . . . and therefore denies them." *See Alston*, ECF No. 204 at ¶¶ 53, 80-82, 99).

### 3. Neither "College Football Playoff" nor any actual CFP entity has any involvement in the settlement of this case.

There is no indication that "College Football Playoff" – or any actual CFP entity – has any affiliation with this case, let alone with its settlement. Nothing in the settlement documents indicates that the so-called "College Football Playoff" is providing any consideration – past or future – to pay college athletes for the use of their NIL in any college football playoff game.

The only document attached to the Settlement (DE #450-3) is the NCAA 2024 Agreed-Upon Procedures (or "AUP"). This 45-page document sets out all revenue categories, expense categories, other reporting items, Common Questions and Answers, Accountants statements, and NCAA Online Financial Reporting Links. For the Injunctive Class Settlement Agreement, this NCAA 2024 AUP is used to compare and contrast the 2024 procedures with the procedures envisioned by the Injunctive Class relief. Neither "College Football Playoff," nor "CFP Administration, LLC," nor any "CFP" entity is addressed as having any responsibility or involvement in any of the revenue categories – or even mentioned at all in the NCAA AUP.[5]

The NCAA Division 1 College Football Playoff is organized, managed and administered by CFP Administration, LLC. The owners/members of the company are the ten Football Bowl Subdivision ("FBS") conferences along with Notre Dame. Notably, the NCAA has no financial interest or revenue sharing agreement with CFP. In short, the College Football Playoff operates completely independent of the

---

[5] Likewise, in the *Keller* and *Alston* settlements, neither "College Football Playoff," nor "CFP," nor "CFP Administration, LLC" was released, included, or even mentioned. *See Keller*, No. 4:09-cv-1967 (N.D. Cal.), ECF No. 1108-2; *Alston*, No. 4:14-md-02541-CW (N.D. Cal.), ECF No. 560-1.

NCAA and its non-FBS members.

Prior to 2025, the College Football Playoff negotiated an exclusive media rights agreement with ESPN which reportedly resulted in payments of $470 million per year to its CFP Administration, LLC entity. In March 2024, as part of the expansion of the College Football Playoff from four teams to twelve teams, CFP Administration, LLC extended its exclusive media rights agreement with ESPN through the 2031-32 season. This resulted in first year media rights revenue of over $1.3 billion under the expanded college football playoffs.

Notably, the proposed Injunctive Relief Settlement caps payments and/or benefits to student athletes, including those generating the aforementioned $7.8 billion, at 22% of a defined "Pool." This capped Pool – the funds potentially available for distribution – is based on a calculation of "Average Shared Revenue." "Shared Revenue," in turn, is defined to include eight distinct revenue categories set forth in the NCAA 2024 AUP. But none of the AUP revenue categories earmarked for inclusion in calculation of Shared Revenue make any mention of "College Football Playoff" or any revenue streams generated by it or any CFP entity. The failure to specify inclusion of this enormous revenue stream in the calculation of Shared Revenue can only be purposeful. The "College Football Playoff," under the direction of management, which is not affiliated with the NCAA or any Defendant, has discretion to manipulate this enormous revenue source to the exclusion of Division 1 college football players, who are largely responsible for the generation of this revenue.

It is no wonder then that industry commentator and legal scholar, Michael LeRoy describes the six-year media rights deal between CFP Administration, LLC and ESPN as a "$7.8 billion shell game."[6] Professor LeRoy concludes, consistent with

---

[6] Michael LeRoy, *My turn: College Football Playoffs: A $7.8 billion Shell Game*, *The News-Gazette* (November 5, 2024). Available at: https://www.news-gazette.com/opinion/guest-commentary/my-turn-college-football-playoffs-a-7-8-billion-shell-game/article_82bb25a6-9afb-11ef-8503-dfc6e7302181.html (Last accessed: 11 March 2025).

the Settlement Agreement and related documents, that the *House* settlement does not factor in the $7.8 billion rights deal ESPN has agreed to pay to broadcast the college football playoff games.[7]

## II. ARGUMENT

### A. The proposed settlement should not be approved because it releases an undefined, unknown entity that likely controls billions of dollars in revenue generated largely from use of NCAA Division 1 college athletes' NIL without paying any consideration.

#### 1. Because "College Football Playoff" is not an affiliate of any Defendant, it cannot be released.

Defendants' opposition to Objector Castellanos' challenged inclusion of the undefined, unclear term "College Football Playoff" as a releasee is based entirely on the newly invented fiction that the "College Football Playoff" is an (albeit previously undisclosed) affiliate of Defendants. Arguing that "courts routinely approve releases covering *affiliated persons and entities of the parties* to the lawsuit" because "[n]o defendant would agree to a release that permitted plaintiffs to continue to initiate litigation against individuals or entities related to the defendant," Defendants contend that the "CFP and NCAA member schools are *closely affiliated* with the Defendants in this litigation and their inclusion as released parties for factually related claims is appropriate." (ECF No. 717 at p. 65 of 73 (emphasis added).) But, as detailed above, the record in this case, consistent with the records in other related litigation regarding the use of college athletes' NIL, belies Defendants' **new** contention that "College Football Playoff" or "CFP" is an affiliate of any party.

Indeed, no Defendant has ever disclosed "CFP," the "College Football Playoff," or any CFP-related entity as an alleged "affiliate." N.D. Cal. L.R. 3-15(b)(2) requires parties to:

> disclose any persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or any other entities, other than the parties themselves, known by the party to have either: (i) a financial interest of any kind in the subject matter in

---

[7] *See id.*

> controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Yet no Defendant disclosed any affiliation with the "College Football Playoff" or any legal entity responsible for the college football playoffs in this case. (*See* ECF Nos. 21, 71, 73,80, 82, 112; *supra* n. 4.)

In every case identified in part I.B.2., *supra*, each Defendant had to disclose to the respective courts whether each had related entities or affiliates or knew of any person(s) whose interests could be affected by the outcome of the proceedings, via N.D. Cal. Civil L-R 3-15 Certificates of Interested Entities or Persons, Statements of Disclosure of Citizenship and Financial Affiliations, or other Corporate Disclosure forms. Indeed, in every such Certificate in the N.D. Cal., Defendant NCAA has certified to the Court as follows:

> Pursuant to Civil L-R 3-15, Defendant National Collegiate Athletic Association ("NCAA") hereby certifies that the NCAA knows of no person, association of persons, firms, partnerships, corporations, or other entities other than the parties themselves to have either (i) a financial interest of any kind in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

(ECF No. 73.) Similarly, each of the Power 5 Conference's L.R. 3-15 certificates in this case disclosed only their member colleges and universities as affiliates or interested parties; none mentions the College Football Playoff or any CFP entity as an affiliate or a person with a financial or other interest that could be affected by the outcome of the litigation. (*See* ECF Nos. 21, 71, 80, 82, 112.) The same is true for each of their L.R. 3-15 certificates in the other NCAA athlete NIL cases filed in the Northern District of California. (*See supra* n.4.) And the same is true for the disclosures made in similar litigation in federal courts outside of California: neither the NCAA nor any other Defendant has identified CFP, "College Football Playoff" or any CFP entity as an affiliate or even a person with a financial or other interest that could be affected by the outcome of the litigation. *See id.*

Moreover, in *Alston*, where the Second Amended Complaint made factual allegations about the "College Football Playoff," the NCAA has answered that it "lacks information or knowledge sufficient to form a belief about the truth" of an allegation and thus denies the allegations. (*See Alston*, ECF Nos. 194 and 204 at ¶¶ 53, 80-82, 99.)

The Defendants have denied any affiliation with any CFP entity in some 15 years of related litigation before this Court and other federal courts. Yet now the Defendants base their entire release of the "College Football Playoff" – a term that they still do not define – on the newly-created fiction that whatever the "College Football Playoff" is, it is an affiliate of Defendants that must also be released to obtain a full release of Defendants. This new fiction cannot support the inclusion of "College Football Playoff" – whatever this term actually refers to – as a Releasee.

**2. "College Football Playoff" cannot be released on any other theory.**

**a. Class members' claims relating to the college football playoffs were not raised herein and do not share an identical factual predicate with the other NIL claims.**

Any claims relating to the actual college football playoffs do not share an identical factual predicate with the other NIL claims because they involve post-season playoff games that are not part of the NCAA college football season. Indeed, Plaintiffs did not assert claims for these post-season college football playoff games in their Complaint because the games and their revenues are not administered by any Defendant. Accordingly, there is no ground to release "College Football Playoff" as a non-party, and the settlement including "College Football Playoff" as a releasee should not be approved.

Although class action settlements can release claims against non-parties, they do so only where the claims against the released non-parties are based on the same underlying factual predicate as the claims asserted against parties to the action being settled. *See In re Lloyd's American Trust Fund Lit.*, No. 96 Civ.1262 RWS,

1  2002 WL 31663577, at *11 (S.D.N.Y. Nov. 26, 2002). This is called the "identical
2  factual predicate doctrine." *See also Jones v. Singing River Health Svcs. Foundation*,
3  865 F.3d 285, 302-03 (5th Cir. 2017) (approving release of county that owned the
4  defendant hospital and that made a $13.6 million contribution toward settlement of
5  the action).

6        *Eisen v. Porsche Cars N. Am. Inc.*, cited by Defendants, involved an objection
7  that failed based on the identical factual predicate. *See* No. 2:11–cv–09405–CAS–
8  FFMx, 2014 WL 439006, at *9 (C.D. Cal. Jan. 30, 2014). There, the objector, whose
9  objection was overruled, protested the release of other entities that were involved in
10 the design, engineering, and manufacture of the Porsche vehicles that were alleged to
11 be defective. *See id.* In other words, the challenged releasees actually designed,
12 engineered, or manufactured the defective vehicles. Here, in stark contrast, while the
13 Plaintiff class sues the NCAA and the Power 5 conferences for their unremunerated
14 use of college athletes' NIL, the Plaintiff class' claims are *not* asserted against the
15 "College Football Playoff," and the college football playoff games are not administered
16 or controlled by any Defendant. There is no identical factual predicate because any
17 claims relating to the college football playoffs arise out of distinct and separate
18 occurrences. There is thus no ground for releasing the "College Football Playoff."

19       **b. "College Football Playoff" cannot be released because neither
20          it nor any CFP-related entity is contributing to the
          settlement.**

21       A non-party release may be appropriate where that non-party has contributed
22 substantially to making the settlement possible. *See, e.g., In re Lloyd's American*
23 *Trust Fund Lit.*, 2002 WL 31663577, at *11; *see also Wal-Mart Stores, Inc. v. Visa*
24 *U.S.A., Inc.,* 396 F.3d 96, 109 114 (2d Cir. 2005) (approving release of non-party
25 banks where banks, who were described as co-conspirators in the complaint and who
26 "not only contributed to the Settlement[ ], but virtually all of the relief comes from
27 them"). But here, neither the "College Football Playoff" nor any legal CFP-related
28 entity, nor BCS Properties, LLC (which owns the tradename "College Football

Playoff") is contributing, in any manner, to the settlement. The "College Football Playoff" was never mentioned in this litigation – until it slipped in as a purported "Releasee" in the Settlement Agreement. And, as detailed above in section I.B. *supra*, neither the "College Football Playoff" nor any entity related to the "College Football Playoff" is providing any consideration – in any form – for the use of any Plaintiff Class member's NIL in a college football playoff game. Accordingly, due process dictates that there is no ground to release it – or any actual entity related to the college football playoffs – as a part of this settlement. The requested approval of the proposed settlement should be denied.

### B. Title IX and its various political interpretations make it impossible for any male Class member to determine the value of the proposed settlement.

As noted in Objector Castellanos' initial objection, Title IX may apply to the proposed settlement and reduce the amount available to pay male NCAA Division 1 athletes for use of their NIL. As of the opt-out deadline, federal guidance indicated that Title IX applies to NIL payments. But, confounding the issue, after the January 31, 2025 deadline for class members to opt out of the settlement had passed, on February 12, 2025, the new Trump administration "rescinded the nine-page Title IX guidance on Name, Image, Likeness (NIL) issued in the final days of the Biden administration." *See* https://www.ed.gov/about/news/press-release/us-department-of-education-rescinds-biden-11th-hour-guidance-nil-compensation. Thus, whether Title IX applies to NIL payments, and, if so, how, remain in flux, based partly on which political party is in power. Thus, it is virtually impossible for a male NCAA Division 1 athlete, like Objecting Class Member Castellanos, to determine how much compensation he would receive under the settlement, depending on the year, the political party in power, or what the court system were to decide.

Defendants' response essentially punts this issue, leaving Title IX and its implications to the individual schools, while wholly ignoring the very real possibility that schools may allocate funds received from the settlement of this litigation to

comply with Title IX, and thus significantly reduce the amount available to male athletes from the settlement. Thus, male athletes who are members of the proposed settlement class lack critical information necessary to evaluate what the benefits of this settlement, if any, are likely to be for them.

### III. CONCLUSION

For the foregoing reasons, the requested approval of the proposed settlement should be denied.

Respectfully submitted.        This 17th day of March, 2025.

By: _____
Caroline G. McGlamry
CA Bar No. 308660
Michael L. McGlamry*
GA Bar No. 492515
Jay F. Hirsch
GA Bar No. 357185
**POPE, MCGLAMRY, KILPATRICK, MORRISON &NORWOOD, P.C.**
3391 Peachtree Road, Suite 300
Atlanta, GA 30326
Tel: (404) 523-7706
carolinemcglamry@pmkm.com
mmcglamry@pmkm.com
jayhirsch@pmkm.com

William J. Cornwell*
FL Bar No. 0782017
**WEISS, HANDLER & CORNWELL, P.A.**
2255 Glades Road, Suite 205E
Boca Raton, FL 33431
Tel: (561) 997-9995
wjc@whcfla.com
filings@whcfla.com

*Pro Hac Vice forthcoming.
*Counsel for Objector Castellanos.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on March 17, 2025, I filed the foregoing with the Court by uploading to the CM/ECF system for the United States District Court for the Northern District of California and that a true and correct copy was served on all Registered parties via Notice of Electronic Filing.

By: *Caroline G. McGlamry*
Caroline G. McGlamry
CA Bar No. 308660