# LICENSE AGREEMENT[1]

This **LICENSE AGREEMENT** (this "Agreement"), dated [_____ __, 202_], is entered into by and between [_____] ("Institution") and [_____] ("Student-Athlete").

## Background Statement

Institution and Student-Athlete are entering into that certain [Scholarship Agreement/Grant-in-Aid Agreement] (the "Aid Agreement"), pursuant to which Institution has committed (or will commit) to provide educational and athletics financial aid and benefits to Student-Athlete in connection with the opportunity to pursue an education as a full-time student while participating in intercollegiate athletics. Institution and Student-Athlete desire to enter into this Agreement to permit Institution to use Student-Athlete's Likeness (as defined below) in connection with marketing and promoting Institution's educational opportunities and its athletics programs that participate in the Southeastern Conference (the "SEC"), and that are or may be governed by the National Collegiate Athletic Association (together with any successor thereto, the "Association").

## Statement of Agreement

**NOW, THEREFORE**, the parties agree as follows:

1. **Intellectual Property Rights**.

(a) Student-Athlete hereby grants to Institution, and its affiliates, agents and assigns, a worldwide, royalty-free right and transferable license to use, and to sublicense third parties (including any multi-media rights partner) to use, in any way, including without limitation, the right to use, publish, reproduce, transmit, broadcast, perform, distribute, make derivative works of, and publicly display Student-Athlete's name, image, likeness, nickname, signature, initials, photograph, gifs, visible tattoo artwork, image (actual, drawn, virtual and computer-generated), hologram, avatar, caricature, voice, quotes, statements, biographical and statistical information, performance, social media handles, and any other trademarks, service marks, trade dress, copyrights, rights of publicity and other intellectual property rights and any other similar means of endorsement related to Student-Athlete (collectively, "Student-Athlete's Likeness"), in connection with advertising, marketing, publicity and other materials and activities that promote, or identify Student-Athlete with, Institution, the SEC, the Association or any promotor or organizer of any collegiate athletic games or competitive events in which Institution may participate [*or any of such entities' respective licensees, third party sponsors, affiliates and sublicensees*], in any media or form now known or hereafter invented, as well as the licensing, advertising, promotion, manufacturing, distribution and sale of souvenirs, novelty items, apparel and other merchandise and services[, *including eSports, video games and virtual competitions and non-fungible tokens (NFTs) and similar digital items*]. Student-Athlete waives the right to inspect or approve any use of Student-Athlete's Likeness as contemplated in this Agreement and acknowledges that Institution shall have no obligation to use Student-Athlete's Likeness in any way. For clarity and the avoidance of doubt, this grant and license shall not and does not authorize use of Student-

---

[1] Note: This agreement includes various sample provisions, almost all of which are negotiable, and this sample agreement should be carefully reviewed and revised to fit the specific needs and terms of the applicable parties.

Athlete's Likeness in any manner, respect, or medium to the extent that such authorization would violate the terms of the Stipulation and Settlement Agreement in *In re College Athlete NIL Litigation*, No. 4:20-CV-03919 (N.D. Cal.) (commonly referred to as *House v. NCAA*) (such agreement, the "Settlement Agreement").

(b) All work product developed, created, made, produced or generated by Student-Athlete during the course and in the scope of performing the Services, solely or jointly with others, including, but not limited to, any tweets, texts, photographs, videos, music, audio/sound recordings, artwork, hashtags and other material, information or works of authorship (collectively, the "Content") prepared by Student-Athlete in connection with this Agreement ("Work Product") shall be deemed "works made for hire" according to U.S. Copyright law and shall be owned exclusively by Institution. In the event any portion of the Work Product is not considered "work made for hire" or as otherwise necessary to ensure full ownership of the Work Product by Institution, Student-Athlete hereby irrevocably assigns and transfers to Institution all right, title, and interest in and to such Work Product. At the request of Institution, Student-Athlete shall take such further actions, including executing and delivering any additional documents that may be reasonably necessary to effectuate the foregoing assignment. Without in any way limiting the foregoing assignment, Student-Athlete also expressly and forever waives any "moral" rights or droit moral or any similar rights arising under U.S. federal or state law or under the laws of any other country that conveys similar or other types of moral rights. Notwithstanding the foregoing, Institution shall not obtain ownership rights, other than the license granted in this Agreement, in or to Student-Athlete's Likeness.

(c) Without limiting the foregoing, Institution shall own and retain all right, title and interest in and to the Content, any characters/personas created by Institution, and any other trademarks, trade names, service marks, logos, artwork, designs, copy or other intellectual property owned by Institution (collectively, "Institution IP"). Student-Athlete shall have no interest in or right to use any Institution IP except for any limited right of usage required in connection with performing the Services pursuant to this Agreement. Student-Athlete shall not claim any right in or attempt to challenge the validity of any Institution IP.

(d) Notwithstanding the expiration or termination of this Agreement, Institution shall have the right to use all Work Product, materials and other content created hereunder during the Term, and any derivative works made by Institution therefrom during the same period, featuring Student-Athlete's Likeness, to promote the SEC or Institution's academic or athletic programs, in perpetuity without any royalties or additional payment due.

(e) Student-Athlete will not contest the rights of Institution, the SEC, the Association, or their broadcast licensees to (i) telecast, broadcast, or otherwise distribute or transmit, on a live, delayed, and/or archived basis, in any and all media now known or hereafter developed, any and all college games and competitive events, including clips and highlights thereof, (ii) produce, license, offer for sale, sell, market, or otherwise distribute or transmit on a live, delayed, and/or archived basis, broadcasts and other electronic or digital distributions of any such collegiate athletic games or competitive athletic events, and clips and highlights thereof, in any and all media now known or hereafter developed, including, but not limited to electronic or digital media, and (iii) use, employ, or otherwise transmit or publish Student-Athlete's Likeness for the purpose of

promoting the telecasts, broadcasts, and other electronic or digital distributions of games and competitive events, including distribution of clips and highlights thereof.

2.  **Services**. Student-Athlete agrees to perform the services specified in this Section 2, as well as any additional services specified in Exhibit A (collectively, the "Services").

(a) **Appearances**. Student-Athlete will be available for participation in spokesperson activities, personal appearances, photo shoots, production days, meet and greets, licensing souvenir appearances, speaking engagements, media interviews, charitable activities, SEC and Association appearances (including without limitation press conferences, media opportunities, and other meetings and appearances required by SEC or Association rules, or otherwise requested by the SEC or the Association), hospitality functions, and other public or sponsor, donor or alumni relations functions as may be reasonably required by Institution (collectively referred to herein as "Promotions"). As used in this Agreement, in addition to the appearances below, Promotions shall include "Production" days consisting of the shooting, filming or recording of commercials or other content for use on television, radio, cinema, video, internet, social media, website, internet, print media or any other media at sites designated by Institution. Without limitation, Promotions include:[2]

| **Promotion** | **Conditions** |
|---|---|
| • [_____ (__)] Production days for Institution during each year of the Term | • Not to exceed approximately [*four (4)*] hours in total length for each Production day,[3] exclusive of travel |
| • [_____ (__)] personal appearance Promotions for Institution during each year of the Term | • Not to exceed approximately [*two (2)*] hours in total length for each personal appearance Promotion day, exclusive of travel |
| • SEC/Association appearances (e.g. awards banquets, media days, photo shoots, pre- and post-game press conferences, media obligations, etc.) | • As requested by the SEC or the Association |
| • Institution support | • Be reasonably available for fan/alumni/donor days, calls, meetings, meals and other activities designed to attract, obtain and maintain Institution sponsors and donors or other activities reasonably requested by Institution |

---

[2] Note: The table allows the parties to specify any limits, or expectations, associated with any appearance obligations, if desired, and can be revised or eliminated as appropriate.

[3] Note: Consider whether it might be appropriate to specify that days with longer commitments will generally be scheduled when school is not in session.

Institution shall use commercially reasonable efforts to give Student-Athlete advance notice of each Promotion request and to avoid conflicts with any other existing *bona fide* commitments that cannot reasonably be changed. The scheduling and performance of all Promotions will be subject to Student-Athlete's *bona fide* academic and athletic competition-related obligations to Institution. Student-Athlete's Promotions will be rescheduled in the event of Student-Athlete's illness or injury or a force majeure event.

(b)     **Social Media Content**.

(i)     Student-Athlete will perform, create and/or post Content during, at or on certain events, locations, websites, forums, webpages, social media platforms or pages and other channels or media to which Student-Athlete has access (e.g., Snapchat, TikTok, Instagram and Twitter).[4] Student-Athlete will comply with all applicable laws, rules and regulations in the performance of Services under this Agreement, including, but not limited to, any applicable sweepstakes, contest or promotion laws and the Federal Trade Commission "Guides Concerning the Use of Endorsements and Testimonials in Advertising".

(ii)     Prior to posting, broadcasting, publicly displaying/performing or otherwise distributing any Content, (I) Student-Athlete shall submit such Content to Institution for its review and approval, which approval may be granted or withheld in its sole discretion, and any proposed Content which is not expressly approved in writing within five (5) days shall be considered rejected and may not be used or otherwise disseminated by Student-Athlete, and (II) Student-Athlete shall obtain all third party clearances and permission from any and all entities or persons who are, or whose property is identified, depicted, or otherwise referred to in such Content, including those relating to use of music and artwork, publicity and privacy, as are or reasonably may be expected to be necessary for Institution to exercise its rights to such Content, including all intellectual property rights therein, without incurring any payment or other obligation to, or otherwise violating any right of, any such person and provide Institution with evidence of such licenses, permissions, waivers, and consents, as applicable, upon request.

(iii)     Student-Athlete acknowledges and agrees that all Services and Content must not:

(1)     Violate or infringe any rights of any other party, including but not limited to copyright, trademark, privacy, publicity or any other intellectual property rights;

(2)     Contain material or act in any way that is inappropriate, indecent, obscene, hateful, tortious, defamatory, slanderous or libelous;

(3)     Contain information that is false, inaccurate or misleading;

(4)     Contain content or act in any way that is, or may reasonably be considered to be, hate speech, or promote bigotry, racism, hatred or harm against any group or

---

[4] Note: Consider whether to address specific expectations with respect to social media (e.g., an anticipated posting schedule or minimum number of posts per month/quarter/season/year).

individual or promote discrimination based on race, gender, religion, nationality, disability, sexual orientation or age;

(5) Contain ethnic slurs, personal insults, obscenity, or other offensive language;

(6) Disparage Institution, the SEC, the Association or any third party; or

(7) Contain material or act in any way that is not consistent with the image and values of Institution.

Student-Athlete further agrees to adhere to the posted policies, guidelines, and terms of use on any platform on which Student-Athlete posts Content and any additional policies or guidelines provided by Institution. Student-Athlete acknowledges and agrees that Institution shall have the right to monitor Student-Athlete's compliance with this Section 2(b), and upon request from Institution, Student-Athlete shall immediately cease performing Services and/or remove any applicable Content, as directed by Institution.

3. **Compensation**. In full consideration of Student-Athlete's performance of the Services and the rights granted herein, Student-Athlete shall receive the compensation specified in Exhibit A. Student-Athlete will otherwise perform the Services at Student-Athlete's own expense and using Student-Athlete's own resources and equipment. Student-Athlete acknowledges that the compensation set forth in Exhibit A represents Student-Athlete's entire compensation with respect to this Agreement, and Institution shall have no other obligation for any other compensation to or expenses or costs incurred by Student-Athlete in connection with the performance of obligations under this Agreement.

4. **Exclusivity**.

(a) The license and rights granted herein are non-exclusive[; provided, that during the Term, Student-Athlete shall not directly or indirectly endorse, or allow Student-Athlete's Likeness to be used to promote or market, any products, services or brands that are competitive or in conflict with those of Institution [*or Institution's sponsors*].[5] [*Current sponsors associated with Institution include, but are not limited to, [____]. Without limiting the foregoing, Student-Athlete acknowledges and agrees that Institution is party to, or may enter into, certain agreements with third parties that provide athletics equipment, apparel, shoes, performance-related supplies, and other goods or services ("Institution Sponsor Products") for use by one or more of Institution's athletics programs, and Student-Athlete agrees to use such Institution Sponsor Products as directed by Institution in Institution-sponsored practices and competitions, and when officially representing Institution in public appearances, including media appearances and fan events.*] [*Additionally, based on SEC/Association requirements, during the Term, Student-Athlete will not directly or indirectly endorse, or allow Student-Athlete's Likeness to be used to promote or market,*

---

[5] Note: Revise as appropriate to reflect any exclusivity.

*any products, services or brands that compete with (i) [_____], (ii) [_____], or (iii) [_____]]*.[6]

(b)     Student-Athlete represents and warrants that <u>Exhibit B</u> attached hereto sets forth a complete and accurate list of all agreements, whether written or oral, between Student-Athlete and any third party that grant a license to, or otherwise authorize use by, such third party of Student-Athlete's Likeness, or any portion thereof, or otherwise commit Student-Athlete to provide endorsement, promotional or marketing services or rights to such third party (each, a "<u>Third Party Endorsement Agreement</u>"). Student-Athlete shall provide Institution with a copy of each Third Party Endorsement Agreement upon execution of this Agreement. Student-Athlete shall not amend a Third Party Endorsement Agreement or enter into a new Third Party Endorsement Agreement during the Term without the prior review by, and written approval from, Institution[, *which approval Institution may give or deny in its sole discretion* OR *which approval may be denied by Institution if, in Institution's reasonable discretion, such Third Party Endorsement Agreement could potentially (i) conflict with any exclusive rights of Institution or an Institution sponsor, (ii) violate any governing rule or policy or (iii) interfere with or dilute any current or prospective commercial or reputational interests of Institution*].[7] [*Without limiting the foregoing, Student-Athlete shall not enter into any Third Party Endorsement Agreement that grants the applicable third party any rights to use Student-Athlete's Likeness, or any portion thereof, or commits Student-Athlete to provide any endorsement, promotional or marketing services (e.g., wearing or using a product of the applicable third party) in Institution-sponsored practices and competitions, and when officially representing Institution in public appearances, including media appearances and fan events.*]

(c)     In consideration of the commitments made by Institution herein, Student-Athlete agrees that, during the Term, Student-Athlete shall not, and shall not authorize or permit any of Student-Athlete's Representatives (as defined below) to, directly or indirectly (i) initiate, solicit, entertain, negotiate, accept or discuss any inquiry, proposal or offer from any college or university other than Institution relating to Student-Athlete transferring to or otherwise enrolling at or granting a right or license to use Student-Athlete's Likeness, or any portion thereof  (a "<u>Competitive Proposal</u>"), or (ii) provide any information to any third party in connection with or related to a Competitive Proposal. Student-Athlete agrees to immediately notify Institution if Student-Athlete or any of Student-Athlete's Representatives receives any indications of interest or offers in respect of a Competitive Proposal and will communicate to Institution in reasonable detail the terms of any such indication or offer. Immediately upon execution of this Agreement, Student-Athlete shall, and shall cause Student-Athlete's Representatives to, terminate any and all existing discussions, negotiations and information sharing with any third parties regarding a Competitive Proposal.

5.     **Representations and Warranties**. Student-Athlete represents, warrants and covenants to Institution that: (i) Student-Athlete has the full right, power and authority to enter into this Agreement, grant the rights granted herein, and fully perform all obligations hereunder without violating the rights of any third party, (ii) any Content provided by Student-Athlete is or will be

---

[6] Note: The bracketed language could be used as the basis for establishing exclusivity to prevent relationships that conflict with any existing exclusive sponsorships of the Institution or a conference or association.

[7] Note: Select or revise to reflect the appropriate standard for review and approval of other endorsements.

the sole and original creation of Student-Athlete, or Student-Athlete has or will have a license to use and provide any Content, and the use of the Content in accordance with this Agreement will not infringe any patents, copyrights, trademarks, trade secrets or other intellectual property rights or violate the right of privacy, publicity or other rights of any third party, and Student-Athlete has not previously assigned or pledged the Content in whole or part and will not do any of the foregoing with respect to such Content, and (iii) Student-Athlete has not previously made, and after the date of this Agreement will not make, any similar commitment (whether through execution of a letter of intent or otherwise) to enroll at and/or compete in athletics for another college or university.

6.    **Indemnification**. Student-Athlete agrees to defend, fully indemnify and hold harmless Institution and its affiliates, agents, assigns and sublicensees (collectively, "Institution Persons"), from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (a) Student-Athlete's breach of this Agreement or any representations, warranties or covenants included herein; (b) Student-Athlete's negligence or willful misconduct; and (c) any other acts or omissions by Student-Athlete in connection with this Agreement.

7.    **Release**. Student-Athlete, individually and on behalf of Student-Athlete's heirs, executors and administrators, hereby releases, waives, discharges, absolves, agrees to hold harmless and covenants not to sue Institution Persons from and against any and all claims, suits, actions, demands, liabilities and damages of any kind whatsoever arising out of or in connection with the use of Student-Athlete's Likeness or the Services by Institution, including, without limitation, any and all claims for copyright infringement, invasion of privacy, violation of the right of publicity or of moral rights, and/or defamation. Without limitation of the foregoing, in no event will Student-Athlete be entitled to, and Student-Athlete waives any right to, enjoin, restrain or interfere with use of Student-Athlete's Likeness or the exploitation of any of Institution's rights as provided herein.

8.    **Relationship of Parties**. Student-Athlete's relationship with Institution is that of an independent contractor, and nothing in this Agreement is intended to, or should be construed to, create a partnership, joint venture or employment relationship. Student-Athlete will not be entitled to any of the benefits that Institution may make available to its employees. Student-Athlete is not authorized to make any representation, contract, or commitment on behalf of Institution unless specifically requested or authorized in writing to do so by an authorized officer of Institution. Student-Athlete is solely responsible for all tax returns and payments required to be filed with, or made to, any federal, state or local tax authority with respect to the performance of the Services and receipt of compensation under this Agreement. Student-Athlete shall have no claim against Institution hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance, or other employee benefits of any kind.

9.    **Term and Termination**.

(a) **Term**. The initial term of this Agreement shall commence on the date first set forth above and shall expire on [_____ __, 202_],[8] unless earlier terminated as set forth herein or extended by mutual agreement of the parties. [*This Agreement is based on Student-Athlete's desire to pursue an education as a full-time student and participate in intercollegiate athletics at Institution. Accordingly, this Agreement shall be effective and binding on the parties immediately upon its execution, but the obligations of Institution hereunder shall not be effective until each of the following conditions has been satisfied: (i) Student-Athlete [and Parent(s)] must sign (x) this Agreement, (y) the Aid Agreement, and (z)[__][9]; and (ii) Student-Athlete meets Institution, SEC and Association initial eligibility requirements [and financial aid requirements] and has been admitted to and enrolled at Institution as a full-time student and begins attending classes no later no later than the first day of classes in [fall] [202_]*].

(b) **Termination by Institution**. Institution may immediately terminate this Agreement if Student-Athlete: (i) materially breaches this Agreement; (ii) fails to enroll (and remain enrolled) at Institution for the first semester/session that Student-Athlete is eligible to enroll or fails to enroll (and remain enrolled) in each subsequent semester/session during the Term; (iii) ceases to be a member of an Institution athletics team; (iv) is charged with, arrested for, found guilty of, or pleads guilty to illegal or criminal conduct or otherwise commits, or is publicly alleged to have committed any act, or becomes involved in any situation which does or could bring Institution into public disrepute, contempt, scandal, or ridicule, or which does or could insult or offend the community or any class or group thereof, or which does or could injure the reputation of Institution or diminish the value of Institution's association with Student-Athlete; (v) violates Association, SEC, Institution, or team rules, regulations or policies; (vi) misrepresents or conceals information on Student-Athlete's admissions application; (vii) misrepresents, conceals, or fails to disclose anything in Student-Athlete's background that does or could diminish the value of Institution's association with Student-Athlete, including, without limitation, criminal history and medical history; (viii) refuses to participate in Institution or Association drug testing programs; (ix) fails to present adequate medical qualifications (as determined in the sole discretion of Institution's sports medicine staff) for participation in intercollegiate athletics at Institution within 14 days of enrollment at Institution; (x) dies; (xi) neglects academic obligations resulting in excessive unexcused class or tutor absences or repeatedly fails to complete required academic assignments; (xii) fails to satisfy Association, SEC, or Institution eligibility requirements; (xiii) announces an intent to transfer from Institution; or (xiv) neglects team requirements or refuses to participate in required team activities.

(c) **Termination by Student-Athlete**. Student-Athlete may terminate the Agreement if Institution materially breaches the Agreement and fails to cure such breach within 15 days of being provided written notice of such breach.

(d) **Minor Status**. [*Student-Athlete (and Student-Athlete's parent, by their signature hereto) agrees to cooperate fully with Institution with respect to any action that may be requested*

---

[8] Note: Note that under the Settlement Agreement, an agreement like this cannot have a term that extends beyond the eligibility of the Student-Athlete to participate in NCAA sports. Consider whether Institution should have an option to extend the Term if it is less than the expected enrollment period of the Student-Athlete.

[9] Note: Insert any additional documentation that needs to be executed.

*by Institution in connection with [_____]¹⁰ dealing with contracts for minors relating to artistic, creative or athletic services (the "<u>Minor's Act</u>"). At the request of Institution, such cooperation shall include, without limitation, (i) full participation, attendance and support of any proceeding seeking approval of this Agreement by appropriate courts in accordance with the Minor's Act, and (ii) the establishment of any trust, account or other savings plan that may be required pursuant to the Minor's Act. Upon reaching the age of majority (if this Agreement is still in effect as of such time), Student-Athlete shall execute a writing provided by Institution in which Student-Athlete shall ratify and affirm the validity of this Agreement. Student-Athlete acknowledges and agrees that Student-Athlete's continued acceptance of any payments made to Student-Athlete by Institution or equipment and support provided by Institution after reaching the age of majority shall constitute a ratification and affirmation of this Agreement and a waiver of any right to disaffirm this Agreement. If Student-Athlete has the legal right to disaffirm this Agreement, and does subsequently disaffirm this Agreement on the grounds that it is a contract with a minor or other similar grounds, Student-Athlete hereby agrees to reimburse Institution for all payments made to Student-Athlete hereunder and all costs, damages and expenses incurred by Institution as a result of such disaffirmance, including any costs associated with any termination of any agreement between Institution and any third party, or any damages suffered by Institution thereunder, related to or arising from such disaffirmance. Student-Athlete acknowledges and agrees that this provision is a material inducement to Institution's willingness to enter into this Agreement, and that, without such provision, Institution would not agree to the terms hereunder.*]¹¹

(e)     **Remedies**.

(i)     If this Agreement is terminated, Institution shall have no further obligations to Student-Athlete hereunder after the effective date of termination, and Institution shall be entitled to all rights and remedies available at law or equity. Student-Athlete acknowledges that any breach or threatened breach of this Agreement by Student-Athlete could cause irreparable harm to Institution, that damages at law for any such breach would be inadequate and would be impossible to ascertain, and that Institution shall have, in addition to any and all other remedies at law or in equity, the right to seek and obtain temporary and/or permanent injunctive relief from any and all threatened or actual activities by Student-Athlete in violation hereof without the necessity of proving actual damages or posting any bond.

(ii)     [*At any time that Institution would have the right to terminate this Agreement, regardless of whether it has exercised such right and subject to all other rights and remedies of Institution hereunder, Institution, at its option, may withhold payments or suspend performance of any of Institution's other obligations hereunder, and Institution shall not be responsible or liable for any breaches hereunder resulting therefrom.*]

(iii)     [*The parties acknowledge that Institution has made significant investments in its academic and athletics programs and has entered into numerous third-party arrangements*

---

[10] Note: For any Student-Athlete who is a minor at the time of signing, insert any applicable statute regarding enforceability of contracts with minors and revise provision based on applicable law.

[11] Note: Consider including a provision like this, along with the parent guarantee on the signature page, for any student-athlete who is a minor at the time of executing this Agreement. This provision should be customized by Institution's counsel to reflect any unique legal requirements relating to contracting with minors in the applicable jurisdiction(s).

*in reliance, in part, on its ability to utilize its rights hereunder. The parties agree that quantifying losses arising from an early termination of this Agreement by Institution is inherently difficult insofar as such breach will impact Institution's reputation or require Institution to terminate third-party arrangements prematurely, provide concessions or alter certain operations. Accordingly, upon termination of this Agreement by Institution, Student-Athlete shall refund to Institution [_____][12], which amount shall be due and payable, without further obligation or duty of mitigation, within thirty (30) days of delivery of demand therefore by Institution. The parties further stipulate that the agreed upon sum is not a penalty, but rather a fair, reasonable and appropriate measure of damages, based upon the parties' experience and given the nature of the potential losses.]*

(iv)    [*If this Agreement is terminated by Institution prior to _____ \_\_, 202\_, then Student-Athlete shall refund to Institution a pro rata amount of the [Signing Bonus], based on the number of days from the date of this Agreement to the date of such termination divided by the number of days from the date of this Agreement to _____ \_\_, 202\_.*][13]

(v)    [*Student-Athlete shall pay any and all costs and expenses, including attorneys' fees and expenses and court costs, of Institution in connection with any failure of Student-Athlete to timely pay any amount due from Student-Athlete hereunder and any collection or other efforts by or on behalf of Institution to collect such sums.*]

(f)    **Survival**. Notwithstanding anything herein to the contrary, the rights and obligations contained in Sections 1(b)-1(e) ("Intellectual Property Rights"), 5 ("Representations and Warranties"); 6 ("Indemnification"); 7 ("Release"); 8 ("Relationship of Parties"); 9(e) ("Remedies"); 11 ('Confidentiality"), 12 ("Governing Law; [Dispute Resolution]"); and 14 ("Miscellaneous") will survive any termination or expiration of this Agreement.

10.    **Subservience**.  This Agreement and all benefits owed and rights granted to Student-Athlete under this Agreement are subject and subordinate to and limited by (a) the Settlement Agreement and (b) Association and SEC rules, policies and procedures, as the same may exist from time to time, and in the event of any conflict or inconsistency between the terms and conditions of this Agreement and the provisions of any of the foregoing, the latter will govern.

11.    **Confidentiality**.

(a)    Unless authorized by Institution, Student-Athlete agrees to hold all Confidential Information in strict confidence, not to disclose Confidential Information to any third parties, except to Student-Athlete's parents, guardians, attorneys, or other bona fide representatives ("Representatives"), and to use Confidential Information solely for the purpose of fulfilling obligations under this Agreement and as otherwise required under the Settlement Agreement, applicable law (including [\_\_])[14] or SEC or Association rules, policies or procedures. "Confidential Information" means the terms of this Agreement and all information, excluding

---

[12] Note: If amounts will be front-loaded or otherwise paid before fully earned, a provision like this could be used to create a contractual obligation to repay some amount as liquidated damages.

[13] Note: If any amount will be paid in advance, consider allocating it over some, or all, of the term and making a portion repayable if the agreement is terminated early.

[14] Note: Institution to reference applicable state sunshine or other disclosure laws if/as necessary.

information readily available in the public domain, disclosed by Institution to Student-Athlete or obtained by Student-Athlete in connection with the Services related to the current, future, or proposed business, products, and services of Institution, the SEC, the Association and their respective sponsors, broadcast licensees and other business partners. Student-Athlete will not make any public statement regarding this Agreement, Student-Athlete's services hereunder or Institution without the prior written consent of Institution in each instance. Notwithstanding the foregoing, nothing herein will prohibit Student-Athlete from making any public statement (including social media posts) confirming that Student-Athlete will attend and compete in athletics for Institution.

(b) Student-Athlete agrees that Institution may disclose (i) to authorized representatives of the SEC and the Association and to any Designated Reporting Entity (as defined in the Settlement Agreement) any documents or information pertaining to Student-Athlete, including any the existence and material terms of any Third Party Endorsement Agreement, (ii) Student-Athlete's name and personally identifiable information from education records to a third party (including but not limited to the media) as necessary to correct any inaccuracies reported by the media or related to Student-Athlete or as otherwise required by applicable law, without such disclosure constituting a violation of any rights of Student-Athlete, including any rights under the Family Educational Rights and Privacy Act.

12. **Governing Law; [Dispute Resolution]**. This Agreement will be construed in accordance with the laws of [_____].[15] [Dispute Resolution].[16]

13. **Amendment**. This Agreement may not be amended, modified or changed except by an instrument in writing signed by both parties. [*Student-Athlete acknowledges that Institution may be required to terminate or reduce the consideration to be provided pursuant to [the Aid Agreement and this Agreement] in order to comply with financial aid limitations if the Settlement Agreement is not approved by the United States District Court for the Northern District of California in the Spring of 2025; provided, that Institution shall be required to provide written notice of any such termination or reduction to Student-Athlete on or before June 1, 2025. Following any such written notice, Student-Athlete shall be released from the obligations of Section 4(c) and shall be free to communicate with, attend and participate in athletics at another Association member institution without penalty. If the Settlement Agreement receives final approval, then the parties will work in good faith to make any amendments to this Agreement that are necessary to ensure that that the compensation hereunder complies with the terms of the Settlement Agreement and any applicable Association, SEC, or other enforcement authority rules.*][17] [*Moreover, Institution shall be entitled to set-off the compensation provided through this Agreement against any payments from the Benefits Pool (as defined in the Settlement Agreement) permitted by the Settlement Agreement.*] Notwithstanding anything herein to the contrary, Institution shall be entitled to take any steps necessary to comply with any rule, regulation, policy, or custom enacted by the SEC or any oversight authority in response to the Settlement Agreement, including, but not limited to, the right to assign any of its rights to an independent entity.

---

[15] Note: Insert appropriate governing law.
[16] Note: If desired, insert any preferred dispute resolution terms.
[17] Note: Consider including this language for any agreements entered prior to the approval of the Settlement Agreement.

14.     **Miscellaneous**. Waiver by either party of a breach of any provision of this Agreement will not be construed as a waiver of any subsequent breach of the same or any other provision, nor will any delay or omission on the part of such party to avail itself of any right, power or privilege that it has or may have hereunder operate as a waiver of any right, power or privilege. If any provision of this Agreement is determined to be invalid by a court of competent jurisdiction, such determination shall in no way affect the validity or enforceability of any other provision herein. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. This Agreement[, *together with the Aid Agreement,*] sets forth the entire agreement of the parties with respect to the subject matter hereof and supersedes any and all prior agreements between the parties whether written or oral. Student-Athlete may not assign or otherwise transfer any of Student-Athlete's rights, or delegate, subcontract, or otherwise transfer any of Student-Athlete's obligations or performance, under this Agreement, and any such attempt to assign, delegate, or transfer is void *ab initio*. Institution may freely assign or otherwise transfer all or any of its rights, or delegate or otherwise transfer all or any of its obligations or performance, under this Agreement. This Agreement is binding upon and inures to the benefit of the parties and their respective permitted successors and assigns. Each of the SEC and the Association will be deemed to be third party beneficiaries of this Agreement, and will have the right to enforce this Agreement directly to the extent they may deem necessary or advisable to protect its or the rights of Institution hereunder.

**[SIGNATURE PAGE ATTACHED]**

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date firth set forth above.

| **Student-Athlete:** | **Institution:** |
|---|---|
| | [_____] |
| By: _____ | By: _____ |
| Print Name: _____ | Name: _____ |
| | Title: _____ |
| Date: _____ | Date: _____ |

PARENT ACKNOWLEDGEMENT AND GUARANTEE:

[*I understand that anyone who contracts with a minor must be concerned about the minor's right to disaffirm the contract. Accordingly, to induce Institution to enter into the Agreement, I guarantee Institution that Student-Athlete will not disaffirm the contract and that upon reaching the age of majority will (if this Agreement is in effect as of such time), at the request of Institution, accept, ratify and confirm the Agreement by so notifying Institution in writing. If Student-Athlete does disaffirm the contract or, upon reaching the age of majority does not accept, ratify and confirm the Agreement by so notifying Institution in writing despite Institution's request therefore, then I agree to pay Institution any amount due and payable to Institution by Student-Athlete under Section 9(d) of the Agreement immediately upon demand.*]

Parent: _____

## EXHIBIT A

**SERVICES**

Student-Athlete agrees to perform the following services:
    (a) [_____][18]

**COMPENSATION**

As consideration for the Services, Institution shall pay:
    (a) [*Signing Bonus:*] [($_____)] payable as follows: [_____].
    (b) [*License Fee:*] [($_____)] payable as follows: [equal] [*monthly/quarterly/annual*] installments from [_____] through [_____].
    (c) [*Other Fixed Payments:*] [($_____)], payable as follows: [_____]
    (d) [*Other Payments:* Upon occurrence of the following events, the following payments:
        a. [*Graduation Bonus:*] [($_____)], payable as follows: [_____].
        b. [*Continued Enrollment Bonus:*] [($_____)], payable as follows: [_____].
    (e) [*Alston Payments*:] [($_____)], payable as follows: [_____]

---

[18] Note: Insert description of any services to be provided by Student-Athlete that aren't already addressed by Section 2

*License Agreement – Exhibit A*

# EXHIBIT B

1. Agreement Description: _____

   Parties: _____
   Term: _____
   Rights Granted:_____
   Exclusivity language if any:_____

2. Agreement Description: _____

   Parties: _____
   Term: _____
   Rights Granted:_____
   Exclusivity language if any:_____

3. Agreement Description: _____

   Parties: _____
   Term: _____
   Rights Granted:_____
   Exclusivity language if any:_____

4. Agreement Description: _____

   Parties: _____
   Term: _____
   Rights Granted:_____
   Exclusivity language if any:_____

5. Agreement Description: _____

   Parties: _____
   Term: _____
   Rights Granted:_____
   Exclusivity language if any:_____

6. Agreement Description: _____

   Parties: _____
   Term: _____
   Rights Granted:_____
   Exclusivity language if any:_____