# MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding and Annex A attached hereto ("<u>Annex A")</u> and incorporated herein by reference (collectively, the "**MOU**")), effective as of the date of the last signature below (the "**Effective Date**"), is entered into by and between _____ ("**Athlete**") and Regents of the University of Minnesota, through its Department of Intercollegiate Athletics ("**Institution**"). Each of Athlete and Institution is referred to herein as a "**Party**" and collectively the "**Parties**". This MOU sets forth legally binding and enforceable agreements of the Parties in consideration of the mutual promises contained herein. In consideration of the mutual covenants set forth in this MOU, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>Name, Image and Likeness License.</u>

    a. <u>License Grant</u>. During Athlete's Eligibility Period[1], Athlete grants Institution the irrevocable, exclusive (as described in <u>Annex A</u>), royalty-free, fully paid-up, sublicensable (through multiple tiers), transferrable, license to use Athlete's name, nickname, pseudonym, voice, signature, caricature, likeness, image, picture, portrait, quotes, statements, writings, identifiable biographical information, other identifiable features, and any other indicia of personal identity (*e.g.,* jersey number, social media handle, *etc.*), "rights of publicity"/"personality rights", trademarks and other IP rights (individually and collectively, "**NIL**") (a) as may appear in any photograph, sound/video recording, clips, highlights, broadcast, live stream, social media post, publication or other depictions (b) with an irrevocable authorization to reproduce, edit, modify, retouch, copy, sell, exhibit, publish or distribute any and all such materials in all forms and in all media (now known or hereafter developed), and (c) as set forth in <u>Annex A</u> ("**NIL License**"), and waives any moral rights that Athlete may have in such materials. For clarity, and without limiting the rights granted, the NIL License includes a license to use Athlete's NIL both individually and in a group license setting. If Athlete transfers to another college or university, Institution will take reasonable steps not to actively use the Athlete's NIL with the intent of representing that Athlete currently participates in Institution's athletic program during any period where Athlete is on a team roster of the transferee Institution's Intercollegiate Athletics program. Notwithstanding the foregoing, after Athlete transfers, Institution is permitted to sell-off any existing products incorporating Athlete's NIL produced under license prior to the transfer, and use the Athlete's NIL in any way that does not expressly and intentionally represent that the Athlete is still a member of the Institution's athletics program (*e.g.,* archival uses and historical signage are permitted).

    b. <u>Sublicense Rights</u>. For clarity, the Athlete acknowledges and agrees that the NIL License expressly includes the right to freely sublicense (through multiple tiers) any or all of the Institution's rights under the NIL License (*e.g.,* to authorize third parties to use the Athlete's NIL to promote third-party products or services or to grant third parties the right to grant further sublicenses) to The Big Ten Conference, Inc. ("**Big Ten**" or "**Conference**"), the National Collegiate Athletic Association ("**NCAA**"), and any and all third parties. The Athlete shall not be entitled to any additional consideration, royalties, or any other payments in connection with any sublicenses.

    c. <u>Rights After Eligibility</u>. After the Athlete's Eligibility Period, the Institution and its sublicensees are not required to discontinue use of the Athlete's NIL (*e.g.,* content). The previous sentence does not permit the Institution to continue to (after the Eligibility Period): (i) sell goods or services incorporating the Athlete's name, image, or likeness; or (ii) use or authorize the use of the Athlete's name, image, or likeness to promote the goods or services of a third party.

2. <u>Consideration</u>. During the Term, and subject to the terms and conditions in this MOU, and conditioned upon the Athlete being in Good Standing[2], Institution shall pay the Athlete the amounts as set forth in <u>Annex A</u> ("**Consideration**") in consideration of the NIL License. The Consideration may be subject to regular review and assessment at Institution's discretion. The Institution may elect to have one or more third parties administer the payment of the Consideration, or any portion thereof, to the Athlete on the Institution's behalf. The third-party administrator(s) may, on the Institution's behalf, withhold taxes, whether federal, state, local, or otherwise owed, and may prepare or file any tax-related documents on behalf of the Institution as reasonably required by law.

---

[1] "**Eligibility Period**" means the finite time span as determined by the NCAA, typically five academic years, during which a student-athlete may compete in competition in a particular sport in an Intercollegiate Athletics Program, as may be updated by the NCAA from time to time

[2] "**Good Standing**" means the Athlete meets all of the following criteria: (i) is enrolled in the Institution, (ii) is compliant with the terms of this MOU, (iii) complies with all Institution rules, NCAA rules, Conference rules, and academic standards, and other standards, requirements and regulations set forth by the NCAA, the Conference, and the Institution, thereby being authorized to participate in collegiate-level athletic competitions sanctioned by the NCAA, Conference, and Institution, (iv) is academically and athletically eligible to compete during the sport's designated NCAA competition season(s), and (v) is on the active roster of the Team.

3. <u>Rights and Duties Upon Transfer</u>. If the Athlete enters the NCAA's transfer portal or transfers, the Institution will have no further obligation to pay the Athlete any Consideration, and the Athlete will not be entitled to any Consideration, from the earlier of (i) the date the Athlete transfers, or (ii) the date the Athlete notifies the Institution of the Athlete's decision to enter the transfer portal. If Athlete transfers or enters the transfer portal prior to the end of the Term set forth in Annex A, the Institution reserves the right to have the Athlete reimburse the Institution a prorated portion of the Consideration, equal to any amounts paid by the Institution allocated to the remainder of the Term (for example, for a one-year $10,000 agreement, if Athlete enters the transfer portal after exactly 6 months, any amounts paid over $5,000 would be reimbursed to Institution).

4. <u>Compliance with Institution, NCAA, and Conference Rules</u>. Athlete agrees to comply with all of the Institution's, Conference's, and NCAA's policies, rules, procedures, handbooks, and codes of conduct.

5. <u>Third Party NIL Deals</u>.

   a. Subject to any exclusivity granted by the Athlete in this MOU, the Athlete is permitted to license the Athlete's NIL to third-parties ("**NIL Deal(s)**"), provided however, that: (i) the Athlete notifies the Institution about each NIL Deal and the terms thereof (per the reporting requirements below); (ii) each NIL Deal complies with the Institution rules, Conference rules, and NCAA rules; and (iii) each NIL Deal complies with all of the terms, conditions, and rights granted in this MOU.

   b. <u>Prohibited Categories</u>. The Athlete agrees not to authorize any third party to use the Athlete's NIL in connection with any of the following categories, which are agreed by the Athlete to be likely to cause irreparable harm to the Institution's reputation ("Prohibited Categories"): (i) alcohol, tobacco, e-cigarettes, or any other controlled substances or NCAA-banned supplements; (ii) adult entertainment; (iii) gambling, sports wagering, or other games of chance for stakes or wagers; (iv) associations with products, services, or activities that are deemed illegal or involve dishonest, deceptive, or unethical practices; (v) entities or individuals that espouse discrimination, hate speech, or violence; or (vi) any other category the Institution, in its sole discretion, determines will dilute or harm its reputation or the goodwill of the Institution or its intellectual property.

   c. <u>Reporting</u>. The Athlete will report each NIL Deal with a total value of six hundred dollars ($600) or more (including any terms requested by the Institution) to (i) the Institution, and (ii) any other parties identified by the Institution, in accordance with the Institution, Conference, or NCAA requirements regarding any NIL reporting clearinghouses and reporting policy (as may be updated by the Institution from time to time in its sole discretion).

6. <u>BNIL</u>. The Athlete acknowledges and agrees that the Institution expressly denies, and that nothing herein should be read to acknowledge, the existence of any broadcast name-image-and-likeness (*i.e.,* "BNIL") right. To the extent that any court of competent jurisdiction determines and/or to the extent that any relevant legislative body passes a law providing that the Athlete has any "BNIL" rights, then the Institution, Conference, NCAA, and the NCAA's other member conferences and institutions, and entities to which rights to broadcast and otherwise distribute college athletic games and competitive athletic events are licensed by the Institution, Conference, NCAA and its other member conferences and institutions, shall be deemed to have been granted a license to exercise all such rights in "BNIL."

7. <u>Broadcast</u>. The Athlete will not contest the rights of Institution, the Conference, the NCAA, or their broadcast licensees to (i) telecast, broadcast, or otherwise distribute or transmit, on a live, delayed, and/or archived basis, in any and all media now known or hereafter developed, any and all college games and competitive events, including clips and highlights thereof, (ii) produce, license, offer for sale, sell, market, or otherwise distribute or transmit on a live, delayed, and/or archived basis, broadcasts and other electronic or digital distributions of any such collegiate athletic games or competitive athletic events, and clips and highlights thereof, in any and all media now known or hereafter developed, including, but not limited to electronic or digital media, and (iii) use, employ, or otherwise transmit or publish the Athlete's NIL for the purpose of promoting the telecasts, broadcasts, and other electronic or digital distributions of games and competitive events, including distribution of clips and highlights thereof.

8. <u>No Pay-for-Play</u>. The Parties understand and expressly agree that the Consideration is not provided in exchange for the Athlete's commitment to attend the Institution or participate in the Institution's Program (*i.e.,* not "Pay-for-Play").

9. <u>Discretion to Operate Program (Waiver)</u>. The Institution has complete discretion to operate its athletic program, including to decide if, and to what extent, the Athlete is a member of the team(s), participates in events, games, and matches. **The Athlete hereby irrevocably releases, waives, forever discharges, and covenants not to sue the Institution, NCAA, Conference, its and their affiliates, governing boards, directors, employees, representatives, agents or otherwise, from, and forever waives, any and all claims to the fullest extent permitted by law, against the Institution, NCAA, Conference, its and their affiliates, governing boards, directors, employees, representatives, agents or otherwise resulting from an Athlete's lack of playing time or any other decision regarding the Athlete's role, or impacting Athlete's performance, or prohibiting the Athlete from participating in the program's events, games or matches, including any claim that the Athlete's NIL value was harmed or any third-party NIL deals were affected by any action or inaction of the Institution, NCAA, Conference, or its or their affiliates, directors, employees, representatives, agents, affiliates or otherwise.**

10. No License to Institution IP. The Athlete will not use or authorize the use of any of the Institution's intellectual property including uniforms, logos, tradenames, and other marks, without entering into a separate written agreement with the Institution that expressly addresses and authorizes such third-party use.

11. No Employment (Waiver). This MOU does not create a fiduciary relationship between the Parties, and nothing in this MOU is intended to make or makes either Party an agent, legal representative, subsidiary, joint venture, partner, employee or servant of the other for any purpose whatsoever (unless otherwise agreed between the Parties). The Athlete further acknowledges and agrees that notwithstanding any other provision of law or agreement to the contrary, the Athlete is not, and shall not claim to be, an employee of the Institution. ***The Athlete hereby irrevocably releases, waives, forever discharges, and covenants not to sue the Institution, NCAA, Conference, its and their affiliates, governing boards, directors, employees, representatives, agents or otherwise, from, and forever waives, any and all claims to the fullest extent permitted by law, against the Institution, NCAA, Conference, its and their affiliates, governing boards, directors, employees, representatives, agents or otherwise resulting from any claim that the Athlete is an employee of the Institution, including, but not limited to, as a result of this MOU or Institution serving as a marketing agent as set forth in Annex A.***

12. Conditions Precedent. All of Institution's obligations in this MOU, including the obligation to provide Athlete with the Consideration, are conditioned on each of the following: (a) approval of that certain Stipulation and Settlement Agreement, dated as of October 7, 2024, resolving the litigation captioned *In re: College Athlete NIL Litigation*, Case No. 4:20-CV-03919 (N.D. Cal) (the "**Settlement Agreement**"), (b) Athlete being admitted to and enrolling at Institution as a full-time student and attending classes no later than _____, and (c) the Athlete being in Good Standing (collectively, "**Conditions Precedent**").

13. Long-Form Agreements. Upon the Institution's request, in its sole discretion, the Athlete will work in good faith to enter into one or more long-form definitive agreements with the Institution that incorporate the terms in Annex A and other terms and conditions, including, without limitation, detailed provisions regarding the NIL License and other rights granted by Athlete, the benefits to be provided by Institution in connection therewith, and athletic program commitments ("**Long-Form Agreements**"). Until such Long-Form Agreements are executed and expressly supersede this MOU, the terms and conditions of this MOU will govern and be binding upon the Parties. For the avoidance of doubt, this MOU will govern and bind the Parties in the event that the Parties do no execute additional agreements.

14. Representations, Warranties and Covenants. Each Party represents and warrants that: (a) it has the right, power and authority to enter into and perform its obligations under this MOU and (b) when executed and delivered (whether in hard copy or electronically) by such Party, this MOU will constitute the legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms subject to the conditions precedent as described in Section 12. Athlete further represents, and covenants that: (x) Athlete has the full legal right, power, and authority to enter into this MOU and to grant the rights and licenses in this MOU without violating the rights of any third party; (y) Athlete has not previously made, and after the Effective Date will not make, any agreement that conflicts with this MOU; (y) Athlete will not make, any similar commitment (*e.g.,* execution of a letter of intent) to enroll at and/or compete in athletics for another college or university; and (z) execution of this MOU does not, and after the Effective Date will not, conflict with any other agreement made by Athlete or any representative of Athlete; and (z) following execution of this MOU, none of Athlete, Athlete's family members, nor any representative acting on behalf of Athlete will initiate contact with admission or athletic staffs at other institutions in a way that conflicts with the Athlete's commitments herein.

15. Morals Clause. The Athlete agrees not to engage in any conduct or activity that is unlawful or that would harm the image, reputation or goodwill of, or bring disrepute, contempt, scandal, or ridicule upon, the Athlete, the Institution, Conference or NCAA, or that would insult or offend the general public or any community standards. Such prohibited conduct includes, but is not limited to, activities related to drugs, alcohol abuse, sexual misconduct, illegal gambling, felonious conduct, and crimes of moral turpitude, or using or the authorizing use of the Athlete's NIL in connection with the Prohibited Categories (the provisions of this Section are referred to herein as the "Morals Clause").

16. Entire Agreement. Except as set forth in Section 23 below, this MOU contains the entire understanding among the Parties with respect to the subject matter hereof and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such subject matter. This MOU may be modified or amended only by written agreement executed by both Parties.

17. Term; Termination.

   a. Term. This MOU shall commence on the Effective Date and continue in full force and effect until the earlier to occur of: (i) the end of the Eligibility Period, (ii) the "Term End Date" specified in Annex A, or (iii) the date the MOU is terminated in accordance with the provisions of this MOU. If this MOU is set to expire on a Term End Date, the Athlete agrees to negotiate with the Institution in good faith prior to the end of the Term End Date to enter into an agreement to license the Athlete's NIL to the Institution on fair and reasonable terms.

   b.  Termination. Institution may terminate this MOU immediately upon written notice to the Athlete if the Institution determines, in its sole discretion, that: (i) Athlete breached any representations, warranties, or other terms of this MOU; (ii) Athlete was convicted of, or entered a plea of guilty or no contest to, any criminal offense; (iii) Athlete entered transfer portal or is no longer on the Institution's team(s); (iv) Athlete violated the Morals Clause, Institution rules, Conference rules, NCAA rules or engaged in any conduct that is likely to tarnish the reputation or goodwill associated with the Institution/Conference/NCAA or the Athlete's NIL and/or (v) there is a Change of Law[3].

   c.  Effect of Termination. Upon termination of this MOU, the Institution will have no further obligation to pay any Consideration to Athlete, and, without limiting any other rights or remedies available to the Institution, the Athlete will reimburse the Institution a prorated portion of the Consideration (equal to the amount already paid by the Institution for the remainder of the Term) within thirty (30) days of termination. If the MOU expires on a Term End Date or is terminated before the end of the Eligibility Period, Sections 1c., 4-12, and 14-25 will survive until the expiration of the Athlete's Eligibility Period.

  18.  Confidentiality. Without Institution's prior written approval, Athlete will not, in any way, directly or indirectly, communicate or disclose any information about the terms or conditions of this MOU or the ongoing discussions in connection with the Long-Form Agreements to any third party except (a) to its parents, guardians, attorneys, or other competent representatives ("**Representatives**"), and (b) as otherwise required under this MOU, the Settlement Agreement, applicable law, or NCAA or Conference rules, policies or procedures. Athlete will be responsible for any breach by its Representatives of these confidentiality obligations. This provision will survive termination of this MOU for a period of five (5) years.

  19.  Counterparts. This MOU may be executed in any number of counterparts, each of which will be deemed an original as against any Party whose signature appears thereon, and all of which together will constitute one and the same instrument. This MOU will become binding when one or more counterparts hereof, individually or taken together, bear the signatures of all of the Parties reflected hereon as the signatories. Delivery of an executed counterpart of a signature page to this MOU by facsimile, email or other electronic transmission will be effective as delivery of a manually executed counterpart hereof.

  20.  Governing Law. This MOU will be construed in accordance with the laws of the state of Minnesota, without giving effect to its conflict of laws principles. All suits claims and causes of action relating to the construction, validity, performance and enforcement of this Agreement shall be in the courts of Hennepin County, Minnesota..

  21.  Dispute Resolution. If a dispute between the Parties related to this MOU arises, Athlete and Institution will utilize Institution's Student-Athlete Hearings process.

  22.  Limitation of Liability. IN NO EVENT SHALL NCAA, INSTITUTION, CONFERENCE, OR ANY OF ITS OR THEIR AFFILIATES OR ANY OF THEIR GOVERNING BOARDS, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, EMPLOYEES, INDEPENDENT CONTRACTORS, AGENTS OR OTHER REPRESENTATIVES BE LIABLE FOR ANY DIRECT OR INDIRECT DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, ANY DAMAGES FOR LOSS OF PROFITS, GOODWILL OR OTHER CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING OUT OF THIS MOU, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

  23.  Third Party Beneficiaries. Each of the NCAA and the Big Ten will be deemed to be third party beneficiaries of this MOU, and will have the right to enforce such agreements directly to the extent they may deem necessary or advisable to protect its or the rights of Institution hereunder.

  24.  Subservience. This MOU and all benefits owed and rights granted to Athlete under this MOU are subject and subordinate to and limited by (a) the Settlement Agreement, (b) NCAA and Conference rules, policies and procedures, as the same may exist from time to time, and (c) the Long-Form Agreements. In the event of any conflict or inconsistency between the terms and conditions of this MOU and the provisions of any of the foregoing (a)-(c), the latter will govern.

  25.  Miscellaneous. The Athlete acknowledges and agrees that this MOU was entered into in compliance with all applicable laws. The provisions of this MOU will, where possible, be interpreted so as to sustain its legality and enforceability. In the event that any provision of this MOU is declared by any court or other judicial or administrative body to be invalid, illegal, or unenforceable, or will be or becomes illegal or invalid under applicable law or regulation, such provision of this MOU nonetheless will be ineffective only to the extent of such illegality, unenforceability or invalidity without invalidating the remainder of such provision or the remaining provisions of this MOU. Except as set forth in Section 22 above, this MOU is solely for the benefit of the Parties and may not be relied upon or enforced by any third party.

---

[3] "**Change of Law**" means a change, occurring after the Effective Date, in any applicable law, regulation, or interpretation thereof by any court of law or other governing body having jurisdiction, which frustrates the principal purpose of this Agreement.

I certify that I have read all terms and conditions included in this document and Annex A. I acknowledge that I was granted a fair and ample opportunity to seek advice of counsel, and have a lawyer, parent, guardian or other competent representative assist in discussions regarding entering into this document and Annex A, including the opportunity to review, comment on, and advise regarding, this document and Annex A. If I decided not to have a parent, guardian, lawyer, or other competent representative assist in discussions regarding this document and Annex A or review, comment on, or advise regarding this document and Annex A, I hereby waive to the fullest extent permitted by law any claim arising from not enlisting the assistance of a parent, guardian, lawyer, or other competent representative. I fully understand, accept and agree to be bound by the terms and conditions in this document and Annex A. I understand that by signing this document, I give my consent to the signing Institution, to disclose to authorized representatives of the Conference, the NCAA, and any third party authorized by the foregoing, any documents or information pertaining to my signing. Further, I give my consent to Institution to disclose my name and personally identifiable information from my education records to a third party (including but not limited to the media) as necessary to correct any inaccuracies reported by the media or related to my signing or for purposes of collecting, analyzing, or reporting information related to my signing or as otherwise required by applicable law, without such disclosure constituting a violation of my rights, including my rights under the Family Educational Rights and Privacy Act. I acknowledge that I have had the opportunity to seek assistance of any parent, guardian, lawyer and other competent representative prior to my execution of this document, and hereby expressly waive such assistance to the extent not already provided.

My signature on this MOU nullifies any agreements, oral or otherwise, which would release me from the conditions stated within this MOU.

"Athlete" _____

Name:
Date:

**Parent/legal guardian signature required if Athlete has not reached his/her/they/their 18th birthday.**

By:

**Acknowledged and accepted:**

"Institution" Regents of the University of Minnesota

Name:
Date:
Title:

ANNEX A
TERM SHEET – KEY FINANCIAL AND LICENSE TERMS

| NIL Consideration (Cash)<br><br>Total anticipated payment for full Term:<br><br>$_____ | Payment # | Dates (Payment Periods) | Amount | Payment Date |
|---|---|---|---|---|
| | 1 | | $ | |
| | 2 | | $ | |
| | 3 | | $ | |
| | 4 | | $ | |
| | 5 | | $ | |
| | 6 | | $ | |
| | 7 | | $ | |
| | 8 | | $ | |
| | 9 | | $ | |
| | 10 | | $ | |
| | 11 | | $ | |
| | 12 | | $ | |
| | 13 | | $ | |
| NIL Consideration (Non-Cash) | | | | |
| Bonus | | | | |
| Obligations of Athlete | Athlete will at all times comply with the MOU, including:<br>• Maintain NCAA, Big Ten and Institution eligibility;<br>• Adhere to all Institution, Conference, and NCAA policies, rules, and codes of conduct;<br>• Report all NIL arrangements with any third party to any entity or entities designated by the NCAA, Conference, or Institution; and<br>• Athlete will enroll at Institution as a full-time student and begin attending classes no later than _____. | | | |
| Rights Granted | ***NIL:*** Athlete grants Institution the right to use and sublicense Athlete's NIL to promote the Institution, the Conference, and/or the NCAA and/or such entities' respective third party partners, sponsors, affiliates and sublicensees in any way and in all media now known and hereafter devised (*e.g.,* television, radio, satellite, telephone, internet, streaming, etc.), including, but not limited to, in any and all marketing and promotional materials (*e.g.,* billboards, game-day programs, event signage, on package, Institution social media).<br><br>☐ ***Merchandise:*** The NIL License includes the ☐non-exclusive ☐exclusive (in the categories below) ☐exclusive (in all categories) right to sell merchandise (jerseys, hats, keychains, etc.) incorporating Athlete's NIL. | | | |

| | |
|---|---|
| **Exclusive Categories (NIL License)** | The NIL License will be exclusive in connection with universities/colleges (public or private), and<br>☐ All Categories<br>☐ Additional Exclusive Categories<br>☐ Other Restrictions: |
| **Appearances** | This identifies some of the activities that Athlete may be asked, but is not obligated, to perform in connection with the NIL License:<br>• Media Days, Press Conferences, Interviews, Video Shoots, Social Media Posts, Merchandise Signing, etc. |
| **Term End Date**[1] | |

---

[1] The "Term End Date" should be the end of the student-athlete's year of eligibility.