EXHIBIT

11

# UNIVERSITY OF _____
## STUDENT ATHLETE NIL LICENSING AND ENDORSEMENT AGREEMENT
## STANDARD TERMS AND CONDITIONS

Please read these Standard Terms and Conditions carefully before entering into the Licensing and Endorsement Agreement (the "Agreement") with the University of _____.

1. **Definitions**.
    a. "Applicable Rules and Laws" means any applicable NCAA rules, Conference rules, University rules, and federal, state, or local laws or regulations

    b. **"Conference"** means Conference, Inc.

    c. **"Content"** means audio, audio-visual, visual and written works, and other works of authorship in any tangible medium of expression, including without limitation all forms of sound recordings, video recordings, photographs, images, blogs, vlogs, chyrons and print, in any and all media whether now known or hereafter devised that are created in connection with the Services rendered under the Agreement.

    d. **"NIL Rights"** means all right, title and interest in the Student Athlete's name, image, and likeness, including but not limited to caricature, nicknames, pseudonyms, voice, live or recorded performances, photographs, videos, audio recordings, signatures, quotations, biographical data or information and any other personal characteristics or physical or vocal likenesses of Student Athlete; any and all intellectual property rights owned by or on behalf of Student Athlete relating to, based on or derived from any of the foregoing; and any and all other materials or indicia of origin relating to Student Athlete or any of the foregoing.

2. **Conditions Precedent**. The Parties agree that this Agreement shall be subject to the following conditions precedent: (1) the Settlement shall receive final approval from the United States District Court for the Northern District of California and any appellate courts hearing any challenges to the final approval order; and (2) the NCAA and the Conference shall amend their rules to authorize NIL licensing agreements in accordance with the terms of the Settlement. If, for any reason, these conditions precedent are not fully satisfied as of the start of the Term, then this Agreement shall be null and void in its entirety and shall not become effective.

3. **Term**. The term of the Agreement (the "Term") shall commence on the later of the initial date of the first Contract Year stated on the Term Sheet or the date when Student Athlete is enrolled as a student at the University and is eligible under the Applicable Rules and Laws to participate in the University's athletic program. The Agreement shall end on the last date stated on the Term Sheet, unless otherwise terminated earlier in accordance with the Agreement. For the sake of clarity, the Agreement will not become effective until Student Athlete is enrolled as a student at the University and is eligible under the Applicable Rules and Laws to participate in the University's athletic program.

4. **License**. Student Athlete hereby grants to the University and its affiliates, the license to use and exploit the NIL Rights, including as part of an individual licensing arrangement that involves only Student Athlete (an "**Individual Licensing Arrangement**" or a group licensing arrangement that involves Student Athlete and one or more other student athletes (a "**Group Licensing Arrangement**"), during the Term, in connection with the marketing, advertising, publicizing, promoting, and endorsing the University, its affiliates, their athletic programs and events, their respective Sublicensees, and the businesses, products and services of each of the foregoing, other than Excluded Products and Services (as defined herein). The University understands and agrees that, after Student Athlete has become permanently ineligible to participate in NCAA sports, the University will no longer be permitted to commercially exploit or sell goods and services using or incorporating the NIL. Rights of Student Athlete, or to continue (or continue to authorize) use of the NIL. Rights of the Student Athlete to promote the goods or services of a third party; provided, however, the University, its affiliates and each of their respective Sublicensees shall have the right, during the Term and in perpetuity thereafter, to use, reproduce, publish, distribute and/or exhibit Content to promote the University, its academic or athletic programs, and the Conference; for internal, historical, and/or archival purposes (collectively, the "**Historical License Rights**") without any approval or consent from or additional compensation to the Student Athlete. None of the University, its affiliates or any of their respective Sublicensees shall use the NIL Rights (a) in any manner that violates any Applicable Rules and Laws or (b) in connection with: (1) a sexually oriented business; ii) political advertisement; (iii) alcohol, marijuana, tobacco products, e-cigarettes or any other type of nicotine delivery device, anabolic steroids, sports betting, casino gambling, or a firearm Student Athlete cannot legally purchase; or (iv) medical, drug or hygiene products requiring the approval of the U.S. Federal Drug Administration prior to sale or advertisement for such products (collectively, clauses (i) through (iv), "**Excluded Products and Services**"). Student Athlete shall have no right of approval or consent with respect to any use of the NIL Rights or Content by the University, its affiliates, the NCAA, the Conference or any of their sublicensees in accordance with this Agreement. For the avoidance of doubt, nothing in this Agreement shall restrict any use or exercise of any use of the NIL Rights necessary for Student Athlete to participate in any Olympic or national team program or any other competition in which Student Athlete is entitled to participate under Applicable Rules and Laws.

5. **Sublicensing**. Student Athlete agrees that the University and its affiliates can and will sublicense the NIL Rights licensed herein to the NCAA, the Conference, and their respective affiliates, including, without limitation, in connection with: (a) commercial arrangements of the NCAA or the Conference, including sponsorships, marketing, sports data license, and/or broadcast and distribution arrangements; (b) jersey or kit sponsorship arrangements to be entered into by the Conference; (c) initiatives or collaborations of the NCAA or the Conference (including merchandise related thereto); and (d) audiovisual content of the NCAA or the Conference (including documentaries). The University and its affiliates will also have the option to sublicense, as part of an Individual Licensing Arrangement or a Group Licensing Arrangement, any of the NIL rights licensed herein to any other third party, including, without limitation, to any agent or licensing agent or any other commercial or non-commercial partner of any of the foregoing ("**Sublicensees**" and each, a "**Sublicensee**"). Student Athlete agrees that i) the University has sole and absolute discretion over whether to pursue and/or enter into sublicensing

agreements, and (il) if the University decides to sublicense the NIL Rights, the University shall require all Sublicensees to confirm in writing that they have been made aware of the relevant terms and conditions of this Agreement and that they agree to comply with such terms and conditions; (ili) any use of the NIL Rights sublicensed in connection with an Individual Licensing Arrangement shall be subject to the prior written approval of Student Athlete (not to be unreasonably withheld or delayed); and (iv) the University shall exercise commercially reasonable efforts to ensure that any Sublicensees comply with the relevant terms and conditions of this Agreement. Notwithstanding the forgoing, nothing in this Agreement will be deemed to create an advisory, fiduciary, or agency relationship or other implied duty between the University and Student Athlete as related to pursuing and/or entering into sublicensing agreements or otherwise.

6. **Services**. The University hereby engages Student Athlete to provide such services and/or participate in Content creation as is reasonably requested by the University during the Term in connection with the marketing, advertising, publicizing, promotion and endorsement of the University, its affiliates, their athletic programs and events, their respective Sublicensees, and their respective businesses, products and services (other than Excluded Products and Services), including any services reasonably requested in connection with any Individual Licensing Arrangement or Group Licensing Arrangement (collectively, the "Services"). Such Content may include audio, audio-visual, visual and written works, and other works of authorship in any tangible medium of expression, including without limitation all forms of sound recordings, video recordings, photographs, images, social media postings, blogs, vlogs, chyrons, and print, in any and all media that are created in connection with the Services rendered under this Agreement. [ADDITONAL LANGUAGE FOR INTERNATIONAL SA ON F-1 VISA: If Student Athlete is an international student on an F-1 visa, the University shall not request, and Student Athlete shall not provide, any Services while Student Athlete is located within the United States. To the extent the University, its affiliates, the NCAA, the Conference, or their Sublicensees request Student Athlete to perform Services in the United States, Student Athlete agrees to decline to provide any Services in the United States and to otherwise comply with all terms and conditions regarding such Services required by Student Athlete's visa. Student Athlete's activities in the United States shall not be used for any Individual Licensing Arrangement or Group Licensing Arrangement except to the limited extent based on Student Athlete's pre-existing participation in the University athletics program, including without limitation use of roster and team photos or videos and images from Student Athlete's participation in practices, college games, and competitive events.] Notwithstanding anything to the contrary herein, the scope of the Services may be modified at any time during the Term in the sole discretion of the University or the Conference as may be reasonably necessary to comply with the Settlement or Applicable Rules and Laws.

7. **Consideration.** In exchange for the rights granted hereunder and the provision of the Services by Student Athlete, the University agrees to pay Student Athlete the cash payments specified on the Term Sheet according to the schedule set forth on the Term Sheet ("NIL Payments"). The NIL Payments shall be paid without deduction or withholding and all taxes shall be the sole responsibility of Student Athlete, unless deductions or withholdings are otherwise required by applicable law. Any social security, insurance, or similar amounts imposed on Student Athlete's

income hereunder and any amounts due by or on behalf of Student Athlete to any agents or other representatives of Student Athlete shall be the sole responsibility of Student Athlete. Payment of the NIL Payments is subject to Student Athlete providing the University with a completed and duly executed Form W-9 (or, if a non-U.S. person, a duly executed Form W-8 or other appropriate form), and a Form 1099 will be issued to Student Athlete for the NIL Payments.

8. **Third-Party NIL Agreements.**
    a. **Exclusive as to other Universities, Colleges, or Conferences**. Student Athlete's grant to the University and its affiliates of the license to use and exploit the NIL. Rights, as set forth in this Agreement, shall be exclusive to the limited extent that Student Athlete shall not, directly or indirectly, grant any rights in, to, or under, or license any portion of, the Student Athlete's NIL Rights to any other university, college, or conference.

    b. **University Approval and Compliance**. Student Athlete acknowledges and agrees that Student Athlete shall provide notice to and receive the University's written approval (not to be unreasonably withheld or delayed) prior to entering into any agreements with, or licenses granted to, any third party of any rights in, to, or under the NIL Rights. Student Athlete acknowledges and agrees that any such third-party NIL agreements shall comply with Applicable Rules and Laws.

    c. **Reporting Third-Party NIL Agreements.** Student Athlete will report to the University any and all agreements with, or licenses granted to, any third party of any rights in, to, or under the NIL Rights with an aggregate value of greater than or equal to six hundred dollars ($600.00) on the Term Sheet, if such agreements pre-exist this Agreement, or in the format provided by the University during the Term. If Student Athlete enters into multiple agreements or receives multiple payments from any third party relating to the NIL Rights, such activities must be reported to the University if the aggregate value is greater than or equal to six hundred dollars ($600.00). Subject to requirements for reporting or disclosure under the Applicable Rules and Laws, such reports must be provided to the University within five (5) business days after entering into any such agreements, granting any such licenses or receiving any such payments, as applicable.

    d. **Restricted Third-Party NIL Agreements**. Student Athlete shall not, directly or indirectly, grant any rights in, to, or under, or license any portion of, the Student Athlete's NIL Rights for use in connection with any Excluded Products or Services.

    e. **Use of University Intellectual Property by Student Athlete**. Student Athlete shall not use any intellectual property rights, including without limitation logos, trademarks, mascots, slogans, nicknames, or domain names, owned by or on behalf of the University, its affiliates, their Sublicensees, or the Conference, in each case, without the prior written consent and in the sole discretion of the University. The University shall not provide approval of any use of the University's intellectual property rights unless i) Student Athlete and the third party contracting for the use of Student Athlete's NIL rights comply with the University's requirements for licensing of such intellectual property

4

rights, and i) Student Athlete or the third party contracting for the use of Student Athlete's NIL rights compensate the University for the use of the University's intellectual property rights. In addition to and without limiting the foregoing consent requirement, Student Athlete shall not use any such intellectual property rights, in any manner that violates any Applicable Rules and Laws.

9. **Additional Provisions Regarding NIL Rights and University Sponsorships**

    a. **Value and Maintenance of NIL Rights.** Student Athlete acknowledges and agrees that: (a) Student Athlete's status as a highly-skilled collegiate athlete who is currently enrolled, or will be enrolled, as a student at the University and eligible under NCAA rules to participate in the University's athletic program is a material inducement for the University's entry into this Agreement; and (b) the value of the NIL Rights and the Services are materially and directly tied to Student Athlete's maintenance of such status and the goodwill associated therewith. In furtherance of the foregoing, at all times during the Term, Student Athlete hereby agrees to exercise reasonable best efforts to act and behave in such a manner so as to protect and maintain the value of the NIL Rights (and, as such, the Services).

    b. **No Obligation to Use**. Student Athlete acknowledges and agrees that University isnot obligated to use or exploit the NIL Rights or utilize Student Athlete's Services, and that if the NIL Rights are not used or exploited or the Services are not utilized, the University shall still be required to provide Student Athlete with the NIL Payments until such time as this Agreement is terminated or as otherwise specified herein. Student Athlete further acknowledges and agrees that nothing herein shall confer an obligation on the University with respect to Student Athlete's eligibility or participation in the athletic program.

    c. **University Sponsorships**. Further, Student Athlete acknowledges and agrees that the University and its affiliates have entered into or will enter into various sponsorship, advertising, marketing, promotional and similar agreements with third parties ("University Sponsorships") and accordingly, Student Athlete shall use commercially reasonable efforts to not enter into any agreement or take any other action that could reasonably be expected to adversely affect the value of such University Sponsorships.

10. **Settlement Rights and Agreements.**
    a. **Settlement, Notice, and No Objection**. Student Athlete acknowledges and agrees that Student Athlete is or will be a member of an ongoing injunctive settlement class bound by the settlement entered into in the In re: College Athlete NIL Litigation, Case No. 4:20-ev-03919 (N.D California) (as may be amended from time to time, the "Settlement"). As a condition to entering into this Agreement, Student Athlete acknowledges and agrees that Student Athlete has been or will be provided notice of the Settlement and the opportunity to object to the Settlement, and Student Athlete has declined or will decline to exercise any such right to object to the Settlement. To the extent Student Athlete objects to the Settlement, this Agreement shall become null and void.
    b. **Broadcast & Promotional NIL**. Student Athlete acknowledges and agrees that, as part of the Settlement, Student Athlete is bound by multiple agreements, including, without

limitation, an agreement not to contest, during the term of the Settlement, rights asserted by the NCAA, its member conferences and institutions (including the University and the Conference), and their licensees to: (a) telecast, broadcast or otherwise distribute or transmit any and all college games and competitive events; (b) produce, license, offer for sale, sell, market or otherwise distribute or transmit broadcasts and other electronic or digital distributions of any such collegiate athletic games or competitive athletic events; and (c) use, employ or otherwise transmit or publish student athletes' names, images, and likenesses for the purpose of promoting the telecasts, broadcasts, and other electronic or digital distributions of games and competitive events, as referenced in the Settlement. Student Athlete acknowledges and agrees that nothing in this Agreement is intended to limit or reduce any of the rights and agreements set forth in the Settlement. Student Athlete acknowledges and agrees the University has the absolute right to use Student Athlete's name, image, and likeness captured in broadcasts, video recordings, photographs, or other recordings of University games and competitive events without Student Athlete's agreement or consent, and that the University's absolute right to such use is not conditioned upon, and shall survive the termination of, this Agreement.

11. **Ownership**. All of the results and proceeds of Services (including any Content) (collectively, "**Results and Proceeds**"), in whatever stage of completion, shall constitute a "work-made-for-hire" specially commissioned by the University, and the University, its successors and assigns shall be the sole and exclusive owner of all such Results and Proceeds and all right, title and interest in the Results and Proceeds. To the extent that any Results and Proceeds (or any right, title or interest therein) are not deemed to constitute a "work-made-for hire", Student Athlete hereby unconditionally and irrevocably assigns to the University any and all such Results and Proceeds and all right, title and interest therein. If Student Athlete has any right, title or interest in, to or under any Results and Proceeds that cannot be assigned to the University as provided above, Student Athlete hereby unconditionally and irrevocably waives such right, title or interest and the enforcement thereof, and all claims, actions and causes of action of any kind with respect to any of the foregoing. If Student Athlete has any right, title or interest in, to or under any Results and Proceeds that cannot be assigned to the University or waived as provided above, Student Athlete hereby unconditionally and irrevocably grants to the University an exclusive, worldwide, royalty-free license to use, copy, or reproduce (with the right to sublicense and assign) to such right, title or interest. In furtherance of the foregoing, Student Athlete shall execute any and all documents and instruments and take such other actions as may be reasonably requested by the University to evidence, confirm or further effect any of the foregoing. This provision is intended to survive any expiration or termination of this Agreement.

12. **Termination and Buyout**
    a. **Termination by the University without Cause**. The University may terminate this Agreement, at any time at its convenience and in its sole and absolute discretion, upon written notice to Student Athlete and effective upon receipt, unless otherwise indicated in such notice; provided, however, that the University may not terminate this Agreement solely as a result of Student Athlete's ineligibility, unless and until a final determination regarding ineligibility has been made in accordance with the Settlement and Applicable

Rules and Laws. [OPTIONAL BUYOUT: Subject to the limitations set forth in section 12(c), upon termination by the University pursuant to this subsection on or after the beginning of the Term, the University shall pay Student Athlete a buyout amount equal to fifty percent (50%) of the remaining NIL Payments that would have otherwise been due to Student Athlete during the Term of this Agreement, as set forth in the Term Sheet, with such buyout amount paid no later than the last day of the contract year during which such termination occurs.]

b. **Termination due to Non-Enrollment, Non-Participation, Discipline**. If, at any time during the Term and for reasons other than a transfer, Student Athlete voluntarily leaves Student Athlete's respective athletic program, takes a redshirt year without the consent of the coaching staff, is permanently removed from participation in that athletic program for a violation of team, NCAA, Big 12, or University rules, withdraws from the University, is suspended or expelled from the University, or otherwise ceases to be enrolled as a full-time University student (except due to a medical or other leave of absence authorized by the University), this Agreement will automatically terminate as of the earlier of i the date Student Athlete voluntarily leaves or is permanently removed from participation in the University athletic program, withdraws, or is suspended or expelled, or ii) the date of the end of academic term during which Student Athlete was last enrolled as a full-time University student. For the sake of clarity, the University will have no obligation to make any further payments [or pay a buyout] to Student Athlete upon termination of the Agreement pursuant to this subsection.

c. **Termination Upon Transfer**. If, at any time during the Term, Student Athlete intends to transfer to another university or college (a "**Subsequent University**"), Student Athlete shall provide written notice thereof to the University as soon as reasonably practical, but in any event no less than five (5) business days' prior to the anticipated date on which Student Athlete will cease to be enrolled as a student at the University. The Agreement will automatically terminate upon the University receiving the transfer notice or otherwise receiving confirmation of Student Athlete's transfer to a Subsequent University. If, at any time during the Term, Student Athlete enters the NCAA-authorized transfer portal, the University has the right, in its sole discretion, to reduce the amount of NIL Payments owed to Student Athlete in an amount proportionate to the time Student Athlete spends in the transfer portal until Student Athlete either withdraws from the transfer portal and resumes participation in the University's athletic program, at which time Student Athlete shall resume earning the NIL Payments contemplated by this Agreement, or the Agreement is otherwise terminated pursuant to the terms of the Agreement. [OPTIONAL BUYOUT: Upon Student Athlete's entrance to the transfer portal, Student Athlete waives any right to receive a buyout from the University, and the University shall have no further obligation to pay any buyout to Student Athlete upon termination pursuant to section 12(a).]

d. **[OPTIONAL BUYOUT: Buyout by Student Athlete**. Student Athlete acknowledges and agrees that in the event Student Athlete transfers to a Subsequent University during

7

==the Term, Student Athlete will be precluded from licensing Student Athlete's NIL Rights to, or performing Services related to NIL Rights for, a Subsequent University or any other colleges or universities during the Term, unless and until Student Athlete, or Subsequent University on behalf of Student Athlete, pays the University a buyout amount equal to fifty percent (50%) of the remaining NIL Payments that would have otherwise been due to Student Athlete during the Term of this Agreement, as set forth in the Term Sheet. For example, if the Agreement is for a four year term, and Student Athlete transfers at the end of Year 2, the buyout amount will be equal to the remaining payments that would have otherwise been due to Student Athletes in Year 3 and Year 4 of the Agreement. The University has the right, in its sole discretion, to waive the buyout amount, or any portion thereof, required to be paid by Student Athlete pursuant to this subsection.]==

e. **Payment of Earned NIL Payments Upon Termination**. If this Agreement is terminated after the time period when NIL Payments have become earned and due and payable pursuant to the terms of this Agreement, the University will pay such earned NIL Payments as and when due and payable hereunder. For the sake of clarity, to the extent the Agreement is terminated during the time period when NIL. Payments have been earned but not yet paid pursuant to the agreed payment schedule, the University shall pay the proportionate share of the NIL Payments earned during the time period prior to termination pursuant to the payment schedule set forth in the Term Sheet, except in the event Student Athlete graduates from the University in the spring term, in which case the University shall pay the full NIL Payment for that contract year.

f. **Termination by Mutual Written Agreement.** The University and Student Athlete reserve the right to terminate this Agreement by mutual written agreement in a form provided by the University and without ==[any buyout or]== further liabilities or obligations on the part of either Party.

g. **No Further Liability.** In the event of the termination or expiration of this Agreement, neither Party shall have any further liability or obligation to the other Party under this Agreement; provided, however, Section 9(b), Section 11, this Section 12 ==[including without limitation any buyout rights and obligations)]==, Section 14, Section 15, and Sections 17-20 shall survive any termination of this Agreement.

13. **Non-Disparagement**. During the Term of this Agreement, Student Athlete agrees to refrain from making any disparaging comments or statements about the University, its affiliates, any of their Sublicensees or any of their respective businesses, products, or services. Upon the written request of the University, Student Athlete shall promptly take down any online or social media posts or any other Content that is created, posted, or made publicly available by or on behalf of Student Athlete during the Term that violates the terms of this Agreement. Nothing in this Agreement shall preclude Student Athlete from making good faith reports of University rules, other Applicable Rules and Laws to appropriate officials, or other laws to University officials or appropriate law enforcement authorities.

14. **Non-Employee Status**. Student Athlete acknowledges and agrees that Student Athlete is not being hired as an employee of the University and is not entitled to or eligible for and hereby waives any benefits that the University provides to its employees. To the extent a change in Applicable Rules and Laws regarding Student Athlete's employment status results in Student Athlete being classified as an employee during any period of the Term, Student Athlete agrees that the amounts paid under this Agreement should be used as an offset against any amounts determined to be owed to Student Athlete. [ADDITONAL LANGUAGE FOR INTERNATIONAL SA: Student Athlete is solely responsible for complying with any United States immigration and visa requirements, including securing and maintaining any visa required for Student Athlete performance under this Agreement. The University makes no representations or warranties regarding this Agreement and its compliance with the terms and conditions of Student Athlete's visa.]

15. **Confidentiality.** Student Athlete agrees not to disclose the terms of the Agreement and all confidential, proprietary or non-public aspects of the Services to any third party without the prior written consent of the University (other than to the NCAA, the Conference, or Student Athlete's tax or legal advisors), and not use any such information for any purpose except as required to perform the Services, unless required by applicable law.

16. **Assignment.** Student Athlete shall not delegate or assign, in whole or in part, any of Student Athlete's rights or obligations under this Agreement, whether to an affiliate or a third party, without the prior written consent of the University (which may be withheld in the University's sole and absolute discretion), and any attempted delegation or assignment without such written consent shall be null and void. This Agreement shall be binding upon the permitted successors and assigns of the Parties hereto.

17. **Applicable Law.**

    a. **Applicable Rules and Laws.** All of the terms and conditions of this Agreement are subject to and limited by Applicable Rules and Laws. In the event of any conflict or inconsistency between the terms and conditions of this Agreement and the Applicable Rules and Laws, the Parties shall negotiate in good faith an amendment to this Agreement that maintains the intent of each Party as permitted under Applicable Rules and Laws.

    b. **Governing Law and Venue.** This Agreement shall be interpreted under the law of the State of without regard to conflicts-of-laws principles. Any legal action, suit, or proceeding arising out of or relating to this Agreement shall be brought in a court of competent jurisdiction in _____ County in accordance with law. Notwithstanding the foregoing, nothing in this section is intended to, or should be interpreted to, interfere with or supersede the arbitration rules and requirements set forth in the Settlement or promulgated by the NCAA or the Conference pursuant to that Settlement.

18. **Non-Waiver of Sovereign Immunity.** Nothing in this Agreement shall be construed as a waiver of the University's sovereign immunity, and the University reserves all immunity defenses.

19. **Notices.** All notices, requests and other communications hereunder shall be in writing and addressed to the parties at the addresses set forth on the Term Sheet and shall be delivered by personal delivery, nationally recognized overnight courier (with all fees pre-paid), e-mail (with confirmation of receipt), or certified or registered mail (in each case, return receipt requested, postage pre-paid).

20. **Entire Agreement.** This Agreement and all schedules hereto constitute the sole and entire agreement of the parties to this Agreement and supersede all prior and contemporaneous agreements with respect to the subject matter hereof. This Agreement may only be amended by mutual written consent.

21. **Interpretation.** If any term of this Agreement is deemed to be invalid, illegal or unenforceable in any jurisdiction, such invalidity or otherwise shall not affect any other term of this Agreement. The headings and paragraph captions in this Agreement are for reference and convenience purposes only and shall not affect the meaning or interpretation of this Agreement. This Agreement shall not be interpreted or constructed in favor of or against either party because of its effort in preparing it.

22. **Right to Consult Attorney**. The University hereby advises Student Athlete of Student Athlete's right to consult with an attorney of Student Athlete's choice regarding the terms of this Agreement prior to signing this Agreement. The University shall have no obligation to pay or reimburse Student Athlete for any costs or expenses relating to any such attorney consultation.

23. **Counterparts and Electronic Signatures.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together will constitute one and the same instrument. The parties hereby agree that this Agreement may be executed with electronic signatures, which shall be valid and binding on the parties.