**Lathrop GPM**

Lathrop GPM LLP
lathropgpm.com

2029 Century Park East
Suite 1280N
Los Angeles, CA  90067
Main: 310.789.4600

**Laura Reathaford**
Partner
laura.reathaford@lathropgpm.com
310.789.4648

April 15, 2025

Dear Judge Wilken:

The Court gave the Defendants a chance to do the right thing and grandfather in current athletes. They refused. They have also not explained <u>why</u> they cannot grandfather in the current athletes. Instead, they argue that it would be too hard to reinstate athletes who were pre-emptively cut from rosters based on the Court's October preliminary approval order. Essentially, the Parties seek final approval of this settlement based on their unilateral conversion of a preliminary approval order into a final approval order; making a mockery of the class notice, objection and final approval process.

However, just because the schools prematurely cut people from teams before final approval does not mean this court does not have an obligation to comply with due process in finally approving this injunction. It is black letter law that injunctions are not allowed to harm class members, *Dukes v. Walmart*, 564 U.S. 338, 361 (2011). Any settlement that violates the law and harms class members must be denied. As the Court held in *Arnold v. Sacramento Doubletree Hotel*, 2007 WL 112365 (E.D. Cal.),

> the court should…examine [a settlement] carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.

As noted in the objector's original objection (ECF 602), Mr. Kessler admits that this settlement results in schools reneging on their commitments to athletes. This includes verbal promises, NLI contracts and other "commitments." This harm is supported by evidence. The settlement must be denied.

**This mandatory settlement cannot pick winners and losers.** The ability to opt-out of a settlement is the Constitutional safety valve that protects class members. Here, class members cannot opt out. Courts have denied injunctive relief settlements where some class members benefit and others are harmed. *N. Brevard Cty Hosp. v. C.R. Bard, Inc.*, 710 F. Supp. 3d 1090, 1114 (D. Utah 2023) (Rule 23(a)(4) violated and injunction denied where some class members benefit while others are harmed).

**The benefits here are speculative**. The Parties argue the new scholarship benefits outweigh the harm caused by roster limits. But the proposed scholarship limits are not mandatory. They are *optional*. Under the SA, schools <u>do not need to fund scholarships for all roster spots</u>. Article 3(b) of the SA says,

> Member institutions will have the *option* of making incremental athlete scholarships available to student athletes above the number currently permitted by NCAA…rules...[emphasis added].

**The negative ripple effects of approving roster limits will be enormous**. By approving this settlement, this court will sanction the imposition of harm by injunctions – which only currently exist to *prevent* harm. The Parties assert that many schools have already made cuts based on the preliminary approval order. If final approval is granted, the injunction will force schools who waited for the final approval order to unilaterally and unfairly cut thousands of athletes from their rosters without recourse.

Since the Defendants refuse to comply with Rule 23(a)(4), this court has no choice but to deny this settlement. And if the court decides to approve it, then the Court should immediately stay implementation pending (a) a formal motion to stay and/or (b) the exhaustion of all appeals.

Very truly yours,
/s/
Laura Reathaford on behalf of Objector Emma Reathaford