**HAUSFELD**

April 15, 2025

**Michael D. Hausfeld**
**Chair Emeritus**
1200 17th Street NW
Suite 600
Washington DC 20006
T: 202-540-7200
E: mhausfeld@hausfeld.com

**VIA ECF (Case No. 4:20-cv-03919-CW)**
**Honorable Claudia Wilken**
**Re: *In re Collegiate Athlete NIL Litigation***

Dear Judge Wilken:

  The Parties admit that the proposed Settlement ("Settlement") will prevent children, as young as seven-years-old, who have no agency to weigh in and object to this deal, from bringing claims in the future. *See* ECF No. 796 at 1 and 7. ***The Parties' goal is expressly barred by both the Constitution and Rule 23*** because it "deprive[s] [future class members] of both 'voice' and 'exit,' which is incompatible with the strictures of Rule 23 and the Due Process Clause, because class members are entitled to voice their concerns with the court prior to final approval." *In re Payment Card Interchange Fee*, 2024 WL 3236614, at *35 (E.D.N.Y June 28, 2024); *see also Richards v. Jefferson County*, 517 U.S. 793, 799 (1996) ("[T]he right to be heard ensured by the guarantee of due process has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.") (internal quotations omitted). ***"Prior to final approval" means just that – not 60 days after a now seven-year-old child becomes a freshman in college and acts on a notice letter from the NCAA.*** *Staton v. Boeing*, 327 F.3d 930 (9th Cir. 2003), does not detract from this argument because it does not address the due process owed to future college athletes here. In that case, future employees were addressed in a single paragraph. *Id.* at 948. The Ninth Circuit observed "nothing in the decree 'bars any claims of members of the Settlement Class based on or arising out of events occurring after the Preliminary Approval date.'" *Id.* at 948 n.3. Here, Plaintiffs and the NCAA are taking the opposite position.

  The Parties falsely assert they can bind future athletes in this manner because new class representatives will be added every year. The chief cases on which they rely are inapposite because each one of those cases **involved *single sport leagues subject to unionized collective bargaining***. Before the Court, however, is a case involving dozens of sports across dozens of conferences, which the terms of the proposed Settlement treat vastly unequally, and the ***Parties' refusal to engage in collective bargaining***. For example, the Parties rely on a 30-year-old out of circuit district court opinion, *White v. National Football League*, 822 F. Supp. 1389 (D. Minn. 1993), without ever mentioning the Eighth Circuit's observation that "the NFL and the National Football League Players Association ***entered into a new collective bargaining agreement*** incorporating the terms of the settlement agreement." *White v. National Football League,* 41 F.3d 402, 407 (8th Cir. 1994). The Parties also seek to minimize the fact that ***the Supreme Court abrogated White***. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997) (explaining that with the exception of manageability, Rule 23 applies with equal force for settlement-only classes).

  Ultimately, the Settlement asks the Court to enshrine collusion between the Power 5 conferences and the NCAA to cap compensation paid to current and future college athletes for at least a decade. ***Despite the Court's request that the Parties identify the procompetitive justifications for doing so, the Parties have failed to do so***. Instead, they resort to inaccurately claiming "99.9%" of college athletes support the Settlement. They wholly ignore the scores of college athletes who have opted out, submitted objections, and otherwise publicly spoken out against it. The Parties also ignore the breadth of entities and individuals involved in the administration of the Settlement who have also objected to or sought to enjoin it. *See, e.g.,* ECF No. 699 (objection from Intercollegiate Men's Lacrosse Coaches Association); ECF No. 704 (objection from Intercollegiate Tennis Association); ECF No. 1 in *South Dakota v. NCAA*, 4:24-cv-04189-KES (S.D.

hausfeld.com

AMSTERDAM | BERLIN | BOSTON | BRUSSELS | DÜSSELDORF | LONDON | NEW YORK | PARIS | PHILADELPHIA | SAN FRANCISCO | STOCKHOLM | WASHINGTON, DC

Oct. 9, 2024) (seeking to enjoin it).

      The Parties understand there exists no procompetitive justification for the Settlement, which is why they seek to use it as a vehicle to override the existing NIL laws of numerous states and turn Plaintiffs' counsel into cheerleaders for the NCAA's longstanding efforts to obtain antitrust immunity. The anticompetitive nature of this collusive agreement is no more apparent than with respect to third party NIL and NIL collectives, which are, fundamentally, a collection of boosters unaffiliated directly with colleges and universities. Today, athletes benefit from a thriving third party NIL market. More than 80% ($1.3 billion) of the $1.67 billion in NIL compensation is paid by collectives. The Settlement seeks to upend this market and re-allocate booster contributions from athletes to colleges themselves, whereby schools, conferences and the NCAA exchange competitive NIL deal information and collectively police third-party NIL activity. The Settlement then asks this Court to trust that the reallocated funds will be distributed to athletes, despite the fact that ***no institution is bound to do so***. The terms of the Settlement pave the way for the NCAA to crack down severely on deals made in the free market between athletes and NIL collectives. The effect of this is to restrict severely the market for third-party NIL participation, thus severely depressing the current earnings potential of college athletes.

      The Parties have now had three bites at the proverbial apple to address the litany of problems and antitrust violations present in the Settlement. They have failed to do so and the Court should therefore deny final approval.

Very truly yours,

*[signature: Michael D. Hausfeld]*

Michael D. Hausfeld

hausfeld.com

AMSTERDAM | BERLIN | BOSTON | BRUSSELS | DÜSSELDORF | LONDON | NEW YORK | PARIS | PHILADELPHIA | SAN FRANCISCO | STOCKHOLM | WASHINGTON, DC