Re: College Athlete NIL Litigation, Case No. 4:20-cv-03919

The Honorable Claudia Wilken,

I submitted an objection before the January 31 deadline, which was filed on 02/03/25. I am a current Division I athlete and remain anonymous because I fear retaliation.

I am writing to request a grandfather status be granted to protect current athletes and phase in roster limits. I am frustrated that the attorneys failed to follow your recommendation to protect current student-athletes and their benefits. Their lack of respect for the court proceedings is only eclipsed by their contempt for the student-athletes that will be harmed by this settlement.

The new Brief from NCAA and Class Counsel is an extraordinary compilation of untruths, misleading statements and double speak. I will do my best to explain why in one page.

**The lawyers falsely claim that every sports association has roster limits.** They write, "the Parties are aware of no other organized team sports association … that operates without some form of roster limit." Their claim is simply false. The Defendant itself, oversees NCAA Division II and NCAA Division III athletics which do not impose roster limits. In addition, the National Association of Intercollegiate Athletics (NAIA) does not impose roster limits.

**Those divisions do not impose roster limits because they violate antitrust law.** As Class Counsel declared on page 27 of the Third Amended Complaint:

> "_NCAA rules, … that limit the scholarships and roster spots available to players for their athletic services are illegal cartel agreements_."

**The Parties acted prematurely, made a mess, and refuse to clean it up**. First they claimed that roster limits impact a small number of athletes. Now, the Parties admit that roster limits have impacted "tens of thousands of decisions by student-athletes". They argue that because they cut kids prematurely, grandfathering is "unworkable". They literally argue that because they screwed up, the athletes should suffer, roster cuts should continue and athletes should lose their benefits.

**It is not credible for Parties to argue grandfathering is "unworkable".** These are the same lawyers who convinced the court they can accurately and fairly distribute $2.8 billion owed to hundreds of thousands athletes back to 2016 and that they have somehow derived the fair value to pay athletes for the next decade. Now, they want the court to believe that they are too incompetent to figure out how to apply grandfather status to athletes rostered in the last year. They figured out how to grandfather eligibility with COVID years. It's not rocket science

**The fate of many not-cut-yet athletes still rests on the outcome of this Settlement.** Of the 365 Division I schools, many wisely waited to make roster decisions. Some athletes have been told they will only be cut if roster limits are imposed. And some schools are waiting until future years to opt-in. **Granting grandfather status to athletes is very workable and will help thousands of student-athletes.**

**Returning athletes to rosters is simple and happens all the time**. The named plaintiffs Grant House and Sedona Prince both had to petition the NCAA to earn six and seven years of eligibility, respectively. Until the NCAA acted, their roster status was uncertain. Recruits committed to teams and athletes made decisions based on anticipated playing time. Yet returning them to rosters was not unworkable or too disruptive. Hundreds of eligibility petitions and lawsuits end with athletes being returned to rosters even mid-season without disruption.

Most of us have been unwillingly dragged into this. We need class counsel to stand up for us and figure it out. Where there's a will, there's a way. Adults, please find the will, and do the right thing.