Re: College Athlete NIL Litigation, Case No. 4:20-cv-03919

Honorable Judge Wilken, April 15, 2025

    I am writing on behalf of my son, Seth Cannon, who is a student athlete and freshman swimmer at The University of Missouri. Seth submitted his personal objection on January 31 as well as a follow-up declaration on March 10, 2025. Prior to that date, on Tuesday, March 4, 2025, more than a month before the hearing regarding the *House v. NCAA* Settlement Agreement, he was cut from his swim team due to the impending roster limits that could be imposed by the above agreement. His coach told him directly that, under normal circumstances, he would never cut an athlete like Seth because he is hard working, an excellent teammate and a great student.

    Now, in addition to his rigorous class schedule and the demands of being a collegiate swimmer, he also has to navigate the transfer portal. This has placed an undue amount of stress on him and has detrimentally affected his college experience. At this moment, his future is uncertain because he has been arbitrarily included in a class action lawsuit without the opportunity to opt out.

    He is being "represented" by plaintiff's attorneys that clearly do not have his best interest at heart. Said attorneys cannot adequately and fairly represent both the past damages class as well as the injunctive relief class as their interests are vastly different. One group has completed their collegiate careers (some even competing for as many as seven years) and are only looking for a pay day. The other group is either at the beginning of or right in the middle of their collegiate careers. Seventy-two percent of these athletes will not benefit significantly from the monetary gains of the proposed settlement and, in fact, will be financially, emotionally and personally harmed by the proposal. These student athletes want nothing more than to continue to be a part of their teams who have become family, represent the universities that they love and pursue their life long dreams of being a collegiate student athlete. The NCAA advertises that most of these athletes "will be going professional in something other than sports" and that they are preparing them to be contributing members of society. How is this settlement doing that? It's not. It is creating a "me first" mindset that eliminates working toward the greater good of the team, sacrificing for a common goal and learning life lessons that make them stronger.

    Furthermore, the NCAA has yet to give a reasonable and clear explanation of the data that supports the need for roster limits. They have made clear that they will continue to honor the scholarships of athletes who have been cut, so then why not let those kids who are already on teams continue to compete? What is the rationale behind paying scholarships but not letting the kids continue to be a part of their teams? Several times in the hearing on April 7, you made the recommendation to grandfather in current athletes. It makes sense. It is fair and it would go a long way to showing good will toward current athletes. So much harm has already been done to the student athletes who have been prematurely cut from their teams like my son. He, and so many kids like him, are facing life-changing consequences due to something that is totally out of their control and at the hands of the people who are supposed to be helping and guiding them.

    In conclusion, there is no reason that the NCAA cannot adopt a grandfather clause for current athletes who have committed their time and talent to representing the NCAA and their individual conferences. These large conglomerations have already committed to continuing to pay the scholarship money promised, so it is just a slap in the face to keep these kids from competing and developing as athletes and human beings. This settlement agreement has been made by attorneys who stand to gain millions of dollars, conference and NCAA chairmen who already benefit financially from their institutions. Coaches, student athletes and athletic directors were not consulted. They are the ones who have to implement these changes in real life and see the harm that the roster limits will cause.

    Honorable Judge Wilken, I humbly ask that you stand your ground on grandfathering in roster limits. Real young men and women are being adversely affected by even the idea of roster limits. This is not what they signed on for when they signed their National Letters of Intent as they committed to these institutions of higher education. They signed agreements that stated that their scholarships and athletic opportunities were for FOUR years. They were given a long list of dos and don'ts. They have held up their end of the deal, now they just want these institutions to honor their end of the bargain.

    Thank you for your time and consideration.

    Brandi Hahn