Dear Judge Wilken:

My name is Madeleine MacNeille, and I objected to this settlement on January 31, 2025.

I am a current student-athlete at the University of Texas at Austin. I was told by my coach that **if** the House settlement is approved, I will be cut from my team's roster due to the roster limits provision. Despite your request for the NCAA's lawyers to fix this, they have not. If the settlement is denied, **I can stay on my team**. Thousands of athletes are in the same position—coaches have warned them they'll be cut if it passes.

I understand that class action settlements might not help every single person, but they **shouldn't actively hurt people** either. And yet, that's exactly what's happening. We're facing the loss of scholarships, medical care, academic support, and the opportunities we've worked toward for years. Meanwhile, the lawyers who created this deal will be paid for the next decade. For me, this means not only a lost opportunity to play on the team but also a financial loss of well **over $35,000** per year including:

- $5,800 per year in Alston-related education funds
- NIL (Name, Image, Likeness) opportunities
- A meal plan valued at $3,300 per year
- A laptop and school supplies, including tutoring services
- 24/7 access to doctors, including specialists, plus prescription drugs, tests, and procedures
- Professional sports services such as athletic training, nutrition, physical therapy, sports equipment and athletic gear

The parties in this case told you that the removal of scholarships limits outweigh this harm. However, they failed to tell you that the schools are not required to fund scholarships. That means that for some schools, the roster size will go down AND the scholarships could also go down. This is not fair.

I also heard you say at the April 7, 2025, hearing that we should contact the Plaintiffs' lawyers if we have any questions or concerns about this settlement. I have tried to contact them twice since the hearing and did not get a response. My mother also tried to contact them in March and similarly got no response. I am attaching these emails for you to consider because it is my opinion that the Plaintiffs' lawyers have not adequately represented student athletes like me in this case. It is my opinion that they do not care about us and do not care about helping us. Since they are getting paid about 1% of the revenue for the next 10 years (revenue that I was supposed to share in), I do not think it is fair that you approve a settlement that pays the attorneys but results in large financial losses to class members like me.

I'm asking you, please, do not approve this settlement. It puts my future—and the futures of so many others like me—at risk, and we've had no voice in the process. We've worked too hard and sacrificed too much to be pushed aside like this.

Respectfully,

*Maddy MacNeille*

Student-Athlete
University of Texas at Austin

From: **Cory Graef** coryfp@me.com
Subject: **House Settlement**
Date: March 24, 2025 at 5:36 PM
To: ssteve@hbsslaw.com, jkessler@winston.com



March 24, 2025

Dear Attorneys Berman and Kessler,

I am writing to you with urgent concern regarding the proposed settlement in the House v. NCAA case. Specifically, I am alarmed by the roster limits imposed by the NCAA in the settlement, which fail to protect thousands of current student-athletes—whose futures will be drastically impacted by these terms. As the attorneys representing the class, it is your **duty** to ensure that the settlement adequately considers the interests of **all** members of the class, not just those who stand to benefit from the agreement. Allowing roster limits to stand as part of the settlement is a direct failure to uphold that responsibility.

As you are aware, the current average roster sizes in major NCAA sports far exceed the new roster limits the NCAA has proposed. These roster sizes include both scholarship athletes and walk-ons, who are integral to the teams and their success. Allowing roster limits to force cuts will have a devastating impact on thousands of student-athletes who have been recruited and have committed years of their lives to their respective programs. The number of student-athletes detrimentally impacted by the proposed settlement is readily available online, yet you have failed to investigate, falsely claiming that few athletes have stepped forward to advocate for themselves. This is your job! Here are some of the facts:

- According to data on the NCAA's website, football, baseball and women's soccer will all need to cut more than 1,000 athletes.
- The new maximum roster size for 19 NCAA sports will be smaller than the current average roster size in those sports, forcing many coaches to cut current players.
- While some baseball players might benefit from increased scholarship money, nearly 1 in 5 roster spots will disappear at the start of the 2025-2026 school year.
- Although the NCAA is allowing schools to offer more scholarships for various teams, it doesn't mean all schools will take advantage of this opportunity. Many schools may not have the funds to provide additional scholarships while still following the revenue-sharing rules. As a result, the total number of athletes in Division I could decrease by as many as 10,000 spots.

By allowing these roster limits to remain in the settlement, you are permitting the displacement of athletes who were recruited, worked hard to earn their spots, and have relied on their positions to continue their education and athletic careers. The impact of this decision cannot be overstated:

- **Mental Health**: Being removed from the roster will have a devastating psychological effect on these athletes. They will lose not only their athletic identity but their place in the academic system, undermining their self-worth and sense of belonging.

- **Financial Impact**: The scholarships these athletes rely on will be revoked, resulting in financial hardship and potentially leaving them unable to continue their education. The athletes who are not on scholarship will also suffer financial impacts such as the loss of stipends that help offset living expenses, travel and tournament expenses, NIL deals, etc.

- **Loss of Resources**: They will lose access to the medical care, mental health care, academic support, tutoring, training, and career development services that come with being on a team.

As attorneys for the plaintiffs, it is your **legal obligation** to ensure the settlement is fair, reasonable, and adequate for *all* class members. The law mandates that class counsel adequately represents the interests of the class, which includes thoroughly investigating the full impact of the settlement on every single class member. Failing to consider the consequences of the roster limits on current student-athletes—both scholarship and walk-on athletes—is a direct violation of that responsibility.

This settlement, as currently proposed, will leave many current student-athletes vulnerable and unprotected. As class counsel, you must advocate for a settlement that **genuinely** reflects the interests of **all** class members and that provides fair relief for all student-athletes—whether they are on scholarship or not.

I urge you to take immediate and decisive action to protect the athletes who will be most harmed by the roster limits. The settlement must include provisions to prevent the displacement of current student-athletes, ensuring that no athlete, regardless of scholarship status, loses their place on the roster due to these arbitrary limits. Anything less would be an abdication of your responsibility to the class.

Sincerely,

Cory Graef

(parent of a current D1 athlete)

# College Athlete NIL Litigation, Case No. 4:20-cv-03919 - ROSTER LIMITS

From:   Maddy MacNeille (maddymm2004@aol.com)

To:     jkessler@winston.com

Date:   Thursday, April 10, 2025 at 08:39 AM EDT

Dear Mr. Kessler,

My name is Maddy, and I am a preferred walk-on student athlete at an SEC school. I am writing to you to ask for your help. It is my understanding that you represent me in the House v. NCAA case.

About one month ago my coach told me, and two of my teammates, that if the House settlement is approved, we will lose our roster spots. This came as a complete surprise as we were unaware of the ongoing litigation and that it involved us.

I've spent the last 15 years of my life playing my sport…countless hours and sacrifices on the part of myself and my family, all in the hopes of competing at the highest level. I even took a gap year after I graduated from high school to further develop as an athlete. Despite having athletic scholarship opportunities at other universities, I chose to accept a preferred walk-on spot because of the promise of superior athletic training and development at my current university. My Coach and Athletic Department promised me a four-year commitment, and without any due process, that is being ripped away from me.

If the settlement is approved as it stands, I risk losing not only my roster spot but also valuable in-kind benefits—including those allowed under *Alston*—all of which carry real financial value and factored heavily into my family's difficult decision to give up an athletic scholarship. I will lose access to tutoring services, weekly therapy sessions, medical care, 3 meals per day in the athletic dining hall, daily physical therapy, and thousands of dollars per semester that helps to pay for books and other educational needs. I will be forced to transfer to a new university that is more affordable, which will mean moving costs, the costs associated with an early lease termination, the costs of taking additional coursework for the credits that do not transfer, not to mention the emotional costs of starting all over again in a new place.

There are many student-athletes just like me. I cannot understand why we are being punished. I cannot understand why you would agree to a settlement that allows the NCAA to impose roster limits. You are our lawyer, and you are supposed to protect our interests. You are supposed to fight for us just like you are fighting for House. During the hearing on April 7th, I heard Judge Wilken recommend that the NCAA grandfather in current athletes. I expect you to advocate for me and the thousands of others just like me. You should not agree to a settlement that causes so much harm to so many class members. Judge Wilken instructed you and opposing counsel to go back and fix this. As your client, I implore you to go back and fight for my rights to stay on my team.

Sincerely,
Maddy MacNeille

NCAA ID: 2102107716

# Fw: College Athlete NIL Litigation, Case No. 4:20-cv-03919 - ROSTER LIMITS

From: Maddy MacNeille (maddymm2004@aol.com)

To: jkessler@winston.com; steve@hbsslaw.com

Date: Sunday, April 13, 2025 at 11:59 AM EDT

Good Morning Mr. Kessler and Mr. Berman,

I am following up on the email I sent to you this past week. Please respond and let me know how you are working to ensure I do not lose my roster spot and all of the in-kind benefits that I receive as a student-athlete.

Thank you,
Maddy MacNeille

----- Forwarded Message -----
**From:** Maddy MacNeille <maddymm2004@aol.com>
**To:** jkessler@winston.com <jkessler@winston.com>
**Sent:** Thursday, April 10, 2025 at 08:39:52 AM EDT
**Subject:** College Athlete NIL Litigation, Case No. 4:20-cv-03919 - ROSTER LIMITS

> Dear Mr. Kessler,
>
> My name is Maddy, and I am a preferred walk-on student athlete at an SEC school. I am writing to you to ask for your help. It is my understanding that you represent me in the House v. NCAA case.
>
> About one month ago my coach told me, and two of my teammates, that if the House settlement is approved, we will lose our roster spots. This came as a complete surprise as we were unaware of the ongoing litigation and that it involved us.
>
> I've spent the last 15 years of my life playing my sport…countless hours and sacrifices on the part of myself and my family, all in the hopes of competing at the highest level. I even took a gap year after I graduated from high school to further develop as an athlete. Despite having athletic scholarship opportunities at other universities, I chose to accept a preferred walk-on spot because of the promise of superior athletic training and development at my current university. My Coach and Athletic Department promised me a four-year commitment, and without any due process, that is being ripped away from me.
>
> If the settlement is approved as it stands, I risk losing not only my roster spot but also valuable in-kind benefits—including those allowed under *Alston*—all of which carry real financial value and factored heavily into my family's difficult decision to give up an athletic scholarship. I will lose access to tutoring services, weekly therapy sessions, medical care, 3 meals per day in the athletic dining hall, daily physical therapy, and thousands of dollars per semester that helps to pay for books and other educational needs. I will be forced to transfer to a new university that is more affordable, which will mean moving costs, the costs

associated with an early lease termination, the costs of taking additional coursework for the credits that do not transfer, not to mention the emotional costs of starting all over again in a new place.

There are many student-athletes just like me. I cannot understand why we are being punished. I cannot understand why you would agree to a settlement that allows the NCAA to impose roster limits. You are our lawyer, and you are supposed to protect our interests. You are supposed to fight for us just like you are fighting for House. During the hearing on April 7th, I heard Judge Wilken recommend that the NCAA grandfather in current athletes. I expect you to advocate for me and the thousands of others just like me. You should not agree to a settlement that causes so much harm to so many class members. Judge Wilken instructed you and opposing counsel to go back and fix this. As your client, I implore you to go back and fight for my rights to stay on my team.

Sincerely,
Maddy MacNeille
NCAA ID: 2102107716