

39 Mesa Street
Suite 201
The Presidio
San Francisco
California
94129

Tel: 415.398.0900
Fax: 415.398.0911
www.phillaw.com

Phillips, Erlewine, Given & Carlin LLP

April 9, 2025

**VIA ELECTRONIC MAIL**

Attn: Hon. Claudia Wilken
<cwcrd@cand.uscourts.gov>
cc: 9Docketing@cand.uscourts.gov

    Re:    **College Athlete NIL Litigation [Case No. 4:30-cv-03919] – Discussion of *White v. NFL***

Dear Judge Wilken:

    We are counsel to Leonard B. Simon, attorney and law professor in San Diego. He filed a short *amicus* brief in opposition to the injunctive relief (ECF 603).

    The Court expressed interest at Monday's final approval hearing in the *White* case and other cases in that line. In our amicus brief, we criticized class counsel's misuse of *White* and distinguished those cases in a few paragraphs of our brief, quoted below for your convenience (emphasis added):

> "Because unionized professional sports leagues have collective bargaining agreements ("CBAs") which often include caps on salaries, settling parties try to equate their $20 million cap with caps in those CBAs, going so far as to try to equate the college athletes' likely income with those of the professional athletes. This analogy is flawed at its core, since unionized pro athletes with CBAs are governed by a comprehensive system negotiated by their union leaders, whom they elect, and who protect their interests through the negotiation and administration of the CBA, battle for the best possible deal, file grievances and the like if CBA terms are not followed, and seek salary floors rather than caps, sometimes compromising and getting both. A union leader would be fired if he or she negotiated a deal similar to the injunctive settlement.
>
>     College and professional athletes are far different, well beyond having compensation floors more often than caps. The pros do not need to compete with athletes in other sports for a common pot of income. Moreover, the pro athletes are typically living under a CBA that a majority voted for, and they typically elect their leaders, who negotiate the CBA. Finally, pro athletes are employees with all the rights that state and federal laws give them, while college athletes are not. Not a single one of those things is present in college athletics.
>
>     **Relatedly, the pro sports cases antitrust settlement approvals relied upon by settling parties all involve unionized professional sports, and there is union involvement in each settlement.** In *Robertson v. Nat'l Basketball Ass'n,* 72 F.R.D. 64,

Hon. Claudia Wilken
April 9, 2025
Page 2

**69-70, 69 n.1 (S.D.N.Y. 1976), aff'd, 556 F.2d 682, 686 (2d Cir. 1977) settlement discussions involved not only class counsel … but … general counsel for the NBA Players Association." In *Bridgeman v. Nat'l Basketball Ass'n*, 675 F. Supp. 960 (D.N.J. 1987), there was a union in place, but when the CBA had expired, antitrust litigation was brought to force improvements in a new CBA, which were obtained via settlement, and a new CBA. Six years later, the NBA repeated this minuet in *Nat'l Basketball Ass'n v. Williams*, 857 F. Supp. 1069 (S.D.N.Y. 1994), another case settled with a new CBA. And the one football case, *White v. NFL*, 822 F. Supp. 1389, 1421 (D. Minn. 1993), is the same, where the Court found it to be "significant that class counsel consulted with the NFLPA in negotiating the settlement."**

All of these cases approve compensation rules agreed to by a labor union—or by class action counsel *and* a labor union—and are thus protected by the labor exemption to the antitrust laws. And all of these cases involve comprehensive CBAs, which provide far more than a salary cap, creating many rights for the athletes. A naked salary cap in college sports has no similarity to what occurred in any of these four cases."

Thus, contrary to Mr. Kessler's assertion at the hearing, there was, in fact, a union involved in *White*, although it had temporarily de-certified itself in order to obtain antitrust rights, and then recertified as soon as the settlement was done.

This distinction is a crucial point in considering the future-facing relief, which was negotiated without input from future athletes or from counsel representing them without conflicts. This case bears little resemblance to *White* and similar cases, as there is no union lurking in the background just waiting to administer the new arrangement, nor is unionization likely to occur in the near future.

Thank you for considering our views.

Respectfully submitted,

/s/ David M. Given
David M. Given

For Amicus Leonard B. Simon, Esq.

DMG: hjz