April 15, 2025

The Honorable Claudia Wilken
Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

Re: College Athlete NIL Litigation Case No. 4:20-cv-03919 (N.D. Cal)

Dear Judge Wilken:

We focus here on benefits that thousands of women will be deprived of due to the proposed Settlement. As emphasized in our March 24 letter to the Court (ECF No. 747), we are not suggesting that the Court needs to resolve the merits of any Title IX claim at this stage.[1] Instead, we respectfully ask that the Court consider:

**The past damages formula has inherent Title IX problems.** The formula utilized to derive past damages should have been $886M greater for women at least for BNIL in the "but for" world to accommodate the Title IX obligation (53% to women/47% to men) (id. at 3). Dr. Rascher was explicitly told not to include Title IX in his "but for" economic analysis which produced a 97% male/3% female BNIL distribution. This is a fatal flaw in the settlement. The question for your Honor now is not whether Title IX should be included (which it should), but whether it was reasonable, adequate and fair to intentionally—explicitly—at the lawyers' request (as opposed to the expert's opinion)— ignore this potential Title IX obligation.

**There should be no release of any Title IX claims**. The scope of the Title IX release is a moving target.  Originally, there was nothing regarding a Title IX release; after the hearing for preliminary approval, the plaintiffs in their supplemental brief for preliminary approval stated they would not release any Title IX claims (ECF No. 534 at 29), but then the attached amended agreement capped the release to Title IX claims "other than claims arising from or relating to the distribution of the Settlement Fund" (¶ 1(vv)(3)).  The language changed again in the plaintiffs' brief in support of the final agreement, stating that the release did not apply to claims: "arising from distribution of the gross settlement agreement" (ECF No. 717 at 62); their reply brief stated the release did not apply to claims: "related to the distribution of the settlement fund" (ECF No. 745 at 13).  And to cap off the confusion regarding exactly what they sought to carve out, the plaintiffs' reply brief stated that "the settlement does not release any Title IX claims based on Defendants' (or anyone else's) conduct, past present or future" (id. at 13).  While the plaintiffs describe this as a "very narrow release" (ECF NO 717 at 62); it is not. There must be no release with respect to Title IX. Otherwise, regardless of which pigeonhole the parties are attempting to carve out—narrow or not—an unknown number of women athletes are giving up $886M in benefits they otherwise may be entitled to because they are prohibited from pursuing past damages cases under Title IX.

**The Settlement is a bridge too far**. The Court should not approve this Settlement agreement because its transformational change jeopardizes women's sports, putting them back to pre-Title IX days when college football and men's basketball received the vast majority of opportunities and benefits. Plus, it will cause an "intergalactic paradigm shift" (id. at 17) that will impact the entire ecosystem of college sports, including the cutting of women's and other Olympic sports, among other foundational aspects of college sports as highlighted in our March 24th letter.

Sincerely,

Donna A. Lopiano
Adjunct Professor of Sports Management
Southern Connecticut State University
Donna.Lopiano@gmail.com

Andrew Zimbalist
Robert A. Woods Professor of Economics
Smith College
AZiimbali@smith.edu

---

[1] While relevant to the merits, an inaccuracy at the hearing must be noted.  The parties have stated that Title IX does not apply because the NCAA, not the schools, is paying the damages.  But that is not correct. Schools are paying for the past damages---60 percent will come from 10 years of reductions in revenue distributions that the NCAA makes to schools.