IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: COLLEGE ATHLETE NIL LITIGATION | Case No. 20-cv-03919 CW<br><br>**ORDER REGARDING MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**<br><br>(Re: Dkt. No. 717) |

Now before the Court is Plaintiffs' motion for final approval of a settlement agreement. Docket No. 717. The Court held a hearing on the motion on April 7, 2025. After the hearing, the parties submitted a supplemental brief in support of the motion, Docket No. 796, as well as a Third Amended Stipulation and Settlement Agreement, Docket No. 796-2. The Third Amended Stipulation and Settlement Agreement (hereinafter, the settlement agreement) addresses one of the Court's concerns by clarifying that future Division I athletes will not release their injunctive and declaratory relief claims until they have received notice and an opportunity to object to the continuation of the settlement agreement. *See* Docket No. 796-2.

After carefully reviewing the parties' and the objectors' submissions and considering the arguments made at the April 7, 2025, hearing, the Court finds as follows:

1.  The Court tentatively finds that the proposed Damages Settlement Classes can be certified for purposes of judgment on the settlement agreement, notwithstanding the objectors'

1    arguments to the contrary, which the Court is inclined to overrule.  The Court also tentatively

2    finds that the Injunctive Relief Settlement Class can be certified for purposes of judgment on the

3    settlement agreement, notwithstanding the objectors' arguments to the contrary, which the Court

4    is inclined to overrule.

5        2.    With the exception of the immediate implementation of the roster limits provisions

6    that will cause harm to certain members of the Injunctive Relief Settlement Class, as discussed in

7    more detail below, the Court tentatively finds that it can grant final approval of the remainder of

8    the settlement agreement as fair, reasonable, and adequate to members of the Settlement Classes

9    under Federal Rule of Civil Procedure 23(e)(2) notwithstanding the objectors' arguments, which

10    the Court is inclined to overrule.

11        3.    Some of the objectors argue that the provisions of the settlement agreement that

12    permit the National Collegiate Athletic Association (NCAA) to adopt Division I roster limits

13    preclude final approval of the settlement agreement because such provisions violate the Sherman

14    Act.  However, the Court finds that, because merely setting roster limits is not a per se violation

15    of the Sherman Act but rather is subject to review under the rule of reason, and because

16    Defendants have proffered procompetitive justifications for them, it is not clear that setting roster

17    limits violates the Sherman Act.  Accordingly, the setting of roster limits does not preclude the

18    Court from granting final approval of the settlement agreement.  *See Robertson v. Nat'l*

19    *Basketball Ass'n*, 556 F.2d 682, 686 (2d Cir. 1977) (affirming approval of settlement agreement

20    in relevant part because the agreement authorized no future conduct that was clearly illegal under

21    the Sherman Act).

22        4.    However, objectors have shown that the immediate implementation of the roster

23    limits provisions of the settlement agreement has resulted or will result in harm to a significant

24    number of members of the Injunctive Relief Settlement Class (1) who are on a roster but will be

25    removed from the roster because of the immediate implementation of the settlement agreement;

26    and (2) who were on a roster but were removed from the roster in the last several months because

27    of the premature implementation of the settlement agreement.  *See, e.g.*, Docket Nos. 628, 628-3,

28    628-5.  Those class members will be harmed because their roster spot will be or has been taken

1  away as a result of the immediate implementation of the settlement agreement, yet they will be
2  deemed to have released their injunctive and declaratory relief claims as part of the settlement
3  agreement.  As members of the Injunctive Relief Settlement Class, they do not have the right to
4  opt out.  That outcome is not fair to those class members, and that remains true even if other class
5  members may benefit from the Injunctive Relief Settlement and a large number of members of
6  the Damages Settlement Classes have filed claims under the settlement agreement.  The Court
7  expressed its concerns about this issue during the hearing on April 7, 2025, and called for
8  supplemental briefing on the issue.  The Court can approve the settlement agreement only if it is
9  fair, reasonable, and adequate after considering, in relevant part, whether it "treats class members
10 equitably relative to each other."  *See* Fed. R. Civ. P. 23(e)(2)(D).  Because the settlement
11 agreement is not fair and reasonable to the significant number of class members whose roster
12 spots will be or have been taken away because of the immediate implementation of the settlement
13 agreement, the Court cannot approve the settlement agreement in its current form.  *See Staton v.*
14 *Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003) (holding that "judges have the responsibility of
15 ensuring fairness to all members of the class presented for certification"); *Wal-Mart Stores, Inc.*
16 *v. Dukes*, 564 U.S. 338, 360 (2011) ("Rule 23(b)(2) applies only when a single injunction or
17 declaratory judgment would provide relief to each member of the class.").

18       The parties admit in their supplemental brief that some class members "may ultimately
19 have lost roster spots as a result of the Settlement," but they argue that the Court should
20 nevertheless approve the settlement agreement because those class members will be able to
21 compete for scholarships and other benefits that were not available in the absence of the settlement
22 agreement.  *See* Docket. No. 796 at 16.  The parties argue that prior cases "endorse this
23 principle[.]"  *See id.*  The Court is not persuaded.  The cases that the parties cite in their
24 supplemental brief are inapposite.  None of them addresses the question of whether a settlement
25 agreement that involves injunctive relief for a Rule 23(b)(2) class can be approved where it has
26 been shown that its immediate implementation will cause harm to some members of the Rule
27 23(b)(2) class.
28

In their supplemental brief, the parties acknowledge that Defendants and NCAA member schools have been proceeding on the assumption that the Court would grant final approval of the settlement agreement and have therefore already begun to implement the roster limits provisions. *See* Docket No. 796 at 13-15. They further argue that modifying the roster limits provisions, such as by "grandfathering" the affected class members, is not "practicable." They contend that doing so would cause disruption. *See id.* The Court finds that the decision by Defendants and NCAA member schools to begin implementing the roster limits before the Court granted final approval of the settlement agreement is not a valid reason for approval of the agreement in its current form despite the harm discussed above. Any disruption that may occur is a problem of Defendants' and NCAA members schools' own making. The fact that the Court granted preliminary approval of the settlement agreement should not have been interpreted as an indication that it was certain that the Court would grant final approval. One of the factors that courts must consider when determining whether to grant final approval of a settlement agreement is "the reaction of the class members" to the agreement. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). One of the reasons for granting preliminary approval of a settlement agreement is to authorize the dissemination of notice to class members so that they have the opportunity to come forward with their reactions to the agreement.

The Court will delay denial of final approval to permit the parties to attempt to modify the settlement agreement so that members of the Injunctive Relief Settlement Class will not be harmed by the immediate implementation of the roster limits provisions. One way of achieving that could be to modify the settlement agreement to ensure that no members of the Injunctive Relief Settlement Class who have or had a roster spot will lose it as a result of the immediate implementation of the settlement agreement. Limits could be accomplished gradually by attrition. There may be other ways of mitigating the harm to members of the Injunctive Relief Settlement Class. A new round of notices to class members may not be required if the parties modify the settlement agreement in a manner that does not adversely affect class members. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330 (N.D. Cal. 2018).

Within fourteen days of the date of this order, the parties shall make their best efforts to consult with their mediator, Professor Eric Green, remotely, and together or separately, about potential modifications of the settlement agreement to address the Court's concerns. If Professor Green is entirely unavailable, the Court will refer the parties for a settlement conference with a Magistrate Judge. The Court requests that Laura Reathaford, Steven F. Molo, and the Buchalter firm, who are attorneys who have already entered apperances to represent some of the objectors who complained about the implementation of the roster limits, consult remotely, together or separately, with Professor Green or the Magistrate Judge and the parties' counsel.

5. Meanwhile, the Court will issue a case management order with deadlines for responsive briefs on the parties' pending cross-motions for summary judgment and related *Daubert* motions, and a hearing date for those motions, after which dates will be set for pretrial and trial.

IT IS SO ORDERED.

Dated: April 23, 2025

_____
CLAUDIA WILKEN
United States District Judge