Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
Meredith Simons (SBN 320229)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com
merediths@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
bens@hbsslaw.com

*Class Counsel for Plaintiffs*

[Additional counsel on signature page]

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com
nvyas@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
jparsigian@winston.com

*Class Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Claudia Wilken |

Plaintiffs submit this Supplemental Brief in accordance with the Court's April 23, 2025 Order Regarding Motion for Final Approval of Settlement Agreement (ECF No. 948) (the "Order") and are pleased to report that we secured the roster-limit exceptions for Injunctive Relief Class Members that the Court requested in the Order. With these added protections, Plaintiffs urge the Court to grant final approval of the Settlement Agreements in both *House* and *Hubbard*.

Plaintiffs have carefully considered the Court's tentative findings that it can: (1) grant final approval of the settlement agreement in *Hubbard*; and (2) grant final approval of the settlement agreement in *House*, with one exception discussed below. *See* Order Regarding Motion for Final Approval of Settlement Agreement, *Hubbard v. NCAA*, No. 4:23-cv-01593-CW (N.D. Cal. Apr. 23, 2025) (ECF No. 261); Order ¶¶ 1–2. Specifically, the Court indicated that it cannot grant final approval in this action unless the parties "modify the settlement agreement so that members of the Injunctive Relief Settlement Class will not be harmed by the immediate implementation of the roster limits provisions." Order ¶ 4. The Court expressed concern about harm to certain class members who "are" or "were" on a roster and whose "roster spot will be or has been taken away as a result of the immediate implementation of the settlement agreement." *Id.* The Court gave the parties 14 days to seek an agreement to modify the roster limit provisions of the Settlement, with the assistance of mediator Eric Green, and asked three objector groups—represented by Laura Reathaford, Steven F. Molo, and the Buchalter firm (the "Objectors")—to express their views on the proposed changes through the mediation process. *Id.*

Since April 23, Class Counsel has met numerous times, by telephone and by video, with Mr. Green and with counsel for Defendants to address the Court's concerns. The parties also met with Mr. Green and Objectors' counsel on May 2, and Class Counsel and Objectors' counsel engaged in multiple additional phone calls and emails and reviewed various proposals from the Objectors. Finally, Class Counsel received and considered the views of individual class members who have contacted us directly.

With respect to the modifications proposed below, Class Counsel obtained additional protections for athletes "who have or had a roster spot" on a Division I team during the 2024-2025 academic year. Class Counsel also secured additional protections for recruited athletes who will

enroll in college for the 2025-2026 academic year and who had been promised a Division I roster spot for the 2025-2026 academic year—even though such athletes are still in high school and do not currently "have" and never previously "had" a Division I roster spot. In addition, although the Order did not specifically identify roster limits enacted outside of the Settlement (i.e., Conference-specific roster limits), Class Counsel nonetheless secured a commitment that roster limit exemptions will extend to Conference roster limits too. Further still, some athletes and parents had expressed concerns about athletes who transferred in the wake of Defendants' preparations to implement roster limits and that some of their original schools may no longer want those athletes to return. In response, Class Counsel achieved yet another highly valuable protection: athletes who are exempt from roster limits will be able to enjoy that exemption at both their current school and any school they may transfer to or enroll in.

In short: any athlete who would have lost their roster spot (or a promised roster spot) for the 2025-2026 academic year due to the immediate implementation of roster limits will be ***exempt from any roster limits at any Division I institution***, ***for the duration of their college athletics careers***. While the specific changes to the Settlement Agreement are set forth in Exhibits 1 (clean version) and 2 (redline version) hereto, in sum and substance, Plaintiffs secured the following additional protections:

1. The NCAA roster limits in the Settlement (and any Conference-specific roster limits enacted outside of the Settlement) **will not apply** to any athlete who was on a Division I roster during the 2024-2025 academic year and who was or would have been removed from that roster for the 2025-2026 academic year due to the implementation of roster limits;

2. The NCAA roster limits in the Settlement (and any Conference-specific roster limits enacted outside of the Settlement) **will not apply** to any high school athlete who was recruited to be, or was assured they would be, on a school's Division I roster for the 2025-2026 academic year and who was or would have been removed from that roster for the 2025-2026 academic year due to the implementation of roster limits;

3. Athletes who fall within categories 1 or 2 above ("Designated Student-Athletes") ***do not count towards any school's roster limit*** for the duration of the athlete's Division I athletic eligibility (i.e., the athlete may transfer to or enroll in another school and remain exempt from any roster limits);

4. Within thirty days of Final Approval, each Division I school is required to use good-faith efforts to identify for Class Counsel their Designated Student-Athletes; Class Counsel will

have the right to enforce this obligation if additional athletes should have been identified as Designated Student-Athletes;

5. Class Counsel will make information about who has been identified as a Designated Student-Athlete available to class members; and

6. If any athlete transferred or is scheduled to transfer because they were told that they would be removed from a roster in 2025-2026 due to the implementation of roster limits, nothing in the NCAA rules (e.g., designated transfer windows) will restrict schools from allowing that athlete to transfer back to—or rescind their decision to transfer from—their original school.

Plaintiffs believe that these changes to the Settlement Agreement exceed the protections that the Court requested, including by ensuring that any athlete who would have lost a roster spot (or a promised roster spot) for the 2025-2026 academic year will not be subject to roster limits for the durations of his or her Division 1 athletic eligibility at any school. To highlight how these protections will address the Court's concerns, Plaintiffs have reviewed the declarations and letters submitted by individual athletes regarding roster limits and prepared a chart that identifies the ones who, based on the statements in their submissions, will qualify as Designated Student Athletes.[1] *See* Exhibit 3.[2]

While Defendants insisted that the changes to the Settlement Agreement recognize that individual schools and their athletics departments retain discretion to independently determine which athletes will be on their rosters, that has always been the case; and it remains unchanged whether or not there are roster limits. The revisions to the Settlement Agreement ensure that class members who have or would have lost roster spots or promised roster spots as a result of the new roster limits will be in the same position as they would have been in if roster limits were never implemented, i.e., roster limits do not apply to them. We thus believe that this relief is exactly the

---

[1] Division I schools will prepare their lists of Designated Student Athletes in good faith and if necessary, Class Counsel is prepared to promptly address any discrepancies.

[2] Several objections or letters were filed anonymously or describe general concerns that the immediate implementation of roster limits will result in athletes losing roster spots (or promised roster spots). The revisions to the Settlement Agreement also address their concerns. And any athlete who attends a non-Conference Defendant school that elects not to opt-into the Pool system will not be subject to roster limits at all.

type of change that the Court was seeking and in fact, provides even greater protections for athletes than the Court identified.

Plaintiffs respectfully submit that the parties have now fully addressed the Court's concerns about the potential adverse impact on class members who would have lost their roster spots or promised roster spots in the 2025-26 academic year as a result of the immediate introduction of roster limits. We therefore ask that the Court grant final approval of the Settlements in both *House* and *Hubbard* so that class members can benefit from the historic changes that the Settlements provide.

DATED: May 7, 2025

Respectfully submitted,

By  /s/ Steve W. Berman
Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
Meredith Simons (SBN 320229)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com
merediths@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

Jeffrey L. Kodroff (*pro hac vice*)
Eugene A. Spector (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, PC**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
jkodroff@srkattorneys.com

By  /s/ Jeffrey L. Kessler
Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
aidale@winston.com
sviebrock@winston.com
nvyas@winston.com

Jeanifer E. Parsigian (SBN 289001)
**WINSTON & STRAWN LLP**
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Class Counsel for Plaintiffs*

espector@srkattorneys.com

*Class Counsel for Plaintiffs*

-5-

PLS.' SUPPL. MOT. IN SUPP. OF FINAL SETTLEMENT APPROVAL        Case No. 4:20-cv-03919-CW

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatories above.

By: */s/ Steve W. Berman*
      STEVE W. BERMAN