# EXHIBIT 2

1
2
3
4

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**(OAKLAND DIVISION)**

5
6    In re: College Athlete NIL Litigation
7
8
9
10

No. 4:20-CV-03919 (N.D. Cal)

11
12    ~~THIRD~~ <u>FOURTH</u> **AMENDED STIPULATION AND SETTLEMENT AGREEMENT**
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Fourth~~Third~~ Amended Stipulation and Settlement Agreement, inclusive of all exhibits and appendices (hereinafter, "Agreement," "Settlement Agreement" or "SSA"), is made and entered into as of ~~September 26~~May 7, ~~2024~~2025, by and between Plaintiffs, both individually and on behalf of the Classes in the above-captioned class action, and Defendants National Collegiate Athletic Association ("NCAA"), Atlantic Coast Conference ("ACC"), The Big Ten Conference, Inc. ("Big Ten"), The Big 12 Conference, Inc. ("Big 12"), Pac-12 Conference ("Pac-12") and Southeastern Conference ("SEC") (collectively, the "Defendants"). This Settlement Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

## RECITALS

WHEREAS, Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Classes against Defendants;

WHEREAS, Plaintiffs have alleged, among other things, that Defendants have engaged in anticompetitive conduct in violation of the U.S. antitrust laws in connection with certain NCAA and conference rules and practices regarding (a) compensation and benefits which may be provided to student-athletes during the relevant class periods and (b) NCAA roster and scholarship limits;

WHEREAS, the Defendants have denied and continue to deny each and all of the claims and allegations of wrongdoing made by the Plaintiffs in the Action; all charges of wrongdoing or liability against them arising out of or relating to any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action; the allegations that the Plaintiffs or any member of the Classes were harmed by any conduct by the Defendants alleged in the Action or otherwise; and deny any liability whatsoever;

WHEREAS, Plaintiffs and Defendants agree that neither this SSA nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Defendants or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, arm's-length settlement negotiations have taken place between Defendants and Class Counsel—under the supervision of a highly experienced third-party mediator, Eric Green—and this SSA embodies all of the terms and conditions of the good-faith settlement between the Parties, and has been reached as a result of the Parties' negotiations and mediations, subject to approval of the Court;

WHEREAS, Class Counsel have concluded, after extensive discovery and due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto and the applicable law, that it is in the best interests of the Plaintiffs and the Classes to enter into this SSA to avoid the uncertainties of litigation and to ensure that the benefits reflected herein are obtained for the Plaintiffs and the Classes, and, further, that Class Counsel consider the settlement set forth herein to be fair, reasonable, and adequate and in the best interests of the Plaintiffs and the Classes; and

WHEREAS, Defendants, despite their asserted defenses and continued denial of Plaintiffs' allegations and of all liability claimed therein, have nevertheless agreed to enter into this SSA to avoid the further expense, risk, and inconvenience and distraction of burdensome and protracted litigation, to obtain the releases, orders, and judgment contemplated by this SSA, and thereby to put to rest with finality all claims that have been or could have been asserted against Defendants' rules regarding monies and benefits that may be provided to student-athletes, scholarship limits, and roster limits based on the allegations in Plaintiffs' amended complaint.

## AGREEMENT

NOW, THEREFORE, in consideration of the agreements herein set forth, it is hereby stipulated and agreed by and among the Parties, by and through their attorneys of record, that the claims of the Plaintiffs and the Classes be finally and fully settled, compromised, and dismissed on the merits and with prejudice as to Defendants and all other Releasees and, except as hereafter provided, without costs against the Plaintiffs, the Classes, or Defendants, subject to

the approval of the Court, on the following terms and conditions:

**A.**    **Definitions**

1.    As used in this SSA and its exhibits and appendices, the following terms have the meanings specified below:

(a)    "Academic Year" means July 1 of any given calendar year during the Term through and including June 30 of the following calendar year.

(b)    "Action" means the litigation captioned *In re: College Athlete NIL Litigation*, Case No. 4:20-CV-03919 (N.D. Cal).

(c)    "Additional Compensation Claims Settlement Amount" means the total sum of six hundred million US dollars ($600,000,000.00).

(d)    "Additional Counsel" means Jeffrey Kodroff of Spector, Roseman & Kodroff, P.C.

(e)    "Associated Entity or Individual" means:

1.    An entity that is or was known (or should have been known) to the athletics department staff of a Member Institution, to exist, in significant part, for the purpose of (i) promoting or supporting a particular Member Institution's intercollegiate athletics program or student-athletes; and/or (2) creating or identifying NIL opportunities solely for a particular Member Institution's student-athletes;

2.    An individual who is or was a member, employee, director, officer, owner, or agent of an entity described in Paragraph A(1)(e)(1) above;

3.    An individual who directly or indirectly (including contributions by an affiliated entity or family member) has contributed more than $50,000 over their lifetime to a particular Member Institution or to an entity described in Paragraph A(1)(e)(1) above;

4.    An individual or entity that (1) has been directed or requested by a Member Institution's athletics department staff to assist in the

recruitment or retention of prospective or current student-athletes, or (2) otherwise has assisted in the recruitment or retention of prospective or current student-athletes; or

5.  Any entity owned, controlled, or operated by, or otherwise affiliated with, the individuals or entities described in Paragraph A(1)(e)(1)-(4) above other than a publicly traded corporation.

(f)    "Authorized Recipient" means any member of any or all of the Damages Settlement Classes who, in accordance with the terms of this Agreement, is entitled to a distribution consistent with any Distribution Plan or order of the Court.

(g)    "Classes" means collectively the Damages Settlement Classes and the Injunctive Relief Settlement Class.  All of the Classes exclude the officers, directors, and employees of Defendants.  All of the Classes also exclude all judicial officers presiding over the Action and their immediate family members and staff.

(h)    "Class Counsel" means the law firms of Winston & Strawn LLP and Hagens Berman Sobol Shapiro LLP, with lead Class Counsel Jeffrey Kessler and Steve Berman.

(i)    "Class Member" means a Person who falls within the definition of one or more of the Classes.

(j)    "College Football Playoff" means CFP Administration, LLC ("CFPA"), a Delaware limited liability company, whose members are the Conference Defendants, together with the American Athletic Conference, Conference USA, the Mid-American Conference, the Mountain West Conference, the Sun Belt Conference, and the University of Notre Dame; CFP Events, Inc., a Delaware corporation, all the shares of which are owned by CFPA; BCS Properties, LLC, a Delaware limited liability company; and the College

Football Playoff Foundation, a Delaware non-profit.

(k)  "Complaint" means the amended complaint filed in the Action on July 26, 2024.

(l)  "Conference Defendant" means individually each of the ACC, the Big Ten, the Big 12, the Pac-12, and the SEC; collectively the foregoing are referred to as "Conference Defendants."

(m)  "Court" means the United States District Court for the Northern District of California.

(n)  "Damages Fee and Expense Award" means any order entered by the Court awarding Class Counsel and/or Additional Counsel any amount of fees and/or costs in connection with the settlement of the monetary damages claims of the Damages Settlement Classes as detailed in Paragraph 28.

(o)  "Damages Settlement Classes" means the classes asserted in the Action pursuant to Fed. R. Civ. P. 23(b)(3) as modified below:

1.  *Football and Men's Basketball Class*:  All student-athletes who have received or will receive full GIA scholarships and compete on, competed on, or will compete on a Division I men's basketball team or an FBS football team, at a college or university that is a member of one of the Power Five Conferences (including Notre Dame), and who have been or will be declared initially eligible for competition in Division I at any time from June 15, 2016 through September 15, 2024.

2.  *Women's Basketball Class*:  All student-athletes who have received or will receive full GIA scholarships and compete on, competed on, or will compete on a Division I women's basketball team at a college or university that is a member of one the Power Five Conferences (including Notre Dame), and who have been or

will be declared initially eligible for competition in Division I at any time from June 15, 2016 through September 15, 2024.

3. *Additional Sports Class*:  Excluding members of the Football and Men's Basketball Class and members of the Women's Basketball Class, all student-athletes who compete on, competed on, or will compete on a Division I athletic team and who have been or will be declared initially eligible for competition in Division I at any time from June 15, 2016 through September 15, 2024.

(p)    "Defendants" means, collectively, the NCAA, the ACC, the Big Ten, the Big 12, the Pac-12, and the SEC.

(q)    "Distribution Plan" means the plan or formula of allocation of the Gross Settlement Fund for future distribution to Authorized Recipients.

(r)    "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 32 of this Agreement have occurred and have been met.

(s)    "Escrow Account" means the bank account to be established at a banking institution chartered pursuant to the National Bank Act by Class Counsel and the NCAA and maintained by the Escrow Agent into which the Gross Settlement Fund and any Injunctive Relief Fee and Expense Awards payable before the Effective Date shall be deposited, pursuant to the terms of this Settlement Agreement and the Escrow Agreement.  Such Escrow Account is to be administered under the Court's continuing supervision and control.

(t)    "Escrow Agent" means the escrow agent (and any successor agent) jointly designated by Class Counsel and the NCAA to administer the Escrow Account in accordance with the Escrow Agreement.

(u)    "Escrow Agreement" means the agreement to be mutually agreed to by

the Parties concerning the Escrow Account.

(v)     "Execution Date" means the date of the last signature set forth on the signature pages below.

(w)     "Final Approval" means the date the Court has entered the Final Approval Order as described in Paragraph 15 below.

(x)     "Gross Settlement Fund" means the NIL Claims Settlement Amount and the Additional Compensation Claims Settlement Amount plus any interest that may accrue.

(y)     "Injunctive Relief Fee and Expense Awards" means any order entered by the Court awarding Class Counsel any amount of fees and/or costs in connection with the settlement of the injunctive relief claims of the Injunctive Relief Settlement Class as detailed in Paragraph 27.

(z)     "Injunctive Notice Costs" means the reasonable and authorized costs and expenses, not to exceed one million US dollars ($1,000,000.00), to be paid by Plaintiffs or deducted from the Gross Settlement Fund for the cost of notice to the Injunctive Relief Settlement Class.

(aa)    "Injunctive Relief Settlement Class" means the class asserted in the Action pursuant to Fed. R. Civ. P. 23(b)(2):  All student-athletes who compete on, competed on, or will compete on a Division I athletic team at any time between June 15, 2020 through the end of the Injunctive Relief Settlement Term.  Solely for purposes of Paragraphs 13–14, 19–21, and 36 below, the Injunctive Relief Settlement Class shall be divided into two groups:  (1) "Current Injunctive Relief Settlement Class Members" defined as all members of the Injunctive Relief Settlement Class who competed on, or are competing on, a Division I athletic team prior to Final Approval, and (2) "Incoming Injunctive Relief Settlement Class Members," defined as all members of the Injunctive Relief Settlement Class who will compete

for the first time on a Division I athletic team after Final Approval.

(bb)   "Injunctive Relief Settlement" means the Second Amended Injunctive Relief Settlement attached as Appendix A to this Fourth Amended Settlement Agreement and fully incorporated herein.

(cc)   "Injunctive Relief Settlement Term" or "Term" means ten (10) Academic Years from the date of Final Approval of this Agreement.

(dd)   "Judgment" means the order of judgment and dismissal, with prejudice, of the Action.

(ee)   "Member Institution" means any college, school, or university that is a member, in any sport, of NCAA Division I and/or a Conference Defendant, together with any entity owned, controlled, funded, or operated by said college, school, or university (or any division or department thereof).

(ff)   "NIL Claims Settlement Amount" means the total sum of one billion, nine hundred seventy-six million US dollars ($1,976,000,000.00).

(gg)   "Notice and Administrative Costs" means the reasonable and authorized costs and expenses, not to exceed one million US dollars ($1,000,000.00) absent written consent of all Parties, to be paid out of the Gross Settlement Fund to pay for the cost of notice to the Damages Settlement Classes and related administrative costs.

(hh)   "Notice and Claims Administrator" means the claims administrator(s) to be selected by Class Counsel and approved by the Court.

(ii)   "Opt-Out" means a Person who falls within the definition of the Classes who has timely and validly elected to be excluded from one of the Damages Settlement Classes pursuant to the procedures set forth in this Settlement Agreement.

(jj)   "Parties" means, collectively, Defendants and the Plaintiffs (on behalf of

themselves and the Classes).

(kk)    "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and any spouses, heirs, predecessors, successors, representatives, or assignees of any of the foregoing.

(ll)    "Plaintiffs" means the named plaintiffs in the Action, as well as any individuals who may be added into the Action as additional named class representatives during the Term, with the intent that, to the extent reasonably possible, there is during the Term at least one current student-athlete that is a Plaintiff.

(mm)   "Preliminary Approval" means the date on which the Court enters the Preliminary Approval Order.

(nn)    "Preliminary Approval Order" means the Order entered by Court, as described in Paragraph 12, preliminarily approving the settlement set forth in this Agreement.

(oo)    "Released Claims" means the Released Damages Class Claims and the Released Injunctive Class Claims.

(pp)    "Released Damages Class Claims" means, for each of the Plaintiffs and each and every member of each of the Damages Settlement Classes who does not opt out, all manner of claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including without limitation costs, penalties, and attorneys' fees, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that the

Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, that were raised or could have been raised in the Action prior to Final Approval (1) on account of, arising out of, or resulting from any and all previously existing NCAA and conference rules regarding monies and benefits that may be provided to student-athletes by the NCAA, Division I conferences and/or Division I Member Institutions, or (2) relating in any way to any NCAA or conference limitations on the numbers of scholarships allowed or permitted in any sport, including but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* For the avoidance of doubt, the Released Damages Class Claims do not include the Unreleased Claims.

(qq)    "Released Injunctive Class Claims" means all declaratory and injunctive relief claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that the Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, that were raised or could have been raised in the Action prior to Final Approval or during the Injunctive Relief Settlement Term on account of, arising out of, or resulting from the continuation of existing (at the time of filing for preliminary approval of the Injunctive Relief Settlement) NCAA and conference rules, as well as new or revised NCAA and conference rules agreed to as part of the Injunctive Relief Settlement, regarding (1) monies and benefits that may

be provided to student-athletes by the NCAA, Division I conferences, and/or Division I Member Institutions under NCAA or conference rules; (2) NCAA roster and scholarship limits as agreed to in the Injunctive Relief Settlement; or (3) the subjects addressed by the Related Injunctive Relief NCAA & Conference Rules (collectively, the "Injunctive Rules"), including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* For the avoidance of doubt, the Released Injunctive Class Claims does not include the Unreleased Claims.

(rr)    "Related Injunctive Relief NCAA & Conference Rules" means:

1.    NCAA and conference rules prohibiting NIL payments by Associated Entities or Individuals (individually or collectively) to current or prospective student-athletes unless the license/payment is for a valid business purpose related to the promotion or endorsement of goods or services provided to the general public for profit, with compensation at rates and terms commensurate with compensation paid to similarly-situated individuals with comparable NIL value who are not current or prospective student-athletes at the Member Institution; provided, however, that the NCAA or conferences will provide for neutral arbitration, as described in Article 6, Section 2 of the Injunctive Relief Settlement, for any Member Institution or student-athlete to contest any discipline sought to be imposed on them for receiving payments in violation of these rules;

2.    NCAA and conference rules governing the number of seasons/length of time student-athletes are eligible to receive benefits,

including scholarships and payments pursuant to the Injunctive Relief Settlement, including without limitation any rule capping the number of years a student-athlete may receive payments at four years, and providing that all four of those years must be played within a consecutive five-year period (in the event of a national force majeure event that leads to the cancellation of games, or the absence of fans, the rules may provide for an additional year to be added onto the five-year period);

3.     NCAA and conference rules requiring that student-athletes continue to make progress toward a degree while enrolled in any Member Institution in order to receive benefits pursuant to the Injunctive Relief Settlement;

4.     All existing (at the time of filing for preliminary approval of the Injunctive Relief Settlement) NCAA rules regarding the compensation and benefits that may or may not be provided by Division I conferences or Member Institutions to student-athletes, modified as necessary to conform to the terms of the Injunctive Relief Settlement and this Agreement;

5.     NCAA and conference rules, subject to Class Counsel's review and approval that shall not be unreasonably withheld, permitting student-athletes the ability to seek guidance from the Designated Enforcement Entity prior to entering into a proposed NIL contract or agreement as to whether said contract may constitute a violation of the NCAA rules affirmed, revised, or created pursuant to the Injunctive Relief Settlement;

6.     NCAA and conference rules, subject to Class Counsel's review and approval that shall not be unreasonably withheld, permitting a student-athlete to retain or regain eligibility by both (i) rescinding or modifying any agreement determined to be non-compliant with the NCAA rules

affirmed, revised, or created pursuant to the Injunctive Relief Settlement and (ii) returning, as necessary, any compensation or consideration received pursuant to a non-compliant agreement, in order to expunge any violation of the NCAA rules affirmed, revised, or created pursuant to the Injunctive Relief Settlement;

7.    NCAA and conference rules addressing circumvention subject to the procedures set forth in the Injunctive Relief Settlement Article 6, Section 3.

(ss)    "Releasees" means jointly and severally, individually and collectively, the NCAA, all Division I conferences, including all Conference Defendants, all Division I Member Institutions, the College Football Playoff, and all of their respective present and former direct and indirect parents, subsidiaries, affiliates, officers, directors, trustees, employees, agents, attorneys, servants, representatives, members, managers, and partners and the predecessors, heirs, executors, administrators, successors, and assigns of any of the foregoing persons or entities.

(tt)    "Releasors" means, jointly and severally, individually and collectively, the Plaintiffs and each and every Class Member on their own behalf and on behalf of their respective past and present managers, agents, legal representatives, trustees, parents, affiliates, heirs, executors, administrators, predecessors, successors, and assigns and the past and present legal representatives, trustees, parents, heirs, executors, administrators, predecessors, successors, and assigns of each of the foregoing.

(uu)    "Roster Limits" means the roster limits attached as Appendix B to this Settlement Agreement.

(vv)    "Unknown Claims" means any Released Claim that a Plaintiff and/or

Class Member does not know or suspect to exist in his, her, or their favor at the time of the release of the Releasees that if known by him, her, or them, might have affected his, her, or their settlement with and release of the Releasees, or might have affected his, her or their decision not to object to or opt out of this settlement.  Such Unknown Claims include claims that are the subject of California Civil Code §1542 and equivalent, similar or comparable laws or principles of law.   California Civil Code §1542 provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(ww)  "Unreleased Claims" means:

1.    The claims currently raised in the Complaint in *Choh v. Brown et al.*, No. 3:23-cv-00305-AWT (D. Conn.) ("*Choh*"), against the Ivy League and Ivy League member institutions ("*Choh* Defendants"), challenging an alleged agreement among the *Choh* Defendants not to award athletic scholarships or otherwise provide any compensation or education-related reimbursements for athletic services as permitted under then-applicable NCAA rules.  The previously filed *Choh* claims arise out of unique aspects of rules applicable within the Ivy League alone.  Released Damages Class Claims and Released Injunctive Class Claims otherwise fully apply to student-athletes who are in the Damages Settlement Classes or the Injunctive Relief Settlement Class, including but not limited to Ivy League student-athletes, and likewise otherwise fully apply to Releasees, which include but are not limited to the Ivy League, Ivy League member institutions, and Defendants;

2.      The claims currently stated in the Complaint in *Johnson et al. v. National Collegiate Athletic Association et al.*, No. 2:19-cv-05230-JP (E.D. Pa.), claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, or any other federal labor law, or claims under any analogous state labor laws; and

3.      Claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, other than any claims arising out of or relating to the distribution of the Gross Settlement Fund.

### B.    <u>Injunctive Relief Settlement Terms</u>

2.      The terms set forth in Appendix A hereto relating to the Injunctive Relief Settlement are incorporated as if fully set forth in this Settlement Agreement and shall be complied with by Plaintiffs, all members of the Injunctive Relief Settlement Class, Class Counsel, Defendants, and Member Institutions that choose to provide or facilitate payments or benefits to student-athletes as permitted by the Injunctive Relief Settlement including but not limited to incremental scholarships permitted by Article 3, Section 3(b) of the Injunctive Relief Settlement.

### C.    <u>Damages Settlement Classes Settlement Funds</u>

3.      **Settlement Payments.**  In full, complete, and final settlement of any and all claims for NIL-related damages in the Action, Defendants shall pay the NIL Claims Settlement Amount in equal, annual installments over the course of ten (10) years with the first installment due on May 15, 2025, or within forty-five (45) days of entry of the Final Approval Order, whichever is later; all such payments shall be deposited into the Escrow Account.  In full, complete, and final settlement of any and all additional claims for damages in the Action, Defendants shall pay the Additional Compensation Claims Settlement Amount in equal, annual installments over the course of ten (10) years with the first installment due on May 15, 2025, or within forty-five (45) days of entry of the Final Approval Order, whichever is later; all such payments shall be deposited into the Escrow Account.  Payments subsequent to the first

installment will be made on July 15 of each calendar year beginning in the first year after the first installment is made and all such subsequent payments shall be deposited into the Escrow Account. In the event that the foregoing dates fall on a Saturday, Sunday, or a U.S. bank holiday, the payment will be made on the next business day. The NIL Claims Settlement Amount and Additional Compensation Claims Settlement Amount together represent an all-in cash settlement amount for the damages claims in the Action, which includes all monetary benefits and distributions to the members of the Damages Settlement Classes, attorneys' fees and expenses except as specified in this Settlement Agreement, escrow fees, taxes, tax expenses, and all other costs and expenses relating to the settlement (including, but not limited to, administration costs and expenses, notice costs and expenses, and settlement costs and expenses).

4.    **Disbursements Prior to Effective Date.** The Gross Settlement Fund will remain subject to the jurisdiction of the Court until such time as it is fully distributed in compliance with the Settlement Agreement, Escrow Agreement, and any applicable Court order. No amount may be disbursed from the Gross Settlement Fund unless and until the Effective Date, except that: (a) Notice and Administrative Costs and Injunctive Notice Costs may be paid from the Gross Settlement Fund as they become due; and (b) Taxes and Tax Expenses (as defined in Paragraph 5 below) may be paid as they become due. Class Counsel will attempt in good faith to minimize the amount of Notice and Administrative Costs and Injunctive Notice Costs.

5.    **Taxes.** The Escrow Account is intended by the Parties to be treated as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, and to that end the Parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow

Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a) For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. §1.468B-2 by, *e.g.*, (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Gross Settlement Fund, and (iii) timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)) and paying any taxes reported thereon. Such returns (as well as the election described in this paragraph) shall be consistent with the provisions of this paragraph and in all events shall reflect that all Taxes as defined in Paragraph 5(b) below on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in Paragraph 6 hereof.

(b) The following shall be paid out of the Gross Settlement Fund: (i) all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Gross Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon Defendants or their counsel with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"); and (ii) all expenses and costs incurred in connection with the operation and implementation of this paragraph, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph (collectively, "Tax Expenses").

(c) In all events neither Defendants nor their counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. With funds from the Gross Settlement Fund, the Escrow Agent shall indemnify and hold harmless Defendants and their counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Gross Settlement Fund and shall timely be paid by the Escrow Agent out of the Gross Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Recipients any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Defendants nor their counsel are responsible therefor, nor shall they have any liability therefor. The Parties agree to cooperate with the Escrow Agent, each other, their tax attorneys and their accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

6. **Distribution of Gross Settlement Fund**. Upon further order of the Court, the Notice and Claims Administrator, subject to the supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and oversee distribution of the Gross Settlement Fund to Authorized Recipients pursuant to the Distribution Plan, which must be approved by the Court. Subject to the terms of this Agreement, the Distribution Plan and any order(s) of the Court, the Gross Settlement Fund shall be applied as follows:

(a) To pay all costs and expenses reasonably and actually incurred in connection with providing notice to the Classes in connection with administration and distribution to Authorized Recipients, and in connection with paying escrow fees and costs as

detailed herein, if any;

(b) To pay the Taxes and Tax Expenses as defined herein;

(c) To pay any Damages Fee and Expense Award that is allowed by the Court, subject to and in accordance with the Settlement Agreement; and

(d) To distribute the balance to Authorized Recipients as allowed by the Agreement, the Distribution Plan or order of the Court.

7. **No Liability for Distribution of Settlement Funds**. Releasees will make reasonable efforts to facilitate Class Counsel's receipt of records necessary to identify Class Members. Neither the Releasees nor their counsel, however, shall have any responsibility for, or liability whatsoever with respect to, the distribution of the Gross Settlement Fund, the Distribution Plan, the determination, administration or calculation of claims, the Settlement Fund's qualification as a "qualified settlement fund", the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection with any such matters. In addition to the releases set forth in Paragraphs 19 and 23 herein, the Releasors hereby fully, finally and forever release, relinquish, and discharge the Releasees and their counsel from any and all such liability. No Person shall have any claim against Class Counsel or the Notice and Claims Administrator based on the distributions made substantially in accordance with this Settlement Agreement, the Distribution Plan, or further orders of the Court.

8. **All Claims Satisfied by Gross Settlement Fund.** Each Class Member shall look solely to the Gross Settlement Fund for settlement and satisfaction, as provided herein, of all claims released herein. Except as provided by order of the Court pursuant to this Settlement Agreement, no Class Member shall have any interest in the Gross Settlement Fund or any portion thereof.

9. **Balance Remaining in Gross Settlement Fund.** If there is any balance remaining in the Gross Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), subject to Court approval, Class Counsel may distribute such balance in an equitable and economic fashion to Authorized Recipients. In no event shall any portion of the Gross

Settlement Fund revert to Defendants.

> **D.**     **Preliminary Approval Order, Notice Order, Final Approval Hearing & Appeals**

10.     **Reasonable Best Efforts to Effectuate This Settlement.**     The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement.  In addition, Class Counsel agree to recommend approval of this settlement by the Court without qualification or condition not set forth herein.

11.     **Conditional Certification of Classes.**     The Parties agree and hereby stipulate to the certification of the Classes set forth in Paragraphs 1(o) and 1(aa) of this Agreement pursuant to Fed. R. Civ. P. 23.  The Parties' stipulation to the certification of the Classes is for purposes of the settlement set forth in this Agreement only.  Defendants' agreement to the certification of the Classes solely for the purpose of this Agreement does not, and shall not, constitute, in this or any other proceeding, an admission by any Defendant of any kind or any determination that certification of any class for trial or other litigation purposes in the Action or any other separate action is, or would be, appropriate.  Defendants reserve all rights to challenge certification of any class or subclass in any other action on all available grounds as if no class had been certified in this Action for purposes of the settlement.

12.     **Motion for Preliminary Approval.**     Class Counsel shall submit to the Court a motion for preliminary approval of the settlement and final judgment contemplated by this Settlement Agreement and for a stay of all proceedings in the Action against Defendants until the Court renders a final decision regarding the approval of the settlement and, if it approves the settlement, enters the Judgment.  The motion shall include:  (a) the proposed forms of notice of the settlement to members of the Classes as detailed in Paragraph 14, and (b) the proposed form of order preliminarily approving this settlement.  Class Counsel shall provide Defendants' counsel with a draft of the motion for preliminary approval at least two (2) business days prior

to filing.

13. **Proposed Form of Notice.** Along with the motion for preliminary approval, Class Counsel shall submit to the Court for approval a proposed form of, method for and schedule for dissemination of notice to the Current Injunctive Relief Settlement Class Members and to the Damages Settlement Classes. To the extent practicable and to the extent consistent with this paragraph, Class Counsel may seek to coordinate this notice program with the settlement of claims in *Hubbard, et al v. NCAA, et al.*, Case No. 4:2023-cv-01593 (N.D. Cal.) ("*Hubbard*"). The motion for preliminary approval shall recite and ask the Court to find that the proposed form of and method for dissemination of notice to the Classes constitutes valid, due, and sufficient notice to the Classes, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the Northern District of California's Procedural Guidance for Class Action Settlements. Defendants shall be responsible for providing any notice that may be required by the Class Action Fairness Act of 2005.

14. **Additional Notice.** During the Injunctive Relief Settlement Term, Defendants, conferences, and/or their Member Institutions shall take reasonable steps to provide a notice of the Injunctive Relief Settlement (in a form approved by Class Counsel and the Court) to all Incoming Injunctive Relief Settlement Class Members at or before the time they first enroll at a Division I Member Institution ("incoming student-athletes") or later join, for the first time, a Division I Member Institution athletic team. All such Incoming Injunctive Relief Settlement Class Members shall have the right to file written objections to a continuation of the Injunctive Relief Settlement with the Court within sixty (60) days of receiving such notice. The releases contained herein shall not be effective against incoming student-athletes, not currently attending a school, until after they have been provided the notice and the sixty-day objection period has expired or, if they file an objection, until their objection has been heard and ruled upon.

15. **Motion for Final Approval and Entry of Judgment.** Class Counsel shall submit a motion for final approval of this Settlement Agreement by the Court, after notice to

the members of the Classes, and shall seek entry of the final approval order ("Final Approval Order") and Judgment as set forth herein:

(a)    Certifying the Classes, pursuant to Federal Rule of Civil Procedure 23, solely for purposes of this settlement;

(b)    fully and finally approving the settlement contemplated by this Agreement and its terms as being fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation pursuant to its terms and conditions;

(c)    entering the injunction contemplated by Appendix A;

(d)    finding that the notice given to the Class Members constituted the best notice practicable under the circumstances and complies in all respects with the requirements of Federal Rule of Civil Procedure 23 and due process;

(e)    directing that the Action be dismissed with prejudice as to all Released Claims as to the Releasees, after final approval is granted and any appeals are exhausted, and, except as provided for herein, without costs;

(f)    discharging and releasing the Releasees from all Released Claims;

(g)    permanently barring and enjoining the institution and prosecution, by Plaintiffs and Class Members, of any other action against the Releasees in any court asserting any Released Claims;

(h)    reserving continuing and exclusive jurisdiction over this settlement, including all future proceedings concerning the administration, consummation and enforcement of this Agreement;

(i)    determining pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of a final judgment as to the Defendants; and

(j)    containing such other and further provisions consistent with the terms of

this Agreement to which the parties expressly consent in writing.

Class Counsel shall provide Defendants' counsel with a draft of the motion for final approval at least five (5) business days prior to filing.

16.    **Stay Following Motion for Preliminary Approval.**    After the Settlement Agreement is presented to the Court for preliminary approval, the Parties shall cease all litigation activities in pursuing the Released Claims and any defenses related thereto other than those actions and activities necessary to effectuate the terms of this Settlement Agreement.  For the avoidance of doubt, in the event that the Court enters the Preliminary Approval Order but does not concurrently stay all proceedings in *Fontenot v. NCAA, et al.*, Case No. 1:2023-CV-03076 (D. Colo.) (as part of the Preliminary Approval Order or otherwise), this paragraph shall not operate to prohibit the Parties, or any one of them, from seeking an order from this Court, or the court presiding over the *Fontenot* matter, staying, dismissing, or otherwise resolving that case.  The stay of litigation activities contemplated by this paragraph shall remain in effect unless and until the Court denies preliminary approval or final approval of this Settlement Agreement.  Upon the date that the Court enters an order preliminarily approving this Settlement Agreement, Plaintiffs and Class Members shall be barred and enjoined from commencing, instituting, or continuing to prosecute any action or any proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind worldwide based on the Released Claims.

17.    **Time to Appeal.**  The time to appeal from an approval of this Settlement Agreement shall commence upon the Court's entry of the Judgment, regardless of whether or not an application for attorneys' fees and expenses has been submitted to the Court or resolved.

18.    **Impact of Appeal.**  The Injunctive Relief Settlement shall be effective as of the date of entry of the Final Approval Order, regardless of any appeal that may be taken of any or all of the Settlement Agreement, Final Approval Order, or Judgment in this Action or the settlement in *Hubbard*.  In the event of an appeal of any or all of the Settlement Agreement, Final Approval Order, or Judgment in this Action or *Hubbard* the Injunctive Relief Fee and

Expense Awards described in Paragraph 27 will be paid into the Escrow Account pursuant to that paragraph, and the settlement payments described in Paragraph 3 will be paid into the Escrow Account on the schedule set forth that paragraph.  No payments shall be made to Class Members, Class Counsel, or Additional Counsel until all appeals of this Action and the *Hubbard* action have been exhausted and the judgment entered in each becomes final and non-appealable.

### E.    <u>Release of Injunctive Claims</u>

19.    **Released Injunctive Class Claims.**  Upon and after the Effective Date, through the Injunctive Relief Settlement Term, the Releasors who are Current Injunctive Relief Class Members (regardless of whether any such Releasor ever seeks or obtains any recovery by any means) shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever released, relinquished and discharged all Released Injunctive Class Claims against the Releasees.  Releasors who are Incoming Injunctive Relief Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever released, relinquished and discharged all Released Injunctive Class Claims against the Releasees as of sixty (60) days of receiving the Additional Notice described in Paragraph 14, or after any objection they make to the Injunctive Relief Settlement is addressed by the Court.

20.    **No Future Actions Following Release.**  The Releasors who are members of the Injunctive Relief Settlement Class shall not, after the Effective Date, seek (directly or indirectly) to commence, institute, maintain, or prosecute any suit, action, or complaint or collect from or proceed against the Defendants or any other Releasee (including pursuant to the Action) based on the Released Injunctive Class Claims in any forum worldwide, whether on his, her, or their own behalf or as part of any putative, purported, or certified class, other than objections by Incoming Injunctive Relief Settlement Class Members to the Injunctive Relief Settlement as described in Paragraph 14.

21.    **Covenant Not to Sue.**  The Releasors who are members of the Injunctive Relief Settlement Class covenant and agree that they, and each of them, will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action,

or collecting from, seeking to recover from, or proceeding against the Releasees in connection with any of the Released Injunctive Class Claims, other than objections by Incoming Injunctive Relief Settlement Class Members to the Injunctive Relief Settlement as described in Paragraph 14. Plaintiffs and their counsel acknowledge that Defendants consider it to be a material term of this Settlement Agreement that all Injunctive Relief Settlement Class Members will be bound by the provisions of this release; *provided*, *however*, that should there be a breach of this covenant not to sue by any member of the Injunctive Relief Settlement Class, Plaintiffs and Class Counsel will cooperate with Defendants' efforts to seek the dismissal of any such claim or action. The Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be sought by the Parties, or any one of them, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of any Releasors who are members of the Injunctive Relief Settlement Class with respect to the Released Injunctive Class Claims.

22. **Waiver of California Civil Code §1542 and Similar Laws.** The Releasors who are members of the Injunctive Relief Settlement Class acknowledge that, by executing this Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Released Injunctive Class Claims, even Unknown Claims. In furtherance of this intention, the Releasors who are members of the Injunctive Relief Settlement Class expressly waive and relinquish, to the fullest extent permitted by law, any rights or benefits conferred by the provisions of California Civil Code §1542, as set forth in Paragraph 1qq), or equivalent, similar, or comparable law of any state or territory of the United States, or principle of common law or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the releases set forth in this Settlement Agreement. The Releasors who are members of the Injunctive Relief Settlement Class acknowledge and hereby expressly waive and release with respect to the Released Injunctive Class Claims any and all provisions, rights, and benefits conferred by California Civil Code §1542 or by any equivalent, similar or comparable law or principle of law in any jurisdiction. The Releasors who are

members of the Injunctive Relief Settlement Class may hereafter discover facts other than or different from those which they know or believe to be true with respect to the subject matter of the Released Injunctive Class Claims, but these Releasors hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, foreseen or unforeseen, asserted or un-asserted, contingent or non-contingent, and accrued or unaccrued claim, loss, or damage with respect to the Released Injunctive Class Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts. The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is contractual and not a mere recital.

## F.    Release of Damages Claims

23.    **Released Damages Claims.**  Upon the Effective Date, the Releasors who are members of the Damages Settlement Classes (regardless of whether any such Releasor ever seeks or obtains any recovery by any means) shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever released, relinquished and discharged all Released Damages Class Claims against the Releasees.

24.    **No Future Actions Following Release.**  The Releasors who are members of the Damages Settlement Classes shall not, after the Effective Date, seek (directly or indirectly) to commence, institute, maintain, or prosecute any suit, action or complaint or collect from or proceed against the Defendants or any other Releasee (including pursuant to the Action) based on the Released Damages Class Claims in any forum worldwide, whether on his, her, or their own behalf or as part of any putative, purported, or certified class.

25.    **Covenant Not to Sue.**  The Releasors who are members of the Damages Settlement Classes covenant and agree that they, and each of them, will forever refrain from instituting, maintaining, prosecuting, or continuing to maintain or prosecute any suit or action, or collecting from, seeking to recover from, or proceeding against the Releasees in connection with any of the Released Damages Class Claims. Plaintiffs and their counsel acknowledge that Defendants consider it to be a material term of this Settlement Agreement that all Class

Members who are members of the Damages Settlement Classes will be bound by the provisions of this release; *provided*, *however*, that should there be a breach of this covenant not to sue by any member of the Damages Settlement Class, Plaintiffs and Class Counsel will cooperate with Defendants' efforts to seek the dismissal of any such claim or action. The Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be sought by the Parties, or any one of them, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of any Releasors who are members of the Damages Settlement Classes with respect to the Released Damages Class Claims. Claimants on the Gross Settlement Fund shall execute a release of the Releasees as a condition precedent to receipt of any part of the Gross Settlement Fund, but the failure of any claimant to execute such a release shall not in any way affect the validity of the release provided in this paragraph, and they shall nonetheless be bound by the terms of such release.

26. **Waiver of California Civil Code §1542 and Similar Laws.** The Releasors who are members of the Damages Settlement Classes acknowledge that, by executing this Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Released Damages Class Claims, even Unknown Claims. In furtherance of this intention, the Releasors who are members of the Damages Settlement Classes expressly waive and relinquish, to the fullest extent permitted by law, any rights or benefits conferred by the provisions of California Civil Code §1542, as set forth in Paragraph 1(pp), or equivalent, similar, or comparable law of any state or territory of the United States, or principle of common law or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the releases set forth in this Settlement Agreement. The Releasors hereby expressly waive and release with respect to the Released Damages Class Claims any and all provisions, rights and benefits conferred by California Civil Code §1542 or by any equivalent, similar or comparable law or principle of law in any jurisdiction. The Releasors who are members of the Damages Settlement Classes may hereafter discover facts other than or different from those which they know or believe to be true with respect to the subject matter

of the Released Damages Class Claims, but these Releasors hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, foreseen or unforeseen, asserted or un-asserted, contingent or non-contingent, and accrued or unaccrued claim, loss, or damage with respect to the Released Damages Class Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts.  The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is contractual and not a mere recital.

F.    **Attorneys' Fees & Expenses**

27.    **Injunctive Relief Fee and Expense Awards.**

(a)    Class Counsel shall have the right to apply to the Court for, and Defendants shall not oppose, an upfront injunctive fee and cost award of $20 million, which, if approved, shall be paid for by Defendants within forty-five (45) days of entry of the Court's Order pursuant to Paragraph 27(d) below.

(b)    For so long as this Agreement remains in effect without material modification, Class Counsel may apply to the Court, or a special master appointed by the Court, for an award of a percentage of the total amount spent by Division I Member Institutions under the Pool (as defined in Appendix A hereto) for each Academic Year.  That percentage shall start at 0.75% and increase by 0.25% no more than three (3) times when the Pool is reset pursuant to Article 3 Section 1(f)-(h) of Appendix A, irrespective of how many times the Pool is reset during the Injunctive Relief Settlement Term.  Defendants reserve the right to oppose any such application but agree not to unreasonably oppose any such application for so long as the Injunctive Relief Settlement remains in effect without material modification.  Any such amount that is approved by the Court or special master will be paid to Class Counsel by Defendants and counted against the Pool as follows:  Defendants shall pay to Class Counsel the amount approved by the Court in accordance with this Paragraph within forty-five (45) days of entry of the Court's Order awarding any such amounts, subject to Paragraph 27(d) below.  That amount will then be deducted from the Pool for the following Academic Year.  All fees paid under this provision

shall be equally divided between Class Counsel *i.e.*, Hagens Berman and Winston & Strawn.

(c)     Class Counsel also may file a fee and cost application with the Court, or a special master appointed by the Court, each Academic Year of the Injunctive Relief Settlement Term to compensate Class Counsel based on their reasonable hourly fees and costs for their ongoing work in monitoring and enforcing compliance with this Agreement.  Defendants reserve the right to oppose any such application but agree not to unreasonably oppose any such application for so long as the Injunctive Relief Settlement remains in effect without material modification. All such fees and costs will be paid by the Defendants and not be deducted from the Pool. Defendants shall pay to Class Counsel the amount approved by the Court in accordance with this Paragraph within forty-five (45) days of entry of the Court's Order awarding any such amounts, subject to Paragraph 27(d) below.  Any such application and award shall be independent of and considered separately from any of the applications or awards described in sections (a) or (b) of this Paragraph.

(d)     Prior to the Effective Date, any Injunctive Relief Fee and Expense Awards payable under Paragraphs 27(a) and 27(b) shall be deposited into the Escrow Account, and paid to Class Counsel, plus any interest that may accrue, within ten (10) days of the Effective Date.

(e)     No Injunctive Relief Fee and Expense Awards shall be paid to Class Counsel prior to the Effective Date.  In no event shall Defendants or any other of the Releasees be liable to pay any fees, expenses, costs, or interest in connection with the Injunctive Relief Settlement, except to the extent they are approved by the Court.

(f)     All of the above fee and expense applications and awards shall be independent of and considered separately from any fee or costs award that Class Counsel may seek with respect to the settlements of the damages claims in this Action or in any other action.

28.     **Damages Fee and Expense Awards**.  Class Counsel may submit an application or applications for distributions from the Gross Settlement Fund for:  (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with prosecuting the Action; plus (c) any interest on such attorneys' fees and expenses (until paid), as appropriate, and as

may be awarded by the Court.  Defendants reserve the right to object to any fee application.

29.    No Damages Fee and Expense Awards shall be paid prior to the Effective Date. In no event shall Defendants or any other of the Releasees be liable to pay any fees, expenses, costs, or interest in connection with the settlement of the monetary damages claims of the Damages Settlement Classes, except to the extent they are approved by the Court and paid out of the Gross Settlement Fund.

30.    **Award of Fees and Expenses Not Part of Settlement.**  The procedure for, and the allowance or disallowance by the Court of, the fee and expense applications described in Paragraphs 27-29 ("Fee and Expense Applications") are not part of the settlement set forth in this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in this Agreement.  Any order or proceedings relating to the Fee and Expense Applications, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Judgment and the settlement of the Action as set forth herein.  No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Award or Distribution Plan shall constitute grounds for cancellation or termination of this Agreement.

31.    **Other Fees and Expenses.**  Except as otherwise provided in this Settlement Agreement, each party shall bear its own costs and attorneys' fees.

G.    **Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

32.    **Effective Date.**  The Effective Date of this Agreement shall be conditioned on the occurrence of all of the following events:

(a)    Defendants no longer have any right to terminate this Agreement or if they do have such right, they have given written notice to Class Counsel that they will not exercise such right;

(b)    the Court has finally approved the settlement as described herein, following notice

to the Classes and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and has entered the Judgment; and

(c)    the Judgment has become "Final" meaning, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, the Judgment becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the Judgment has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this Agreement, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind. Any appeal or other proceeding pertaining solely to any order issued with respect to an application for attorneys' fees and expenses consistent with this Agreement, shall not in any way delay or preclude the Judgment from becoming Final. It is agreed that in determining the times for appeal, further appeal, or review, the provisions of Fed. R. Civ. P. 60 and of the All Writs Act, 28 U.S.C. § 1651, shall not be taken into account.

If all of these conditions are not met, then this Agreement shall be terminated, subject to and in accordance with Paragraphs 33-38.

33.    **Conditions Precedent to the Effective Date/Termination.** The Effective Date also shall be conditioned on the Parties reaching a full settlement agreement resolving the damages claims in *Hubbard* and that agreement being fully and finally approved by the Court and judgment in favor of Defendants in that matter becoming Final. Further, in the event the opt-out percentage thresholds in Paragraph 37(c) and/or those in the *Hubbard* settlement agreement are exceeded, Defendants may, in their sole discretion, elect to terminate this

Agreement as well, provided that Defendants exercise such a termination right within forty-five (45) days of receiving a final report from Class Counsel as to the number of Opt-Outs for the Damages Settlement Classes in this Action and in *Hubbard*.

34. **Effect of Disapproval.** If the Court refuses, preliminarily or otherwise, to approve the settlement or this Settlement Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the Judgment provided for in Paragraph 15 hereof, or if the Court enters the Judgment and appellate review is sought and, on such review, such Judgment is not affirmed in its entirety, Defendants and Class Counsel shall, at their sole discretion, each have the option to rescind, cancel, and terminate this Settlement Agreement (excepting Paragraphs 35, 39-41, 45, and 61 hereof). Similarly, if the Court refuses to preliminarily approve Defendants' settlements or settlement agreements (or any part thereof) in *Hubbard*, or if the Court does not enter the Judgment in *Hubbard*, or if the Court enters the Judgment and appellate review is sought and, on such review, such Judgment is not affirmed in its entirety, Defendants shall, at their sole discretion, have the option to rescind, cancel, and terminate this Settlement Agreement (excepting Paragraphs 35, 39-41, 45, and 61 hereof).

35. **Effect of Termination.** In any event that this Agreement is terminated, this Agreement in its entirety shall be void and shall have no force or effect and shall be without prejudice to the rights and contentions of Releasees and Releasors in this or any other litigation. Any amounts expended for Notice and Administrative Costs and Injunctive Notice Costs are not recoverable if this settlement does not become final or is terminated.

36. **Objections.** Except as set forth in Paragraph 14 with respect to Incoming Injunctive Relief Settlement Class Members, Class Members who wish to object to any aspect of the settlement contained in this Settlement Agreement must file with the Court a written statement containing a description of the basis for their objection by the end of the period to object to the settlement that will be set by the Court.

37. **Exclusions.** Any Class Member who wishes to opt out of the Damages Settlement Classes must do so on or before the exclusion/objection deadline specified in the notice to Class

Members (the "Exclusion/Objection Deadline").

(a) In order to become an Opt-Out, a Class Member must complete and send to the Notice and Claims Administrator a request for exclusion that is post-marked no later than the Exclusion/Objection Deadline. The request for exclusion must include any information specified in the notices to the Classes. Opt-Outs may opt out of the Class only on an individual basis; so-called "mass" or "class" opt-outs shall not be allowed and shall be of no force or effect.

(b) Class Counsel shall cause copies of requests for exclusion from the Classes to be provided to Defendants' counsel. No later than fourteen (14) days after the Exclusion/Objection Deadline, Class Counsel shall provide to Defendants' counsel a complete and final list of Opt-Outs. With the motion for final approval of the settlement, Class Counsel will file with the Court a complete list of Opt-Outs, including the name, city, and state of the person requesting exclusion and the college or university he or she attended (the "Opt-Out List"). With respect to any Opt-Outs, Defendants reserve all of their legal rights and defenses, including, but not limited to, any defenses relating to whether the person qualifies as a Class Member and/or has standing to bring any claim.

(c) Defendants shall have the option to terminate this Agreement if the number of Opt-Outs equals or exceeds fifteen percent (15%) of the total combined number of Class Members and Opt-Outs. After meeting and conferring with Class Counsel, Defendants may elect to terminate this Agreement by serving written notice on Class Counsel by email and overnight courier and by filing a copy of such notice with the Court no later than thirty (30) days before the date for the final approval hearing of this Agreement, except that Defendants shall have a minimum of ten (10) days in which to decide whether to terminate this Agreement after receiving the final Opt-Out List.

38. **Termination Consequences.** Unless otherwise ordered by the Court, in the event

that the Effective Date does not occur or this Agreement should terminate, or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that Defendants elect to terminate this Agreement pursuant to Paragraphs 33-34:

 (a) the Parties shall be restored to their respective positions in the Action as of the Execution Date, with all of their respective claims and defenses preserved as they existed on that date;

 (b) the Escrow Agent shall, within ten (10) business days of termination of the Settlement Agreement, refund all amounts in the Escrow Account, less any expenditures authorized pursuant to Paragraphs 4-5 of this Settlement Agreement that were incurred prior to termination, to Defendants and the Escrow Account shall be closed;

 (c) the terms and provisions of this Agreement, with the exception of Paragraphs 35 39-41, 45, and 61 (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in the Action or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect);

 (d) any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*; and

 (e) the Court shall set a new schedule for the Action.

H. **No Admission of Liability**

 39. **Final and Complete Resolution.** The Parties intend the settlement as described in this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Action and Released Claims and to compromise claims that are contested, and it shall not be deemed an admission by any Party as to the merits of any claim or defense or any allegation made in the Action. Without limiting the foregoing, for the avoidance of

doubt, Defendants deny any liability in connection with Plaintiffs' claims in the Action and this Agreement may not be construed to be an admission of liability or wrongdoing by Defendants in this Action or any other action or proceeding.

40. **Federal Rule of Evidence 408.** The Parties agree that this Agreement, its terms and the negotiations surrounding this Agreement and any earlier agreements between the Parties shall be governed by Federal Rule of Evidence 408 and shall not be admissible or offered or received into evidence in any suit, action, or other proceeding, except upon the written agreement of the Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, declare, or enforce the rights of the Parties with respect to any provision of this Agreement.

41. **Use of Agreement as Evidence.** Neither this Agreement, nor negotiations related thereto, nor any act performed or document executed pursuant to or in furtherance of this Agreement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, any allegation made in the Action, or any wrongdoing or liability of the Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault, or omission of the Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Neither this Agreement, nor negotiations related thereto, nor any act performed or document executed pursuant to or in furtherance of this Agreement, shall be admissible in any proceeding for any purpose, except as to enforce the terms of this Agreement, and except that the Releasees may file this Agreement and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, and/or to seek the transfer to this Court of, or enjoin, any action purporting to assert any Released Claims. The limitations described in this paragraph apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order, or the Judgment.

## I.    **Miscellaneous Provisions**

42.    **Modifications.**  Absent materially changed circumstances (for example, without limitation, Paragraph 37(c)), Plaintiffs (including any new named plaintiffs) and Defendants agree not to seek to modify the settlement structure for the duration of the Injunctive Relief Settlement Term.

43.    **Voluntary Settlement.**  The Parties agree that the terms of the settlement as described in this Agreement were negotiated in good faith by the Parties under the supervision of an experienced mediator and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

44.    **Consent to Jurisdiction.**  Defendants, Plaintiffs, and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement.  Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, Defendants, Plaintiffs, and the Class Members irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court or that the Court is in any way an improper venue or an inconvenient forum.  Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 19-26 hereof, including but not limited to any suit, action, or proceeding in which the provisions of Paragraphs 19-26 hereof are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action or proceeding arising out of or relating to this Agreement.  In the event that the provisions of Paragraphs 19-26 hereof are asserted by any Releasee as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action, or proceeding, it is hereby agreed that such Releasee shall be entitled to a stay of that suit, action, or proceeding until the Court has entered a judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on the provisions of Paragraphs 19-26.

Nothing herein shall be construed as a submission to jurisdiction for any purpose other than any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement.

45.    **Resolution of Disputes; Retention of Exclusive Jurisdiction.**    Any disputes between or among Defendants and Plaintiffs or any Class Members concerning matters contained in this Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.  The Court shall retain jurisdiction to resolve all disputes that may arise concerning compliance with, the validity of, interpretation, or enforcement of the terms and conditions of the settlement, including through appointment of a special master whose decisions shall be appealable to the Court.  All such claims asserted on behalf of student-athletes shall be prosecuted exclusively by Class Counsel except as expressly provided herein.

46.    **Future Division I Student-Athlete Proceedings.**    Any and all claims by any Division I student-athlete seeking to challenge the structure or otherwise modify the Injunctive Relief Settlement, or alleging antitrust or other violations of law based on Defendant's implementation of the Injunctive Relief Settlement, must, to the fullest extent legally permissible, be asserted exclusively in the Action.  All Division I student-athletes during the Injunctive Relief Settlement Term will receive notice of this settlement and their rights under it in a form approved by Class Counsel and the Court.  If and to the extent any new claim against Defendants for complying with the terms of the Injunctive Relief Settlement is asserted by a Division I student-athlete in any venue other than the U.S. District Court for the Northern District of California seeking to invalidate or recover damages based upon Defendant's implementation of the Injunctive Relief Settlement, the Parties shall join in appropriate filings to have the new claim enjoined (or, should an injunction be unavailable, stayed and transferred to the Northern District of California) for consolidation with the Action for all purposes.

47.    **Other Litigations.**  The Parties shall work cooperatively to ensure that the claims raised in any other lawsuits that have been or may be brought challenging NCAA compensation or benefit rules addressed by this Settlement Agreement are enjoined (or, should an injunction

be unavailable, stayed) pending final approval of this Settlement Agreement.

48. **Class Counsel Enforcement.** Class Counsel shall have the authority to exclusively monitor and enforce the Injunctive Relief Settlement throughout the Term as provided therein.

49. **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their heirs, executors, administrators, representatives, agents, successors, and assigns and any corporation into or with which any corporate party hereto may merge or consolidate. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs and Class Counsel shall be binding upon all Class Members.

50. **Intended Beneficiaries**. No provision of this Settlement Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Plaintiff, Class Member, a Releasee, or Class Counsel. No Plaintiff, Class Member, Defendant, or Class Counsel may assign or otherwise convey any right to enforce any provision of this Settlement Agreement.

51. **Authorization to Enter Agreement.** Each of the undersigned representatives of Defendants represents that he or she is fully authorized to enter into and to execute this Agreement on behalf of each respective Defendant. Class Counsel, on behalf of Plaintiffs and the Classes, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the Classes pursuant to this Agreement to effectuate its terms and to enter into and execute this Agreement and any modifications or amendments to the Agreement on behalf of Plaintiffs and the Classes that they deem appropriate.

52. **No Conflict Intended.** Any inconsistency between this Settlement Agreement and the Appendices attached hereto shall be resolved in favor of this Settlement Agreement. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

53. **Mutual Drafting.** None of the parties hereto shall be deemed to be the drafter of

this Agreement or any provision hereof for the purpose of any statute, case law, rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

54.     **Governing Law.**  This Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, under federal common law, and the rights and obligations of the parties to this Agreement shall be construed and enforced in accordance with, and governed by, federal common law.

55.     **Amendment; Waiver.**  This Agreement shall not be modified in any respect except by a writing executed by all of the Defendants and Class Counsel and approved by the Court, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

56.     **Integrated Agreement.**  This Settlement Agreement (and its appendices) contains an entire, complete, and integrated statement of each and every term and provision agreed to by the Parties hereto, and is not subject to any condition not provided for herein.  This Settlement Agreement supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Defendants in connection herewith.  The Class Members, Class Counsel, and Defendants, or any of them, may hereafter discover facts other than or different from those that he, she, they, or it knows or believes to be true with respect to the subject matter of this settlement, but the subsequent discovery or existence of such different or additional facts shall have no bearing on the validity of this Settlement Agreement once executed and shall not serve as a basis for any Party to challenge or otherwise seek to rescind, terminate, or cancel the settlement.

57.     **Execution in Counterparts.**  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Parties to this Agreement shall exchange among themselves

signed counterparts and a complete set of executed counterparts shall be filed with the Court.

58.    **Appendices.**   All of the appendices hereto are an integral part of this Agreement and of the agreement of the Parties thereto.

59.    **Public Disclosure.**  Except for disclosure required by law, the Parties will consult with each other with a view towards coordinating the timing of any public disclosure concerning the fact that this Settlement Agreement has been reached or the terms of this Agreement.

60.    **Notices.**  All notices under this Agreement shall be in writing.  Each such notice shall be given either by (a) e-mail; (b) hand delivery; (c) registered or certified mail, return receipt requested, postage pre-paid; (d) FedEx or similar overnight courier; or (e) facsimile and first class mail, postage pre-paid and, if directed to any Class Member, shall be addressed to Class Counsel at their addresses set forth below, and if directed to Defendants, shall be addressed to their attorneys at the addresses set forth below or such other addresses as Class Counsel or Defendants may designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

If to Class Counsel, address notice to:

> Steve W. Berman
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 1301 Second Avenue, Suite 2000
> Seattle, WA, 98101
> steve@hbslaw.com

> Jeffrey L. Kessler
> David Greenspan
> WINSTON & STRAWN LLP
> 200 Park Avenue
> New York, NY 10166-4193
> jkessler@winston.com
> dgreenspan@winston.com

If to Defendants, address notice to:

> **National Collegiate Athletic Association**
> Scott Bearby
> Senior Vice President of Legal Affairs and General Counsel
> 1802 Alonzo Watford St. Drive

Indianapolis, IN  46202
sbearby@ncaa.org

With a copy to:

Rakesh N. Kilaru
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
rkilaru@wilkinsonstekloff.com

**Atlantic Coast Conference**
c/o Pearlynn G. Houck
General Counsel
620 South Tryon Street, Suite1200
Charlotte, NC 28202
phouck@theacc.org

With a copy to:

Christopher S. Yates
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

**The Big Ten Conference, Inc.**
c/o Anil Gollahalli
Chief Legal Officer & General Counsel
5440 Park Place
Rosemont, IL  60018
agollahalli@bigten.org

With a copy to:

Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
bmiller@mayerbrown.com

**The Big 12 Conference, Inc.**
c/o Jessica Presnall
Chief Legal & Business Affairs Officer
5212 N. O'Connor Blvd.
Suite 1650
Irving, TX 75039
jpresnall@big12sports.com

~~THIRD~~ FOURTH AMENDED STIPULATION AND SETTLEMENT AGREEMENT
Case No. 4:20-CV-03919

With a copy to:

Angela Zambrano and Natali Wyson
SIDLEY AUSTIN LLP
2021 McKinney Ave.
Suite 2000
Dallas, TX 75201
angela.zambrano@sidley.com
nwyson@sidley.com

**Pac-12 Conference**
c/o Scott Petersmeyer
General Counsel, SVP
12647 Alcosta Blvd., 5th Floor
San Ramon, CA  94583
SPetersmeyer@pac-12.org

With a copy to:

Whitty Somvichian
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
wsomvichian@cooley.com

**Southeastern Conference**
c/o William H. King, III
Associate Commissioner/Legal Affairs & Compliance
2201 Richard Arrington Boulevard North
Birmingham, AL  35203
wking@sec.org

With a copy to:

Robert W. Fuller, III
ROBINSON BRADSHAW & HINSON, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
rfuller@robinsonbradshaw.com

– and –

Katie A. Reilly
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202
reilly@wtotrial.com

or to such other persons or addresses as the Parties hereto may designate in writing.

61.     **Confidential Materials.**  The Parties agree to comply with Paragraphs 19-20 of Exhibit A to the Protective Order entered in the Action (*see* ECF No. 136) at the conclusion of the Action.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the Execution Date.

1

2

PLAINTIFFS' CLASS COUNSEL, on behalf of
Plaintiffs individually and on behalf of the Classes

3    DATED: ~~April 14~~May 7, 2025          HAGENS BERMAN SOBOL SHAPIRO LLP

4

5    By: _____
     Steve W. Berman

6    Steve W. Berman (*pro hac vice*)

7    HAGENS BERMAN SOBOL SHAPIRO LLP
     1301 Second Avenue, Suite 2000

8    steve@hbsslaw.com

9

10   DATED: ~~April 14~~May 7, 2025          WINSTON & STRAWN LLP

11

12   By: _____
     Jeffrey L. Kessler

13   Jeffrey L. Kessler (*pro hac vice*)

14   David Greenspan (*pro hac vice*)
     David G. Feher (*pro hac vice*)

15   Adam I. Dale (*pro hac vice*)

16   200 Park Avenue
     New York, NY 10166-4193

17   Telephone:    212-294-6700
     Facsimile:    212-294-4700

18   jkessler@winston.com
     dgreenspan@winston.com

19   dfeher@winston.com

20   aidale@winston.com

21   Jeanifer Parsigian

22   WINSTON & STRAWN LLP
     101 California Street, 34th Floor

23   San Francisco, CA 94111
     Telephone: (415) 591-1000

24   Facsimile: (415) 591-1400
     jparsigian@winston.com

25

26

27

28

DEFENDANT NATIONAL COLLEGIATE
ATHLETIC ASSOCIATION

DATED: ~~April 14~~May 7, 2025


By: _____
Rakesh N. Kilaru (*pro hac vice*)

Rakesh Kilaru
Cali Arat
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
rkilaru@wilkinsonstekloff.com
carat@wilkinsonstekloff.com

DEFENDANT ATLANTIC COAST
CONFERENCE

DATED: ~~April 14~~May 7, 2025

By: _____
Christopher S. Yates (SBN 161273)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
chris.yates@lw.com

~~THIRD~~ FOURTH AMENDED STIPULATION AND SETTLEMENT AGREEMENT
Case No. 4:20-CV-03919

DEFENDANT THE BIG TEN CONFERENCE, INC.

DATED: ~~April 14~~May 7, 2025

By: _____
Britt M. Miller (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
bmiller@mayerbrown.com

~~THIRD~~ FOURTH AMENDED STIPULATION AND SETTLEMENT AGREEMENT
Case No. 4:20-CV-03919

DEFENDANT THE BIG 12 CONFERENCE, INC.

DATED: ~~April 14~~May 7, 2025

By: _____
Natali Wyson

Angela Zambrano (*pro hac vice*)
Natali Wyson (*pro hac vice*)
SIDLEY AUSTIN LLP
2021 McKinney Ave.
Suite 2000
Dallas, TX 75201
angela.zambrano@sidley.com
nwyson@sidley.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT PAC-12 CONFERENCE

DATED: ~~April 14~~May 7, 2025

By: _____
Whitty Somvichian (SBN 194463)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
wsomvichian@cooley.com

DEFENDANT SOUTHEASTERN
CONFERENCE

DATED: ~~April 14~~May 7, 2025

By: _____
Robert W. Fuller, III

Robert W. Fuller III (*pro hac vice)*
ROBINSON BRADSHAW & HINSON, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
rfuller@robinsonbradshaw.com

Katie A. Reilly
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
reilly@wtotrial.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**(OAKLAND DIVISION)**

| | |
|---|---|
| In re: College Athlete NIL Litigation | No. 4:20-CV-03919 (N.D. Cal) |
| | **SECOND AMENDED INJUNCTIVE RELIEF SETTLEMENT** |

# APPENDIX A

# ARTICLE 1

# DEFINITIONS

**Section 1.**    As used in this Injunctive Relief Settlement, the following terms shall have the following meanings unless expressly stated otherwise:

(a)    "Academic Year" means July 1 of any given calendar year during the Term through and including June 30 of the following calendar year.

(b)    "Action" means *In re: College Athlete NIL Litigation*, Case No. 4:20-CV-03919 (N.D. Cal).

(c)    "Associated Entity or Individual" means:

    a.    An entity that is or was known (or should have been known) to the athletics department staff of a Member Institution, to exist, in significant part, for the purpose of (i) promoting or supporting a particular Member Institution's intercollegiate athletics program or student-athletes; and/or (2) creating or identifying NIL opportunities solely for a particular Member Institution's student-athletes;

    b.    An individual who is or was a member, employee, director, officer, owner, or agent of an entity described in Section 1(c)(a) above;

    c.    An individual who directly or indirectly (including contributions by an affiliated entity or family member) has contributed more than $50,000 over their lifetime to a particular Member Institution or to an entity described in Section 1(c)(a) above;

    d.    An individual or entity that (1) has been directed or requested by a Member Institution's athletics department staff to assist in the recruitment or retention of prospective or current student-athletes, or (2) otherwise has assisted in the recruitment or retention of prospective or current student-athletes; or

2

SECOND AMENDED INJUNCTIVE RELIEF SETTLEMENT
Case Nos. 4:20-CV-03919

    e.   Any entity owned, controlled, or operated by, or otherwise affiliated with, the individuals or entities described in Section 1(c)(a)-(d) above other than a publicly traded corporation.

(d)     "Class Counsel" means the law firms of Winston & Strawn LLP and Hagens Berman Sobol Shapiro LLP, with Steve Berman and Jeffrey Kessler as co-lead Class Counsel, or such other counsel as may be appointed by the Court during the Term of the Injunctive Relief Settlement.

(e)     "Conference Defendant" means individually each of the Atlantic Coast Conference (the "ACC"), The Big Ten Conference, Inc. (the "Big Ten"), The Big 12 Conference, Inc. (the "Big 12"), the Pac-12 Conference (the "Pac-12"), and the Southeastern Conference (the "SEC"); collectively the foregoing are referred to as "Conference Defendants".

(f)     "Court" means the United States District Court for the Northern District of California.

(g)     "Defendants" means, collectively, the NCAA, the ACC, the Big Ten, the Big 12, the Pac-12, and the SEC.

(h)     "Designated Enforcement Entity" means the NCAA and/or such other entit(ies) as may be designated by the Conference Defendants that is responsible for rule-enforcement activities set forth in and permitted by this Injunctive Relief Settlement and the SSA, including but not limited to investigating alleged violations and serving as the party seeking enforcement in any arbitration that occurs pursuant to Article 6, Section 2.

(i)     "Designated Reporting Entity" means the entit(ies) designated by Defendants to receive the information described in Article 2, Sections 4 and 5.

(i)

(j)     "Designated Student-Athlete" is any student-athlete who a Member Institution attests was or would have been removed from the Member Institution's 2025-2026 roster due to the implementation of roster limits who was either:

    a.   certified as eligible for practice or competition at the Member Institution (i.e., on a roster whether as a recruited or walk-on player), during the 2024-2025 Academic Year, prior to April 7, 2025, including student-athletes who transferred, or

    b.   a student-athlete initial enrollee at a Division I Member Institution for the 2025-26 Academic Year who, prior to April 7, 2025, was recruited to be, or was assured by an institutional staff member they would be, on the Member Institution's roster for the 2025-2026 Academic Year.

(j)(k)   "Final Approval" means when the Court issues an order finally approving the Stipulation and Settlement Agreement and has entered judgment in accordance with its terms but does not include any appeals periods or appeals of that judgment.

(k)(l)   "Injunctive Relief Settlement" means this Appendix A to the SSA.

(l)(m)   "Member Institution" means any college, school, or university that is a member in any sport of NCAA Division I and/or a Conference Defendant, together with any entity owned, controlled, funded, or operated by said college, school, or university (or any division or department thereof).

(m)(n)   "NIL" or "name, image and likeness" means a person's name, nickname(s), picture, portrait, likeness, signature, voice, caricature, identifying biographical information, or other identifiable features.

(n)(o)   "Non-Defendant Conferences" means all NCAA Division I conferences that are not named as Conference Defendants.

(o)(p)   "Non-Defendant Conference Member Institutions" means all NCAA Division I Member Institutions that are not members of any Conference Defendant.

(p)(q)   "Pool" means the benefits pool as described in Article 3.

(q)(r)   "Membership Financial Reporting System Reports" or "MFRS" means the annual financial data reported by NCAA members pursuant to NCAA Constitution, Article 2(D)(1)(c), in

4

the form currently reported or as otherwise expressly permitted by this Injunctive Relief Settlement.

~~(r)~~(s)    "NCAA" means the National Collegiate Athletic Association.

~~(s)~~(t)    "Shared Revenue" has the meaning as described in Article 3.

~~(t)~~(u)    "Stipulation and Settlement Agreement" or "SSA" means the Stipulation and Settlement Agreement to which this Injunctive Relief Settlement is attached as Appendix A, entered into as of September 26, 2024, by and between Plaintiffs, both individually and on behalf of the Classes, and Defendants, in *In re: College Athlete NIL Litigation*, Case No. 4:2020-CV-03919 (N.D. Cal).

~~(u)~~(v)    "Term" means ten (10) Academic Years after the date of Final Approval of the SSA by the Court.

**Section 2.    Further Definitions.**    In addition to the foregoing, any capitalized terms otherwise defined in the SSA shall have the same meaning as described therein.

## ARTICLE 2

## PAYMENTS TO STUDENT ATHLETES & REPORTING

**Section 1.  Payment Rules.**  Defendants shall change all NCAA Division I and Conference Defendant rules to permit payments to student-athletes contemplated by the terms of this Injunctive Relief Settlement.  For avoidance of doubt, payments that are not contemplated by this Injunctive Relief Settlement (*e.g.*, any payment to a student-athlete that, when aggregated with other payments above those permitted by NCAA Division I rules as of the date of the motion for preliminary approval, would result in a Member Institution exceeding the Pool defined below) remain prohibited.

**Section 2.  Member Institution Payments for NIL, Institutional Brand Promotion, or Other Rights.** Each Member Institution, and each student-athlete, will have the right to enter into an exclusive or non-exclusive license and/or endorsement agreement for that student-athlete's NIL, institutional brand promotion, or other rights as permitted by this Injunctive Relief Settlement, provided, however, that no such licenses or agreements shall authorize payments for the right to use a student-athlete's NIL for a broadcast of collegiate athletic games or competitive athletic events.  In addition the Member Institution or a designee/subcontractor of the Member Institution (*e.g.*, a local rights holder) may act as the marketing agent for the student-athlete with respect to third-party NIL contracts; provided, however, that a parent, guardian, lawyer, or other competent representative may assist the student-athlete in discussions regarding entering into an exclusive or non-exclusive license or endorsement agreement, unless the student-athlete waives in writing the assistance of a parent, guardian, lawyer, or other competent representative.

Neither Defendants nor their Member Institutions may enter into any NIL agreement including but not limited to any licensing, institutional brand promotion, or endorsement agreement with a prospective or enrolled student-athlete for a term that extends beyond his or her eligibility to participate in NCAA sports; provided, however, that if a Defendant or a Member Institution has

licensed the rights to use the NIL of a student-athlete to promote the Defendant or the Member Institution's academic or athletic program in content created while the student-athlete is enrolled, such licensee shall not be required to discontinue use of such content, if and as permitted by the agreement with the student-athlete, after that student-athlete's eligibility has expired. For avoidance of doubt, such licensee shall not be permitted by the prior sentence, after the student-athlete's eligibility has expired, to sell goods and services incorporating the NIL of the student-athlete, or to continue (or continue to authorize) use of the NIL of such student-athlete to promote the goods or services of a third party.

**Section 3.  Third Party NIL Payments**. The NCAA shall not have any Division I rules prohibiting student-athletes from receiving payments from third parties for NIL, other than as set forth in this Injunctive Relief Settlement.  For the avoidance of doubt, entities or organizations that are owned, controlled, or operated by Member Institutions and/or conferences are not third parties. Subcontractors of a Member Institution will not be considered third parties in instances and to the extent they are acting as an agent, facilitator, and/or administrator for a Member Institution whereby they are making payments to student-athletes that originate from/are paid by a Member Institution.

**Section 4.  Mandatory Student-Athlete Reporting.**  All Division I student-athletes will be required to report to (a) the Member Institution in which they are enrolled and/or (b) the Designated Reporting Entity any and all third-party NIL contracts or payments with a total value of six hundred dollars ($600.00) or more on a schedule to be determined by Defendants.  If a student-athlete enters into multiple NIL agreements or receives multiple NIL payments from the same or substantially the same third parties including, by way of example, any affiliates or parties with common ownership, such activities must be disclosed if the aggregate value is at or above six hundred dollars ($600.00).

**Section 5.   Mandatory Member Institution Reporting**.   Each Conference Defendant Member Institution will be required to report each NIL contract or payment reported to the Conference Defendant Member Institution pursuant to Section 4 of this Article to the Designated Reporting Entity on a schedule to be determined by Defendants, with Class Counsel also to receive a copy of such reports.   In addition, each Conference Defendant Member Institution also will be required to report to the Designated Reporting Entity pursuant to Section 4 of this Article, on a schedule to be determined by Defendants:

   i.  any exclusive or non-exclusive license and/or endorsement agreement between a Conference Defendant Member Institution and a student-athlete for a student-athlete's NIL, institutional brand promotion, or other rights including those in which a designee/subcontractor of the Conference Defendant Member Institution (*e.g.*, a local rights holder) acts as an agent, facilitator, administrator, or in any other capacity for a Conference Defendant Member Institution whereby they are making payments to one or more student-athletes that originate from, are funded by, or are otherwise made on behalf of a Conference Defendant Member Institution; and,

   ii.  any other payments or personal benefits (as detailed in Article 3, Section 3, Subsection (d)) that are provided to a student-athlete or the family of a student-athlete by a Conference Defendant Member Institution.

**Section 6.   Non-Defendant Conference Member Institutions.**   All Non-Defendant Conference Member Institutions that choose to provide or facilitate payments or benefits to student-athletes as permitted by this Injunctive Relief Settlement including but not limited to incremental scholarships permitted by Article 3, Section 3(b), shall be bound to the same extent as Conference Defendant Member Institutions by all obligations, benefit limitations, and roster limits set forth in this Injunctive Relief Settlement and as set by the NCAA in Appendix B to the SSA.

## ARTICLE 3

## BENEFITS POOL

**Section 1.  Benefits Pool.**  Current NCAA Division I and Conference Defendant rules will be modified consistent with this Article to permit the following payments and benefits to Division I student-athletes.

(a)    Each Member Institution will be permitted, but not required, to distribute, each Academic Year, additional payments and/or benefits to student-athletes over and above annual existing scholarships and all other benefits currently permitted by NCAA rules as of the date of the filing of the motion for final approval up to a certain amount (the "Pool").

(b)    The Pool will begin in the first Academic Year after Final Approval of the SSA.

(c)    "Shared Revenue" for purposes of the Pool means, for each Member Institution, revenue categories 1, 7, 11, 12, 13, 13A, 15, and 19 from the MFRS as currently detailed in Appendix A of the NCAA 2024 Agreed-Upon Procedures (attached as Attachment 1), regardless of whether a Member Institution owns or has legal title to those revenues.  For purposes of this Injunctive Relief Settlement, Category 1 ("Ticket Sales") shall include actual monetary revenues received by or for the benefit of Member Institutions for suite licenses exclusive of (a) any associated philanthropy (Category 8) and (b) the use of suites for any purposes not related to student athletic events (*e.g.*, concerts).  If any changes are made to the required reporting of revenues in the NCAA Agreed Upon Procedures or the Membership Financial Reporting System, the Parties shall work in good faith to ensure accurate reporting of the revenue categories that are calculated to determine Shared Revenues and the Pool.

(d)    "Average Shared Revenue" for purposes of the Pool shall be calculated as follows. The Shared Revenue for all Conference Defendant Member Institutions, including Notre Dame, from the most recent Membership Financial Reporting System Reports available shall be added together.  That total number will then be divided by the total number of Conference Defendant

Member Institutions plus Notre Dame. The resulting number will be the "Average Shared Revenue."

(e)    In the first year in which the Pool is implemented, the Pool shall be twenty-two percent (22%) of the Average Shared Revenue. The Pool will remain at 22% of Average Shared Revenue throughout the Term.

(f)    Except as set forth in subsection (h) below, the Average Shared Revenue will be recalculated as set forth in subparagraph (d) above every three (3) years. In the second and third years of each three-year period, the Average Shared Revenue shall increase by 4% over the previous year's amount, subject only to the two exceptions set forth in subsection (h), below.

(g)    Accordingly, over the Term, and subject to only the two exceptions set forth in subsection (h), below, the Pool shall be calculated as follows:

| Year 1 | 22% of Average Shared Revenue based on the most recent Membership Financial Reporting System Reports available |
| Year 2 | Year 1 amount x 1.04 |
| Year 3 | Year 2 amount x 1.04 |
| Year 4 | 22% of Average Shared Revenue based on the most recent Membership Financial Reporting System Reports available |
| Year 5 | Year 4 amount x 1.04 |
| Year 6 | Year 5 amount x 1.04 |
| Year 7 | 22% of Average Shared Revenue based on the most recent Membership Financial Reporting System Reports available |
| Year 8 | Year 7 amount x 1.04 |

| Year 9 | Year 8 amount x 1.04 |
| Year 10 | 22% of Average Shared Revenue based on the most recent Membership Financial Reporting System Reports available |

(h)    The two, and only two, exceptions to the procedures set forth in subsections (a)-(g) are as follows.

    i.    If, during the Term, any new broadcast agreement captured in the Media Rights MFRS Category (#11) has a specific contractual provision setting a year-over-year rights fee escalator greater than 4% that is not contingent on future events at the time of resetting the Pool, in the second and/or third years of each three-year period the average escalator across all of the broadcast agreements captured in Media Rights shall be used for that revenue category in the corresponding contract year(s) in lieu of the four percent (4%) growth rate for that revenue category, provided that, in no circumstances, shall the escalator for the Media Rights revenue category be less than four percent (4%) per year, consistent with Article 3, Section 1(f).

    ii.    Class Counsel shall have two (2) opportunities within the term of the Injunctive Relief Settlement to accelerate the re-calculation of the Pool based on the most recent Membership Financial Reporting System Reports available.  If Class Counsel wishes to exercise their option, they must provide notice within thirty (30) days of receipt of the Membership Financial Reporting System Reports.  A new three-year period shall commence in the first Academic Year after notice of exercise of the option, with the Pool amount increasing by four percent (4%) in the second and third years of such period.  By way of example, if Class Counsel elected to exercise these options in Years 3 and 8 of the Settlement, the Pool would be calculated as follows over the Term:

11

| Year 1 | 22% of Average Shared Revenue based on the most recent Membership Financial Reporting System Reports available |
|---|---|
| Year 2 | Year 1 amount x 1.04 |
| Year 3 (RESET) | 22% of Average Shared Revenue based on the most recent Membership Financial Reporting System Reports available |
| Year 4 | Year 3 amount x 1.04 |
| Year 5 | Year 4 amount x 1.04 |
| Year 6 | 22% of Average Shared Revenue based on the most recent Membership Financial Reporting System Reports available |
| Year 7 | Year 6 amount x 1.04 |
| Year 8 (RESET) | 22% of Average Shared Revenue based on the most recent Membership Financial Reporting System Reports available |
| Year 9 | Year 8 amount x 1.04 |
| Year 10 | Year 9 amount x 1.04 |

(i)    In the event that there is a nationwide force majeure event, such as the outbreak of a virus, which requires the cancellation of games or the playing of games without fans in attendance, the Parties shall negotiate in good faith as to whether a force majeure change in the Pool calculation is warranted.

**Section 2.  Institutional Decision-Making and Conference-Level Rules**.  Each of the Member Institutions, subject to any independently set conference-level rules or guidelines (*i.e.*, conference-level rules or guidelines imposed by a conference without agreement with the NCAA or any other conferences), shall unilaterally decide/determine whether and how much of any

benefits newly permitted by this Injunctive Relief Settlement to provide to any individual Division I student-athlete (up to the Pool amount).

**Section 3.  Counting Benefits Against the Pool.**  Any newly permitted amounts or benefits provided to individual student-athletes by Member Institutions (directly, through an exclusive or non-exclusive license between the student-athlete and the Member Institution (*see* Article 2, Section 2), or otherwise)—shall count against the Pool except for proceeds from third-party NIL sublicenses and arrangements as specified in subsection 3(c) of this Article.  The following provisions will govern the amounts of other new benefits that will count against the Pool for the Member Institution providing such other benefits:

(a)    ***Alston Awards.***  *Alston* academic and graduation incentive awards up to the annual amount payable pursuant to the permanent injunction entered on March 8, 2019 in the matter captioned *In re: National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*, Case No. 14-MD-2541 (N.D. Cal.) ("*Alston* case") (currently $5,980 and as may be adjusted in the future) ("*Alston* Awards") will count against the Pool; the amount of such *Alston* Awards that will count against the Pool will be capped at two million five hundred thousand dollars ($2,500,000.00, the "*Alston* Cap") per Member Institution per year in recognition of institutions that pay such awards to a larger number of student-athletes.  In the event that the overall value of the Pool has increased over the value of the Pool at the time of the immediately prior Pool recalculation occurring after a three-year period (or earlier, on no more than two occasions, under Article 3, Section 1(h)(ii), the *Alston* Cap shall be increased for the following three-year period by a proportional amount.  There shall be no NCAA Division I limitation on how many students at a school may be awarded an *Alston* Award.  For the avoidance of doubt, nothing in this paragraph requires a Member Institution to pay *Alston* Awards, but if the Member Institution chooses to do so, this paragraph will govern how such awards are counted with regard to the Pool.

13

(b)    ***New Athletic Scholarships.***  As a result of the elimination of scholarship limits (*see* Article 4, Section 1), Member Institutions will have the option of making incremental athletic scholarships available to student-athletes above the number currently permitted by NCAA Division I rules for a particular sport, subject to the roster limits addressed in Article 4, Section 1. The full cost-of-attendance dollar value of any new or incremental athletic scholarships—that were not previously permitted by NCAA Division I rules—up to two million five hundred thousand dollars ($2,500,000.00) ("the Athletic Scholarship Cap") will count against the Pool (again, in recognition of schools that award a greater number of athletic scholarships). For example, if a school is currently offering 9 scholarships in baseball, versus the 11.7 permitted, and post-Final Approval opts to award 15 scholarships in baseball, the number of new scholarships would be 3.3. Each Member Institution shall certify to the Designated Enforcement Entity whether and to what extent it has provided such new or incremental athletic scholarships.  In the event that the overall value of the Pool has increased over the value of the Pool at the time of the immediately prior recalculation occurring after a three-year period (or earlier, on no more than two occasions, under Article 3, Section 1(h)(ii)), the Athletic Scholarship Cap shall be increased for the following three-year period by a proportional amount.  Other than the roster limits discussed in Article 4, Section 1, there shall be no NCAA Division I limitation on how many new athletic scholarships may be awarded by a school.

(c)    ***Proceeds of Third-Party Arrangements.***  If a Member Institution contracts with any individual student-athlete, directly or through a designee/subcontractor of the Member Institution (*e.g.*, a local rights holder), to act as marketing agent for that student-athlete (as opposed to contracting with the student-athlete directly), third-party payments procured for the student-athlete shall not be counted against the Pool.  If the Member Institution elects to sub-license to a

14

third party any rights it has secured through a direct contract with any individual student-athlete, the proceeds of third-party NIL licenses or sublicenses procured for the student-athlete by the Member Institution or its designee/subcontractor for the student-athlete will not be counted against the Pool, nor will any other third-party payments made directly to a student-athlete be counted against the Pool.

(d)    ***Other Personal Benefits***.  All payments to student-athletes (for NIL, institutional brand promotion, or otherwise) and personal benefits (*e.g.*, vehicles, travel expenses not permitted as of the date of Preliminary Approval by NCAA Division I, and the like) that are provided to a student-athlete or the family of a student-athlete by a Member Institution over and above the payments and personal benefits permitted by the NCAA rules as of the day of Preliminary Approval, shall be counted against the Pool.  However, existing payments or benefits provided through SAF or otherwise to student-athletes or other payments currently permitted by NCAA Division I rules, including compensation or benefits related to education identified in Paragraph 2 of the *Alston* permanent injunction, dated March 8, 2019, shall not count against the Pool except for *Alston* Awards up to the *Alston* Cap.

(e)    ***NCAA Payments/Benefits.***  The value of any benefits or payments provided by the NCAA itself directly to or for the benefit of student-athletes shall not count against the Pool.

**Section 4.  Existing Benefits/Payments.**  Nothing in this Injunctive Relief Settlement will limit, nor shall it be read to limit, the amount of existing benefits or payments currently permitted by NCAA Division I rules to be provided to student-athletes by any Member Institution (except as provided above with respect to payments and benefits counting against the Pool) and Defendants agree that during the Term (including any extension thereof) but subject to the terms of Article 4, Section 3, the NCAA will not create any rules imposing new restrictions on such existing benefits.

This provision does not, however, limit any Member Institution's or any individual conference's ability, subject to Article 4 to independently elect to eliminate or reduce (a) any and all payments or benefits currently provided to student-athletes at that Member Institution or that conference's Member Institutions or (b) any payments or benefits that may be provided in the future. For avoidance of doubt, if a Non-Defendant Conference or a Non-Defendant Conference Member Institution agrees to provide to student-athletes additional benefits permitted by NCAA Division I rules prior to their modification as part of the Injunctive Relief Settlement (such as commencing *Alston* payments for the first time), that will not trigger any reporting requirements pursuant to Article 3, Section 5.

**Section 5. Pool Payments/Benefits Reporting.** Within sixty (60) days after the close of each Academic Year during the Term, Member Institutions shall provide information to the Conference Defendants, or in the case of Member Institutions in Non-Defendant Conferences, to the NCAA, sufficient to determine the total and types of payments/benefits the Member Institutions have provided to student-athletes, including but not limited to new and incremental scholarships and payments counting toward the *Alston* Cap, that have been counted against the Pool in accordance with this Injunctive Relief Settlement. Conference Defendants and the NCAA shall thereafter file a report with the Court and provide same to Class Counsel disclosing that information.

**Section 6. Revenue Reporting & Audit Rights.**

(a)    Annual MFRS data shall be provided to Class Counsel (or such other individuals/entity as Class Counsel may designate, in writing, during the Term) no later than May 15 of each year of the Injunctive Settlement unless good cause exists for delay. Class Counsel shall have the right to reasonably audit such data in accordance with this Article 3, Section 6. The

costs of any audit under this Article 6 shall be initially borne by Class Counsel, subject to Class Counsel seeking reimbursement in accordance with the fee/cost provisions set forth in Paragraphs 27-30 of the SSA.  The Parties agree that Defendants shall bear no liability for the accuracy or completeness of information reported by the Member Institutions for inclusion in the MFRS data.

(b)     Class Counsel shall have the right as part of their audit rights in the preceding subsection to receive an accounting from an agreed-upon accounting firm of all revenue categorized by the Member Institutions as Category 18 ("Other Operating Revenue") so as to determine whether, in Class Counsel's opinion, any such reported revenue is more properly reportable as one of the agreed-upon revenue categories and should therefore be included in the Shared Revenue for purposes of the Pool.  Any dispute arising over the proper treatment of such revenues with respect to the Pool shall be resolved by the Court or a special master appointed by the Court.

(c)     Class Counsel shall also have the right to receive an accounting from an agreed-upon accounting firm regarding whether any new broadcast agreement captured in MFRS Category (#11) (Media Rights) has a specific contractual provision setting a year-over-year rights fee escalator greater than 4% that is not contingent on future events such that the Pool growth rate calculation for that revenue category is impacted, as described in Article 3, Section 1(h).

(d)     The accounting firm shall also report on any changes in the definition of the revenue categories of the MFRS Reports so as to allow Class Counsel the opportunity to confirm that there has been no reclassification of the revenues currently included in the Pool calculation to excluded revenue categories.  If such reclassification occurs, the revenues shall be reallocated back to their original categories (or otherwise included in the Pool calculation), with any dispute to be resolved by the Court or a special master appointed by the Court.

(e)     Any disputes between Class Counsel and the Defendants as to the proper categorizations, reclassification, or reallocation of any revenue included in the Pool shall be submitted to the Court, or a special master appointed by the Court, for resolution, pursuant to Article 6, Section 1.

# ARTICLE 4

# NCAA AND CONFERENCE RULES

**Section 1.  Elimination of NCAA Division I Scholarship Limits.**  All NCAA Division I athletic scholarship limits will be eliminated.  The NCAA may adopt Division I roster limits which are subject to revision by the Defendants as permitted by this Injunctive Relief Settlement.  Appendix B to the SSA sets forth the roster limits which the NCAA has currently chosen to adopt that apply to Member Institutions that choose to provide or facilitate payments or benefits to student-athletes as permitted by this Injunctive Relief Settlement, including but not limited to incremental scholarships permitted by Article 3, Section 3(b).  All athletic scholarships will be equivalency awards.  Defendants agree that any changes to NCAA Division I or conference rules on roster limits shall not result in the loss of an athletic scholarship for any then-current student-athlete receiving an athletic scholarship.  Nor shall any change in roster limits result in a reduction in the current number of athletic scholarships permissible under current NCAA Division I rules in any sport.  Member Institutions each maintain the right to unilaterally reduce the number of sports, the roster size, and/or the number of athletic scholarships available to student-athletes of any sport.  Conferences each maintain the right to unilaterally reduce the number of sports Member Institutions within their respective conferences are required to offer, the number of sports sponsored by the conference, and/or the roster limits within their conference, subject to the limitations noted above that reductions in roster limits will not result in the loss of athletic scholarships for then-current student-athletes and that any change in roster limits shall not result in a reduction in the current number of athletic scholarships permissible under current NCAA Division I rules in any sport.

Member Institutions, in consultation with their athletic departments, shall be permitted, in their discretion, to exceed NCAA or conference roster limits with respect to any "Designated Student-Athletes" for the duration of the Designated Student-Athlete's athletic eligibility.  Each Member Institution must prepare and report a list of its Designated Student-Athletes in good faith

19

within thirty days of Final Approval, with a copy to Class Counsel.  For clarity, each Member Institution retains its current discretion to decide independently which student-athletes will be on its rosters, including whether to exceed the roster limits with respect to its Designated Student-Athletes.  Nothing in this settlement or NCAA rules restricts the ability of Member Institutions to allow student-athletes who were previously on the Member Institution's roster and who transferred as a result of being told by an institutional staff member that they would be removed from that roster due to the implementation of NCAA or conference roster limits from transferring back as a Designated Student-Athlete for that Member Institution.

**Section 2.  Existing NCAA Compensation Rules.**  Except to the extent that modification or elimination is required by the terms of this Injunctive Relief Settlement, the NCAA's and conferences' existing rules limiting the amount of compensation and benefits to Division I student-athletes may remain in effect.  The Parties shall request that the Court approve all existing NCAA rules regarding compensation and benefits that may or may not be provided by Division I conferences or schools to student-athletes, revised as necessary to conform to the terms of this Injunctive Relief Settlement.

**Section 3.  New NCAA and Conference Rules.**  The NCAA and the Conference Defendants may continue, and pass new rules further clarifying and implementing, their existing prohibitions related to NIL transactions involving Associated Entities or Individuals. Such clarifying rule changes may include specifying that the NCAA and/or the Conference Defendants prohibit NIL payments by Associated Entities or Individuals (individually or collectively) to current or prospective student-athletes unless the license/payment is for a valid business purpose related to the promotion or endorsement of goods or services provided to the general public for profit, with compensation at rates and terms commensurate with compensation paid to similarly situated individuals with comparable NIL value who are not current or prospective student-athletes at the Member Institution.

The NCAA and the Conference Defendants may likewise adopt or affirm the following additional rules before or in conjunction with Final Approval of this Injunctive Relief Settlement:

(a)    NCAA and conference rules governing the number of seasons/length of time student-athletes are eligible to receive benefits, including scholarships and payments, pursuant to this Injunctive Relief Settlement, including any rule capping the number of years a student-athlete may receive payments at four years, and providing that all four of those years must be played within a consecutive five-year period (with the exception that in the event of a national force majeure event that leads to the cancellation of games, or the absence of fans, the rules may provide for an additional year to be added onto the five-year period);

(b)    NCAA and conference rules requiring that student-athletes continue to make progress toward a degree while enrolled in any Member Institution in order to receive benefits pursuant to this Injunctive Relief Settlement;

(c)    NCAA and conference rules, subject to Class Counsel's review and approval that shall not be unreasonably withheld, permitting student-athletes the ability to seek guidance from the Designated Enforcement Entity prior to entering into a proposed NIL contract or agreement as to whether said contract may constitute a violation of the NCAA rules affirmed, revised, or created pursuant to this Injunctive Relief Settlement;

(d)    NCAA and conference rules, subject to Class Counsel's review and approval that shall not be unreasonably withheld, permitting a student-athlete to retain or regain eligibility by both (a) rescinding or modifying any agreement determined to be non-compliant with the NCAA rules affirmed, revised, or created pursuant to this Injunctive Relief Settlement and (b) returning, as necessary, any compensation or consideration received pursuant to a non-compliant agreement, in order to expunge any violation of the NCAA rules affirmed, revised, or created pursuant to this Injunctive Relief Settlement.  The purpose and intent of such rule is to ensure that student-athletes

have the ability to terminate and/or modify a proposed/executed NIL contract or agreement rather than risk their eligibility; and

(e)    NCAA and conference rules addressing circumvention subject to the procedures set forth in Article 6, Section 3.

## ARTICLE 5

## PROHIBITED AGREEMENTS

**Section 1.  Prohibited Collusive Agreements.**  Conference Defendants or their Member Institutions (except as provided below with respect to conference rules) shall be prohibited from entering into agreements with each other, or with the NCAA, to limit or restrict the amount of benefits that they individually choose to provide to student-athletes at levels below those permitted by the terms of this Injunctive Relief Settlement, other than in the event that a change in law or circumstances permits collective bargaining to take place.  In the event that a change in law or circumstances permits collective bargaining to take place, this Article 5, Section 1 shall not apply to prohibit any bona fide collective bargaining activities of the NCAA, Conference Defendants, and Member Institutions but shall otherwise remain in full force and effect.  Subject to Article 10, Section 5, a violation of this provision shall be remedied by an award of appropriate damages and equitable relief solely against the involved Member Institutions, conferences, or NCAA, as determined by the Court or a special master appointed by the Court.  Notwithstanding the foregoing, individual conferences (acting through their Member Institutions) shall be permitted to adopt and enforce rules applicable to their Member Institutions regarding benefits provided or not provided to student-athletes.  Class Counsel may bring an action to enforce the terms of this provision to seek damages and equitable relief on behalf of any number of Injunctive Class members. For the avoidance of doubt, nothing in the SSA or this Injunctive Relief Settlement, or NCAA or conference rules permitted or approved by the Injunctive Relief Settlement, shall be deemed to be a collusive agreement in violation of this provision.

**ARTICLE 6**

**ENFORCEMENT**

**Section 1.  Enforcement of Injunctive Relief Settlement.**

(a)      Any disputes involving any or all of the Defendants on one side and any Injunctive Class Members on the other side concerning the interpretation or enforcement of this Injunctive Relief Settlement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court.  For the avoidance of doubt, any disputes regarding enforcement of NCAA or conference rules against student-athletes or Member Institutions that are subject to this Injunctive Relief Settlement, including but not limited to questions of eligibility, shall be governed by Section 2 of this Article.

(b)      The Court shall retain jurisdiction to resolve all disputes that may arise concerning compliance with, the validity of, interpretation or enforcement of the terms and conditions of this Injunctive Relief Settlement, including through appointment of a special master whose decisions shall be appealable to the Court unless the Parties agree in a particular dispute that the special master's ruling shall be final without further appeal.  Absent any such agreement as to a particular dispute, the Parties reserve all appeal rights with respect to special master or Court determinations concerning the interpretation or enforcement of this Injunctive Relief Settlement.

(c)      All claims set forth in subsection (b), immediately above, asserted on behalf of student-athletes shall be prosecuted exclusively by Class Counsel except as provided herein, and Class Counsel has the authority to exclusively monitor and enforce this Injunctive Relief Settlement on behalf of Injunctive Class Members throughout the Term as provided herein.

**Section 2.  Enforcement Authority and Arbitration Process for Enforcement of NCAA/Conference Rules Implementing This Injunctive Relief Settlement**

(a)      Any one or more of the NCAA, Conference Defendants, and Non-Defendant Conferences shall be permitted to (i) adopt rules and procedures consistent with and to enforce this

Injunctive Relief Settlement, (ii) require submission of information and documentation from student-athletes and Member Institutions to the NCAA or conferences or designated third parties, and (iii) enforce (including through the Designated Enforcement Entity) NCAA and conference rules implementing the terms of this Injunctive Settlement including rules to be promulgated pursuant to Article 4, by, among other penalties, declaring student-athletes ineligible for competition and/or by reducing distributions to Member Institutions that violate the terms and limitations set forth in this Injunctive Relief Settlement and/or the new or modified NCAA and conference rules.

(b)    Prior to the entry of Final Approval, Class Counsel and Defendants shall meet and confer to select neutral arbitrators, whose decisions shall, to the fullest extent permitted by applicable law, be final and binding on the parties to the arbitration, to arbitrate any and all disputes regarding any discipline imposed pursuant to subsection (a) immediately above or any rule(s) promulgated pursuant to Article 4, Section 3.  If an arbitrator is terminated by agreement of Class Counsel and Defendants or by the Court, she or he will continue to hear any disputes already pending before the arbitrator but may not hear any new disputes.  Class Counsel and Defendants shall promptly agree upon a replacement arbitrator, whenever required.  If Class Counsel and Defendants cannot agree on a replacement arbitrator within ten (10) days, they will choose the arbitrator under the alternate striking method from a list of ten (10) non-conflicted arbitrators to be provided by JAMS from its panel of neutral arbitrators in its Sports Law Practice Group.

(c)    Arbitrators appointed pursuant to the preceding subsection shall serve a term of three (3) years, unless terminated earlier by agreement of Class Counsel and Defendants (or by the Court) through a written notification.  A Member Institution that contests the imposition of discipline on itself or its student-athlete(s), including by directly or indirectly paying the attorneys' fees and costs of such student-athletes(s), pursuant to subsection (a) shall pay the arbitrator's reasonable fees and expenses for proceedings relating to the penalties being challenged.  Student-

athletes contesting any discipline shall not be charged any arbitration fees or expenses regardless of whether a Member Institution contests the imposition of discipline.

(d)     All arbitrations under this Section 2 shall be completed on an expedited basis, but in no more than forty-five (45) days after commencement of proceedings unless the arbitrator finds good cause for having a longer schedule.  During the pendency of an arbitration, any enforcement of any discipline imposed in connection with the violation that is subject to the arbitration shall be stayed; provided, however, that the arbitrator shall have the ability to lift any such stay for good cause shown.  The decision of the arbitrator shall be final and binding to the fullest extent permitted by applicable law.  The arbitrator may, in an appropriate case, order the production of documents that are determined to be necessary for a fair adjudication of the dispute.  Witnesses may be called at the arbitration and the parties may be represented by counsel of their choice at their own expense. The arbitrator shall promptly issue a written award embodying his or her decision.  Defendants may agree with Class Counsel upon procedural rules governing the arbitration process, provided that all arbitration rules must be consistent with this Section 2 and must apply uniformly to all student-athletes and all Member Institutions that choose to provide or facilitate payments or benefits to student-athletes as permitted by this Injunctive Relief Settlement, including but not limited to incremental scholarships permitted by Article 3, Section 3(b).

(e)     If student-athletes seek to challenge any discipline imposed on them in connection with the terms of this Injunctive Relief Settlement, they shall be required to engage in the arbitration process set forth in this Section 2.  If Member Institutions seek to challenge any discipline imposed on them or their student-athletes in connection with the terms of this Injunctive Relief Settlement, they shall be required to engage in the arbitration process set forth in this Section 2, to the extent such an arbitration requirement is consistent with the state law of the institution involved in the dispute.

(f)     Student-athletes will have the right to be represented by counsel of their choosing in any such arbitration regarding the Injunctive Class Member's individual interests.  Class Counsel shall promptly receive copies of all decisions by the arbitrator.

**Section 3.  NCAA or Conference Rules Relating to Circumvention.**  The Defendants may adopt rules that prohibit any transaction, payment, or agreement designed to defeat or circumvent, and with the effect of defeating or circumventing, the intention of the Parties as reflected in the terms of this Injunctive Relief Settlement.  Class Counsel shall receive notice of any such new rules to prevent circumvention and shall have thirty (30) days to file an objection to such rules with the Court or a special master appointed by the Court.  In the event of such an objection, the proposed circumvention rule(s) shall be stayed for four (4) months pending judicial resolution.  Upon receiving an objection from Class Counsel, Defendants shall reasonably cooperate with requests for documents in the possession of Defendants sufficient to show the reasons for adopting the rule, the deliberations on the rule, and any committee reports or minutes of meetings relating to the rule, and shall produce those documents to Class Counsel as soon as reasonably possible, but in no event later than two (2) weeks from the date of the objection.  For the avoidance of doubt, the procedure set forth in this Article 6, Section 3, shall apply only to circumvention rules. If a circumvention rule is adopted and then enforced against any Member Institution or student-athlete, such discipline may be appealed by the student-athlete or Member Institution pursuant to the arbitration procedure set forth in Article 6, Section 2.  Class Counsel may file an amicus brief and present argument in such a proceeding upon a determination by the arbitrator, or if Class Counsel believes, that the interests of the Injunctive Class may be adversely impacted by the outcome of the proceeding or that the circumvention arguments being presented are inconsistent with the terms of the Injunctive Relief Settlement; provided, however, that Class Counsel may seek reimbursement of fees and costs, in accordance with Paragraph 27 of the SSA, relating to its participation in no more than two (2) such arbitrations in an Academic Year.

## ARTICLE 7
## LEGISLATION & ALTERNATIVE STRUCTURES

**Section 1.  Legislation.**  Class Counsel will use reasonable efforts to support the portions of any proposed federal or state legislation implementing/codifying this Injunctive Relief Settlement, including reasonably cooperating to support antitrust immunity for conduct undertaken by Defendants in compliance with or to implement the terms of this Injunctive Relief Settlement during the Term or any court-approved extension thereof, and preemption of any state law existing before or as of the date of Final Approval in conflict with this Injunctive Relief Settlement.  Class Counsel will not oppose, advocate against, lobby in any way against, or otherwise attempt or seek to undermine legislation implementing/codifying this Injunctive Relief Settlement.  Class Counsel further agree, during the Term, to take no position and thus be neutral on any proposed, pending, or future local (*e.g.*, city/county), state, or federal legislation provisions which would provide student-athletes with benefits in addition to those permitted by this Injunctive Relief Settlement. Class Counsel will also take no position, and thus be neutral, in all instances and in all forums and venues, on the issue of whether student-athletes should be considered/deemed "employees" or whether collective bargaining should be permitted for compensation of student-athletes.  However, if such collective bargaining for student-athletes is permitted in the future, Class Counsel shall not be precluded from representing any organization engaged in such collective bargaining, including in support of such bargaining activities.

**Section 2.  Alternative Structures.**  Nothing in this Injunctive Relief Settlement shall limit or interfere with the ability of student-athletes and Defendants or Defendants' Member Institutions and Non-Defendant Conferences or Non-Defendant Conference Member Institutions to explore and implement alternative structures for providing benefits to student-athletes, including but not limited to collective bargaining in the event that a change in law or circumstances permits such collective bargaining to take place.  In such a circumstance, the benefits permitted under this Injunctive Relief Settlement may be made part of any collectively bargained compensation

28

package or alternative structure, subject to the negotiations of the relevant parties and all applicable laws, and this Injunctive Relief Settlement shall not preclude the parties to such bargaining from agreeing upon additional, expanded or different benefits than those permitted by this Injunctive Relief Settlement. Relatedly, if some or all student-athletes are characterized as and/or definitively determined to have employee status under state or federal law and any Defendant or Releasee is required to pay any monies/provide any benefits to student-athletes, or student-athletes otherwise receive benefits as a result, beyond the monies and benefits provided in this Injunctive Relief Settlement, the Defendants shall have the option, but not the obligation, to seek to terminate or modify the injunction contemplated by this Injunctive Relief Settlement or the terms of this Injunctive Relief Settlement (with all releases of Released Claims remaining valid and no claims accruing during the period of the effectiveness of the injunction), but with Class Counsel reserving their rights to oppose any such termination or modification of the injunction contemplated by this Injunctive Relief Settlement or the terms of this Injunctive Relief Settlement.

# ARTICLE 8

# NAME, IMAGE & LIKENESS

### Section 1.    Broadcast & Promotional NIL

(a)    Plaintiffs and the Injunctive Classes do not and will not contest during the Term the rights asserted by the Defendants and their Member Institutions, and entities to which rights to broadcast and otherwise distribute audio and video of collegiate games and other competitive collegiate athletic events are licensed by the Defendants and their Member Institutions, to (i) telecast, broadcast, or otherwise distribute or transmit, on a live, delayed, and/or archived basis, in any and all media now known or hereafter developed, any and all college games and competitive events, including clips and highlights thereof, (ii) produce, license, offer for sale, sell, market, or otherwise distribute or transmit on a live, delayed, and/or archived basis, broadcasts and other electronic or digital distributions of any such collegiate athletic games or competitive athletic events, and clips and highlights thereof, in any and all media now known or hereafter developed, including, but not limited to electronic or digital media, and (iii) use, employ, or otherwise transmit or publish student-athletes' NIL for the purpose of promoting the telecasts, broadcasts, and other electronic or digital distributions of games and competitive events, including distribution of clips and highlights thereof, as referenced in this paragraph.

(b)    Nothing herein shall be construed to confer, during or after the Term, any right or authority to use a student-athlete's name, image or likeness in a manner that constitutes an endorsement by that student-athlete of a third-party brand, product, or service ("Endorsement") other than in connection with promotion of games or events that have title sponsors (by way of example only, events such as the "Allstate Sugar Bowl" or the "Las Vegas Bowl presented by GEICO"), including games or events that are organized by or affiliated with a conference with a title sponsor.  Nothing herein shall be construed to grant any publicity rights for use in licensed consumer products, whether traditional or digital (*e.g.*, video games, trading cards, apparel).  For

purposes of clarity, and without limitation, it shall not be an Endorsement to use, or authorize others to use, including without limitation, in third-party advertising and promotional materials, footage and photographs of a student-athlete's participation in college athletic games or competitive athletic events (including clips and highlights thereof) as long as the clips and highlights do not prominently feature an individual student-athlete in connection with a third party product or service, other than in connection with promotion of games or events that have title sponsors or are organized by or affiliated with a conference with a title sponsor as described in this section.

     **Section 2.  Broadcast NIL Reservation.**  The Parties reserve all rights as to the existence, or non-existence, of broadcast name-image-and-likeness ("BNIL") rights (including the use of a person's NIL in or in connection with a broadcast, telecast or other media distribution or transmission, including, without limitation, all forms of television, radio, telephone, internet, and any other communications media, forms of reproduction and other technologies, whether presently existing or not, anywhere in the world, whether live or on any form of delay, including, without limitation, network, local, cable, direct broadcast satellite, and any form of pay television, and all other means of distribution and exploitation, whether presently existing or not and whether now known or hereafter developed).  To the extent that any court of competent jurisdiction determines and/or to the extent that any relevant legislative body passes a law providing that student-athletes have such rights, then the Defendants and their Member Institutions, and entities to which rights to broadcast and otherwise distribute college athletic games and competitive athletic event are licensed by the Defendants and their Member Institutions, shall be deemed to have been granted a license to exercise all rights enumerated in Article 8, Section 1, subject to the limitations set forth in that section, for the duration of the Term.

## ARTICLE 9

## TERM

**Section 1.  Term.**  The term of this Injunctive Relief Settlement shall be ten (10) Academic Years after the date of Final Approval of the SSA by the Court.

**Section 2.  Potential Extension.**  The Parties will negotiate in good faith, prior to the conclusion of the Term, as to whether to jointly seek an extension of the Term upon its expiration on terms to be agreed upon and approved by the Court, after notice and an opportunity to object by the members of the Injunctive Relief Settlement Class.

**Section 3.  Mutual Reservation of Rights.**  Upon the expiration or termination of this Injunctive Settlement, the Parties shall be free to make any available argument that any conduct occurring after the expiration or termination of this Injunctive Settlement is or is not then a violation of the antitrust laws or any other laws.

## ARTICLE 10

## MISCELLANEOUS

**Section 1. Conflicts.**  The provisions of this Injunctive Relief Settlement supersede any conflicting provisions in any rule or policy, or any other document, adopted by Defendants or any of their Member Institutions, affecting the matters addressed herein.

**Section 2. Implementation.**  The Parties will use their best efforts to faithfully carry out the terms and conditions of this Injunctive Relief Settlement.

**Section 3.  Time Periods.**  The specification of any time period in this Injunctive Relief Settlement shall include any non-business days within such period, except that any deadline falling on a Saturday, Sunday, or Federal Holiday shall be deemed to fall on the following business day.

**Section 4.  Delivery of Documents.**  The Parties, shall, upon the request of any Party hereto, execute and deliver such further documents and instruments to take such further steps as are reasonably necessary and appropriate to implement and effectuate the purposes of this Injunctive Relief Settlement.

**Section 5.  Eleventh Amendment and Sovereign Immunity.**  Plaintiffs acknowledge that Defendants do not have the authority to waive or compromise any immunity or protection of any Member Institution pursuant to the Eleventh Amendment to the United States Constitution or any other applicable provisions of the law of the state in which the Member Institution is located. Notwithstanding the above, Plaintiffs and Class Counsel reserve their rights as to whether sovereign immunity has any application to this Injunctive Relief Settlement.

**Section 6.  Compliance with Protective Order.**  All filings submitted to the Court or a special master appointed by the Court relating to or in connection with this Injunctive Relief Settlement shall comply with the protective order entered in the Action (ECF 136), which shall remain in full force and effect for the duration of the Term.