Jacob K. Danziger (SBN 278219)
**ARENTFOX SCHIFF LLP**
44 Montgomery Street, 38th Floor
San Francisco, CA 94104 United States
Telephone: (734) 222-1516
Facsimile: (415) 757-5501
jacob.danziger@afslaw.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh N. Kilaru (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
Calanthe Arat (SBN 349086)
Tamarra Matthews Johnson (*pro hac vice*)
Matthew Skanchy (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com
mskanchy@wilkinsonstekloff.com

Attorneys for Defendant
NATIONAL COLLEGIATE ATHLETIC ASSOCIATION

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF FINAL APPROVAL**<br><br>Judge: Hon. Claudia Wilken |

The Court indicated that it would grant final approval if the parties "modify the settlement agreement" so that no members of the Injunctive Relief Settlement Class will lose a roster spot "because of the . . . implementation of the settlement agreement." Order 3 (emphasis added). After extensive interactions with Member Institutions and thorough discussions involving Class Counsel, the Objectors, and Mediator Eric Green, Defendants and Class Counsel have addressed this concern by ensuring that those class members are getting what they had before the settlement was announced—the opportunity to be on a roster without being subject to roster limits.

Specifically, the proposed modifications to the settlement agreement will allow NCAA Member Institutions participating in the Pool structure to exceed NCAA and conference roster limits for *any* current or incoming student-athlete who was or would have been removed from a roster because of the implementation of roster limits, for the *entirety* of their remaining eligibility. In other words, all student-athletes who were or would have been removed from rosters because of the implementation of roster limits are eligible to earn a spot at their schools or other schools, without counting against the roster limits. This approach restores the pre-settlement status quo for these class members so that they will not lose roster spots "because of" the roster limits. That eliminates, beyond any doubt, any remaining question as to whether the settlement is fair and reasonable for the Injunctive Relief Settlement Class as a whole.

The edits to the Settlement Agreement to implement this new approach are as follows. The initial step is adding a new defined term, "Designated Student-Athlete," to encompass two categories of student-athletes who were or would be removed from rosters due to the roster limits. The first is all student-athletes who have been on a Member Institution's roster during the current season (the 2024-25 Academic Year) and have eligibility remaining. The second is all newly incoming student-athletes (including but not limited to current high school seniors) who were assured by a Member Institution they would have a spot on that Member Institution's roster for the 2025-26 Academic Year. It is unclear whether the Court's Order contemplated relief for this latter category, but after review of the Objections filed earlier in the approval process, vigorous negotiations with Class Counsel, and discussions with their Member Institutions, Defendants agreed to encompass this latter category in the amendment as well.

The second step is a revision to Article 4 (which establishes the roster limits) that allows Member Institutions, in consultation with coaches and others in their athletic departments, to exceed the roster limits for *any* "Designated Student-Athletes" *for the duration of their eligibility*. Member Institutions participating in the Pool structure will identify and report all of their "Designated Student-Athletes." They will then be allowed to exceed the roster limits, now and in the future, for any or all of those Designated Student-Athletes, even if they were identified by other Member Institutions. In other words, even if a Designated Student-Athlete's original Member Institution does not exceed the roster limits to add her, she can attempt to find a spot at a different Member Institution without counting against its roster limits. These edits fully address the issues raised by the Court and at the final approval hearing.

For example, the roster limits would no longer pose an obstacle to:

- a student-athlete who is a college sophomore this year, and was told by a Member Institution she would be removed from the roster due to the roster limits, continuing to participate at that Member Institution for her junior and senior years.
- that same student-athlete competing at a different Member Institution that wants to include her on its roster for her junior and senior years.
- A college junior student-athlete returning to the Member Institution she transferred from due to the implementation of roster limits.
- a current high school senior participating for four years at *any* Division I Member Institution, without counting against its roster limit, despite previously having been told she would no longer have a roster spot at her original Member Institution due to the implementation of roster limits.

The revisions do maintain the discretion of Member Institutions to decide whether to provide roster spots to Designated Student-Athletes. In other words, there are no guarantees that Designated Student-Athletes will get or maintain roster spots. But that does not adversely affect any Injunctive Relief Class Member. As Defendants have previously explained—and as no party or Objector has disputed—*roster spots <u>are not</u> guaranteed under existing NCAA rules. See, e.g., Nemeth v. Auburn Univ.*, No. 3:19-CV-715-RAH-JTA, 2021 WL 3375669, at *4 (M.D. Ala. Aug.

-2-

Case No. 4:20-cv-03919-CW

SUPPLEMENTAL BRIEF IN SUPPORT OF FINAL APPROVAL

1  3, 2021) ("New coaching staffs must make assessments of their team and team needs, and previous
2  walk-on team members are *not guaranteed roster spots* through the expiration of their collegiate
3  eligibility.") (emphasis added). Before the settlement was announced, whether an existing or
4  incoming student-athlete would receive a roster spot was completely at the discretion of the coach
5  and the Member Institution. *See id.* ("[T]he roster spot expectations of a walk-on player are not
6  equivalent to those of a scholarship player"). And walk-on roster spots, once granted, were not
7  guaranteed. A coach could revoke a roster spot for any reason—including, but not limited to,
8  dissatisfaction with athletic performance, a preference for replacing the student-athlete with a more
9  talented player, or the desire to have a smaller roster such that each player remaining on the roster
10 gets more playing opportunities. While the revisions to the Settlement Agreement maintain that
11 established discretion, they allow Member Institutions to roster, or continue to roster, anyone who
12 would have been removed because of the implementation of roster limits, and allow those student-
13 athletes to find opportunities for competition at any Member Institution that wants to roster them
14 without counting against roster limits.

15       The bottom line is that *all current or incoming 2025-26 Division I student-athletes who*
16 *were removed or told they would be removed as a result of NCAA or conference roster limits can*
17 *compete for a roster spot at their schools or other schools without counting against the roster*
18 *limit, for the duration of their NCAA eligibility*.

19       To the extent the Objectors want more, *e.g.*, guaranteed roster spots or years of delay in
20 imposing roster limits, Defendants respectfully submit they are overreaching by misconstruing
21 what Rule 23 requires. The Court agreed that roster limits are a valid part of the settlement because
22 Defendants offered procompetitive justifications for them. Order 2. The Court's stated concern
23 was not with the existence of roster limits, but the possibility that Injunctive Relief Class Members
24 may lose roster spots "because of" the immediate implementation of the roster limits. Order
25 3. The revisions wholly eliminate that possibility and allow student-athletes who were removed
26 (or who were advised they might be removed) to be eligible for roster spots without the roster
27 limits posing any obstacle.

28       As a result, the settlement does not "cause harm to some members of the Rule 23(b)(2)

-3-

1  class," Order 3, because class members are getting what they had before roster limits were
2  announced—the chance to be on a roster at a school's discretion.  *See, e.g.*, *In re Motor Fuel*
3  *Temperature Sales Pracs. Litig.*, No. 07-MD-1840-KHV, 2012 WL 1415508, at *14 (D. Kan. Apr.
4  24, 2012), *aff'd*, 868 F.3d 1122 (10th Cir. 2017) (approving class action settlement that left no
5  class members worse off and gave them opportunity to receive an additional benefit, and rejecting
6  objection that plaintiff must show that the settlement affirmatively benefits all class members); *See*
7  *also Cohen v. Brown Univ.*, 16 F.4th 935, 945–46, 953 (1st Cir. 2021) (affirming approval of class
8  settlement, and noting that a settlement need not be "perfect," or benefit all class members in the
9  same way, to be "fair, reasonable, and adequate"); *Bayat v. Bank of the W.*, No. C-13-2376 EMC,
10 2015 WL 1744343, at *5–6 (N.D. Cal. Apr. 15, 2015) (approving settlement even when "class
11 members who did not obtain injunctive relief are *worse off* as a result of this settlement"—*which*
12 *the modifications to the settlement ensure will not be the case here*).

13        Moreover, attempting to guarantee roster spots would raise a host of practical and legal
14 difficulties.  Even if student-athletes were to receive a guaranteed right of return, they could be cut
15 the next day for athletic performance or other reasons.  *See Nemeth*, 2021 WL 3375669, at *4. It
16 is hard to see how that is a preferable outcome for Injunctive Relief Class Members compared to
17 allowing them to attend schools that actually want them on their rosters, particularly now that they
18 will not count against roster limits.  Going farther and affirmatively guaranteeing roster spots to a
19 group of student-athletes would raise additional concerns, including preferencing this group of
20 Injunctive Relief Class Members over others (*e.g.,* student-athletes who have to compete for roster
21 spots in a future year). It would also implicate Title IX and other Member Institution-specific
22 issues, because coaches may make initial commitments early in the recruiting cycle that Member
23 Institutions later have to balance appropriately.

24        More broadly, the Objectors fail to acknowledge the uncontested reality that walk-on
25 student-athletes have never been guaranteed anything and must also be separately admitted to a
26 university to be on a roster. Objectors have identified no authority, and Defendants are aware of
27 none, allowing the kind of judicial micromanagement of the decisions of independent academic
28 institutions that Objectors seem to envision. *See id.* at *5 ("[I]t is axiomatic that federal courts do

-5-

1  not sit as super-personnel departments that reexamine an entity's business decisions," or "as super-
2  coaching staffs that reexamine coaching decisions concerning talent, skill, and what constitutes
3  the level of play necessary to succeed.").

4        Defendants appreciate the opportunity to address the Court's sole remaining concern
5  regarding the Settlement Agreement.  Because the Parties believe they have fully addressed the
6  issue, the Court should grant final approval.  If approved, the settlement will immediately provide
7  significant new benefits to class members—which for many will be life-changing—without
8  harming anyone relative to the status quo.  That outcome is vastly superior to any alternative,
9  including years of continued litigation that would, at best, considerably delay any benefits to the
10 classes, and at worst provide them with nothing at all.

| | |
|---|---|
| Dated: May 7, 2025 | Respectfully Submitted, |

| | |
|---|---|
| **WILKINSON STEKLOFF LLP** | **COOLEY LLP** |
| By: /s/ Rakesh N. Kilaru | By: /s/ Whitty Somvichian |
| Beth A. Wilkinson (*pro hac vice*) | Whitty Somvichian (SBN 194463) |
| Rakesh N. Kilaru (*pro hac vice*) | Kathleen R. Hartnett (SBN 314267) |
| Kieran Gostin (*pro hac vice*) | Ashley Kemper Corkery (SBN 301380) |
| Calanthe Arat (SBN 349086) | 3 Embarcadero Center, 20th Floor |
| Tamarra Matthews Johnson (*pro hac vice*) | San Francisco, California 94111-4004 |
| Matthew R. Skanchy (*pro hac vice*) | Telephone: (415) 693-2000 |
| 2001 M Street NW, 10th Floor | Facsimile: (415) 693-2222 |
| Washington, DC 20036 | wsomvichian@cooley.com |
| Telephone: (202) 847-4000 | khartnett@cooley.com |
| Facsimile: (202) 847-4005 | acorkery@cooley.com |
| bwilkinson@wilkinsonstekloff.com | |
| rkilaru@wilkinsonstekloff.com | Mark Lambert (SBN 197410) |
| kgostin@wilkinsonstekloff.com | 3175 Hanover Street |
| carat@wilkinsonstekloff.com | Palo Alto, CA 94304-1130 |
| tmatthewsjohnson@wilkinsonstekloff.com | Telephone: (650) 843-5000 |
| mskanchy@wilkinsonstekloff.com | Facsimile: (650) 849-7400 |
| | mlambert@cooley.com |
| Jacob K. Danziger (SBN 278219) | |
| **ARENTFOX SCHIFF LLP** | Dee Bansal (*pro hac vice*) |
| 44 Montgomery Street, 38th Floor | 1299 Pennsylvania Ave. NW, Suite 700 |
| San Francisco, CA 94104 | Washington, DC 20004-2400 |
| Telephone: (734) 222-1516 | Telephone: (202) 842 7800 |
| Facsimile: (415) 757-5501 | Facsimile: (202) 842 7899 |
| jacob.danziger@afslaw.com | dbansal@cooley.com |
| | |
| Attorneys for Defendant | Attorneys for Defendant |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION | PAC-12 CONFERENCE |

-7-

| | |
|---|---|
| **MAYER BROWN LLP**<br><br>By: /s/ Britt M. Miller<br>Britt M. Miller (*pro hac vice*)<br>Daniel T. Fenske (*pro hac vice*)<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 782-0600<br>Facsimile: (312) 701-7711<br>bmiller@mayerbrown.com<br>dfenske@mayerbrown.com<br><br>Christopher J. Kelly (SBN 276312)<br>Two Palo Alto Square, Suite 300<br>3000 El Camino Real<br>Palo Alto, CA 94306<br>Telephone: (650) 331-2000<br>Facsimile: (650) 331-2060<br>cjkelly@mayerbrown.com<br><br>Attorneys for Defendant<br>THE BIG TEN CONFERENCE, INC. | **SIDLEY AUSTIN LLP**<br><br>By: /s/ Natali Wyson<br>David L. Anderson (SBN 149604)<br>555 California Street, Suite 2000<br>San Francisco, CA 94104<br>Telephone: (415) 772-1200<br>Facsimile: (415) 772-7412<br>dlanderson@sidley.com<br><br>Angela C. Zambrano (*pro hac vice*)<br>Natali Wyson (*pro hac vice*)<br>Chelsea A. Priest (*pro hac vice*)<br>2021 McKinney Avenue, Suite 2000<br>Dallas, TX 75201<br>Telephone: (214) 969-3529<br>Facsimile: (214) 969-3558<br>angela.zambrano@sidley.com<br>nwyson@sidley.com<br>cpriest@sidley.com<br><br>Attorneys for Defendant<br>THE BIG 12 CONFERENCE, INC. |

-8-

**ROBINSON, BRADSHAW & HINSON, P.A.**

By: /s/ Robert W. Fuller
Robert W. Fuller, III (*pro hac vice*)
Lawrence C. Moore, III (*pro hac vice*)
Amanda P. Nitto (*pro hac vice*)
Travis S. Hinman (*pro hac vice*)
Patrick H. Hill (*pro hac vice*)
101 N. Tryon St., Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rfuller@robinsonbradshaw.com
lmoore@robinsonbradshaw.com
anitto@robinsonbradshaw.com
thinman@robinsonbradshaw.com
phill@robinsonbradshaw.com

Mark J. Seifert (SBN 217054)
SEIFERT ZUROMSKI LLP
One Market Street, 36th Floor
San Francisco, California 941105
Telephone: (415) 999-0901
Facsimile: (415) 901-1123
mseifert@szllp.com

Attorneys for Defendant
SOUTHEASTERN CONFERENCE

**LATHAM & WATKINS LLP**

By: /s/ Christopher S. Yates
Christopher S. Yates (SBN 161273)
Aaron T. Chiu (SBN 287788)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
chris.yates@lw.com
aaron.chiu@lw.com

Anna M. Rathbun (SBN 273787)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-1061
Facsimile: (202) 637-2201
anna.rathbun@lw.com

**FOX ROTHSCHILD LLP**

By: /s/ D. Erik Albright
D. Erik Albright (*pro hac vice*)
Jonathan P. Heyl (*pro hac vice*)
Gregory G. Holland (*pro hac vice*)
230 North Elm Street, Suite 1200
Greensboro, NC 27401
Telephone: (336) 378-5368
Facsimile: (336) 378-5400
ealbright@foxrothschild.com
jheyl@foxrothschild.com
gholland@foxrothschild.com

Attorneys for Defendant
THE ATLANTIC COAST CONFERENCE

**SIGNATURE CERTIFICATION**

I, Rakesh N. Kilaru, am the CM/ECF user whose ID and password are being used to file the Defendants' Supplemental Brief in Support of Final Approval. In compliance with Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated:  May 7, 2025                                  Respectfully submitted,

**WILKINSON STEKLOFF LLP**

By:   */s/ Rakesh N. Kilaru*
        Rakesh N. Kilaru
        Attorney for Defendant
        National Collegiate Athletic Association