Steven F. Molo (*pro hac vice*)
Eric A. Posner (*pro hac vice*)
Thomas J. Wiegand (*pro hac vice*)
Bonnie K. St. Charles (*pro hac vice*)
MOLOLAMKEN LLP
300 N. LaSalle Street
Chicago, IL 60654
smolo@mololamken.com
eposner@mololamken.com
twiegand@mololamken.com
bstcharles@mololamken.com
(312) 450-6700

Alexandra C. Eynon (*pro hac vice*)
Pratik K. Raj Ghosh (*pro hac vice*)
Sara Tofighbakhsh (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
aeynon@mololamken.com
prajghosh@mololamken.com
stofighbakhsh@mololamken.com
(212) 607-8160

William J. Cooper (CA Bar No. 304524)
Natalie Cha (CA Bar No. 327869)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
wcooper@conmetkane.com
ncha@conmetkane.com
(415) 343-7100

Arthur H. Bryant (CA Bar No. 208365)
CLARKSON LAW FIRM, P.C.
95 3rd Street, 2nd Floor
San Francisco, CA 94103
abryant@clarksonlawfirm.com
(213) 788-4050

*Counsel for Objectors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGIATE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**MENKE-WEIDENBACH OBJECTORS' RESPONSE TO THE FOURTH AMENDED SETTLEMENT AGREEMENT**<br><br>Hon. Claudia Wilken |

On April 23, 2025, the Court issued an order rejecting final approval of the Third Amended Settlement. It found that a "significant number of [class] members" have been removed or would be removed from rosters because of the settlement's roster-cap provisions. Dkt. 948 at 2. That outcome, the Court concluded, is "harm[ful]" and "not fair to those class members." *Id.* at 2-3. Because the settlement was "not fair and reasonable," the Court "[could not] approve the settlement agreement in its current form." *Id.* at 3.

The Court directed the parties to "modify the settlement agreement so that members of the Injunctive Relief Settlement Class will **not be harmed** by the immediate implementation of the roster limits provisions." *Id.* at 4 (emphasis added). One way to do that, the Court suggested, is to "modify the settlement agreement to ensure that **no members** of the Injunctive Relief Settlement Class who have or had a roster spot will lose it as a result of the immediate implementation of the" roster limits. *Id.* (emphasis added).

The Fourth Amended Settlement does not meet that objective. It fails in numerous respects:

*First*, the Fourth Amended Settlement does not restore student-athletes to the roster spots they lost because of the settlement's roster limits. A member institution's decision to restore a student-athlete to his or her prior roster spot is ***entirely optional***. Dkt. 958-1 at 72-73. Indeed, member institutions have discretion to retain the roster limits. *Id.*

*Second*, the Fourth Amended Settlement does not restore the status quo for student-athletes who transferred to new schools after being cut. The settlement permits transfer student-athletes to return to their prior schools, but does not require the prior schools to accept them. Dkt. 958-1 at 73.

*Third*, the Fourth Amended Settlement allows member institutions total discretion to determine which student-athletes were cut because of the roster limits. Dkt. 958-1 at 56-57, 72-73. It provides student-athletes with no opportunity to challenge those decisions or prove that roster caps, rather than something else, caused them to be cut.

1

MENKE-WEIDENBACH OBJECTORS' RESPONSE TO THE FOURTH AMENDED SETTLEMENT AGREEMENT
CASE NO. 4:20-CV-03919-CW

***Fourth***, the Fourth Amended Settlement releases all claims related to implementation of the roster limits, including damages claims for any harm resulting from Defendants' premature implementation of the roster caps.

This settlement and these defects, however, can be fixed. In fact, objectors offered numerous proposed modifications to the mediator that would have addressed these defects, ensuring no class members were harmed by immediate implementation of the roster caps. For example, under objectors' proposal:

- Student-athletes currently on a roster (or promised a roster spot) would not count toward their teams' roster caps for the duration of their collegiate careers.
- Student-athletes who had been cut to meet roster caps would be restored to their roster spot, even if they had transferred to another school. Member institutions would still have discretion to cut athletes for legitimate reasons unrelated to the roster cap, such as conduct violations and poor athletic or academic performance.[1]
- If member institutions disputed that a student-athlete was cut to meet roster caps, the student-athlete could arbitrate that disagreement using the settlement's existing arbitration provisions. *See* Dkt. 958-1 at 77-80 (arbitration provisions).
- The settlement would not release claims arising from Defendants' premature implementation of the roster caps, allowing class members to recover, through arbitration, losses associated with schools' decision to implement the settlement before this Court approved it. *See* Dkt. 948 at 4.

The settlement remains unfair. A settlement like this one, which vests Defendants with "discretion" to provide relief – or not – is no settlement at all. Indeed, numerous Objectors are hearing that schools have no intention of relaxing roster limits at all, leaving many student-athletes in the same position as under the settlement this Court rejected as unfair. *See* Ex. A ("Wiegand Decl.") ¶ 3.

---

[1] Objectors do not seek "guaranteed" roster spots, as Defendants suggest. Dkt. 959 at 2-3. They simply seek protections against being removed from a roster to meet a roster cap.

Objectors' proposed modifications would exempt players on rosters and high school students who had been promised roster spots from the roster caps. Thus, the roster caps would apply to future students and effectively be implemented fully over time as those exempted students graduate or age out of their eligibility. Coaches and schools would otherwise retain their ability to manage their rosters. Objectors also offered protections against schools acting in bad faith. And they provided a simple way of resolving disputes, including claims of students who suffered losses due to the premature implementation of the roster caps.

Media accounts have estimated as many as 25,000 class members are being affected by the roster cuts. Counsel continues to hear from many athletes and their families whose lives are being turned upside down as a result of the implementation of roster caps. *See* Wiegand Decl. ¶¶2-5. Defendants' indifference, when simple fixes were offered to address a problem of their making, is stunning.

To receive approval, a settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A settlement does not meet that standard when "[t]he relief that th[e] settlement provides to unnamed class members is illusory." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (rejecting settlement); *see also Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1080 (9th Cir. 2017) (rejecting settlement where plaintiffs "provided no evidence to suggest that many, if any, members of the proposed class would derive a benefit" from settlement's injunctive relief). Not only is the relief here illusory, the settlement affirmatively harms many class members. The Court should reject the settlement (again) and direct the parties to consider other options – like those Objectors proposed – that will truly "ensure that no members of the [class] who have or had a roster spot will lose it as a result of the immediate implementation of the settlement agreement." Dkt. 948 at 4.

| | |
|---|---|
| Dated: May 9, 2025 | Respectfully submitted, |
| /s/ Steven F. Molo | /s/ William J. Cooper |
| Steven F. Molo (*pro hac vice*) | William J. Cooper (CA Bar No. 304524) |
| Eric A. Posner (*pro hac vice*) | Natalie Cha (CA Bar No. 327869) |
| Thomas J. Wiegand (*pro hac vice*) | CONRAD | METLITZKY | KANE LLP |
| Bonnie K. St. Charles (*pro hac vice*) | 217 Leidesdorff Street |
| MOLOLAMKEN LLP | San Francisco, CA 94111 |
| 300 N. LaSalle Street | |
| Chicago, IL 60654 | /s/ Arthur H. Bryant |
| | Arthur H. Bryant (CA Bar No. 208365) |
| Alexandra C. Eynon (*pro hac vice*) | CLARKSON LAW FIRM, P.C. |
| Pratik K. Raj Ghosh (*pro hac vice*) | 95 3rd Street, 2nd Floor |
| Sara Tofighbakhsh (*pro hac vice*) | San Francisco, CA 94103 |
| MOLOLAMKEN LLP | |
| 430 Park Avenue | |
| New York, NY 10022 | |

*Counsel for Objectors*