| | |
|---|---|
| Steve W. Berman (*pro hac vice*) | Jeffrey L. Kessler (*pro hac vice*) |
| Emilee N. Sisco (*pro hac vice*) | David G. Feher (*pro hac vice*) |
| Stephanie Verdoia (*pro hac vice*) | David L. Greenspan (*pro hac vice*) |
| Meredith Simons (SBN 320229) | Adam I. Dale (*pro hac vice*) |
| HAGENS BERMAN SOBOL SHAPIRO LLP | Sarah L. Viebrock (*pro hac vice*) |
| 1301 Second Avenue, Suite 2000 | Neha Vyas (*pro hac vice*) |
| Seattle, WA 98101 | WINSTON & STRAWN LLP |
| Telephone: (206) 623-7292 | 200 Park Avenue |
| steve@hbsslaw.com | New York, NY 10166-4193 |
| emilees@hbsslaw.com | Telephone: (212) 294-6700 |
| stephaniev@hbsslaw.com | jkessler@winston.com |
| merediths@hbsslaw.com | dfeher@winston.com |
| | dgreenspan@winston.com |
| Benjamin J. Siegel (SBN 256260) | aidale@winston.com |
| HAGENS BERMAN SOBOL SHAPIRO LLP | sviebrock@winston.com |
| 715 Hearst Avenue, Suite 300 | nvyas@winston.com |
| Berkeley, CA 94710 | |
| Telephone: (510) 725-3000 | Jeanifer E. Parsigian (SBN 289001) |
| bens@hbsslaw.com | WINSTON & STRAWN LLP |
| | 101 California Street, 21st Floor |
| *Class Counsel for Plaintiffs* | San Francisco, CA 94111 |
| | Telephone: (415) 591-1000 |
| [Additional counsel on signature page] | jparsigian@winston.com |
| | |
| | *Class Counsel for Plaintiffs* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW <br><br> **PLAINTIFFS' SUPPLEMENTAL REPLY SUBMISSION IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Judge: Hon. Claudia Wilken |

Plaintiffs respectfully submit that the Settlement Agreement warrants immediate final approval. Nearly two hundred thousand class members are anxiously waiting to finalize their athletics plans for next year and to reap the vast new benefits that the *House* Settlement will provide. As Plaintiffs previously demonstrated, the parties heeded the Court's ruling and amended the Settlement to guarantee that any athlete who would have lost their roster spot (or a promised roster spot) for the 2025-26 academic year due to the immediate implementation of roster limits will be ***exempt from any roster limits, at any Division I institution, for the duration of their college athletics careers***. *See* Pls.' Suppl. Submission at 2–3 (ECF No. 958); Fourth Am. Settlement Agreement at App. A, Art. 1, § 1(j); App. A, Art. 4, § 1 (ECF No. 958-1). The agreed-upon exemptions are **mandatory**—*no* Designated Student-Athlete may lose a position on a team because of roster limits. Rather, teams simply retain their *pre-existing* discretion to decide who to include.

The remaining objections demand changes that go far beyond addressing "the immediate implementation of the roster limits provisions." Order Regarding Mot. for Final Approval of Settlement Agreement at 2, 4 (ECF No. 948). Objectors instead seek to dictate schools' roster decisions in a manner that has never existed in college sports and is completely untethered to any antitrust claims or viable antitrust injunctive relief. Specifically, the Menke-Weidenbach Objectors summarize the Objectors' complaints about the revised Settlement as four purported "defects": (1) it "does not restore student-athletes to the roster spots they lost because of the settlement's roster limits;" (2) it "does not restore the status quo for student-athletes who transferred to new schools after being cut;" (3) it "allows member institutions total discretion to determine which student athletes were cut because of the roster limits;" and (4) it "releases all claims related to implementation of the roster limits, including damages claims for any harm resulting from Defendants' premature implementation of the roster caps." Menke-Weidenbach Objectors' Resp. to Fourth Am. Settlement Agreement at 1–2 (ECF No. 961) ("Menke Objection"). The Reathaford and Berg-Lykins Objector filings are more of the same, except the Berg-Lykins Objectors also demand a "formal grievance system" and "[a]n Ombuds Program." Resp. to Parties' Fourth Am. Settlement Agreement on Behalf of Objectors Berg, Lykins and Other Anonymous Athletes at 5 (ECF No. 966) ("Berg-Lykins Objection"); *see* Resp. to Parties' May 7, 2025 Proposal re: Mot. to

Approve Class Action Settlement (ECF No. 965) ("Reathaford Objection"). Each criticism is either demonstrably incorrect, untethered to the roster limit issues the Court identified, or extends well beyond what could be achieved even in a successful litigation.

*First*, the Settlement now eliminates the immediate implementation of roster limits as a reason for ***any*** athlete being cut from his or her team. In other words, roster limits ***will not*** be the reason that any athlete is removed from a roster for the 2025-26 academic year. Stated in the alternative, schools have ***no discretion*** to cut a Designated Student-Athlete from a team because of roster limits. All athletes will continue to have the ability to compete for a roster spot *plus* the added opportunity to earn the myriad new forms of compensation and benefits that the Settlement permits.[1] That is a fair and equitable solution applicable to all class members, which ensures that all class members will not merely be unharmed by the Settlement (including roster limits)—they will benefit. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).[2] Put simply, the roster limit provisions in the Settlement thus do not take away something (room to earn a roster spot) that certain class members already had.

Yet Objectors now move the goal posts and seek something they never had and that was never available to them: a ***guaranteed*** roster spot. *See* Reathaford Objection at 5 (arguing that the Settlement should "***force*** coaches to grandfather current and incoming athletes") (emphasis in original); Berg-Lykins Objection at 2 (contending there must be "*guaranteed restoration of [ ]*

---

[1] For example, the Yurasek Objection (ECF No. 956), filed by a walk-on basketball player on Loyola University Chicago's 2024-25 team, observes that two of his three walk-on teammates now have scholarships for the upcoming season. Meanwhile, Yurasek, who wrote the Court to "express his concerns about the potential loss of his roster spot due to roster size limitations imposed by the *House v. NCAA* settlement," will now be a Designated Student-Athlete exempt from roster limits for the duration of his college basketball career. These three class members are thus each in a better position with the Settlement than without it: none will be cut due to roster limits, two now have scholarships, and the third (Yurasek) has the opportunity to compete for a scholarship and the many other benefits afforded under the Settlement.

[2] The Berg-Lykins Objection (at 2) mischaracterizes *Dukes* as dictating that "any resulting harm to a member of the Injunctive Relief Settlement Class prevents the Court from approving the proposed settlement." (emphasis removed). But *Dukes* merely reinforces the unremarkable proposition that Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction." 564 U.S. at 360 (emphasis in original). That is not a concern here. But even accepting the Berg-Lykins Objection's reading of *Dukes*, the revised Settlement now guarantees that any athlete who would have lost a roster spot due to the immediate implementation of roster limits will be exempt from roster limits and thus not harmed by them.

*roster spots*") (emphasis in original).[3] To Plaintiffs' knowledge, no school has ever been required to place specific athletes on its roster. In fact, even athletes with guaranteed scholarships must still compete to earn a place on the team.

The Reathaford Objection (at 2) goes so far as to insist that "roster limits remain mandatory[,] but grandfathering is optional." Again, that is false. Exempting Designated Student-Athletes from roster limits is **mandatory** for their entire college athletics career. What is (and has always been) **optional** is whether a coach wants an athlete on the team. Nor is that distinction "meaningless to athletes." *Id.* at 3. As the Reathaford Objection must concede (at 5 n.6), in just the six days since the revisions to the Settlement were announced, schools are already committing to honor existing roster spots and to permit athletes who were cut to return.[4] The Settlement of class members' antitrust injunctive relief claims thus achieves the same type of relief that could be obtained at a trial: less restrictive alternative rules and enhanced competition. What the Settlement does not do, just like a trial verdict could not do, is dictate market outcomes. Objectors' overreach is not a reason to further delay or deny final approval.

*Second,* although any athlete who transferred to a new school due to roster limits will be permitted to transfer back to their original school, Objectors now demand that their original schools be "require[d]" to accept them. Menke Objection at 1; *see also* Reathaford Objection at 6 (seeking "reinstatement of any athlete . . . who . . . transferred to another Member Institution due to roster limits"). This is not a valid objection for the reasons just explained. The changes to the Settlement ensure that neither roster limits (which do not apply to Designated Student-Athletes) nor NCAA rules (e.g., any transfer portal restrictions) will keep a Designated Student-Athlete who transferred from returning to his or her former team. But that team still has discretion about its members based on other factors (e.g., performance). In all events, the Settlement provides additional protections

---

[3] The Menke Objection makes the conclusory assertion (at 2 n.1) that they "do not seek 'guaranteed' roster spots," but that is exactly what they seek by demanding that "[s]tudent-athletes who had been cut to meet roster caps would be restored to their roster spot." *Id.* at 2. In any event, the Reathaford Objection and Berg-Lykins Objection unabashedly seek guaranteed roster spots. *See* discussion in text, *supra*.

[4] *See* Ross Dellenger (@RossDellenger), X (May 8, 2025, 9:31 AM), https://x.com/RossDellenger/status/1920471643933094313.

for Designated Student-Athletes who transferred by exempting them from roster limits at *any* school for the rest of their college athletics careers.

*Third*, Objectors are simply mistaken to contend that schools will have "total discretion to determine which student-athletes were cut because of the roster limits." Menke Objection at 1. Defendants have contractually committed that member institutions act in "good faith" to identify the Designated Student-Athletes who will be exempt from roster limits. Fourth Am. Settlement Agreement at App. A, Art. 4, § 1. Each school's list of Designated Student-Athletes will be provided to Class Counsel, and we will make that information available to class members. If Class Counsel believes that a school has wrongfully omitted an athlete from its list of Designated Student-Athletes, Class Counsel will have the power to investigate and enforce the school's obligations under the Settlement Agreement. *Id.* ¶ 48 ("Class Counsel shall have the authority to exclusively monitor and enforce the Injunctive Relief Settlement throughout the Term as provided therein."); *see also id.* at App. A, Art. 6, §§ 1–3.

*Fourth*, Objectors are also wrong to assert that the Settlement Agreement releases damages claims arising out of any allegedly wrongful conduct in connection with schools' preparations to implement roster limits for the 2025-26 academic year. Menke Objection at 2. The Settlement does not—and never did—result in class members releasing any such damages claims. Members of the Damages Settlement Classes (including athletes on rosters during the 2024-25 academic year or earlier) only release damages claims relating to: (1) "*previously existing* NCAA and conference rules regarding monies and benefits that may be provided to student-athletes;" and (2) "limitations on the numbers of *scholarships* allowed or permitted in any sport." Fourth Am. Settlement Agreement ¶¶ 1(pp), 23–25 (emphases added). The Settlement's roster limit provisions are not "previously existing NCAA [or] conference rules" or "limitations on the number of scholarships allowed or permitted." Thus, members of the Damages Settlement Classes will not release any damages claims relating to any allegedly wrongful conduct in connection with schools' preparation to implement future roster limits. And any incoming athlete who was not on a Division I roster as of the 2024-25 academic year is not a member of the Damages Settlement Classes and, thus, will not release any damages claims at all. *Id.* ¶ 1(o).

*Finally*, the Berg-Lykins Objection (at 5) seeks to impose a new "grievance system" and an "Ombuds Program" that the Objectors claim will "start to restore trust." As is customary in class action settlements, the Settlement authorizes Class Counsel to enforce its terms. Fourth Am. Settlement Agreement ¶ 48. The Objection offers no justification—other than "[d]istrust"—to impose additional grievance mechanisms. Class Counsel's obligation to protect class members and enforce the Settlement is sufficient.

Class Counsel secured a historic settlement and, heeding the Court's ruling, obtained substantial additional concessions from Defendants to ensure that no class member will be harmed by the immediate implementation of roster limits for the 2025-26 academic year. The Objectors' purported "defects" in these additional concessions are factually and legally inapposite. Most fundamentally, Objectors have lost sight of the fact that "[t]he issue before the Court is whether "the settlement ***taken as a whole***, rather than the individual component parts," is fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)) (emphasis added). Plaintiffs respectfully submit that the Fourth Amended Settlement Agreement more than satisfies that standard. We urge the Court to quickly grant final approval of the Settlements in *House* and *Hubbard* so that all class members—including those who will now be exempt from roster limits—can enjoy the historic benefits of the Settlements.[5]

---

[5] Although the Court did not invite additional briefing on the issue of whether the Settlement should be stayed pending appeal, the Reathaford Objection (at 6) nonetheless "again request[ed] that [the Court] stay the implementation of the injunction until the resolution of all appeals." In their haste to support their uninvited argument, the Reathaford Objection misquotes Steve Berman's statement on a recent podcast. What Mr. Berman *actually* said is the primary reason that the parties agreed not to stay the injunctive relief portion of the Settlement "is because the schools did not want to be in limbo." SportsWise: A Podcast About Sports and the Law, *Ep. 84: The Latest on the Twists and Turns in the House v. NCAA Settlement with Co-Lead Counsel, Steve Berman*, at 12:22–56 (May 10, 2025), https://www.sportswisepod.com/ep-84-the-latest-on-the-twists-and-turns-in-the-house-v-ncaa-settlement-with-co-lead-counsel-ste/. Mr. Berman also stated, in a part of the quote the Reathaford Objection uses but misleadingly omits with ellipses, that he wanted to demonstrate to the Court of Appeals that the parties were "so confident that [they were] going to uphold this, that we've already put it in place," and as in another case, show that the relief was working well. *Id.*

| | |
|---|---|
| DATED: May 14, 2025 | Respectfully submitted, |
| By  /s/ Steve W. Berman | By  /s/ Jeffrey L. Kessler |
| Steve W. Berman (*pro hac vice*) | Jeffrey L. Kessler (*pro hac vice*) |
| Emilee N. Sisco (*pro hac vice*) | David G. Feher (*pro hac vice*) |
| Stephanie Verdoia (*pro hac vice*) | David L. Greenspan (*pro hac vice*) |
| Meredith Simons (SBN 320229) | Adam I. Dale (*pro hac vice*) |
| **HAGENS BERMAN SOBOL SHAPIRO LLP** | Sarah L. Viebrock (*pro hac vice*) |
| 1301 Second Avenue, Suite 2000 | Neha Vyas (*pro hac vice*) |
| Seattle, WA 98101 | **WINSTON & STRAWN LLP** |
| Telephone: (206) 623-7292 | 200 Park Avenue |
| Facsimile: (206) 623-0594 | New York, NY 10166-4193 |
| steve@hbsslaw.com | Telephone: (212) 294-6700 |
| emilees@hbsslaw.com | Facsimile:  (212) 294-4700 |
| stephaniev@hbsslaw.com | jkessler@winston.com |
| merediths@hbsslaw.com | dfeher@winston.com |
| | dgreenspan@winston.com |
| Benjamin J. Siegel (SBN 256260) | aidale@winston.com |
| **HAGENS BERMAN SOBOL SHAPIRO LLP** | sviebrock@winston.com |
| 715 Hearst Avenue, Suite 300 | nvyas@winston.com |
| Berkeley, CA 94710 | |
| Telephone: (510) 725-3000 | Jeanifer E. Parsigian (SBN 289001) |
| Facsimile:  (510) 725-3001 | **WINSTON & STRAWN LLP** |
| bens@hbsslaw.com | 101 California Street, 21st Floor |
| | San Francisco, CA 94111 |
| Jeffrey L. Kodroff (*pro hac vice*) | Telephone: (415) 591-1000 |
| Eugene A. Spector (*pro hac vice*) | Facsimile:  (415) 591-1400 |
| **SPECTOR ROSEMAN & KODROFF, PC** | jparsigian@winston.com |
| 2001 Market Street, Suite 3420 | |
| Philadelphia, PA 19103 | *Class Counsel for Plaintiffs* |
| Telephone: (215) 496-0300 | |
| Facsimile:  (215) 496-6611 | |
| jkodroff@srkattorneys.com | |
| espector@srkattorneys.com | |
| | |
| *Class Counsel for Plaintiffs* | |

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatories above.

By: */s/ Steve W. Berman*
    STEVE W. BERMAN