Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
Meredith Simons (SBN 320229)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com
merediths@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
bens@hbsslaw.com

*Class Counsel for Plaintiffs*

[Additional counsel on signature page]

Jeffrey L. Kessler (*pro hac vice*)
David G. Feher (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Sofia Arguello (*pro hac vice forthcoming*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
jkessler@winston.com
dfeher@winston.com
dgreenspan@winston.com
sarguello@winston.com
aidale@winston.com
sviebrock@winston.com
nvyas@winston.com

Jenifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
jparsigian@winston.com

*Class Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**PLAINTIFFS' RENEWED MOTION FOR A PROSPECTIVE ORDER CONCERNING THIRD-PARTY CLAIMS BUYOUT SERVICES**<br><br>Hrg. Date:   N/A<br>Time:   N/A<br>Judge:   Hon. Claudia Wilken<br>Courtroom:   N/A |

1

## NOTICE OF MOTION

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

PLEASE TAKE NOTICE that on a date to be determined before the Honorable Claudia

4

Wilken of the United States District Court for the Northern District of California, Oakland

5

Division, located at 1301 Clay Street, Oakland, CA 94612, the Class Plaintiffs ("Plaintiffs") will

6

and hereby do move the Court for a prospective order concerning third-party claims buyout

7

services. This motion is based on this notice of motion and motion, the accompanying

8

memorandum of points and authorities, declarations, and pleadings and papers on file in this

9

action.

10

DATED: September 5, 2025                    Respectfully submitted,

11

By  */s/ Steve W. Berman*                    By  */s/ Jeffrey L. Kessler*

12

Steve W. Berman (*pro hac vice*)                Jeffrey L. Kessler (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)                David G. Feher (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)              David L. Greenspan (*pro hac vice*)

13

Meredith Simons (SBN 320229)                    Sofia Arguello (*pro hac vice forthcoming*)
HAGENS BERMAN SOBOL SHAPIRO LLP                 Adam I. Dale *(pro hac vice)*

14

1301 Second Avenue, Suite 2000                  Sarah L. Viebrock *(pro hac vice)*
Seattle, WA 98101                               Neha Vyas (*pro hac vice*)

15

Telephone: (206) 623-7292                       WINSTON & STRAWN LLP
Facsimile:  (206) 623-0594                      200 Park Avenue

16

steve@hbsslaw.com                               New York, NY 10166-4193
emilees@hbsslaw.com                             Telephone: (212) 294-6700

17

stephaniev@hbsslaw.com                          Facsimile:  (212) 294-4700
merediths@hbsslaw.com                           jkessler@winston.com

18

                                                dfeher@winston.com

19

Benjamin J. Siegel (SBN 256260)                 dgreenspan@winston.com
                                                sarguello@winston.com

20

HAGENS BERMAN SOBOL SHAPIRO LLP                 aidale@winston.com
715 Hearst Avenue, Suite 300                    sviebrock@winston.com

21

Berkeley, CA 94710                              nvyas@winston.com
Telephone: (510) 725-3000

22

Facsimile:  (510) 725-3001
bens@hbsslaw.com                                Jeanifer E. Parsigian (SBN 289001)

23

                                                WINSTON & STRAWN LLP
                                                101 California Street, 21st Floor

24

*Class Counsel for Plaintiffs*                  San Francisco, CA 94111
                                                Telephone: (415) 591-1000

25

                                                Facsimile:  (415) 591-1400
                                                jparsigian@winston.com

26

27

                                                *Class Counsel for Plaintiffs*

28

**TABLE OF CONTENTS**

<u>Page</u>

I.  INTRODUCTION ....................................................................................................1

II. ARGUMENT ..........................................................................................................3

      A.  There are tax risks, compliance burdens, and administrative costs associated with third-party sales and assignment of Class Members' settlement claims. ...................................................................3

      B.  The Court should require Third-Party Claim Buyers to make a disclosure to Class Members of the tax risks...........................................5

      C.  The Court should permit direct payments to Third-Party Claim Buyers only under limited circumstances. ...............................................6

      D.  The Court has authority to address these issues.......................................8

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ferguson v. Commissioner*,
174 F.3d 997 (9th Cir. 1999) ..................................................................3

*In re Grand Jury Proceedings*,
654 F.2d 268 (3d Cir. 1981)....................................................................9

### STATUTES

26 U.S.C. § 6721 ....................................................................................4

26 U.S.C. § 6722 ....................................................................................4

28 U.S.C. § 1651 ....................................................................................8

### OTHER AUTHORITIES

26 C.F.R. § 1.468B-2(l)(2)......................................................................3

Communications Among Parties, Counsel, and Class Members, ANN. MANUAL
COMPLEX LITIG. § 21.33 (4th ed.) ...........................................................9

## I.    INTRODUCTION

Class Counsel respectfully seek judicial intervention and guidance regarding potential risks and burdens associated with the sale of settlement claims by Class Members. Since final approval of the Settlement, Class Counsel has learned that a number of third parties (hereinafter, "Third-Party Claim Buyers") are offering to purchase Class Members' claims, and that they will seek to directly receive Class Members' settlement payments from the Qualified Settlement Fund ("QSF"). We understand that several of these Third-Party Claim Buyers have already entered into contracts with Class Members under which the Class Members have given up their rights to participate in the future settlement distributions they are entitled to in exchange for a discounted, lump-sum payment upfront.

Class Counsel has retained Miller Kaplan Arase LLP ("MKA") to provide advice with respect to the compliance obligations of the QSF and the reporting risks, administrative burdens, and tax implications to Class Members and the QSF from making payments to Third-Party Claim Buyers who purchase settlement claims from Class Members. As indicated by the accompanying declaration of MKA's Nicholas Sanchez ("Sanchez Decl."), the validity of each claim sale for tax purposes depends on the timing of the transaction relative to certain milestones in the litigation as well as applicable state law. Sanchez Decl. at ¶ 6. Determining that validity carries administrative costs and triggers reporting risk for the QSF. Sanchez Decl. at ¶ 5. What's more, it raises tax compliance, reporting, and other risks and burdens to Class Members. Sanchez Decl. at ¶ 11. Moreover, the QSF can only issue payments directly to Third-Party Claim Buyers who purchased a settlement claim in an outright (and otherwise valid) sale, as opposed to through other structures like a loan or advance, which carry a host of other negative tax consequences, including ongoing tax liabilities for Class Members for the duration of the 10-year term of the Settlement. Sanchez Decl. at ¶ 3 n.1.

Notwithstanding these burdens and risks, Class Counsel is cognizant that many Class Members want to sell their claims in order to obtain payment now instead of waiting for settlement distributions over a 10-year period. In an effort to balance the risks to the class and the burden to the fund while not inhibiting Class Members' choices, and following the Court's Order on the

1  prior related administration motion and opposition briefs (*see* ECF Nos. 1018, 1021 1022), Class

2  Counsel has consulted with some of the Third-Party Claim Buyers about ways to mitigate the risks

3  to Class Members and the QSF associated with outright sale of claims. Based on these discussions

4  and further consultations with MKA, as reflected in the Sanchez Declaration, Class Counsel

5  respectfully submits the following proposed solution and requests that it be ordered by the Court:

6  (1) All Third-Party Claim Buyers seeking to purchase Class Members' settlement claims

7  should be required to provide a tax disclosure to Class Members using the language

8  proposed in this Motion. The disclosure should be provided at least twice, with one being

9  included in the initial solicitation or marketing materials and the other with any sale or

10  transaction agreement.

11  (2) All Third-Party Claim Buyers who are contemplating or who have already completed a

12  claim purchase and who wish to be paid directly by the QSF shall be required to promptly

13  notify the QSF of the sale and provide the QSF with (i) a bill of sale and (ii) a signed

14  indemnification form containing the language proposed in this Motion agreeing to

15  indemnity the fund for any tax reporting risk based on the Third-Party Claim Buyers'

16  representations of the validity of the sale. For any new sales transactions, the required

17  documentation must be provided to the QSF within fifteen (15) days of the closing of a

18  sales transaction. For any sales transactions that have already been consummated, the

19  required documentation must be provided within fifteen (15) days from the Court's order

20  on this Motion.

21  (3) Settlement payments can only be made directly to Third-Party Claim Buyers who

22  complete their purchase of a settlement claim prior to the exhaustion of any appeals in this

23  case and otherwise comply with the aforementioned requirements. In all other

24  circumstances, settlement disbursement must be made directly to Class Members.

25  This proposal seeks to protect the interests of the Class and minimize possibilities for Class

26  Member confusion, while at the same time maximizing choices for Class Members. That includes

27  permitting Third-Party Claim Buyers to offer their services and, in particular circumstances,

28

receive direct payments from the QSF, if Class Members choose to accept these terms with fulsome information in hand.

## II.    ARGUMENT

**A.    There are tax risks, compliance burdens, and administrative costs associated with third-party sales and assignment of Class Members' settlement claims.**

In a typical structured settlement, the primary foreseeable administrative burden to the settlement administrator would result from a Class Member moving from one residence to another or dying. This is not true where the Class Member assigns his rights to another party. At issue here are proposed "claim sales" in which third parties seek to purchase Class Members' future settlement rights in exchange for discounted, lump-sum, cash-advance payments. Where the QSF issues payments directly to a third party rather than the claimant, it could create complex tax risks, increased administrative costs, and compliance obligations for Class Members and the QSF. If and only if the sale is valid, the QSF can make settlement distributions to the third-party claim purchaser (i.e., the buyer of the claim) directly and issue the relevant tax form to the Third-Party Claim Buyer, with the Third-Party Claim Buyer responsible for taxes on each distribution over the 10-year term of the Settlement. That initial determination of whether the sale was valid, however, carries significant reporting risk and administrative costs to the fund. Sanchez Decl. at ¶ 5.

The QSF is required to issue tax information returns (*e.g.*, Form 1099) to the recipients of income. *See* 26 C.F.R. § 1.468B-2(l)(2); *see also* Sanchez Decl. at ¶ 4. To issue a correct tax information return, the QSF must determine to whom the income should be reported under the facts of each claim sale. The reporting risk and administrative costs to the fund may be significant. As a general matter, tax law permits claim sales, but the validity of each sale depends on the timing of the transaction relative to certain milestones in the litigation (*e.g.*, when the claim became "ripe" for tax purposes) as well as applicable state law which dictates what rights can be assigned or sold in a given state. *See, e.g., Ferguson v. Commissioner*, 174 F.3d 997 (9th Cir. 1999). The fund would necessarily have to conduct a case-by-case review of the contractual terms of each sale, as well as a review of applicable state law, to make an informed decision about whether a given transaction is valid for tax purposes. *See* Sanchez Decl. at ¶ 6.

As an example of the complexity, as a general matter if a claim sale occurs after the Class Member has a right to the settlement payment, the QSF must report the settlement payment as income to the Class Member, *i.e.*, the right to the income has ripened for tax purposes and the claim sale is a prohibited assignment of income for tax purposes. Alternatively, if a claim sale occurs before the Class Member has a right to the settlement payment, the QSF would respect the claim sale for tax purposes and report the settlement payment as income to the claim buyer. And governing state law related to the rights assigned or sold add to the administrative burden of determining who has the lawful right to the settlement payment. *See* Sanchez Decl. at ¶ 9. The IRS has issued a Private Letter Ruling ("PLR") holding generally that, strictly from a timing perspective, a transfer of a litigation claim to a third person can be effective if completed *prior* to the time of the expiration of appeals in the case. *See* PLR 200107019. These PLRs are taxpayer specific, however, and it is unclear if PLR 200107019 represents the current agency. *Id.* at ¶ 7. A failure to issue a tax information return to the correct recipient would expose the QSF to a per-return penalty under 26 U.S.C. §§ 6721 and 6722 of up to $340 per information return (for returns due in calendar year 2026, subject to annual inflationary adjustments), and other potential ongoing tax liabilities. *Id.* at ¶ 10.

A claim sale also carries tax risks for Class Members. While the QSF must undertake the analyses described above to be able to comply with its tax information reporting obligation, so too must each Class Member. If the transaction is not valid from a tax or state law perspective, the Class Member could have ongoing tax liabilities, potentially for the duration of the 10-year term of the settlement, which could create a shortfall for the Class Member. Moreover, to the extent a Class Member takes a tax position inconsistent with the tax information return issued by the QSF, the Class Member could be subject to an audit by the IRS related to the discrepancy and potentially be subject to a tax assessment, penalties, or an examination of the Class Member's tax return. *See* Sanchez Decl. at ¶¶ 11-12.

With these complexities, risks, and burdens in mind, the remainder of this Motion addresses the ways Plaintiffs propose to mitigate these concerns.

**B.    The Court should require Third-Party Claim Buyers to make a disclosure to Class Members of the tax risks.**

Because of the tax risk for Class Members identified in Section II.A, *supra*, all third-party entities seeking to purchase Class Members' settlement claims should be required to fully disclose the potential tax implications of the settlement distributions to Class Members prior to signing any contract related to the claims in this Settlement. The disclosure should be provided at least twice, with one being prominently displayed and included in the initial solicitation or marketing materials and the other in any sale or transaction agreement with Class Members. Class Counsel would also display the disclosure on the settlement website (https://www.collegeathletecompensation.com/).

Based on the specific risks at issue, Plaintiffs propose the following language for the disclosure:

### WARNING ABOUT POTENTIAL TAX CONSEQUENCES

You should seek advice from a registered tax preparer or competent tax advisor about your tax obligations for any payments that you are entitled to receive under the Settlement. However, the Court overseeing the Settlement has directed us to provide the following disclosure:

**THE TAX CONSEQUENCES OF ANY AGREEMENT YOU SIGN REGARDING YOUR CLAIM MAY VARY DEPENDING ON THE SPECIFIC TERMS OF THAT AGREEMENT. WITH CERTAIN TRANSACTION STRUCTURES, YOU MAY BE REQUIRED TO PAY INCOME TAXES ON THE *FULL* AMOUNT OF THE PAYMENTS THAT YOU ARE ENTITLED TO UNDER THE SETTLEMENT (EVEN IF THE RESULTING TAX LIABILITY EXCEEDS THE AMOUNT YOU RECEIVED UNDER THE AGREEMENT).**

**A TRANSACTION STRUCTURED AS AN OUTRIGHT OR "TRUE" SALE MAY REMOVE FUTURE SETTLEMENT PAYMENTS FROM YOUR GROSS INCOME FOR FEDERAL AND STATE INCOME TAX PURPOSES, IN WHICH CASE YOU WOULD INSTEAD LIKELY PAY TAX ON THE PURCHASE PRICE YOU RECEIVE. <u>AS A RESULT OF A SALE, YOU WOULD ALSO BE FORFEITING ANY AND ALL RIGHTS TO RECEIVE ADDITIONAL INCOME OR FUTURE PAYMENTS UNDER THE FOURTH AMENDED STIPULATION AND SETTLEMENT AGREEMENT, *IN RE: COLLEGE ATHLETE NIL LITIGATION*, NO. 4:20-CV-03919 (THE "SETTLEMENT AGREEMENT").</u> YOU SHOULD CONSULT WITH A COMPETENT TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF YOUR PARTICULAR AGREEMENT BEFORE SIGNING THE AGREEMENT.**

Additional information, including information about the potential tax consequences of selling your right to receive settlement payments, may be found on the Settlement website at: [LINK TO FAQ WITH THIS INFO]

## C. The Court should permit direct payments to Third-Party Claim Buyers only under limited circumstances.

As Plaintiffs explained in Section II.B, claim sales create complex tax reporting risks, increased administrative costs, and compliance obligations for Class Members and the QSF. However, not all transaction types result in the same negative tax consequences, and upon further consultation with the QSF's tax consultants, Plaintiffs understand that outright sales prior to the exhaustion of all appeals processes carry the least amount of risk for the QSF and Class Members alike. Sanchez Decl. at ¶ 7. Moreover, in the case of a valid and outright sale, the QSF is permitted under tax law to pay the Third-Party Claim Buyer directly and issue relevant tax forms to that third party instead of the Class Member. Sanchez Decl. at ¶ 9. Accordingly, and in an effort to promote the diversity of opportunities for Class Members to benefit from the settlement, Class Counsel do not oppose the assignment of claims to Third-Party Claim Buyers if the assignment is prior to the exhaustion of any appeals.[1] However, even then, reasonable limitations should be put on these direct payments to Third-Party Claim Buyers to mitigate the reporting risks and administrative burdens on the fund.

Rather than require the QSF to determine whether a sale has occurred and, if so, if that sale is valid for tax purposes, in order for a Third-Party Claim Buyer who is contemplating or who has already completed a claim purchase to obtain direct disbursements from the QSF, the Third-Party Claim Buyer should be required to promptly notify the QSF in writing within fifteen (15) days of closing the sales transaction or, for existing claim sales, within fifteen (15) days of the date of the Court's order on this Motion, of both the sale and the identity of the third-party purchaser by sending an email to the claims administrator, and the Third-Party Claim Buyer should be required to provide the QSF with a copy of a true bill of sale and signed indemnification form confirming

---

[1] While Plaintiffs continue to believe that one reasonable interpretation of Section 50 of the Settlement Agreement is that it prohibits all assignments of Class Member rights, Class Counsel has conducted a further evaluation and, based on discussion with claims buyers, agree that the Settlement likewise does not prohibit payments to third parties at a Class Member's directive in the case of an outright sale.

that the purchaser assumes full responsibility for determining the eligibility of the seller as a class member and bears the risk of, and sole responsibility for, ensuring that it is legally entitled to receive any payment from the Fund, including with respect to confirming that no laws, regulations, court orders, or other lienholders or payees have a superior or conflicting claim to the same funds or otherwise restrict or limit a third party's eligibility to receive payment, and will indemnify the Fund for any reporting risks based on those representations.

The indemnification form should include the following language:

### INDEMNIFICATION OF TAX LIABILITIES

Purchaser hereby represents for the benefit of Verita Global LCC that this Bill of Sale was entered into with full transparency, complete disclosure, and without any misleading statements, coercion, or material omissions from or by Purchaser to Seller. Purchaser further assumes full responsibility for determining the eligibility of the Seller as a class member and bears the risk of, and sole responsibility for, ensuring that it is legally entitled to receive any payment from the Settlement Funds, including with respect to confirming that no laws, regulations, court orders, or other lienholders or payees have a superior or conflicting claim to the same funds or otherwise restrict or limit a third-party's eligibility to receive payment. Purchaser further acknowledges that Verita Global LLC shall have no responsibility for the evaluation of competing claims or priorities among lienholders or other third parties.

Purchaser hereby also agrees to indemnify and hold Verita Global LLC, the Qualified Settlement Fund (the "Fund") and any and all of its respective [directors, managers, employees, and controlling persons] (each, "Indemnified Party") harmless from and against and agrees to defend, and will pay to each Indemnified Party the amount of, any and all losses (including attorneys' fees) awarded against or incurred or suffered by such Indemnified Party, whether or not involving a third-party claim, demand, action or proceeding, arising out of any and all claims, demands, obligations, losses, liabilities, damages, costs and expenses (including U.S. federal taxes, state and local income taxes, withholding taxes, and any interest or penalties) which the Indemnified Party may suffer as a result of any claims, liabilities or charges asserted against it by the Internal Revenue Service (the "IRS") or any state or local tax authority with respect to the filing and reporting (or failing to file and report) any returns or reports relating to the sale of the claim hereunder, and any subsequent payments, required by the IRS or any state and local tax authority.

If any claim, demand, action or proceeding (including any investigation by any governmental authority) shall be brought or alleged against an Indemnified Party in respect of which indemnity is to be sought pursuant to this Bill of Sale, the Indemnified Party shall, as soon as reasonably practicable after receipt of notice of the commencement of any such claim, demand, action or proceeding, notify Purchaser in writing of the commencement of such claim, demand, action or proceeding, enclosing a copy of all papers served, if any;

1
2
provided, that the omission to so notify Purchaser will not relieve Purchaser from any liability that it may have to the Indemnified Party under this Bill of Sale.

3
4
5
Requiring this indemnification is necessary because of the myriad risks to Class Members and QSF that could result from, for example, an invalid assignment. The Third-Party Claim Buyer should assume that risk.

6
**D.    The Court has authority to address these issues.**

7
8
9
10
11
12
13
14
In prior briefing—*see* ECF No. 1018 at 4-5—certain class members questioned the Court's jurisdiction to address these issues. But this Court has jurisdiction over this matter pursuant to its retained and continuing jurisdiction over the implementation of the settlement. The Settlement Agreement expressly provides that "[t]he Court shall retain jurisdiction to resolve all disputes that may arise concerning compliance with, the validity of, interpretation, or enforcement of the terms and conditions of the settlement," and the Court incorporated the settlement terms into its Final Approval Order, again reiterating its continuing jurisdiction over administration of the settlement. *See* Settlement Agreement ¶ 45; Final Approval Order, ECF No. 978 at 14.

15
16
17
18
19
20
21
22
23
24
25
26
Moreover, the Court's authority to oversee the administration of the Settlement extends to non-parties' dealings with Class Members including the Third-Party Claim Buyers at issue here. *See, e.g.*, *NFL Players' Concussion Injury Litig.*, 923 F.3d 96, 108-09 (3d Cir. 2019) ("Although the District Court's retention of jurisdiction applied only to the parties and other related entities expressly set out in the retention provision—and there can be no dispute that the settlement agreement was not binding on nonparties—the Court also had authority to enforce its orders under the All Writs Act, 28 U.S.C. § 1651, as well as authority to protect the class as a fiduciary under Federal Rule of Civil Procedure 23."). In the *NFL Concussions* case, the Third Circuit explained that while "the District Court's authority certainly does not extend to how class members choose to use their settlement proceeds after they are disbursed," the court has authority to enjoin behavior by third parties to the extent necessary to effectuate and preserve the integrity of its prior orders. *Id.* at 111.

27
28
Finally, the Court also has authority to ensure that Class Members are appropriately informed and not misled about the potential tax implications associated with selling their claims.

*See*, *In re Grand Jury Proceedings*, 654 F.2d 268, 277 & n.14 (3d Cir. 1981) (The All Writs Act "extends to all persons who are in a position to frustrate the implementation of a court order or the proper administration of justice." (internal quotation marks omitted)); Communications Among Parties, Counsel, and Class Members, ANN. MANUAL COMPLEX LITIG. § 21.33 (4th ed.) ("The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class.").

Accordingly, Plaintiffs request an Order that, as of the date of this Order:

1.      All third-party entities seeking to purchase Class Members' settlement claims should be required to fully disclose the potential tax implications of the settlement distributions to Class Members prior to signing any contract related to the claims in this Settlement. The disclosure should be provided at least twice, with one being included in the initial solicitation or marketing materials and the other with any sale or transaction agreement. Plaintiffs have provided proposed language in Section II.B, *supra* of this Motion, which will also be in the [Proposed] Order, concurrently submitted herewith.

2.      Class Counsel and the Claims Administrator will continue to monitor Third-Party Claim Buyers to ensure that they comply with any Order of the Court and will provide any such entities that contact Class Counsel or the Claims Administrator with this Order.

3.      Class Counsel shall update the settlement website with an FAQ regarding the potential tax implications of payments from third-party claims buying entities.

4.      The QSF shall not provide direct disbursements of settlement funds to non-Class Members except to Third-Party Claim Buyers that have completed outright purchases of claims from Class Members and those purchases are completed prior to the exhaustion of any appeals in the case.

5.      With respect to outright sales of claims that are completed prior to the exhaustion of any appeals, all Third-Party Claim Buyers who are contemplating or who have already completed a claim purchase and who wish to obtain direct disbursements from the QSF shall be required to promptly notify the QSF in writing within 15 days of closing the sales transaction or,

1  for existing claim sales, within 15 days of the date of this Order, of both the sale and the identity

2  of the Third-Party Claim Buyers of the claim by sending an email to the claims administrator, and

3  provide the QSF with (i) a copy of a true bill of sale and (ii) a signed indemnification form. That

4  indemnification form shall use the proposed language in Section II.C, *supra* of this Motion, which

5  will also be in the [Proposed] Order, concurrently submitted herewith.

6

7  DATED: September 5, 2025                    Respectfully submitted,

8  By  */s/ Steve W. Berman*                    By  */s/ Jeffrey L. Kessler*
       Steve W. Berman (*pro hac vice*)              Jeffrey L. Kessler (*pro hac vice*)
9      Emilee N. Sisco (*pro hac vice*)              David G. Feher (*pro hac vice*)
       Stephanie Verdoia (*pro hac vice*)            David L. Greenspan *(pro hac vice)*
10     Meredith Simons (SBN 320229)                  Sofia Arguello (*pro hac vice forthcoming*)
       HAGENS BERMAN SOBOL SHAPIRO LLP               Adam I. Dale (*pro hac vice*)
11     1301 Second Avenue, Suite 2000                Sarah L. Viebrock (*pro hac vice*)
       Seattle, WA 98101                             Neha Vyas (*pro hac vice*)
12     Telephone: (206) 623-7292                     WINSTON & STRAWN LLP
       Facsimile: (206) 623-0594                     200 Park Avenue
13     steve@hbsslaw.com                             New York, NY 10166-4193
       emilees@hbsslaw.com                           Telephone: (212) 294-6700
14     stephaniev@hbsslaw.com                        Facsimile: (212) 294-4700
       merediths@hbsslaw.com                         jkessler@winston.com
15                                                   dfeher@winston.com
                                                     dgreenspan@winston.com
16     Benjamin J. Siegel (SBN 256260)               sarguello@winston.com
       HAGENS BERMAN SOBOL SHAPIRO LLP               aidale@winston.com
17     715 Hearst Avenue, Suite 300                  sviebrock@winston.com
       Berkeley, CA 94710                            nvyas@winston.com
18     Telephone: (510) 725-3000
       Facsimile: (510) 725-3001
19     bens@hbsslaw.com                              Jeanifer E. Parsigian (SBN 289001)
                                                     WINSTON & STRAWN LLP
20                                                   101 California Street, 21st Floor
       Jeffrey L. Kodroff (*pro hac vice*)           San Francisco, CA 94111
21     Eugene A. Spector (*pro hac vice*)            Telephone: (415) 591-1000
       SPECTOR ROSEMAN & KODROFF, PC                 Facsimile: (415) 591-1400
22     2001 Market Street, Suite 3420                jparsigian@winston.com
       Philadelphia, PA 19103                        *Class Counsel for Plaintiffs*
23     Telephone: (215) 496-0300
       Facsimile: (215) 496-6611
24     jkodroff@srkattorneys.com
       espector@srkattorneys.com
25
       *Class Counsel for Plaintiffs*
26

27

28

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2      Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence

3  in the filing of this document has been obtained from the signatories above.

4                                      By: _/s/ *Steve W. Berman*_____

5                                          STEVE W. BERMAN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28