IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 20-cv-03919 CW |

**DECLARATION OF NICHOLAS A. SANCHEZ IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR PROSPECTIVE ORDER CONCERNING THIRD-PARTY CLAIM BUYOUT SERVICES**

I, Nicholas A. Sanchez, am over eighteen years of age and state the following facts which I know of my own personal knowledge.

1. I am a tax attorney and partner of Miller Kaplan Arase LLP ("MKA"), a certified public accounting firm organized under the laws of the State of California.

2. I have been retained by Class Counsel and the Claims Administrator to provide advice with respect to the compliance obligations of the qualified settlement fund ("QSF") – as that term is defined in 26 U.S.C. § 468B(g)(1) and the United States Treasury regulations promulgated thereunder, 26 C.F.R. § 1.468B-1 *et seq.* – arising out of the instant litigation. I have over 20 years of experience providing consulting, compliance and advisory services related to QSFs, including tax issues resulting from the settlement of class actions.

3. I am informed by Class Counsel and the Claims Administrator that third parties (hereinafter, "Third Party Claim Buyers") are seeking to enter, or have already entered,

into contracts with certain Class Members wherein Class Members have given up their rights to participate in future settlement distributions to which they are entitled in exchange for a lump-sum payment upfront ("Claim Sale").[1] A Claim Sale raises tax compliance and reporting issues for both the QSF and Class Members.

4. The QSF is required to distribute settlement payments and issue tax information returns (*e.g.*, Forms 1099) to the recipients of that income. *See* 26 C.F.R. § 1.468B-2(l)(2) ("Payments and distributions by a qualified settlement fund are subject to the information reporting requirements of part III of subchapter A of chapter 61 of the Internal Revenue Code (Code).").

5. In order for the QSF to determine to whom it must (i) make the settlement payments *and* (ii) issue relevant tax forms (*e.g.*, Form 1099), the QSF must first determine whether a Claim Sale occurred and, if so, if it was valid. If, and only if, the sale is valid, the QSF can make settlement distributions to the third-party claim purchaser (*i.e.*, the buyer of the claim) directly and issue the relevant tax form to the third-party claim purchaser, with the Third Party Claim Buyer the recipient of the income of each distribution over the 10-year term of the Settlement. That initial determination of whether a Claim Sale is valid, however, carries significant reporting risk and administrative costs to the fund.

6. The validity of each Claim Sale for tax purposes depends on the timing of the transaction relative to certain milestones in the litigation (*e.g.*, when the claim became "ripe" for tax purposes) as well as applicable state law which dictates what rights can be

---

[1] To the extent Class Members are considering structuring their sales transactions differently, as loans or other advance payment arrangements, it bears mention that those Class Members would still be the recipient of the income arising out of the settlement distributions for tax purposes and would be taxed on that future income stream. This declaration does not address transactions other than outright sales, as those alternative arrangements carry separate, additional potential negative tax consequences.

assigned or sold in a given state. *See, e.g., Ferguson v. Commissioner*, 174 F.3d 997 (9th Cir. 1999). The QSF would necessarily have to conduct a case-by-case review of the contractual terms of each sale, as well as a review of applicable state law, in order to determine whether a given transaction is valid for tax purposes.

7.   With respect to timing, a sale is only valid if it occurs prior to the settlement becoming "ripe" for tax purposes. The IRS has issued a Private Letter Ruling ("PLR") holding generally that, strictly from a timing perspective, a transfer of a litigation claim to a third person can be effective if completed *prior* to the time of the expiration of appeals in the case. *See* PLR 200107019. However, PLRs are taxpayer- and fact-specific and it is unclear if this pronouncement represents the current agency position, nor how the IRS would rule under the instant facts.

8.   Furthermore, state laws governs when and under which circumstances, rights, including rights to proceeds from a settlement, can be assigned or sold.

9.    To give an example of the complexity involved, generally, if a Claim Sale occurs after the Class Member has a right to the settlement payment, the QSF must report the settlement payment as income to the Class Member, *i.e.*, the right to the income has ripened for tax purposes and the Claim Sale is a prohibited assignment of income for tax purposes. Alternatively, if a Claim Sale occurs before the Class Member has a right to the settlement payment, the QSF would respect the Claim Sale for tax purposes and report the settlement payment as income to the Claim Buyer. Governing state law related to the rights assigned or sold add to the administrative burden of determining who has the lawful right to the settlement payment and to whom the tax forms must be issued.

10.   A failure to issue a tax information return to the correct recipient would expose the QSF to a per-return penalty under 26 U.S.C. §§ 6721 and 6722 of up to $340 return

(for returns due in calendar year 2026, subject to annual inflationary adjustments), and other potential ongoing tax liabilities.

11.  A Claim Sale also carries certain tax risks for Class Members. While the QSF must undertake the aforementioned analyses to be able to comply with its tax information reporting obligation, so too must each Class Member. If the transaction is not valid from a tax *or* state law perspective, the Class Member could have ongoing tax liabilities and be responsible for including into income each distribution to which they were entitled over the ten-year term of the Settlement, which could create a shortfall for the Class Member.[2]

12.  Moreover, to the extent a Class Member takes a tax position inconsistent with the tax information return issued by the QSF, the Class Member will, at the very least, be required to explain the discrepancy to the Internal Revenue Service ("IRS") and defend the tax position taken. The Class Member could also be subject to an examination of the Class Member's tax return(s) by the IRS related to the discrepancy and potentially subject to a tax assessment, penalties, and interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on September 4, 2025 in Santa Barbara, California.

_____
Nicholas A. Sanchez

---

[2] There could be other non-tax related risks to the QSF and Class Member if the transaction is not deemed valid under, for example, state law, but those risks are beyond the scope of the opinion offered in this declaration.