September 12, 2025

Re: College Athlete NIL Litigation, Case No. 4:20-cv-03919 CW

Dear Judge Wilken,

  I am thankful to write to you from Liberty University where I am a designated student athlete (DSA) on the cross country and track teams.  However, I am extremely concerned that there are major contradictions that exist in the space between the Court mandated policies and how these things are being carried out in the actual lives of student athletes across the nation.

  Because of what I see happening in schools like Auburn, Tennessee, Cal Poly, Stephen F. Austin, Utah, and many others across the nation, I oppose the operational portion of this Settlement as it relates to the Injunctive Relief Settlement Class and roster limits.  The roll out of roster limits and DSAs has caused and is going to cause more "irreparable harm" to unrepresented, injunctive class members because of the failure of this Settlement to adhere to the standards of Rule 23.  An immediate stay on roster limits should be issued.

Following are my experiences and observations:

**Inadequate Representation**

  It states on page 6, subscript 4, of Document 1008-1 "Notice of Your Right to Object," provided to incoming D1 athletes that the "court appoints class representatives and lawyers to work on the case and represent the interests of all class members. …Berman… and … Kessler… . These are the lawyers that negotiated the settlement on your behalf…"  On February 1, 2025, I emailed my objection letter to Mr. Kessler.  I received a response a few hours later from Adam Dale, who carbon copied Jeffrey Kessler in the reply. This was his response. (For the full exchange, please see the email correspondence listed as Exhibit A.)

> "I think you intended for this letter to be sent to the judge who will be deciding whether or not to approve the *House v. NCAA* settlement.  We are the lawyers representing the athletes who are asking the judge to approve the settlement."

  When I first read the response, I assumed that I had misunderstood who was representing who in the court case.  I was shocked when I found out that he truly was court appointed to be representing me and he had outrightly refused to help me. As an

18 year old, I felt like I had no representation. And, without representation, it is impossible for a settlement to be fair, reasonable and adequate.

Refusal to represent me is a conflict of interest on the part of Mr. Berman and Mr. Kessler. According to Rule 23(b)(2), this fails to meet the class certification requirements of the Injunctive Relief Class as it pertains to the Injunctive Relief Settlement's roster limits provisions. So as I did in January and April of this year, I am again writing to you without representation in defense of myself, my teammates, friends, and competitors.

Is it possible that it is an "abuse of discretion" by the Court to try to lump so many different members of both the damages and injunctive classes into one settlement and have them be represented by attorneys who have stated in their own words that they are not representing me? I wonder how many voices, like mine, were silenced that we will never know about? It is stated on page 28 of the final Settlement Agreement that "competent counsel are better positioned than the courts to produce a settlement that fairly reflects each parties expected outcome in litigation" and that "the Court finds that Class Counsel have adequately represented settlement class members throughout this litigation and that this factor weighs heavily in favor of granting final approval." They certainly did not negotiate the settlement on behalf of me (as evidenced by their own words). And, despite their "extensive experience in challenging NCAA restraints," Mr. Berman and Mr. Kessler have misled, misinformed and misrepresented how they represented individual class members. The settlement agreement as it pertains to the Injunctive Relief Settlement Class and its provisions fails to provide "fair, adequate and reasonable representation."

The final ruling of the Settlement Agreement (page 46, lines 1-2) also states that the "standard for whether or not a settlement can be approved is not whether or not the settlement could have been better, but rather whether it is fair and adequate." Refusing to represent me and the Injunctive Relief class is neither fair nor adequate.

Another interesting consideration comes from the words of Grant House in a July 2, 2025 interview on the SportsWise podcast, Episode 89. At 15:48 Grant states:
> *"I had vision of this, but I had no involvement in the actual discussions. So my involvement in the settlement was zero other than advocating for this to get pushed forward and happening. So these compromises, the negotiation, the talks that were happening were without me or without any athletes present as well too. And I think that's a systemic factor in itself. But I think when I saw the settlement negotiations happening as it's unfolding, I think one of the most unfortunate things was people were losing roster spots."*

This again contradicts the Court's finding that all class members share a common interest and that athletes had adequate representation from the named Plaintiffs in the context of the roster limits provision (Final Settlement Agreement p. 55). This is yet another instance of where Class Counsel misled, misrepresented and misinformed the Court.  If Class Counsel did not consult their lead, named Plaintiff, and refused to represent me as a high school prospective member of the Injunctive Relief Class, it stands to reason that they would not be able to fairly, adequately or reasonably represent the members that fall somewhere in between the polarized sides of the Class.

**Informing the Class (Unsuccessful Notice Program)**

The responsibility of the Class Counsel to educate, inform, and publicize details of the rights and responsibilities of the student athletes has not been handled adequately.  I disagree with the Court's assessment that the notice program was successful. Speaking on behalf of my peers, I have to tell you that the NCAA Settlement Agreement Notice Program was misunderstood at best and stealthy at worst.

You need to also remember that because many members of the Injunctive Relief Class were still in high school, we received very little communication from the NCAA. Our intentions to become D1 athletes did not afford us any inside knowledge of the case's backstory, the hearing, or the Settlement Agreement.  Although I had an NCAA Eligibility Center ID and received periodic emails, tasks, and surveys from the center, I did not receive any sort of notice or communication regarding the settlement until July 23, 2025 when I received a Notification for Incoming NCAA D1 Athletes.  As a high schooler I was aware of the House v. NCAA case from the news but I was never informed of any sort of opportunity to object to it.  It was from a private sports podcast that I learned that I could object to the settlement.  I believe that for this settlement to be fair, reasonable, and adequate, the Injunctive Relief Class should receive better communication.

My understanding of the purpose of Rule 23 is to protect the rights of the absent class members who will be bound by the outcome.  The consequences of the Settlement reach into the next 10 years, but yet no notifications are being made to the prospective D1 athletes.  Your honor, really, the NCAA and Class Counsel should be responsible for notifying the parents of Little League, Club Soccer, Swim Club, Youth gymnastics and all other youth sport athletes.  This settlement is changing the rules of D1 sports, and the outcome is not all about the opportunity to earn more NIL money.  Parents of children 8 years old and older should be informed of this Settlement.  That

would involve adequate communication and is what could be called a "successful notice plan."

**Irreparable Harm:**

My cross country team was told on July 30th that our roster size was going to be reduced from 24 to 17 athletes. The "fairest solution" for this determination was a racing time trial. The trial took place after two weeks of practicing together. Nothing really prepares you for watching your teammates, who love each other, compete for spots on a team because of roster limits. Tears ran down my face as I watched the 5km race unfold. There were 5 girls competing for 2 spots. They finished and for some it brought relief while others extreme sorrow and heartbreak. I would congratulate one just to turn around and cry with another. How is it rationalized that this settlement is fair, just, and beneficial to the members of the Injunctive Relief Settlement class? How is it rationalized that this is increasing opportunities for student-athletes? Again, Class Counsel gave misleading information. These individuals in the time trial had been given DSA status, the coaches wanted them to be members of the team, but some had to be cut in order to be in compliance with Title IX. Optional participation, negotiated by biased Class Counsel, and instituted by the universities in "grandfathering them in" and overlooking the need for Title IX compliance was a lack of foresight and an "abuse of discretion" by the Court. Because of this unjust settlement, current, absent, future, and unrepresented members of the Injunctive Relief Class have been and are being harmed.

The DSA and roster limit portion of the Injunctive Relief Settlement was supposed to protect the opportunities of collegiate athletes to receive the educational benefit of participating in athletics. The IRS stated that class members who would lose their spot on a team due to roster limits should not be affected by the roster limits via designated student athlete status for the remainder of their college athletic career. However, this is not happening in the real world. These designated student athletes are being cut. Roster limits cause a decrease in team sizes university-wide across numerous sports which then causes recalculations of Title IX compliance numbers. As team sizes decrease in order to be in compliance with Title IX, designated student athletes are being cut. The intent of DSAs is not being fulfilled due to the overarching requirements of Title IX compliance.

There are also girls who made the decision to not even run the time trial. They live in my suite. I wake up early for practice every morning and walk out of my room to see that they are already up, making their breakfasts and having their quiet time before they go out to run their workout alone. If it were not for this settlement, they would be

on the team.  As I make my way through the transition to college and D1 athletics, they are the ones who I come home to and process life with, and I so wish that they were still at practice, because they deserve their spot (that they had last year before the settlement) and each have had unique roles on the team.   In talking to them, they have voiced their exhaustion regarding the ups and downs of this case, the lack of communication, representation, and clarity from Class Counsel.  They are disillusioned by how the NCAA could leave athletes, coaches and teams in such a state of confusion with numerous unknowns that left them grappling with their future over the summer.  For some, it became more than they could handle, and they left the sport and the team that they loved and cherished.

When I said that  "Your decision on this case will decide the fate of countless student-athletes" on April 7th in Oakland, I only had a glimpse of the fate of a few athletes, but now those implications overwhelm me.  I have read other objections on this docket where athletes' academic pathways have been completely upheaved due to roster limits and their need to enter the transfer portal.  Tears are brought to my eyes daily because I truly believe that if you had a chance to talk with every athlete affected by this settlement, you would issue an immediate emergency stay on the roster limits portion of this settlement.  Too many members of the class are being harmed and too many more have been blindsided or covertly informed of their rights.  Berman, Kessler, and the NCAA have done a phenomenal job couching the roster limits portion of this settlement under the auspices of increased scholarship limits.  This has done nothing but cause undo harm to the Injunctive Relief Class. This harm will not be able to be "remedied" with money in the way that it will the Damages Class.

**Rule 23 Class Certification**

The certifications of the current injunctive class are inadequate to fulfill Rule 23 in various aspects.  To begin, Rule 23(a) typicality is not satisfied because the named athlete Plaintiffs are not currently experiencing, nor experienced in the past, the roster limits from the Settlement Agreement.  This approved Settlement Agreement forces current athletes to be susceptible to the NCAA's regulations but former athletes and their opportunities, team size, qualifications, and rights are no longer impacted by the roster limit portion of the Settlement Agreement.  The Injunctive Relief Class should include athletes who are currently experiencing the upheaval of this settlement. It seems that the solution for the Injunctive Relief Class (roster limits) actually negates the initial Rule 23a commonality by separating the class through the elimination of their ability to compete in the D1 program.

I do agree that current and former D1 athletes share a common interest for a more competitive market and greater compensation for the labor of the D1 student-athletes.  However, Class Counsel, the NCAA and ultimately, the Court, overlooked that the former athletes who are the named Plaintiffs do not share an overarching common interest for the educational and developmental benefit of participating in collegiate athletics since their term of eligibility has expired and they have already received this benefit.  Sedona Prince was the only named Plaintiff who competed after the words  "roster limits" had been used in settlement negotiations. I had the opportunity to meet Sedona at the hearing in Oakland in April.  She commended me for standing up for my Class and stated that she wasn't in favor of the roster limits. So, to restate, I do not believe the class certification terms detailed on p. 8 of Document 978 "Opinion Regarding Order Granting Motion for Final Approval of Settlement Agreement Re: Dkt. No 717" are adequate, fair, or reasonable.

The final settlement agreement also states that Class Counsel "secured the Injunctive Relief Settlement, which will open the doors for each school to opt in" and it goes on to talk about monies that these schools will have the opportunity to distribute. Their refusal to represent me (and who knows how many others also received similar answers of refusal to represent), violates the Court mandate to represent all members of the settlement class.  Therefore, the failure to meet the requirements of Rule 23(b)(2) as it pertains to the Injunctive Relief Settlement's roster provisions because of refusal to represent members of the class (and silencing their voices) makes the certification of this Injunctive Relief Class unjust because it is impossible for the final injunctive relief to be appropriate respecting the class as a whole.

**Conclusion**

In my first objection to the settlement, I stated that "I am only one of thousands of student athletes left in limbo, trying not to let the uncertainty of our futures derail or hinder our everyday lives."  Unfortunately for some, despite support from coaches, parents, and friends, it has derailed not just their lives but their futures.  As NCAA D1 athletes, the support that stems from our sport is immeasurable.  We have a built-in team of peers, coaches, athletic trainers, doctors, nutritionists and tutors.  Our lives revolve around school and practice, our closest friends are our teammates and our hang out time is team dinner every night.  Without this support, the future and answering the question "How am I going to get there?" looks much different.  For the athletes who got cut and the DSAs who just lost their roster spot due to Title IX university compliance demands, new community is needed, new mentors are needed, new academic advisors are used, new rhythms must be learned, and the sweetness and growth that stems from having a team around you is gone, leaving them on the

outside looking in.  This is the story of numerous swimmers and runners across the nation.

    I appreciate the opportunity to share my reasons for concern regarding how the terms of the Settlement Agreement are affecting student athletes.  Although I have a roster spot, there are so many wrongs, so many inadequacies, and so much harm occurring from this case that I cannot stay silent.

I would like to speak at the hearing on November 6th.  I look forward to the justice you will apply to the situation surrounding this Settlement.

Sincerely,

Gracelyn Lee Laudermilch

NCAA ID# 2306927455

209 Crawford Lane
Rome, PA 18837

Exhibit 1:



## NCAA vs. House Settlement
9 messages

**Gracelyn Laudermilch** <gllaudermilch@gmail.com>  Sat, Feb 1, 2025 at 6:22 PM
To: jkessler@winston.com

Hello!
I am high school senior whose future collegiate athletic career plans have been turned upside down due to the roster limits. Please find my letter attached. I am willing to help this case in any way possible.
Thanks so much!
Gracelyn Laudermilch

📎 Final Letter.pdf
94K

**Dale, Adam I.** <AIDale@winston.com>  Sat, Feb 1, 2025 at 8:56 PM
To: "gllaudermilch@gmail.com" <gllaudermilch@gmail.com>
Cc: "Kessler, Jeffrey" <JKessler@winston.com>

Hello Gracelyn,

Thank you for the letter and for sharing your experience. I think you intended for this letter to be sent to the judge who will be deciding whether or not to approve the *House v. NCAA* settlement. We are the lawyers representing the athletes who are asking the judge to approve the settlement. If you were trying to contact the judge, you should send your letter to:

Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

Please let us know if you have any questions.

**Adam I. Dale**

Winston & Strawn LLP

D: +1 212-294-5329