| | |
|---|---|
| **TO:** | **The Honorable Claudia Wilken** |
| | Ronald v. Dellums Federal Building & United States Courthouse |
| | c/o Class Action Clerk |
| | 1301 Clay Street |
| | Oakland, CA 94612 |
| **FROM:** | **Katherine McCabe Ernst** |
| | Vanderbilt University – Women's Lacrosse (2026) |
| | NCAA Eligibility Center ID 1911746845 |
| **CC:** | **Leigh Ernst Friestedt** |
| | **Jeffrey Faucette** |
| **RE:** | **Objection – Injunctive Relief – Title IX Violations** |
| | *In re: College Athlete NIL Litigation*, Case No. 4:20-cv-03919 (N.D. Cal) |
| **DATE:** | September 22, 2025 |

Dear Judge Wilken:

My name is **Katherine McCabe Ernst**, and I am a Division I student-athlete at Vanderbilt University ("Vanderbilt"), where I have been a member of the Women's Lacrosse Team since 2022. I am currently a Senior and scheduled to graduate in May 2026. As such, I am a member of both the **Additional Sports Class** and **Injunctive Relief Class** under the *House* Settlement.

On January 31, 2025, I submitted an Objection Letter requesting that the District Court not approve the *House* Settlement due to concerns related to Title IX of the 1972 Education Amendments Act ("Title IX"). Specifically, I objected to both the past damages Settlement and Injunctive Relief. (ECF 670). My attorney, Leigh Ernst Friestedt, presented these objections in person at the final approval hearing on April 7, 2025, and in a letter to the Court on April 15, 2025. (ECF 797 at 114-120; 806). I am currently appealing the District Court's approval of the Settlement to the Ninth Circuit Court of Appeals as part of *North et al.* appeal case No. 25-3835.

While I understand that the District Court has limited objections to incoming members of the Injunctive Relief Settlement Class, I am concerned that none of the named the Plaintiffs currently belong to this class. This raises a serious question about whether the class representatives adequately represent the interests of the Injunctive Relief Class – particularly current Division I student-athletes who are directly impacted by the Settlement's provisions.

At the final approval hearing on April 7, 2025, you raised this concern, stating:

> "The objectors claim that the named plaintiffs or the class representatives are inadequate representatives of the future student athletes… because none of the named plaintiffs will be affected by the future injunctive relief since it's going to happen in the future when they won't be playing anymore." (ECF 797 at 11-12)

Since then, the female Class Representatives, Sedona Prince and Nya Harrison, have graduated

1

from Texas Christian University and Stanford University, respectively, and as you anticipated:

> "The settlement agreement would go into effect a year or so from then, and by that time I'm guessing neither of those young women would anymore be student athletes and won't be affected by the future injunctive relief but only the backward-looking damages relief." (ECF 797 at 20).

As a current female Class Member who formally objected to the Injunctive Relief on January 31, 2025, I respectfully request the Court to consider my objection as representative for all female student-athletes who are, or will be, subject to the Settlement's Injunctive Relief terms.

**Settlement Approval – Injunctive Relief:** On June 6, 2025, the District Court approved the Settlement, and the Injunctive Relief went into effect immediately. At the time of my objection on January 31, 2025, and during the final approval hearing on April 7, 2025, it was unclear how the Injunctive Relief would be implemented in practice. Moreover, the terms of the Second Amended Injunctive Relief were not finalized until May 7, 2025. (ECF 958-2).

Now that I have returned to Vanderbilt this fall, I believe it is important to provide the Court with an update on how the terms of the Injunctive Relief are being applied at Vanderbilt and other universities across the country. My intent in providing this update is to assist the Court in ensuring the Settlement is implemented in a manner that promotes fairness, equity and compliance with federal law. This is not intended as a criticism of Vanderbilt, but rather as a learning opportunity for all of us as we work together to navigate the new landscape of college sports.

**Vanderbilt Update:** On June 27, 2025, Vanderbilt sent an email to all student-athletes titled: "Navigating Change Together: An Update for Student Athletes" – the email outlined how the *House* Settlement impacts the athletics program. Specifically, there were three key developments that impacted female student-athletes:

1. **<u>Revenue Sharing</u>**: Vanderbilt has elected to provide direct revenue-sharing payments to a limited set of "revenue-generating" sports – football, men's basketball, and baseball. The only women who will receive any portion of the $20.5 million allocation are the 15 members of the women's basketball team. Below is my estimate of the relevant numbers for Vanderbilt:

   - Total Student-Athletes = **442**
   - Total Receiving Revenue-Sharing = **169**
   - Roster Caps:   Men: Football (105), Basketball (15), Baseball (34) = **154**
                     Women: Basketball (15) = **15**
   - Revenue-Sharing % Breakdown:  **Men = 91% vs. Women = 9%**

   Although the precise dollar amounts allocated to men versus women have not been disclosed, public information indicates that certain football players are receiving between $100,000 and over $1million in revenue-sharing payments. Accordingly, it is reasonable to conclude that women are receiving less than 10% of the total revenue-sharing pool.

   Vanderbilt is not alone in using the BNIL formula to justify unequal allocations. Among the few universities that have disclosed their revenue-sharing breakdowns, the 75/15/5/5 model

2

is consistent across peers. The NIL Revenue Share Tracker summarizes which sports are included in revenue-sharing plans, and in every disclosed case, men appear to receive over 90% of the payments. (See Appendix)

**Requested Amendment**: Require all NCAA Division I member institutions to publicly disclose all "revenue-sharing" payments, broken down by sport and gender, to ensure full transparency for current and prospective student-athletes regarding how male and female student-athletes are compensated. Additionally, require that all revenue-sharing payments comply with Title IX, as such payments constitute a form of financial assistance that must be proportional to participation or provide equivalent benefits under Title IX.

2. **_Alston_ Awards**: The "*Alston* Awards" will be discontinued in the 2025-26 academic year. The 2024-25 payment will be the final installment, as any *Alston* Awards provided are now required to be deducted from the $20.5 million revenue-sharing cap. As I disclosed in my original objection letter, my teammates and I each received the full *Alston* payment of $5,980 per year. For female athletes, this is a significant loss – it was the only direct cash payment we received, and we took pride in receiving it, particularly as our team has been recognized for its academic excellence.

What is particularly troubling about the Injunctive Relief Settlement is that *Alston* Awards count against the revenue-sharing Pool, creating a financial incentive for universities to eliminate these payments to allocate more money to men's sports. (ECF 958-2 at 66). The impact of this provision is already being felt across college campuses. For example, my fellow objector, Mai Nirundorn, was in the last class to receive an *Alston* award – the University of Georgia's Women's Tennis team has already lost their *Alston* awards this year, despite Georgia being a university renowned for generating substantial athletic revenue.

In its Motion for Final Approval (ECF 721), the NCAA detailed the history of *O'Bannon* and *Alston,* noting that many schools were expected to provide substantial new benefits to student-athletes. As stated in *Hubbard v. NCAA*, No. 5:23-cv-01593-BLF (N.D. Cal. April 4, 2023), ECF No. 1 ¶ 4 "The injunction [in *Alston*] did not require schools to pay Academic Achievement Awards, but with the anticompetitive prohibition removed [up to $5,980], compensation for services of Division I athletes led colleges to do so." (ECF 721 at 12).

The NCAA reported that Division I schools widely embraced *Alston* awards. That history is now being rewritten. *Alston* payments – academic incentive awards expressly authorized by the U.S. Supreme Court – are being replaced with "revenue-sharing" payments that are allocated overwhelmingly to male athletes.

**Requested Amendment**: Amend **Article 3, *Benefits Pool* § 3 (Counting Benefits Against the Pool)** to remove the provision requiring $5,980 *Alston* awards to be counted against the Benefits Pool. (ECF 958-2 at 66). The Injunctive Relief currently excludes "*Personal Benefits*" and "*NCAA Payments/Benefits*" from counting against the Pool – categories that are not academic awards and disproportionately benefit male athletes. (ECF 958-2 at 67-68)

This amendment should also eliminate the cap on the Benefits Pool, thereby allowing institutions to provide *Alston* Awards to more female student-athletes who may not otherwise receive a "revenue-sharing" payment. These changes are necessary to ensure that

3

academic awards – particularly those earned by women – are not sacrificed to increase compensation for men's sports, and that Title IX's mandate for equitable financial assistance is upheld.

3. **Athletic Scholarships**: Vanderbilt's decision to add additional scholarships reduces the funds available to distribute within the $20.5 million revenue-sharing cap. However, Vanderbilt seems well-intentioned to creatively utilize the *House* Settlement parameters to benefit as many programs as possible.

    The issue – similar to the *Alston* Awards discussed above – is that any new or incremental scholarships will count against the Benefits Pool. This makes little sense and is likely to disproportionately disadvantage women in order to free up more money for men's sports. (ECF 958-2 at 67).

    **Requested Amendment**: Amend **Article 3, *Benefits Pool* § 3 (Counting Benefits Against the Pool)** to remove the provision requiring athletic scholarships to be counted against the Benefits Pool. (ECF 958-2 at 67). This change should be implemented in parallel with the proposed amendment for *Alston* Awards, ensuring that scholarships – particularly those awarded to women – are not sacrificed to increase compensation for men's sports.

4. **Title IX Release**: I raised the issue in my original objection letter and remain concerned about how the term "**Unreleased Claims**" is defined in the Fourth Amended Stipulation and Settlement Agreement as:

    "Claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., *other than any claims arising out of or relating to the distribution of the Gross Settlement Fund*."(ECF 958-2 at 16-17)

    Other than to shield the NCAA, athletic conferences, and universities from Title IX violations, I don't know why a Title IX release should appear in an antitrust class action settlement that has never addressed Title IX issues.

    **Requested Amendment**: I respectfully request that the clause "*other than any claims arising out of or relating to the distribution of the Gross Settlement Fund*" be deleted. This revision is necessary to ensure it is unequivocally clear that female student-athletes retain their full rights under Title IX to challenge any inequitable payments—whether related to past damages or to the Injunctive Relief payments—arising from the $20.5 million revenue-sharing distribution.

While Class Counsel has suggested that any Title IX issues be resolved in a separate forum, I respectfully disagree. Relegating these matters to individual litigation would force female student-athletes to bring countless lawsuits against their universities, particularly in light of estimates indicating that over 90% of Division I schools are already out of compliance with Title IX. This is an issue that can and should be addressed now, on a broader basis, within the framework of this Settlement.
.

4

**Request to Speak at Hearing – Legal Representation**:

I am currently being represented by attorney **Leigh Ernst Friestedt**. Due to commitments as a student-athlete at Vanderbilt, I will be unable to attend the hearing scheduled for November 6, 2025. In my absence, I request that Ms. Friestedt be permitted to speak on my behalf at the hearing.

Leigh's full contact information is listed below. Please include her on any future correspondence.

**Leigh Ernst Friestedt**
Equity IX, LLC 40
Mercer St. Suite 15
New York, NY 10013
leigh@equityix.com
(917) 513-5541

If you need any additional information, please feel free to contact me – my full contact information is listed below.

**Katherine Ernst**
2312 Elliston Place #118
Nashville, TN 37203
katherine.m.ernst@vanderbilt.edu
(484) 433-8231

Thank you for your consideration of my objections.


Sincerely,

*[signature: Katherine Ernst]*

**Katherine McCabe Ernst**
Vanderbilt University – Women's Lacrosse (2021 – Present)


cc:     Leigh Ernst Friestedt
         Jeffrey Faucette

# APPENDIX

**1.    Revenue Sharing Examples**

# Division I Revenue Sharing Under *House v. NCAA* (as of Sept. 22, 2025)

## I. Explicit Adopters of the *House* 75/15/5/5 Formula

- **Texas (SEC).** AD Chris Del Conte has stated Texas will follow the *House* split: **"75% football, 15% men's basketball, 5% women's basketball, 5% other sports"** (Sports Business Journal, 5/29/25; Houston Chronicle, 6/10/25; ESPN, 5/28/25).

- **LSU (SEC).** Officials told *The Advertiser* (USA TODAY Network Louisiana, 7/10/25) LSU would **"follow the House guidelines"** (75/15/5/5). *WWL/Audacy* (7/1/25) and *Tiger Rag* (7/1/25) reported the same.

## II. Signals / Variants (Close to 75/15/5/5 but Not Fixed Percentages)

- **Georgia (SEC).** AD Josh Brooks told *OnlineAthens* (2/25/25) Georgia's distribution will be **"very close to the back-pay formula"** (75/15/5/5). *Sports Business Journal* (6/25) confirmed Georgia views that model as a guideline.

- **Alabama (SEC).** AD Greg Byrne said Alabama will **"fully fund"** and that **football and men's basketball will get the highest percentages**, with other "ticketed sports" included. He called the plan **"fluid"** (Sports Illustrated, 6/18/25; Tuscaloosa News, 6/18/25).

- **Ohio State (Big Ten).** AD Ross Bjork confirmed OSU will fully fund and **start with four sports: football, men's basketball, women's basketball, women's volleyball**, guided by a "formula" considering Title IX (Buckeye Sports, 6/9/25; Columbus Dispatch, 6/12/25; Eleven Warriors, 7/1/25).

- **Penn State (Big Ten).** AD Pat Kraft committed to funding the full $20.5M cap (Penn State official letter, 6/7/25). *Sports Illustrated* (6/8/25) reported football will take the largest share, but percentages remain unpublished.

- **Texas A&M (SEC).** AD Trev Alberts confirmed full funding, initially **limited to six sports** (football, MBB, WBB, baseball, softball, volleyball) (KBTX, 5/29/25; Austin American-Statesman, 6/25).

- **University of Houston (Big 12).** AD Eddie Nuñez pledged full funding. The *Houston Chronicle* (7/25) reported a **variant**: ~68–69% football, ~23–25% men's basketball, balance to women's basketball/others.

- **Oregon (Big Ten).** Oregon announced it will **fully fund $20.5M** from July 1, 2025, but **did not release percentages** (GoDucks.com, 8/22/25).

- **Clemson (ACC).** *AP* (11/26/24) reported Clemson will fully fund and add ~150 scholarships. **No percentages** released.

- **South Carolina (SEC).** USC's official site confirms maximum funding ($20.5M) and use of CAPS/NIL Go, but **no published split** (GamecocksOnline, 2025).

## III. Why Many Remain Silent

- **Title IX risk.** Eight female athletes have appealed the *House* back-pay allocation; the Ninth Circuit **paused back-pay distributions** pending review (Associated Press, 6/12/25; CBS Sports, 6/11/25). Schools fear mirroring the 75/15/5/5 split could invite similar challenges.

- **Operational uncertainty.** Schools must absorb **roster caps** and **scholarship expansions**; ADs (e.g., Alabama, Texas A&M) call their plans **"fluid"** until finances stabilize (Sports Illustrated, 6/18/25; KBTX, 5/29/25).

- **Discretion under settlement.** The formula is not mandatory. Some schools (e.g., Oregon) only confirm full funding; others (e.g., Houston) disclose variants prioritizing football/MBB.

- **Transparency resistance.** A CBS Sports FOIA survey (7/11/25) showed many schools are **withholding contract details**, citing exemptions.

# Bibliography

- ESPN. "Del Conte: Texas will follow House formula at SEC spring meetings." May 28, 2025.

- *Houston Chronicle*. "Texas sets pace on revenue sharing." June 10, 2025.

- *Sports Business Journal*. "Texas AD Del Conte confirms 75/15/5/5 split." May 29, 2025.

- *The Advertiser* (USA TODAY Network Louisiana). "LSU to follow House guidelines." July 10, 2025.

- *WWL/Audacy*. "LSU confirms 75/15/5/5." July 1, 2025.

- *Tiger Rag*. "LSU's revenue sharing breakdown." July 1, 2025.

- *OnlineAthens / Athens Banner-Herald*. "UGA to use 75/15/5/5 (very close)." Feb. 25, 2025.

- *Sports Business Journal*. "Georgia confirms use of House formula." June 2025.

- *Sports Illustrated*. "How Alabama plans to split revenue sharing." June 18, 2025.

- *Tuscaloosa News*. "Byrne calls plan 'fluid.'" June 18, 2025.

- *Buckeye Sports*. "OSU AD Ross Bjork: Four sports included." June 9, 2025.

- *Columbus Dispatch*. "Ohio State to fund four sports." June 12, 2025.

- *Eleven Warriors*. "Ohio State outlines formula; Title IX considered." July 1, 2025.

- Penn State Official Athletics Site. "Letter from AD Pat Kraft." June 7, 2025.

- *Sports Illustrated*. "Penn State pivots to revenue sharing." June 8, 2025.

- *KBTX*. "Texas A&M to allocate across six sports." May 29, 2025.

- *Austin American-Statesman*. "A&M confirms structure." June 2025.

- *Houston Chronicle*. "UH revenue share: ~69% FB, ~25% MBB." July 2025.

- GoDucks.com. "Update from Oregon Athletics." Aug. 22, 2025.

- Associated Press. "Clemson to fully fund, add scholarships." Nov. 26, 2024.

- GamecocksOnline. "House Settlement Information." 2025.

- Associated Press. "Female athletes appeal House settlement." June 12, 2025.

- CBS Sports. "Back-pay distributions paused on appeal." June 11, 2025.

- CBS Sports. "FOIA requests reveal schools withholding contract details." July 11, 2025.