September 11, 2025



The Honorable Claudia Wilken
Ronald V. Dellums Federal Building & United States Courthouse
c/o Class Action Clerk
1301 Clay Street
Oakland, CA 94612

Submitted Via: ~~https://ecf.cand.uscourts.gov~~ mail 

Re: College Athlete NIL Litigation Case No. 4:20-cv-03919 (N.C. Cal)

Dear Judge Wilken,

I am writing this objection letter on the same day I am moving into the dorms as a freshman at
California Polytechnic State University (Cal Poly) in San Luis Obispo, CA. While I am excited
about this next chapter in my life, it's not starting out as I dreamt it would.

I was recruited by California Polytechnic State University (Cal Poly) to swim on their NCAA D1
Swim and Dive Team starting in the 2025/2026 academic year. I was offered a priority walk-on
roster spot on the team in January 2025 and accepted that offer on January 27, 2025. While I was
not offered scholarship support, I was excited just to have an opportunity to participate as an
NCAA Division I swimmer – especially since I had worked so hard to overcome a shoulder
injury, surgery, and months of physical therapy during my junior year of high school.

On March 7, 2025, I was devastated to find out on Instagram that Cal Poly cut its men's and
women's swim and diving program. Cal Poly President Jeffrey Armstrong described the decision
to cut the program as "an unfortunate reality given the approved NCAA House settlement, state
budget and the tenuous situation moving forward for both the state and the NCAA."

But from my perspective the true unfortunate reality is this:

- President Armstrong and Athletic Director Don Oberhelman *chose* to opt in to the House
  Settlement, even though only 50% of its peer schools with football programs in the Big
  West opted in to the Settlement.
- They *chose* to cut a women's team, disregarding the fact that it is already significantly
  out of compliance with Title IX. Women make up 51% of undergraduate enrollment at
  Cal Poly but receive only 38% of athletic participation opportunities.
- They *chose* to spend $6.9 million on its football team last year, while citing financial
  reasons for cutting its swim and dive program. Swim and Dive operated on a
  $250,000/year budget last year ($85,000 of that was raised by the team).

- They continue to disregard the multiple requests to reinstate the team – including requests made by last year's team, alumni, and multiple demands by Title IX attorney Leigh Ernst Friestedt and advocate Nancy Hogshead to comply with Title IX and President Donald J. Trump's Executive Order titled "Saving College Sports" (see enclosed demand letters).

Cal Poly's decision to opt into the *House* Settlement has deprived me (along with my fellow recruits) the opportunity to enjoy a full college experience and caused harm to both our educational and athletic opportunities.

**For these reasons, I respectfully object to the Injunctive Relief Settlement and urge the Court to consider its adverse impact on Olympic sports and gender equity.**

For the record, my mom, Jennifer Whitty, contacted Class Counsel to express concerns about the *House* Settlement following the elimination of Cal Poly's Swimming program. In an email dated May 1, 2025, Mr. Kessler stated that "there was a right to object to the *House* Injunctive Settlement, but that deadline has passed." I don't believe this is accurate, which is why I am submitting this objection today.

Thank you for giving incoming injunctive relief class members, like me, an opportunity to use our voice to object to the Settlement. We haven't had one throughout this entire process.

Respectfully,

*Piper Whitty*

Piper Whitty (NCAA ECID 2307964714)
Cal Poly Kinesiology Student
1114 W L Street
Benicia, CA 94510

From: "Kessler, Jeffrey" <JKessler@winston.com>
Subject: Re: Injunctive Relief Class Member - Piper Whitty, Cal Poly Swim Recruit
Date: May 2, 2025 at 12:35:29 PM PDT
To: "Jennifer Whitty" <jennifer.j.whitty@gmail.com>
Cc: "steve@hbsslaw.com" <steve@hbsslaw.com>, "Piper Whitty" <whittypiper@gmail.com>, "cwcrd@cand.uscourts.gov" <cwcrd@cand.uscourts.gov>, "Jennifer Whitty" <jennifer.j.whitty@gmail.com>

Regardless of what the school said, there is nothing in the Settlement that required  ir or any other school to eliminate a team.  This sounds like an institution cutting a team for its own reasons that wants to attribute it to something else to take the heat off the school.  I have seen that many times.


**From:** Jennifer Whitty <jennifer.j.whitty@gmail.com>
**Sent:** Friday, May 2, 2025 12:28:33 PM
**To:** Kessler, Jeffrey <JKessler@winston.com>
**Cc:** steve@hbsslaw.com <steve@hbsslaw.com>; Piper Whitty <whittypiper@gmail.com>; cwcrd@cand.uscourts.gov <cwcrd@cand.uscourts.gov>; Jennifer Whitty <jennifer.j.whitty@gmail.com>
**Subject:** Re: Injunctive Relief Class Member - Piper Whitty, Cal Poly Swim Recruit

Jeffrey -

In the case of Cal Poly, the Swim & Dive **program was cut on March 7, 2025, but the objection due date was January 31, 2025.** There is no way student athletes would have been able to object to something by that deadline because they hadn't been harmed yet - nor notified.

To me this event appears to be directly related to the House settlement given that **the settlement is one of the reasons Cal Poly gave as to why they cut the program**. (See the attached letter to the campus community.)

What concerns me is that Piper is a female recruit who is unable to opt out of the settlement. And my understanding is that by her not opting out of the settlement, she will be releasing all of her Title IX rights. Simultaneously, she is being denied a participation opportunity due to the program being cut, which is a Title IX violation.

What are her options? Are you saying that she has none?

Jennifer

On Thu, May 1, 2025 at 10:36 PM Kessler, Jeffrey <JKessler@winston.com> wrote:
There was an extensive notice program approved by the Court. You can find a description of it in the court records. There was also a website set up that had all of this information available.


**From:** Jennifer Whitty <jennifer.j.whitty@gmail.com>
**Sent:** Thursday, May 1, 2025 9:51 PM
**To:** Kessler, Jeffrey <JKessler@winston.com>
**Cc:** steve@hbsslaw.com <steve@hbsslaw.com>; Piper Whitty <whittypiper@gmail.com>; cwcrd@cand.uscourts.gov <cwcrd@cand.uscourts.gov>; Jennifer Whitty <jennifer.j.whitty@gmail.com>
**Subject:** Re: Injunctive Relief Class Member - Piper Whitty, Cal Poly Swim Recruit

Thank you for your reply. Quick follow up question: The Cal Poly recruits were never informed about the House injunctive settlement and therefore didn't know they had the right to object to it (and didn't know there was a deadline to do so). Whose responsibility would it have been to notify them initially - the university?

I appreciate the other information and will share it with the other recruit parents.

Jennifer


On Thu, May 1, 2025 at 9:26 PM Kessler, Jeffrey <JKessler@winston.com> wrote:
We are very sorry to hear about this situation, but it is an event outside of the House settlement.

There was a right to object to the House injunctive settlement, but that deadline has passed. There is no right to opt out of an injunctive settlement. The settlement has not yet been approved. The Court will decide on approval in the next few weeks after receiving a report on changes to the roster limit provisions.

Whether or not the House settlement is approved, a school can decide to eliminate a team. There is nothing in the settlement that would require a team to be eliminated in the manner you have described.

If the elimination of the team involved misrepresentations or a fraud on the athletes, they may have a legal claim which can be separately pursued. This, however, is not a claim that would be part of the House settlement.

I hope this information is helpful.

**From:** Jennifer Whitty <jennifer.j.whitty@gmail.com>
**Sent:** Thursday, May 1, 2025 9:13 PM
**To:** steve@hbsslaw.com <steve@hbsslaw.com>; Kessler, Jeffrey
<JKessler@winston.com>
**Cc:** CWCRD@cand.courts.gov <CWCRD@cand.courts.gov>; Piper Whitty
<whittypiper@gmail.com>; Jennifer Whitty <jennifer.j.whitty@gmail.com>
**Subject:** Fwd: Injunctive Relief Class Member - Piper Whitty, Cal Poly Swim
Recruit

Steve and Jeffrey -

I know you're very busy right now, but I wanted to send this email to you again
since it is my understanding that you are the lawyers also representing recruits.
Please see the questions below in the email I sent to you on Monday, Apr. 28.
Would appreciate your guidance about Piper's situation. I've cc: the clerk of the
courts as well, as I know Judge Wilken is not taking any more letters.

Thank you,
Jennifer Whitty

---------- Forwarded message ---------
From: **Jennifer Whitty** <jennifer.j.whitty@gmail.com>
Date: Mon, Apr 28, 2025 at 9:05 AM
Subject: Injunctive Relief Class Member - Piper Whitty, Cal Poly Swim Recruit
To: <steve@hbsslaw.com>, <jkessler@winston.com>
Cc: <whittypiper@gmail.com>

Steve and Jeffrey -

Leigh Ernst Friestedt shared your information with me and suggested that I reach
out on behalf of my daughter, Piper Whitty (NCAA ECID 2307964714) about the
House Settlement. Piper verbally committed to swim for Cal Poly in January 2025
and has been admitted - not honored (reneged) when Cal Poly announced
cutting the Swim and Dive Team on March 7.

Two questions for you:
   • Piper has been harmed – What are her legal options as an Injunctive
Relief Class Member who was (1) not notified of the Settlement (2) not given a
chance to Opt-Out and would be bound by the terms of the Release if the House
Settlement is approved.

- If the House Settlement is NOT approved, what are Piper's legal options?

She did complete a Google Form prior to the last hearing in Oakland, not knowing who the results went to and what it was for. I've attached her responses to this email.

Thanks for all the work you are doing on behalf of the prospective and current NCAA D1 student athletes. And thanks in advance for your guidance on Piper's legal options.

Jennifer Whitty
707-853-0582

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.





**Leigh Ernst Friestedt**
Founder – Attorney

**Equity IX, LLC**
40 Mercer St. Suite 15
New York, NY 10013
leigh@equityix.com
(917) 513-5541

**Nancy Hogshead**
CEO – Attorney

**Champion Women**
2103 River Road
Jacksonville, FL 32207
hogshead@championwomen.org
(904) 384-8484

June 27, 2025

Via email:
jarmstro@calpoly.edu

Jeffrey Armstrong (President)
California Polytechnic State University, San Luis Obispo
1 Grand Avenue
San Luis Obispo, CA 93407

### RE:    *Eliminating the Women's Swimming & Diving Team, in Violation of Title IX*

Dear President Armstrong,

We have been retained by members of the California Polytechnic State University, San Luis Obispo ("Cal Poly") Women's Swimming & Diving Team ("Women's Swimming") to address concerns regarding gender-based inequities within the university's athletic programs.

We respectfully request that Cal Poly take the necessary actions to ensure both immediate and long-term compliance with applicable state and federal laws. We urge your prompt attention to this matter and look forward to discussing potential solutions with you.

### Elimination of Women's Swimming – Violation of Title IX

On March 7, 2025, you publicly released "Letter from President Armstrong on Budget and Organizational Changes," which announced that both Men's and Women's Swimming and Diving Programs ("Programs") would be "*discontinued effective immediately*."

The elimination of Women's Swimming is a violation of **Title IX of the Education Amendments of 1972** ("Title IX"). Title IX prohibits discrimination on the basis of sex in educational programs and activities, including athletics, for institutions that receive federal financial assistance.[1] Title IX's implementing regulations further specify that:

---

[1] 20 U.S.C. § 1681, et seq., U.S. Department of Education, Office for Civil Rights, "A Policy Interpretation: Title IX and Intercollegiate Athletics," 44 Fed. Reg. 71,413, 71,415 (1979), available at: https://www.ed.gov/about/offices/list/ocr/docs/t9interp.html

"[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis." 34 C.F.R. § 106.41(a).

This provision clearly mandates that Cal Poly must offer equitable athletic opportunities, and the elimination of Women's Swimming on March 7, 2025, violates that mandate. Below are facts, data, and law that clearly demonstrate that Cal Poly cannot cut its Women's Swimming Team. Further, Cal Poly needs to add additional women's athletic teams.

Similarly, under **California state law**, discrimination on the basis of sex is prohibited in schools, and individuals are guaranteed the right of equitable treatment, benefits and an equitable opportunity to participate in all academic extracurricular activities, including athletics. Cal. Educ. Code § 221.8.[2] This state provision further reinforces the protection offered under federal law, Title IX, ensuring that women have the same opportunity to participate in athletic programs as their male counterparts.

Based on available information, Cal Poly is not in compliance with Title IX or the Cal. Education Code § 221.8.

Evidence we have reviewed is clear: in Cal Poly's athletic department, male students are receiving disproportionately more participation opportunities than female students, more athletic scholarship dollars, as well as more favorable treatment and benefits. These discrepancies directly contradict the requirement of both federal and state law, which mandates equal opportunities and equitable treatment for all students.

## Equal Participation Opportunities, Equal Athletic Scholarships, & Equal Treatment and Benefits

Title IX prohibits three broad categories of discrimination against student-athletes based on sex. First, educational institutions must provide female students with **equal athletic participation opportunities**. 20 U.S.C. § 1681. Second, educational institutions must provide men and women with **equal athletic scholarships**.[3] Third, long-standing federal

---

[2] See California State Law regarding Equality in Athletics:
https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=EDC&sectionNum=221.8

[3] 34 CFR § 106.37 Financial assistance.

(c) Athletic scholarships.

(1) To the extent that a recipient awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.

(2) Separate athletic scholarships or grants-in-aid for members of each sex may be provided as part of separate athletic teams for members of each sex to the extent consistent with this paragraph and 34 CFR § 106.41. https://www.ecfr.gov/current/title-34/subtitle-B/chapter-I/part-106/subpart-D/section-106.37

law mandates female students receive **equal treatment and benefits** compared to their male counterparts.[4]

Cal Poly is engaging in all three forms of sex discrimination. Specifically, Cal Poly has failed to provide female athletes with equal participation opportunities, equal athletic scholarships, and has not ensured that female athletes receive equal treatment and benefits. These actions represent separate violations of Title IX.

### Facts from the Equity in Athletics Disclosure Act

According to the most recent publicly available **Equity in Athletics Disclosure Act** ("EADA")[5] report submitted by Cal Poly to the Department of Education, in the 2023-24 academic year, Cal Poly has an undergraduate population of 10,697 men and 10,774 women, with women representing **50.2%** of total undergraduate enrollment.

During that same academic year, Cal Poly's athletic department provided men with 403 athletic opportunities and women with 296 athletic opportunities, using the duplicated count. As such, women comprised **42.35%** of total athletic participation opportunities. Using the unduplicated count, Cal Poly reported 357 males and 223 female athletes, meaning women comprise just 38.45% of all Cal Poly athletes.

---

[4] See, e.g., U.S. Dept. of Educ., Office for Civil Rights ("OCR") Policy Interpretation, 44 Fed. Reg. 71, 415 (1979); 34 C.F.R. § 106.429(c)(2)-(10); *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp 2d 1093, 111-12 (S.D. Cal. 2012) (finding unequal treatment and benefits as to class of female athletes).

[5] EADA data, available at: https://ope.ed.gov/athletics/?#/ - *Champion Women* made the data easier for a non-lawyer or expert to understand, here: https://titleixschools.com/



Again, with the duplicated count, Cal Poly would need 38.9% more athletic opportunities for women in order to equal the number of opportunities the school provides to men, or **115** more women.

Using the unduplicated count, Cal Poly would need to add **141** more female athletes to its athletic programs in order to achieve equity in athletic participation opportunities.

### Additional Facts From Roster Counts on Cal Poly's Athletics Website

In 2023 – 2024, according to a **roster count from Cal Poly's athletics' website**,[6] Cal Poly gave 365 men and 237 women athletic opportunities, including swimming. According to the Cal Poly website, women that year were just 39.3% of the athletes at Cal Poly.

In 2024 – 2025, according to a roster count from Cal Poly's athletics website, Cal Poly provided athletic opportunities to 341 men and 220 women, including swimming. Again, according to the Cal Poly website, women were just 39.2% of athletes at Cal Poly.

---

[6] https://gopoly.com/

### EADA Athletic Scholarship Data

Women athletes at Cal Poly are entitled to equal athletic scholarship allocation while participating in athletic educational opportunities.[7] According to the EADA's latest data, Cal Poly needs to add $1,428,121 in athletic scholarship aid for women.



**California Polytechnic State University – San Luis Obispo**

**Scholarships**

–O– $ Female Athletic Student Aid    –O– $ Male Athletic Student Aid    –O– $ Female Athletic Student Aid Needed for Equality

Cal Poly owes women 49.7% more in scholarship dollars.

**2024**
- $ Female Athletic Student Aid — **$3,046,765**
- $ Male Athletic Student Aid — **$4,474,886**
- $ Female Athletic Student Aid Needed for Equality — **$4,566,658**

Collected

---

[7] 34 CFR § 106.37 Financial assistance. (c) Athletic scholarships.
(1) To the extent that a recipient awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.
(2) Separate athletic scholarships or grants-in-aid for members of each sex may be provided as part of separate athletic teams for members of each sex to the extent consistent with this paragraph and § 106.41.

### EADA Athletic Recruiting Dollars Data

Women athletes are entitled to equal treatment while participating in athletic educational opportunities, including equal recruiting.[8] According to the EADA's latest data, Cal Poly needs to add $124,327 in recruiting dollars for its women's sports.



---

[8] 34 CFR §106.41(10), Athletics, and §106.23, 1975, https://www2.ed.gov/policy/rights/reg/ocr/edlite-34cfr106.html#S41 **Recruitment.** (a) *Nondiscriminatory recruitment.* A recipient to which this subpart applies shall not discriminate on the basis of sex <u>in the recruitment and admission of students.</u> A recipient may be required to undertake <u>additional recruitment efforts</u> for one sex as remedial action pursuant to §106.3(a), and may choose to undertake such efforts as affirmative action pursuant to §106.3(b).

## Title IX Liability

On March 7, 2025, Athletic Director **Don Oberhelman** informed members of both the men's and women's swimming teams that both Swimming Programs were being discontinued. During this in-person meeting on campus, Mr. Oberhelman was directly asked whether the elimination of Women's Swimming constituted a Title IX violation. He responded by stating that cutting Women's Swimming does not violate Title IX.

Mr. Oberhelman's assertion is legally incorrect and reflects a fundamental misunderstanding of federal anti-discrimination law.

*Even prior to the announced elimination of Swimming, Cal Poly would have needed to add 141 more female athletes to achieve compliance with Title IX.*

Eliminating Men's and Women's Swimming cut 29 male athletes and 29 female athletes. The simultaneous discontinuation of both the Men's and Women's Swimming Teams, with the same number of athletes on each team, does not mitigate Cal Poly's Title IX liability. But with women comprising 37.3% of total athletic participation, the cuts actually widened the participation gap between female enrollment and athletics participation to 12.9%.

Obviously, eliminating Women's Swimming reduced athletic participation opportunities for women.

Here, the facts show that the gaps between men's and women's athletic opportunities at Cal Poly remains large. Both before and after the cuts to one or both Swimming Teams, women were not, and are not, receiving equal educational opportunities:
- in the percentage of women athletes in the athletic department,
- in the percentage of women athletes Cal Poly needs to add, and
- in the additional number of female athletes needed to equal the opportunities it currently provides its male students.

## Financial Constraints Do Not Exempt Title IX Compliance

Financial constraints or budget cuts are not a valid excuse for non-compliance with federal laws. As a federally funded institution, Cal Poly is legally required to ensure that its athletic programs provide equal opportunities and treatment for female athletes, regardless of budgetary concerns.

Your March 7, 2025 letter to the teams stated that, "Cal Poly's men's and women's swimming and diving programs will be discontinued effective immediately. While this is disappointing news to share, the financial realities made this decision unavoidable." On June 16, 2025, you reiterated your financial concerns, stating, that despite raising $9 million, "the fundraising effort has fallen well short of the goal to reinstate the program."

Title IX mandates that equitable access to sports programs, and this obligation cannot be circumvented due to financial limitations. In other words, Cal Poly cannot justify discriminatory

treatment based on funding sources from boosters, sponsors or other third party sources. As the Civil Rights Restoration Act made clear, Title IX prohibits discrimination in all programs and activities of an institution that receives any federal funds, regardless of how a particular program or activity is funded.[9] The fact that there may be different funding sources for different teams is irrelevant to the institution's obligation to ensure equal treatment for the male and female sports programs. According to the Office for Civil Rights Investigator's Manual:

> [W]here booster clubs provide benefits or services that assist only teams of one sex, the institution shall ensure that teams of the other sex receive equivalent benefits and services. If booster clubs provide benefits and services to athletes of one sex that are greater than what the institution is capable of providing to athletes of the other sex, then the institution shall take action to ensure that benefits and services are equivalent for both sexes.[10]

In *Brown v. Cohen*, the court noted that if funding were a sufficient defense against claims of discrimination, Congress would not have needed to enact Title IX, which aims to eliminate gender discrimination in educational programs receiving federal assistance.[11]

## Retaliation

Title IX prohibits retaliation against any individual who complains of sex discrimination, including parents, coaches, and students, regardless of whether that person was the direct victim of discrimination in the original complaint.[12]

Complainants seeking to exercise their rights under Title IX are afforded both statutory and regulatory protections against retaliation. Retaliation from complaints of sex discrimination is considered "intentional conduct that violates the clear terms of [Title IX].'" *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d at 1113.

It is our understanding that Title IX and retaliation claims related to Women's Swimming have already been filed against Cal Poly. Therefore, it is imperative that Cal Poly take all necessary steps to ensure that no member of Women's Swimming, nor anyone associated with them

---

[9] See, 20 U.S.C. § 1687; Office for Civil Rights, Department of Education, *Further Clarification of Intercollegiate Athletics Policy Guidance Regarding Title IX Compliance*, (2003) available at http://www.ed.gov/about/offices/list/ocr/title9guidanceFinal.html

[10] Office for Civil Rights, Department of Education, *Title IX Athletics Investigator's Manual* (1990), available at: https://titleixspecialists.com/wp-content/uploads/2013/09/1990-Title-IX-Athletics-Investigators-Manual-Summary-no-text.pdf

[11] *See, Cohen v. Brown Univ.*, 809 F.Supp. 978, 982-83(D.R.I. 1992) (concluding that "all monies spent by Brown's Athletic Department, whether originating from university coffers or from the Sports Foundation [booster club] must be evaluated as a whole under §106.41(c)")

[12] *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 870-71 (9th Cir. 2014).

(including family members, friends, their supporters, or coaches), is subjected to any form of retaliation.

**Remedy – Reinstate Women's Swimming, and
Provide Women with Equal Treatment & Benefits**

We respectfully request that Cal Poly representatives meet with us to engage in productive and structured negotiations aimed at helping the university implement both immediate short and long-term changes, to ensure compliance with Title IX. Specifically, we propose the following actions:

1. Reinstate Women's Swimming immediately;
2. Elevate Women's Athletic Scholarships on the Swimming Team;
3. Ensure Women's Swimming and all female athletes at Cal Poly receive Equal Treatment and Benefits, including Recruiting Budgets; and
4. Create a plan to add additional women's teams post-haste, to provide women at Cal Poly with equal educational opportunities.

We look forward to discussing these matters with you and working toward a resolution that ensures full compliance with both federal and state law.

Please respond to this letter as soon as possible and, in any event, no later than Monday, July 7, 2025.

Sincerely,

**Leigh Ernst Friestedt**
Equity IX, LLC

**Nancy Hogshead**
Champion Women

Cc:    Dr. Mildred Garcia (Chancellor of the California State University)
       csu-chancellor@calstate.edu
       Robin Webb (General Counsel) rwebb@calstate.edu
       Don Oberhelman (Athletic Director) obe@calpoly.edu

 

**Leigh Ernst Friestedt**
Founder – Attorney

**Equity IX, LLC**
40 Mercer St. Suite 15
New York, NY 10013
leigh@equityix.com
(917) 513-5541

**Nancy Hogshead**
CEO – Attorney

**Champion Women**
2103 River Road
Jacksonville, FL 32207
hogshead@championwomen.org
(904) 384-8484

August 4, 2025

Via email: jarmsrto@calpoly.edu

Jeffrey Armstrong (President)
California Polytechnic State University, San Luis Obispo
1 Grand Avenue
San Luis Obispo, CA 93407

**RE:    Immediate Reinstatement of Cal Poly Women's Swimming & Diving Team: President Trump Executive Order - Title IX Compliance**

Dear President Armstrong,

Pursuant to President Donald J. Trump's Executive Order titled "***Saving College Sports***," issued on July 24, 2025, we hereby renew our formal demand for the immediate reinstatement of the California Polytechnic State University, San Luis Obispo ("Cal Poly" or the "University") Women's Swimming & Diving Team.

This federal directive underscores the critical importance of complying with Title IX of the Education Amendments Act of 1972 ("Title IX") and preserving women's and Olympic sports.

**Executive Order: *"Saving College Sports"***

The Executive Order ("Order") states:

> "It is the policy of my administration that ***all college sports should be preserved*** and, ***where possible, expanded***."

According to President Trump:

> "A national solution is urgently needed to prevent this situation from deteriorating beyond repair and to protect non-revenue sports, including many ***women's sports*** that comprise the ***backbone of intercollegiate athletics***."

The Order affirms that institutions like Cal Poly should not prioritize football at the expense of women's sports:

> "While major college football games can draw tens of millions of television viewers and attendees, they feature only a very small sample of the many athletes who benefit from the ***transformational opportunities that college athletics provides***."

Section 2 of the Order, titled "***Protecting and Expanding Women's and Non-Revenue Sports***," calls for preserving and expanding opportunities in women's and non-revenue sports.

> "Opportunities for scholarships and collegiate athletic competition in ***women's and non-revenue sports must be preserved*** and, where possible, ***expanded***, including with respect to the **2025-2026 athletic season** and future athletic seasons."

Women's sports are essential—not only for advancing gender equity, but also for cultivating future leaders in our country. As the Order affirms:

> "A substantial majority of female executives at the largest American companies participated in sports during adolescence, many at the high school or collegiate level, and examples of business leaders and former Presidents who played college sports are legion."

In light of this recognition, educational institutions like Cal Poly are required to ensure that women's athletic programs are not diminished, but preserved and expanded.

## Cal Poly Is Not in Compliance with the Executive Order, Title IX, or California State Laws Prohibiting Sex Discrimination

Cal Poly's elimination of the Women's Swimming and Diving Team–an Olympic sport–stands in direct violation of the Order *"Saving College Sports."* This action undermines both the federal mandate to preserve and expand women's athletic opportunities and the University's obligations under Title IX. Noncompliance exposes Cal Poly to significant legal and financial risk, including potential federal intervention and the loss of federal funding.

President Trump's Order explicitly directs the Secretary of Education—along with the Attorney General and other federal officials—to develop a comprehensive enforcement strategy within 30 days. This strategy includes Title IX enforcement actions, federal funding decisions tied to compliance, and other regulatory and litigation mechanisms to ensure institutional accountability.

## Cal Poly Announced Emerging Sports: STUNT and Flag Football

On August 1, 2025, Cal Poly's announced that it will "transition" STUNT club team to varsity status in 2026-27 and "pursue" the addition of women's flag football "as early as 2027". Cal Poly's announcement does **not** remedy the University's current or historical Title IX violations.

First, Cal Poly's women's swimmers are facing sex discrimination now, and STUNT and Flag Football do not remedy their intentional sex discrimination. The graphs we provided earlier

demonstrate that Cal Poly has never provided women with equal educational opportunities in athletics. Courts have held that a school's promise to add women's teams in the future does not constitute Title IX compliance. See; *Boucher v. Syracuse Univ.*, 164 F.3d 113, 116 (2d Cir. 1999) (finding that a Title IX claim by female athletes against was not moot where the university had promised to establish a varsity women's softball team by the next year but had not yet done so); *Favia v. Indiana University of Pennsylvania,* 812 F. Supp. 585 (W.D. Pa. 1993).

Furthermore, while STUNT is recognized by the NCAA as an Emerging Sport for women, Cal Poly will not elevate it to varsity status for at least another year. Importantly, designation as an Emerging Sport does not automatically satisfy Title IX requirements. To count toward compliance, universities must provide full varsity-level support—ensuring equitable treatment in scholarships, recruiting, coaching, and access to facilities, consistent with other established varsity programs.

Flag Football was recommended for inclusion as an NCAA Emerging Sport for women in January 2025, but it has not yet been officially designated as such by the NCAA, and thus, for Title IX compliance. Nor has the NCAA given Flag Football full championship status; without it, Cal Poly could not provide women with the same educational opportunities currently afforded to its male athletes. NCAA President Charlie Baker has merely projected that flag football could potentially reach championship status by 2028.

Title IX and California State Law require that Cal Poly provide equitable athletic opportunities and treatment for women **now**, not years from now. The federal and state laws do not permit a university to eliminate an existing varsity team and delay compliance based on speculative future plans.

Additional facts demonstrating Cal Poly's ongoing noncompliance with Title IX include:
- Cal Poly will not elevate STUNT to varsity status until the 2026-27 academic year, leaving a multi-year gap in varsity opportunities for women.
- Cal Poly has stated it will "not add significant management nor personnel" to support STUNT, which has operated as a club since 2010–suggesting a varsity designation without meaningful institutional investment.
- Cal Poly has not stated its plans to offer athletic scholarships or invest in recruiting to build either team.
- Cal Poly and the NCAA have not confirmed a launch date for Flag Football; the earliest possible start is the 2027-28 academic year.
- Cal Poly has not specified plans to build facilities for STUNT and Flag Football.
- Neither STUNT nor Flag Football replaces Women's Swimming and Diving—an Olympic sport with over 100 years of history, national competition, and athletic scholarship opportunities.

By eliminating the Women's Swimming & Diving Team, Cal Poly has **reduced—rather than expanded**—varsity opportunities for women. Title IX compliance is measured by actual participation numbers, not speculative future projections. Cal Poly's future plans do not satisfy its current legal obligations under Title IX.

**To comply with federal law and the Executive Order, Cal Poly must immediately reinstate the Women's Swimming and Diving Team.**

Trump Executive Order and Stephen F. Austin University Required to Reinstate Women's Teams

### Stephen F. Austin State University – Comparable Case to Cal Poly

On Friday, August 1, 2025, *Myers et. al., v. Stephen F. Austin State University,* the U.S. District Court for the Eastern District of Texas granted the plaintiff's motion for a preliminary injunction under very similar facts to Cal Poly. The female athletes challenged the university's decision to cut three women's sports teams, arguing that the decision perpetuated SFA's history of depriving women equal opportunities to participate in varsity intercollegiate athletics.

The court held:

> "Plaintiffs' expert, Dr. Donna Lopiano determined that women currently make up 63% of SFA's undergraduate population and receive only 45.6% of the athletic opportunities. According to Dr. Lopiano's calculations, SFA needs to add 223 varsity intercollegiate athletic opportunities for women to achieve proportionality. Furthermore, if the beach volleyball, bowling, and men's and women's golf teams are eliminated and the other facts stay the same, the female athlete participation gap will increase to 245."

The Judge also rejected SFA's request to delay the reinstatement of the women's teams and instead develop a future compliance plan. The court stated:

> "SFA asks the Court that, in the event it finds injunctive relief is warranted, it should afford SFA an opportunity to create a plan to demonstrate compliance. The Court declines to provide SFA with this opportunity, especially considering it had the chance to become compliant with Title IX... Instead of seeking compliance, it cut three women's programs. This does not demonstrate any desire to be compliant. Therefore, injunctive relief is proper."

The facts and the law are practically identical in the two schools: Stephen F. Austin and Cal Poly. The school is digging a hole for itself, with unnecessary legal fees and campus strife.

### Retaliation

As outlined in our letters dated June 27 and July 4, and reaffirmed in our email of August 1, 2025, retaliation remains a serious and ongoing concern for our clients. To date, the University has failed to provide any assurances that such intimidation will be addressed or prevented in the future.

Examples of retaliatory behavior targeting the Women's Swimming and Diving Program include:

- **Repurposing of Facilities:** Removing access to training spaces (e.g., draining or filling in a pool) to prevent continued use by athletes, even recreationally.
- **Destruction of Facilities:** Trying to block women from asserting their rights under California state and federal law by destroying the pool.
- **Denial of Access to Resources:** Blocking athletes from using locker rooms, weight rooms, or athletic trainers following the program's elimination.
- **Silencing or Intimidation:** Discouraging athletes from speaking out, threatening academic or disciplinary consequences.
- **Retaliation Against Complainants:** Punishing students or staff who raise Title IX concerns, including exclusion from team activities or adverse employment actions.

Trump Executive Order and Stephen F. Austin University Required to Reinstate Women's Teams

4 | P a g e

- **Loss of Scholarships:** Rescinding athletic scholarships previously awarded to team members or promised during recruitment.
- **Erasure of Legacy:** Removing or eliminating recognition of Hall of Fame members associated with the program, signaling institutional hostility for speaking out on behalf of women in sports.
- **Unequal Treatment in Grievance Processes:** Denying procedural fairness to complainants.

### Title IX Lawsuits: Lack of Money Is Not a Defense to Sex Discrimination

The following Title IX lawsuits illustrate that lack of financial resources is not a valid defense in a sex discrimination case.

- *Ohlensehlen v. Univ. of Iowa*, 509 F. Supp. 3d 1085 (S.D. Iowa 2020): A federal court granted a preliminary injunction to female student-athletes, preventing the university from eliminating its women's swimming and diving team. The court found that the athletes had a fair chance of succeeding on their Title IX claim for inequitable participation opportunities and demonstrated irreparable harm. The *court rejected the university's budgetary justifications*, emphasizing the statistical evidence of underrepresentation of female athletes.
- *Roberts v. Colorado State Bd. of Agriculture*, 998 F.2d 824 (10th Cir. 1993): The court held that *budgetary constraints are not a permissible defense* to claims of discriminatory practices under Title IX.
- *Murray v. New York University*, 57 F. Supp. 2d 180 (S.D.N.Y. 1999): The court stated that Title IX's prohibition against sex discrimination does *not allow institutions to evade liability by citing financial difficulties*.
- *Patterson v. Hudson Area Schools*, 551 F.3d 438 (6th Cir. 2009): The Sixth Circuit upheld that *financial constraints do not excuse a failure to comply with Title IX* requirements regarding equitable treatment of male and female students.
- *Kelley v. Board of Trustees*, 35 F.3d 265 (7th Cir. 1994): The University of Illinois faced allegations of violating Title IX after eliminating the men's swimming program while retaining the women's program. The university had previously been found in violation of Title IX for denying equal athletic opportunities. To address budget deficits, the university decided to cut certain programs, including men's swimming. Legal counsel advised against cutting the women's program to avoid further Title IX violations. The court ultimately upheld the university's decision to cut the men's program, emphasizing that the institution acted prudently within the framework of Title IX regulations and policy interpretations.

### Remedy: Reinstate Women's Swimming / Provide Equal Treatment & Benefits

In your response to us dated July 2, 2025, you, President Armstrong, expressed a commitment to gender equity and indicated that a compliance plan would be forthcoming. To date, no such plan has been shared addressing the sex discrimination issues we raised, including recruiting budgets, facilities, athletic scholarships, and harassment. We respectfully request that Cal Poly promptly

reinstate its Women's Swimming and Diving team, and meet with us to engage in good-faith negotiations aimed at implementing both immediate and long-term solutions.

We urge Cal Poly to reinstate the Women's Swimming & Diving Team without further delay. Please respond to this letter as soon as possible and, in any event, no later than **Friday, August 7, 2025**. We remain committed to resolving this matter collaboratively and in full compliance with federal and state law—without the need for litigation or federal enforcement by the Department of Education.


Sincerely,

**Leigh Ernst Friestedt**
Equity IX, LLC

**Nancy Hogshead**
Champion Women


Cc:    Dr. Mildred Garcia (Chancellor of the California State University)
       Robin Webb (General Counsel)
       Don Oberhelman (Athletic Director)
       Kaitlyn Blakey (Director, Civil Rights & Title IX Coordinator)