**Name:**

Reid Hinds Macdonald

**Address:**

304 Princess St (Permanent Address)
New Westminster, BC
V3L 1V5

833 Archdale Drive ( Temporary Address)
Charlotte, North Carolina
28217



**NCAA ECID:**

2208635564
Member of the Injunctive Relief Settlement Class: a Division 1 lacrosse athlete since September 2022-Current

**Case name and number:**

COLLEGE ATHLETE NIL LITIGATION CASE NO. 4:20-CV-03919 NORTHERN DISTRICT OF CALIFORNIA

**Reasons for objection:**

I was cut from the Division 1 Lacrosse Team at Long Island University due to changes in roster limit sizes for lacrosse. The Long Island University Men's lacrosse program did not declare any "Designated Student Athletes.

**Unfair Impact due to Settlement Terms/ all members not treated equitably**

I understand that many student-athletes will benefit financially from the proposed settlement in this case, but I want to emphasize that thousands of others, including myself, do not.

I was cut from my team due to roster limits, while many others remained and were able to continue playing lacrosse within their programs. My spot on the Long Island University Men's Lacrosse Team and those of many others were sacrificed to push through a settlement that benefits others. The immediate implementation of roster limits was neither fair nor reasonable for the athletes who were forced off their teams as a result.

Under the settlement, the NCAA will pay nearly $2.8 billion in back damages over the next 10 years to athletes who competed in college from 2016 through the present. Going forward, each school will be allowed to pay its athletes up to a set annual cap, expected to start at approximately $20.5 million per school in the 2025–26 academic year and increase each year over the decade-long agreement. These payments are in addition to scholarships and other benefits athletes already receive.

While this is a positive step for many, it is important to recognize that the system has left others behind, including myself, who have suffered significant harm without any form of compensation or recourse.

## Breach of Commitment

I was cut from the team to accommodate new rules that were not in place when I committed.

Head Coach Jordan Levine broke his commitment to me. Before committing to the LIU Division 1 Men's lacrosse team, Coach Levine assured my mother about the expectations that he "doesn't like to cut kids" unless there is a behavioral reason. This conversation was a key factor in our decision, especially considering the substantial financial commitment we had to make as international parents and the limited transferability of U.S. credits to Canadian universities. It was clear this was not a try out.

We relied heavily on the coach's commitment, which influenced our choice significantly. The scholarship offer for my first year was much less than other offers I had received. In the first year I did not play but I improved and in my second year I was in 2 games. The roster changes and this breach of promise have caused me unfair harm.

Despite knowing about the roster limit change the coach continued to recruit freshmen and transfers. This season, the coaches are evaluating players and plan to make more cuts in December. I was not given the opportunity to further compete for one of these spots. The changes in the roster numbers allowed the coaching staff to renegue on commitments.

## Disproportionate Harm

The prolonged uncertainty surrounding potential roster cuts and the eventual decision to remove me from the team caused me significant and direct harm, while others appeared to benefit unfairly from the settlement's changes. I was ultimately forced to choose: remain at the university as a regular student with no opportunity to play, or put my name in the transfer portal and hope to get an offer from another school to continue my athletic career. Either option carried serious personal and financial consequences. Transferring involves not only additional costs but also the disruption of my academic and social life. Staying would have meant giving up the sport I've trained for my entire life, abruptly ending my lacrosse career.

This experience caused me deep emotional distress. I had built strong friendships and was thriving in the university's business program. Losing my roster spot created a sense of instability and loss that went far beyond athletics. It also resulted in real financial harm. My family paid nearly full tuition for my first year, with the understanding that a significant athletic scholarship would follow in years two through four. That opportunity was taken from me without fair process or consideration.

I still remember sitting in my residence when I overheard a football player talking excitedly about how much money he expected to make under the new system. Meanwhile, I was left facing the reality that I might lose both my financial support and my athletic path. I was under immense stress while he was celebrating.

My final conversation with Coach Levine lasted no more than a minute. He told me that players would not be grandfathered at LIU. There was no acknowledgment of my contributions to the team, no well wishes, and no recognition of the personal consequences I was facing. There was no evidence that the harm being done to me and others like me was considered.

I do not have a lawyer and am not requesting to speak at the hearing on November 6, 2025

Thank you for considering my objection.

Sincerely,

Reid Hinds Macdonald