United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 20-cv-03919-CW (NC)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO ENFORCE THE FOURTH AMENDED STIPULATION AND SETTLEMENT AGREEMENT**<br><br>Re: ECF 1095 |

Before the Court is Plaintiffs' Motion to Enforce the Fourth Amended Stipulation and Settlement Agreement (SA). ECF 1095. The Court held a hearing on Plaintiffs' Motion on June 10, 2026. Plaintiffs ask the Court for an order declaring that (1) multimedia rights companies (MMRs) are not "Associated Entities or Individuals" as defined in the Injunctive Relief Settlement (IRS), so are not reviewable by the College Sports Commission (CSC) unless the party ultimately receiving and paying for the use of a Class Member's Name, Image, or Likeness (NIL) is an Associated Entity or Individual; and (2) third-party brand sponsors are not "Associated Entities or Individuals" merely because a school was involved in arranging an NIL agreement between a sponsor and Class Member. For the reasons below, the Court DENIES Plaintiffs' Motion at this juncture because the IRS terms and the parties' underlying intent do not support such a finding.

## I.    THIS COURT HAS LIMITED JURISDICTION AS SPECIAL MASTER

On June 6, 2025, Judge Claudia Wilken granted Plaintiffs' Motion for Final Approval of the SA.  ECF 979.  The SA provided for a special master to be appointed to resolve disputes concerning compliance with, the validity of, interpretation, or enforcement of the terms and conditions of the SA and the IRS, where those decisions shall be appealable to the Court unless the parties agree that the special master's ruling shall be final without further appeal.  SA ¶ 45, IRS Art. 6, § 1.  Judge Wilken appointed the undersigned as special master.  ECF 981.  So, the Court's jurisdiction in deciding this motion is limited to its role as special master.  The parties have not waived the right to appeal this Court's ruling on the instant motion to Judge Wilken.  ECF 1132 at 2.

## II.    THE SETTLEMENT AGREEMENT PROCEDURAL HISTORY AND BACKGROUND

The underlying antitrust action was filed on June 15, 2020, and challenged the NCAA's rules prohibiting college athletes from receiving compensation for use of their NILs.  ECF 1.  The parties ultimately reached a settlement agreement, and Plaintiffs filed their Motion for Preliminary Settlement Approval on July 26, 2024.  ECF 450.  The SA contains two portions: "a backward-facing damages portion and forward-looking [IRS], which is set forth in Appendix A to the SA."  ECF 1095 at 5 n.1.  Plaintiffs' Motion concerns the IRS.  *Id.*

The initial draft of the IRS utilized "Booster" instead of the current term, "Associated Individuals and Entities."  ECF 450-3 at 52, Appx. A, Art. 1, § 1(c).  Booster was described as a "'representative of athletics interests,' as defined in NCAA Bylaws 8.4.2, 13.02.16, and 13.02.16.1."  *Id.*  Historically, the NCAA has defined boosters to include those who, for example, provide a donation to obtain season tickets for any sport at a university, make financial contributions to an athletic department, assist in providing benefits to enrolled student athletes, or have otherwise been involved in promoting university athletics.  NCAA, *Compliance, Role of Boosters*, https://www.ncaa.org/sports/2013/11/27/role-of-boosters.aspx, (last visited June 23, 2026).

United States District Court
Northern District of California

The SA sought to regulate NIL deals with boosters to ensure there was "a valid business purpose related to the promotion or endorsement of goods or services provided to the general public for profit, with compensation at rates and terms commensurate with compensation paid to similarly situated individuals with comparable NIL value who are not current or prospective student-athletes at the Member Institution." ECF 450-3 at 69, Appx. A, Art. 4, § 3(a). The parties were concerned that boosters would circumvent the SA's purpose by using NIL deals to conceal pay-for-play compensation or payments to induce recruitment and retention. ECF 1099 at 4.

At the Preliminary Approval Hearing, Judge Wilken expressed concern that the SA did not address how to prove that boosters "are connected with the school" or how such a term would be enforced. ECF 525 at 74. She asked the parties to come up with a term that encompassed boosters but was more defined. *Id.* at 80. The parties invented the term "Associated Entities or Individuals" to narrow Defendants' oversight to a more narrow subset of deals. ECF 535-2 at 53, Appx. A, Art. 1, § 1(c). The final IRS draft, now in effect, defines "Associated Entity or Individual" as follows:

> a. An entity that is or was known . . . to the athletics department staff of a Member Institution, to exist, in significant part, for the purpose of (i) promoting or supporting a particular Member Institution's intercollegiate athletics program or student-athletes; and/or (2) creating or identifying NIL opportunities solely for a particular Member Institution's student-athletes;
> b. An individual who is or was a member, employee, director, officer, owner, or agent of an entity described in Section 1(c)(a) above;
> c. An individual who . . . has contributed more than $50,000 over their lifetime to a particular Member Institution . . . ;
> d. An individual or entity that (1) has been directed or requested by a Member Institution's athletics department staff to assist in the recruitment or retention of prospective or current student-athletes, or (2) otherwise has assisted in the recruitment or retention of prospective or current student-athletes; or
> e. Any entity owned, controlled, or operated by, or otherwise affiliated with, the individuals or entities described in Section 1(c)(a)-(d) above other than a publicly traded corporation.

ECF 958-1, IRS Art. 1, § 1(c).

Judge Wilken granted Plaintiffs' Motion for Final Approval of the Fourth Amended Stipulation and Settlement Agreement. ECF 979. In her Opinion Regarding the Order

Granting Plaintiffs' Motion for Final Settlement Agreement Approval, Judge Wilken found "the Associated Entity third-party NIL provisions in the [IRS] will have the effect of allowing class members to receive any and all third-party payments for their NIL, excepting only those that are made by Associated Entities or Individuals, which are, generally speaking, entities or individuals that promote or support a particular NCAA member school's athletic program."  ECF 978 at 47 (citing IRS Art. 1, § 1(c)).

## III.   THE COURT DENIES PLAINTIFFS' PROPOSALS

Plaintiffs ask the Court to declare that (1) MMRs are not "Associated Entities or Individuals" as defined in the IRS, so are not reviewable by the College Sports Commission (CSC) unless the party ultimately receiving and paying for the use of a Class Member's NIL is an Associated Entity or Individual; and (2) third-party brand sponsors are not "Associated Entities or Individuals" merely because a school was involved in arranging an NIL agreement between a sponsor and Class Member.  ECF 1095 at 2.  The Court will analyze each proposal in turn below.

### A.   MMRs

MMRs are generally considered companies which "provide consulting and agency services to various schools and conferences to maximize revenues."  ECF 1095 at 11.  The Court notes, however, that an "MMR" is not a legally defined term.  Typically, MMRs are thought to work for multiple colleges and universities simultaneously.  *Id.*  After the SA and IRS went into effect, MMRs expanded their reach by sourcing and facilitating NIL deals for college athletes.  *Id.* at 12.

The Court will not categorically declare MMRs as not Associated Entities.  First, it is possible that some MMRs do fall within the term.  At the June 10, 2026, hearing, Defendants noted that MMRs have, for example, created institution-specific entities housed on college campuses that generate NIL deals for specific students at a particular campus, placed their employees directly in a campus's athletic department office to assist in locating deals for hopeful recruits, and provided money upfront to athletes and found a supporting deal thereafter.  ECF 1126 at 47–48.  These scenarios require a fact-intensive

inquiry to determine whether such activity does fall under the purview of "Associated Entities or Individuals." *Id.* at 49. But, in those examples, it is plausible the MMR "(1) has been directed or requested by a Member Institution's athletics department staff to assist in the recruitment or retention of prospective or current student-athletes, or (2) otherwise has assisted in the recruitment or retention of prospective or current student-athletes." IRS Art. 1, § 1(c)(d). As Plaintiffs acknowledged at the hearing, Defendants "would have to have some information that [recruiting or pay-for-play payments were] going on before [Defendants] could treat [MMRs] as [] associated entit[ies]." ECF 1126 at 32–33. So, it would circumvent the IRS to declare that all MMRs are not Associated Entities without allowing Defendants to conduct that factual review.

Second, there is no support in the record for Plaintiffs' proposition that all MMRs are not Associated Entities. The parties did not discuss specifically categorizing MMRs as not "Associated Entity or Individuals" at the two hearings before Judge Wilken. ECF 525, 797. Nor did Judge Wilken contemplate MMRs in approving the IRS. ECF 978. As such, there is no evidence that the parties' intended MMRs to be excluded from "Associated Entities or Individuals." Accordingly, at this juncture, it would be too speculative and overbroad to conclude MMRs are not Associated Entities, so the Court DENIES Plaintiffs' Motion as to MMRs.

### B.    Third-party Brand Sponsors

Third-party brand sponsors are generally considered to be companies which sell consumer products, such as, for example, banks, apparel companies, or airlines. ECF 1095 at 12. The Court notes that "third-party brand sponsors" is not a legally defined term. These companies commonly utilize NIL deals to promote their own brands and products, rather than support one specific institution. *Id.* at 13.

The Court declines to declare that third-party brand sponsors are not Associated Entities merely because a school assisted in arranging an NIL agreement with a Class Member. The factual record supports this finding. During the Final Settlement Approval Hearing, Judge Wilken referred to Disney and Nike as "poster child unassociated entities"

5

yet, notably, still questioned whether such third-party brand sponsors would engage in behavior the IRS, and now CSC, seeks to prohibit.  ECF 797 at 219.

Judge Wilken's Opinion Regarding the Order Granting Plaintiffs' Motion for Final Settlement Agreement Approval held that "[t]he [IRS's] Associated Entity third-party NIL provisions will not apply to other third parties that may seek to license student-athlete NIL and that do not fall within the definition of Associated Entity or Individual, such as companies that sell sports apparel, food, or other consumer products."  ECF 978 at 47. Judge Wilken recognized that, traditionally, companies that sell sports apparel, food, or other consumer products are not those contemplated to be Associated Entities.  Yet, she left open the possibility that such third-party brand sponsors could fall within the definition of Associated Entity and did not explicitly preclude such a finding.  This is confirmed by the IRS, which does not declare third-party brand sponsors as not Associated Entities or Individuals.  Accordingly, the Court DENIES Plaintiffs' Motion as to third-party brand sponsors.

## IV.   CONCLUSION

Accordingly, the Court DENIES Plaintiffs' Motion to declare MMRs and third-party brand sponsors as not "Associated Entities or Individuals."  The parties may appeal this Court's decision to Judge Wilken.

**IT IS SO ORDERED.**

Dated:  June 25, 2026

NATHANAEL M. COUSINS
Chief United States Magistrate Judge