Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
bens@hbsslaw.com

*Class Counsel for Plaintiffs*

[Additional counsel on signature page]

Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Sofia Arguello (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas (*pro hac vice*)
WINSTON TAYLOR
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
jkessler@winstontaylor.com
dgreenspan@winstontaylor.com
sarguello@winstontaylor.com
aidale@winstontaylor.com
sviebrock@winstontaylor.com
nvyas@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON TAYLOR
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
jparsigian@winstontaylor.com

*Class Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**PLAINTIFFS' OMNIBUS RESPONSE TO OBJECTIONS FILED AT ECF NOS. 1145, 1149, 1150**<br><br>Judge: Hon. Claudia Wilken |

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. Objector Flynn lacks standing to object to the Injunctive Relief Settlement at this juncture .......... 3

B. Complaints regarding the independent discretionary financial decisions of Division I schools are not proper objections to the IRS .......... 4

C. There are no changed circumstances that support modification of the IRS's Final Approval .......... 6

D. The Release of Injunctive/Declaratory Relief Claims Against the Settlement Is Not Unfair .......... 7

III. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................7

*Rufo v. Inmates of Suffolk County Jail*,
502 U.S. 367 (1992)....................6

*White v. Nat'l Football League*,
822 F. Supp. 1389 (D. Minn. 1993)....................9

*White v. Nat'l Football League*,
836 F. Supp. 1458 (D. Minn.), *aff'd*, 41 F.3d 402 (8th Cir. 1994), *cert. denied*,
115 S.Ct. 2569 (1995)....................8

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952)....................7

## OTHER AUTHORITIES

Rule 23....................3, 4, 7, 10

Rule 60(b)(5)....................2, 6, 11

## I. INTRODUCTION

This Court superintends a historic, unprecedented settlement that has transformed college athletics and received overwhelming support from the class. Of over 55,000 Incoming Injunctive Relief Settlement Class Members[1] who received notice of their right to object to the continuation of the Injunctive Relief Settlement (hereinafter the "IRS"), only two—roughly 0.004% of the incoming class—did so. *See* ECF No. 1155 at 1. And one has withdrawn.[2] One other objector is entering his third year as a Division I college athlete and thus does not have standing to raise an objection. None of the arguments raised by these non-representative objectors provide any basis for disturbing the IRS.

On June 6, 2025, this Court granted final approval of the *House* Settlement Agreement in no small part because the injunctive relief portion of the Settlement "would [ ] result in ground-breaking changes in NCAA rules that govern student-athlete compensation, which would enable NCAA schools to share their athletic revenues with Division I college student-athletes for the first time in the history of the NCAA and would eliminate NCAA limits on scholarships." *See* Op. regarding Order Granting Motion for Final Approval of Settlement Agreement ("Final Approval Order"), ECF No. 978 at 2. Those findings have been confirmed by the IRS's real-world results. The first-ever revenue-sharing framework for college athletes has unleashed student-athletes' competitive rights and opportunities.

The Court must resolve just two objections—only one of which was filed by an Incoming Injunctive Relief Settlement Class Member with standing, Ms. Cochrane. ECF No. 1150. Objector Gannon Flynn lacks standing to object because he is not an incoming student-athlete who is joining a Division I athletic team for the first time this year. ECF No. 1149. The purpose of the ongoing notice and objection process for *new* Injunctive Relief Settlement Class Members is to ensure they are afforded an opportunity to object to the system they are entering. *See* ECF No. 978 at 16.

[1] Capitalized terms not otherwise defined in this submission borrow the definitions set forth in the Fourth Amended Stipulation and Settlement Agreement, ECF No. 958-1.

[2] Andres Polanco objected to being "involved in this litigation." ECF No. 1145. Class Counsel contacted Objector Polanco to clarify if he objected to the continuation of the Injunctive Relief Settlement or if he objected to what he believed to be a requirement that he be actively involved in a lawsuit; Mr. Polanco confirmed that he does not object to the continuation of the Injunctive Relief Settlement. Berman Decl. at 3.

Objector Flynn has been on a Division I roster for the last two years and already objected at the Final Approval Hearing on April 7, 2025. *See* ECF No. 797, Final Approval Hr'g Tr. 82:15–88:6. The fact that Mr. Flynn is currently attending a school that recently opted into the IRS does not confer standing to object again.

In any event, even if the Court were to consider the merits of both objections, the Court has already considered and properly rejected the very same arguments.

First, Objector Flynn's contentions about schools' discretionary financial decisions do not challenge the IRS at all. The IRS creates a framework for enhanced competition through, among other things, revenue sharing; it does not dictate whether a school supports or eliminates a particular sport, reduces roster sizes or scholarship funding, or reallocates its budget. Those are independent institutional choices that schools have always been free to make—not mandates of, or consequences attributable to, the IRS. And to the extent Objector Flynn invokes Rule 60(b)(5), he identifies no changed circumstance—much less a significant change in fact or law—that could warrant modifying the Court's carefully considered Final Approval judgment.

Second, Objector Cochrane's separate challenge to the release of claims for injunctive and declaratory relief reflects a misunderstanding of standard class-action settlement practice. The release is appropriately tailored to provide the finality necessary for a durable settlement while preserving substantive rights to compensation, benefits, and NIL opportunities and affording incoming athletes notice and an opportunity to object. Moreover, under the IRS, all Injunctive Relief Class Members retain the right to assert damages claims in the future with respect to any and all conduct by Defendants.

There is no basis presented by either objector for the Court to change its Final Approval decision. On the contrary, the arguments raised are retreads of prior objections which have already been overruled, with the Court's rulings confirmed each time by real-world results for Injunctive Relief Class Members. Neither objector identifies any new development relevant to the IRS that would warrant the Court altering its prior determination that the historic settlement is fair, reasonable, and adequate to the Injunctive Relief Class.

## II. ARGUMENT

### A. Objector Flynn lacks standing to object to the Injunctive Relief Settlement at this juncture

As an initial matter, Objector Flynn lacks standing to object because he is not an incoming member of the Injunctive Relief Settlement Class. Mr. Flynn was a member of the Injunctive Relief Settlement Class at the time of final approval and has remained an Injunctive Relief Settlement Class Member since the IRS was approved. Objector Flynn appeared and spoke at the April 7, 2025 fairness hearing as a student-athlete at the University of Utah, where he raised the same objections about the roster limits and their purported effects on Injunctive Relief Settlement Class Members that he now seeks to raise again. The Court considered those arguments, substantively addressed them, and approved the IRS on June 6, 2025.

Objector Flynn's later decision to transfer to Boston University does not reset his status, convert him into a new class member, or give him a fresh opportunity to raise the same objections to the same settlement again. The Injunctive Relief Settlement Class is defined in the Settlement to include all Division I athletes, not just Division I athletes that attend schools who participate in the IRS. This is, in part, because the settlement benefits related to third-party NIL deals apply to all Division I athletes regardless of whether their school opts into the IRS's revenue sharing system.

Objector Flynn has already exercised his right to object under Rule 23(e)(5)(A). His current filing raises many of the same arguments about roster limits that he previously presented to this Court. The Court heard and considered those arguments and overruled them. Rule 23(e)(5)(A) provides one opportunity to object to a proposed settlement; it does not authorize a class member to re-file the same objection by recasting it as a new challenge. Objector Flynn's remedy if he disagreed with the Court's decision to overrule his prior objections was to appeal the Final Approval Order. He did not do so.

Nor may Objector Flynn manufacture a new ground for standing by purporting to object "on behalf of" 28,976 other student-athletes. *See* ECF No. 1149 at 2. Rule 23(e)(5)(A) requires an objector to state whether the objection applies only to the objector, to a specific subset of the class,

or to the entire class. That provision permits an objector to *describe* the scope of the objection; it does not confer representative standing or authorize a class member to litigate on behalf of other class members. Objector Flynn has not moved to intervene, sought to certify a subclass, or otherwise satisfied Rule 23's requirements for representing other class members. His unsupported assertion that he speaks for 28,976 other athletes is legally irrelevant to confer him with standing.

In sum, Objector Flynn's decision to transfer from the University of Utah to Boston University neither creates a new basis for standing nor revives an objection that he previously presented and was overruled at Final Approval by the Court.

**B. Complaints regarding the independent discretionary financial decisions of Division I schools are not proper objections to the IRS**

Objector Flynn argues that the IRS is not fair, reasonable and adequate because since the Injunctive Relief Settlement has been implemented, some schools have purportedly decided to exercise their discretion to discontinue certain sports, cut certain athletes from their teams, reduce scholarship funding for certain athletes, or redirect budgetary resources previously allocated for *Alston* awards. *See* ECF No. 1149 at 4-5. All of this happened before the Settlement, too. More fundamentally, Objector Flynn's argument—that the Injunctive Relief Settlement may impact the independent financial decision-making of some schools to reallocate their support for different sports—is one that the Court has previously considered and rejected at Final Approval and in its previous Order Overruling Objections to the Continuation of the Injunctive Relief. *See* ECF No. 1071. Objector Flynn's argument offers nothing new to warrant a different outcome now.

As the Court has previously recognized, schools' independent decisions about roster management, scholarship allocation, and program administration are institutional choices that schools have always been free to make—not mandates of the IRS. The Injunctive Relief Settlement does not dictate how schools choose to allocate resources or fund revenue sharing. The IRS establishes new opportunities for Injunctive Relief Settlement Class Members to receive compensation and benefits from Division I schools, who retain full discretion over how to allocate their financial resources within that framework. If a school makes an independent decision to reduce roster spots, that is the school's competitive prerogative not a function of the IRS.

Moreover, the IRS's Designated Student Athlete ("DSA") provisions were specifically designed to protect Injunctive Relief Settlement Class Members during the transition to the new framework by making the new roster limits inapplicable to athletes who qualified for this designation. While Objector Flynn argues that the DSA program did not protect the roster spots of every athlete, some of whom transferred to new schools, that argument was previously and properly rejected by the Court in its November 13, 2025 Order Overruling Objections to Continuation of the Injunctive Relief Settlement. As the Court then explained:

> DSA status was not intended to guarantee a roster spot for student-athletes who have it. Instead, DSA status was intended to ensure that student-athletes who lost a roster spot because of the immediate implementation of roster limits would be exempt from roster limits at any Division I school for the remainder of their athletic careers so that they could have "*the opportunity* to be on a roster *at the discretion of a Division I school*."

*See* ECF No. 1071 at n.2 (emphasis in original) (citing ECF No. 978 at 51). This was not an adverse change to class members under the IRS. As the Court explained in its Order Granting Final Approval, "under current NCAA rules, roster spots are not guaranteed for any student-athlete and schools have discretion to revoke roster spots for any reason. The parties' modifications of the SA maintain the schools' discretion to decide which student-athletes to have on their rosters. This does not render the SA unfair or unreasonable." ECF No. 978 at 51.

Objector Flynn's assertion that the IRS "caused" 28,976 Division I athletes to enter the transfer portal and that 10,555 did not ultimately continue their careers as a result is factually incorrect. ECF No. 1149 at 1, 3. The IRS did not "cause" athletes to enter the transfer portal, which existed before the Settlement. Division I athletes have always transferred for myriad reasons: coaching changes, playing time, academic fit, personal circumstances, and program changes unrelated to this litigation. They were given a greater opportunity to do so in 2024, when the NCAA lifted many of its transfer restrictions, authorizing unlimited transfers for academically eligible athletes using the NCAA Transfer Portal.[3] It was these changes in NCAA rules—not the *House* Settlement—that caused an increase in the number of athletes seeking to transfer. Objector

[3] Division I Council approves changes to transfer rules, NCAA.org (Apr. 17, 2024), https://www.ncaa.org/media-center-division-i-council-approves-changes-to-transfer-rules/ (last visited Aug. 30, 2026); *see* 2025-2026 NCAA Manual Bylaw 14.5 ("Transfer Regulations," last revised Apr. 18, 2024).

Flynn provides no data or methodology whatsoever to isolate transfers purportedly caused by the IRS from transfers that would have occurred regardless given the new NCAA rules that permit athletes to transfer for any reason and immediately play for another team. And, as previously explained, even if the number of transfers did increase to some extent as a result of schools choosing to allocate their resources differently after the IRS went into effect, decisions by individual schools regarding their allocation of financial resources to different teams and athletes are not mandated by the IRS in any way and are not a proper grounds for objecting to the IRS.

### C. There are no changed circumstances that support modification of the IRS's Final Approval

Objector Flynn invokes Rule 60(b)(5) and *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), to argue that a "change in circumstances" warrant modification of the IRS's Final Approval. This argument fails at every step.

The standard for modification of an order under *Rufo* is demanding. A movant must demonstrate that "a significant change either in factual conditions or in law" renders continued enforcement of the decree "detrimental to the public interest." *Rufo*, 502 U.S. at 384. Modification is not warranted simply "when it is no longer convenient to live with the terms of a consent decree." *Id.* at 383. Moreover, any proposed modification must be "suitably tailored to the changed circumstance." *Id.* at 391.

Objector Flynn has not identified any "changed circumstances," and certainly not the type of "changed circumstances" that *Rufo* requires. Indeed, the implementation of roster limits was a known and contemplated feature of the IRS at the time of Final Approval. This Court specifically considered the impact of the new roster limits, heard testimony regarding their effects, and included protective measures—the DSA provisions—to mitigate any claimed adverse impacts on Injunctive Relief Settlement Class Members. Implementation of provisions the Court already approved is not a "change in circumstances;" it is the IRS working as designed.

Objector Flynn places significant weight on Executive Order 14322 (July 24, 2025) and Executive Order 14400 (April 3, 2026), both of which express concern regarding the protection of women's and Olympic sports. He also cites the Protect College Sports Act (S. 4668), introduced

on June 2, 2026, which recently passed the Senate Commerce Committee. None of these actions support modification of the IRS.

First, Executive Orders are directives from the President to the executive branch. They do not create private rights of action, supersede judicial orders, or constitute changes in law. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (executive orders cannot override law). Whatever policy preferences these orders express, they have no bearing on the legal validity of this Court's approval order.

Second, Objector Flynn's reliance on *proposed* federal legislation is not a "change in circumstance." The Protect College Sports Act has not been enacted into law and a bill that has not even been put to a vote in either Congressional chamber does not alter the legal landscape. Proposed but never-enacted legislation has been surrounding college sports for years. There is no basis for the Court to now consider the impact of proposed legislation, which may not pass or may be substantially altered by the legislative process. Congressional expressions of concern in proposed legislation do not constitute legal authority or a change in circumstances which would permit any reconsideration of Final Approval by this Court.

Finally, Objector Flynn proposes no "suitably tailored" modification. He simply asks this Court to eliminate roster limits entirely—a demand that would fundamentally alter the IRS's carefully negotiated structure and upset the balance of compromises that made this agreement possible.

At final approval, this Court conducted a comprehensive analysis under Rule 23 and found the IRS to be fair, reasonable, and adequate. Objector Flynn's myopic focus on one provision—roster limits—ignores the IRS's comprehensive benefits. Rule 23(e)(2) requires evaluation of the IRS *as a whole*, not individual provisions in isolation. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

**D. The Release of Injunctive/Declaratory Relief Claims Against the Settlement Is Not Unfair**

Objector Cochrane objects to the IRS on the grounds that it requires incoming athletes to "release or limit important future legal rights as a condition of participating in NCAA Division I

athletics." ECF No. 1150 at 1. Her objection focuses on two IRS provisions: (1) the release of the right to seek injunctive or declaratory relief challenging the Settlement's injunctive relief terms through June 2035, and (2) the limits on the duration and scope of benefits, including caps on athletically-related benefits, roster limits, and purported NIL restrictions. *Id.* at 1-2. These objections lack merit and should be overruled.

First, Objector Cochrane's primary objection—that the IRS requires a release of the right of class members to seek an injunction or declaratory relief challenging Defendants' implementation of the terms of the IRS through June 2035—reflects a misunderstanding of class action settlement practice. Releases of class member claims against the Defendants implementing the court approved terms of a settlement are a standard and essential component of any class action settlement. Without such releases, a settlement could not provide the certainty and finality necessary to obtain the significant concessions agreed to by Defendants. Courts thus routinely approve releases that cover future challenges to Defendants' implementation of the settlement's terms, as these provisions are necessary to ensure the settlement's durability and to protect the benefits it delivers to the entire class. An on-point example is provided by the player class action settlement approved by the District of Minnesota, and affirmed by the Eighth Circuit, in *White v. Nat'l Football League*, 836 F. Supp. 1458 (D. Minn.), *aff'd*, 41 F.3d 402 (8th Cir. 1994), *cert. denied*, 115 S.Ct. 2569 (1995). The release in that settlement, as set forth in the Court-approved notice, applied to both current *and future* NFL players:

> If the proposed settlement is approved by the Court, the National Football League and its member clubs ***will be released from any and all liability*** to class members for all claims alleged in the Complaints, ***and class members will be precluded from obtaining any further damages or injunctive relief*** based upon the following claims that: … (B) the NFL College Draft is unlawful and an unreasonable restraint of trade in violation of the antitrust laws; (C) the NFL Player Contract or any term therein, is unlawful and an unreasonable restraint of trade in violation of the antitrust laws.

Notice of Class Action Settlement at 1–2, *White*, No. 4:92-cv-00906-MJD (D. Minn Feb. 26, 1993) (ECF No. 82) (emphases added). Creating long-term certainty through this release provision was necessary in the context of a settlement involving sports labor markets. As Judge Doty explained:

"[i]f individual players file separate actions seeking injunctive relief against NFL player restraints, there is a substantial risk of inconsistent or varying adjudications which would result in incompatible standards of conduct for the defendants." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1408 (D. Minn. 1993) ("One court could grant injunctive relief, a second might deny such relief, and a third might grant injunctive relief that materially differs from that granted by the first court."). These differing results "would impair the [league's] ability to pursue a uniform continuing course of conduct where pragmatic considerations require that the defendants act in the same manner to all members of the class." *Id*.

The release of injunctive and declaratory relief claims against Defendants' implementation of the terms of the Injunctive Relief Settlement here is appropriately tailored. It does not extinguish athletes' substantive rights to compensation, benefits, or NIL opportunities. Rather, it only forecloses new legal challenges to Defendants' implementation of the IRS's terms themselves, which both Class Counsel and the Court retain exclusive jurisdiction to enforce. ECF No. 958-1, App'x A, IRS, Art. 6 § 1.

Second, Objector Cochrane's characterization of the IRS as imposing "limits" on benefits and protections is misleading. ECF No. 1150 at 1-2. The IRS does not reduce the rights of Incoming Injunctive Relief Settlement Class Members relative to the status quo prior to the settlement. To the contrary, the IRS dramatically expanded athlete benefits, enhanced NIL freedoms, and established structural protections that did not previously exist for class members. Any limitations on these newly created benefits agreed to within the IRS are the product of arms-length negotiation and reflect compromises that, on the whole, substantially improve the welfare of class members, as previously found by this Court in its Final Approval Order. *See* ECF No. 978 at 2, 28–29.

Objector Cochrane's speculation that these provisions "may unfairly constrain future athletes' ability to advocate for fair treatment and compensation" is baseless. ECF No. 1150 at 2. Objections based on hypothetical future harm, without any concrete demonstration of present injury, are insufficient to warrant the reconsideration of a settlement that delivers enormous, tangible benefits to the class now.

The objection filed by Ms. Cochrane does not identify any particularized harm that distinguishes her situation from that of other Injunctive Relief Settlement Class Members who will greatly benefit from the IRS. The IRS was negotiated with the interests of all Injunctive Relief Settlement Class Members in mind, including future athletes, and was subject to rigorous judicial scrutiny. Objector Cochrane does not argue that the IRS is the product of fraud or collusion, does not challenge the adequacy of class representation, and does not contend that she would receive greater relief through continued litigation. Her objection amounts to a policy preference that athletes should never be required to release claims as part of a class settlement—a position that, if adopted, would render most class action settlements impossible. As the Court explained in granting Final Approval: "the parties modified the SA to clarify that future Division I athletes will not release their injunctive and declaratory relief claims until they have received notice and an opportunity to object to the continuation of the SA and the Court has resolved any objections. The Court finds that those procedural protections satisfy the requirements of Rule 23 and due process. Objectors have not cited any authority providing otherwise, nor have they cited any authority that the claims of future student-athletes cannot be released after they have received notice and an opportunity to object as the SA provides." ECF No. 978 at 54.

Because Objector Cochrane received notice and the opportunity to object, the Court should find that the requirements of Rule 23 and due process have been met and should overrule her objection.

Finally, it bears mention that, as the Court noted in its Final Approval Order, Injunctive Relief Settlement Class Members do "not release damages claims that arise out of the Pool cap or any other restrictions permitted by the Injunctive Relief Settlement. ECF No. 978 at 44 (citing IRS ⁋ 1(pp) & (qq)). Thus, all Injunctive Relief Settlement Class Members have an available damages remedy if there were any merit to Objector Cochrane's concerns that "the long-term impact of the IRS on athlete benefits, roster limits and NIL opportunities is still evolving" or that the Injunctive Relief Settlement "may unfairly constrain future athletes' ability to advocate for fair treatment and compensation." ECF No. 1150 at 1-2.

## III. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the two objections to the Injunctive Relief Settlement be overruled. Further, to the extent Objector Flynn's filing is construed as a motion to modify under Rule 60(b)(5), it should be denied.

The IRS was carefully negotiated over years of hard-fought litigation, thoroughly briefed, subjected to extensive evidentiary proceedings, and properly approved by this Court. It provides tens of billions of dollars in relief to class members and fundamentally transforms the landscape of college athletics. The two objectors' disagreements with its implementation do not warrant disturbing the historic relief this settlement provides and will provide to millions of current and future Division I student-athletes.

DATED: September 1, 2026

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

Jeffrey L. Kodroff (*pro hac vice*)
Eugene A. Spector (*pro hac vice*)
SPECTOR ROSEMAN & KODROFF, PC
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
jkodroff@srkattorneys.com
espector@srkattorneys.com

*Class Counsel for Plaintiffs*

Respectfully submitted,

WINSTON TAYLOR

By */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Sofia Arguello (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas (*pro hac vice*)
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winstontaylor.com
dgreenspan@winstontaylor.com
sarguello@winstontaylor.com
aidale@winstontaylor.com
sviebrock@winstontaylor.com
nvyas@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON TAYLOR
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winstontaylor.com

*Class Counsel for Plaintiffs*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatories above.

By: /s/ *Steve W. Berman*
STEVE W. BERMAN