Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Class Counsel for Plaintiffs*

Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas (*pro hac vice*)
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jeffrey.kessler@winstontaylor.com
david.greenspan@winstontaylor.com
adam.dale@winstontaylor.com
sarah.viebrock@winstontaylor.com
neha.vyas@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON TAYLOR LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jeanifer.parsigian@winstontaylor.com

*Class Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE COLLEGE ATHLETE NIL LITIGATION | Case No. 4:20-cv-03919-CW<br><br>**PLAINTIFFS' MOTION RE THIRD-PARTY PURCHASES AND OTHER SETTLEMENT ADMINISTRATION**<br><br>Hrg. Date:<br>Time:<br>Judge: Hon. Claudia Wilken<br>Courtroom: |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on a date to be determined before the Honorable Claudia Wilken of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, CA 94612, the Class Plaintiffs will and hereby do move the Court for an order:

- Setting a deadline for third-party purchaser submissions to transfer payment of Class Member claims by December 4, 2026, the last business day before the scheduled oral-argument date with the Ninth Circuit;
- Approving Class Plaintiffs' proposed plan for administration of third-party purchased claims, including deficiencies, denials, and duplicate submissions; and
- Approving Class Plaintiffs' request to pay the costs of settlement administration from the accrued interest on the damages payments.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all exhibits and appendices to such documents, any papers filed in reply, any arguments as may be presented at the hearings, and all other papers and records on file in this matter.

## I. INTRODUCTION

Since the Court's preliminary approval of this landmark Settlement in October 2024 and the claims submission deadline on October 1, 2025, Class Counsel has worked with the Settlement Administrator[1] to undertake an extensive claims administration process involving more than 168,000 claims submitted, more than 120,000 questions via email, more than 15,000 phone calls, and more than 15,000 third-party purchase submissions to date.[2] The Settlement Administrator has methodically reviewed each claim submission to verify its validity, identify deficiencies, and detect duplicate filings. This comprehensive review was undertaken in the last several months to ensure that distributions to Class Members can proceed as promptly as possible following the disposition of the pending appeals.

On October 2 and 23, 2026, as is common practice in settlement administration, the Settlement Administrator sent notice of claim deficiencies for approximately 10,000 claims identified in the review process across *House* and *Hubbard*.[3] These deficiencies include, for example, omission of a Class Member's school or dates of attendance. If a Class Member does not correct the claim submission, the claim will be denied because the omitted information is necessary to determine eligibility and/or the amount of settlement damages to which the Class Member is entitled.[4] After this deficiency process is complete, the allocation estimates for each Class Member's damages claim can be recalculated with the final number of valid claims.

In addition to this routine deficiency process, because some Class Members have elected to sell their right to damages payments to third-party claims purchasers, the Settlement Administrator plans to undertake a notification process to those third-party purchasers for deficiencies in their transfer

---

[1] The Court appointed Verita Global, LLC to supervise and administer notice and claim processes for the Settlements. *See House* Dkt. No. 544 at 6; *Hubbard* Dkt. No. 244 at 4.

[2] Declaration of Janeth Antonio Re Third Party Purchases and Other Settlement Administration ("Antonio Decl.") ¶¶ 4, 9, 17.

[3] The Settlement Administrator also sent notice on October 2, 2026 to Class Members for whom a W-9 form is needed for tax reporting compliance. *Id.* ¶¶ 6–7.

[4] In addition to deficiencies, the Settlement Administrator identified approximately 37,000 duplicate submissions and 222 claims that will be denied. These claims are being denied because the individuals do not meet the requirements for class membership because they did not attend a Division I school or because they attended school outside of the relevant time period. *See id.* ¶ 6.

submissions, for duplicative submissions, and for transfer denials. Because this process is less settled than the typical deficiency process, and the volume is significant—more than 15,000 submissions must be reviewed to ensure compliance with the Court's submission requirements—Class Counsel file this motion to notify the Court of, and seek approval for, the proposed plan for third-party purchaser administration, in collaboration with the Settlement Administrator. Direction from the Court at this stage will provide clarity over an administration plan that ultimately impacts all Class Members. The proposed plan includes setting a deadline of December 4, 2026 for all third-party purchaser submissions to provide certainty and allow the review and notification process to occur only once, rather than iteratively, which would be far less efficient and more costly to the Classes. The deadline is the last business day before the scheduled Ninth Circuit oral argument on the appeal, after which a decision could come at any time. Class Counsel believe that this additional administration process is reasonable and necessary to protect Class Members from potential burdens and adverse tax consequences in the future.

Class Counsel also seeks the Court's permission to pay the administrative costs of notice and settlement administration from the interest accrued on the damages payments in escrow. The Settlement Agreements allot up to $3 million from the settlement pools for notice and administration costs across *House* and *Hubbard*. *See House* Dkt. No. 958-1 ¶¶ 1(z), 1(gg); *Hubbard* Dkt. No. 227-3 ¶ 1(u). However, during the pendency of the appeal, the damages payments have accrued sufficient interest to cover the incurred and expected future settlement administration costs. So far, the incurred notice and administration costs total approximately $2.7 million, though payments for this settlement administration will not be paid until the appeal is resolved. Class Counsel expect to exceed the allotted $3 million for several reasons, including the decision to provide estimated recoveries for individual Class Members during the objection period for greater transparency, the creation of a website portal related to designated student-athletes, and the extensive administrative burden associated with the large number of third-party claim purchases. To allow the Classes to benefit from this accrued interest, Class Counsel request Court approval to use the interest that has accrued on the damages payments in

the current Qualified Settlement Funds to pay the notice and administration costs without deducting any amount from Class Members' estimated recovery.

## II. BACKGROUND

### A. Procedural History of the Settlement

On October 7, 2024, the Court preliminarily approved the *House* and *Hubbard* Settlements, establishing settlement funds of $2.6 billion and $200 million, respectively, to be distributed to Class Members in yearly installments over ten years. *See House* Dkt. No. 544; *Hubbard* Dkt. No. 244. The Court granted final approval of the *House* Fourth Amended Stipulation and Settlement Agreement on June 6, 2025, and the *Hubbard* Stipulation and Settlement Agreement on June 9, 2025. *See House* Dkt. No. 979; *Hubbard* Dkt. No. 264. Objectors subsequently appealed the *House* Final Approval Order, and the Ninth Circuit has scheduled oral argument for December 7, 2026. *See* Notice of Oral Argument, *House v. NCAA*, No. 25-4190 (9th Cir. Sept. 27, 2026).

### B. Settlement Administration to Date

After processing over 430,000 unique student records from 325 schools, the Settlement Administrator implemented an extensive campaign that directly notified Class Members of potential claims. *House* Dkt. No. 717-4 ¶¶ 10–26. This campaign, along with the well-publicized nature of the Settlement, led to notice reaching approximately 96.4% of the Classes and facilitating high levels of participation in the claims process. *Id.* ¶ 11; *see id.* ¶ 35 (stating that over 101,000 Class Members participated as of January 31, 2025). Using the data provided by member schools, Class Counsel and the Settlement Administrator calculated damage estimates for Class Members in separate damages classes for 392,298 athletes to add even greater transparency into the process. *Id.* ¶ 29. This also generated significant participation by Class Members. *Id.* ¶¶ 30–31 (identifying over 5,000 phone calls and 33,000 emails as of March 3, 2025). As identified above, this participation has not slowed since Final Approval. Further, as a result of the appeals, and at Class Counsel's request, the Court extended the deadline for Class Members to submit claims until October 1, 2025. *See House* Dkt. No. 1022.

In addition, over the past year, the Settlement Administrator has spent considerable time and energy processing claim purchases by third parties on behalf of Class Members. *See* Antonio Decl. ¶¶ 12–17. Since September 2025, third-party purchasers have expended significant resources to advertise and buy Class Members' claims. This has resulted in tens of thousands of submissions and inquiries from Class Members, as well as hundreds of thousands of pages of paperwork for the Settlement Administrator to review.[5]

**C. Third-Party Purchaser Motions and Orders**

Third-party involvement in the claims process has required the Court's repeated intervention to protect Class Members and safeguard the integrity of the Settlement.

The first issue arose when third-party claims-filing companies began misleading Class Members about the need for—and value of—their services. On November 19, 2024, Plaintiffs moved for a prospective order requiring third-party claims purchasers to disclose that Class Members need not use third-party services to participate in the Settlement and that doing so will not increase their recovery. *See House* Dkt. No. 560; *Hubbard* Dkt. No. 249. The Court granted the motion. *See House* Dkt. No. 576; *Hubbard* Dkt. No. 252.

After final approval, third parties escalated their solicitation of Class Members' settlement claims. Recognizing the serious tax ramifications and administrative complications that would result from these transactions, Plaintiffs sought an order concerning third-party claims buyout services, supported by a declaration from the Qualified Settlement Fund's tax consultants detailing the tax risks, compliance burdens, and administrative costs associated with third-party sales and assignments. *House* Dkt. No. 1028. The motion requested at least two tax-related requirements for third-party claim purchases: (1) that all outright claims purchases be completed before the exhaustion of any appeals in the case; and (2) that third-party claims purchasers notify the Qualified Settlement Fund of any

[5] Two of the third-party purchasers claim to have bought approximately $700 million worth of settlement claims. Daniel Libit, *His House v. NCAA Claim Was Worth $40K. Referring Others Got Him $1M*, Sportico (June 17, 2026), https://www.sportico.com/leagues/college-sports/2026/house-settlement-claims-market-athlete-creditor-rashada-1234909883.

purchase within 15 days of closing and provide a bill of sale and signed indemnification agreement. *Id.* at 9–10. The Court granted the renewed motion on September 16, 2025. *See House* Dkt. No. 1047.

To facilitate the Court-ordered requirements for third-party purchaser submissions, the Settlement Administrator set up a web portal on October 10, 2025, so that only one claim transfer submission could be made per claim. Antonio Decl. ¶¶ 12, 15. The Settlement Administrator also required W-9 forms from both the third-party purchaser and the Class Member for tax reporting purposes, as well as identifying information (name, photo ID, NCAA Eligibility Center ID) to protect Class Members from fraudulent activity. *See id.* ¶ 13.

**D. Proposed Administration Plan for Third-Party Claim Purchases**

The administrative burden of reviewing third-party submissions has turned out to be enormous. As of the filing of this motion, the Settlement Administrator has spent approximately 1,800 hours solely reviewing third-party submissions, and many more hours responding to questions and requests from third-party purchasers and Class Members selling claims. *Id.* ¶ 17. Much more work is still required to identify deficiencies in the third-party purchasers' submissions and to provide notices of deficiencies and denials. This work must be done on behalf of Class Members to avoid potential negative tax or other consequences if the Settlement Administrator cannot transfer payment agreed to in a valid contract to which neither Class Counsel nor the Settlement Administrator are parties.

To balance the administrative burdens with the best interests of the Classes, Class Counsel and the Settlement Administrator propose the following plan regarding administration of third-party claim purchases.

***<u>Deficiencies</u>***: The Settlement Administrator will treat the following as "deficiencies" in third-party submissions and provide notice and a 30-day cure period:

- Missing or incomplete bill of sale documentation, including missing signatures of the buyer or seller, or insufficient information to determine if the transaction constitutes an outright sale;

- Missing or insufficient information in the W-9s, including a missing W-9 of either the buyer or the Class Member seller, invalid Tax ID number(s), or missing signature(s);
- Missing Class Member government-issued photo ID; or
- Missing or unsigned tax indemnification from buyer.[6]

***Denials***: The Settlement Administrator will deny submissions seeking to transfer payments to a third party in the following circumstances:

- The transaction is deemed something other than an outright sale of the relevant claim (*e.g.*, the contract is for a loan or advance payment rather than a sale);
- Missing or unsigned tax disclosure to Class Member after the date of the Court's order requiring the disclosures;[7]
- Failure to correct any deficiency within the 30-day cure period.

If the third-party purchaser submission is denied, the Settlement Administrator will pay the Class Member at the time of distribution if a valid claim exists.

***Duplicates***: To prevent multiple third-party submissions of purchases of a single claim, the Settlement Administrator set up a portal on October 10, 2025, that would allow only one submission of transfer paperwork per claim. Any third-party purchasers that submitted transfer paperwork after that date via email were advised that all submissions must be made through the portal. However, Class Counsel and the Settlement Administrator have become aware that there may be potential duplicate sales of Class Member claims to different third parties.

---

[6] This Court's previous order required two tax disclosures, including one in the initial marketing materials. *See House* Dkt. No. 1047. The Settlement Administrator will allow each third-party purchaser to provide evidence that the tax disclosure is on their website or other marketing materials and an attestation of the dates the disclosures appeared on the website to satisfy this requirement for all purchases, rather than providing it separately for each submission. The second disclosure must be signed by the Class Member.

[7] Denial is the proper approach for a failure on the tax disclosure requirement because the Class Member should have been advised of their rights prior to agreeing to the sale, and that failure cannot be cured with an untimely disclosure of tax implications.

For sales that occurred prior to the Court's order requiring the disclosures, the Settlement Administrator will accept the transfers without a tax disclosure, as no requirement existed at the time of the sale.

For any duplicate sales where multiple third parties provide the paperwork required to transfer payment of the same claim, the Settlement Administrator will provide notice to all third-party purchasers who provided submissions for the same claim of the duplicate submissions, including copies of the bills of sale in each submission. The notice will explain that more than one submission has been made and that no payment will be made on the claim until either an agreement signed by the relevant third-party purchasers is provided clarifying which one shall receive the proceeds, or proof of a legal determination of ownership is provided. The Settlement Administrator will only make payments to a single entity in order to follow legally mandated tax reporting disclosures, and to avoid further administrative burden.

## III. ARGUMENT

Courts have inherent authority to manage and supervise class action settlements. "[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Courts do so under either Federal Rule of Civil Procedure 23 or under the All Writs Act, 28 U.S.C. § 1651. *See Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016 WL 4080294, at *3 (N.D. Cal. July 29, 2016); *NFL Players' Concussion Inj. Litig.*, 923 F.3d 96, 108–09 (3d Cir. 2019) ("[T]he [c]ourt also had authority to enforce its orders under the All Writs Act, 28 U.S.C. § 1651, as well as authority to protect the class as a fiduciary under Federal Rule of Civil Procedure 23."). This Court has retained jurisdiction to enforce the Settlement Agreements and has already exercised that authority to lend clarity to the claims process. *See House* Dkt. Nos. 576, 1047; *Hubbard* Dkt. No. 252. The requested relief is a direct and modest exercise of that authority and will promote the orderly administration of the Settlement Funds.

### A. The Proposed Administration Plan for Third-Party Purchases Is Reasonable and Necessary to Facilitate Orderly Administration of the Settlement

The proposed administration plan affords third-party purchasers a fair process to address any issues in the transfer paperwork they have submitted: a process whereby third-party purchasers are provided notice and a 30-day period to cure deficiencies, limited Court-approved circumstances for denial, and only one chance to obtain distributions from the Settlement (no duplicate claims).

While the notice process will require the Settlement Administrator to incur additional time and expense to verify and permit third-party purchaser claims, it is in the best interest of the Classes to proceed with the proposed administrative plan. The Settlement Administrator cannot adjudicate whether Class Members owe their settlement proceeds to third-party purchasers, only whether settlement payments can be made directly to the third party. Thus, outright denying third-party claims, even where there is a valid contract in place, could lead Class Members to incur additional burdens and increased tax liability if they are later required to make payments to third parties for the ten-year duration of the Settlements. The proposed process—whereby third-party claim purchasers are provided notice and an opportunity to cure certain deficiencies—endeavors to protect Class Members from such potential burdens and liabilities.

As for circumstances for denial, to balance Class Members' desire to sell their claims with the resulting administrative burden, Class Counsel propose a focused review of third-party purchaser submissions to verify the following information: (1) who to make payments to, and (2) who to issue the relevant tax forms for that payment. *See House* Dkt. No. 1028-2 ¶¶ 4–5. Without that information, the Settlement Administrator cannot determine who to make the payment to and therefore cannot determine who to send required tax reporting forms. In that instance, the Settlement Administrator should not be required to make a distribution from the Settlement Fund.

Moreover, third-party purchasers are sophisticated businesses that have had sufficient notice of what is required to validly transfer a claim in this Settlement. This Court's September 16, 2025 order clearly required an outright bill of sale and multiple disclosures to Class Members. *See House* Dkt. No. 1047. And since October 10, 2025, Verita has required a Claim ID/PIN, photo ID of the Class Member, and W-9 form for third-party claim purchases. *See* Antonio Decl. ¶ 13. To the extent a third-party purchaser submitted a purchase prior to the Court's order or the implementation of the Settlement Administrator's web portal, the proposed administration plan gives them 30 days to cure the deficiency.

In short, the proposed administration plan—including the deficiency notice process and ability to deny third-party claim purchases that did not comply with the Court's previous order or failed to fix

a deficiency identified above within 30 days of notice—is reasonable and necessary to facilitate orderly administration of the Settlement.

### B. The Requested Deadline for Third-Party Claims Purchases Is Necessary to Facilitate Orderly Administration of the Settlement

At Class Counsel's request, the Court's order on third-party purchases stated that the Settlement Administrator would only transfer payment for claims for which "Third-Party Claim Buyers [] have completed outright purchases . . . from Class Members and those purchases are completed prior to the exhaustion of any appeals in the case." *House* Dkt. No. 1047 at 4. The limitation was designed to avoid potential tax liability for Class Members, based on an IRS Private Letter Ruling that generally held that a transfer of a litigation claim to a third person can be completed prior to the expiration of appeals in the case. *See* I.R.S. P.L.R. 200107019 (Feb. 16, 2001).

However, Class Counsel's and the Settlement Administrator's experience over the last year has demonstrated that the absence of a definitive cutoff date introduces unreasonable and costly uncertainty into the administration process. Class Members and third-party purchasers alike would benefit from knowing a date certain by when they must decide to buy or sell a claim. This was true for setting a final claims deadline for Class Members and it is true now. Further, the broad success of the Court-approved notice plan and the extended appeals period have ensured that Class Members who would like to sell their claim have had ample opportunity to do so. Certainty in this process is in the best interests of the Classes. If the request to set a December 4, 2026 deadline is granted, the deadline will be posted on the Settlement website, ensuring broad awareness of the submission requirement and a clear endpoint for further third-party purchases. This deadline will ensure that all submissions are due "prior to the exhaustion of any appeals in the case."

### C. Allowing Payment of Administration Costs from Accrued Interest on the Damages Amounts Benefits the Class

To maintain high-quality administration and reduce cost to the Classes, Class Counsel respectfully request Court approval to pay all administrative costs from the interest accrued on the damages payments previously transferred to the Qualified Settlement Funds. Class Counsel has carefully overseen the settlement administration work and expenses and will continue to do so. As of

September 30, 2026, the administrative costs stood at $2,732,471.04. Antonio Decl. ¶ 20. The Settlement Agreements allot up to $3 million from the settlement pools for notice and administration costs across *House* and *Hubbard*. *House* Dkt. No. 958-1 ¶¶ 1(z), 1(gg); *Hubbard* Dkt. No. 227-3 ¶ 1(u). As described above, Class Counsel expect to exceed the allotted $3 million over the ten-year course of the Settlements, with significant cost anticipated to process requests from third-party purchasers to transfer claim payments to them. Using the accrued interest on the damages payments in the current Qualified Settlement Funds to cover the notice and administration costs will benefit Class Members because it will facilitate a thorough administration process with a high level of service to Class Members without deducting any amounts from their estimated recovery.

## IV. CONCLUSION

For the foregoing reasons, the Motion should be granted.

Dated: October 30, 2026

Respectfully submitted,

By: */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Emilee N. Sisco (*pro hac vice*)
Stephanie Verdoia (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
emilees@hbsslaw.com
stephaniev@hbsslaw.com

Benjamin J. Siegel (SBN 256260)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
bens@hbsslaw.com

*Class Counsel for Plaintiffs*

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler (*pro hac vice*)
David L. Greenspan (*pro hac vice*)
Adam I. Dale (*pro hac vice*)
Sarah L. Viebrock (*pro hac vice*)
Neha Vyas *(pro hac vice)*
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-4698
Facsimile: (212) 294-4700
jeffrey.kessler@winstontaylor.com
david.greenspan@winstontaylor.com
adam.dale@winstontaylor.com
sarah.viebrock@winstontaylor.com
neha.vyas@winstontaylor.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON TAYLOR LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jeanifer.parsigian@winstontaylor.com

*Class Counsel for Plaintiffs*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the signatories above.

Dated: October 30, 2026

Respectfully submitted,

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler